# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., | Civil Action No. 4:22-cv-001189 |
| Plaintiffs, | |
| v. | |
| ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, | |
| Defendants. | |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., | Civil Action No. 4:22-cv-02590 |

ORBIS GLOBAL EQUITY FUND
LIMITED, ORBIS INSTITUTIONAL
FUNDS LIMITED, ALLAN GRAY
AUSTRALIA BALANCED FUND, ORBIS
OEIC, and ORBIS INSTITUTIONAL U.S.
 EQUITY L.P.,

     Plaintiffs,

  v.

ALTA MESA RESOURCES, INC., f/k/a
SILVER RUN ACQUISITION
CORPORATION II; RIVERSTONE
HOLDINGS LLC; ARM ENERGY
HOLDINGS LLC; BAYOU CITY
ENERGYMANAGEMENT, LLC; HPS
INVESTMENT PARTNERS, LLC;
JAMES T. HACKETT, HARLAN H.
CHAPPELLE, WILLIAM
GUTERMUTH, JEFFREY H. TEPPER,
DIANA J. WALTERS; MICHAEL E.
ELLIS; RONALD SMITH; DON
DIMITRIEVICH; PIERRE F.
LAPEYRE, JR.; DAVID M.
LEUSCHEN; WILLIAM W.
MCMULLEN; DONALD SINCLAIR;
STEPHEN COATS; and THOMAS J.
WALKER,

     Defendants.

# JOINT MOTION OF HPS INVESTMENT PARTNERS, LLC, BAYOU CITY ENERGY MANAGEMENT, LLC, AND ARM ENERGY HOLDINGS LLC TO DISMISS PLAINTIFFS' SECTION 20(a) CLAIMS AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING .................................................................... 1

STATEMENT OF THE ISSUE ..................................................................................... 1

INTRODUCTION ..................................................................................................... 2

BACKGROUND ...................................................................................................... 5

    A.    The Parties ................................................................................................ 5

    B.    The Business Combination ........................................................................ 7

    C.    The Moving Defendants' Interests In AMH, Kingfisher, And Alta Mesa ................................................................................................ 8

        1.    Prior To The Business Combination, The Moving Defendants Did *Not* Hold Any Interests In Silver Run ......................................... 8

        2.    Following The Business Combination, The Moving Defendants Held Minority Interests In Alta Mesa, And HPS And Bayou City Each Appointed A Single Board Member ............. 9

LEGAL STANDARD ................................................................................................ 9

ARGUMENT ........................................................................................................ 10

I.     PLAINTIFFS' SECTION 20(A) CLAIMS FAIL BECAUSE THEY HAVE NOT ADEQUATELY ALLEGED A PRIMARY VIOLATION ......................... 10

II.    PLAINTIFFS' SECTION 20(A) CLAIMS FAIL BECAUSE THEY HAVE NOT ALLEGED THE MOVING DEFENDANTS PARTICIPATED IN THE PRIMARY VIOLATION, OR COULD CONTROL THE PRIMARY VIOLATORS ....................................................................................... 11

    A.    Plaintiffs Cannot Plausibly Allege That the Moving Defendants Controlled The Alleged Misstatements Made Prior To The Business Combination ........................................................................... 12

    B.    Plaintiffs Fail To Plead That The Moving Defendants Controlled Alta Mesa Or The Individual Defendants After The Business Combination ........................................................................... 16

        1.    Plaintiffs Plead No Facts Showing The Moving Defendants Each Independently Controlled Alta Mesa Or The Individual Defendants ....................................................................... 16

        2.    Plaintiffs Do Not Plead The Existence Of A Control Group ........... 18

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abbott v. Equity Grp., Inc.,*
  2 F.3d 613 (5th Cir. 1993) ................................................................... 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................. 9

*Bach v. Amedisys, Inc.,*
  2016 WL 4443177 (M.D. La. Aug. 19, 2016) ..................................... 14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................. 9

*Carlton v. Cannon,*
  2016 WL 3959164 (S.D. Tex. July 22, 2016) ................................ 11, 13

*Carlton v. Cannon,*
  184 F. Supp. 3d 428, 495 (S.D. Tex. 2016) ................................... 16, 17

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.,*
  497 F.3d 546 (5th Cir. 2007) ................................................................ 9

*Dartley v. Ergobilt Inc.,*
  2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ...................................... 16

*Dennis v. General Imaging, Inc.,*
  918 F.2d 496 (5th Cir. 1990) .......................................................... 11, 18

*Fouad v. Isilon Sys., Inc.,*
  2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ................................. 20

*G.A. Thompson & Co. v. Partridge,*
  636 F.2d 945 (5th Cir. 1981) .......................................................... 10, 11

*Heck v. Triche,*
  775 F.3d 265 (5th Cir. 2014) .......................................................... 10, 11

*In re Advance Auto Parts, Inc., Sec. Litig.,*
  2020 WL 599543 (D. Del. Feb. 7, 2020) ............................................. 17

*In re Am. Apparel, Inc. S'holder Litig.,*
  2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ........................................ 13

*In re ArthroCare Corp. Sec. Litig.,*
  726 F. Supp. 2d 696 (W.D. Tex. 2010) ............................................... 15

*In re BP p.l.c. Sec. Litig.,*
  843 F. Supp. 2d 712 (S.D. Tex. 2012) ................................................. 11

*In re BP p.l.c. Sec. Litig.*,
    2014 WL 4923749, at *6 (S.D. Tex. Sept. 30, 2014)............................................. 15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    238 F. Supp. 3d 799 (S.D. Tex. 2017), *aff'd sub nom.*
    *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019) ........................... 15

*In re Friedman's, Inc. Sec. Litig.*,
    385 F. Supp. 2d 1345 (N.D. Ga. 2005) ................................................................ 15

*In re Kosmos Energy Ltd. Sec. Litig.*,
    955 F. Supp. 2d 658 (N.D. Tex. 2013) ...................................................... 18, 19, 20

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007)................................................................ 10

*In re Worlds of Wonder Sec. Litig.*,
    721 F. Supp. 1140 (N.D. Cal. 1989)..................................................................... 20

*LLDVF, L.P. v. Dinicola*,
    2010 WL 3210613 (D.N.J. Aug. 12, 2010) ..................................................... 19, 20

*Meek v. Howard, Weil, Laboisse, Friedrichs, Inc.*,
    95 F.3d 45 (5th Cir. 1996) ................................................................................... 11

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) ................................................................................... 9

*Silsby v. Icahn*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014), *aff'd sub nom.*
    *Lucas v. Icahn*, 616 F. App'x 448 (2d Cir. 2015) ........................................... 17, 18

*Southland Sec. Corp. v. INSpire Ins. Sol., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ............................................................................... 10

*Zishka v. Am. Pad & Paper Co.*,
    2001 WL 1748741 (N.D. Tex. Sept. 28, 2001) .................................................... 17

## Rules & Regulations

17 C.F.R. § 230.405................................................................................................ 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1

## NATURE AND STAGE OF PROCEEDING

Plaintiffs Alyeska Master Fund, L.P., Alyeska Master Fund 2, L.P., and Alyeska Master Fund 3, L.P. (together, "Alyeska Plaintiffs") and Orbis Global Equity LE Fund (Australia Registered), Orbis Global Equity Fund (Australia Registered), Orbis Global Balanced Fund (Australia Registered), Orbis SICAV, Orbis Institutional Global Equity L.P., Orbis Global Equity Fund Limited, Orbis Institutional Funds Limited, Allan Gray Australia Balanced Fund, Orbis OEIC, and Orbis Institutional U.S. Equity L.P., (together, "Orbis Plaintiffs," and, with Alyeska Plaintiffs, "Plaintiffs") filed "opt-out" complaints as shareholders of Alta Mesa Resources, Inc. alleging claims under the 1934 Securities Exchange Act (the "1934 Act") and Texas law.

Defendants HPS Investment Partners, LLC ("HPS"), Bayou City Energy Management, LLC ("Bayou City"), and Arm Energy Holdings, LLC ("ARM Energy") (together, the "Moving Defendants") respectfully submit this Motion, and incorporated memorandum of law, to dismiss the claims brought under Section 20(a) of the 1934 Act against those Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF THE ISSUE

The issue raised by this Motion is whether Plaintiffs' claims under Section 20(a) of the 1934 Act should be dismissed because:  (1) Plaintiffs have failed to plead primary violations of Section 10(b) or Section 14(a); and (2) Plaintiffs have failed to plead that HPS, Bayou City, and ARM Energy could control the misstatements alleged in the Complaints.

1

## INTRODUCTION

This Court should reject Plaintiffs' bid to bootstrap the Moving Defendants into this action through novel theories regarding Section 20(a) liability that have been conclusively rejected in this Circuit.  The gravamen of Plaintiffs' complaints rests on establishing that the Moving Defendants are "control persons" for purposes of Section 20(a).  Their claims fail as a matter of law because none of the Moving Defendants controlled the misstatements alleged in this action.

Plaintiffs allege the misstatements at issue came from three sources:  Silver Run Acquisition Corporation II ("Silver Run"), Alta Mesa Resources, Inc. ("Alta Mesa"), and certain individual defendants who either signed SEC filings on behalf of Silver Run or Alta Mesa or otherwise made representations on behalf of those companies.  Prior to 2018, the Moving Defendants held interests in Alta Mesa Holdings, LP ("AMH") and/or Kingfisher Midstream, LLC ("Kingfisher").  In 2018, Silver Run—a publicly-traded, special purpose acquisition company ("SPAC") formed for the purpose of acquiring a private company in the energy industry—acquired AMH and Kingfisher in the "Business Combination."  As a result of the Business Combination, each of the Moving Defendants obtained independent, minority interests in Silver Run, which then changed its name to Alta Mesa Resources, Inc. after the acquisition closed.[1]  Two of the Moving Defendants, Bayou City and HPS, also

---

[1] For clarity, this Motion refers to Alta Mesa Resources, Inc. as "Silver Run" when discussing the time period prior to the Business Combination, and "Alta Mesa" when discussing the time period after the Business Combination, because Silver Run Acquisitions Corporation II (abbreviated herein as "Silver Run") changed its name to Alta Mesa Resources, Inc. (abbreviated herein as "Alta Mesa") after the Business Combination.

each obtained the right to appoint one of eleven directors to Alta Mesa's newly-expanded board.  Plaintiffs allege that prior to the Business Combination, Silver Run made certain misstatements, and that after the Business Combination, its successor—Alta Mesa—also misrepresented the extent and value of the oil and gas resources AMH could develop, and the general financial condition and prospects of the post-Business Combination entity.

Because none of these alleged misstatements were made by the Moving Defendants, Plaintiffs attempt to establish that each "controlled" Silver Run's alleged pre-Business Combination misstatements, Alta Mesa's post-Business Combination misstatements, and the individual defendants serving as directors or officers of Silver Run and Alta Mesa during both time frames.  Absent from the complaints, however, are any allegations that the Moving Defendants could control any of the parties that allegedly made the misstatements at issue, much less the misstatements themselves.  Before the Business Combination, none of the Moving Defendants held *any* interest in Silver Run, and therefore could not have controlled its alleged misstatements.  And after the Business Combination, the Moving Defendants each held only *minority interests* in Alta Mesa, with no ability to control its management or Board of Directors.  Plaintiffs' Section 20(a) claims thus fail as to the Moving Defendants for the following reasons:

*First*, Plaintiffs have failed to plead a primary violation of the securities laws, which is required to establish liability under Section 20(a).

*Second,* Plaintiffs cannot establish that the Moving Defendants controlled the alleged misstatements that are at issue—either prior to or after the Business Combination. Prior to the Business Combination, none of the three entities had any interest in, and

appointed no members to the board of, Silver Run, the party alleged to have made—on its own and through certain individual defendants—the allegedly misleading pre-Business Combination statements.  Instead each of the Moving Defendants held interests in AMH and/or Kingfisher, which were the two entities that Silver Run sought to acquire.  By definition, involvement with a transactional *counterparty* cannot establish control over the acquirer, particularly prior to the transaction itself.  Plaintiffs nonetheless assert that the Moving Defendants "controlled" Silver Run even though they did not own it because they allegedly supplied Silver Run with information about AMH and/or Kingfisher that Silver Run included in the Proxy Statement.  But this theory of control has been routinely rejected by multiple courts around the country, including those in this district.  And even if such a theory of control were viable, Plaintiffs do not even plead that the specific information the Moving Defendants provided was false, precluding any inference that the Moving Defendants controlled the alleged misstatements.

Plaintiffs' allegations as to control after the Business Combination fare no better. Each of the Moving Defendants held only a minority stake in Alta Mesa following the Business Combination.  Again, courts routinely hold that minority stakes are insufficient to establish control person liability for purposes of Section 20(a).  Nor have Plaintiffs plausibly alleged a collective control group:  beyond labeling each of the Moving Defendants as control persons, Plaintiffs have pled no facts to support the inference that these entities acted together to control Alta Mesa, much less the alleged misstatements, after the Business Combination.  Plaintiffs thus fail to plead Section 20(a) liability.

For the foregoing reasons, the Section 20(a) claims asserted against the Moving Defendants in Counts II and V should be dismissed.

## BACKGROUND

### A.    The Parties

For the purposes of this Motion, Plaintiffs consist of two groups:  (1) the Alyeska Plaintiffs, which are Cayman Islands exempted limited partnerships, Alyeska Compl. ("AC") ¶¶ 17-19; and (2) the Orbis Plaintiffs, which are various funds, partnerships, and investment companies organized under the laws of Australia, Luxembourg, Bermuda, England and Wales, and Delaware, Orbis Compl. ("OC") ¶¶ 17-27.  Plaintiffs allege that they purchased common stock in Alta Mesa Resources, Inc. at purportedly inflated prices and held that stock through some or all of a series of alleged corrected disclosures starting on March 29, 2018 and continuing until May 17, 2019.  AC ¶¶ 17-19, 297-320; OC ¶¶ 17-26, 372-395.

Defendant Bayou City Energy Management, LLC is an energy-focused private equity firm based in Houston, Texas.  AC ¶ 39; OC ¶ 48.  Bayou City, through a fund it advised, entered into a joint development agreement with a subsidiary of AMH in January 2016.  AC ¶ 39; OC ¶ 48.  Bayou City holds a minority interest in non-party High Mesa, which was the owner of AMH prior to the Business Combination and a partial owner of Alta Mesa following the Business Combination.   AC ¶ 39; OC ¶ 48.   Following the Business Combination, Bayou City held and exercised the right to appoint one of eleven directors to Alta Mesa's newly-expanded Board.

Defendant HPS Investment Partners, LLC is an investment manager, AC ¶ 40; OC

¶ 49, headquartered in New York, New York.  Prior to 2018, HPS held, through certain investment funds that it manages, direct and indirect interests in AMH and Kingfisher.  In 2018, Silver Run acquired AMH and Kingfisher in the "Business Combination."  As a result of this transaction, HPS, again through certain investment funds, obtained:  (1) an indirect minority interest in Silver Run (known as Alta Mesa after the Business Combination); and (2) the right to appoint one of eleven directors to Alta Mesa's newly-expanded board.  AC ¶ 40; OC ¶ 49.

Defendant ARM Energy Holdings LLC is a product services firm active in major North American oil and gas basins.  AC ¶ 41; OC ¶ 50  Plaintiffs allege that, prior to the merger, ARM Energy was the founder and majority owner of Kingfisher.  AC ¶ 41; OC ¶ 50.[2]  ARM Energy became a shareholder of Alta Mesa following the close of the Business Transaction.  AC ¶ 41; OC ¶ 50.

In sum, prior to the Business Transaction, the Moving Defendants held shares (directly and/or indirectly) in either AMH or Kingfisher.  Following the Business Transaction, the Moving Defendants each held minority stakes in Alta Mesa.  At no point in time did any of the Moving Defendants own a majority stake in the entities alleged to have made material misrepresentations in this action (Silver Run and Alta Mesa).

Also  relevant  are  the  individual  defendants,  alleged  to  have  made

---

[2]   Plaintiffs' allegation that ARM Energy was the "majority owner of Kingfisher" is contradicted by the Proxy, which states that "HPS and its affiliates, ARM Midstream, LLC and Alta Mesa's parent company each own[ed] an approximately one-third interest in the Kingfisher Contributor."  *See* Silver Run Proxy Statement, *available at*: https://www.sec.gov/Archives/edgar/data/1690769/000119312518014904/d510702ddefm 14a.htm, at 5.  ARM Energy is thus not the majority owner of Kingfisher.

misrepresentations on behalf of Silver Run, prior to the Business Transaction, and Alta Mesa, following the Business Transaction.  These defendants fail into three core groups.

*First,* the complaints define the "Proxy Defendants" as the six Officers and Directors who issued alleged misrepresentations on behalf of Silver Run prior to the Business Transaction through the proxy statement, which recommended Silver Run's shareholders approve the Business Transaction.  AC ¶ 27; OC ¶ 36.  The Proxy Defendants are:  Silver Run CEO James T. Hackett; Silver Run CFO Thomas J. Walker; Silver Run Corporate Secretary Stephen Coats; and Silver Run Board Members William Gutermuth, Jeffrey H. Tepper, and Diana J. Walters.  AC ¶¶ 21-27; OC ¶¶ 30-36.

*Second,* the complaints also define the "Management Defendants" as the following officers of Alta Mesa after the Business Transaction:  Alta Mesa CEO Harlan H. Chappelle; Alta Mesa "Chief Operating Officer – Upstream" Michael E. Ellis; and Alta Mesa Chief Accounting Officer Ronald Smith.  AC ¶¶ 28-31; OC ¶¶ 37-40.

*Finally*, the complaints define the "Board Defendants" as the following individuals on the Alta Mesa Board of Directors after the Business Transaction:  David M. Leuschen, Pierre F. Lapeyre Jr., William W. McMullen, Don Dimitrievich, and Donald Sinclair.  AC ¶¶ 32-36; OC ¶¶ 41-45.  For purposes of this motion, the Proxy Defendants, Management Defendants, and Board Defendants are referred to as the "Individual Defendants."

### B.    The Business Combination

Silver Run was a SPAC, created by Riverstone, that went public in March 2017 and sought to identify and acquire a private energy company.  AC ¶ 3; OC ¶ 3.  On August 16, 2018, Silver Run announced that it intended to acquire AMH and Kingfisher for $3.8

billion.  AC ¶ 4; OC ¶ 4.  At the time of the Business Combination, Kingfisher's biggest customer was AMH.  AC ¶ 4; OC ¶ 4.

On February 6, 2018, Silver Run's stockholders voted in favor of the Business Combination, and on February 9, 2018, the transaction closed, AC ¶ 60; OC ¶ 69, after which the new, publicly-traded company became known as Alta Mesa.  AC ¶ 60; OC ¶ 69.

### C. The Moving Defendants' Interests In AMH, Kingfisher, And Alta Mesa

#### 1. Prior To The Business Combination, The Moving Defendants Did *Not* Hold Any Interests In Silver Run

While Plaintiffs name the Moving Defendants and Riverside Holdings as "Control Entity Defendants,"  AC ¶ 42; OC ¶ 51,  they nowhere allege that any of the so-called "Control Entity Defendants" held any ownership interest in, or the right to appoint members to the board of, Silver Run prior to the closing of the Business Combination, including as of January 19, 2018—the date on which Silver Run issued the Definitive Merger Proxy Statement for the Business Combination (the "Proxy Statement.").  AC ¶ 57; OC ¶ 66.  Instead, Plaintiffs allege only that ARM Energy was the founder and majority owner of Kingfisher, AC ¶ 41; OC ¶ 50, and that Bayou City owned 40% of non-party High Mesa, which allegedly owned AMH prior to the Business Combination, AC ¶ 39; OC ¶ 48.  Plaintiffs do not specify what percentage of AMH or Kingfisher was held by Bayou City or ARM Energy.  Regardless, Plaintiffs' Section 20(a) claims do not arise from alleged control of, or misstatements attributed to, AMH or Kingfisher, and neither of these entities is a defendant.  AC at 1, ¶ 43; OC at 1, ¶ 52.

### 2. Following The Business Combination, The Moving Defendants Held Minority Interests In Alta Mesa, And HPS And Bayou City Each Appointed A Single Board Member

Following the Business Combination, Plaintiffs allege that the Moving Defendants owned a portion of the renamed, publicly-traded corporate parent, Alta Mesa. AC ¶¶ 39-41; OC ¶¶ 48-50. While the Complaint does not specify the size of any of the Moving Defendant's minority equity stakes in Alta Mesa, *see* AC ¶¶ 39-41; OC ¶¶ 48-50, Plaintiffs concede in their pleadings that Bayou City had the right to appoint only one member of the Alta Mesa Board of Directors, AC ¶ 39; OC ¶ 48, and that HPS had the right to appoint only one member of the Alta Mesa Board of Directors, AC ¶ 40; OC ¶ 49. Plaintiffs do not allege that ARM Energy held or exercised any right to appoint a member to the Alta Mesa Board of Directors. AC ¶ 41; OC ¶ 50.

### LEGAL STANDARD

Although the Court must accept a plaintiff's well-pleaded factual allegations in considering a motion to dismiss under Rule 12(b)(6), *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir. 2007), the Court need not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quotations omitted). The Court likewise should reject "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). And a Court must dismiss causes of action where the plaintiff fails to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Where, as here, plaintiffs allege merely that several entities held aggregate majority interests and board

seats, they fail to provide the facts necessary to meet these pleading standards.

Specifically, to plead a cause of action for Section 20(a) control person liability, a plaintiff must allege (i) that a controlled entity committed a primary violation of the securities laws, *Rubinstein v. Collins*, 20 F.3d 160, 166 n.15 (5th Cir. 1994), and (ii) the defendant could control the specific transaction or activity from which the primary violation arises, which here is the alleged misstatements. *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014). It is Plaintiffs' burden to establish control. *See G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981).

## ARGUMENT

## I.   PLAINTIFFS' SECTION 20(a) CLAIMS FAIL BECAUSE THEY HAVE NOT ADEQUATELY ALLEGED A PRIMARY VIOLATION

The Moving Defendants incorporate by reference the arguments in the Motions filed by their co-defendants, dated January 10, 2023, seeking to dismiss Plaintiffs' alleged violations of Section 14(a) (and Rule 14a-9) and Section 18 as untimely, Section 10(b) (and Rule 10b-5) for failure to plead actionable false or misleading statements or scienter, and the Section 20(a) claims based on those alleged violations. "Control person liability is secondary only and cannot exist in the absence of a primary violation." *Southland Sec. Corp. v. INSpire Ins. Sol., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004). Indeed, dismissal of Section 20(a) claims for failure to plead a primary violation is required where the primary violation claims are dismissed as untimely. *See, e.g.*, *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1212-13 (N.D. Cal. 2007) (dismissing Section 20(a) claim because "plaintiffs have not adequately stated a claim of a primary violation" where underlying

Section 14(a) claim dismissed as untimely).  The Section 20(a) claim against the Moving Defendants should be dismissed for this independent reason.

## II.   PLAINTIFFS' SECTION 20(a) CLAIMS FAIL BECAUSE THEY HAVE NOT ALLEGED THE MOVING DEFENDANTS PARTICIPATED IN THE PRIMARY VIOLATION, OR COULD CONTROL THE PRIMARY VIOLATORS

"[T]o prove a violation of Section 20(a), a plaintiff must … prove that the controlling person had actual power over the controlled person and induced or participated in the alleged violation."  *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 791 (S.D. Tex. 2012) (citing *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990)).[3]

To adequately plead "actual power over the controlled person," *In re BP*, 843 F. Supp. 2d at 791, Plaintiffs must plausibly allege "at least … that the defendant[s] had an ability to control the specific transaction or activity upon which the primary violation is based."  *Heck*, 775 F.3d at 283 (quoting *Meek v. Howard, Weil, Laboisse, Friedrichs, Inc.*, 95 F.3d 45, at *3 (5th Cir. 1996)); *Carlton v. Cannon*, 2016 WL 3959164, at *5 (S.D. Tex. July 22, 2016) (same).  Plaintiffs plead no facts suggesting that the Moving Defendants had the ability to control, much less exercised that control by directing, any alleged misstatements attributed to Silver Run, Alta Mesa, or the Individual Defendants.

---

[3]  *Dennis* and some subsequent cases do not address the Fifth Circuit's explanation in *G.A. Thompson*, 636 F.2d at 958, that Section 20(a) does not "appear[] to require participation in the wrongful transaction."  Similarly, the Fifth Circuit has not conclusively resolved whether it is sufficient to plead that a defendant had the "*power to control* [a primary violator]" or undertook the "*actual exercise*" of the power to control the primary violator, *Abbott v. Equity Grp., Inc.,* 2 F.3d 613, 620 (5th Cir. 1993) (emphasis in original). Regardless, Plaintiffs' allegations fail under even the most permissive formulation of the allegations required to state a claim:  Plaintiffs do not plausibly allege actual power to control the primary violators.

11

Thus, Plaintiffs Section 20(a) claims must be dismissed for at least three reasons. *First,* prior to the Business Combination, Plaintiffs cannot plead that the Moving Defendants had any power over the primary violator, Silver Run or the Proxy Defendants, as none of the three entities held ***any*** stake in Silver Run, and Alta Mesa did not yet exist. *Second*, after the Business Combination, Plaintiffs fail to plead any facts indicating that the Moving Defendants had the power to control the alleged primary violators: Alta Mesa and the Individual Defendants. *Third,* while Plaintiffs attempt to salvage their claims by alleging the existence of a control group, AC ¶ 42; OC ¶ 51, composed of the Moving Defendants and Riverstone (referred to in the complaints as the "Control Entity Defendants"), that attempt fails because Plaintiffs have not alleged coordination between the entities. Accordingly, as more fully set forth below, Plaintiffs have failed to allege liability under Section 20(a).

### A. Plaintiffs Cannot Plausibly Allege That the Moving Defendants Controlled The Alleged Misstatements Made Prior To The Business Combination

Plaintiffs' allegations that the Moving Defendants controlled alleged misstatements made by Silver Run and the Proxy Defendants[4] prior to the Business Combination fail as a matter of law. *See* AC ¶¶ 152-166, 194-209; OC ¶¶ 161-175, 210-215. The Moving Defendants did not hold any ownership interest in Silver Run and did not direct the Proxy Defendants, and therefore they could not control the statements made by Silver Run or the

---

[4]   As set forth above, the Proxy Defendants—Silver Run officers and directors—are the only Individual Defendants alleged to have made misstatements prior to the Business Combination.

Proxy Defendants on behalf of Silver Run as a matter of law. Indeed, Plaintiffs do not plead that the Moving Defendants held any ownership in, or the right to appoint members to the board of, Silver Run prior to the closing of the Business Combination. AC ¶¶ 39-41; OC ¶¶ 48-50. Nor do Plaintiffs allege that the Moving Defendants satisfied the SEC's definition of control: none is alleged to have had any contractual or other legal right or ability "to direct or cause the direction of management and policies of" Silver Run. *See* 17 C.F.R. § 230.405 (defining "control"); *see also Carlton*, 2016 WL 3959164, at *4, 8 (applying definition of "control" in 17 C.F.R. § 230.405 to dismiss Section 20(a) claims where defendant "had neither the power to control the type of statements alleged to be misleading nor the specific statements that gave rise to … liability").

Plaintiffs' paltry allegations do not establish that any of the Moving Defendants exercised control over Silver Run or the Proxy Defendants prior to the Business Combination. Plaintiffs allege that Bayou City held indirect partial ownership interests in AMH and was a partial owner of Alta Mesa following the Business Combination; that HPS owned a portion of Alta Mesa post-combination; and that ARM Energy was an owner of Kingfisher and shareholder of Alta Mesa following the merger, AC ¶¶ 39-41; OC ¶¶ 48-50. But these allegations do not establish control of ***Silver Run***, an entity that was entirely independent from Alta Mesa (which did not yet exist), High Mesa, and Kingfisher prior to the Business Combination. *See, e.g.*, *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *36 (C.D. Cal. Jan. 16, 2013) (holding that "plaintiffs have not pled sufficient facts showing that [control defendant] exercised control over American Apparel during the time frame in question" where "Plaintiffs' allegations of misrepresentations … for the most

13

part concern statements made long before the financing agreements with [alleged controller]"); *Bach v. Amedisys, Inc.*, 2016 WL 4443177, at *14 (M.D. La. Aug. 19, 2016) (dismissing for failure to plead "Section 20(a) claims against" defendants who "did not work for Amedisys at the time of the" alleged misstatements).  Accordingly, allegations that the Moving Defendants controlled other entities that Silver Run planned to acquire do not, as a matter of law or logic, plead a mechanism by which the Moving Defendants could control Silver Run or the Individual Defendants who managed or directed Silver Run pre-Business Combination.[5]

Plaintiffs' conclusory assertion that "Bayou City, HPS, and ARM Energy provided the operational information contained in the Proxy," AC ¶¶ 42; 358; OC ¶ 51; 433, is also insufficient to plead control over the misstatements made in the Proxy Statement.  As a threshold matter, this threadbare pleading does not suggest that any false information originated with the Moving Defendants:  there are no allegations as to what, if any, information the Moving Defendants provided or whether that information was even false.  And even if Plaintiffs had pleaded that the Moving Defendants supplied false information for Silver Run's Proxy Statement, a defendant may not be deemed a controller or subjected to liability merely because "the substance of the alleged falsehoods originated with" the Moving Defendants; rather, the operative question is whether the alleged controller "possessed or exercised control over those persons or entities who made actionable

---

[5]   Plaintiffs do not name AMH or Kingfisher as defendants, nor assert that the purported Section 20(a) liability of the Moving Defendants arises from control of either target entity. *See* AC ¶¶ 356-358; OC ¶¶ 431-433.

misstatements." *In re BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *6 (S.D. Tex. Sept. 30, 2014); *see also In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 731 (W.D. Tex. 2010) (Defendant "cannot be held liable as a control person simply due to his involvement in the underlying activities about which the Individual Defendants are alleged to have misled investors."); *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1374 (N.D. Ga. 2005) ("The Company's financial reporting … is what forms the basis of Plaintiffs' claims, not the operations themselves.  That Defendant … set the Company's collection policies is irrelevant ….").  Here, no such allegations exist.

Indeed, it is commonplace for an acquirer to prepare a proxy statement using information obtained from a target company, and this process serves the interests of the securities laws by providing investors with broader and more accurate disclosure. Plaintiffs' argument, by contrast, discourages target companies from providing information to the potential acquirer and, in any case, exposes them to Section 20(a) liability for control over a counterparty in which they own zero interest, hold zero board seats, and lack any legal mechanism for control.

In reality, Plaintiffs' allegations are merely an attempt to recharacterize claims against the Moving Defendants for aiding and abetting the Proxy Defendants' alleged fraud as control-person claims.  AC ¶ 27 (defining "Proxy Defendants"); OC ¶ 36 (same).  But this vain attempt to side-step the rule that "[t]here is no private right of action under § 10(b) of the Exchange Act for aiding and abetting," fails.  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 238 F. Supp. 3d 799, 902 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019).  Plaintiffs cannot attribute the statements in

the Proxy Statement to the Moving Defendants, which means that the Moving Defendants

cannot be liable for those misstatements.

### B. Plaintiffs Fail To Plead That The Moving Defendants Controlled Alta Mesa Or The Individual Defendants After The Business Combination

#### 1. Plaintiffs Plead No Facts Showing The Moving Defendants Each Independently Controlled Alta Mesa Or The Individual Defendants

Plaintiffs' allegations that the Moving Defendants controlled Alta Mesa and the

Individual Defendants[6] post-Business Combination also fail as a matter of law.  Plaintiffs

specifically allege that:  Bayou City, through High Mesa, indirectly owned a minority

interest in Alta Mesa following the Business Combination, and appointed one of 11 Alta

Mesa directors, *see* AC ¶ 39; OC ¶ 48; HPS owns "a significant," but minority, portion of

Alta Mesa and appointed one member of the Alta Mesa Board of Directors, *see* AC ¶ 40;

OC ¶ 49; and that ARM Energy became "a shareholder of Alta Mesa" after the Business

Combination, AC ¶ 41; OC ¶ 50.  But mere status as a shareholder "does not, without more,

create control person liability."  *Dartley v. Ergobilt Inc.*, 2001 WL 313964, at *1 (N.D.

Tex. Mar. 29, 2001).

Plaintiffs' allegations as to each of the Moving Defendants are particularly deficient

in light of the fact that each was only a *minority* shareholder, and therefore could not have

had control over Alta Mesa's representations.  *See Carlton v. Cannon*, 184 F. Supp. 3d 428,

495 (S.D. Tex. 2016) (no control-person liability where *majority* shareholder appointed a

---

[6]  As set forth above, the Individual Defendants that allegedly made false statements post-
Business Combination consist of officers and directors of Alta Mesa.

director and was "deeply involved in and responsible for [the company's] operational strategy and financing" because plaintiffs plead no facts "that [defendant] had the ability to control the public statements."); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x 448 (2d Cir. 2015) ("[A] defendant's minority stock ownership is, in isolation, insufficient to allege control under Section 20(a).").

Indeed, Plaintiffs fail to plead a single instance of alleged control, misconduct, or other action attributable solely to any one of the Moving Defendants beyond HPS's and Bayou City's single director appointment.[7]  But the mere allegation that HPS and Bayou City appointed a single board member each, out of eleven total, to Alta Mesa's newly-expanded board cannot establish control even if each entity's ownership stakes were significantly higher.  *See, e.g.*, *Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th Cir. 2003) (investment funds' ownership of "38%-50%" of company stock and right to designate board majority insufficient to plead "exercise of power and control … as to the challenged acts"); *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020) ("The claims against Starboard fail, because allegations of control are insufficient where the plaintiff merely alleges that the defendant owned a minority stock interest and selected a minority number of directors.").

---

[7]   ARM Energy is not alleged to have appointed *any* directors to Alta Mesa's board.

Moreover, Plaintiffs do not allege that the individuals appointed by HPS or Bayou City even acted on behalf of the appointing entities when they served as directors of Alta Mesa, which is also fatal to their claim. *See* AC ¶¶ 39-41; OC ¶¶ 48-50. It is well-settled that the Court "cannot assume that [defendants'] designees on the [company's] Board of Directors were acting on behalf of [defendants] in their capacity as … directors." *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013). *See also Dennis*, 918 F.2d at 509-10 ("[Director] status alone will not automatically cause him to be a Section 15 or 20 controlling person. He must be found to have influence over at least the direction of the firm."); *Silsby*, 17 F. Supp. 3d at 371 ("This allegation lends no support to the plaintiffs' allegation that Icahn exercised control over primary violators because [directors appointed by Icahn] were not working within the scope of their employment for Icahn when acting in their capacity as Directors of Dynegy."). Plaintiffs therefore fail to plead that the Moving Defendants independently had the ability to control—much less actually controlled—Alta Mesa or the Individual Defendants.

### 2. Plaintiffs Do Not Plead The Existence Of A Control Group

While Plaintiffs alternatively suggest that the so-called Control Entity Defendants collectively controlled Alta Mesa and the Individual Defendants, *see, e.g.*, AC ¶¶ 38-42 (characterizing Bayou City, HPS, ARM Energy, and Riverstone as a collective "Control Entity Defendants" group); OC ¶¶ 47-51 (same), the Complaint is devoid of the allegations necessary to establish a collective control group. ***There are no allegations*** that the four entities did, or could, collectively control the alleged misstatements made in Alta Mesa's post-Business Combination public filings, nor any allegations that their aggregate board

18

appointees had any role in, or ability to control, Alta Mesa's public statements.

Plaintiffs' mere allegations that these shareholders, in the aggregate, held more than 50% of the interest in Alta Mesa, and appointed seven of 11 directors, are insufficient under Section 20(a) to establish a control group.  Instead, "each defendant's control must be evaluated separately unless there is some basis on which to consider their collective action," because otherwise "any shareholder, no matter how small, could be grouped with others to form a majority control group, even absent any allegations or facts supporting that shareholder's actual control."  *LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010).   Courts thus routinely reject control liability under similar circumstances.

*In re Kosmos*, 955 F. Supp. 2d at 662, is instructive.  Plaintiffs there alleged that Defendant Kosmos Energy Ltd. ("Kosmos"), whose business involved the exploitation of a large, deep-sea oil field near Ghana, made misstatements in the offering materials issued in connection with Kosmos' IPO.  *Id*. at 663-73.  In addition to Plaintiffs' causes of action pursuant to Sections 11 and 12 of the 1933 Securities Act ("1933 Act") against Kosmos and certain individuals, Plaintiffs asserted control-person liability claims under the 1933 Act's analogue to Section 20(a), Section 15, against the Blackstone Group L.P. ("Blackstone") and Warburg Pincus LLC ("Warburg").  *Id.* at 662-63.  The Court explained that Plaintiffs' allegations were "based almost entirely" upon Blackstone's and Warburg's combined 82% interest in Kosmos' publicly-traded equity, and their right to appoint four directors to Kosmos' nine-member board.  *Id.* at 675.  The Court explained it could not "assume that Warburg's and Blackstone's designees" to Kosmos' board "were acting on

behalf of Warburg and Blackstone in their capacity as Kosmos directors," that the complaint was "devoid of any allegations of [Blackstone's and Warburg's] control over Kosmos aside from their stock ownership" and board designations, and that there were no allegations that Blackstone or Warburg "were somehow involved in Kosmos' operations (day-to-day or long-term), decision-making, or planning." *Id*. at 676.

The allegations necessary to establish the existence of a collective control group are likewise absent here.  Plaintiffs do not plead that the Moving Defendants had any role in the day-to-day operation of Alta Mesa, nor that they acted together to control or operate Alta Mesa.  And the mere collective holding of a majority stake is legally insufficient. *LLDVF*, 2010 WL 3210613, at *12; *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) ("Without additional allegations that the [three] venture capital firms acted together to control [the company], these allegations of control by virtue of collective ownership are conclusory and unconvincing."); *In re Worlds of Wonder Sec. Litig.*, 721 F. Supp. 1140, 1145 (N.D. Cal. 1989) ("Although plaintiffs group these defendants together as the 'Venture Capitalist Defendants,' plaintiffs have alleged nothing which would at all suggest that these defendants acted 'collectively' with each other."). Plaintiffs have therefore failed to plead that the Moving Defendants had the authority— much less actually exercised that authority—to control Alta Mesa or the Individual Defendants.

## CONCLUSION

For these reasons, the claims brought under Section 20(a) of the 1934 Act against the Moving Defendants should be dismissed with prejudice.

Dated:   January 10, 2023                    Respectfully submitted,

        /s/ Karl S. Stern

Karl S. Stern (attorney in charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 / Facsimile:  (713)
221-7100
Email: karlstern@quinnemanuel.com
christopherporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Benjamin I. Finestone (*pro hac vice* )
Jacob J. Waldman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000 / Facsimile:  (212)
849-7100
Email: michaelcarlinsky@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
jacobwaldman@quinnemanuel.com
courtneywhang@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT**
**PARTNERS, LLC AND DON DIMITRIEVICH**

David A. Baay
Fed. ID No. 598715
Attorney-in-Charge
**EVERSHEDS SUTHERLAND (US) LLP**
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel.: (713) 470-6112
Fax: (713) 654-1301
davidbaay@eversheds-sutherland.com

**-AND-**

Of Counsel:
Bruce M. Bettigole (*pro hac vice*)
Adam Pollet (*pro hac vice*)
Andrea Gordon (*pro hac vice*)
**EVERSHEDS SUTHERLAND (US) LLP**
700 Sixth Street N.W., Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Fax: (202) 637-3593
brucebettigole@eversheds-sutherland.com
adampollet@eversheds-sutherland.com
andreagordon@eversheds-sutherland.com

**COUNSEL FOR ARM ENERGY
HOLDINGS, LLC**

Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
Kenneth A. Young (Attorney-in-Charge)
Texas Bar No. 25088699,
S.D. Tex. ID 2506614
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:      (713) 836-3600
Fax:         (713) 836-3601
Emails:    nick.brown@kirkland.com
                kenneth.young@kirkland.com

**COUNSEL FOR BAYOU CITY ENERGY
MANAGEMENT, LLC AND WILLIAM
MCMULLEN**

22

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served on counsel of record by the Court's ECF system on January 10, 2023.

/s/ Karl S. Stern
By: Karl S. Stern