# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> *Plaintiffs*, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br><br> *Defendants*. | Civil Action No. 4:22-cv-001189 |

| | |
|---|---|
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., <br><br> *Plaintiffs*, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT; HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br><br> *Defendants*. | Civil Action No. 4:22-cv-02590 |

### WILLIAM MCMULLEN'S MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST WILLIAM MCMULLEN

### RELIEF SOUGHT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), William McMullen submits this motion to dismiss the consolidated litigations against him brought by the Orbis Plaintiffs

("Orbis") in Civil Action No. 4:22-cv-02590 and the Alyeska Plaintiffs ("Alyeska") in Civil Action No. 4:22-cv-01189, collectively (the "Plaintiffs"). Both cases present nearly identical allegations against Mr. McMullen and both fail to meet the requisite pleading standard against Mr. McMullen for the same reasons. ***First***, the Court should dismiss the Section 10(b) and Rule 10b-5 claims against Mr. McMullen because the claims are time-barred, unsupported by particularized allegations of Mr. McMullen's scienter, and improperly attempt to hold Mr. McMullen liable for someone else's statements. ***Second***, the Court should dismiss the common law and statutory fraud claims against Mr. McMullen because they are inadequately pleaded.

## **TABLE OF CONTENTS**

**SUMMARY OF ARGUMENT** ........................................................................................................ 1

**BACKGROUND** ............................................................................................................................ 2

**ARGUMENT** ................................................................................................................................. 3

**I.  THE COURT SHOULD DISMISS THE SECTION 10(b) AND RULE 10b-5 CLAIMS AGAINST MR. MCMULLEN** ............................................................................ 3

    A.　Plaintiffs' Claims Are Untimely Under a Two-Year Statute of Limitations ................ 3

    B.　Plaintiffs Did Not Allege Mr. McMullen's Scienter ....................................................... 5

    C.　Mr. McMullen Cannot Be Liable for Someone Else's Statements .............................. 9

**II.  THE COURT SHOULD DISMISS THE COMMON LAW AND STATUTORY FRAUD CLAIMS AGAINST MR. MCMULLEN BECAUSE THE COMPLAINTS LACK ANY ALLEGATION OF FRAUDULENT INTENT** ............ 10

**CONCLUSION** ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) ...................................................................................................8

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) .................................................................................................10

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
  565 F.3d 200 (5th Cir. 2009) ...........................................................................................10, 11

*Hall v. Variable Annuity Life Ins. Co.*,
  727 F.3d 372 (5th Cir. 2013) ...................................................................................................4

*Ho v. Duoyuan Glob. Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012) .....................................................................................9

*In re MRU Holdings Sec. Litig.*,
  769 F. Supp. 2d 500 (S.D.N.Y. 2011) .....................................................................................8

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
  307 F. Supp. 3d 583 (S.D. Tex. 2018) .....................................................................................7

*In re Veon Ltd. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) .......................................................................10

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...................................................................................9

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
  237 F. Supp. 3d 492 (S.D. Tex. 2017) .................................................................................7, 8

*Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*,
  387 F. Supp. 2d 691 (S.D. Tex. 2004) ...................................................................................11

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) .....................................................................................................3, 1, 9, 10

*Kerr v. Exobox Techs. Corp.*,
  2012 WL 201872 (S.D. Tex. Jan. 23, 2012) .......................................................................9, 10

*Larsen v. Carlene Langford & Assocs., Inc.*,
  41 S.W.3d 245 (Tex. App.—Waco 2001, pet. denied) ..........................................................11

*Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes*,
   810 F.3d 951 (2016) .................................................................................................................8

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019) ..............................................................................................................9

*N. Port Firefighters' Pension--Local Option Plan v. Temple-Inland, Inc.*,
   936 F. Supp. 2d 722 (N.D. Tex. 2013) ......................................................................................7

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) .....................................................................................................8

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) .....................................................................................................6

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ......................................................................................................8

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) .....................................................................................................5

*Petrie v. Elec. Game Card Inc.*,
   2011 WL 165402 (C.D. Cal. Jan. 12, 2011) ............................................................................10

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) .....................................................................................................6

*Robbins v. Capozzi*,
   100 S.W.3d 18 (Tex. App.—Tyler 2002, no pet.) ...................................................................11

*S.E.C. v. Steadman*,
   967 F.2d 636 (D.C. Cir. 1992) ...................................................................................................9

*Sirois v. Zions Bancorporation, N.A.*,
   2021 WL 1306767 (S.D. Tex. Apr. 7, 2021) .........................................................................3, 5

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
   365 F.3d 353 (5th Cir. 2004) ...........................................................................................6, 7, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...............................................................................................................6, 8

**Statutes**

15 U.S.C. Section 78u-4(b)(1)(B) .....................................................................................................6

15 U.S.C. § 78u-4(b)(2)(A) ...............................................................................................................5

28 U.S.C. § 1658(b) ..........................................................................................................................4

Exchange Act § 10(b) ................................................................................................................. *passim*

PSLRA .................................................................................................................................1, 6, 7, 10

Tex. Bus. & Com. Ann. § 27.01 ...............................................................................................10

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................1, 10, 11

Fed. R. Civ. P. 10(b) ......................................................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................................................2

SEC 10b-5............................................................................................................................ *passim*

# SUMMARY OF ARGUMENT

As set forth in the motions filed by the other defendants, Defendants' Motion to Dismiss filed by Alta Mesa Resources, Inc. et al. on January 10, 2023 and the Joint Motion to Dismiss filed by HPS Investment Partners, LLC, Bayou City Energy Management, LLC, and ARM Energy Holdings LLC on January 10, 2023, (collectively, "Co-Defendants' Motions"), Plaintiffs assert several securities claims against differently situated Defendants, and for the reasons set forth in the Co-Defendants' Motions, those claims fail as a matter of law. As to Mr. McMullen, Plaintiffs assert several claims that are time-barred or inadequately pleaded.

*First*, Plaintiffs' Section 10(b) and Rule 10b-5 claims are time-barred. A two-year statute of limitations governs these claims. In both the Orbis and Alyeska Complaints (the "Complaints"), the sole allegation discussing Mr. McMullen's words or conduct is that he was one of many defendants who signed Alta Mesa's March 29, 2018 Form 10-K, which Plaintiffs allege contained misstatements. Given that Plaintiffs pleaded that they were reviewing Alta Mesa's allegedly actionable disclosures as soon as they were filed, the bases of any claims against Mr. McMullen were discovered well before the statute of limitations expired.

*Second*, Plaintiffs' Section 10(b) and Rule 10b-5, common law fraud, and statutory fraud claims are inadequately pleaded against Mr. McMullen because they have not been pled with particularity. In fact, because they are completely devoid of any specific allegations of scienter or motive, each claim fails to satisfy even notice pleading standards, let alone the heightened pleading standards of the PSLRA or Rule 9(b) that are actually applicable. The handful of times that Mr. McMullen is even mentioned in the Complaints are devoid of any facts indicating scienter or motive for making any alleged false statement. And under black letter law, group pleading cannot save Plaintiffs' claims against Mr. McMullen. Dismissal is required.

1

## BACKGROUND[1]

For ease of reference, every statement in the lengthy Complaints that even mentioned Mr. McMullen is below:

- "Plaintiffs . . . through their undersigned attorneys, bring this direct action . . . by way of this Complaint and Jury Demand, for their claims against . . . William W. McMullen" and "allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters." Orbis Compl. (Dkt. 1) ("Orbis Compl.") at 1; Alyeska Compl. (Dkt. 1) ("Alyeska Compl.") at 1.

- "Defendant William W. McMullen served as a member of Alta Mesa's Board of Directors following the Merger. Defendant McMullen is the Founder and Managing Partner of Defendant Bayou City Energy Management, LLC. Defendant McMullen signed Alta Mesa's March 29, 2018 Form 10-K." Orbis Compl. at ¶ 43; Alyeska Compl. at ¶ 34.

- "The above-named Defendants—Leuschen, Lapeyre, McMullen, Dimitrievich and Sinclair—along with Defendants Hackett, Gutermuth, Tepper and Walters, are referred to collectively as the 'Board Defendants.'" Orbis Compl. at ¶ 46. Alyeska Compl. at ¶ 37.

- "Defendant [Bayou City] is an energy-focused private equity firm based in Houston, Texas. Bayou City has been involved with AMH since at least January 2016, when it entered into a joint development agreement with AMH to fund a portion of AMH's drilling operations. Bayou City also owns approximately 40% of relevant non-party High Mesa (the owner of AMH prior to the Merger and a partial owner of Alta Mesa following the Merger). Bayou City has two members on High Mesa's board of directors and also appointed its founder and managing partner William McMullen to the Alta Mesa Board of Directors." Orbis Compl. at ¶ 48; Alyeska Compl. at ¶ 39.

- "[High Mesa was] the owner[] and general partner of AMH prior to the Merger, and continued to own and control a portion of Defendant Alta Mesa and SRII Opco following the Merger. High Mesa also was a partial owner of Kingfisher prior to the Merger. Defendant Bayou City owns approximately 40% of High Mesa and appointed two members to High Mesa's board of directors (Mark Stoner and Defendant McMullen). Defendant Chappelle is also affiliated with High Mesa. High Mesa filed for Chapter 7 bankruptcy protection on January 24, 2020." Orbis Compl. at ¶ 52; Alyeska Compl. at ¶ 43.

- "Even after Alta Mesa filed for bankruptcy in September 2019, representatives of the Control Entity Defendants attended the Company's board meetings. For instance, at a [Kingfisher] board meeting on September 3, 2019, not only were the Control Entity Defendants represented by Defendants McMullen, Dimitrievich, Lapeyre and Leuschen, but the following additional representatives . . . ." Orbis Compl. at ¶ 358.

---

[1] The Co-Defendants' Motions are incorporated by reference in this motion, including the portions of those motions that set forth the factual background, procedural history, legal standard, and argument. For the sake of brevity, this motion discusses only issues unique to Mr. McMullen.

2

- "During the bankruptcy proceedings, BCE-Mach III, a partnership between Defendant Bayou City and Mach Resources LLC . . . purchased substantially all of Alta Mesa's upstream and midstream assets for approximately $320 million. Following the acquisition, Defendant McMullen, founder of Defendant Bayou City, stated that 'We know these particular assets well and are confident that the Mach team will be able to operate them in a manner suitable to the current macro environment, focused on maximizing free cash flow generation and delivering a sustainable, conservatively leveraged return to our investors.'" Orbis Compl. at ¶ 359.

## ARGUMENT

**I.   THE COURT SHOULD DISMISS THE SECTION 10(b) AND RULE 10b-5 CLAIMS AGAINST MR. MCMULLEN**

The Court should dismiss the claims in Count I of the Complaints—violation of Section 10(b) and SEC Rule 10b-5—insofar as Plaintiffs asserted these claims against Mr. McMullen. The claims are time-barred under a two-year statute of limitations, and Plaintiffs failed to allege that Mr. McMullen had the requisite scienter or made the allegedly actionable statements.

**A.   Plaintiffs' Claims Are Untimely Under a Two-Year Statute of Limitations**

Here, a two-year statute of limitations governs Plaintiffs' Section 10(b) and Rule 10b-5 claims, and the statute's period began to run upon discovery of the facts constituting the violation. *See Sirois v. Zions Bancorporation, N.A.*, 2021 WL 1306767, at *2 (S.D. Tex. Apr. 7, 2021) (noting the "limitations period for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and Rule 10b-5 is the earlier of (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation.") (citing 28 U.S.C. § 1658(b)).[2]

The Complaint's lone allegation connecting Mr. McMullen to any alleged misstatements shows that Plaintiffs' claims are untimely under the governing two-year statute of limitations.

---

[2]   *See also Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 n.4 (5th Cir. 2013) ("Because the Halls have asserted securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act and Securities and Exchange Commission Rule 10b–5, the applicable limitations and repose statute is 28 U.S.C. § 1658(b): '[A] private right of action that involves a claim of fraud . . . may be brought not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation.'").

3

Plaintiffs pleaded that Alta Mesa's 2017 Form 10-K filed with the SEC on March 29, 2018 contained statements that were false and misleading for various reasons. Orbis Compl. at ¶¶ 184-85; Alyeska Compl. at ¶¶ 175-76. Plaintiffs' theory of liability against Mr. McMullen is that he, along with many other defendants, "signed Alta Mesa's ***March 29, 2018*** Form 10-K." Orbis Compl. at ¶ 43 (emphasis added); Alyeska Compl. at ¶¶ 34.

But Plaintiffs filed suit more than two years after discovering the facts constituting the violation. The Complaints allege that in 2018, Plaintiffs actually reviewed the 10-K at issue. *See* Orbis Compl. at ¶¶ 366–67, 412 ("An investment analyst working on behalf of Plaintiffs read and actually relied upon information contained in Alta Mesa's 2017 Form 10-K (to the extent that Form 10-K was on file with the SEC at the time) . . . ."); *see also* Alyeska Compl. at ¶¶ 294, 337. Because Plaintiffs waited more than two years after that time to file suit, the statute of limitations bars their claims.

Buttressing this argument is that Plaintiffs repeatedly pleaded that Alta Mesa disclosed the alleged violation long before they filed the Complaint. *See* Orbis Compl. at ¶ 70 ("Less than two months after the merger closed, on March 29, 2018, Alta Mesa filed its first 10-K with the SEC, issued an earnings release, and held an earnings call. The earnings release dramatically reduced the EBITDA and production estimates provided in the Proxy."); *see also* Alyeska Compl. at ¶ 61 (same).[3] Furthermore, the Complaints rely on the complaint filed in Camelot Event Driven Fund's related class action case, which outlined the various alleged misstatements made in the 2017 Form 10-K. Orbis Compl. at 1–2 (noting materials Plaintiffs relied on); *see*

---

[3] *See also* Orbis Compl. at ¶ 72 (discussing disclosures in Alta Mesa's earnings call); *id.* at ¶ 75 (discussing impact on share price after investors heard these disclosures); *id.* at ¶ 77 (discussing Alta Mesa's August 14, 2018 8-K); *id.* at ¶ 80 (discussing Alta Mesa's November 13, 2018 8-K); *id.* at ¶ 81 (discussing earnings call about third-quarter 2018 results, namely Alta Mesa's "significant headwinds" and "technical challenges"); *id.* at ¶¶ 86–87 (discussing disclosure of weaknesses in Alta Mesa's internal controls and that Alta Mesa would need to take material write-downs as stated in Alta Mesa's February 25, 2019 Form 8-K); *see also* Alyeska Compl. ¶¶ 63, 66, 68, 71, 72, 77, and 78 (same parentheticals as the Orbis complaint citations).

*also* Alyeska Compl. at 1.[4] Yet the complaint in Camelot Event Driven Fund was filed on March 14, 2019, *See* ECF 1, No. 4:19-cv-00957 (Class Action Complaint), more than two years before this case's Complaints. Accordingly, Plaintiffs cannot avoid the statute of limitations.

Even using the latest of these dates—March 14, 2019—as the date that Plaintiffs discovered the alleged violation, they should have filed their Complaints by March 14, 2021 so as not to be barred by the statute of limitations. *See Sirois*, 2021 WL 1306767, at *2 (noting two-year statute of limitations). Plaintiffs missed the applicable deadline by more than a year. *See* Alyeska Compl. at 1 (noting April 13, 2022 filing date); Orbis Compl. at 1 (noting August 3, 2022 filing date). Thus, the Court should dismiss the claims against Mr. McMullen.

### B. Plaintiffs Did Not Allege Mr. McMullen's Scienter

Plaintiffs fail to plead Section 10(b) and Rule 10b-5 claims against Mr. McMullen because the Complaints do not "state with particularity facts giving rise to a strong inference that [Mr. McMullen] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Signing a 10-K by itself does not give rise to such a claim; Plaintiffs must also allege that Mr. McMullen had the required scienter. *See Owens v. Jastrow*, 789 F.3d 529, 545–46 (5th Cir. 2015) (dismissing Rule 10b-5 claims against signer of Form 10-K because plaintiff failed to show signer knew about fraud).

For these claims, the required scienter is an intent "to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005). Plaintiffs must allege scienter as to each disputed

---

[4] *See also* Orbis Compl. at ¶ 12 (discussing the Court's holdings in the Class Action); *id*. at ¶ 153 (discussing the Class Action Complaint's recitation of the alleged accounts of two AMH production engineers who claim that AMH departed from industry standards); *id*. at ¶ 158 (discussing same for Alta Mesa engineers); *see also* Alyeska Compl. at ¶¶ 144, 149.

statement, 15 U.S.C. Section 78u-4(b)(1)(B), and for each individual defendant, *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004). To adequately plead scienter, Plaintiffs must allege facts that at least support an inference of intent that is "more than merely 'reasonable' or 'permissible,'" the inference must instead be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).[5]

None of the statements in the Complaints that reference Mr. McMullen discuss scienter or motive to mislead. The entire basis for Plaintiffs' claims against him is one sentence that says: "Defendant McMullen signed Alta Mesa's March 29, 2018 Form 10-K." Orbis Compl. at ¶ 43; Alyeska Compl. at ¶ 34. This is not an allegation that Mr. McMullen knew of or recklessly disregarded any falsity in the Form 10-K, let alone an allegation supporting a strong inference of such.

Further, generic allegations about "Defendants," collectively, are insufficient to state a claim against Mr. McMullen. The PSLRA does not permit group pleading of scienter:

> The "group pleading" doctrine conflicts with the scienter requirements of the PSLRA because, even if a corporate officer's position supports a reasonable inference that he likely would be negligent in not being involved in the preparation of a document or aware of its contents, the PSLRA state of mind requirement is severe recklessness or actual knowledge.

*Southland Sec. Corp.*, 365 F.3d at 364–65. Put simply, the "Fifth Circuit has made clear its disapproval of 'group pleading' in securities-fraud complaints." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 614–16 (S.D. Tex. 2018) ("The rule against group pleading applies to scienter allegations."). In other words, "[t]he rejection of group pleading requires plaintiffs pleading fraud claims against individuals under § 10(b) and Rule 10b-5 to distinguish

---

5   *Accord Neiman v. Bulmahn*, 854 F.3d 741, 747 (5th Cir. 2017) (noting that, to qualify as strong, the inference "must be cogent and compelling, not simply reasonable, or permissible." (cleaned up)).

6

among the defendants and allege each one's role, intent, and knowledge." *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 514–15 (S.D. Tex. 2017) (citation omitted). But Plaintiffs' allegations are completely devoid of Mr. McMullen's supposed intent or knowledge.

That Mr. McMullen was "a member of Alta Mesa's Board of Directors following the Merger," Orbis Compl. at ¶ 43; Alyeska Compl. at ¶ 34, is also insufficient to plead scienter or motive for Section 10(b) and Rule 10b-5 claims. *See N. Port Firefighters' Pension--Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 753 (N.D. Tex. 2013). For example, in *Temple-Inland*, the court dismissed more detailed allegations than those present here because the complaint had "not allege[d] a strong inference of scienter as to [a defendant named] Jastrow." *See id.* As the court explained:

> Allegations showing that Jastrow was aware of the declining housing market and a declining market for MBS as well as Guaranty's need for more capital, in connection with his position as Chairman of the Board of Directors and his signature on certain Guaranty SEC filings, ***are simply not enough to show that Jastrow knew*** that Guaranty was reporting false financial figures and violating GAAP.

*Id.* (emphasis added). Plaintiffs' allegations against Mr. McMullen are even less detailed, and their claims against him must therefore fail for the same reasons. "This [wa]s especially so" in *Temple-Island* because, as is the case here, the complaint did not "allege that [the defendant] specifically heard or saw any of the purported warnings shared with other . . . officers or directors." *Id.* Indeed, it has long been Fifth Circuit law that "pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002).[6]

---

[6] *Cf. Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes*, 810 F.3d 951, 958 (2016) (confirming "the predominant theme in this circuit's case law [is] that 'an officer's position with a company does not suffice to create an inference of scienter'" (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 424 (5th Cir. 2001))).

7

Finally, any attempt to impute the alleged scienter of Bayou City, another defendant, to Mr. McMullen must fail for two reasons. First, Mr. McMullen is not Bayou City. Plaintiffs have not alleged any basis to hold Mr. McMullen accountable for Bayou City's conduct, or any facts to support whatever that basis might be.

Second, Bayou City's post-Merger conduct undermines any allegation of scienter. Rather than selling its stock after the price declined, Bayou City's SEC filings show that it acquired more than four million additional shares of Class A common stock. *See* Ex. 1 (Bayou City Form 4 filings for Alta Mesa).[7] Far from supporting a "strong inference" of scienter, an allegation that Defendants believed Alta Mesa shares were overvalued cannot be reconciled with the reality that Bayou City bought those same shares at the allegedly overvalued price. As Plaintiffs would have it, Bayou City was throwing money away for the sheer joy of it—a plainly implausible theory. *See Tellabs*, 551 U.S. at 336 (noting that, when "determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences"). Bayou City's decision to acquire shares is totally inconsistent with any alleged deceptive intent. *See In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 516 (S.D.N.Y. 2011) ("The [defendants'] purchase and retention of the shares . . . [is] inconsistent with the allegation that [they] harbored information that the [c]ompany's financial health was in grave jeopardy. Rather, the [defendants'] purchases of MRU stock . . . signals only confidence in the future of their company.") (cleaned up).[8]

---

[7] The Court may consider Form 4 filings when assessing scienter allegations. *See Izadjoo*, 237 F. Supp. 3d at 517–18 n.8 (S.D. Tex. 2017) (taking judicial notice of Form 4 filings and finding that a defendant's stock repurchases rebutted a finding of scienter); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (holding that Form 4 filings are subject to judicial notice).

[8] *See also, e.g.*, *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177–78 (C.D. Cal. 2007) ("[T]he lack of any tangible personal benefit here further weighs against the Officer Defendants having scienter."); *S.E.C. v. Steadman*, 967 F.2d 636, 642 (D.C. Cir. 1992) ("If we were to conclude that the appellants meant to defraud investors, we would have to believe that they did so for the sheer joy of it rather than for profit.").

### C. Mr. McMullen Cannot Be Liable for Someone Else's Statements

Mr. McMullen is not liable for any alleged misstatements because Plaintiffs fail to allege that he, as opposed to the other Defendants, made any actionable statements. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1103 (2019) (noting that an individual is not liable under Rule 10b-5 if he "neither makes nor disseminates false information—provided, of course, that the individual is not involved in some other form of fraud"). In this context, the Supreme Court has held that "[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Rather, the "maker" of a statement is one "with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.*; *accord Kerr v. Exobox Techs. Corp.*, 2012 WL 201872, at *11 (S.D. Tex. Jan. 23, 2012) ("[J]ust because a person or entity may 'control' the company filing the document does not mean that the control person can be liable under 10b-5 for making the statements." (citing *Janus Cap. Grp., Inc.*, 564 U.S. at 142)).

Plaintiffs did not plead that Mr. McMullen had "ultimate authority" over any alleged misstatements. ***First***, the oral statements allegedly made by other Defendants are not attributable to Mr. McMullen. *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 572 n.13 (S.D.N.Y. 2012) (holding one is not liable "for the allegedly false [oral] statements made by [another]"). And as the Supreme Court explained, it is the speaker, not the speechwriter, "who takes credit—or blame—for what is ultimately said" because the content is "entirely within the control of the person who delivers it." *Janus Cap. Grp., Inc.*, 564 U.S. at 143. ***Second***, Plaintiffs' collective allegation that "Board Defendants" made false statements cannot support a claim that Mr. McMullen, specifically, had ultimate authority over those statements. *See Exobox Techs. Corp.*, 2012 WL 201872, at *13 ("Without allegations that Exobox had ultimate authority over the statement, the Court may not determine that Exobox made the statement and thus can be liable

9

under section 10(b) and Rule 10b-5."). At best, Plaintiffs' allegations are group pleading, which conflicts with the scienter requirements of the PSLRA and cannot be sufficient to plead Mr. McMullen's scienter. *See Southland Sec. Corp.*, 365 F.3d at 364–65.

Finally, because Mr. McMullen was not on the Board before the Merger, he categorically cannot be liable for misstatements made before the Merger by virtue of his not-yet-existent board membership. *See Petrie v. Elec. Game Card Inc.*, 2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011) (refusing to hold defendants liable for statements made before affiliation with company); *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *16 (S.D.N.Y. Aug. 30, 2018) (same). Thus, Plaintiffs fail to state a claim against Mr. McMullen.

## II. THE COURT SHOULD DISMISS THE COMMON LAW AND STATUTORY FRAUD CLAIMS AGAINST MR. MCMULLEN BECAUSE THE COMPLAINTS LACK ANY ALLEGATION OF FRAUDULENT INTENT

The Court should dismiss Counts VI and VII (common law fraud) and Count VIII (violation of Texas Business and Commerce Code section 27.01 (*i.e.*, statutory fraud)) insofar as Plaintiffs asserted these claims against Mr. McMullen. Both claims suffer from the same defect: a failure to allege fraudulent intent with particularity. Fraud claims are "subject to the pleading standard of Rule 9(b)." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008)). Indeed, the Fifth Circuit "has stated, in the context of a state law securities fraud claim," like the state law claims pleaded by Plaintiffs here:

> In order to adequately plead fraudulent intent, a plaintiff must set forth specific facts to support an inference of fraud. Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant.

*Id.* (cleaned up).

Likewise, one of the "elements of common law fraud under Texas law" is that the defendant made a misrepresentation "with knowledge of its falsity or recklessness as to its truth" and "with the intention that it should be acted upon by another party . . . ." *Id.* at 212 (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004)). Statutory fraud also requires fraudulent intent. *See Robbins v. Capozzi*, 100 S.W.3d 18, 26 (Tex. App.—Tyler 2002, no pet.) ("In order to recover for a violation of section 27.01, a plaintiff must show . . . the representation was made to induce a person to enter a contract . . . .") (citing *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249 (Tex. App.—Waco 2001, pet. denied)).

As discussed above, the Complaints contain no allegations about Mr. McMullen's motive to commit securities fraud or conscious behavior to make any misstatement. Again, the Complaints state Mr. McMullen's role in one sentence: "McMullen signed Alta Mesa's March 29, 2018 Form 10-K." Orbis Compl. at ¶ 43; Alyeska Compl. at ¶ 34. That does not suffice to meet Rule 9(b). The Court should dismiss the common law and statutory fraud claims against Mr. McMullen because the Complaints are bereft of any allegation about fraudulent intent.

## CONCLUSION

Plaintiffs' allegations run contrary to Fifth Circuit law, in that they assert both deficient and time-barred claims against Mr. McMullen. For the foregoing reasons, the Court should dismiss all claims against Mr. McMullen.

DATED: January 10, 2023

/s/ Nick Brown
Nick Brown
Texas Bar No. 24092182   S.D. Tex. ID 2725667
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699   S.D. Tex. ID 2506614
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:       (713) 836-3601
Emails:   nick.brown@kirkland.com
              kenneth.young@kirkland.com

*Counsel for Bayou City Energy Management, LLC and William McMullen*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on January 10, 2023.

/s/ Nick Brown
Nick Brown

12