| ENTWISTLE & CAPPUCCI LLP | ROBBINS GELLER RUDMAN & DOWD LLP | QUINN, EMANUEL, URQUHART & SULLIVAN LLP |
|---|---|---|
| 500 WEST 2ND STREET, SUITE 1900-16 AUSTIN, TEXAS 78701 | 655 WEST BROADWAY, SUITE 1900 SAN DIEGO, CALIFORNIA 92101 | 711 LOUISIANA STREET, SUITE 500 HOUSTON, TEXAS 77002 |

January 11, 2023

<u>VIA ECF</u>
The Honorable George C. Hanks, Jr.
United States District Judge
United States Courthouse
515 Rusk Street, Room 6202
Houston, Texas 77002

Re: *In re Alta Mesa Resources, Inc. Securities Litigation*, Case No. 19-CV-00957

Dear Judge Hanks:

Lead Plaintiffs raise a discovery dispute with Defendants HPS Investment Partners, LLC and Don Dimitrievich (collectively "HPS"). The parties exchanged substantive correspondence regarding this dispute on September 30, October 3, 5, 7 and 26, November 2, 15, 22, 25, 28 and 29, 2022 and met and conferred on December 15, 2022. Plaintiffs' formal request for production of the documents at issue and HPS's responses and objections thereto are submitted herewith as Exhibits A and B, respectively.

**I. Lead Plaintiffs' Position**

HPS should be compelled to produce to Plaintiffs volumes 5 and 6 of the document production it prepared jointly in connection with this case and a related proceeding which HPS refuses to identify.[1]

Plaintiffs in this case allege that defendants inflated Alta Mesa's stated reserves and projected revenue models by, among other things, deliberately employing an aggressive and economically untenable drilling program that boosted short-term production while destroying the viability of the business and driving it into bankruptcy. Plaintiffs allege HPS took hundreds of millions of dollars out of the fraudulent scheme via their control of Alta Mesa and other bad acts. Plaintiffs also allege that HPS controlled Alta Mesa's false and misleading statements not only directly by supplying the misleading information in the Proxy and other SEC filings, but also indirectly through its ownership of and various interlocking relationships with Alta Mesa and related entities, individuals and information.

Without informing Plaintiffs, HPS apparently conducted their document review process for this case jointly with their review in a related proceeding. HPS's joint review yielded eight volumes, but only volumes 1-4 and 7-8 were produced to Plaintiffs in this action.[2] Volumes 5 and 6 were withheld from Plaintiffs here, not because they were not relevant to this case, but because

---

[1] HPS's offer to produce documents within volumes 5-6 within the agreed-upon search parameters is a meaningless proposal. HPS purportedly *already has* produced to Plaintiffs, in Volumes 1-4 and 7-8, all relevant documents within the search parameters applicable to the first set of requests.

[2] HPS has advised that volumes 1-4 were produced in both actions.

Hon. George C. Hanks, Jr.
January 11, 2023
Page 2 of 5

they were outside the scope of search parameters (date range, custodians and search terms) that were originally agreed to at HPS's request ostensibly to reduce HPS's purported burden. But, of course, there was actually no additional burden for HPS because of the joint review. When early meet and confer efforts did not yield a compromise to produce Volumes 5 and 6 (which had already been reviewed and produced in the related proceedings and, indeed, have apparently already been assigned bates numbers consecutive with HPS's production in this case), Plaintiffs served a new set of requests covering the date range for Volumes 5 and 6. HPS nevertheless still refuses to produce the documents, bringing the matter before this court.

Plaintiffs know volumes 5 and 6 contain relevant, non-privileged material. HPS inadvertently produced a document from volumes 5 and 6 (HPS_00073316), which HPS does not dispute is non-privileged and relevant to this case. That document is a November 2015 email chain containing a discussion of how to model the company's "well performance, production outlook . . . [and] volume, price, etc.," issues central to the allegations in this case. The email chain references attached financial models (not produced in this case) that, from the filenames and context, appear to also be highly probative of HPS's knowledge of the fraud.

Unable to stand on form over substance arguments given service of the supplemental requests, HPS now spuriously argues that the production of volumes 5 and 6 will raise "joint privilege issues". However, HPS refuses to advise what matter or to whom those volumes were produced beyond that it involved a "related-entity Trustee". Thus, HPS has not established a basis for a claim of joint privilege.[3] Indeed, the only thing that HPS's apparent production of the material to a "related-entity Trustee" indicates is that the material is relevant to Plaintiffs' allegations of control vis-à-vis interlocking relationships and overlapping ownership structures.

Accordingly, Lead Plaintiffs ask that HPS be directed to produce volumes 5 and 6 in their entirety and without redaction, together with such other remedy as the Court determines is appropriate in response to HPS's obstructive conduct.[4] In the alternative, Plaintiffs ask that in the first instance HPS be required to identify the proceeding in which volumes 5 and 6 were produced and all parties to which the volumes were provided in that proceeding, and to produce here the subpoena pursuant to which volumes 5 and 6 were produced in the related proceeding, so that Plaintiffs can test HPS's blanket assertions of joint privilege and nonwaiver.

**II. Defendant HPS's Position**

Realizing they cannot win their motion on the merits, Plaintiffs brazenly resort to misleading this Court by intentionally making things up. Contrary to Plaintiffs' assertion, HPS

---

[3] Among other things, HPS would need to show it jointly retained counsel with another party to address a "palpable threat of litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might some day result in litigation". HPS also fails to explain how any such privilege was not waived when the documents were produced in the other proceeding. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001).

[4] The HPS Defendants' accusation that Plaintiffs are in violation of the Protective Order is without merit. As Dkt. 190, ¶10 expressly provides, Plaintiffs are fully within their rights to maintain and reference the documents at issue here in connection with a motion to compel. Further, the HPS Defendants have not made any showing of privilege and have failed to identify any legal authority justifying their attempt to claw back non-privileged, relevant documents they inadvertently produced to Lead Plaintiffs.

Hon. George C. Hanks, Jr.
January 11, 2023
Page 3 of 5

and Mr. Dimitrievich **have never** conducted a "joint" review of Volumes 5 and 6 in connection with this Action. Pure fabrication. Likewise, HPS is not "withholding" any relevant material from Plaintiffs in this matter. More fabrication. HPS has informed Plaintiffs of these facts numerous times, yet they insist on submitting these untrue statements to the Court without any reservation.[5]

As HPS has repeatedly explained to Plaintiffs, HPS produced Volumes 5 and 6 in a **separate action**, before a different Judge and Court, under separately-negotiated search terms and date range, well after substantial completion of document production in this Action. Specifically, HPS made the following productions:

Volumes 1-4:  Produced by HPS in this Action in October and December 2021;
Volumes 5-6:  Produced by HPS **in a separate action**[6] in January 2022;
Volumes 7-8:  Produced by HPS in this Action in February[7] and September 2022.

In fact, in a good faith attempt to resolve this dispute, HPS offered to review and produce any documents within Volumes 5 and 6 that fall within the parties' **agreed-upon** Search Parameters, to the extent not already produced. Far from "meaningless," this compromise fully aligns with the parties' prior agreement on the scope of discovery, which this Court already endorsed at the last discovery hearing—also initiated by Plaintiffs—in July 2022. *See* Dkt. 253. Plaintiffs refused this offer.

The Court should reject Plaintiffs' demand for the following additional reasons:

*First*, Plaintiffs' request is invalid on its merits. Plaintiffs ask this Court to set an untenable precedent that parties in one court can reach into the discovery of another, without respect to relevance, privilege, or any other fundamental tailoring required by the Federal Rules of Civil Procedure. For the same reason, Plaintiffs' burden argument fails. Plaintiffs' demand would require HPS to review over 20,000 pages for **responsiveness** and **privilege** in connection with this Action. In particular, because Volumes 5-6 were produced to a bankruptcy Trustee, there are distinct joint privilege issues that require careful consideration. Contrary to Plaintiffs' assertions, HPS need not make any threshold showing before it can fulfill this foundational professional obligation. This review burden is unwarranted, much less seven months after the document production deadline. Plaintiffs' **only** response is to suggest that HPS forgo any review for responsiveness and privilege because Plaintiffs demand it. That is not how discovery works.

---

[5] Over the last two months, Plaintiffs proposed **four** iterations of this letter, each time rife with demonstrable misstatements and untruths that HPS has been forced to correct. For example, in the December 27 version, Plaintiffs declared incorrectly that HPS had produced Volumes 5 and 6 to the AMH Litigation Trustee. That Plaintiffs would make this declaration without any regard for the truth demonstrates the flippant approach they have taken to this process. Plaintiffs' frequent disregard of the facts and blustering misstatements in draft joint letters abuses this discovery process and must end.

[6] For convenience, HPS maintained the HPS-bates prefix and sequential numbering for all Volumes.

[7] Notably, Plaintiffs have been aware of Volumes 5-6 since February 2022 but have remained silent, including at the parties' July 2022 discovery hearing before this Court where the appropriate scope of discovery was addressed. Plaintiffs' motion, seven months after the document production deadline, is both meritless and untimely.

Hon. George C. Hanks, Jr.
January 11, 2023
Page 4 of 5

*Second*, Plaintiffs quote a single clawed-back document, HPS_00073316, to compel wholesale production of over 20,000 pages in Volumes 5 and 6 from an entirely separate action, **without respect to responsiveness in this Action**. HPS_00073316 discusses AMH well modeling years before Plaintiffs' claims arose—it thus has zero relevance to this Action. Indeed, Plaintiffs concede that this **2015** document—and its attachments—are outside the agreed-upon, court-endorsed search parameters (which begins in **2016**); *see also* Pl. Letter (Ex. C), Oct. 26, 2022 (admitting current demands are "outside of the previously negotiated search parameters."). Relatedly, there is no reason that the identity of the separate proceeding, or a copy of that subpoena, could possibly be relevant to Plaintiffs' claims here—and Plaintiffs do not attempt to offer one.

*Finally*, Plaintiffs' motion is predicated on three documents that HPS inadvertently produced and clawed-back under the Protective Order (Dkt. 190). For the past three months, however, Plaintiffs have denied that this Court's Order applies and refuse to acknowledge the claw-back. Remarkably, Plaintiffs now attempt to invoke Paragraph 10—which does **not** authorize Plaintiffs' use of clawed-back documents to leverage production of entire volumes—as *post-hoc* justification for their improper actions. Even today, Plaintiffs fail to certify that they have destroyed, returned, or segregated all other copies of the clawed-back material and remain in breach of this Court's Order and their professional obligations to abide by the same.[8]

HPS respectfully requests that the Court reject Plaintiffs' demand as meritless, order compliance with the Protective Order, and award HPS's fees in defending this motion, the foundation of which is Plaintiffs' obstinate flouting of this Court's Orders.

Respectfully submitted,

/s/ Andrew J. Entwistle
Andrew J. Entwistle
Texas Bar No. 24038131
Attorney-in-Charge
**ENTWISTLE & CAPPUCCI LLP**
500 W. 2nd Street, Suite 1900-16
Austin, TX 78701
(512) 710-5960
aentwistle@entwistle-law.com

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**

/s/ Karl S. Stern
Karl S. Stern
Texas Bar No. 19175665
Federal Bar No. 04870
Attorney-in-Charge
**QUINN, EMANUEL, URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 221-7000
karlstern@quinnemanuel.com

Of Counsel:
Christopher D. Porter
**QUINN, EMANUEL, URQUHART &**

---

[8] *See* Dkt. 190, ¶ 10 (Where "a claim of inadvertent production is made with respect to information then in the custody of another party" Plaintiffs must "promptly sequester, destroy, or return the information to the Producing Party.").

Hon. George C. Hanks, Jr.
January 11, 2023
Page 5 of 5

230 Park Avenue, 3rd Floor
New York, NY 10169
(212) 894-7200
jporter@entwistle-law.com
bbrodeur@entwistle-law.com
asher@entwistle-law.com

*Court-Appointed Co-Lead Counsel*

*/s/ Trig Smith*
Trig Smith (*pro hac vice*)
Sean McGuire (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
TrigS@rgrdlaw.com
SMcGuire@rgrdlaw.com

*Court-Appointed Co-Lead Counsel*

SULLIVAN, LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 221-7000
chrisporter@quinnemanuel.com

Michael B. Carlinsky (pro hac vice)
Jacob J. Waldman (pro hac vice)
Courtney C. Whang (pro hac vice)
**QUINN, EMANUEL, URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
courtneywhang@quinnemanuel.com

*Counsel for HPS Investment Partners and Donald Dimitrievich*