# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | CASE NO. 4:19-CV-00957 (CONSOLIDATED) JUDGE GEORGE C. HANKS, JR. THIS DOCUMENT RELATES TO: CASE NO. 4:22-CV-01189 CASE NO. 4:22-CV-02590 |

---

## THE ALYESKA AND ORBIS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

---

## <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF AUTHORITIES ........................................................................................ iii

NATURE AND STAGE OF THE PROCEEDING ......................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 1

STATEMENT OF ISSUES TO BE RULED UPON ..................................................... 5

BACKGROUND ....................................................................................................... 6

ARGUMENT ............................................................................................................ 8

    I.      Plaintiffs' Section 14(a) Claims Are Timely ..................................... 8

    II.     Plaintiffs' Section 18 Claims Are Timely. ....................................... 11

    III.    SLUSA Does Not Bar Plaintiffs' State-Law Claims ......................... 14

    IV.    The Orbis Plaintiffs' Texas Law "Holder" Claims Are Cognizable.................. 18

    V.     Plaintiffs Adequately Plead Section 10(b) and 20(a) Claims Against Defendants Dimitrievich and McMullen ........................................... 19

    VI.   Plaintiffs Adequately Plead Section 20(a) Claims Against Defendants HPS, Bayou City, and ARM Energy ................................................. 23

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*American Pipe & Construction Co. v. Utah,*
  414 U.S. 538 (1974) ...................................................................passim

*Blaz v. Belfer,*
  368 F.3d 501 (5th Cir. 2004)................................................3, 5, 12

*Bohnsack v. Varco, L.P.,*
  668 F.3d 262 (5th Cir. 2012)............................................................19

*Broadway Gate Master Fund, Ltd. v. Ocwen Financial Corp.,*
  2016 WL 9413421 (S.D. Fla. June 29, 2016) ................................13

*Brown v. Brewer,*
  2008 WL 6170885 (C.D. Cal. July 14, 2008) ................................11

*California Public Employees' Retirement System v. ANZ Securities, Inc.,*
  137 S. Ct. 2042 (2017) ...............................................................5, 13

*Camelot Event Driven Fund v. Alta Mesa Resources, Inc.,*
  2021 WL 1416025 (S.D. Tex. Apr. 14, 2021) .........................passim

*Crown, Cork & Seal Co. v. Parker,*
  462 U.S. 345 (1983) ....................................................................5, 13

*Dekalb County Pension Fund v. Transocean Ltd.,*
  817 F.3d 393 (2d Cir. 2016)....................................................5, 12, 14

*Edwards v. McDermott International, Inc.,*
  2021 WL 1421609 (S.D. Tex. Apr. 13, 2021) ................................23

*Engel v. Sexton,*
  2009 WL 361108 (E.D. La. Feb. 11, 2009) ...............................9, 10

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976) ..........................................................................12

*Goldstein v. MCI WorldCom,*
  340 F.3d 238 (5th Cir. 2003)............................................................23

*Grant Thornton LLP v. Prospect High Income Fund,*
  314 S.W.3d 913 (Tex. 2010)...................................................5, 18, 19

*Griffin v. Oceanic Contractors, Inc.,*
  458 U.S. 564 (1982) ..........................................................................15

*Houser v. LTD Financial Services LP*,
    512 F. Supp. 3d 746 (S.D. Tex. 2021) ........................................................................ 21

*In re Affiliated Computer Services Derivative Litigation*,
    540 F. Supp. 2d 695 (N.D. Tex. 2007) ....................................................................... 10

*In re Cobalt International Energy, Inc.*,
    2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ............................................................... 25

*In re Enron Corp. Securities*,
    465 F. Supp. 2d 687 (S.D. Tex. 2006) ....................................................................... 10

*In re Firstenergy Corp.*,
    2022 WL 681320 (S.D. Ohio Mar. 7, 2022) .............................................................. 22

*La Fontaine v. Vollucci*,
    2011 WL 13217558 (C.D. Cal. Mar. 31, 2011) ......................................................... 11

*Lord Abbett Investment Trust-Lord Abbett Short Duration Income Fund v. Valeant*
    *Pharmaceuticals International, Inc.*,
    2018 WL 3637514 (D.N.J. July 31, 2018) ................................................................ 12

*Margolies v. Deason*,
    464 F.3d 547 (5th Cir. 2006) .......................................................................... 3, 5, 9, 10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ................................................................................................. 15, 16

*Musick, Peeler & Garrett v. Employers Insurances of Wausau*,
    508 U.S. 286 (1993) ................................................................................................... 12

*MYL Litigation Recovery I LLC v. Mylan N.V.*,
    2020 WL 1503673 (S.D.N.Y. Mar. 30, 2020) .......................................................... 5, 13

*Neiman v. Bulmahn*,
    854 F.3d 741 (5th Cir. 2017) ...................................................................................... 22

*Newby v. Enron Corp.*,
    338 F.3d 467 (5th Cir. 2003) ................................................................................. 16, 17

*Pedroli v. Bartek*,
    564 F. Supp. 2d 683 (E.D. Tex. 2008) ....................................................................... 10

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................... 17

*Steele v. Certalogic, Inc.*,
    2007 WL 9710216 (W.D. Tex. Oct. 9, 2007) ............................................................ 10

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
   2020 WL 564222 (N.D. Ill. Feb. 5, 2020) ..................................................... 12

*Zaragoza v. Union Pacific Railroad Co.*,
   2022 WL 2145556 (W.D. Tex. June 10, 2022).............................................. 14

**STATUTES**

15 U.S.C. § 78bb .............................................................................................. 15

15 U.S.C. § 78r ............................................................................................ 11, 12

28 U.S.C. § 1658 .....................................................................................passim

H.R. Rep. No. 105-640 (1998) ........................................................................ 17

S. Rep. No. 105-182 (1998)............................................................................. 17

## NATURE AND STAGE OF THE PROCEEDING

The Alyeska Plaintiffs filed their complaint on April 11, 2022, and the Orbis Plaintiffs filed their complaint on August 3, 2022.[1] The Alyeska and Orbis Plaintiffs file this brief in opposition to (i) Defendants' Motion to Dismiss (ECF No. 265) ("Defs. Br."); (ii) the Motion of Donald Dimitrievich to Dismiss Plaintiffs' Complaint and Incorporated Memorandum of Law (ECF No. 264) ("Dimitrievich Br."); (iii) William McMullen's Motion to Dismiss Plaintiffs' Claims Against William McMullen (ECF No. 266) ("McMullen Br."); and (iv) the Joint Motion of HPS Investment Partners, LLC, Bayou City Energy Management, LLC, and ARM Energy Holdings LLC to Dismiss Plaintiffs' Section 20(a) Claims and Incorporated Memorandum of Law (ECF No. 263) ("HPS Br.") (together, the "Motions").[2]

## SUMMARY OF ARGUMENT

Alta Mesa was a public company formed by the February 2018 merger (the "Merger") between a blank-check special purpose acquisition company ("SPAC"), Silver Run Acquisition Corporation II ("Silver Run"), and two private companies operating in the

---

[1] The Alyeska Plaintiffs are:  Alyeska Master Fund, L.P., Alyeska Master Fund 2, L.P., and Alyeska Master Fund 3, L.P.  The Orbis Plaintiffs are:  Orbis Global Equity LE Fund (Australia Registered), Orbis Global Equity Fund (Australia Registered), Orbis Global Balanced Fund (Australia Registered), Orbis SICAV, Orbis Institutional Global Equity L.P., Orbis Global Equity Fund Limited, Orbis Institutional Funds Limited, Allan Gray Australia Balanced Fund, Orbis OEIC, and Orbis Institutional U.S. Equity L.P.

[2] The Defendants are Alta Mesa Resources, Inc. ("Alta Mesa"), James T. Hackett, Thomas J. Walker, William Gutermuth, Jeffrey H. Tepper, Diana J. Walters, Stephen Coats, Harlan H. Chappelle, Michael E. Ellis, Ronald Smith, David M. Leuschen, Pierre F. Lapeyre, Jr., William W. McMullen, Don Dimitrievich, Donald Sinclair, Riverstone Holdings LLC ("Riverstone"), Bayou City Energy Management, LLC ("Bayou City"), HPS Investment Partners, LLC ("HPS"), and ARM Energy Holdings LLC ("ARM Energy").

1

STACK region in Oklahoma, Alta Mesa Holdings ("AMH"), an upstream driller, and Kingfisher Midstream LLC ("Kingfisher"), a midstream oil-and-gas company.[3]  Only a year later, in February 2019, Alta Mesa took a $3.1 billion write-down, wiping out nearly the entire value of the Merger.  By September 2019—less than eighteen months after the Merger—Alta Mesa was bankrupt.

Courts, commentators, and the SEC have rightly warned about abusive practices involving SPACs that defraud public investors while enriching company insiders and promoters.  Defendants' conduct is a paradigmatic example of this injurious conduct.  From the Merger's announcement through Alta Mesa's abrupt demise as a public company, Defendants undertook a continuous, intentional campaign of materially false and misleading statements designed to deceive public investors—including the Alyeska and Orbis Plaintiffs—about Alta Mesa's oil reserves, growth prospects, and internal controls.

Based on well-pled allegations detailing this conduct, this Court denied *in toto* Defendants' *eight* separate motions to dismiss the Class Action Complaint (ECF No. 69), holding that "the circumstances surrounding" Alta Mesa's "financial reporting . . . are alone enough to entitle Plaintiffs to discovery."  *Alta Mesa*, 2021 WL 1416025, at *11.  In so doing, the Court upheld in full claims against *all Defendants* under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  *Id.* at *11-12.  In these actions, the Alyeska and Orbis Plaintiffs have exercised their constitutional rights to

---

[3] As this Court has noted, the "STACK is an acronym that stands for Sooner Trend (oil field) Anadarko (Basin) Canadian and Kingfisher (counties)."  *Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, 2021 WL 1416025, at *2 (S.D. Tex. Apr. 14, 2021).  Unless stated otherwise, all emphasis is added, and all internal citation and quotations are omitted.

bring individual claims against Defendants, outside the Class Action, based on the same nucleus of operative facts alleged in the Class Actions and challenging many of the same statements, plus additional substantively similar statements, including some made *directly* by Defendants to the Orbis Plaintiffs.  The Alyeska and Orbis Plaintiffs assert claims under Sections 10(b), 14(a), 18, and 20(a) of the Exchange Act, as well as Texas state common law and statutory claims.

The Motions here do not challenge the core of Plaintiffs' claims alleging violations of Section 10(b) and 20(a) of the Exchange Act.  Accordingly, these claims will proceed into discovery no matter the outcome of this motion.  Indeed, substantial fact discovery in is already underway; Plaintiffs have received the documents that Defendants produced in the Class Action and are participating in ongoing depositions.

Defendants nevertheless challenge small portions of Plaintiffs' Complaints, arguing that the Section 14 and 18 claims are untimely and the state-law claims are precluded by the Securities Litigation Uniform Standards Act ("SLUSA").  The Court should reject those arguments.  Under 28 U.S.C. § 1658(b), Plaintiffs' Section 14 and 18 claims have a five-year statute of repose, and there is no dispute that Plaintiffs' Complaints were filed within that period.  *See Margolies v. Deason*, 464 F.3d 547, 550 (5th Cir. 2006); *Blaz v. Belfer*, 368 F.3d 501, 504 (5th Cir. 2004).  In addition, the filing of the Class Action tolled the statute of limitations for Plaintiffs' Section 18 claims, because those claims arise out of the same nucleus of operative facts that underpin the Section 10(b) claims in the Class Action. Accordingly, Defendants were clearly on notice of those claims, and class-action tolling

under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), applies. Nor does SLUSA bar Plaintiffs' state-law claims.

A handful of the nineteen Defendants—Dimitrievich, McMullen, HPS, Bayou City, and ARM Energy (together, the "Reconsideration Defendants")—go farther, also seeking dismissal of the Section 10(b) or 20(a) claims against them. But this Court already rejected the Reconsideration Defendants' arguments for their dismissal in its decision sustaining the Class Action Complaint in full. *See Alta Mesa*, 2021 WL 1416025, at *11-12. Thus, these defendants essentially seek untimely reconsideration of that well-reasoned decision. Tellingly, the Reconsideration Defendants do not even mention the Court's prior decision, let alone explain why it was wrong, or why the Court should reconsider it on these Motions. The Court's prior decision did not overlook any controlling facts or law, was rightly decided, and there is no legal reason for this Court to reconsider it. Nor is there any practical reason to do so. The gate-keeping function of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") has already been satisfied and discovery has already begun. *See Alta Mesa*, 2021 WL 1416025, at *12 ("Having considered Plaintiffs' allegations, the judicially noticeable SEC filings, and the applicable law, the Court cannot conclude that this lawsuit is an impermissible 'strike suit.'"). The shop-worn arguments of the Reconsideration Defendants that the claims against them are deficient are better left for summary judgment in these actions, as they are in the Class Action. This Court should not expend its limited judicial resources on an untimely reconsideration motion, especially where the prior decision was correct and the claims against the Reconsideration Defendants in the Class Action will continue, regardless of any decision on these Motions.

In sum, this Court should deny the Motions in their entirety.

## STATEMENT OF ISSUES TO BE RULED UPON

1. Are Plaintiffs' Section 14(a) claims timely where they are based on allegations of fraud, and not merely negligence, given that 28 U.S.C. § 1658(b) provides for a five-year repose period for a "private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws"? *Margolies*, 464 F.3d at 550.

2. Are Plaintiffs' Section 18 claims timely under the five-year repose period provided by 28 U.S.C. 1658(b)? *Blaz*, 368 F.3d at 504; *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 & n.83 (2d Cir. 2016) ("join[ing] the Fifth Circuit in concluding that . . . Section 18(a) is governed by § 1658(b)," citing *Blaz*).

3. Are Plaintiffs' Section 18 claims timely under the two-year statute of limitations period provided by 28 U.S.C. § 1658(b), and *American Pipe* tolling, where the Section 10(b) claims asserted in the Class Action put Defendants on notice of potential Section 18 claims, which arose from the same nucleus of operative fact and the same factual evidence as those Section 10(b) claims? *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354-55 (1983) (Powell, J., concurring); *MYL Litig. Recovery I LLC v. Mylan N.V.*, 2020 WL 1503673, at *8 (S.D.N.Y. Mar. 30, 2020).

4. Should Plaintiffs' state-law claims be dismissed as precluded by SLUSA, where Plaintiffs have exercised their constitutional right to bring individual direct claims outside the Class Action, these actions are in federal, not state, court, and Plaintiffs have not attempted to avoid the PSLRA's pleading requirements?

5. Should the Orbis Plaintiffs' state-law "holder" claims be dismissed, despite allegations that Defendants made direct misrepresentations to them, where the Texas Supreme Court stated in *Grant Thornton LLP v. Prospect High Income Fund*, that holder claims involving "a direct communication between the plaintiff and the defendant" may be actionable? 314 S.W.3d 913, 930 (Tex. 2010)

6. Should the Court deny Defendants Dimitrievich's and McMullen's attempt to relitigate the Court's Class Action Motion to Dismiss decision by once again attacking the sufficiency of Section 10(b) and 20(a) claims, despite this Court previously rejecting those arguments, where those defendants do not explain why that decision should be reconsidered? *Alta Mesa*, 2021 WL 1416025, at *11-12.

7. Should the Court deny the attempt by Defendants HPS, Bayou City, and ARM Energy to relitigate the Court's Class Action Motion to Dismiss decision by once again attacking the sufficiency of Section 20(a) claims, despite this Court previously rejecting those arguments, where those defendants do not explain why that decision should be reconsidered? *Id.* at *12.

## BACKGROUND

This Court has already painstakingly recounted the central factual background underlying these actions in its comprehensive decision denying Defendants' motions to dismiss in the Class Action. *See id.* at *1-8. Plaintiffs summarize those facts below.

These securities fraud, common law, and Texas statutory actions all arise from the same sustained and intentional abuse by Defendants of the corporate acquisition procedure known as a SPAC—in which a so-called "blank-check" company conducts an initial public offering and then merges with an operating company that becomes publicly traded—in order to mislead public investors, including the Alyeska and Orbis Plaintiffs, and perpetrate Defendants' fraud.

Private equity company Riverstone created a SPAC, Silver Run, that went public in March 2017 and sought to merge with a private energy company. On August 17, 2018, Silver Run announced that it would merge with AMH, an oil and gas producer that concentrated on drilling in the STACK area of Oklahoma, and Kingfisher, a midstream company operating in the STACK that was intertwined with AMH, its biggest customer.

From the announcement of the Merger and continuing well after the Merger was consummated and Alta Mesa began trading as a public company, Defendants engaged in a continuous, intentional campaign of materially false and misleading statements designed to deceive public investors, including the Alyeska and Orbis Plaintiffs. These included

6

statements, which were materially false and misleading when made, about, among other things:  (i) AMH's oil reserves; (ii) projected 2018 and 2019 earnings for AMH and Kingfisher; (iii) Alta Mesa's ability to sustain growth; (iv) Alta Mesa's undisclosed strategic decisions to prioritize temporary oil production gains at the expense of long-term production viability; and (v) the adequacy and effectiveness of Alta Mesa's internal controls over financial reporting.

Unbeknownst to the investing public, including the Alyeska and Orbis Plaintiffs, at the time Defendants made these statements, they knew but intentionally did not disclose that:  (i) the production results from AMH's drilling through 2017 did not and could not support the projections it made to investors; (ii) as a result, and also because Kingfisher had essentially been looting AMH through unfair related-party transactions, Kingfisher's projections made to investors were similarly unachievable; (iii) AMH and Alta Mesa's drilling strategy and techniques, including drilling too many wells per pad, drilling wells too close together, and using S-shaped wellbores, rendered the production projections knowingly false when made; and (iv) Alta Mesa had material weaknesses in its internal controls over financial reporting.

Defendants' lies quickly caught up with Alta Mesa.  In February 2019—just one year after Silver Run merged with AMH and Kingfisher—Alta Mesa was required to take a staggering $3.1 billion write-down on its assets.  Alta Mesa then quickly filed for Chapter 11 bankruptcy protection on September 11, 2019.  Thus, within two years of the merger, Alta Mesa had gone belly up and lost its entire equity value, and its common stock had

fallen over 99%.  Those stock price decreases inflicted millions of dollars of damages on the Alyeska and Orbis Plaintiffs.

Defendants' conduct was knowing and intentional.  Defendants were highly motivated to make any statements—even materially false and misleading statements—that would encourage Silver Run shareholders to vote for the acquisition of AMH and Kingfisher.  As a blank-check SPAC, if Silver Run did not merge with an operating company within two years of its March 2017 initial public offering, it would be forced to repurchase all of the Silver Run shares from public investors and Riverstone would lose its entire investment.  Likewise, Bayou City, HPS, and ARM had enormous financial incentives to lie to investors about the prospects of AMH and Kingfisher because those entities stood to profit to the tune of more than $1 billion if the merger were successful. Those entities also were in line to profit from a planned spinoff of Kingfisher as a separate, publicly traded midstream oil and gas company.

## **ARGUMENT**

### I.   **Plaintiffs' Section 14(a) Claims Are Timely**

Defendants argue that Plaintiffs' Section 14(a) claim (and the Section 20(a) "control person" claim based on it) are untimely because those claims are subject to a three-year statute of repose.  (Defs. Br. at 7-8.)  But 28 U.S.C. § 1658(b)—passed as part of the Sarbanes-Oxley Act—extended the repose period to five years for any "private right of action that *involves a claim* of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws."  Here, Plaintiffs' Section 14(a)

claims "allege and involve fraud. Accordingly, Section 1658 applies to these claims." *Engel v. Sexton*, 2009 WL 361108, at *15 (E.D. La. Feb. 11, 2009).

As this Court has noted, "Plaintiffs in Section 14(a) actions are not required to comply with the PSLRA's scienter pleading requirement." *Alta Mesa*, 2021 WL 1416025, at *10. But Plaintiffs are the masters of their own pleadings, and here they have chosen not to plead a Section 14(a) claim based on mere negligence. Rather, Plaintiffs' claims "allege and involve fraud." *Engel*, 2009 WL 361108, at *15. Plaintiffs' Section 14(a) claims allege that Defendants "acted intentionally and with scienter"—"not negligently"— with respect to the Merger proxy disclosures. (Alyeska Compl. ¶¶ 352, 355; Orbis Compl. ¶¶ 427, 430) Plaintiffs' allegations in stating their Section 14(a) claims are thus entirely different from those in the Class Action which "expressly disavow[ed] and disclaim[ed] any allegations of fraud, scheme or intentional conduct," and alleged that Defendants acted only "negligent[ly]" as to the Merger Proxy. (ECF No. 69 ¶¶ 363, 365, 370 (Section 14 claim "based solely on negligence"); *see also* ECF No. 126 at 18-19.)

In *Margolies*, the plaintiffs alleged that defendants violated Sections 11 and 12 of the Securities Act of 1933 (the first cause of action), as well as Section 10(b) of the Exchange Act (the second cause of action). 464 F.3d at 550. Before reaching the issue of whether § 1658(b) was retroactive, the Fifth Circuit stated that "[t]he district court correctly found that the claims in the first and second causes of action involved fraud such that they were the type of claims that fall within the confines of this statute," *i.e.*, § 1658(b). *Id.* Thus, although Section 11 and 12 claims do not *require proof* of scienter, the applicability of § 1658(b) turns on the conduct *alleged*. The Fifth Circuit in *Margolies* addressed

Section 1658, because, as pled by the plaintiffs in that case, those claims were grounded in fraud.  The same is true here:  although Section 14 claims may be satisfied with proof of negligence in some circumstances, Plaintiffs here have alleged Section 14 claims that are based on "fraud, deceit, manipulation, or contrivance" that violated that provision of the securities laws.  Under the plain statutory language of § 1658(b), such claims are subject to the five-year statute of repose.  Plainly the statutory intent was to provide victims of fraudulent misconduct—which involves deceit and is more difficult to ferret out—a longer period of time in which to bring their claims.

District courts within the Fifth Circuit have followed the approach set forth in *Margolies*.[4]  For example, in *Steele v. Certalogic, Inc.*, the court held that although Section 11 claims require only proof of negligence, because plaintiff's Section 11 claim was alleged in a way that "sound[ed] in fraud," it was "subject to Sarbanes-Oxley's amended statute of limitations, which governs any 'private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws.'"  2007 WL 9710216, at *2 n.2 (W.D. Tex. Oct. 9, 2007) (quoting 28 U.S.C. § 1658(b)); *see Engel*, 2009 WL 361108, at *15; *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 711 (S.D. Tex. 2006) ("the new Sarbanes-Oxley statute of limitations does not apply to *non-fraud-based* actions under § 11 and 12(a)(2) of

---

[4] Defendants cite *In re Affiliated Computer Services Derivative Litigation* (Defs. Br. at 7), but that decision relied on a Third Circuit decision in concluding that § 1658(b) did not apply to Section 14 claims, and did not address the Fifth Circuit's decision in *Margolies*. 540 F. Supp. 2d 695, 703 (N.D. Tex. 2007).  The same is true of *Pedroli v. Bartek*, on which Defendants also rely (Defs. Br. at 8).  564 F. Supp. 2d 683, 686-87 (E.D. Tex. 2008).

10

the 1933 Act"); *see also Brown v. Brewer*, 2008 WL 6170885, at *1 (C.D. Cal. July 14, 2008) ("a 14(a) claim sounding in fraud may be entitled to an extended statute of limitations period of the earlier of two years from discovery or five years from the violation").  This approach makes sense and is consistent with the plain language of Section 1658(b), which references "a private right of action that *involves a claim* of fraud."  As one court noted, "[i]t is Congress that chose the indeterminate description 'claim of fraud, deceit, manipulation, or contrivance' . . . when it could have quite easily indicated that the statute related only to a 'claim *involving a required element* of fraud, deceit, manipulation, or contrivance' . . . ." *La Fontaine v. Vollucci*, 2011 WL 13217558, at *4 (C.D. Cal. Mar. 31, 2011) (emphasis in original).

Plaintiffs' Section 14(a) claims are timely within the five-year statute of repose provided by Section 1658(b).  The Merger proxy was filed on January 19, 2018, and Plaintiffs' Complaints were filed within five years of that date.

## II. Plaintiffs' Section 18 Claims Are Timely.

Defendants argue that Plaintiffs' Section 18 claims are time-barred.  (Defs. Br. at 9.)  First, Defendants contend that Section 18 has a three-year repose period, which expired before Plaintiffs filed suit.  (Defs. Br. at 9-11.)  Second, Defendants posit that Section 18 has a one-year limitations period, which expired before Plaintiffs filed suit.  (Defs. Br. at 11-12.)  Both arguments are wrong.

As Defendants begrudgingly acknowledge in a footnote (Defs. Br. at 9 n.4), the Fifth Circuit has stated that the three-year statute of repose contained in Section 18 itself, 15 U.S.C. § 78r(c), was "extended to five years after the conduct accrues" "[p]ursuant to

11

the Sarbanes-Oxley Act . . . 28 U.S.C. § 1658(b)."[5] *Blaz*, 368 F.3d at 504; *see also Dekalb*, 817 F.3d at 407 & n.83 ("join[ing] the Fifth Circuit in concluding that . . . Section 18(a) is governed by § 1658(b)," citing *Blaz*); *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 WL 564222, at *4 (N.D. Ill. Feb. 5, 2020) (§ 1658(b) "applies to the plaintiffs' section 18 claims"); *Lord Abbett Inv. Trust-Lord Abbett Short Duration Income Fund v. Valeant Pharms. Int'l, Inc.*, 2018 WL 3637514, at *8 (D.N.J. July 31, 2018) ("SOX applies to Section 18"). This makes sense. As the Second Circuit concluded, "[a] plaintiff asserting a Section 18(a) claim is, in essence, asserting a fraud claim—a fraud claim with respect to which the defendant, and not the plaintiff, uncharacteristically bears the burden of proof regarding the defendant's state of mind, but a fraud claim no less." *Dekalb*, 817 F.3d at 507. Indeed, the Supreme Court has described Section 18 as "contain[ing] a state-of-mind condition requiring something more than negligence" and those claims as involving "defendants who have violated the securities laws with scienter." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 209 n.28 (1976); *Musick, Peeler & Garrett v. Emps. Ins. of Wausau*, 508 U.S. 286, 296 (1993). Section 18 is clearly "a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities law," thus it is subject to a five-year statute of repose.

---

[5] Section 18 provides: "Any person who shall make or cause to be made any statement . . ., *which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact*, shall be liable to any person . . . who, *in reliance upon such statement*, shall have purchased or sold a security at a price which was affected by such statement . . . ." 15 U.S.C. § 78r.

Defendants also argue that the filing of the Class Action Complaint did not toll the statute of limitations for Plaintiffs' Section 18 claims under the *American Pipe* class-action tolling doctrine because the Class Action Complaint did not assert a Section 18 claim. However, the Class Action Complaint that was filed on behalf of injured Alta Mesa investors clearly put Defendants on notice "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *ANZ Sec.*, 137 S. Ct. at 2051.  Defendants concede that *American Pipe* tolling applies where subsequent claims "concern the same evidence, memories, and witnesses as the subject matter of the original class suit."  (Defs. Br. at 11 (citing *Crown, Cork & Seal Co.*, 462 U.S. at 355 (Powell, J., concurring)).)  Thus, the filing of the Class Action here tolled the running of the statute of limitations for individual class members, such as Plaintiffs, who subsequently file a Section 18 claim based on the same core of operative factual allegations.  *See, e.g.*, *MYL Litig. Recovery I LLC v. Mylan N.V.*, 2020 WL 1503673, at *8 (S.D.N.Y. Mar. 30, 2020) ("Because there is no dispute that [the] Section 18 claims rest on the same facts on which the Class Action rests [the] Section 18 claims are not time barred."); *Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, 2016 WL 9413421, at *10 (S.D. Fla. June 29, 2016) (Section 10(b) claims in class action "put [defendants] on notice of the substance of the Section 18 claims . . . asserted against them" in subsequent action).

Defendants argue that because "the requisite state of mind and reliance" differs in a Section 18 claim from a Section 10(b) claim, that *American Pipe* tolling is unavailable. (Defs. Br. at 11-12.)  But, if anything, Section 10(b) claims require a *higher* level of proof

13

with respect to state of mind.  Thus, if Defendants were on notice to defend against a greater level of scienter, they cannot be prejudiced in defending against a lower level of scienter. The fact that Section 18 provides Defendants with an affirmative good-faith defense makes it easier to defend and does not change that, like Section 10(b), it is "in essence, . . . a fraud claim."  *Dekalb*, 817 F.3d at 407.  Defendants will be liable only if they failed to act in good faith (*i.e.*, acted in bad faith).  Similarly, whether reliance can be presumed (as in Section 10(b)) or proven (as in Section 18) does not change the fact that reliance is an element of both claims.  Indeed, Section 18 requires that a plaintiff prove actual reliance— a higher burden of proof that is solely the plaintiff's burden and is therefore an easier claim for Defendants to defend.  Moreover, these differences in legal standards say nothing about the facts (*i.e.*, the "evidence, memories, and witnesses") that underlie Plaintiffs' Section 18 claims.  *See Zaragoza v. Union Pac. R.R. Co.*, 2022 WL 2145556, at *5 (W.D. Tex. June 10, 2022) ("complete identity of claims is not necessary" for *American Pipe* tolling). Defendants concede that Plaintiffs "assert securities law claims based largely the same alleged statements based upon the same conduct," as in the Class Action (Defs. Br. at 14), and that discovery in these actions "will involve essentially the same documents and topics" as in the Class Action and "the Plaintiffs in each action intend to depose largely the same individuals" (Defs. Br. at 16 n.8).

## III.   SLUSA Does Not Bar Plaintiffs' State-Law Claims

Defendants erroneously argue that SLUSA bars Plaintiffs' common law fraud claims.  (Defs. Br. at 12-16.)  But SLUSA was passed to prevent class action claims alleging fraud in connection with the purchase of a securities from being asserted in state

courts on the basis of state common law claims.[6]  Congress did not pass SLUSA to preclude *individual* actions—which by definition are not class actions—that assert federal and state law claims in federal court.

"SLUSA does not actually pre-empt any state cause of action," but rather "simply denies plaintiffs the right to use the class action device to vindicate certain claims." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006).  These actions are not a class action.  Rather, they are individual actions prosecuted by plaintiffs who have exercised their constitutional right to exclude themselves from the Class Action and bring direct claims in federal court under both federal and state law, all of which are governed by federal pleading standards.  Defendants acknowledge that "unless the Individual Plaintiffs affirmatively opt out of the Class Action, they will be class members."  (Defs. Br. at 14.)  To apply SLUSA to this action would contravene the statute's clear legislative history.  Where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, . . . those intentions must be controlling." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982).

The PSLRA targeted "perceived abuses of the class-action vehicle" in securities litigation, *Dabit*, 547 U.S. at 81, "including shareholder strike suits and other meritless

---

[6] SLUSA provides that "[n]o covered ***class action*** based upon [state] law . . . may be maintained . . . alleging [a securities claim] in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A).  A "covered class action" includes "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." *Id.* § 78bb(f)(5)(B)(ii).

lawsuits," *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003).   Among other measures, the PSLRA "impose[d] heightened pleading requirements" for Section 10(b) claims.  *Dabit*, 547 U.S. at 81.  But in response to the PSLRA, some plaintiffs attempted "to avoid the federal forum altogether" by filing "class actions under state law, often in state court."  *Id.* at 82; *see Newby*, 338 F.3d at 471 (PSLRA "safeguards did not have the desired effect").  "[F]ollowing the passage of the PSLRA, the number of securities lawsuits filed in state courts increased substantially."  *Newby*, 338 F.3d at 471.  Congress sought to remedy the end-run around the PSLRA by passing SLUSA, which was intended "to prevent certain State private securities *class action* lawsuits alleging fraud from being used to frustrate the objectives" of the PSLRA.  *Dabit*, 547 U.S. at 86.  SLUSA sought "to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than Federal, court."  *Newby*, 338 F.3d at 471; *see id.* at 472 ("[T]he PSLRA and SLUSA were enacted to combat abuses in *class action* securities cases, in particular those caused by the filing of *class actions* in state court.").

Because Congress was concerned with class action lawsuits filed in state court to evade the heightened pleading requirements of the PSLRA, SLUSA included a removal provision to ensure that securities class actions would proceed under federal, rather than state, law.  But Congress understood that it would not be enough to cover only actions formally denominated as class actions.  To prevent counsel from creating *de facto* classes by simply bringing a spate of separate individual actions in the same court, SLUSA included a definition of "covered class actions" that contained certain "limitations" on

"mass actions" that attempted to evade the Act.  As the legislative history explains, the definition of "covered class action" was:

> Intended to prevent evasion of the bill through the use of so-called "mass actions."  These kinds of actions are now brought in product liability, environmental tort and similar cases.  In practice, such suits may function very much like traditional class actions and, because they involve many plaintiffs, they may have a very high settlement value.  They accordingly may be abused by lawyers who seek to evade the provisions of this Act in order bring coercive strike suits.

S. Rep. No. 105-182, at 7 (1998).  SLUSA's drafters also explained that it was not meant to prevent plaintiffs from bringing "bona fide individual actions simply because more than fifty persons commence the actions in the same state court against a single defendant." *Id.* Another goal was to "prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court." H.R. Rep. No. 105-640, at 8-9 (1998).  Thus, precluding Plaintiffs from bringing state common law fraud claims would be entirely inconsistent with SLUSA's purpose.[7]

"[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class . . . ." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Applying SLUSA to effectively strip a party of its ability to exclude

---

[7] Although *Newby* recognized that "[s]imply because the PSLRA and SLUSA were enacted to combat abuses in class action securities cases, does not mean that the remedy Congress chose to curb these abuses would not affect non-class action cases," 338 F.3d at 472, in that case, the issue was a discovery stay of a *state-court* lawsuit—*i.e.*, one filed in a forum that was not subject to federal pleading standards.  Plaintiffs' claims here are markedly different:  direct, opt-out actions filed in federal court, bringing state claims alongside federal claims.  Nor are Plaintiffs attempting to evade the requirements of the PSLRA.  Their federal securities laws claims will be subjected to the heightened pleading requirements of the PSLRA.  As *Newby* recognized, "in enacting SLUSA Congress sought to curb all efforts to circumvent the reforms put into place by PSLRA." *Id.*

17

itself from a class and pursue its own state-law claims, simply because a separate class action is pending in the same federal court, makes no sense, is unfair and is not the evil Congress sought to address.

## IV.   The Orbis Plaintiffs' Texas Law "Holder" Claims Are Cognizable

Defendants argue that the Orbis Plaintiffs' claims in Counts VI and VII for common-law fraud should be dismissed to the extent those claims are premised on "the theory that the alleged misrepresentations induced" the Orbis Plaintiffs "to *retain* (rather than purchase or sell)" Alta Mesa stock.  (Defs. Br. at 16-17 (emphasis in original).)  As Defendants acknowledge, in *Grant Thornton LLP v. Prospect High Income Fund*, the Texas Supreme Court held that "holder claims, to the extent they are viable, must involve a direct communication between the plaintiff and the defendant."  314 S.W.3d 913, 930 (Tex. 2010).  Defendants implicitly acknowledge—as they must—that Orbis has pled that Defendants made direct, materially false and misleading representations to Orbis.  (*See* Defs. Br. at 17 n.9; Orbis Compl. ¶¶ 271-314 (alleging numerous materially false and misleading statements repeatedly made by Defendants directly to Orbis).)

Defendants argue that this Court "should not create a new 'holder' cause of action under Texas law," relying on "the weight of other authority and reasoning against holder claims."  (Defs. Br. at 18-19.)  But this court is duty-bound to determine what the Texas Supreme Court would hold, and that court has already spoken.  Defendants' concerns that holder claims are too speculative was specifically addressed in *Grant Thornton*, where the Texas Supreme Court explained that where, as here, a plaintiff alleges direct communications with defendants, "[t]hose claims are less like holder claims and more like

18

[an] 'ordinary case of deceit.'"   314 S.W.3d at 930.   Indeed, in these circumstances, a holder claim is nothing more than a simple common law fraud claim based on the well-settled principle of proximate cause: "[s]tatements that induce a plaintiff to refrain from acting are . . . actionable" as fraud under Texas law.  *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 274 (5th Cir. 2012); *see Grant Thornton*, 314 S.W.3d at 928.

*Grant Thornton* already ruled that holder claims could be viable under Texas law where, as here, direct communications are alleged.  Thus, this Court is duty-bound to follow it and should not rule on the pleadings that those claims are unavailable as a matter of Texas law.  Instead, this Court should permit the Orbis Plaintiffs to obtain discovery on their holder claims and revisit the issue, if appropriate, on summary judgment—especially because discovery is already ongoing and at least Orbis' core Section 10(b) claims will proceed past the pleadings.  Indeed, Defendants have already previewed that they will challenge any holder claim based on the complete factual record—once developed—which may obviate the need for this Court at summary judgment to resolve the legal issue of Texas law holder claims.  (*See* Defs. Br. at 17 n.9.)

## V.   Plaintiffs Adequately Plead Section 10(b) and 20(a) Claims Against Defendants Dimitrievich and McMullen

Defendants Dimitrievich and McMullen argue that Plaintiffs have not adequately alleged that they acted with scienter to support Plaintiffs' Section 10(b) claims against them.[8]  (Dimitrievich Br. at 7-14; McMullen Br. at 5-8.)  But this Court has already rejected

---

[8] McMullen also argues that the Section 10(b) claims against him are barred by the two-year statute of limitations.  (McMullen Br. at 3-5.)  But McMullen was named a defendant in the Consolidated Class Action Complaint on March 16, 2020 (ECF No. 59 ¶ 48), and,

those arguments when it denied the motions to dismiss the Class Action Complaint, which, as Defendants concede, contains substantively identical allegations to Plaintiffs' Complaints. *Alta Mesa*, 2021 WL 1416025, at *12. (*See also* ECF No. 120 (Dimitrievich's prior motion to dismiss); ECF No. 129 (McMullen's prior motion to dismiss).)

Tellingly, neither Dimitrievich nor McMullen even mention this Court's prior decision denying their motions to dismiss the Class Action, even though they are both effectively seeking untimely reconsideration of it. Both Dimitrievich and McMullen signed Alta Mesa's March 29, 2018 10-K. This Court held that the Class Action Plaintiffs "pled facts sufficient to show that the defendants who signed" that 10-K "acted with the requisite severe recklessness under Section 10(b)." *Alta Mesa*, 2021 WL 1416025, at *12. In particular, the Court pointed to (i) Alta Mesa's February 2019 write-down of "over 80% of Alta Mesa's value" only a year after it went public; (ii) the disclosure that "Alta Mesa's accounting firm identified sixteen 'material weaknesses' in Alta Mesa's internal control over financial reporting"; (iii) an SEC investigation of "the write-down and Alta Mesa's accounting practices"; and (iv) allegations that "AMH and Alta Mesa clandestinely used unconventional and unsustainable drilling methods to inflate reserve and earnings estimates both before and after the merger." *Id.* Neither Dimitrievich nor McMullen points to any specific errors, or controlling legal or factual issues that were overlooked. In a word,

---

as Defendants concede, Plaintiffs are members of the putative class asserted in that complaint (Defs. Br. at 14). Accordingly, that complaint suspended the statute of limitations under the *American Pipe* class-action tolling doctrine. Because the Class timely asserted claims against McMullen within two years of the March 29, 2018 10-K, Plaintiffs' claims against McMullen are also timely. (*See* Alyeska Compl. ¶ 322 ; Orbis Compl. ¶ 397 (both alleging class-action tolling).)

they have come forward with nothing that would call into question this Court's previous analysis, and accordingly they should not be permitted to simply rehash arguments that were previously rejected.[9]

In addition to those cited previously by this Court, Plaintiffs' Complaints include additional allegations against Dimitrievich and McMullen that further support scienter. Dimitrievich argues that he did not obtain a "concrete benefit" from his misconduct, and that the fact that HPS profited from the Merger cannot establish his scienter. (Dimitrievich Br. at 13-14.)  But Dimitrievich was a managing director of HPS, which appointed him to the Alta Mesa Board. (Alyeska Compl. ¶¶ 35, 40; Orbis Compl. ¶¶ 44, 49.)  HPS funded the creation of Kingfisher, which was diverting AMH's assets through unfair contracts even before the Merger. (Alyeska Compl. ¶¶ 102-13; Orbis Compl. ¶¶ 109-22.)  Moreover, HPS was highly incentivized to mislead investors to have the Merger approved and Alta Mesa's stock price rise.  HPS received part of $814 million in cash from the Merger, along with a significant interest in Alta Mesa's operating company. (Alyeska Compl. ¶ 286; Orbis Compl. ¶ 355.)  HPS also stood to share in earn-out payments of *up to $1 billion* if Alta Mesa's average trading price hit certain levels. (Alyeska Compl. ¶ 287; Orbis Compl. ¶ 356.).  Such interests clearly qualify as "concrete benefits."

---

[9] In particular, because Dimitrievich and McMullen do not point to any specific differences between Plaintiffs' complaints and the Class Action Complaint that would support revisiting this Court's prior decision denying Defendants' motions to dismiss the Class Action, they should be barred from raising any such purported differences in their reply briefs. *See, e.g.*, *Houser v. LTD Fin. Servs. LP*, 512 F. Supp. 3d 746, 751 (S.D. Tex. 2021) ("Arguments raised for the first time in a reply brief are waived.").

Similarly, McMullen argues that the Complaints do not plead that he had a "motive to mislead." (McMullen Br. at 6.)  But as McMullen concedes, the Complaints allege that McMullen was the founder and managing partner of Bayou City, which appointed him to Alta Mesa's Board, and that Bayou City was "involved with AMH since at least January 2016, when it entered into a joint development agreement with AMH to fund a portion of AMH's drilling operations." (McMullen Br. at 2.)  Like HPS, Bayou City was highly incentivized to mislead investors to have the Merger approved and Alta Mesa's stock price rise, because it too received cash from the Merger, and also stood to share in substantial earn-out payments if Alta Mesa's shares reached certain prices. (Alyeska Compl. ¶¶ 286-87; Orbis Compl. ¶¶ 355-56.)

Both Dimitrievich and McMullen ignore the specific context of Defendants' fraud: that they were uniquely motivated, on behalf of HPS and Bayou City, respectively, to ensure (i) that the Merger was approved, for HPS and Bayou City to receive hundreds of millions of dollars from that transaction, and (ii) that Alta Mesa's stock price traded at levels that would allow HPS and Bayou City to make up to $1 billion based on the Merger's terms. *See, e.g.*, *In re Firstenergy Corp.*, 2022 WL 681320, at *6 (S.D. Ohio Mar. 7, 2022) ("context matters to Plaintiffs' narrative and is critical to understanding the alleged fraud" where subject of fraud "was a matter of great importance to the Company").  These motivations—which gave Dimitrievich and McMullen financial incentives squarely at odds with public shareholders of Alta Mesa—go far beyond routine corporate capital raising and support scienter.  *See, e.g.*, *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017) (recognizing that in *Goldstein v. MCI WorldCom*, 340 F.3d 238, 242, 250 (5th Cir.

2003), the Fifth Circuit "found that [a] company's need to complete a crucial $129 billion merger . . . gave the company a motive to inflate its financial results" and distinguishing that decision from "routine" capital raising); *Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421609, at *9 (S.D. Tex. Apr. 13, 2021) (finding scienter based, in part, on allegations that individual defendants "stood to, and did, benefit greatly from staving off [a] takeover . . . and closing [a] merger," which resulted in those defendants "receiv[ing] bonuses and increase in their base pay," because merger "elevated" company "into a different Performance Peer Group of companies").[10]

## VI.   Plaintiffs Adequately Plead Section 20(a) Claims Against Defendants HPS, Bayou City, and ARM Energy

HPS, Bayou City, and ARM Energy argue that the Section 20(a) claims against them should be dismissed as "novel theories" that do not allege they controlled the making of any of the misstatements.   (HPS Br. at 2.)   But this Court has already upheld Section 20(a) claims against those defendants in the Class Action based on virtually identical allegations.  *Alta Mesa*, 2021 WL 1416025, at *12.  The Court held that the Class Action Plaintiffs "have alleged a complex web of securities ownership, contracts, business relationships, interlocking directors, and other factors that satisfies the relaxed and lenient pleading standard for evaluating whether a plaintiff has sufficiently alleged a claim for control person liability."  *Id.*  HPS, Bayou City, and ARM Energy do not cite this Court's

---

[10] Dimitrievich also argues that the challenged statements in Alta Mesa's March 29, 2018 10-K are not adequately alleged to be false or misleading.  But again, as with scienter, this Court has already held that those statements are adequately alleged.  *Alta Mesa*, 2021 WL 1416025, at *11-12.  Dimitrievich does not explain why this Court supposedly erred, or why the Court should revisit that decision now.  Indeed, he does not even cite the decision.

prior decision, nor explain why it was wrongly decided and why the Court should reconsider that decision on this Motion.  These defendants should not be allowed to simply rehash arguments that this Court has already rejected, especially without even attempting to explain why this Court's previous decision was wrong.[11]

As this Court has recognized, to state a claim for control person liability, a plaintiff need only "allege that [the defendant] possessed the power to control the primary violator, not that control was exercised."  *Alta Mesa*, 2021 WL 1416025, at *10.  Control can be indirect and can arise from "business relationships, interlocking directors . . .  and a myriad of other factors."  *Id.*

Plaintiffs have alleged that HPS, Bayou City, and ARM Energy had a unique and significant influence prior to the Merger, throughout Alta Mesa's short stint as a public company, and even after Alta Mesa went bankrupt.  For example, Bayou City had ownership interests in AMH prior to the Merger, entered into a joint development agreement with AMH in 2016, and appointed its founder and managing partner, Defendant McMullen, to Alta Mesa's Board.  (Alyeska Compl. ¶ 39; Orbis Compl. ¶ 48.)  HPS owned a significant portion of Alta Mesa and appointed Defendant Dimitrievich to its Board.  (Alyeska Compl. ¶ 40; Orbis Compl. ¶ 49.)  Before the Merger, ARM Energy was the founder and majority owner of Kingfisher.  (Alyeska Compl. ¶ 41; Orbis Compl. ¶ 50.)

---

[11] In particular, because HPS, Bayou City, and ARM Energy do not point to any specific differences between Plaintiffs' complaints and the Class Action Complaint that would support revisiting this Court's prior decision denying Defendants' motions to dismiss the Class Action, they should be barred from raising any such purported differences in their reply briefs.  (*See supra* n.9.)

Each of HPS, Bayou City, and ARM Energy provided the operational information contained in the Merger Proxy—which included material misstatements about Alta Mesa's operations and business prospects—and received over $1.3 billion from the Merger. (Alyeska Compl. ¶ 42; Orbis Compl. ¶ 51.)  Bayou City and HPS also owned about a 15% interest in Alta Mesa's operating company subsidiary following the Merger, and stood to receive earn-out payments worth up to $1 billion if Alta Mesa's share price reached certain targets.  (Alyeska Compl. ¶¶ 286-87; Orbis Compl. ¶¶ 355-56.)

Such allegations are more than sufficient to sustain claims for "control person" liability—particularly at the pleading stage.  For example, in *In re Cobalt International Energy, Inc.*, the court sustained control-person allegations against a group of five private equity sponsors, based on those sponsors' collective "significant stock ownership and ability to elect a majority of [the company's] Board of Directors" and "ability to control or influence [the company's] day-to-day operation" through a stockholder agreement, as well as "the power to influence . . . interlocking directors and, thereby, control or influence the . . . Board."  2016 WL 215476, at *11 (S.D. Tex. Jan. 19, 2016).  The same is true here. In sum, control liability "is an intensely factual question."  *Id.*  As this Court has previously held as to the Class Action Complaint, Plaintiffs' allegations here sufficiently plead Section 20(a) claims against HPS, Bayou City, and ARM Energy.

## **CONCLUSION**

For the reasons set forth above, the Court should deny Defendants' motions to dismiss (ECF Nos. 263-66) in their entirety.

Dated:  February 17, 2023

25

Respectfully submitted,

By: */s/ Matthew A. Peller*
Lawrence M. Rolnick
Marc B. Kramer
Matthew A. Peller
**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 597-2800
lrolnick@rksllp.com
mkramer@rksllp.com
mpeller@rksllp.com

*Attorneys for the*
*Orbis and Alyeska Plaintiffs*

Jules P. Slim
TX Bar No. 00793026
Attorney and Counselor
PO Box 140307
Irving, TX 75014-0307
Tel.: (214) 350-5183
Fax: (214) 350-5184
jslim@slimlawfirm.com

*Counsel for the Alyeska and Orbis*
*Plaintiffs*