# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> *Plaintiffs*, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br><br> *Defendants*. | Civil Action No. 4:22-cv-001189 |

| | |
|---|---|
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., <br><br> *Plaintiffs*, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br><br> *Defendants*. | Civil Action No. 4:22-cv-02590 |

**WILLIAM MCMULLEN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

## **STATEMENT OF RELIEF SOUGHT**

William McMullen submits this reply in favor of his motion to dismiss the consolidated litigations against him brought by the Orbis Plaintiffs ("Orbis") in Civil Action No. 4:22-cv-02590 and the Alyeska Plaintiffs ("Alyeska") in Civil Action No. 4:22-cv-01189, collectively (the "Plaintiffs"). Mr. McMullen requests that this Court dismiss the 10(b), Rule 10b-5, common law, and statutory fraud claims against him as time-barred and inadequately pleaded.

## **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| **SUMMARY OF ARGUMENT** ............................................................................................. 1 |
| **ARGUMENT** .............................................................................................................................. 1 |
| I. | **THE COURT SHOULD DISMISS THE CLAIMS AGAINST MR. MCMULLEN AS TIME BARRED AND INADEQUATELY PLEADED** ............................................. 1 |
| | A. | Plaintiffs' Untimely Claims Are Not Saved by *American Pipe* Tolling ........................ 2 |
| | B. | Plaintiffs Fail to Meet the Required Pleading Standards ................................................ 6 |
| | | 1. *Plaintiffs Fail to Allege Mr. McMullen's Scienter* ................................................ 7 |
| | | 2. *Plaintiffs Fail to Allege Mr. McMullen Acted with Fraudulent Intent* ................. 9 |
| **CONCLUSION** ........................................................................................................................ 10 |

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Page(s)**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)......................................................................................................2, 5, 6

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018)............................................................................................................6

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983)............................................................................................................2, 6

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) ..................................................................................................9

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ..................................................................................................7

*Sinclair Oil Corp. v. Atl. Richfield Co.*,
    720 F. Supp. 894 (D. Utah 1989)............................................................................................2

*Smithson v. Union Pac. R.R.*,
    602 F. Supp. 3d 974 (W.D. Tex. 2022)...................................................................................6

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ..................................................................................................7

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................................7

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ..................................................................................................7

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
    No. 5:02CV1105, 2003 WL 25861087 (N.D. Ohio June 4, 2003), *aff'd*, 413
    F.3d 553 (6th Cir. 2005) .........................................................................................................6

**Statutes**

Exchange Act § 10(b) ...................................................................................................... *passim*

PSLRA......................................................................................................................................7

**Rules**

Exchange Act Rules 5d-15 (e) .................................................................................................5

Exchange Act Rules 13a-15(e) .................................................................................................5

Fed. R. Civ. P. 9(b) ............................................................................................................9, 10

SEC Rule 10b-5 ................................................................................................... *passim*

**SUMMARY OF ARGUMENT**

Plaintiffs' claims against Mr. McMullen are either time-barred or unsupported by anything more than naked legal conclusions. Whatever allegations Plaintiffs may have against the other Defendants, their case against Mr. McMullen individually is non-existent. In conjunction with Defendants' Motion to Dismiss filed by Alta Mesa Resources, Inc. et al. on January 10, 2023, and the Joint Motion to Dismiss filed by HPS Investment Partners, LLC; Bayou City Energy Management, LLC; and ARM Energy Holdings LLC on January 10, 2023, (collectively, "Co-Defendants' Motions"), all claims against Mr. McMullen should be dismissed.

*First*, Plaintiffs' Section 10(b) and Rule 10b-5 claims are time-barred. A two-year statute of limitations governs these claims. Despite Plaintiffs' contention otherwise, the Class Action suit did not toll the Opt-Out Plaintiffs' Complaints, which assert new and distinct theories of liability against Mr. McMullen.

*Second*, Plaintiffs' Section 10(b), Rule 10b-5, common law fraud, and statutory fraud claims are inadequately pleaded against Mr. McMullen because they have not been pled with particularity. The Complaints lack any non-conclusory allegation of scienter or motive with respect to Mr. McMullen. And Plaintiffs' undue reliance on this Court's prior decision in the Class Action matter does not satisfy Plaintiffs' pleading burden.

**ARGUMENT**

**I.   THE COURT SHOULD DISMISS THE CLAIMS AGAINST MR. MCMULLEN AS TIME BARRED AND INADEQUATELY PLEADED**

This Court should dismiss Plaintiffs' claims in Count I (violation of Section 10(b) and SEC Rule 10b-5), Counts VI and VII (common law fraud), and Count VIII (Texas statutory fraud) of the Complaints insofar as these claims are directed against Mr. McMullen because these claims are barred under the statute of limitations and fail to meet the requisite pleading standard.

### A.      Plaintiffs' Untimely Claims Are Not Saved by *American Pipe* Tolling

Opt-Out Plaintiffs admit that a two-year statute of limitations applies and that the two-year limitations period began on March 29, 2018, when the 2017 Form 10-K was filed. Plfs.' Resp. Mot. to Dismiss at 19–20 n.8, ECF No. 284. Opt-Out Plaintiffs thus concede that their claims are untimely unless tolled. *See id.* (noting that the class action complaint "suspended the statute of limitations under the *American Pipe* class-action tolling doctrine").

Yet, Plaintiffs argue that the Class Action Complaint suspended the statute of limitations under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *Id.* Though *American Pipe* may toll limitations in limited circumstances, the Supreme Court has emphasized that statutes of limitations are designed to promote justice by preventing "surprises" if claims allowed to slumber were revived. *Am. Pipe & Constr. Co.*, 414 U.S. at 554; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) ("Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights . . . ." (citations omitted)). For this reason, tolling under *American Pipe* is limited only to those instances when a class action "notifies the defendants . . . of the *substantive claims* being brought against them . . . ." *Am. Pipe & Constr. Co.*, 414 U.S. at 554–55 (emphasis added). As stated by one district court, "At the risk of overstating the obvious, the required notice [under *American Pipe*] is actual notice of the sued-upon claims, not some 'notice,' derivative by implication from the claim asserted . . . ." *Sinclair Oil Corp. v. Atl. Richfield Co.*, 720 F. Supp. 894, 913 (D. Utah 1989). That notice did not occur here.

Opt-Out Plaintiffs cannot meet that standard here because they complain about different alleged misrepresentations than the Class Action Plaintiffs. In fact, the sole overlap between Class Action Plaintiffs and the Opt-Out Plaintiffs with respect to Mr. McMullen is that he, among other of Alta Mesa's board members, affixed his signature to Alta Mesa's 2017 Form 10-K on March

2

29, 2018. *Compare* 3d Am. Compl. 56, ECF No. 218, *with* Orbis Compl. (Dkt. 1) ("Orbis Compl.") ¶ 43; Alyeska Compl. (Dkt. 1) ("Alyeska Compl.") ¶ 34. But the representations identified by the Class Action Plaintiffs and Opt-Out Plaintiffs are different.

The Class Action Plaintiffs complain of just two misstatements in the 2017 Form 10-K: a risk factor and an assurance. *See* Plfs.' Resp. Mot. to Dismiss, App. 3, ECF No. 139-3.

First, the Class Action Plaintiffs take issue with the risk factor relating to Kingfisher's midstream business as contained in the 2017 Form 10-K:

> 217. Alta Mesa further represented as a Risk Factor that, "If third-party pipelines or other midstream facilities interconnected to our gathering, processing, storage or transportation systems become partially or fully unavailable, or if the volumes we gather, process, store or transport do not meet the quality requirements of the pipelines or facilities to which we connect, our gross profit and cash flow could be adversely affected."

3d. Am. Compl. ¶ 217, ECF No. 218.

Second, the Class Action Plaintiffs take issue with the 2017 Form 10-K's assurance regarding internal controls:

> 219. In Alta Mesa's 2017 Form 10-K, which was signed by Defendants Hackett, Chappelle, Ellis, Leuschen, Lapeyre, McMullen, Dimitrievich, Gutermuth, Sinclair, Tepper, Walters and Smith, also discussed its disclosure controls and internal controls in Item 4 Controls and Procedures. Specifically, Alta Mesa again stated that that "***there [had] been no change in [its] internal control over financial reporting***."

3d. Am. Compl. ¶ 219, ECF No. 218.

In other words, the Class Action Plaintiffs complain that Alta Mesa, and by extension, Mr. McMullen, allegedly misstated the Kingfisher risk factor and the assertion of "no change" in internal controls. It was these two representations that ultimately formed the basis for the Class's Section 10(b) and SEC Rule 10b-5 claims against Mr. McMullen.

3

Now, over three years since the initial class action filing, Opt-Out Plaintiffs bring different facts, different representations, and fundamentally distinct claims to the table.  That is, the Opt-Out Plaintiffs raise absolutely ***no issue*** with Alta Mesa's risk statement regarding Kingfisher's midstream business or with Alta Mesa's purported change to its internal controls.  Rather, Plaintiffs complain about ***distinct*** statements in the 2017 Form 10-K that form the bases for their Section 10(b) and SEC Rule 10b-5 claims against Mr. McMullen.

First, Plaintiffs raise issue with statements in the 2017 Form 10-K relating to Alta Mesa's oil production and drilling methods.  The Complaints state the following:

> Alta Mesa's Form 10-K filed with the SEC on March 29, 2018 (the "2017 Form 10-K") stated that "Our operations involve the use of the latest horizontal drilling, completion and production technologies, as developed by us and our service providers, in an effort to improve efficiencies in recovery of hydrocarbons. Use of these new technologies may not prove successful and could result in significant cost overruns or delays or reductions in production, and in extreme cases, the abandonment of a well."  The 2017 Form 10-K also stated that "certain of the new techniques we are adopting may cause irregularities or interruptions in production due to offset wells being shut in and the time required to drill and complete multiple wells before any such wells begin producing . . . .  The 2017 Form 10-K also included a Risk Factor that Alta Mesa's business "involves the use of the latest available horizontal drilling, completion and production technology, which involve risks and uncertainties in their application" and that its business "depend[s] on successful exploration, exploitation, development and acquisitions to maintain reserves and revenue in the future."

Orbis Compl. ¶¶ 184, 186; Alyeska Compl. ¶¶ 175, 177.

Second, Opt-Out Plaintiffs complain about Kingfisher risk factors distinct and apart from those raised in the Class Action dispute:

> 222.  As to Kingfisher, the 2017 Form 10-K included as risk factors that "The primary factors affecting our ability to connect new wells to our gathering facilities include our success in contracting for existing supplies that are not committed to other systems and the level of drilling activity near our gathering system, that "our future growth will depend in part upon whether we can contract for additional supplies at a greater rate than the rate of natural decline in our current supplies" and that "Although drilling activity improved during 2016 and 2017, we

4

could see downward pressure on future drilling activity in the STACK play if commodity prices decline, which may result in lower volumes.". . .

224. The 2017 Form 10-K also included as a risk factor as to Kingfisher that "The renewal or replacement of our existing contracts with our midstream customers at rates sufficient to maintain or increase current revenues and cash flows depends on a number of factors beyond our control, including competition from other midstream service providers and the price of, and demand for, crude oil, natural gas and NGLs in the markets we serve. The inability of our management to renew or replace our current contracts as they expire and to respond appropriately to changing market conditions could have a negative effect on our profitability."

Orbis Compl. ¶¶ 222, 224; Alyeska Compl. ¶¶ 206, 208.

Third, Opt-Out Plaintiffs complain not about the 2017 Form 10-K's assertion that Alta Mesa had made "no change" to its internal controls, but about the 2017 Form 10-K's statements regarding the *quality* of Alta Mesa's internal controls. Plaintiffs allege the following:

238. ***Defendants repeatedly certified that they had established effective internal controls over Alta Mesa's financial reporting as well as effective disclosure controls and procedures for Alta Mesa***.

239. The 2017 Form 10-K stated that Alta Mesa's "Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures (as defined in Rules 13a-15 (e) and 15d-15 (e) under the Exchange Act) were effective."

Orbis Compl. ¶¶ 238-39; Alyeska Compl. ¶¶ 222-23. (emphasis added).

While Opt-Out Plaintiffs, like Class Action Plaintiffs, maintain Mr. McMullen violated Section 10(b) and Rule 10b-5, the Class Action Complaint relies on different substantive issues within the 2017 Form 10-K, and thus different evidence, to support those claims. In other words, Opt-Out Plaintiffs strategically altered the Complaints to overcome perceived deficiencies in the Class Action Complaint, and made allegations of distinct misrepresentations in the 2017 Form 10-K that are not cited in the Class Action Complaint.

Despite Opt-Out Plaintiffs' argument that *American Pipe* applies, the "efficiency and economy of litigation" that supported tolling in *American Pipe* does not support the maintenance

5

of untimely actions involving **new claims** filed by individual defendants. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018) (citation omitted) ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."). The *American Pipe* rule "should not be read . . . as leaving a plaintiff free to raise different or peripheral claims." *Crown, Cork & Seal Co.*, 462 U.S. at 354 (Powell, J., concurring); *see also id.* at 355 (Powell, J., concurring) ("It is important to make certain . . . that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit.").

Opt-Out Plaintiffs' application of the *American Pipe* tolling rule would inflict upon Mr. McMullen the very "prejudice arising from claims for which he has received no prior notice" that Justice Powell warned against. *Id.* at 355 (Powell, J., concurring) (citation omitted). In this way, *American Pipe* tolling is inappropriate because the Class Action Complaint did not provide Mr. McMullen with sufficient notice to defend Opt-Out Plaintiffs' new theories of the 2017 Form 10-K and their subsequent claims. *See Smithson v. Union Pac. R.R.*, 602 F. Supp. 3d 974 (W.D. Tex. 2022) (noting that tolling under *American Pipe* was not appropriate when the individual claims required plaintiff to "prove wrongful conduct that [wa]s distinct" from that of the class action claim); *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, No. 5:02CV1105, 2003 WL 25861087, at *17 (N.D. Ohio June 4, 2003) ("Only notice of those claims that are central to or derived from the claims in the class complaint will be imputed to the defendant."), *aff'd*, 413 F.3d 553 (6th Cir. 2005). Plaintiffs' claims are thus barred under the two-year statute of limitations that expired well before they filed their respective complaints. Therefore, the Court should dismiss the claims against Mr. McMullen.

      **B.**    **Plaintiffs Fail to Meet the Required Pleading Standards**

Plaintiffs' Section 10(b), Rule 10b-5, common law fraud, and Texas statutory fraud claims asserted against Mr. McMullen all fail for lack of particularity.

6

1.      *Plaintiffs Fail to Allege Mr. McMullen's Scienter*

Plaintiffs asserting claims under Section 10(b) and Rule 10b-5 are subject to the heightened pleading standards of the PSLRA, namely a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"—here, "an intent to deceive, manipulate, defraud or severe recklessness." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (citations omitted). At a minimum, Plaintiffs must put forth a showing of "severe recklessness," which "is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care." *Id.* at 536 (citation omitted). Plaintiffs' showing must create a "strong inference" of severe recklessness—a showing that is "cogent and compelling" or "strong in light of other explanations." *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). And Plaintiffs must make this showing as to each statement and each defendant. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 363 (5th Cir. 2004). As is the case here, "[a] complaint can be long-winded, even prolix, without pleading with particularity." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

As to Mr. McMullen's role in allegedly making false statements, the Complaints contain just three sentences: "Defendant William W. McMullen served as a member of Alta Mesa's Board of Directors following the Merger. Defendant McMullen is the Founder and Managing Partner of Defendant Bayou City Energy Management, LLC. Defendant McMullen signed Alta Mesa's March 29, 2018 Form 10-K." Orbis Compl. ¶ 43; Alyeska Compl. ¶ 34. Plaintiffs, in their Response to Mr. McMullen's Motion to Dismiss, focus on two: that "McMullen was the founder and managing partner of Bayou City, which appointed him to Alta Mesa's Board, and that Bayou City was 'involved with AMH since at least January 2016, when it entered into a joint development agreement with AMH to fund a portion of AMH's drilling operations.'" Plfs.' Resp. Mot. to

7

Dismiss at 22, ECF No. 284. According to Plaintiffs, both Bayou City and Mr. McMullen, were "highly incentivized" to mislead investors and artificially inflate Alta Mesa's stock price because Bayou City allegedly "received cash from the Merger." *Id.*

But the assertions in Plaintiffs' brief are unsupported by allegations in the Complaint. Far from "receiv[ing] cash from the merger," Bayou City and Mr. McMullen chose to receive their share of the consideration ***entirely in stock***, fully aligning their interests with those of the stockholders. They ***never took any cash*** as part of their investment in AMR, and nothing in the Complaint ever alleges otherwise.[1] In arguing to the contrary, Plaintiffs improperly conflate Bayou City and Mr. McMullen with other defendants against whom those allegations have been made.

Plaintiffs further argue that Mr. McMullen "ignore[s] the specific context" surrounding Mr. McMullen's involvement in Alta Mesa. *Id.* Yet Plaintiffs do just that when they fail to consider how both Mr. McMullen and Bayou City had no motive to commit fraud, but rather were deeply invested in Alta Mesa's success (although they never owned a majority or controlling shares in the company). No facts support whatever "specific context" Plaintiffs are alluding to. Between August and September of 2018, several months after the Business Combination, Bayou City evidenced its belief in Alta Mesa's success by purchasing more than four million additional shares of Class A common stock in Alta Mesa. Mot. to Dismiss, Ex. 1, ECF No. 266-1. Even when Alta Mesa's stock price began to decline in early to mid-2018, neither Mr. McMullen nor Bayou City ever sold a single share of Alta Mesa stock. Plaintiffs fail to reconcile how Mr. McMullen could be "squarely at odds" with Alta Mesa's public shareholders, Plfs.' Resp. Mot. to Dismiss at 22, ECF No. 284, when Bayou City purchased (and subsequently held onto) the same

---

[1] The closest Plaintiffs come is to cite collective allegations in the Complaints against "Bayou City and HPS, along with non-party High Mesa," but those say nothing about what Bayou City individually did.

8

public shares at the same allegedly overvalued price. Thus, Mr. McMullen's membership on the Alta Mesa Board and his role in Bayou City cannot be sufficient to allege scienter.

And Plaintiffs cannot rely on Mr. McMullen's signature on the 2017 Form 10-K alone to carry the day. Plaintiffs point to no evidence that Mr. McMullen knew of or recklessly disregarded any falsity in the 2017 Form 10-K, let alone made allegations supporting a strong inference of such. Instead, Plaintiffs cite portions of this Court's prior decision in the Class Action dispute, arguing that it is "[t]elling[]" that Mr. McMullen failed to mention this decision, despite "effectively seeking untimely reconsideration of it." Plfs.' Resp. Mot. to Dismiss at 20, ECF No. 284. As discussed above, that decision addressed purported misrepresentations in the 2017 Form 10-K raised by the Class Action Plaintiffs that are different than those raised by the Opt-Out Plaintiffs today. For that reason, we cannot, and should not, rely on this Court's previous decision in the Class Action to evaluate the distinct allegations raised by the Opt-Out Plaintiffs. Plaintiffs thus failed to meet the heightened pleading requirement when they failed to allege scienter.

2. *Plaintiffs Fail to Allege Mr. McMullen Acted with Fraudulent Intent*

Plaintiffs asserting fraud claims must comport with the pleading standard of Rule 9(b). *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009) (citation omitted). In other words, "a plaintiff must set forth specific facts to support an inference of fraud," including facts sufficient to show a defendant's motive or circumstances demonstrating a defendant's conscious behavior. *Id.* (citation omitted). Because Plaintiffs failed to allege that Mr. McMullen acted with fraudulent motive to commit securities fraud, or that he consciously made a misstatement.

As outlined above, the Complaints state Mr. McMullen's role in one simple sentence: "McMullen signed Alta Mesa's March 29, 2018 Form 10-K." Orbis Compl. ¶ 43; Alyeska Compl.

¶ 34. This is insufficient to demonstrate Mr. McMullen's alleged fraudulent intent under Rule 9(b), and Plaintiffs' common law and statutory fraud claims must be dismissed.

## CONCLUSION

Mr. McMullen respectfully requests that this Court enter an order granting his Motion to Dismiss and grant any other and further relief as this Court deems just and proper.

DATED: March 14, 2023

/s/ Nick Brown
Nick Brown
Texas Bar No. 24092182   S.D. Tex. ID 2725667
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699   S.D. Tex. ID 2506614
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:        (713) 836-3601
Emails:  nick.brown@kirkland.com
              kenneth.young@kirkland.com

*Counsel for Bayou City Energy Management, LLC and William McMullen*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on March 14, 2023.

/s/ Nick Brown
Nick Brown