Case 4:19-cv-00957   Document 343   Filed on 06/07/23 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
June 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION § § § § § § § § § § | CIVIL ACTION NO. 4:19-CV-957 |

# MEMORANDUM OPINION AND ORDER

Pending before the Court in this consolidated securities class action are four motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The parties have submitted excellent briefing, and the Court has heard oral argument. (Dkt. 313). The motions (Dkt. 263; Dkt. 264; Dkt. 265; Dkt. 266)[1] are respectfully **DENIED** without prejudice to being reasserted as motions for summary judgment.

## BACKGROUND

This case arose out of the collapse of Alta Mesa Resources, Inc., which began as a special purpose acquisition company called Silver Run Acquisition Corporation II. In a previous opinion, the Court, in denying several motions to dismiss the class action complaint, extensively discussed the facts that are alleged in that complaint as well as many facts that are contained within judicially noticeable SEC filings. (Dkt. 160). Familiarity

---

[1] In this opinion, docket citations that are enclosed in parentheses, like (Dkt. 265), refer to entries on the docket of the lead case, Southern District of Texas case number 4:19-CV-957. Citations to the dockets of related cases are not enclosed in parentheses and contain the number of the related case—for instance, Southern District of Texas case number 4:22-CV-1189 at docket entry 1.

with those facts and familiarity with the Court's legal analysis in its prior opinion are presumed, and the Court will only include additional facts and analysis as necessary in this opinion.

The motions to dismiss that are currently before the Court attack the complaints filed by two groups of opt-out plaintiffs whose cases have been consolidated with the class action. (Dkt. 259). The first group, to which the parties refer as "the Alyeska Plaintiffs," consists of Plaintiffs Alyeska Master Fund, L.P.; Alyeska Master Fund 2, L.P.; and Alyeska Master Fund 3, L.P. *See* Southern District of Texas case number 4:22-CV-1189 at docket entry 1, page 2. The second group, "the Orbis Plaintiffs," consists of Plaintiffs Orbis Global Equity LE Fund (Australia Registered); Orbis Global Equity Fund (Australia Registered); Orbis Global Balanced Fund (Australia Registered); Orbis SICAV; Orbis Institutional Global Equity L.P.; Orbis Global Equity Fund Limited; Orbis Institutional Funds Limited; Allan Gray Australia Balanced Fund; Orbis OEIC; and Orbis Institutional U.S. Equity L.P. *See* Southern District of Texas case number 4:22-CV-2590 at docket entry 1, page 2.

The Alyeska Plaintiffs and the Orbis Plaintiffs are represented by the same counsel, and the Court will refer to them collectively as "the opt-out plaintiffs" whenever possible. In their briefing, the opt-out plaintiffs state that their complaints are "based on the same nucleus of operative facts alleged in the Class Actions and challeng[e] many of the same statements, plus additional substantively similar statements[.]" (Dkt. 284 at p. 8). The opt-out plaintiffs have brought claims under Sections 10(b), 14(a), 18, and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as well as common-law fraud claims under Texas state law and statutory fraud claims under Section 27.01 of the Texas

Business and Commerce Code. *See* Southern District of Texas case number 4:22-CV-1189 at docket entry 1, pages 76–85; Southern District of Texas case number 4:22-CV-2590 at docket entry 1, pages 98–109.

The defendants have filed four motions to dismiss between them under Rules 12(b)(1) and 12(b)(6). Although the motions do not overlap completely, taken as a whole they make the following arguments: (1) the opt-out plaintiffs' state-law fraud claims are precluded by the state-law class-action bar contained in 15 U.S.C. § 78bb(f); (2) the opt-out plaintiffs' state-law "holder" fraud claims are not recognized under Texas law; (3) the opt-out plaintiffs' federal claims are time-barred; and (4) the opt-out plaintiffs' claims under Sections 10(b) and 20(a) of the Exchange Act and Texas state law are inadequately pled.

## MOTIONS TO DISMISS

*—Rule 12(b)(1)*

A motion filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting that federal subject matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Under Rule 12(b)(1), the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289, 293 (5th Cir. 2008).

*—Rule 12(b)(6)*

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming*, 281 F.3d at 161. A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

When considering a motion to dismiss under Rule 12(b)(6), the Court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## ANALYSIS

As previously mentioned, the defendants' motions to dismiss, taken as a whole, make the following arguments: (1) the opt-out plaintiffs' state-law fraud claims are precluded by the state-law class-action bar contained in 15 U.S.C. § 78bb(f); (2) the opt-out plaintiffs' state-law holder fraud claims are not recognized under Texas law; (3) the opt-out plaintiffs' federal claims are time-barred; and (4) the opt-out plaintiffs' claims under Sections 10(b) and 20(a) of the Exchange Act and Texas state law are inadequately pled. The Court will begin with the argument that the opt-out plaintiffs' state-law fraud claims are precluded by the state-law class-action bar contained in 15 U.S.C. § 78bb(f), as the defendants bring that argument under Rule 12(b)(1). (Dkt. 265 at p. 10). The defendants bring the other three arguments under Rule 12(b)(6).

### —SLUSA

15 U.S.C. § 78bb is part of the Securities Litigation Uniform Standards Act, or "SLUSA." *In re Enron Corp. Securities*, 535 F.3d 325, 331 (5th Cir. 2008) ("*Enron II*"). After Congress passed the Private Securities Litigation Reform Act ("PSLRA"), "plaintiffs began filing class-action securities lawsuits under state law, often in state court[,]" with the aim of circumventing "the restrictive conditions set forth by the PSLRA[.]" *Id.* at 337. Congress enacted SLUSA "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006) (quotation marks omitted).

To help achieve that goal, SLUSA, through the provisions of 15 U.S.C. § 78bb(f), precludes securities class actions in which "four conditions are satisfied: (1) the action is a covered class action: (2) the claims are based on state law; (3) the action involves one or more covered securities; and (4) the claims allege a misrepresentation or omission of material fact in connection with the purchase or sale of the security." *Enron II*, 535 F.3d at 338–39 (quotation marks omitted). Defendants contend that the opt-out plaintiffs' state-law fraud claims satisfy these four elements. (Dkt. 265 at pp. 20–24).

On this record, the Court disagrees. Defendants argue that the opt-out plaintiffs' state-law fraud claims fall within the definition of "covered class action" contained in 15 U.S.C. § 78bb(f)(5)(B)(ii). (Dkt. 265 at p. 22). That definition reads:

> The term "covered class action" means . . . any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—
>
> (I)   damages are sought on behalf of more than 50 persons; and
>
> (II)  the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B)(ii).

Defendants correctly point out that the opt-out plaintiffs' state-law fraud claims fall within the definition of "covered class action" because the opt-out plaintiffs' cases have been consolidated with the lead class action, creating a "group of lawsuits" that "collectively seek damages on behalf of more than 50 persons." (Dkt. 265 at p. 22). However, SLUSA's preclusion provisions also require that the covered class action's claims be "based on state law[.]" *Enron II*, 535 F.3d at 338. Here, only 13 opt-out plaintiffs are bringing state-law claims; the class action claims are all brought under federal law.

(Dkt. 69 at pp. 113–21). This posture begs the question: does a group of consolidated lawsuits seek damages on behalf of more than 50 persons "based on state law" when only 13 persons within the group are bringing state-law claims?

Two cases cited by Defendants say yes. In both cases, groups of opt-out plaintiffs that totaled fewer than 50 people lost their state-law claims at the hands of SLUSA when their cases were consolidated with larger federal securities class actions. *See In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation*, 503 F. Supp. 2d 25, 31–33 (D.D.C. 2007); *Gordon Partners v. Blumenthal*, No. 02-Civ.-7377, 2007 WL 431864, at *18–19 (S.D.N.Y. Feb. 9, 2007), *adopted*, 2007 WL 1438753 (S.D.N.Y. May 16, 2007).[2] But highly persuasive authority cuts the other way.

In the Enron litigation, Judge Harmon of the Southern District of Texas denied a motion to dismiss based on SLUSA preclusion when a group of eight plaintiffs filed state-law claims in state court and their suit was removed to federal court and consolidated with other Enron-related cases. *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, No. 4:01-CV-3624, 2002 WL 32107216, at *5, 10 (S.D. Tex. Aug. 12, 2002) ("*Enron I*"). In a later opinion related to the WorldCom implosion, Judge Cote of the Southern District of New York granted a motion to dismiss based on SLUSA preclusion; his analysis distinguished *Enron I* on the basis that, in the matters consolidated before him, 293

---

[2] The Second Circuit affirmed *Gordon Partners* but expressly did not consider whether the district court had correctly decided the SLUSA preclusion issue. *Gordon Partners v. Blumenthal*, 293 Fed. App'x 815, 818 (2d Cir. 2008). The Second Circuit's affirmance was instead based on the plaintiffs' failure to present adequate summary judgment evidence regarding loss causation to support their state-law claims. *Id.*

plaintiffs had brought state-law claims instead of only eight. *In re WorldCom, Inc. Securities Litigation*, 308 F. Supp. 2d 236, 247 (S.D.N.Y. 2004) ("Unlike [*Enron I*]*,* here there is not one action on behalf of eight plaintiffs, but Ten Actions on behalf of 293 plaintiffs."). Still later, in *Enron II*, the Fifth Circuit employed "the well-reasoned analysis of the *WorldCom* Court" to hold that Judge Harmon had properly dismissed, as precluded by SLUSA, the state-law claims of a group of 196 plaintiffs who were all represented by the same law firm in the consolidated Enron litigation. *Enron II*, 535 F.3d at 340–42. The *Enron II* Court explicitly noted that the number of plaintiffs who had brought state-law claims totaled more than 50:

> [T]he Fleming law firm ignores the fact that 172 of their 196 plaintiffs are before the Southern District of Texas by virtue of direct filing or direct removal, not the MDL. Thus, even setting aside the three cases transferred to the Southern District of Texas via the MDL, there are well over 50 plaintiffs in this case.
> *Id.* at 342 (record citation omitted).

These cases indicate that the total number of plaintiffs bringing state-law claims in an action like this one matters under SLUSA's preclusion provisions.

The available caselaw regarding SLUSA preclusion does not conclusively forestall the opt-out plaintiffs' state-law claims. Regardless of how many members comprise the class, only 13 plaintiffs in the consolidated action have pled claims under Texas state law. Weighty authority instructs that the fact that fewer than 50 plaintiffs in this consolidated lawsuit have pled claims under Texas state law renders SLUSA's preclusion provisions inapplicable. At this stage of the litigation, the Court will not dismiss the opt-out plaintiffs' state-law claims on the basis of SLUSA preclusion.

*—Texas law regarding holder fraud claims*

Defendants next argue that the opt-out plaintiffs' state-law holder fraud claims are not recognized by Texas law. (Dkt. 265 at pp. 24–27). As support, Defendants point to *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 930 (Tex. 2010).

The Court does not read *Grant Thornton* to bar holder fraud claims categorically. In *Grant Thornton*, "[t]he Supreme Court of Texas left open the prospect that holder claims involving specific, direct communications are actionable under Texas law," though it "declined to permit a holder claim in the absence of any direct communication." *In re Parkcentral Global Litigation*, No. 3:09-CV-765, 2010 WL 3119403, at *8 (N.D. Tex. Aug. 5, 2010). At this stage of the litigation, the Court will not dismiss the opt-out plaintiffs' state-law holder fraud claims based on *Grant Thornton*.

*—Repose and limitations*

Defendants next argue that the opt-out plaintiffs' federal claims are time-barred. The opt-out plaintiffs disagree. The dispute boils down to two issues: (1) whether the five-year repose period contained in 28 U.S.C. § 1658(b) ("Section 1658") applies to certain claims brought by the opt-out plaintiffs; and (2) whether the class-action tolling doctrine set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), applies to certain claims brought by the opt-out plaintiffs.

    i.    <u>Section 1658</u>

Enacted as part of the Sarbanes-Oxley Act, Section 1658 extended to five years the repose period for "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the

securities laws, as defined in section 3(a)(47) of" the Exchange Act. 28 U.S.C. § 1658(b)(2); *see also Blaz v. Belfer*, 368 F.3d 501, 503–04 (5th Cir. 2004); *Margolies v. Deason*, 464 F.3d 547, 550 (5th Cir. 2006). Naturally, the definition of "securities laws" contained in Section 3(a)(47) of the Exchange Act includes the Exchange Act itself. 15 U.S.C. § 78c(a)(47). However, the parties disagree on the issue of whether certain claims brought under the Exchange Act by the opt-out plaintiffs qualify as "private right[s] of action that involve . . . claim[s] of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" that would accordingly be subject to the extended repose period.

Defendants contend that Section 1658 does not apply to the opt-out plaintiffs' claims under Sections 14(a), 20(a), or 18 of the Exchange Act. (Dkt. 265 at pp. 15–19). As to Section 18, Defendants' argument runs headlong into the Fifth Circuit's unequivocal statement in *Blaz* that the statute of repose applicable to Section 18 claims "has been extended to five years" by Section 1658. *Blaz*, 368 F.3d at 503–04. Defendants characterize this statement as "dicta" and urge the Court to ignore it, but at least one other circuit has agreed with it. *See DeKalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 & n.83 (2d Cir. 2016). In the face of such authority, the Court is not inclined to dismiss claims as time-barred on the pleadings alone.

Defendants also contend that Section 1658 does not apply to the opt-out plaintiffs' claims under Section 14(a) and, by extension, does not apply to the claims under Section 20(a) for which the Section 14(a) claims are a predicate. The basis for Defendants' argument is that Section 14(a) does not require plaintiffs to prove "fraud, deceit,

manipulation, or contrivance" in order to state a claim. (Dkt. 308 at pp. 11–15). Defendants are correct in the sense that Section 14(a) merely requires a plaintiff to prove that the defendant acted "at least negligently[.]" *In re Browning-Ferris Industries, Inc. Shareholder Derivative Litigation*, 830 F. Supp. 361, 365 (S.D. Tex. 1993). Nevertheless, the opt-out plaintiffs argue that they are entitled to the Section 1658 repose period because "they have chosen not to plead a Section 14(a) claim based on mere negligence. Rather, [their] claims allege and involve fraud." (Dkt. 284 at p. 14). Defendants respond that Section 1658 "does not extend the limitations period for negligence statutes, regardless of the infusion of unnecessary scienter-based allegations[.]" (Dkt. 308 at pp. 13–14).

The caselaw does not categorically foreclose the opt-out plaintiffs' position. A claim brought under a negligence statute can sound in fraud; and making averments of fraud in a cause of action based on a negligence statute can bring that cause of action within the reach of, for instance, the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023) ("The fact that Sections 349 and 350 are not traditional fraud statutes does not necessarily mean that Rule 9(b) does not apply."); *see also Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) ("Appellants maintain that their 1933 Securities Act claims were inappropriately subjected to the Rule 9(b) heightened pleading standard. This argument is untenable in light of the complaint's wholesale adoption of the allegations under the securities fraud claims for purposes of the Securities Act claims. When 1933 Securities Act claims are grounded in fraud rather than negligence as they clearly are here, Rule 9(b) applies."). The Court sees no reason why a

claim brought under negligence-based provisions of the securities laws that sounds in fraud cannot be subject to both Rule 9(b) and Section 1658.

Moreover, the Fifth Circuit stated in *Margolies v. Deason* that Section 1658 applied to claims brought under two negligence-based provisions of the Securities Act of 1933 when "[t]he district court correctly found that the claims . . . involved fraud[.]" *Margolies*, 464 F.3d at 550. And other district judges within the Fifth Circuit have applied Section 1658 to fraud-based claims brought under negligence-based provisions of the federal securities laws. *See Steele v. Certalogic, Inc.*, No. A-07-CA-658, 2007 WL 9710216, at *2 n.2 (W.D. Tex. Oct. 9, 2007) (Sparks, J.); *Engel v. Sexton*, Nos. 06-10447, 06-10547, 07-116, 2009 WL 361108, at *14–15 (E.D. La. Feb. 11, 2009) (Engelhardt, J.). Having reviewed the applicable caselaw, the Court cannot conclude, based on the pleadings alone, that the opt-out plaintiffs are not entitled to apply the repose period of Section 1658 to their claims under Sections 14(a), 20(a), or 18 of the Exchange Act.

      ii.    *American Pipe* tolling

Defendants contend that the opt-out plaintiffs' claims under Section 18 should not receive the benefit of *American Pipe* tolling. (Dkt. 265 at pp. 19–20). Additionally, Defendant William McMullen ("McMullen") makes this argument as to the opt-out plaintiffs' claims against him under Section 10(b). (Dkt. 309 at pp. 8–12). The opt-out plaintiffs again disagree. (Dkt. 284 at pp. 18, 25).

Under the *American Pipe* doctrine, "[t]he filing of a class action tolls the running of a statute of limitations for all asserted members of the class." *Hall v. Variable Annuity Life Insurance Co.*, 727 F.3d 372, 375 (5th Cir. 2013) (quotation marks omitted). However, the

*American Pipe* doctrine seems to be more easily described than applied. There are two competing approaches to determining when *American Pipe* tolling is appropriate, and the question presents "a difficult issue that has divided courts for decades." *Zaragoza v. Union Pacific Railroad Company*, 606 F. Supp. 3d 427, 434–35 (W.D. Tex. 2022). "Some courts recognize class action tolling when the claims in the follow-on suit share a common factual basis and legal nexus with the class claims, whereas others require complete identity of claims between the two suits." *Id.* at 434 (quotation marks omitted). Under the circumstances, the Court will take the former approach.

These actions are consolidated. The parties themselves, in a joint motion to consolidate signed by counsel for every party in all three lawsuits, have stated that "[a]ll parties have consented to consolidation and agree that consolidation is appropriate because the Class Action and the Opt Out Actions involve the same defendants, common questions of law and fact and will require largely the same discovery." (Dkt. 256 at p. 4). The joint motion to consolidate further states that "[t]he plaintiffs in the Opt Out Actions are nominally members of the Class certified in the Class Action and the factual allegations supporting their claims are substantially similar to those in the Class Action. In addition, the three related suits assert claims against the same Defendants, challenge as materially false or misleading statements based upon the same alleged conduct, and seek damages based on the same declines in the price of Alta Mesa's securities." (Dkt. 256 at p. 5). No party objected to these statements.

At this stage of the litigation, the Court cannot definitively say that *American Pipe* tolling is inappropriate. The opt-out plaintiffs have at least a colorable argument that their

13 / 14

suits share enough of a common factual basis and legal nexus with the class claims to obtain the benefit of the *American Pipe* doctrine. The Court will not hold that any of the opt-out plaintiffs' claims are time-barred based on the pleadings alone.

*—Pleading sufficiency*

Finally, several defendants contend that the opt-out plaintiffs' claims under Sections 10(b) and 20(a) of the Exchange Act are inadequately pled. (Dkt. 263 at pp. 16–25; Dkt. 264 at pp. 14–27; Dkt. 266 at pp. 12–17). McMullen also makes this argument as to the state-law claims against him. (Dkt. 266 at pp. 17–18).

As the opt-out plaintiffs note, these portions of Defendants' motions essentially amount to a request that the Court reconsider its denial of Defendants' motions to dismiss the class action complaint. (Dkt. 160). The Court respectfully declines to do so. To reiterate its prior ruling, having considered the plaintiffs' allegations, the judicially noticeable SEC filings, and the applicable law, the Court cannot conclude that this lawsuit is an impermissible strike suit.

## CONCLUSION

The defendants' motions to dismiss (Dkt. 263; Dkt. 264; Dkt. 265; Dkt. 266) are respectfully **DENIED** without prejudice to being reasserted as motions for summary judgment.

SIGNED at Houston, Texas, on June 7, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE