# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> Judge George C. Hanks, Jr. |

|  |  |
|---|---|
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND D, .P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br><br> Defendants. | Civil Action No. 4:22-cv-01189 <br><br> Judge George C. Hanks, Jr. |

| | |
|---|---|
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | Civil Action No. 4:22-cv-02590 <br><br> Judge George C. Hanks, Jr. |

Plaintiffs,

v.

ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER,

Defendants.

## DEFENDANTS' MOTION TO CERTIFY THE COURT'S JUNE 7, 2023 ORDER FOR INTERLOCUTORY APPEAL

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT .......................................................................................................... 5

I.     THE COURT'S HOLDING THAT SLUSA DOES NOT BAR
       PLAINTIFFS' STATE-LAW CLAIMS IMPLICATES A CONTROLLING
       QUESTION OF LAW ON WHICH REASONABLE JUDGES COULD
       DIFFER ........................................................................................................ 6

II.    THE COURT'S DISCUSSION OF "HOLDER" CLAIMS UNDER
       TEXAS STATE LAW IMPLICATES A CONTROLLING QUESTION OF
       LAW ON WHICH REASONABLE JUDGES COULD DIFFER........................ 12

III.   THE COURT'S TIME LIMITATION DECISIONS ON PLAINTIFFS'
       FEDERAL CLAIMS IMPLICATE CONTROLLING QUESTIONS OF
       LAW ON WHICH REASONABLE JUDGES COULD DIFFER........................ 15

       A.    The Court's Interpretation of Section 1658 Warrants Interlocutory
             Review.................................................................................................. 16
       B.    The Court's Interpretation of *American Pipe* Tolling Warrants
             Interlocutory Review ............................................................................ 20

IV.    AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE
       ULTIMATE TERMINATION OF THIS CASE................................................ 22

CONCLUSION ...................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ...................................................................... 6

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) .................................................................... *passim*

*In re AOL Time Warner, Inc. Secs. Litig.*,
503 F. Supp. 2d 666 (S.D.N.Y. 2007) ........................................................ 8

*Arent v. Distrib. Scis., Inc.*,
975 F.2d 1370 (8th Cir. 1992) ................................................................... 14

*Blaz v. Belfer*,
368 F.3d 501 (5th Cir. 2004) ............................................................. 2, 19

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ........................................................................... 13, 14

*In re BP p.l.c. Secs. Litig.*,
2015 WL 926199 (S.D. Tex. Mar. 4, 2015) .......................................... 7, 13

*Castellanos-Contreras v. Decatur Hotels, LLC*,
622 F.3d 393 (5th Cir. 2010) (en banc) ............................................. 4, 5, 8

*Chanoff v. U.S. Surgical Corp.*,
857 F. Supp. 1011 (D. Conn. 1994), *aff'd*, 31 F.3d 66 (2d Cir. 1994) ....................... 13

*Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*,
2011 WL 13220509 (C.D. Cal. Aug. 22, 2011) ........................................... 21

*Citigroup Inc. v. AHW Inv. P'ship*,
140 A.3d 1125 (Del. 2016) ........................................................................ 13

*Coates v. Brazoria Cnty.*,
919 F. Supp. 2d 863 (S.D. Tex. 2013) ...................................................... 23

*Cont'l Cas. Co. v. Street*,
364 S.W.2d 184 (Tex. 1963) ..................................................................... 12

*Crocker v. FDIC*,
    826 F.2d 347 (5th Cir. 1987) ........................................................................ 14

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983) ............................................................................... 20, 21

*DeKalb Cnty. Pension Fund. v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016) ........................................................................ 18

*In re Denar Restaurants, LLC*,
    2010 WL 150161 (N.D. Tex. Jan. 14, 2010) ................................................. 5

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*,
    2007 WL 789141 (S.D. Tex. Mar. 12, 2007) .............................................. 14

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) ........................................................ 10

*In re Enron Corp. Secs. Litig.*,
    465 F. Supp. 2d 687 (S.D. Tex. 2006) ........................................................ 19

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
    2002 WL 32107216 (S.D. Tex. Aug. 12, 2002) ...................................... 9, 10

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
    535 F.3d 325 (5th Cir. 2008) ............................................................. 9, 10, 11

*In re Exxon Mobil Corp. Secs. Litig.*,
    500 F.3d 189 (3d Cir. 2007) .................................................................. 16, 19

*In re Fed. Nat'l Mortg. Ass'n Secs., Deriv. & ERISA Litig.*,
    503 F. Supp. 2d 25 (D.D.C. 2007) ................................................................ 8

*Gordon Partners v. Blumenthal*,
    2007 WL 431864 (S.D.N.Y. Feb. 9, 2007), *adopted*, 2007 WL 1438753
    (S.D.N.Y. May 16, 2007), *aff'd*, 293 F. App'x 815 (2d Cir. 2008) .............. 8

*Grant Thornton LLP v. Prospect High Income Fund*,
    314 S.W.3d 913 (Tex. 2010) ....................................................................... 14

*Howe ex rel. Howe v. Scottsdale Ins. Co.*,
    204 F.3d 624 (5th Cir. 2000) ...................................................................... 13

*Instituto de Prevision Militar v. Merrill Lynch*,
    546 F.3d 1340 (11th Cir. 2008) ..................................................................... 8

*Jones v. Southpeak Interactive Corp. of Del.*,
  777 F.3d 658 (4th Cir. 2015) ................................................................. 18

*Keen v. Miller Env't Grp., Inc.*,
  702 F.3d 239 (5th Cir. 2012) ................................................................. 12

*Lampf, Pleva, Lipkind, Prupis & Petrigrow v. Gilbertson*,
  501 U.S. 350 (1991) ............................................................................... 16

*Le v. Holder*,
  732 F.3d 425 (5th Cir. 2013) ................................................................... 7

*Lindner Divided Fund, Inc. v. Ernst & Young*,
  880 F. Supp. 49 (D. Mass. 1995) .......................................................... 21

*Margolies v. Deason*,
  464 F.3d 547 (5th Cir. 2006) .............................................................. 2, 19

*In re McClelland Eng'rs, Inc.*,
  742 F.2d 837 (5th Cir. 1984), *overruled on other grounds by In re Air
  Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987) ............ 5

*Merrill, Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ................................................................................... 6

*Newby v. Enron Corp.*,
  540 F. Supp. 2d 800 (S.D. Tex. 2007) .................................................. 24

*Newby v. Enron Corp.*,
  542 F.3d 463 (5th Cir. 2008) ................................................................. 17

*Orson, Inc. v. Miramax Film Corp.*,
  867 F. Supp. 319 (E.D. Pa. 1994) ........................................................ 23

*Park v. Essa Tex. Corp.*,
  311 S.W.2d 228 (Tex. 1958) ................................................................. 12

*In re Plains All Am. Pipeline, L.P. Secs. Litig.*,
  307 F. Supp. 3d 583 (S.D. Tex. 2018) .................................................. 17

*Rivers v. Wachovia Corp.*,
  665 F.3d 610 (4th Cir. 2011) ................................................................. 13

*Shirvanian v. DeFrates*,
   No. 14-02-00447-CV, 2004 Tex. App. LEXIS 182 (Jan. 8, 2004),
   opinion withdrawn and substituted by *Shirvanian v. DeFrates*, 161
   S.W.3d 102 (Tex. App. 2004) .................................................................. 12

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
   86 F.3d 656 (7th Cir. 1996) ...................................................................... 5

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
   2011 WL 1226983 (D. Mass. Mar. 31, 2011) ........................................... 21

*Spong v. Fid. Nat'l Property & Cas. Ins. Co.*,
   787 F.3d 296 (5th Cir. 2015) ..................................................................... 8

*Sterling Tr. Co. v. Adderley*,
   168 S.W.3d 835 (Tex. 2005) ..................................................................... 13

*Van Overdam v. Tex. A&M Univ.*,
   2021 WL 4441987 (S.D. Tex. Mar. 3, 2021) ............................................ 5

*In re WorldCom, Inc. Securities Litigation*,
   308 F. Supp. 2d 236 (S.D.N.Y. 2004) ............................................... 9, 11

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
   2003 WL 25861087 (N.D. Ohio June 4, 2003) ......................................... 21

## STATUTES

15 U.S.C.
   § 78bb(f)(1) ................................................................................... 1, 9, 10
   § 78bb(f)(1)(A) ................................................................................ 6, 7, 8
   § 78bb(f)(5)(B)(ii) ............................................................................... 6, 9
   § 78bb(f)(5)(B)(ii)(I)-(II) ..................................................................... 1, 6
   § 78r ....................................................................................................... 24
   § 78r(c) ............................................................................................. *passim*
   § 78u-4(b)(1) ......................................................................................... 18

28 U.S.C.
   § 1292(b) ........................................................................................... *passim*
   § 1658(b) ........................................................................................... *passim*

## RULES

Fed. R. Civ. P. 9(b) ...................................................................................... 18

## TREATISES

3-4 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* (June 2023 update)..............................................................................................................17

## OTHER AUTHORITIES

Edward T. McDermott, Essay, *Holder Claims-Potential Causes of Action in Delaware and Beyond?*, 47 Del. J. Corp. L. 935 (2017) .............................................14

## INTRODUCTION

In denying Defendants' motion to dismiss, this Court itself recognized that the motion raised significant questions about the proper interpretation of key provisions of the federal securities laws, as well as about the scope of Texas state law.  Specifically, the motion implicates: (1) the scope of the Securities Litigation Uniform Standards Act's ("SLUSA") bar on covered class actions, (2) the viability of "holder" claims under Texas state law, and (3) the time limitations governing Plaintiffs' federal securities claims.  On each of these issues, the Court acknowledged that its ruling presented close questions of law on which its resolution finds substantial contrary authority.  Moreover, each of these issues is potentially dispositive of Plaintiffs' federal or state claims, and obtaining appellate review of them now could significantly streamline the proceedings.  For these reasons, the Court's ruling satisfies the criteria for an interlocutory appeal under 28 U.S.C. § 1292(b).  Defendants therefore ask this Court to certify its Memorandum Opinion and Order ("Op.") entered on June 7, 2023 (ECF No. 343) for immediate review by the Fifth Circuit.

*First*, this Court ruled (Op. at 5-8) that Plaintiffs' state law claims are not barred by SLUSA, which requires dismissal of any "covered class action" that is "based upon the statutory or common law of any State or subdivision thereof." 15 U.S.C. § 78bb(f)(1).  The Court agreed with Defendants that this case satisfies SLUSA's definition of "covered class action," insofar as it is part of a "group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which" (1) "damages are sought on behalf of more than 50 persons"; and (2) "the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose."  15 U.S.C. § 78bb(f)(5)(B)(ii)(I)-

1

(II).   Nonetheless, the Court concluded that SLUSA's separate "based on [state] law" requirement requires at least 50 plaintiffs to be bringing state-law claims.  Op. 8.  As the Court acknowledged, this interpretation of SLUSA is at odds with decisions by multiple courts across the country, showing that this pure question of law is at least debatable. Moreover, a decision by the Fifth Circuit adopting Defendants' view of SLUSA would end the litigation over Plaintiffs' state-law claims.

*Second*, this Court declined to dismiss the Orbis Plaintiffs' "holder" claims under Texas state law "[a]t this stage of the litigation" (Op. 9) even though such claims do not exist under federal law, have been widely rejected by states across the country, and are not recognized as valid by any Texas court.  The question of whether holder claims are cognizable under Texas state law warrants interlocutory review as a novel interpretation of state law on an issue that is plainly subject to debate.  And its resolution in Defendants' favor would conclusively dispose of the Orbis Plaintiffs' holder claims.

*Third*, this Court determined (Op. 9-12) that the two-year statute of limitations and five-year statute of repose in 28 U.S.C. § 1658(b) apply to Plaintiffs' Section 14(a), 18, and 20(a) claims, even though those provisions do not require proof of "fraud, deceit, manipulation, or contrivance."  28 U.S.C. § 1658(b).  All parties agree that unless Section 1658(b)'s time limitations apply here, Plaintiffs' claims are untimely and must be dismissed under the Exchange Act's and Section 18's three-year statute of repose.  In rejecting Defendants' position, the Court did not dispute that the Second, Third, and Fourth Circuits take a different approach, but it considered itself bound by statements in the Fifth Circuit's opinions in *Margolies v. Deason*, 464 F.3d 547, 550 (5th Cir. 2006), and *Blaz v.*

2

*Belfer*, 368 F.3d 501, 503-04 (5th Cir. 2004), *see* Op. 10, 12.  The relevant Fifth Circuit language is best understood as unreasoned and non-binding *dicta*, addressing issues that were not briefed or argued in either case, and an immediate appeal would enable the Fifth Circuit to clarify its position.  The Court's interpretation of Section 1658(b) is reasonably contestable and involves a pure legal question that is potentially dispositive of Plaintiffs' federal claims.

*Fourth*, even assuming that Section 1658(b) applies, this Court's determination (Op. 12-14) that Plaintiffs are entitled to tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), rested on its view that a Section 10(b) claim is capable of triggering *American Pipe* tolling of a Section 18 claim.  Op. 13.  The Court's ruling on this issue squarely departed from numerous district court decisions from around the country based on the differences between the claims as a matter of law.  This highly contested question of law is potentially dispositive of a significant portion of Plaintiffs' case here.

Obtaining the Fifth Circuit's guidance on the key legal issues identified above would facilitate the Court's efficient resolution of this case.  Specifically:  (1) the Fifth Circuit's agreement with Defendants on the SLUSA preemption issue would avoid the need for *any* further proceedings on *any* of Plaintiffs' state-law claims; (2) its rejection of Texas holder claims would streamline consideration of the state-law claims by eliminating an erroneous theory of Texas liability and avoiding any factual dispute over whether Defendants had direct communications with Plaintiffs for the purpose of preventing them from selling their shares; and (3) its agreement with Defendants on the statute of limitations or *American Pipe* tolling would eliminate Plaintiffs' Section 18 claim and thus obviate the

3

need for the parties to develop and dispute facts regarding whether Plaintiffs actually relied on Defendants' allegedly misleading statements and whether Defendants knew any of the alleged misstatements were false or misleading.  For all these reasons, interlocutory review would simplify the Court's (and the parties') adjudication of the key issues, and render this complex consolidated action more manageable.

So long as any one of these issues satisfies the criteria in Section 1292(b), certification for interlocutory appeal of the Court's entire order is warranted.  *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398-99 (5th Cir. 2010) (en banc).  Here, all four issues trigger Section 1292(b).  Accordingly, the Court should grant this motion and certify its order for interlocutory appeal so that the Fifth Circuit can consider the following questions:

- Whether a SLUSA "covered class action" alleging state-law claims is not "based on [state] law" for purposes of SLUSA's preemption provision simply because fewer than 50 plaintiffs in the action allege such claims.

- Whether Texas state law recognizes a "holder" claim, i.e., a securities claim based on a plaintiff's allegation that fraud or misrepresentation caused her to retain (rather than purchase or sell) a security.

- Whether claims under Sections 14(a), 18, or 20(a) of the Securities Exchange Act of 1934 are subject to 28 U.S.C. § 1658(b)'s time limitations for a "private right of action that involves a claim of fraud, deceit, manipulation, or contrivance."

- Whether the filing of a claim under Section 10(b) of the Exchange Act tolls the statute of limitations for claims under Section 18 of the Act pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

Because each of these questions will dictate the course of Plaintiffs' lawsuit and provide Fifth Circuit guidance on important issues of law, Defendants respectfully ask the

Court to certify its order under Section 1292(b) and give the Fifth Circuit the opportunity to resolve them.

## ARGUMENT

Section 1292(b) provides for certification of interlocutory orders for immediate appeal if three statutory criteria are met.  First, the order must "involve[] a controlling question of law."  28 U.S.C. § 1292(b).  A question of law is "controlling" if its resolution is "likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996); *accord In re Denar Restaurants, LLC*, 2010 WL 150161, at *12 (N.D. Tex. Jan. 14, 2010) ("A controlling issue of law is one that could materially affect the outcome of the case.").  Second, the question must be subject to "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  This is not a high bar; the question need only be one "about which reasonable jurists can . . . debate."  *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010) (en banc).  Third, certification is warranted when "an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), including by heading off or reducing costly judicial proceedings or trial, *see, e.g., Van Overdam v. Tex. A&M Univ.*, 2021 WL 4441987, at *2 (S.D. Tex. Mar. 3, 2021) (certifying appeal because "these issues affect the claims and scope of discovery in this case").

When the statutory criteria are met, the district court should exercise its discretion to certify a potential appeal.  *In re McClelland Eng'rs, Inc.*, 742 F.2d 837, 837 (5th Cir. 1984) (holding that refusal to certify was abuse of discretion), *overruled on other grounds*

by *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987); *see also Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (holding district court has a "duty" to certify when statutory criteria are met). Here, because the Court's order satisfies all three criteria on each of the issues identified above, interlocutory review is warranted.

## I.   THE COURT'S HOLDING THAT SLUSA DOES NOT BAR PLAINTIFFS' STATE-LAW CLAIMS IMPLICATES A CONTROLLING QUESTION OF LAW ON WHICH REASONABLE JUDGES COULD DIFFER

SLUSA was enacted to prevent state-law securities actions "alleging fraud from being used to frustrate the objectives of" the Private Securities Litigation Reform Act ("PSLRA"). *Merrill, Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006) (citation omitted). To that end, SLUSA declares that "[n]o covered class action based upon the statutory or common law of any State . . . may be maintained . . . by any private party alleging—a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). It defines a "covered class action" as "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which" (1) "damages are sought on behalf of more than 50 persons"; and (2) "the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." *Id.* § 78bb(f)(5)(B)(ii)(I)-(II).

There is no dispute that this case constitutes a "covered class action" under § 78bb(f)(5)(B)(ii)'s definition. Indeed, the Court's opinion acknowledged that "the opt-out plaintiffs' state-law fraud claims fall within the definition of 'covered class action' because the opt-out plaintiffs' cases have been consolidated with the lead class action,

creating a 'group of lawsuits' that 'collectively seek damages on behalf of more than 50 persons.'"  Op. 6 (quoting ECF No. 265 at 22).  Because this case is a covered class action, Defendants urged this Court to apply § 78bb(f)(1)(A) and dismiss the state-law claims.

This Court held, however, that even though the case qualifies as a "covered class action" under the statutory definition, it is not "based on [state] law" under Section 78bb(f)(1)(A) because fewer than 50 plaintiffs are bringing state-law claims.  Op. 8 (explaining that "only 13 plaintiffs in the consolidated action have pled claims under Texas state law").  In doing so, the Court rejected Defendants' argument that once a case qualifies as a "covered class action," it is also "based on [state] law" to whatever extent it raises state-law claims, thereby triggering dismissal of those state-law claims under SLUSA.  The Court acknowledged that its holding is at odds with multiple federal courts that have endorsed Defendants' interpretation.  Op. 7.

The Court's holding that Section 78bb(f)(1)(A) preempts covered class actions only when 50 or more plaintiffs are bringing state-law claims warrants review under Section 1292(b).  For starters, it implicates a pure question of law—the interpretation of a statute.  *Le v. Holder*, 732 F.3d 425, 427 (5th Cir. 2013).  Moreover, the question is controlling, because its resolution determines whether Plaintiffs' state-law claims must be dismissed.  *See In re BP p.l.c. Secs. Litig.*, 2015 WL 926199, at *2 (S.D. Tex. Mar. 4, 2015) ("[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." (citation omitted)).  Indeed, the Fifth Circuit has explained before that the question "[w]hether federal law preempts the [plaintiffs'] claims" is the type of

7

issue that "certainly falls within the ambit of 28 U.S.C. § 1292(b)." *Spong v. Fid. Nat'l Property & Cas. Ins. Co.*, 787 F.3d 296, 304 (5th Cir. 2015).

The Court's interpretation of Section 78bb(f)(1)(A) is also subject to "substantial ground for difference of opinion." As the Court acknowledged, multiple federal courts have reached the opposite conclusion and held that the determination that an action is a "covered class action" requires dismissal of any state-law claims raised in the action, regardless of the number of plaintiffs raising state-law claims. *See* Op. 7 (citing *In re Fed. Nat'l Mortg. Ass'n Secs., Deriv. & ERISA Litig.*, 503 F. Supp. 2d 25 (D.D.C. 2007); *Gordon Partners v. Blumenthal*, 2007 WL 431864 (S.D.N.Y. Feb. 9, 2007), *adopted*, 2007 WL 1438753 (S.D.N.Y. May 16, 2007), *aff'd*, 293 F. App'x 815 (2d Cir. 2008)); *see also Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1346-47 (11th Cir. 2008) (affirming dismissal under SLUSA of state-law claims brought by one individual plaintiff because the plaintiff's case was consolidated with federal actions that together were on behalf of more than 50 people); *In re AOL Time Warner, Inc. Secs. Litig.*, 503 F. Supp. 2d 666, 672 (S.D.N.Y. 2007) (dismissing under SLUSA consolidated state-law claims by individual plaintiffs that totaled more than 50). The existence of these contrary rulings makes clear that the issue is one "about which reasonable jurists can . . . debate." *Castellanos-Contreras*, 622 F.3d at 399.

Indeed, SLUSA's text provides powerful support for interpreting SLUSA to require dismissal of all state-law claims brought in a covered class action, regardless of how many plaintiffs allege those claims. As relevant here, Section 78bb(f)(1)(A) creates two distinct and independent requirements for dismissal: first, the case must qualify as a "covered class

8

action," and second, that "covered class action" must be "based on [state law]."  All agree that that this case satisfies the statutory definition of "covered class action," including the requirement that damages be "sought on behalf of more than 50 persons."  15 U.S.C. § 78bb(f)(5)(B)(ii).  And the case is also "based on [state] law," because some of the claims in the case assert state-law causes of action.  *See id.* § 78bb(f)(1).  Nothing in SLUSA's text says that for a "covered class action" to be "based on [state] law," more than 50 plaintiffs in the case must be alleging the state-law claims.  On the contrary, the 50-plaintiff requirement is relevant only when considering whether the case qualifies as a "covered class action" in the first place—an inquiry that, under Section 78bb(f)(5)(B)(ii), does not turn on whether 50 plaintiffs are bringing state-law claims.  Defendants believe this straightforward interpretation of SLUSA's text is the best reading of the statute.  At a minimum, though, it is certainly debatable.

The Court rejected Defendants' interpretation based on three cases that it viewed as "highly persuasive authority"—*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 2002 WL 32107216 (S.D. Tex. Aug. 12, 2002) ("*Enron I*"); *In re WorldCom, Inc. Securities Litigation*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004); and *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 535 F.3d 325 (5th Cir. 2008) ("*Enron II*").  *See* Op. 7-8.  But all of those cases involved the proper interpretation of SLUSA's "covered class action" definition—an issue that is not disputed here, where the Court agreed that this case *is* a SLUSA "covered class action."  Op. 6.  And none of them actually supports the Court's conclusion that SLUSA's separate "based on [state] law" requirement is only satisfied when 50 or more plaintiffs in the case are bringing state-law claims.

In *Enron I*, the district court held that a state-law class action filed by eight plaintiffs in Texas court did not qualify as a "covered class action" under SLUSA because—at the time it was filed, and before any consolidation with other cases in federal court—it did not meet the 50-plaintiff requirement set forth in Section 78bb(f)(5)(B).  2002 WL 32107216, at *5.  The court therefore rejected the defendants' argument that SLUSA provided a basis for removing the case to federal court, because SLUSA's removal jurisdiction requires the case to qualify as a "covered class action" under SLUSA "*at the time of removal*"—i.e., before any consolidation with other federal court cases.  *Id.* (emphasis added).  Here, by contrast, this Court rightly recognized that this case *is* a "covered class action."  *Enron I*'s holding that an eight-plaintiff case does not qualify as a "covered class action" is plainly correct and entirely consistent with Defendants' interpretation.[1]

---

[1] The *Enron I* court went on to uphold removal on different grounds unrelated to SLUSA, which resulted in the cases being properly consolidated with the sprawling multidistrict litigation related to Enron's collapse, on behalf of classes of well more than 50 persons. *Cf. In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 529 F. Supp. 2d 644, 699-700 (S.D. Tex. 2006) (noting on class certification that a "reasonabl[e] estimate[]" was "that many thousands of persons" were in the class for one claim alone).  After doing so, the court rejected the defendants' motion to dismiss under SLUSA, relying on its prior conclusion (when considering the SLUSA removal question) that the case was not a "covered class action" at time of removal.  *Enron I*, 2002 WL 32107216, at *10-11.  That was error.  As the Fifth Circuit's decision in *Enron II* later made clear, "[SLUSA] preemption [may] be considered at any time," and does not turn on whether the case was a "covered class action" at the time of removal.  535 F.3d at 341.  In *Enron I*, once the case was properly removed *and consolidated with the other federal cases*, it was no longer merely an eight-plaintiff case.  Rather, because it involved a consolidated class action on behalf of many thousands of persons, it qualified as a "covered class action"—which means that the state-law claims should have been dismissed under Section 78bb(f)(1).

In *WorldCom*, the district court invoked SLUSA to dismiss ten cases involving 293 plaintiffs bringing state-law claims. 308 F. Supp. 2d at 245. The "only dispute" was whether the cases qualified as a SLUSA "covered class action." *Id.* at 243. In holding that that cases *did* qualify as such, the court distinguished *Enron I* on the ground that "here there is not one action on behalf of eight plaintiffs, but Ten Actions on behalf of 293 plaintiffs." *Id.* at 247. *WorldCom* is fully consistent with Defendants' argument that the total number of plaintiffs bears on whether the case satisfies Section 78bb(f)(5)(B)'s definition of "covered class action"—not on whether it satisfies Section 78bb(f)(1)'s separate "based on state law" requirement for dismissal.

In *Enron II*, the Fifth Circuit endorsed *WorldCom*'s analysis of SLUSA's "covered class action" definition. As in *WorldCom*, "the only dispute [was] whether [this] action is a 'covered class action.'" 535 F.3d at 339. Also as in *WorldCom*, the Fifth Circuit concluded that the case at hand was a covered class action, because it involved "more than fifty plaintiffs" across multiple actions proceeding together in the Southern District of Texas. *Id.* at 340. This case is similar in all relevant respects: As this Court acknowledged, this case is a "covered class action" because Plaintiffs' claims "have been consolidated with the lead class action, creating a 'group of lawsuits' that 'collectively seek damages on behalf of more than 50 persons.'" Op. 6 (quoting ECF No. 265 at 22). Nothing in *Enron II* purported to interpret SLUSA's "based on state law" requirement, much less hold that the requirement is satisfied only if 50 or more plaintiffs are bringing state-law claims.

In short, the SLUSA preemption issue plainly presents a controlling question of law on which reasonable judges could disagree—and which would fully dispose of Plaintiffs'

state-law claims.  The Fifth Circuit should be allowed to decide whether SLUSA bars state-law claims in these circumstances.

## II.   THE COURT'S DISCUSSION OF "HOLDER" CLAIMS UNDER TEXAS STATE LAW IMPLICATES A CONTROLLING QUESTION OF LAW ON WHICH REASONABLE JUDGES COULD DIFFER

The Orbis Plaintiffs assert Texas state-law fraud claims based on the theory that Defendants' alleged misrepresentations led Plaintiffs to *retain* (rather than *purchase or sell*) AMR stock.  This theory—commonly known as a "holder" claim—is widely disfavored, and is not recognized by Texas courts as a viable theory of state securities law.[2] In their motion to dismiss, Defendants urged this Court to reject the Orbis Plaintiffs' state-law holder claims on the alternative ground that such claims are categorically not cognizable under Texas law.  The Court declined to dismiss these claims "[a]t this stage of the litigation."  Op. 9.  The issue of whether Texas law recognizes the availability of holder claims warrants interlocutory review.

A federal court sitting in diversity "in the absence of on-point [state] law" is required to make its best "*Erie* guess as to how the [state] Supreme Court would decide the question."  *Keen v. Miller Env't Grp., Inc.*, 702 F.3d 239, 243-44 (5th Cir. 2012) (citation omitted).  A federal court's "*Erie* guess" as to the content of state law is a purely legal

---

[2] The lone Texas state court decision appearing to recognize holder claims was subsequently withdrawn and is not precedential.  *Shirvanian v. DeFrates* (*Shirvanian I*), No. 14-02-00447-CV, 2004 Tex. App. LEXIS 182, at *53–59 (Jan. 8, 2004), opinion withdrawn and substituted by *Shirvanian v. DeFrates* (*Shirvanian II*), 161 S.W.3d 102 (Tex. App. 2004); *see Cont'l Cas. Co. v. Street.*, 364 S.W.2d 184, 188 (Tex. 1963) ("Inasmuch as [an earlier opinion] has been withdrawn by the Court of Civil Appeals[,] it no longer possesses any binding effect." (citing *Park v. Essa Tex. Corp.*, 311 S.W.2d 228 (Tex. 1958))).

question. *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000). Here, resolution of the legal question whether Texas law rejects holder claims "categorically" (Op. 9) is "controlling" under Section 1292(b), because if Texas law categorically *does not* recognize such claims, it would terminate the Orbis Plaintiffs' holder claims altogether. *See In re BP p.l.c. Secs. Litig.*, 2015 WL 926199, at *2.

Defendants have advanced strong arguments that the Texas Supreme Court would not recognize holder claims. That court has made clear that the Texas Securities Act (TSA) should be "interpreted in harmony with federal securities law," further noting that the TSA itself instructs that 'this Act may be construed and implemented to effectuate its general purpose to maximize coordination with federal and other states' law and administration.'" *Sterling Tr. Co. v. Adderley*, 168 S.W.3d 835, 840 (Tex. 2005) (citation and alteration omitted)). Notably, the Supreme Court of the United States rejected holder claims under the federal securities laws almost five decades ago. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). As the Supreme Court explained, such claims are "largely conjectural," "speculative," and dependent on "the plaintiff's subjective hypothesis," and therefore allow bystanders to "await developments on the sidelines without risk, claiming that the inaccuracies in disclosure caused nonselling in a falling market" and thus "caused them to allow retrospectively golden opportunities to pass." *Id.* at 734-35, 747. Many other states have rejected holder claims under their own securities laws for similar reasons.[3]

---

[3] *See, e.g., Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1137, 1141 (Del. 2016); *see also Rivers v. Wachovia Corp.*, 665 F.3d 610, 618-19 (4th Cir. 2011) (North Carolina and South Carolina law); *Chanoff v. U.S. Surgical Corp.*, 857 F. Supp. 1011, 1018-19 (D. Conn.

Given all this, it is not surprising that the only Texas Supreme Court case addressing holder claims has cast significant doubt about whether such claims are ever viable. In *Grant Thornton LLP v. Prospect High Income Fund*, plaintiffs advanced a holder theory of fraud, claiming "that they held [securities] when they otherwise would not have" "based on" various statements made in defendant Grant Thornton LLP's auditor's reports. 314 S.W.3d 913, 915 (Tex. 2010). The court emphasized that the "U.S. Supreme Court has refused to recognize holder claims under federal securities law, primarily due to their speculative nature and difficulties in proof," and noted that at least one federal district court opinion "[p]redict[ed] 'that [the Texas Supreme] Court would limit, if not totally exclude, holder claims under Texas common law fraud.'" *Id.* at 926-27, 929-30 (first citing *Blue Chip Stamps*, 421 U.S. at 734-35, 746; then quoting *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 2007 WL 789141, at *13 (S.D. Tex. Mar. 12, 2007)). The court ultimately rejected the holder claim at issue in *Grant Thornton*, explaining that holder claims are never viable when they do not "involve a direct communication between the plaintiff and the defendant." *Id.* at 930. In light of that narrow ruling, it had no need to decide the broader question of whether such claims are *ever* actionable. *Id.*

In rejecting Defendants' request for dismissal, this Court rightly noted that *Grant Thornton* "left open" the question whether holder claims are barred "categorically." Op. 9

---

1994) (Connecticut law), *aff'd*, 31 F.3d 66 (2d Cir. 1994); *Arent v. Distrib. Scis., Inc.*, 975 F.2d 1370, 1374 (8th Cir. 1992) (Minnesota law); *Crocker v. FDIC*, 826 F.2d 347, 351-52 (5th Cir. 1987) (Mississippi law); *see generally* Edward T. McDermott, Essay, *Holder Claims—Potential Causes of Action in Delaware and Beyond?*, 47 Del. J. Corp. L. 935 (2017) (cataloguing state-law disagreement on this issue).

14

(citation omitted).  But the Texas Supreme Court's broader description of such claims as "speculative," when considered alongside the other considerations described above, all suggests that the court would not recognize such claims if forced to squarely resolve that issue.  At a minimum, though, that issue is fairly contestable, especially given *Grant Thornton*'s own recognition of the heavy criticism holder claims have received across the country.  The issue of whether Texas law *allows* such claims presents an independent basis for interlocutory review under Section 1292(b).

## III.   THE COURT'S TIME LIMITATION DECISIONS ON PLAINTIFFS' FEDERAL CLAIMS IMPLICATE CONTROLLING QUESTIONS OF LAW ON WHICH REASONABLE JUDGES COULD DIFFER

In addition to their state-law claims, Plaintiffs allege federal claims under Sections 14(a), 18, and 20(a) of the Securities Exchange Act of 1934.[4]  Defendants moved to dismiss each of these claims because they are subject to and barred by the Exchange Act's three-year statute of repose, rather than subject to the more generous two-year statute of limitations and five-year statute of repose under 28 U.S.C. § 1658(b), enacted as part of the Sarbanes-Oxley Act of 2002 ("SOX").  Moreover, even assuming the more generous time limits of Section 1658(b) apply, Defendants argued that Plaintiffs' Section 18 claims are nonetheless barred because that provision's two-year statute of limitations expired before Plaintiffs filed their complaint.

---

[4] As Defendants noted in their motion to dismiss the Individual Plaintiffs' claims, Defendants acknowledge the Court's denial of a motion to dismiss the Class Action's claims under Sections 10(b) of the Exchange Act (and corresponding Section 20(a) claims); Defendants therefore did not move to dismiss the Individual Plaintiffs' parallel claims under these provisions, but have reserved all rights to revisit those theories at a later stage. *See* ECF No. 265 at 1 n.1.

This Court rejected these arguments, concluding that Section 1658(b) extends the repose period for all three of Plaintiffs' federal claims, and that the Section 18 claims were timely because the statute of limitations was tolled by the filing of Section 10(b) claims in the Class Action under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). Both of these determinations independently warrant interlocutory review under Section 1292(b).

### A.  The Court's Interpretation of Section 1658 Warrants Interlocutory Review

Section 18 of the Securities Exchange Act provides a one-year statute of limitations and three-year statute of repose for any claims brought under that provision.  15 U.S.C. § 78r(c).  In 1991, the Supreme Court held that the same one-year statute of limitations and three-year statute of repose contained in multiple express causes of action in the Exchange Act (including Section 18) govern the time to file implied causes of action under the Act, like those under Sections 10(b) and 14(a).  *See Lampf, Pleva, Lipkind, Prupis & Petrigrow v. Gilbertson*, 501 U.S. 350, 359-61 (1991); *In re Exxon Mobil Corp. Secs. Litig.*, 500 F.3d 189, 194 (3d Cir. 2007).  In SOX, Congress extended those periods to a two-year statute of limitations and five-year statute of repose for certain "private right[s] of action" under the securities laws, but *only* if the right of action "involves a claim of fraud, deceit, manipulation, or contrivance."  28 U.S.C. § 1658(b).

Here, as this Court recognized, none of Plaintiffs' Section 14(a), 18, or 20(a) claims expressly requires the plaintiff to plead or prove a defendant's "fraud, deceit, manipulation, or contrivance."  Unlike other provisions of the securities laws, a Section 14(a) or 18 claim

16

may be sustained if the plaintiff pleads and proves mere negligence on the defendant's part, *see* 3-4 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* §§ 12:51, 12:177, (June 2023 update) (noting no need to prove scienter for Sections 14(a), 18 respectively). And when a Section 20(a) claim for secondary liability is predicated (as here) on proof of a Section 14(a) claim, the Section 20(a) claim does not require proof of scienter either. *See, e.g.*, *In re Plains All Am. Pipeline, L.P. Secs. Litig.*, 307 F. Supp. 3d 583, 617 (S.D. Tex. 2018).

For these reasons, Defendants argued that Section 1658(b) is inapplicable to the Section 14(a) and 20(a) claims on their face, as none of them requires proof of fraud or similar knowing misconduct. And for Section 18, Section 1658(b) is doubly inapplicable because Section 18 explicitly provides its own limitations periods, which SOX did not repeal. *See* 15 U.S.C. § 78r(c). Whether Section 1658(b)'s limitations period applies to these claims raises a pure question of law. *See Newby v. Enron Corp.*, 542 F.3d 463, 468 (5th Cir. 2008). Moreover, as Plaintiffs concede, their Sections 14(a), 18, and 20(a) claims are untimely unless Section 1658(b) applies, making this question controlling and potentially dispositive for each of those claims.

On the merits, Plaintiffs argued that even though their claims do not *require* them to plead or prove fraud, they nonetheless triggered Section 1658(b)'s two-year statute of limitations and five-year statute of repose by alleging fraud anyway. This Court accepted those arguments. Op. 11-12. That legal conclusion at a minimum is a contestable reading of the statute's text, and it conflicts with the decisions of three circuit courts and multiple district judges in this circuit. This issue therefore warrants interlocutory review.

There are certainly substantial grounds for disagreement on this issue.  This Court rejected Defendants' arguments, principally on the basis of Plaintiffs' individual allegations here that "sound in fraud," even though the relevant statutory claims require only negligence as an element.  Op. 11-12.  The Court analogized to case law applying the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b) to securities claims that sound in fraud, even when the underlying claim does not require proof of fraud as an element.  *Id.*  But the analogy does not fit.  The text of Section 1658(b)'s limitations period applies to "*a private right of action* that involves *a claim* of fraud, deceit, manipulation, or contrivance."  28 U.S.C. § 1658(b) (emphasis added).  The focus is on the "right of action" or the "claim," i.e., the elements of what any plaintiff must plead and prove as a matter of law—not the factual allegations that a specific, individual plaintiff chooses to insert into her complaint.  By contrast, the language of PSRLA and Rule 9(b) explicitly focus on an individual plaintiff's *allegations*.  Specifically, the PSRLA imposes a particularity requirement on "any private action arising under this chapter in which the plaintiff *alleges*" a material misstatement or omission, 15 U.S.C. § 78u-4(b)(1) (emphasis added), and Rule 9(b) imposes a similar particularity requirement "[i]n *alleging* fraud or mistake . . . ," Fed. R. Civ. P. 9(b) (emphasis added).

For these reasons, every circuit to consider whether Section 1658(b) applies to a Section 14(a) claim (and any corresponding 20(a) claim) has concluded that it does not.  *See DeKalb Cnty. Pension Fund. v. Transocean Ltd.*, 817 F.3d 393, 408-09 (2d Cir. 2016) (cited at Op. 10); *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 668 (4th Cir.

18

2015); *In re Exxon Mobil Corp. Secs. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007). That approach—focused on the elements a *plaintiff* must plead and prove—supports the same result under Section 18, which at most requires a *defendant* to raise good faith as a defense. *See In re Enron Corp. Secs. Litig.*, 465 F. Supp. 2d 687, 711-12 (S.D. Tex. 2006) (adopting this view and compiling cases).

In reaching the opposite conclusion, the Court also relied on two Fifth Circuit decisions which predated the other circuits' decisions—*Margolies v. Deason*, 464 F.3d 547 (5th Cir. 2006), and *Blaz v. Belfer*, 368 F.3d 501 (5th Cir. 2004). *See* Op. 10, 12. The Court suggested these decisions control the outcome here, but the language from both opinions on which the Court relied appears to be *dicta*. After all, the question whether Section 1658(b) applied to the cause of action at issue was unnecessary to the Fifth Circuit's holding in each case, and the issue was neither briefed by the parties nor central to the appeal.[5] At a minimum, Defendants' view that the language from *Margolies* and *Blaz* was non-binding *dicta* is reasonable. If directly confronted with the question, the Fifth Circuit could readily adopt the position urged by Defendants and adopted by the later Second, Third, and Fourth Circuit decisions. *See supra* at p. 18-19. Given all this, the Fifth Circuit

---

[5] *See* Appellants' Br. 13-21, *Margolies v. Deason*, 464 F.3d 547 (5th Cir. 2006) (2005 WL 6133917) (assuming § 1658(b) applies and arguing about whether it applied retroactively); Appellee's Br. 16-20, *Margolies v. Deason*, 464 F.3d 547 (5th Cir. 2006) (2005 WL 6133918) (same); Appellant's Br. 7-20, *Blaz v. Belfer*, 368 F.3d 501 (5th Cir. 2004) (2003 WL 25655782) (arguing about whether SLUSA had an impermissible retroactive effect); Appellees' Br. 5-17, *Blaz v. Belfer*, 368 F.3d 501 (5th Cir. 2004) (2003 WL 25655806) (same).

should have the opportunity to decide whether to accept an interlocutory appeal of this issue and clarify the controlling circuit law.

### B.   The Court's Interpretation of *American Pipe* Tolling Warrants Interlocutory Review

Even if the Court's interpretation of Section 1658(b), standing alone, did not warrant interlocutory review, the Court's application of *American Pipe* tolling independently supports certification.   Plaintiffs do not contest that their Section 18 claims are untimely—even under Section 1658(b)—unless they can take advantage of tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), based on the filing of the Class Action's Section 10(b) claims.   Whether such tolling is available turns on a pure legal question that—if resolved in Defendants' favor—would require dismissal of that claim.

*American Pipe* tolling only applies to claims that rely on "the same evidence, memories, and witnesses as the subject matter of the original class suit."   *Id.* at 562 (Blackmun, J., concurring).   In such circumstances, the "class complaint notifies the defendants . . . of the substantive claims being brought against them" and therefore "defendant[s] will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class."   *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983).   But when a plaintiff attempts to "assert[] claims that differ from those raised in the original class suit," those claims "are not protected under *American Pipe* and are barred by the statute of limitations."   *Id.* at 355 (Powell, J., joined by Rehnquist & O'Connor, JJ., concurring).   Otherwise, a defendant would face "prejudice arising from

claims for which he has received no prior notice" and against which he could not adequately defend. *Id.* (quoting *American Pipe*, 414 U.S. at 562 (Blackmun, J., concurring)).

Here, the sole predicate for tolling is the Section 10(b) claim asserted in the Class Action. But as Defendants have argued, a Section 10(b) claim does not concern the same "subject matter" and the "same evidence, memories, and witnesses" as a Section 18 claim, as a matter of law. That is because a Section 10(b) claim and a Section 18 claim involve the production and proof of fundamentally different evidence. Most significantly, a Section 18 claim places the burden of proof of scienter on the *defendant*, requiring her to prove her own good faith as a defense. By contrast, in a Section 10(b) claim the *plaintiff* bears the burden of proving scienter. A defendant faced with a Section 10(b) claim would lack any notice of the need to develop evidence to support her good-faith defense to a subsequent Section 18 claim. As numerous courts across the country have recognized, this fundamental distinction precludes tolling for precisely these reasons. *See, e.g.*, *Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, 2011 WL 13220509, at *3 (C.D. Cal. Aug. 22, 2011); *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 2011 WL 1226983, at *11 (D. Mass. Mar. 31, 2011); *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 2003 WL 25861087, at *18-19 (N.D. Ohio June 4, 2003); *Lindner Divided Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54-55 (D. Mass. 1995).

This Court concluded, however, that a Section 10(b) claim *can* toll the time limit for a Section 18 claim as a matter of law if the claims arise out similar facts. Op. 13. That determination warrants interlocutory review. For the reasons noted above, the Court's

holding is readily contestable.  Moreover, courts that have disagreed with this Court's reading of *American Pipe* have reached their result because a Section 18 claim and a Section 10(b) claim are categorically distinct as a matter of law.  That is a pure legal question that does not depend on the particular allegations in the Plaintiffs' complaint, or any of the underlying factual issues in this case.  And the question is controlling because Plaintiffs must succeed on *American Pipe* tolling even if they are correct about the application of § 1658(b) to their Section 18 claims.  If Defendants are right, the Section 18 claims are untimely even under the more expansive SOX limitations period.

## IV.   AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS CASE

For the reasons explained above, this Court's dismissal order resolved four controlling legal issues—SLUSA preemption, Texas holder claims, Section 1658(b)'s statute of limitations, and *American Pipe* tolling—on which there is already substantial disagreement among reasonable judges across federal and state courts.  Resolution of these issues by the Fifth Circuit could also "materially advance the ultimate termination of this case," insofar as it could eliminate most of Plaintiffs' claims and narrow the issues in dispute.  28 U.S.C. § 1292(b).  All of the Section 1292(b) criteria are satisfied, and interlocutory review should therefore be granted.

Resolving the open questions of law discussed above would substantially streamline the issues for summary judgment and trial.  Most importantly, if the Fifth Circuit agrees with Defendants on SLUSA preemption, it would eliminate *all* of Plaintiffs' state-law claims.  That result would substantially streamline this case, limiting the scope of both this

action and the Class Action to Plaintiffs' federal securities claims.   Doing so would "eliminate complex issues," "simplify" both summary judgment proceedings and (if necessary) the trial, and make the overall litigation both "easier and less costly." *Coates v. Brazoria Cnty.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013) (quoting *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)).

The case would also be streamlined if the Fifth Circuit agrees with Defendants' alternative argument that Texas law does not recognize holder claims under any circumstances.   That ruling would eliminate one of the Orbis Plaintiffs' major theories of recovery, and with it a potentially contentious factual dispute.   This Court's ruling indicated that the legal viability of a Texas holder claim may turn on the factual question of whether the Defendants had direct communications with Plaintiffs for the purpose of preventing them from selling their shares.   Op. 9.   If the Fifth Circuit agrees with Defendants that holder claims are categorically foreclosed under Texas law, the parties and the Court will not need to devote resources to adjudicating that issue.   Moreover, eliminating the holder claim from the case at this stage will avoid any potential need for a new trial if the Orbis Plaintiffs win on their Texas claims in a way that relies on that claim.

Obtaining interlocutory guidance from the Fifth Circuit on the various statute-of-limitations issues would also materially advance the resolution of the case.   All agree that if Defendants are right that Section 1658(b) does not apply here, their Sections 14(a), 18, and 20(a) claims are untimely and must be dismissed.   Eliminating these federal claims from the case would narrow the range of disputes to be adjudicated at summary judgment or at trial.   *See Coates*, 919 F. Supp. 2d at 867.   Indeed, any Fifth Circuit decision disposing

of Plaintiffs' Section 18 claim would obviate the need for the parties to develop and dispute facts at summary judgment or trial regarding whether Plaintiffs' actually read and relied on Defendants' allegedly misleading statements. *See Newby v. Enron Corp.*, 540 F. Supp. 2d 800, 830 (S.D. Tex. 2007) ("Actual reliance is an element of a § 18 claim."). It would also eliminate the need for each Defendant to affirmatively prove that he or she had no knowledge that each alleged misstatement underlying Plaintiffs' Section 18 claim was false or misleading. *See* 15 U.S.C. § 78r (providing an affirmative defense upon proof of "good faith" and "no knowledge that such statement was false or misleading"). And for similar reasons, a Fifth Circuit decision rejecting *American Pipe* tolling for Plaintiffs' Section 18 claim would likewise simplify and streamline the case.

All of Section 1292(b)'s criteria for interlocutory review are therefore satisfied. This Court should accordingly certify its order and let the Fifth Circuit clarify which of Plaintiffs' claims—if any—should be allowed to proceed.

## CONCLUSION

For all the foregoing reasons, this Court should certify its Memorandum Opinion and Order dated June 7, 2023 (ECF No. 343) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: July 7, 2023                    Respectfully submitted,

                                        /s/  *J. Christian Word*
                                        J. Christian Word
                                        Attorney-in-Charge for Defendants
                                        D.C. Bar No. 461346
                                        S.D. Tex. Bar No. 3398485
                                        **LATHAM & WATKINS LLP**

555 Eleventh Street, NW
Suite 1000
Washington DC 20004
(202) 637-2200
Christian.Word@lw.com

Of Counsel:
Heather A. Waller (*pro hac vice*)
IL Bar No. 6302537
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767

Roman Martinez (*pro hac vice* pending)
D.C. Bar No. 1001100
Matthew Peters (*pro hac vice*)
D.C. Bar No. 1015700
Laura E. Bladow (*pro hac vice*)
D.C. Bar No. 1740343
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 673-2201
Matthew.Peters@lw.com
Laura.Bladow@lw.com

Ashley Gebicke (*pro hac vice*)
CA Bar. No. 330300
**LATHAM & WATKINS LLP**
12670 High Bluff Drive San Diego, CA
92130 Tel: (858) 523-5400
Fax: 858-523-5450
Ashley.Gebicke@lw.com

*Counsel for Defendants Alta Mesa
Resources, Inc., f/k/a Silver Run
Acquisition Corporation II; Riverstone
Holdings LLC; Harlan H. Chappelle;
Stephen S. Coats; Michael E. Ellis;
William D. Gutermuth; James T.*

*Hackett; Pierre F. Lapeyre, Jr.; David*
*M. Leuschen; Donald R. Sinclair;*
*Ronald J. Smith; Jeffrey H. Tepper;*
*Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel.: (213) 615-1700
Fax: (213) 615-1750
JSchreiber@winston.com

*Co-Counsel for Harlan H. Chappelle,*
*Michael E. Ellis*

26

## **CERTIFICATE OF CONFERENCE**

I certify that on July 7, 2023, I conferred by phone with counsel for the Alyeska and Orbis Plaintiffs who stated that they are opposed to this motion.

/s/ *Heather A. Waller*
Heather A. Waller

## **CERTIFICATE OF SERVICE**

I certify that on July 7, 2023, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ *J. Christian Word*
J. Christian Word