# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| | Judge George C. Hanks, Jr. |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., | No. 4:22-cv-01189 |
| Plaintiffs, | |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.* | |
| Defendants. | |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | No. 4:22-cv-2590 |
| Plaintiffs, | |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.*, | |
| Defendants. | |

## WILLIAM MCMULLEN'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, William McMullen ("Mr. McMullen") submits this motion for summary judgment on the Section 10(b), Rule 10b-5, common law fraud, statutory fraud, and Section 20(a) claims brought against him in the consolidated action's operative complaint and the opt-out complaints. Because Mr. McMullen was never compensated or received any benefit from the relevant business combination, this Court would have to find Mr. McMullen "defraud[ed] investors . . . for the sheer joy of it rather than for profit." *See S.E.C. v. Steadman*, 967 F.2d 636, 642 (D.C. Cir. 1992). This the law does not allow. The record is clear that Mr. McMullen did not make any misrepresentation that would subject him to liability for the claims raised against him. The Court should thus grant summary judgment in favor of Mr. McMullen for at least the following two reasons. ***First***, there are insufficient facts in the record to support that Mr. McMullen had the requisite scienter regarding any of the challenged statements. ***Second***, Mr. McMullen is not a "maker" of the alleged misstatements or omissions, and any alleged misstatements statements otherwise are non-actionable.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................... 1

II.    NATURE AND STAGE OF PROCEEDINGS .................................... 3

III.   ISSUE TO BE RULED UPON ................................................... 4

     A.    Whether Mr. McMullen is entitled to judgment as a matter of law regarding Plaintiffs' claims under Section 10(b) of the Exchange Act, Rule 10b-5, and the Texas common law and statutory fraud claims against Mr. McMullen. ....................................................... 4

     B.    Whether Mr. McMullen is entitled to judgment as a matter of law regarding the Section 20(a) claims. ............................................. 4

IV.   STATEMENT OF FACTS ........................................................ 4

V.    LEGAL STANDARD ............................................................. 7

VI.   ARGUMENT ...................................................................... 9

     A.    Plaintiffs Cannot Prove Mr. McMullen Had the Requisite Scienter to Maintain a Fraud Claim. ................................................. 9

     B.    Mr. McMullen was not the "Maker" of the Alleged Misstatements. .......... 17

     C.    For the Same Reasons that Mr. McMullen was not a Maker of the Alleged Misstatements, He did not have Control Over Any Alleged Maker to Sustain a Section 20(a) Claim. ...................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ..................................................................... 11

*Am. Eagle Airlines, Inc., v. Air Line Pilots Assn., Int'l*,
   343 F.3d 401 (5th Cir. 2003) ....................................................................... 8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................... 8

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .................................................................................. 19

*Boudreaux v. Swift Transp. Co., Inc.*,
   402 F.3d 536 (5th Cir. 2005) ....................................................................... 8

*Carlton v. Cannon*,
   184 F. Supp. 3d 428 (S.D. Tex. 2016) ....................................................... 20

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
   497 F.3d 546 (5th Cir. 2007) ....................................................................... 8

*Coleman v. BP Expl. & Prod., Inc.*,
   19 F.4th 720 (5th Cir. 2021) ........................................................................ 8

*Fin. Acquisition Partners LP v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006) ....................................................................... 9

*Ho v. Duoyuan Glob. Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012) ....................................................... 17

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Circ. 2008) ................................................................... 10

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
   237 F. Supp. 3d 492 (S.D. Tex. 2017) ....................................................... 15

*Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*,
   387 F. Supp. 2d 691 (S.D. Tex. 2004) ......................................................... 9

*Janus Cap. Grp., Inc., v. First Derivative Traders*,
564 U.S. 135 (2011) ......................................................................... 2, 17, 18

*Larsen v. Carlene Langford & Assocs., Inc.*,
41 S.W.3d 245 (Tex. App.—Waco 2001, pet. denied) ................................ 10

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019) ................................................................... 17

*In re MRU Holdings Sec. Litig.*,
769 F. Supp. 2d 500 (S.D.N.Y. 2011) ................................................ 15

*Petrie v. Elec. Game Card Inc.*,
2011 WL 165402 (C.D. Cal. Jan. 12, 2011) ....................................... 17

*R2 Investments LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) .............................................................. 9

*Robbins v. Capozzi*,
100 S.W.3d 18 (Tex. App.—Tyler 2002, no pet.) ................................. 9

*S.E.C. v. Farmer*,
No. 4:14-CV-2345, 2015 WL 5838867 (S.D. Tex. Oct. 7, 2015) ............ 19

*S.E.C. v. Steadman*,
967 F.2d 636 (D.C. Cir. 1992) .......................................................... 13

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) ..................................................... 9, 10, 20

*Tuchman v. DSC Communications Corp.*,
14 F.3d 1061 (5th Cir. 1994) ........................................................... 11

*In re Veon Ltd. Sec. Litig.*,
2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) ..................................... 18

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................. 13

*Wyatt v. Hunt Plywood Co.*,
297 F.3d 405 (5th Cir. 2002) ............................................................. 7

**Statutes**

Exchange Act Rule 10(b) .................................................................... 2

Exchange Act Rule 10b-5....................................................................*passim*

Exchange Act Section 10(b) ...........................................................*passim*

Exchange Act Section 20(a) ...............................................1, 4, 21, 22

Tex. Bus.& Com. Code § 27.01 .................................................4, 9

**Rules**

Fed. R. Civ. P. 56(a) ..............................................................................7

# I.    INTRODUCTION

As set forth in the motion filed by HPS Investment Partners, LLC ("HPS"), Bayou City Energy Management, LLC ("Bayou City"), and ARM Energy Holdings LLC ("ARM Energy") on August 31, 2023 [Dkt. 423] ("Co-Defendants' Motion"), Plaintiffs' have asserted certain securities claims, including claims relating to asserted violations of Section 20(a).   For the reasons established in Co-Defendants' Motion, Bayou City and Mr. McMullen (collectively, the "Bayou City Defendants") are entitled to judgment as a matter of law.   As to Mr. McMullen and the Section 10(b) and Rule 10b-5 claims asserted against him, there is no genuine dispute as to any material fact and he is similarly entitled to judgment as a matter of law.   The same is true for the Texas common law and statutory fraud claims (the "Texas Fraud Claims"), and the Section 20(a) claims levied against him.

In March of 2021, this Court held in its Memorandum Opinion and Order on Defendants' Motions to Dismiss that "[t]he Court cannot opine at this point whether Plaintiffs' claims will survive a motion for summary judgment, but Plaintiffs have established an entitlement to discovery." (Dkt. 160 at 29).   Now, over two years later, Plaintiffs have concluded discovery but with little to show for it.

Since beginning discovery, Defendants have provided Plaintiffs with thousands of documents and responded to dozens of discovery requests.   Defendants have also presented dozens of individuals to be deposed, to which Plaintiffs have spent hundreds of hours questioning these individuals.   In fact, with Mr. McMullen alone, Plaintiffs spent approximately fourteen hours on June 6, 2023 deposing him in his individual and 30(b)(6)

capacity as the founder of Bayou City.[1]  Despite all of this, Plaintiffs have not identified

any evidence to demonstrate Mr. McMullen's alleged fraud under Rule 10(b) and Section

10b-5, or under Texas common and statutory law.  In fact, Plaintiffs never even presented

the 10-K to Mr. McMullen, nor did they ask a single question about the statements that

form the basis of Plaintiffs' claims against him.  While the Court afforded Plaintiffs the

opportunity to proceed with discovery, the uncontroverted evidence in the record

demonstrates Plaintiffs cannot carry the burden of proving the essential elements of their

case.

*First*, there is no genuine dispute as to whether Mr. McMullen had the requisite

mental state regarding any of the challenged statements or omissions.  Nothing in the record

supports that Mr. McMullen had any knowledge of any purported falsity of the alleged

misstatements, or that Mr. McMullen otherwise knew anything related to these statements

before they were made.  Rather, everything in the record points to his incentives ***against***

providing false information in the 2017 Form 10-K.  Accordingly, no reasonable jury could

find for Plaintiffs, and Mr. McMullen is entitled to summary judgment as a matter of law.

*Second*, regardless of any mental state, Mr. McMullen is not a "maker" of the

alleged misstatements or omissions.  According to the Supreme Court's ruling in *Janus

Capital Group, Inc., v. First Derivative Traders*, Mr. McMullen cannot be held liable for

a primary violation of Section 10(b) premised principally upon statements over which he

had no "ultimate authority."  564 U.S. 135, 142 (2011).  Except for a Form 10-K that Mr.

---

[1]  *See* Ex. A, June 6, 2023 Dep. Tr. of W. McMullen (start time at 8:37 a.m.; end time at 10:37 p.m.).

McMullen signed, Plaintiffs do not attribute to Mr. McMullen any purported false statements or provide evidence suggesting that he had "ultimate authority" over any such statements. And the alleged misstatements in the Form 10-K at issue are classic non-actionable statements. For these reasons, Mr. McMullen is entitled to judgment as a matter of law.

## II. NATURE AND STAGE OF PROCEEDINGS

On December 19, 2019, this Court consolidated three securities class actions against Alta Mesa under the instant caption.[2] On January 16, 2020, the Court entered a stipulation filed by Plaintiffs' counsel assigning Lead Plaintiff status to FNY and Pension Fund and making Camelot an additional representative. Plaintiffs filed their amended complaint on March 16, 2020, naming additional defendants, including Bayou City. Plaintiffs filed additional corrected amended complaints on March 19, 2020; April 6, 2020; and December 6, 2021. On January 24, 2022, the Court granted a motion to certify the class.

On April 13, 2022, the Alyeska Plaintiffs[3] filed a complaint naming Defendants, including Bayou City and Mr. McMullen, as part of their opt-out suit in Civil Action No. 4:22-cv-01189. Then on August 3, 2022, the Orbis Plaintiffs filed a complaint naming defendants, including Bayou City and Mr. McMullen, as part of their opt-out suit in Civil Action No. 4:22-cv-02590. On November 30, 2022, the Court consolidated the class

---

[2]  Plaintiff Plumbers and Pipefitters National Pension Fund ("Pension Fund") filed its original complaint on January 30, 2019; Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust ("Camelot"), filed its original complaint on March 14, 2019; and Plaintiff FNY Partners Fund LP ("FNY") filed its original complaint on March 19, 2019.
[3]  Any capitalized terms not defined herein have the meanings ascribed to them in the Co-Defendants' Motion.

claims with the opt-out claims under the instant caption. The Class Action Complaint ("CAC") is the operative complaint for this consolidated action.[4]

Defendant William McMullen now respectfully submits this Motion seeking judgment on the claims brought against him under Section 10(b) and Rule 10b-5, Texas common law, and Texas Business and Commerce Code section 27.01.

### III. ISSUE TO BE RULED UPON

A. **Whether Mr. McMullen is entitled to judgment as a matter of law regarding Plaintiffs' claims under Section 10(b) of the Exchange Act, Rule 10b-5, and the Texas common law and statutory fraud claims against Mr. McMullen.**

B. **Whether Mr. McMullen is entitled to judgment as a matter of law regarding the Section 20(a) claims.**

### IV. STATEMENT OF FACTS

Mr. McMullen incorporates the facts as laid out in Co-Defendants' Motion. For ease of reference, we point the Court to the few allegations pertaining to Mr. McMullen.

Mr. McMullen is the Founder and Managing Partner of Bayou City, an "energy-focused private equity firm."[5] In January 2016, BCE-STACK Development LLC, a fund advised by Bayou City, entered a joint development agreement with Oklahoma Energy Acquisitions, LP, a subsidiary of Alta Mesa Holdings, LP ("AMH").[6] Under that joint development agreement, Bayou City "committed to fund 100% of AMH's working interest

---

[4] The Opt-Out Plaintiffs' complaints contain the same allegations brought in the CAC. Counsel for the Opt-Out Plaintiffs acknowledged at the March 28, 2023 hearing that "the claims . . . in the class action complaint are essentially substantively identical to the claims in the [Opt-Out] complaint[s]." Dkt. 318 at 36:4–17. For this reason, Mr. McMullen's arguments center on the CAC but apply with equal force to the Opt-Out Plaintiffs' complaints.

[5] CAC ¶¶ 56, 61.

[6] *Id.* at ¶¶ 61, 89.

share up to the maximum of $3.2 million in drilling and complete costs per well ($64 million per tranche) in exchange for an 80% working interest in each well."[7]  Plaintiffs also note that Bayou City subsequently purchased 40% of non-parties High Mesa Holdings GP, LLC and High Mesa Holdings LP (together, "High Mesa"), which had interests in AMH.[8]

On March 31, 2017, Mr. McMullen met with Defendant James Hackett of Defendant Riverstone "to discuss Bayou City's investment in upstream company AMH."[9] Following a series of other discussions, Silver Run Acquisition Corporation II ("Silver Run II"), proposed to acquire AMH and a related midstream business, Kingfisher Midstream LLC ("Kingfisher") (the "Business Combination").[10]  Silver Run II's board issued the proxy statement on January 19, 2018 (the "Proxy Statement") to solicit Silver Run II stockholders' approval for the Business Combination.[11]  The stockholders approved the transaction, which closed on February 6, 2018.[12]  Silver Run II was then renamed Alta Mesa.

As part of the Business Combination, High Mesa contributed its interest in AMH and received a 36.2 percent economic interest in SRII Opco, Alta Mesa's subsidiary operating company following the transaction.[13]  Based on Bayou City's alleged 40 percent interest in High Mesa, it received around 14 percent of the economic interest in SRII Opco.

---

[7]  *Id.* at ¶ 90.
[8]  *Id.* at ¶ 91.
[9]  *Id.* at ¶ 86.
[10]  *Id.* at ¶¶ 73, 86.
[11]  *Id.* at ¶ 103.
[12]  *Id.* at ¶ 125.
[13]  *Id.* at ¶ 129.

Bayou City (or funds managed by it) received a corresponding amount of Class C common stock of Alta Mesa, representing voting interests only.[14]  In addition, Bayou City and other interest holders in AMH and Kingfisher received the right to earn-out payments if Alta Mesa's Class A Common Stock met or exceeded certain target prices.[15]

The Silver Run II (now Alta Mesa) Board was expanded from four members to 11 members, including one member nominated by Bayou City.[16]  At that time, Bayou City nominated Mr. McMullen to the Board.[17]  McMullen was not compensated for this role or in any way related to the Business Combination, and he never bought or sold equity from the Business Combination.[18]  Similarly, Bayou City did not receive any cash (indirectly or directly) as a result of the Business Combination.[19]  And Bayou City bought more shares in Alta Mesa Resources, Inc. ("AMR") following the Business Combination,[20] and prior to the ultimate bankruptcy where the equity value was a total loss—an inconvenient fact that contradicts Plaintiff's claims that Mr. McMullen and Bayou City enriched themselves through fraud.

---

[14]  Proxy Statement at viii.3.

[15]  CAC ¶ 131; *see* Ex. [A], W. McMullen Dep. Tr. at 349:25–350:8 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ; *id.* at 110:20–114:4.

[16]  CAC ¶ 136.

[17]  *Id.*

[18]  Ex. B, W. McMullen's May 9, 2022 Responses and Objections to Lead Plaintiffs' First Set of Interrogatories to the Individual Defendants at 14–15.

[19]  Ex. C, Bayou City's May 18, 2023 Responses and Objections to Class Plaintiffs' First Set of Interrogatories at 10.

[20]  *See* Ex. A, W. McMullen Dep. Tr. at 113:24–114:4.

Plaintiffs contend that the allegedly false statements began with the announcement of the Business Combination,[21] and continued until May 17, 2019, when Alta Mesa announced that it was filing for bankruptcy.[22] The purportedly actionable statements against Mr. McMullen are contained solely in Alta Mesa's March 29, 2018 10-K ("2017 10-K").[23]

Plaintiffs allege that, in his capacity as a director of Alta Mesa, Mr. McMullen signed the 2017 10-K.[24] The 2017 Form 10-K included the following two allegedly false and misleading statements:

- "If third-party pipelines or other midstream facilities interconnected to our gathering, processing, storage or transportation systems become partially or fully unavailable, or if the volumes we gather, process, store or transport do not meet the quality requirements of the pipelines or facilities to which we connect, our gross profit and cash flow could be adversely affected."[25]

- "[T]here [had] been no change in internal control over financial reporting."[26]

Plaintiffs do not allege that Mr. McMullen made—or was even involved in—any other actionable statements.

## V.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a fact issue exists, a court views the facts and

---

[21] CAC ¶ 13.
[22] *Id.* at ¶ 23
[23] *Id.* at ¶¶ 190–258.
[24] *Id.* at ¶¶ 56, 219.
[25] *Id.* at ¶ 217 (emphasis omitted).
[26] *Id.* at ¶ 219 (emphasis omitted).

inferences to be drawn from them in the light most favorable to the nonmoving party. *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). But a material fact is "genuine" only to the extent that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And while the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," it "need not *negate* the elements of the nonmovant's case." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (internal quotation marks and citation omitted).

If the movant meets its initial burden, the burden then shifts to the non-moving party, who must go "beyond the pleadings and designate specific facts showing that there is a genuine issue for trial"—a burden that cannot be satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (citation omitted); *see also Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 726 (5th Cir. 2021) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.") (citation omitted).

The non-movant must present "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc., v. Air Line Pilots Assn., Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation omitted). Here, Plaintiffs' asserted Section 10(b) and Rule 10b-5 claims require five essential elements: that, "in connection with the purchase or sale of securities: (1) a misstatement or an

omission (2) of material fact (3) made with scienter (4) on which [Plaintiffs] relied (5) that proximately injured [them]." *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir. 2007) (quoting *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)). But based on the record, there is no triable fact issue on these claims.

## VI.    ARGUMENT

### A.    Plaintiffs Cannot Prove Mr. McMullen Had the Requisite Scienter to Maintain a Fraud Claim.

The record is void of any evidence that Mr. McMullen possessed the required mental state in "making" any of the alleged misstatements. Liability under Section 10(b) and Rule 10b-5 requires not only that Plaintiffs demonstrate Mr. McMullen made an untrue statement of material fact or omitted a material fact, but that he did so with "scienter," or an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d at 366 (5th Cir. 2004)).

Likewise, one of the "elements of common law fraud under Texas law" is that the defendant made a misrepresentation "with knowledge of its falsity or recklessness as to its truth" and "with the intention that it should be acted upon by another party . . . ." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709

(S.D. Tex. 2004)). Statutory fraud also requires fraudulent intent. *See Robbins v. Capozzi*, 100 S.W.3d 18, 26 (Tex. App.—Tyler 2002, no pet.) ("In order to recover for a violation of section 27.01, a plaintiff must show . . . the representation was made to induce a person to enter a contract . . . .") (citing *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249 (Tex. App.—Waco 2001, pet. denied)).

A proper scienter analysis requires considering the state of mind of Mr. McMullen himself, not the "collective knowledge of all the corporation's officers and employees acquired in the course of their employment." *Southland Sec. Corp.*, 365 F.3d at 366 (citation omitted). In other words, there is no "collective scienter theory" because "the required state of mind must actually exist in the individual making (or being a cause of the making of) the misrepresentation, and may not simply be imputed to that individual on general principles of agency." *Id.* (citations omitted).

Similarly, evidence of scienter "may not rest on the inference that defendants must have been aware of the misstatement based on their positions with the company." *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Circ. 2008) (internal quotation marks, brackets, and citation omitted). This is true even when coupled with an executive's boasting statements such as "there is nothing in this company that I don't know." *Id.* Even supposing Mr. McMullen was a maker of the alleged misstatements (he was not), there is no evidence in the record to support that he had the requisite intent to deceive. Mr. McMullen cannot be said to have known about any alleged misstatements in the 2017 Form 10-K simply by virtue of his position on the Alta Mesa Board—a position he began less than two months before the filing of the Form 10-K. Of

the two alleged misstatements Plaintiffs attribute to Mr. McMullen, Plaintiffs put forth no evidence of his scienter or motive to mislead.

The record is devoid of any evidence indicating Mr. McMullen had an incentive or motive to commit fraud. In fact, the details of the Business Combination and Mr. McMullen's behavior consistently indicate that the only incentive in the record is for the company to succeed.

Plaintiffs' theory seems to revolve around the false notion that Mr. McMullen was compensated or otherwise received a benefit—either directly or indirectly—from the Business Combination. For instance, one of Plaintiffs' interrogatories from 2022 requests that Mr. McMullen "[i]dentify the amount of money or other compensation (including equity) [he] received from the Business Combination."[27] The Fifth Circuit has rejected this theory:

> Incentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States would be subject to fraud allegations. It does not follow that because executives have components of their compensation keyed to performance, one can infer fraudulent intent.

*Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068–69 (5th Cir. 1994)).

Additionally, Plaintiffs fail to show that ***Mr. McMullen*** was incentivized to make such material misstatements. Much like general allegations against "defendants" as a

---

[27] Ex. B, W. McMullen's May 9, 2022 Responses and Objections to Lead Plaintiffs' First Set of Interrogatories to the Individual Defendants at 14.

group are not "properly imputable to any particular defendant" unless there is a "connection" between the individual defendant and the allegedly fraudulent statement, *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015), so too is any purported "group" evidence insufficient to demonstrate Mr. McMullen's scienter.[28]

But even lending credence to Plaintiffs' argument, as Mr. McMullen responded to Plaintiffs' Interrogatory Request in 2022, and reiterates today, he "never received any money as part of the Business Combination, including through compensation for serving as a board member or through direct sale proceeds. He also denies receiving any equity from the Business Combination."[29] And Plaintiffs cannot point to any evidence in the record that contradicts this fact.

Additionally, it cannot be argued that cash otherwise trickled to Mr. McMullen after the Business Combination as a result of his relationship with Bayou City because "Bayou City did not receive any cash by operation of the Business Combination, indirectly or directly, including through High Mesa. Cash was distributed to High Mesa in connection with the Business Combination, ***but no cash was subsequently distributed to Bayou City after the Business Combination***."[30]

---

[28] Mr. McMullen joins the August 31, 2023 Motion for Summary Judgment filed by Donald Dimitrievich [Dkt. 422] in its arguments regarding Plaintiffs' impermissible group pleading—in Section I.A.—and incorporates these arguments in this Motion by reference.

[29] Ex. B, W. McMullen's May 9, 2022 Responses and Objections to Lead Plaintiffs' First Set of Interrogatories to the Individual Defendants at 14.

[30] Ex. C, Bayou City's May 18, 2023 Responses and Objections to Class Plaintiffs' First Set of Interrogatories at 10.

Rather, as a result of the Business Combination, Bayou City received (1) "an indirect interest in AMR stock held by High Mesa by virtue of Bayou City's direct ownership of a portion of High Mesa," and (2) "an earn-out entitling High Mesa (and thus Bayou City, indirectly) to additional equity if AMR's stock price were to reach a certain value above the price such stock was issued as consideration in the Business Combination—an earn-out issuance that never occurred."[31]  Put another way, Bayou City chose to receive its share of the consideration entirely in Alta Mesa stock, fully aligning its interest, and by extension, Mr. McMullen's interest, with that of the investing public.[32]  As Mr. McMullen testified in his deposition, at the time Alta Mesa was private, he was ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ [33]

Any argument suggesting that Mr. McMullen or Bayou City received a benefit from the merger improperly conflates Mr. McMullen and Bayou City with other differently situated defendants against whom those allegations have been made.  Mr. McMullen had no incentive to make fraudulent statements or otherwise inflate pre-merger projections because doing so would have direct negative effects on stocks held by Bayou City.  *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1177–78 (C.D. Cal. 2007) ("[W]hile allegations of insider sales 'are not required' in securities fraud cases . . . the lack of any tangible, personal benefit here further weighs against the Officer Defendants having

---

[31]  *Id.* at 10–11.
[32]  *See* Ex. A, W. McMullen Dep. Tr. at 246:6–9 ████████████████████████████
████████████████████████████████████████████████████

[33]  *Id.* at 143:8–16.

scienter."); *S.E.C. v. Steadman*, 967 F.2d 636, 642 (D.C. Cir. 1992) ("If we were to conclude that the appellants meant to defraud investors, we would have to believe that they did so for the sheer joy of it rather than for profit.").

Additionally, Mr. McMullen's post-merger conduct undermines any allegation of scienter. For example, in August of 2018, Mr. McMullen sent out a letter and presentation to BCE's limited partners stating that ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████[34] In fact, in this letter, Mr. McMullen stated ███████████████████████████████████████████████

██████████████████████████████████[35] Importantly, Mr. McMullen's ███████████████████████████████████████████████████

██████████████████████████.[36]

And it was not just talk. Mr. McMullen's actions both during and after the Business Combination buttressed his words and demonstrated his continued belief in AMR's success. As evidenced in Bayou City's Form 4 filings for Alta Mesa, Mr. McMullen and Bayou City were deeply invested in Alta Mesa's success because between August and September of 2018, months after the Business Combination had closed, the 10-K was

---

[34] Ex. D, BCEM_0032913.
[35] *Id.*
[36] *Id.*

issued, and Alta Mesa was experiencing downward earnings results, Bayou City purchased more than four million additional shares of Class A common stock in Alta Mesa.[37] Following this direct purchase, Bayou City "never sold a single share of its stock."[38] This was true even when Alta Mesa's stock price began to decline in early to mid-2018; Bayou City purchased (and subsequently held onto) the same public shares at the same allegedly overvalued price as public investors. As Mr. McMullen tells it, ██████████████████ ██████████████████████████████████████[39]

Bayou City's decision to acquire and keep Alta Mesa shares—as sole compensation in the Business Combination—is inconsistent with any alleged deceptive intent. *See Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 518 (S.D. Tex. 2017) ("The fact that other officers and the company itself were purchasing large volumes of Helix stock during this period . . . weighs strongly against an inference of scienter."); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 516 (S.D.N.Y. 2011) ("The [defendants'] purchase and retention of the shares . . . is inconsistent with the allegation that they harbored information that the [c]ompany's financial health was in grave jeopardy. Rather, the [defendants'] purchases of MRU stock . . . signals only confidence in the future of their company.") (cleaned up).

---

[37] Dkt. 266-1 at 2–7; *see also* Ex. [C], Bayou City's May 18, 2023 Responses and Objections to Class Plaintiffs' First Set of Interrogatories at 12 (explaining that Bayou City "purchased equity in AMR on the open market following the Business Combination").

[38] *Id.* at 11.

[39] Ex. A, W. McMullen Dep. Tr. at 116:20–22.

In fact, if any misrepresentations were made, Mr. McMullen was unaware. As one

example, Mr. McMullen testified in his deposition ████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████ █████████████████████████████

█████████████████ █████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████ █████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████ ██████████████████████████████████████████████

████████████████████████████████████ ███████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ █

███████████████████████████████████████████████████████████████

████████████████████████████████████████████

The record is clear that Mr. McMullen did not have the requisite intent sufficient

for Section 10(b) and Rule 10b-5 claims or the Texas Fraud Claims and Plaintiffs cannot

---

[40] *Id.* at 322:17–323:2; *see also id.* at 315:1–323:20.

[41] *Id.* at 350:9–19.

[42] *Id.* at 323:21–324:20.

[43] *Id.* at 323:1–20.

[44] *Id.* at 326:5–14.

[45] *Id.* at 320:10–17.

point to a single statement by Mr. McMullen, a single conversation in which he participated, a single document that he received or accessed, or a single meeting that he attended in which the facts underlying the alleged false statements were discussed. This alone entitles Mr. McMullen to judgment as a matter of law.

**B.** **Mr. McMullen was not the "Maker" of the Alleged Misstatements.**

Mr. McMullen cannot be held liable for the allegedly actionable statements because he did not make these statements. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1103 (2019) (observing that following the Supreme Court's holding in *Janus Capital Group, Inc., v. First Derivative Traders*, an individual cannot be liable under Rule 10b-5 where he "neither makes nor disseminates false information—provided, of course, that the individual is not involved in some other form of fraud"). The "maker" of a statement for purposes of Rule 10b-5 liability is the "person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc., v. First Derivative Traders*, 564 U.S. 135, 142 (2011). "[A]ttribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Id.* at 142–43.

Plaintiffs complain about several statements, many of which are alleged to have been made by other defendants. But such oral statements cannot be attributable to Mr. McMullen. *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 572 n.13 (S.D.N.Y. 2012) (holding one is not liable "for the allegedly false [oral] statements made by [another]"). After all, "the content [of an oral statement] is entirely within the control of the person who delivers it," much like how a speaker—not a speechwriter—takes credit or

blame for what is ultimately said. *Janus Cap. Grp., Inc.*, 564 U.S. at 143. This is also true of any alleged misstatement that occurred prior to Mr. McMullen's seat on the Board of Alta Mesa: he cannot be considered the "maker" of a statement as a result of his not-yet-existent board position. *See Petrie v. Elec. Game Card Inc.*, 2011 WL 165402, at *3 (C.D. Cal. Jan. 12, 2011) (refusing to hold defendants liable for statements made before affiliation with company); *In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at *16 (S.D.N.Y. Aug. 30, 2018) (same).

Likewise, in accordance with *Janus*, Plaintiffs cannot rely on statements made by "Defendants" or "Alta Mesa" generally. For example, Plaintiffs allege that the "Board Defendants" "spoke to investors and analysts prior to and throughout the Class Period regarding the STACK play and Kingfisher," and that those communications were "detail-laden, reflecting that the . . . Board Defendants were hands-on managers with specific knowledge of (or direct access to) data and facts regarding the STACK play and Kingfisher operations."[46] But Plaintiffs offer no evidence that Mr. McMullen himself had "ultimate authority" over those statements. Accordingly, attributing these statements to Mr. McMullen is improper.

Plaintiffs' theory of liability against Mr. McMullen thus rests on the fact that he, along with many other defendants, "signed Alta Mesa's March 29, 2018 Form 10-K."[47]

---

[46] CAC ¶ 259.
[47] *Id.* at ¶ 56.

As set forth in Plaintiffs' "Summary of Alleged Misstatements" filed on August 31, 2020,[48]

Plaintiffs attribute just two statements from the 2017 Form 10-K to Mr. McMullen:

> 1.    "*If* third-party pipelines or other midstream facilities interconnected to our gathering, processing, storage or transportation systems become partially or fully unavailable, or **if the volumes we gather, process, store or transport do not meet the quality requirements of the pipelines or facilities to which we connect**, our gross profit and cash flow could be adversely affected."[49]

> 2.    "[T]here [had] been no change in [its] **internal control over financial reporting**" in Item 4 Controls and Procedures.[50]

Neither of these alleged misstatements are actionable under the law.[51]

As it relates to the first statement, the quoted risk factor is neither false nor misleading. Alta Mesa disclosed during a press conference on the same day it issued the 2017 10-K that third parties had already "delayed drilling on acreage served by Kingfisher."[52] Similarly, any purported omission or "half-truth" could not possibly be material. *See Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988) ("[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" (citations omitted)); *S.E.C. v. Farmer*, No. 4:14-CV-2345, 2015 WL 5838867 at *13 (S.D. Tex. Oct. 7, 2015) (holding a defendant's statements as material and misleading when there was a "but-for causal link" between the statements and the issuance of stock). Additionally, Plaintiffs provide no evidence that these pipelines

---

[48]   *See* Ex. E.
[49]   CAC ¶ 217.
[50]   *Id.* at ¶ 219.
[51]   To the extent the Opt-Out Plaintiffs allege further misrepresentations, such claims are time-barred as argued in Mr. McMullen's January 10, 2023 Motion to Dismiss [Dkt. 266] at § 1.A.
[52]   *See* CAC ¶ 140.

or other midstream facilities were "partially or fully unavailable" at the time this risk factor was included in the 2017 Form 10-K. As a result, Plaintiffs fail to demonstrate that this risk factor was false or misleading in any way.

As for the statement regarding internal controls, Plaintiffs have provided no evidence that the statement was false when made or explained how later disclosures rendered false the earlier statement that there had been no change to internal controls. And they cannot because this statement is unquestionably true. This statement applied to the "most recently completed fiscal quarter" which was the fourth quarter of 2017 (period ended December 31, 2017). Form 10-K at 54. At that time, Alta Mesa was still a SPAC (*i.e.*, Silver Run II) and would continue to be such until the Business Combination closed on February 9, 2018. As disclosed on the first page of the 2017 Form 10-K: "We were originally formed in November 2016 as a special purpose acquisition company under the name Silver Run Acquisition Corporation II for the purpose of effecting an initial business combination," and "[a]t December 31, 2017, we had not yet completed a business combination and, except for fund raising transactions, searching for an appropriate business combination and entering into agreements necessary to consummate a business combination, we had no business operations during 2017." *See* Form 10-K at 1. That same page of the Form 10-K further states that "since this report is as of December 31, 2017, the businesses of Alta Mesa and Kingfisher are not described herein in detail." *Id.* This alleged misstatement is accurate and cannot be fraudulent—Silver Run II's internal controls had not changed because the Business Combination did not close during the fourth quarter of 2017. Ultimately, Plaintiffs do not allege, nor is there evidence, that there were any

changes in the internal controls of the SPAC Silver Run II in the fourth quarter of 2017, let alone a change that had "materially affected, or [was] reasonably likely to materially affect, [Silver Run II's] internal control over financial reporting."

Even if the statement was made about Alta Mesa, by Plaintiffs' own account, Alta Mesa identified the purported internal control deficiencies only as of December 31, 2018, and thus was in no position to disclose this information as of the filing of the 2017 10-K.[53]

What's more, Plaintiffs did not even *raise* these two purported misstatements in Mr. McMullen's *fourteen-hour-long* deposition. In fact, there was no discussion surrounding the third-party risk factor, internal controls, or the Form 10-K, let alone discussion of Mr. McMullen's signature of the Form 10-K or any alleged "involvement in the formulation of either the entire document, or that specific portion of the document containing the statement[s]." *See Southland Sec. Corp..*, 365 F.3d at 365 (5th Cir. 2004). The Form 10-K is not even an exhibit to Mr. McMullen's deposition, as it was never shown to him (let alone asked about) at any point. And worse yet, despite suing Mr. McMullen based on these alleged misrepresentations, none of the Plaintiffs know of Mr. McMullen or could identify any statement that they relied on from him.[54] This, of course, directly contradicts

---

[53] *See* CAC ¶ 256.
[54] *See, e.g.,*

any element of justifiable reliance relevant to the Opt-Out Plaintiffs' common law and statutory fraud claims.

For these reasons, Mr. McMullen cannot be held liable when there is no evidence that he "made" the alleged statements or the alleged statements are otherwise inactionable.

### C. For the Same Reasons that Mr. McMullen was not a Maker of the Alleged Misstatements, He did not have Control Over Any Alleged Maker to Sustain a Section 20(a) Claim.

Similar to the above reasons that Mr. McMullen was not a "Maker" for purposes of the Section 10(b) and Rule 10b-5 claims, Mr. McMullen did not control any of the alleged "makers" of any purported misstatements. Mr. McMullen joins the Co-Defendants' Motion in its arguments against Plaintiffs' allegations regarding control under Section 20(a).[55] In short, Mr. McMullen was a single director on a board with over twelve members. Bayou City, which assigned him to the AMR board, did not have a controlling interest in the company and only had the right to assign one director. Under no interpretation of relevant law could it be said that Mr. McMullen controlled AMR or any

---

[55] Dkt. 423, Co-Defendants' Mot. at § II.

of the other Individual Defendants. For these reasons, and those argued in Co-Defendants' Motion, the Section 20(a) claims fail as to Mr. McMullen.

## CONCLUSION

Mr. McMullen respectfully requests that the Court enter an order granting summary judgment on all claims brought against him and such other and further relief as this Court deems just and proper.

DATED: August 31, 2023

/s/ Kenneth A. Young
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699   S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182   S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:       (713) 836-3601
Emails:  kenneth.young@kirkland.com
             nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC and William McMullen*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on August 31, 2023.

/s/ Kenneth A. Young
Kenneth A. Young