# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> **CLASS ACTION** <br><br> [Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br><br> Defendants. | Civil Action No. 4:22-cv-001189 <br><br> [Consolidated Case] |

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

| | |
|---|---|
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | Civil Action No. 4:22-cv-02590 [Consolidated Case] |

Plaintiffs,

v.

ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER,

Defendants.

## MOTION OF DONALD DIMITRIEVICH FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

# **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING AND SUMMARY OF THE
ARGUMENT ................................................................................................ 1

STATEMENT OF THE ISSUES ................................................................... 4

STATEMENT OF MATERIAL UNDISPUTED FACTS .............................. 4

LEGAL STANDARD ................................................................................... 6

ARGUMENT ................................................................................................ 8

I.    PLAINTIFFS' SECTION 10(b) FRAUD CLAIM CANNOT SURVIVE
      SUMMARY JUDGMENT BECAUSE THE ALLEGATIONS
      CONCERNING MR. DIMITRIEVICH FAIL TO ESTABLISH
      SCIENTER. ......................................................................................... 8

      A.    Absent Sufficiently Particularized Allegations That Mr. Dimitrievich
            Acted With Scienter, Plaintiffs' Claims Under Section 10(b) And
            Rule 10b-5 Fail As A Matter of Law. ....................................... 8

            1.    The Fifth Circuit Expressly Rejects Group Pleading In
                  Securities Cases. ............................................................ 11

            2.    Plaintiffs Have Engaged in Impermissible Group Pleading. ........... 11

            3.    Signing A 10-K, With Nothing More, Does Not Raise A
                  Strong Inference Of Scienter. ......................................... 13

      B.    Plaintiffs' Section 10(b) Claim Must Be Dismissed Because
            Plaintiffs Have Not Uncovered Any Evidence That Mr. Dimitrievich
            Acted With Scienter. ............................................................... 15

II.   PLAINTIFFS' SECTION 20(A) CLAIM MUST BE DISMISSED
      BECAUSE  MR. DIMITRIEVICH WAS NOT A CONTROL PERSON. ........... 20

      A.    Plaintiffs Have Failed to Plead a Primary Violation. .................... 21

      B.    The Section 20(a) Claim Fails Because Plaintiffs Failed To Plead
            Control As To Mr. Dimitrievich. ............................................. 22

      C.    Plaintiffs Have Adduced No Facts That Establish Mr. Dimitrievich
            Had Control Over AMR Or The Individual Defendants, As Required
            Under Section 20(a) .............................................................. 23

CONCLUSION ........................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Abbott v. Equity Grp., Inc.*,
    2 F.3d 613 (5th Cir. 1993) ............................................................ 24

*Alaska Elec. Pension Fund v. Asar*,
    768 F. App'x 175 (5th Cir. 2019) ................................................. 11

*In re: Alta Mesa Resources, Inc. and Alta Mesa Holdings, LP*,
    Case No. 19-35133 (Bankr. S.D. Tex. Bankr. Sept. 11, 2019), Dkt. 1 ......................... 6

*Amex Elec. Servs., Inc. v. Blanchard Ref. Co., LLC*,
    2020 WL 622792 (S.D. Tex. Jan. 15, 2020) .............................. 15

*Armstrong v. Am. Home Shield Corp.*,
    333 F.3d 566 (5th Cir. 2003) .......................................................... 7

*Ashe v. Corley*,
    992 F.2d 540 (5th Cir. 1993) .......................................................... 7

*In re BP P.L.C.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ........................................ 13

*In re: BP P.L.C. Sec. Litig.*,
    2016 WL 29300 (S.D. Tex. Jan. 4, 2016) ................................... 20

*In re BP p.l.c. Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012) ................................. 21, 24

*In re BP P.L.C. Sec. Litig.*,
    922 F. Supp. 2d 600 (S.D. Tex. 2013) ........................................ 23

*Broad v. Rockwell Intern. Corp.*,
    642 F.2d 929 (5th Cir. 1981) ................................................... 9, 17

*In re Browning-Ferris Indus. Inc. Sec. Litig.*,
    876 F. Supp. 870 (S.D. Tex. 1995) ........................................ 16, 18

*Callinan v. Lexicon Pharms., Inc.*,
    479 F. Supp. 3d 379 (S.D. Tex. 2020) ........................................ 12

*Cameron v. Outdoor Resorts of Am., Inc*,
608 F.2d 187 (5th Cir. 1979) ............................................................. 21

*Carlton v. Cannon*,
2016 WL 3959164 (S.D. Tex. July 22, 2016) ................................... 21, 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................... 6, 7

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs, Inc.*,
497 F.3d 546 (5th Cir. 2007) ................................................................ 14

*Cobb v. Miller*,
2014 WL 12531203 (S.D. Tex. Mar. 5, 2014), *report and recommendation adopted*, 2014 WL 12531514 (S.D. Tex. Mar. 26, 2014) ............................................................................................... 9

*Collmer v. U.S. Liquids, Inc.*,
268 F. Supp. 2d 718 (S.D. Tex. 2001) .................................................. 19

*In re Cyberonics Inc. Sec. Litig.*,
523 F. Supp. 2d 547 (S.D. Tex. 2007), *aff'd sub nom. Catogas v. Cyberonics, Inc.*, 292 F. App'x 311 (5th Cir. 2008) ................................ 22

*Dennis v. Gen. Imaging, Inc.*,
918 F.2d 496 (5th Cir. 1990) ........................................... 7, 21, 23, 24, 25

*Duffy v. Leading Edge Products, Inc.*,
44 F.3d 308 (5th Cir. 1995) .................................................................. 7

*Dunn v. Chappelle*,
Case No. 21-3423-ADV, Dkt. 79 ...................................................... 18, 19

*In re Enron Corp. Securities, Derivative & ERISA Litig.*,
610 F. Supp. 2d 600 (S.D. Tex. 2009) ................................................... 7

*In re Enron Sec., Derivative & ERISA Litig.*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) .................................................. 14

*In re Fed. Nat. Mortg. Ass'n Sec., Derivative, ERISA Litig.*,
892 F. Supp. 2d 59 (D.D.C. 2012) ....................................................... 17

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ........................................................... 11, 13

*In re Franklin Bank Corp. Sec. Litig.*,
   782 F. Supp. 2d 364 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher
   Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012) ........................... 8

*G.A. Thompson & Co., Inc. v. Partridge*,
   636 F.2d 945 (5th Cir. 1981) ...................................................................... 21

*In re I.C.H. Corp.*,
   1998 WL 386165 (N.D. Tex. July 8, 1998) ...................................................... 16

*In re Key Energy Servs., Inc. Sec. Litig.*,
   166 F. Supp. 3d 822 (S.D. Tex. 2016) .......................................................... 11

*In re Kosmos Energy Ltd. Sec. Litig.*,
   955 F. Supp. 2d 658 (N.D. Tex. 2013) ......................................................23-24

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
   810 F.3d 951 (5th Cir. 2016) ..................................................................... 11

*Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enterprises,
   LLC*,
   2023 WL 2719466 (S.D. Tex. Mar. 30, 2023).................................................... 6

*MicroCapital Fund LP v. Conn's Inc.*,
   2019 WL 3451153 (S.D. Tex. July 24, 2019).................................................... 21

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) ............................................................... 12, 13

*Plaisance v. Schiller*,
   2019 WL 1205628 (S.D. Tex. Mar. 14, 2019).................................................... 14

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ..................................................................... 22

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ..................................................................... 19

*In re Sec. Litig. BMC Software, Inc.*,
   183 F. Supp. 2d 860 (S.D. Tex. 2001) .......................................................... 22

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ............................................................ 9, 11, 13

*Stockman v. Flotek Indus., Inc.*,
   2010 WL 3785586 (S.D. Tex. Sept. 29, 2010) ........................................ 21, 23, 25

iv

*Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*,
    552 U.S. 148 (2008) ........................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ........................................................................... 9

*In re TETRA Techs., Inc. Sec. Litig.*,
    2009 WL 6325540 (S.D. Tex. July 9, 2009), *order clarified*, 2009 WL
    6326865 (S.D. Tex. Aug. 10, 2009).................................................. 20

*In re Venator Materials PLC Sec. Litig.*,
    547 F. Supp. 3d 624 (S.D. Tex. 2021) ............................................. 21

*In re Waste Mgmt., Inc.*,
    2007 WL 951572 (S.D. Tex. Mar. 26, 2007), *aff'd sub nom. Courtney v.
    Andersen*, 264 F. App'x 426 (5th Cir. 2008) ................................. 16

*Whalen v. Carter*,
    954 F.2d 1087 (5th Cir. 1992) ..................................................... 7, 8

*Yang v. Nobilis Health Corp.*,
    2021 WL 3619863 (5th Cir. Aug. 13, 2021)................................ 14, 15

## Rules / Statutes

15 U.S.C. § 78j(b) .................................................................................. 8

15 U.S.C. § 78u–4(b) ............................................................................. 9

17 C.F.R. § 230.405 ............................................................................. 21

17 C.F.R. § 240.10b-5 ........................................................................... 8

Fed. R. Civ. P. 9(b) .................................................................... 7, 8, 15

Fed. R. Civ. P. 12(b)(6) ........................................................................ 7

Fed. R. Civ. Procedure 56 ................................................................. 1, 6

Private Securities Litigation Reform Act of 1995 ........................ 1, 9, 13

Securities Exchange Act of 1934
    Rule 10b–5 .............................................. 1, 2, 4, 8, 11, 17, 22, 25

Securities Exchange Act of 1934
    Section 10(b) ............................... 1, 2, 4, 8, 11, 15, 16, 17, 20, 21, 22, 23, 25

Securities Exchange Act of 1934

Section 20(a) ........................................................ 1, 2, 4, 11, 12, 20, 21, 22, 23, 24, 25

## NATURE AND STAGE OF THE PROCEEDING AND
## SUMMARY OF THE ARGUMENT

After dragging Defendants through more than two years of discovery that included the production of millions of documents and nearly 50 depositions, Plaintiffs have failed to unearth *any* evidence to salvage their deficient complaints alleging fraud or control against Defendant Donald Dimitrievich.   Indeed, the case against Mr. Dimitrievich currently sits exactly where it began:   Mr. Dimitrievich signed Alta Mesa Resources, Inc.'s 2017 10-K as one of eleven members of the Board of Directors.   That is all. Plaintiffs do not raise any specific scienter allegations regarding Mr. Dimitrievich's signing of the 2017 10-K, nor have they been able to adduce any evidence of the same, and for good reason.   There is none.   There is also no evidence that Mr. Dimitrievich, as only one of eleven board members, somehow controlled the entire Board, the company itself, or any of the company's officers or employees.

Accordingly, Mr. Dimitrievich respectfully submits this Motion for Summary Judgment on the claims brought by the Class Plaintiffs, Alyeska Plaintiffs, and Orbis Plaintiffs under Section 10(b), Rule 10b-5, and Section 20(a) of the Securities Exchange Act of 1934, pursuant to Federal Rule of Civil Procedure 56 and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), including because:

- Plaintiffs' *only* substantive allegation against Mr. Dimitrievich is that he signed the Alta Mesa Resources, Inc. 2017 10-K;

- Plaintiffs have obtained *no evidence* of scienter as to Mr. Dimitrievich regarding what Plaintiffs allege are misstatements in the 2017 10-K; and

1

- Plaintiffs have adduced **no** evidence that Mr. Dimitrievich was a control person of Alta Mesa Resources, Inc. or any of the Individual Defendants[1], as required for Section 20(a) liability.

## PROCEDURAL BACKGROUND

On March 14, 2019, Class Plaintiffs filed a complaint on behalf of a putative class consisting of all persons or entities who purchased or otherwise acquired Silver Run II securities between March 24, 2017 and February 25, 2019.  Class Plaintiffs alleged that Silver Run II and its Officer Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, by making certain public misstatements concerning Alta Mesa Resources, Inc. ("AMR").[2] On March 16, 2020, Class Plaintiffs filed a Consolidated Amended Complaint containing similar securities fraud claims but alleging that an additional group of Defendants— including Mr. Dimitrievich and other former members of AMR's Board of Directors (labeled by Class Plaintiffs as the "Board Defendants")—allegedly made certain misstatements about the strength of and risks facing AMR's business when they signed AMR's 2017 10-K (hereinafter, the "2017 10-K").[3]  Alleging a secondary liability theory of control, Class Plaintiffs also claim that the Defendants, including Mr. Dimitrievich, violated Section 20(a) of the Exchange Act.[4]  On April 6, 2020, Class Plaintiffs filed the Second Corrected Consolidated Amended Complaint, containing identical allegations as

---

[1]    The Individual Defendants include Silver Run CEO James T. Hackett; Silver Run CFO Thomas J. Walker; Silver Run Corporate Secretary Stephen Coats; certain Silver Run Board Members; Alta Mesa CEO Harlan H. Chappelle; Alta Mesa "Chief Operating Officer – Upstream" Michael E. Ellis; Alta Mesa Chief Accounting Officer Ronald Smith; and AMR's Board Members.

[2]   Dkt. 1 at ¶ 1.

[3]   Dkt. 59 at ¶¶ 49, 209-212, 214.

[4]   *Id.* at ¶ 362.

to Mr. Dimitrievich, ("SCAC"),[5] and which Mr. Dimitrievich and other Defendants subsequently moved to dismiss.[6]

In this Court's April 14, 2021 order permitting Class Plaintiffs to move forward with the securities fraud claims, the Court reasoned that because it could not "opine *at this point* [on] whether [Class] Plaintiffs' claims will survive a motion for summary judgment," "[Class] Plaintiffs [had] established an entitlement to discovery."[7]   In the midst of extensive discovery efforts, the putative class filed the operative Third Amended Complaint ("TAC").[8]

Subsequent to that filing, two groups of plaintiffs, the Alyeska Plaintiffs and the Orbis Plaintiffs,[9] opted out of the class (the "Opt-Out Plaintiffs" or "Opt-Outs") and filed their own individual suits.[10]   In each complaint, the limited allegations about Mr. Dimitrievich remained largely the same.[11]   On January 10, 2023, Mr. Dimitrievich moved to dismiss the Opt-Out complaints,[12] which this Court recently denied.  However, in its order, this Court specifically stated that the motions were "respectfully DENIED without prejudice *to being reasserted as motions for summary judgment.*"[13]

---

[5]   Dkt. 69 at ¶¶ 49, 209-212, 214.
[6]   *See* Dkt. 120, 127.
[7]   Dkt. 160 at 29 (emphasis added).
[8]   Dkt. 218.
[9]   The Alyeska Plaintiffs include Alyeska Master Fund, L.P.; Alyeska Master Fund 2, L.P; and Alyeska Master Fund 3.  The Orbis Plaintiffs include Orbis Global Equity LE Fund (Australia Registered); Orbis Global Equity Fund (Australia Registered); Orbis Global Balanced Fund (Australia Registered); Orbis Sicav; Orbis Institutional Global Equity L.P.; Orbis Global Equity Fund Limited; Orbis Institutional Funds Limited; Allan Gray Australia Balanced Fund; Orbis OEIC; and Orbis Institutional U.S. Equity L.P.
[10]   The Alyeska Plaintiffs filed their complaint on April 13, 2022 (the "AC").  The Orbis Plaintiffs filed their complaint on August 3, 2022 (the "OC").
[11]   *See, e.g.*, AC at ¶¶ 35, 37, 40; OC at ¶¶ 44, 46, 49, 358.
[12]   Dkt. 264.
[13]   Dkt. 343 at 1, 14 (emphasis added).

Consistent with that Order, Mr. Dimitrievich accepts the Court's invitation to reassert his motion to dismiss "as [a] motion[] for summary judgment" and will also demonstrate that there is no genuine factual dispute that warrants trial on the claims against him in this matter.

## STATEMENT OF THE ISSUES

This motion addresses whether Plaintiffs' Section 10(b), Rule 10b-5, and Section 20(a) claims against Mr. Dimitrievich should be dismissed because:  (1) the lack of specific scienter allegations regarding Mr. Dimitrievich warrants dismissal of Plaintiffs' claims under Section 10(b) and Rule 10b-5 (together, the "Section 10(b) claim"), as a matter of law; (2) the allegations specific to Mr. Dimitrievich are insufficient to establish that he was a control person under Section 20(a); and (3) after over two years of discovery, Plaintiffs are unable to show evidence of any disputed issues of material fact to demonstrate that Mr. Dimitrievich acted with the scienter required by Section 10(b) regarding the alleged misstatements within the 2017 10-K, or that he was a control person of AMR or the Individual Defendants, as defined by Section 20(a).

## STATEMENT OF MATERIAL UNDISPUTED FACTS

In August 2017, Silver Run II ("Silver Run"), a Special Purpose Acquisition Company formed for the purpose of identifying and executing an acquisition in the energy industry, announced it would acquire, in a deal worth $3.8 billion, two companies: Alta Mesa Holdings, L.P. ("AMH")—an upstream company that specialized in developing oil and gas reserves—and Kingfisher Midstream LLC ("Kingfisher")—a midstream company that specialized in gathering and processing crude oil and natural gas

reserves—(together, the "Business Combination").[14]   Silver Run's stockholders voted to approve the Business Combination on February 6, 2018.[15]   On February 9, 2018, the transaction closed, and Silver Run changed its name to AMR.[16]

Prior to the acquisition, Mr. Dimitrievich's then-employer, Defendant HPS Investment Partners, LLC ("HPS"), made substantial investments in both AMH and Kingfisher, respectively.[17]   Ex. A (Dimitrievich Dep. Tr.) at 47:23-49:6, 52:23-53:14. Immediately after the Business Combination closed in February 2018, HPS appointed Defendant Donald Dimitrievich to be an independent director on AMR's eleven-member Board.[18]   Less than two months later, Mr. Dimitrievich was asked as an outside director to sign AMR's 2017 10-K, along with the 10 other members of AMR's Board.[19]   At the time he signed the 2017 10-K, Mr. Dimitrievich was a Managing Director at HPS.[20]   Ex. A (Dimitrievich Dep. Tr.) at 17:2-9.   As an independent director on AMR's board, he was not employed as an officer or executive with day-to-day involvement at AMR.   *See* Ex. A (Dimitrievich Dep. Tr.) at 17:18-18-11.   Prior to signing the 2017 10-K, ██████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████   Ex. A (Dimitrievich Dep. Tr.) at 169:17-25.

---

[14]   TAC at ¶¶ 1, 11, 96; AC at ¶¶ 4, 53, 56; OC at ¶¶ 4, 62, 65.
[15]   TAC at ¶ 295; AC at ¶ 60; OC at ¶ 69.
[16]   TAC at ¶ 297; AC at ¶ 60; OC at ¶ 69.
[17]   TAC at ¶¶ 88, 94, 95; AC at ¶¶ 103, 258; OC at ¶¶ 112, 320.
[18]   *See* Ex. B (AMR 2017 10-K, Mar. 29, 2018) at 57; TAC at ¶¶ 62, 136; AC at ¶¶ 35, 40; OC at ¶¶ 44, 49.
[19]   TAC at ¶ 57; AC at ¶ 35; OC at ¶ 44.
[20]   TAC at ¶ 57; AC at ¶ 35; OC at ¶ 44

A year later, AMR disclosed that it was considering filing for Chapter 11 bankruptcy protection.[21]  AMR ultimately filed for bankruptcy in September 2019.[22]  *See In re: Alta Mesa Resources, Inc. and Alta Mesa Holdings, LP*, Case No. 19-35133 (Bankr. S.D. Tex. Bankr. Sept. 11, 2019), Dkt. 1.  At no point during its existence did HPS hold a majority stake in AMR,[23] nor did it ever hold more than one of the eleven Board seats.[24]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is mandated if, "after adequate time for discovery and upon motion," the party bearing the burden of proof at trial cannot "make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party moving for summary judgment must demonstrate that there is no genuine dispute as to any material fact impacting the non-moving party's claims, but it need not "negate the elements" of those claims; the movant's burden can instead be met by "pointing out the absence of evidence supporting the non-movant's case."  *Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enterprises, LLC*, 2023 WL 2719466, at *3 (S.D. Tex. Mar. 30, 2023) (citing *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).  "[S]ummary judgment will be granted where the nonmovant is unable to point to any evidence in the record that would sustain a finding in the nonmovant's favor on any

---

[21]  TAC at ¶ 173; AC at ¶ 88; OC at ¶ 97.
[22]  TAC at ¶ 23; AC at ¶ 95; OC at ¶ 104.
[23]  *See* Ex. C (HPS 13D (Mar. 11, 2018)) at 3; Ex. D (HPS 13D Amendment 1 (June 9, 2018)) at 3.
[24]  TAC at ¶ 62; HPS Amended Answer to SCAC at ¶ 54; AC at ¶ 40; OC at ¶ 49.

issue on which he bears the burden of proof at trial." *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 322-24).

Summary judgment may also be granted "***based solely on the pleadings***" and without "reference to affidavits, depositions, or interrogatories," "if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless ***failed to state a claim***." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993) (emphasis added); *see also Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 499 (5th Cir. 1990) (affirming dismissal of securities fraud claims at summary judgment where the district court "acted correctly in noting [plaintiff's] failure to comply with Fed.R.Civ.P. 9(b)'s requirement that fraud and mistake be alleged with particularity"). Although "failure to state a claim" is usually challenged by a motion to dismiss under Rule 12(b)(6), it may also "serve as a basis for summary judgment." *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 607-08 (S.D. Tex. 2009) (citing *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)). "In a summary judgment context, the failure to state a claim is the functional equivalent of the failure to raise a genuine issue of material fact." *Id.* (citations omitted).

A motion for summary judgment that challenges the sufficiency of the pleadings should be "evaluated much the same as a 12(b)(6) motion to dismiss." *Ashe*, 992 F.2d at 544. Complaints containing only "[c]onclusory allegations of securities fraud are insufficient to avoid dismissal" at summary judgment. *Whalen*, 954 F.2d at 1098 (affirming dismissal at summary judgment because plaintiff's complaint, which failed to "describe the circumstances … that constitute securities fraud" or "allege facts that would

establish each element of a securities fraud claim," did not meet the particularity requirements of Federal Rule of Civil Procedure 9(b)).

## ARGUMENT

I.  **PLAINTIFFS' SECTION 10(b) FRAUD CLAIM CANNOT SURVIVE SUMMARY JUDGMENT BECAUSE THE ALLEGATIONS CONCERNING MR. DIMITRIEVICH FAIL TO ESTABLISH SCIENTER.**

A.  **Absent Sufficiently Particularized Allegations That Mr. Dimitrievich Acted With Scienter, Plaintiffs' Claims Under Section 10(b) And Rule 10b-5 Fail As A Matter of Law.**

Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, prohibit the making of an "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made … not misleading … in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Establishing liability under Section 10(b) requires proving: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 375 (S.D. Tex. 2011), *aff'd sub nom*. *Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012) (citing *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). "Defendants act with 'scienter' if, at the time that they made the alleged misrepresentations, they had a 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Cobb v. Miller*, 2014 WL 12531203, at *7 (S.D. Tex. Mar. 5, 2014), *report and recommendation adopted*, 2014 WL 12531514 (S.D. Tex. Mar. 26, 2014) (citation

omitted).  Alternatively, scienter may be established by showing that a defendant acted with "severe recklessness," which the Fifth Circuit has defined as:

> limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an ***extreme departure from the standards of ordinary care***, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Cobb*, 2014 WL 12531203, at *7 (quoting *Broad v. Rockwell Intern. Corp.,* 642 F.2d 929, 961-62 (5th Cir. 1981) (emphasis added).

Under the PSLRA, scienter is properly pled if a complaint "'state[s] with particularity facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind.'"  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (citing 15 U.S.C. § 78u–4(b)(2)) (emphasis added).  The "inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling," *Tellabs*, 551 U.S. at 324, as to "each defendant individually."  *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 360 (5th Cir. 2004); *see also id.* at 364-65 (PSLRA requires pleading with particularity "'each act or omission' sufficient to give 'rise to a strong inference that the defendant acted with the required state of mind'" as to each defendant in "multiple defendant cases") (quoting 15 U.S.C. § 78u–4(b)).

Here, the pleadings fail to raise any inference that Mr. Dimitrievich acted with the requisite scienter to satisfy the PSLRA standard.  While their respective complaints collectively span hundreds of pages and make numerous assertions, Plaintiffs (not surprisingly) have offered a very narrow and benign set of allegations regarding

Mr. Dimitrievich.    Specifically, the following constitutes the only particularized allegations against Mr. Dimitrievich across all three operative complaints:

- "Don Dimitrievich served as a member of Alta Mesa's Board of Directors following the Business Combination.   Defendant Dimitrievich is a Managing Director at Defendant HPS Investment Partners, LLC. Defendant Dimitrievich signed Alta Mesa's March 29, 2018 Form 10-K."[25]

- "The above-named Defendants – Leuschen, Lapeyre, McMullen, Dimitrievich and Sinclair – along with Defendants Hackett, Gutermuth, Tepper and Walters, are referred to collectively as the 'Board Defendants.'"[26]

- "HPS owns a significant portion of Alta Mesa and appointed one of its managing directors, Defendant Dimitrievich, to the Alta Mesa Board of Directors."[27]

- "As part of the Business Combination, Alta Mesa's board of directors was expanded from four directors to 11 directors, including ... one director appointed by Defendant HPS (Defendant Don Dimitrievich) ... ."[28]

- "Even after Alta Mesa filed for bankruptcy in September 2019, representatives of the Control Entity Defendants attended the Company's board meetings.   For instance, at a Kingfisher Midstream, LLC board meeting on September 3, 2019, not only were the Control Entity Defendants represented by Defendants McMullen, Dimitrievich, Lapeyre and Leuschen ... ."[29]

- "Alta Mesa's 2017 Form 10-K, which was signed by Defendants Hackett, Chappelle, Ellis, Leuschen, Lapeyre, McMullen, Dimitrievich, Gutermuth, Sinclair, Tepper, Walters and Smith, also discussed its disclosure controls and internal controls in Item 4 Controls and Procedures."[30]

The bullets above reflect *every* allegation against Mr. Dimitrievich between all three complaints.   This is it.   Importantly, Plaintiffs make *no* allegations about Mr.

[25] TAC at ¶ 57; AC at ¶ 35; OC at ¶ 44.
[26] TAC at ¶ 59; AC at ¶ 37; OC at ¶ 46.
[27] TAC at ¶ 62; AC at ¶ 40; OC at ¶ 49.
[28] TAC at ¶ 136.
[29] TAC at ¶ 189; OC at ¶ 358.
[30] TAC at ¶ 219.

Dimitrievich's state of mind when signing the 2017 10-K nor about *any* purported control he had for purposes of Section 20(a).  This alone merits the granting of this motion.

### 1. The Fifth Circuit Expressly Rejects Group Pleading In Securities Cases.

There is no dispute that "[t]he Fifth Circuit *does not permit group pleading* in securities fraud suits." *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 831 (S.D. Tex. 2016) (emphasis added); *see also Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016) ("[T]his court *has rejected* the group pleading approach to scienter, and focuses *on the state of mind* of the corporate officials who make, issue, or approve the statement ...") (emphasis added) (internal citations omitted).[31]  Indeed, ever since its 2004 decision in *Southland*, the Fifth Circuit has made clear that group-pleaded allegations are not "properly imputable to any particular individual defendant unless *the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded*."  *Southland*, 365 F.3d at 365 (emphasis added).

### 2. Plaintiffs Have Engaged in Impermissible Group Pleading.

Plaintiffs extensively rely on impermissible group pleading throughout their respective complaints.   Instead of identifying specific conduct attributable to

---

[31]   *See also, e.g.*, *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 184 (5th Cir. 2019) ("This court does not consider group pleading allegations.  Nor does this court allow group pleading allegations to establish scienter."); *Diodes*, 810 F.3d at 957 ("[T]his court has rejected the 'group pleading approach to scienter,' and focuses on the state of mind of the corporate officials who make, issue, or approve the statement rather than the 'collective knowledge of all the corporation's officers and employees.'") (citation omitted); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 288 (5th Cir. 2006) ("Plaintiffs fail to establish primary securities-fraud violations under § 10(b) or Rule 10b–5" or "control-person liability" under § 20(a) where they "failed to plead ... that [] Defendant knew [the alleged misstatements] were false or misleading.").

Mr. Dimitrievich, Plaintiffs merely lump him together with other Defendants using generic terms such as the "Board Defendants" or even just "Defendants."  For example:

- "Rather, **Defendants** intentionally overstated the value of AMH and Kingfisher before the merger in order to ensure that Silver Run's shareholders approved the merger.  **Defendants** continued to deceive investors after the merger, including to inflate Kingfisher's value in order to position it to be spun-off in an IPO as a separate midstream company."[32]

- "The **Board Defendants** further exercised control over the Company during the Class Period through their roles on the Board's various standing committees."[33]

- "During the Class Period, as detailed herein, Alta Mesa, the Management Defendants and the **Board Defendants** engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Alta Mesa common stock and warrants."[34]

This generic grouping says absolutely nothing about Mr. Dimitrievich's **individual** mindset and **is precisely** the type of language the Fifth Circuit has identified as group pleading.  *See, e.g.*, *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) ("Defendants contend that the SAC violates [group pleading] rules by repeatedly using general terms like '**Individual Defendants**' and '**Bank Executives**.'  We agree ... .") (emphasis added); *see also Callinan v. Lexicon Pharms., Inc.*, 479 F. Supp. 3d 379, 430 (S.D. Tex. 2020) ("Group allegations that '**the defendants**' or '**the company**' knew something do not meet th[e] standard" to plead scienter.) (emphasis added).[35]   By generically grouping Mr.

---

[32] AC at ¶ 99; OC at ¶ 108 (emphasis added).
[33] TAC at ¶ 188 (emphasis added).
[34] TAC at ¶ 302 (emphasis added).
[35]  *See also In re BP P.L.C.*, 852 F. Supp. 2d 767, 814 (S.D. Tex. 2012) ("[T]he **Complaint references 'Defendants,' 'BP's officers and directors,' 'senior management,' or 'BP'** as an undifferentiated unit rather than specifically alleging actions or omissions attributable to each named defendant.  Because the Fifth Circuit **has rejected** the group pleading approach, **Plaintiffs are required to distinguish among defendants and allege the role of each with respect to each act or omission** in the alleged fraud.") (emphasis added) (citation omitted).

Dimitrievich with other Defendants who served on the AMR Board, Plaintiffs have neither given Mr. Dimitrievich fair notice of the allegations specifically attributable to him nor satisfied "the PSLRA's heightened-pleading standard." *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) (allegations "fail[] under the PSLRA's heightened-pleading standard" where plaintiffs "fail[] to tie specifically any Individual Defendant to [allegedly false] statements").

The Fifth Circuit requires that we disregard allegations based on impermissible group pleading and look only to the specific allegations against Mr. Dimitrievich. *See Jastrow*, 789 F.3d at 538 ("It is appropriate to *disregard the group-pleaded allegations* and determine whether the remaining, properly pleaded allegations raise a strong inference of scienter.") (emphasis added); *Southland*, 365 F.3d at 365 ("[W]e do not construe allegations contained in the Complaint *against the 'defendants' as a group* as properly imputable to any particular individual defendant *unless the connection between the individual defendant* and the allegedly fraudulent statement is specifically pleaded.") (emphasis added).[36]  Critically, no such allegations exist as to Mr. Dimitrievich.

### 3. Signing A 10-K, With Nothing More, Does Not Raise A Strong Inference Of Scienter.

Setting aside the improper group-pleaded allegations, Plaintiffs cannot point to *any* specific allegations against Mr. Dimitrievich individually that raises any inference—much less a *strong* one—that he acted with scienter regarding the alleged misstatements when he signed the 2017 10-K.  This motion has already outlined *every* individual

---

[36]  *See also In re BP*, 852 F. Supp. 2d at 814-15 ("The Court *must therefore disregard all group pleaded allegations* in the Complaint and undertake scienter analysis only where Plaintiffs *have specifically tethered an alleged misrepresentation or omission* to one or more of the Individual Defendants.") (emphasis added).

allegation Plaintiffs made against Mr. Dimitrievich specifically across all three complaints. *See supra* § I.A. Not one of those allegations comes close to raising a ***strong*** inference of scienter. Even taken collectively, they allege only that Mr. Dimitrievich signed the 2017 10-K as one of AMR's eleven Board members.

Thus, the only remaining question is whether the allegation that an individual signed a 10-K—with nothing more—is enough to raise a strong inference of scienter. The Fifth Circuit (as well as courts within this district) has resoundingly said no. *See, e.g., Yang v. Nobilis Health Corp.*, 2021 WL 3619863, at *2-3 (5th Cir. Aug. 13, 2021) (describing plaintiffs' allegations about defendant's position as CEO and signature on a SOX certification as insufficient to support an inference of scienter); *Plaisance v. Schiller*, 2019 WL 1205628, at *32 (S.D. Tex. Mar. 14, 2019) ("A defendant's signature on an SEC filing with false or misleading statements ***cannot by itself*** support a strong inference of scienter.") (emphasis added) (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs, Inc.*, 497 F.3d 546, 555 (5th Cir. 2007)).[37]

In *Yang*, the Fifth Circuit considered whether scienter could be inferred from allegations that the defendant corporate director signed an SEC filing allegedly containing false statements. 2021 WL 3619863, at *3. There, the Fifth Circuit made clear that such allegations did not support a securities fraud claim and did little more than

---

[37] Plaintiffs also cannot show that scienter existed by virtue of Mr. Dimitrievich's position on the Board of Directors. *See In re Enron Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 628, 633 (S.D. Tex. 2003) (In dismissing the Section 10(b) claims, the Court explained that allegations that the outside directors "were present at key Enron Board and Committee meetings … where nonpublic information was discussed," without providing any "particular facts or details about the presentation[s] or discussion[s] … that would indicate that the Outside Directors knew or recklessly disregarded" are wholly insufficient to plead scienter.); *see also In re Key Energy*, 166 F. Supp. 3d at 833-34 (a "general assertion that [defendant] knew about a … specific accounting violation or internal control problem because of [his board] position[]" is insufficient to establish scienter).

"reveal a truism—that [defendant] was a corporate director who performed official duties including signing SOX certificates." *Id.*

Just as in *Yang*, Plaintiffs' allegation here that Mr. Dimitrievich signed the 2017 10-K in his capacity as an AMR board member reveals "nothing about [his] frame of mind" and cannot support a strong inference "that [Mr. Dimitrievich] acted with reckless disregard to [the] alleged fraud." *Id.* Even when "[t]aken together, [Mr. Dimitrievich's] corporate position and [10-K] signature provide **neither cogent nor powerful inference of scienter** and are plainly insufficient." *Id.* (emphasis added).

In sum, the Section 10(b) claim against Mr. Dimitrievich should be dismissed given Plaintiffs' express failure to raise any particularized allegations regarding "whether [Mr. Dimitrievich] knew [that the alleged misstatements were] supposedly false at the time [they were] made." *Amex Elec. Servs., Inc. v. Blanchard Ref. Co., LLC*, 2020 WL 622792, at *5-6 (S.D. Tex. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 619665 (S.D. Tex. Feb. 10, 2020) (dismissing securities fraud claims at summary judgment because the complaint, which "failed to specify … whether the speaker knew [the alleged misstatement] was supposedly false at the time it was made," "did not satisfy the Rule 9(b) standard").

**B.    Plaintiffs' Section 10(b) Claim Must Be Dismissed Because Plaintiffs Have Not Uncovered Any Evidence That Mr. Dimitrievich Acted With Scienter.**

Even if Plaintiffs' pleadings were sufficient (they are not), Plaintiffs have still failed to uncover sufficient evidence to support their claims. To survive summary judgment on the issue of scienter, "[a] plaintiff must present … evidence to raise a

material disputed issue that defendant acted with an actual intent to deceive, manipulate, or defraud, or that the defendant acted with severe recklessness." *In re Browning-Ferris Indus. Inc. Sec. Litig.*, 876 F. Supp. 870, 895 (S.D. Tex. 1995). This requires Plaintiffs to "go beyond the pleadings" and, using the evidentiary record, "designate specific facts that show there is a genuine issue for trial." *In re Waste Mgmt., Inc.*, 2007 WL 951572, at *2 (S.D. Tex. Mar. 26, 2007), *aff'd sub nom. Courtney v. Andersen*, 264 F. App'x 426 (5th Cir. 2008) (citation omitted). "[C]onclusory allegations and unsubstantiated assertions do not raise an issue of material fact for trial." *In re I.C.H. Corp.*, 1998 WL 386165, at *4 (N.D. Tex. July 8, 1998). Where there is "no evidence in the record" to support a claim that a defendant acted with severe recklessness or "intentionally misled" investors, a securities fraud claim must be dismissed. *In re Browning-Ferris*, 876 F. Supp. at 895.

The key allegations specific to Mr. Dimitrievich are undisputed: Mr. Dimitrievich admits that he was a member of AMR's Board of Directors following the close of the Business Combination and that he signed AMR's 2017 10-K. *See* Dkt. 176 at ¶ 49. That Plaintiffs have failed to allege any facts as to Mr. Dimitrievich's state of mind regarding the alleged misstatements in the 2017 10-K is unsurprising, as this two-years long investigation has uncovered ***no evidence*** that Mr. Dimitrievich acted with scienter when signing that document. Indeed, the record contains "precious little testimony" from Mr. Dimitrievich or any other witness regarding his mental state while signing the 2017 10-K. *Broad*, 642 F.2d at 962 (dismissing Rule 10b-5 claim where limited testimony about the alleged misstatements yielded "insufficient evidence to raise a jury question of scienter").

16

The limited testimony that Mr. Dimitrievich did provide lends no support for

Plaintiffs' claims.  As noted,



Ex. A (Dimitrievich Dep. Tr.) at 169:17-25 (emphasis added).

Notably, counsel for the Opt-Out Plaintiffs attended Mr. Dimitrievich's deposition

but failed to ask him *any* questions.  Hence, this is the sole record evidence regarding his

mental state when signing the 2017 10-K.[38]

This record evidence is directly contrary to Plaintiffs allegations.  Indeed, rather

than acting with scienter, Mr. Dimitrievich prudently reviewed the information provided

to him as a board member, including the auditors and audit committee's reports, prior to

signing the 10-K.  *See, e.g.*, *In re Fed. Nat. Mortg. Ass'n Sec., Derivative, ERISA Litig.*,

892 F. Supp. 2d 59, 66-67, 69 (D.D.C. 2012) (*no inference* that defendant CEO acted

with scienter by *relying on a report prepared by the "company's audit committee"*

stating there were no issues with corporate accounting, where plaintiffs had "no direct

evidence" that defendant "intended to deceive … investors" or "knew his statements were

false," and where no witness testified that defendant:   (1) knew that the allegedly

---

[38]  Mr. Dimitrievich respectfully incorporates by reference the arguments in Mr. McMullen's motion for summary judgment (at pp. 19-21, including footnote 51) related to the alleged misstatements in the 2017 10-K.

fraudulent "financial statements were not GAAP compliant or … [were] materially inaccurate;" (2) was "ever told [] to violate GAAP;" or (3) had ever been informed of "material weaknesses in [the relevant corporate] internal controls." (emphasis added)).

The limited testimonial record fails to suggest that Mr. Dimitrievich's review of and signature on the 2017 10-K was "suspicious[] … or anything but 'innocuous.'" *In re Browning-Ferris*, 876 F. Supp. at 910. There is no evidence whatsoever—no documentary evidence, nor any contrary testimony—to suggest otherwise.

Rather, the evidence in the record demonstrates that Mr. Dimitrievich diligently reviewed the provided materials before signing the statement. To infer that a board member must do more—such as question the veracity of the technical information provided—is contrary to the settled interpretation of the Exchange Act and other legal rules governing board members. Indeed, in the related AMH bankruptcy proceeding alleging that Mr. Dimitrievich and other Board members violated their fiduciary duties, Judge Isgur remarked, "who's going to serve on boards of directors if you have to have sufficient technical expertise as a board member to question what your technical people tell you? ... And if you're a director that doesn't have that technical capability, you can be sued for it. Is that good public policy?" *Dunn v. Chappelle*, Case No. 21-3423-ADV, Dkt. 79 (Nov 3, 2021 Tr.) at 79-80. Notably, Judge Isgur dismissed Mr. Dimitrievich from that action at the pleading stage. *Id*., Dkt. 90 at 1.

Unable to adduce *any* evidence that Mr. Dimitrievich had the requisite scienter regarding the alleged misstatements when signing the 2017 10-K, Plaintiffs would have this Court *infer* scienter based on 20/20 hindsight. But the Fifth Circuit has expressly

rejected such "hindsight assessments." *See, e.g., Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867-68 (5th Cir. 2003) (declining to interpret a "hindsight assessment" describing company's "problems *since the acquisition*" to mean "that management knew *when it acquired the [asset]* that it was inheriting [] problems" and also finding that such allegations, which "fail[] to identify exactly who supplied the information or when they knew the information," were "not sufficiently particular" to form a strong inference of scienter (emphasis in original)).  Likewise, district courts in this Circuit have expressly rejected such attempts to impose retrospective liability. *See Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 755-56 (S.D. Tex. 2001) (alleging misrepresentations in prospectus issued five months before purported illegal activity was exposed "without identif[ying] any specific documents, meetings, telephone calls, reports, etc. that … would have or should have made [defendants] aware of specific wrongdoing" is impermissible "fraud by hindsight" that cannot support an inference of scienter).  Thus, Plaintiffs cannot rely on AMR's eventual write down (February 2019) and bankruptcy (September 2019) to try and prove that Mr. Dimitrievich acted with the requisite scienter regarding the alleged misstatements when he signed the 2017 10-K ***in March 2018***.

At best, Plaintiffs will attempt to cobble together *ex post* statements describing issues that arose at AMR well after Mr. Dimitrievich signed the 2017 10-K.  These statements are insufficient to prove that "any particular Defendant knew of these problems and then fraudulently concealed them" and should not be taken as "an admission that [Mr. Dimitrievich] previously knew" of such issues prior to those statements being made. *See, e.g., In re TETRA Techs., Inc. Sec. Litig.*, 2009 WL

19

6325540, at *8, *22-23 (S.D. Tex. July 9, 2009), *order clarified*, 2009 WL 6326865 (S.D. Tex. Aug. 10, 2009) (*ex post* statements describing a company's "problems with [] accounting" or expressing a desire to "clean[] up" issues with a company's previously inadequate description of its asset retirement obligations "do not suggest that [defendant] knew that officers within his company were committing intentional or severely reckless fraud sufficient to create a strong inference of scienter").  With ***no*** evidence to support a finding of scienter, the Section 10(b) claim fails.

## II.   PLAINTIFFS' SECTION 20(A) CLAIM MUST BE DISMISSED BECAUSE MR. DIMITRIEVICH WAS NOT A CONTROL PERSON.

Plaintiffs' Section 20(a) claim against Mr. Dimitrievich fails for similar reasons as the Section 10(b) claim:  Plaintiffs neither properly pleaded nor uncovered any evidence establishing that Mr. Dimitrievich was a control person.  As a "secondary liability provision," Plaintiffs must "establish a primary violation under section 10(b) before liability arises under section 20(a)."  *In re: BP P.L.C. Sec. Litig.*, 2016 WL 29300, at *10 (S.D. Tex. Jan. 4, 2016).  Where, as here, Plaintiffs fail "to plead with particularity a primary violation under 10(b)," the "section 20(a) claim … fails and should be dismissed."  *MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *23 (S.D. Tex. July 24, 2019), *report and recommendation adopted*, 2019 WL 4673209 (S.D. Tex. Sept. 24, 2019); *see also In re: BP*, 2016 WL 29300, at *10 ("Section 20(a) claim is not viable" where plaintiffs "failed to state an underlying claim").[39]

---

[39]     When applying the standard for control person liability, "the Fifth Circuit has at various times considered whether the alleged control-person had 'effective day-to-day control' of the corporation, or had 'the requisite power to directly or indirectly control or influence corporate policy.'"  *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 652 (S.D. Tex. 2021) (citing *Cameron v. Outdoor Resorts of Am., Inc*, 608 F.2d 187,

Under securities law, "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.   Pleading "control" requires alleging "some facts beyond a defendants' position or title to show that the defendant had ***actual power or control*** over the controlled person."  *Stockman v. Flotek Indus., Inc.*, 2010 WL 3785586, at \*14 (S.D. Tex. Sept. 29, 2010) (emphasis added).   Absent showing that a director had the "ability to control the ***specific … activity*** upon which the primary violation is based," *Carlton v. Cannon*, 2016 WL 3959164, at \*6 (S.D. Tex. July 22, 2016) (emphasis added), merely alleging defendant's "position as a director" on a corporate board is "insufficient" to maintain a Section 20(a) claim.  *Dennis*, 918 F.2 496 at 510.

### A.    Plaintiffs Have Failed to Plead a Primary Violation.

Plaintiffs' claims "for secondary control liability against [Mr. Dimitrievich] under § 20(a)" fail "as a matter of law" because the "vague and conclusory" allegations in the complaints are "insufficient to state a claim for securities fraud under § 10(b) and Rule 10b–5."  *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 916-17 (S.D. Tex. 2001) (dismissing Section 20(a) claims where plaintiffs "failed to allege specific facts ... sufficient to give rise to a strong inference" of scienter as required to sustain the primary Section 10(b) claims); *see also In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547,

---

195 (5th Cir. 1979)).  While none of these inquiries are "dispositive," plaintiffs must,"[a]t the very least … show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based." *Id.* (internal quotations omitted); *see also, e.g.*, *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 959 (5th Cir. 1981) ("culpable participation" not required for 20(a) liability); *but see Dennis*, 918 F.2d at 509 (20(a) liability requires alleged control person to have "induced or participated in the alleged violation") *and In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 712, 791 (S.D. Tex. 2012) (same).

554-55 (S.D. Tex. 2007), *aff'd sub nom. Catogas v. Cyberonics, Inc.*, 292 F. App'x 311 (5th Cir. 2008) ("[S]ection 20(a) liability may not be imposed unless there is an underlying violation of the Securities Exchange Act.   Because there is no viable underlying violation alleged against [defendant], the derivative section 20(a) claim for controlling person liability also must fail.") (citations omitted); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643-44, 641 (5th Cir. 2005) (dismissing Section 20(a) claim where plaintiffs' Section 10(b) claim failed because the facts alleged were "[in]sufficient to raise a strong inference of scienter").

### B.     The Section 20(a) Claim Fails Because Plaintiffs Failed To Plead Control As To Mr. Dimitrievich.

As an initial matter, Plaintiffs' Section 20(a) claim against Mr. Dimitrievich fails based on the pleadings alone because the complaints contain no allegations to support an inference that he "had an ***ability to control*** the specific transaction or activity upon which the primary violation is based."  *Carlton*, 2016 WL 3959164, at *5 ("Whatever control-person liability demands beyond a defendant's corporate status …, a plaintiff 'must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based.'") (citation omitted).

For example, Plaintiffs fail to plead ***any*** allegations to suggest that Mr. Dimitrievich specifically, as one of eleven members of AMR's Board of Directors, exercised, or could have exercised, control over AMR or the Individual Defendants in any capacity, much less control over any alleged misstatements in the 2017 10-K.  *See In re BP P.L.C. Sec. Litig.*, 922 F. Supp. 2d 600, 640 (S.D. Tex. 2013) (dismissing 20(a)

claim against officer/director that rested on allegations of defendant's position and "not that [defendant] *controlled* anyone or anything relevant to any actionable misrepresentation") (emphasis in original).  Indeed, Mr. Dimitrievich's name appears in no more than seven paragraphs across Plaintiffs' respective complaints; these paragraphs contain only generic allegations regarding his position as a Board member and his presence at unspecified Board meetings.[40]  Thus, "other than his position as a director (which, standing alone is insufficient)," Plaintiffs present no evidence that Mr. Dimitrievich acted as a "controlling person" of AMR or the Individual Defendants under Section 20(a).  *Dennis*, 918 F.2d at 510; *see also Stockman v. Flotek Indus., Inc.*, 2010 WL 3785586, at *14, *31 (S.D. Tex. Sept. 29, 2010) (failure to "allege some facts beyond a defendant's position or title to show that the defendant had actual power or control over the controlled person" is insufficient to sustain Section 20(a) liability).  Accordingly, Plaintiffs' Section 20(a) claims fail as a matter of law.

### C.    Plaintiffs Have Adduced No Facts That Establish Mr. Dimitrievich Had Control Over AMR Or The Individual Defendants, As Required Under Section 20(a).

Similarly, the facts developed during discovery do nothing to salvage Plaintiffs' Section 20(a) claim against Mr. Dimitrievich because Plaintiffs have not uncovered ***any*** evidence to support the claim that Mr. Dimitrievich, as an outside director, "had actual power over" AMR or the Individual Defendants.  *In re BP P.L.C. Sec. Litig.*, 843 F. Supp. 2d 712, 791 (S.D. Tex. 2012) (citing *Dennis*, 918 F.2d at 509).  There is not a shred of evidence to show that Mr. Dimitrievich, who was ***not*** an officer or manager of AMR,

---

[40]  *See* TAC at ¶¶ 57, 59, 62, 136, 189, 219; AC at ¶¶ 35, 37, 40; OC at ¶¶ 44, 46, 49, 358.

was "involved in the day to day management" of AMR.  *See, e.g.*, *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 675 (N.D. Tex. 2013) (quotation omitted) (allegations that defendant was an outside director, and so "not involved in day to day management" are "legally insufficient to support" a Section 20(a) claim); *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 620 (5th Cir. 1993) ("power to control the general affairs" of defendant corporation not proven where surety and bonding agent defendants were not involved in "decisions … to purchase properties[,]" or the "general operations" of the defendant corporation, "including [in its] business, financial and marketing plans").

To the contrary, the only record evidence on this issue is that Mr. Dimitrievich's responsibilities at AMR were limited to his position as an independent Board member, appointed by HPS.  *See, e.g.*, Ex. A (Dimitrievich Dep. Tr.) at 169:17-25.  And Plaintiffs have adduced no evidence to show that, as an independent Board member, Mr. Dimitrievich had the ability to control AMR, its Board, or any of the Individual Defendants, or that he had a role in AMR's day-to-day operations.  Accordingly, there is no evidence that Mr. Dimitrievich was a "control person" of AMR or the Individual Defendants, and Plaintiffs' Section 20(a) claim should be dismissed.  *Dennis*, 918 F.2d at 510 (director position alone insufficient to show control); *Stockman*, 2010 WL 3785586, at *14 (similar).

## CONCLUSION

For the foregoing reasons, Defendant Donald Dimitrievich respectfully requests that this Court grant summary judgment on Plaintiffs' claims brought under Section 10(b), Rule 10b-5, and Section 20(a) of the Exchange Act.

Dated:    August 31, 2023                Respectfully submitted,

                                         /s/ *Christopher Porter*
                                         (signed by permission of Attorney-in-Charge)


                                         Karl S. Stern (attorney in charge) (SBN
                                         19175665)
                                         Christopher D. Porter (SBN 24070437)
                                         **QUINN EMANUEL URQUHART &**
                                         **SULLIVAN, LLP**
                                         711 Louisiana Street, Suite 500
                                         Houston, TX 77002
                                         Telephone:  (713) 221-7000 / Facsimile:
                                         (713) 221-7100
                                         Email: karlstern@quinnemanuel.com
                                         chrisporter@quinnemanuel.com

                                         -AND-

                                         Michael B. Carlinsky (*pro hac vice*)
                                         Jacob J. Waldman (*pro hac vice*)
                                         Courtney C. Whang (*pro hac vice*)
                                         51 Madison Avenue, 22nd Floor
                                         New York, NY 10010
                                         Telephone:  (212) 849-7000 / Facsimile:
                                         (212) 849-7100
                                         Email: michaelcarlinsky@quinnemanuel.com
                                         jacobwaldman@quinnemanuel.com
                                         courtneywhang@quinnemanuel.com

                                         **COUNSEL TO HPS INVESTMENT**
                                         **PARTNERS, LLC AND DON**
                                         **DIMITRIEVICH**

## CERTIFICATE OF SERVICE

I certify that this motion has been served under seal by the Court's ECF system, and a copy has been served by email to counsel for all parties on August 31, 2023.

/s/ *Christopher Porter*
By:  Christopher Porter