# **Exhibit C**

SC 13D 1 d553356dsc13d.htm SC 13D

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# SCHEDULE 13D

### Under the Securities Exchange Act of 1934
### (Amendment No.    )*

---

# ALTA MESA RESOURCES, INC.
### (Name of Issuer)

**Class A Common Stock ($0.0001 par value per share)**
### (Title of Class of Securities)

**82812A202**
### (CUSIP Number)

**Timothy Donnelly**
**40 West 57th Street, 33rd Floor**
**New York, New York 10019**
**(212) 287-6767**
###### (Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)

*with a copy to:*

**Troy Harder**
**Bracewell LLP**
**711 Louisiana Street, Suite 2300**
**Houston, Texas 77002**

**March 11, 2018**
###### (Date of Event Which Requires Filing of this Statement)

---

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§ 240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box.  ☐

---

\*    The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter the disclosures provided in a prior cover page.

The information required in the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other

provision of the Act (however, see the Notes).

CUSIP No. 82812A202                                                                    Page 1 of 15 pages

| 1. | Names of Reporting Persons:<br><br>HPS Investment Partners, LLC | | |
|----|----|----|----|
| 2. | Check the Appropriate Box if a Member of a Group<br>(a) ☐    (b) ☒ | | |
| 3. | SEC Use Only | | |
| 4. | Source of Funds (See instructions)<br><br>OO | | |
| 5. | Check if Disclosure of Legal Proceedings is Required Pursuant to Items 2(d) or 2(e) | | |
| 6. | Citizenship or Place of Organization:<br><br>Delaware | | |
| Number of shares Beneficially owned By each reporting Person with: | 7. | Sole Voting Power:<br><br>28,717,435 | |
| | 8. | Shared Voting Power:<br><br>0 | |
| | 9. | Sole Dispositive Power:<br><br>28,717,435 | |
| | 10. | Shared Dispositive Power:<br><br>0 | |
| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person:<br><br>28,717,435 | | |
| 12. | Check if the Aggregate Amount in Row (11) Excludes Certain Shares ☐ | | |
| 13. | Percent of Class Represented by Amount in Row (11):<br><br>14.5% | | |
| 14. | Type of Reporting Person (See Instructions):<br><br>IA | | |

**Item 1.**     **Security and Issuer.**

This statement on Schedule 13D (this "**Schedule 13D**") relates to the Class A Common Stock, par value $0.0001 per share (the "**Class A Common Stock**"), of Alta Mesa Resources, Inc., formerly known as Silver Run Acquisition Corporation II (the "**Issuer**"). The address of Issuer's principal executive offices is 15021 Katy Freeway, Suite 400, Houston, Texas 77094**.**

**Item 2.**     **Identity and Background.**

This Schedule 13D is filed by HPS Investment Partners, LLC, a Delaware limited liability company ("**HPS**" or the "**Reporting Person**").

The principal address of HPS is 40 West 57th Street, 33rd Floor, New York, New York 10019. Additional information called for by this item with respect to the executive officers and directors of HPS is contained in Schedule A attached hereto and is incorporated herein by reference.

HPS is a registered investment advisor under the Investment Advisers Act of 1940 and is principally engaged in the business of investment in securities through various privately offered funds and separate accounts for which it or its subsidiary serves as, direct or indirect, investment manager.

During the last five years, none of HPS or the executive officers and directors listed on Schedule A have been (i) convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) or (ii) a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

HPS has power of attorney and investment discretion and voting authority with respect to such securities held by The Northwestern Mutual Life Insurance Company, The Northwestern Mutual Life Insurance Company for its Group Annuity Separate Account, Northwestern Mutual Capital Strategic Equity Fund III, LP, KCK-AMIH, Ltd. and United Insurance Company of America.

**Item 3.**     **Source and Amount of Funds or Other Consideration.**

The Issuer was formed in November 2016 as a Delaware blank check company for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination involving the Issuer and one or more businesses. On March 29, 2017, the Issuer consummated its initial public offering ("**IPO**") of 103,500,000 units at $10.00 per unit, with each unit consisting of one share of Class A Common Stock and one-third of one warrant. Simultaneously with the closing of the Issuer's IPO on March 29, 2017, it completed the private sale of 15,133,333 warrants (the "**Private Placement Warrants**") to Silver Run Sponsor II, LLC at a purchase price of $1.50 per Private Placement Warrant, generating gross proceeds to the Issuer of $22,700,000. A total of $1,035,000,000, comprised of $1,014,300,000 of the proceeds from the IPO, including $36,225,000 of the underwriters' deferred discount, and $20,700,000 of the proceeds of the sale of the Private Placement Warrants were placed in a trust account to be used to fund an initial business combination.

On February 9, 2018 (the "**Closing Date**"), the Issuer consummated the acquisition of (i) all of the limited partnership interests in Alta Mesa Holdings, LP ("**Alta Mesa**"), (ii) 100% of the economic interests and 90% of the voting interests in Alta Mesa Holdings GP, LLC, the sole general partner of Alta Mesa ("**Alta Mesa GP**"), and (iii) all of the membership interests in Kingfisher Midstream, LLC ("**Kingfisher**") (such acquisitions, the "**Business Combination**"), pursuant to:

• the Contribution Agreement, dated as of August 16, 2017 (the "**Alta Mesa Contribution Agreement**"), among High Mesa Holdings, LP (the "**Alta Mesa Contributor**"), High Mesa Holdings GP, LLC, the sole general partner of the Alta Mesa Contributor, Alta Mesa, Alta Mesa GP, the Issuer and, solely for certain provisions therein, the equity owners of the Alta Mesa Contributor;

- the Contribution Agreement, dated as of August 16, 2017 (the "**Kingfisher Contribution Agreement**"), among KFM Holdco, LLC (the "**Kingfisher Contributor**"), Kingfisher, the Issuer and, solely for certain provisions therein, the equity owners of the Kingfisher Contributor; and

- the Contribution Agreement, dated as of August 16, 2017 (together with the Alta Mesa Contribution Agreement and the Kingfisher Contribution Agreement, the "**Contribution Agreements**"), between Riverstone VI Alta Mesa Holdings, L.P. (the "**Riverstone Contributor**" and, together with the Alta Mesa Contributor and the Kingfisher Contributor, the "**Contributors**"), and the Issuer.

At the closing of the Business Combination (the "**Closing**"),

- the Issuer issued 40,000,000 shares of Class A Common Stock and warrants to purchase 13,333,333 shares of Class A Common Stock to Riverstone VI SR II Holdings, L.P. pursuant to the terms of that certain Forward Purchase Agreement, dated as of March 17, 2017 (the "**Forward Purchase Agreement**"), for cash proceeds of $400 million to the Issuer;

- the Issuer contributed approximately $1.4 billion in cash (the proceeds of the IPO escrow account and the Forward Purchase Agreement) to SRII Opco, LP, a Delaware limited partnership and a subsidiary of the Issuer ("**SRII Opco**"), in exchange for (i) 169,371,730 common units representing limited partner interests (the "**SRII Opco Common Units**") in SRII Opco, which are redeemable for shares of Class A Common Stock on a one-to-one basis at any time, subject to the terms and conditions of the SRII Opco LPA (as defined below), issued to the Issuer and (ii) warrants exercisable for 62,966,666 SRII Opco Common Units issued to the Issuer;

- the Issuer caused SRII Opco to issue 213,402,398 SRII Opco Common Units (and an equal number of shares of Class C Common Stock (as defined below) that cumulatively represent a 0% economic interest and an approximate 55.8% voting interest) to the Contributors in exchange for the ownership interests in Alta Mesa, Alta Mesa GP and Kingfisher contributed to SRII Opco by the Contributors;

- the Issuer agreed to cause SRII Opco to issue up to 59,871,031 SRII Opco Common Units to the Alta Mesa Contributor and the Kingfisher Contributor if the earn-out consideration provided for in the Contribution Agreements is earned by the Alta Mesa Contributor or the Kingfisher Contributor pursuant to the terms of the Contribution Agreements;

- the Issuer issued to each of the Contributors a number of shares of Class C Common Stock, par value $0.0001 per share (the "**Class C Common Stock**"), equal to the number of the SRII Opco Common Units received by such Contributor at the Closing;

- the Issuer contributed to SRII Opco approximately $1.4 billion in cash and SRII Opco then distributed to the Kingfisher Contributor cash in the amount of approximately $809.8 million in partial payment for the ownership interests in Kingfisher contributed by the Kingfisher Contributor; and

- the Issuer contributed approximately $554.2 million in cash to Alta Mesa as working capital.

HPS manages, directly or indirectly, each of Mezzanine Partners II Delaware Subsidiary, LLC, KFM Offshore, LLC, a wholly-owned subsidiary of Offshore Mezzanine Partners Master Fund II, L.P., KFM Institutional, LLC, a wholly-owned subsidiary of Institutional Mezzanine Partners II Subsidiary, L.P., AP Mezzanine Partners II, L.P., and Jade Real Assets Fund, L.P. (collectively, the "**HPS Kingfisher Members**"), each of which is a beneficial owner of the Kingfisher Contributor. Therefore, HPS may be deemed to be the beneficial owner of all shares of the Issuer's Class A Common Stock and Class C Common Stock beneficially owned by each of the HPS Kingfisher Members. Each HPS Kingfisher Member received SRII Opco Common Units (and an equal number of shares of Class C Common Stock) pursuant to the Kingfisher Contribution Agreement. Additionally, each HPS Kingfisher Member purchased additional SRII Opco Common Units (and an equal number of shares of Class C Common Stock) from the Alta Mesa Contributor and one of the members of the Kingfisher Contributor for aggregate cash consideration of approximately $139 million, which cash consideration was received by the HPS Kingfisher Members in connection with the Closing.

**Class C Common Stock**

After a specified period of time after Closing, the Contributors will generally have the right to cause SRII Opco to redeem all or a portion of their SRII Opco Common Units in exchange for shares of the Class A Common Stock on a one-to-one basis or, at SRII Opco's option, an equivalent amount of cash; provided that the Issuer may, at its option, effect a direct exchange of cash or Class A Common Stock for such SRII Opco Common Units in lieu of such a redemption by SRII Opco. The Kingfisher Contributor may cause the redemption of up to 39,000,000 SRII Opco Common Units (plus any "additional common units" as defined in the Kingfisher Contribution Agreement) at any time that is 90 days after the Closing Date.

CUSIP No. 82812A202 <span style="float:right">Page 4 of 15 pages</span>

Upon the future redemption or exchange of SRII Opco Common Units held by a Contributor, a corresponding number of shares of Class C Common Stock will be cancelled. After the Closing, holders of Class C Common Stock, together with holders of Class A Common Stock, voting as a single class, will have the right to vote on all matters properly submitted to a vote of the Issuer's stockholders, but holders of Class C Common Stock will not be entitled to any dividends or liquidating distributions from the Issuer.

**Item 4.   Purpose of Transaction.**

The response to Item 3 above is incorporated herein by reference. The Contributors acquired (1) the SRII Opco Common Units, which are redeemable for shares of the Issuer's Class A Common Stock, and (2) shares of the Issuer's Class C Common Stock, for investment purposes.

(a) Pursuant to the Alta Mesa Contribution Agreement and the Kingfisher Contribution Agreement, for a period of seven years following the Closing, the Alta Mesa Contributor and the Kingfisher Contributor may be entitled to receive additional SRII Opco Common Units (and a corresponding number of shares of Class C Common Stock) as earn-out consideration if the 20-day volume-weighted average price ("**20-Day VWAP**") of the Class A Common Stock equals or exceeds specified prices as follows (each such payment, an "**Earn-Out Payment**"):

| 20-Day VWAP | Earn-Out Consideration Payable to the Alta Mesa Contributor | Earn-Out Consideration Payable to the Kingfisher Contributor |
| --- | --- | --- |
| $14.00 | 10,714,285 SRII Opco Common Units | 7,142,857 SRII Opco Common Units |
| $16.00 | 9,375,000 SRII Opco Common Units | 6,250,000 SRII Opco Common Units |
| $18.00 | 13,888,889 SRII Opco Common Units | — |
| $20.00 | 12,500,000 SRII Opco Common Units | — |

Neither the Alta Mesa Contributor nor the Kingfisher Contributor will be entitled to receive a particular Earn-Out Payment on more than one occasion and, if, on a particular date, the 20-Day VWAP entitles the Alta Mesa Contributor or the Kingfisher Contributor to more than one Earn-Out Payment (each of which has not been previously paid), the Alta Mesa Contributor and/or the Kingfisher Contributor will be entitled to receive each such Earn-Out Payment. The Alta Mesa Contributor and the Kingfisher Contributor will be entitled to the earn-out consideration described above in connection with certain liquidity events of the Issuer, including a merger or sale of all or substantially all of the Issuer's assets, if the consideration paid to holders of Class A Common Stock in connection with such liquidity event is greater than any of the above-specified 20-Day VWAP hurdles.

After a specified time, the Contributors will generally have the same right to cause SRII Opco to redeem all or a portion of their SRII Opco Common Units in exchange for an equal number of shares of the Issuer's Class A Common Stock or, at SRII Opco's option, an equivalent amount of cash; provided that the Issuer may, at its option, effect a direct exchange of cash or Class A Common Stock for such SRII Opco Common Units in lieu of such a redemption by SRII Opco. If all of the Earn-Out Payment is payable, the Contributors will have the right to receive up to 59,871,031 shares of the Issuer's Class A Common Stock in exchange for the SRII Opco Common Units received as payment of the Earn-Out Payment consideration. Upon the future redemption or exchange of SRII Opco Common Units held by a Contributor, a corresponding number of shares of Class C Common Stock will be cancelled.

In connection with the Closing, the Issuer and the Contributors entered into a Registration Rights Agreement (the "**Registration Rights Agreement**"), pursuant to which the Issuer will be required to register for resale shares of Class A Common Stock issuable upon the future redemption or exchange of SRII Opco Common Units by the Contributors (collectively, "**Registrable Securities**"). The Issuer is required to, within 30 calendar days after consummation of the Business Combination, file a registration statement registering the resale of Registrable Securities held by the Contributors. On February 14, 2018, the Issuer filed a Registration Statement on Form S-1 with the Securities and Exchange Commission (the "**SEC**"). If an underwritten offering is reasonably expected to result in gross proceeds of more than $50 million, (i) the Alta Mesa Contributor is entitled to demand six underwritten offerings, (ii) the Riverstone Contributor is entitled to demand three underwritten offerings and (iii) the Kingfisher Contributor is entitled to demand two underwritten offerings. The holders will also have certain "piggy-back" registration rights with respect to registration statements and rights to require the Issuer to register for resale such securities pursuant to Rule 415 under the Securities Act of 1933, as amended (the "**Securities Act**"). The Issuer will bear the expenses incurred in connection with the filing of any such registration statements.

In connection with the Business Combination, the Issuer's stockholders approved and adopted the Alta Mesa Resources, Inc. 2018 Long Term Incentive Plan (the "**LTIP**") and the material terms thereunder. A total of 50,000,000 shares of Class A Common Stock will be reserved for issuance under the LTIP.

(b)-(c) See Item 3 above.

(d) In connection with the Closing, the Issuer issued one share of Series A Preferred Stock, par value $0.0001 per share ("**Series A Preferred Stock**"), to each of Bayou City Energy Management LLC ("**Bayou City**"), HPS, and AM Equity Holdings, LP ("**AM Management**"). For so long as the Series A Preferred Stock remains outstanding, the holders of the Series A Preferred Stock will be entitled to nominate and elect directors to the Issuer's board of directors for a period of up to five years following the Closing based on their and their affiliates' beneficial ownership of Class A Common Stock as follows:

| Holder / Beneficial Ownership and Other Requirements | Designation Right |
| --- | --- |
| ***Bayou City and its affiliates*** | |
| • at least 10% | one director who must be independent for purposes of the listing rules of The NASDAQ Capital Market ("**NASDAQ**") (unless the director to be nominated is William W. McMullen who need not be independent) |
| ***HPS and its affiliates*** | |
| • at least 10% | one director who must be independent for purposes of the listing rules of NASDAQ |
| ***AM Management and its affiliates*** | |
| • at least 10% | two directors who need not be independent for purposes of the listing rules of NASDAQ |
| • less than 10% but at least 5% and either Harlan Chappelle or Michael Ellis is a member of the Issuer's management | one director who need not be independent for purposes of the listing rules of NASDAQ |

Bayou City has elected to appoint William W. McMullen, HPS has elected to appoint Don Dimitrievich and AM Management has elected to appoint Harlan H. Chappelle and Michael E. Ellis, each in accordance with their rights arising out of ownership of the Series A Preferred Stock. In addition, in accordance with the Alta Mesa Contribution Agreement, James T. Hackett, the Issuer's former Chief Executive Officer and Chairman of the Board, was appointed as Executive Chairman of the Board and Chief Operating Officer—Midstream; Harlan H. Chappelle was appointed Chief Executive Officer; Michael E. Ellis was appointed Chief Operating Officer—Upstream; and Michael A. McCabe was appointed Chief Financial Officer.

(e)-(f) None.

(g)

**Establish Class C Common Stock**

In connection with the Business Combination, the Issuer's stockholders approved amendments to the Issuer's amended and restated certificate of incorporation (the "**Charter**") to provide for the establishment of a new class of capital stock designated as Class C Common Stock. In connection with the Business Combination and pursuant to the Contribution Agreements, the Contributors were issued SRII Opco Common Units and acquired an equal number of shares of Class C Common Stock. The Contributors collectively own all of the Issuer's outstanding Class C Common Stock and, following the Closing, the Issuer expects to maintain a one-to-one ratio between the number of outstanding shares of Class C Common Stock and the number of SRII Opco Common Units owned by each of the Contributors so that each of the Contributors will have a voting interest in the Issuer that is identical to their economic interest in SRII Opco.

Shares of Class C Common Stock may be issued only to the Contributors, their respective successors and assigns, as well as any permitted transferees. A holder of Class C Common Stock may transfer shares of Class C Common Stock to any transferee (other than the Issuer) only if, and only to the extent permitted by the agreement of limited partnership of SRII Opco (the "**SRII Opco LPA**"), such holder also simultaneously transfers an equal number of such holder's SRII Opco Common Units to such transferee in compliance with the SRII Opco LPA. Holders of Class C Common Stock will vote together as a single class with holders of Class A Common Stock on all matters properly submitted to a vote of the Issuer's stockholders. Holders of Class C Common Stock will not be entitled to any dividends from the Issuer and will not be entitled to receive any of the Issuer's assets in the event of any voluntary or involuntary liquidation, dissolution or winding up of its affairs.

Upon the future redemption or exchange of SRII Opco Common Units held by any of the Contributors, a corresponding number of shares of Class C Common Stock held by such Contributor will be cancelled.

**Increase Number of Authorized Shares of Class A Common Stock**

In connection with the Business Combination, the Issuer's stockholders approved and adopted an amendment to the Charter to increase the number of authorized shares of Class A Common Stock from 400,000,000 shares to 1,200,000,000 shares. After a specified period of time after Closing, the Contributors will generally have the right to cause SRII Opco to redeem all or a portion of the Contributors' SRII Opco Common Units in exchange for shares of Class A Common Stock or, at SRII Opco's option, an equivalent amount of cash; provided that the Issuer may, at its option, effect a direct exchange of cash or Class A Common Stock for such SRII Opco Common Units in lieu of such a redemption by SRII Opco.

**Exclusive Forum Charter Proposal Adopted**

In connection with the Business Combination, the Issuer's stockholders approved and adopted an amendment to the Charter, which provides that a stockholder of the Issuer bringing certain types of claims against the Issuer, its officers or directors will be required to bring that claim in the court of chancery in the State of Delaware (the "**Court of Chancery**"), subject to the Court of Chancery having personal jurisdiction over the defendants. If the Court of Chancery dismisses such claim because it does not have subject matter jurisdiction over the claim, then the claim must be brought in another state court in the State of Delaware (the "**Exclusive Forum Charter Amendment**").

The effect of the Exclusive Forum Charter Amendment on the Issuer's stockholders is that any Issuer's stockholder bringing: (i) any derivative action or proceeding brought on behalf of the post-combination company, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee or agent of the post-combination company to the post-combination company or the post-combination company's stockholders, creditors or other constituents, (iii) any action asserting a claim against the post-combination company or any director or officer of the post-combination company arising pursuant to any provision of the General Corporation Law of the State of Delaware or the Charter or the bylaws (as either may be amended from time to time) of the post-combination company, (iv) any action to interpret, apply, enforce or determine the validity of the Charter or the bylaws of the post-combination company or (v) any action asserting a claim against the post-combination company or any director or officer of the post-combination company governed by the internal affairs doctrine, will be required to bring such claim in the Court of Chancery, subject to the Court of Chancery having personal jurisdiction over the defendants, or, if the Court of Chancery dismisses such claim because it does not have subject matter jurisdiction over the claim, in another state court in the State of Delaware.

**Additional Charter Amendments Adopted**

In connection with the Business Combination, the Issuer's stockholders approved and adopted an amendment to the Charter that eliminates certain provisions relating to an initial business combination that will no longer be applicable to the Issuer following the consummation of the Business Combination.

(h)-(j) None.

      In pursuing its investment purposes, HPS plans to monitor the Issuer's operations, prospects, business development, management, competitive and strategic matters, capital structure, and prevailing market conditions, as well as alternative investment opportunities, liquidity requirements of HPS and other investment considerations.

      Except as described in this Item 4, HPS currently has no plans or proposals that relate to or would result in any of the actions specified in clauses (a) through (j) of Item 4 of Schedule 13D. HPS reserves the right, based on all relevant factors and subject to applicable law, at any time and from time to time, to review or reconsider its position, change its purpose, take other actions (including actions that could involve one or more of the types of transactions or have one or more of the results described in paragraphs (a) through (j) of Item 4 of Schedule 13D) or formulate and implement plans or proposals with respect to any of the foregoing.

**Item 5.**    **Interest in Securities of the Issuer.**

(a)    The aggregate percentage of shares of Class A Common Stock reported beneficially owned by HPS is based upon 169,371,730 shares of Class A Common Stock outstanding, as reported on the Issuer's Registration Statement on Form S-1, filed with the SEC on February 14, 2018. As of the close of business on March 12, 2018, the first business day after March 11, 2018, which is 60 days prior to 90 days after the Closing Date, when 39,000,000 SRII Opco Common Units (plus any "additional common units" as defined in the Kingfisher Contribution Agreement) are redeemable for shares of Class A Common Stock on a one-to-one basis, the Reporting Person beneficially owned the following number of shares of Class A Common Stock, representing the following percentages of the shares of Class A Common Stock outstanding:

| Name of Reporting Person | Number of Shares Beneficially Owned | Percentage Ownership in the Issuer |
|---|---|---|
| HPS(1) | 28,717,435 | 14.5% |

(1)    HPS manages, directly or indirectly, each of the HPS Kingfisher Members and the HPS Alta Mesa Holders (as defined below). Therefore, HPS may be deemed to be the beneficial owner of all shares of the Issuer's Class A Common Stock beneficially owned by each of the HPS Kingfisher Members and the HPS Alta Mesa Holders. Included in the HPS Alta Mesa Holders' beneficial ownership, HPS manages, directly or indirectly, the HPS Alta Mesa Holders that indirectly own, through High Mesa, Inc. ("**High Mesa**"), a certain percentage of ARM-M I, LLC, a member of the Kingfisher Contributor ("**ARM-MI**"), and HMS Kingfisher HoldCo, LLC, a member of the Kingfisher Contributor ("**HMS**"); therefore, HPS may be deemed to be the beneficial owner of such proportionate percentage of shares of the Issuer's Class A Common Stock beneficially owned by High Mesa through High Mesa's direct ownership of HMS and partial indirect ownership of ARM-MI.

An additional 13,392,857 of the shares of Class A Common Stock may become beneficially owned by the Kingfisher Contributor as an Earn-Out Payment as described in Item 4.

Pursuant to the Kingfisher Contribution Agreement, the Kingfisher Contributor has agreed that it will not transfer 16,000,000 SRII Opco Common Units (and a corresponding number of shares of Class C Common Stock) received as consideration (the "**Reserved Units**") and, subject to the removal of such transfer restriction as described therein, such Reserved Units will be available to satisfy any indemnification obligations of the Kingfisher Contributor in connection with the Kingfisher Contribution Agreement. The transfer restriction relating to 8,000,000 Reserved Units will be removed on the first anniversary of the Closing, and the transfer restriction relating to any remaining Reserved Units will be removed 18 months after Closing. The value of the Reserved Units for purposes of satisfying any indemnity claim will be based on the 20-Day VWAP immediately prior to the applicable valuation date.

The members of the Kingfisher Contributor are (i) ARM-MI, (ii) HMS, and (iii) the HPS Kingfisher Members. HPS may be deemed to be the beneficial owner of all shares of the Issuer's Class A Common Stock beneficially owned by each of the HPS Kingfisher Members. In addition, HPS manages, directly or indirectly, the HPS Alta Mesa Holders that indirectly own, through High Mesa, a certain percentage of

ARM-MI and HMS; therefore, HPS may be deemed to be the beneficial owner of such proportionate percentage of shares of the Issuer's Class A Common Stock beneficially owned by High Mesa through High Mesa's direct ownership of HMS and partial indirect ownership of ARM-MI.

(b)  As of the close of business on March 12, 2018, the number of shares of Class A Common Stock as to which HPS has:

(i)  Sole power to vote or to direct the vote;
(ii)  Shared power to vote or to direct the vote;
(iii)  Sole power to dispose or to direct the disposition; or
(iv)  Shared power to dispose or to direct the disposition.

| Name of Reporting Person | Sole Power to Vote or to Direct the Vote | Shared Power to Vote or to Direct the Vote | Sole Power to Dispose or to Direct the Disposition | Shared Power to Dispose or to Direct the Disposition |
|---|---|---|---|---|
| HPS | 28,717,435 | 0 | 28,717,435 | 0 |

(c)  The response to Item 3 above is incorporated herein by reference for a description of any transactions in the class of securities reported on that were effected during the past 60 days.

(d)  No other person is known to have the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, such securities.

(e)  Not applicable.


**Item 6.   Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.**

The information set forth or incorporated in Item 3 and Item 4 is hereby incorporated herein by reference.


**Series A Certificate of Designation**

Bayou City, HPS and AM Management own the only outstanding shares of the Issuer's Series A Preferred Stock, and may not transfer the Series A Preferred Stock or any rights, powers, preferences or privileges thereunder except to an affiliate (as defined in the SRII Opco LPA). The holders of the Series A Preferred Stock will not be entitled to vote on any matter on which stockholders of the Issuer generally are entitled to vote. The Series A Preferred Stock is not convertible into any other security of the Issuer, but will be redeemable for the par value thereof by the Issuer upon the earlier to occur of (1) the fifth anniversary of the Closing Date, (2) the optional redemption of such Series A Preferred Stock at the election of the holder thereof or (3) upon a breach of the transfer restrictions described above. For so long as the Series A Preferred Stock remains outstanding, the holders of the Series A Preferred Stock will be entitled to nominate and elect directors to the Issuer's board of directors for a period of five years following the Closing based on their and their affiliates' beneficial ownership of Class A Common Stock as follows:

| Holder / Beneficial Ownership and Other Requirements | Designation Right |
|---|---|
| *Bayou City and its affiliates* | |
| • at least 10% | one director who must be independent for purposes of the listing rules of NASDAQ (unless the director to be nominated is William W. McMullen who need not be independent) |
| *HPS and its affiliates* | |
| • at least 10% | one director who must be independent for purposes of the listing rules of NASDAQ |

**AM Management and its affiliates**

| | |
|---|---|
| • at least 10% | two directors who need not be independent for purposes of the listing rules of NASDAQ |
| • less than 10% but at least 5% and either Harlan Chappelle or Michael Ellis is a member of the Issuer's management | one director who need not be independent for purposes of the listing rules of NASDAQ |

The vote of Bayou City, HPS and AM Management will be the only vote required to elect such nominees to the Issuer's board of directors (each such director, in such capacity, a "**Series A Director**"). So long as the Series A Preferred Stock remains outstanding, vacancies on the Issuer's board of directors resulting from the death, resignation, retirement, disqualification or removal of a Series A Director will be filled only by the affirmative vote of the holder of the Series A Preferred Stock.

**Amended and Restated Agreement of Limited Partnership of SRII Opco**

The Issuer's business is operated through SRII Opco and its subsidiaries, including Alta Mesa and Kingfisher. At the Closing, the Issuer, SRII Opco GP, LLC, a wholly owned subsidiary of the Issuer and the sole general partner of SRII Opco, and the Contributors entered into the SRII Opco LPA, which sets forth, among other things, the rights and obligations of the general partner and limited partners of SRII Opco.

The SRII Opco LPA provides a redemption right to each limited partner of SRII Opco (other than the Issuer), which entitles it to cause SRII Opco to redeem, from time to time on or after the date that is 180 days after the Closing Date (except that the Kingfisher Contributor may cause the redemption of up to 39,000,000 SRII Opco Common Units (plus any "additional common units" as defined in the Kingfisher Contribution Agreement) at any time that is 90 days after the Closing Date), all or a portion of their SRII Opco Common Units for, at SRII Opco's option, newly-issued shares of the Issuer's Class A Common Stock on a one-to-one basis or a cash payment equal to the average of the volume-weighted closing price of one share of Class A Common Stock for the five trading days prior to the date the Contributor delivers a notice of redemption for each SRII Opco Common Unit redeemed (subject to customary adjustments, including for stock splits, stock dividends and reclassifications). In the event of a "reclassification event" (as defined in the SRII Opco LPA), the general partner is to ensure that each SRII Opco Common Unit is redeemable for the same amount and type of property, securities or cash that a share of Class A Common Stock becomes exchangeable for or converted into as a result of such "reclassification event." Upon the exercise of the redemption right, the Contributor will surrender its SRII Opco Common Units to SRII Opco for cancellation. The SRII Opco LPA requires that the Issuer contribute cash or shares of the Issuer's Class A Common Stock to SRII Opco in exchange for a number of SRII Opco Common Units in SRII Opco equal to the number of SRII Opco Common Units to be redeemed from the Contributor. SRII Opco will then distribute such cash or shares of the Issuer's Class A Common Stock to such Contributor to complete the redemption. Upon the exercise of the redemption right, the Issuer may, at the Issuer's option, effect a direct exchange of cash or the Issuer's Class A Common Stock for such SRII Opco Common Units in lieu of such a redemption. Upon the redemption or exchange of SRII Opco Common Units held by a Contributor, a corresponding number of shares of Class C Common Stock held by such Contributor will be cancelled.

In connection with the occurrence of a "general partner change of control," the Issuer has the right to require each limited partner of SRII Opco (other than the Issuer) to cause SRII Opco to redeem some or all of such limited partner's SRII Opco Common Units and a corresponding number of shares of Class C Common Stock, in each case, effective immediately prior to the consummation of the general partner change of control. From and after the date of such redemption, the SRII Opco Common Units and shares of Class C Common Stock subject to such redemption shall be deemed to be transferred to the Issuer and each such limited partner shall cease to have any rights with respect to the SRII Opco Common Units and shares of Class C Common Stock subject to such redemption (other than the right to receive shares of Class A Common Stock pursuant to such redemption). A "**general partner change of control**" will be deemed to have occurred if or upon: (i) the consummation of a sale, lease or transfer of all or substantially all of the Issuer's assets (determined on a consolidated basis) to any person or "group" (as such term is used in Section 13(d)(3) of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**")) that has been approved by the Issuer's stockholders and board of directors, (ii) a merger or

consolidation of the Issuer with any other person (other than a transaction in which the Issuer's voting securities outstanding immediately prior to the transaction continue to represent at least 50.01% of the Issuer's or the surviving entity's total voting securities following the transaction) that has been approved by the Issuer's stockholders and board of directors or (iii) subject to certain exceptions, the acquisition by any person or "group" (as such term is used in Section 13(d)(3) of the Exchange Act) of beneficial ownership of at least 50.01% of the Issuer's voting securities, if recommended or approved by the Issuer's board of directors or determined by the Issuer's board of directors to be in the Issuer's and the Issuer's stockholders' best interests.

        The SRII Opco LPA includes provisions intended to ensure that the Issuer at all times maintain a one-to-one ratio between (a) the number of outstanding shares of Class A Common Stock and the number of SRII Opco Common Units owned by the Issuer (subject to certain exceptions for certain rights to purchase the Issuer equity securities under a "poison pill" or similar stockholder rights plan, if any, certain convertible or exchangeable securities issued under the Issuer's equity compensation plans and certain equity securities issued pursuant to the Issuer's equity compensation plans (other than a stock option plan) that are restricted or have not vested thereunder) and (b) the number of outstanding shares of the Issuer's Class C Common Stock and the number of SRII Opco Common Units owned by the Contributors. This construct is intended to result in the Contributors having a voting interest in the Issuer that is identical to the Contributors' economic interest in SRII Opco.

        The SRII Opco LPA generally does not permit transfers of SRII Opco Common Units by limited partners, subject to limited exceptions. Any transferee of SRII Opco Common Units must assume, by operation of law or written agreement, all of the obligations of a transferring partner with respect to the transferred units, even if the transferee is not admitted as a partner of SRII Opco.

        The SRII Opco LPA will provide that the unanimous consent of all partners will be required to voluntarily dissolve SRII Opco. In addition to a voluntary dissolution, SRII Opco will be dissolved upon a change of control transaction under certain circumstances, as well as upon the entry of a decree of judicial dissolution or other circumstances in accordance with Delaware law. Upon a dissolution event, the proceeds of a liquidation will be distributed in the following order: (i) first, to pay the expenses of winding up SRII Opco; (ii) second, to pay debts and liabilities owed to creditors of SRII Opco; and (iii) third, to the limited partners pro-rata in accordance with their respective percentage ownership interests in SRII Opco (as determined based on the number of SRII Opco Common Units held by a limited partner relative to the aggregate number of all outstanding SRII Opco Common Units).

**Registration Rights Agreement**

        In connection with the Closing, the Issuer and the Contributors entered into a Registration Rights Agreement, pursuant to which the Issuer will be required to register for resale shares of Registrable Securities.

        The Issuer is required to, within 30 calendar days after consummation of the Business Combination, file a registration statement registering the resale of Registrable Securities held by the Contributors. On February 14, 2018, the Issuer filed a Registration Statement on Form S-1 with the SEC. If an underwritten offering is reasonably expected to result in gross proceeds of more than $50 million, (i) the Alta Mesa Contributor is entitled to demand six underwritten offerings, (ii) the Riverstone Contributor is entitled to demand three underwritten offerings; and (iii) the Kingfisher Contributor is entitled to demand two underwritten offerings.

        The holders will also have certain "piggy-back" registration rights with respect to registration statements and rights to require the Issuer to register for resale such securities pursuant to Rule 415 under the Securities Act. The Issuer will bear the expenses incurred in connection with the filing of any such registration statements.

**Tax Receivable Agreement**

        In the future, each of the TRA Holders (as defined below) may exchange their SRII Opco Common Units for shares of the Issuer's Class A Common Stock (on a one-to-one basis, subject to customary conversion rate adjustments for stock splits, stock dividends and reclassification and other similar transactions) or for cash in certain circumstances, pursuant to the redemption right or the Issuer's right to effect a direct exchange of SRII Opco Common Units under the SRII Opco LPA. SRII Opco has in effect an election under Section 754 of Internal Revenue Code of 1986, as amended (the "**Code**"), for itself (and for each of its direct or indirect subsidiaries that is

treated as a partnership for U.S. federal income tax purposes) effective for each taxable year in which an exchange of SRII Opco Common Units for shares of Class A Common Stock or cash occurs. Pursuant to this election under Section 754 of the Code, each future exchange of SRII Opco Common Units for Class A Common Stock or cash is expected to result in an adjustment to the tax basis of the tangible and intangible assets of SRII Opco, and these adjustments will be allocated to the Issuer. Adjustments to the tax basis of the tangible and intangible assets of SRII Opco described above would not have been available to the Issuer absent these exchanges of SRII Opco Common Units. The anticipated basis adjustments are expected to increase (for tax purposes) the Issuer's share of the depreciation, depletion and amortization deductions of SRII Opco and may also decrease the Issuer's gains (or increase the Issuer's losses) on future dispositions of certain SRII Opco capital assets to the extent tax basis is allocated to those capital assets. Such increased deductions and losses and reduced gains may reduce the amount of tax that the Issuer would otherwise be required to pay in the future.

The Issuer has entered into the Tax Receivable Agreement with SRII Opco and the initial limited partners of SRII Opco (the "**Tax Receivable Agreement**"). This agreement will generally provide for the payment by the Issuer to the initial limited partners of SRII Opco and their permitted transferees (together, the "**TRA Holders**") of 85% of the amount of net cash savings, if any, in U.S. federal, state and local income tax that the Issuer actually realizes (or is deemed to realize in certain circumstances) in periods after the Business Combination as a result of (i) certain tax basis increases resulting from the exchange of SRII Opco Common Units for Class A Common Stock (or, in certain circumstances, cash) pursuant to the redemption right or the Issuer's right to effect a direct exchange of SRII Opco Common Units under the SRII Opco LPA, other than such tax basis increases allocable to assets held by Kingfisher or otherwise used in Kingfisher's midstream business, and (ii) interest paid or deemed to be paid by the Issuer as a result of, and additional tax basis arising from, any payments the Issuer make under the Tax Receivable Agreement. The Issuer will retain the benefit of the remaining 15% of these cash savings.

The payment obligations under the Tax Receivable Agreement are the Issuer's obligations and not obligations of SRII Opco. For purposes of the Tax Receivable Agreement, cash savings in tax generally are calculated by comparing the Issuer's actual tax liability to the amount the Issuer would have been required to pay had the Issuer not been entitled to any of the tax benefits subject to the Tax Receivable Agreement. In other words, the Issuer would calculate the Issuer's federal, state and local income liabilities as if no tax attributes arising from a redemption or direct exchange of SRII Opco Common Units had been transferred to the Issuer. The term of the Tax Receivable Agreement commenced upon the completion of the Business Combination and will continue until all such tax benefits have been utilized or have expired, unless the Issuer exercise the Issuer's right to terminate the Tax Receivable Agreement or the Tax Receivable Agreement is otherwise terminated.

The actual increase in tax basis will vary depending upon the timing of the exchanges, the price of Class A Common Stock at the time of each exchange, the extent to which such exchanges are taxable transactions and the amount of the exchanging TRA Holder's tax basis in its SRII Opco Common Units at the time of the relevant exchange. The amount of such cash payments is also based on the amount and timing of taxable income the Issuer generate in the future, the U.S. federal income tax rate then applicable and the portion of the Issuer's payments under the Tax Receivable Agreement that constitute interest or give rise to depreciable or amortizable tax basis. Accordingly, the Issuer is not able to estimate the actual amount of payments that would be expected under the Tax Receivable Agreement. There may be a negative impact on the Issuer's liquidity if, as a result of timing discrepancies or otherwise, (i) the payments under the Tax Receivable Agreement exceed the actual benefits the Issuer realizes in respect of the tax attributes subject to the Tax Receivable Agreement and/or (ii) distributions to the Issuer by SRII Opco are not sufficient to permit the Issuer to make payments under the Tax Receivable Agreement after the Issuer has paid the Issuer's taxes and other obligations. The payments under the Tax Receivable Agreement will not be conditioned upon a holder of rights under the Tax Receivable Agreement having a continued ownership interest in either SRII Opco or the Issuer.

In addition, the TRA Holders will not reimburse the Issuer for any cash payments previously made under the Tax Receivable Agreement if any tax benefits initially claimed by the Issuer are challenged by the United States Internal Revenue Service or other relevant tax authority and are ultimately disallowed, except that excess payments made to TRA Holders will be netted against payments otherwise to be made, if any, to the TRA Holders after the Issuer's determination of such excess. As a result, in such circumstances, the Issuer could make payments that are greater than the Issuer's actual cash tax savings, if any, and may not be able to recoup those payments, which could adversely affect the Issuer's liquidity.

Additionally, if the Tax Receivable Agreement terminates early (at the Issuer's election or as a result of the Issuer's material breach of the Issuer's obligations under the Tax Receivable Agreement, whether as a result of the Issuer's failure to make any payment when due, failure to honor any other material obligation under it or by operation of law as a result of the rejection of the Tax Receivable Agreement in a case commenced under the United States Bankruptcy Code or otherwise), the Issuer would be required to make a substantial, immediate lump-sum payment. This payment would equal the present value of hypothetical future payments that could be required to be paid under the Tax Receivable Agreement (calculated using a discount rate of 18%). The calculation of the hypothetical future payments will be based upon certain assumptions and deemed events set forth in the Tax Receivable Agreement, including that (i) the Issuer has sufficient taxable income to fully utilize the tax benefits covered by the Tax Receivable Agreement; (ii) all taxable income of the Issuer is subject to the maximum applicable tax rates throughout the relevant period; and (iii) certain loss or credit carryovers will be utilized through the expiration date of such carryovers.

**Voting Agreement**

Following the Closing, certain existing owners of Alta Mesa, including Mr. Chappelle, Mr. Ellis and certain affiliates of Bayou City and HPS, will own an aggregate 10% voting interest in Alta Mesa GP. On the Closing Date, these existing owners entered into an amended and restated voting agreement (the "**A&R Voting Agreement**") with SRII Opco and the Alta Mesa GP, pursuant to which such existing owners agreed to vote their interests in Alta Mesa GP as directed by SRII Opco and appointed SRII Opco as their respective proxy and attorney-in-fact with respect to any voting matters related to their respective interests in Alta Mesa GP. As a result of the A&R Voting Agreement, SRII Opco will effectively have a 100% voting interest in Alta Mesa GP. The A&R Voting Agreement will continue in full force and effect until SRII Opco elects to terminate the agreement or, with respect to each existing owner individually, such existing owner no longer owns a voting interest in Alta Mesa GP.

**Alta Mesa Resources, Inc. Equity Voting Agreement**

Each of the stockholders of High Mesa has entered into the Alta Mesa Resources, Inc. Equity Voting Agreement (the "**Equity Voting Agreement**"). The interests of the Alta Mesa Contributor will be beneficially owned (either directly or through interests in High Mesa) by three groups, each consisting of affiliated parties: (i) AM MME Holdings, LP, Galveston Bay Resources Holdings, LP, Petro Acquisitions Holdings, LP, Petro Operating Company Holdings, Inc., Harlan H. Chappelle, Homer "Gene" Cole, Michael A. McCabe, Dale Hayes, AM Management and MME Mission Hope, LLC (collectively, the "**Management Holders**"), (ii) HPS, Mezzanine Partners II Delaware Subsidiary, LLC, Offshore Mezzanine Partners Master Fund II, L.P., Institutional Mezzanine Partners II Subsidiary, L.P., AP Mezzanine Partners II, L.P., The Northwestern Mutual Life Insurance Company, The Northwestern Mutual Life Insurance Company for its Group Annuity Separate Account, Northwestern Mutual Capital Strategic Equity Fund III, LP, KCK-AMIH, Ltd., United Insurance Company of America, and Jade Real Assets Fund, L.P. (collectively, the "**HPS Alta Mesa Holders**"), and (iii) Bayou City, BCE-MESA Holdings LLC, and BCE-AMH Holdings, LLC (collectively, the "**Bayou City Holders**").

In accordance with the terms of the Equity Voting Agreement, the Alta Mesa Contributor, when the board of directors of High Mesa is unable to determine by unanimous consent, will vote the shares of Class A Common Stock or Class C Common Stock held by it proportionately in accordance with the express direction of the HPS Alta Mesa Holders, the Bayou City Holders and the Management Holders, respectively, based upon the relative ownership in High Mesa of each such group.

**Item 7.**  **Material to be filed as Exhibits**

| Exhibit Number | Description of Exhibits |
|---|---|
| 1 | Contribution Agreement, dated as of August 16, 2017, among KFM Holdco, LLC, Kingfisher Midstream, LLC, Silver Run Acquisition Corporation II and, solely for certain provisions therein, the equity owners of the Kingfisher Contributor thereto (incorporated by reference to Exhibit 2.2 of the Issuer's Current Report on Form 8-K filed with the SEC on August 17, 2017). |
| 2 | Amended and Restated Agreement of Limited Partnership of SRII Opco, LP, dated as of February 9, 2018 (incorporated by reference to Exhibit 10.4 of the Issuer's Current Report on Form 8-K filed with the SEC on February 9, 2018). |
| 3 | Tax Receivable Agreement, dated as of February 9, 2018, by and among the Issuer, SRII Opco, LP, Riverstone VI Alta Mesa, L.P., and High Mesa Holdings LP (incorporated by reference to Exhibit 10.5 of the Issuer's Current Report on Form 8-K filed with the SEC on February 9, 2018). |
| 4 | Registration Rights Agreement, dated as of February 9, 2018, by and among Alta Mesa Resources, Inc., High Mesa Holdings, L.P., KFM Holdco, LLC and Riverstone VI Alta Mesa Holdings, L.P. (incorporated by reference to Exhibit 4.1 of the Issuer's Current Report on Form 8-K filed with the SEC on February 9, 2018). |
| 5 | Amended and Restated Voting Agreement, by and among Alta Mesa Holdings GP, LLC, BCE-AMH Holdings, LLC, BCE-MESA Holdings, LLC, Mezzanine Partiers II Delaware Subsidiary, LLC, Offshore Mezzanine Partners Master Fund II, L.P., Institutional Mezzanine Partners II Subsidiary, L.P., AP Mezzanine Partners II, L.P., The Northwestern Mutual Life Insurance Company, The Northwestern Mutual Life Insurance Company For its Group Annuity Separate Account, Northwestern Mutual Capital Strategic Equity Fund III, L.P., Michael E. Ellis, Harlan H. Chappelle and SRII Opco, LP, dated as of February 9, 2018 (incorporated by reference to Exhibit 10.10 of the Issuer's Current Report on Form 8-K filed with the SEC on February 9, 2018). |
| 6 | Alta Mesa Resources, Inc. Equity Voting Agreement, dated March 21, 2018. |

*[The remainder of this page is intentionally left blank. The signature page follows.]*

CUSIP No. 82812A202

## SIGNATURE

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

Dated: March 21, 2018

**HPS INVESTMENT PARTNERS, LLC**

By:   /s/ Don Dimitrievich
Name:  Don Dimitrievich
Title:   Managing Director

CUSIP No. 82812A202                                                                                              Page 15 of 15 pages

**<u>Schedule A</u>**

**HPS Investment Partners, LLC**

      Pursuant to Instruction C to Schedule 13D, the below information relates to the executive officers and directors of HPS Investment Partners, LLC ("**<u>HPS</u>**"). Each executive officer or director listed below is a citizen of the United States. Additionally, unless otherwise indicated, none of the below executive officers or directors shares voting or dispositive power over any shares of Class A Common Stock of Alta Mesa Resources, Inc., except in their capacity as an executive officer or director of HPS. The officers and directors of HPS are as follows:

| Name and Position | Present Principal Occupation or Employment | Principal Business Address |
|---|---|---|
| Scott Kapnick, Chief Executive Officer | Mr. Kapnick serves as Chief Executive Officer of HPS. | 40 West 57th Street 33rd Floor, New York, NY 10019 |
| Yoohyun Katherine Choi, General Counsel | Ms. Choi serves as General Counsel of HPS. | 40 West 57th Street 33rd Floor, New York, NY 10019 |
| Joseph Virgilio, Chief Compliance Officer | Mr. Virgilio serves as Chief Compliance Officer of HPS. | 40 West 57th Street 33rd Floor, New York, NY 10019 |
| Faith Rosenfeld, Chief Administrative Officer | Ms. Rosenfeld serves as Chief Administrative Officer of HPS. | 40 West 57th Street 33rd Floor, New York, NY 10019 |
| Paul Knollmeyer, Chief Financial Officer | Mr. Knollmeyer serves as Chief Financial Officer of HPS. | 40 West 57th Street 33rd Floor, New York, NY 10019 |

HPS is controlled by Scott Kapnick, Michael Patterson, Scot French, Faith Rosenfeld and Purnima Puri.