# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 **CLASS ACTION** [Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br><br> Defendants. | Civil Action No. 4:22-cv-001189 [Consolidated Case] |

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

ORBIS GLOBAL EQUITY LE FUND
(AUSTRALIA REGISTERED), ORBIS
GLOBAL EQUITY FUND (AUSTRALIA
REGISTERED), ORBIS GLOBAL
BALANCED FUND (AUSTRALIA
REGISTERED), ORBIS SICAV, ORBIS
INSTITUTIONAL GLOBAL EQUITY L.P.,
ORBIS GLOBAL EQUITY FUND
LIMITED, ORBIS INSTITUTIONAL
FUNDS LIMITED, ALLAN GRAY
AUSTRALIA BALANCED FUND, ORBIS
OEIC, and ORBIS INSTITUTIONAL U.S.
EQUITY L.P.,

                Plaintiffs,

     v.

ALTA MESA RESOURCES, INC., f/k/a
SILVER RUN ACQUISITION
CORPORATION II; RIVERSTONE
HOLDINGS LLC; ARM ENERGY
HOLDINGS LLC; BAYOU CITY
ENERGYMANAGEMENT, LLC; HPS
INVESTMENT PARTNERS, LLC;
JAMES T. HACKETT, HARLAN H.
CHAPPELLE, WILLIAM
GUTERMUTH, JEFFREY H. TEPPER,
DIANA J. WALTERS; MICHAEL E.
ELLIS; RONALD SMITH; DON
DIMITRIEVICH; PIERRE F.
LAPEYRE, JR.; DAVID M.
LEUSCHEN; WILLIAM W.
MCMULLEN; DONALD SINCLAIR;
STEPHEN COATS; and THOMAS J.
WALKER,

              Defendants.

Civil Action No. 4:22-cv-02590

[Consolidated Case]

**JOINT MOTION OF HPS INVESTMENT PARTNERS, LLC; BAYOU CITY
ENERGY MANAGEMENT, LLC; AND ARM ENERGY HOLDINGS, LLC FOR
SUMMARY JUDGMENT ON CLASS AND OPT-OUT PLAINTIFFS' SECTION
20(a) CLAIMS AND INCORPORATED MEMORANDUM OF LAW**

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

# **TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF PROCEEDING ................................................................... 1

STATEMENT OF THE ISSUES .................................................................................. 2

INTRODUCTION ...................................................................................................... 3

STATEMENT OF UNDISPUTED FACTS .................................................................. 6

    A.    Moving Defendants Sell AMH and Kingfisher to Silver Run ..................... 6

    B.    Post-Business Combination, Moving Defendants Become
        Shareholders of AMR ................................................................................ 8

    C.    Plaintiffs File Suit Alleging Misrepresentations In the Proxy and
        Subsequent AMR Filings ........................................................................... 9

LEGAL STANDARD ............................................................................................... 11

ARGUMENT ........................................................................................................... 12

    A.    Plaintiffs Have Not Pled or Adduced Evidence That Moving
        Defendants Controlled Silver Run or the Proxy Defendants, the
        Authors of the Alleged Pre-Business Combination
        Misrepresentations ................................................................................... 14

        1.    Plaintiffs' Allegations That Moving Defendants Controlled
            the Pre-Business Combination Misstatements Fail......................... 14

        2.    Plaintiffs Have Adduced No Facts Showing That Moving
            Defendants Could Control Silver Run. ........................................... 17

    B.    Plaintiffs Fail to Plead or Adduce Evidence That Moving Defendants
        Controlled the Authors of the Alleged Post-Business Combination
        Misrepresentations ................................................................................... 19

        1.    The Allegations That Moving Defendants Controlled the
            Post-Business Combination Misstatements Fail as a Matter of
            Law. ............................................................................................... 19

        2.    Plaintiffs Have Adduced No Facts Showing That Moving
            Defendants Could Control AMR Or Any Individual
            Defendant. ..................................................................................... 22

CONCLUSION ............................................................................................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abbott v. Equity Group*
    2 F.3d 613 (5th Cir. 1993) ...................................................................... 15, 18

*In re Advance Auto Parts, Inc., Sec. Litig.*,
    2020 WL 599543 (D. Del. Feb. 7, 2020) ..................................................... 20

*In re Am. Apparel, Inc. S'holder Litig.*,
    2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ................................................ 16

*In re ArthroCare Corp. Sec. Litig.*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010)........................................................ 14

*Ashe v. Corley*,
    992 F.2d 540 (5th Cir. 1993) ............................................................... 11, 17

*Bach v. Amedisys, Inc.*,
    2016 WL 4443177 (M.D. La. Aug. 19, 2016) ............................................. 15

*In re BP p.l.c. Sec. Litig.*,
    2014 WL 4923749 (S.D. Tex. Sept. 30, 2014) ...................................... 14, 16

*In re BP p.l.c. Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012) ........................................................ 13

*Cameron v. Outdoor Results of America, Inc.*,
    608 F.2d 187 (5th Cir. 1979) ..................................................................... 21

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016) (Rosenthal, J.)................................. 20

*Carlton v Cannon*,
    2016 WL 3959164 (S.D. Tex. July 22, 2016) (Rosenthal, J.) ........ 12, 14, 21, 23

*Dartley v. Ergobilt Inc.*,
    2001 WL 313964 (N.D. Tex. Mar. 29, 2001) .................................. 19, 20, 22

*Dennis v. Gen. Imaging, Inc.*,
    918 F.2d 496 (5th Cir. 1990) .......................................................... 13, 21, 23

*Duffy v. Leading Edge Products, Inc.*,
  44 F.3d 308 (5th Cir. 1995) ...................................................................... 12

*In re Enron*,
  610 F. Supp. 2d 600 (S.D. Tex. 2009) ....................................................... 11

*Firefighters' Retirement System v. Citco Grp. Ltd.*,
  855 Fed. App'x 902 (5th Cir. Mar. 31, 2021).............................................. 19

*In re Friedman's, Inc. Sec. Litig.*,
  385 F. Supp. 2d 1345 (N.D. Ga. 2005) ....................................................... 14

*G.A. Thompson & Co., Inc. v. Partridge*,
  636 F.2d 958 (5th Cir. 1981) ...................................................................... 13

*In re Kosmos Energy Ltd. Sec. Litig.*,
  955 F. Supp. 2d 658 (N.D. Tex. 2013) ....................................................... 21

*Lillie v. Off. of Fin. Insts. of State of La.*,
  997 F.3d 577 (5th Cir. 2021) ...................................................................... 13

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) (en banc) ...................................................... 12

*Lucas v. Icahn*,
  616 F. App'x 448 (2d Cir. 2015) ................................................................ 20

*Meek v. Howard*,
  95 F.3d 45, [published in full-text format at 1996 WL 405436] (5th Cir.
  1996) ........................................................................................................... 13

*Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enterprises,
  LLC*,
  2023 WL 2719466 (S.D. Tex. Mar. 30, 2023)............................................. 12

*Pharo v. Smith*,
  621 F.2d 656 (5th Cir. 1980) ...................................................................... 15

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014)...................................................... 19, 21

*Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*,
  662 F. Supp. 2d 623 (S.D. Tex. 2009) ....................................................... 12

*In re Venator Materials PLC Sec. Litig.*,
  547 F. Supp. 3d 624 (S.D. Tex. 2021) ....................................................... 13

iv

*Walker v. Ham*,
  2016 WL 4718192 (S.D. Tex. Sep. 8, 2016) (Hanks, J.) ............................................. 11

*Whalen v. Carter*,
  954 F.2d 1087 (5th Cir. 1992) .................................................................................. 11

*Zishka v. Am. Pad & Paper Co.*,
  2001 WL 1748741 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130
  (5th Cir. 2003) ........................................................................................................ 20

## Statutes and Rules

15 U.S.C. § 78t(a) ........................................................................................................ 12

17 C.F.R. § 230.405 ..................................................................................................... 14

Fed. R. Civ. P. 56 ..................................................................................................... 1, 11

Securities Exchange Act of 1934 Section 10(b) ................................................... 2, 9, 16

Securities Exchange Act of 1934 Rule 10b-5 ............................................................... 9

Securities Exchange Act of 1934 Section 14(a) ..................................................... 2, 9

Securities Exchange Act of 1934 Section 18 ........................................................... 2, 9

Securities Exchange Act of 1934 Section 20(a) .................................. 1-5, 9, 12-17, 19, 20

Texas Business and Commerce Code Section 27.01 ................................................ 2, 9

## NATURE AND STAGE OF PROCEEDING

On June 7, 2023, this Court denied Defendants' Motions to Dismiss the Alyeska and Orbis Complaints "without prejudice to being reasserted as motions for summary judgment." Dkt. 343 at 1, 14. Consistent with that Order, HPS Investment Partners, LLC ("HPS"), Bayou City Energy Management, LLC ("Bayou City"), and ARM Energy Holdings, LLC ("ARM Energy") (together, "Moving Defendants") respectfully move for summary judgment under Federal Rule of Civil Procedure 56.

After dragging Defendants through two years of voluminous discovery, Plaintiffs[1] have not unearthed a shred of evidence to salvage their deficient Complaints alleging Section 20(a) "control person" claims under the Securities Exchange Act of 1934 (the "1934 Act") against HPS, Bayou City, or ARM Energy. There is none. Summary judgment should thus be granted because:

- Plaintiffs have not adequately pled and cannot establish that Moving Defendants **controlled** Silver Run II Acquisition Corporation ("Silver Run") prior to the Business Combination;

- Plaintiffs have not adequately pled and cannot establish that Moving Defendants **controlled** Alta Mesa Resources, Inc. ("AMR") after the Business Combination; and

- Plaintiffs have not adequately pled and cannot establish that Moving Defendants **controlled** certain Individual Defendants.[2]

---

[1]  Plaintiffs as used herein refers to the Class Action Plaintiffs, as well as Alyeska Master Fund, LP, Alyeska Master Fund 2, LP, and Alyeska Master Fund 3, LP (collectively, the "Alyeska Plaintiffs"), and also includes Orbis Global Equity LE Fund, Orbis Global Equity Fund, Orbis Global Balanced Fund, Orbis SICAV, Orbis Institutional Global Equity L.P., Orbis Global Equity Fund Limited, Orbis Institutional Funds Limited, Allan Gray Australia Balanced Fund, Orbis OEIC, and Orbis Institutional U.S. Equity L.P. (collectively, the "Orbis Plaintiffs").

[2]  The Individual Defendants are individuals who either:  (i) served as Silver Run's agents before the Business Combination, or (ii) held management or Board positions with AMR following the Business Combination.  As set forth in greater detail below, they include:  Silver Run CEO James T. Hackett; Silver Run CFO Thomas J. Walker; Silver Run Corporate Secretary Stephen Coats; certain Silver Run Board members; AMR CEO Harlan H. Chappelle;

Moving Defendants seek summary judgment on the Section 20(a) claims in three Complaints[3]—(1) the Class Complaint[4]; (2) the Alyeska Complaint[5]; and (3) the Orbis Complaint[6]—each of which names Moving Defendants as Section 20(a) "controlling persons."[7]  All three complaints make the same conclusory and implausible allegations that Moving Defendants somehow had "control" over Silver Run before the Business Combination and over AMR after the Business Combination.[8]  Summary judgment must be granted on Plaintiffs' Section 20(a) claims as to Moving Defendants.  `

## STATEMENT OF THE ISSUES

The issues raised by this Motion are whether summary judgment should be granted in favor of Moving Defendants as to Plaintiffs' claims under Section 20(a) of the 1934 Act because:

1.     Plaintiffs have failed to adequately plead or establish that HPS, Bayou City, or ARM Energy controlled Silver Run before the Business Combination;

---

AMR "Chief Operating Officer—Upstream" Michael E. Ellis; AMR Chief Accounting Officer Ronald Smith; and AMR's Board members.

[3]   The dockets for the three actions were consolidated into the Class docket on November 30, 2022, after all three complaints had been filed.  Dkt. 259.

[4]   Class Plaintiffs asserted causes of action arising under Sections 10(b), 14(a), and 20(a) of the 1934 Act on behalf of a putative class of shareholders of Alta Mesa Resources, Inc. in the Third Amended Complaint ("TAC"), filed on December 6, 2021.  Dkt. 218.

[5]   The Alyeska Plaintiffs asserted causes of action arising under Sections 10(b), 14(a), 18, and 20(a) of the 1934 Act, as well as common law fraud and violations of Section 27.01 of the Texas Business and Commerce Code, in the Complaint (the "AC"), filed on April 13, 2022.  *See Alyeska Master Fund, LP et al v. Alta Mesa Res., Inc. et al*, No. 4:22-CV-01189 (S.D. Tex. April 13, 2022), ECF No. 1.

[6]   The Orbis Plaintiffs asserted causes of action arising under Sections 10(b), 14(a), 18, and 20(a) of the 1934 Act, as well as common law fraud and violations of Section 27.01 of the Texas Business and Commerce Code, in the Complaint (the "OC"), filed on August 3, 2022.  *Orbis Glob. Equity LE Fund et al v. Alta Mesa Res., Inc. et al*, No. 4:22-CV-02590 (S.D. Tex. Aug. 3, 2022), ECF No. 1.

[7]   TAC at ¶¶ 369, 393; AC at ¶¶ 334, 358; OC at ¶¶ 409, 433.

[8]   *See* TAC at ¶¶ 369, 393; AC at ¶¶ 334, 358; OC at ¶¶ 409, 433.

2. Plaintiffs have failed to adequately plead or establish that HPS, Bayou City, or ARM Energy controlled AMR after the Business Combination; and

3. Plaintiffs have failed to adequately plead or establish that HPS, Bayou City, or ARM Energy controlled certain Individual Defendants.

## INTRODUCTION

Plaintiffs have failed to adequately plead and, after two years of discovery, to adduce evidence showing that Moving Defendants are "control persons" under Section 20(a) of the 1934 Act. Their claims fail as a matter of law because none of the Moving Defendants could control the speakers of the alleged misstatements in Plaintiffs' Complaints—i.e., Silver Run, AMR, or the Individual Defendants who allegedly spoke on behalf of those entities.

This action arises from a 2018 business transaction (the "Business Combination") through which Silver Run—a publicly traded, special purpose acquisition company ("SPAC") formed to acquire a private energy company—acquired Alta Mesa Holdings, L.P. ("AMH") and Kingfisher Midstream LLC ("Kingfisher"). Moving Defendants sold their interests in AMH and Kingfisher to Silver Run in the Business Combination, subsequently becoming minority shareholders in AMR. Plaintiffs do not allege a single misrepresentation made by Moving Defendants in connection with these transactions. Instead, Plaintiffs allege the misstatements at issue came from three sources: Silver Run, AMR, and certain Individual Defendants who allegedly made representations on behalf of Silver Run and AMR. Plaintiffs' only bases for seeking to hold Moving Defendants liable are that they were: (i) transactional *counterparties* to Silver Run—the author of the alleged

pre-Business Combination misstatements; and (ii) minority shareholders of AMR—the author of the alleged post-Business Combination misstatements.

But Moving Defendants cannot be liable for these statements because they did not control—and as a practical matter, could not have controlled—Silver Run, AMR, or any of the Individual Defendants alleged to have made actionable misrepresentations, as required to establish Section 20(a) liability.  Prior to the 2018 Business Combination, Moving Defendants held zero interest in Silver Run, appointed no directors to Silver Run's Board, and had no employees with an officer or other management position at Silver Run. Moving Defendants had the same affiliation with Silver Run at this time as they did with Raising Cane's:  none.  Rather, Moving Defendants held interests only in AMH and/or Kingfisher—entities that Silver Run sought to *acquire* from Moving Defendants in what eventually became the Business Combination.  Moving Defendants' connection to Silver Run during the negotiations was that of *an arm's length counterparty*, and therefore, by definition they could not have controlled or had any authority whatsoever over Silver Run's statements or public filings.

After the Business Combination, Moving Defendants' role in AMR—the only entity alleged to have made post-Business Combination misstatements—similarly fell far short of interests that could amount to Section 20(a) control.  Moving Defendants held no controlling interest—individually or collectively—in AMR, but rather, only independent, *minority* interests.  And Bayou City and HPS' ability to appoint just one director apiece, out of a total of eleven, to AMR's newly-expanded Board (ARM Energy had no

appointment right) does not change this conclusion.  Thus, none of Moving Defendants had the ability to control AMR's statements.

After two years of extensive discovery, Plaintiffs have unearthed *nothing* that could salvage their deficient Section 20(a) causes of action against Moving Defendants.  The lack of control by Moving Defendants is demonstrated by the undisputed facts concerning the transaction structure:  (1) Moving Defendants *could not* have controlled Silver Run because they had *zero* interest in Silver Run as Silver Run's *counterparty* in the Business Combination; and (2) Moving Defendants *could not* have controlled AMR (or any Individual Defendant) because each Moving Defendant held only *minority* equity interests in and/or Board seats at AMR.  Plaintiffs have not found a shred of evidence that contests these basic facts, nor the conclusions that must flow from them.

Despite their implausible allegations, Moving Defendants engaged in *24 months* of expensive, voluminous discovery.  Defendants produced *millions* of pages of documents.  There have been *23* third-party deposition and document subpoenas, resulting in over *90,000* third-party documents.  There have been *1,015* responses to requests for Production and *139* responses to interrogatories.  The parties have taken *46* fact depositions—including the depositions of multiple individuals and corporate representatives from HPS, Bayou City, and ARM Energy.  Yet, Plaintiffs still can point to nothing in the record suggesting that any Moving Defendant controlled *Silver Run* prior to the Business Combination or *AMR* or any Individual Defendants post-Business Combination.  Thus, the Court should grant summary judgment on Plaintiffs' Section 20(a) claims against Moving Defendants.

## STATEMENT OF UNDISPUTED FACTS[9]

### A.    Moving Defendants Sell AMH and Kingfisher to Silver Run

This is an action by shareholders of Silver Run and/or AMR challenging statements that Silver Run made in its Proxy Statement and that its successor AMR made in its SEC filings.  Silver Run was an SPAC formed to acquire a company within the energy industry.[10]  Silver Run went public in March 2017 through an Initial Public Offering ("IPO").[11]  After its IPO, Silver Run sought to identify potential target companies for a merger, eventually settling on buying two companies:  AMH and Kingfisher.[12]  This acquisition, the "Business Combination," which was completed through a de-SPAC merger, is the subject of this lawsuit.[13]

Importantly, this motion does not concern the conduct of Silver Run, or even that of AMH or Kingfisher, in connection with the Business Combination.  Instead, it concerns the arm's length counterparties who *sold* AMH and Kingfisher to Silver Run:  HPS, Bayou City, and ARM Energy.  At the time of its acquisition, AMH was an oil and gas upstream production company that specialized in an area in Oklahoma known as the STACK, while Kingfisher was a midstream company focused on providing crude oil gathering, gas gathering, and processing and marketing to producers of natural gas, natural gas liquids,

---

[9]  The following Statement of Undisputed Facts are largely the same as those stated in Defendant Don Dimitrievich's Motion for Summary Judgment, filed on August 31, 2023, but are re-printed here for the Court's convenience.
[10]  TAC at ¶ 73; AC at ¶¶ 3, 38; OC at ¶¶ 3, 47.
[11]  TAC at ¶ 78; AC at ¶ 51; OC at ¶ 60.
[12]  TAC at ¶ 86; HPS Amended Answer (Dkt. 177) to Plaintiffs' Second Corrected Consolidated Amended Complaint ("SAC") (Dkt. 69) at ¶ 79; AC at ¶ 53; OC at ¶ 62.
[13]  TAC at ¶ 126; AC at ¶ 60; OC at ¶ 69.

crude oil, and condensate in the STACK.[14]   Prior to the Business Combination, AMH was a subsidiary of non-party High Mesa Holdings GP, LLC and High Mesa Holdings, LP (together, "High Mesa"), which HPS and Bayou City each partially owned.[15]   Kingfisher, the other acquisition target, was partially owned by High Mesa and ARM Energy.[16]   Thus, before the Business Combination, *the only relationship between Moving Defendants (HPS, Bayou City, and ARM Energy) and Silver Run was arm's length*:   Moving Defendants were negotiating counterparties who each partially owned AMH and/or Kingfisher, the targets that Silver Run sought to acquire.   HPS, Bayou City, and ARM Energy owned no interests in Silver Run whatsoever.[17]

To complete the Business Combination, Silver Run issued a Definitive Merger Proxy Statement (the "Proxy") to its shareholders on January 19, 2018, soliciting approval to acquire AMH and Kingfisher.[18]   Among other things, the Proxy included financial information regarding the target companies AMH and Kingfisher.[19]   In the Proxy, the Silver Run Board of Directors recommended that Silver Run's shareholders approve the Business Combination.[20]   On February 6, 2018, Silver Run's shareholders voted in favor of the Business Combination, which closed on February 9, 2018.[21]

---

[14]   TAC at ¶ 11; HPS Amended Answer to SAC at ¶ 11; AC at ¶ 53; HPS Amended Answer (Dkt. 382) to AC at ¶ 53; OC at ¶ 62; HPS Amended Answer (Dkt. 383) to OC at ¶ 62.
[15]   TAC at ¶¶ 65, 129; AC at ¶ 43; OC at ¶ 52.
[16]   TAC at ¶ 63, 65 AC at ¶ 41, 43; OC at ¶ 52..
[17]   *See* TAC at ¶¶ 61-63; AC at ¶¶ 39-41; OC at ¶¶ 48-50.
[18]   Ex. L (Proxy (January 19, 2018)).
[19]   *Id.* at 36-42.
[20]   *Id.* at 26.
[21]   TAC at ¶¶ 125-26; AC at ¶ 60; OC at ¶ 69.

In connection with the Business Combination, Silver Run changed its name to Alta Mesa Resources, Inc. ("AMR").[22]  AMR became an indirect holding company, through SRII Opco, LP, of interests in:  (i) Alta Mesa Holdings GP, LLC, the General Partner of AMH, (ii) AMH, and (iii) Kingfisher.[23]

## B. Post-Business Combination, Moving Defendants Become Shareholders of AMR

Following the Business Combination, HPS, Bayou City, and ARM Energy each became ***minority*** shareholders in newly-created AMR.[24]  Post-Business Combination, HPS' interest in AMR was at all times less than 50%.[25]  Specifically, HPS' voting interest, obtained through funds it managed, varied post-close from 14.5% in March 2018, to 31.9% 120 days post-close,[26] as the result of the exercise of redemption rights.[27]  Likewise, post-combination, Bayou City's voting interest amounted to 17.93%.[28]  Finally, ARM Energy's voting interest amounted to no more than 4.8%.[29]

Moving Defendants' governance rights were similarly restricted.  Following the Business Combination, HPS and Bayou City each held the right to appoint, and did appoint,

---

[22]  TAC at ¶ 126; AC at ¶ 60; OC at ¶ 69.
[23]  TAC at ¶ 133; Ex. L ((Proxy (January 19, 2018)) at 131-202.
[24]  *See* Ex. J (HPS 13D (March 11, 2018)); *see also* Ex. I (Bayou 13D (August 16, 2018)); Ex. L (Proxy (January 19, 2018)) at viii, 5.
[25]  *See* Ex. J (HPS 13D (March 11, 2018)) at 3; *see also* Ex. K (HPS 13D Amendment 1 (June 9, 2018)) at 3.
[26]  *See id.*
[27]  *See* Ex. K (HPS 13D Amendment 1 (June 9, 2018)) at 4.
[28]  *See* Ex. I (Bayou 13D (August 16, 2018)) at 2.
[29]  *See* Ex. L (Proxy (January 19, 2018)) at viii (stating the Kingfisher Contributor's voting interest); *see also id.* at 5 (explaining ARM Energy's ownership of the Kingfisher Contributor).

only one of the eleven directors of the AMR Board.[30]  ARM Energy had even fewer rights:

it did not have the right to appoint, and did not appoint, any director of the AMR Board.[31]

### C.   Plaintiffs File Suit Alleging Misrepresentations In the Proxy and Subsequent AMR Filings

On March 14, 2019, the Class Action Plaintiffs initiated this case, alleging violations

of Sections 10(b), 14(a), and Section 20(a) of the 1934 Act and SEC Rule 10b-5.[32]  The

Alyeska Plaintiffs and Orbis Plaintiffs then filed their Complaints on April 13, 2022 and

August 3, 2022 respectively, alleging violations of Sections 10(b), 18, 14(a), and 20(a) of

the 1934 Act and SEC Rule 10b-5, as well as common law fraud and violations of the

Texas Business and Commerce Code Section 27.01.[33]  The three sets of complaints allege

substantially similar facts:  each asserts that prior to the Business Combination, Silver Run

made false or misleading statements in the Proxy, and that after the Business Combination,

AMR made false or misleading statements in securities filings.[34]

In addition to naming these entities as defendants, Plaintiffs' complaints also name

three groups of individuals as defendants, based on their activities on behalf of Silver Run

or AMR:   the "Proxy Defendants," the "Management Defendants," and the "Board

Defendants" (collectively, the "Individual Defendants").   The "Proxy Defendants" are a

group of six officers and directors of Silver Run who are alleged in the pre-Business

Combination period to have made misrepresentations on behalf of Silver Run through the

---

[30]   TAC at ¶¶ 61-62; HPS Amended Answer to SAC at ¶¶ 53-54; AC at ¶¶ 39-40; HPS Amended Answer to AC at ¶ 40; OC at ¶¶ 48-49; HPS Amended Answer to OC at ¶ 49.
[31]   TAC at ¶ 136 (listing the AMR directors); Ex. L (Proxy (January 19, 2018)) at 209, n.3.
[32]   The operative Class Plaintiff Complaint is the TAC, which alleges the same violations of federal securities laws. *See* TAC at ¶¶ 358-415.
[33]   AC at ¶¶ 323-377; OC at ¶¶  398-465.
[34]   TAC at ¶¶ 190-258; AC at ¶¶ 152-219; OC at ¶¶ 161-235.

Proxy that was used to solicit shareholder approval for the Business Combination.[35]   The "Management Defendants" are officers of AMR following the Business Combination who are alleged to have made misrepresentations on its behalf; they include CEO Harlan H. Chappelle, "Chief Operating Officer—Upstream" Michael E. Ellis, and Chief Accounting Officer Ronald Smith.[36]   Finally, Plaintiffs' complaints refer to the "Board Defendants"— individuals who served on the Board of Directors of AMR following the Business Combination, and to whom Plaintiffs seek to attribute AMR's alleged misrepresentations.[37] This group includes David Leuschen, Pierre Lapeyre Jr., William McMullen, Don Dimitrievich, and Donald Sinclair.[38]

Plaintiffs have also sued Moving Defendants, who are not alleged to have made any misrepresentations.  Instead, Moving Defendants—who were not named in the initial Class Plaintiff complaint—have been named only on the basis that they purportedly had the ability to control Silver Run, AMR, and the Individual Defendants.[39]  Plaintiffs allege that Moving Defendants are control persons of Silver Run and the Proxy Defendants based solely on the fact that they sold Silver Run their interests in AMH and/or Kingfisher.  *See infra* at 14-18.  To allege control of Silver Run, Plaintiffs plead only that "Bayou City, HPS and ARM Energy provided the operational information contained in the Proxy," issued by Silver Run and the Proxy Defendants,[40] without identifying which information was

---

[35] TAC at ¶¶ 43-49; AC at ¶¶ 21-27; OC at ¶¶ 30-36.
[36] TAC at ¶¶ 50-53; AC at ¶¶ 28-31; OC at ¶¶ 37-40.
[37] TAC at ¶¶ 54-59; AC at ¶¶ 32-37; OC at ¶¶ 41-46.
[38] *Id.*
[39] TAC at ¶¶ 368-369, 392-396; AC at ¶¶ 333-334, 357-360; OC at ¶¶ 408-409, 432-435.
[40] TAC at ¶ 64; AC at ¶ 42; OC at ¶ 51.

provided by Moving Defendants; how (if at all) the information was false or misleading; or how the provision of information leads to control of the recipient. Plaintiffs have adduced no evidence to overcome these pleading deficiencies. Plaintiffs further allege that Moving Defendants are control persons of AMR based on their status as minority shareholders and on Bayou City and HPS' ability to each appoint one of the eleven directors of the Board. *See infra* at 18-24. But they set forth no additional facts in their pleadings supporting an inference of control, nor have they adduced a scintilla of evidence showing that Moving Defendants had the ability to control AMR.

## <u>LEGAL STANDARD</u>

Summary judgment may be granted "based solely on the pleadings" and without "reference to affidavits, depositions, and interrogatories," if "accepting all alleged facts as true, the plaintiffs' complaint nonetheless failed to state a claim." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). As this Court recognized in denying Defendants' motions to dismiss "without prejudice to being reasserted as motions for summary judgment" (Dkt 343), failure to state a claim not only supports a motion to dismiss, but can also "serve as a basis for summary judgment." *In re Enron*, 610 F. Supp. 2d 600, 607-08 (S.D. Tex. 2009) (citing *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)).

Summary judgment is also available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Walker v. Ham*, 2016 WL 4718192, at *3 (S.D. Tex. Sep. 8, 2016) (Hanks, J.) (internal quotations and citations omitted). The moving party need not "negate the elements of the non-movant's case" to demonstrate the absence of any genuine

issue of material fact; rather, this burden may be met "by pointing out the absence of evidence supporting the non-movant's case." *Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enters., LLC*, 2023 WL 2719466, at *3 (S.D. Tex. Mar. 30, 2023) (citing *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)). The nonmovant's burden is "not satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 642 (S.D. Tex. 2009) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

Here, to survive a motion for summary judgment on their Section 20(a) claims, Plaintiffs must both allege and demonstrate that Moving Defendants could control the specific transaction or activity from which the primary violation arises, which in this case, are the alleged misstatements. *See Carlton v. Cannon*, 2016 WL 3959164 (S.D. Tex. July 22, 2016) (Rosenthal, J.).

## **ARGUMENT**

Plaintiffs have failed to both adequately plead and adduce evidence that Moving Defendants had the ability to control the alleged primary violators, a necessary element of their Section 20(a) claims. Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), imposes civil liability on a person who controls another person who violated the federal securities laws. *Carlton*, 2016 WL 3959164, at *1. Although there is debate within the Fifth Circuit regarding the standard required to establish "control," courts within this Circuit uniformly agree that to survive summary judgment, the party alleging control "must *at least* show that the defendant had an *ability to control* the specific transaction or activity upon which

the primary violation is based."[41]   *Meek v. Howard*, 95 F.3d 45, [published in full-text format at 1996 WL 405436, at *3], (5th Cir. 1996) (emphasis added); *accord In re Venator PLC Sec. Litig.*, 547 F. Supp. at 652.   Thus, the absolute bare "minimum" to sustain a Section 20(a) claim requires showing that the defendant had the "ability to control" the specific transaction or activity forming the basis for primary liability.   *Lillie v. Off. of Fin. Insts. of State of La.*, 997 F.3d 577, 582-83 (5th Cir. 2021).   To meet that standard, plaintiffs must do more than identify the status or position of the alleged controlling person.   *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509-10 (5th Cir. 1990).

Plaintiffs cannot meet even this bare minimum standard because they have not adequately pled or adduced evidence that Moving Defendants were able to control the misstatements attributed to Silver Run or AMR.   Yet Plaintiffs ask this Court to find that: (1) Moving Defendants, as partial owners of the target companies in an acquisition, had the "ability to control" Silver Run, their counterparty in the Business Combination; and (2) Moving Defendants had the "ability to control" AMR and statements made on its behalf by virtue of their minority ownership interests in the company.   This defies common sense and Fifth Circuit precedent.

---

[41]   When applying the standard for control person liability, "the Fifth Circuit has at various times considered whether the alleged control-person had effective day-to-day control of the corporation, or had the requisite power to directly or indirectly control or influence corporate policy, or had actual power or influence over the controlled person."   *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 652 (S.D. Tex. 2021) (Charles Eskridge, J.) (internal quotations omitted).   While none of these inquiries are "dispositive," plaintiffs must, "[a]t the very least … show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based."   *Id.* (internal quotations omitted); *see also, e.g.*, *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 958 (5th Cir. 1981) ("culpable participation" not required for 20(a) liability); *but see Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990) (20(a) liability requires alleged control person to have "induced or participated in the alleged violation") *and In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 791 (S.D. Tex. 2012) (same).

**A.      Plaintiffs Have Not Pled or Adduced Evidence That Moving Defendants Controlled Silver Run or the Proxy Defendants, the Authors of the Alleged Pre-Business Combination Misrepresentations.**

**1.      Plaintiffs' Allegations That Moving Defendants Controlled the Pre-Business Combination Misstatements Fail.**

Plaintiffs' allegations that Moving Defendants controlled alleged misstatements made by Silver Run and the Proxy Defendants prior to the Business Combination fail as a matter of law.[42]  The operative question to determine Section 20(a) liability is whether the alleged controller "possessed or exercised control over those persons or entities who made actionable misstatements." *In re BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *6 (S.D. Tex. Sept. 30, 2014); *see also In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 731 (W.D. Tex. 2010) ("[Defendant] cannot be held liable as a control person simply due to his involvement in the underlying activities about which the Individual Defendants are alleged to have misled investors."); *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1374 (N.D. Ga. 2005) ("The Company's financial reporting . . . is what forms the basis of Plaintiffs' claims, not the operations themselves.  That Defendant [] set the Company's collection policies is irrelevant . . . .").  Here, Plaintiffs have failed to allege that Moving Defendants satisfied the SEC's definition of control:  none is alleged to have had any contractual or other legal right or ability "to direct or cause the direction of management and policies of" Silver Run.  *See* 17 C.F.R. § 230.405 (defining "control"); *see also Carlton*, 2016 WL 3959164, at *4, 8 (applying definition of "control" in 17 C.F.R. § 230.405 to dismiss Section 20(a) claims where defendant "had neither the power to

---

[42]  TAC at ¶¶ 190-197; AC at ¶¶ 152-166, 194-209; OC at ¶¶ 161-175, 210-215.

control the type of statements alleged to be misleading nor the specific statements that gave rise to . . . liability").

*Abbott v. Equity Group*, 2 F.3d 613 (5th Cir. 1993), is also instructive here. In *Abbott*, the plaintiffs argued that certain Section 20(a) defendants were liable as control persons due to their participation in financing an allegedly fraudulent transaction. *Id.* at 615. The evidence showed that the Section 20(a) defendants "were not involved in decisions by [the primary violator] to purchase properties for syndications to investors; they were not involved in operations of properties purchased by [the primary violator] or its affiliates; and they were not otherwise involved in the general operations of [the primary violator], including business, financial and marketing plans." *Id.* at 620. On the basis of these facts, the Fifth Circuit affirmed summary judgment, holding that the defendants could not be liable as control persons merely because their participation was essential to financing the allegedly fraudulent transactions at issue in that case. *Id.* at 620-21; *see also e.g., Pharo v. Smith*, 621 F.2d 656, 670 (5th Cir. 1980) ("Deltec had no representatives on Smith Pride's board or on its management team. It is quite obvious, then, that Deltec did not have the power to control Smith's Pride's management, or the company.").

Similarly, here, Plaintiffs allege nothing to suggest that Moving Defendants could control Silver Run or the Proxy Defendants. Their only basis for claiming control is that Moving Defendants were *counterparties* to Silver Run during the negotiation of the Business Combination—but that alone cannot establish control. *See, e.g., Bach v. Amedisys, Inc.*, 2016 WL 4443177, at *14 (M.D. La. Aug. 19, 2016) (dismissing for failure to plead Section 20(a) claims against defendants who "did not work for Amedisys at the

time of the" alleged misstatements); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *36 (C.D. Cal. Jan. 16, 2013) (holding that "plaintiffs have not pled sufficient facts showing that [control defendant] exercised control over American Apparel during the time frame in question" where "Plaintiffs' allegations of misrepresentations . . . for the most part concern statements made long before the financing agreements with [the alleged controller].").

Plaintiffs assert that "Bayou City, HPS, and ARM Energy provided the operational information contained in the Proxy" used by Silver Run and issued by the Proxy Defendants.[43]  But that conclusory assertion is also insufficient to plead control over the alleged misstatements in the Proxy.  Plaintiffs fail even to identify which "operational" information, if any, was provided by Moving Defendants; whether (and why) it was supposedly false; or how providing operational information would establish control over Silver Run.

Regardless, Moving Defendants could not have had the requisite control or be subject to Section 20(a) liability even if Plaintiffs had pleaded that they supplied false information for Silver Run's Proxy.  As other courts in this district have held, the question under Section 20(a) is whether Moving Defendants "possess or exercised control over those persons or entities who made actionable misstatements under Section 10(b), ***not whether the substance of the alleged falsehoods originated with him***."  *In re BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *6 (emphasis added).  The Court can dismiss an action

---

[43]  TAC at ¶¶ 64, 184; AC at ¶¶ 42, 358; OC at ¶¶ 51, 433.

for such pleading deficiencies either on a motion to dismiss or at summary judgment. *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993) (Summary judgment may be granted "based solely on the pleadings" "if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless failed to state a claim.").

Indeed, it is commonplace for an acquirer to prepare a proxy statement using information obtained from a target company. This process serves the interests of the securities laws by providing investors with broader and more accurate disclosures. Plaintiffs' theory, if successful, would chill merger activity and discourage target companies from providing information to the potential acquirer because doing so would expose them to Section 20(a) liability for control over a counterparty in which they own zero interest, hold zero board seats or management positions, and have no role in its operations.

### 2.   Plaintiffs Have Adduced No Facts Showing That Moving Defendants Could Control Silver Run.

The uncontroverted facts conclusively establish that Moving Defendants did not have the ability to control Silver Run or its agents prior to the Business Combination. It is undisputed that none of the Moving Defendants owned *any* interest in Silver Run. They were not stockholders, were not on Silver Run's Board, did not hold any management position at Silver Run, and had no role in Silver Run's operations.[44] Moving Defendants' only relationship to Silver Run was as *counterparties* in a purchase and sale transaction.

---

[44]   *See generally*, Ex. M (Silver Run Acquisition Corporation II Prospectus (March 23, 2017)).

There is no evidence that any Moving Defendant somehow reached across the negotiating table to control Silver Run or its Proxy. In fact, the factual record demonstrates that neither HPS, Bayou City, nor ARM Energy had sole authority to determine the final content of the Proxy. *See, e.g.*, Ex. H (Christopher Dep. Tr.) at 67:10-18 (ARM Energy 30(b)(6) designee testifying that ████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████; Ex. E (Hostettler Dep. Tr.) at 251:25-252:09 (HPS 30(b)(6) designee testifying that ██████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████; Ex. A (Dimitrievich Dep. Tr.) at 133:24-134:2 (managing director of HPS testifying that HPS was ████████████████████████████ ████████████████████████); Ex. C (Tepper Dep. Tr.) at 100:07-101:05 (former Silver Run Board member testifying ██████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████); Ex. G (Gutermuth Dep. Tr.) at 128:08-11 (former Silver Run Board member testifying ████████████████████████████████████████ ██████); Ex. D (Walters Dep. Tr.) at 98:17-20 (same). Therefore, Plaintiffs' pre-Business Combination claims against Moving Defendants should be dismissed because they had no ability to control Silver Run or any alleged misstatements contained in the Proxy. *See, e.g.*, *Abbott*, 2 F.3d at 620-21.

**B.      Plaintiffs Fail to Plead or Adduce Evidence That Moving Defendants Controlled the Authors of the Alleged Post-Business Combination Misrepresentations.**

**1.      The Allegations That Moving Defendants Controlled the Post-Business Combination Misstatements Fail as a Matter of Law.**

Plaintiffs' allegations that Moving Defendants controlled AMR, the Management Defendants, or the Board Defendants, who allegedly made the post-Business Combination misstatements, also fail as a matter of law.  Plaintiffs predicate their allegations of control on two core sets of alleged facts:  (i) that Bayou City, HPS, and ARM Energy directly or indirectly held minority interests in AMR following the Business Combination; and (ii) that Bayou City and HPS each appointed one of eleven AMR directors.[45]  Neither set of facts, however, establishes Section 20(a) liability.

Moving Defendants' status as *minority* shareholders of AMR "does not, without more, create control person liability."  *Dartley v. Ergobilt Inc.*, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001); *see also Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 855 Fed. App'x 902, 906 (5th Cir. Mar. 31, 2021) (affirming summary judgment for control defendants and rejecting argument that defendants had the ability to control misleading financial statements due to its wholly owned subsidiary holding all voting shares in the entity that allegedly made the misleading statements (applying Louisiana Securities Law, but looking to federal securities law for guidance)).  In particular, "a defendant's minority stock ownership is, in isolation, insufficient to allege control under Section 20(a)." *Silsby*

---

[45]    *See* TAC at ¶¶ 61-63; AC at ¶¶ 39-41; OC at ¶¶ 48-50.

*v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x 448 (2d Cir. 2015).

Even if Moving Defendants did hold a majority interest in AMR, this would still be insufficient to establish Section 20(a) liability absent additional indicia of control over the making of the "specific, allegedly misleading public statements." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 495 (S.D. Tex. 2016) (Rosenthal, J.); *see also Dartley*, 2001 WL 313964, at *1 (granting motion to dismiss 20(a) claims because "[t]he Court finds that Troutman's status as a major shareholder and a party to the voting agreement at issue does not, without more, create control person liability"); *Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th Cir. 2003) (investment funds' ownership of "38%-50%" of company stock and right to designate board majority insufficient to plead "exercise of power and control . . . as to the challenged acts"). There is no such evidence here.

Plaintiffs' attempt to salvage their 20(a) claims by relying upon HPS and Bayou City's right to each appoint a single director (out of eleven) to the AMR Board is equally misplaced. For the same reasons that being a *minority* shareholder is not enough to establish control, the power to appoint a *minority* number of board members is also insufficient.[46] *See, e.g.*, *Zishka*, 2001 WL 1748741, at *1; *In re Advance Auto Parts, Inc., Sec. Litig.*, 2020 WL 599543, at *9 (D. Del. Feb. 7, 2020) ("The claims against Starboard fail, because allegations of control are insufficient where the plaintiff merely alleges that

---

[46]   ARM Energy did not have the right to appoint, and therefore did not appoint, *any* directors to AMR's Board.  TAC at ¶ 136; AC at ¶ 41; OC at ¶ 50.

the defendant owned a minority stock interest and selected a minority number of directors.").

What is more, if mere status as a director does not establish control, then the right simply to *appoint* a director cannot establish control. Plaintiffs must instead furnish facts that do more than recite a defendant's position and show that the defendant had actual power or control over the controlled person. *See Cameron v. Outdoor Results of America, Inc.*, 608 F.2d 187, 195 (5th Cir. 1979) ("[A] director without effective day-to-day control" cannot be liable as a controlling person.); *see also Dennis*, 918 F.2d at 509-10 ("[Director] status alone will not automatically cause him to be a Section 15 or 20 controlling person."); *see also Carlton*, 2016 WL 3959164, *4.

Nor have Plaintiffs properly alleged that Moving Defendants controlled the Management Defendants or Board Defendants. As to the Management Defendants, Plaintiffs have failed to allege control over AMR, and therefore, have no better claim that Moving Defendants controlled AMR's employees. As to the two Board designees appointed by HPS and Bayou City, it is well-settled that the Court "cannot assume that [defendants'] designees on the [company's] Board of Directors were acting on behalf of [defendants] in their capacity as . . . directors." *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013). And here, Plaintiffs have not pled that the individuals appointed by HPS or Bayou City acted on behalf or in the interests of the appointing entities—as opposed to the interests of the company on whose Board they served—when they acted as directors of AMR. *See Silsby*, 17 F. Supp. 3d at 371 ("This allegation lends no support to the plaintiffs' allegation that Icahn exercised control over

primary violators because [directors appointed by Icahn] were not working within the scope of their employment for Icahn when acting in their capacity as Directors of Dynegy.").  Plaintiffs therefore fail to plead that Moving Defendants independently had the ability to control—much less actually controlled—AMR.

### 2.   Plaintiffs Have Adduced No Facts Showing That Moving Defendants Could Control AMR Or Any Individual Defendant.

Plaintiffs also cannot point to a single fact in dispute that would show Moving Defendants could control AMR or any Management or Board Defendant.  In the pleadings, Plaintiffs relied on obfuscating the relationships between the parties to avoid dismissal by creating the appearance of a "complex web of securities ownership, contracts, business relationships, and interlocking directors" to suggest control; in reality, the relationship between Moving Defendants and AMR is simple and cannot support a finding of control.

None of the discovery suggests that Moving Defendants held majority interests in AMR, controlled its Board, or otherwise had the ability to exercise operational control of the entity.  Moving Defendants indisputably each held mere minority interests in AMR.[47] HPS' interest, through funds it managed, in AMR was at all times well below 50%.[48] Bayou City's interest in AMR was 17.93%,[49] and ARM Energy's was no more than 4.8%.[50] As holders of only minority interests, the Moving Defendants could not have controlled AMR or any alleged misstatements by AMR.  *Dartley*, 2001 WL 313964, at *1.

---

[47]  *See* Ex. J (HPS 13D (March 11, 2018)); *see also* Ex. I (Bayou 13D (August 16, 2018)); Ex. L (Proxy (January 19, 2018)) at viii, 5.
[48]  *See* Ex. J (HPS 13D (March 11, 2018)) at 3; *see also* Ex. K (HPS 13D Amendment 1 (June 9, 2018)) at 3.
[49]  *See* Ex. I (Bayou 13D (August 16, 2018)) at 2.
[50]  *See* Ex. L (Proxy (January 19, 2018)) at viii (stating the Kingfisher Contributor's voting interest); *see also id.* at 5 (explaining ARM Energy's voting interest in the Kingfisher Contributor).

There is no dispute that HPS and Bayou City each appointed only a single director to AMR's Board of Directors (Don Dimitrievich and William McMullen respectively), which is insufficient to establish control.[51]  *See Dennis*, 918 F.2d at 509-10.  These appointees, Don Dimitrievich and William McMullen, were *neither* officers *nor* managers at AMR, and therefore, could not control operations.  *Carlton v. Cannon*, 2016 WL 3959164, at *6 (noting that "a corporation can conduct its affairs only through its officers and employees") (internal citations omitted).  Indeed, Plaintiffs failed to obtain any testimony from either HPS or Bayou City's designees to the AMR Board that could suggest that they—much less HPS or Bayou City—possessed the power to direct or cause the direction of AMR.  There is no evidence that could change the foregoing facts, which precludes a finding that Moving Defendants had the requisite "ability to control" AMR.

Moreover, there is nothing to suggest that Moving Defendants should be liable as control persons for the statements of any Board Defendant.  Indeed, given that Moving Defendants had no control over the Board, there is no basis to suggest that they had control over any of the individual constituents that they did not appoint.  And as explained in the briefs concurrently filed on behalf of Defendants Don Dimitrievich and William McMullen, neither HPS nor Bayou City's appointees is liable for a primary violation; thus, there can be no secondary liability for their alleged representations.

Finally, Plaintiffs have adduced no evidence that Moving Defendants had the ability to control the Management Defendants.  None of the Management Defendants worked for,

---

[51]  *See* TAC at ¶¶ 61-62; AC at ¶¶ 39-40; OC at ¶¶ 48-49.

or were appointed by, Moving Defendants.  Instead, they worked for and answered to AMR, an entity over which Moving Defendants did not have control for the reasons set forth above.  *See, e.g.*, Ex. F (Chappelle Dep. Tr.) at 142:9-16 ██████████████

███████████████████████████████████████████████████████████████

██████████████; *see also* Ex. B (Smith Dep. Tr.) at 123:15-124:01 (testifying that

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████).

Therefore, Moving Defendants should be granted summary judgment as to Plaintiffs' post-Business Combination claims.

## CONCLUSION

For these reasons, Moving Defendants respectfully request summary judgment on Count II and Count IV of the Third Amended Complaint for Class Plaintiffs, Dkt. 218, and Count II and Count V of both the Alyeska, Dkt. 1, and Orbis, Dkt. 1, Complaints.

Dated:    August 31, 2023                     Respectfully submitted,

/s/ *Christopher Porter*
(signed by permission of Attorney-in-Charge)

Karl S. Stern (attorney in charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 / Facsimile: (713) 221-7100
Email: karlstern@quinnemanuel.com
chrisporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000 / Facsimile:
(212) 849-7100
Email: michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
courtneywhang@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT
PARTNERS, LLC AND DON
DIMITRIEVICH**

David A. Baay (*Attorney-in-Charge*)
Fed. ID No. 598715
1001 Fannin Street, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6112
Fax: (713) 654-1301
davidbaay@eversheds-sutherland.com

Bruce M. Bettigole (*pro hac vice*)
The Grace Building, 40th Floor
1114 Avenues of the Americas
New York, NY 10023
Telephone: (212) 389-5000
Fax: (212) 389-5099
brucebettigole@eversheds-sutherland.com

Adam C. Pollet (*pro hac vice*)
Andrea Gordon (*pro hac vice*)
700 Sixth Street N.W., Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Fax: (202) 637-3593
adampollet@eversheds-sutherland.com
andreagordon@eversheds-sutherland.com

**COUNSEL TO ARM ENERGY
HOLDINGS, LLC**

Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
Kenneth A. Young (Attorney-in-Charge)
Texas Bar No. 25088699,
S.D. Tex. ID 2506614
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:      (713) 836-3600
Fax:         (713) 836-3601
Emails:    nick.brown@kirkland.com
                 kenneth.young@kirkland.com

**COUNSEL FOR BAYOU CITY ENERGY**
**MANAGEMENT, LLC AND WILLIAM**
**MCMULLEN**

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served under seal by the Court's ECF system,

and a copy has been served by email to counsel for all parties on August 31, 2023.

<u>/s/ *Christopher Porter*</u>
By:  Christopher Porter