# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> **CLASS ACTION** <br><br> [Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br>           Plaintiffs, <br><br>    v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br>           Defendants. | Civil Action No. 4:22-cv-001189 <br><br> [Consolidated Case] |

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P.,

    Plaintiffs,

  v.

ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER,

    Defendants.

Civil Action No. 4:22-cv-02590

[Consolidated Case]

**MOTION OF DONALD DIMITRIEVICH AND WILLIAM MCMULLEN FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW AS TO OPT-OUT PLAINTIFFS' STATE LAW AND SECTION 18 CLAIMS**

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

# **TABLE OF CONTENTS**

**Page**

NATURE OF THE ACTION ..............................................................................................1

STATEMENT OF THE ISSUES........................................................................................4

STATEMENT OF MATERIAL UNDISPUTED FACTS ..................................................4

    A.      Background Facts.............................................................................................4

    B.      Allegations in Opt-Outs' Complaint ...............................................................5

    C.      Discovery Confirms No Basis for the Section 18 or State Law Claims ................6

LEGAL STANDARD.........................................................................................................8

ARGUMENT......................................................................................................................9

I.       THE SECTION 18 CLAIMS SHOULD BE DISMISSED. ..................................9

    A.      Opt-Outs Have Failed to Plead or Prove Reliance Under Section 18....................9

           1.      Statements 1-4: Risks Related to the Upstream Business........................11

           2.      Statements 5-8: Risks Related to the Midstream Business.......................12

           3.      Statement 9: CEO and CFO Disclosure....................................................14

    B.      The Section 18 Claims Are Outside the Statute of Limitations Period ................15

    C.      The Section 18 Claims Are Barred By the Good Faith Defense ..........................18

II.      THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED .......................19

    A.      Opt-Outs Fail to Plead or Prove Intent to Induce Reliance, or Reliance .............19

           1.      No Allegations or Facts Support An Intent to Induce Reliance................20

           2.      Opt-Outs Did Not Rely On the Alleged Misstatements...........................21

    B.      "Holder" Claims Are Not Recognized Under Texas Law ....................................22

    C.      The State Law Claims Are Barred By SLUSA.....................................................23

CONCLUSION...................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Alexander v. Eeds*,
   392 F.3d 138 (5th Cir. 2004) ........................................................................9

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)............................................................15, 16, 17, 18, 19

*In re AOL Time Warner, Inc. Secs. Litig.*,
   503 F. Supp. 2d 666 (S.D.N.Y. 2007)..........................................................24

*Ashe v. Corley*,
   992 F.2d 540 (5th Cir. 1993) ...................................................................8, 9

*Barsky v. Arthur Andersen*,
   LLP, 2002 WL 32856818 (S.D. Tex. Aug. 15, 2005) ...............................22

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)......................................................................................23

*In re BP p.l.c. Sec. Litig.*,
   51 F. Supp. 3d 693 (S.D. Tex. 2014) ...........................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................................8

*Child. Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*,
   2011 WL 13220509 (C.D. Cal. 2011)...........................................................16

*Courtney v. Andersen*,
   264 F. App'x 426 (5th Cir. 2008) .................................................................9

*Dennis v. Gen. Imaging, Inc.*,
   918 F.2d 496 (5th Cir. 1990) .........................................................................8

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
   888 F.3d 753 (5th Cir. 2018) .......................................................................23

*In re Enron Corp. Sec.*,
   535 F.3d 325 (5th Cir. 2008) ......................................................... 23, 24, 25

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   2007 WL 789141 (S.D. Tex. Mar. 12, 2007) ...................................2, 16, 22

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   490 F. Supp. 2d 784 (S.D. Tex. 2001) ...................................................22

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   540 F. Supp. 2d 800 (S.D. Tex. 2007) ...............................................9, 10

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   610 F. Supp. 2d 600 (S.D. Tex. 2009) .....................................................9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   2002 WL 32107216 (S.D. Tex. Aug. 12, 2002) ......................................24

*Ernst & Young, L.L.P. v. P. Mut. Life Ins.*,
   51 S.W.3d 573 (Tex. 2001)..........................................................2, 20, 21

*Exxon Corp. v. Emerald Oil & Gas Co.*,
   348 S.W.3d 194 (Tex. 2011)....................................................................21

*In re Fed. Nat'l Mortg. Ass'n Secs., Deriv. & ERISA Litig.*,
   503 F. Supp. 2d 25 31-33 (D.D.C. 2007) ................................................24

*In re Franklin Bank Corp. Sec. Litig.*,
   782 F. Supp. 2d 364 (S.D. Tex. 2011), *aff'd* 464 Fed. Appx. 334 (5th Cir.
   2012) .......................................................................................................17

*Gordon Partners v. Blumenthal*,
   2007 WL 431864 (S.D.N.Y. Feb. 9, 2007)..............................................24

*Grant Thornton LLP v. Prospect High Income Fund*,
   314 S.W.3d 913 (Tex. 2010)..............................................................22, 23

*Hawkins v. Walker*,
   233 S.W.3d 380 (Tex. App.—Fort Worth 2007, no pet.)........................20

*Instituto de Prevision Militar v. Merrill Lynch*,
   546 F.3d 1340 (11th Cir. 2008) ..............................................................24

*Int'l Fund Mgmt. v. Citigroup Inc.*,
   822 F. Supp. 2d 368 (S.D.N.Y. 2011).....................................................11

*Lindner Dividend Fund v. Ernst & Young*,
   880 F. Supp. 49 (D. Mass. 1995) ............................................................17

*Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enters.*,
   2023 WL 2719466 (S.D. Tex. 2023) .........................................................8

*Olabisiomotosho v. City of Houston*,
   185 F.3d 521 (5th Cir. 1999) ....................................................................9

*Orbis Glob. Equity Fund v. NortonLifelock Inc.*,
   2023 WL 1800963 (D. Ariz. Feb. 7, 2023)...............................................................10

*In re Petrobras Sec. Litig.*,
   169 F. Supp. 3d 547 (S.D.N.Y. 2016).....................................................................10

*R.D. Tips, Inc. v. Jett*,
   2015 WL 1612025 (Tex. App.—Austin Apr. 9, 2015, pet. denied) ..........................2

*Spec. Situations Fund III v. Am. Dental Partners*,
   775 F. Supp. 2d 227 (D. Mass. Mar. 31, 2011) ...............................................17, 19

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006).....................................................................................10

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) ...................................................................................19

*In re WorldCom, Inc. Sec. Litig.*,
   2006 WL 752770 (S.D.N.Y. March 24, 2006) .........................................................22

*In re WorldCom, Inc. Securities Litigation*,
   308 F. Supp. 2d 236 (S.D.N.Y. 2004)......................................................................24

*Wyser-Pratte Mgmt. v. Telxon Corp.*,
   2003 WL 25861087 (N.D. Ohio June 4, 2003).................................................16, 17

*Zaragoza v. Union Pac. R.R.*,
   606 F. Supp. 3d 427 (W.D. Tex. 2022).....................................................................18

## **Statutes and Rules**

15 U.S.C. § 78r(a)...............................................................................................17, 19

15 U.S.C. § 78r(c)...........................................................................................................15

15 U.S.C § 78bb(f)(5)(B)(ii) ..........................................................................................24

Fed. R. Civ. P. 9(b) ..........................................................................................................8

Fed. R. Civ. P. 56 .............................................................................................................8

Restatement (Second) of Torts § 531 cmt. d (Am. L. Inst. 1977) ................................20

Securities Exchange Act of 1934: Section 10(b) .....................................5, 9, 17, 18, 19

Securities Exchange Act of 1934: Section 14(a) ...........................................................4

Securities Exchange Act of 1934: Section 18 ......................................................6, 9, 10, 15, 18, 19

Securities Exchange Act of 1934: Section 20(a)  ..................................................4, 5, 6, 18, 19

Securities Exchange Act of 1934: Rule 13a-15(e)..................................................................14

Securities Exchange Act of 1934: Rule 15d-15(e) ................................................................14

Texas Business and Commerce Code § 27.01 ..................................................................2, 19, 22

Texas Business and Commerce Code § 27.01(a) .................................................................... 20

## NATURE OF THE ACTION

The Alyeska and Orbis Plaintiffs (the "Opt-Outs") claim that Donald Dimitrievich and William McMullen ("Defendants") defrauded them by convincing them to invest in the publicly-traded stock of Alta Mesa Resources, Inc. ("AMR").  Opt-Outs do not claim they ever met or spoke with either Defendant.  Instead, they claim that they relied on statements in AMR's March 29, 2018 Form 10-K ("2017 10-K"), which Defendants signed, to invest in AMR.  That is the only basis for their fraud claims against Defendants.

But the undisputed facts tell a different story about the Opt-Outs alleged "reliance." They show that Opt-Outs (and their counsel) pored over the 2017 10-K, cobbled together a handful of scattered sentence fragments and risk warnings within that 100-page document, and filed fraud claims alleging they relied on those statements, when in fact they did not.  It therefore comes as no surprise that when Opt-Out witnesses had the chance to support their reliance claims, they did the opposite.

Indeed, depositions have provided conclusive evidence that Opt-Outs cannot establish reliance, an essential element of all of their fraud claims.  At their depositions, *every single witness for Opt-Outs admitted that they did not rely on any of the alleged misrepresentations in the 2017 10-K*. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1]  This testimony goes beyond failing to raise an issue of fact—it demonstrates that Opt-Outs had no basis to bring these claims in the first place.

---

[1] *See* Ex. A (Karr Dep. Tr.) at 141:2-12; 144:16-25; 146:3-13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Beyond lack of reliance—which disposes of all of the Opt-Outs' Section 18 and state law claims—there are several additional reasons why these claims fail:

*First*, their claims under Section 18 of the 1934 Securities Exchange Act (the "1934 Act") are untimely and barred by Defendants' good faith.  While this Court denied Defendants' motion to dismiss on the basis of statute of limitations, it did so without prejudice, recognizing that the issue might warrant renewed consideration at the summary judgment phase.  There is good reason to consider the issue again.  The one-year statute of limitations for Opt-Outs' Section 18 claims began to run *no later* than March 14, 2019— when the Class filed their initial complaint based on the same 10-K filing upon which Opt-Outs now base their claims.  Opt-Outs filed their complaints over three years *after* the Class complaint, so they are out of time.  Further, as detailed in Defendants' summary judgment motions on scienter, there is *no evidence* Defendants had knowledge of the supposed falsity of the alleged misstatements in the 2017 10-K, and therefore "good faith" bars this claim.

*Second*, Opt-Outs' claims arising under state common law and Texas Business and Commerce Code § 27.01 ("statutory fraud") fail for lack of justifiable reliance, as above, and because Opt-Outs fail to allege an "'especial likelihood' that" the alleged misstatements would influence them.  *R.D. Tips, Inc. v. Jett*, 2015 WL 1612025, at *4 (Tex. App.—Austin Apr. 9, 2015, pet. denied) (quoting *Ernst & Young, L.L.P. v. P. Mut. Life Ins.*, 51 S.W.3d 573, 580-82 (Tex. 2001)).  Mere evidence of signing an SEC filing—which is all Opt-Outs offer—is insufficient.  *See id.*

*Third*, Opt-Outs seek damages because they **held** their shares in AMR, and not because they bought or sold shares and lost money as a result.  Such "holder" claims are

2

not recognized under Texas (or federal) law because they require the court to speculate about whether and when Opt-Outs would have sold their shares had they known the alleged truth. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2007 WL 789141 at *3 (S.D. Tex. Mar. 12, 2007) ("Texas has not recognized holder claims under Texas common law"); *id*. at *13 (concluding that "the Texas Supreme Court would limit, if not totally exclude, holder claims under Texas common law"). Although the Court previously reserved judgment, Texas has not recognized such a claim as of the date of this motion, warranting dismissal at this late stage of the proceedings.

*Finally*, Opt-Outs' state law claims are preempted by SLUSA. Although the Court initially reserved this issue for a later date because fewer than fifty plaintiffs are asserting state law claims, that issue respectfully warrants fresh consideration (as the Court acknowledged it might).[2] No one disputes that there are now more than fifty plaintiffs or that some are asserting state law claims. That is all that SLUSA preemption requires.

Accordingly, for these reasons and as set forth below, Defendants respectfully request dismissal of Opt-Outs' Section 18, common law fraud, and statutory fraud claims.

## PROCEDURAL BACKGROUND

On March 14, 2019, Class Plaintiffs filed a complaint on behalf of a putative class consisting of all persons or entities who acquired Silver Run II ("Silver Run") and/or AMR securities between March 24, 2017, and February 25, 2019.[3] In subsequent amendments, Plaintiffs added Donald Dimitrievich, William McMullen, and other AMR directors as

---

[2] Dkt. 343 at 8.
[3] Dkt. 1.

defendants, alleging they made misstatements when they signed AMR's 2017 10-K.[4]

Three years after the first Class complaint, the Opt-Outs each filed individual suits that they subsequently and voluntarily agreed to consolidate with the Class Action.[5]  The primary difference between Class Plaintiffs' complaint and those filed by Opt-Outs is that the latter have tacked on claims under Section 18 of the 1934 Act and state law.[6] Defendants recently filed motions to dismiss these claims, which the Court denied "without prejudice ***to being reasserted as motions for summary judgment***."[7]  Defendants therefore respectfully seek summary judgment on these claims, as set forth below.[8]

## STATEMENT OF THE ISSUES

This motion addresses whether Opt-Outs' Section 18 and state law claims against Defendants must be dismissed because:  (1) the Section 18 claims lack any evidence of reliance, are time-barred, and are precluded by the "good faith" defense; and (2) the state law claims lack any proof of reliance or intent to induce reliance, constitute impermissible "holder" claims, and are preempted by SLUSA.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

### A. Background Facts

In August 2017, Silver Run, a special purpose acquisition company formed to

---

[4]  Dkt. 59 at ¶¶ 48-49, 210-212, 214; Dkt. 69 at ¶¶ 48-49, 210-212, 214; Dkt. 218 ("TAC") at ¶¶ 56-57, 217-219, 221.

[5]   The Alyeska complaint ("AC") was filed April 13, 2022; the Orbis complaint ("OC") August 3, 2022; Dkt. 259 at 3.

[6]   *Compare* TAC (asserting causes of action arising under Sections 10(b), 14(a), and 20(a) of the 1934 Act) *with* AC (asserting causes of action arising under Sections 10(b), 14(a), and 20(a) of the 1934 Act, as well as common law fraud and violations of Section 27.01 of the Texas Business and Commerce Code) *and* OC (same).

[7]   Dkt. 343 at 1, 14 (emphasis added).

[8]   Specifically, Messrs. Dimitrievich and McMullen seek dismissal of Counts III, VI, VII, and VIII of the Orbis complaint and Counts III, VI, and VII of the Alyeska complaint.

identify and execute an acquisition in the energy industry, announced it would acquire two companies:  Alta Mesa Holdings ("AMH"), an upstream company that specialized in developing oil and gas reserves, and Kingfisher Midstream LLC ("Kingfisher"), a midstream company that specialized in gathering and processing oil and gas reserves (the "Business Combination").[9]  Silver Run stockholders approved the Business Combination; it closed on February 9, 2018, and Silver Run was renamed Alta Mesa Resources, Inc.[10]

Before the acquisition, HPS Investment Partners, LLC ("HPS"), was an indirect shareholder in AMH and Kingfisher.[11]  Once the Business Combination closed, HPS, through its managed funds, became a minority shareholder of AMR and appointed Mr. Dimitrievich as an independent director on AMR's eleven-member board.[12]  Similarly, as part of the Business Combination, Bayou City Energy Management, LLC ("Bayou City") nominated Mr. McMullen to AMR's board.[13]  Messrs. Dimitrievich and McMullen never bought or sold equity in AMR, nor received compensation per the terms of the Business Combination.[14]  Less than two months later, Defendants were asked as directors to sign AMR's 2017 10-K.[15]  Thereafter, AMR experienced a downturn, and Plaintiffs filed suit.[16]

### B.  Allegations in Opt-Outs' Complaint

Opt-Outs' suit against Defendants is premised on Defendants signing the 2017 10-

---

[9]  AC at ¶¶ 4, 53, 56; OC at ¶¶ 4, 62, 65.

[10]  AC at ¶ 60; OC at ¶ 69.

[11]  AC at ¶¶ 103, 258; OC at ¶¶ 112, 320; Ex. B (Dimitrievich Dep. Tr.) at 47:23-49:6, 52:23-53:14.

[12]  AC at ¶¶ 35, 40; OC at ¶¶ 44, 49; see Ex. C (AMR 2017 10-K (Mar. 29, 2018)) at 57.

[13]  AC at ¶¶ 34, 39; OC at ¶¶ 43, 48; see Ex. C (AMR 2017 10-K (Mar. 29, 2018)) at 57.

[14]  See Ex. D (McMullen Interrog. Resps. (May 9, 2022)) at 14-15; Ex. N (Dimitrievich Interrog. Resps. (May 9, 2022)) at 8-10.

[15]  AC at ¶¶ 34-35; OC at ¶¶ 43-44.

[16]  AC at ¶ 95; OC at ¶ 104.

K, which Opt-Outs allege contains material misrepresentations. But far from pleading that Defendants intended to induce reliance on the alleged misrepresentations, Opt-Outs' complaints barely mention Defendants. As detailed in the contemporaneously filed Motions for Summary Judgment on the Section 10(b) and 20(a) claims, incorporated herein by reference, the Opt-Out complaints say little more than that Defendants, who "served as … member[s] of [AMR's] Board of Directors following the Merger," "signed [2017]10-K" and attended board meetings after AMR filed for bankruptcy.[17]

### C. Discovery Confirms No Basis for the Section 18 or State Law Claims

Even after extensive discovery, Opt-Outs have failed to identify *any* evidence that Defendants intended to induce reliance on the alleged misstatements when signing the 2017 10-K or that Opt-Outs actually relied on the alleged misstatements in the 2017 10-K when investing in AMR. The sole evidence concerning Messrs. Dimitrievich's and McMullen's connection to the 2017 10-K is that they reviewed and signed it; evidence of misconduct, bad faith, or intent to induce reliance is non-existent.

Nothing in Mr. Dimitrievich's deposition suggests that he harbored any intent to induce reliance on the purported misrepresentations in the 2017 10-K. Rather, it highlights that he acted in good faith at all times. ██████████████████████████
████████████████████████[18] Notably, Plaintiffs failed to even *ask* Mr. Dimitrievich about the misstatements supposedly in the 2017 10-K or to elicit testimony from him (or any other witness) to support their claim. Class Plaintiffs spent perhaps ten minutes on this

---

[17] AC at ¶¶ 34-35; OC at ¶¶ 43-44, 358.
[18] Ex. B (Dimitrievich Dep. Tr.) at 167:16-20.

topic at Mr. Dimitrievich's deposition, and Opt-Outs asked no questions at his deposition at all.  So too, with Mr. McMullen's deposition, where the 2017 10-K and Mr. McMullen's signature on it received zero discussion.  In fact, the 2017 10-K was not even an exhibit to Mr. McMullen's deposition; he was neither shown nor asked about it at any point.

And worse yet, despite suing Messrs. Dimitrievich and McMullen, ███████████

████████████████████████████████████████████████████████████████████████████

███████████████[19]  In fact, the conclusive evidence shows that Opt-Outs *did not rely on the alleged misstatements in the 2017 10-K*: ████████████████████

████████████████████████████████████████████    ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████.[20] █████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████[21] ████████████████████

████████████████████████████████████████████████████████████████████

---

[19]   *See, e.g.*, Ex. E (Mitchell Dep. Tr.) at 363:4-7 ███████████
████████████████████████; Ex. F (Shamash Dep Tr. (Nov. 24, 2021)) at 155:24-156:2
██████████████████████████████████████; Ex. G (Berger Dep. Tr.) at 53:17-20 ████████
████████████; Ex. A (Karr Dep. Tr.) at 267:10-11 ██████████████████████████████
██; Ex. K (Murray Dep. Tr.) at 229:6-8 ████████████████

[20]   Ex. E (Mitchell Dep. Tr.) at 268:21-274:24, 352:13-357:10 ██████████████████
████████████████████████████████████████████████████; *see also*
Ex. G (Berger Dep. Tr.) at 191:8-204:22 ███████████████████████████████████;
Ex. H (Cutler. Dep. Tr.) at 105:4-106:22 ████████████████
██████████████████████████

[21]   Ex. A (Karr Dep. Tr.) at 146:3-13 ████████████████████████████████
████████████████████████████████████████

███████████████████████████████████████████████[22] There is thus

no basis to claim reliance and no case against Messrs. Dimitrievich and McMullen.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is mandated if the party bearing the burden of proof at trial cannot "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56). A movant must demonstrate that there is no genuine issue of material fact impacting the non-movant's claims, but need not "negate the elements" of those claims; "pointing out the absence of evidence supporting the non-movant's case" satisfies its burden. *Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enters.*, 2023 WL 2719466, at *3 (S.D. Tex. 2023).

Summary judgment may also be granted "***based solely on the pleadings*** … if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless fail[s] to state a claim." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993) (emphasis added); *see also Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 499 (5th Cir. 1990) (affirming dismissal of securities fraud claims at summary judgment based on "[plaintiff's] failure to comply with Fed. R. Civ. P. 9(b)'s [pleading requirements]"). Although "'failure to state a claim' is usually challenged by a motion to dismiss … it may also serve as a basis for summary judgment." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 610 F. Supp. 2d 600, 607-08 (S.D. Tex. 2009). Accordingly, a motion for summary judgment that challenges

---

[22] *Id.* at 137:24-138:8.

the sufficiency of the pleadings "should … be[] evaluated much the same as a 12(b)(6) motion to dismiss." *Ashe*, 992 F.2d at 544.  While ruling on a summary judgment motion based on the pleadings requires drawing inferences "in the light most favorable to the non-moving party," *Courtney v. Andersen*, 264 F. App'x 426, 428 (5th Cir. 2008) (citations omitted), that is true only "'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)).

## ARGUMENT

## I.     THE SECTION 18 CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Section 18 claims fail for several reasons.  As a threshold matter, Opt-Outs cannot prove that they actually relied on any supposed false statements in the 2017 10-K, a fact that is fatal to their claims.  *Second*, Section 18 claims are time barred and should not be tolled.  *Finally,* even if tolling applies, the Section 18 claims should still be dismissed because the only plausible avenue for tolling runs the Opt-Outs right into Defendants' good-faith defense.

### A.     Opt-Outs Have Failed to Plead or Prove Reliance Under Section 18

Opt-Outs' Section 18 claims should be dismissed given their utter failure to adduce evidence that they "actually relied on [a] false statement" within an SEC filing.  *In re Enron Corp.*, 540 F. Supp. at 813 (citation omitted).  To sustain their claims, Section 18 plaintiffs must establish "***actual reliance***, as opposed to constructive or presumed reliance or reliance based on the fraud-on-the-market theory," meaning that they must demonstrate that they actually read allegedly false statements within an SEC filing and relied upon them to invest.

9

*Id.* at 816 (emphasis added); *see also Orbis Glob. Equity Fund v. NortonLifelock Inc.*, 2023 WL 1800963, at *7 (D. Ariz. Feb. 7, 2023) (plaintiffs cannot rely on "fraud-on-the-market" theory available under Section 10(b) for Section 18 claims).

Plaintiffs may not broadly or generically claim reliance.  Without more, claims that "[p]laintiffs read and relied upon [a] Form[] 10-K and the financial statements contained therein . . . not knowing that they were false and misleading," are insufficient to meet the "actual reliance" requirement.  *In re Enron*, 540 F. Supp. 2d at 830; *see also In re Petrobras Sec. Litig.*, 169 F. Supp. 3d 547, 550 (S.D.N.Y. 2016) (dismissing Section 18 claims that did not "state with any specificity which alleged misstatements [] plaintiffs relied upon").

Here, Opt-Outs' conclusory reliance allegations fail to satisfy that standard. Opt-Outs allege that "[a]n investment analyst working on behalf of [Opt-Out] Plaintiffs read and actually relied upon information contained in Alta Mesa's 2017 Form 10-K … in making each purchase of [AMR] common stock."[23]  But neither complaint links the alleged, broad reliance to any specific alleged misstatement in the 2017 10-K.  Merely alleging "that [plaintiffs] 'received, reviewed, actually read, and relied upon'" alleged misstatements in the "Form 10-K filings" is insufficient.  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006).

More importantly, even if Opt-Outs have somehow ***alleged*** reliance, they certainly cannot prove it.  Indeed, as set forth in greater detail below, ***the evidence conclusively establishes they did not read and rely on any of the nine alleged misstatements in the***

---

[23] AC at ¶ 337; OC at ¶ 412; *see also* AC at ¶ 295; OC at ¶ 368.

*2017 10-K*, leaving no genuine issue for trial. *Int'l Fund Mgmt. v. Citigroup Inc.*, 822 F.

Supp. 2d 368, 385 (S.D.N.Y. 2011).

    1.    **Statements 1-4: Risks Related to the Upstream Business**

Opt-Outs cannot establish reliance on the three following disclosures concerning

risks to AMR's upstream business in the 2017 10-K that they challenge:

> [AMR's business] involves the use of the latest available horizontal drilling, completion and production technology, which involve risks and uncertainties in their application.[24] ("Statement No. 1").

> Our operations involve the use of the latest horizontal drilling, completion and production technologies, as developed by us and our service providers, in an effort to improve efficiencies in recovery of hydrocarbons. Use of these new technologies may not prove successful and could result in significant cost overruns or delays or reduction in production, and in extreme cases, the abandonment of a well.[25] ("Statement No. 2").

> …certain of the new techniques we are adopting may cause irregularities or interruptions in production due to offset wells being shut in and the time required to drill and complete multiple wells before any such wells begin producing.[26] ("Statement No. 3").

At their respective depositions, ███████████████████████████████████████

███████████████████████████████████████████████[27]  Notably, ████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████[28]

---

[24]  AC at ¶ 177; OC at ¶ 186.
[25]  AC at ¶ 175; OC at ¶ 184.
[26]  AC at ¶ 175; OC at ¶ 184.
[27]  *See* Ex. E (Mitchell Dep. Tr.) at 353:7-354:4 ████████████████████████
███ (Alyeska 30(b)(6) designee testifying regarding Statements 1-3); *see also* Ex. A (Karr Dep. Tr.) at 146:3-13
████████████████████████████████████████████████████████████
[28]  Ex. A (Karr Dep. Tr.) at 137:24-138:8 ████████████████████
████████████████████████████████████████████████████



Similarly, ███████████████████████████████████

███████████████████████████, that AMR "depend[s] on successful exploration,

exploitation, development and acquisitions to maintain reserves and revenue in the future"

("Statement 4").[29] ████████████████████████████████████████

█████.[30] ███████████████████████████████████████████████

██████████ ████████████ █████ ████ ████████ ██ ██ ████ ██ █[31]

Accordingly, Opt-Outs simply cannot establish reliance on Statements 1-4.

### 2.    Statements 5-8: Risks Related to the Midstream Business

Opt-Outs' 30(b)(6) representatives similarly testified that Alyeska and Orbis neither

relied on, nor were misled by, risk disclosures about AMR's midstream business that they

challenged in their pleadings.  Opt-Outs allege that the following disclosure in the 2017

10-K was false:  "The primary factors affecting our ability to connect new wells to our

gathering facilities include our success in contracting for existing supplies that are not

committed to other systems and the level of drilling activity near our gathering system."[32]

("Statement 5").  But Orbis's representative testified ███████████████████

██████████████████[33] █████████████████████████████

█████████████[34]  Thus, Opt-Outs cannot establish a claim based on Statement 5.

Similarly, Opt-Outs also cannot pursue relief based on the following statements, on

---

[29] AC at ¶ 177; OC at ¶ 186.
[30] Ex. E (Mitchell Dep. Tr.) at 354:5-18; *see also* Ex. G (Berger Dep. Tr.) at 197:23-198:21.
[31] Ex. A (Karr Dep. Tr.) at 141:2-12.
[32] AC at ¶ 206; OC at ¶ 222.
[33] Ex. A (Karr Dep. Tr.) at 144:10-22.
[34] Ex. E (Mitchell Dep. Tr.) at 268:21-269:13; *see also* Ex. G (Berger Dep. Tr.) at 199:2-25.

which they also admitted they did not rely:

> Our future growth will depend in part upon whether we can contract for additional supplies at a greater rate than the rate of natural decline in our current supplies.[35]  ("Statement 6").

> Although drilling activity improved during 2016 and 2017, we could see downward pressure on future drilling activity in the STACK play if commodity prices decline, which may result in lower volumes.[36] ("Statement 7").



[37]

[38]

[39] Orbis's representative

went further,

[40] Thus, Statements 6 and 7 do not support a claim.

Finally, Opt-Outs neither relied on nor were misled by Statement 8.  Statement 8

provides that:

> The renewal or replacement of our existing contracts with our midstream customers at rates sufficient to maintain or increase current revenues and cash flows depends on a number of factors beyond our control, including competition from other midstream service providers and the price of, and demand for, crude oil, natural gas and NGLs in the markets we serve. The

---

[35]  AC at ¶ 206; OC at ¶ 222.
[36]  AC at ¶ 206; OC at ¶ 222.
[37]  Ex. E (Mitchell Dep. Tr.) at 355:19-356:5; *see also* Ex. G (Berger Dep. Tr.) at 200:3-202:2.
[38]  Ex. K (Murray Dep. Tr.) at 154:11-22; 219:12-25; 221:1-14.
[39]  *Id.* at 219:12-220:11; 221:1-14 (emphasis added).
[40]  Ex. A (Karr Dep. Tr.) at 146:3-13                                        (testifying as the corporate designee for all Orbis Plaintiffs, except Orbis Balanced Fund).

inability of our management to renew or replace our current contracts as they expire and to respond appropriately to changing market conditions could have a negative effect on our profitability.[41]  ("Statement 8").



[45]  Thus, Opt-Outs did not rely on Statement 8.

### 3.   Statement 9: CEO and CFO Disclosure

Finally, Opt-Outs cannot support their claim that the following disclosure was misleading:  "[AMR's] Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the 1934 Act) were effective."[46]  ("Statement 9").

[47]  Given their utter failure to support their own pleadings with evidence of actual reliance, Opt-Outs' Section 18 claims must be dismissed.

---

[41]  AC at ¶ 208; OC at ¶ 224.
[42]  Ex. E (Mitchell Dep. Tr.) at 269:14-271:8; *see also*
[43]  Ex. E (Mitchell Dep. Tr.) at 270:5-21.
[44]  Ex. H (Cutler Dep. Tr.) at 104:9-105:3.
[45]  Ex. K (Murray Dep. Tr.) at 222:25-224:11; *see also id*. at 132:11-134:1; 209:16-210:1
; *see also* Ex. A (Karr Dep. Tr.) at 146:3-13 (Orbis's 30(b)(6) designee testifying that
[46]  AC at ¶ 223; OC at ¶ 239.
[47]  Ex. E (Mitchell Dep. Tr.) at 273:13-274:14 (Alyeska 30(b)(6)); Ex. G (Berger Dep. Tr.) at 204:10-22.

**B.      The Section 18 Claims Are Outside the Statute of Limitations Period**

Even if Opt-Outs could prove reliance, their Section 18 claims are time-barred. Section 18 claims must be "brought within one year after the discovery of the facts constituting the cause of action." 15 U.S.C. § 78r(c). Here, Class Plaintiffs filed their initial complaint on March 14, 2019, alleging that AMR's 2017 10-K contained false or misleading statements[48]—the very same document forming the basis for Opt-Outs' Section 18 claim.[49] There is no reason that Opt-Outs could not have asserted their claims on the same day as the Class: March 14, 2019. But Opt-Outs' complaints were not filed until April 13, 2022 (AC) and August 3, 2022 (OC)—over three years *after* the Class Plaintiffs first filed a complaint. The Section 18 claims are therefore outside the limitations period.

Tolling cannot salvage the Section 18 claims. Under *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974), the Supreme Court created a special rule to freeze the clock on limitations periods once a class action lawsuit is filed. *Id.* at 554. However, "a class action does not toll a later-filed individual claim unless the class action provides defendant with 'notice of the type and potential number of claims against it.'" *In re BP p.l.c. Sec. Litig.*, 51 F. Supp. 3d 693, 699 (S.D. Tex. 2014). This notice requirement is met when claims rely on "the same evidence, memories, and witnesses as the subject matter of the original class suit." *American Pipe*, 414 U.S. at 562 (Blackmun, J., concurring). The purpose of this requirement is to "ensure that the initial suit gives the defendants enough

---

████████████████████████████████████ Ex. A (Karr Dep. Tr.) at 137:24-138:8, 146:3-13.
[48] Dkt. 1 at ¶¶ 82-84.
[49] *See* AC at ¶¶ 223-230; OC at ¶¶ 238-246.

notice of the claims against them that they can adequately preserve evidence and develop their litigation strategy." *Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, 2011 WL 13220509, at *3 (C.D. Cal. Aug. 22, 2011).

The Class Plaintiffs do not raise Section 18 claims, and their Section 10(b) claims cannot toll the Section 18 claims under *American Pipe* because the two causes of action are distinct and do not rely on "the same evidence, memories, and witnesses." *Id.* (citation omitted). This is not a novel assertion. Numerous courts have reached the same conclusion based on at least two substantive differences between the legal standards governing the two claims.

*First*, as set forth above, Section 18 requires a showing of actual reliance by plaintiffs bringing suit, whereas Section 10(b) claims can be based on "constructive or presumed reliance or reliance based on the fraud-on-the-market theory." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 816 (S.D. Tex. 2007). Thus, the "evidence, memories, and witnesses" bearing on a Section 18 claim are necessarily different from those required for a Section 10(b) claim. That "meaningful distinction[]" has led courts to find that Section 10(b) claims do not toll Section 18 claims. *Wyser-Pratte Mgmt. v. Telxon Corp.*, 2003 WL 25861087, at *19 (N.D. Ohio June 4, 2003); *see also Children's Hosp.*, 2011 WL 13220509, at *3 (because "Section 18's actual reliance requirement precludes class certification," a Section 10(b) class action "does not put a defendant on notice that it will be called upon to defend a § 18 claim").

*Second*, Section 10(b) and Section 18 require different proof with respect to a defendant's state of mind. While a Section 10(b) plaintiff must plead scienter with

particularity and "allege acts indicating an intent to deceive, manipulate, or defraud," "an intent to deceive is not an element of a [S]ection 18 claim" that a plaintiff must prove. *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 55 (D. Mass. 1995); *see also In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 375 (S.D. Tex. 2011), *aff'd*, 464 Fed. Appx. 334 (5th Cir. 2012).  Instead, under Section 18, once a plaintiff proves a material misrepresentation, the burden ***shifts***, and a defendant may avoid liability by proving that he acted in good faith and had no knowledge that the statement was false or misleading.  15 U.S.C. § 78r(a); *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 246 (D. Mass. 2011); *see also Lindner*, 880 F. Supp. at 55.  This is another meaningful difference that precludes *American Pipe* tolling.  *Id.*

This distinction requires Section 18 defendants to advance evidence different from that required under Section 10(b).  While a 10(b) defendant can point to an absence of evidence of scienter (on which plaintiff bears the burden) to avoid liability, a Section 18 defendant bears the burden to prove his own good-faith state of mind to prevail.  Put differently, supporting the Opt-Outs' Section 18 claims requires that a defendant find (and preserve) evidence of good faith, whereas a Section 10(b) defendant need not necessarily do so.  As a result, a Section 18 defense requires grappling with a "shifting burdens of proof [and] documents, facts, and legal theories not central to the [Section 10(b) claim in the] class complaint."  *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 2003 WL 25861087, at *20 (N.D. Ohio June 4, 2003), *aff'd*, 413 F.3d 553 (6th Cir. 2005) (declining to toll later-filed Section 18 claim based on earlier class claims under §§10(b) and 20(a)).  These differences mean that Section 10(b) claims cannot toll claims under Section 18.

Regardless, even if the *American Pipe* doctrine allowed Section 10(b) claims to toll Section 18 claims, such tolling should not apply here, given that Opt-Outs' specific claims against Messrs. Dimitrievich and McMullen are based on new alleged misrepresentations that the Class never pled.   There is **no overlap** between the alleged 2017 10-K misstatements alleged against Messrs. Dimitrievich and McMullen in the Class Complaint and those asserted against them in Opt-Outs' Complaints.[50]  Because the Opt-Outs' claims rely on *different* memories, evidence, and witnesses than the alleged misstatements supporting Class Plaintiffs' claims, the Opt-Outs cannot satisfy *American Pipe*.

In its June 7 Opinion, the Court reserved judgment on this issue, ruling that it was possible that tolling might apply.[51]  In support, the Court relied on a decision that tolled claims under the Americans with Disabilities Act for disparate treatment based on prior class claims of disparate impact—two claims for which it is "'well established'" that the evidence often overlaps.[52]  *Zaragoza*, 606 F. Supp. 3d at 435.  Defendants respectfully submit that Sections 10(b) and 18 are not likewise intertwined.  As set forth above, this is not a case involving "two distinct causes of action" that "share the same or very similar elements, thus providing Defendant[s] with notice and allowing [them] to rely on the same evidence and witnesses" to defend themselves.  *Id.*  Thus, the Section 18 claims are barred.

## C.     The Section 18 Claims Are Barred By the Good Faith Defense

In the alternative, if Opt-Outs invoke *American Pipe* tolling by arguing that the

---

[50]    *Compare* TAC at ¶¶ 217, 219 with AC at ¶¶ 175, 177, 206, 208, 223 and OC at ¶¶ 184, 186, 222, 224, 239.

[51]    Dkt. 343 at 13-14 (citing *Zaragoza v. Union Pac. R.R.*, 606 F. Supp. 3d 427 (W.D. Tex. 2022)).

[52]    *Id.* at 13 (citing *Zaragoza*, 606 F. Supp. 3d at 434-35).

*same* evidence bears on Class Plaintiffs' Section 10(b) claims and Opt-Outs' Section 18 claim, that is a concession that the Section 18 claims should fail for the same reasons as the Section 10(b) claims. Under Section 18, a defendant can rebut liability by showing he "acted in good faith and had no knowledge that [an alleged mis]statement was false or misleading." *Spec. Situations*, 775 F. Supp. 2d at 246 n.171 (citations omitted).

As set forth in their Motions for Summary Judgment as to the 10(b) Claims, there is no evidence that Defendants harbored any intent to commit fraud. The only evidence on this point—Messrs. Dimitrievich's and McMullen's testimony—establishes that they acted "in good faith and had no knowledge that [any] such [alleged mis]statement was false or misleading." 15 U.S.C. § 78r(a).[53] Thus, if Opt-Outs argue that the same evidence bears on the Section 10(b) and Section 18 claims, Defendants' good faith is established, and the Section 18 claim must be dismissed.

## II.   THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED

### A.   Opt-Outs Fail to Plead or Prove Intent to Induce Reliance, or Reliance

Opt-Outs' claims for common law fraud and violations of the Texas Business and Commerce Code § 27.01 should be dismissed for the reasons set forth in Defendants' Motions for Summary Judgment on the Section 10(b) and 20(a) claims. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177, 180 (5th Cir. 1997) (dismissing common law and

---

[53]   *See* Ex. B (Dimitrievich Dep. Tr.) at 169:17-25 ████████████████████████████████████████

████████████████████; Ex. I (McMullen Dep. Tr.) at 116:20-22, 315:1-323:20 ████████████

████████; Ex. J ████████████████████████████████

████████████████████████████████████████

10(b) claims where "the state law claims rely upon the same misrepresentations as the federal claims" and thus the Court need not "distinguish between them here").

Regardless, Opt-Outs' state law claims cannot survive for additional reasons—lack of intent to reduce reliance and lack of actual reliance.  Common law fraud claims require: (a) a material misrepresentation; (2) knowledge or recklessness as to the falsity of the misrepresentation; (3) intent to induce reliance on the statement; (4) justifiable reliance; and (5) injury.  *Ernst & Young*, 51 S.W.3d at 578.  Similarly, statutory fraud requires a "false representation of past or existing material fact, when the false representation is:  (a) made for the purpose of inducing that person to enter into a contract; and (b) relied on by that person in entering into that contract."  Tex. Bus. & Com. Code Ann. § 27.01(a).  Because Opt-Outs have neither pleaded, nor adduced evidence, that these Defendants intended to, or did, induce reliance, the state fraud claims should be dismissed.[54]

### 1.     No Allegations or Facts Support An Intent to Induce Reliance

Opt-Outs have not alleged or adduced any evidence that Messrs. Dimitrievich and McMullen harbored intent to induce reliance on the alleged misrepresentations in the 2017 10-K.  To establish "intent to induce reliance" for both statutory and common law fraud, a plaintiff must plead and prove that the "'maker of the [alleged] misrepresentation … ha[d] information that would lead a reasonable man to conclude that there is ***an especial***

---

[54]   Count VI of Orbis's complaint, purports to name "Board Defendants" as defendants, though this appears to be a typo, as none of the allegations describe conduct by Messrs. Dimitrievich or McMullen.  To the extent Orbis intends to pursue a claim for common law fraud based on statements that "certain Defendants" made to Orbis during four meetings and conference calls prior to the Merger, that claim fails.  OC ¶¶ at 443-46.  The Orbis complaint contains *no* allegations suggesting that Messrs. Dimitrievich or McMullen said or did anything at these meetings. *Compare* OC at ¶¶ 436-446 (Count VI) and *id.* at ¶¶ 272-275, 276-279, 281, 283-284, 286-292.  Orbis's complete failure to plead any facts alleging that Messrs. Dimitrievich or McMullen made the statements alleged in support of Count IV—or that they participated in or even *knew about* these meetings—warrants dismissal of Count VI.

*likelihood* that [the alleged misrepresentation would] reach those persons and [] influence their conduct.'" *Ernst & Young*, 51 S.W.3d at 581 (quoting Restatement (Second) of Torts § 531 cmt. d (Am. L. Inst. 1977)); *Hawkins v. Walker*, 233 S.W.3d 380, 391 (Tex. App.—Fort Worth 2007, no pet.) (statutory fraud requires an "especial likelihood" that a representation would influence a third party's conduct). Merely pleading and proving that a defendant signed a public filing, without more, is insufficient. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 219 (Tex. 2011).

*Exxon* is instructive. There, an oil and gas lessee sued a former lessee for fraud based on its filing of false public reports. *Id.* at 200. The Supreme Court of Texas affirmed a directed defense verdict on the fraud claim, declining to "hold that public filings … alone satisfy the intent-to-induce reliance element of fraud." *Id.* at 201-02, 217. The court reasoned that "if the evidence shows only that [the former lessee] made material misrepresentations in its plugging reports … and knew that lessors and operators in the future may rely on the filings, such evidence would fail as a matter of law" because "[s]uch a holding would open the cause of action to any person who subsequently relied on any public filings … with few limits in sight." *Id.* at 219 (citing *Ernest & Young*, 51 S.W.3d at 581-82). Here, Opt-Outs rely exclusively on signatures to the 2017 10-K to establish intent to induce reliance. That is insufficient.

### 2.  Opt-Outs Did Not Rely On the Alleged Misstatements

Critically, Opt-Outs also cannot establish "justifiable reliance" because, as set forth above, it is undisputed that Opt-Outs did not ***actually rely*** on any of the alleged misstatements in the 2017 10-K. *Supra* at 13-18. The state law claims must be dismissed.

**B.**     **"Holder" Claims Are Not Recognized Under Texas Law**

The state law claims should also be dismissed to the extent Opt-Outs seek damages

from Defendants for the decrease in value of stock bought before the date of the 2017

10-K.[55]   Such impermissible "holder" claims "allege[] that the defendant wrongfully

induced the plaintiff to ***continue holding*** his stock"—not to buy or sell it—"and seeks as

damages the diminished value of the stock allegedly caused by the defendant's

misrepresentation." *In re Enron*, 2007 WL 789141, at *14 n.4 (emphasis added).

Neither Texas common law nor statutory fraud recognize "holder" claims. *In re*

*Enron Corp. Sec., Derivative & ERISA Litig.*, 490 F. Supp. 2d 784, 803, 818-20 (S.D. Tex.

2001) ("holder" claims are outside of Section 27.01); *In re Enron*, 2007 WL 789141 at *3,

13 (holder claims not recognized under Texas common law); *In re WorldCom, Inc. Sec.*

*Litig.*, 2006 WL 752770, at *2-3 (S.D.N.Y. March 24, 2006) (similar).   Section 27.01 in

particular "requires that a contract be entered into as a result of the misrepresentation,"

which necessarily precludes "actions based on holding stock." *Barsky v. Arthur Andersen*,

LLP, 2002 WL 32856818, *3 n.3 (S.D. Tex. Aug. 15, 2005).   Likewise, federal courts

outside of Texas (which Texas courts have generally adhered to) reject such claims.[56]

The sole Texas Supreme Court decision to address the issue, *Grant Thornton LLP*

*v. Prospect High Income Fund*, casts significant doubt on whether such claims will ever be

cognizable in Texas.   314 S.W.3d 913, 926, 930 (Tex. 2010).   There, the court rejected a

holder claim that did not involve "a direct communication between the plaintiff and the

---

[55]   *See* Ex. L (Alyeska Ex. 23) ███████████████████████████
███████ ; Ex. M (Orbis Ex. 5) ███████████████
[56]   Dkt. 265 at 17-19 (collecting cases).

defendant" without resolving the broader viability of holder claims in general.  *Id*. at 930.

However, the court recognized the U.S. Supreme Court's refusal to acknowledge holder

claims, as well as the Texas district courts' prediction that the Texas Supreme Court would

foreclose or limit such claims.  *Id.* at 926; *see also Blue Chip Stamps v. Manor Drug Stores*,

421 U.S. 723, 734-35 (1975) (rejecting holder claims as "speculative").

This Court permitted Opt-Outs' holder claims to proceed because Texas might

eventually recognize them,[57] but as of this motion, they have not been accepted.  As the

Fifth Circuit held, "a federal court exceeds the bounds of its legitimacy in fashioning novel

causes of action not yet recognized by the state courts."  *In re DePuy Orthopaedics, Inc.,*

*Pinnacle Hip Implant Prod. Liab. Litig*., 888 F.3d 753, 781 (5th Cir. 2018).

### C.    The State Law Claims Are Barred By SLUSA

Finally, Opt-Outs' state law claims are preempted under SLUSA.  SLUSA applies

when:  "(1) the action is a covered class action; (2) the claims are based on state law; (3) the

action involves one or more covered securities; and (4) the claims allege a

misrepresentation or omission of material fact in connection with the purchase or sale of

the security."  *In re Enron Corp. Sec.*, 535 F.3d 325, 338-39 (5th Cir. 2008) *("Enron II")*

(citations omitted).  This Court previously acknowledged that Element 1 is met, and

Opt-Outs do not contest Elements 3 and 4.[58]

Element 2, which requires that the claims be "based on state law," is also satisfied.

While this Court previously held that Element 2 was not met because only thirteen

---

[57]  Dkt. 343 at 9.
[58]  *See id.* at 5-6; *see also* Dkt. 284 at 14-18.

plaintiffs asserted state law claims,[59] the number of plaintiffs involved in an action is not relevant to Element 2.  Instead, only Element 1 (which the Court has already deemed satisfied) requires consideration of the number of plaintiffs,[60] and even that element does not require a specific number of plaintiffs to assert state-law claims.  *Enron II*, 535 F.3d at 338-39, 342 (citing 15 U.S.C § 78bb(f)(5)(B)(ii)).  Indeed, as this Court acknowledged, several federal courts have held that if Element 1 is met, the number of plaintiffs asserting state law claims is irrelevant.[61]

Defendants respectfully submit that, consistent with the Court's prior opinion, there is good reason to revisit the question of whether Element 2 is met.  The three cases on which the Court relied in declining to dismiss under SLUSA are distinguishable, as none addresses Element 2 or otherwise holds that a specific number of plaintiffs must assert state law claims for SLUSA to apply.  Instead, each case addresses Element 1, not Element 2:

- *In re Enron Corporation Securities, Derivative & "ERISA" Litigation ("Enron ERISA")*, 2002 WL 32107216 (S.D. Tex. Aug. 12, 2002), addressed whether eight actions filed in state court could be removed to federal court under SLUSA, which designates federal court as the exclusive forum for actions meeting the four-part test described above.  The court analyzed whether the state court actions qualified as "covered class actions," as required for proper removal.  Because there were only eight plaintiffs at the time of removal, while a "covered class action" requires fifty plaintiffs, the Court held that SLUSA did not apply.  *Id.* at *5.

- Similarly, *In re WorldCom, Inc. Securities Litigation,* 308 F. Supp. 2d 236

---

[59]  Dkt. 343 at 8.
[60]  *See id.* at 5-6.
[61]  Dkt. 343. at 7 (citing *In re Fed. Nat'l Mortg. Ass'n Secs., Deriv. & ERISA Litig.*, 503 F. Supp. 2d 25 31-33 (D.D.C. 2007) and *Gordon Partners v. Blumenthal*, 2007 WL 431864, at *18-19 (S.D.N.Y. Feb. 9, 2007)); *see also Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1346-47 (11th Cir. 2008) (affirming dismissal under SLUSA of state law claims where plaintiff's case was consolidated with federal actions such that number of plaintiffs exceeded fifty); *In re AOL Time Warner, Inc. Secs. Litig.*, 503 F. Supp. 2d 666, 672 (S.D.N.Y. 2007) (dismissing under SLUSA consolidated state law claims by individual plaintiffs that totaled over fifty).

(S.D.N.Y. 2004), also concerned whether the case was a "covered class action" based on the number of plaintiffs in the action—not whether a sufficient number of plaintiffs had asserted state law claims. *Id*. at 247.

- Finally, in *Enron II*, the Fifth Circuit considered whether a group of lawsuits removed to federal court on non-SLUSA grounds and subsequently consolidated with other securities cases qualified as a "covered class action." 535 F.3d at 340. To satisfy the definition of a "covered class action," the cases had to be "joined, consolidated, or proceeding as a single action for any purpose." *Id*. *Enron II* held that the suits satisfied the definition because they were proceeding as a "single action" in federal court, given that the plaintiffs "acted in unison throughout the litigation." 535 F.3d at 340. The court rejected an argument that the plaintiff-count should exclude those who were consolidated with other plaintiffs into an out-of-state federal multi-district litigation ("MDL") and noted that several plaintiffs *chose* to file in federal court, or ended up there through direct removal, rather than via consolidation with an out-of-state MDL. *Id*. at 342. Like *Enron ERISA* and *WorldCom, Enron II* did not require a minimum number of plaintiffs to assert state law claims before SLUSA applied. *Id*.

Thus, none of these cases required a minimum number of plaintiffs to assert state-based claims in order for SLUSA to apply.

In fact, rather than detracting from Defendants' arguments, these cases underscore another reason that SLUSA preclusion should apply: Opt-Outs' own actions triggered its application. Similar to several of the plaintiffs in *Enron II*, Opt-Outs "cho[se] to proceed" with state and federal claims "as a single action" that they direct[ly] fil[ed]" in federal court, alongside the class members. Opt-Outs also chose to consolidate their actions with the class. They cannot now "brush aside their own contribution to SLUSA preemption" by arguing that at least fifty plaintiffs must assert state law claims. *Id*. Opt-Outs can no more pursue state law claims than can class members.

## CONCLUSION

Defendants respectfully request dismissal of the Section 18 and state law claims.

Dated:    August 31, 2023

Respectfully submitted,

/s/ *Christopher Porter*
(signed by permission of Attorney-in-Charge)

Karl S. Stern (Attorney-in-Charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 /
Facsimile:   (713) 221-7100
Email:
karlstern@quinnemanuel.com
christopherporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100
Email:
michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
courtneywhang@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT PARTNERS, LLC AND DON DIMITRIEVICH**

Kenneth A. Young (Attorney-in-Charge)
Texas Bar No. 25088699
S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182

26

S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, Texas 77002
Telephone:     (713) 836-3600
Facsimile:      (713) 836-3601
Email:
kenneth.young@kirkland.com
nick.brown@kirkland.com

**COUNSEL FOR BAYOU CITY
ENERGY MANAGEMENT, LLC
AND WILLIAM MCMULLEN**

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served under seal by the Court's ECF system,

and a copy has been served by email to counsel for all parties on August 31, 2023.

<u>/s/ *Christopher Porter*       </u>
By:  Christopher Porter