# **<u>Exhibit J</u>**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IN RE ALTA MESA RESOURCES, INC.
SECURITIES LITIGATION

Case No. 4:19-cv-00957

Hon. George C. Hanks, Jr.

**BAYOU CITY ENERGY MANAGEMENT, LLC'S OBJECTIONS AND RESPONSES
TO CLASS PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 26 and Rule 33 of the Federal Rules of Civil Procedure, Bayou City Energy Management, LLC ("Bayou City"), makes the following objections and responses to Class Plaintiffs' ("Class Plaintiffs") First Set of Interrogatories Directed to Bayou City Energy Management, LLC (the "Requests" and individually, a "Request"). Each response to a particular Request is made subject to the objections and conditions within that response, as well as the General Objections, Objections to Definitions, and Objections to Instructions.

## GENERAL OBJECTIONS

The following General Objections apply to each Definition, Instruction, and Interrogatory, and shall have the same force and effect as if fully set forth in the response to each Request. These limitations and objections, which are part of Bayou City response to each Request, are set forth herein to avoid the duplication of restating them for each individual response. While Bayou City may refer to certain General Objections in its Specific Objections for the purposes of emphasis and clarity, failure to restate any General Objection is not a waiver of any General Objection.

1.      Bayou City objects to each Request, Definition, or Instruction to the extent that it seeks to impose a burden or requirement in addition to, different from, or broader than those in the

Federal Rules, the Local Rules of the United States District Court for the Southern District of Texas, or the applicable Procedures, Standing Orders, or any other Orders of the Court (collectively, the "Applicable Rules").  Bayou City will construe the Requests, Definitions, and Instructions in accordance with the Applicable Rules.

2.     Bayou City objects to the Requests to the extent that they incorporate legal conclusions or factual characterizations.  Bayou City does not admit the propriety or correctness of any legal conclusion or factual characterization in responding or objecting to any Request. Bayou City's responses and objections to the Requests shall not be construed in any way as an admission that any fact or circumstance alleged in any Request exists or that the Class Plaintiffs' characterization of any fact or circumstance is either factually or legally binding on Bayou City. Unless expressly indicated, Bayou City's responses do not admit, concede, state, imply, or adopt any legal conclusion or factual characterization.

3.     Bayou City objects to the Requests to the extent that they misstate, misquote, or otherwise mischaracterize the contents of documents relevant to Plaintiffs' claims, including, but not limited to, the proxy statement filed by Silver Run Acquisition Corporation II on January 18, 2019."

4.     Bayou City objects to the Requests to the extent that they seek confidential information, including, without limitation, information that is proprietary, commercially sensitive, competitively significant, protected health information, or personal information related to Bayou City, its agents or its representatives, or information that is subject to other protective orders, non-disclosure agreements, or other confidentiality obligations, or information that is protected by other privacy protections provided by applicable laws, rules, and/or regulations.  Bayou City objects to the Requests to the extent that they purport to require Bayou City to provide information

without regard to the limitations of an appropriate protective order sufficient to preserve the confidentiality of sensitive commercial, competitively significant, protected health, or personal information.

5.      Bayou City objects to the Requests to the extent that they purport to require Bayou City to respond on behalf of any person or entity other than Bayou City.  Bayou City responds to these Requests on behalf of itself only.

6.      Bayou City's responses reflect only the current state of its knowledge and information after reasonable investigation.  Further investigation may identify additional facts or information, add meaning to known facts, and establish entirely new factual conclusions and contentions.  This may lead to additions, changes, or variations from the responses set forth herein. Consequently, Bayou City reserves the right to: (i) revise, correct, supplement, amend, modify, or clarify its responses as additional information is discovered; (ii) provide additional responsive information; (iii) modify its objections on grounds including, but not limited to, relevance, undue burden, and/or proportionality; (iv) object to further discovery; and (v) challenge the authenticity or admissibility of any information.  Bayou City further reserves the right to make any use of and/or introduce in any hearing or at trial, documents, communications, or information not known to exist at the time of production, including, but not limited to, documents obtained or identified in the course of discovery in this litigation.

7.      To the extent Bayou City responds to any Request, Bayou City does so without waiving its right to object to the admissibility of any document or information at any hearing.

8.      Bayou City objects to each Request to the extent that it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, including but not limited to, the joint-defense or common-interest privilege,

or that would result in disclosure of counsel's mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research, or legal theories concerning this or any other litigation.  None of Bayou City's responses are intended as, nor should be construed as, a waiver or relinquishment of the attorney-client privilege, the work-product doctrine, the common-interest doctrine, or any other applicable privilege or immunity.

9.      Bayou City objects to each Request to the extent that it requires Bayou City to make a legal or expert conclusion, opinion, analysis, or theory.

10.      Bayou City objects to each Request to the extent that it seeks information relating to non-parties to this action, including any entities not affiliated with Bayou City.  Bayou City objects to each Request to the extent that it purports to require Bayou City to respond on behalf of any person or entity other than Bayou City.  Bayou City responds to the Notice on behalf of itself only.

11.      Bayou City objects to each Request to the extent that it seeks information that is not within Bayou City's knowledge, or is already within Class Plaintiffs' knowledge or is available from another source that is less burdensome and more convenient.

12.      Bayou City objects to each Request to the extent that it is duplicative, cumulative, and/or redundant of other Request or requests made in connection with these proceedings, or seeks information that could be obtained through other discovery methods, is in the public domain, or is accessible to all parties.

13.      Bayou City objects to each Request to the extent that it seeks disclosure from which Bayou City is entitled to protection due to annoyance, embarrassment, oppression, or undue burden or expense.

14.     Bayou City objects to each Request to the extent that it seeks information that contains sensitive, confidential, competitive, developmental, or commercial research information that is of a proprietary nature or is protected by other privacy protections provided by applicable laws, rules, and/or regulations.  To the extent any such information is disclosed in response to the Notice, such disclosure shall be subject to the operative Protective Order or the Applicable Rules.

15.     Bayou City objects to the extent that any Request mischaracterizes the position that Bayou City has taken in this case.  Nothing in these objections or responses shall be construed to imply that Bayou City adopts such characterizations.  Furthermore, Bayou City objects to the extent that Plaintiffs assume facts or legal conclusions that have not been established or are in dispute.  Bayou City's responses in no way are to be considered an admission of any fact or legal conclusion contained within the Requests.

16.     Bayou City objects to each Request to the extent that it is vague, ambiguous, overbroad, unduly burdensome, or seeks information not relevant to the claims or defenses or that is not proportional to the needs of the case.

17.     Bayou City objects to each Request to the extent that it seeks information that is not reasonably accessible or that is not available after a reasonable and diligent search for relevant and non-privileged information.

## OBJECTIONS TO DEFINITIONS

The following Objections to the Definitions form a part of, and are hereby incorporated into, each and every response to the Requests as set forth below to the extent applicable.  Nothing in the Specific Objections and Responses to Interrogatories should be construed as a waiver of these Objections to Definitions.

1.     Bayou City objects to the definition of "Alta Mesa" as unduly burdensome and overly broad.  Bayou City is not in a position to ascertain each entity or individual that has ever

5

been, or purported to be, connected to Alta Mesa Resources, Inc., at any point in time, including its "subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, investment funds, present and former officers, directors, employees, representatives, agents, and all other Persons acting or purporting to act on [its] behalf." Bayou City cannot be answerable for entities and individuals that are not Bayou City and that are beyond its control. Bayou City will interpret "AMR" to mean Alta Mesa Resources, Inc., Alta Mesa Holdings, and Kingfisher (as defined below), and any of their known agents.

2.     Bayou City objects to the definition of "Bayou City Energy" as overly broad, unduly burdensome, vague, and ambiguous. Bayou City is not in a position to ascertain each entity or individual that has ever been, or purported to be, connected to it at any point in time, including any "subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, investment funds, present and former officers, directors, employees, representatives, agents, and all other Persons acting or purporting to act on [its] behalf." Bayou City cannot be answerable for entities and individuals that are not Bayou City and that are beyond its control. Accordingly, Bayou City will interpret "Bayou City" to mean Bayou City, and the entities or individuals that it knows are its representatives or agents.

3.     Bayou City objects to the definition of "Defendants" as overly broad and unduly burdensome. Bayou City is not answerable for entities and individuals that are not Bayou City and that are beyond its control, nor can it produce materials that are beyond Bayou City's possession, custody, or control. Bayou City will respond to Requests for information from or regarding "Defendants" as limited to include only materials in Bayou City's possession, custody, or control under the Applicable Rules, and Bayou City will not respond on the behalf of any Defendant other than Bayou City.

4.      Bayou City objects to the definition of "Document" on the grounds that the definition incorporates the definition of "Communication"—a term that has not been defined in the Requests.

5.      Bayou City objects to the definitions of "Identify" as unduly burdensome, including because they require Bayou City to provide addresses and employment history of individuals. Bayou City will provide information sufficient to identify individuals, entities, and documents.

6.      Bayou City objects to the definition of "Kingfisher" as overly broad, unduly burdensome, vague, ambiguous, and unclear to the extent that it defines "Kingfisher" to include "Kingfisher Midstream LLC and any of its subsidiaries."   Bayou City is not in a position to ascertain each entity or individual that has ever been, or purported to be, a subsidiary of Kingfisher Midstream LLC.  Bayou City will interpret "Kingfisher" to mean Kingfisher Midstream LLC and any of its known agents.

7.      Bayou City objects to the definition of "Person" to the extent that it encompasses an unspecified and unknown "business, legal or governmental entity, or association."

8.      Bayou City objects to the definition of "Production Data" as overly broad, unduly burdensome, vague, and ambiguous because the definition includes "all data derived from wells, leases, and mineral interests within STACK . . . ."  Such a broad definition is not tailored to any claim or defense to this securities fraud action and demonstrates Plaintiffs' failure to propound requests adhering to Federal Rule of Civil Procedure 26(b)(1), which permits a party to request only "matter that is relevant to any party's claim or defense and proportional to the needs of the case," and Rule 34(b)(1)(A), which requires that each request "describe with reasonable particularity each item or category of items to be inspected."

7

9.      Bayou City objects to the definition of "You" or "Your" as overly broad, unduly burdensome, vague, and ambiguous for the reasons set forth above.  Accordingly, Bayou City will interpret "<u>You</u>" and "<u>Your</u>" to mean Bayou City, and the entities or individuals that it knows are its representatives or agents.

## <u>OBJECTIONS TO INSTRUCTIONS</u>

The following Objections to Instructions form a part of, and are hereby incorporated into, each and every response as set forth below to the extent applicable.  Nothing in the Specific Objections and Responses to Interrogatories should be construed as a waiver of these Objections to Instructions.

1.      Bayou City objects to the Instructions to the extent that they seek to impose obligations greater than those set forth in the Applicable Rules.  Bayou City will designate and prepare a corporate representative deponent in good faith and in a reasonable manner consistent with the Applicable Rules.

2.      Bayou City objects to Instruction 2 as seeking to impose burdens or requirements in addition to, different from, or broader than those set forth in the Applicable Rules to the extent that it requires Bayou City to "specify the portion of the interrogatories that You claim You are unable to answer fully and completely; state the facts on which You rely to support Your contention that You are unable to answer the interrogatories fully and completely; and state what knowledge, information, and believe You have concerning the unanswered portion of the interrogatories."  Bayou City will answer in a manner consistent with the Applicable Rules.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify and quantify all funds, securities, interests, and other assets or things of value You contributed to the Business Combination, whether directly or indirectly, including through High Mesa.

### RESPONSE TO INTERROGATORY NO. 1:

Bayou City objects to this interrogatory as vague, ambiguous, and unclear, particularly to the extent that it requests identification of all "things of value" that it purports Bayou City contributed to the Business Combination. Additionally, Bayou City objects that this Request is based on a false premise that Bayou City contributed to the Business Combination. Bayou City further objects that this Request is overbroad and unduly burdensome in that it requests "all funds, securities, interests, and other assets" contributed to the Business Combination, "whether directly or indirectly."

Without waiving the foregoing, Bayou City did not directly contribute to the Business Combination. Bayou City owned a minority investment in nonparties High Mesa Holdings GP, LLC and High Mesa Holdings LP (together, "High Mesa"), entities that had interests in Alta Mesa Holdings, LP ("AMH"). In January of 2016, BCE-STACK Development LLC, a fund advised by Bayou City, entered a joint development agreement with Oklahoma Energy Acquisitions, LP, a subsidiary of AMH. Under that joint development agreement, Bayou City committed to fund 100% of AMH's working interest share up to a maximum average of $3.2 million in drilling and completion costs per well, or an aggregate limit of up to $64 million per 20-well tranche, in exchange for an 80% working interest in each well. Subsequently, in September of 2016, Bayou City, through its affiliate, BCE-MESA Holdings LLC, purchased 40% of High Mesa preferred stock.

In 2017, as part of the Business Combination, High Mesa contributed its interest in AMH to Silver Run II Opco ("SRII"), Alta Mesa Resource's ("AMR") subsidiary operating company following the Business Combination.  In exchange, High Mesa received an approximate 36.4% voting interest in SRII, which resulted in Bayou City becoming an indirect fractional owner of 17.93% of the equity of AMR after the completed transaction.

**INTERROGATORY NO. 2:**

Identify and quantify all remuneration, compensation and other benefit You received by operation of the Business Combination, whether directly or indirectly, including through High Mesa, including without limitation all cash and securities.

**RESPONSE TO INTERROGATORY NO. 2:**

Bayou City objects to this interrogatory as vague, ambiguous, and unclear, particularly to the extent that it requests identification of all "benefit[s]" that it purports Bayou City received by operation of the Business Combination.  Additionally, Bayou City objects that this Request is based on a false premise that Bayou City received a benefit by operation of the Business Combination.  Bayou City further objects that this Request is overbroad and unduly burdensome in that it requests "all remuneration, compensation and other benefit" that Bayou City allegedly received by operation of the Business Combination, including "through High Mesa, including without limitation all cash and securities."

Without waiving the foregoing, Bayou City did not receive any cash by operation of the Business Combination, indirectly or directly, including through High Mesa.  Cash was distributed to High Mesa in connection with the Business Combination, but *no cash was subsequently distributed to Bayou City after the Business Combination*.  Rather, Bayou City received only an indirect interest in AMR stock held by High Mesa by virtue of Bayou City's direct ownership of a portion of High Mesa and an earn-out entitling High Mesa (and thus Bayou City, indirectly) to additional equity if AMR's stock price were to reach a certain value above the price such stock

was issued as consideration in the Business Combination—an earn-out issuance that never occurred. In other words, Bayou City rolled all of its interests and consideration for the transaction into the equity of AMR, and in fact, never sold a single share or received any cash in respect thereof.

**INTERROGATORY NO. 3:**

Identify and quantify all remuneration, compensation and other benefit You derived from the securities and ownership interests that You received in connection with the Business Combination, including in Alta Mesa, High Mesa and SR Opco II.

**RESPONSE TO INTERROGATORY NO. 3:**

Bayou City objects to this interrogatory as vague, ambiguous, and unclear, particularly to the extent that it requests identification of all "benefit[s]" that it purports Bayou City derived from the Business Combination. Additionally, Bayou City objects that this Request is based on a false premise that Bayou City received a benefit in connection with the Business Combination. Bayou City further objects that this Request is overbroad and unduly burdensome in that it requests "all remuneration, compensation and other benefit" Bayou City allegedly derived in connection with the Business Combination, including in "Alta Mesa, High Mesa or SR Opco II."

Without waiving the foregoing, based on Bayou City's indirect fractional ownership in AMR, Bayou City received one share of AMR Series A Preferred Stock, which provided Bayou City limited voting rights and an entitlement to nominate and elect a single director to the AMR Board. Additionally, High Mesa held 36.4% of the Class C Common stock in SRII, with respect to which Bayou City had an indirect interest. And according to the terms of the Alta Mesa Contribution Agreement, High Mesa had the opportunity to receive additional earn-out consideration after the Business Combination were AMR's stock price to reach a certain value above the price such stock was issued as consideration in the Business Combination—an earn-out

issuance that never occurred.  To the extent that High Mesa received any cash benefit through its ownership interests in AMR, that benefit was never passed to Bayou City.

Beyond its ownership of one share of Series A Preferred Stock, Bayou City did not directly own stock in AMR until August of 2018, when it purchased equity in AMR on the open market following the Business Combination.  Following its direct purchase, Bayou City never sold a single share of its stock.

**INTERROGATORY NO. 4:**

Identify all litigation and arbitration proceedings initiated and all claims that have been asserted or settled between You on the one hand and any other Defendant or Defendants or bankruptcy trustees of Alta Mesa, High Mesa or Kingfisher on the other.

**RESPONSE TO INTERROGATORY NO. 4:**

Bayou City objects that this Request is unduly broad in that it requests "all claims that have been asserted or settled" between Bayou City and "any other Defendant or Defendants or bankruptcy trustees of Alta Mesa, High Mesa or Kingfisher."  Bayou City further objects that this Request is irrelevant and beyond the scope of the claims at issue.

Without waiving the foregoing, Bayou City identifies *In re: High Mesa, Inc., et al.*, Case No. 30-30602 in the United States Bankruptcy Court Southern District of Texas Houston Division, *Murray v. Ellis et. al.*, Case No. 22-03011 in the United States Bankruptcy Court Southern District of Texas Houston Division, and Murray v. Chapelle, et al., Case No. 22-03012 in the United States Bankruptcy Court Southern District of Texas Houston Division.

**INTERROGATORY NO. 5:**

Identify and quantify all remuneration, compensation and other benefit You have paid or provided to William McMullen, Andrew Koehler and Mark Stoner from January 1, 2017 through the present, broken down by calendar year, source, and type, e.g. salary, wage, commission, bonus, reimbursement of expenses, including specifically any such remuneration, compensation or other

benefit specifically related to AMH, KFM, or Alta Mesa, including the performance, purchase, sale, or price thereof, whether explicit or implied, whether direct or derived.

## RESPONSE TO INTERROGATORY NO. 5:

Bayou City objects that this Request is overly broad and unduly burdensome in that it seeks "all remuneration, compensation and other benefit" paid or provided to William McMullen, Andrew Koehler, and Mark Stoner from January 1, 2017 through the present.  Bayou City further objects to this Request as overly broad and unduly burdensome because it seeks information relating to "salary, wage, commission, bonus, [and] reimbursement of expenses," including any benefits relating to "performance, purchase, sale or price thereof, whether explicit or implied, whether direct or indirect," and seeks information extending far beyond the close of the Business Combination.  The purported value of Plaintiffs' Request is greatly outweighed by the burden of Bayou City's collection and production of this information.  Bayou City also objects that this Request is irrelevant and not tailored to any claim or defense in this securities fraud action.  The salary, wage, and purported commission, bonuses, or reimbursement of expenses for non-parties Andrew Koehler and Mark Stoner is not relevant to Plaintiffs' asserted claims against Bayou City of fraud and control.  Additionally, Defendant William McMullen's salary and wage are irrelevant to Plaintiffs' asserted claims or defenses.  Bayou City objects that Plaintiffs' Request contravenes Federal Rule of Civil Procedure 26(b)(1), which permits a party to request only "matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Without waiving the foregoing, Bayou City responds only to the portion of the Request that seeks information regarding Mr. McMullen's alleged commission or bonus from January 1, 2017 through the present.  Bayou City states that Mr. McMullen received no commission or bonus as part of the Business Combination, either through the completion of the Business Combination, or in connection with any AMR performance metric following the Business Combination.

**INTERROGATORY NO. 6:**

Provide a summary of the operating and financial performance of the assets You bought out of the Alta Mesa bankruptcy through December 31, 2022. The summary must include barrels of oil produced, barrels of oil equivalent produced, operating income, operating expenses and capital expenditures, as well as details regarding the total of oil gas reserves as of December 31, 2022 broken down by proven developed, proven undeveloped, probable and possible.

**RESPONSE TO INTERROGATORY NO. 6:**

Bayou City objects that this Request is irrelevant and not tailored to any claim or defense in this securities fraud action.  Bayou City's assets, purchased long after the Business Combination, are not relevant to Plaintiffs' asserted claims against Bayou City of fraud and control, demonstrating Plaintiffs' failure to propound requests that adhere to Federal Rule of Civil Procedure 26(b)(1), which permits a party to request only "matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Bayou City further objects that this Request is overly broad and unduly burdensome in that it seeks "barrels of oil produced, barrels of oil equivalent produced, operating income, operating expenses and capital expenditures, as well as details regarding the total of oil gas reserves as of December 31, 2022 broken down by proven developed, proven undeveloped, probable and possible."  Bayou City also objects that this Request is particularly burdensome given that the deadline for substantial completion of discovery is over.

Accordingly, Bayou City will stand on its objections and will not respond to this Request.

**INTERROGATORY NO. 7:**

Identify all drafts of the Proxy You or Your counsel received.

**RESPONSE TO INTERROGATORY NO. 7:**

Bayou City objects to this Request to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or protection.  Bayou City further objects to this Request to the extent that it seeks documents that are equally available to Plaintiffs. Bayou City also objects that this Request

is overly broad and unduly burdensome in that Plaintiffs seek documents that Bayou City provided in its June 2021 production.

Without waiving the foregoing, to the extent that Bayou City or its counsel received drafts of the Proxy protected by the attorney-client privilege, the work product doctrine, or the common interest privilege, Bayou City directs Plaintiffs to its privilege log, produced on May 27, 2022. Additional drafts that Bayou City or its counsel received include the following previously produced documents:

- BCE_005895, BCE_005898, and BCE_0005910

- BCE_007880, BCE_0007882, and BCE_0008198

- BCE_0008529 and BCE_0008530

- BCE_0010336 and BCE_0010337

## INTERROGATORY NO. 8:

Identify all information in Your possession that supported (a) Alta Mesa's well spacing assumptions and "base case development concept" of 12 to 14 wells per section, including the results of any spacing or pattern tests and any Production Data that purportedly supported that plan and (b) Alta Mesa's 250 MBO type curve as disclosed to investors on September 14, 2017, including any Production Data that purportedly supported that assumption.

## RESPONSE TO INTERROGATORY NO. 8:

Bayou City objects to this Request to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, common interest privilege, or any other applicable privilege or protection. Bayou City further objects to this Request to the extent that it seeks documents that are equally available to Plaintiffs. Bayou City also objects that this Request is overly broad and unduly burdensome in that the deadline for substantial completion of discovery has passed.

Without waiving the foregoing, Bayou City points Plaintiffs to the following examples of previously produced documents which supported these assumptions.

AMR_SDTX00000160

AMR_SDTX00004597

AMR_SDTX00001788

AMR_SDTX00003607

AMR_SDTX00005210

AMR_SDTX00005773

**INTERROGATORY NO. 9:**

Identify all affirmative defenses You intend to assert at trial and all material facts supporting those affirmative defenses.

**RESPONSE TO INTERROGATORY NO. 9:**

Bayou City objects to this Request as ambiguous, specifically with respect to the undefined term, "material facts."  Additionally, Bayou City objects to the Request as seeking information protected under attorney-client privilege, the attorney work product doctrine, or any other privilege provided by law.  Furthermore, Bayou City objects that this request is premature given that discovery is still ongoing.

Without waiving the foregoing, Bayou City incorporates its filed pleadings and responds as follows:

Bayou City asserts that Plaintiffs' claims are barred in whole or in part because Plaintiffs were both aware of the risks inherent in the uncertain nature of oil and gas exploration and voluntarily assumed those risks when they invested in AMR securities.

Silver Run II issued a proxy statement ("the Proxy") on January 19, 2018, which informed investors of the details of the proposed Business Combination, as well as its inherent risks.  In fact, the Proxy contained over fifty pages of risk factors associated with the deal, including risks that "[o]il and natural gas prices are highly volatile and depressed prices can significantly and adversely

affect Alta Mesa's financial condition and results of operation," and that "Alta Mesa's business strategy involves the use of the latest available horizontal drilling, completion and production technology, which involve risks and uncertainties in their application."  Furthermore, the Proxy contained specific warnings about relying on forecasts and projections, including the following: "Alta Mesa's estimated proved oil and natural gas reserve quantities and future production rates are based on many assumptions that may prove to be inaccurate."  The voluminous and specific risk warnings provided ample notice to Plaintiffs, who nonetheless assumed those risks in investing in the high-risk, high-reward business venture of Alta Mesa.

**INTERROGATORY NO. 10:**

Identify any nonparty witnesses on whose testimony You intend to rely at summary judgment or call as a witness at trial.

**RESPONSE TO INTERROGATORY NO. 10:**

Bayou City objects to this Request as premature. Because discovery is ongoing, further fact-finding, legal research, and analysis is necessary to provide the requested information. Additionally, Bayou City objects to the Request as seeking information protected under attorney-client privilege, the attorney work product doctrine, or any other privilege provided by law. Accordingly, Bayou City stands on its objections and will disclose this information in accordance with the timing outlined on the parties' agreed-upon scheduling order.

DATED: May 18, 2023

/s/ Kenneth A. Young
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699
S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, Texas 77002
Telephone:          (713) 836-3600
Fax:                      (713) 836-3601
Emails:                kenneth.young@kirkland.com
                            nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC and*
*William McMullen*

## CERTIFICATE OF SERVICE

I certify that on May 18, 2023, a true and correct copy of the foregoing was served on Plaintiffs' counsel.

/s/   Nick Brown
Nick Brown