# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> **PUBLIC VERSION OF DKT. 445 FILED SEPTEMBER 28, 2023** |

# CLASS PLAINTIFFS' OPPOSITION
# TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS
# HPS INVESTMENT PARTNERS, LLC, ARM ENERGY HOLDINGS LLC,
# AND BAYOU CITY ENERGY MANAGEMENT LLC

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING ............................................................. 1

STATEMENT OF ISSUE TO BE RULED UPON ......................................................... 1

APPLICABLE LEGAL STANDARD .......................................................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 2

FACTS ........................................................................................................................... 3

    A.    The Pre-2018 Organization and Management of AMH and KFM .............. 3

    B.    The Moving Defendants' Decision to Take AMH and KFM Public ........... 5

    C.    The Moving Defendants' Efforts to Close the De-SPAC Transaction ........ 7

    D.    The Organization and Management of the New Public Entity ..................... 9

ARGUMENT & AUTHORITIES ................................................................................... 11

I.    HPS, BCE AND ARM EACH COULD CONTROL, AND DID CONTROL, THE
JOINT AUGUST 16 AND 17, 2017 PRE-DE-SPAC STATEMENTS BY THE
SPAC, ALTA MESA HOLDINGS, CHAPPELLE AND HACKETT ................. 12

    A.    HPS and BCE Controlled Alta Mesa Holdings and Defendant
Chappelle During the Pre-De-SPAC Portion of the Class Period............... 12

    B.    HPS and ARM Controlled Kingfisher During the Pre-De-SPAC
Portion of the Class Period ......................................................................... 13

    C.    The Moving Defendants Each Controlled the Content of pre-de-
SPAC Public Statements, Including the False and Misleading
August 16, 2017 Press Release and August 17, 2017 Presentation ........... 15

II.    HPS, ARM AND BCE EACH ALSO HAD THE ABILITY TO CONTROL, AND
DID CONTROL, THE FALSE AND MISLEADING OPERATIONAL
INFORMATION AND FORECASTS IN SILVER RUN'S PROXY ................... 17

    A.    HPS, BCE and ARM Had Contractual Rights to Control the Content
of the Proxy ................................................................................................. 17

    B.    Recent Decisions Support Section 20(a) Liability for Entities that
Take Companies Public by way of SPAC.................................................... 19

i

III.   AFTER THE DE-SPAC, THE MOVING DEFENDANTS EACH HAD THE
       ABILITY TO CONTROL, AND DID CONTROL, DEFENDANTS AMR AND
       CHAPPELLE AND THEIR CONTINUED FALSE AND MISLEADING
       PUBLIC STATEMENTS ....................................................................................... 21

       A.   HPS and BCE Continued to Control Alta Mesa After the De-SPAC ......... 21

       B.   ARM Energy Continued to Control and Influence AMR After the
            De-SPAC Through Continued Operational Control of Kingfisher ............. 23

       C.   The Moving Defendants Each Could and Did Control Misstatements
            by Defendants AMR and Chappelle After the De-SPAC .......................... 24

       CONCLUSION ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott v. Equity Grp., Inc.*,
    2 F.3d 613 (5th Cir. 1993) ................................................................................ 13, 20

*Cameron v. Outdoor Resorts of Am., Inc.*,
    608 F.2d 187 (5th Cir. 1979),
    *on rehearing*, 611 F.2d 105 (5th Cir. 1980) ............................................................ 24

*Carlton v. Cannon*,
    No. H-15-012, 2016 WL 3959164  (S.D. Tex. July 22, 2016) ................... 11, 23, 24

*Commodity Futures Trading Comm'n v. Cartu*,
    No. 1:20-CV-908-RP, 2023 WL 5246360 (W.D. Tex. Aug. 15, 2023) ................ 24

*Crawford v. Formosa Plastics Corp.*,
    234 F.3d 899 (5th Cir. 2000) ................................................................................... 1

*Dartley v. Ergobilt Inc.*,
    No. 398CV1442M, 2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ........................ 23

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
    855 F. App'x 902 (5th Cir. 2021) .......................................................................... 23

*G.A. Thompson & Co., Inc. v. Partridge*,
    636 F.2d 945 (5th Cir. 1981) .......................................................................... 11, 13

*Heck v. Triche*,
    775 F.3d 265 (5th Cir. 2014) ................................................................... 11, 17, 19

*In re Arthrocare Sec. Litig.*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010) ................................................................ 20

*In re BP p.l.c. Sec. Litig.*,
    C.A. No. 4:10–md–2185, 2014 WL 4923749 (S.D. Tex. Sept. 30, 2014) ............ 20

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
    No. H-14-3428, 2016 WL 215476  (S.D. Tex. Jan. 19, 2016) ............................... 12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    Nos. MDL-1446, H-01-3624, 2003 WL 230688 (S.D. Tex. Jan. 28, 2003) ... passim

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) .................................................................. 16

*In re SolarWinds Corp. Sec. Litig.*,
    595 F. Supp. 3d 573 (W.D. Tex. 2022) ........................................................... 12, 17

*In re Venator Materials PLC Sec. Litig.*,
    547 F. Supp. 3d 624 (S.D. Tex. 2021) .................................................................. 11

*McIntosh v. Katapult Holdings, Inc.*, No. 21-CV-7251 (JPO),
    2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023) ....................................................... 20

*Moradpour v. Velodyne Lidar, Inc.*,
    No. 21-CV-01486-SI, 2022 WL 19796570 (N.D. Cal. Oct. 12, 2022) ................. 20

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*
    *Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ......................................................................... 13, 21

*One Longhorn Land I, L.P. v. FF Arabian, LLC*,
    No. 4:15cv203-RC-CMC, 2015 WL 7432360 (E.D. Tex. Nov. 23, 2015) ............ 13

*Phoenix Ins. Co., Ltd., v. ATI Physical Therapy, Inc.*,
    No. 1:21-CV-04349, 2023 WL 5748359 (N.D. Ill. Sept. 6, 2023) ....................... 20

*Robertson v. Strassner*,
    32 F. Supp. 2d 443 (S.D. Tex. 1998) .................................................................. 21

*Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*,
    404 F. Supp. 2d 942 (S.D. Tex. 2005) .................................................................. 2

*Ryder v. Union Pac. R.R. Co.*,
    945 F.3d 194 (5th Cir. 2019) ................................................................................ 2

*SEC v. Farmer*,
    No. 4:14–CV–2345, 2015 WL 5838867 (S. D. Tex. Oct. 7, 2015) ........................ 1

*Silsby v. Icahn*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014) ................................................................... 23

*Stahl v. Novartis Pharm. Corp.*,
    283 F.3d 254 (5th Cir. 2002) ................................................................................ 2

*Theodore v. Purecycle Techs., Inc.*,
    No. 6:21-CV-809-PGB-RMN, 2023 WL 4035880 (M.D. Fla. June 15, 2023) ..... 20

*Trendsetter Investors, LLC v. Hyperdynamics Corp.*,
    No. H-06-0746, 2007 WL 172627 (S.D. Tex. Jan. 18, 2007) .............. 11, 13, 14, 16

**Statutes**

17 C.F.R. § 230.405 ........................................................................... 11

**Other Authorities**

H.R. REP. No. 1383, 73rd Cong., 2d Sess. 26 (1934) ....................................... 11

**Rules**

Fed. R. Civ. P. 56........................................................................... 1

## NATURE AND STAGE OF THE PROCEEDING

This is a certified class action pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act.[1] Dkt. 241. The dispute arose in the wake of the catastrophic collapse of Alta Mesa Resources, Inc. ("AMR") within a year after it was taken public on February 9, 2018, at a valuation of $3.8 billion by way of a SPAC named Silver Run. The class includes shareholders who were entitled to vote on the de-SPAC transaction, as well as persons and entities who bought shares in the public SPAC or the successor entity. HPS, BCE and ARM Energy now jointly move for summary judgment on substantially identical grounds to those previously rejected by the Court on their motions to dismiss. Dkts. 157 and 160.

## STATEMENT OF ISSUE TO BE RULED UPON

Are HPS, BCE, and ARM entitled to summary judgment on the control person claims asserted against them under the Exchange Act Section 20(a)?

## APPLICABLE LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists if a reasonable jury could enter a verdict for the nonmoving party." *SEC v. Farmer*, No. 4:14–CV–2345, 2015 WL 5838867 at *5 (S. D. Tex. Oct. 7, 2015). *See, e.g., Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Only when "the non-moving party can point to nothing in the record supporting its claim" should summary judgment be granted. *Stahl v.*

---

[1] A glossary of defined terms and the names of individuals and entities referenced herein is attached as Appendix 1 for the Court's convenience. References to exhibits are designated "PX __" and are attached to the contemporaneously filed declaration of Andrew J. Entwistle (Dkt. 444).

*Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). In determining whether a triable fact issue exists, the Court must view the evidence in the light most favorable to Plaintiffs and draw all reasonable inferences in Plaintiffs' favor. *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019). In doing so, the Court must not make any credibility determinations or weigh the evidence. *Id.*

## SUMMARY OF ARGUMENT

The motion should be denied. As the court has already ruled, Class Plaintiffs state a claim against HPS, BCE and ARM under Section 20(a) of the Exchange Act for their control over primary defendants who knowingly or recklessly made false and misleading statements before and after the de-SPAC (Section 10(b)), and against primary defendants who published the Proxy soliciting shareholder votes for the de-SPAC, which contained false and misleading statements (Section 14(a)). There is no occasion for the Court to revisit its decision on the sufficiency of the pleading, as the Moving Defendants wrongly suggest. Summary judgment concerns the sufficiency of the evidence. *See Stahl*, 283 F.3d at 263.

Moving Defendants also argue that Plaintiffs have not adduced evidence supporting their claims, a disfavored practice. *See Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005) ("[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in the vernacular of federal summary judgment procedure."). However, the record developed in discovery amply demonstrates that HPS, BCE and ARM each had the ability to control, and did control, the false statements of Alta Mesa and its CEO, Defendant

2

Chappelle, both before and after the de-SPAC transaction closed, and each had the ability to control, and did control, the false and misleading statements in the Proxy issued by the SPAC and the Proxy Defendants. As set forth more specifically herein, HPS and BCE exerted control through their ownership interests, board seats, historical operational and financial relationships, and involvement in the company's operations. ARM had control because it operated the "midstream" business (KFM), including providing all the financial modeling and reporting leading to the misstatements about that business. ARM also had pre- and post-de-SPAC ownership interests, and prior to the de-SPAC, two seats on KFM's board.

## FACTS[2]

### A.    The Pre-2018 Organization and Management of AMH and KFM

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

---

[2] Class Plaintiffs incorporate by reference the facts set forth in their contemporaneously filed oppositions to the summary judgment motions filed by Defendants Dimitrievich and McMullen.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

Kingfisher Midstream LLC ("Kingfisher" or "KFM") was an AMH affiliate, founded by HPS, ARM and AMH in 2015, and primarily owned by HPS, with the idea that it could gather, transport and market oil and gas produced by AMH's operations in Oklahoma and, hopefully, that of other upstream companies in the area. PX 180 at 36:18-38:11. ██████████████████████████████

████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

█████████ Kingfisher had no employees and was operated entirely by personnel employed by Moving Defendant ARM Energy, pursuant to the Operator Agreement. *See* PX 104 at 338/396 ("Kingfisher has no employees. Under the Operator Agreement, ARM operates, maintains and administers Kingfisher's operations, and ARM also provides management services to Kingfisher."). ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████ ARM Energy was a part-owner of KFM, and though it did not invest capital, it appointed two directors to KFM's board (out of five), both of whom were employed by ARM. PX 182 at 32:25-33:7; PX 180 at 39:8-16. ARM was, however, "required to go to HPS for important decisions regarding KFM" because HPS was "writing . . . 99 percent of the checks." PX 180 at 137:14-24; *see also* PX 182 at 24:4-10, 177:4-8. HPS had access to all of Kingfisher's information through its close partnership with ARM. *See* PX 182 at 63:4-11; ████████████████████

█████████ High Mesa also partly owned KFM, giving Chappelle, Ellis and BCE an indirect ownership interest and giving HPS an indirect interest in addition to its direct ownership (PX 159), but ARM and HPS could collectively take action with respect to KFM without consulting High Mesa's other owners. PX 180 at 136:9-12; ████████████

## B.     The Moving Defendants' Decision to Take AMH and KFM Public

In late 2016, ██████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

In March 2017, after the Silver Run IPO, BCE's managing partner, McMullen, immediately reached out to Hackett to discuss the possibility of the SPAC acquiring AMH. PX 104 at 183/396; ████████████████████████ After multi-party negotiations among HPS, BCE, ARM, Riverstone, Chappelle and Ellis, ██████████ ████████████████████████████████████ the merger parties agreed to take AMH and KFM public through a "merger" or "de-SPAC" transaction. PX 43. Following the de-SPAC, the SPAC's public shareholders (Class Members in this lawsuit) would have a 27% voting interest in the SPAC, which would be renamed "Alta Mesa Resources, Inc.," and which would itself own 44.2% of AMH and KFM, through a holding company ("Opco"). *See* PX 158. ███████████████

████████████████████████████████████████

██████████████████████████████████████ HPS, BCE, and ARM also collectively held a 50.6% direct economic interest in Opco, in addition to their indirect interest through AMR. PX 158.

On August 16, 2017, AMH and SR II issued a joint press release announcing that AMH and KFM would be acquired by SR II in a transaction valued at $3.8 billion. PX 43. The next day, AMH and SR II jointly released an investor presentation (PX 51, Ex. 99.1), and Chappelle and Hackett released a joint pre-recorded investor call (PX 51, Ex.

99.2). The press release, presentation and recorded call contained allegedly false statements regarding, among other things, AMH's drilling program and plans, number of identified drilling locations, the amount of oil under its acreage and its ability to recover that oil, and KFM's current financial condition, business prospects and operational capabilities.[3] Class Plaintiffs allege that the overall effect of these misstatements was to grossly overstate the value of AMH and KFM. *See* TAC ¶ 12. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

### C.    The Moving Defendants' Efforts to Close the De-SPAC Transaction

Following the announcement, ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[3] *See* TAC ¶¶ 190-197. The Moving Defendants do not contest the alleged primary violations. Thus, Class Plaintiffs need not address the voluminous evidence of those violations herein.



The Moving Defendants also worked with Riverstone to prepare the Proxy, which Riverstone and the SPAC filed with the SEC on January 19, 2018 and sent to SPAC shareholders recommending they vote to approve the de-SPAC transaction. In this regard, the Moving Defendants supplied language for portions of the Proxy, including, *inter alia*, production and financial projections, which Class Plaintiffs allege were false and misleading. *See* TAC ¶¶ 370-376; PX 59; PX 58; PX 57; *see also* PX 163 at pp. 15–24; PX 23; PX 79; PX 126; PX 129. The Moving Defendants were also ███████████ ████████████████████████ and allowed their names to be used in connection with the solicitation of votes.[5] The SPAC's shareholders (the Class here) voted to approve the proposed de-SPAC. PX 131 at 2. The transaction closed on February 9, 2018. PX 131 at 1. ████████████████████████████████████████

[4] ████████████████████████████████████████████████████████

[5] The Proxy mentions HPS 56 times, BCE 57 times and ARM 70 times. *See, e.g.*, PX 104 at 25/396, 51/396, 52/396, 180/396, 186/396, 231/396.

██████████████████████████████████████████████████

███████████████████████████████████████████   ARM received

approximately $101 million in cash (paid out thereafter as bonuses) and 10.6 million AMR

shares. PX 160 at Resp. 2; ███████████████████████████████████

█████████

    **D.**    **The Organization and Management of the New Public Entity**

      HPS appointed one of its Managing Directors, Donald Dimitrievich, and BCE

appointed its founder and Managing Partner, William McMullen, to the AMR Board of

Directors. PX 131 at internal 55. ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

---

[6] ██████████████████████████████████

Less than two months after the de-SPAC, on March 29, 2018, AMR announced in connection with its Fourth Quarter 2017 results release that it was reducing its 2018 guidance for KFM and AMH by 46% and 8%, respectively. PX 133. The announcement, which included a press release, investor presentation, and earnings calls, contained allegedly false and misleading statements about AMH's production results, development plans, and expected future oil recovery, as well as KFM's financial and business prospects and operations, including Chappelle's explanation for the reduction in KFM's projected 2018 revenue, an alleged misstatement. *See* TAC ¶¶ 211-221; PX 133; PX 93 at 6. On the same day, AMR filed its annual report on Form 10-K, which included allegedly false and misleading statements regarding the accuracy of Alta Mesa's financial reporting, the extent to which third party producers had connected to the infrastructure of the midstream business (KFM), and the importance of such third-party producers to that business segment. *Id.* ¶¶ 217-221; PX 131.

On August 27, 2019, AMR wrote down $3.2 billion of its assets and admitted the reasons for the impairment existed at the time of the de-SPAC in 2018. PX 156 at 58.

## ARGUMENT & AUTHORITIES

Control for the purpose of Section 20(a) "means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. Control "should be broadly construed with sufficient flexibility to cover many situations, not necessarily only those foreseen at the time of enactment." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, Nos. MDL-1446, H-01-3624, 2003 WL 230688, at *8 (S.D. Tex. Jan. 28, 2003) (citations omitted); *see Trendsetter Investors, LLC v. Hyperdynamics Corp.*, No. H-06-0746, 2007 WL 172627, at *27 (S.D. Tex. Jan. 18, 2007) ("A few examples of the methods used are stock ownership, lease, contract, and agency." (quoting H.R. REP. No. 1383, 73rd Cong., 2d Sess. 26 (1934)). The Fifth Circuit has at various times "considered whether the alleged control-person had effective day-to-day control of the corporation, or had the requisite power to directly or indirectly control or influence corporate policy, or had actual power or influence over the controlled person." *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 652 (S.D. Tex. 2021) (internal quotations and citations omitted). "[A] plaintiff must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based." *Heck v. Triche*, 775 F.3d 265, 283–84 (5th Cir. 2014) (internal quotations and citations omitted). However, in this Circuit, a plaintiff need not show that the defendant induced or participated in the primary violation. *Carlton v. Cannon*, No. CV H-15-012, 2016 WL 3959164, at *4 (S.D. Tex. July 22, 2016) (citing G.*A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981).

11

I.     **HPS, BCE AND ARM EACH COULD CONTROL, AND DID CONTROL, THE JOINT AUGUST 16 AND 17, 2017 PRE-DE-SPAC STATEMENTS BY THE SPAC, ALTA MESA HOLDINGS, CHAPPELLE AND HACKETT**

Moving Defendants argue they lacked control of "counterparty" Silver Run before the de-SPAC, ignoring that the false and misleading August 2017 press release was jointly issued with AMH (PX 196), which they plainly controlled, and that AMH's CEO Chappelle made false statements on the contemporaneous recorded call as he directed investors to false statements in the accompanying presentation. PX 192 at 202:20-205:15.

A.     **HPS and BCE Controlled Alta Mesa Holdings and Defendant Chappelle During the Pre-De-SPAC Portion of the Class Period**

HPS and BCE controlled AMH through their majority ownership of its parent, High Mesa (34.4% and 40%, respectively). Such ownership relationships demonstrate control as to each of HPS and BCE, individually. And, because they acted in concert, the Court and the jury may consider their collective control. *See, e.g.*, *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 592 (W.D. Tex. 2022) (private equity firms, which each owned 40% of the company's stock, acted in concert to control the primary defendant); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2016 WL 215476, at *11 (S.D. Tex. Jan. 19, 2016) (group of five private equity sponsors (including Riverstone) that created an oil and gas exploration and production company "together controlled [the company] based, *inter alia*, on their significant stock ownership and ability to elect a majority of [the company]'s Board of Directors"). HPS and BCE also controlled AMH and its CEO Chappelle through

12

their board seats,[7] involvement in operations,[8] and historic operational and financial relationships, all factors the Moving Defendants fail to address. *See Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 620 (5th Cir. 1993); *One Longhorn Land I, L.P. v. FF Arabian, LLC*, No. 4:15cv203-RC-CMC, 2015 WL 7432360, at *3 (E.D. Tex. Nov. 23, 2015); *Trendsetter*, 2007 WL 172627, at *27.

These facts support the finding that HPS and BCE had the ability to control AMH, and its CEO, the false statements regarding the amount of oil under Alta Mesa's land, and its near-term development plans and anticipated production results. *See G.A. Thompson*, 636 F.2d at 958; *see also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945–46 (9th Cir. 2003) ("having a prior lending relationship, owning stock in the target company, or having a seat on the board" are indicative of control).

**B.  HPS and ARM Controlled Kingfisher During the Pre-De-SPAC Portion of the Class Period**

ARM operated AMH's midstream affiliate, Kingfisher, which had no employees of its own, and ARM's personnel were directly responsible for Kingfisher's operations,



construction, business development, financial reporting, capital markets activities, treasury activities, and risk management. PX 180 at 39:7-39:22, 58:16-59:15; PX 182 at 29:3-12. ARM, therefore, controlled Kingfisher's day-to-day operations, which is sufficient for a jury to find control. *See, e.g.*, *Trendsetter*, 2007 WL 172627, at *27. ARM also controlled the pre-de-SPAC misstatements setting KFM's revenue projection policies and providing, and causing Kingfisher to provide, false information regarding its financials that Chappelle and Alta Mesa Holdings published. *Id.* at *26–27 (sustaining control person claims against outside consultants who, by virtue of their positions, "had the power and did exercise control over the activities, including the statements and dissemination of information, of [the company]"). ARM also appointed two of Kingfisher's five board members.[9]

HPS controlled Kingfisher pre-de-SPAC through its majority ownership, board seat, close oversight of day-to-day activity, and approval of specific acts and policies that caused Kingfisher's financial condition and business prospects to be overstated in Alta Mesa Holdings' and Chappelle's public statements. *Id.*; *see also Enron*, 2003 WL 230688, at *18 (*indicia* of control include influence upon operations, knowledge of the underlying primary violation, or facts showing the defendant had the requisite power directly or indirectly to control or influence corporate policies). The fact that HPS was continuing to fund KFM's capital expenditures gave HPS "significant control over KFM because of the financing." PX 180 at 137:7-8. ARM Energy worked in concert with HPS and was "required to go to

---

[9] *See* PX 182 at 32:25-33:7;

HPS for important decisions regarding KFM" because HPS was "writing . . . 99 percent of the checks." *Id.* at 137:14-24; *see also* PX 182 at 24:4-10, 177:4-8. HPS had access to all of Kingfisher's information through its close partnership with ARM. *See* PX 182 at 63:4-11; ████████████████████████████████████████████████████

████████████████████████████████████

Each of HPS and ARM exercised control over KFM for Section 20(a) purposes individually, and it cannot be reasonably disputed that their collective control over KFM was virtually exclusive during the pre-de-SPAC part of the Class Period.[11] ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████

**C.** **The Moving Defendants Each Controlled the Content of pre-de-SPAC Public Statements, Including the False and Misleading August 16, 2017 Press Release and August 17, 2017 Presentation**

HPS, BCE and ARM each not only had the ability to control the content of the joint AMH and SR II August 16, 2017 press release and the August 17, 2017 investor presentation and prerecorded call announcing and detailing the de-SPAC, but they actually exercised that control. ████████████████████████████████████████



Each and all of these facts are more than sufficient to place the question of the Moving Defendants' control before a jury. *See Enron*, 2003 WL 230688, at *19; *see also In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1031–32 (S.D. Cal. 2005).

Such participation in the preparation of the misleading materials is strong evidence of control. *See, e.g.*, *Trendsetter*, 2007 WL 172627, at *26-27; *Immune Response*, 375 F. Supp. 2d at 1031–32.

II.     **HPS, ARM AND BCE EACH ALSO HAD THE ABILITY TO CONTROL, AND DID CONTROL, THE FALSE AND MISLEADING OPERATIONAL INFORMATION AND FORECASTS IN SILVER RUN'S PROXY**

The Moving Defendants misleadingly argue that they could not control any misleading information disseminated to shareholders in the Proxy because they were "negotiating counterparties" with "zero" interest in Silver Run. *See* Dkt. 423 at 3, 4, 5, 6. But, of course, Silver Run was nothing more than a SPAC shell company that the Control Entity/Merger Parties (Riverstone, HPS, BCE and ARM) collectively and cooperatively used to take KFM and AMH public once they had formulated a merger agreement—cooperative action that belies the Moving Defendants' arguments and more than supports sending the issue of control to the jury. *See SolarWinds*, 595 F. Supp. 3d at 594 (defendants acted in unison, buying and taking the Company private). They also ignore the facts that each Moving Defendant (a) had explicit contractual rights to control the content of the Proxy, (b) provided the operational and financial information for use in the Proxy, and (c) provided extensive edits and comments to the Proxy and "signed off" on the final prior to publication. *See Heck*, 775 F.3d at 283–84.

A.      **HPS, BCE and ARM Had Contractual Rights to Control the Content of the Proxy**

HPS, BCE and ARM had express contractual rights to control the content of the Proxy pursuant to the "AM Contribution Agreement" and the "KFM Contribution Agreement" entered on August 16, 2017. PX 47, 48. The SPAC was required to provide AMH (controlled by HPS and BCE) and Kingfisher (controlled by HPS and ARM), "with a reasonable opportunity to review and comment on the Proxy Statement (including each

amendment or supplement thereto)." *Id*. The SPAC was further required to "give due consideration to all comments reasonably proposed by [Alta Mesa Holdings, LP or Kingfisher] in respect of such documents and responses ***prior to*** filing such with or sending such to the SEC." *Id*. (emphasis added). Indeed, AMH and KFM had not only the right, but the obligation to provide information for use in the Proxy, and to use their best efforts to close the de-SPAC transaction. *See id*. ████████████████████████

████  The false information in the Proxy about AMH was provided by AMH and its management, which HPS and BCE controlled. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

HPS and ARM Energy created the non-standard policy of including non-contracted potential customers in KFM's revenue projections (PX 180 at 27:9-28:16), ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

Facing these facts, the Moving Defendants make the straw man argument that "neither HPS, Bayou City, nor ARM Energy had sole authority to determine the final content of the Proxy." Dkt. 423 at 18. But the law does not require that a defendant have "sole authority" to control the underlying violator or unlawful conduct. *See Enron*, 2003 WL 230688, at *17 noting, "the Court presumes that decision-making and policy-making

powers would have to have been divided and delegated among numerous individuals and groups"). Unsurprisingly, the Moving Defendants do not cite any case on this point, let alone a case requiring "sole authority." This is simply not how companies and complex transactions operate, and the Moving Defendant's role in providing the false information for the Proxy is sufficient to support a finding of control. *See id.* This is particularly true where, as here: █████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

These facts are sufficient to permit a reasonable jury to find 20(a) liability against the Moving Defendants. *See Heck*, 775 F.3d at 283–84; *Enron*, 2003 WL 230688, at *19.

**B.     Recent Decisions Support Section 20(a) Liability for Entities that Take Companies Public by way of SPAC**

████████████████████████████████████████████

████████████  The developing law correctly supports the proposition that, in the context of a SPAC, the "sellers" who take their company public can be liable for misstatements in the SPAC's Proxy, where, as here, those "sellers" provided the false information. *See, e.g., Phoenix Ins. Co., Ltd., v. ATI Physical Therapy, Inc.,* No. 1:21-CV-04349, 2023 WL

---

[13] ████████████████████████████████████████████

████████████████████████████

5748359, at *14, 21–22 (N.D. Ill. Sept. 6, 2023) (officers of private company liable under Sections 14(a) and 20(a) for statements in Proxy issued by SPAC acquiring private company); *McIntosh v. Katapult Holdings, Inc.*, No. 21-CV-7251 (JPO), 2023 WL 5049044, at *14 (S.D.N.Y. Aug. 8, 2023) (CEO of company that merged with SPAC liable under 20(a)); *Theodore v. Purecycle Techs., Inc.*, No. 6:21-CV-809-PGB-RMN, 2023 WL 4035880, at *3, 9–11 (M.D. Fla. June 15, 2023) (same); *Moradpour v. Velodyne Lidar, Inc.*, No. 21-CV-01486-SI, 2022 WL 19796570, at *2 (N.D. Cal. Oct. 12, 2022).

Defendants heavily rely on *Abbott* in which investors purchased limited partnership interests pursuant to an allegedly false private placement memorandum, and then sued the banks that loaned them the funds to make that investment. 2 F.3d at 620. *Abbott* is factually inapposite—among other things, the banks were not sellers and did not control the content of the Proxy as Defendants demonstrably did here.

The Moving Defendants torture *In re BP p.l.c. Securities Litigation*, C.A. No. 4:10–md–2185, 2014 WL 4923749, at *6 (S.D. Tex. Sept. 30, 2014), to wrongly suggest they cannot be liable as control persons. But the language they cite was applied to a vice president of the company, who was not alleged to have provided false information for the purpose of public presentation. Equally misplaced is Defendants' reliance on *In re Arthrocare Securities Litigation*, 726 F. Supp. 2d 696, 731 (W.D. Tex. 2010), where the court considered whether a vice president and general manager could control the CEO and CFO, who "were clearly his corporate superiors."

### III.   AFTER THE DE-SPAC, THE MOVING DEFENDANTS EACH HAD THE ABILITY TO CONTROL, AND DID CONTROL, DEFENDANTS AMR AND CHAPPELLE AND THEIR CONTINUED FALSE AND MISLEADING PUBLIC STATEMENTS

The Moving Defendants invite the Court to consider the ability of each of them to control AMR in a vacuum, without accounting for the reality that they worked in concert, and despite precedent considering control collectively. *See No. 84 Emp.-Teamster*, 320 F.3d at 945–46. Nevertheless, the record contains evidence sufficient for the jury to find that each of them, individually, had the ability to control AMR's public statements.

### A.   HPS and BCE Continued to Control Alta Mesa After the De-SPAC

HPS's and BCE's legal right to each appoint one AMR director can be sufficient to show the ability to exercise influence over a company. *See Robertson v. Strassner*, 32 F. Supp. 2d 443, 450 (S.D. Tex. 1998).

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████  Such manifest post-de-SPAC control underscores the untenable nature of the

Moving Defendants' position here.

The Moving Defendants cite dicta in *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014), for the unremarkable proposition that an individual defendant's 14.8% minority ownership interest was, "in isolation, insufficient to allege control" (Dkt. 423 at 19-20), but they ignore in-circuit precedent counseling that the courts should not look at each fact in isolation where, as here, there are numerous additional related indicia of the Moving Defendants' control. *See, e.g.*, *Carlton*, 2016 WL 3959164, at *5–6 (collecting circuit cases assessing varying indicia of control). In the same vein, the Moving Defendants misstate the holding in *Firefighters' Retirement System v. Citco Group Limited*, 855 F. App'x 902, 906 (5th Cir. 2021). Dkt. 423 at 19. In that case, the Fifth Circuit noted that there was insufficient evidence in the record to prove the existence of an ownership interest—not, as the Moving Defendants misleadingly suggest here, that owning a subsidiary would not support control.[14]

### B. ARM Energy Continued to Control and Influence AMR After the De-SPAC Through Continued Operational Control of Kingfisher

When the de-SPAC closed, AMR engaged ARM Energy via the TSA to operate virtually KFM's entire business, including "to design, construct, expand, modify, manage, operate and maintain" KFM's "gas gathering and processing systems and crude oil gathering facilities" for a period of up to six months (PX 104 at 44/396), ███████████

████████████████████████████████████████████████████████

---

[14] The Moving Defendants also mistakenly rely on *Dartley v. Ergobilt Inc.*, No. 398CV1442M, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001), for the proposition that a minority shareholder "cannot" control a company. But, in that case, the court was persuaded by the facts of that case, including that the defendant was obligated under a voting rights agreement to support certain directors, unlike here.

██████ ARM Energy's contractually mandated day-to-day operation of KFM post-Business Combination by itself is adequate to demonstrate control over the primary violations related to misstatements about KFM. *See Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 194 (5th Cir. 1979), *on rehearing*, 611 F.2d 105 (5th Cir. 1980); *Commodity Futures Trading Comm'n v. Cartu*, No. 1:20-CV-908-RP, 2023 WL 5246360, at *10 (W.D. Tex. Aug. 15, 2023) (control liability was pled where defendant was involved in the day-to-day management of the company). ████████████████████████

████████████████████████████████████████

████████████ PX 180 at 223:3-19 (stating that AMR personnel lacked the analytical resources to take over the modeling tasks); ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

### C. The Moving Defendants Each Could and Did Control Misstatements by Defendants AMR and Chappelle After the De-SPAC

The Moving Defendants had the ability to control AMR generally, and exercised control over AMR's public statements, including those alleged to be false and misleading here. Such exercise is sufficient to establish control. *See Carlton*, 2016 WL 3959164, at *7. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████

HPS and BCE likewise controlled the false and misleading March 29, 2018 Form 10-K, which Dimitrievich and McMullen each signed. *See Enron*, 2003 WL 230688, at *7 (citing favorably the general principle that "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts" (citations omitted)).

## <u>CONCLUSION</u>

For the foregoing reasons, Class Plaintiffs respectfully request that the Court deny the Moving Defendants' motion for summary judgment (Dkt. 423) in its entirety.

25

Dated: September 21, 2023                                     Respectfully submitted,


*/s/ Andrew J. Entwistle*                                    */s/ Trig Smith*
Andrew J. Entwistle (attorney-in-charge)                     Trig Smith (*pro hac vice*)
State Bar No. 24038131                                       Sean McGuire (*pro hac vice*)
Callie Crispin                                               Lonnie Browne (*pro hac vice*)
State Bar No. 24104231                                       John Kelley (*pro hac vice*)
Sal H. Lee (*pro hac vice*)

**ENTWISTLE & CAPPUCCI LLP**                                 **ROBBINS GELLER RUDMAN &
                                                             DOWD LLP**
500 West 2nd Street, Suite 1900                              655 West Broadway, Suite 1900
Austin, TX 78701                                             San Diego, CA 92101
Telephone: (512) 710-5960                                    Telephone: (619) 231-1058
Facsimile: (212) 894-7278                                    Facsimile: (619) 231-7423

-and-                                                        *Court-Appointed Co-Lead Counsel*

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*


Ira A. Schochet (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on September 21, 2023.


*/s/ Andrew J. Entwistle*
Andrew J. Entwistle

# APPENDIX 1

**GLOSSARY OF KEY TERMS, ENTITIES AND PERSONS**

*In re Alta Mesa Resources, Inc. Securities Litigation*

| Term | Description |
|------|-------------|
| AMR | Alta Mesa Resources, Inc., the publicly traded post-de-SPAC company. |
| AMH | Alta Mesa Holdings, LP, the private pre-de-SPAC company. |
| Alta Mesa | Refers to AMR (post de-SPAC) and/or AMH (pre de-SPAC). |
| AM Management | AM Equity Holdings Inc., an entity owned by Defendants Chappelle and Ellis. |
| ARM or ARM Energy | Moving Defendant ARM Energy Holdings LLC. |
| BCE or Bayou City | Moving Defendant Bayou City Energy Management LLC. |
| Bullis-Coleman | A ten well pattern spacing test conducted by AMH. |
| Chappelle | Defendant Hal Chappelle, CEO of AMH and CEO of AMR until December 2018. |
| Citi | Citigroup Global Markets Inc., advisor to Silver Run II. |
| Child Well | Subsequent wells drilled in a section surrounding the initial Parent Well. |
| Class Plaintiffs | Plaintiffs in the TAC and Court-appointed Class Representatives (Dkt. 241): FNY Partners Fund, LP, FNY Managed Accounts, LLC, Paul J. Burbach and United Association National Pension Fund (formerly Plumbers and Pipefitters National Pension Fund) and Camelot Event Driven Fund, a Series of Frank Funds Trust. |
| Chisholm | Upstream company in the STACK and Kingfisher customer. |
| Christopher | Michael Christopher, CFO at Moving Defendant ARM Energy during the relevant period. |
| Collins | Craig Collins, VP and COO of Kingfisher from April 2018 to April 2019. |
| Complaint or TAC | The Third Consolidated Amended Complaint for Violations of the Federal Securities Laws, filed December 6, 2021 (Dkt. 218). |

| Term | Description |
|---|---|
| Cusimano | Catherine Cusimano, associate at Moving Defendant HPS on the Energy and Power team during the relevant period. |
| Dimitrievich | Defendant Donald Dimitrievich, former managing director and head of the Energy and Power team at HPS. |
| De-SPAC or Business Combination | The merger of Silver Run II with Kingfisher and AMH on February 9, 2018. |
| Downspacing | The drilling of additional wells in an already developed area. |
| Drainage | The syphoning off of oil either between fractured layers of rock or because of downspacing. |
| Dunne | Charles "Bo" Dunne, VP Finance at ARM Energy. |
| EBITDA | An acronym for the financial metric "Earnings Before Interest, Taxes, Depreciation and Amortization." |
| EHU | East Hennessey Unit. A five well pattern spacing test conducted by AMH. |
| Ellis | Defendant Mike Ellis, COO of AMH and later AMR until December 2018. |
| ESP | Abbreviation for "electrical submersible pump," an artificial-lift method for lifting fluids from wellbores. |
| EUR | Abbreviation for "Estimated Ultimate Recovery," meaning the anticipated total quantity of oil or gas that is potentially recoverable or has already been recovered from a reserve or well. |
| Exchange Act | The Securities and Exchange Act of 1934. |
| Gastar | Upstream company in the STACK and Kingfisher customer. |
| Hackett | Defendant James Hackett, a Riverstone Partner, CEO of Silver Run II prior to the de-SPAC and Executive Chairman of the Board of Directors of AMR. |
| High Mesa | High Mesa, Inc., a now bankrupt entity owned by BCE, HPS and AM Management that prior to the de-SPAC owned AMH and approximately one-third of Kingfisher. |
| Hostettler | Jeffrey Hostettler, Managing Director at HPS. |
| HPS | Moving Defendant HPS Investment Partners, LLC. |

| Term | Description |
|------|-------------|
| Huntsman | A four well pattern spacing test conducted by AMH. |
| Javanmardi | Eliot Javanmardi, an employee of Moving Defendant HPS. |
| JDA | The 2016 Joint Drilling Agreement between AMH and Bayou City, where Bayou City funded the development of 40 wells. The JDA was later expanded to 80 wells. |
| KFM or Kingfisher | Kingfisher Midstream LLC, a midstream company that specialized in the gathering, processing and marketing of hydrocarbons from oil and gas producers that combined with Silver Run II in the de-SPAC. |
| McClure | David McClure, Vice President of Infrastructure & Midstream at AMH and AMR during the relevant period. |
| McMullen | Defendant William McMullen, founder and Managing Partner of Moving Defendant BCE. |
| Meramec | One of the two STACK formations that Alta Mesa planned to target in its base case development plan. |
| Moving Defendants | ARM Energy Holdings LLC, Bayou City Energy Management LLC and HPS Investment Partners, LLC. |
| Parent Well | The initial well drilled by an operator in a section. |
| PIPE | Stands for "private investment in public equity," a method of bringing additional outside funding into a transaction. |
| Project Rugby | Internal name for the Kingfisher transaction process. |
| Proxy | The Definitive Merger Proxy Statement issued to Silver Run II's shareholders on Schedule 14A, dated January 19, 2018, and all supplements and amendments thereto.  The Proxy is PX 104 attached to the Declaration of Andrew J. Entwistle. |
| Riverstone | Defendant private equity firm Riverstone Holdings, LLC and its affiliates Riverstone Investment Group LLC and Riverstone VI SR II Holdings, LP, a Defendant that was the sponsor of Silver Run II. |
| Silver Run II, Silver Run or SR II | The SPAC entity created by Riverstone that merged with KFM and AMH. |
| SPAC | Acronym for "special purpose acquisition company," also called "blank check company." |

| **Term** | **Description** |
|---|---|
| Opco | The operating company formed in connection with the de-SPAC to own the full economic interest in AMH and Kingfisher. |
| Operator Agreement | Second Amended and Restated Operating and Construction Management Agreement, dated August 4, 2017, between Kingfisher and ARM Energy. |
| Section | A 640-acre land area established by the State of Oklahoma for purposes of dividing oil and gas drilling. |
| Smith | Defendant Ronald Smith, Chief Accounting Officer at AMR for portion of the relevant record. |
| STACK | Abbreviation for the oil exploration area in Oklahoma where AMH, KFM and AMR were focused. |
| Stoner | Mark Stoner, Partner at Moving Defendant BCE. |
| TSA | Operating Transition Services Agreement, dated February 9, 2018, between ARM Energy and Kingfisher that replaced the pre-SPAC Operator Agreement. |
| Type Curve | A projection of the expected EUR of a well based on a statistical average of similar wells within the same reservoir. |
| WPS | Wells per section. |