**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> **PUBLIC VERSION OF DKT. 446 FILED SEPTEMBER 28, 2023** |

**CLASS PLAINTIFFS' OPPOSITION TO DONALD DIMITRIEVICH'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING ............................................ 1

STATEMENT OF ISSUES TO BE RULED UPON .......................................... 1

APPLICABLE LEGAL STANDARD .............................................................. 1

SUMMARY OF ARGUMENT....................................................................... 2

CLASS PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS.................. 4

        A.      HPS's Ownership and Board Participation, and Dimitrievich's Role in KFM and AMH Leading up to the February 2018 Business Combination ...................................................................... 5

        B.      In Addition to Dimitrievich's Board Memberships on KFM and AMH, He Also Participated in Due Diligence of Those Entities for Years Leading Up to the February 2018 Shareholder Vote ......................... 7

ARGUMENT................................................................................................ 11

I.      DIMITRIEVICH'S REHASHING OF HIS RULE 12(B)(6) ARGUMENTS, IN SUPPORT OF SUMMARY JUDGMENT, SHOULD BE REJECTED ..................................................................................... 11

II.    THE EVIDENCE INDICATES DIMITRIEVICH DELIBERATELY AND KNOWINGLY DECEIVED INVESTORS ........................................... 14

        A.      Legal Standard.................................................................... 14

        B.      Courts Disfavor Summary Judgment on Scienter ...................... 16

        C.      Myriad Facts Would Allow a Jury to Find Dimitrievich Acted With Scienter .......................................................................... 17

III.   THE EVIDENCE SHOWS DIMITRIEVICH IS BOUND FOR TRIAL PURSUANT TO SECTION 20(a) ....................................................... 22

CONCLUSION ........................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abrams v. Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) ................................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................... 16

*Ashe v. Corley*,
    992 F.2d 540 (5th Cir. 1993) ................................................................. 13

*Brody v. Zix Corp.*,
    No. 3:04-CV1931-K, 2006 WL 2739352 (N.D. Tex. Sept. 26, 2006) .................. 23

*Cooper Tire & Rubber Co. v. Farese*,
    423 F.3d 446 (5th Cir. 2005) ................................................................. 16

*Crawford v. Formosa Plastics Corp.*,
    234 F.3d 899 (5th Cir. 2000) ................................................................... 2

*Dennis v. Gen. Imaging, Inc.*
    918 F.2d 496 (5th Cir. 1990) ................................................................. 13

*Fine v. Am. Solar King Corp.*,
    919 F.2d 290 (5th Cir. 1990) ................................................................. 15

*Fitzpatrick v. Uni-Pixel, Inc.*,
    35 F. Supp. 3d 813 (S.D. Tex. 2014) ..................................................... 23

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983) ............................................................................... 15

*In re Alstom SA Sec. Litig.*,
    454 F. Supp. 2d 187 (S.D.N.Y. 2006) ................................................... 22

*In re ArthroCare Corp. Sec. Litig.*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010) ................................................. 15

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    610 F. Supp. 2d 600 (S.D. Tex. 2009) ....................................... 13, 14, 15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................... 23

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ..................................................................23

*Jaffe v. Bosco*,
    No. 3:96-CV-2064-X, 1996 WL 727981 (N.D. Tex. Sept. 26, 1996) ..................24

*Kaltman v. Key Energy Servs., Inc.*,
    447 F. Supp. 2d 648 (W.D. Tex. 2006) ................................................................23

*Nathenson v. Zonagen, Inc.*,
    267 F.3d 400 (5th Cir. 2001) ...............................................................................16

*New Jersey & its Div. of Inv. v. Sprint Corp.*,
    314 F. Supp. 2d 1119 (D. Kan. 2004) ..................................................................23

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
    58 F.4th 195 (5th Cir. 2023) ................................................................................15

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ...............................................................................14

*Regents of the Univ. of California v. Credit Suisse First Boston, Inc.*,
    482 F.3d 372 (5th Cir. 2009) ...............................................................................14

*Ryder v. Union Pac. R.R. Co.*,
    945 F.3d 194 (5th Cir. 2019) .................................................................................2

*S.E.C. v. Farmer*,
    No. 4:14–CV–2345, 2015 WL 5838867 (S.D. Tex. Oct. 7, 2015) ........................2

*S.E.C. v. Seghers*,
    298 F. App'x 319 (5th Cir. 2008) ........................................................................14

*Stahl v. Novartis Pharm. Corp.*,
    283 F.3d 254 (5th Cir. 2002) .................................................................................2

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................16

*Trust Co. of Louisiana v. N.N.P. Inc.*,
    104 F.3d 1478 (5th Cir. 1997) .............................................................................15

*Whalen v. Carter*,
    954 F.2d 1087 (5th Cir. 1992) .............................................................................13

## NATURE AND STAGE OF THE PROCEEDING

This is a class action for violations of the federal securities laws against Donald Dimitrievich and others. Dimitrievich has moved for summary judgment pursuant to Fed. R. Civ. P. 56, contemporaneously with several other defendants, including HPS,[1] where he served as a Managing Director.

## STATEMENT OF ISSUES TO BE RULED UPON

Defendant Dimitrievich's Motion for Summary Judgment (Dkt. 422, hereinafter "Motion"), as directed to the Class Case, is narrow. The only two issues he raises before this Court are:

A. Whether Class Plaintiffs have adduced evidence to raise a genuine issue of material fact concerning Dimitrievich's scienter on March 29, 2018; and

B. Whether Class Plaintiffs have adduced evidence to raise a genuine issue of material fact concerning whether Dimitrievich is subject to Section 20(a) "control person" liability with regard to AMR's 2017 Form 10-K, (filed with the SEC on March 29, 2018).[2]

## APPLICABLE LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists if a reasonable jury

---

[1] A glossary of defined terms and the names of individuals and entities referenced herein is attached as Appendix 1 for the Court's convenience.

[2] Dimitrievich's Motion is silent regarding additional statements over which Plaintiffs allege he exercised control pursuant to Section 20(a). *See* Complaint (Dkt. 218) ¶¶ 190, 192, 194, 196, 209, 211, 213, 216, 219, 221-222, 226-227, 229, 231, 233, 235, 237, 239, 241, 244-246, 248, 250, 252-254, 256, and Count II (p. 113); *see also* PX 161 (Response to Interrogatory No. 5). Accordingly, he has conceded he is bound for trial regarding the remainder of Class Plaintiffs' Section 20(a) allegations.

could enter a verdict for the nonmoving party." *S.E.C. v. Farmer*, No. 4:14–CV–2345, 2015 WL 5838867, at \*5 (S.D. Tex. Oct. 7, 2015); *see, e.g.*, *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Only when "the non-moving party can point to nothing in the record supporting its claim" should summary judgment be granted. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). In determining whether a triable issue of fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019). In doing so, the Court must not make any credibility determinations or weigh the evidence. *Id.*

## SUMMARY OF ARGUMENT

The Court should deny Dimitrievich's narrow motion for summary judgment because the evidence establishes genuine issues of material fact regarding whether he knowingly and/or deliberately intended to deceive investors when he signed the 2017 Form 10-K on March 29, 2018, as well as whether he is subject to Section 20(a) control person liability for the same.

With regards to his Rule 12(b)(6) arguments, Dimitrievich and his counsel have conflated two separate motion-to-dismiss orders issued by this Court to suggest that Your Honor "invit[ed]" Dimitrievich to reargue his failed motion to dismiss in the Class Case. *See* Motion at 3-4. They are wrong. And, the caselaw they cite for that proposition is inapposite.

The record plainly contains evidence from which a reasonable jury could conclude that Dimitrievich knew the misstatements in the March 29, 2018 Form 10-K were false

when he signed the form and authorized its filing. As demonstrated herein, leading up to the February 8, 2018 Business Combination, Dimitrievich ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ According to AMH's senior management, Dimitrievich and HPS ███████████████████████████████████

████████████ over the course of Dimitrievich's due diligence efforts in 2017.

Further, prior to and throughout the Class Period, as a large shareholder's designee to the Boards of the various related entities (AMH, KFM, High Mesa, AMR), Dimitrievich ████████████████████████████████████████████████

██████████████████████████████ On the midstream side, Dimitrievich had ████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

And, just two days before Dimitrievich signed the March 29, 2018 Form 10-K, ████

████████████████████████████████████████████████████

████ co-defendant McMullen noted that Dimitrievich's team at HPS were ████████

████████████████████████████████████████████████████

██████████████████████ prior to the de-SPAC. Further, Dimitrievich had ample motive and opportunity to lie. Dimitrievich's employer, HPS, ████████████

████████████████████████████████████████████ Tellingly,

███████████████████████████████████████████████████

████████████████████████████

Dimitrievich also claims the record is devoid of any evidence concerning his "control" over defendant Alta Mesa with regard to the misleading statements contained in the 2017 Form 10-K (filed with the SEC on March 29, 2018). Motion at 23-24. That too is baseless. Prior to the de-SPAC, HPS and Dimitrievich controlled virtually every major aspect of KFM's operations, as well as AMH's. Not only did Dimitrievich sign the 2017 Form 10-K on March 29, 2018, but according to the minutes of Alta Mesa's March 28, 2018 Board of Directors meeting, he also: ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████ That, alone, is sufficient evidence to bind Dimitrievich over for trial.

The Court should deny Dimitrievich's Motion in its entirety.

## **CLASS PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS**

Regarding Dimitrievich's Statement of Undisputed Facts (Motion at 4-6), Class Plaintiffs dispute that Dimitrievich was an "independent" director of AMR in any practical or ordinary sense of the term, being the appointee of a major shareholder and for the other reasons discussed herein. Class Plaintiffs' Statement of Undisputed Facts follows.[3]

---

[3] Class Plaintiffs incorporate by reference the facts set forth in their contemporaneously filed opposition (Dkt. 445 pp. 3-10) to the joint motion of HPS, BCE and ARM for summary judgment.

A. **HPS's Ownership and Board Participation, and Dimitrievich's Role in KFM and AMH Leading up to the February 2018 Business Combination**

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

Affiliates of HPS and others co-founded KFM in January 2015. PX 180 at 64:2-9; PX 104 at 25/396. ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ HPS and Dimitrievich possessed "*de facto*" control over KFM because HPS provided "almost all the investment capital into the business," allowing Dimitrievich to "refuse to fund, or just block" any action he and HPS disagreed with. PX 180 at 135:25-137:17.

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[4] References to exhibits are designated "PX __" and are attached to the declaration of Andrew J. Entwistle, filed contemporaneously herewith. (Dkt. 444).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

After the de-SPAC, HPS owned as much as 31.9% of AMR's voting shares (Dkt.

423 at 8), and owned additional economic interests in the assets. PX 158. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

**B.**     **In Addition to Dimitrievich's Board Memberships on KFM and AMH, He Also Participated in Due Diligence of Those Entities for Years Leading Up to the February 2018 Shareholder Vote**

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Comparatively, by August 2017 ██████████████████████████████

████████████████████, Dimitrievich was aware that the 2018 and 2019 projections had

significantly increased to $358 million and $701 million, respectively. PX 51, Ex. 99.1 at

35.

        ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[5] Highbridge Principal Strategies is the former name of Defendant HPS.



---

[6] As the Court is aware, Class Plaintiffs' allegations regarding flawed WPS and EUR assumptions are central to their theories of liability. *See, e.g.,* Complaint (Dkt. 218), ¶¶3, 105, 108, 116, 139, 162, 172, 190-191, 199, 211, 215, 248, 280, 282, 289.

[7]

██████████████████████████████████████████████████████

████████████████████████████████████ PX 131 at 59 (AMR informing investors that AMH's "pattern wells" had "produced as expected for 60 days [after they came on line], but began to fall below the type curve after 90-120 days" of operation)).

███████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████ AMR and Dimitrievich subsequently disclosed that AMR had taken a $3.2 billion impairment charge because, at the time of the Business Combination, the underlying 12 WPS and 250 MBO per well average EUR assumptions were incorrect and required downward revision. PX 131 at 58. ████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

10

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

## **ARGUMENT**

### I.   **DIMITRIEVICH'S REHASHING OF HIS RULE 12(B)(6) ARGUMENTS, IN SUPPORT OF SUMMARY JUDGMENT, SHOULD BE REJECTED**

Dimitrievich advances the curious assertion that Your Honor "invit[ed]" him to renew Rule 12(b)(6) arguments he directed against the Class Complaint in June 2020. *See* Motion at 3-4. Assuming the Court would credit that false premise, Dimitrievich renewed numerous Rule 12(b)(6) arguments against the Class Complaint in Sections I.A., II.A. and II.B. of his Motion. But Dimitrievich is mistaken. This Court made no such invitation with respect to the Class Complaint.

In his portrayal of that purported invitation, Dimitrievich and his counsel rely on this Court's June 7, 2023 Opinion and Order Dkt. 343. *See* Motion at 3-4. That Opinion and Order, however, is limited to the Rule 12(b)(6) motions before the Court at the time. That is, Dimitrievich and the other Defendants filed their Rule 12(b)(6) motions against the complaints lodged by the individual action plaintiffs in 2022. *See* Dkt. 343 at 1, 14 (referencing only Dkt. 263 (motion to dismiss individual action claims), Dkt. 264 (same, but filed by Dimitrievich), Dkt. 265 (same) and Dkt. 266 (same)).

However, the Court made no such reference to Dimitrievich's failed Rule 12(b)(6) motion lodged against the Class Complaint on June 30, 2020. Dkt. 120; Dkt. 343 at 1, 14. In the June 2023 Order, moreover, the Court noted "portions of Defendants' motions essentially amount to a request that the Court reconsider its denial of Defendants' motions to dismiss [the Section 10(b) and 20(a) claims alleged in] the class action complaint. The Court respectfully declines to do so." *Id.* at 14. The Court's June 7, 2023 Opinion and Order only made allowance for Dimitrievich to "reassert" Rule 12(b)(6) arguments against the Alyeska and Orbis pleadings in the form of a "motion[] for summary judgement." *Id.*

By comparison, this Court's April 14, 2021 Opinion and Order flat out denied Dimitrievich's motion to dismiss the Class Complaint (with no reference to it being made "without prejudice"). Dkt. 160 at 29. At no point in time in the intervening 29 months has Dimitrievich filed a Rule 60 motion asking this Court to reconsider that ruling. It's too late now. Accordingly, the Class Plaintiffs will present evidence that raises genuine issues of material fact concerning Dimitrievich's scienter and his control over Alta Mesa and the March 29, 2018 statements contained in the 2017 Form 10-K. Class Plaintiffs, therefore, will respond to Dimitrievich's attempted ***third bite*** at the Rule 12(b)(6) apple directed to the Class Complaint by noting that Class Plaintiffs fully responded to substantially similar arguments in their opposition to Defendants' Motions to Dismiss the Class Case. Dkt. 139.[8]

The cases Dimitrievich cites in support of renewing his Rule 12(b)(6) arguments are not persuasive. In *Ashe v. Corley*, 992 F.2d 540 (5th Cir. 1993), defendants filed their initial

---

[8] The 2020 motion was made against the Second Amended Complaint. The Third Amended Complaint only added claims against AMR without changing the allegations against Dimitrievich.

Rule 12(b)(6) motion with the district court at the same time they filed their summary judgment motion. *Id.* at 542. Up to that point in the case, the trial court had not yet decided the legal sufficiency of the complaint's allegations.[9] The Fifth Circuit further observed that "[b]ecause the County's motion for summary judgment only challenged the sufficiency of plaintiffs' pleadings," the motion should have been treated as a Rule 12(b)(6) motion. *Id.* at 544. Here, Dimitrievich attacked the legal sufficiency of the Class Complaint's allegations over three years ago, and lost.

*In re Enron Corporation Securities, Derivative & "ERISA" Litigation*, 610 F. Supp. 2d 600 (S.D. Tex. 2009) ("*Enron I*"), provides no support either. There, it was appropriate for Judge Harmon to entertain limited Rule 12(b)(6) arguments at summary judgement given a unique procedural circumstance. While Credit Suisse's summary judgment motion was pending before Judge Harmon, the Fifth Circuit ruled on an interlocutory appeal that the "Financial Institution Defendants did not owe plaintiffs any duty to disclose the nature of the alleged [fraudulent] transactions…" *Id.* at 616 (quoting *Regents of the Univ. of California v. Credit Suisse First Boston, Inc.*, 482 F.3d 372 (5th Cir. 2009)).[10] In short, the Fifth Circuit's ruling foreclosed plaintiffs from advancing their Section 10(b) allegations against Credit Suisse as originally pleaded. *See Enron I*, 610 F. Supp. 2d at 633. This Court,

---

[9] The procedural status in *Dennis v. General Imaging, Inc.*, 918 F.2d 496 (5th Cir. 1990), a pre-PSLRA case, was similar to that of *Ashe*. *Id.* at 503. Indeed, it was the first time the court had ruled on the legal sufficiency of the allegations of violations of the securities laws. *Id. Whalen v. Carter*, 954 F.2d 1087 (5th Cir. 1992), another pre-PSLRA case, is no help to Dimitrievich either because the court in that action issued its first and only ruling – albeit on summary judgment – regarding the legal sufficiency of plaintiff's allegations of securities fraud. *Id.* at 1090.

[10] Further, Judge Harmon allowed the parties to "'update[]'" their motions for summary judgment after the *Regents* opinion had been handed down. *Enron I*, 610 F. Supp. 2d at 607.

on the other hand, has not altered the law-of-the-case since issuing its April 2021 opinion. Nor has Dimitrievich appropriately (or timely) moved the Court to do so. The Fifth Circuit has not issued an interlocutory ruling foreclosing any of the Class Plaintiffs' claims. Nor will it. With respect to the Class Complaint, there is no motion for interlocutory relief before this Court, let alone a resulting as to such by the Fifth Circuit.

## II.   THE EVIDENCE INDICATES DIMITRIEVICH DELIBERATELY AND KNOWINGLY DECEIVED INVESTORS

### A.   Legal Standard

Scienter is an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005); *see also S.E.C. v. Seghers*, 298 F. App'x 319, 333 (5th Cir. 2008) ("Scienter may be found if a reasonable jury can conclude that the defendant knew his statements were false when made."). But:

> Strict intentional misconduct is ***not*** required to show scienter[;] it is sufficient to prove conduct that is an extreme departure from the standards of ordinary care and presents a danger of misleading buyers or sellers, as well as either ***knowledge of that danger***, or a danger so obvious that the actor ***must be aware of it***.

*Trust Co. of Louisiana v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997).

Courts in the Fifth Circuit may consider, *e.g.*, "whether the transaction at issue was critical to the company's continued vitality"; "whether the misrepresented information would have been readily apparent to the speaker"; and "whether the defendant's statements were internally inconsistent with one another." *Okla. Firefighters Pension & Ret. Sys. v.*

14

*Six Flags Ent. Corp.*, 58 F.4th 195, 219 (5th Cir. 2023) (quotations marks and citation omitted). Scienter may also be inferred when a defendant "had the opportunity to correct [the speaker] at the time [the speaker] was making the inaccurate and misleading statements to the investing public," but did not do so. *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 716 (W.D. Tex. 2010).

Facts demonstrating a speaker's motive, while insufficient on their own to prove scienter, nevertheless "may enhance other allegations of scienter." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002). "The Fifth Circuit allows a party to allege and prove scienter with direct and/or circumstantial evidence." *Enron I*, 610 F. Supp. 2d at 627 n.27; *see also Fine v. Am. Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990) (facts showing motive and intent "will often be inferential" and "circumstantial") (citation omitted). Accordingly, "summary judgment should be used sparingly when motive and intent are factors." *Fine*, 919 F.2d at 298; *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983) (observing that "the proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence. If anything, the difficulty in proving a defendant's state of mind supports a lower standard of proof"); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 459 (5th Cir. 2005) ("[D]eterminations which involve the summary judgment movants' state of mind, are particularly ill-suited for summary judgment.").

### B.   Courts Disfavor Summary Judgment on Scienter

Summary judgment on scienter is rarely, if ever, appropriate. This is because the PSLRA's pleading standard for scienter – which Plaintiffs have already satisfied – is *more strict* than the standard at summary judgment.

On a motion to dismiss, a plaintiff must allege sufficient facts from which "a reasonable person ***would*** deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). At summary judgment, however, neither Defendants nor this Court may draw any opposing inferences; the question is whether a reasonable juror ***could*** find in favor of the plaintiff. *Compare Tellabs*, 551 U.S. at 323–24 (in determining whether alleged facts raise a strong inference, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff"), *with Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (in summary judgment proceedings, a court must ask itself "not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury ***could*** return a verdict for the plaintiff on the evidence presented"); *see also Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 408 (5th Cir. 2001) ("It seems clear to us that the PSLRA has not generally altered the substantive scienter requirement for claims brought under section 10(b) . . . .").

Dimitrievich has already argued, twice, that Plaintiffs did not plead scienter. *See* Dkt. 120 at 7-10 (Dimitrievich MTD); Dkt. 264 at 7-14 (Dimitrievich MTD Against Direct Action Plaintiffs). Dimitrievich lost, twice. *See* Dkt. 160 at 26-27 ("Plaintiffs pled facts sufficient to show that the defendants who signed the March 29, 2018 10-K acted with the

16

requisite severe recklessness under Section 10(b)."); Dkt. 343 at 14. As shown below, Plaintiffs are entitled to present the issue of Dimitrievich's intent to deceive to a jury.

### C.   Myriad Facts Would Allow a Jury to Find Dimitrievich Acted With Scienter

Here, summary judgment in favor of Dimitrievich is inappropriate because facts adduced during discovery would allow a fair-minded jury to find at trial that Dimitrievich acted with scienter in signing the 2017 10-K. A mere sliver of those facts follows.



---

[11] Defendants claim the "sole record evidence" as to Mr. Dimitrievich's mental state is the six-line quote from his transcript they excerpt on page 17 of their brief. This is false, as shown by the plethora of citations to the portions of Dimitrievich's deposition transcript Defendants fail to cite.

17

With respect to AMH, ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

         ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Dimitrievich certainly knew of AMH's well production data, as well as its pattern

spacing tests. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

HPS and ARM Energy created the non-standard policy of including non-contracted potential customers in KFM's revenue projections (PX 180 at 27:9-28:16), ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

Based on this wealth of information, the evidence suggests that Dimitrievich and the HPS team ███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████ It is undisputed, moreover, that Dimitrievich and HPS ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

Yet, there is more evidence pointing to Dimitrievich's intent to deliberately deceive.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ ███████████████████

██████████████████ the estimates in the Definitive Proxy ($358MM EBITDAX for 2018 and $701MM for 2019). *See* PX 104 at 173/396. That evidence would present the

opportunity for a reasonable jury to infer that ███████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████

        ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████ *See* Dkt. 160 at 27 ("Plaintiffs have presented other

allegations  sufficient  to  satisfy  the  [scienter]  pleading  requirement,"  specifically

identifying the $3.2 billion impairment charge taken in 2019).

        As argued herein, the evidence indicates ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ The failure to take that charge in March 2018

(when all 10(b) Defendants knew those assumptions were empty) reflects a material

weakness in AMR's internal controls. And, AMR was required to disclose it on March 29,

2018, despite being in a "transition period" under SEC rules. PX 167 (Q&A No. 7).

        ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████

Lastly, Dimitrievich's co-defendants have ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

## III.   THE EVIDENCE SHOWS DIMITRIEVICH IS BOUND FOR TRIAL PURSUANT TO SECTION 20(a)

In connection with the 2017 10-K and the board meeting that precipitated the filing

of the 10-K, as reflected in the minutes to that meeting: ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████.[12]

Those facts alone are sufficient to show he "controlled" 2017 Form 10-K for

purposes of Section 20(a). *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*,

258 F. Supp. 2d 576, 598 (S.D. Tex. 2003) ("*Enron II*") (outside director who signed false

---

[12] Although a defendant cannot ultimately be liable for the same misstatement both directly and derivatively, plaintiffs may present both theories in the alternative, as Plaintiffs have here. *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 211–12 (S.D.N.Y. 2006).

registration statement was a control person); *New Jersey & its Div. of Inv. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1144 (D. Kan. 2004) (noting that "the majority of district courts that have addressed this issue have held that an allegation that a board member signed an SEC filing that contains a misleading or fraudulent statement can raise a sufficient inference of control because it comports 'with common sense to presume that a person who signs his name to a report has some measure of control over those who write the report.'" (citing *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 437 (S.D.N.Y. 2001)).

Courts have routinely sustained Section 20(a) claims where "defendants, by virtue of their positions within [the company], had sufficient control over the information which was disseminated to the public and given to the SEC," and especially where, as here, the facts support the inference that "because of their participation in [the company's] operations as well as their access to certain internal information, . . . Defendants knew of the falsity of the information being given and could have stopped the dissemination of false information." *See Brody v. Zix Corp.*, No. 3:04-CV1931-K, 2006 WL 2739352, at *9 (N.D. Tex. Sept. 26, 2006); *Kaltman v. Key Energy Servs., Inc.*, 447 F. Supp. 2d 648, 665–66 (W.D. Tex. 2006) (same); *see also Fitzpatrick v. Uni-Pixel, Inc.*, 35 F. Supp. 3d 813, 835 (S.D. Tex. 2014) ("While an individual defendant cannot have § 20(a) liability for their own statements, an individual defendant can have § 20(a) liability for statements attributed to a corporate entity such as Uni-Pixel, e.g., for statements contained in press releases and SEC filings that are not attributable to any single individual but were clearly made on behalf of Uni-Pixel." (internal citation omitted)).

Here, summary judgment is inappropriate. The Class Plaintiffs' evidence demonstrates a reasonable jury could find that the 2017 10-K would not have been filed with false and misleading information had Dimitrievich done the right thing:  He should have refused to sign it. That is a hallmark of "control." *See Jaffe v. Bosco*, No. 3:96-CV-2064-X, 1996 WL 727981, at *6 (N.D. Tex. Sept. 26, 1996) (finding the defendants liable as controlling persons under Section 20(a) where "both signed SEC documents which contained fraudulent statements and failed to disclose material information," and their positions at the company "gave them access to the adverse information at issue and the ability to direct and to control the content of public statements and SEC filings made on behalf of [the primary violator]"). Likewise, here, Defendant Dimitrievich signed the March 29, 2018 Form 10-K, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

Even if Dimitrievich had properly put the issue of control before the Court as to any other allegation in the Class Complaint, which he has not (*see* FN1, *supra*), it is clear that he and HPS are each subject to Section 20(a) liability. This is clear from:

- ████████████████████████████████████████████

- ████████████████████████████████████████████



These and other facts discussed herein, and in opposition to HPS's motion for summary judgment, are sufficient to bind Dimitrievich over for trial pursuant to Section 20(a).

## CONCLUSION

For the reasons stated herein and in Class Plaintiffs' supporting materials, the Court should deny Dimitrievich's Motion with prejudice.

Dated: September 21, 2023                    Respectfully submitted,


*/s/ Andrew J. Entwistle*                    */s/ Trig Smith*
Andrew J. Entwistle (attorney-in-charge)     Trig Smith (*pro hac vice*)
State Bar No. 24038131                       Sean McGuire (*pro hac vice*)
Callie Crispin                               Lonnie Browne (*pro hac vice*)
State Bar No. 24104231                       John Kelley (*pro hac vice*)
Sal H. Lee (*pro hac vice*)

                                             **ROBBINS GELLER RUDMAN &**
**ENTWISTLE & CAPPUCCI LLP**                 **DOWD LLP**
500 West 2nd Street, Suite 1900              655 West Broadway, Suite 1900
Austin, TX 78701                             San Diego, CA 92101
Telephone: (512) 710-5960                    Telephone: (619) 231-1058
Facsimile: (212) 894-7278                    Facsimile: (619) 231-7423

 -and-                                       *Court-Appointed Co-Lead Counsel*

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*


Ira A. Schochet (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven*
*Fund, A Series of Frank Funds Trust*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on September 21, 2023.


*/s/ Andrew J. Entwistle*
Andrew J. Entwistle

# APPENDIX 1

## GLOSSARY OF KEY TERMS, ENTITIES AND PERSONS

*In re Alta Mesa Resources, Inc. Securities Litigation*

| Term | Description |
|---|---|
| AMR | Alta Mesa Resources, Inc., the publicly traded post-de-SPAC company. |
| AMH | Alta Mesa Holdings, LP, the private pre-de-SPAC company. |
| Alta Mesa | Refers to AMR (post de-SPAC) and/or AMH (pre de-SPAC). |
| AM Management | AM Equity Holdings Inc., an entity owned by Defendants Chappelle and Ellis. |
| ARM or ARM Energy | Moving Defendant ARM Energy Holdings LLC. |
| BCE or Bayou City | Moving Defendant Bayou City Energy Management LLC. |
| Bullis-Coleman | A ten well pattern spacing test conducted by AMH. |
| Chappelle | Defendant Hal Chappelle, CEO of AMH and CEO of AMR until December 2018. |
| Citi | Citigroup Global Markets Inc., advisor to Silver Run II. |
| Child Well | Subsequent wells drilled in a section surrounding the initial Parent Well. |
| Class Plaintiffs | Plaintiffs in the TAC and Court-appointed Class Representatives (Dkt. 241): FNY Partners Fund, LP, FNY Managed Accounts, LLC, Paul J. Burbach and United Association National Pension Fund (formerly Plumbers and Pipefitters National Pension Fund) and Camelot Event Driven Fund, a Series of Frank Funds Trust. |
| Chisholm | Upstream company in the STACK and Kingfisher customer. |
| Christopher | Michael Christopher, CFO at Moving Defendant ARM Energy during the relevant period. |
| Collins | Craig Collins, VP and COO of Kingfisher from April 2018 to April 2019. |
| Complaint or TAC | The Third Consolidated Amended Complaint for Violations of the Federal Securities Laws, filed December 6, 2021 (Dkt. 218). |

| **Term** | **Description** |
| --- | --- |
| Cusimano | Catherine Cusimano, associate at Moving Defendant HPS on the Energy and Power team during the relevant period. |
| Dimitrievich | Defendant Donald Dimitrievich, former managing director and head of the Energy and Power team at HPS. |
| De-SPAC or Business Combination | The merger of Silver Run II with Kingfisher and AMH on February 9, 2018. |
| Downspacing | The drilling of additional wells in an already developed area. |
| Drainage | The syphoning off of oil either between fractured layers of rock or because of downspacing. |
| Dunne | Charles "Bo" Dunne, VP Finance at ARM Energy. |
| EBITDA | An acronym for the financial metric "Earnings Before Interest, Taxes, Depreciation and Amortization." |
| EHU | East Hennessey Unit. A five well pattern spacing test conducted by AMH. |
| Ellis | Defendant Mike Ellis, COO of AMH and later AMR until December 2018. |
| ESP | Abbreviation for "electrical submersible pump," an artificial-lift method for lifting fluids from wellbores. |
| EUR | Abbreviation for "Estimated Ultimate Recovery," meaning the anticipated total quantity of oil or gas that is potentially recoverable or has already been recovered from a reserve or well. |
| Exchange Act | The Securities and Exchange Act of 1934. |
| Gastar | Upstream company in the STACK and Kingfisher customer. |
| Hackett | Defendant James Hackett, a Riverstone Partner, CEO of Silver Run II prior to the de-SPAC and Executive Chairman of the Board of Directors of AMR. |
| High Mesa | High Mesa, Inc., a now bankrupt entity owned by BCE, HPS and AM Management that prior to the de-SPAC owned AMH and approximately one-third of Kingfisher. |
| Hostettler | Jeffrey Hostettler, Managing Director at HPS. |
| HPS | Moving Defendant HPS Investment Partners, LLC. |

2

| Term | Description |
|---|---|
| Huntsman | A four well pattern spacing test conducted by AMH. |
| Javanmardi | Eliot Javanmardi, an employee of Moving Defendant HPS. |
| JDA | The 2016 Joint Drilling Agreement between AMH and Bayou City, where Bayou City funded the development of 40 wells. The JDA was later expanded to 80 wells. |
| KFM or Kingfisher | Kingfisher Midstream LLC, a midstream company that specialized in the gathering, processing and marketing of hydrocarbons from oil and gas producers that combined with Silver Run II in the de-SPAC. |
| McClure | David McClure, Vice President of Infrastructure & Midstream at AMH and AMR during the relevant period. |
| McMullen | Defendant William McMullen, founder and Managing Partner of Moving Defendant BCE. |
| Meramec | One of the two STACK formations that Alta Mesa planned to target in its base case development plan. |
| Moving Defendants | ARM Energy Holdings LLC, Bayou City Energy Management LLC and HPS Investment Partners, LLC. |
| Parent Well | The initial well drilled by an operator in a section. |
| PIPE | Stands for "private investment in public equity," a method of bringing additional outside funding into a transaction. |
| Project Rugby | Internal name for the Kingfisher transaction process. |
| Proxy | The Definitive Merger Proxy Statement issued to Silver Run II's shareholders on Schedule 14A, dated January 19, 2018, and all supplements and amendments thereto. The Proxy is PX 104 attached to the Declaration of Andrew J. Entwistle. |
| Riverstone | Defendant private equity firm Riverstone Holdings, LLC and its affiliates Riverstone Investment Group LLC and Riverstone VI SR II Holdings, LP, a Defendant that was the sponsor of Silver Run II. |
| Silver Run II, Silver Run or SR II | The SPAC entity created by Riverstone that merged with KFM and AMH. |
| SPAC | Acronym for "special purpose acquisition company," also called "blank check company." |

3

| **Term** | **Description** |
|---|---|
| Opco | The operating company formed in connection with the de-SPAC to own the full economic interest in AMH and Kingfisher. |
| Operator Agreement | Second Amended and Restated Operating and Construction Management Agreement, dated August 4, 2017, between Kingfisher and ARM Energy. |
| Section | A 640-acre land area established by the State of Oklahoma for purposes of dividing oil and gas drilling. |
| Smith | Defendant Ronald Smith, Chief Accounting Officer at AMR for portion of the relevant record. |
| STACK | Abbreviation for the oil exploration area in Oklahoma where AMH, KFM and AMR were focused. |
| Stoner | Mark Stoner, Partner at Moving Defendant BCE. |
| TSA | Operating Transition Services Agreement, dated February 9, 2018, between ARM Energy and Kingfisher that replaced the pre-SPAC Operator Agreement. |
| Type Curve | A projection of the expected EUR of a well based on a statistical average of similar wells within the same reservoir. |
| WPS | Wells per section. |