# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>**CLASS ACTION**<br><br>[Lead Case] |

| | |
|---|---|
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P.,<br><br>                    Plaintiffs,<br><br>     v.<br><br>ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER,<br><br>                    Defendants. | Civil Action No. 4:22-cv-001189<br><br>[Consolidated Case] |

|  |  |
|---|---|
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | Civil Action No. 4:22-cv-02590<br><br>[Consolidated Case] |
|             Plaintiffs, |  |
|   v. |  |
| ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, |  |
|             Defendants. |  |

**REPLY BRIEF IN SUPPORT OF JOINT MOTION OF HPS INVESTMENT PARTNERS, LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; AND ARM ENERGY HOLDINGS, LLC FOR SUMMARY JUDGMENT ON CLASS AND OPT-OUT PLAINTIFFS' SECTION 20(a) CLAIMS**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ....................................................... 3

ARGUMENT ................................................................................................... 6

I.  PLAINTIFFS FAIL TO DEMONSTRATE THAT MOVING
    DEFENDANTS CONTROLLED ANY OF THE ALLEGED PRE-
    BUSINESS COMBINATION MISREPRESENTATIONS. .................................. 7

    A.  Moving Defendants' Ownership of AMH and/or Kingfisher Is Not
        Relevant to the Determination of Whether Moving Defendants
        Could Control an Alleged Primary Violator. ............................... 7

    B.  Plaintiffs' Contention That Providing Comments Or Edits to a
        Document Amounts to Control Is Insufficient as a Matter of Law. ............ 8

        1.  Plaintiffs Mischaracterize the August 2017 Press Release and
            Presentation .................................................................. 11

        2.  Plaintiffs' Evidence of Moving Defendants' Control of the
            Proxy Is Insufficient ....................................................... 12

    C.  Plaintiffs' Mischaracterize SPAC-Related Cases, Which, In Any
        Event, Do Not Support a Finding of Control Liability Here..................... 14

    D.  Accepting Plaintiffs' Argument on Control Pre-Business
        Combination Would Upend Corporate Transactions................................. 15

II. PLAINTIFFS FAIL TO DEMONSTRATE THAT MOVING
    DEFENDANTS CONTROLLED ANY OF THE ALLEGED POST-
    BUSINESS COMBINATION MISREPRESENTATIONS. ............................... 16

    A.  Providing Input to Certain AMR Executives Is Insufficient to Find
        Control............................................................................ 16

    B.  HPS and Bayou City Could Not Have Controlled AMR Through
        Their Appointment of a Single Board Member Each. ................................ 17

    C.  ARM Energy Could Not Have Controlled AMR Through the
        Operating Transition Services Agreement. ....................................... 21

i

D.    Plaintiffs Have Never Pled and Cannot Show that Moving
      Defendants Collectively Exercised Control. .............................................. 23

CONCLUSION .............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

<u>Cases</u>

*Abbott v. Equity Grp., Inc.*,
    2 F.3d 613 (5th Cir. 1993) ....................................................................................8, 10

*In re ArthroCare Corp. Sec. Litig.*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010) ...............................................................10, 13

*Bach v. Amedisys, Inc.*,
    No. 10-00395-BAJ-RLB, 2016 WL 4443177 (M.D. La. Aug. 19, 2016) .................... 8

*In re BP P.L.C. Sec. Litig.*,
    MDL No. 10-md-2185, No. 4:13-cv-1393, 2014 WL 4923749 (S.D.
    Tex. Sept. 30, 2014) ...........................................................................................13, 21

*Cameron v. Outdoor Resorts of Am., Inc.*,
    608 F.2d 187 (5th Cir. 1979), *on reh'g*, 611 F.2d 105 (5th Cir. 1980) ................22, 23

*Commodity Futures Trading Comm'n v. Cartu*,
    No. 1:20-CV-908-RP, 2023 WL 5246360 (W.D. Tex., Aug. 15, 2023) ..............22, 23

*U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*,
    475 F. App'x 521 (5th Cir. 2012) ........................................................................... 24

*Dennis v. Gen. Imaging, Inc.*,
    918 F.2d 496 (5th Cir. 1990) ................................................................................. 18

*In re Galena Biopharma, Inc. Sec. Litig.*,
    117 F. Supp. 3d 1145 (D. Or. 2015) ........................................................................ 9

*Heck v. Triche*,
    775 F.3d 265 (5th Cir. 2014) ................................................................................... 6

*Ho v. Duoyuan Global Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) .................................................................19, 20

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) .................................................................... 10

*McIntosh v. Katapult duoyldings, Inc.*,
    No. 21-CV-7251 (JPO), 2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023) ..................... 14

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ................................................................ 24

*Patriot Expl., LLC v. SandRidge Energy, Inc.*,
   951 F. Supp. 2d 331 (D. Conn. 2013) .................................................... 21

*Phoenix Ins. Co., v. ATI Physical Therapy, Inc.*,
   No. 1:21-CV-04349, 2023 WL 5748359 (N.D. Ill. Sept. 6, 2023)............................ 14

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................9, 19

*Robertson v. Strassner*,
   32 F. Supp. 2d 443 (S.D. Tex. 1998) ...................................................... 18

*S.E.C. v. Winemaster*,
   529 F. Supp. 3d 880 (N.D. Ill. 2021) ....................................................... 9

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ................................................................. 18

*Trendsetter Invs., LLC, v. Hyperdynamics Corp.*,
   No. H-06-0746, 2007 WL 172627 (S.D. Tex. Jan. 18, 2007).................................... 10

*In re Tyco Int'l, Ltd.*,
   MDL No. 02-md-1335-PB, No. 04-cv-1336-PB, 2007 WL 1687775
   (D.N.H. June 11, 2007) ....................................................................... 21

## Statutes

Securities Exchange Act § 10(b)........................................................13, 20, 23

Securities Exchange Act § 15 ................................................................. 19

Securities Exchange Act § 20(a) .........................................................*passim*

# INTRODUCTION[1]

As expected, Plaintiffs attempt to confuse this Court by conflating their claims against HPS Investment Partners, LLC ("HPS"), Bayou City Energy Management, LLC ("Bayou City"), and ARM Energy Holdings, LLC ("ARM Energy") (together, "Moving Defendants") with the other Defendants in this case to avoid having to sustain their burden of proof against Moving Defendants. This has been Plaintiffs' modus operandi throughout the case. But it is now time to prove that their claims against Moving Defendants can survive summary judgment, and Plaintiffs' Opposition (ECF No. 445) fails to rebut the undisputed facts in Moving Defendants' Joint Motion for Summary Judgment (the "Motion") that warrant summary judgment. (ECF No. 432.)

Moving Defendants have not been sued for fraud or aiding and abetting fraud. Plaintiffs allege *other* Defendants committed fraud. The claims at issue here are whether Moving Defendants **controlled** any entity or person ***that allegedly committed fraud***. The evidence that Plaintiffs put forth fails to establish that any of the Moving Defendants could have exercised or did exercise control over any person alleged to have made a material misstatement.

Plaintiffs' fatal error is that their Section 20(a) control analysis focuses on proving Moving Defendants controlled Alta Mesa Holdings, L.P. ("AMH") and Kingfisher Midstream LLC ("Kingfisher")—*not* Silver Run II Acquisition Corporation ("Silver Run") and Alta Mesa Resources, Inc. ("AMR"). Opp. at 12-19. AMH and Kingfisher are not

---

[1] Capitalized terms not defined herein maintain their definitions from the Motion.

1

entities alleged to have committed fraud. Indeed, they are not defendants in this case. The Court should reject this attempted sleight of hand. The relevant analysis is whether Moving Defendants exerted control over *Silver Run*, *AMR*, or *other individuals* alleged to have made misstatements—not Silver Run's pre-Business Combination *counterparties*. *See* Counts II and IV of Class Complaint; Counts II and V of Opt-Out Complaints.

Plaintiffs attempt to sow confusion by offering a deluge of evidence in their Opposition, most of which is simply not relevant to Plaintiffs' claims against Moving Defendants. The vast majority of this irrelevant evidence falls into the following categories:

- Moving Defendants' purported control of AMH and Kingfisher, neither of which are alleged to have made misstatements;

- Moving Defendants' decision to sell AMH and Kingfisher to Silver Run and provide requested information to Silver Run to close the deal;

- Moving Defendants' comments and edits on certain materials, including the Proxy, a press release, and a presentation, that Plaintiffs allege contain misstatements;

- The relationships between Moving Defendants and other Defendants or entities relevant to the transaction; and

- ARM Energy's Operating Transition Services Agreement ("TSA") *with Kingfisher* after the Business Combination.

But upon closer inspection of Plaintiffs' smoke and mirrors, it becomes clear that their arguments are simply a mirage. In a clear effort to prop up their Section 20(a) analysis and to muddy the otherwise simple transaction structure, Plaintiffs throw every irrelevant

2

piece of evidence they can dig up into the Opposition because, after nearly two years of discovery, they have no evidence to support their claims. Specifically, Plaintiffs have no evidence that Moving Defendants controlled their counterparty to the Business Combination (Silver Run) or the company after the Business Combination (AMR) in which they were undisputedly only minority shareholders and able to appoint only two of eleven directors. Indeed, if accepted, Plaintiffs' arguments would upend corporate transactions and corporate law. It simply cannot be the case that sellers can control their counterparties, or that minority shareholders of a company or a third party contracting with that company's subsidiary can control a company's statements. The law does not support these conclusions.

In short, Plaintiffs cannot identify a single piece of ***relevant*** evidence to support their claim that Moving Defendants could ***control*** any entity or individual that allegedly made misstatements. Summary judgment should therefore be granted.

## STATEMENT OF UNDISPUTED FACTS[2]

Silver Run was a SPAC formed to acquire a company in the oil and gas industry.[3] After an Initial Public Offering in March 2017, Silver Run identified AMH and Kingfisher

---

[2] Moving Defendants try not to repeat any facts included in their Statement of Undisputed Facts contained in the Motion and respectfully incorporate those by reference. Moving Defendants also do not concede any of the Facts asserted in Plaintiffs' Opposition Brief, unless expressly admitted herein.

[3] TAC at ¶ 73; AC at ¶¶ 3, 38; OC at ¶¶ 3, 47.

as potential target companies for a merger.[4] Silver Run, AMH, and Kingfisher negotiated an agreement through which Silver Run would acquire AMH and Kingfisher via a de-SPAC merger (the "Business Combination").[5]

HPS, Bayou City, and ARM Energy each held ownership interests in AMH and Kingfisher and were the arm's-length counterparties who *sold* AMH and Kingfisher to Silver Run. HPS, Bayou City, and ARM Energy held no interests in Silver Run whatsoever.[6]

Following negotiation among the parties, Silver Run publicly announced the Business Combination via press release on August 16, 2017.[7] The press release included statements from representatives of AMH and Kingfisher regarding the Business Combination.[8] The following day, AMH and Kingfisher each executed a Contribution Agreement with Silver Run (the "Contribution Agreements"), detailing the parties' rights and responsibilities related to the Business Combination, and the process by which it would occur.[9] As is typical, the Contribution Agreements gave Kingfisher and AMH the right to

---

[4] TAC at ¶ 78; AC at ¶ 51; OC at ¶ 60; TAC at ¶ 86; HPS Am. Answer (ECF No. 177) to Pls.' Second Corrected Consolidated Am. Compl. ("SAC") (ECF No. 69) at ¶ 79; AC at ¶ 53; OC at ¶ 62.

[5] TAC at ¶ 126; AC at ¶ 60; OC at ¶ 69.

[6] *See* TAC at ¶¶ 61-63; AC at ¶¶ 39-41; OC at ¶¶ 48-50.

[7] Opp. at 6; PX 43.

[8] PX 43.

[9] Ex. N (Contribution Agreement By and Among High Mesa Holdings, LP, High Mesa Holdings GP, LLC, Alta Mesa Holdings, LP, Alta Mesa Holdings GP, LLC, and Silver Run Acquisition Corporation II dated August 16, 2017) (the "Alta Mesa Contribution Agreement"); Ex. O (Contribution Agreement By and Among KFM Holdco, LLC, Kingfisher Midstream, LLC, and Silver Run Acquisition Corporation II dated August 16, 2017) (the "Kingfisher Contribution Agreement") (collectively, the "Contribution Agreements").

review and comment on public statements made by Silver Run related to the Business Combination.[10] The Contribution Agreements, however, did not give AMH or Kingfisher—let alone Moving Defendants—the right to control the content of any public statement made by or on behalf of Silver Run.[11]

Throughout the course of negotiations leading to the Business Combination and as provided for in the Contribution Agreements, AMH and Kingfisher provided information to Silver Run, at its request, as part of the due diligence process.[12]

Silver Run filed the Definitive Merger Proxy Statement (the "Proxy") with the Securities and Exchange Commission on January 19, 2018, soliciting approval from its shareholders to acquire AMH and Kingfisher.[13] As is typical in such transactions and contemplated by the Contribution Agreements, AMH and KFM had reviewed and provided comments on the Proxy.[14] On February 6, 2018, Silver Run's shareholders voted in favor of the Business Combination, which closed on February 9, 2018.[15]

After the Business Combination, Silver Run changed its name to Alta Mesa Resources, Inc. ("AMR").[16] HPS, Bayou City, and ARM Energy each became **_minority_** shareholders in newly-created AMR.[17] Post-Business Combination, HPS's interest in

---

[10] *Id.*
[11] *Id.*
[12] Mot. Ex. L at 100, 136, 160-162; Mot. Ex. H at 122:22-123:10
[13] Mot. Ex. L.
[14] Opp. at 8; PX 92; PX 70; PX 74.
[15] TAC at ¶¶ 125-26; AC at ¶ 60; OC at ¶ 69.
[16] TAC at ¶ 126; AC at ¶ 60; OC at ¶ 69.
[17] *See* Mot. Ex. J; *see also* Mot. Ex. I; Mot. Ex. L at viii, 5.

AMR was at all times less than 50%.[18] Likewise, after the Business Combination, Bayou City's voting interest amounted to 17.93%.[19] Finally, ARM Energy's voting interest amounted to no more than 4.8%.[20]

HPS and Bayou City each held the right to appoint, and did appoint, one of the eleven directors of the AMR Board.[21] ARM Energy did not have the right to appoint, and did not appoint, any director of the AMR Board.[22]

ARM Energy entered into a limited TSA with Kingfisher to assist in the transition for up to six months after the Business Combination.[23] AMR ended the TSA before the six-month period, relying instead on its own personnel to operate Kingfisher.[24]

## ARGUMENT

As Plaintiffs acknowledge in their Opposition, to survive summary judgment on Section 20(a) control claims in the Fifth Circuit, the party alleging control "must at least show that the defendant had an ability to control *the specific transaction or activity* upon which the primary violation is based." *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) (emphasis added). Plaintiffs' Opposition plainly fails in this regard because all it attempts to demonstrate is that Moving Defendants controlled AMH and Kingfisher—two non-defendant entities that are not alleged to have made any of the at-issue misstatements.

---

[18] *See* Mot. Ex. J at 3; *see also* Mot. Ex. K at 3.
[19] *See* Mot. Ex. I at 2.
[20] *See* Mot. Ex. L at viii (stating the Kingfisher Contributor's voting interest); *see also id.* at 5 (explaining ARM Energy's ownership of the Kingfisher Contributor).
[21] TAC at ¶¶ 61-62; HPS Am. Answer to SAC at ¶¶ 53-54; AC at ¶¶ 39-40; HPS Am. Answer to AC at ¶ 40; OC at ¶¶ 48-49; HPS Am. Answer to OC at ¶ 49.
[22] TAC at ¶ 136 (listing the AMR directors); Mot. Ex. L at 209, n.3.
[23] PX 152.
[24] Mot. Ex. H at 216:16-217:17.

## I.   PLAINTIFFS FAIL TO DEMONSTRATE THAT MOVING DEFENDANTS CONTROLLED ANY OF THE ALLEGED PRE-BUSINESS COMBINATION MISREPRESENTATIONS.

Plaintiffs' allegations that Moving Defendants controlled alleged misstatements made by Silver Run or other Defendants prior to the Business Combination fail as a matter of fact and law. Plaintiffs' Opposition does not dispute that Moving Defendants *never* had any interest in, held management positions at, or appointed any members to Silver Run's Board. In an attempt to salvage their control claims, Plaintiffs distract this Court by focusing on the wrong entities, irrelevant evidence, and contorting the fundamentals of corporate transactions.

### A.   Moving Defendants' Ownership of AMH and/or Kingfisher Is Not Relevant to the Determination of Whether Moving Defendants Could Control an Alleged Primary Violator.

Plaintiffs spill much ink on the undisputed fact that Moving Defendants held ownership interests in and participated in the businesses of *AMH* and/or *Kingfisher* pre-Business Combination. Opp. at 12-15. But it all amounts to a red herring: Moving Defendants' ownership interests in AMH and Kingfisher are simply not relevant because Plaintiffs *do not allege that AMH or Kingfisher made any material misstatements or omissions* for which Moving Defendants could be liable as control persons. For example, Plaintiffs argue that AMH was an open book to HPS and Bayou City. Opp. at 4 (citing PX 172). Not only does this overstate their relationship, but it has no bearing on whether HPS or Bayou City exerted control over Silver Run, AMR, or any Individual Defendant. The fact, which Plaintiffs do not dispute, is that Moving Defendants did not have *any* ownership stake whatsoever in the entities or persons that made the alleged misstatements in the Proxy

or any other pre-Business Combination materials. Under well-settled Fifth Circuit precedent, dismissal is warranted on this basis alone. *See, e.g.*, *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 615 (5th Cir. 1993).

## B. Plaintiffs' Contention That Providing Comments Or Edits to a Document Amounts to Control Is Insufficient as a Matter of Law.

Plaintiffs' fundamental argument in support of their contention that Moving Defendants controlled content in the August 2017 press release, the August 2017 presentation, the August 2017 announcement call, and the Proxy boils down to Moving Defendants providing comments or edits to those materials. Opp. at 15-19. As a threshold matter, these August 2017 statements are irrelevant to the Section 20(a) analysis, as Plaintiffs have not actually alleged a Section 20(a) claim for any pre-Business Combination statements other than the Proxy Statement. *See* Counts II and IV of Class Complaint; Counts II and V of Opt-Out Complaints.

Even assuming they have, these pre-Business Combination statements add nothing to Plaintiffs' false narrative of control over Silver Run. Moving Defendants do not dispute that they provided diligence, comments, or edits as requested by Silver Run while the parties negotiated the Business Combination. This is not a novel concept—it is how acquisitions typically work. The target company provides information to the acquirer at the acquirer's request, and the ***acquirer*** then determines whether and how to disclose that information to shareholders to solicit their approval. Providing Silver Run with diligence, comments, or edits, however, has no bearing on whether Moving Defendants could or did control the persons making the alleged misstatements that they did not publish. *See Bach*

*v. Amedisys, Inc.*, No. 10-00395-BAJ-RLB, 2016 WL 4443177, at *14 (M.D. La. Aug. 19, 2016) (dismissing Section 20(a) claims against defendants because they did not work for the company alleged to have made the misstatements at the time they were made).

Moving Defendants are not aware of—and Plaintiffs have not cited to—any case where a person has been held liable as a control person for commenting on, editing, or signing off on alleged misstatements without other indicia of control, such as majority ownership, executive positions, and/or explicit final authority over the statements. *See, e.g.*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 639 (S.D.N.Y. 2007) (declining to dismiss control claims against defendants who "prepared and approved" an IPO registration statement, but who also served as corporate officers of the company that made the alleged misstatements, and were "deeply involved" with the company's day-to-day activities); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1200-02 (D. Or. 2015) (declining to dismiss control claims against defendants who reviewed, edited, and approved of the alleged false statements, but who also held management positions at the primary violator—including CEO, president, director, and vice-president—and directly oversaw the company's day-to-day management); *S.E.C. v. Winemaster*, 529 F. Supp. 3d 880, 924-25 (N.D. Ill. 2021) (declining to dismiss control claims where defendant was responsible for reviewing and approving financial statements and public filings, but also was the primary violator company's CEO, and controlled the day-to-day management of the company). Further, Plaintiffs have identified no cases where a counterparty to a transaction has been found liable for control of alleged misstatements of the other party.

To the contrary, well-established Fifth Circuit precedent requires far more than mere involvement or participation in the alleged misstatements to establish Section 20(a) control. In *Abbott v. Equity Group*, the Fifth Circuit affirmed summary judgment, holding that defendants could not be liable as control persons even where their participation was "essential" to financing the allegedly fraudulent transactions at issue. *Abbott*, 2 F.3d at 619-20. *See also In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 731 (W.D. Tex. 2010) ("[Defendant] cannot be held liability as a control person simply due to his involvement in the underlying activities about which the Individual Defendants are alleged to have misled investors.").

The cases that Plaintiffs cite for these propositions are wholly inapposite. *Trendsetter Investors, LLC v. Hyperdynamics Corp.* involved allegations that a parent company and certain of its officers controlled alleged misstatements of a subsidiary that those individuals regularly issued on the subsidiary's behalf. *Trendsetter Invs., LLC*, No. H-06-0746, 2007 WL 172627, at *1-2 (S.D. Tex. Jan. 18, 2007). That is not the situation here. Moving Defendants were never the parent company of any entity that is alleged to have made misstatements and never issued statements on behalf of Silver Run.

The control defendants in *In re Immune Response Sec. Litigation* were the CEO and Chairman *of the primary violator*. 375 F. Supp. 2d 983, 1031-32 (S.D. Cal. 2005). It is undisputed that neither Moving Defendants nor any of their personnel were ever the CEO or Chairman of Silver Run—the entity alleged to have made the statements at issue. Moreover, Plaintiffs mischaracterize how the *Immune Response* court handled the significance of the control entity defendants' preparation of misleading materials. The

10

allegations in that case stated the control defendants had the authority to control the contents of the primary violator's quarterly reports, press releases, and presentations, and "had the ability and opportunity *to prevent their issuance* or correct them" *Id.* at 1031-32 (emphasis added). The court stated, "To establish control, Plaintiffs must allege that [control] Defendants [ ] were active in the day-to-day affairs of [the primary violator] or that ***they exercised specific control over the preparation and release of the alleged statements***." *Id.* at 1031 (emphasis added). Here, it is undisputed that Moving Defendants did not have the ability to exercise specific control over the preparation or the release of the materials containing alleged misstatements. That authority rested with Silver Run—the entity that released the alleged misstatements.

### 1. Plaintiffs Mischaracterize the August 2017 Press Release and Presentation

For the first time, Plaintiffs assert that the August 2017 press release and August 2017 presentation were "jointly issued" with AMH. Opp. at 12. But Plaintiffs' belated assertions are irrelevant to the Section 20(a) claims pled. AMH is not a defendant or the alleged maker of any misstatement, thus Moving Defendants' purported control of AMH (or its employees) is irrelevant.

Plaintiffs cannot now change their allegations simply because the evidence adduced during discovery does not support their claims. Nowhere in their Complaint do Plaintiffs allege that the August 2017 press release or August 2017 presentation were "jointly issued." To the contrary, Plaintiffs allege that the August 2017 press release was issued

11

solely by Silver Run: "On August 16, 2017, after the markets had closed, ***Alta Mesa***[25]
***issued a press release*** . . . ." SAC ¶ 183, ECF No. 69 (describing it as "Alta Mesa's press
release") (emphasis added). Regarding the August 2017 Presentation, the Complaint states:
"***Alta Mesa's presentation*** on August 17, 2017 also stated that Kingfisher was 'rapidly
expanding' and 'positioned to capture volume growth from the STACK.' In addition, ***the
Company represented*** that Kingfisher was 'well positioned to serve other operators' and
take advantage of the '[e]xpansion opportunities in [the] rapidly growing basin.'" *Id.* ¶ 189
(emphasis added) (further alleging "***Alta Mesa*** also touted . . .").

### 2.   Plaintiffs' Cited Evidence Does Not Establish Moving Defendants' Control of the Proxy.

In addition to Moving Defendants' comments and edits on the Proxy, which, as
discussed above, are insufficient to establish control, Plaintiffs attempt to show that there
was control by pointing to the Contribution Agreements executed between Silver Run and
AMH and Kingfisher in August 2017. This is another distraction. As is common in many
corporate transactions, the buyer—Silver Run—and the sellers—AMH and Kingfisher—
executed Contribution Agreements that provided for, among other things, the rights and
obligations of the parties prior to the closing of the deal. Exs. N, O (the Contribution
Agreements).

But these Contribution Agreements are not indicative of Moving Defendants'
control. Once again, Plaintiffs conflate different entities with one another to try to support

---

[25] The Complaint defines Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II as "Alta Mesa" or the "Company." The definition does not include AMH, Kingfisher, or Moving Defendants.

their control claims. The Contribution Agreements were between Silver Run and AMH and Kingfisher—not Moving Defendants. Plaintiffs have not alleged that AMH or Kingfisher controlled the Proxy; they allege that Moving Defendants did. Plaintiffs cannot simply impute the rights and obligations under those Agreements to Moving Defendants to try to bolster their control claims.

In addition, the contractual rights in the Contribution Agreements show that neither AMH nor Kingfisher—let alone their owners, Moving Defendants—had "control" over the contents of the Proxy. The Agreements afford AMH and Kingfisher the right to be given "due consideration" as it relates to the terms of the Proxy—that is not tantamount to control by Moving Defendants. Ex. N at A-58 (Alta Mesa Contribution Agreement); Ex. O at B-53 (Kingfisher Contribution Agreement). The Court should reject Plaintiffs' attempt to substitute "due consideration" for control. *See In re ArthroCare*, 726 F. Supp. 2d at 731 ("[Defendant] cannot be held liable as a control person simply due to his involvement in the underlying activities about which the Individual Defendants are alleged to have misled investors.").

Regarding the financial projections in the Proxy, even if they had come from Moving Defendants (which they did not, *see* Mot. at 18), that would not be sufficient to establish control. *See, e.g.*, *In re BP P.L.C. Sec. Litig.*, MDL No. 10-md-2185, No. 4:13-cv-1393, 2014 WL 4923749, at *6 (S.D. Tex. Sept. 30, 2014) (The question under Section 20(a) is whether Moving Defendants "possessed or exercised control over those persons or entities who made actionable misstatements under Section 10(b), ***not whether the substance of the alleged falsehoods originated with [them]***." (emphasis added)).

**C. Plaintiffs Mischaracterize SPAC-Related Cases, Which, In Any Event, Do Not Support a Finding of Control Liability Here.**

Plaintiffs' SPAC-related cases are all inapposite. Opp. at 19-20. First, each case involves a decision on a motion to dismiss, examining the sufficiency of the pleadings. Here, the Court is tasked with determining whether Plaintiffs have adduced sufficient evidence to support their claims, not just overcome a challenge to their pleadings. Second, in two of the three cases, the control defendants' only defense was that there was no primary violation. *See Phoenix Ins. Co.*, *v. ATI Physical Therapy, Inc.*, No. 1:21-CV-04349, 2023 WL 5748359 (N.D. Ill. Sept. 6, 2023); *McIntosh v. Katapult Holdings, Inc.*, No. 21-CV-7251 (JPO), 2023 WL 5049044 (S.D.N.Y. Aug. 8, 2023). So once the courts found that the primary violations had been sufficiently pled, there was nothing further to analyze. In this Motion, Moving Defendants do not argue there was no primary violation[26]—rather, that there was no control over the alleged primary violators. Finally, the cases cited by Plaintiff all involve the issue of whether ***individuals*** controlled the ***entities*** that made the alleged misstatements. Here, Moving Defendants are entities alleged to have controlled another entity (Silver Run), even though it is undisputed they ***never*** had any interest in, held management positions at, or appointed any members to Silver Run's Board.

---

[26] Moving Defendants do not concede that there were primary violations and reserve all rights to dispute those claims at a later date, if necessary.

**D.      Accepting Plaintiffs' Argument on Control Pre-Business Combination Would Upend Corporate Transactions.**

The uncontroverted facts conclusively establish that Moving Defendants did not have the ability to control Silver Run prior to the Business Combination. It is undisputed that none of the Moving Defendants owned *any* interest in Silver Run. They were not stockholders, were not on Silver Run's Board, did not hold any management position at Silver Run, and had no role in Silver Run's operations.[27] Moving Defendants' only relationship to Silver Run was as *counterparties* in a purchase and sale transaction.

If Plaintiffs' arguments about a counterparty's ability to control the other party in a corporate transaction are accepted, future acquisitions would be upended. If the seller of a company can be liable for alleged misstatements made by a counterparty in a deal— irrespective of whether the seller is alleged to have provided false information—no seller would provide diligence, information, or comments on public statements necessary to close the transaction. In the event of fraud, parties can bring appropriate primary liability claims. But Section 20(a) secondary liability should not be twisted to encompass those same claims.

Moreover, Plaintiffs suggest that Moving Defendants and Silver Run acted "cooperatively" to close the deal. Opp. at 17. But all transactions—except, say, hostile takeovers—are "cooperative." Because both buyer and seller wish to complete a transaction, they must work together to do so. That does not mean that either party "controls" the other: they are still counterparties to the transaction, each seeking the best

---

[27] *See generally*, Mot. Ex. M (Silver Run Acquisition Corporation II Prospectus (March 23, 2017)).

deal for themselves. Critically, the test for Section 20(a) control is not "cooperation." A finding of control liability here—against a third-party seller of a company to an independent buyer—would turn corporate transactions on their heads and curb future deals, ultimately harming shareholders standing to benefit from value-generating deals. The law does not support this theory because such a result would be nonsensical.

## II.   PLAINTIFFS FAIL TO DEMONSTRATE THAT MOVING DEFENDANTS CONTROLLED ANY OF THE ALLEGED POST-BUSINESS COMBINATION MISREPRESENTATIONS.

Plaintiffs similarly have not identified any evidence to suggest Moving Defendants could have exercised, let alone did exercise, control over AMR or any individual alleged to have made a material misstatement after the Business Combination.

### A.   Providing Input to Certain AMR Executives Is Insufficient to Find Control.

Plaintiffs have failed to point to any evidence that could show that any Moving Defendant could have controlled AMR or any individual making any alleged misstatements. Plaintiffs have retreated from the plainly insufficient allegation that Moving Defendants could be liable based on their minority ownership in AMR after the Business Combination. The Alyeska and Orbis Pls.' Opp. to Defs.' Mot. to Dismiss at 25 (ECF No. 284); Pls.' Opp. to Defs.' Mot. to Dismiss the Consolidated Am. Class Action Compl., at 88-89 (ECF No. 139); TAC ¶¶ 135-38 (ECF No. 218).

Instead, Plaintiffs try to establish that Moving Defendants somehow exercised control over AMR and others by cherry-picking and mischaracterizing instances where Moving Defendants provided input to certain AMR executives relating to certain AMR

16

communications. Opp. at 24-25. Plaintiffs conveniently ignore the litany of instances where Moving Defendants provided comments that were outright ignored. *Compare*, *e.g.*, Ex. P, ARMEnergy_00053777-779 (ARM Energy providing comments at Jim Hackett's request to his talking points related to delayed third party drilling for the March 2018 public remarks), *with* Ex. Q , Alta Mesa Resources March 29, 2018 Press Release (AMR's press release does not include ARM Energy's feedback, including Mr. Christopher's explanation for Kingfisher's lower than expected volumes). The fact that AMR executives felt empowered to ignore comments or input from Moving Defendants indisputably shows that Moving Defendants could not control AMR or any of the alleged misstatements.

In any event, as discussed above, input does not equate to control. As such, Plaintiffs fail to show that any Moving Defendant had the ability to control the alleged misstatements.

**B.     HPS and Bayou City Could Not Have Controlled AMR Through Their Appointment of a Single Board Member Each.**

Plaintiffs and Moving Defendants again agree on the pertinent facts—HPS and Bayou City each had the ability to appoint and did appoint a single board member to AMR's Board of Directors after the Business Combination.[28] But Plaintiffs' argument that HPS and Bayou City's "legal right to appoint one AMR director can be sufficient to show

---

[28] Plaintiffs oddly claim that HPS and Bayou City provided input "through their director appointees" and unidentified "other personnel." Opp. at 9.

the ability to exercise influence" over AMR is contrary to established law. Opp. at 21 (citing *Robertson v. Strassner*, 32 F. Supp. 2d 443, 450 (S.D. Tex. 1998)).

*Dennis v. General Imaging, Inc.*, the controlling Fifth Circuit precedent on this issue that Plaintiffs do not even attempt to distinguish, unambiguously establishes that HPS's and Bayou City's right to appoint a director is insufficient to establish control. 918 F.2d 496, 509-10 (5th Cir. 1990)). While Plaintiffs cite a single district court case to support their theory that the ability to appoint a single director could be sufficient for control, that case is distinguishable. In that case, *Robertson v. Strassner*, the plaintiff alleged that in addition to possessing the right to appoint a director, the defendant that allegedly exercised control was a "controlling shareholder" in and significant creditor of the entity that made the alleged misstatements. 32 F. Supp. 2d at 445, 449. Those additional indicia of control are not present here. Moreover, that case involved a motion to dismiss and was later called into question by the Fifth Circuit in *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364 (5th Cir. 2004), for allowing group pleading in violation of the PLSRA.

To prop up their control allegations, Plaintiffs impute Mr. Dimitrievich's and Mr. McMullen's actions as diligent directors of AMR to HPS and Bayou City, respectively.[29] But their actions as directors have no bearing on whether **HPS** and ***Bayou City*** could have controlled—let alone did control—statements allegedly made by AMR and others on its behalf. The appointment by one company of a director to another

---

[29] *See* Mot. of Donald Dimitrievich for Summ. J. and Incorporated Mem. of Law (ECF No. 431); William McMullen's Mot. for Summ. J. (ECF No. 428).

company's board does not mean that the appointing company controls the director or the other company (particularly where there are ***eleven*** board seats).

*Ho v. Duoyuan Global Water, Inc.* is instructive here. In that case, the plaintiffs alleged securities violations against Duoyuan Global Water ("DGW") and Section 20(a) and Section 15 control person violations under the Securities Exchange Act against DGW's directors, officers, and certain shareholders. 887 F. Supp. 2d 547, 556 (S.D.N.Y. 2012). Among the control person defendants was a director appointed to DGW's board by a minority shareholder in DGW—the Global Environmental Fund ("GEF"). *Id.* at 556-57. The director also served as the managing director of GEF. *Id.* at 557. In dismissing the Section 15 claims[30] against the director and GEF, the court reasoned, "There is no factual support for the inference that the GEF defendants had day-to-day involvement in DGW simply because they were a minority shareholder . . . Additionally, Plaintiffs fail to plead facts supporting the claim that the GEF Defendants controlled [the director] merely because she was appointed to the DGW board by them. As a Director, she owed fiduciary duties to DGW's shareholders, and absent any facts undermining the assumption that she acted in accordance with her duties, Plaintiffs have not made out a sufficient [control] claim based on the GEF Defendants' appointing her to the board." *Id.* at 580-81. The relevant facts here are analogous. In their role as directors, Mr. Dimitrievich and Mr. McMullen

---

[30] Courts generally treat control person claims under Section 15 and Section 20(a) as "parallel provisions" to be "interpreted in the same manner." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d at 660.

acted according to the fiduciary duties they owed AMR's shareholders. HPS and Bayou City did not have control simply because they exercised their right to appoint them.

Even if Plaintiffs could impute these directors' actions to HPS and Bayou City—and they cannot[31]—Plaintiffs have failed to identify any evidence HPS's or Bayou City's single board appointee could have controlled the alleged misstatements made by AMR, or any individual speaking on its behalf. It defies common sense—and the law—that an individual whose sole influence stems from their appointment as one of eleven directors could "control" the other nine directors, the company, or its officers. From a practical perspective, it cannot be the case that every director—as well as companies affiliated with that director—could be held liable as control persons for statements made by the company simply for performing their role as a director.

Likewise, Plaintiffs cannot establish control by impugning the prudent actions of Mr. Dimitrievich and Mr. McMullen as individual AMR Board members (on an **eleven** member board). Plaintiffs' reliance on Mr. Dimitrievich's and Mr. McMullen's required signatures on the 2017 10-K and their individual votes to ultimately remove Mr. Chappelle and Mr. Ellis from their positions does not amount to control over AMR, or any Individual

---

[31] Notably, in *Ho*, the court also dismissed Section 10(b) claims against the director based on an agency theory of liability, and stated, "What is critically missing is any allegation that the GEF Defendants controlled [the director's] actions as she served as a Director for DGW, or anything else indicating that her actions on the Board of DGW were somehow within the scope of her employment at GEF. Indeed, because directors have 'fiduciary duties to act on behalf of the shareholders of [DGW] itself, not on behalf of the entities that appointed them ...' the 'mere fact that [the director] held [a] high position[ ][at] [GEF], and [was] appointed to the [DGW] board by [the GEF Defendants], cannot, standing alone, establish that [she] acted as [an] agent' of the GEF Defendants." *Ho*, 887 F. Supp. 2d at 580.

Defendant speaking on behalf of AMR (much less HPS and Bayou City). Opp. at 22, 25. *See in re BP P.L.C. Sec. Litig.*, 2014 WL 4923749 at *6 (The operative question to determine Section 20(a) liability is whether the alleged controller "possessed or exercised control over those persons or entities who made the actionable misstatements"). Directors must sign Form 10-Ks and boards often have the power to remove officers. Those board actions, however, do not amount to control by the individual directors. *See, e.g.*, *Patriot Expl., LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 362 (D. Conn. 2013) ("[T]he complaint merely recites that they are directors of the company and states that they signed the annual 10–K report. These facts could not establish control person liability."); *In re Tyco Int'l, Ltd.*, MDL No. 02-md-1335-PB, No. 04-cv-1336-PB 2007 WL 1687775, at *8 (D.N.H. June 11, 2007) (rejecting control liability for "director and major shareholder" who "signed false SEC filings" where plaintiffs fail to allege how the director "exercised any control at Tyco or explain why his position as an outside director establishes him as a control person."). Even more far-fetched is the notion that those actions would amount to control by the individual directors' ***appointing entities***.

### C.  ARM Energy Could Not Have Controlled AMR Through the Operating Transition Services Agreement.

After apparently abandoning their allegations that ARM Energy's ownership of no more than 4.8% of AMR suffices for control, Plaintiffs' shift their argument to the February 9, 2018 TSA between ARM Energy and Kingfisher Midstream, LLC. Opp. at 23-24 (citing PX 152). The existence and plain terms of the TSA are not in dispute. But this contract is

patently insufficient to establish that ARM Energy could have controlled the alleged misstatements made by AMR or others on its behalf.

Even assuming ARM Energy could have controlled Kingfisher after the Business Combination because of the TSA (which it could not and did not), Plaintiffs' evidence would not be sufficient to show that ARM Energy could or did control the alleged misstatements made by AMR or AMR's directors and management. The TSA was between ARM Energy and *Kingfisher*, and Plaintiffs have never alleged that *Kingfisher* made any misstatements.[32]

Plaintiffs' attempt to conflate AMR with its subsidiary Kingfisher muddies this straightforward contractual relationship and leads to an illogical outcome. For Plaintiffs' theory to succeed, this Court would have to find that a third party who contracted with the subsidiary of a company somehow controlled statements made by the parent company.

Plaintiffs have not cited any cases, and Moving Defendants are not aware of any cases, that have found a third party liable as a control person of a parent company based on services that the third party provided to its subsidiary under a contract. Plaintiffs' cases do not support this position. Opp. at 24 (citing *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187 (5th Cir. 1979), *on reh'g*, 611 F.2d 105 (5th Cir. 1980); *Commodity Futures Trading Comm'n v. Cartu*, No. 1:20-CV-908-RP, 2023 WL 5246360 (W.D. Tex., Aug. 15, 2023)). Instead, those cases relate to control liability as to individuals employed by a

---

[32] Plaintiffs mischaracterize the TSA, asserting it required ARM Energy to report "financial information and operational results about KFM to AMR." Opp. at 23. The plain terms of the TSA did not impose this requirement on ARM Energy.

company that allegedly made misstatements stemming from their "day-to-day" control or management over that company. But neither case addresses whether a ***third party*** could be liable as a control person based on a contractual relationship with the subsidiary of the company that allegedly made misstatements.[33]

Even more unsettling, holding ARM Energy liable for statements allegedly made by AMR after the Business Combination would discourage others from agreeing to TSAs, which serve an important purpose, in similar transactions. Acquiring entities often contract with sellers to provide these types of services to ensure a smooth transition, maintain necessary institutional knowledge, and ultimately bolster the resulting entity's chances of success. These agreements work in the interest of shareholders. But if sellers can be held liable for the acquiring entity's statements because they are providing transitional services, then sellers would be hesitant to agree to assist with the corporate transition.

### D. Plaintiffs Have Never Pled and Cannot Show that Moving Defendants Collectively Exercised Control.

Knowing that these arguments are insufficient to sustain their Section 20(a) claims against Moving Defendants, Plaintiffs suggest, without citing a shred of evidence, that Moving Defendants can somehow be liable as a group. This allegation, too, fails.

---

[33] Notably, in one of these cases, *Cameron v. Outdoor Resorts of America, Inc.*, the Fifth Circuit found that the director of a company "without effective day-to-day control and without knowledge" was *not* liable as a controlling person. *Cameron*, 608 F.2d 187, 195 (5th Cir. 1980). Plaintiffs' second cited case does not even involve Section 10(b) or 20(a) claims. *Commodity Futures Trading Comm'n*, 2023 WL 5246360 (denying a motion to dismiss the CFTC's control person claims under the Commodity Exchange Act against the *owner* of an entity that allegedly controlled the company's actions through his day-to-day management and was directly involved in the specific transactions at issue.).

As a threshold matter, Plaintiffs do not allege in their Complaint that Moving Defendants "worked in concert" to exercise control over AMR, Defendant Chappelle, or any other individual that purportedly made an alleged misstatement. Plaintiffs cannot change their pleading now to avoid summary judgment. *U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("[T]he Supreme Court … does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage[.]").

But even if Plaintiffs had previously alleged that Moving Defendants acted together to control AMR, Plaintiffs have marshalled no evidence that the Moving Defendants coordinated or otherwise collectively sought to influence or control AMR, Mr. Chappelle, or any other individual that allegedly made a misstatement. Rather than point to any evidence of collective control, Plaintiffs make the unremarkable assertion that HPS and Bayou "had a historic relationship with each other." Opp. at 21. That is plainly irrelevant to whether Moving Defendants exercised collective control over AMR.

Plaintiffs reference an inapposite case where the Ninth Circuit reversed a district court's decision to dismiss Section 20(a) claims. Putting aside that *No. 84 Emp.-Teamster* involved a motion to dismiss in a different circuit, the two defendants in that case collectively held nearly 60% ownership interest in, appointed nine of the 15 board members for the company that allegedly made the misstatements, and were alleged to have made the misstatements themselves. *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 (9th Cir. 2003). That is distinguishable from this case: Plaintiffs do not and cannot dispute that Moving Defendants did not collectively

appoint a majority of AMR's Board of Directors—they appointed a mere two of the eleven directors to AMR's Board—and they do not allege that Moving Defendants made any misstatements themselves.

## **CONCLUSION**

For the foregoing reasons and those set forth in the Motion, Moving Defendants respectfully request summary judgment on Count II and Count IV of the Third Amended Complaint for Class Plaintiffs, ECF No. 218, and Count II and Count V of both the Alyeska, ECF No. 1, and Orbis, ECF No. 1, Complaints.

Dated:    September 28, 2023

Respectfully submitted,

/s/ *David A. Baay*
David A. Baay (*Attorney-in-Charge*)
Fed. ID No. 598715
**EVERSHEDS SUTHERLAND (US) LLP**
1001 Fannin Street, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6112
Fax: (713) 654-1301
davidbaay@eversheds-sutherland.com

Bruce M. Bettigole (*pro hac vice*)
The Grace Building, 40th Floor
1114 Avenues of the Americas
New York, NY 10023
Telephone: (212) 389-5000
Fax: (212) 389-5099
brucebettigole@eversheds-sutherland.com

Adam C. Pollet (*pro hac vice*)
Andrea Gordon (*pro hac vice*)
700 Sixth Street N.W., Suite 700
Washington, DC 20001

25

Telephone: (202) 383-0100
Fax: (202) 637-3593
adampollet@eversheds-sutherland.com
andreagordon@eversheds-sutherland.com

**COUNSEL TO ARM ENERGY
HOLDINGS, LLC**

Karl S. Stern (attorney in charge) (SBN
19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 / Facsimile:
(713) 221-7100
Email: karlstern@quinnemanuel.com
chrisporter@quinnemanuel.com


**-AND-**


Michael B. Carlinsky (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000 / Facsimile:
(212) 849-7100
Email:
michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
courtneywhang@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT
PARTNERS, LLC AND DON
DIMITRIEVICH**

Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
Kenneth A. Young (Attorney-in-Charge)
Texas Bar No. 25088699,

26

S.D. Tex. ID 2506614
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:    (713) 836-3600
Fax:    (713) 836-3601
Emails:   nick.brown@kirkland.com
         kenneth.young@kirkland.com

**COUNSEL FOR BAYOU CITY
ENERGY MANAGEMENT, LLC AND
WILLIAM MCMULLEN**

## CERTIFICATE OF SERVICE

On September 28, 2023, I hereby certify that I have electronically filed the foregoing REPLY BRIEF IN SUPPORT OF JOINT MOTION OF HPS INVESTMENT PARTNERS, LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; AND ARM ENERGY HOLDINGS, LLC FOR SUMMARY JUDGMENT ON CLASS AND OPT-OUT PLAINTIFFS' SECTION 20(a) CLAIMS, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *David A. Baay*
By:  David A. Baay