# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 **<u>CLASS ACTION</u>** [Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <p style="text-align:center">Plaintiffs,</p> v. <br>ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <p style="text-align:center">Defendants.</p> | Civil Action No. 4:22-cv-001189 [Consolidated Case] |

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

|  |  |
|---|---|
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | Civil Action No. 4:22-cv-02590 [Consolidated Case] |

                    Plaintiffs,

          v.

ALTA MESA RESOURCES, INC., f/k/a
SILVER RUN ACQUISITION
CORPORATION II; RIVERSTONE
HOLDINGS LLC; ARM ENERGY
HOLDINGS LLC; BAYOU CITY ENERGY
MANAGEMENT, LLC; HPS INVESTMENT
PARTNERS, LLC; JAMES T. HACKETT,
HARLAN H. CHAPPELLE, WILLIAM
GUTERMUTH, JEFFREY H. TEPPER,
DIANA J. WALTERS; MICHAEL E. ELLIS;
RONALD SMITH; DON DIMITRIEVICH;
PIERRE F. LAPEYRE, JR.; DAVID M.
LEUSCHEN; WILLIAM W. MCMULLEN;
DONALD SINCLAIR; STEPHEN COATS;
and THOMAS J. WALKER,

                    Defendants.

**REPLY IN FURTHER SUPPORT OF DONALD DIMITRIEVICH'S
MOTION FOR SUMMARY JUDGMENT**

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.   PLAINTIFFS' FAILURE TO ADDRESS THE SUFFICIENCY OF THEIR
     PLEADINGS WARRANTS DISMISSAL OF THEIR CLAIMS ......................... 2

II.  PLAINTIFFS FAIL TO PUT FORTH ANY EVIDENCE TO SUPPORT
     THEIR CLAIM THAT MR. DIMITRIEVICH ACTED WITH SCIENTER ......... 3

     A.   Plaintiffs Fail To Offer Evidence About Mr. Dimitrievich's Intent In
          Signing The 2017 10-K ................................................................... 5

     B.   Evidence That Post-Dates The Signing Of The 2017 10-K Does Not
          Support An Inference Of Scienter ................................................... 8

     C.   Plaintiffs' Speculation Regarding Purported Access To Information
          And Motive Are Not Evidence of Scienter ................................... 11

          1.   Access To Unspecified Information Does Not Establish That
               Mr. Dimitrievich Acted With Scienter ............................... 12

          2.   Arguments Regarding Mr. Dimitrievich's Purported Motive
               Cannot Salvage Plaintiffs' 10(b) Claims............................ 18

III. PLAINTIFFS FAIL TO PUT FORTH ANY EVIDENCE THAT MR.
     DIMITRIEVICH IS LIABLE AS A SECTION 20(**A**) CONTROL
     PERSON ............................................................................................... 19

CONCLUSION ................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Abecassis v. Wyatt*,
  902 F. Supp. 2d 881 (S.D. Tex. 2012) .......................................................................... 23

*Abrams v. Baker Hughes Inc.*,
  292 F.3d 424 (5th Cir. 2002) .............................................................................. 13, 19

*Alvarado v. Shipley Donut Flour & Supply Co., Inc.*,
  526 F. Supp. 2d 746 (S.D. Tex. 2007) ........................................................................ 23

*Amburgey v. Corhart Refractories Corp.*,
  936 F.2d 805 (5th Cir. 1991) .................................................................................... 24

*Batwin v. Occam Networks, Inc.*,
  2008 WL 2676364 (C.D. Cal. July 1, 2008) .............................................................. 20

*In re BP P.L.C. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012) ................................................................. 12, 13

*In re BP P.L.C. Sec. Litig.*,
  922 F. Supp. 2d 600 (S.D. Tex. 2013) ........................................................................ 20

*Broadway v. City of Montgomery*,
  530 F.2d 657 (5th Cir. 1976) ...................................................................................... 7

*In re Browning-Ferris Ind. Inc. Sec.*,
  876 F. Supp. 870 (S.D. Tex. 1995) .............................................................................. 4

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) ....................................................................... 10

*Curtis v. City of Hou.*,
  2011 U.S. Dist. LEXIS 145906 (S.D. Tex. Dec. 18, 2011) ......................................... 12

*Cutrera v. Bd. of Supervisors of La. State Univ.*,
  429 F.3d 108 (5th Cir. 2005) ...................................................................................... 5

*Dennis v. Gen. Imaging, Inc.*,
  918 F.2d 496 (5th Cir. 1990) .............................................................................. 19, 20

*Duffy v. Leading Edge Prods., Inc.*,
   44 F.3d 308 (5th Cir. 1995) ........................................................................... 4

*In re Dynegy, Inc. Sec. Litig.*,
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ........................................................ 20

*Eason v. Thaler*,
   73 F.3d 1322 (5th Cir. 1996) ....................................................................... 4

*Edgar v. Anadarko Petroleum Corp.*,
   2018 WL 3032573 (S.D. Tex. June 19, 2018) ......................................... 5, 6

*Eldridge v. Byrd*,
   2005 WL 2217509 (N.D. Tex. Sept. 12, 2005) ............................................ 4

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................... 16, 21

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
   565 F.3d 200 (5th Cir. 2009) ....................................................................... 6

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994) ....................................................................... 4

*In re Franklin Bank Corp. Sec. Litig.*,
   782 F. Supp. 2d 364 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher
   Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012) ........................ 15

*G.A. Thompson & Co. v. Partridge*,
   636 F.2d 945 (5th Cir. 1981) ..................................................................... 22

*Goldstein v. MCI WorldCom*,
   340 F.3d 238 (5th Cir. 2003) ............................................................... 13, 17

*Green v. JP Morgan Chase Bank, N.A.*,
   562 F. App'x 238 (5th Cir. 2014) ............................................................... 23

*Harvey v. Caesars Ent. Operating Co., Inc.*,
   790 F. App'x 582 (5th Cir. 2019) ............................................................... 23

*Humphrey v. United Way of the Tex. Gulf Coast*,
   2010 WL 4791486 (S.D. Tex. Nov. 15, 2010) ............................................. 2

*In re I.C.H. Corp.*,
   1998 WL 386165 (N.D. Tex. July 8, 1998) ........................................... 10, 11

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Cir. 2008) ............................................................ 6, 15, 18

*In re Key Energy*,
   166 F. Supp. 3d 822 (S.D. Tex. 2016) ........................................................ 19

*Lamb v. Ashford Place Apartments L.L.C.*,
   914 F.3d 940 (5th Cir. 2019) .................................................................. 7, 14

*Levias v. Tex. Dep't of Crim. Just.*,
   352 F. Supp. 2d 751 (S.D. Tex. 2004) ........................................................ 24

*Loc. 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*,
   2015 WL 1143081 (S.D. Tex. Mar. 13, 2015)............................................. 12

*Magruder v. Halliburton Co.*,
   359 F. Supp. 3d 452 (N.D. Tex. 2018) ...................................................... 8, 9

*Malacara v. Garber*,
   353 F.3d 393 (5th Cir. 2003) ...................................................................... 24

*Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enter., LLC*,
   2023 WL 2719466 (S.D. Tex. Mar. 30, 2023).............................................. 4

*N. Port Firefighters' Pension—Local Option Plan v. Temple-Inland, Inc.*,
   936 F. Supp. 2d 722 (N.D. Tex. 2013) ...................................................... 16

*New Jersey & its Division of Investment v. Sprint Corp.*,
   314 F. Supp. 2d 1119 (D. Kan. 2004) ........................................................ 21

*Ouabderhm v. Money Source, Inc.*,
   2020 WL 4287594 (S.D. Tex. July 27, 2020)........................................... 7, 14

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) ............................................................. 3, 4, 15

*Patriot Expl., LLC v. SandRidge Energy, Inc.*,
   951 F. Supp. 2d 331 (D. Conn. 2013)........................................................ 20

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
   307 F. Supp. 3d 583 (S.D. Tex. 2018), *aff'd on other grounds sub nom.
   Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline,
   L.P.*, 777 F. App'x 726 (5th Cir. 2019)...................................................... 13

iv

*Ragas v. Tennessee Gas Pipeline Co.*,
   136 F.3d 455 (5th Cir. 1998) ............................................................................ 4

*Ramsey v. Henderson*,
   286 F.3d 264 (5th Cir. 2002) .......................................................................... 22

*Richards v. Stephens*,
   2014 WL 1882631 (S.D. Tex. May 12, 2014) ............................................... 12

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ............................................................................ 9

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) .......................................................................... 11

*Stockman v. Flotek Indus., Inc.*,
   2010 WL 3785586 (S.D. Tex. Sept. 29, 2010) ............................................... 20

*In re TETRA Techs., Inc. Sec. Litig.*,
   2009 WL 6325540 (S.D. Tex. July 9, 2009), *order clarified*, 2009 WL
   6326865 (S.D. Tex. Aug. 10, 2009) ........................................................... 9, 11

*Tex. Comm. Energy v. TXU Energy, Inc.*,
   413 F.3d 503 (5th Cir. 2005) ............................................................................ 3

*Tilson v. Disa, Inc.*,
   2019 WL 6878867 (M.D. La. Dec. 17, 2019), *aff'd*, 828 F. App'x 193
   (5th Cir. 2020) ................................................................................................... 5

*Town N. Bank, N.A. v. Shay Fin. Servs., Inc.*,
   2014 WL 4851558 (N.D. Tex. Sept. 30, 2014) ............................................... 24

*Trendsetter Inv'rs, LLC v. Hyperdynamics Corp.*,
   2007 WL 172627 (S.D. Tex. Jan. 18, 2007) ..................................................... 6

*In re Tyco Int'l, Ltd.*,
   2007 WL 1687775 (D.N.H. June 11, 2007) ............................................... 20, 21

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) .......................................................................... 24

## **Statutes and Rules**

Exchange Act Section 10(b) ........................................ 1, 2, 4, 5, 6, 9, 10, 11, 17, 18, 19, 25

Exchange Act Section 20(a) ............................................................ 1, 2, 19, 22, 23, 24, 25

SEC Rule 10b-5 ................................................ 2, 25  BA_Cite_20701A_000191

SEC Rule 5605(a)(2) ................................................................................. 16

Fed. R. Civ. 54(b) ..................................................................................... 2

Fed. R. Civ. 56 ......................................................................................... 1

Fed. R. Civ. 60 ......................................................................................... 2

Donald Dimitrievich respectfully submits this reply brief in further support of his Motion for Summary Judgment under Rule 56 (the "Motion" or "Mot.").

## INTRODUCTION

After over two years of discovery involving millions of pages of documents and dozens of fact depositions, Plaintiffs have provided this Court with what they have to support their respective cases:  absolutely nothing.  Rather than marshal real evidence to support their claims, Plaintiffs' Opposition ("Opposition" or "Opp.") continues Plaintiffs' strategy of conflating parties, muddying timelines, and mischaracterizing documents to obscure their failure to adduce evidence that Mr. Dimitrievich had the requisite intent or control, to support Plaintiffs' claims.[1]  The case against Mr. Dimitrievich should end here.

Indeed, compelled at last to support their allegations specifically against Mr. Dimitrievich, Plaintiffs fall far short of demonstrating a triable issue of fact.  To be clear, Mr. Dimitrievich is charged with having made just *two* misrepresentations, both of which appear in the 2017 10-K that he signed after the Business Combination.  Yet Plaintiffs are unable to muster evidence that he knew, or was reckless in not knowing, that either one was supposedly false at the time he signed the 2017 10-K.  Indeed, Plaintiffs barely mention the alleged misstatements on which their 10(b) claim is based.

Plaintiffs' 20(a) claim fares no better, as they fail to offer evidence beyond that Mr. Dimitrievich was an Alta Mesa Resources, Inc. ("AMR") director who signed the 2017 10-K, which is insufficient to raise a material issue of fact as to control of any

---

[1] The Opt-Out Plaintiffs did not file their own opposition, but only a Joinder in Class Plaintiffs' Opposition to the Motion.  *See* Dkt. 448.  As a result, the Opt-Outs have waived multiple allegations against Mr. Dimitrievich.

Defendants who allegedly made misstatements.  And Plaintiffs' false claim that Mr. Dimitrievich did not address Plaintiffs' 20(a) claim for misrepresentations apart from the 10-K is belied by a simple review of his opening brief.

Mr. Dimitrievich respectfully requests summary judgment on Plaintiffs' claims under Section 10(b), Rule 10b-5, and Section 20(a).

## ARGUMENT

## I.   PLAINTIFFS' FAILURE TO ADDRESS THE SUFFICIENCY OF THEIR PLEADINGS WARRANTS DISMISSAL OF THEIR CLAIMS

As set forth in the Motion, it is well-settled that a party may seek summary judgment on the basis of fatally deficient pleadings.  Mot. at 6-8.  Plaintiffs respond that Mr. Dimitrievich may address Plaintiffs' pleading failures only by moving, under Rule 60, for reconsideration of the Orders denying Defendants' motions to dismiss.  Opp. at 12.  That is flat wrong.  Defendants may raise Plaintiffs' deficient pleadings at this stage "because there has been no appeal of the Court's determination," and caselaw "does not apply to bar a district court from reconsidering its own prior orders."  *Humphrey v. United Way of the Tex. Gulf Coast*, 2010 WL 4791486, at *23 (S.D. Tex. Nov. 15, 2010) (citations omitted).  Further, under Rule 54(b), this Court may revise a non-final, interlocutory order "at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b).

Indeed, the Court itself recognized this when it denied Defendants' motions to dismiss the Opt-Outs' complaints (the "Opt-Out MTD Order") "without prejudice to being reasserted as motions for summary judgment."  Dkt. 343 at 1, 14.  To sidestep this

issue, Plaintiffs have declined to address their pleading deficiencies, relying instead on the tenuous assertion that the Opt-Out MTD Order is somehow unrelated to the Class Action.   But that argument makes little sense given that, among other similarities between the Class Complaint and Opt-Out pleadings, each is "based on the same nucleus of operative facts ... and challeng[es] many of the same statements."   Dkt. 343 at 2 (citations omitted).   There is no reason the Opt-Outs' pleadings are subject to dismissal on summary judgment, but Plaintiffs' closely-related pleadings are immune.

More fundamentally, in relying exclusively on the fact that their case passed a motion to dismiss, Plaintiffs ignore that this is the first time they must address Mr. Dimitrievich as an ***individual***, in contrast to their omnibus opposition at the pleading stage that allowed them to distract and hide by grouping Defendants together.   The Court declined to permit an omnibus response here, *see* Dkt. 439 (Order denying Class Plaintiffs' motion for leave to file a consolidated opposition), and so, having to address Mr. Dimitrievich on his own, Plaintiffs simply refuse to engage.   That alone is fatal to their claims.

Plaintiffs' decision to forgo addressing these arguments means they have now waived any opportunity to do so, and their claims must be dismissed.   *See, e.g.*, *Tex. Comm. Energy v. TXU Energy, Inc.*, 413 F.3d 503, 510 (5th Cir. 2005) (citation omitted).

## II.   PLAINTIFFS FAIL TO PUT FORTH ANY EVIDENCE TO SUPPORT THEIR CLAIM THAT MR. DIMITRIEVICH ACTED WITH SCIENTER

As set forth in the Motion, summary judgment should also be granted because the record includes ***no evidence*** suggesting Mr. Dimitrievich acted with intent to defraud

anyone.  *See* Mot. at 15-20; *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) ("The required state of mind [for scienter] is an intent to deceive, manipulate, defraud or severe recklessness.").   When called upon to rebut this point, Plaintiffs offer nothing:   the Opposition includes no competent evidence as to Mr. Dimitrievich's intent.   Plaintiffs instead point to documents and testimony unrelated to the two alleged misstatements at issue, conclusory assertions and speculation, and irrelevant (and inapposite) accusations about motive.

Where, as here, the movant can show that "[t]here is no evidence in the record that [defendant] intentionally misled" investors, *In re Browning-Ferris Ind. Inc. Sec.*, 876 F. Supp. 870, 895 (S.D. Tex. 1995),[2] and the non-movant cannot "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports the opponent's claim," *Eldridge v. Byrd*, 2005 WL 2217509, at *1 (N.D. Tex. Sept. 12, 2005) (citing *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998)), dismissal of a Section 10(b) claim is proper.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (summary judgment may be granted where "the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation") (citation omitted); *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996) ("[M]ere conclusory allegations … are insufficient to defeat a motion for summary judgment").

---

[2] *See also*, *e.g.*, *Mesa Underwriters Specialty Ins. Co. v. Whitfield & Breitigam Enter., LLC*, 2023 WL 2719466, at *3 (S.D. Tex. Mar. 30, 2023) (summary judgment can be granted where the movant "point[s] out the absence of evidence supporting the non-movant's case") (citing *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).

## A.     Plaintiffs Fail To Offer Evidence About Mr. Dimitrievich's Intent In Signing The 2017 10-K

Plaintiffs have consistently asserted that Mr. Dimitrievich's liability under Section

10(b) arises exclusively from two alleged misstatements in the 2017 10-K:

- "If third-party pipelines or other midstream facilities interconnected to our gathering, processing, storage or transportation systems become partially or fully unavailable, or if the volumes we gather, process, store or transport do not meet the quality requirements of the pipelines or facilities to which we connect, our gross profit and cash flow could be adversely affected." (the "Risk Factor Statement"); and

- "During the most recently completed fiscal quarter [*i.e.*, Q4 2017], there [had] been no change in [Silver Run Acquisition Corporation II's] internal control over financial reporting that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting." (the "Internal Control Statement").[3]

Dkt. 218 (Third Amended Complaint or "TAC") at ¶¶ 210, 212.[4]  The mere fact that Mr.

Dimitrievich signed the 2017 10-K is insufficient to prove he did so with any intent to

defraud.[5]  *Edgar v. Anadarko Petroleum Corp.*, 2018 WL 3032573, at *13 (S.D. Tex.

June 19, 2018) (dismissing § 10(b) claim where "plaintiffs allege that [defendants] signed

the 2015 Form 10-K, but [] allege nothing to indicate that those defendants knew material

---

[3] Mr. Dimitrievich joined the portion of Mr. McMullen's Motion for Summary Judgment, Dkt. 427, as to which alleged misstatements are attributable to Mr. Dimitrievich and Mr. McMullen.  Mot. at 17 n.38.  Mr. McMullen's motion explained correctly that the only two alleged misstatements at issue, are the two described here.  *See* Dkt. 427 at 19.  Plaintiffs did not object to this in their opposition to Mr. McMullen's motion, *see* Dkt. 449, so they cannot do so here.

[4] Having joined Class Plaintiffs, Opt-Outs rely on Class Plaintiffs' arguments, *see* Dkt 447, 448, and so fail to address—and therefore waive—arguments as to the misstatements alleged by Opt-Outs and the fact that causes of action arising from those alleged misstatements are time-barred.  *See* Reply to Opt-Out Plaintiffs' Joinder dated September 28, 2023.

[5] Any attempt in the Opposition to expand Class Plaintiffs' claims and hold Mr. Dimitrievich liable for the totality of the 2017 10-K must fail.  Class Plaintiffs previously represented to the Court—and pleaded—that their Section 10(b) claim against Mr. Dimitrievich is premised on the two alleged misstatements noted above.  *See* Dkt. 139-3 at 7.  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).  Plaintiffs' attempt to add new allegations in the Opposition should be disregarded.  *See Tilson v. Disa, Inc.*, 2019 WL 6878867, at *4 (M.D. La. Dec. 17, 2019), *aff'd*, 828 F. App'x 193 (5th Cir. 2020) ("[A]n opposition cannot substantively expand or refine a party's claims presented in its original complaint.").

facts inconsistent with the [] *statements at issue*.") (emphasis added).

Instead, for each alleged misrepresentation, Plaintiffs must "explicitly and precisely set out ... why [Mr. Dimitrievich] knew (or recklessly disregarded the fact that) the statement was misleading," *id.* at *8, because the court must "examine the scienter allegations pertinent to each category of alleged misstatements." *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 534 (5th Cir. 2008). Plaintiffs "cannot simply lump together all of the scienter allegations in [their] complaint and assert that, taken together, they establish a strong inference of scienter in some general sense." *Trendsetter Inv'rs, LLC v. Hyperdynamics Corp.*, 2007 WL 172627, at *14 (S.D. Tex. Jan. 18, 2007).

Courts dismiss 10(b) claims when plaintiffs cannot adduce scienter evidence as to each misstatement *individually*. *See e.g., Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 210 (5th Cir. 2009) ("Appellants have not provided evidence to support a strong inference of scienter."). Thus, a plaintiff must adduce specific proof showing that the defendant knew or was reckless as to the falsity of the specific misrepresentation that he is charged with making. Plaintiffs fail to do so, answering Mr. Dimitrievich's invitation to offer evidence of his intent when executing the 2017 10-K with irrelevant or incompetent assertions and documents, or evidence that actually undermines Plaintiffs' claim.[6]

---

[6] For example, Plaintiffs claim that ███████████████████████████████████ ████████████ ██████████████████████ ████████████████ Plaintiffs do not suggest that Mr. Dimitrievich was aware of, much less engaged in, any such trading, nor identify the affiliates. And the e-mail on which Plaintiffs base this assertion nowhere suggests the speaker had first-hand knowledge of the purported sales,

To overcome Plaintiffs' complete lack of evidence regarding Mr. Dimitrievich's alleged scienter, Plaintiffs repeatedly cited a March 2018 email chain in which a speaker refers to HPS as ████████████████████████████████████ ████████████████████████ But this e-mail (which is apparently the best that Plaintiffs could muster), is not "evidence" of scienter as to Mr. Dimitrievich for several reasons.

████████████████████████████████████████

██████   ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Having left the testimony on this email vague, Plaintiffs rely instead on their unsubstantiated claim that this email was a reference to Mr. Dimitrievich.  But such speculation and guesswork is inappropriate, especially at the summary judgement phase.  *See Ouabderhm v. Money Source, Inc.*, 2020 WL 4287594, at *3 (S.D. Tex. July 27, 2020) ("A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." (citing *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019)).  Plaintiffs' wishful thinking about this document cannot substitute for evidence.

*Second*, and more importantly, this email ***does not even deal*** with the two alleged misstatements in the 10-K, but rather the KFM projections included in the Proxy,

---

making the assertion *at least* hearsay and incompetent summary judgment evidence.  *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976) (hearsay evidence does not create a genuine issue of material fact).

something for which Mr. Dimitrievich was **not even sued**.[7]  And, as Plaintiffs themselves concede, KFM's miss, and revision to its 2018 projections, **was fully disclosed to the market** on March 29, 2018, the same day the 10-K was signed. Ex. K (8-K (March 29, 2018)) at Exhibit 99.1; Ex. J (AMR_SDTX00003088, March 29, 2018 Investor Call Presentation) at 10.  Something that is fully disclosed cannot serve as the basis for fraud. *See Callinan v. Lexicon Pharms., Inc.*, 479 F. Supp. 3d 379, 408-09 (S.D. Tex. 2020), *aff'd*, 858 F. App'x 162 (5th Cir. 2021) (where the basis for plaintiffs' securities fraud claim "was, in fact, [already] publicly disclosed" it "could not have made [the later statements] misleading.").  And again, Plaintiffs did not even try to connect this to the two alleged misstatements for which Mr. Dimitrievich has actually been sued.

It is telling that after over two years of discovery, this is the best that Plaintiffs could muster:  a document that does not mention Mr. Dimitrievich, does not mention the two alleged misstatements at issue, and discusses an issue that was fully disclosed to the market.  Stated differently, Plaintiffs **have no evidence** to raise a genuine factual dispute.

## B.    Evidence That Post-Dates The Signing Of The 2017 10-K Does Not Support An Inference Of Scienter

Plaintiffs also place heavy reliance on documents and evidence that post-date the 2017 10-K regarding Mr. Dimitrievich's alleged knowledge of well-spacing, but this evidence is also irrelevant to establish scienter for at least two reasons.  *First*, "[s]cienter must exist **at the time the misrepresentation occurred**," *Magruder v. Halliburton Co.*,

---

[7] Specifically, Mr. McMullen testified █████████████████████████
████████████████████████████     ███████████████████████████
████████████████████████     ████████████████████
████████████████████████████

359 F. Supp. 3d 452, 471 (N.D. Tex. 2018), meaning that this *post-hoc* evidence cannot establish a genuine factual issue on the question of scienter.  And *second*, even putting that issue aside, Plaintiffs fail to connect knowledge about proper well-spacing or production to the two alleged misstatements.  These alleged misstatements concern internal controls and third-party pipeline capacity, and Plaintiffs do not bother to explain the connection between these issues and well-spacing.



For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[9]  Plaintiffs cannot prove scienter by hindsight. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867-68 (5th Cir. 2003) (affirming dismissal of Section 10(b) claims because report was dated "well after the alleged misrepresentations" and "plainly a hindsight assessment").

Plaintiffs also claim that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮ Plaintiffs assert Mr. Dimitrievich knew this fact because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[8] This cite is likely a typo.  PX 170 at 146:4-17 does not include the cited quote, and instead makes clear that the referenced document post-dates the 2017 10-K.

[9] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Nor are they proof that he held that opinion at the time of the alleged misstatements.  *See, e.g.*, *In re TETRA Techs., Inc. Sec. Litig.*, 2009 WL 6325540, at *8, *22-23 (S.D. Tex. July 9, 2009), *order clarified*, 2009 WL 6326865 (S.D. Tex. Aug. 10, 2009) (ex post statements "do not suggest that [defendant] knew that officers within his company were committing intentional or severely reckless fraud sufficient to create a strong inference of scienter").

███████████ (citing PX 156 at 58-59, 200).  But the exhibits Plaintiffs' reference

say no such thing.  Rather, they indicate that, ***as of August 2019***, ***with the benefit of an***

***additional year of well results to test against those prior assumptions***, AMR was aware

that assumptions made in February 2018 required revision.  AMR's conclusion in 2019

cannot prove anything about Mr. Dimitrievich's knowledge in March 2018 (much less

2017).[10]  And, again, Plaintiffs fail to meet their burden of explaining what well-spacing

or production have to do with the subject of the two alleged misstatements—knowledge

of problems with midstream pipeline availability or internal controls.[11]

Similarly, evidence of AMR's ultimate write-down and bankruptcy are not

probative of Mr. Dimitrievich's knowledge in March 2018 when he signed the 2017

10-K—and do not raise a material issue of fact as to whether Mr. Dimitrievich acted with

scienter at that time.  *Carlton v. Cannon*, 184 F. Supp. 3d 428, 469 (S.D. Tex. 2016)

(fraud-by-hindsight, which is "based on the fact that [because] something turned out

badly must mean the defendants knew earlier that it would turn out badly," is insufficient

to prove scienter (quotations and alterations omitted)); *In re I.C.H. Corp.*, 1998 WL

---

[10] Notably, Plaintiffs do not claim that Mr. Dimitrievich is liable under Section 10(b) for statements made in the 2018 10-K (signed in August 2019).  And, in any case, Plaintiffs again rip the evidence from its context:  there is no document or testimony in which Mr. Dimitrievich admits that he knew, ***as of March 2018***, that well-spacing or production assumptions were incorrect; the August 2019 10-K refers to the Company's knowledge, ***in hindsight***, that its projections in March 2018 were off.  PX 156 at 58-59.

[11]  The most Plaintiffs even attempt to do is tie the alleged misrepresentations to well-spacing is limited to a single, confusing paragraph buried on page 21 of their brief.  There, they claim with no explanation and no citation or support that the taking of an impairment late in the fourth quarter of 2018, as described in the 2018 10-K filed in August 2019, somehow shows a "material weakness in AMR's internal controls" as of March 2018.  *See* Opp. at 21. This confusing, unexplained assertion cannot create a genuine issue of material fact, given that Plaintiffs have not even bothered to explain how or why the impairment or well-spacing actually relates to an internal controls issue. Nor is the court required to hunt and peck to cobble together Plaintiffs' explanation for them.  And in any event, even if the Court could credit an assumption that an impairment existed as of March 2018 and somehow related to internal controls, that still would not implicate the 2017 10-K, which concerns the internal controls of the SPAC before the Business Combination, as of the end of Q4 2017.

386165, at *5 (N.D. Tex. July 8, 1998) (no scienter where defendants signed a 10-K containing financial information that was later restated ahead of bankruptcy).

Likewise, the ultimate removal of AMR's management in *December 2018* is not evidence of Mr. Dimitrievich's knowledge in *March 2018* when he signed the 2017 10-K. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004) ("[S]ubsequent [events] are unpersuasive of scienter.").  It is "equally plausible"—indeed, far *more* plausible based on actual evidence—that Mr. Dimitrievich and the AMR board took corrective actions following a "hindsight analysis of problems that had occurred."  *See In re TETRA Techs.*, 2009 WL 6325540, at *23. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████  ███████████████████████

████████████████████████████████████████████████

████████████  ███████████  █  ████████████████████

████████████████████████████████████████████████

████████████████  Plaintiffs' backward-looking evidence cannot support their 10(b) claim.

## C. Plaintiffs' Speculation Regarding Purported Access To Information And Motive Are Not Evidence of Scienter

Plaintiffs rely on tenuous conclusions and speculation that is not competent evidence of fraud.  *See e.g.,* Opp. at 18 ("Dimitrievich certainly knew of AMH's well production data, as well as its pattern spacing tests."), ████████████████████,

██████████████████████████ "Conclusory assertions founded on mere possibility do not carry evidentiary weight" and need not be accepted. *Curtis v. City of Hou.*, 2011 U.S. Dist. LEXIS 145906, at *8 (S.D. Tex. Dec. 18, 2011).

Nonetheless, Plaintiffs choose to "rel[y] on a string of 'plaus[i]bilities' and 'implaus[i]bilities' about what [Mr. Dimitrievich] knew or should have known" based on his purported access to certain information, his role as an AMR director, and his attendance at certain meetings. *See Loc. 210 Unity Pension & Welfare Funds v. McDermott Int'l Inc.*, 2015 WL 1143081, at *9 (S.D. Tex. Mar. 13, 2015). As set forth below, this is insufficient for scienter. *See id.* (no scienter absent "particularized evidence that the individual defendants learned specific bad facts at specific meetings and later made a false statement with knowledge of the truth of those bad facts"). And having declined to ask Mr. Dimitrievich about key documents and events, Plaintiffs are stuck with a paltry record of their own making.[12]

### 1. Access To Unspecified Information Does Not Establish That Mr. Dimitrievich Acted With Scienter

Plaintiffs rely heavily on the insufficient argument that because Mr. Dimitrievich purportedly had "access" to certain information, he must have known facts contrary to the two alleged misstatements from the 2017 10-K. *See, e.g.*, Opp. at 6-7 (citing PX 172); *id.* at 7 (citing PX 2); *id.* at 17-18 (citing PX 175); *id.* at 19 (citing PX 170).[13] Simply

---

[12] To be clear, Plaintiffs' failure to solicit testimony from Mr. Dimitrievich on these topics was not due to a lack of time. Plaintiffs concluded his deposition after only ***half*** the available time, and after spending ***less than 10 minutes*** asking about the sole basis for his liability: the 2017 10-K.

[13] Plaintiffs make a number of claims about Mr. Dimitrievich's access to information for which they do not even attempt to provide support. *See* Opp. at 3, 24, 25. These conclusory assertions are unsupported by record evidence and entitled to no weight. *Richards v. Stephens*, 2014 WL 1882631, at *7-9, 15 (S.D. Tex. May 12, 2014) (granting summary judgment because conclusory claims unsupported by record evidence were meritless).

demonstrating that a defendant had access to internal information is not enough to support scienter—particularly where, as here, Plaintiffs fail to explain how that information contradicted the two alleged misstatements.  *See In re BP P.L.C. Sec. Litig.*, 852 F. Supp. 2d 767, 816-17 (S.D. Tex. 2012).  Evidence is probative only where there are "specific allegations about the document, its author, contents and character, and when and by whom it was received, to link it to the person making the challenged statement, at the time the statement was made."  *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 616 (S.D. Tex. 2018), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline*, L.P., 777 F. App'x 726 (5th Cir. 2019) (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002)); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 253 (5th Cir. 2003) (following *Abrams* and noting the allegations there "that the individual defendants (the CEO and CFO) received daily, weekly, and monthly financial reports that appraised them of the company's true financial status" were insufficient).  Plaintiffs' identification of categories of information to which Mr. Dimitrievich supposedly had access therefore does not support their claims.

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████ █████████████ ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████.  Moreover, Plaintiffs forwent the opportunity to question Mr. Dimitrievich on this topic in order to try to link PX 2 to the alleged

13

misstatements in the 2017 10-K, and cannot now rely on speculation do to so.  Because Plaintiffs do not attempt to connect (nor could they) Mr. Dimitrievich's outdated access to this information to the alleged misrepresentations regarding pipeline access or internal controls in the 2017 10-K, it cannot be used to raise a fact issue regarding scienter. *Ouabderhm*, 2020 WL 4287594, at *3 ("A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." (citing *Lamb*, 914 F.3d at 946).

*Second*, Plaintiffs' argument that Mr. Dimitrievich had access to information regarding well production data does not raise a factual issue as to scienter.  To start, Plaintiffs do not link this purported access to the two alleged misrepresentations. ████

████████████████████████████████████████████████████████

███████████████████████████████████████████████. Plaintiffs fail to—indeed cannot—explain how unspecified production data from October 2018 can be probative of knowledge or intent seven months *earlier*. And without evidence identifying the specific information Mr. Dimitrievich reviewed, Plaintiffs' "conclusory statements" about access to production data do not "contribute to a strong inference of scienter." *See Shaw Grp., Inc.*, 537 F. 3d at 539.

*Third*, Plaintiffs' unsupported claim that Mr. Dimitrievich, as a director, ████ ████████████████████████████ is speculation that cannot defeat summary judgment. Opp. at 19 (citing PX 170 at 49:2-22).[14]  It is well-settled that "scienter may not rest on the inference that [a] defendant[] must have been aware of the misstatement based on their position[] within the company." *Owens*, 789 F.3d at 546. ████████████████

████████████████████████████████████████████████████████

███████████████  ███████████████ ██ ██████ ███████████ ██ ███████

████████████████████████ Standing alone, Mr. Dimitrievich's director status is insufficient to support scienter. *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 376 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012).

Further, it is significant that Mr. Dimitrievich was *not* an officer of AMR, but an

---

██ ██████████████████████████████████████████████████

████████████

independent director.[15]  Precedent and sound policy[16] distinguish between the knowledge

a company officer and an outside director are expected to possess.[17]  Plaintiffs have not

shown that Mr. Dimitrievich was involved in AMR's day-to-day operations and offer no

evidence contrary to his testimony that he relied on the material disclosed to him by

AMR's management, auditor, and audit committee prior to signing the 2017 10-K.  Mot.

at 17 (citing Dkt. 422-2 (Ex. A, Dimitrievich Dep. Tr.) at 169:17-25);  ██████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████[18]

Where, as here, "Plaintiffs have not alleged that [Mr. Dimitrievich] was more involved in

[AMR's] operations than normal outside directors," his "position weighs slightly against

an inference of scienter."  *N. Port Firefighters' Pension—Local Option Plan v. Temple-

Inland, Inc.*, 936 F. Supp. 2d 722, 752-53 (N.D. Tex. 2013).[19]

████████████████████████████████████████████████████████████

---

[15] Plaintiffs' challenge to Mr. Dimitrievich's status as an independent director is a single, throwaway sentence in their statement of facts.  But there is no question he was an independent director of AMR; it says so in the 2017 10-K.  Dkt. 431-2 (Ex. B, 2017 10-K) at 59; *see also* SEC Rule 5605(a)(2) ("'Independent Director' means a person other than an Executive Officer or employee of the Company or any other individual having a relationship which, in the opinion of the Company's board of directors, would interfere with the exercise of independent judgment in carrying out the responsibilities of a director.").  This claim lacks legal or factual support.

[16] Indeed, as noted in the Motion, Judge Isgur has recognized that demanding that board members have "sufficient technical expertise ... to question what your technical people tell you," as Plaintiffs suggest is required, would deter individuals from serving on corporate boards.  Mot. at 18 (citing *Dunn v. Chappelle*, Case No. 21-3423-ADV, Dkt. 79 (Nov 3, 2021 Tr.) at 79-80).  The Opposition does not address this sound policy concern.

[17] *See, e.g.*, *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 625 n.55 (S.D. Tex. 2003) (distinguishing "between a corporation's inside directors, who normally participate in its operations and create its policies, and outside directors, who are supposedly independent and disinterested and who, without a showing that the situation is otherwise, rely on the insiders' disclosure of material information about the corporation's business").

████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

[19] Mr. Dimitrievich's ordinary level of involvement as an outside director of AMR is unsurprising given his other obligations.  In addition to his board position at AMR, as well as his everyday role as a Managing Director at HPS, Mr. Dimitrievich also served on five other corporate boards at the time he signed the 2017 10-K.  *See* Dkt. 431-2 (Ex. B, 2017 10-K) at 57.



They fail to mention that ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████ And in any event, this is inadmissible

hearsay that goes to nothing at issue in this case.

████████████████████████████████████

████████████████████████████████████████

████████████████████. And Plaintiffs cannot survive summary

judgment without connecting the (again, unidentified) information to which Ellis refers to

the two alleged misstatements in the 2017 10-K.  These "overly general" allegations are

insufficient to establish scienter.  *See Goldstein*, 340 F.3d at 253.

In sum, the ***only*** evidence of Mr. Dimitrievich's state of mind that specifically

relates to the 2017 10-K is that, prior to signing it, he "reviewed all the materials that

were provided, including the auditors and audit committee's report," as well as "the

report provided from the technical engineers," and concluded that "[e]verything seemed

appropriate" and that there was "no basis to question anything" in the 2017 10-K.  Dkt.

422-2 (Ex. A, Dimitrievich Dep. Tr.) at 169:17-25.  Thus, the only competent evidence

shows that Mr. Dimitrievich acted as a prudent independent board member in relation to

the 2017 10-K.

### 2. Arguments Regarding Mr. Dimitrievich's Purported Motive Cannot Salvage Plaintiffs' 10(b) Claims

Plaintiffs' attempt to establish motive does not salvage their otherwise threadbare scienter assertions.  Motive requires showing that a defendant stood to gain "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.  "Merely alleging facts that lead to a strained and tenuous inference of motive is insufficient." *Shaw Grp.*, 537 F.3d at 543 (citation omitted).



That conclusion rests on Plaintiffs' creative (and incorrect) characterization of the underlying documentary support, which in any event, is inadmissible hearsay.[20]  Plaintiffs' statement is also untrue.  Contrary to statements in the Opposition, HPS employee Jeff Hostettler testified that ▮▮▮▮▮▮▮▮

Regardless, Plaintiffs cannot conflate HPS with Mr. Dimitrievich.

Further, Plaintiffs offer no evidence of a personal financial motive or benefit ***on***

---

[20] Plaintiffs' argument that ▮▮▮▮▮▮▮▮ is speculative hearsay without probative value.  Notably, Plaintiffs cite ▮▮▮▮▮▮▮▮ in support of this claim, but omit the underlying document being discussed. ▮▮▮▮▮▮▮▮

*the part of Mr. Dimitrievich*.  He did not invest in the Business Combination, held no AMR stock, and was not compensated for sitting on AMR's board.  *See* Dkt. 433-15 (Ex. N, Dimitrievich Interrog. Resps. (May 9, 2022)) at 8-10.  And neither Mr. Dimitrievich's position on the AMR board, nor an unsupported claim that he wanted HPS to sell its AMR stock at an inflated price, supports motive or scienter.  *See Abrams*, 292 F.3d at 434 (claims that "defendants were motivated to commit fraud by … the desire for enhanced incentive compensation and the desire to sell stock at inflated prices" are insufficient to support a strong inference of scienter); *In re Key Energy*, 166 F. Supp. 3d 822, 833-34 (S.D. Tex. 2016) (a "general assertion that [defendant] knew about a … specific accounting violation or internal control problem because of [his board] position[]" is insufficient to establish scienter).

Plaintiffs fail to offer evidence supporting a triable issue of fact as to scienter in connection with the two alleged misstatements in the 2017 10-K.

## III.   PLAINTIFFS FAIL TO PUT FORTH ANY EVIDENCE THAT MR. DIMITRIEVICH IS LIABLE AS A SECTION 20(a) CONTROL PERSON

In the Opposition, Plaintiffs marshal the same insufficient evidence they did pre-discovery to support their 20(a) claim: ████████████████████████ ███████████████████████████████  This evidence is insufficient as a matter of law, and Mr. Dimitrievich is entitled to summary judgment on Plaintiffs' Section 20(a) claim.

Mr. Dimitrievich's status as a director who signed the 2017 10-K does not raise a

---

[21] Conflating Section 10(b) and 20(a) cannot advance both claims beyond summary judgment, because, as Plaintiffs admit, the same evidence cannot be used to support both.  Opp. at 22 fn. 12.

material issue of fact as to control. *See, e.g.*, *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 510 (5th Cir. 1990) (alleging "position as a director" is "insufficient" for a Section 20(a) claim); *In re BP P.L.C. Sec. Litig.*, 922 F. Supp. 2d 600, 640 (S.D. Tex. 2013) (dismissing 20(a) claim against officer/director that rested on allegations of defendant's position and "not that [defendant] *controlled* anyone or anything relevant to any actionable misrepresentation"); *Stockman v. Flotek Indus., Inc.*, 2010 WL 3785586, at *14 (S.D. Tex. Sept. 29, 2010) (no Section 20(a) claim where plaintiff fails to "allege some facts beyond a defendant's position or title to show that the defendant had actual power or control over the controlled person"); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 912 (S.D. Tex. 2004) ("[A]n officer's status alone will not subject him to liability under § 20(a)."). That the Opposition describes the steps Mr. Dimitrievich took in reviewing and signing the 2017 10-K does not overcome this settled law, and so fails to establish an issue of material fact that Mr. Dimitrievich controlled the ***company***, ***management***, or ***any maker of any alleged misstatements***.

It also follows that performing a basic independent director function—signing a 10-K—does not constitute evidence of control. *See, e.g.*, *Patriot Expl., LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 362 (D. Conn. 2013) ("[T]he complaint merely recites that they are directors of the company and states that they signed the annual 10-K report. These facts could not establish control person liability."); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008) (no control liability where "plaintiff does no more than allege that these defendants are directors, who served on the Audit Committee, and who signed Occam's SEC filings."); *In re Tyco Int'l, Ltd.*, 2007

WL 1687775, at *8 (D.N.H. June 11, 2007) (rejecting control liability for "director and major shareholder" who "signed false SEC filings" where plaintiffs fail to allege how the director "exercised any control at Tyco or explain why his position as an outside director establishes him as a control person.").

Plaintiffs' authority is no help here—if anything it demonstrates that holding one of 11 directors liable for broadly controlling an entire company **and** its management would be a seismic shift in Section 20(a) law.  For instance, the Opposition cites *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576 (S.D. Tex. 2003) for the purported proposition that "an outside director who signed false registration statement was a control person."  Opp. at 22-23.  Although it is possible for an outside director who signs an SEC filing to *also* to be a control person, the evidence must indicate that person had "power to control the controlled person or to influence corporate policy," because "director status alone" is not sufficient.  *In re Enron*, 257 F. Supp. 2d at 642.  Likewise, in *New Jersey & its Division of Investment v. Sprint Corp.*, 314 F. Supp. 2d 1119 (D. Kan. 2004), the court narrowly held at the pleading stage that it could not "conclude that plaintiffs can prove no set of facts in support of their section 20(a) claims of control person liability."  *Id.* at 1145.  The "no set of facts" standard was, of course, replaced by the plausibility standard set forth in *Iqbal* and *Twombly*, and in any case was never the standard for determining summary judgment.  At this stage, the Court *should* determine that Plaintiffs fail to assemble a set of facts that raises a material issue as to control.[22]

---

[22] Plaintiffs' remaining cases are similarly inapposite.  As indicated by the quoted language, they stand for propositions that directors that sign SEC filings and also "***participat[ed]***" in company operations, Opp. at 23 (emphasis added), or had access to "***adverse information***," Opp. at 24 (emphasis added), can be liable as control

The Opposition also offers the conclusory assertion that, because Mr. Dimitrievich supposedly could have *prevented* AMR from disseminating the 2017 10-K, he is a control person.  Opp. 24.  But this kind of hypothetical speculation is "inadequate to satisfy the nonmovant's burden in a motion for summary judgment."  *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).  And regardless, whether Mr. Dimitrievich could have prevented the dissemination of any alleged misstatements is not evidence that he was a control person, but can be used only as evidence to rebut an affirmative good faith defense to a 20(a) claim.  *See G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 960 (5th Cir. 1981).  Mr. Dimitrievich has not raised that argument here.

Perhaps because Plaintiffs cannot contend with these black-letter concepts, Plaintiffs bizarrely (and falsely) claim that the Motion failed to address the claims that Mr. Dimitrievich controlled any maker of any of the other alleged misstatements.  A simple review of the Motion reveals, however, that it is replete with arguments specifically rebutting this claim.  *See* Mot. 2 ("Plaintiffs have adduced no evidence that Mr. Dimitrievich was a control person of *Alta Mesa Resources, Inc. or any of the Individual Defendants*, as required for Section 20(a) liability.") (emphasis added).[23]   On the basis of this faulty premise, Plaintiffs do not bother to address Defendants' arguments

---

persons.  These cases correctly articulate that a signature on an SEC filing is not enough on its own, and thus undermine Plaintiffs' 20(a) claim, since there is ***no evidence*** here to support the 20(a) claim outside of Mr. Dimitrievich's signature on a single document.

[23] *See* Mot. at 22-24; *id.* at 22 ("As an initial matter, Plaintiffs' Section 20(a) claim against Mr. Dimitrievich fails based on the pleadings alone because the complaints contain no allegations to support an inference that he had an ability to control the specific transaction or activity upon which the primary violation is based." (quotation omitted)).

regarding control—and have therefore waived their right to respond.[24]   The control-person claims against Mr. Dimitrievich should be dismissed on this basis alone.   *See Harvey v. Caesars Ent. Operating Co., Inc.*, 790 F. App'x 582, 589-90 (5th Cir. 2019) ("[Plaintiff] waived this argument by not addressing it in his opposition to the [defendant's] summary judgment motion.").

Regardless, Plaintiffs did not plead that Mr. Dimitrievich was a Section 20(a) "control person" for any alleged ***pre***-Business Combination statements.   *See* Count II of the Complaints.   To be clear, this would entail the bizarre proposition that Mr. Dimitrievich controlled Silver Run and its employees even though his sole "relationship" to that entity was as an employee of Silver Run's transactional ***counterparty***.   To the extent Plaintiffs rely on actions by HPS to infer "control" by Mr. Dimitrievich, Mr. Dimitrievich respectfully incorporates HPS's Motion for Summary Judgment (and Reply brief) on Section 20(a).

Finally, the Opposition presents a seven-point list of purportedly "clear" evidence that Mr. Dimitrievich is subject to Section 20(a) liability, but that evidence consists of unsupported assertions that cannot form the basis of a genuine factual dispute.   *See* Opp. at 24-25.   Six of the points on this list do not even cite record evidence, but are merely "bald assertion[s]," lacking evidentiary value, that Mr. Dimitrievich is a 20(a) control

---

[24] The Opposition attempts to "b[ind]" Mr. Dimitrievich "for trial" based on alleged misstatements identified in Plaintiffs' Interrogatory Responses.  Opp. at 1 n.2 (citing PX 161 (Response to Interrogatory No. 5)). But these cannot amend Plaintiffs' Third Amended Complaint, and regardless they are unverified and not competent summary judgment evidence.  *See Abecassis v. Wyatt*, 902 F. Supp. 2d 881, 895 (S.D. Tex. 2012) ("Unsworn interrogatory answers are not competent summary judgment evidence.") (citing *Alvarado v. Shipley Donut Flour & Supply Co., Inc.*, 526 F. Supp. 2d 746, 764 (S.D. Tex. 2007)).  And in any event, claims raised for the first time outside of a complaint must be disregarded.  *See Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citation omitted)).

person.  *See Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 814 (5th Cir. 1991) (affirming summary judgment where plaintiff offered "no such evidence or any other evidence … beyond his own bald assertion" that plaintiff is liable).  This Court has no obligation to "sift through the record in search of evidence to support [Plaintiffs'] opposition to summary judgment."[25]  *Levias v. Tex. Dep't of Crim. Just.*, 352 F. Supp. 2d 751, 760 (S.D. Tex. 2004); *see also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

There is only one item for which Plaintiffs actually provide support:  the claim that

████████████████████████████████████████████████

███████████████████████   But merely "suggest[ing] what to say" in a statement cannot, as a matter of law, establish control person liability where a person does not have "ultimate authority over the statement, including its content and whether and how to communicate it."  *Town N. Bank, N.A. v. Shay Fin. Servs., Inc*., 2014 WL 4851558, at *13 (N.D. Tex. Sept. 30, 2014).   And the press release was created six months before AMR even existed or Mr. Dimitrievich joined its board, meaning—again—that Plaintiffs are effectively claiming that Mr. Dimitrievich controlled a transactional counterparty to his employer.  That claim finds no support in the law.  In short, Plaintiffs fail to identify *any* evidence to support their 20(a) claim against Mr. Dimitrievich.

---

[25] Even if the Court were to sift through Plaintiffs' purported evidence, it would find nothing but mischaracterized documents.  For example, Plaintiffs cite PX 153 as purported evidence of control by Mr. Dimitrievich over AMR by way of a "first filter team for critical business decisions."  Opp. at 7.  But this single email:  (1) says no such thing; (2) does not include or mention Mr. Dimitrievich; and (3) takes place in 2019, well after the alleged misstatements applicable here occurred.  PX 153.  Moreover, there is no evidence presented that such a team was even created.

## CONCLUSION

For the foregoing reasons, Defendant Donald Dimitrievich respectfully requests that this Court grant summary judgment on Plaintiffs' claims brought under Section 10(b), Rule 10b-5, and Section 20(a) of the Exchange Act.

Dated:    September 28, 2023                Respectfully submitted,

/s/ *Christopher Porter*
(signed by permission of Attorney-in-Charge)

Karl S. Stern (attorney in charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 / Facsimile: (713) 221-7100
Email: karlstern@quinnemanuel.com
chrisporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000 / Facsimile: (212) 849-7100
Email: michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
courtneywhang@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT PARTNERS, LLC AND DON DIMITRIEVICH**

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served under seal by the Court's ECF system,

and a copy has been served by email to counsel for all parties on September 28, 2023.

<u>/s/ *Christopher Porter*</u>
By:  Christopher Porter