# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., | Judge George C. Hanks, Jr. |
| Plaintiffs, | No. 4:22-cv-01189 |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.* | |
| Defendants. | |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | No. 4:22-cv-2590 |
| Plaintiffs, | |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.*, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    **ARGUMENT** ............................................................................................ 2

     A.    Plaintiffs failed to satisfy their burden to respond to the Motion with specific factual evidence showing a genuine issue concerning the essential element of their claims. ................................................................. 3

     B.    The Court's analysis turns on the two allegedly misleading statements specific to Mr. McMullen in the Complaint, and nothing more. ................................................................................................................. 4

     C.    Plaintiffs only identified two supposedly misleading statements that could form the basis of their claims against Mr. McMullen, but address neither. ................................................................................................ 6

     D.    Plaintiffs have no evidence that the two statements allegedly made by Mr. McMullen are misleading. ............................................................... 7

          1.    Plaintiffs cannot explain why either challenged statement is untrue. ......... 7

     E.    Plaintiffs cannot explain why either challenged statement is material. ........ 9

     F.    Independently, Plaintiffs Fail to Show Scienter. ........................................... 10

     G.    Plaintiffs similarly fail to show Mr. McMullen was a Maker of the challenged statements. ............................................................................... 15

II.    **CONCLUSION** ................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Eagle Airlines, Inc., v. Air Line Pilots Assn., Int'l*,
  343 F.3d 401 (5th Cir. 2003) ........................................................................ 5

*In re BP p.l.c. Sec. Litig.*,
  843 F. Supp. 2d 712 (S.D. Tex. 2012) .......................................................... 5

*Edgar v. Anadarko Petroleum Corp.*,
  2018 WL 3032573 (S.D. Tex. June 19, 2018) .............................................. 7

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  258 F. Supp. 2d 576 (S.D. Tex. 2003) .......................................................... 16

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Circ. 2008) ....................................................................... 10

*Malacara v. Garber*,
  353 F.3d 393 (5th Cir. 2003) ........................................................................ 5

*R2 Investments LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) .............................................................. 10, 12, 13

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) .................................................................... 9, 10

*Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*,
  404 F. Supp. 2d 942 (S.D. Tex. 2005) ...................................................... 3, 4

*In re SolarWinds Corp. Sec. Litig.*,
  595 F. Supp. 3d 573 (W.D. Tex. 2022) ......................................................... 15

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
  365 F.3d (5th Cir. 2004) ............................................................................... 10

*U.S. v. Dunkel*,
  927 F.2d 955 (7th Cir. 1991) ........................................................................ 5

**Statutes**

Exchange Act Section 10(b) ..........................................................................*passim*

Exchange Act Section 20(a) ............................................................................*passim*

**Rules**

Exchange Rule 10b-5............................................................................... 1, 2, 15

Fed. R. Civ. P. 9.......................................................................................... 5, 7

Fed. R. Civ. P. 56........................................................................................... 3

### WILLIAM MCMULLEN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

William McMullen ("Mr. McMullen") submits this reply memorandum in support of his motion for summary judgment on the Section 10(b), Rule 10b-5, common law fraud, statutory fraud, and Section 20(a) claims brought against him.[1]

Since they first joined Mr. McMullen to this suit years ago, Plaintiffs have promised evidence showing that he intended to mislead the public and defraud investors. Plaintiffs had every opportunity to investigate those claims. Plaintiffs requested and received millions of pages of documents and deposed dozens of witnesses. Mr. McMullen voluntarily sat under oath for fourteen hours at his deposition. The time for allegations is over—Plaintiffs must now produce the promised evidence.

After all this, however, Plaintiffs cannot point to a single statement anywhere in the record that Mr. McMullen made or controlled that was false, let alone intended to mislead. Rather than identify what the allegedly misleading statements are and explain how the evidence shows that Mr. McMullen made them with scienter, Plaintiffs instead focus on irrelevant, confusing, and jargon-laden "facts" and attaches hundreds of irrelevant exhibits in hopes of papering over the lack of a *genuine* issue of *material* fact. This tactic—filing a large volume of paper and saying "there must be a fact issue in there somewhere"—is a transparent effort to distract from the claims and allegations that Plaintiffs pleaded. The

---

[1]    Dkt. 427 (the "Motion").

1

Court should not take the bait. The proper focus is Plaintiffs' Complaint, which only challenges *two* statements purportedly made by Mr. McMullen. Neither statement is misleading, and even if they were, there is no evidence purporting to show that Mr. McMullen knew or was reckless in not knowing they were deceitful.

For the Court to deny Mr. McMullen summary judgment on this record, the Court would have to hold that a reasonable juror could conclude that he committed fraud for the sheer joy of it—even at the cost of hundreds-of-millions-of-dollars in equity to Bayou City. This cannot be. For any and all of these reasons, summary judgment should be granted.

## I.   ARGUMENT

Mr. McMullen is entitled to summary judgment on all claims brought by Plaintiffs against him for at least the following reasons:

- *Section 10(b) and Rule 10b-5 Claims.* Plaintiffs fail to prove that Mr. McMullen, with the requisite scienter, made a material misrepresentation. The statements challenged in the Complaint were not false, there is no evidence Mr. McMullen believed anything different, and they were not even made by Mr. McMullen. These claims should also be dismissed for the reasons provided in Defendant Don Dimitrivech's Motion [Dkt. 431] and related reply memorandum in support.

- *Section 20(a) Claims.* Because the underlying Section 10(b) claims should be dismissed, so too should the Section 20(a) claims as to those misstatements. Independently, Plaintiffs have no evidence that Mr. McMullen made the challenged statements for these claims or had control over any alleged maker to satisfy the claim's requirements. These claims should also be dismissed for the reasons provided in the Co-Defendants' Motion [Dkt. 423] and related reply memorandum in support.

- *The Texas Fraud Claims.* Similarly, Plaintiffs cannot prove the elements of the Texas common law and statutory fraud claims. The Response fails to even mention these claims at all, let alone defend them. Dismissal is required.

### A. Plaintiffs failed to satisfy their burden to respond to the Motion with specific factual evidence showing a genuine issue concerning the essential element of their claims.

Given Plaintiffs' failure to satisfy their burden to raise genuine issues of material fact, Mr. McMullen is entitled to summary judgment as to each of the Plaintiffs' claims against him. But the Response indicates confusion on the Plaintiffs' part about their Rule 56 burden. Plaintiffs argue that it is "a disfavored practice" to call out where "Plaintiffs have not adduced evidence supporting their claims"—characterizing the practice as a no-evidence summary judgment motion. *See* Resp. at 2–3 (quoting *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005)). Despite relying on *Royal Surplus* for this conclusion, the paragraph cited actually contradicts Plaintiffs' position and bolsters Mr. McMullen's request for summary judgment. There, the Southern District of Texas court explained the "shifting burden" which "is dependent upon whether [the moving party] will have the burden of proof . . . at trial." *Royal Surplus Lines Ins. Co.*, 404 F. Supp. 2d at 948. "The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact." *Id.*

But the "movant for summary judgment need not support its motion with evidence negating the opponent's case;" instead, "once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden shifts to the non-movant to make a sufficient showing establishing each element as to which that party will have the

3

burden of proof at trial." *Id.* Ultimately, the *Royal Surplus* court **granted** what had been characterized as the "plaintiff's 'no-evidence' motion for summary judgment" contrary to Plaintiffs' view that such a motion is disfavored. *Id.* at 950.

Like *Royal Surplus* outlines, Mr. McMullen moved on all claims against him because "there is an absence of evidence to support [Plaintiffs'] case." *See id.* at 948. The Motion establishes the dearth of evidence and the "burden shift[ed] to the [Plaintiffs] to make a sufficient showing establishing each element" they must prove "at trial." *See id.* Plaintiffs fail to carry their burden to provide a sufficient showing establishing all elements of their claims against Mr. McMullen, and the Court should grant summary judgment on all claims.

**B.     The Court's analysis turns on the two allegedly misleading statements specific to Mr. McMullen in the Complaint, and nothing more.**

Plaintiffs falsely assert, in a footnote at the outset of the Response, that the Motion for Summary Judgment "is silent regarding additional statements over which Plaintiffs allege [Mr. McMullen] exercised control pursuant to Section 20(a)" and thus "those statements are not at issue . . . and McMullen has conceded he is bound for trial regarding those claims." Resp. at 1 n.2. Mr. McMullen did, in fact, address these "several statements, many of which [that were] alleged to have been made by other defendants." *See* Mot. at 17–19, 22–23 & n.55. Mr. McMullen's Motion explicitly argues these statements could not be "attributable to Mr. McMullen" because they were made by other speakers, or "occurred prior to Mr. McMullen's seat on the Board of Alta Mesa." *Id.* at 17–18. The Motion also explains that Mr. McMullen could not be the "maker" of alleged statements

Plaintiffs attributed to "Defendants" or "Alta Mesa" generally. *Id.* at 18. Despite these challenges, Plaintiffs identify no evidence in the record that Mr. McMullen himself had "ultimate authority over those statements." *Id.* Mr. McMullen also joined and incorporated arguments made by the Co-Defendants' Motion in regard to these Section 20(a) claims, which apply to all the alleged statements Plaintiffs reference. *Id.* at 22–23.

Thus, the Motion certainly addressed these "additional statements" and did not concede these issues for trial. And by not responding to the Motion's arguments, Plaintiffs have failed to carry their shifted burden to present "specific facts showing the existence of a 'genuine' issue concerning every essential component" of their claims regarding these statements. *See Am. Eagle Airlines, Inc., v. Air Line Pilots Assn., Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation omitted). It is Plaintiffs' burden to come forward with evidence supporting their claims, not the Court's or Mr. McMullen's to sift through a hodgepodge of allegations, none of which even mention Mr. McMullen by name, to check if any happen to be meritorious (to be clear, none of them are). *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *see generally* Fed. R. Civ. P. 9 (prohibiting group pleading). For this failure alone, none of the statements cited in footnote 2 of the Response save Plaintiffs' claims from dismissal.

Independently, the Response also states that "Plaintiffs only allege Section 20(a) liability as to th[e]se statements." Resp. at 22-23. But "Section 20(a) is a secondary liability provision, and plaintiffs must therefore establish a primary violation under section 10(b) before liability arises under section 20(a)." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp.

2d 712, 750 (S.D. Tex. 2012).  So, because Plaintiffs cannot prove 10(b) liability to these

claims, the section 20(a) claims attached to these statements also fail.

> **C.      Plaintiffs only identified two supposedly misleading statements that could form the basis of their claims against Mr. McMullen, but address neither.**

The only two alleged misstatements that Plaintiffs specifically attribute to Mr.

McMullen (as a signatory of the document) are from the 2017 Form 10-K, reproduced here:

> 1.      "*If* third-party pipelines or other midstream facilities interconnected to our gathering, processing, storage or transportation systems become partially or fully unavailable, or **if the volumes we gather, process, store or transport do not meet the quality requirements of the pipelines or facilities to which we connect**, our gross profit and cash flow could be adversely affected" (the "Product Quality Statement"); and

> 2.      "During the most recently completed fiscal quarter [*i.e.*, Q4 2017], there [had] been no change in [its] **internal control over financial reporting**" in Item 4 Controls and Procedures (the "Internal Control Statement").

Given that these two statements are the crux of Plaintiffs' case against Mr.

McMullen, what speaks loudest is Plaintiffs' lack of any facts related to them in the

Response brief.  Plaintiffs' rendition of "facts" is limited to an irrelevant discussion of well

spacing and due diligence on KFM.  This is presumably because, as discussed below, both

challenged statements are true.  In fact, Plaintiffs' Response does not substantively

contradict their truth or cite evidence showing Mr. McMullen's scienter with regard to

either.

Although Mr. McMullen disputes many of Plaintiffs' descriptions of the exhibits to

the Response (as well as the ***un***reasonable inferences Plaintiffs asked the Court to draw

therefrom), the Court could accept all the "facts" in Plaintiffs' Response as true, and it

would not save Plaintiffs' claims because Plaintiffs' opposition fails to address the allegedly misleading statements.   None of the purported facts discussed in Plaintiffs' opposition purport to show either of the two statements to be false.   Whereas Plaintiffs focus on well spacing and due diligence on KFM, neither statement addresses well-spacing or due diligence on KFM.   Nor do Plaintiffs come forward with evidence linking well spacing or due diligence on KFM to either statement, or explain how any of the facts cited in their Response demonstrate either statement is false.   As such, none of the "facts" in Plaintiffs' Response are material or warrant denial of summary judgment.

### D.   Plaintiffs have no evidence that the two statements allegedly made by Mr. McMullen are misleading.

1.   <u>Plaintiffs cannot explain why either challenged statement is untrue.</u>

As described above, both statements Plaintiffs specifically attributable to Mr. McMullen appear in the 2017 Form 10-K.[2]   For the reasons argued in the Motion, neither of them is false.

**<u>The Product Quality Statement:</u>** Plaintiffs do not bother analyzing this quotation in full and just refer to it as "false and misleading risk factors." *See* Resp. at 22.   But all the Court needs to do to understand why the statement is true is to read the statement itself. It is a matter of basic logic that if volumes do not meet quality requirements, then profit and cash flow could be adversely affected.   That is for the obvious reason that, if an upstream company's oil could not be sold (because, for example, it failed to meet the

---

[2]   As noted in the Motion, allegations not specifically pled against Mr. McMullen cannot formulate the basis of claims against him.   Mot. at 7–9; *see* Fed. R. Civ. Proc. 9; *Edgar v. Anadarko Petroleum Corp.*, 2018 WL 3032573, at *13 (S.D. Tex. June 19, 2018).

quality requirements of the shipper), then the company may be paid less money.  Plaintiffs never explain how this risk factor could possibly be false, let alone cite any evidence purporting to demonstrate falsity.  Plaintiffs' make a passing reference to how the "stated risks had already materialized," *id.* at 23, but never explain what they mean or how that is the case.  The only thing that Plaintiffs cite is a recitation of various unrelated statements about drilling that have no bearing on this statement.  *See id.* (nakedly pointing to §§ II.A-B of the Response for purported evidence).

**The Internal Control Statement:** Plaintiffs' Response maintains that it is a misrepresentation and that the Motion's arguments to the contrary "strain credibility" and "fail[] with any plain reading" of the 2017 Form 10-K.  Resp. at 23-24.  But Plaintiffs offer nothing of substance to support their position or substantively respond to any of the Motion's arguments related to this statement.  For example, Plaintiffs fail to explain how there ***had*** been a change in internal controls ***in Q4 2017*** (prior to the Business Combination).  Likewise, Plaintiffs have no response to the 2017 Form 10-K's explicit disclaimer that "the businesses of Alta Mesa and Kingfisher are not described herein in detail."  Form 10-K at 1.  Nor can Plaintiffs contradict the first-page statement in the 2017 Form 10-K:  "We were originally formed in November 2016 as a special purpose acquisition company under the name Silver Run Acquisition Corporation II for the purpose of effecting an initial business combination," and "[a]t December 31, 2017, we had not yet completed a business combination and, except for fund raising transactions, searching for an appropriate business combination and entering into agreements necessary to consummate a business combination, we had no business operations during 2017."  See

Form 10-K at 1.  In short, the challenged statement was discussing Silver Run's internal controls; not Alta Mesa's as Plaintiffs assert.  Plaintiffs' reference to the CEO's SOX 302 certification is a red herring; it is an entirely different statement that sheds no light on the meaning of the challenged statement.  It is Plaintiffs' attempt to argue that the change in internal control for the year 2017 should actually apply to post-Business Combination 2018 that strains credulity and fails to raise a genuine issue of mater fact.

### E.   Plaintiffs cannot explain why either challenged statement is material.

Plaintiffs also complain that the Motion raises materiality issues that were resolved in the Court's orders at the motion to dismiss stage.  Resp. at 23.  Not so.  Those orders involved the sufficiency of the pleading.  As previously stated:  the time for allegations is over, Plaintiffs must now prove all elements of its claims including materiality.  To be material, Plaintiffs have the burden to prove "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003).

Plaintiffs fail to satisfy this burden for both statements.  Plaintiffs make only a passing reference to a statement by Mr. McMullen that ███████████████████ ███████████████████ and then conclude, without evidentiary support or reasoning, the Product Quality Statement now satisfies the materiality requirement.  Resp. at 23.  That bare assertion does not constitute evidence.  Nor does Plaintiffs' leap in logic make sense, as Plaintiffs' argument would render material every sentence within a company's risk factors discussing why actual earnings results could differ from

projections.  And, Plaintiffs do not even try to make a materiality argument for the Internal

Controls Statement.  As such, the Response fails to show that there was "a substantial

likelihood that the disclosure of the [allegedly] omitted fact[s] would have been viewed by

the reasonable investor as having significantly altered the 'total mix' of information made

available."  *See Rosenzweig*, 332 F.3d at 865.  Accordingly, the challenged statements are

neither misrepresentations nor would they be material if they had been.

###    F.    **Independently, Plaintiffs Fail to Show Scienter.**

Plaintiffs must prove that Mr. McMullen made material misstatements or omissions

with "scienter" or an "intent to deceive, manipulate, or defraud or that severe recklessness

in which the danger of misleading buyers or sellers is either known to the defendant or is

so obvious that the defendant must have been aware of it."  *R2 Investments LDC v. Phillips*,

401 F.3d 638, 643 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,

365 F.3d at 366 (5th Cir. 2004)).  Evidence of scienter "may not rest on the inference that

defendants must have been aware of the misstatement based on their positions with the

company."  *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d

527, 535 (5th Circ. 2008) (internal quotation marks, brackets, and citation omitted).  There

is no "collective scienter theory" because "the required state of mind must actually exist in

the individual making (or being a cause of the making of) the misrepresentation, and may

not simply be imputed to that individual on general principles of agency."  *Southland Sec.

Corp.*, 365 F.3d at 366 (citation omitted).

Plaintiffs' Response does not carry its burden to show that Mr. McMullen had the

requisite scienter (intent to deceive) for any of the alleged misrepresentations.  ***First***,

Plaintiffs provide statements (including many made by people other than, and not controlled by, Mr. McMullen) regarding "production issues" that Plaintiffs allege "formed the basis for Alta Mesa's publicly stated reserve estimates and production goals . . . that were never disclosed to investors and that McMullen had knowledge of before signing the 2017 10-K." See Resp. at 14–15.  None of these slapdash statements in the Response brief prove that the Form 10-K statements at issue were false, much less that Mr. McMullen knew of any falsity and made them with an intent to deceive or in severe recklessness.

**Second**, Plaintiffs make no effort to explain how the spacing considerations they discuss have anything to do with the alleged misleading statements.  *See* Resp. at 5–7 (discussing "[s]pacing [r]isks" prior to "the de-SPAC").  Again, Mr. McMullen has not been accused of making misleading statements about well-spacing.  Plaintiffs instead try to link these statements to production issues or the reserve reports, but none of these involve the Form 10-K statements at issue.  *Id.* at 13–14.  For example, Plaintiffs' lead argument regarding Mr. McMullen's scienter involve facts about ███████████████████ ████████████████████████████  *Id.*  None of these record quotations suggest that Mr. McMullen had an intent to deceive or knew of any falsity regarding the Product Quality or Internal Control Statements.

**Third**, Plaintiffs make no effort to explain how Mr. McMullen's discussion of KFM's value has anything to do with the challenged statements.  Resp. at 15–19.  For example, Plaintiffs point to record citations regarding Mr. McMullen's understanding of ████████████████████████  *Id.* at 15.  These statements on KFM's acreage dedications—even if true—do not show that Mr. McMullen acted with

11

the "intent to deceive, manipulate, or defraud" or with "severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it" in regard to Form 10-K challenged statements.  *See R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005).

Plaintiffs also attempt to support their scienter arguments by citing their conclusion that ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ Resp. at 15–16.  Again, this record "evidence" is completely disconnected from the scienter analysis regarding the challenged Form 10-K statements.  Plaintiffs' discussion of ████████ ██████████████████████████████████████████████████████████████████████ ████████████ is plainly irrelevant to Mr. McMullen's state of mind regarding the Product Quality and Internal Controls Statements.  This is especially true where, as here, the potential loss of Chisholm and Gastar as customers of KFM was already known to the market.  In fact, the emails cited by Plaintiffs were not based on non-public information learned due to Mr. McMullen's position on the board, but reactions to ***public*** news articles that had been forwarded.  *See* Resp. at PX 36 (forwarding news article entitled "Gastar Exploration Announces Second Quarter 2017 Results" from PRNewswire); PX 97 (forwarding news article entitled "MVP Holdings Announces Formation of Great Salt Plains Midstream, a Joint Venture to Bring Additional Crude and Gas Infrastructure to the Prolific STACK Play from Business Wire).

***Fourth***, the Response relies on evidence reflecting Mr. McMullen's analysis ***after*** the Form 10-K was signed.  *See* Resp. at 16–17 (discussing email discussions and public

filings from 2019).  Plaintiffs do not explain how what Mr. McMullen learned after the fact shows his state of mind at the time the challenged statements were made.  In fact, these post-statement discussions actually contradict any inference that Mr. McMullen acted with an intent to defraud.  As an example, Plaintiffs argue that Mr. "McMullen had no reason to believe that the issues with KFM were just a temporary blip as a result of a delay in the de-SPAC closing or otherwise as he told the public when he signed the 2017 10-K."  Resp. at 18.

Importantly, there is no challenged statement in the Form 10-K regarding a "temporary blip" related to KFM as the Plaintiffs misleadingly frame in their Response. But to support this conclusion, Plaintiffs cite an email from "late 2018" where the question is asked: ███████████████████████████ *Id.* n.3.  If Mr. McMullen and BCE knew that numbers were ████████ or were involved in some "scheme" to defraud investors as Plaintiffs allege, then it does not make sense that BCE would not only not exit the investment but continue to purchase shares while internally trying to analyze numbers they are already supposed to know are false.  Plaintiffs' reliance on such post-statement evidence contradicts any inference of scienter here.

**Finally**, Plaintiffs cannot explain what incentive Mr. McMullen had to lie about the two allegedly misleading statements.  Mr. McMullen did not receive any money out of the Business Combination or his time on the board, and all Bayou City ever took was shares. Mot. at 14–15.  Bayou City never sold these shares (and in fact bought more after the price fell after the business combination).  *Id.*  Given that Bayou City's interest was entirely in stock, and in complete alignment with all other shareholders, Plaintiffs do not explain how

Mr. McMullen could have benefited from any statements being false to the detriment of himself and the other public shareholders.

Instead, Plaintiffs point solely to an alleged "incentive" of trading "an illiquid asset for a potentially lucrative liquid one (all while earning management fees from their own funds)."  Resp. at 20.  What Plaintiffs fail to explain is how having a potentially lucrative liquid asset is a "significant incentive to engage in fraud" when one does not take advantage of the liquidity of that asset to sell it—and there is no indication of any intent to do so.  *Id.* In other words, what is the benefit of fraudulently inflating the value of a liquid asset and ***not*** selling that asset before that inflated value dissipates.  The answer is self-evident— none.  Where many of the Plaintiff shareholders sold their shares before the company entered bankruptcy, Bayou City never did.  Mot. at 14–15.  This is a strong—and unrebutted—contraindication of the required scienter.

As for earning management fees, as evinced by the testimony of Mr. McMullen cited by Plaintiffs, Bayou City's right to management fees was not altered by the business combination.  *See id.* (citing PX 181 at 35:6-38:7).  Put differently, Bayou City earned the same management fees on the relevant funds both before and after the business combination.  *See id.*  In fact, conspicuously absent from Plaintiffs citation is the next page of Mr. McMullen's testimony, where he testifies ████████████████████████ ████████████████████████████████████████████████ ████████████████  *See* Ex. N, W. McMullen Tr. at 39:4-16.  Far from supporting their allegations of fraudulent intent, this only reinforces the contrary.

14

In light of this overwhelming and unrebutted evidence against the required intent to defraud, Plaintiffs are reduced to hand-waving.  They simply assert that these facts "do[] not mean that McMullen didn't have a motive or incentive to defraud, only that the scheme didn't work."  Resp. at 20.  Alleging a scheme, however, does not make it so.  Plaintiffs bear the burden of having to establish one with evidence.  Despite citation to dozens of benign internal communications at Bayou City relating to AMR, and deposing Mr. McMullen for over fourteen hours, Plaintiffs identify ***nothing*** to support a finding that Bayou City ever intended imminently to sell its shares after the Business Combination or explain why it never did (even when Plaintiff shareholders sold their shares), let alone that Mr. McMullen participated in a scheme to defraud the public.  That is because no such evidence exists.

Because Plaintiffs cannot show scienter for the challenged statements, all of Plaintiffs claims should be dismissed.

### G.   Plaintiffs similarly fail to show Mr. McMullen was a Maker of the challenged statements.

Mr. McMullen cannot be held liable for any alleged misrepresentations because there is insufficient evidence in the record that he was a "maker" of any of the challenged statements.   Mr. McMullen did not have "the ultimate authority over" any of these statements.  *See In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 586 (W.D. Tex. 2022) ("To be held liable for a misstatement or omission under Section 10(b) and Rule 10b-5, the defendant must be the maker of the statement, i.e., the person or entity with ultimate authority over the statement, including its content and whether and how to

communicate it."). And Plaintiffs' opposition cannot show that Mr. McMullen had such authority over the challenged statements. Notably, Plaintiffs do not cite the deposition transcript of Mr. McMullen at all to support their assertions that Mr. McMullen is a maker of misrepresentations—an essential element of their claims. That is because Mr. McMullen was not asked any questions during his 14-hour deposition about any alleged misrepresentations he allegedly made.

Plaintiffs must show that Mr. McMullen "acted with scienter" in order for him to be a "maker" of an actionable misstatement. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 587 (S.D. Tex. 2003) ("*Enron II*"). Plaintiffs quoted *Enron II* to argue that Mr. McMullen's signature of the Form 10-K automatically designates him as a "maker" in this case. Resp. at 22. But the Response is missing a key portion of the case's quote—"[a] corporate official, ***acting with scienter***, who on behalf of the corporation signs a document that is filed with the SEC that contains material misrepresentations, such as a fraudulent Form 10–K, regardless of whether he participated in the drafting of the document, 'makes' a statement and may be liable as a primary violator under § 10(b) for making a false statement." *Enron II*, 258 F. Supp. 2d at 587 (emphasis added). Plaintiffs' Response does not carry its burden to show that Mr. McMullen had the requisite scienter (intent to deceive) for any of the alleged misrepresentations as detailed in Section II.D. above.

## II.    CONCLUSION

Mr. McMullen respectfully requests that the Court enter an order granting summary judgment on all claims brought against him.

DATED: September 28, 2023

/s/ Kenneth A. Young
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699   S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182   S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Emails:   kenneth.young@kirkland.com
             nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC and William McMullen*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on September 28, 2023.

/s/ Kenneth A. Young
Kenneth A. Young

17