# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., | Judge George C. Hanks, Jr. |
| Plaintiffs, | No. 4:22-cv-01189 |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.* | |
| Defendants. | |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | No. 4:22-cv-2590 |
| Plaintiffs, | |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.*, | |
| Defendants. | |

# TABLE OF CONTENTS

Page

Documents at Issue ........................................................................................... 1

Issues Presented ............................................................................................... 2

Summary of Argument ...................................................................................... 2

Procedural History ............................................................................................ 4

I.      To encourage the free and candid exchange of information in
        discovery, the Class agreed that Bayou City and Mr. McMullen could
        maintain their non-public commercial information under seal with the
        Court. ....................................................................................................... 4

II.     Bayou City and Mr. McMullen relied on the Court's Protective Order
        to file the documents at issue under seal. ................................................ 7

III.    Based on use in a court proceeding, the Class files a motion to publicly
        post Bayou City's and Mr. McMullen's Confidential documents on the
        internet...................................................................................................... 8

Standard ............................................................................................................ 9

Argument........................................................................................................... 10

I.      The Class's effort to force briefing on this issue now is vexatious.................. 10

II.     Even if the Class could wish away the Court's Protective Order, the
        Court should not unseal the exhibits. .......................................................... 13

        A.      The Class's refusal to agree that any documents may be maintained
                under seal undercuts the level of granularity they demand. ......................... 13

        B.      Unsealing the documents will place Bayou City at a competitive
                disadvantage in the private equity industry.................................................. 15

        C.      Bayou City and Mr. McMullen have an interest in keeping their
                deliberations private and not having their opinions posted on the
                internet. ....................................................................................................... 19

        D.      The public has no interest in the redacted information. ............................... 21

i

**III.    Instead of going through all the aforementioned analysis, the Court should just apply the standards for the treatment of Confidential documents established for good cause in the Court's Protective Order. ........24**

    A.    If the Court applies the rules and standards in the Court's Protective Order, then resolution of the Class's motion to unseal is easy. .................25

    B.    The caselaw cited by the Class does not invalidate the standards for the treatment of Confidential documents established for good cause in the Court's Protective Order. ..................................................................27

**Requested Order ............................................................................................32**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am. Nat'l Trust v. Hotel Rittenhouse*,
  800 F.2d 339 (3d Cir. 1986) .................................................................9

*Belo Broad. Corp. v. Clark*,
  654 F.2d 423 (5th Cir. 1981) ................................................................10

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) .......................................................... *passim*

*Blue Hill Specialty Ins. Co., Inc. v. Grinston*,
  No. 3:22-CV-713-KHJ-MTP, 2023 WL 5049343 (S.D. Miss. Aug. 8, 2023) .......................23

*EEOC v. Erection Co.*,
  900 F.2d 168 (9th Cir. 1990) .................................................................9

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ...............................................................17

*In re Daugherty*,
  558 S.W.3d 272 (Tex. App.—Dallas 2018, no pet.) ............................................22

*In re Ford Motor Co.*,
  211 S.W.3d 295 (Tex. 2006) .................................................................27

*In re Policy Mgmt. Sys. Corp.*,
  67 F.3d 296 (4th Cir. 1995) .................................................................22

*In re Reporters Comm. for Freedom of the Press*,
  773 F.2d 1325 (D.C. Cir. 1985) ..............................................................23

*June Med. Servs., L.L.C. v. Phillips*,
  *22 F.4th 512 (5th Cir. 2022)* ...........................................................11, 30

*Keyes v. Lenoir Rhyne Coll.*,
  552 F.2d 579 (4th Cir. 1977) ................................................................20

*Nixon v. Warner Comms., Inc.*,
  435 U.S. 589 (1978) ..............................................................10, 13, 16, 17

*PioneerRx, LLC v. Danwins, LLC*,
  No. 21-CV-1738, 2021 WL 4342750 (W.D. La. Sept. 23, 2021) ..................................21

*Ross Dress for Less, Inc. v. ML Dev. LP*,
    No. CV H-20-978, 2022 WL 2704545 (S.D. Tex. July 12, 2022)..........................................31

*S.E.C. v. Van Waeyenberghe*,
    990 F.2d 845 (5th Cir. 1993) ...........................................................................10, 12, 31

*United States v. Ahsani*,
    76 F.4th 441 (5th Cir. 2023) ......................................................................................19, 31

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)..........................................................................................12

*United States v. Bullock*,
    2023 WL 4232309 (S.D. Miss. June 28, 2023) ...........................................................28

*United States v. Holy Land Found. For Relief & Dev.*,
    624 F.3d 685 (5th Cir. 2010) ........................................................................................10

*United States v. Sealed Search Warrants*,
    868 F.3d 385 (5th Cir. 2017) ................................................................................9, 10, 22

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) .............................................................................. *passim*

*Verona v. U.S. Bancorp*,
    No. 7:09-CV-057-BR, 2011 WL 1252935 (E.D.N.C. Mar. 29, 2011) .................................22

**Statutes**

Tex. Civ. Prac. & Rem. Code § 134A.002(6)..................................................................18

**Rules**

Fed. R. Civ. P. 1 ...............................................................................................................10

Fed. R. Civ. P. 5.2(e)(2)....................................................................................................26

Fed. R. Civ. P. 26 ...................................................................................................9, 15, 30

Fed. R. Civ. P. 26(c) ...................................................................................................5, 18, 20

Fed. R. Civ. P. 26(c)(1)(G) ...................................................................................... *passim*

L.R. 6.C.7..........................................................................................................................29

**Other Authorities**

Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the
    Courts*, 105 Harv. L. Rev. 427 (1991) ...................................................................19, 20, 21

https://bayoucityenergy.com/about-us ............................................................................15

Steve Judge, *Confidentiality of Private Equity Agreements is Paramount, Private Equity Growth Capital Council* (Nov. 3, 2014), https://www.pehub.com/confidentiality-of-limited-partnership-agreements-is-paramount ............................................................................................................15

Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.) ...............................17, 19

**Bayou City Energy's and William McMullen's Response to**
*Class Plaintiffs' Motion to Unseal Defendant McMullen's Motion for Summary Judgment and Accompanying Exhibits*

The Court should deny the Class Plaintiffs' Motion to Unseal Defendant McMullen's Motion for Summary Judgment and Accompanying Exhibits [ECF 442].

## Documents at Issue

Bayou City and Mr. McMullen filed a motion for summary judgment [ECF 427] and asked to seal several exhibits. Having conferred with the other Defendants, Bayou City and Mr. McMullen now only seek to maintain two documents under seal, along with the limited portions of Mr. McMullen's unredacted motion [ECF 427] quoting these exhibits:[1]

1. An unredacted copy of Exhibit A [ECF 427-1][2], which contains portions of Mr. McMullen's deposition transcript discussing non-public commercial analyses and other information; and

2. An unredacted copy of Exhibit D [ECF 427-1][3], which contains non-public commercial analyses and other information.

Attached to this opposition, Bayou City and Mr. McMullen have filed redacted copies of Exhibits A and D so that non-confidential information contained in them may be accessed by the public. Ex. 1. In this redacted copy of Mr. McMullen's deposition transcript, Mr. McMullen also whited out the lines that were not cited in his motion for summary judgment, since they have not been offered into evidence (in Mr. McMullen's original filing, those lines were on the same or surrounding pages as cited material).[4]

---

[1]   As previously indicated, ECF 482, Bayou City and Mr. McMullen did not designate as confidential, and do not oppose unsealing, Exs. F through M.

[2]   The redacted version of Exhibit A is available at ECF 427-2.

[3]   The redacted version of Exhibit D is available at ECF 427-4.

[4]   Mr. McMullen had included full pages to avoid any argument that he had cherrypicked quotes.

**Issues Presented**

1. Given that the Court's rulings on the motions for summary judgment could impact the analysis related to which documents should be unsealed, should the Court decide this motion now or wait until at least after ruling on summary judgment?

2. Given that the sealed filings contain Bayou City's non-public commercial information, should the Court post them on the internet so that everyone in the world can review them despite the privacy interests in favor of maintaining their confidentiality?

**Summary of Argument**

The Court should deny the Class's Motion to Unseal, which does nothing to advance the resolution of the merits of this case. Unlike the caselaw cited in that motion, virtually all of the Court's proceedings in this case have taken place in the public eye. Any spectators who so desire—from members of the media to Bayou City's competitors in private equity—can review the Class's allegations, Bayou City's and Mr. McMullen's arguments in favor of dismissal, and all the filings related to the many discovery disputes in this case.

Tellingly, no such spectators have come forward seeking more information. The only "members of the public" who have demanded that Bayou City's and Mr. McMullen's non-public, sensitive commercial information be posted on the internet are the named representatives of the Class. These named representatives already have access to the sealed information, and Bayou City and Mr. McMullen agreed that absent members of the Class willing to abide by the protective order could access the sealed filings too. But the Class rejected this compromise, and evidently will not be satisfied until every person on Earth has access to the small amount of non-public, sensitive commercial information filed by Mr. McMullen in support of his motion for summary judgment.

The Court should reject the Class's request to unseal the documents. The baseless assumption underlying the Class's motion to unseal is that the documents at issue do not contain information that Bayou City and Mr. McMullen have an interest in keeping confidential. But Bayou City and Mr. McMullen do have such interests—strong ones, in fact. The information contained within the sealed documents includes Bayou City's confidential internal analyses and commentary; discussions related to investors; confidential and proprietary information regarding strategies, internal analyses, and opinions; and competitively sensitive information regarding Bayou City's decision-making strategies. Bayou City's and Mr. McMullen's interests in maintaining these documents under seal outweigh whatever presumption may exist in favor of public disclosure.

The Class's pursuit of a motion to unseal at this juncture, on an unsettled record, is vexatious. The basis of any summary judgment ruling will presumptively be public, mooting the need for briefing. Further, if summary judgment is granted, Bayou City and Mr. McMullen will be non-parties whose privacy interests deserve maximum protection. And, no need exists to address this now. The Class already agreed to a protective order that allows documents satisfying a particular definition of "Confidential" to be filed under seal. The Class concedes that the two exhibits filed by Bayou City and Mr. McMullen satisfy that definition of "Confidential," and thereby satisfy the criteria that the Class agreed would permit sealing. The only rights that the Class reserved in the protective order were to challenge whether the documents at issue satisfy the Confidential designation. That is not what the Class is doing in the motion to unseal. Instead, the Class seeks to file indisputably Confidential information into the public record, despite their prior agreement not to do so.

None of the Class's cases endorsed the practice of tricking an opposing party into relying on sealing provisions in a Court-approved agreed protective order to produce and seal documents but then reversing course once the other party does so, all under the guise of fulfilling the Court's independent obligation to the public. The dicta in the Class's headline case, *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir. 2021)—which is inapposite, non-binding, and was not the byproduct of an adversarial process—did not purport to address this situation. The Class latches onto language by Judges Willett and Elrod (Judge King concurred only in the judgment) that "urged" their judicial colleagues to be mindful of their independent obligation to the public. But this Court needs no "urging" to be mindful of that obligation, as shown by the Court's standing protective order and local rules that *there is not automatic sealing in this Court*. The Court should decline the Class's unhelpful offer to interject itself into the administration of this independent obligation at this stage in the case and deny the motion to unseal.

### Procedural History

I.   **To encourage the free and candid exchange of information in discovery, the Class agreed that Bayou City and Mr. McMullen could maintain their non-public commercial information under seal with the Court.**

The Court should not entertain the pretense that the Class is moving to unseal to allow unspecified absent class members to access the information in this case. On the parties' two-hour meet and confer on October 5, 2023, Bayou City and Mr. McMullen asked who specifically asked to see the sealed documents that could not already, and the Class could not identify anyone. Even so, Bayou City and Mr. McMullen offered to give absent class members access to the sealed filings, if at any point an absent member of the

Class did actually care about seeing the sealed filings, provided that they agree to abide by the provisions in the Court's Protective Order. Ex. 2. That did not satisfy the Class.

Contrary to what the Class now suggests in the motion to unseal, the public shareholders—that is, the Class—represented to the Court more than two years ago their agreed protective order both safeguarded their interests and complied with the Federal Rules of Civil Procedure.[5] *See generally* ECF 190. At the public shareholders' behest, the Court established four defined categories of commercial information that a document could contain to qualify as Confidential. *Id.*, ¶ 4 ("the 'Confidential' designation means that document contains information that is [i] proprietary, [ii] commercially sensitive, or [iii] composed of trade secrets or [iv] commercial information that is not publicly known."). Far from simply rubber stamping the protective order proposed by the Class, the Court independently reviewed the Confidentiality criteria and held that good cause existed to maintain those types of commercial information under seal, as expressly authorized by the Federal Rules. *Id.*, ¶ 1 (citing Fed. R. Civ. Proc. 26(c) ("The court may, for good cause, issue an order to protect a party . . . including . . . requiring that . . . confidential . . . commercial information not be revealed or be revealed only in a specified way.")).

At the request of the Class, the Court's Protective Order assured Bayou City and Mr. McMullen that, so long as a document had been properly designated Confidential under these criteria, it would not lose that status when used with the Court in a filing: "In the event that any Confidential Discovery Material . . . is used in any court proceeding . . .

---

[5]   If the Class wanted to invoke the dicta it now cites from *Binh Hoa*, it could have done so. That decision issued prior to the entry of the Court's Agreed Protective Order.

said Confidential Discovery Material . . . ***shall not*** lose its status as Confidential . . .

through such use." *Id.*, ¶ 25 (emphasis added). Yet that is the Class's exact argument here.

Despite what the Class now suggests, nowhere does the Court's Protective Order

warn Bayou City or Mr. McMullen that documents which are actually Confidential—

meaning they actually contain one of the four defined categories of commercial

information—might be made available to everyone over the internet. *Id.*, ¶ 19 (prohibiting

public dissemination of Confidential documents to the public). The Court's Protective

Order instead provides that the only way documents designated Confidential could lose

that status was if they were not actually Confidential, meaning that they did not meet the

definition established by the Court, and thus had to be de-designated (*id.*, ¶ 13):

### Challenge to Designations.
. . .

     13.     Any party may challenge a Designating Party's ***designation*** at any time. Any party disagreeing with a ***designation*** may request in writing that the Designating Party **change the *designation***. The Designating Party will have five (5) business days after receipt of a challenge notice to advise the Receiving Party whether or not it will change the ***designation***. If the parties are unable to reach agreement after the expiration of this five (5) business day time-frame then, after the conference required under 6(B) of the Court's procedures, the objecting party shall be free to file a motion with the Court **explaining the basis for the objection and requesting an Order removing or modifying the *disputed designation***. Within ten (10) business days of the filing of any such motion, the Designating Party shall submit a response setting forth the basis for the ***designation*** and why it should be maintained. The burden of establishing confidentiality shall fall on the Designating Party. Until any dispute under this paragraph is ruled upon by the Court, the ***designation*** will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

The final sentences of this paragraph bear emphasizing: "[u]ntil" the "disputed

designation" is "remov[ed] or modifi[ed]," "the designation ***will remain in full force*** and

effect, and the information **will continue to be accorded the confidential treatment required**," *id.*, including not being publicly distributed (*i.e.*, being sealed). *Id.*, ¶¶ 13, 24-25.

## II. Bayou City and Mr. McMullen relied on the Court's Protective Order to file the documents at issue under seal.

The Class does not move to remove the designation of the sealed exhibits or argue that they do not contain information satisfying the definition of Confidential in Court's Protective Order. Instead, the Class contends that Bayou City's and Mr. McMullen's properly designated Confidential information should be publicly disseminated simply because it was used in a court proceeding, Mr. McMullen's motion for summary judgment.

The Class fails to grapple with *why* Mr. McMullen filed the sealed exhibits with his motion for summary judgment, which bears on the Court's sealing analysis. Mr. McMullen has argued since the beginning of this case that he has not made a single misleading statement, let alone one intended to deceive (*i.e.*, with scienter). Mr. McMullen's motion for summary judgment argued that the only two statements even attributed to Mr. McMullen in the Class's complaint—appearing in a 10-K that he signed along with the other directors and the company's officers—are true on their face. *E.g.*, ECF 427 at 19. Mr. McMullen also pointed out that the Class does not have evidence showing that either risk factor is misleading or material, that Mr. McMullen intended either risk factor to be deceptive, or even that he (as opposed to others) was responsible for making the risk factors statements in the first place. *Id.* at 19-22.

If the Court agrees with any of these arguments, then delving into Mr. McMullen's two sealed exhibits to look for even more reasons he should win will just be extra work for

the Court. The sealed exhibits simply confirm that, on top of all these other reasons, Mr. McMullen also did not and could not have any incentive to artificially inflate the stock price, considering the structure of Bayou City's investment. *Id.* at 5, 6, 13, 14, 15, 16.

When Mr. McMullen filed the sealed exhibits, he relied on the belief that the Class would respect—and the Court would enforce—the terms in the Court's Protective Order, including the provision that merely using a document in a court proceeding would not cause it to lose its Confidential status. *Id.*, ¶ 1 ("This Protective Order . . . ***shall*** govern the handling of documents. . . and any other information or material . . . that are designated by a party as 'Confidential' . . . ."); *id.*, ¶ 25 ("In the event that any Confidential Discovery Material . . . is used in any court proceeding . . . said Confidential Discovery Material . . . ***shall not*** lose its status as Confidential . . . through such use.").

### III.   Based on use in a court proceeding, the Class files a motion to publicly post Bayou City's and Mr. McMullen's Confidential documents on the internet.

Apparently, making baseless accusations against Mr. McMullen in the Complaint, dragging him through two years of extremely burdensome discovery, and keeping him under oath for fourteen hours at his deposition are not enough to sate the Class's desire to harass Mr. McMullen, whose investment firm Bayou City lost its entire investment when Alta Mesa went into restructuring (since that investment was exclusively held in equity, as explained in the motion for summary judgment briefing). In two years of discovery, the Class has failed to find a single penny that Mr. McMullen took out of the business, and to this day, with millions of pages of documents, they have not located one email showing he committed securities fraud or knowingly made any misleading statements.

Despite this, and their previous agreements that Confidential information would be kept sealed even if used in a court proceeding, and the total absence of any need to resolve this right now as opposed to after ruling on summary judgment, the Class filed a motion to unseal. ECF 442. The Class insists that briefing proceed now for unarticulated reasons.

### Standard

The Class overstates the burden to seal documents under the very caselaw they cite. The Class's rhetoric is designed to convince the Court that, notwithstanding the Class's prior argument that establishing the rules and standards in the Court's Protective Order satisfied Rule 26's good cause standard, the presumption of public access requires strong evidence to overcome. The Class would have the Court ignore its own protective order.

But the *Vantage* case cited by the Class—and the Class's headline case *Binh Hoa* —undercuts the Class's proposed new standard. ECF 442 at 5 (citing *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.,* 913 F.3d 443, 450 (5th Cir. 2019)); *Binh Hoa*, 990 F.3d 410, 419–20, ns. 28, 31, 32, 36, 41. In *Vantage*, Judge Edith Jones explicitly rejected out-of-circuit authority that sought to require a district court to universally impose a strong evidentiary burden to justify sealing in every case. *Vantage*, 913 F.3d at 450. Instead, the court held that the district court should utilize a framework, like the Court's Protective Order did here, tailored to the individualized needs of the case, *id.*:

> The parties dispute whether this presumption in favor of public access equates to a burden of proof, and if so, who bears the burden. Several ***other*** circuits have held that the presumption is "strong." *See, e.g., EEOC v. Erection Co.*, 900 F.2d 168, 170 (9th Cir. 1990); *Bank of Am. Nat'l Trust v. Hotel Rittenhouse*, 800 F.2d 339, 344 (3d Cir. 1986). ***But this court has repeatedly <u>refused</u> to so characterize the public access presumption as "strong" or require a strong showing of proof. See, e.g., United States v.***

*Sealed Search Warrants*, 868 F.3d 385, 393–95 (5th Cir. 2017); *Van Waeyenberghe*, 990 F.2d at 848 n.4; *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 433–34 (5th Cir. 1981). Rather, in this circuit the decision to seal or unseal records is to be analyzed on a ***case-by-case*** basis, *Sealed Search Warrants*, 868 F.3d at 390, and the ***individualized decision*** is best left to the sound discretion of the district court. *Belo*, 654 F.2d at 430 (citing *Nixon*, 435 U.S. at 599, 98 S.Ct. at 1312–13). Although this court in *Holy Land* cited out-of-circuit precedent to characterize the presumption in favor of public access as "strong," *Holy Land*, 624 F.3d at 690, ***the language did not translate to a burden of proof or otherwise play any role in the court's analysis.*** This circuit ***plainly adheres*** to the principles articulated in *Sealed Search Warrants, Van Waeyenberghe*, and their progeny.

## Argument

**I.   The Class's effort to force briefing on this issue now is vexatious.**

Because the Court's forthcoming ruling on summary judgment will impact the sealing analysis, the Court should deny the Class's motion to unseal to avoid multiple rounds of briefing as the record changes. The Class has no explanation for wanting to brief these issues now instead of after the Court rules on Bayou City's and Mr. McMullen's pending motions for summary judgment. In the interest of efficiency, *see* Fed. R. Civ. P. 1, Bayou City and Mr. McMullen repeatedly implored the Class to delay briefing until after the Court's ruling on summary judgment so that the parties would only have to brief this issue one time on a settled record, which would be most efficient for the parties and the Court. Ex. 2. For manifold reasons, denying the Class's motion to unseal because the motions for summary judgment are pending is the only efficient course of action, and thus the one demanded by the "case-by-case" approach. *Vantage,* 913 F.3d at 450.

First, the Court's opinion—particularly if summary judgment is granted—will very likely entirely resolve or substantially narrow the dispute over what should remain sealed. Even taking the dictum in the Class's headline case (*Binh Hoa*) at face value, what that

opinion found "most disquieting" was that "documents marked confidential provided ***the basis*** for summary judgment[.]" 990 F.3d at 420. The opinion then cited a law review article for the proposition that "materials ***used*** by a court ***in granting*** summary judgment" should be presumptively public. *Id.* at n.41. Here, assuming the Court grants summary judgment, the Court's public opinion will reveal the "materials used by [the] court" that provide "the basis" for summary judgment, resolving the concern articulated by *Binh Hoa*.

Trying to force the parties to brief what to unseal now, before the Court has ruled on summary judgment, is premature, particularly given the "document-by-document," "line-by-line" review the Class now demands the Court undertake. The Court's summary judgment opinion will describe its basis, and if the information in the sealed documents factors into that reasoning, that information will be presumptively public too. That would likely moot the need for any briefing on whether to keep the corresponding portions of the relevant documents under seal, since information that becomes public cannot be sealed. Conversely, because Mr. McMullen offered the sealed documents only by way of belt-and-suspenders rather than as his first-line summary judgment argument, the Court may conclude that sealed evidence does not factor into the Court's decision. In that case, even applying the reasoning of *Binh Hoa*, any alleged public interest would be *de minimis*.

In addition to providing critical clarity on the information factoring into the Court's decision, the summary judgment ruling will inform the public's supposed level of interest in the case. The Class's cases recognize that the public's interest in accessing sealed documents depends on the public's interest in the underlying information. *June Med. Servs., L.L.C. v. Phillips,* 22 F.4th 512, 520 (5th Cir. 2022) (finding the public has a

heightened interest "where, as here, the case 'involve[s] matters of particularly public interest.'"). The Class never identifies any public interest in information merely corroborating why the Class never should have sued Mr. McMullen or Bayou City in the first place. The only securities case cited by the Class held that the public may have an interest in knowing about an injunction in a case brought by the S.E.C. to prohibit a party from violating the securities laws. *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 850 (5th Cir. 1993). No comparable facts exist here.

Furthermore, the summary judgment ruling will inform whether to treat Mr. McMullen and Bayou City as non-parties. If summary judgment is granted, then Mr. McMullen and Bayou City will be dismissed with prejudice as parties in the case. Even in circuits that apply a stronger standard than the Fifth Circuit, innocent non-parties— which is what Mr. McMullen and Bayou City will be if summary judgment is granted— have heightened privacy interests. *See, e.g.*, *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (observing that "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation," and likewise having "[f]inancial records of a wholly owned business . . . will weigh more heavily against access"). Weighing these issues now is therefore premature.

In short, because the record will not be settled until the Court rules on summary judgment, the Court should deny the motion to unseal. The Class's insistence on briefing this issue now is an invitation for more briefing later after the Court's ruling. There is no point in briefing these issues once now and once after summary judgment when summary judgment itself is a critical piece of the puzzle and will change the briefs and arguments.

Against these many considerations, the Class offers ***nothing***. The Class's motion to unseal does not identify any urgency. Public spectators are not seeking the sealed documents. Mr. McMullen filed a redacted copy of the motion for summary judgment, ECF 427, and already agreed to unseal all except two of these exhibits. Even with respect to those final two exhibits, Mr. McMullen filed redacted copies. Ex. 1. Mr. McMullen's and Bayou City's offer that absent class members may access the two sealed exhibits if they agree to abide by the Court's Protective Order resolves the concerns related to them.

To answer the "why now" question, the Class quotes from *Binh Hoa*: "at the adjudicative stage, when materials enter the court record, the standard for shielding records from public view is far more arduous." 990 F.3d at 420. Even crediting this statement—which, as discussed below, is mere dicta—*Binh Hoa* did not hold that the "adjudicative stage" occurs *prior to* summary judgment; the opinion considered the issue only *after* the Court granted *final* judgment. Instead, timing is up to this Court: "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 599 (1978); *Vantage*, 913 at 450 (holding that the district court has case-by-case discretion). The Court should deny the motion to unseal.

II.    **Even if the Class could wish away the Court's Protective Order, the Court should not unseal the exhibits.**

A.    **The Class's refusal to agree that any documents may be maintained under seal undercuts the level of granularity they demand.**

As argued below, when it does take up the motion to unseal, the Court should apply the concrete rules and standards in the Court's Protective Order, tailored to the practical

13

considerations of this case, rather than amorphous adjectives about how "exacting" or "arduous" the standard is. *See infra*, Section III. That makes resolution of this dispute easy. *Id.* But, even if the Court applied a more "exacting" standard, Bayou City's and Mr. McMullen's interest in maintaining the privacy of the sealed documents outweighs whatever supposed interest is motivating the Class's desire to post them on the internet.

Given that the Court is making an "individualized" assessment about what showing to require, the Court should, in this particular situation, reject the Class's demand for more detailed evidence of confidentiality than is plain from the documents themselves. The Class's decision to cast aside the Court's Protective Order hamstrings the level of granularity that Bayou City and Mr. McMullen can safely offer the Court. Informing the Court of every detail required to understand why revealing the information is harmful to Bayou City and Mr. McMullen would not only be very time-consuming, but—considering the complexities of the private equity industry and the information at issue—would itself require filing significant confidential information under seal. And, more sealed filings will result in the Class demanding that Bayou City and Mr. McMullen justify—and the Court consider—why each line of each document meets the "arduous" and "exacting" standard to be sealed, inviting more briefing by the parties and placing more burden on the Court. Bayou City and Mr. McMullen evidently cannot rely on the Protective Order because the Class says that qualifying for protection under that order is meaningless. Thus, until the Court affirms that the rules and standards in the Court's Protective Order govern, filing more information under seal will invite a vicious cycle of briefing over what should be unsealed. This further underscores why the Court's Protective Order is important.

The argument below, and Exhibit 2 to this motion, each explain why compelling interests require keeping the documents under seal. If the Class's reply brief faults Bayou City and Mr. McMullen for not being even more specific, the Court should reject that argument. The Class invited that problem by urging the Court to adopt a protective order establishing predictable standards, but then arguing those standards fail to satisfy Rule 26.

### B. Unsealing the documents will place Bayou City at a competitive disadvantage in the private equity industry.

As the Class acknowledges, Bayou City operates in the private equity industry. ECF 218 at 18.[6] "Confidentiality is paramount for a simple reason: Private equity is one of the most competitive corners of the financial marketplace." Steve Judge, *Confidentiality of Private Equity Agreements is Paramount, Private Equity Growth Capital Council* (Nov. 3, 2014), https://www.pehub.com/confidentiality-of-limited-partnership-agreements-is-paramount. Failing to maintain confidentiality comes with serious repercussions: "Overnight, competitors would have access to sensitive information, like the fund's investment strategy, investment limitations, and key personnel that competitors could use to outbid the fund on a deal or otherwise disadvantage it in competitive negotiations." *Id.* For this reason, "maintaining confidentiality among rival private equity firms is required to maintain competition and foster innovation." *Id.*

Here, sealing the documents prevents both competing private equity firms and the other private equity defendants in this case from poring over Mr. McMullen's unredacted deposition transcript (Ex. A) and communication to Bayou City's investors (Ex. D) in

---

[6]   *See also* About, https://bayoucityenergy.com/about-us (last visited Dec. 1, 2023).

hopes of obtaining even the smallest competitive advantage. But that is exactly what will occur if the Court posts those documents on the internet. Every competing private equity firm could look for exactly how Bayou City analyzes complex investment questions, processes information about investment value, and communicates to investors, all of which are plainly reflected in the redacted portions in Exhibits A and D. Ex. 2 at 2. Anyone who reads the redacted portions of those exhibits will see the documents, sources of information, and criteria used by Bayou City to analyze investment issues. *Id.* Those other private equity firms will look for ways to exploit this information for commercial gain. Bayou City does not enjoy any corresponding benefit because other private equity firms do not disclose such information. Bayou City's interest in preventing this information from falling into the hands of its competitors, and thereby being at a competitive and reputational disadvantage, strongly weighs against unsealing the unredacted documents. *See, e.g.*, *Nixon*, 435 U.S. at 598 ("[A]ccess has been denied where court files might have become a vehicle for improper purposes . . . courts have refused to permit their files to serve . . . as sources of ***business information*** that ***might*** harm a litigant's ***competitive standing***." (emphasis added)).

Tellingly, and unlike the cases cited in its motion, the Class never argues that the information it seeks to unseal somehow proves securities fraud or would expose any wrongdoing to the public. Instead, the sealed filings do the opposite. But in doing so, they also discuss business information related to the way that Bayou City operates the business today, the confidentiality of which is needed for competitive and reputational reasons. Ex. 2 at 2–4. In addition to exposing that information to competitors, unsealing the documents would violate the expectations of Bayou City's investors. *Id.*

The Class argues that Bayou City and Mr. McMullen have not explained the exact way in which competitors can exploit the sealed information for gain. That is not the test. The reasons above are particular and specific harms. And, the Class's argument misses the point: it is the loss of control over internal business information that reflects how Bayou City makes decisions which itself is the harm. Bayou City should not have to publish a step-by-step guide on how its competitors could use the sealed information to cause Bayou City harm. Nor could Bayou City do so, considering the effectively infinite combination of future scenarios where this information could be exploited by rivals. If unsealed, Bayou City and Mr. McMullen will have no way to monitor how competitors or co-defendants will exploit this information for their commercial gain to the disadvantage of Bayou City.

The Class's motion states without citation that the sealed information is not a "trade secret" because it is stale. First, this is false. *See* Ex. 2. Second, this is irrelevant. Rule 26(c)(1)(G) and *Nixon*, *supra*, allow the Court to prevent the disclosure of commercial information, not just trade secrets. Courts should "prevent disclosure of materials for many types of information, including, ***but not limited to***, trade secrets or other confidential research, development, or commercial information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (emphasis in original) (citing Fed. R. Civ. P. 26(c)(1)(G) (allowing "a trade secret ***or other*** confidential research, development, or ***commercial information*** not be revealed or be revealed only in a specified way[.]" (emphasis added)). Bayou City and Mr. McMullen should not have to suffer the laborious process of proving a trade secret, which would require a mini trial in the middle of this case. *See* Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.) (rejecting the

argument "to restrict protection to 'true' trade secrets" because, among other things, "the task of determining what is a true trade secret is often extremely difficult, and importing it into the Rule 26(c) area as a limitation on the court's power would create needless difficulties."). For the reasons already discussed, the information is commercially sensitive and disclosing it would harm Bayou City's competitive standing, which is sufficient.

To be clear though, the sealed information is a trade secret. "'Trade secret' means **all** forms and types of information," including "business" and "economic" information. Tex. Civ. Prac. & Rem. Code § 134A.002(6). Here, there is no dispute that Bayou City and Mr. McMullen have "taken reasonable measures under the circumstances to keep the information secret," *id.*, given that it is purely internal to Bayou City and was filed under seal.[7] The Class asserts, without any supporting argument or explanation specific to the sealed documents, that the information is somehow "stale" and thus no longer valuable. The testimony in Exhibit 2 disproves that argument. And in any event, there need not be proof of "actual" value; potential value alone suffices. Here, how Bayou City communicates with investors, analyzes investment issues, factors the criteria and sources of information into those decisions, considers the lessons learned from the investment in Alta Mesa, and so on all have **at the very least** potential value to Bayou City's business, since all of that information is available to help guide future investments and analysis. Bayou City should not have to reveal to the world exactly how it intends to use that information, given that it suffices that the information is potentially valuable to Bayou City.

---

[7]   Bayou City and Mr. McMullen repeatedly asked the Class's counsel during the parties' meet and confers if they had any evidence the information was public. The Class did not.

Finally, the Class's motion says *they* do not see anything in the sealed information that is confidential, and if the Court reads the documents, it will agree. Bayou City and Mr. McMullen obviously have the opposite view: if the Court reviews the sealed documents, in the course of considering summary judgment or otherwise, it will see that they are replete with confidential business information. If the Class's argument shows anything, it is only that the average person—who does not live in the private equity world—cannot make sense of why the sealed information is important. The inability of the public to understand the information diminishes any supposed interest in releasing it. But that says nothing about how Bayou City's competitors in the private equity industry can exploit that same information for gain. For all those reasons, the Court should not unseal the documents.

### C.   Bayou City and Mr. McMullen have an interest in keeping their deliberations private and not having their opinions posted on the internet.

Bayou City and Mr. McMullen's privacy interests also warrant keeping the documents sealed. The Court can "consider all interests raised by the parties when determining whether it is appropriate to seal documents," including "the 'privacy interest' of the defendants and of 'third parties.'" *United States v. Ahsani*, 76 F.4th 441, 446 n.7 (5th Cir. 2023). As the Professor Miller article cited in *Binh Hoa* (n.30) explains, "[l]itigants do not give up their privacy rights simply because they have walked, voluntarily or involuntarily, through the courthouse door." *Miller*, 105 Harv. L. Rev. at 465–67. "Privacy and property ownership are among the most fundamental rights that we have as citizens in this country." *Miller*, 105 Harv. L. Rev. at 475. "The loss of privacy through litigation is compounded when the information is disclosed to the media, competitors, political

adversaries, and even curious members of the public." *Id.* at 466. "Governmental intrusion on [the] right [to privacy] runs counter to our tradition of protecting [that] right[]; therefore, it should be prohibited except under the most compelling circumstances." *Id.* at 475.

Multiple compelling privacy interests warrant keeping the unredacted documents sealed. First, Exhibits A and D contain Bayou City's and Mr. McMullen's own internal opinions, beliefs, commentary, and views about everything from the other defendants in this case to how businesses should be run to how investors should be treated. Ex. 2 at 3. Bayou City and Mr. McMullen discussed this information in a private, confidential setting. *Id.* Their rights to, and interest in, keeping that information private did not vanish just because the Class decided to file a meritless lawsuit against them.

Second, Bayou City and Mr. McMullen have an interest in keeping their internal business opinions, analyses, and commentary private because it encourages candor in those discussions. The redacted communications discussed throughout Exhibit A reflect internal, candid business deliberations among Bayou City's partners and personnel, and in the case of Exhibit D, investors. The atmosphere of privacy that encourages candid discussions and analyses would be destroyed if internal emails are posted on the internet for consumption by competitors, potential investors, and the public. *See, e.g.*, *Keyes v. Lenoir Rhyne Coll.*, 552 F.2d 579, 581 (4th Cir. 1977) (affirming a protective order under Rule 26(c) because "the assurance of confidentiality enabled the College to receive honest and candid appraisals"). Not being able to have confidence in the confidentiality of private communications, as would be the case if the Court unseals them, would ruin the ability to privately deliberate, harming Bayou City, Mr. McMullen, their investors, and the public.

Finally, the loss of privacy is exacerbated because unsealing some information will force Bayou City and Mr. McMullen to potentially reveal more. Competitors or counterparties would be able to review the unsealed information and ask business questions about it, at which point Bayou City and Mr. McMullen would have to decide whether to reveal even more private information to answer those questions or take other remedial actions to address them. The Court should not force them down that path or to make that choice, which would place them at a competitive disadvantage.

### D. The public has no interest in the redacted information.

The Class does not articulate any concrete need for the ordinary public to access the sealed information. The Class waxes poetic about the public's supposed interest in maintaining confidence in the judiciary. However, the Class does not explain how that concern is implicated in a concrete or practical way here. The Class does not attempt to show, for example, that anyone will have less confidence in the Court simply because it maintains two redacted documents under seal. The Class does not explain how members of the ordinary public would use or understand the information if unsealed, undercutting any notion that they have an interest in it. *PioneerRx, LLC v. Danwins, LLC*, No. 21-CV-1738, 2021 WL 4342750, at *2 (W.D. La. Sept. 23, 2021) ("Another relevant factor is that the public's interest in the materials at issue is likely not significant."); *Miller*, 105 Harv. L. Rev. at 467 (arguing against the "implausible proposition" that "the public has some meaningful interest in all litigation" considering "[t]he vast majority of litigation is quite mundane, is exceedingly complex and technical, or deals exclusively with the application of arcane principles of law in factual situations far removed from daily life").

Without any concrete harm, the Class's argument rests on the alleged presumption of public access. But, the Court should reject the argument that any such presumption exists, at least before ruling on summary judgment. "[T]he mere filing of a document with a court does not render the document judicial." *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995). "[A] document becomes a judicial document when a court **uses** it in determining litigants' substantive rights." *Id.* (emphasis added). If the documents end up being immaterial to the Court's summary judgment ruling, then no presumption of access attaches. *Id.* ("Because the documents played no role in the court's adjudication of the motion to dismiss, we hold that the documents did not achieve the status of judicial documents to which the common law presumption of public access attaches."); *Verona v. U.S. Bancorp*, No. 7:09-CV-057-BR, 2011 WL 1252935, at *20 (E.D.N.C. Mar. 29, 2011) ("Although these documents were filed in support of the motions for summary judgment and reviewed by the court, the court did not rely upon them in reaching its decision. Accordingly, the court will not presume a public right of access to the documents and will allow the motion to seal."); *In re Daugherty*, 558 S.W.3d 272, 277 & n.1 (Tex. App.—Dallas 2018, no pet.) (adopting the same rule for the same reasons).[8]

---

[8]    As discussed in *Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995), a circuit split exists on this issue. This Court should follow the Fourth Circuit rule; in the context of the common law right of access, the Fifth Circuit has found the Fourth Circuit persuasive because it also follows a case-by-case approach. *E.g.*, *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) ("The final reasons for extending the Fifth Circuit's general approach *and adopting the Fourth Circuit's reasoning* from *Baltimore Sun* are the affirmative policy justifications behind the common law right of access to judicial documents" (emphasis added)). In any event, the Court need not determine the Fourth Circuit rule is better in every case; under the Fifth Circuit's case-by-case approach, the Court only needs to determine the appropriate rule in this one. Rejecting the Fourth Circuit rule would invite the Class to engage in further vexatious litigation and harassment. For example, nothing would stop *the Class* from dumping

And, if the sealed documents do prove important to the Court, this problem will still solve itself. Bayou City and Mr. McMullen do not contest that the Court's summary judgment ruling is presumptively public. If the Court grants summary judgment on the basis of the sealed information, then the information will be presumptively public too.

All that said, the Court does not need to wade into the question of whether the sealed documents are presumptively public, because whatever presumption exists is not strong enough to outweigh other interests. The Fifth Circuit "has repeatedly refused to so characterize the public access presumption as 'strong' or require a strong showing of proof." *Vantage Health*, 913 F.3d at 450; *Blue Hill Specialty Ins. Co., Inc. v. Grinston*, No. 3:22-CV-713-KHJ-MTP, 2023 WL 5049343, at *1 (S.D. Miss. Aug. 8, 2023) ("That presumption, however, does not equate to a burden of proof; the decision to seal records is to be analyzed on a case-by-case basis subject to review for abuse of discretion."). Given the important interests in favor of sealing the documents here, *e.g.*, Ex. 2, any supposed presumption alone is insufficient to demonstrate harm to the public or unseal the filings.

---

dozens of irrelevant Confidential documents onto the docket under the auspices of opposing a summary judgment, then demanding the Court, Bayou City, and Mr. McMullen deploy their scarce resources to file a brief with a line-by-line, document-by-document review of why each of *the Class's* filings is confidential. Such a practice would invite motions to strike documents from the docket simply to avoid this exercise. More broadly, it would incentivize parties to fight discovery because the other party could unilaterally dump entire categories of documents in the public record and then argue they should be revealed under the "arduous" standard for judicial records in order to generate work for the other side and risk having their documents revealed. Judge Scalia put it, "material placed before the court in connection with summary judgment motions is not constitutionally required to be open to the public—unless we are to subject trial courts to the constitutional necessity of ruling, either pre-trial or post-trial, on the admissibility of voluminous material that is filed, and perhaps even referred to in the summary judgment motion, but not sought to be introduced." *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1338 (D.C. Cir. 1985) (affirming "the eminently reasonable action of the trial court in deferring his ruling on these complex matters" until after trial).

Unable to identify any concrete reason the public has an interest in the redacted information, the Class cites dicta from *Binh Hoa*. But scrutinizing that dicta closely underscores that the impact to the public of maintaining Exhibits A and D under seal is, for all practical purposes, inconsequential. That dicta characterized the "damage" caused by "unjustified low-profile sealings" as "occur[ing] with such drop-by-drop gentleness *as to be imperceptible*." *Binh Hoa*, 990 F.3d 421 (emphasis added). So, while urging vigilance, this dicta also recognizes the common-sense point that there are perhaps hundreds or even thousands of sealed filings that take place in federal and state courts across the country each day. Hence, any one decision to seal information has, in the words of *Binh Hoa*, an "imperceptible" impact on the public's perception of the judiciary. That is true too here. Given that maintaining this information under seal is entirely justified, and any impact in keeping this information sealed is, *at worst*, "imperceptible," the public's interest does not outweigh the real risks imposed on Bayou City and Mr. McMullen from public release.

### III. Instead of going through all the aforementioned analysis, the Court should just apply the standards for the treatment of Confidential documents established for good cause in the Court's Protective Order.

The argument in Section II is Bayou City and Mr. McMullen's alternative argument, *i.e.*, the Class's motion to unseal should be denied even if the Court's Protective Order is wished away. Bayou City and Mr. McMullen led with that alternative argument to illustrate the burden and disruption caused by disregarding the Court's Protective Order. Consider that nothing stops the Class from filing more motions to unseal; it took only a few pages. And, as Section II and Exhibit 2 show, without any protective order, a long response may be needed to show why confidential information should not be posted on the internet.

The Court's Protective Order short circuits the need for this entire discussion because it establishes delineated, predictable rules and standards about what may be designated Confidential and, by extension, maintained under seal. That is why it is needed. If the Court adheres to those rules, as it should, then the motion to unseal is easily denied.

### A. If the Court applies the rules and standards in the Court's Protective Order, then resolution of the Class's motion to unseal is easy.

Adhering to the rules and standards in the Court's Protective Order makes resolution of the Class's motion to unseal truly straightforward. Under the Court's Protective Order, if a document is properly designated Confidential, then it cannot be publicly disseminated, ECF 190, ¶ 19, meaning it must be maintained under seal, even if it is used in judicial proceedings, *id.*, ¶ 25, such as summary judgment. A document is properly designated Confidential if, as relevant here, it contains "commercial information that is not publicly known." *Id.*, ¶ 4 ("the 'Confidential' designation means that document contains information that is [i] proprietary, [ii] commercially sensitive, or [iii] composed of trade secrets or [iv] commercial information that is not publicly known.").[9]

As discussed, Exhibits A and D contain Bayou City's "commercial information that is not publicly known." The motion to unseal does not argue otherwise, or even object to Bayou City's designation, let alone do so in a way that "explain[s] the basis" to conclude they fail to meet the relevant definition. *Id.*, ¶ 13. As such, no dispute can exist that the documents were properly designated Confidential. They were thus required to be kept under seal, and did not lose that status by being filed for summary judgment. *Id.*, ¶¶ 19, 25.

---

[9]   For the reasons in Section II, *supra*, Exhibits A and D also satisfy the other three definitions.

Here, instead of arguing that the information fails to meet the definition of Confidential in the Court's Protective Order, the Class argues that the documents must be publicly disclosed *even if* they qualify for the Confidential designation. The Court's Protective Order does not contemplate that possibility. Thus, so long as the Court adheres to the rules and standards in its protective order, the Class's motion should be easily denied.

The only portion of that the Court's Protective Order that the Class quotes is Paragraph 14, and only for the proposition that "the parties will meet-and-confer to discuss whether any or all of the documents require being submitted under seal, or should remain under seal, in accordance with the law governing the sealing of documents." ECF 442 at 3. The Class's motion to unseal reads as though this one sentence somehow wipes away the restrictions in the Court's Protective Order against publicly disseminating Confidential documents in favor of an unspecified but somehow "exacting" standard. But Paragraph 14's instruction that the parties meet and confer about "the law governing the sealing of documents" does not help the Court figure out what "the law" actually is. Nor does Paragraph 14 purport to invalidate the rules and standards set forth elsewhere in the Protective Order that specifically and explicitly govern who can access particular categories of confidential information. Those specific rules and standards should govern.

Thus, the only question is whether rules and standards in the Court's Protective Order are valid, or in the parlance of the Class, are "in accordance with the law governing the sealing of documents." They are. The Federal Rules of Civil Procedure govern. Those rules allow the Court to enter a protective order preventing public access to documents upon a showing of "good cause." Fed. R. Civ. P. 26(c)(1)(G); Fed. R. Civ. P. 5.2(e)(2).

The Court made that exact finding here. ECF 190. The Class urged it to do so, underscoring that the public shareholders found the protections in the Court's Protective Order adequately balanced any competing needs. *Id.* No party has contested that finding.

The Class does not challenge that good cause existed to establish the rules and standards in the Court's Protective Order. Nor should the Class be permitted to attack them, considering the Class was among the parties who asked the Court to adopt them. The Class has not moved to modify the definition of Confidential or the treatment of Confidential information set forth Court's Protective Order, nor argued that good cause exists for such modifications. The Court should thus apply the same rules and standards that it told Bayou City and Mr. McMullen it would follow when adopting the Court's Protective Order at the urging of the public shareholders (the Class) and the other parties. Anything less would compromise the integrity of the Court's orders. *Cf. In re Ford Motor Co.*, 211 S.W.3d 295, 301 (Tex. 2006) ("Agreed protective orders and confidentiality agreements matter; they matter because the parties vest confidence in them; and such confidence vanishes if these important protections are casually disregarded"); *Miller*, 105 Harv. L. Rev. at 501 "([F]or protective orders to be effective, litigants must be able to rely on them.").

**B.     The caselaw cited by the Class does not invalidate the standards for the treatment of Confidential documents established for good cause in the Court's Protective Order.**

Rather than following the rules and standards established for good cause in the Court's Protective Order, the Class argues the Court's Protective Order is irrelevant. The Class argues that the Fifth Circuit law demands a standard that is "arduous," "exacting," and "stringent," and necessarily assumes that the standards for sealing documents set forth

in the Court's Protective Order fall short of that test. ECF 442 at 3–5. The Class's attack on the very protective order they urged the Court to adopt is drawn from their headline case, *Binh Hoa*, where, in stark contrast to this case, "nearly thirty-quarters of the record—3,202 of 4,391 pages—is hidden from public view." 990 F.3d at 417. There, the two-judge panel sua sponte raised concerns about the parties' oversealing the record that were never brought up at the district court level. The opinion complained about oversealing the record, and then "urged our judicial colleagues" to enforce a more stringent standard. *Id.* at 421.

The discussion of sealing in the *Binh Hoa* opinion is dictum, as it did not factor at all into the holding to affirm.[10] *Id.* It was not the byproduct of the adversarial process; the parties do not appear to have had an opportunity to respond to Court's concerns or justify what they did.[11] And, the Fifth Circuit was not reviewing a reasoned opinion. It is thus unclear what the parties and district court would have said if given the opportunity to address the issue. Even so, the Fifth Circuit did not reverse or vacate the protective order.

The Court's Protective Order does not offend the reasoning articulated in *Binh Hoa*. The protective order in *Binh Hoa* that drew ire is easily distinguishable from this one. Under the protective order at issue there, unlike here, the parties could seal *anything* that was "not generally known," rather than *defined categories* of information (here, certain types of commercial information) identified by Federal Rule of Civil Procedure

---

[10] Presumably this is why the opinion "urg[es] our judicial colleagues" to follow its reasoning, as opposed to simply holding what the law is and knowing it must be followed by lower courts. *United States v. Bullock*, 2023 WL 4232309, at *18 (S.D. Miss. June 28, 2023) ("If not a holding, a proposition stated in a case counts as dicta.")

[11] There is no mention of, for example, any counterarguments by the parties or district court.

26(c)(1)(G). More problematically, "the parties decided *unilaterally* what judicial records to keep secret, and *their* decision was permanent; once sealed, the records would stay that way." *Id.* at 419–20 (emphasis added). The court meant this in the literal sense: there were "no sealing order[s]," meaning that the district court had conducted "no sealing analysis," and thus "the *parties* wielded *nigh-unbounded discretion* to label things confidential." *Id.* On top of this, not even redacted versions were required. *Id.* ("the entire document was filed under seal"). Still, despite characterizing this as "automatic sealing" and seemingly chastising the district court for allowing the parties to seal three quarters of the record without a modicum oversight, *id.*, the opinion did not reverse or vacate any decisions.

Bayou City and Mr. McMullen do not have "nigh-unbounded discretion," because unlike in *Binh Hoa*, automatic sealing is not this Court's practice. As the Court's Local Rules say: "No pleading may be filed for docketing simply as 'SEALED DOCUMENT' without advance permission of the Court." L.R. 6.C.7. This Court has a standing protective order expressly rejecting automatic sealing: "This Protective Order does not provide for the automatic sealing of such Designated Material." Standing Protective Order, ¶ 14. Here too, the Court's Protective Order does not provide for automatic sealing simply on the agreement of the parties. *E.g.*, ECF 190, ¶3 ("The Protective Order does not confer blanket protections . . . and the protection it affords only extends to the limited information and documents that are entitled to confidential treatment under applicable legal principles.").

*Binh Hoa* did not reject rules and standards like those established for good cause in the Court's Protective Order, which are tailored to this case and consistent with the categories of protectable information explicitly identified in Rule 26(c)(1)(G). Nor did any

of the other Fifth Circuit cases cited by the Class. In *June Medical*, an abortion case, Judge Elrod chastised the district court for sealing the identities of doctors who perform abortions and other publicly-available information "where, as here, the case 'involve[s] matters of particularly public interest.'" 22 F.4th 520. The opinion noted that merely meeting a definition in that protective order was not sufficient to justify sealing such information. But like *Binh Hoa*, and unlike here, that particular protective order did not track the language of Rule 26(c)(1)(G), and even allowed public identities and other public information to be sealed.[12] The court noted that the standard for protecting information once it becomes a "judicial record"—a term which the opinion did not define—is "more arduous," and could not be satisfied by nakedly asserting that the document qualified for the protective order. But the protective order the court was considering was fatally deficient because it allowed protection of public information, so qualifying under it was indeed meaningless. The court did not consider a situation, like here, where the Court already found good cause to prevent public disclosure of specific categories of commercial information protected by Rule 26.

In short, the Fifth Circuit has never foreclosed the possibility that a protective order **could**, for good cause, establish specific categories of commercial information that themselves meet the "more arduous" standard for sealing, as the Court's Protective Order does here. The only other cases in the Fifth Circuit cited by the Class did not consider this

---

[12]   *Compare* Fed. R. Civ. P. 26(c)(1)(G) (explicitly allowing the Court to enter an order that "commercial information not be revealed" on a showing of good cause), *with June Medical*, 22 F.4th at 515 (allowing the parties to seal any "information 'about the Plaintiffs that could jeopardize the privacy of the staff, physicians, patients, and others associated with Plaintiffs,' and 'information related to investigations conducted by or legal, disciplinary or other actions taken by the Louisiana Department of Health.'" (cleaned up)).

issue. Two of them did not even involve protective orders. *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993); *Ross Dress for Less, Inc. v. ML Dev. LP*, No. CV H-20-978, 2022 WL 2704545 (S.D. Tex. July 12, 2022). The third involved a district court's decision to ***vacate*** a protective order (which had broadly allowed sealing even non-confidential "sensitive" information) that was being abused by the parties, in which the district court— after a "painstaking process" that involved "two subsequent hearings in which multiple parties participated"—ordered that documents would not be "sealed in the entirety," but instead "should be redacted to protect" the commercially sensitive information at issue. *Vantage*, 913 F.3d at 447. Emphasizing "[t]he deferential abuse-of-discretion standard" that governed, the Fifth Circuit held that, by ordering the unsealed documents to be redacted, "the court's order properly respected the confidential nature of sensitive business information and adequately protected information whose disclosure might conceivably cause competitive harm." *Id.* at 450–52. Illustrating that this Court already complies with Fifth Circuit law, that is exactly what the Court's Protective Order already requires.

Finally, none of the Fifth Circuit cases cited by the Class discussed the need, as exists in this case, to establish predictable standards to file vast amounts of business and financial information without having to adjudicate sealing on an interim basis prior to trial. The needs for predictability, efficiency, administrability, and conserving judicial resources for motions that advance the merits, each support the rules in the Court's Protective Order. *See Ahsani*, 76 F.4th at 454 (quoting caselaw that "if the record is sufficiently voluminous, the consequences of disclosure sufficiently grave or the risks of accidentally disclosure sufficiently great, the balance may well tip in favor of keeping the records sealed").

**Requested Order**

Bayou City and Mr. McMullen respectfully request that the Court enter an order denying Class Plaintiffs' Motion to Unseal Defendant McMullen's Motion for Summary Judgment and Accompanying Exhibits and such other and further relief as this Court deems just and proper.

DATED: December 1, 2023

/s/ Nick Brown

Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699   S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182   S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Emails:  kenneth.young@kirkland.com
         nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC and William McMullen*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on December 1, 2023.

/s/ Nick Brown

Nick Brown