**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

IN RE ALTA MESA RESOURCES, INC.
SECURITIES LITIGATION

CASE NO. 4:19-CV-00957

**PUBLIC VERSION**

**CLASS PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO UNSEAL
DEFENDANT MCMULLEN'S MOTION FOR SUMMARY JUDGMENT AND
ACCOMPANYING EXHIBITS**

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF ISSUES ................................................................................ 1

II. SUMMARY OF THE ARGUMENT ................................................................. 1

III. NATURE AND STAGE OF THE PROCEEDING ........................................... 2

    A. Procedural History ................................................................................. 2

    B. The Parties' Meet and Confer ................................................................ 3

    C. The Two Remaining Documents at Issue .............................................. 4

    D. The Protective Order ............................................................................. 4

IV. ARGUMENT .................................................................................................. 5

    A. To Remain Sealed At The Current Stage, The Material Must Satisfy Not the Standards In the Agreed Protective Order, but the Clear Standards Set by Fifth Circuit Caselaw .................................................................. 5

    B. The Balancing Test Is Conducted Document-By-Document, Line-By-Line .......................................................................................................... 7

    C. Application of the Balancing Test to the Two Remaining Documents ....... 8

        1. The Public Has a Strong Interest in The Information Because It Concerns the Primary Focus of the Litigation at the Summary Judgment Stage, Which Tilts the Balancing Test in Favor of Public Access ............................................................................. 10

        2. The Information in Both Documents Is Stale and Will Not Result in Competitive Harm ...................................................................... 11

        3. The Information in Both Documents Is Not a Trade Secret ........... 14

        4. The Information in Both Documents Does Not Amount to Privacy Interests That Warrant Sealing ....................................................... 16

V. CONCLUSION .............................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcon Vision, LLC v. Lens.com*,
    2020 WL 3791865 (E.D.N.Y. July 7, 2020) ............................................. 13, 15, 16

*Binh Hoa Le v. Exeter Fin. Corp.*,
    990 F.3d 410 (5th Cir. 2021) ..........................................................................passim

*Bradley on behalf of AJW v. Ackal*,
    954 F.3d 216 (5th Cir. 2020) ................................................................................ 6

*Cole's Wexford Hotel, Inc. v. Highmark, Inc.*,
    2019 WL 3778090 (W.D. Penn. May 31, 2019) ................................................. 17

*Dawson v. Merck & Co.*,
    2021 WL 242148 (E.D.N.Y. Jan. 24, 2021) ....................................................... 16

*Edwards v. McDermott Int'l, Inc.*,
    2022 WL 17908806 (S.D. Tex. Dec. 16, 2022) .................................................... 7

*In re Caterpillar Inc., C13 & C15 Engine Prods. Liab. Litig.*,
    2015 WL 12830520 (D.N.J. Jan. 29, 2015) ....................................................... 16

*In re Daugherty*,
    558 S.W.3d 272 (Tex. App. – Dallas 2018, no pet.) ........................................... 11

*In re Envision Healthcare Corp. Sec. Litig.*,
    2021 WL 1110669 (M.D. Tenn. Mar. 23, 2021) ................................................. 15

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
    377 F. Supp. 3d 779 (E.D. Mich. 2019) ............................................................. 15

*In re Leopold*,
    964 F.3d 1121 (D.C. Cir. 2020) ........................................................................... 6

*In re Policy Mgmt. Sys. Corp.*,
    67 F.3d 296 (4th Cir. 1995) ................................................................................ 11

*In re Qualcomm Litig.*,
    2019 WL 1641075 (S.D. Cal. Apr. 16, 2019) ................................................ 11, 12

*June Med. Servs. L.LC. v. Phillips*,
    22 F. 4th 512 (5th Cir. 2022)................................................................6, 8

*Kamakana v. City and Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ..............................................................11

*Keyes v. Lenoir Rhyne Coll.*,
    552 F.2d 579 (4th Cir. 1997) ................................................................16

*Kozlowski v. Buck*,
    2021 WL 4973710 (S.D. Tex. Oct. 25, 2021) (J. Edison).....................7

*Lee v. Clark*,
    2019 WL 13412548 (N.D. Cal. July 3, 2019) .......................................12

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) .................................................................10

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) .............................................................................14

*Rudd Equip. Co. v. Volvo Constr. Equip. N. Am., LLC*,
    2020 WL 6946577 (W.D. Ky. Nov. 25, 2020).....................................10

*SEC v. Van Waeyenberghe*,
    990 F.2d 845 (5th Cir. 1993) ..........................................................6, 8, 11

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
    825 F.3d 299 (6th Cir. 2016) ................................................................15

*Stewart v. DG La., LLC*,
    2023 WL 405446 (E.D. La. Jan. 25, 2023) ...........................................7

*United States ex rel. Frey v. Health Mgmt. Sys., Inc.*,
    2023 WL 5725530 (N.D. Tex. Sept. 1, 2023) ........................................6

*United States ex rel. Scott v. Humana Inc.*,
    2021 WL 4449277 (W.D. Ky. Sept. 28, 2021) ...............................10, 15

*United States v. Planned Parenthood Fed'n of Am.*,
    2023 WL 8116198 (N.D. Tex. Aug. 4, 2023) ........................................6

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) ..........................................................6, 8, 11

*Verona v. U.S. Bancorp*,
    2011 WL 1252935 (E.D.N.C. Mar. 29, 2011)........................................................ 11

*Zavala v. Wal-Mart Corp.*,
    2007 WL 2688934 (D.N.J. Sept. 12, 2007)............................................................ 13

**Other Authorities**

Tex. Civ. Prac. & Remedies Code § 134A.002(6) .......................................................... 14

**Rules**

Fed. R. Civ. P. 26............................................................................................................... 5

Lead Plaintiffs FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach and United Association National Pension Fund (f/k/a Plumbers and Pipefitters National Pension Fund), along with Plaintiff Camelot Event Driven Fund (collectively, "Class Plaintiffs"), respectfully submit this Reply in Support of Class Plaintiffs' Motion to Unseal Defendant William McMullen's Motion for Summary Judgment and Accompanying Exhibits.

## I.    STATEMENT OF ISSUES

Whether the Court should unseal the information sought to be sealed by Defendants William McMullen ("McMullen") and Bayou City Energy Management, LLC ("BCE"), given that the information sought to be sealed would not result in competitive harm, is not a trade secret, and is not a privacy interest – and correspondingly, the public has a strong interest and right of access to the information at the summary judgment stage.

## II.    SUMMARY OF THE ARGUMENT

Defendants McMullen and BCE (together, "Defendants") filed their 32-page responsive opposition brief seeking to maintain two—and only two—documents under seal, along with limited portions of Defendant McMullen's Motion for Summary Judgment that quote those two documents.

**First**, Defendants completely ignore binding Fifth Circuit Court of Appeals case law which holds that a district court, when conducting its sealing analysis at the "adjudicative stage," must disregard the provisions of the litigants' agreed-upon protective order, because the court has an independent and "solemn duty to promote judicial transparency." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420 (5th Cir. 2021).

**Second**, the applicable standard as mandated by the Fifth Circuit is a "balancing test," where there is a "presumption of openness that can be rebutted only by compelling countervailing interests favoring nondisclosure." *Id.* at 419, 421. The inquiry is conducted "document-by-document," and "line-by-line." *Id.* at 419-20.

**Third**, Defendants fail the balancing test for both documents they seek to keep sealed because (i) at this stage, the public has a strong interest in the documents, given that they were attached to a brief seeking summary judgment—a procedural stage designed to determine the merits and liability of a party in the litigation; (ii) Defendants have not persuasively articulated any current or future competitive harm that can result from the unsealing of the information given that the information concerns a business transaction that occurred *six* years ago, and thus, is stale; (iii) Defendants have not proven that the information is a trade secret—because it is not; and (iv) Defendants have not articulated any valid privacy interests over the information, because courts find that internal business analysis or deliberations are not valid privacy interests that rebut the presumption in favor of the public's right of access.

Class Plaintiffs' Motion to Unseal Defendant McMullen's Motion for Summary Judgment and Accompanying Exhibits should therefore be granted.

## III.   NATURE AND STAGE OF THE PROCEEDING

### A.   Procedural History

On August 31, 2023, Defendant McMullen filed his Motion for Summary Judgment under seal (ECF No. 427, the "McMullen MSJ"). On the same day, McMullen sought leave from the Court to file the McMullen MSJ under seal and to file a public, redacted version

of the McMullen MSJ (ECF No. 426, the "Sealing Motion"). In the Sealing Motion, McMullen also sought leave to file his Exhibit A (excerpts of the June 6, 2023 deposition of McMullen), Exhibit D (a single document), and Exhibits F-M,[1] under seal, *i.e.*, a total of **ten (10)** Exhibits. McMullen's MSJ papers quote such Exhibits.

On September 20, 2023, Class Plaintiffs filed their Motion to Unseal McMullen's Motion for Summary Judgment and Accompanying Exhibits (ECF No. 442), the ("Unsealing Motion").

### B.    The Parties' Meet and Confer

Thereafter, on October 5, 2023, the parties engaged in a two-hour long meet and confer discussing a number of documents Defendants sought to keep sealed, with the Class Plaintiffs noting on the call that—as stated in their Unsealing Motion—the law of this Circuit is clear that "at the *adjudicative* stage, when materials enter the court record, the standard for shielding records from public view is far more arduous" than mere designation of documents as "confidential" under an agreed-upon protective order. *Le*, 990 F.3d at 417-20 (rejecting the "growing practice of parties agreeing to private discovery and presuming that whatever satisfied the lenient protective-order standard will necessarily satisfy the *stringent* sealing-order standard.").[2]

Defendants' Response to Class Plaintiffs' Unsealing Motion (ECF No. 498, the "Response") followed.

---

[1] According to the Declaration of Kenneth A. Young (ECF No. 428-1), Exhibits F-M are excerpts of deposition transcripts of various other individuals besides McMullen.

[2] All citations are omitted and emphasis is added unless otherwise noted.

### C.     The Two Remaining Documents at Issue

Far from being "vexatious" (Response at 3), Class Plaintiffs note that as a result of their Unsealing Motion and the parties' two-hour meet and confer, Defendants now move to keep under seal only **two (2)** Exhibits from their Sealing Motion.[3]   Thus, the parties agree that there are only two Exhibits at issue: (1) Exhibit A, which is comprised of portions of McMullen's deposition transcript; and (2) Exhibit D, which is a single document produced by BCE.

### D.     The Protective Order

According to Paragraph 14 of the PO, "[p]rior to, or within five (5) business days of, the filing of documents under seal [] the parties will meet-and-confer to discuss whether any or all of the documents require being submitted under seal, or should remain under seal, *in accordance with the law governing the sealing of documents*. If the parties are

---

[3] On September 28, 2023—and solely because of the confidentiality designations in the Protective Order ("PO")—Class Plaintiffs filed a Declaration indicating that they sought to keep a number of specific exhibits under seal in support of their contemporaneously filed oppositions to: 1) Joint Motion of Defendants HPS Investment Partners, LLC, BCE, and ARM Energy Holdings, LLC for Summary Judgment; 2) Defendant Donald Dimitrievich's Motion for Summary Judgment; and 3) the McMullen MSJ. ECF No. 462 (listing out such documents). Out of those documents, on September 28, Defendants identified by email 49 documents that they wished to be sealed. The two-hour long meet and confer on October 5 concerned not only the documents at issue here, but those documents as well.  As a result of this meet and confer, by email on October 16, BCE and McMullen agreed to de-designate 19 documents, with a representation that they were considering the remaining 30 documents (those documents would be the subject of a separate potential motion to unseal). Taken as a whole, Class Plaintiffs' efforts have resulted in BCE and McMullen agreeing to unveil to the public a very material portion of documents that they sought to improperly conceal—a concession on their part that they did not properly designate them as confidential in the first place and that, far from being vexatious, Class Plaintiffs' efforts have succeeded in making this important stage of the litigation more open to the public.

unable to reach agreement, the party objecting to the filing under seal may file a motion to unseal." ECF No. 190 at ¶14. Thus, when it comes to entering documents into the judicial record (as opposed to designations of confidentiality under the protective order), even the Court-ordered PO directs the parties outside of its own four-corners to the "law governing the sealing of documents." *See id.*

## IV.   ARGUMENT

### A.   To Remain Sealed At The Current Stage, The Material Must Satisfy Not the Standards In the Agreed Protective Order, but the Clear Standards Set by Fifth Circuit Caselaw

Defendants devote pages to arguing the documents satisfy the terms of the agreed protective order governing discovery. That question is irrelevant now.  At the summary judgment stage, the Court ***must*** remove all considerations of the litigant's agreed upon protective order and engage in an independent analysis of whether the documents meet the more "exacting" and more "arduous" sealing criteria. *Le*, 990 F.3d at 417-20. Far from being "dicta"—as BCE and McMullen claim (Response at 4, 5, 13, 24, 28)—this is the <u>*law*</u>:

> The district court here also used the wrong legal standard for sealing documents. **Different legal standards govern protective orders and sealing orders.** Protective orders require a finding of "good cause" by the district court and apply to documents produced in discovery. *Le*, 990 F.3d at 419 (quoting Fed. R. Civ. P. 26(c)(1)). "At the *discovery* stage, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper." *Id.* at 420. "But **at the *adjudicative* stage, when materials enter the court record, the standard for shielding records from public view is far more arduous.**" *Id.* Sealing judicial records and blocking public access require a "stricter balancing test." *Id.* at 419. To decide whether something should be sealed, the

court must undertake a "'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure.'" *Id.* (quoting *Vantage* [*Health Plan, Inc. v. Willis-Knighton Med. Ctr.*], 913 F.3d [443,] 451 [(5th Cir. 2019)]; *Bradley*, 954 F.3d at 225). "Under both standards, the working presumption is that judicial records should not be sealed." *Le*, 990 F.3d at 419. "[C]ourts should be ungenerous with their discretion to seal judicial records ...." *Id.* at 418. And, to the extent that any sealing is necessary, it must be "congruent to the need." *Id.* at 420.

Here, the district court's only justification for sealing entire categories of documents was that those documents "fall[ ] squarely within the Protective Order." **That a document qualifies for a protective order under Rule 26(c) for discovery says nothing about whether it should be sealed once it is placed in the judicial record**. *See Le*, 990 F.3d at 420. The district court thus provided no valid legal basis for sealing these documents. By failing to "articulate any reasons that would support sealing" those documents, the district court erred. *Id.* at 419 (quoting [*SEC v.*] *Van Waeyenberghe*, 990 F.2d [845,] 849 [(5th Cir. 1993)]).

**The district court also erred by failing to evaluate all of the documents individually.** *See id.* It is the solemn duty of the judge to scrupulously examine each document sought to be sealed. *See Leopold*, 964 F.3d at 1134 ("Providing public access to judicial records is the duty and responsibility of the Judicial Branch."). It is not easy, but it is fundamental.

*June Med. Servs. L.LC. v. Phillips*, 22 F. 4th 512, 521 (5th Cir. 2022).

This doctrine has been followed by all the district courts within this Circuit—including the Southern District of Texas. *E.g., United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2023 WL 5725530, at *1 (N.D. Tex. Sept. 1, 2023) (citing *Le* and *Phillips*); *United States v. Planned Parenthood Fed'n of Am.*, 2023 WL 8116198, at *1 (N.D. Tex. Aug. 4, 2023) (citing *Le* and *Phillips*); *Stewart v. DG La., LLC*, 2023 WL 405446, at *1

(E.D. La. Jan. 25, 2023) (citing *Le* and *Phillips*); *Edwards v. McDermott Int'l, Inc.*, 2022 WL 17908806, at *1 (S.D. Tex. Dec. 16, 2022) (citing *Le* and *Phillips*). Indeed, "I flatly reject any efforts by counsel to keep documents from the public by simply labeling the documents as 'confidential.'" *Kozlowski v. Buck*, 2021 WL 4973710, at *1 (S.D. Tex. Oct. 25, 2021) (J. Edison) (quoting *Le*).

Rather than engage with this standard, Defendants variously ***ignore*** the clear holding of the pertinent case law or baselessly dismiss it as "dicta" or "rhetoric." Response at 4, 5, 9, 13, 24, 28.[4]

### B.     The Balancing Test Is Conducted Document-By-Document, Line-By-Line

Further, the balancing test in this Circuit requires exactitude:

> It is incumbent on district courts to carefully examine—line-by-line if necessary—every document a party wants sealed to determine what should be properly kept away from the public. It is also the responsibility of the lawyers handling a case to make a concerted effort to limit the amount of information the public is unable to access. Simply because one page might contain confidential information does not mean the entire filing will be sealed. In the same vein, if one line on a five-page document contains highly sensitive information, say a social security number, that one line should be redacted. The entire document should not be kept under lock and key.

*Kozlowski*, 2021 WL 4973710, at *1.

---

[4] To be clear, Class Plaintiffs maintain that, even by the standards for unfiled discovery material set forth in the PO, Defendants have not demonstrated that the two Exhibits warrant the confidentiality designations because the information is not "proprietary, commercially sensitive, or composed of trade secrets or commercial information that is not publicly known[.]" ECF No. 190 ¶4.

To that end, and as emphasized repeatedly now, there is a "working presumption" that "judicial records should ***not*** be sealed." *Phillips*, 22 F. 4th at 520-21 ("[W]e heavily disfavor sealing information placed in the judicial record."). "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *Phillips*, 22 F. 4th at 521 (same); *Le*, 990 F.3d at 419 (same).[5]

### C.   Application of the Balancing Test to the Two Remaining Documents

**Exhibit A**.  Exhibit A is comprised of portions of McMullen's deposition transcript ("McMullen Tr."), including, as explained in McMullen's declaration submitted in support of Defendants' Response (ECF No. 498-2), the transcript of his testimony at ███████████

███████████████████████████████████████████████████████████

███████████████████████████.  The context provided by these portions of McMullen's testimony makes clear that McMullen was speaking about events that took place concerning the Alta Mesa Resources ("AMR") de-SPAC transaction—*i.e.*, the

---

[5] Further underscoring Defendants' attempts at distorting the case law, Defendants assert that *Vantage Health Plan Inc. v. Willis-Knighton Medical Center*, 913 F.3d 443, 450 (5th Cir. 2019) "held that [a] district court should utilize a framework, like the Court's Protective Order did here, tailorized to the individualized needs of the case" to justify sealing. Response at 9. But not once did *Vantage* endorse such a notion that a document meeting the standards of a protective order can *ipso facto* justify sealing—and even if it did, it would clearly be overruled by *Le* and *Phillips*, which were decided thereafter. And regardless of the question of whether the presumption translates into a "burden of proof," and which party holds such burden (Response at 9-10), it is clear from the briefing here that Defendants have not articulated valid reasons to justify sealing of the two documents at issue.

subject of this litigation and a transaction that occurred roughly six years ago, closing on

February 2018.  *See, e.g.*, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

     **<u>Exhibit D</u>**. Exhibit D is a ████████████████████████████

████████████████████████████████████████████  In that

email, ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ and ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

1.     **The Public Has a Strong Interest in The Information Because It Concerns the Primary Focus of the Litigation at the Summary Judgment Stage, Which Tilts the Balancing Test in Favor of Public Access**

"[T]ransparency is most important at this stage of litigation, when the merits of the case are being decided." *United States ex rel. Scott v. Humana Inc.*, 2021 WL 4449277, at *5 (W.D. Ky. Sept. 28, 2021). Indeed, the public's interest in access is "especially strong" for documents "offered in support of a motion for summary judgment, which will result in a ruling on the merits as a matter of law." *Rudd Equip. Co. v. Volvo Constr. Equip. N. Am., LLC*, 2020 WL 6946577, at *3 (W.D. Ky. Nov. 25, 2020). "When documents are filed in support of a motion for summary judgment [as here], 'the public would have a substantial interest in knowing what evidence exists (or does not exist) that would show that [a defendant] engaged in [actionable] conduct.'" *Humana*, 2021 WL 4449277, at *5. Here, the information was submitted in support of Defendants' summary judgment papers, which, in and of itself, tilts the balancing test in favor of unsealing, given this "strong" public interest in knowing the evidence arrayed against Defendants BCE and McMullen. *See also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121-22 (2d Cir. 2006) (holding presumption of access to documents submitted to the court at summary judgment and rejecting argument that "until a district court knows the disposition of the underlying motion, any attempt at calling something a judicial document is premature").

Further, courts are hesitant to seal information "that relate[s] to issues at the heart of [a] case." *In re Qualcomm Litig.*, 2019 WL 1641075, at *3 (S.D. Cal. Apr. 16, 2019). The information in both documents relates to the multi-billion dollar Alta Mesa Resources de-SPAC transaction, whereby Defendant Riverstone's private SPAC went public and merged with Alta Mesa Holdings ("AMH") and Kingfisher ("KFM"). As just one example, the fact that Defendant McMullen, Founder and Managing Partner of Defendant BCE, ███

███████████████████████████████████████████████

██████████████████████████████, speaks volumes concerning the due diligence efforts conducted by all the Defendants as to the purchase of KFM, which is undisputedly related to the merits of this Action. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (noting strong "interest in ensuring the 'public's understanding of the judicial process and of significant public events'").[6]

### 2. The Information in Both Documents Is Stale and Will Not Result in Competitive Harm

The information in the two documents that Defendants seek to keep under seal concerns only hindsight analysis and discussions of a business transaction that occurred

---

[6] Defendants' citations to out-of-Circuit or state court opinions, in which Defendants assert that "a document becomes a judicial document when a court *uses* it in determining litigants' substantive rights," is misplaced. Response at 22 (citing *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995); *Verona v. U.S. Bancorp*, 2011 WL 1252935, at *20 (E.D.N.C. Mar. 29, 2011); and *In re Daugherty*, 558 S.W.3d 272, 277 & n.1 (Tex. App. – Dallas 2018, no pet.)). In *this* Circuit, there is no ambiguity that "[o]nce a document is filed on the public record it becomes a 'judicial record'" and the public right of access applies at that moment. *Vantage*, 913 F.3d at 451; *see also Van Waeyenberghe*, 990 F.2d at 849 (same) (finding that once the settlement agreement was "filed in district court, it becomes a judicial record. . . . The presumption in favor of the public's common law right of access to court records therefore applies").

11

*years* ago.  By definition, such "stale" information fails to overcome the presumption that judicial records should be public. *See, e.g.*, *Lee v. Clark*, 2019 WL 13412548, at *1 (N.D. Cal. July 3, 2019) ("Although this paragraph calls out specific dollar amounts, they are in the context of the transaction costs for the Blue Coat acquisition and concern events that are now approximately three years old and stale. Accordingly, the information sought to be sealed in this paragraph does not deserve to be kept private."); *Qualcomm*, 2019 WL 1641075, at *3 ("Other suggested redactions would inappropriately shield state information that is too old to be presently confidential.").

In response, Defendants argue that here, the information is "commercially sensitive" and that other private equity firms would "por[e]" over McMullen's unredacted deposition transcript and Exhibit D in the "hopes of obtaining even the smallest competitive advantage." Response at 15-16; 17-18. Defendants further hypothesize that "[e]very competing private equity firm could look for exactly how Bayou City analyzes complex investment questions, processes information about investment value, and communicates to investors, all of which are plainly reflected in the redacted portions in Exhibits A and D." *Id.* at 16.

But in the first instance, and as just one example, it is hard to see how the following exchange from McMullen's deposition and others like it relate to *any* method of analyzing an investment, or even reveal how BCE "analyzes complex investment questions" concerning a six-year old transaction: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮   *See also, e.g.,* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

Further, even if the redacted material *did* reveal BCE's internal analysis of a stale complex investment, courts routinely find that such a circumstance does not justify sealing. Contrary to Defendants' generalized assertions of "competitive" harm (Response at 15-16), because this information is years-long old and does not indicate what BCE's ***current*** investment strategies are, there is no current or future competitive harms or injuries that could result from disclosure of this information. *See Zavala v. Wal-Mart Corp.*, 2007 WL 2688934, at *10 (D.N.J. Sept. 12, 2007) ("Furthermore, the materials date back to more than three years ago, supporting the stale nature of these documents. Accordingly, release of such stale information is unlikely to harm any 'future negotiations' between Wal-Mart and third-party contractors or give Wal-Mart competitors a future competitive advantage in hiring third-party contractors."); *Alcon Vision, LLC v. Lens.com*, 2020 WL 3791865, at *8 (E.D.N.Y. July 7, 2020) ("Alcon has not explained how the disclosure of information that relates to business strategies that were formulated many years ago would result in any competitive harm. Alcon's purported concerns over proprietary information are, at this juncture, stale and cannot overcome the public's strong interest in disclosure"; where MDL court rejected Alcon's assertion that "disclosure of these documents would cause enduring

harm to Alcon by giving its competitors unfair insight into Alcon's confidential current and future strategies, pricing considerations, and competitive positioning.").[7]

Indeed, it is hard to see how the simple fact that BCE told (or was planning on telling) its investors **_over five years_** ago that



would result in any **_current_** competitive harm.  Exhibit D.[8]

### 3. The Information in Both Documents Is Not a Trade Secret

Defendants' argument that the information is a trade secret also fails.

Defendants cite to Texas Civil Practice and Remedies Code Section 134A.002(6) for the assertion that the information meets a *definition* of a trade secret, but cite no facts

---

[7] Defendants' citation of *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978) is inapposite because there the Court did not conduct any analysis as to the legitimacy of the assertion that business information might harm competitive standing in the face of whether the information was stale or not.  Response at 16.  As stated above, numerous courts after *Nixon* have found that the public release of stale business information does not amount to competitive harm.

[8] Notably, BCE never discloses what those



Nor should the Court credit any implication that the sealed documents in anyway reveal the identity of BCE's investors or limited partners.

Neither

, or any of the other redacted information reveals the identity of BCE's investors or limited partners.  And even if they did, **_at most_**, this might warrant very limited redactions to shield the name of any investor or limited partner.

14

or case law proving *why* it is a trade secret today. *Compare* Response at 17 ("Bayou City and Mr. McMullen should not have to suffer the laborious process of proving a trade secret, which would require a mini trial in the middle of this case.") *with Alcon*, 2020 WL 3791865, at *8 ("But apart from the perfunctory assertions contained in the Dowd Declaration, Alcon has made no ***evidentiary*** showing that the information that it seeks to maintain under seal is a trade secret."); *Humana*, 2021 WL 4449277, at *3 ("It is widely accepted by federal courts that a party seeking trade secret protection 'must identify its trade secrets with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.' . . . Here, other than Paradis's *ipse dixit*, Humana has not 'even tried to demonstrate that any of the [internal financial projections] is comparable to a trade secret."); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 786 (E.D. Mich. 2019) (same).

At most, all Defendants assert in their Response is that revealing the information redacted would show "how Bayou City communicates with investors, analyzes investment issues, factors the criteria and sources of information into those decisions, [and] considers the lessons learned from the investment in Alta Mesa[.]" Response at 18. That is not a trade secret; it is not the "secret sauce." *See In re Envision Healthcare Corp. Sec. Litig.*, 2021 WL 1110669, at *2 (M.D. Tenn. Mar. 23, 2021) ("The Court is not persuaded by Defendants' conclusory statements that exhibits relating to, for example, past negotiations . . . amount to 'competitive business trade secrets.'"); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 308 (6th Cir. 2016) ("[T]he particulars of years-ago

negotiations are unlikely to amount to a trade secret."); *Alcon*, 2020 WL 3791865, at *11 ("[T]he vague statement that the consummation of a deal with Lens.com 'may be worth as much as' a specific dollar amount does not constitute a trade secret. . . . Moreover, Alcon fails to explain why a seven-year-old valuation would be relevant to Alcon's competitors today.").

### 4.   The Information in Both Documents Does Not Amount to Privacy Interests That Warrant Sealing

Defendants also state they have an interest in keeping their corporate "deliberations" and internal "commentary" private.  Response at 19-20.  But this Court can easily dispose of such a notion because privacy information that traditionally warrants non-disclosure generally only includes "medical or psychological information about [a] named individual . . . [or] bank account numbers, [or] [S]ocial [S]ecurity numbers and information the disclosure of which could raise a personal safety issue."  *Dawson v. Merck & Co.*, 2021 WL 242148, at *8 (E.D.N.Y. Jan. 24, 2021).  Defendants do not cite a single case holding that corporate "deliberations" and "discussions" amounts to a valid privacy interest that warrants *sealing* judicial records, nor can they—because the opposite is true.[9]  *See In re Caterpillar Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 12830520, at *2 (D.N.J. Jan. 29, 2015) ("Conclusory language (i.e. that internal discussions are 'of a highly sensitive business nature') does not, in and of itself, establish a legitimate private or public interest or a clearly defined injury.");  *cf. Cole's Wexford Hotel, Inc. v. Highmark, Inc.*,

---

[9] Defendants' citation to *Keyes v. Lenoir Rhyne Coll.*, 552 F.2d 579, 581 (4th Cir. 1997) did not involve the *sealing* of the information discussed, and thus, is inapposite.

2019 WL 3778090, at *12 (W.D. Penn. May 31, 2019) (noting that "potential embarrassment and injury to corporate reputation ration is insufficient to rebut a presumption of public access").

## V.    CONCLUSION

For the reasons set forth herein, Class Plaintiffs request that the Court grant Class Plaintiffs' Motion to Unseal Defendant McMullen's Motion for Summary Judgment and Accompanying Exhibits.

Dated: December 20, 2023

Respectfully submitted,

/s/ Andrew J. Entwistle

Andrew J. Entwistle (attorney-in-charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee (*pro hac vice*)

**ENTWISTLE & CAPPUCCI LLP**

500 West 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7278

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*

Ira A. Schochet (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*

/s/ Trig Smith

Trig Smith (*pro hac vice*)
Lonnie Browne (*pro hac vice*)
John Kelley (*pro hac vice*)

**ROBBINS GELLER RUDMAN &
DOWD LLP**

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

*Court-Appointed Co-Lead Counsel*