# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 **PUBLIC VERSION OF DKT. 535** |

# CLASS PLAINTIFFS' CORRECTED MOTION TO EXCLUDE THE TESTIMONY OF JOHN FIEBIG AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT*

*This document is identical in all respects to Class Plaintiffs' Motion to Exclude the Testimony of John Fiebig and Incorporated Memorandum of Points and Authorities in Support, filed December 22, 2023 (Dkt. 525) except: (a) two exhibit references (near the bottom of page 6) have been corrected; and (b) referenced excerpts have been added to Exhibits 2 and 4 of the supporting declaration.

## TABLE OF CONTENTS

I.     STATEMENT OF ISSUES ........................................................................... 1

II.    SUMMARY OF THE ARGUMENT ..................................................................... 1

III.   FACTUAL BACKGROUND ................................................................... 3

IV.    LEGAL STANDARDS ................................................................... 4

V.     ARGUMENT ................................................................... 5

      A.     The Fiebig Report Should Be Excluded In Its Entirety Because
            Fiebig's Report Concerns Forensic Accounting Standards, And He Is
            Not A Forensic Accountant ............................................................. 5

      B.     The Fiebig Report Should be Excluded In Its Entirety Because
            Fiebig Does Not Have a Verifiable and Reliable Methodology For
            His Opinions ................................................................... 7

      C.     The Fiebig Report Should Be Excluded In Its Entirety for Fiebig's
            Failure to Review Important Evidence and For Misunderstanding
            Critical Facts in the Record ................................................. 11

VI.    CONCLUSION ................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Axiall Canada Inc. v. MECS Inc.*,
   No. 2:20-CV-01535, 2023 WL 4846187 (W.D. La. July 12, 2023) .................... 2, 4

*Curtis v. M&S Petroleum, Inc.*,
   174 F.3d 661 (5th Cir. 1999) ............................................................................... 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ............................................................................... 1, 2, 3, 4

*Farris v. Lloyds*,
   No. H-19-3872, 2021 WL 355968 (S.D. Tex. Feb. 2, 2021) ................................ 11

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .......................................................................................... 8

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007) ...................................................................... 3, 7, 9

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d Cir. 1994) ................................................................................ 9

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) ............................................................................. 4

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) .................................................................. 8, 11, 18

*Moore v. International Paint, L.LC.*,
   547 F. App'x 513 (5th Cir. 2013) ................................................................... 3, 13

*Muñoz v. Orr*,
   200 F.3d 291 (5th Cir. 2000) ............................................................................ 12

*Nikolova v. Univ. of Tex. at Austin*,
   585 F. Supp. 3d 936 (W.D. Tex. 2022) .............................................................. 13

*Paz v. Brush Engineered Materials, Inc.*,
   555 F.3d 383 (5th Cir. 2009) .................................................................. 11, 13, 16

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) .......................................................................... 2, 4

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................. 5

*United States v. Perry*,
    35 F.4th 293 (5th Cir. 2022) ..................................................................................... 4

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) .............................................................................. 7, 9

**Statutes**

Fed. R. Evid. 702 ................................................................................................... passim

Lead Plaintiffs FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach and United Association National Pension Fund (f/k/a Plumbers and Pipefitters National Pension Fund), along with Plaintiff Camelot Event Driven Fund (collectively, "Class Plaintiffs"), respectfully move this Court to exclude, in its entirety, the opinions and testimony of Defendants Alta Mesa Resources, Inc., David M. Leuschen, Diana J. Walters, Donald Sinclair, Harlan H. Chappelle, James T. Hackett, Jeffrey H. Tepper, Michael E. Ellis, Pierre F. Lapeyre, Ronald Smith, Stephen Coats, Thomas J. Walker, William D. Gutermuth, and Riverstone Holdings, LLC's (collectively, "Defendants") expert, John Fiebig ("Fiebig"), pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## I.      STATEMENT OF ISSUES

Whether John Fiebig's expert report dated October 19, 2023 (the "Fiebig Report") should be excluded by the Court in its entirety because it does not meet the standards of Fed. R. Evid. 702 and *Daubert.*

## II.      SUMMARY OF THE ARGUMENT

On August 31, 2023, Class Plaintiffs' forensic accounting expert D. Paul Regan, CPA/CFF ("Regan") produced an expert report (the "Regan Report") concerning the Alta Mesa de-SPAC business transaction (the "Alta Mesa Business Transaction"), which closed on February 2018.  Defendants seek to rebut the well-reasoned and thoroughly supported assertions in the Regan Report through the use of their own accounting expert, Fiebig, who

produced a rebuttal report for Defendants on October 19, 2023, *i.e.*, the Fiebig Report. (Ex. 1).[1]

There is no dispute that for an expert's testimony to be admissible, under the Supreme Court decision *Daubert* and Fed. R. Evid. 702, the expert's opinions must be both "relevant and reliable." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). The court's "gate-keeping obligation applies to all types of expert testimony." *Id.* Here, the Fiebig Report should be excluded in its entirety for the following three independent reasons:

**First**, the sole purpose of Fiebig's expert report and testimony is to comment upon and critique Regan's own forensic accounting expert report and testimony—and thus, the Fiebig Report itself purports to opine on forensic accounting standards and issues. Further, Fiebig himself correctly agrees with Regan that the forensic accounting standards are the operative standards in which to view this case. However, Fiebig is ***not qualified*** as a forensic accountant, given his lack of experience and credentials concerning the application of the forensic accounting standards at issue here. Courts are clear that an analysis as to the "qualifications of the expert witness" is a requirement for admitting their testimony under Fed. R. Evid. 702. *See, e.g.*, *Axiall Canada Inc. v. MECS Inc.*, No. 2:20-CV-01535, 2023 WL 4846187, at \*2-3 (W.D. La. July 12, 2023).

**Second**, the Fiebig Report should be excluded in its entirety because Fiebig does not have a verifiable and reliable methodology for implementing and analyzing the forensic

---

[1] All "Ex. \_" references are to the exhibits attached to the Declaration of Ira A. Schochet in Support of Class Plaintiffs' Motion to Exclude the Testimony of John Fiebig, filed concurrently herewith.

accounting standards at issue here.   While the *Daubert* factors "are not mandatory or exclusive," "the existence of sufficient facts and a reliable methodology ***is in all instances mandatory***."   *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).[2]   Instead of having a reliable methodology through which to view Regan's Report (which was Fiebig's sole assignment), Fiebig merely issues subjective opinions concerning the application of the applicable forensic accounting standards, claiming "it is so."   *Id.*   This is contrary to the law, and requires exclusion of his report.

**<u>Third</u>**, the Fiebig Report should be excluded in its entirety because his opinions were not "based on sufficient facts or data." *Moore v. International Paint, L.LC.*, 547 F. App'x 513, 515 (5th Cir. 2013) (quoting Fed. R. Evid. 702(b)).   Indeed, a survey of the documents that Fiebig did—and, critically, ***did not***—review demonstrates that he received "insufficient" or even "erroneous information," which "fails the reliability standard" imposed by both *Daubert* and Fed. R. Evid. 702.

All opinion testimony by John Fiebig should therefore be excluded.

## III.   FACTUAL BACKGROUND

Class Plaintiffs assume the Court's general familiarity with the facts and issues of the case, and respectfully incorporate by reference the statement of facts contained in their opposition to the motion for summary judgment by Entity Defendants HPS, BCE, and ARM (Dkt. 445).

---

[2] All emphasis is added and citations are omitted, unless otherwise noted.

## IV.    LEGAL STANDARDS

Federal Rule of Evidence 702 "charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone*, 288 F.3d at 243-44 (citing *Daubert*, 509 U.S. at 593). "In short, expert testimony is admissible only if it is both relevant and reliable." *Id.* at 244. "Accordingly, Federal Rule of Evidence 702 provides that the court must consider the following three requirements on challenges to experts: 1) qualifications of the expert witness; 2) relevance of the proposed testimony; and 3) reliability of the principles and methodology on which the testimony is based." *Axiall Canada Inc. v. MECS Inc.*, 2023 WL 4846187, at *2.

Further, as to the reliability prong, "[i]n *Daubert*, the Supreme Court offered an illustrative, but not an exhaustive, list of factors that district courts may use in evaluating the reliability of expert testimony." *Pipitone*, 288 F.3d at 244 (citing *Daubert*, 509 U.S. at 593). These factors include: "(1) whether the technique in question has been tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the scientific community." *United States v. Perry*, 35 F.4th 293, 329 (5th Cir. 2022) (citing *Daubert*).

The proponent of the expert testimony bears the burden of proving its admissibility, by a "preponderance of the evidence." *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002). Thus, here, Defendants bear that burden. ████

## V. ARGUMENT

### A. The Fiebig Report Should Be Excluded In Its Entirety Because Fiebig's Report Concerns Forensic Accounting Standards, And He Is Not A Forensic Accountant

As a threshold matter, Fiebig admits that the scope of his work was limited purely to critiquing Paul Regan's expert report—***Fiebig conducted no independent findings of his own, nor was he asked to***. ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ The Regan Report concerned the Alta Mesa de-SPAC Business Transaction at issue here, viewed through the lens of the AICPA forensic accounting standards (the "AICPA SSFS"). ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Further, Fiebig admitted in his deposition that the AICPA SSFS forensic accounting standards apply and are the controlling specialty called for in this case. *See* Ex. 2 at 30:16-20 ("Q: To be clear, do you also acknowledge that the AICPA forensic standards are the operative accounting principles and standards with respect to both Mr. Regan's report and yours? A: Yes."). Given this posture, and these admissions by Fiebig himself, he ***must*** be qualified as an expert in forensic accounting in order to render a valid rebuttal expert opinion. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (while experts can rebut another party's expert, "[a]t a minimum, however, rebuttal experts must meet *Daubert*'s threshold standards regarding the qualifications of the expert[.]").

Here, while Fiebig may be qualified as an accountant, Fiebig is simply not qualified as a ***forensic*** accountant.  He stated on the record that he has no forensic accounting experience in either of his previous places of employment at Arthur Anderson LLP (where he worked at from 1987-2002) or Ernst & Young (2002-2004).  *See* Ex. 2 at 10:13-11:6 ("Q: Would you agree with me that none of the bullet points involved forensic accounting work? A: That's correct. [] Q: Did you do any forensic accounting work at Arthur Anderson? A: I don't believe so.  Q: How about at Ernst & Young? A: No.").  A review of Fiebig's CV demonstrates that—unlike Regan, who both (i) served on the AICPA's Forensic and Valuation Services ("FVS") Executive Committee, *i.e.*, the standards-setting body for CPAs performing forensic and valuation services, including the SSFS at issue here, and (ii) was designated by the AICPA as a CFF ("Certified in Financial Forensics")—Mr. Fiebig has no such experience or credentials.  *See* ██████████████████████

Indeed, in his deposition, Fiebig confirmed that (1) he is not "a member of the AICPA's Forensic Valuation Services section"; (2) is not a "CFF"; (3) has never "performed an engagement pursuant to SSFS" at either Arthur Anderson or Ernst & Young; (4) has never analyzed as part of his responsibilities with the PCAOB "whether an accountant had appropriately applied SSFS"; (5) has never "attended the AICPA's Forensic and Valuation Services national conference"; (6) could not name any "FVS practice aids" when asked (indeed, as to such aids, the best Fiebig could say when asked if he was "familiar" with them is "I don't know that I have seen them recently, no," *see* Ex. 2 at 34:23-35:2); and (7) has never spoken at a forensic accounting conference.  Ex. 2 at 34:2-36:1. Given this lack of forensic experience—and given that Fiebig's ***sole*** engagement was

to critique Regan's forensic accounting work—Fiebig's report should be excluded on this basis alone.

*At most*, Fiebig may point to his auditing experience, including reporting for the PCAOB on the adequacy of audits conducted by certain other auditing firms.  But his auditing experience is of no moment because Fiebig himself recognizes that "auditing has its own standards," and "forensic has its[.]"  Ex. 2 at 10:13-11:6.  His opinions about Alta Mesa's financial audits in this context also fail the relevance prong for admissibility under Fed. R. Evid. 702, because Regan never challenges the veracity of the public audits that Alta Mesa conducted concerning its financials.  *See, e.g.*, Ex. 2 at 46:20-24 ("Q: Sir, did you understand that Mr. Regan attempted to assess the quality of KPMG's audit? A: I did not understand that from his report, no."); Ex. 4 at 169:15-21 ("Q: Were there portions of KPMG's work that you found credible and portions that you did not? A: I don't recall making that conclusion. Q: You adopted KPMG's conclusions with respect to what material weaknesses existed as of the end of 2019; right? A: Right.").

**B.    The Fiebig Report Should be Excluded In Its Entirety Because Fiebig Does Not Have a Verifiable and Reliable Methodology For His Opinions**

While the *Daubert* factors "are not mandatory or exclusive," "the existence of sufficient facts and a reliable methodology **is in all instances mandatory**."  *Hathaway*, 507 F.3d at 318.  Indeed, "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).  This comports with the standard set by the Supreme Court and endorsed by the Fifth Circuit that "nothing in either *Daubert* or the Federal Rules of

Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ***ipse dixit*** of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 277 (5th Cir. 1998) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

As stated above, both Fiebig and Regan acknowledge that the operative and applicable accounting standard for this case is the AICPA SSFS.



Notably, when pressed at his deposition as to these two differing standards, Fiebig did not have any support from industry literature, publications, or consensus: "Q: Just to be clear, then, are you saying that the standards require – when the standards refer to sufficient relevant data, that they mean a comprehensive – a comprehensive analysis of the data? A: Again, in this situation, I believe so. [] Q: Do you derive any support for the view

that a sufficient relevant data equals a comprehensive analysis of the data from any FVS forensic accounting practice aids? A: I have not.  Q: From any treatises adopted by forensic accountants? A: Not that I'm aware of, no."  Ex. 2 at 43:20-45:1.

Here, therefore, Fiebig's assertion is no more than a camouflaged effort at imposing a different burden on Regan than what the SSFS prescribes—but nakedly points only to his "subjective opinion" for this assertion, claiming "it is so." *Hathaway*, 507 F.3d at 318. The law does not allow this, because it does not constitute a "reliable methodology" which can be repeated by other experts. *Id.*; *see also Viterbo*, 826 F.2d at 424 ("As an unsupported opinion, it does not serve the purposes for which it is offered, that is, objectively to assist the jury in arriving at its verdict.").  Further, because Fiebig makes this unsupported assertion repeatedly throughout his report, and uses it as a foundational standard throughout his report, he taints the ***entirety*** of his report—rendering his ***entire*** analysis unreliable. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670–71 (5th Cir. 1999) ("Under *Daubert*, 'any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'") (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994)).

Separately, when further pressed as to his application of this made up "comprehensive analysis" standard, Fiebig, as in his report, repeatedly failed to show how it demonstrated that Regan's conclusions were in any specific way inconsistent with the evidentiary record—in terms of context or otherwise.  He repeatedly gave long, circuitous answers when asked about the type of documents that he claims Regan should have

reviewed for "context"—without in any way showing that Regan did *not* review those materials—but was never able to specify one fact from them that would in any way contradict Regan's conclusions. *See, e.g.* Ex. 2 at 184:19-22 ("Is there a single piece of evidence that you're aware of that would reflect evidence that's contrary to Mr. Regan's analysis and conclusions?"); *id.* at 185:17-21 ("Did you review that context -- that information and find anything that would be – that would reflect anything that's contrary to the assertions made by Mr. Regan in his report with respect to the projections?"); *id.* at 186:5-7 ("And my question to you is have you seen any evidence to show that Mr. Regan is taking those emails out of context?"); *id.* at 186:20-25 ("And, again, I'm asking you if you've reviewed that context and found that there was something that he missed, that Mr. Regan missed that would show that his consideration of those emails and the information in those emails was inappropriate"); *id.* at 187:20-22 ("And as to this data cited in those paragraphs, you don't address any of it in any specific way, do you?"); *id.* at 190:18-21 ("And, sir, what information did you review and analyze that you claim Mr. Regan failed to analyze that would have put these emails into better context?").

In each instance, Fiebig was unable to provide any such specificity, saying at times, *e.g.*, "I would have to go back and look at some of his report to understand some of the conclusions that he has made," (*id.* at 184:25-185:2), or "I would have to go back and look at some emails he refers to," (*id.* at 187:5-6) or – when asked for examples in support of his bald assertion that Regan relies on hindsight evidence – "I would have to consider it. Off the top of my head, I'm not – I'm not coming up with one," (*id.* at 207:12-14). Fiebig's lack of specificity was always followed by a repetition of his general critique that notably

fails to include any reference—at all—to any part of the record that actually contradicts any conclusion by Regan.[4]

### C.     The Fiebig Report Should Be Excluded In Its Entirety for Fiebig's Failure to Review Important Evidence and For Misunderstanding Critical Facts in the Record

Separately, "[a]mong the conditions imposed by the Federal Rules of Evidence on the admissibility of expert opinion testimony is that the testimony be 'based on sufficient facts or data.'" *Moore*, 547 F. App'x at 515 (quoting Fed. R. Evid. 702(b)).  "In particular, an opinion based on 'insufficient, erroneous information,' fails the reliability standard." *Id.*; *see also Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming exclusion of expert testimony and report because "[w]here an expert's opinion is based on insufficient information, the analysis is unreliable.").

---

[4] Fiebig asserted that Regan should have reviewed the deposition transcript of financial advisor Tudor, Pickering, Holt & Co. ("TPH") – which Fiebig claims undermines Regan's analysis of a June 6, 2017 Alta Mesa email that Regan considered (*i.e.*, ███████).  *See* Ex. 2 at 161:4-163:19;

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  Ex. 2 at 158:22-161:17 (quoting the TPH deponent). Thus, it was clear from Fiebig's testimony that Fiebig had not read the TPH deposition transcript.  If he had, and he was acting as an objective expert, he would have been compelled to note this discrepancy.  *See Farris v. Lloyds*, No. H-19-3872, 2021 WL 355968, at *5 (S.D. Tex. Feb. 2, 2021) (excluding expert opinion on the basis of unreliable methodology where expert report "contains numerous factual inaccuracies and mistaken assumptions.").  Fiebig's misunderstanding and misapplication of the underlying documents here further demonstrates that (1) it is Fiebig who did not meet the authoritative AICPA SSFS standard of reviewing "sufficient relevant data," not Regan; and (2) Fiebig conducted his analysis using a subjective and unverifiable methodology.

In the first instance, it is problematic that here, Fiebig admits that he himself ***did not review*** all of the documents that Regan cited to and analyzed, when the entire purpose of Fiebig's report was to critique Regan's forensic accounting analysis. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. 2 at 45:8-46:9 ("Q: So is it fair to say you did not review all the documents that Mr. Regan listed that he considered? A: I have reviewed all of the documents that he cited to that I have cited to. Cornerstone [Research] has reviewed all of the documents within his appendix that I haven't, and I have reviewed *some* of those, but they have reviewed those under my direction and have provided me with any relevant information or observations from their review of that. [] Q: And you determined that that was the proper procedure, that you didn't need to look at every single document that Mr. Regan looked at? A: That's correct."). Paradoxically, Fiebig then claims that this process itself meets his own "comprehensive analysis" standard. Ex. 2 at 46:10-14 ("Q: Okay. Would you consider that to be a comprehensive analysis of the data? A: Yes[.]"). *See Muñoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000) (excluding expert report where expert "did not seek to verify the information presented to him.").

Indeed, when presented with specific material documents that he did not review, Fiebig demonstrated that, far from Cornerstone reviewing such documents under his "direction," he relied upon Cornerstone to make its own independent decisions without his input. *See, e.g.*, Ex. 2 at 45:19-46:4 ("I'm relying on their significant experience in this field and experience reviewing documents in support in terms of being able to provide me

with any views that would be relevant to my opinion").  Further, Fiebig did not review highly relevant material relating to the conclusions of Ryder Scott, discussed below, premised on "a judgment" based in part on "reliance on the experience and knowledge of the Cornerstone staff who did review it."  *Id.* at 90:10-19.

It is also problematic that it is unclear who actually even *wrote* Fiebig's Report.  *See* Ex. 2 at 24:3-10 ("Q: And who actually wrote the report? A: It was a combination of me and some of the staff from Cornerstone that worked together on it.   Q: And who at Cornerstone participated in drafting the report? A: I would say primarily JP Poissant, Steve McBride, and then Kelly – they're on the list of names. I don't always remember their last name.").  Given this contorted approach involving third-party Cornerstone Research, it should come as no surprise that Fiebig received "insufficient" and "erroneous information" and that Fiebig had a faulty understanding of the critical underlying facts—rendering his conclusions unreliable.  *Moore*, 547 F. App'x at 515; *Paz*, 555 F.3d at 389.

Below, Class Plaintiffs present one major example of this, followed by a few of the many other examples that exist:

*First*, his failure to review the Ryder Scott testimony and documents is critically important.  *See Nikolova v. Univ. of Tex. at Austin*, 585 F. Supp. 3d 936, 946 (W.D. Tex. 2022) (excluding expert testimony where the expert "admitted that he did not review the deposition of the decisionmaker in this case").  Ryder Scott's 30(b)(6) designee, Miles Palke, testified that Ryder Scott was only asked by Alta Mesa to measure proved reserves (not unproved reserves), and that "both parties were aligned in terms of using ***four wells per section*** for proved reserves." Ex. 7 at 30:25-31:1.  Further, Ryder Scott confirmed that

"it was never asked to work" or do any "work based on the assumption that that Mississippian formation, which was the target of these horizontal wells, was really – had specific benches within it that we were targeting."  *Id.* at 51:22-52:18.  This testimony contradicts Fiebig's conclusions and, critically, the three core assumptions Defendants used during the relevant time period to justify their improper and inflated oil and gas projections for recoverable reserves: that (i) each of its sections of the STACK could support 12 wells and produce at the type curve (*i.e.*, a 12 wells per section assumption); (ii) three separate benches existed within the Meramec and Osage formations in the STACK area; and (iii)  parent and child wells would generate a weighted-average total of approximately 250 MBO, with limited interference between parent and child wells.  ██████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

Fiebig asserts that Regan improperly made this opinion (and other opinions), **because** he did not reconcile his opinion(s) with the oil and gas audit opinion of Ryder Scott.  ████████████████  However, had Fiebig actually reviewed the Ryder Scott testimony and exhibits, he would have known that  Regan did not need to reconcile his analysis with that of Ryder Scott because Ryder Scott (1) was not asked to audit reserves

when using a 12 wells per section assumption (Ryder Scott merely audited only a 4 wells per section assumption for proved reserves), and (2) was never asked to confirm whether there were multiple separate benches within the Meramec and Osage formations of the STACK.  Ex. 7 at 30:25-31:1; 51:22-52:18; ████████████████████████████████████ Importantly, *these facts are not in dispute.*[5]

Ryder Scott's analysis is thus inapposite as to the question of the reasonableness of (1) a 12 wells per section assumption and (2) the assumption that 3 benches existed in the STACK that could be produced independently – a focal question here in this case as it relates to the fair value of the oil and gas reserves.

And, of course, had Fiebig reviewed the record and the Ryder Scott documents, he would have known all of this.  Instead, Fiebig confirmed in his deposition that he had no idea about these facts—despite purportedly relying on Ryder Scott in his expert report to critique Regan's Report.  ████████████████.  *See* Ex. 2 at 98:4-9 ("Q: Let me just ask the bottom line question. You don't have any understanding that Ryder Scott only looked at four—four wells per section? A: No, I don't know that that's my understanding based on the work that they performed."); *id.* at 103:16-25 ("Q: So you're not aware of whether or not there's any evidence on that issue as to whether or not Ryder Scott looked at the



reasonableness of the three bench – three bench assumption? [] A: Not that I can recall at this point.").

Below are a few additional examples from Fiebig's testimony clearly evidencing his failure to review core documents cited by Regan in support of the opinions he was making, further demonstrating that Fiebig had woefully "insufficient information" for his opinions. *Paz*, 555 F.3d at 389.

For example, Regan utilized 

, he admits that he *never* reviewed ▮▮▮. Ex. 2 at 61:5-8; 68:10-12. Had Fiebig reviewed this document, he may have arrived at the same conclusion of Regan, *i.e.*, that Riverstone was made aware—prior to the close of the Alta Mesa Business Transaction and publication of the Proxy for shareholders in February 2018—

—

that the Osage "has a high degree of wellbore interference" and that even the 4 wells per section spacing tests have shown a "hard time hitting the type curve," which—as confirmed by Class Plaintiffs' oil and gas experts and relied upon by Regan—is an additional point of support that the fair value of the oil and gas reserves were overstated.

Fiebig also failed to review ███████[7] which Regan mentions in his appendix of documents considered for his expert report analysis.  Ex. 2 at 69:7-9.  Again, had Fiebig reviewed this document, he would have been made aware that ████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████, which negatively affected the fair value of the oil and gas reserves.

Fiebig also admitted that he failed to review ████████another key document Regan considered in his expert analysis.  Ex. 2 at 111:2-17.  In this email, ███████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ (emphasis added). This document contradicts Defendant Chappelle's public representation to the market, where he misleadingly claimed that "based on long-term pattern tests," "we have a view that at least 8% of the oil in place is going to be economically producible, that is a

---

[7] ████.

very, very robust target. ***And that's sort of the basis for the inventory, the numbers that we have shared consistently over the last year***." Ex. 15 (Alta Mesa Resources, Inc. May 14, 2018 Operating Results Call).

Fiebig's failure to review key documents reviewed by Regan not only confirms Fiebig had an insufficient basis for his opinions, it suggests a pattern of intentionally ignoring documents and testimony cited by Regan that would contradict Fiebig's opinions. This pattern of ignoring the core documents and facts in the record cited by Regan for his own opinion underscores the need to exclude the Fiebig Report and Fiebig's opinions at summary judgment and trial. *See Moore*, 547 F. App'x at 515 ("When an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it).

## VI.   CONCLUSION

For all the above reasons, this Court should grant Class Plaintiffs' Motion to Exclude the Testimony of John Fiebig.

Dated: December 26, 2023

Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle (attorney-in-charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308

**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7278

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*

Ira A. Schochet (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust*

*/s/ Trig Smith*
Trig Smith (*pro hac vice*)
Lonnie Browne (*pro hac vice*)
John Kelley (*pro hac vice*)

**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

*Court-Appointed Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on December 26, 2023.


*/s/ Andrew J. Entwistle*
Andrew J. Entwistle