# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>**PUBLIC VERSION OF DKT. 513** |

**CLASS PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY BY DEFENDANTS' EXPERT ROBERT RASOR**

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING ............................................................... 1

STATEMENT OF ISSUE TO BE RULED UPON ............................................................. 1

APPLICABLE LEGAL STANDARD .................................................................................. 1

SUMMARY OF PERTINENT FACTS ................................................................................ 2

SUMMARY OF OPINION AT ISSUE AND CLASS PLAINTIFFS' CONCERN .......... 4

SUMMARY OF THE ARGUMENT .................................................................................... 5

EXPANDED ARGUMENT AND POINTS OF AUTHORITY ......................................... 6

    A.     December 1, 2017 Was Chosen Arbitrarily, or Simply to Yield the Desired Outcome ................................................................................................... 6

    B.     Mr. Rasor's Premise that No Production Data from Any "Old Wells" Could Inform Production Estimates For "New Wells" is Unsupported and Contrary to the Record. ................................................... 8

CONCLUSION ....................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases**

*Curtis v. M&S Petroleum, Inc.*,
    174 F.3d 661 (5th Cir. 1999) ................................................................................................ 5

*Daubert v. Merrell Dow Pharms, Inc.*,
    509 U.S. 579 (1993) ................................................................................................... 1, 2, 5

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir.1994) ..................................................................................................... 6

*McGill v. BP Expl. & Prod., Inc.*,
    830 F. App'x 430 (5th Cir. 2020) ......................................................................................... 6

*Moore v. Int'l Paint, L.L.C.*,
    547 F. App'x 513 (5th Cir. 2013) ......................................................................................... 9

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir.2009) ................................................................................................. 9

*Puga v. RCX Solutions, Inc.*,
    922 F.3d 285 (5th Cir. 2019) ................................................................................................ 2

*Russell v. Allianz Life Ins. Co. of N. Am.*,
    No. 3:13-CV-00030-DMB-JMV, 2015 WL 127867 (N.D. Miss. Jan. 8, 2015) ..... 9

*Slaughter v. S. Talc Co.*,
    919 F.2d 304 (5th Cir. 1990) ................................................................................................ 8

*Viterbo v. The Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ........................................................................................... 2, 7

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ................................................................................................ 2

**Rules**

Fed. R. Evid. 702 ..................................................................................................................... 1, 6

## NATURE AND STAGE OF THE PROCEEDING

This is a certified class action pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act.[1] Dkt. 241. The dispute arose in the wake of the catastrophic collapse of Alta Mesa Resources, Inc. ("AMR") within a year after it was taken public on February 9, 2018, at a valuation of $3.8 billion by way of a SPAC named Silver Run. The class includes shareholders who were entitled to vote on the de-SPAC transaction, as well as persons and entities who bought shares in the public SPAC or the successor entity. Expert discovery has concluded, and the matter is scheduled for a docket call on April 12, 2024 with trial to be set on the Court's May trial calendar (Dkt. 376).

## STATEMENT OF ISSUE TO BE RULED UPON

Is Mr. Rasor's proffered testimony regarding a purported statistical analysis, as described in his report (Ex. 1) at ▮▮▮▮▮ inadmissible pursuant to Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and related decisional authority because it arbitrarily excludes results from numerous wells?

## APPLICABLE LEGAL STANDARD

Fed. R. Evid. 702(c)-(d) provides that an expert witness may only offer opinion testimony "if the proponent demonstrates to court that it is more likely than not that: [ ]; (c) the testimony is the product of reliable principles and methods; and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." In

---

[1] All "Ex. _" references are to the exhibits attached to the Declaration of Andrew J. Entwistle in Support of Class Plaintiffs' Motion to Exclude Certain Opinion Testimony by Defendants' Expert Robert Rasor, filed concurrently herewith.

other words, before expert opinion is presented to the jury, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

In the Fifth Circuit, while a trial court has "wide latitude in determining the admissibility of expert testimony," *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)), the court must "ensur[e] that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Puga* at 294.[2]

## SUMMARY OF PERTINENT FACTS

Class Plaintiffs assume the Court's general familiarity with the facts and issues of the case, and respectfully incorporate by reference the statement of facts contained in their opposition to the motion for summary judgment by Entity Defendants HPS, BCE and ARM (Dkt. 445). The following facts, variously disputed or undisputed, in this section are pertinent to the present motion and are provided for context.

Alta Mesa began drilling horizontal oil wells in 2012. *See, e.g.,* Ex. 9 at p. 257. During the ensuing years, Alta Mesa modified its drilling and completion techniques in several respects. ▮▮▮▮▮▮▮▮▮▮ One way in which Alta Mesa modified its

---

[2] In other words, exclusion is available but disfavored in this Circuit. "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. The Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

2

technique was ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ ████ Ex. 13

at 31:2-13. By September 30, 2017, Alta Mesa had completed a significant number of wells using each completion design, including, importantly, Generations 2 and 2.5. Ex. 8 at p.45. Additionally, Alta Mesa tested various "well densities," that is, the number of wells that it was drilling per each of its square mile "drilling sections." Ex. 2 at 218:12-219:5. Members of Alta Mesa management insist that the years from 2014-2018 were a period of continuous exploration or learning wherein the processes and techniques were continually tested and applied as new information became available.[3] Despite the data available to them from such operations and testing prior to 2018, Defendants apparently intend to argue that they did not know that Alta Mesa's "base case development plan" of drilling 12-14 wells per section would not be viable until sometime late in 2018, after they stopped presenting that plan to the public.

Leading up to and following Alta Mesa's transformation into a publicly held company, certain defendants made a series of statements in 2017 and 2018 regarding the amount of recoverable oil in Alta Mesa's acreage and, more relatedly, the number of drilling locations that had been identified and the amount of oil that would ultimately be recovered, on average from those locations. Third Amended Complaint, Dkt. 218 at pp.

---

[3] *See, e.g.*, Ex. 12 at 63:25-64:5; Ex. 13 at 71:3-8; ███████████████████; Ex. 15 at 72:4-7, 72:24-73:21, 187:4-14, 202:19-22, 203:18-204:2, 243:1-12, 252:8-13; ████████████████████████████████████████████████████████ Ex. 17 at 63:24-64:6, 96:25-97:13, 112:11-113:10.

3

58-80 ("TAC"). Additionally, Alta Mesa's investor materials and the Proxy Statement for the de-SPAC transaction included earnings estimates that were based on the projected production from Alta Mesa's existing and future wells. TAC ¶¶ 206-208. Class Plaintiffs allege that these statements were made without a reasonable basis and in contradiction of Defendants' internal data and projections. Class Plaintiffs further allege that certain defendants either: (1) knew the statements were false; (2) made them with reckless disregard for their truth or falsity; or (3) in the case of the Proxy Defendants, were at least negligent in publishing them. TAC pp. 81-94.

### SUMMARY OF OPINION AT ISSUE AND CLASS PLAINTIFFS' CONCERN

Several defendants retained Robert Rasor, a longtime petroleum engineer, to testify on their behalf as an expert witness at the trial in this matter.[4] Among the opinions offered in his effort to exculpate the Defendants, Mr. Rasor states that ████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████ To reach this conclusion, Mr. Rasor began with two premises that Class Plaintiffs contend are unsupported and counterfactual. Specifically, Mr. Rasor assumes: ████████ ████████████████████████████████████████ ████████████████████████████████████████

---

████████████████████████████████████ ████████████████████████████████████████ ████████████████████

██████████████████████████████████████████ Proceeding from these premises, Mr. Rasor conducted a sophisticated and mathematically complex statistical analysis to reach his ultimate conclusion, giving a sheen of technical and scientific rigor to the exercise.[5] The façade of rigor provided by the technically complex analysis may cause the jury to credit the conclusion despite its reliance on unfounded and counter-evidentiary premises and assumptions, including the arbitrary selection of Mr. Rasor's Reference Date.

## SUMMARY OF THE ARGUMENT

Mr. Rasor's opinion that Defendants could not have known its projections for "new wells" were unlikely to materialize until September of 2018 depends on his creation of an arbitrary distinction between a set of "new wells" and a set of "old wells" and his *ipse dixit* assumption that *none* of the data from *any* of the "old wells" inform production estimates for any of the "new wells." Because these premises are unsupported and contrary to the record, regardless of the merits of the analysis that proceeds from these assumptions, the ultimate opinion is inadmissible. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670–71 (5th Cir. 1999) ("Under *Daubert*, 'any step that renders the analysis unreliable … renders



*the expert's testimony inadmissible.*'") (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir.1994) (emphasis in original); *see also McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (excluding expert testimony where there was "a notable analytical gap between the facts he relies on and the conclusions he reaches"). In other words, regardless of his qualifications and the soundness of the statistical theory, Mr. Rasor's analysis simply does not "reflect[] a reliable application of the stated principles and methods to the facts of the case." Fed. R. Evid. 702(d).

## EXPANDED ARGUMENT AND POINTS OF AUTHORITY

A. **December 1, 2017 Was Chosen Arbitrarily, or Simply to Yield the Desired Outcome**

The outcome of Mr. Rasor's analysis depends on the date chosen to distinguish "old wells" from "new wells." Ex. 1 ▮▮▮; Ex. 2 at 223:11-224:6. ▮▮▮

▮▮▮

▮▮▮

▮▮▮ But, as he conceded at his deposition, Mr. Rasor's statistical methodology could be applied to any date chosen, including earlier dates (which would place Defendants' knowledge earlier in time). Ex. 2 at 217:21-218:11; 223:11-224:6. Either the selection of December 1, 2017 as the cut-off date was arbitrary, or it was deliberately chosen to yield the desired result.

Mr. Rasor's alternative explanations for how he selected the cut-off date fail to demonstrate that the selection was made pursuant to a reliable methodology. ▮▮▮

6

██████████████████████████████████████████████████████████████████

██████████████████████████████████ Rasor explained at his deposition that he meant that he could use a particular spreadsheet generated as of December 1, 2017 (for a reserves audit), that was later provided by Alta Mesa in fact discovery to analyze production data from "Old Wells". Ex. 2 at 212:6-213:2. ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ The data in that document would allow for the selection of any reference date prior to 2019. Ex. 2 at 217:24-218:1); ████

████. At his deposition, Mr. Rasor also stated that he chose December 1, 2017 because (1) it was around this time that wells with the latest completion technique ("generation 2.5") started to produce oil (Ex. 2 at 213:3-22) and (2) "more wells were being added in some sections" (Ex. 2 at 218:12-219:5). Mr. Rasor conceded however, that he did not review whether any of the "old wells" were generation 2.5 and drilled in multi-well patterns (*i.e.* the very properties that he claims distinguished them from "new wells"). Ex. 2 at 219-220. Because Mr. Rasor did not verify either of the supposed distinctions between "new wells" and "old wells," the statistical analysis based on this distinction is inadmissible. *See Viterbo*, 826 F.2d at 422 (expert opinion based on unreliable premise was properly excluded because, "if an opinion is fundamentally unsupported, then it offers no expert assistance to the jury."); *Slaughter v. S. Talc Co.*, 919 F.2d 304, 306 (5th Cir. 1990) (same).

**B.    Mr. Rasor's Premise that No Production Data from Any "Old Wells" Could Inform Production Estimates For "New Wells" is Unsupported and Contrary to the Record.**

Even if a distinction between "old wells" and "new wells" were supportable, Mr. Rasor's opinion still would be unreliable because it depends on the premise that data from the "old wells" could not be used to predict recovery from the new wells. Nothing in Mr. Rasor's report or deposition testimony supports such a premise. Further, numerous defendants and their consultants did, in fact, project recovery from the new wells based partially on results from the "old wells." E.g. ▮▮▮▮ Ex. 15 at 86:3-13; ▮▮▮▮

▮▮▮▮. Mr. Rasor does not, and cannot, reconcile this contradiction.

The disconnect between Mr. Rasor's premises and the factual record in the case render his statistical analysis unreliable and inadmissible. *See Russell v. Allianz Life Ins. Co. of N. Am.*, No. 3:13-CV-00030-DMB-JMV, 2015 WL 127867, at *4 (N.D. Miss. Jan. 8, 2015) (damages calculation not admissible where a material assumption was contradicted by record evidence). This is so because, as the Fifth Circuit has explained, "An opinion based on 'insufficient, erroneous information,' fails the reliability standard."

*Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (*quoting Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 389 (5th Cir.2009).

## **CONCLUSION**

For all of the foregoing reasons, Class Plaintiffs respectfully request that the Court issue an Order striking from the Expert Report of Robert Rasor ███████ ████████████████████████████████████ Class Plaintiffs further request that the Court decline to consider the stricken portions of the Report or any testimony regarding Mr. Rasor's statistical analysis or the conclusions drawn from that analysis in connection with any motion for summary judgment. Class Plaintiffs further request that the Court order Mr. Rasor not to testify at trial regarding his statistical analysis or the conclusions drawn from that analysis and order defense counsel not to elicit such testimony. A proposed order is submitted herewith.

Dated: December 22, 2023     Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle (attorney-in-charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308

**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7278

-and-

*/s/ Trig Smith*
Trig Smith (*pro hac vice*)
Lonnie Browne (*pro hac vice*)
John Kelley (*pro hac vice*)

**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

*Court-Appointed Co-Lead Counsel*

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*

Ira A. Schochet (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust*

## CERTIFICATE OF SERVICE

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on December 22, 2023.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
