UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-CV-00957<br><br>**PUBLIC VERSION OF DKT. 519** |

**CLASS PLAINTIFFS' MOTION TO EXCLUDE CHARLES WHITEHEAD'S OPINION NO. 1**

# **TABLE OF CONTENTS**

I. STATEMENT OF THE ISSUE TO BE RULED UPON ......................................... 1

II. INTRODUCTION AND SUMMARY OF THE ARGUMENT .............................. 1

III. LEGAL STANDARD ................................................................................................ 4

IV. ARGUMENT .............................................................................................................. 5

    A. Opinion No. 1 Should Be Precluded Because What Other Companies Said in Their SEC Filings Is Irrelevant ......................................................... 5

    B. Whitehead's Methodology Underlying Opinion 1 Is Unreliable .................. 7

        1. Opinion No. 1 Fails to Satisfy *Daubert's* Testability Factor ............. 7

        2. Opinion No. 1 Fails to Satisfy *Daubert's* Publication and Peer Review Factor ................................................................................... 9

        3. Opinion No. 1 Fails *Daubert's* Known Rate of Error Factor............. 9

        4. Opinion No. 1 Fails to Satisfy *Daubert's* Acceptance in the Relevant Scientific Community Factor ............................................. 12

    C. The Court Should Reject Opinion No. 1 Because of the Analytical Gap Between the Data Whitehead Relied Upon and Opinion No. 1 Itself ................................................................................................................. 12

V. CONCLUSION .......................................................................................................... 14

# **TABLE OF AUTHORITIES**

**CASES**

*Bennett v. PRC Pub. Sector, Inc.*,
　931 F. Supp. 484 (S.D. Tex. 1996)............................................................................. 8

*Booth v. Black & Decker, Inc.*,
　166 F. Supp. 2d 215 (E.D. Pa. 2001) ....................................................................... 10

*Brumley v. Pfizer, Inc.*,
　200 F.R.D. 596 (S.D. Tex. 2001) ................................................................... 5, 7, 8, 9

*Castellow v. Chevron USA*,
　97 F. Supp. 2d 780 (S.D. Tex. 2000).......................................................................... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
　509 U.S. 579 (1993) .......................................................................................... 1, 4, 5

*Frye v. United States*,
　293 F. 1013 (D.C. 1923),
　*superseded by rule*, Fed. R. Evid. 702........................................................................ 5

*Gen. Elec. Co. v. Joiner*,
　522 U.S. 136 (1997) .................................................................................................. 5

*Johnson v. Arkema, Inc.*,
　685 F.3d 452 (5th Cir. 2012) ..................................................................................... 5

*Kelley v. Am. Heyer-Schulte Corp.*,
　957 F. Supp. 873 (W.D. Tex. 1997) ........................................................................... 7

*Kumho Tire Co., Ltd v. Carmichael*,
　526 U.S. 137 (1999) ............................................................................................... 4, 6

*Magistrini v. One Hour Martinizing Dry Cleaning*,
　180 F. Supp. 2d 584 (D.N.J. 2002),
　*aff'd*, 68 F. App'x 356 (3d Cir. 2003) ...................................................................... 13

*Soldo v. Sandoz Pharms. Corp.*,
　244 F. Supp. 2d 434 (W.D. Pa. 2003) ...................................................................... 10

*Spring St. Apts. Waco, LLC v. Phila. Indemn. Ins. Co.*,
　No. 6:16-cv-00315-JCM, 2017 WL 2805014 (W.D. Tex. June 28, 2017) .............. 8

*Tanner v. Westbrook*,
    174 F.3d 542 (5th Cir. 1999),
        *superseded in part by rule on other grounds*, Fed. R. Evid. 103(a).........................4

**RULES**

Fed. R. Evid. 403 ...............................................................................................................6

Fed. R. Evid. 702 ............................................................................................................1, 4

Class Plaintiffs FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach and United Association National Pension Fund, and plaintiff Camelot Event Driven Fund (collectively, "Class Plaintiffs"), by and through their attorneys, respectfully move this Court for the purpose of excluding Charles Whitehead's ("Whitehead") Opinion No. 1.

I.  **STATEMENT OF THE ISSUE TO BE RULED UPON**

Is Whitehead's proffered testimony regarding his Opinion No. 1, which is irrelevant and based on a novel and untested methodology with serious analytical flaws, inadmissible pursuant to Federal Rules of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and related decisional authority?

II.  **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

This is a case regarding false and misleading statements about Alta Mesa Resources, Inc., Alta Mesa Holdings, LP ("AMH") and Kingfisher Midstream LLC's ("KFM") capabilities and financial prospects with regard to their oil and gas operations in the geographic region of Oklahoma known as the STACK. Certain Defendants have retained Charles Whitehead as an expert witness. Whitehead is a professor at Cornell Law School and teaches courses in securities law, business organizations, mergers and acquisitions, corporate governance and deal structuring.

[redacted]

[redacted]

[redacted]

[redacted]



Opinion No. 1 reads as follows:

The Court should preclude Opinion No. 1 at summary judgment and trial because: (1) it is irrelevant; (2) Whitehead's methodology does not satisfy a single reliability factor provided in *Daubert*; and (3) there is an "analytical gap" between the opinion and the data Whitehead relied upon in reaching it.

---

[1] All "Ex(s). _" references are to the exhibits attached to the Declaration of Trig R. Smith in Support of Class Plaintiffs' Motion to Exclude Charles Whitehead's Opinion No. 1, filed concurrently herewith. Unless otherwise stated, all emphasis is added and citations are omitted herein.

[2] Class Plaintiffs intend to file an *in limine* motion at the appropriate time to preclude all Defendants and their experts from referring to any consulting work purportedly done on behalf of Riverstone Holdings, LLC ("Riverstone") (or Silver Run Acquisition Corp. II ("SRII"), for that matter) by entities not identified in Defendants' Rule 26(a)(1) disclosures, including Ernst & Young LLP and Rock Oil, during the 2017 and early 2018 due diligence of the AMH and KFM targets. . Class Plaintiffs further intend to object, pursuant to the Federal Rules of Evidence, to the extent Defendants and/or their experts refer to Ernst & Young or Rock Oil during summary judgment and during trial.

[3] The "targets" in this case are AMH and KFM.

Opinion No. 1 is irrelevant because the issue here is whether the Proxy *in this case*, in fact, contained financial projections prepared solely by AMH and KFM. The jury is fully capable of understanding, without Whitehead's assistance, whether other Defendants or entities, such as SRII or Riverstone (through their agent, Defendant Hackett), or outside investment banks assisting Defendants, had a role in the preparation of AMH and KFM financial projections. What other SPACs said or did has nothing to do with that factual issue.

Opinion No. 1 also fails to satisfy *Daubert*'s reliability requirements. Whitehead could have tested his methodology underlying Opinion No. 1, but he did not. Whitehead failed to identify whether his theory/methodology has ever been tested in analogous studies by any of his peers. It has not. Whitehead's methodology has never been peer reviewed, let alone published by him. Whitehead failed to identify whether any analogous methodology/study has been published and peer reviewed. Because Whitehead did not confirm the accuracy of his data, and no similar study has ever been published, it is impossible for this Court to assess *Daubert's* "known rate of error" factor for his methodology. Whitehead also failed to provide data regarding known/potential rate of error. And, Whitehead has failed to come forth with any evidence that his theory/methodology has been accepted by others in his area of expertise.

Lastly, because Whitehead merely assumed that all SEC disclosures he considered for purposes of Opinion No. 1, including the Proxy *in this case*, were accurate, the opinion is burdened by a fatal analytical gap. Specifically, because Whitehead failed to verify the accuracy of any of the data underlying Opinion 1, the only reasonable opinion he could

3

have offered is: (a) 74% of SEC filings I reviewed *said* the projections were prepared solely by the target; (b) the Proxy in this case *said* the projections were prepared solely by AMH and KFM; and, (c) therefore, the Proxy in this case belongs to the group of 74% of other SEC filings that *said* the projections were prepared solely by the targets.

At the end of the day, Opinion No. 1 is as close to "junk science" as it can get. The Court should preclude it pursuant to Rule 702 of the Federal Rules of Evidence.

### III. LEGAL STANDARD

Rule 702 governs the admissibility of proffered expert testimony. *See Daubert*, 509 U.S. at 589-90. If an opinion's admissibility is challenged, the trial judge is required to "perform a screening function" to ensure that the offered opinion is both "reliable and relevant" to the facts in the particular action. *See Tanner v. Westbrook*, 174 F.3d 542, 545 n.1 (5th Cir. 1999), *superseded in part by rule on other grounds*, Fed. R. Evid. 103(a). *See also Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 149 (1999) (noting that should an expert's "testimony's factual basis, data, principles, methods or their application [be] called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline'"). The burden is on the party proffering the expert opinion to establish admissibility by a preponderance of the evidence. *Daubert,* 509 U.S. at 592 n.10.

In *Daubert*, the Supreme Court provided a non-exhaustive list of four factors that this Court should consider when determining if expert testimony is purportedly based on reliable scientific knowledge. Those factors are: (1) the expert's hypothesis can be and has been tested; (2) the methodology has been subject to peer review and publication; (3)

4

the methodology is associated with a "known or potential rate of error along with the existence and maintenance of standards controlling the technique's operation"; and (4) the degree of acceptance the methodology has within the relevant scientific community. *See Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 600 (S.D. Tex. 2001) (citing *Daubert*, 509 U.S. at 591-95 and *Frye v. United States*, 293 F. 1013, 1014 (D.C. 1923), *superseded by rule*, Fed. R. Evid. 702).

Further, "nothing in either *Daubert* or the Federal Rules of Evidence require[] a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Indeed, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* Should a court make that determination, it may exclude an opinion as unreliable, even if it otherwise satisfies the *Daubert* factors. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012).

**IV.    ARGUMENT**

    **A.    Opinion No. 1 Should Be Precluded Because What Other Companies Said in Their SEC Filings Is Irrelevant**

Class Plaintiffs' claims include a fairly straightforward Section 14(a) claim against Riverstone, Alta Mesa Resources, Inc. (then Silver Run Acquisition Corporation II), and four individuals[4] and Section 20(a) control claims against all defendants, based on misstatements within the Proxy and outside the Proxy. As it relates to Opinion No. 1, Class Plaintiffs allege the January 19, 2018 Proxy contained false and misleading statements

---

[4] Defendants Hackett, Walters, Gutermuth, and Tepper. ECF 218, ¶¶43-49.

about the current and future operational capabilities of AMH and KFM. Those statements included EBITDA financial projections for AMH and KFM for 2017, 2018, and 2019. To the extent that evidence indicates entities or individuals who were not associated with AMH or KFM (such as, for example, Riverstone or SRII, through their agent, defendant Hackett, or other outside financial consultants assisting Defendants) also assisted in, or directly influenced, the generation or preparation of those baseless projections, Class Plaintiffs intend to utilize that evidence to prove up Defendants' state of mind, as well as to counter Defendants "good faith" defense to Class Plaintiffs' §20(a) control person claims.

What other companies said in SEC filings, however, about the preparation of their financial projections has no bearing on the question of whether the Proxy projections *in this case* were prepared by AMH and KFM. Accordingly, Whitehead's allusion to what these other companies did, or did not do, would be unhelpful to, and dangerously confusing and misleading for, a jury in this action. *See Kumho,* 526 U.S. at 152 (noting that the objective of the *Daubert* gatekeeping function is to "ensure the reliability **and relevancy** of expert testimony"). *See also* Fed. R. Evid. 403 (even if relevant, evidence is subject to exclusion "if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury."). Here, a jury will need no assistance with the evidence demonstrating whether other Defendants' (and/or other non-defendant entities) had a role in the preparation of the AMH and KFM projections.

### B. Whitehead's Methodology Underlying Opinion 1 Is Unreliable

#### 1. Opinion No. 1 Fails to Satisfy *Daubert's* Testability Factor

The first factor this Court should consider with regard to the reliability of Opinion 1 is whether Whitehead's theory or technique can be and has been tested. *See Brumley*, 200 F.R.D at 602 (Noting "[t]he 'testability' requirement is a threshold requirement aimed at excluding pseudoscience from the courtroom. A theory that is untestable is unfalsifiable and of no practical value" to any court.); *Kelley v. Am. Heyer-Schulte Corp.*, 957 F. Supp. 873, 876 (W.D. Tex. 1997) (noting "[t]he hallmark of acceptable testimony turns on whether the scientific conclusion is testable *and* has been tested").

Whitehead's deposition testimony demonstrates that the methodology underlying Opinion No. 1 is unreliable. Whitehead testified that he did nothing to confirm whether the data contained in the SEC documents filed by any of the companies in his sample subset[5] – *i.e.*, the data he relied upon to conclude that their projections were "prepared solely by the targets" – was accurate. *See* Ex. B (Excerpts of the Videotaped Deposition of Charles Whitehead) (hereinafter "Whitehead Trans.") at 39:5-41:9, 49:3-25.[6] He could have contacted those companies and asked about the accuracy of their disclosures. Or, he could have asked them for documentation related to whether the disclosures were prepared solely by the targets. But Whitehead did nothing to assess the veracity of his data. Rather,

---

[5] ███████████████████████████████████

[6] Pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases (S.D. Tex. Jan. 2007), Class Plaintiff submits excerpts of Whitehead's deposition testimony. Should the Court desire additional testimony from that transcript, Class Plaintiffs will provide it to the Court promptly upon request.

7

Whitehead testified he merely assumed all of the SEC disclosures were accurate. *Id.* at 41:4-9.

Whitehead testified his approach was identical with respect to the Proxy ***at issue in this case***. *Id.* at 168:1-169:4. Here, he merely read the Proxy language, assumed it to be accurate, and did not ask (and was not provided) any evidence by Defendants regarding the veracity of that critical data point. *Id.* at 172:1-174:14. Whitehead also fails to identify any published and peer-reviewed study in which his (or a similar) theory/methodology had been tested by his peers. Accordingly, "[t]here is no question that [Whitehead's theory/data could have been] tested; the problem is that is has not been tested." *Brumley*, 200 F.R.D at 601. In short, Opinion No. 1 is unreliable because it would be impossible for this Court to determine whether it is falsifiable. *See Brumley*, 200 F.R.D at 602.

Other courts have rejected proffered scientifically based opinions for related reasons. *See, e.g.*, *Spring St. Apts. Waco, LLC v. Phila. Indemn. Ins. Co.*, No. 6:16-cv-00315-JCM, 2017 WL 2805014, at *6 (W.D. Tex. June 28, 2017) (noting "if the foundational data underlying opinion testimony is unreliable, an expert will not be permitted to base an opinion on that data because any opinion from that data is likewise unreliable"); *Bennett v. PRC Pub. Sector, Inc.*, 931 F. Supp. 484, 502 (S.D. Tex. 1996) (observing that "here, the probative value of [the expert's opinions] is eviscerated because the conclusions are untested and based on unreliable information"); *Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 791 (S.D. Tex. 2000) (noting it is impossible to endorse a methodology as valid "if the veracity of the factual data is questioned").

### 2.     Opinion No. 1 Fails to Satisfy *Daubert's* Publication and Peer Review Factor

Whitehead's theory and/or methodology has not been published in any academic article (or otherwise). Further, he fails to point to any other study published by a peer that simply looked at disclosures contained in SEC filings, accepted those disclosure as true and concluded, therefore, that a set of defendants' conduct was consistent with a purported custom and practice. In fact, Whitehead admitted he considered not a scintilla of evidence (*i.e.*, other than the Proxy itself) regarding whether the Proxy's financial projections ***in this case*** were, in fact, prepared solely by AMH and KFM.

Whitehead also failed to identify a single analogous study, both published and peer-reviewed, that had been tested prior to Whitehead offering Opinion No. 1. As such, Whitehead's theory/methodology has not been subject to rigorous peer review by a single member of Whitehead's profession, let alone an empiricist.

### 3.     Opinion No. 1 Fails *Daubert's* Known Rate of Error Factor

Because Opinion 1 fails to satisfy *Daubert's* testability and publication and peer review factors, it is impossible for this Court to assess the "known rate of error" factor. *See, e.g.*, *Brumley*, 200 F.R.D at 602 (noting "[t]he Court cannot assess the 'known rate of error' for a theory that has no empirical foundation"). Further, Whitehead's admitted failure to assess the accuracy of the data he relied upon in conjuring Option No. 1 is fatal.

The Court cannot assess the "known or potential rate of error" associated with his methodology because Whitehead failed to identify any. Whitehead has also failed to identify any other similar, published and peer-reviewed academic study from which an

9

actual or potential rate of error may be inferred. Accordingly, this Court should reject Opinion No. 1. *See, e.g.*, *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 569 (W.D. Pa. 2003) (noting where the "potential error rate is unacceptably high, if not completely unknown or unknowable," the associated opinion is inadmissible). *See also Booth v. Black & Decker, Inc.*, 166 F. Supp. 2d 215, 220 (E.D. Pa. 2001) (rejecting "intuitively appealing" methodology because expert showed no evidence of peer review, known or potential rate of error, or general acceptance).

Compounding Whitehead's inability to present a known or potential rate of error is the fact that one cannot be certain whether his categorization of data is correct or not. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See e.g.*, Ex. C at 16-20 (Adam Badawi's Rebuttal to the Opinions Offered by Charles Whitehead and Steven J. Pully, dated October 19, 2023). *See also* Ex. D at 149 (CF Corporation, the acquirer, disclosing that its management "prepared the Adjusted FGL [the target] Forecasts"), Ex. E at 177-78 (Gores I, the acquirer and referenced as the "Company" in the relevant disclosure, clarifying that certain "projections were prepared by, and are the responsibility" of Gores I), Ex. F at 154 (M III Acq. Corp., the acquirer and referenced as the "Company" in the relevant disclosure, clarifying that the "[p]rojections . . . for the fiscal years ending [2017 through 201] were prepared by the Company in August 2017"), Ex. G. at 138 (Monocle

10

Acq. Corp, the acquirer, disclosing that "Monocle's Board also considered certain historical and projected financial information prepared by [Monocle's management] in collaboration with AerSale management [the target]"), Ex. H at 169 (Gores III, the acquirer, disclosing it had "updated the projections that were disclosed to the Company to reflect revised views on near-term performance"), Ex. I at 74-75 (Pensare Acq. Corp. disclosing a set of "Telco Projections" prepared by Pensare management), Ex. J at 174-76 (Hennessy Cap. Acq. Corp. II, the acquirer, disclosing that projections were based on "Hennessy Capital's due diligence of Daseke and extrapolations from Daseke's financial forecasts"), Ex. K at 150 (Industrea Acq. Corp., the acquirer, disclosing it "collaborated with CPH [the target] management to create certain pro forma historical and projected information").

    Upon closer examination of Whitehead's data, Class Plaintiffs identified an additional four categorization errors, and two other related errors. Specifically, Whitehead erroneously categorized projections being prepared "solely by the targets" with regard to four additional companies in his sub-sample: *See* Ex. L at 65 (Black Ridge Acq. Corp. ("BRAC"), the acquirer disclosing that "[p]rojected fiscal year 2018, 2019 and 2020 revenue and EBITDA, as applicable, for the target were based on projections provided by management of BRAC and the target"), Ex. M at 113 (Haymaker II, the acquirer, disclosing that its Board was "provided with prospective financial information prepared by management of Arko [the target] and GPM [a group of minority shareholders]"), Ex. N at 94 (ChaSerg Tech, the acquirer, disclosing that projections provided by it and the target's management), Ex. O at 108 (Insurance Acq. Corp., the acquirer, disclosing that projections

11

provided by it and the target).  Because Opinion No. 1 fails to provide a known or potential rate of error, and is hampered by a significant amount of data characterization error, it is unfit for consumption by a jury.

    **4.    Opinion No. 1 Fails to Satisfy *Daubert's* Acceptance in the Relevant Scientific Community Factor**

Whitehead has not published his theory/methodology in any academic journal. Whitehead has failed to identify any peers in his field of expertise who have published a similar hypothesis based on the methodology he deployed in support of Opinion No. 1. That might have been some evidence of acceptance of the methodology in the scientific community. And, there's a logical explanation for Whitehead's failure to come forward with that evidence. No such studies, including Whitehead's unpublished empirical exploration, exist in the academic literature to date.

    **C.    The Court Should Reject Opinion No. 1 Because of the Analytical Gap Between the Data Whitehead Relied Upon and Opinion No. 1 Itself**

Whitehead's conclusion that Defendants' conduct in making the disclosure in the Proxy was consistent with "custom and practice" relies entirely on his assumption that the Proxy disclosure *in this case* was accurate – a fact question the jury will be asked to decide – and the assumption that the public disclosures relating to other SPACs were accurate,

which he did nothing to verify. Class Plaintiffs respectfully contend, therefore, Whitehead took an unsupported leap to conclude the Proxy disclosure *in this case* is consistent with the "custom and practice" inferred from his subset riddled with categorization error.

At bottom, Opinion No. 1 is materially based on ***Whitehead's judgment*** that the SEC filed documents in his population (including the Proxy here) either do not include misleading disclosures (whether the product of intent or innocent mistake). That fact is critical. "Where, as here, elements of judgment pervade the methodology it is essential that the expert set forth the method of weighing the evidence upon which his opinion is based." *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 608 (D.N.J. 2002), *aff'd*, 68 F. App'x 356 (3d Cir. 2003). Here, Whitehead has come forward with no evidence to support his subjective belief that all disclosures he considered were accurate. Rather, Whitehead admitted he merely assumed the disclosure language in all the SEC filings was accurate. He further admitted he looked at no other evidence produced in the case to support his judgment that the Proxy disclosure *in this case* was accurate. Whitehead also provides no explanation about how he weighed evidence to reach a finding that any disclosure language was accurate. That is no surprise to Plaintiffs: There was no need to describe his methodology in this regard, because he deployed none. As such, Opinion No. 1 is not reliably based on a scientific method. *See Magistrini,* 180 F. Supp. 2d at 608.

Because of the "analytical gap" between the data Whitehead relied upon and Opinion No. 1, it's methodology and conclusion should be re-characterized as follows: (1) 84% of the companies in the sample subset ***said*** in their SEC filings that the financial

13

projections were prepared solely by the targets; (2); the Proxy in this case *said* that the financial projection were prepared solely by AMH and KFM; and, (3) thus, the Proxy disclosure here is consistent with the subset of companies that *said* the financial projections were prepared solely by the targets. If Whitehead proffered that opinion, it might have been scientifically reliable. Yet, it would still remain irrelevant to whether the Proxy here incorporated financial projections prepared exclusively by AMH and KFM.

## V.    CONCLUSION

For the reasons stated herein, Class Plaintiffs respectfully request that the Court issue an Order striking from the August 31, 2023 Expert Report of Charles Whitehead: (1) ███████████████████████████ (*i.e.*, Opinion No. 1), and to preclude the admissibility of the same during summary judgment and trial. A proposed order is submitted herewith.

Dated: December 22, 2023                                                      Respectfully submitted,

| | |
|---|---|
| */s/ Andrew J. Entwistle* | */s/ Trig Smith* |
| Andrew J. Entwistle (attorney-in-charge) | Trig Smith (*pro hac vice*) |
| State Bar No. 24038131 | Lonnie Browne (*pro hac vice*) |
| Callie Crispin | John Kelley (*pro hac vice*) |
| State Bar No. 24104231 | |
| Sal H. Lee | **ROBBINS GELLER RUDMAN &** |
| State Bar No. 24127308 | **DOWD LLP** |
| | 655 West Broadway, Suite 1900 |
| **ENTWISTLE & CAPPUCCI LLP** | San Diego, CA 92101 |
| 500 West 2nd Street, Suite 1900 | Telephone: (619) 231-1058 |
| Austin, TX 78701 | Facsimile: (619) 231-7423 |
| Telephone: (512) 710-5960 | |
| Facsimile: (212) 894-7278 | *Court-Appointed Co-Lead Counsel* |

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*


Ira A. Schochet (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust*

15

**CERTIFICATE OF SERVICE**

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on December 22, 2023.

/s/ *Andrew J. Entwistle*
Andrew J. Entwistle