# EXHIBIT E

DEFM14A 1 d230057ddefm14a.htm DEFM14A

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## SCHEDULE 14A

**Information Required in Proxy Statement**
Schedule 14A Information

**Proxy Statement Pursuant to Section 14(a) of the
Securities Exchange Act of 1934**

Filed by the Registrant ☒     Filed by a Party other than the Registrant ☐

Check the appropriate box:

- ☐ Preliminary Proxy Statement
- ☐ **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**
- ☒ Definitive Proxy Statement
- ☐ Definitive Additional Materials
- ☐ Soliciting Material Pursuant to §240.14a-12

# GORES HOLDINGS, INC.

**(Name of Registrant as Specified In Its Charter)**

**(Name of Person(s) Filing Proxy Statement, if other than the Registrant)**

Payment of Filing Fee (Check the appropriate box):

- ☐ No fee required.
- ☐ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.
  - (1) Title of each class of securities to which transaction applies:
  - (2) Aggregate number of securities to which transaction applies:
  - (3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):
  - (4) Proposed maximum aggregate value of transaction:
  - (5) Total fee paid:
- ☒ Fee paid previously with preliminary materials.
- ☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.
  - (1) Amount Previously Paid:
  - (2) Form, Schedule or Registration Statement No.:
  - (3) Filing Party:
  - (4) Date Filed:

Table of Contents

**GORES HOLDINGS, INC.**
**9800 Wilshire Blvd.**
**Beverly Hills, California 90212**

Dear Gores Holdings, Inc. Stockholder:

We cordially invite you to attend a special meeting in lieu of the 2016 annual meeting of the stockholders of Gores Holdings, Inc., a Delaware corporation ("*we*," "*us*," "*our*" or the "*Company*"), which will be held on November 3, 2016, at 9:00 a.m., Eastern Time, at the offices of Weil, Gotshal & Manges LLP, located at 767 Fifth Avenue, New York, NY 10153 (the "*Special Meeting*").

On July 5, 2016, the Company, Homer Merger Sub, Inc. ("*Company Merger Sub*"), AP Hostess Holdings, L.P. ("*AP Hostess LP*"), Hostess CDM Co-Invest, LLC ("*Hostess CDM Co-Invest*"), CDM Hostess Class C, LLC ("*CDM Hostess*" and, together with AP Hostess LP and Hostess CDM Co-Invest, the "*Selling Equityholders*"), and AP Hostess LP, in its capacity as the sellers' representative, entered into a Master Transaction Agreement (as it may be amended from time to time, the "*Master Transaction Agreement*"), which provides for, among other things, (i) the mergers of: (A) Hostess Management, LLC, a Delaware limited liability company owned, directly or indirectly, by certain of the Selling Equityholders and certain members of Hostess' management, with and into Hostess Holdings, L.P., a Delaware limited partnership owned, directly or indirectly, by certain of the Selling Equityholders ("*Hostess Holdings*"), with Hostess Holdings continuing as the surviving entity (the "*Management Merger*"); (B) Company Merger Sub with and into AP Hostess Holdings, Inc., a Delaware corporation and a wholly owned subsidiary of AP Hostess LP ("*AP Hostess Holdings*"), with AP Hostess Holdings continuing as the surviving entity (the "*Subsidiary Merger*"); and (C) immediately thereafter, AP Hostess Holdings with and into the Company, with the Company continuing as the surviving entity (the "*Company Merger*" and, together with the Management Merger and the Subsidiary Merger, the "*Mergers*"); and (ii) the purchase by the Company of certain of the limited partnership interests in Hostess Holdings held by certain of the Selling Equityholders (the "*Purchase*" and, together with the Mergers and the other transactions contemplated by the Master Transaction Agreement, the "*Business Combination*"). As a result of the foregoing, we will acquire the privately-held Hostess companies, which we collectively refer to as "*Hostess*." **You are being asked to vote on the Business Combination between us and Hostess.**

At the Special Meeting, our stockholders will be asked to consider and vote upon a proposal (the "*Business Combination Proposal*" or "*Proposal No. 1*") to adopt the Master Transaction Agreement, a copy of which is attached to the accompanying proxy statement as <u>Annex A</u>, and approve the transactions contemplated thereby, including the Business Combination. Subject to the terms of the Master Transaction Agreement and customary adjustments set forth therein, the aggregate purchase price for the Business Combination and related transactions is expected to be approximately $2.3 billion, which amount will be increased by the amount of cash held by Hostess as of the closing of the Business Combination, and which amount will be decreased by the amount of Hostess' outstanding indebtedness under its existing credit facilities, certain transaction fees and expenses, and certain payments to Hostess management under the Hostess Long Term Incentive Plan (the "*Hostess LTIP*"). The consideration to be paid to the Selling Equityholders will be funded through a combination of cash and stock consideration. The amount of cash consideration payable to the Selling Equityholders is the sum of (i) cash available to us from the trust account (the "*Trust Account*") that holds the proceeds (including interest) of our initial public offering that closed on August 19, 2015 (the "*IPO*"), and after giving effect to taxes payable, any redemptions that may be elected by any of our public stockholders for their pro rata share of the aggregate amount of funds on deposit in the Trust Account as of two business days prior to closing the Business Combination (which instructions to redeem are further discussed in the accompanying proxy statement), *plus* (ii) the anticipated gross proceeds of approximately $300,000,000 from the sale of shares of newly issued Class A Common Stock of the Company, par value $0.0001 per share (the "*Class A Stock*"), in a private placement (the "*Private Placement*"), as further discussed in the accompanying proxy statement, *less* (iii) certain transaction fees and expenses, including the payment of deferred underwriting commissions agreed to at the time of our IPO, *less* (iv) certain payments to Hostess management under the Hostess LTIP, *less* (v) approximately $173,000,000 that

Table of Contents

In addition, Hostess provided the Company with its internally prepared projections of (i) its adjusted EBITDA for the fiscal year ending December 31, 2018, and (ii) its anticipated capital expenditures for the fiscal years ending December 31, 2016 through December 31, 2020 (and for the six months ending December 31, 2016). The key elements of these projections provided to the Company are summarized below (in millions of dollars): (1)

|  | Fiscal Year Ending December 31, | | | | | |
|---|---|---|---|---|---|---|
| ($ in millions) | 2016E | 2016H2 | 2017E | 2018E | 2019E | 2020E |
| Adjusted EBITDA(2) | $ | | | 253 | | |
| Capital Expenditures(3) | $   46 | 31 | 31 | 26 | 32 | 26 |

(1) These projections represent the combined total of Hostess' and Superior's business. Each of Hostess' and Superior's projections are unaudited, based upon estimated results and represent their respective standalone business and do not include the impact of purchase accounting or other impacts from the consummation of the Business Combination.
(2) After providing the Company with its projected financial information for the fiscal years ending December 31, 2016 through December 31, 2017 discussed above, Hostess provided an updated reforecast of its 2016E projections, which reflected an adjustment to projected net revenues and adjusted EBITDA. The Company and Hostess determined that the adjustment that resulted from this 2016E adjustment would also be applied to the projection of Adjusted EBITDA for 2018 provided by Hostess, and the Company applied such assumptions to such projections.
(3) Excludes capital expenditures for the acquisition of Superior, but includes ongoing Superior capital expenditures as well as capitalized software development costs.

*Note on Hostess Presentation of Adjusted EBITDA*

With respect to the projections provided by Hostess to the Company, Adjusted EBITDA was calculated in a manner consistent with the provisions of the Master Transaction Agreement. Following the execution of the Master Transaction Agreement, Hostess revised the method in which it presents Adjusted EBITDA to no longer add back to the calculation of Adjusted EBITDA related party expenses, which consist of expenses associated with Hostess' employment agreement with Mr. Metropoulos. This only impacts the projections for 2016E, for which the estimated add back was $2.5 million. Therefore, projected 2016E Adjusted EBITDA included in the tables above and below in the section entitled *"Additional Company-Prepared Projected Financial Information"* now differs from the manner in which historical Adjusted EBITDA is presented under the section entitled *"Information About Hostess—Selected Consolidated Historical Financial and Other Data of Hostess Holdings"* and elsewhere in this proxy statement. If the projected 2016E Adjusted EBITDA had been calculated in the same manner as Adjusted EBITDA is now presented by Hostess, projected Adjusted EBITDA of Hostess for 2016E would have been $211 million rather than $214 million (or $218 million rather than $220 million on a combined basis with Superior).

**Additional Company-Prepared Projected Financial Information**

In addition to the projections for Hostess set forth and discussed above under *"—Certain Company Projected Financial Information,"* projections of (i) net revenue and gross profit for Hostess for the fiscal years ending December 31, 2018 through December 31, 2020 and the terminal value, and (ii) free cash flow for Hostess for the fiscal years ending December 31, 2016 through December 31, 2020 and the terminal value, were prepared by the Company and provided to Moelis to assist them in the preparation of their fairness opinion. The key elements of such projections are summarized in the table below. In preparing this information, the Company utilized the projections provided by Hostess to the Company, as set forth and discussed above under *"—Certain Company Projected Financial Information."* All information set forth below relating to the (i) projected net revenue and gross profit for the fiscal years ending December 31, 2018 through December 31, 2020, and (ii) projected free cash flows for the fiscal years ending December 31, 2016 through December 31, 2020 has been prepared by the Company (and not by Hostess Holdings) based upon certain of the projections provided to the Company by Hostess, as set forth and summarized above.

The projections were prepared by, and are the responsibility of, the Company. KPMG, the Company's independent auditor, has not examined, compiled or otherwise applied procedures with respect to the accompanying prospective financial information presented herein and, accordingly, expresses no opinion or any

177

other form of assurance on it. The KPMG report included in this proxy statement relates to historical financial information of the Company. They do not extend to the projections and should not be read as if they do.

| ($ in millions)[1] | | 2016E | 2016E H2 | 2017E | 2018E | 2019E | 2020E | Terminal Value[4] |
|---|---|---|---|---|---|---|---|---|
| Net Revenue | $ | — | — | — | 846 | 902 | 952 | 952 |
| Gross Profit | $ | — | — | — | 362 | 384 | 403 | 403 |
| Adjusted EBITDA | $ | 220 | 109 | 235 | 253 | 269 | 283 | 283 |
| Minus: Distributions for Tax Payments | $ | (48) | (26) | (60) | (63) | (71) | (78) | (117) |
| Minus: Cash Interest | $ | (60) | (24) | (50) | (59) | (52) | (44) | n/a |
| Minus: Exceptionals - Public Company Expenses[2] | $ | (5) | (5) | — | — | — | — | — |
| Minus: Change in Net Working Capital | $ | (14) | 10 | (3) | (3) | (5) | (4) | (4) |
| Minus: Capex[3] | $ | (97) | (31) | (31) | (26) | (32) | (26) | (17) |
| **Projected Levered Free Cash Flow** | $ | (2) | 33 | 91 | 103 | 109 | 131 | n/a |
| Plus: Cash Interest | | 60 | 24 | 50 | 59 | 52 | 44 | n/a |
| Minus: Pro-forma Cash Interest tax shield | $ | (10) | (10) | (20) | (24) | (21) | (18) | n/a |
| **Projected Unlevered Free Cash Flow** | $ | 48 | 48 | 121 | 138 | 140 | 157 | n/a |
| Reconciliation to Unlevered Free Cash Flow Used in Moelis Fairness Opinion: | | | | | | | | |
| Plus: Exceptionals - Public Company Expenses | $ | n/a | 5 | — | — | — | — | — |
| Plus: Stock based compensation | $ | n/a | — | — | 1 | 1 | 3 | 3 |
| Minus: Difference Distribution for Tax Payments[4] | $ | n/a | (10) | (16) | (17) | (18) | (19) | — |
| **Unlevered Free Cash Flow Moelis Fairness Opinion** | $ | n/a | 43 | 105 | 122 | 124 | 141 | 148 |

(1) Some figures may not add up exactly due to rounding.
(2) One-time expenses related to achieve public company compliance for Hostess.
(3) 2016E capex includes acquisition cost for Superior.
(4) Moelis assumed a 43.8% tax rate with no Tax Receivable Agreement benefit sharing. Projections included preliminary Tax Receivable Agreement analysis as well as an effective tax rate reduction from Section 199 deduction.

**Interests of Certain Persons in the Business Combination**

  *In considering the recommendation of our Board to vote in favor of the Business Combination, stockholders should be aware that aside from their interests as stockholders, our Sponsor and certain members of our Board and officers have interests in the Business Combination that are different from, or in addition to, those of other stockholders generally. Our Board was aware of and considered these interests, among other matters, in evaluating and negotiating the Business Combination, and in recommending to stockholders that they approve the Business Combination. Stockholders should take these interests into account in deciding whether to approve the Business Combination.*

  These interests include, among other things:

- the fact that our Initial Stockholders have agreed not to redeem any of the Founder Shares in connection with a stockholder vote to approve a proposed initial business combination;

- the fact that our Sponsor paid an aggregate of $25,000 for the Founder Shares and such securities will have a significantly higher value at the time of the Business Combination, which if unrestricted and freely tradable would be valued at approximately $53,125,000 (after giving effect to the cancellation of approximately 4,062,500 Founder Shares) but, given the restrictions on such shares, we believe such shares have less value;

- the fact that our Initial Stockholders have agreed to waive their rights to liquidating distributions from the Trust Account with respect to their Founder Shares if we fail to complete an initial business combination by August 19, 2017;