# EXHIBIT H
# [Filed Under Seal]

DEFM14A 1 d834494ddefm14a.htm DEFM14A

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

## SCHEDULE 14A

**Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934**

Filed by the Registrant ☒     Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐  Preliminary Proxy Statement

☐  **Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☒  Definitive Proxy Statement

☐  Definitive Additional Materials

☐  Soliciting Material under §240.14a-12

# GORES HOLDINGS III, INC.

**(Name of Registrant as Specified In Its Charter)**

**(Name of Person(s) Filing Proxy Statement, if other than the Registrant)**

Payment of Filing Fee (Check the appropriate box):

☐  No fee required.

☐  Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

   (1)  Title of each class of securities to which transaction applies:

   (2)  Aggregate number of securities to which transaction applies:

   (3)  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

   (4)  Proposed maximum aggregate value of transaction:

   (5)  Total fee paid:

☒  Fee paid previously with preliminary materials.

☐  Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

   (1)  Amount Previously Paid:

   (2)  Form, Schedule or Registration Statement No.:

   (3)  Filing Party:

Table of Contents

The Board concluded that the potential benefits that it expected the Company and its stockholders to achieve as a result of the Business Combination outweighed the potentially negative factors associated with the Business Combination. Accordingly, the Board unanimously determined that the Merger Agreement and the transactions contemplated thereby, including the Business Combination, were advisable, fair to, and in the best interests of, the Company and its stockholders.

**Satisfaction of 80% Test**

It is a requirement under our current certificate of incorporation and Nasdaq listing requirements that the business or assets acquired in our initial business combination have a fair market value equal to at least 80% of the balance of the funds in the Trust Account (excluding the deferred underwriting commissions and taxes payable on the income earned on the Trust Account) at the time of the execution of a definitive agreement for our initial business combination. As of November 1, 2019, the date of the execution of the Merger Agreement, the balance of the Trust Account was approximately $407,727,691 (excluding $14,000,000 of deferred underwriting commissions and taxes payable on the income earned on the Trust Account) and 80% thereof represents approximately $326,182,152. In reaching its conclusion that the Business Combination meets the 80% asset test, our Board reviewed the enterprise value of Shay of approximately $1.552 billion implied on November 1, 2019 by adding: (i) approximately $251.1 million of equity consideration in the post-combination company to be issued to the Shay Stockholders; (ii) approximately $443.9 million (excluding transaction costs incurred by Shay) of cash consideration payable to the Shay Stockholders at the closing of the Business Combination; (iii) the assumption of approximately $572.1 million of Shay's existing net indebtedness; (iv) the repayment of approximately $159.7 million of Shay's existing indebtedness; (v) the payment of approximately $25 million of certain transaction costs; and (vi) the retention of Founder Shares by our Initial Stockholders valued at approximately $100 million (prior to giving effect to the cancellation of approximately 3,000,000 of such shares). In determining whether the enterprise value described above represents the fair market value of Shay, our Board considered all of the factors described above in this section and the fact that the purchase price for Shay was the result of an arm's length negotiation. As a result, our Board concluded that the fair market value of the business acquired was significantly in excess of 80% of the assets held in the Trust Account (excluding the deferred underwriting commissions and taxes payable on the income earned on the Trust Account).

**Certain Company Projected Financial Information**

In May 2019, Shay provided the Company with its internally prepared projections for the fiscal years ending December 31, 2019 through December 31, 2024. The prospective financial information was not prepared with a view towards compliance with the published guidelines of the SEC or the guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of prospective financial information. These projections were prepared solely for internal use, and capital budgeting and other management purposes, and are subjective in many respects and therefore susceptible to varying interpretations and the need for periodic revision based on actual experience and business developments, and were not intended for third-party use, including by investors or holders. You are cautioned not to rely on the projections in making a decision regarding the transaction, as the projections may be materially different than actual results.

The projections reflect numerous assumptions including assumptions with respect to general business, economic, market, regulatory and financial conditions and various other factors, all of which are difficult to predict and many of which are beyond Shay's control, such as the risks and uncertainties contained in the section entitled "*Risk Factors*." The material assumptions underlying the projections included the projected market growth rates for the various segments in which PAE participates and a review of the following for the GMS and NSS businesses: material customer contracts, qualified pipeline, funded and unfunded backlog, and historical win-rates on new business and recompete business where PAE was the incumbent on contracts. The projections reflect the consistent application of the accounting policies of Shay and should be read in conjunction with the accounting policies included in Note 1 to the accompanying historical audited consolidated financial statement of Shay included in this proxy statement.

Table of Contents

The financial projections for revenue and costs are forward-looking statements that are based on growth assumptions that are inherently subject to significant uncertainties and contingencies, many of which are beyond Shay's control. While all projections are necessarily speculative, Shay believes that the prospective financial information covering periods beyond 12 months from its date of preparation carries increasingly higher levels of uncertainty and should be read in that context. There will be differences between actual and projected results, and actual results may be materially greater or materially less than those contained in the projections. The inclusion of the projections in this proxy statement should not be regarded as an indication that Shay or its representatives considered or currently consider the projections to be a reliable prediction of future events, and reliance should not be placed on the projections.

The projections were requested by, and disclosed to, the Company for use as a component in its overall evaluation of Shay. Following their disclosure, the Company and Shay, along with their respective advisors, updated the projections that were disclosed to the Company to reflect revised views on near-term performance, Shay's pipeline, and long-term industry growth rates for each segment based on diligence. The updated financial projections are included in this proxy statement because they were provided to the Board for its evaluation of the Business Combination and were provided to Moelis for its use in connection with its financial analyses and opinion to the Board, as described in the section entitled "*Opinion of the Company's Financial Advisor*" above and as set forth as Annex D to this proxy statement. Shay has not warranted the accuracy, reliability, appropriateness or completeness of the projections to anyone, including to the Company. Neither Shay's management nor any of its representatives has made or makes any representation to any person regarding the ultimate performance of Shay compared to the information contained in the projections, and none of them intends to or undertakes any obligation to update or otherwise revise the projections to reflect circumstances existing after the date when made or to reflect the occurrence of future events in the event that any or all of the assumptions underlying the projections are shown to be in error. Accordingly, they should not be looked upon as "guidance" of any sort. Shay will not refer back to these forecasts in its future periodic reports filed under the Exchange Act.

The projections are the responsibility of Shay's management. EY, Shay's independent registered public accounting firm, has not examined, compiled or otherwise performed procedures with respect to the accompanying prospective financial information presented herein and, accordingly, expresses no opinion or any other form of assurance on it. The EY report included in this proxy statement relates to historical financial information of Shay. It does not extend to the projections and should not be read as if it does.

The key elements of the projections provided to the Company are summarized below (in millions of dollars):[1]

| ($ in millions) | Fiscal Year Ending December 31, | | | | | |
|---|---|---|---|---|---|---|
| | 2019P | 2020P | 2021P | 2022P | 2023P | 2024P |
| Total Revenue | $ 2,724.8 | $ 2,838.7 | $ 2,930.7 | $ 3,061.2 | $ 3,198.2 | $ 3,342.1 |
| *% Growth* | *5.3%* | *4.2%* | *3.2%* | *4.5%* | *4.5%* | *4.5%* |
| Adjusted EBITDA | $ 165.9 | $ 179.4 | $ 192.0 | $ 201.9 | $ 212.4 | $ 223.5 |
| *% Margin* | *6.1%* | *6.3%* | *6.6%* | *6.6%* | *6.6%* | *6.7%* |
| Pro Forma Adjustments[2] | ($ 4.5) | ($ 5.4) | ($ 4.5) | ($ 4.5) | ($ 4.5) | ($ 4.5) |
| Pro Forma Adjusted EBITDA | $ 161.4 | $ 174.0 | $ 187.5 | $ 197.4 | $ 207.9 | $ 219.0 |
| *% Margin* | *5.9%* | *6.1%* | *6.4%* | *6.4%* | *6.5%* | *6.6%* |
| Capital Expenditures | 5.0 | 5.2 | 5.4 | 5.6 | 5.9 | 6.1 |
| Pro Forma Adjusted EBITDA less Capital Expenditures | $ 156.4 | $ 168.8 | $ 182.1 | $ 191.8 | $ 202.1 | $ 212.9 |
| Net Working Capital | $ 112.8 | $ 118.6 | $ 117.8 | $ 126.5 | $ 135.7 | $ 145.3 |

(1) Shay's projections are unaudited, based upon estimated results and do not include the impact of purchase accounting or other impacts from the consummation of the Business Combination. Some figures may not add up exactly due to rounding.
(2) Pro Forma Adjustments include $3 million of public company costs and a $1.5 million JV EBITDA adjustment for each fiscal year.

In addition, Shay prepared projections of revenue, pro forma adjusted EBITDA, unadjusted EBIT, tax effected EBIT and unlevered free cash flow for Shay for the fiscal years ending December 31, 2020 through December 31, 2024 and the terminal year. The Company reviewed the projections and provided the projections to the Board and to Moelis to be utilized and relied on by Moelis in the preparation of its fairness opinion. Such projections are summarized in the table below.

| ($ in millions)[1][2] | 2020P | 2021P | Fiscal Year Ending December 31, 2022P | 2023P | 2024P | Terminal Year |
|---|---|---|---|---|---|---|
| **Revenue** | $2,838.7 | $2,930.7 | $3,061.2 | $3,198.2 | $3,342.1 | $3,342.1 |
| *% Growth* | *4.2%* | *3.2%* | *4.5%* | *4.5%* | *4.5%* | — |
| **Pro Forma Adjusted EBITDA** | $ 174.0 | $ 187.5 | $ 197.4 | $ 207.9 | $ 219.0 | $ 219.0 |
| *% Margin* | *6.1%* | *6.4%* | *6.4%* | *6.5%* | *6.6%* | *6.6%* |
| Less: Depreciation and Amortization | (8.2) | (9.3) | (10.8) | (12.0) | (13.2) | (6.1)[5] |
| Less: One-Time Costs[3] | (1.5) | — | — | — | — | — |
| **Unadjusted EBIT** | $ 164.3 | $ 178.2 | $ 186.6 | $ 195.9 | $ 205.8 | $ 212.9 |
| Less: Taxes @ 23.1%[4] | (38.0) | (41.2) | (43.1) | (45.3) | (47.6) | (49.2) |
| **Tax Effected EBIT** | $ 126.3 | $ 137.0 | $ 143.5 | $ 150.6 | $ 158.2 | $ 163.7 |
| Plus: Depreciation & Amortization | 8.2 | 9.3 | 10.8 | 12.0 | 13.2 | 6.1 |
| Less: Change in Net Working Capital | (5.7) | 0.8 | (8.8) | (9.2) | (9.6) | (9.6)[6] |
| Less: Capital Expenditures | (5.2) | (5.4) | (5.6) | (5.9) | (6.1) | (6.1)[7] |
| **Unlevered Free Cash Flow** | $ 123.6 | $ 141.7 | $ 139.9 | $ 147.5 | $ 155.7 | $ 154.1 |

(1) Some figures may not add up due to rounding.
(2) Unlevered after-tax free cash flows and terminal value are discounted to December 31, 2019.
(3) One-time costs in 2020P reflect SOX preparation costs of $1.5 million that are additive and not included in the Pro Forma Adjustments public company costs reflected in the Pro Forma Adjusted EBITDA.
(4) Cash tax rate of 23.1% during projection period.
(5) Depreciation and Amortization assumed to equal Capital Expenditures in terminal year.
(6) Terminal year Change in Net Working Capital as percentage of revenue assumed to equal Change in Net Working Capital as percentage of revenue in 2024P.
(7) Terminal year Capital Expenditures as percentage of revenue assumed to equal Capital Expenditures as percentage of revenue in 2024P.

**Interests of Certain Persons in the Business Combination**

In considering the recommendation of our Board to vote in favor of the Business Combination, stockholders should be aware that aside from their interests as stockholders, our Sponsor and certain members of our Board and officers have interests in the Business Combination that are different from, or in addition to, those of other stockholders generally. Our Board was aware of and considered these interests, among other matters, in evaluating and negotiating the Business Combination, and in recommending to stockholders that they approve the Business Combination. Stockholders should take these interests into account in deciding whether to approve the Business Combination.

These interests include, among other things:

- the fact that our Initial Stockholders have agreed not to redeem any of the Founder Shares in connection with a stockholder vote to approve a proposed initial business combination;

- the fact that our Initial Stockholders have agreed to waive their rights to conversion price adjustments with respect to any shares of our Common Stock they may hold in connection with the consummation of the Business Combination;

- the fact that our Sponsor paid an aggregate of $25,000 for 10,781,250 Founder Shares and (after giving effect to the cancellation of (i) 781,250 Founder Shares on October 22, 2018 and (ii) approximately 3,000,000 Founder Shares at the time of the Business Combination) the remaining 7,000,000 Founder