# EXHIBIT M

S-4/A 1 d935242ds4a.htm AMENDMENT NO. 3 TO FORM S-4

Table of Contents

As filed with the Securities and Exchange Commission on November 5, 2020

Registration Statement No. 333-248711

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# AMENDMENT NO. 3
# TO
# FORM S-4
# REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933

# ARKO Corp.
**(Exact Name of Registrant as Specified in Its Charter)**

| Delaware | 5412 | 85-2784337 |
|---|---|---|
| (Jurisdiction of Incorporation or Organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

**650 Fifth Avenue, Floor 10**
**New York, NY 10019**
**(212) 616-9600**
(Address, including zip code, and telephone number, including area code, of Registrant's principal executive offices)

**Christopher Bradley**
**Chief Financial Officer and Secretary**
**650 Fifth Avenue, Floor 10**
**New York, NY 10019**
**(212) 616-9600**
(Name, address, including zip code, and telephone number, including area code, of agent for service)

*Copies to:*

| Sidney Burke, Esq. | Steven J. Heyer | Alan I. Annex, Esq. |
|---|---|---|
| Stephen P. Alicanti, Esq. | Chief Executive Officer | Joseph A. Herz, Esq. |
| DLA Piper LLP (US) | Haymaker Acquisition Corp. II | Greenberg Traurig, LLP |
| 1251 Avenue of the Americas, 27th Floor | 650 Fifth Avenue, Floor 10 | 333 S.E. 2nd Avenue |
| New York, NY 10020 | New York, NY 10019 | Miami, FL 33131 |
| (212) 335-4500 | (212) 616-9600 | (305) 579-0500 |

**Approximate date of commencement of proposed sale to the public:**
As soon as practicable after this Registration Statement becomes effective and on completion of the business combination described in the enclosed proxy statement/prospectus.

If the securities being registered on this Form are to be offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box.  ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering.  ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☒ | Smaller reporting company | ☐ |

| | |
|---|---|
| Emerging growth company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided to Section 7(a)(2)(B) of the Securities Act. ☐

If applicable, place an X in the box to designate the appropriate rule provision relied upon in conducting this transaction:

Exchange Act Rule 13e-4(i) (Cross-Border Issuer Tender Offer) ☐

Exchange Act Rule 14d-1(d) (Cross-Border Third-Party Tender Offer) ☐

Table of Contents

### CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to be Registered | Amount to be Registered(1) | Proposed Maximum Offering Price per Share | Proposed Maximum Aggregate Offering Price | Amount of Registration Fee(12) |
|---|---|---|---|---|
| Common stock(2)(7) | 40,000,000 | $10.12 | $404,800,000.00(8) | $52,543.04 |
| Common stock(3)(4)(7) | 25,949,349 | $6.58 | $170,746,716.42(9) | $22,162.92 |
| Warrants(5)(7) | 13,333,333 | $1.3104 | $17,471,999.56(10) | $2,267.87 |
| Common stock issuable upon exercise of the Warrants(6)(7) | 13,333,333 | $11.50 | — (11) | — |
| Total | | | | $76,973.83(13) |

(1) All securities being registered will be issued by ARKO Corp., a Delaware corporation ("New Parent"). In connection with the business combination described in this registration statement and the enclosed proxy statement/prospectus (the "Business Combination"), (a) Punch US Sub, Inc., a Delaware corporation, will be merged with and into Haymaker Acquisition Corp. II, a Delaware corporation ("Haymaker"), and each outstanding share of Class A common stock of Haymaker, par value $0.0001 per share ("Haymaker Class A Common Stock"), will be converted into the right to receive one share of common stock of New Parent, par value $0.0001 (the "New Parent Common Stock"), and each outstanding warrant of Haymaker, each entitling the holder thereof to purchase one share of Haymaker Class A Common Stock at an exercise price of $11.50 per share (each, a "Haymaker Warrant"), will be converted into the right to receive a warrant to purchase one share of New Parent Common Stock at an exercise price of $11.50 per share (each, a "New Parent Warrant") and (b) Punch Sub Ltd., a company organized under the laws of the State of Israel, will merge with and into ARKO Holdings Ltd., a company organized under the laws of the State of Israel ("Arko"), with Arko surviving the merger, and the holders of ordinary shares of Arko, par value 0.01 New Israeli Shekel per share (the "Arko Ordinary Shares"), will exchange their Arko Ordinary Shares for shares of New Parent Common Stock, and Arko will become a wholly owned subsidiary of New Parent.

(2) Consists of shares of New Parent Common Stock issuable in exchange for outstanding shares of Haymaker Class A Common Stock, including shares of Haymaker Class A Common Stock included in outstanding units of Haymaker ("units"), each unit consisting of one share of Haymaker Class A Common Stock and one-third of one Haymaker Warrant. Upon the consummation of the Business Combination, all units will be separated into their component securities, which will be exchanged for equivalent securities of New Parent.

(3) Consists of shares of New Parent Common Stock issuable in exchange for Arko Ordinary Shares calculated in accordance with the Business Combination Agreement (as defined below), excluding the estimated number of shares to be held by each of Arie Kotler and Morris Willner, and assuming all Arko shareholders elect to receive stock consideration only.

(4) The actual number of shares of New Parent Common Stock issuable to shareholders of Arko will be determined pursuant to the terms of the Business Combination Agreement and is dependent on the actual elections of the holders of Arko Ordinary Shares. While the exact number of shares of New Parent Common Stock to be issued at the closing of the Business Combination cannot be known as of the filing of this Registration Statement, New Parent believes that, based on the assumptions underlying the calculation of the registration fee (as set forth in footnote (3) above), excluding the estimated number of shares to be held by each of Arie Kotler and Morris Willner, the actual number of shares of New Parent Common Stock issued will not be greater than those set forth in the Calculation of the Registration Fee table.

(5) Consists of New Parent Warrants issuable in exchange for outstanding Haymaker Warrants, including Haymaker Warrants included in outstanding units.

(6) Consists of New Parent Common Stock issuable upon exercise of New Parent Warrants. Each New Parent warrant will entitle the warrant holder to purchase one share of New Parent Common Stock at a price of $11.50 per share (subject to adjustment).

(7) Pursuant to Rule 416(a), there are also being registered an indeterminable number of additional securities as may be issued to prevent dilution resulting from stock splits, stock dividends or similar transactions.

(8) Pursuant to Rules 457(c) and 457(f)(1) under the Securities Act of 1933, as amended (the "Securities Act"), and solely for the purpose of calculating the registration fee, the proposed maximum aggregate offering price is equal to the product obtained by multiplying $10.12, which represents the average of the high and low prices of shares of Haymaker Class A Common Stock on the Nasdaq Capital Market on September 4, 2020, by (a) 40,000,000, the estimated number of shares of Haymaker Class A Common Stock that will be outstanding immediately prior to the closing of the Business Combination (including shares of Haymaker Class A Common Stock that may be redeemed pursuant to the terms of Haymaker's amended and restated certificate of incorporation and the shares of Haymaker Class A Common Stock included in the units).

(9) Pursuant to Rules 457(c) and 457(f)(1) under the Securities Act and solely for the purpose of calculating the registration fee, the proposed maximum aggregate offering price is equal to the product obtained by multiplying (a) 22.23 New Israeli Shekels, or $6.58 (based on the exchange rate reported by the Bank of Israel on September 7, 2020), which represents the average of the high and low prices of the Arko Ordinary Shares, as reported on the Tel Aviv Stock Exchange on September 7, 2020, by (b) 25,949,349, the estimated number of shares of New Parent Common Stock issuable in respect of the Arko Ordinary Shares outstanding immediately prior to the closing of the Business Combination, excluding the estimated number of shares to be held by each of Arie Kotler and Morris Willner, and assuming all Arko shareholders elect to receive stock consideration only.

(10) Pursuant to Rules 457(c) and 457(f)(1) under the Securities Act and solely for the purpose of calculating the registration fee, the proposed maximum aggregate offering price is equal to the product obtained by multiplying $1.3104, which represents the average of the high and low prices of Haymaker Warrants on the Nasdaq Capital Market on September 4, 2020, by (a) 13,333,333, the estimated maximum number of Haymaker Warrants that will be outstanding and registered by New Parent immediately prior to the closing of the Business Combination.

(11) No separate registration fee required pursuant to Rule 457(g) under the Securities Act of 1933, as amended.

(12) Determined in accordance with Section 6(b) of the Securities Act at a rate equal to $129.80 per $1,000,000 of the proposed maximum aggregate offering price.

(13) Previously paid in connection with the initial filing of this registration statement on September 10, 2020.

The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, or until this Registration Statement shall become effective on such date as the Commission, acting pursuant to said Section 8(a), may determine.

Table of Contents

**The information in this preliminary proxy statement/prospectus is not complete and may be changed. These securities described herein may not be sold until the registration statement filed with the U.S. Securities and Exchange Commission is declared effective. This preliminary proxy statement/prospectus is not an offer to sell these securities and it is not soliciting an offer to buy these securities in any jurisdiction where the offer or sale is not permitted.**

**PRELIMINARY PROXY STATEMENT AND PROSPECTUS**
**SUBJECT TO COMPLETION, DATED NOVEMBER 5, 2020**

**LETTER TO STOCKHOLDERS OF HAYMAKER ACQUISITION CORP. II**

**Haymaker Acquisition Corp. II**
**650 Fifth Avenue, Floor 10**
**New York, NY 10019**

Dear Haymaker Acquisition Corp. II Stockholders:

Haymaker Acquisition Corp. II, a Delaware corporation ("Haymaker"), ARKO Corp., a Delaware corporation (together with, unless the context otherwise requires, its consolidated subsidiaries for periods following the Business Combination ("New Parent"), Punch US Sub, Inc., a Delaware corporation ("Merger Sub I"), Punch Sub Ltd., a company organized under the laws of the State of Israel ("Merger Sub II"), and ARKO Holdings Ltd., a company organized under the laws of the State of Israel ("Arko"), entered into a business combination agreement (the "Business Combination Agreement") pursuant to which Merger Sub I will merge with and into Haymaker, with Haymaker surviving the merger as a wholly-owned subsidiary of New Parent (the "First Merger"), and then Merger Sub II will merge with and into Arko, with Arko surviving the merger as a wholly-owned subsidiary of New Parent (the "Second Merger," and collectively with the other transactions described in the Business Combination Agreement and the GPM Equity Purchase Agreement (as defined below), the "Business Combination"). Arko, as a wholly owned subsidiary of New Parent, will maintain a registered office in the State of Israel. The First Merger shall become effective upon the filing of a certificate of merger with the Secretary of State of the State of Delaware executed in accordance with, and in such form as is required by, the relevant provisions of the Delaware General Corporation Law (the "DGCL") (such date and time being hereinafter referred to as the "First Effective Time"). The Second Merger shall become effective upon the issuance by the Companies Registrar of the Certificate of Merger for the Second Merger in accordance with Section 323(5) of the Companies Law 5759-1999 of the State of Israel (together with the rules and regulations thereunder, the "ICL") (such date and time being hereinafter referred to as the "Second Effective Time").

==Contemporaneously with the execution of the Business Combination Agreement, New Parent, Haymaker and each of the entities that are party thereto and listed on Exhibit B thereto (the "GPM Minority Investors") entered into an equity purchase agreement (the "GPM Equity Purchase Agreement"), pursuant to which, at the closing of the Business Combination, New Parent will purchase, directly or indirectly, from the GPM Minority Investors their equity interests in GPM Investments, LLC ("GPM")== in exchange for shares of common stock of New Parent, par value $0.0001 ("New Parent Common Stock"). As a result of the Business Combination, New Parent will indirectly own 100% of GPM, which operates Arko's current business.

Each warrant to purchase shares of Haymaker Class A Common Stock is exercisable for one share of Haymaker Class A Common Stock at an exercise price of $11.50, as contemplated under the Haymaker Warrant Agreement (a "Haymaker Warrant"). At the First Effective Time, each Haymaker Warrant that is outstanding immediately prior to the First Effective Time will, pursuant to the terms of that certain warrant agreement, dated June 6, 2019, by and between Haymaker and Continental Stock Transfer & Trust Company, as amended by the warrant assignment, assumption and amendment agreement, dated as of the date of the closing of the Business Combination, by and among Haymaker, New Parent, and Continental Stock Transfer & Trust Company (as so amended, the "Haymaker Warrant Agreement"), cease to represent the right to acquire one share of Haymaker Class A Common Stock and shall be converted in accordance with the terms of such Haymaker Warrant Agreement, at the First Effective Time, into a right to acquire one share of New Parent Common Stock (each, a "New Parent Warrant" and collectively, the "New Parent Warrants") on substantially the same terms that were in effect immediately prior to the First Effective Time under the terms of the Haymaker Warrant Agreement.

Following the First Effective Time, (i) the Sponsor will automatically forfeit 1,000,000 shares of New Parent Common Stock and 2,000,000 New Parent Warrants, and such shares and warrants will be cancelled and no longer outstanding and (ii) 4,000,000 shares of New Parent Common Stock that would otherwise be issuable to the Sponsor will be deferred (as further described below). Subject to the terms and conditions of the Business Combination Agreement, no more than five business days following the occurrence of Trigger Event 1 (as defined below) or Trigger Event 2 (as defined below), New Parent will issue to the Sponsor (i) 2,000,000 shares

Table of Contents

of New Parent Common Stock in the case of Trigger Event 1, and (ii) 2,000,000 shares of New Parent Common Stock in the case of Trigger Event 2 (such shares, the "Deferred Shares"). "Trigger Event 1" will occur on (i) the first day the Required VWAP (as defined below) of the New Parent Common Stock is greater than or equal to $13.00 per share (subject to adjustment as set forth in the Business Combination Agreement) or (ii) a change of control of New Parent where the shares of New Parent Common Stock are sold for at least $13.00 per share (subject to adjustment as set forth in the Business Combination Agreement), in each case, only if such event occurs prior to the 5-year anniversary of the closing of the Business Combination. "Trigger Event 2" will occur on (i) the first day the Required VWAP of the New Parent Common Stock is greater than or equal to $15.00 per (subject to adjustment as set forth in the Business Combination Agreement) or (ii) a change of control of New Parent where the shares of New Parent Common Stock are sold for at least $15.00 per share (subject to adjustment as set forth in the Business Combination Agreement), in each case, only if such event occurs prior to the 7-year anniversary of the closing of the Business Combination. "Required VWAP" means either (A) the 5-day volume weighed average price, if the average daily trading volume during such 5-day period equals or exceeds the average daily trading volume for the 180-day period following the Closing or (B) the 20-day volume weighted average price.

At the Second Effective Time, each ordinary share, par value 0.01 New Israeli Shekel per share, of Arko (all such issued and outstanding shares, including those to be issued in respect of Arko's restricted stock units, are collectively referred to as the "Arko Ordinary Shares") issued and outstanding immediately prior to the Second Effective Time will be cancelled and, subject to the terms of the Business Combination Agreement, each holder of Arko Ordinary Shares will receive the following consideration, at such holder's election:

1. Option A (*Stock Consideration*): The number of validly issued, fully paid and nonassessable shares of New Parent Common Stock equal to the quotient of (i) such holder's Consideration Value divided by (ii) $10.00.

2. Option B (*Mixed Consideration*): (A) a cash amount equal to 10% of such holder's Consideration Value (the "Cash Option B Amount") plus (B) the number of validly issued, fully paid and nonassessable shares of New Parent Common Stock equal to (i) such holder's Consideration Value divided by $10.00, minus (ii) such holder's Cash Option B Amount divided by $8.50.

3. Option C (*Mixed Consideration*): (A) a cash amount equal to 20.913% of such holder's Consideration Value (the "Cash Option C Amount") plus (B) the number of validly issued, fully paid and nonassessable shares of New Parent Common Stock equal to (i) such holder's Consideration Value divided by $10.00, minus (ii) such holders Cash Option C Amount divided by $8.50.

For purposes of the above calculations, "Consideration Value" for a holder of Arko Ordinary Shares is an amount equal to the product of (a) the number of Arko Ordinary Shares held by such holder immediately prior to the Second Effective Time multiplied by (b) the Company Per Share Value. The "Company Per Share Value" is an amount equal to the quotient of $717,273,400 divided by the total number of issued and outstanding or issuable Arko Ordinary Shares, in each case, as of the Second Effective Time. Up to $150,000,000 of cash consideration will be available to holders of Arko Ordinary Shares (including Key Arko Shareholders) if they all were to select Option C. Notwithstanding the foregoing, after giving effect to the obligations of the Voting Support Shareholders (as defined below) under the Voting Support Agreements (as defined below), in which certain holders of Arko Ordinary Shares have agreed to elect either Option A or Option B, under no circumstance shall the actual aggregate (x) cash consideration exceed $100,045,000 nor (y) shares of New Parent Common Stock to be issued to Arko shareholders exceed 59,957,382 (if the aggregate Cash Consideration is $100,045,000) or 71,727,340 (if the aggregate Cash Consideration is $0). In addition, each holder of Arko Ordinary Shares will be entitled to receive a pro rata payment, in the form of a dividend or additional cash consideration, in respect of cash held by Arko in excess of Arko's debt, each measured at least five business days before Closing. For more information, see "*The Business Combination Agreement—Consideration to be Received in the Business Combination*."

Below is an illustration of what a hypothetical Arko Public Shareholder would receive per Arko Ordinary Share under each merger consideration option, assuming there are issued and outstanding or issuable Arko

Table of Contents

interests of Haymaker's stockholders (see "*The Business Combination—Interests of Certain Persons in the Business Combination*"). Haymaker's independent directors reviewed and considered these interests during the negotiation of the Business Combination and in evaluating and unanimously approving, as members of Haymaker's board of directors, the Business Combination Agreement and the transactions contemplated therein, including the Business Combination and GPM Equity Purchase Agreement.

Haymaker's board of directors concluded that the potential benefits that it expected Haymaker and its stockholders to achieve as a result of the Business Combination outweighed the potentially negative factors associated with the Business Combination. Accordingly, Haymaker's board of directors unanimously determined, based on its consideration of the specific factors listed above, that the Business Combination Agreement and the transactions contemplated thereby, including the Business Combination and the GPM Equity Purchase Agreement, and the consideration to be paid by Haymaker in the Business Combination, were advisable, fair to, and in the best interests of, Haymaker and its stockholders.

**Certain Financial Projections Provided to Haymaker's Board of Directors**

In connection with its consideration of the potential business combination, Haymaker's board of directors were provided with prospective financial information prepared by management of Arko and GPM. The internally prepared projections as of July 14, 2020 presented projected fuel volume sales, in-store sales, and Adjusted EBITDA of GPM for 2020 and 2021. The prospective financial information provided by Arko and GPM management to Haymaker was not prepared with a view towards public disclosure or with a view toward complying with the guidelines established by the American Institute of Certified Public Accountants with respect to prospective financial information, but in the view of Arko and GPM management, was prepared on a reasonable basis, reflects the best currently available estimates and judgments, and presents, to the best of management's knowledge and belief, the expected course of action and the expected future financial performance of GPM as of July 14, 2020. These projections were prepared solely for internal use, and capital budgeting and other management purposes, are subjective in many respects and therefore susceptible to varying interpretations and the need for periodic revision based on actual experience and business developments, and were not intended for third-party use, including by investors or holders. Moreover, this information is not fact and should not be relied upon as being indicative of future results, and readers of this proxy statement/prospectus are cautioned not to place undue reliance on prospective financial information.

The projections reflect numerous assumptions, including assumptions with respect to general business, economic, market, regulatory and financial conditions and various other factors, all of which are difficult to predict and many of which are beyond Arko's and GPM's control, such as the risks and uncertainties contained in the section entitled "*Risk Factors*." The projections reflect the consistent application of the accounting policies of Arko and should be read in conjunction with the accounting policies included in Note 2 accompanying the historical audited consolidated financial statements of Arko included in this proxy statement/prospectus.

The financial projections are forward-looking statements that are based on growth assumptions that are inherently subject to significant uncertainties and contingencies, many of which are beyond Arko's and GPM's control. There will be differences between actual and projected results, and actual results may be materially greater or materially less than those contained in the projections. The inclusion of the projections in this proxy statement/prospectus should not be regarded as an indication that Haymaker, Arko, GPM or their respective representatives considered or consider the projections to be a reliable prediction of future events, and reliance should not be placed on the projections.

The projections provided to Haymaker by Arko and GPM were used by Haymaker as a component in its overall evaluation of Arko and GPM, and are included in this proxy statement/prospectus on that account. Arko has not warranted the accuracy, reliability, appropriateness or completeness of the projections to anyone, including to Haymaker. Neither Arko's nor GPM's management nor any of its representatives has made or makes

**Table of Contents**

any representation to any person regarding the ultimate performance of Arko compared to the information contained in the projections, and none of them intends to or undertakes any obligation to update or otherwise revise the projections to reflect circumstances existing after the date when made or to reflect the occurrence of future events in the event that any or all of the assumptions underlying the projections are shown to be in error. Accordingly, they should not be looked upon as "guidance" of any sort. New Parent will not refer back to these forecasts in its future periodic reports filed under the Exchange Act.

Neither Arko's independent auditors, nor any other independent accountants, have compiled, examined, or performed any procedures with respect to the prospective financial information provided to Haymaker or contained herein, nor have they expressed any opinion or any other form of assurance on such information or its achievability, and assume no responsibility for, and disclaim any association with, the prospective financial information.

In determining whether to purchase Arko, the Haymaker board of directors considered the following projections (in millions of dollars):

|  | Fiscal Year Ended December 31,[1] | |
|---|---|---|
|  | 2020E | 2021E Pro Forma |
| In-Store Sales | $ 1,510 | $ 1,664[3] |
| Adjusted EBITDA[2] | 145 – | |
|  | $ 150 | $ 210 – 215 |

(1) Totals may be affected by rounding.
(2) Adjusted EBITDA is calculated as EBITDA excluding the gain or loss on disposal of assets, impairment charges, acquisition costs, other non-cash items, and other unusual or non-recurring charges. Pro forma Adjusted EBITDA gives effect to acquisitions and synergies for entire period presented irrespective of actual timing of acquisitions or commencement of synergies during the period.
(3) Includes information related to the Empire Petroleum Partners, LLC acquisition as of December 17, 2019.

In determining whether to purchase Arko, the Haymaker board of directors also considered the following projections related to fuel volume sales (in millions of gallons):

|  | Fiscal Year Ended December 31,[1] | |
|---|---|---|
|  | 2020E | 2021E |
| Fuel Volume Sales | 989 | 2,326[2] |

(1) Totals may be affected by rounding.
(2) Includes information related to the acquisition of the business of Empire Petroleum Partners, LLC as of December 17, 2019.

In connection with the foregoing projections, Haymaker's board of directors reviewed the 2016A-2021E compound annual growth rate ("CAGR") for each metric. The 2016A-2021E CAGR for GPM's in-store sales (including the Empire Petroleum Partners, LLC acquisition), Adjusted EBITDA, and fuel volume sales (including the Empire Petroleum Partners, LLC acquisition) is approximately 15.8%, 30.7%, and 27.7%, respectively.

***Selected Public Company Analysis***

Haymaker reviewed, among other things, selected historical financial data and estimated financial data of GPM based on projections provided by its management, and compared them to corresponding financial data, where applicable, for U.S. listed public companies that Haymaker deemed comparable to Arko in certain respects. In particular, these companies were selected as they are U.S. publicly traded companies that generate the majority of their gross profit contribution from the operations of U.S. based convenience retail stores and the sale of retail motor fuel, and little or no earnings contribution from upstream and midstream activities in the oil

114