# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>Judge George C. Hanks, Jr. |

**DEFENDANTS'[1] OPPOSITION TO CLASS PLAINTIFFS' MOTION
TO EXCLUDE CERTAIN TESTIMONY BY
<u>DEFENDANTS' EXPERT EDWARD FETKOVICH</u>**

---

[1] Alta Mesa Resources, Inc. ("AMR"), Riverstone Holdings, LLC, Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald J. Smith, Jeffrey H. Tepper, Thomas J. Walker, and Diana J. Walters.

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDING ............................................................ 1

II.   INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................ 1

III.   STATEMENT OF THE ISSUE ............................................................................ 3

IV.   STANDARD OF REVIEW .................................................................................. 4

V.   STATEMENT OF FACTS .................................................................................... 4

    A.   The ESP Cost Opinions of Class Plaintiffs' Experts ................................... 5
    B.   Edward Fetkovich's Economic Analysis of Alta Mesa's Use of ESPs ........ 5

VI.   FETKOVICH'S ESP ECONOMIC ANALYSIS IS ADMISSIBLE ...................... 8

    A.   Fetkovich Used Reasonable Cost Data ........................................................ 8
    B.   Fetkovich Reasonably Evaluated All ESPs Capable of Economic Analysis ..................................................................................................... 12

VII.   CONCLUSION .................................................................................................. 13

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*,
No. H–16–2746, 2018 WL 1877015 (S.D. Tex. Apr. 19, 2018) .........................................9, 10

*Genband US LLC v. Metaswitch Networks Corp.*,
No. 2:14-cv-33-JRG-RSP, 2016 WL 122967 (E.D. Tex. Jan. 9, 2016) .................................11

*Guillory v. Domtar*,
95 F.3d 1320 (5th Cir. 1996) ..............................................................................................11, 13

*Lockett v. Doyle Dickerson Terrazzo, Inc.*,
No. 19-14782, 2021 WL 6066697 (E.D. La. Nov. 3, 2021) .....................................................9

*Maiden Biosciences, Inc. v. Doc. Sec. Sys., Inc.*,
No. 3:21-CV-0327-D, 2022 WL 16964752 (N.D. Tex. Nov. 16, 2022) ................................10

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
No. 4:14-CV-00833, 2022 WL 1233651 (E.D. Tex. Apr. 26, 2022).....................................11

*Moore v. Int'l Paint, LLC*,
547 Fed. App'x 513 (5th Cir. 2013) ..................................................................................9, 11

*Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*,
290 Fed. Appx. 727 (5th Cir. 2008)......................................................................................10

*Om Sai Ram Hosp. LLC v. Amguard Ins. Co.*,
No. 6:21-CV-02999, 2023 WL 5670647 (W.D. La. July 27, 2023)......................................10

*Puga v. RCX Sols., Inc.*,
922 F.3d 285 (5th Cir. 2019) ..................................................................................................4

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
No. 2:15-cv-349-JRG, 2017 WL 679623 (E.D. Tex. Feb. 21, 2017) .....................................10

## I.     NATURE AND STAGE OF PROCEEDING

This is a securities class action that asserts, among other things, claims arising under Sections 10(b) and 20(a) of the Securities Exchange Act.  The parties are in the process of briefing motions for summary judgment and exclusion of expert testimony.  This is a response to Class Plaintiffs' Motion to Exclude Certain Testimony by Defendants' Expert Edward Fetkovich (ECF No. 516) ("Pls.' Mot.").

## II.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants intend to offer the testimony of Edward Fetkovich, a petroleum engineer and a former senior-level manager with over 34 years of experience in upstream oil and gas operations.  He ran Cimarex's STACK development from 2014-2018.  Fetkovich intends to testify, among other things, that (i) Alta Mesa's number and spacing of wells was reasonable, and (ii) Alta Mesa's use of Electric Submersible Pumps ("ESPs") was reasonable from an operational perspective and consistent with industry practice.  Ex. A (Fetkovich Rpt.) at 3.  Class Plaintiffs do not challenge Fetkovich's qualifications or any of his other opinions aside from an opinion from his rebuttal report that the ESP program was economically beneficial.

Class Plaintiffs' experts opined in their opening reports that Alta Mesa's ESP program was economically wasteful, but they failed to conduct any economic analysis whatsoever to support that conclusory opinion.  *See* Defs.' Mot. to Exclude Certain Testimony of T. Kirkland (ECF No. 508) at 2-4; Defs.' Mot. to Exclude Certain Ops. of H. McGowen (ECF No. 509) at 4-5.  Instead, both relied on the fact that ESPs are generally more expensive than other lifts, and Kirkland cited a few internal Alta Mesa emails

1

(McGowen did not even do that).  Fetkovich sought to rebut these opinions by conducting an economic analysis of the additional costs of using ESPs over alternative artificial lifts in existing wells, compared to the economic benefits from any resulting improvements in oil production, to determine whether Alta Mesa's use of ESPs was economic.  Based on his economic analysis, Fetkovich determined that the ESP program for Alta Mesa's existing wells was in fact net economic.

Class Plaintiffs challenge two aspects of Fetkovich's methodology, but each is, at most, material for cross-examination and not a valid basis for exclusion.  First, Class Plaintiffs contend that Fetkovich "guess[ed] at the costs" of installing and operating ESPs (Pls.' Mot. at 7), instead of using actual accounting data.  This is simply false.  For operating costs, Fetkovich used the then-current well operating costs contained in Alta Mesa's year-end 2017 Aries database for the actual cost of operating a well with a gas lift. He conservatively doubled that number to reasonably estimate the cost of operating the same wells with ESPs.  For capital costs, he used Alta Mesa's Authorizations for Expenditures ("AFEs") and Supplemental AFEs for each well, which reflect granular, itemized, anticipated costs per well.  These are the best available data in the record. Fetkovich determined, based on his experience in the industry, that this data is a reasonable proxy for actual ESP capital costs.  Tellingly, Class Plaintiffs do not identify any other available data he should have used, nor do they provide, or intend to provide, any expert opinion why Fetkovich's use of the available data is unreliable.

Second, Class Plaintiffs claim that Fetkovich's methodology was not based on sufficient data because he did not analyze the economics of ESPs installed in newly drilled

wells with no prior production history.  Class Plaintiffs omit that Fetkovich analyzed all wells for which an ESP replaced a different lift (81 wells) in 2018; i.e., all wells for which he had data to compare the well's performance with an ESP versus a different lift.  He did not analyze 20 wells for which an ESP was placed in a new well because he determined it would be impossible to reliably assess how the ESP affected performance without data on how the well performed without the ESP.  As he testified, due to the "variation in production performance," it "would create significantly more uncertainty than it creates certainty" to attempt such an analysis.  Pls.' Ex. 2 (Fetkovich Dep.) 252:19-254:19.  Thus, his decision not to assess these wells was the only appropriate option.  Class Plaintiffs fail to explain how it would be possible to calculate the economic improvement of ESPs on these wells, nor do they show how doing so would have impacted Fetkovich's conclusion.

In contrast to Class Plaintiffs' experts, who employed no analysis (economic or otherwise) before declaring that ESPs were economically wasteful, Fetkovich conducted a reasoned analysis based on a fully disclosed and defensible methodology.  Class Plaintiffs' motion here lays stark the differences among these experts: every argument Class Plaintiffs make and every case they cite reaffirms that the Court should exclude the unfounded and conclusory ESP opinion testimony of *Class Plaintiffs'* experts, Taylor Kirkland and Harold McGowen, while any criticism of Fetkovich's analysis is, at most, material for cross-examination.

## III.   STATEMENT OF THE ISSUE

Whether Fetkovich's methodology in assessing the economics of Alta Mesa's ESP program was sufficiently reliable when he used the most accurate cost information

3

available in the record, and he analyzed only those wells with data capable of reasonable assessment.

## IV.     STANDARD OF REVIEW

Defendants do not dispute Class Plaintiffs' recitation of the standard set forth in Rule 702 nor that the Court has discretion in determining expert testimony admissibility. *See* Pls.' Mot. at 1-2.[2]  However, disputes over an expert's factual inputs are not a basis for exclusion and should be addressed, instead, through cross-examination.  *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019).

## V.     STATEMENT OF FACTS

Despite challenging only Fetkovich's narrow opinion on the economics of ESPs, Class Plaintiffs devote pages to reciting a set of heavily curated documents and testimony, taken out of context, to spin their overall narrative.  Pls.' Mot. at 2-5.  None of this highly selective evidence is relevant to this targeted motion, and Defendants respectfully refer the Court to their motions for summary judgment for a complete description of the relevant evidence and its implications for the merits of Class Plaintiffs' claims.  We address here only what is relevant: the methodology of Fetkovich's economic analysis.

---

[2] Plaintiffs contend that "exclusion is available but disfavored in this Circuit."  Pls.' Mot. at 2 n.2.  Plaintiffs are correct: cross-examination is the appropriate vehicle to raise the issues challenged here regarding factual disputes over an expert's inputs, rather than exclusion of the testimony.  But when experts fail to conduct any analysis in reaching conclusory opinions, as Kirkland and McGowen do, exclusion is proper.  *See* ECF Nos. 508 and 509 (motions to exclude certain testimony of Kirkland and McGowen).

### A.     The ESP Cost Opinions of Class Plaintiffs' Experts

Class Plaintiffs' two oil and gas engineering experts, Taylor Kirkland and Howard McGowen III, both opine in their opening reports that Alta Mesa's ESP program was economically wasteful.  Pls.' Ex. 16 (Kirkland Rpt.) ¶ 101; Pls.' Ex. 15 (McGowen Rpt.) ¶ 70.  However, neither conducts *any* economic analysis: neither assesses how much the ESP program cost Alta Mesa or what Alta Mesa gained from the ESP program in improved oil production.   Pls.' Ex. 16 (Kirkland Rpt.) ¶¶ 91, 98-100; Pls.' Ex. 15 (McGowen Rpt.) ¶¶ 68, 72; Defs.' Mot. to Exclude Certain Testimony of T. Kirkland (ECF No. 508) at 2-4; Defs.' Mot. to Exclude Certain Ops. of H. McGowen (ECF No. 509) at 4-5.  Instead, each simply concludes that ESPs were wasteful based on the unremarkable and undisputed point that ESPs generally cost more than alternative artificial lift systems.  Pls.' Ex. 16 (Kirkland Rpt.) ¶¶ 91, 98-100 (citing a few internal emails); Pls.' Ex. 15 (McGowen Rpt.)  ¶¶ 68, 72 (citing only two third-party articles about artificial lift selection).[3]

### B.     Edward Fetkovich's Economic Analysis of Alta Mesa's Use of ESPs

In rebuttal, Fetkovich undertook the analysis that Class Plaintiffs' experts failed to do.  Fetkovich performed a well-by-well analysis of each ESP's effect in improving well

---

[3] Contrary to Class Plaintiffs' narrative that AMR engaged in fraud by using ESPs (*see* Pls.' Mot. at 4), McGowen and Kirkland agree that producers typically use ESPs and other artificial lifts with wells "to increase production of fluids[.]"  Pls.' Ex. 15 (McGowen Rpt.) ¶ 67; *see also* Pls.' Ex. 16 (Kirkland Rpt.) ¶ 90.  Operators do not always opt for the least expensive option.  Rather, "[m]any factors go into selecting the proper form of artificial lift," and in certain circumstances an ESP is the preferable and even the "necessary" option.  Pls. Ex. 16 (Kirkland Rpt.) ¶¶ 90, 92, 101; Ex. 15 (McGowen Rpt.) ¶ 72.

production (and, therefore, revenue) over the prior artificial lift, and then compared that to the additional costs AMR incurred with ESPs to determine the net profitability.

Fetkovich used the best record data regarding Alta Mesa's costs. For operating costs of its gas lifts, Fetkovich used the number Alta Mesa included in its year-end 2017 Aries database as representing its then-current well operating costs (at that time, nearly all wells had gas lifts). Aries is a commercial economic evaluation software program regularly used by oil and gas operators. This data is regularly shared with an operator's reserve auditor, and Alta Mesa shared the data with its auditor, Ryder Scott. *See, e.g.*, Ex. C (M. Palke, Ryder Scott 30(b)(6) Dep.) at 138:13-139:14, 142:2-7, 165:20-22.

Alta Mesa did not include separate well-specific operating costs in its Aries database, nor did the operating costs distinguish among artificial lift type. Rather, the database contained average operating costs for wells in different operating areas, regardless of lift type. Accordingly, once Alta Mesa began installing ESPs in 2018, the operating costs contained in Aries could not be attributed to different types of artificial lift. Accordingly, Fetkovich doubled the YE2017 fixed operating cost as an estimate for ESP operating costs. Ex. B (Fetkovich Dep.) 260:5-20. Fetkovich testified that, based on his professional judgment, doubling the operating costs for ESPs was a conservative estimate, as ESP operating costs were likely only about 50% more than the gas lift operating costs. *Id*. Indeed, a study published by the Society of Petroleum Engineers, which Plaintiffs' expert McGowen relied on and cited (*see* Pls.' Ex. 15 at ¶ 70 n.45), concluded that in a nearby play in Texas, the Permian Basin, "ESP OPEX is now comparable to other forms of lift system in the basin . . . ." Ex. F (SPE Article) at 16.

6

With respect to capital costs, Fetkovich ran two scenarios.  First, he used Alta Mesa's Authorizations For Expenditure ("AFEs") and Supplemental AFEs (to capture additional amounts requested over the original AFE).  Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 28.  AFEs were granular and specific expenditure requests for individual wells, based on itemized vendor quotes, for anticipated costs of installing an ESP.  *See* Ex. D (example vendor quote used as AFE).  The resulting values are reflected in Appendix A to Fetkovich's Rebuttal Report, and average out to $374,000 per well.  Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 33 (average of Base Case "Gross Capex").  These numbers are on the high end.  For example, in the Society of Petroleum Engineers article that McGowen cited, installing an ESP actually cost $202,872 *less* than installing a gas lift.  Ex. F at 17.

Second, Fetkovich conducted a second analysis using $453,000 as a proxy for the actual capital cost per ESP.  This number is based on Alta Mesa's high-end estimated default value in its economic tracking analysis ($413,000) plus $40,000 to conservatively account for any variance between the default and actual.  Ex. E (excerpt of Fetkovich_SDTX03264); Ex. B (Fetkovich Dep.) 263:18-264:10.  Notably, this assumed value is greater than the $400,000 to $415,000 that Class Plaintiffs assume to be the capital cost per ESP.  *See* Third Am. Compl. ¶ 272 (ECF No. 218).

Fetkovich conducted his economic analysis on the 81 wells for which Alta Mesa replaced an existing artificial lift with an ESP (80% of the total).  Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 22, App. A; Ex. A (Fetkovich Rpt.) at 51.  He did not analyze 20 ESPs

that Alta Mesa installed on new wells.[4]  Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 22; Ex. A (Fetkovich Rpt.) at 51.  These wells had no production data from before an ESP was installed, which made it impossible to reliably assess how much the ESP affected production.  Pls.' Ex. 2 (Fetkovich Dep.) 252:19-254:19; Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 22.

His analysis concluded that using either capital cost scenario, the ESP program was net economic.  Using the AFEs, the ESP program had a positive net present value of $8.023 million, and the analysis of $453,000 capital costs per well returned a positive net present value of $3.809 million.  *See* Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 33.

## VI.   FETKOVICH'S ESP ECONOMIC ANALYSIS IS ADMISSIBLE

### A.   Fetkovich Used Reasonable Cost Data

Class Plaintiffs claim that Fetkovich's economic analysis is unreliable and, therefore, inadmissible because he supposedly used "guesswork" and did not "use[] Alta Mesa's actual accounting data[.]"  Pls.' Mot. at 6.  This is factually untrue.  Fetkovich used the best record data available, which served as a reasonable proxy for Alta Mesa's per-well costs, and he filled any gaps with conservative assumptions.  With respect to operating costs, Fetkovich used data from Alta Mesa's YE2017 Aries database for its gas lift operating costs and conservatively doubled that number for ESP operating costs.  And for capital costs, he used the actual AFEs and supplemental AFEs (to capture overages) located

---

[4] Class Plaintiffs state that Fetkovich excluded 21 ESPs installed in new wells (Pls.' Mot. at 7), but he excluded only 20 wells for this reason (Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 22; Ex. A (Fetkovich Rpt.) at 51).

in Alta Mesa's files, and he also ran a second analysis using a conservative value of $453,000 per well—more than Class Plaintiffs' own estimates.  The analysis using both capital cost scenarios was still net economic when considering increased production.

Nor is this argument a basis to exclude Fetkovich's analysis.  To the extent that Fetkovich had to fill some gaps in the available data with reasonable assumptions, this is standard and appropriate for an expert; it is not a basis for exclusion.  *Moore v. Int'l Paint, LLC*, 547 Fed. App'x 513, 516 (5th Cir. 2013) (noting that "reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record"); *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. H–16–2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (Rosenthal, C.J.) ("An expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible."); *Lockett v. Doyle Dickerson Terrazzo, Inc.,* No. 19-14782, 2021 WL 6066697, at *6 (E.D. La. Nov. 3, 2021) ("[E]conomic experts routinely assume certain facts that in reality remain in question and make calculations based on those assumptions.").

Class Plaintiffs do little to support their motion.  If Class Plaintiffs were concerned about the reliability of Fetkovich's data, they could have and should have asked Fetkovich about the data during his deposition.  He could have explained why the inputs were reasonable.  Nor do any of their experts provide or intend to provide testimony as to why his process was unreliable.  *See* Ex. G (Kirkland Dep.) 25:14-23 (testifying that he will not provide opinion testimony beyond what is in his reports); Ex. H (McGowen Dep.) 251:10-252:7 (testifying that Class Plaintiffs did not ask him to provide opinion testimony in response to Fetkovich's ESP economic analysis).  Class Plaintiffs also do not point to any

record data that they think Fetkovich should have used but did not, because he *used* the best record data. Indeed, Class Plaintiffs' expert Kirkland avoided identifying the data he believed reflected the ESP capital costs, admitting that he could not because "[t]here is inconsistent information in the record on the costs Alta Mesa incurred for the ESP installations." Pls.' Ex. 16 (Kirkland Rpt.) ¶ 98. Class Plaintiffs cannot attempt to generate a dispute in the absence of a record.

As for Class Plaintiffs' argument that Fetkovich's cost assumptions are flawed because they believe Alta Mesa's internal costs undervalued actual costs, that argument is irrelevant to whether the Court should exclude his testimony. Pls.' Mot. at 6-7 (citing Pls.' Ex. 13). Class Plaintiffs are free to attempt to prove that Fetkovich should have used higher costs and address it with him on cross-examination, but their mere disagreement with data he determined was reliable and conservative is not a basis for exclusion. *See ENGlobal U.S. Inc.*, 2018 WL 1877015, at *8-9 (denying motion to exclude expert testimony, noting that "[w]hen 'the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony'" (quoting *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 Fed. Appx. 727, 733 (5th Cir. 2008))); *Om Sai Ram Hosp. LLC v. Amguard Ins. Co.*, No. 6:21-CV-02999, 2023 WL 5670647, at *2 (W.D. La. July 27, 2023) ("Challenges to the inputs used by an expert rather than his methodology are fodder for cross-examination instead of grounds for exclusion."); *Maiden Biosciences, Inc. v. Doc. Sec. Sys., Inc.,* No. 3:21-CV-0327-D, 2022 WL 16964752, at *4 (N.D. Tex. Nov. 16, 2022) ("[A]n expert's opinions are not inadmissible simply because an underlying assumption may be contestable." (citation omitted)); *Saint*

*Lawrence Commc'ns LLC v. ZTE Corp.*, No. 2:15-cv-349-JRG, 2017 WL 679623, at \*2 (E.D. Tex. Feb. 21, 2017) (holding that a challenge to an expert's disclosed inputs, and not to his methodology, is not a basis to exclude and is the subject of cross-examination).[5]

Fetkovich's methodology bears no resemblance to the fact patterns in Class Plaintiffs' inapposite cases.  For example, in *Guillory v. Domtar*, the Fifth Circuit affirmed exclusion of an expert who made up fictitious facts and altered others "designed to bolster [the party's] position."  95 F.3d 1320, 1331 (5th Cir. 1996).  The court noted that a district court must exclude "evidence tainted by farce or fiction."  *Id.*  Likewise, in *Moore v. International Paint, LLC*, the Fifth Circuit affirmed exclusion of expert testimony because "the universe of facts assumed by the expert differ[ed] frequently and substantially from the undisputed record evidence" and "the expert made numerous assumptions with no apparent underlying rationale."  547 Fed. App'x at 516; *see also Genband US LLC v. Metaswitch Networks Corp.,* No. 2:14-cv-33-JRG-RSP, 2016 WL 122967, at \*5 (E.D. Tex. Jan. 9, 2016) (excluding expert testimony that unreasonably assumed the same patent portfolio value for a set of companies of varying sizes with entirely different portfolios).

---

[5] In any event, Class Plaintiffs cite only one document in support of their allegation of undervaluing costs: talking points prepared for a January 2019 Board meeting stating that "[t]hese higher numbers were never included in the models or financial reporting."  *See* Pls.' Mot. at 6 (quoting Pls.' Ex. 13).  The quote is a general statement about the total costs of well drilling and says nothing about the capital or operating costs of ESPs specifically. If all drilling costs were under-estimated, gas lifts would be equally affected.  *See United States ex rel.  Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 1233651, at \*3 (E.D. Tex.  Apr. 26, 2022) (challenges regarding an expert's use of facts in dispute goes to the weight, not admissibility, of the testimony).

Class Plaintiffs' argument demonstrates only why the opinions of *Class Plaintiffs' experts*, Harold McGowen and Taylor Kirkland, regarding Alta Mesa's purported overuse of ESPs should be excluded.  *See* ECF Nos. 508, 509.  As an initial matter, Class Plaintiffs' experts allude to generalized costs of ESPs without considering the benefits of using ESPs to weigh against those costs.  *See, e.g.*, ECF No. 508 at 2-3; ECF No. 509 at 4-5.  And even then, neither considers *Alta Mesa's* actual costs.  Both experts simply discuss the general costs of ESPs in the industry, without considering *any* data specific to Alta Mesa, such as AFEs or the average cost information.  *Id.*  In contrast, Fetkovich made efforts to identify the most accurate information he could and to fill any gaps with conservative estimates. Unlike their testimony, his testimony is admissible.

Class Plaintiffs' criticism of Fetkovich's data is the quintessential factual quibble that, at most, goes to the weight of his opinion but does not demonstrate that Fetkovich's opinion is not based on sufficient data to be inherently unreliable.

## B.   Fetkovich Reasonably Evaluated All ESPs Capable of Economic Analysis

Class Plaintiffs' challenge to Fetkovich's methodology because he did not analyze the economics of 20 ESPs installed in new wells fares no better.  Pls.' Mot. at 7-8. Fetkovich did not perform this analysis because he determined these wells were not capable of reliable assessment.  He tried to determine the incremental economic impact of using an ESP versus gas lift in existing wells by comparing a well's performance before the ESP was installed (i.e., when a different artificial lift was in place) to its performance after installation.  For the new wells, there is no pre-ESP performance data to make that

comparison.  Pls.' Ex. 1 (Fetkovich Rebuttal Rpt.) at 22.  It is not possible to determine how a well's production might have been affected by an ESP over an alternative lift when no alternative lift was used.  Thus, Fetkovich considered every well from the 2018 ESP program that Alta Mesa installed after production had already begun with a different lift— i.e., every well for which the analysis was possible.  This represented 80% of all of Alta Mesa's ESPs.  Class Plaintiffs are right that Fetkovich could have calculated the *costs* of the ESPs in the wells, but that is only half of the equation and thus meaningless.  Pls.' Mot. at 7-8.  The question is whether the ESPs were profitable compared to gas lift, not just how much they cost.

Moreover, Class Plaintiffs offer no reason that excluding those wells somehow skewed the results in Defendants' favor.  *Cf. Guillory*, 95 F.3d at 1331 (expert altered facts to bolster his party's position).  Class Plaintiffs have no evidence and offer no expert testimony to show the economic impact of the ESPs in these new wells, precisely because it cannot be done based upon the data available.

Fetkovich made the reasonable methodological decision not to analyze wells for which he could not reliably do so. It would turn Rule 702 on its head to bar Fetkovich's testimony as to the 80% that could be reliably analyzed because he did not conduct unreliable analysis on the remaining 20%.

## VII.   CONCLUSION

For the foregoing reasons, Class Plaintiffs' Motion to Exclude Certain Testimony by Defendants' Expert Edward Fetkovich (ECF No. 516) should be denied.

Dated: January 19, 2024                    Respectfully submitted,

By  */s/  J. Christian Word*
    J. Christian Word
    Attorney-in-Charge for Defendants
    D.C. Bar No. 461346
    S.D. Tex. Bar No. 3398485
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Christian.Word@lw.com

    Of Counsel:
    Heather A. Waller
    IL Bar No. 6302537
    S.D. Tex. Bar No. 2886108
    **LATHAM & WATKINS LLP**
    330 North Wabash Avenue, Suite 2800
    Chicago, IL 60611
    Tel: (312) 876-7700
    Fax: (312) 993-9767
    Heather.Waller@lw.com

    Matthew Peters (*pro hac vice*)
    DC Bar. No. 1015700
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Matthew.Peters@lw.com

    *Counsel for Defendants Alta Mesa*
    *Resources, Inc., f/k/a Silver Run*
    *Acquisition Corporation II; Riverstone*
    *Holdings LLC; Harlan H. Chappelle;*
    *Stephen S. Coats; Michael E. Ellis;*
    *William D. Gutermuth; James T. Hackett;*

14

*Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
jschreiber@winston.com

*Co-Counsel for Defendants Harlan H. Chappelle and Michael E. Ellis*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 19, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ J. Christian Word*

J. Christian Word
