# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> Judge George C. Hanks, Jr. |

## DEFENDANTS'[1] OPPOSITION TO CLASS PLAINTIFFS' CORRECTED MOTION TO EXCLUDE THE TESTIMONY OF JOHN FIEBIG

---

[1] Alta Mesa Resources, Inc. ("AMR"), Riverstone Holdings, LLC, Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald J. Smith, Jeffrey H. Tepper, Thomas J. Walker, and Diana J. Walters.

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDING ................................................................... 1

STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT ................................. 1

LEGAL STANDARD ................................................................................................... 3

ARGUMENT ................................................................................................................ 4

      A.     Fiebig's 30 Years Of Experience Qualifies Him To Apply
The Relevant Forensic Standards And Address The
Accounting Questions Raised By Regan's Report ....................................... 4

      B.     Fiebig Properly Applied The Relevant Forensic Standard In
Rebutting Regan's Flawed Accounting Opinions ....................................... 8

      C.     Fiebig's (And His Team's) Review Was Sufficient And
Included All Documents Cited In (And Considered For) The
Regan Report ............................................................................................ 12

CONCLUSION .......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Briley v. Wal-Mart Stores, Inc.*,
2018 WL 276368 (S.D. Tex. Jan. 3, 2018) ................................................................. 11

*Cude v. Aep Tex., Inc.*,
2021 WL 791101 (S.D. Tex. Mar. 2, 2021) ........................................................ 4, 6, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................................................................................................. 3

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ....................................................................... 12, 13, 16

*Fazzino v. Roe*,
2021 WL 7287311 (W.D. Tex. Aug. 20, 2021) ........................................................ 11

*Huss v. Gayden*,
571 F.3d 442 (5th Cir. 2009) ............................................................................ 2, 4, 6, 7

*Kim v. Am. Honda Motor Co.*,
86 F.4th 150 (5th Cir. 2023) ...................................................................................... 3

*Lorea v. Hunter Express, Ltd.*,
2023 WL 6205932 (S.D. Tex. Aug. 11, 2023) ........................................................... 7

*In re M/V MSC Flaminia*,
2017 WL 3208598 (S.D.N.Y. July 28, 2017) ..................................................... 12, 14

*Moore v. Int'l Paint, L.L.C.*,
547 F. App'x 513 (5th Cir. 2013) .............................................................................. 13

*Muñoz v. Orr*,
200 F.3d 291 (5th Cir. 2000) ..................................................................................... 13

*Natchez Reg. Med. Ctr. v. Quorum Health Res., LLC*,
879 F. Supp. 2d 556 (S.D. Miss. 2012) ....................................................................... 6

*Nikolova v. Univ. of Tex. at Austin*,
585 F. Supp. 3d 936 (W.D. Tex. 2022) ...................................................................... 15

*Norris v. Kawasaki Motors Corp., USA*,
    2018 WL 3729572 (S.D. Tex. Aug. 6, 2018) ........................................................ 2, 8

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009) ................................................................ 13

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ................................................................ 3

*Port of Hous. Auth. of Harris Cnty. Tex. v. Louis Dreyfus Co. Hous. Exp. Elevator, LLC*,
    2022 WL 3446129 (S.D. Tex. Aug. 17, 2022) ........................................................ 12

*Smith v. Goodyear Tire & Rubber Co.*,
    495 F.3d 224 (5th Cir. 2007) ................................................................ 4

*VeroBlue Farms USA Inc. v. Wulf*,
    2023 WL 348016 (N.D. Tex. Jan. 20, 2023) ........................................................ 2

*Viterbo v. The Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ................................................................ 4

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,
    801 F.3d 512 (5th Cir. 2015) ................................................................ 3

*Williams v. Manitowoc Cranes*,
    L.L.C., 898 F.3d 607 (5th Cir. 2018) ........................................................ 7

## RULES

Fed. R. of Evid. 702 .................................................................. 1, 3, 6

## NATURE AND STAGE OF PROCEEDING

This is a securities class action, and the parties have completed fact and expert discovery.  Defendants respectfully oppose Class Plaintiffs' motion ("Motion" or "Mot." (ECF No. 535)) to exclude the testimony of Defendants' expert John Fiebig, under Federal Rule of Evidence 702.

## STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT

Class Plaintiffs' Motion purports to raise three issues with Defendants' accounting expert John Fiebig: his experience, his analysis of the applicable accounting standards, and the information he and his team considered.  None of these criticisms are true.  At best, they are subjects for cross-examination and not proper bases for exclusion of his testimony.

***First***, Class Plaintiffs challenge Fiebig's experience.  Fiebig is a certified public accountant ("CPA") who spent 17 years with public accounting firms (including as a Big Four audit partner), 14 years as a senior leader with the Public Company Accounting Oversight Board ("PCAOB"), and 4 years leading his own consulting firm.  Throughout his career, Fiebig has worked with and applied the same or similar accounting standards and principles that he applies in this case.  Moreover, the relevant forensic standards, the American Institute of Certified Public Accountants ("AICPA") Statement on Standards for Forensic Services ("AICPA SSFS"), *see* ECF No. 535-6, have been in effect only since 2020, and Fiebig testified that he has experience applying them in the few years of their existence, as detailed in his report. Ex. 1 (Fiebig Dep.) at 33:10-17; *see also* ECF No. 535-2 (Fiebig Rpt.) App'x B at 1-2.  Put simply, Fiebig is qualified in applying the forensic accounting standards and evaluating the other accounting and internal controls questions

at issue in his rebuttal to Class Plaintiffs' accounting expert D. Paul Regan.  Class Plaintiffs' belief that Regan—whose career has been to be a paid mouthpiece in litigation—has more relevant experience than Fiebig is a question for the jury.  *See Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (arguments about an expert's qualifications "bear chiefly on the weight to be assigned to the testimony by the trier of fact" rather than "admissibility").

*Second*, Class Plaintiffs challenge Fiebig's application of the newly effective AICPA SSFS.  In particular, Class Plaintiffs claim that Fiebig is making up his own standards but conveniently ignore Fiebig's testimony explaining the basis in the AICPA SSFS for his opinion that Regan was required to (but did not) do a comprehensive analysis of the data underlying Alta Mesa's projections and assumptions.  *See* Ex. 1 (Fiebig Dep.) at 40:20-44:16; *see also id.* at 183:19-184:10.  If Class Plaintiffs disagree, that is material for cross examination, not exclusion.  *See Norris v. Kawasaki Motors Corp., USA*, 2018 WL 3729572, at *6 (S.D. Tex. Aug. 6, 2018) ("At trial, [the movant] may present evidence that the [relevant models] are governed by different safety standards … [t]hese issues go to weight, not admissibility.").

*Third*, Class Plaintiffs argue that Fiebig's opinions are not based on sufficient facts. But their argument is based primarily on (1) a handful of cherry-picked documents Regan does not even cite in his report and (2) criticizing Fiebig for working with other experienced CPAs as support staff—a common practice also used by Class Plaintiffs' expert Regan. Class Plaintiffs can cross examine Fiebig on these points, but they are not a basis for exclusion.  *See VeroBlue Farms USA Inc. v. Wulf*, 2023 WL 348016, at *10 (N.D. Tex.

Jan. 20, 2023) (holding that after determining expert testimony was reliable "challenges to the quantity or breadth of the sources and bases for [] expert opinion go to the weight that it may be afforded and not to its admissibility"); *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("whether the predicate facts on which [the expert] relied are accurate" is an issue for the fact-finder).

Because Rule 702 and well-established *Daubert* caselaw make clear that none of Class Plaintiffs' arguments provide a basis for exclusion and instead should be addressed in cross examination, the Motion should be denied.

## LEGAL STANDARD

Parties offering expert opinions and testimony bear the burden of proving that they are both "relevant and reliable" to be admissible under Federal Rule of Evidence 702. *Kim v. Am. Honda Motor Co.,* 86 F.4th 150, 160 (5th Cir. 2023). Courts "must focus 'on [the expert's] principles and methodology, not on the conclusions that they generate.'" *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993)); *see also Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (A "district court has 'broad latitude' when deciding whether such testimony is reliable").

Seemingly anticipating Defendants' forceful *Daubert* motions against Class Plaintiffs' experts exposing the fatal flaws in their expert opinions, Class Plaintiffs acknowledge in other motions that the issues they raise here, with respect to Fiebig, "affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *See, e.g.*, ECF No. 516 (Class Pls.' Mot. to Exclude Certain Test.

3

by Defs.' Expert Edward Fetkovich) at 2 n.2 (quoting *Viterbo v. The Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

## ARGUMENT

**A.** **Fiebig's 30 Years Of Experience Qualifies Him To Apply The Relevant Forensic Standards And Address The Accounting Questions Raised By Regan's Report**

Class Plaintiffs argue that Fiebig "is simply not qualified as a ***forensic*** accountant," Mot. at 6 (emphasis in original), which Class Plaintiffs say he must be because the AICPA SSFS "apply and are the controlling specialty called for in this case." *Id.* at 6. But Class Plaintiffs ignore Fiebig's experience applying the AICPA SSFS since they newly came into effect and his 30 years of experience applying the substantively identical AICPA Code of Professional Conduct. That experience more than qualifies him as a forensic accountant able to apply the AICPA SSFS here. Moreover, his decades of oil and gas accounting and internal controls experience well qualifies him to rebut Regan's opinions on the projections in the Proxy, accounting for impairments, and internal controls over financial reporting.

To qualify an expert, a district court must determine that an expert's background and experience provides "sufficient indicia" that the expert's opinions will be reliable. *Huss*, 571 F.3d at 452; *see also Cude v. Aep Tex., Inc.*, 2021 WL 791101, at *6 (S.D. Tex. Mar. 2, 2021). The district court does this by comparing the expert's background and experience to the "pertinent questions" the expert has been asked to address. *See Cude*, 2021 WL 791101, at *5 (quoting *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)). Viewed through this lens, there is no doubt Fiebig is qualified to address

4

the "pertinent questions" in this case—whether Regan complied with the relevant AICPA

SSFS standards when offering his opinions that:

- AMH's and KFM's projections disclosed in the Proxy "did not reflect management's 'best currently available estimates'" (ECF No. 535-4 (Regan Rpt.) ¶¶ 7-8; *see also id.* § 3);

- Alta Mesa's accounting for its upstream oil and gas reserves and downstream intangible assets and goodwill (specifically its asset impairment analyses) did not follow Generally Accepted Accounting Principles ("GAAP") and the values should have been restated rather than accounted for on a go-forward basis (*id.* ¶¶ 9-10; *see also id.* §§ 4-5); and

- Alta Mesa's disclosure controls and internal controls over financial reporting "became exposed to numerous material weaknesses as of and following the Business Combination" (*id.* ¶ 11; *see also id.* § 6).

Class Plaintiffs' argument that Fiebig has no experience applying the AICPA SSFS

ignores Fiebig's unrefuted testimony that he has applied the AICPA SSFS in his current

role as President and Co-Founder of ADIGEO Consulting, LLC—a role he has held since

the AICPA SSFS was adopted in 2020. *See* Ex. 1 (Fiebig Dep.) at 33:5-17, 34:10-12. Class

Plaintiffs fail to mention that the AICPA SSFS was only issued in 2019 (effective January

1, 2020) and consolidated prior guidance into one document. This prior guidance included

the AICPA Code of Professional Conduct—the *exact same* Code of Professional Conduct

that Fiebig has applied in engagements throughout his career. *Compare* ECF No. 535-6

(AICPA SSFS) ¶ 6 *with* Ex. 2 (AICPA Code of Professional Conduct) § 1.300.001; *see*

*also* Fiebig Rpt. ¶ 32 & n.61. The "due professional care" and "sufficient relevant data"

standards in the AICPA SSFS that Class Plaintiffs claim Fiebig misapplies (*see infra*

Section B) are directly from the AICPA Code of Professional Conduct that Fiebig has

decades of experience applying as a long-tenured CPA working in audit and at the PCAOB. Class Plaintiffs' argument that Fiebig is not a forensic accountant and does not have experience applying the standards at issue is simply inaccurate.[2]

Class Plaintiffs also are wrong to focus solely on application of the AICPA SSFS as the only relevant question for evaluating Fiebig's expertise.  Fiebig also has extensive experience in the accounting and internal controls questions that Regan opines on.  For example, Fiebig has audited or inspected the auditors of large, independent public oil and gas companies continually throughout his career, including evaluating impairment of oil and gas properties.  *See* Fiebig Rpt. ¶¶ 7-8, App'x B at 3.  He has participated in numerous initial public offerings, including reviewing offering or proxy documents and evaluating disclosures made by management.  *See id.* App'x B at 3.  And he has reviewed and evaluated the internal controls work performed on dozens of audits and led inspections of hundreds of integrated audits performed under PCAOB standards, which included identifying deficiencies in management's and the auditor's testing and evaluation of control design and effectiveness.  *See id.* ¶ 9, App'x B.  Collectively, Fiebig's experience provides

---

[2] To the extent that Class Plaintiffs seek to assign any significance to the title "forensic accountant" as a reason why Fiebig is not qualified, that argument fails, as well.  The Fifth Circuit has repeatedly cautioned that district courts must not "focus too stringently on an individual's title or any artificial label attached to their industry" when addressing an expert's qualifications under Rule 702.  *Cude*, 2021 WL 791101, at *6; *see Huss*, 571 F.3d at 455 (holding that a doctor did not "need[] to be specialized in cardiology or toxicology" to give causation opinion in medical malpractice suit); *Natchez Reg. Med. Ctr. v. Quorum Health Res., LLC*, 879 F. Supp. 2d 556, 577-78 (S.D. Miss. 2012) (dismissing argument that accounting expert was not reliable because expert was not certified as a "forensic accountant," and holding expert's opinion was reliable because he had requisite "knowledge of and background in accounting" to address issues in case).

more than enough "indicia" of his ability to "provide a reliable opinion" on the accounting issues in this case. *Williams v. Manitowoc Cranes*, L.L.C., 898 F.3d 607, 625 (5th Cir. 2018).

Nor does it matter that Regan "never challenges the veracity of the public audits that Alta Mesa conducted concerning its financials." Mot. at 7. What matters, instead, is that Fiebig has extensive experience applying the substantive standards he uses to critique Regan's opinions on the questions at issue. *See Cude*, 2021 WL 791101, at *5-6. Class Plaintiffs offer selective and misleading quotes from Fiebig's deposition, hoping to concoct a relevant distinction between "auditing" and "forensic" accounting. Mot. at 7. As Fiebig has explained, the "due professional care" and "sufficient relevant data" standards in the AICPA SSFS he applies are the same standards found in the AICPA Code of Professional Conduct applicable to all accountants. *See infra* Section B; *see also* Ex. 1 (Fiebig Dep.) at 10:16-11:1 (explaining that auditing and forensics have the same standards "as it relates to identifying evaluating evidence and information"). Just because Fiebig is not a decades-long paid litigation expert does not mean he cannot opine on the key questions in this case.

Left with little else, Class Plaintiffs resort to comparisons of Fiebig's and Regan's experience but do not explain how either affects Fiebig's ability to apply the AICPA SSFS. Nor could they. *See supra* at 5-6. And, in any event, "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *See Huss*, 571 F.3d at 452; *Lorea v. Hunter Express, Ltd.*, 2023 WL 6205932, at *3 (S.D. Tex. Aug. 11, 2023) ("Finally, to the extent that [the expert's] comparative expertise renders his

testimony vulnerable to attack, Defendants may demonstrate this at trial.").  Class Plaintiffs

present no reason for this Court to deviate from this Circuit's well-settled principles.

### B.     Fiebig Properly Applied The Relevant Forensic Standard In Rebutting Regan's Flawed Accounting Opinions

Class Plaintiffs next argue that Fiebig's methodology is unreliable because of how

he applied the AICPA SSFS to Regan's opinions.  Specifically, Class Plaintiffs contend

that rather than apply the AICPA SSFS, Fiebig "create[d] a *separate* standard out of thin

air" that levies a more onerous burden on Regan, with the only support for that approach

being Fiebig's "subjective opinion."  Mot. at 8-9.  As discussed below, Class Plaintiffs are

wrong; they read one part of the AICPA SSFS in isolation, while also ignoring the plain

language of Fiebig's expert report and his deposition testimony on how he applied the

relevant standards.  But regardless, any disagreement over proper application of the AICPA

SSFS is the subject of cross examination, not exclusion.  *See Norris,* 2018 WL 3729572,

at *6   (holding  that  evidence  of  governing  safety  standard  "go[es]  to  weight,  not

admissibility").

As Fiebig has explained, the AICPA SSFS contains four general standards, two of

which are at issue here:

- ***Due professional care.*** Exercise due professional care in the performance of professional services.

- ***Sufficient relevant data.*** Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed.

*See* Fiebig Rpt. ¶ 32 & n.61 (citing AICPA SSFS ¶ 6).  Class Plaintiffs omit any mention

of the first general standard, "due professional care," and likewise fail to mention that

Fiebig expressly disclosed that his analysis reflected two of the general standards.  *Id.* ¶ 32 (laying out the standards and explaining that his "analysis herein is based on the methodology described above").

Fiebig explained that along with obtaining "sufficient relevant data," a CPA must also exercise "*due professional care*," which the AICPA Code of Professional Conduct recognizes as "requir[ing] a member to discharge professional responsibilities with competence and diligence."  Ex. 2 (AICPA Code of Professional Conduct) § 0.300.060 (emphasis omitted); *see also* AICPA SSFS (ECF No. 535-6) ¶ 6 (incorporating by reference the AICPA Code of Professional Conduct), ¶ 7 (referencing AICPA Code of Professional Conduct).  Consistent with these two standards, an accountant must have sufficient relevant data, *see, e.g.*, Fiebig Rpt. ¶¶ 206, 215, 223, *and* evaluate that data diligently, *see, e.g.*, *id.* ¶¶ 136, 142, 147.  Fiebig's opinion that Regan "does not provide a comprehensive analysis of the data" therefore derives from a combination of exercising diligence and due care as part of analyzing sufficient relevant data.  *See, e.g.*, *id.* ¶ 33(a)(2); *see also id.* ¶ 215 ("[t]he AICPA Forensic Standards require that this opinion be supported by an *analysis of sufficient relevant data* that is performed with *due professional care*") (emphasis added).  And while Class Plaintiffs offer selective quotes from his testimony to suggest otherwise, Fiebig explained the support for his application of the relevant standards.  *See, e.g.*, Ex. 1 (Fiebig Dep.) at 40:20-44:16; *see also id.* at 183:19-184:10 ("it relates to his lack of analysis of the *data* underlying the assumptions of the process to create the projections. … I don't see his review of that.") (emphasis added).

As a fallback, Class Plaintiffs criticize a purported lack of specificity in Fiebig's deposition testimony.  Mot. at 9-11.  What they really criticize are answers where Fiebig could not recall—sitting in his deposition—specific examples of documents.  *See id.*  Even so, at his deposition, Fiebig pointed Class Plaintiffs back to his report which Class Plaintiffs ignore.  *See, e.g.*, Ex. 1 (Fiebig Dep.) at 207:21-208:6; *see also id.* at 184:25-185:2.  Fiebig details in his report several examples of Regan's failure to perform a comprehensive analysis.  *See, e.g.*, Fiebig Rpt. ¶¶ 44, 46, 48, 51.  Class Plaintiffs either did not ask him the appropriate follow-up question at his deposition to point out the examples in his report, *see, e.g.*, Ex. 1 (Fiebig Dep.) at 207:6-19; did not permit Fiebig to answer, *see id*. at 187:5-11 (interrupting[3] Fiebig mid-answer and posing new question); or complain that he did not provide a *second* specific example after he had already provided one example, *see id*. at 207:9-10 ("Q. … I'm asking if you have *any other examples* with regard to the KFM projections") (emphasis added); *see also id.* at 206:15-21 (providing example of Regan's hindsight bias interspersed with counsel's interruptions).

Finally, Class Plaintiffs mischaracterize Fiebig's criticism of Regan, claiming that Fiebig criticized Regan for failing to reconcile his opinions with *the testimony* of Tudor, Pickering, Holt & Co.'s ("TPH"), a third-party advisory firm that offered contemporaneous

---

[3] Because Class Plaintiffs criticize Fiebig's deposition answers, it is worth noting that Class Plaintiffs' counsel repeatedly interrupted Fiebig while he was giving an answer, *see, e.g.*, Ex. 1 (Fiebig Dep.) at 178:12-18 ("It doesn't speak to the language – [*interrupts response*] Q.  Do you find that different?  MR. NASKO:  Were you finished with your answer?  A. I don't know.  I kind of lost my train of thought after that [interruption]"); *see also, e.g.*, *id.* at 41:22-42:9; 64:19-25; 66:9-22; 261:11-18.

support for the 2018 EBITDA projections.  *See* Mot. at 11 n.4.  But as is clear from Fiebig's report and testimony, Fiebig asserted that Regan failed to reconcile TPH's 2017 *presentation* to the Silver Run II Board of Directors ("SRII Board")—*not* TPH's later *deposition testimony*.  *See* Fiebig Rpt. ¶¶ 55-57; Ex. 1 (Fiebig Dep.) at 153:7-9.  Class Plaintiffs' argument only further exposes a basic fallacy underpinning their Motion: that a deposition is a memory test.  Class Plaintiffs (and Regan) point to a 2017 email showing certain well results (ECF No. 535-7 (CP-818) at -993 (cited in Regan Rpt. ¶ 57 & n.87)), and claim that TPH's deposition shows that these well results were not provided to TPH (thus purportedly undermining TPH's analysis).  Mot. at 10-11 & n.4.  But what the TPH witness actually said, sitting in his deposition years later, is:  "I don't recall seeing this." Ex. 3 (Knupp Dep. (TPH 30(b)(6))) at 167:25.  If Class Plaintiffs or Regan had bothered to look at the TPH presentation to the SRII Board—Fiebig's exact criticism—they would have realized that TPH had all the well result data in the specific email (CP-818) and more. *Compare* ECF No. 535-7 (CP-818) at -993 (showing results for East Hennessy Unit [EHU], Bullis-Coleman, Lincoln North Unit [LNU], Borreli, Borreli & Dodd [BB&D], and Oswald wells), *with* Ex. 4 (June 2, 2017 presentation from TPH) (DEF-36) at -165-70 (slides showing well performance results).

In sum, Class Plaintiffs' criticisms are wrong but, in any event, are issues reserved for the jury to resolve.  *See Fazzino v. Roe*, 2021 WL 7287311, at *3 (W.D. Tex. Aug. 20, 2021) ("alleged gaps [in methodology or reasoning] may go to the weight of an expert's testimony but not to its admissibility"); *see also Briley v. Wal-Mart Stores, Inc.*, 2018 WL

276368, at *7 (S.D. Tex. Jan. 3, 2018) ("quibbles with [] methodology go to the weight the jury might afford to [the expert's] testimony, and not to its admissibility").

**C.     Fiebig's (And His Team's) Review Was Sufficient And Included All Documents Cited In (And Considered For) The Regan Report**

Class Plaintiffs' final criticism—that Fiebig did not review sufficient information and relied on a team of experienced CPAs—fares no better.  In forming his rebuttal opinions, Fiebig reviewed all the documents discussed in the main text and footnotes of Regan's report, Ex. 1 (Fiebig Dep.) at 45:12-13, examined additional documents that Regan omitted from his discussion, *id.* at 45:15, and directed and supervised a team of experienced CPAs who thoroughly reviewed the complete list of documents Regan considered, *id.* at 45:13-18.  Fiebig's approach was not only appropriate, but also comprehensive.

To start, Class Plaintiffs' attack on the well-established practice of using one or more assistants to aid in formulating an expert report or opinion is misguided.  *See Port of Hous. Auth. of Harris Cnty. Tex. v. Louis Dreyfus Co. Hous. Exp. Elevator, LLC*, 2022 WL 3446129, at *3 (S.D. Tex. Aug. 17, 2022), *appeal filed*, (holding that expert's "testimony was reliable since he le[d] the team and reviewed the subcontractors' work"); *see also In re M/V MSC Flaminia*, 2017 WL 3208598, at *6 (S.D.N.Y. July 28, 2017) (observing "[a]n expert witness is permitted to use assistants in formulating his expert opinion") (quoting *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002)).  And by raising this argument, Class Plaintiffs have created a paradox for themselves, since their own accounting expert utilized four assistants in reviewing documents and drafting his

expert report, including his own son and a "summer intern."  *See* Ex. 5 (Regan Dep.) at

45:23-46:6 (discussing the work of his four assistants); *see also id.* at 43:18-22 ("I worked

on drafting the report with others in – actually with Greg Regan.  Greg Regan and I drafted

the report.  Q. Any relation?  A. He's my son"), *id.* at 48:4-10 ("Q.  Did you personally

review the plaintiffs' responses to the defendants' requests for admission?  A.  In my

discussions with Greg, I have a recollection of discussing requests for admissions and

responses.  So I have a recollection that I became aware of responses to certain of the

requests").

Class Plaintiffs had the opportunity, and did in fact, inquire about Fiebig's

supervision of his team.  Class Plaintiffs raise zero non-conclusory issues with Fiebig's

testimony that Cornerstone properly acted under his direction and supervision.  *See, e.g.*,

Ex. 1 (Fiebig Dep.) at 22:20-24:10, 45:12-18; *see also Dura*, 285 F.3d at 612–13 ("An

expert witness is permitted to use assistants in formulating his expert opinion … and the

expert witness can be asked at his deposition whether he supervised them carefully and

whether his relying on their assistance was standard practice in his field.").  Lacking any

allegations that the experienced CPAs he worked with "exercise[d] professional judgment

that is beyond the expert's ken," this argument fails.  *See Dura*, 285 F.3d at 613.[4]

---

[4] None of the three authorities Class Plaintiffs cite support the proposition that an expert cannot use experienced support in the review and drafting process.  Mot. at 11-12.  *See Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515-17 (5th Cir. 2013) (saying nothing regarding use of support staff); *see also Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming exclusion of expert who predicated her opinion on the flawed analysis of a different expert analysis); *Muñoz v. Orr*, 200 F.3d 291, 301-02 (5th

Next, Class Plaintiffs argue that Fiebig's testimony should be excluded because he relied on "erroneous" or "insufficient" information. Mot. at 13. However, the Motion contains no examples or evidence giving any hint that Fiebig received or relied on "erroneous" information. Class Plaintiffs' arguments fail for the additional reason that Fiebig's review encompassed all key documents necessary to form a sufficient rebuttal opinion. Indeed, the Motion itself concedes this fact. Mot. at 12 (acknowledging that Fiebig personally reviewed all documents cited in the body of Regan's report and that he or his team reviewed all documents in Regan's materials considered list); *see also In re M/V MSC Flaminia*, 2017 WL 3208598, at *6 ("[a]n expert witness is permitted to use assistants in formulating his expert opinion").[5]

Finally, the Motion identifies four documents that Class Plaintiffs assert serve as examples of Fiebig's "faulty understanding of the critical underlying facts." Mot. at 13-18. That assertion misses the mark.[6] To start, only one was even cited by Regan in the

---

Cir. 2000) (affirming exclusion of plaintiffs' expert who relied on counsel's compilation of data and failed to consider other variables).

[5] Class Plaintiffs also overstate the number of documents that Regan considered as more than 140 of the documents listed are simply duplicates of others on his list. *See* Regan Rpt. App'x B.

[6] The examples cited in the Motion are addressed, either directly or indirectly, through the opinions of oil and gas experts Edward Fetkovich and Robert Rasor which show that Alta Mesa's efforts and original base case assumptions were reasonable. *See also, e.g.*, ECF No. 523 at 3-9. Moreover, none of the case law cited on this point offers *any* support for Class Plaintiffs' position. For example, Class Plaintiffs cite to *Nikolva* for the premise that Fiebig should be excluded for failing to "review the deposition of the decisionmaker in this case." Mot. at 13. To begin, the CPAs working at Fiebig's direction reviewed the transcript. Moreover, Ryder Scott was a third-party petroleum auditor, not a "decisionmaker" at Alta Mesa. This case is completely unlike the situation in *Nikolova*,

body of his report, CP-815.  But Class Plaintiffs omit that CP-815 (bearing Bates number RIVERSTONE_SDTX00255190) is listed on Fiebig's documents considered list.  *See* Fiebig Rpt. App'x A at 7; *see also* ECF No. 535-13 (CP-815).  The Motion claims that "[Fiebig] admits that he ***never*** reviewed CP-815."  Mot. at 16 (emphasis in original).  But that is simply not true.  Fiebig did not recall, in the moment of his deposition, reviewing CP-815 among the many documents he reviewed.  *See* Ex. 1 (Fiebig Dep.) at 61:5-8 ("let me ask you if you have seen this document before, Mr. Fiebig. (Exhibit 815 marked.) … [A.] Not that I recall"); *see also id.* at 68:10-12.[7]  But Fiebig was unequivocal and certain in his testimony that he reviewed every document cited in the main body of the Regan report, which includes CP-815.  Ex. 1 (Fiebig Dep.) at 45:12-13.  His report, the documents he considered in drafting that report, and the entirety of his testimony demonstrates that he did in fact review the document, *see* Fiebig Rpt. App'x A at 7; Ex. 1 (Fiebig Dep.) at 45:12-13 ("I have reviewed all of the documents that [Regan] cited to"), *id.* at 26:16-17 (similar). Class Plaintiffs tellingly offer no explanation of why the remaining three supposedly critical documents, including their supposed "major example," Mot. at 13, of the testimony of Ryder Scott's representative, were absent from the body and the footnotes of Regan's report.

---

where the expert failed to review the deposition testimony of the Dean of the School of Engineering with respect to a promotion decision within the School of Engineering.  *See Nikolova v. Univ. of Tex. at Austin*, 585 F. Supp. 3d 936, 946 (W.D. Tex. 2022).

[7] Defendants acknowledge that Fiebig misspoke when he agreed with Class Plaintiffs' counsel that he had not reviewed CP-815; however, in the context of his overall testimony cited above and Fiebig's report, it is evident that Fiebig meant, as he had previously testified (Ex. 1 (Fiebig Dep.) at 61:5-8), that he did not recall seeing the document.

In sum, Fiebig performed a fulsome and sufficient analysis of what Regan *discussed* and *referenced* in his report plus others that he identified via his own review, and his team considered all of the documents that Regan's team considered.  Class Plaintiffs are free to cross examine Fiebig about what he and his team did and did not review, but it is no basis for exclusion.  *See Dura*, 285 F.3d at 612-13.

## CONCLUSION

For the reasons described above, Defendants respectfully request that the Court deny Class Plaintiffs' Corrected Motion to Exclude the Testimony of John Fiebig.

Dated: January 19, 2024

Respectfully submitted,

By  /s/  *J. Christian Word*

> J. Christian Word
> Attorney-in-Charge for Defendants
> D.C. Bar No. 461346
> S.D. Tex. Bar No. 3398485
> **LATHAM & WATKINS LLP**
> 555 Eleventh Street, NW
> Suite 1000
> Washington DC 20004
> Tel: (202) 637-2200
> Fax: (202) 637-2201
> Christian.Word@lw.com
>
> Of Counsel:
> Heather A. Waller
> IL Bar No. 6302537
> S.D. Tex. Bar No. 2886108
> **LATHAM & WATKINS LLP**
> 330 North Wabash Avenue, Suite 2800
> Chicago, IL 60611

Tel: (312) 876-7700
Fax: (312) 993-9767
Heather.Waller@lw.com

Stephen T. Nasko (*pro hac vice*)
D.C. Bar No. 1779366
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Stephen.Nasko@lw.com

*Counsel for Defendants Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Stephen S. Coats; Michael E. Ellis; William D. Gutermuth; James T. Hackett; Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700

17

kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
jschreiber@winston.com

*Co-Counsel for Defendants Harlan H.*
*Chappelle and Michael E. Ellis*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on January 19, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ J. Christian Word*             
J. Christian Word
