# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| | Case No. 4:19-cv-00957 |
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Judge George C. Hanks, Jr. |

**DEFENDANTS'[1] OPPOSITION TO CLASS PLAINTIFFS' MOTION TO EXCLUDE CHARLES WHITEHEAD'S OPINION NO. 1**

---

[1] Alta Mesa Resources, Inc. ("AMR"), Riverstone Holdings, LLC, Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald J. Smith, Jeffrey H. Tepper, Thomas J. Walker, and Diana J. Walters.

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDING ...................................................................... 1

STATEMENT OF THE ISSUES ...................................................................................... 1

SUMMARY OF ARGUMENT .......................................................................................... 1

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT ................................................................................................................... 3

    A.    WHITEHEAD'S OPINION THAT SRII'S INCLUSION OF AMH'S AND KFM'S PROJECTIONS IN THE PROXY FOLLOWS CUSTOM AND PRACTICE IS RELEVANT .............................................. 3

    B.    WHITEHEAD'S PROJECTION TESTIMONY IS BASED ON RELIABLE METHODOLOGY .................................................... 6

    C.    PROFESSOR WHITEHEAD'S OPINION NO. 1 PERMISSIBLY ASSUMES THE DISCLOSURES ARE ACCURATE FOR PURPOSES OF THIS ANALYSIS .......................................................... 14

CONCLUSION .............................................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*America Can! v. Arch Ins. Co.*,
  597 F. Supp. 3d 1038 (N.D. Tex. 2022) ................................................................... 8, 9

*Baker v. S/S Cristobal*,
  488 F.2d 331 (5th Cir. 1974) ...................................................................... 4

*Bocanegra v. Vicmar Servs. Inc.*,
  320 F.3d 581 (5th Cir. 2003) ...................................................................... 3

*Brumley v. Pfizer, Inc.*,
  200 F.R.D. 596 (S.D. Tex. 2001) ................................................................ 9

*Castellow v. Chevron USA*,
  97 F. Supp. 2d 780 (S.D. Tex. 2000) ..................................................... 8, 10

*Clingman & Hanger Mgmt. Assocs., LLC v. Knobel*,
  2018 WL 11459532 (S.D. Fla. May 8, 2018) ................................................ 5

*Cromwell v. Wal-Mart Stores, Inc.*,
  2002 WL 1973906 (5th Cir. Aug. 9, 2002) ........................................... 10, 15

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993) ........................................................................ 5, 8, 11

*Johnson v. State Farm Lloyds*,
  2022 WL 16901977 (N.D. Tex. Oct. 12, 2022) .......................................... 11

*Karp v. First Conn. Bancorp, Inc.*,
  535 F. Supp. 3d 458 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) ..................... 4

*Kelley v. Am. Heyer-Schulte Corp.*,
  957 F. Supp. 873 (W.D. Tex. 1997) ............................................................. 9

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ...................................................................................... 8

*Maiden Biosciences, Inc. v. Doc. Sec. Sys.*,
  2022 WL 16964752 (N.D. Tex. Nov. 16, 2022) ........................................ 10

*United States ex rel. Mitchell v. CIT Bank, N.A.,*
    2022 WL 1233651 (E.D. Tex. Apr. 26, 2022) ............................................................ 14

*Moore v. Int'l Paint, LLC,*
    547 F. App'x 513 (5th Cir. 2013) .................................................................... 10, 15

*Nkansah v. Martinez,*
    2017 WL 2798520 (M.D. La. 2017) ........................................................................ 15

*Nova Consulting Grp. v. End'g Consulting Servs.,*
    290 F. App'x. 727 (5th Cir. 2008) ......................................................................... 14

*Om Sai Ram Hosp. LLC v. Amguard Ins. Co.,*
    2023 WL 5670647 (W.D. La. July 27, 2023) ......................................................... 10

*Saint Lawrence Commc'ns LLC v. ZTE Corp.,*
    2017 WL 679623 (E.D. Tex. Feb. 21, 2017) ......................................................... 10

*SEC v. Shanahan,*
    646 F.3d 536 (8th Cir. 2011) ...................................................................................... 4

*United States v. Simmons,*
    470 F.3d 1115 (5th Cir. 2002) .................................................................................... 9

*YETI Coolers, LLC v. RTIC Coolers, LLC,*
    2017 WL 429208 (W.D. Tex. Jan. 28, 2017) .......................................................... 3

## RULES

Fed. R. Evid. 702 ............................................................................................................. 8

Fed. R. Evid. 702(a) .................................................................................................... 3, 5

Fed. R. Evid. 702(c) ....................................................................................................... 3

## OTHER AUTHORITIES

Adam B. Badawi & Elisabeth de Fontenay, *Is There a First-Drafter*
    *Advantage in M&A?*, 107 CAL. L. REV. 1119 (2019) .......................................... 8

Adam B. Badawi, Matthew B. Cain & Steven Davidoff Solomon, Does
    Voluntary Financial Disclosure Matter?  The Case of Fairness Opinions
    in M&A (Univ. of Cal. Berkely Sch. of L., Oct. 19, 2022),
    https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4252984
    (documents the disclosure rates of fairness opinion details by targets of
    over 900 tender offers between 1995 and 2019) ..................................................... 8

Dean Kingsley, Matt Solomon & Kristen Jaconi, *SEC Risk Factor Disclosure Analysis*, Har. L. Sch. F. on Corp. Governance (Dec. 3, 2023), https://corpgov.law.harvard.edu/2023/12/03/sec-risk-factors-disclosure-analysis/ ........................................................................................ 11

Guhan Subramanian, *Post-Siliconix Freeze-outs: Theory and Evidence*, 36 J. OF LEGAL STUDIES 1 (2007) ...................................................................... 7

Karen K. Nelson & Adam C. Pritchard, *Carrot or Stick? The Shift from Voluntary to Mandatory Disclosure of Risk Factors*, 13 J. OF EMPIRICAL LEGAL STUDIES 266 (2016) ............................................................................ 7

Matteo Tonello, *CEO Succession Practices in the Russell 3000 and S&P 500*, Har. L. Sch. F. on Corp. Governance (Sept. 19, 2023), https://corpgov.law.harvard.edu/2023/09/19/ceo-succession-practices-in-the-russell-3000-and-sp-500-2/. ............................................................ 11

Matthew B. Cain et al., *The Shifting Tides of Merger Litigation*, 71 VAND. L. REV. 603 (2018) .................................................................................... 7

## NATURE AND STAGE OF PROCEEDING

This is a securities class action, and the parties have completed fact and expert discovery. Class Plaintiffs moved to exclude only Opinion No. 1 of Defendants' expert Professor Charles Whitehead ("Whitehead"). Defendants oppose Class Plaintiffs' Motion to Exclude Charles Whitehead's Opinion No. 1, ECF No. 519 (the "Motion" or "Mot.").

## STATEMENT OF THE ISSUES

Whether Whitehead's empirical analysis demonstrating the custom and practice of SPACs disclosing target-prepared projections accompanied by cautionary language in proxy statements and the Proxy Defendants' compliance with that custom and practice with respect to the SRII Proxy is admissible because it is relevant and reliable.

## SUMMARY OF ARGUMENT

Class Plaintiffs' Section 14(a) claims required them to prove that the Proxy Defendants negligently made false and/or misleading statements in SRII's Proxy Statement. Because the jury must evaluate the Proxy Defendants' conduct against the how a reasonable director would have acted in a similar situation, Proxy Defendants took the routine step of retaining a corporate governance expert, Professor Charles Whitehead, to provide evidence on the custom and practice of directors of public companies.[2] Class Plaintiffs have not moved to exclude the overwhelming majority of Whitehead's testimony about industry norms and Defendants' compliance with those norms. Rather, their motion

---

[2] Whitehead also provides testimony supporting the Alta Mesa Directors' good faith defense to Class Plaintiffs' Section 20(a) claims and refuting Class Plaintiffs' attempt to prove they committed fraud under Section 10(b).

addresses solely Whitehead's opinion that it is the custom and practice in the SPAC industry to disclose financial projections prepared by the target company in the SPAC proxy statement and this is what the Proxy Defendants did in this case. The Class Plaintiffs make three arguments why the jury should not hear this testimony but none of them is a proper basis for exclusion.

First, Class Plaintiffs wrongly contend that this evidence is irrelevant to the elements of their claim. That is obviously incorrect since they must prove negligence and evidence of custom and practice is pertinent to the jury's determination of whether the Proxy Defendants were negligent in including the projections in the Proxy.

Second, Class Plaintiffs' attack on the reliability of Whitehead's analysis by mechanically marching through *Daubert*'s factors is inapt since Whitehead is employing the "soft sciences" and relying on his personal experiences with public companies, board of directors, business combinations, and SEC filings. Courts routinely recognize that the *Daubert* factors may not be an appropriate measure of reliability in such cases. In any event, to the extent these factors can be applied to Whitehead's analysis they only confirm its reliability.

Finally, Class Plaintiffs' disagreement with Whitehead's assumption that the statements about who prepared the projections in Proxy and the other SEC filings are true is not a basis to exclude an expert. Indeed, the Fifth Circuit has repeatedly acknowledged that experts are entitled to make assumptions in forming their opinions. The proper forum for Class Plaintiffs to challenge that assumption is in cross-examination. Moreover, the assumption is irrelevant to Whitehead's testimony since he is not offering an opinion that

any statement was true or false, but that the statements in the Proxy follow custom and practice.

For these reasons, Class Plaintiffs' motion should be denied.

## LEGAL STANDARD

Expert opinion is admissible if it is "the product of reliable principles and methods" and "will [help] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a), (c); *Bocanegra v. Vicmar Servs. Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) ("[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant … but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.").[3] "The Court's role is not to decide whether an expert's opinion is correct, but is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 429208, at *3 (W.D. Tex. Jan. 28, 2017).

## ARGUMENT

### A. WHITEHEAD'S OPINION THAT SRII'S INCLUSION OF AMH'S AND KFM'S PROJECTIONS IN THE PROXY FOLLOWS CUSTOM AND PRACTICE IS RELEVANT

Class Plaintiffs' Section 14(a) claims require them to prove, among other things, that each of the Proxy Defendants negligently disclosed false or misleading financial projections for AMH and KFM in the Proxy. Order, ECF No. 90. Under the Exchange

---

[3] Internal quotation marks, emphasis and citations are omitted unless otherwise noted.

Act, negligence means the "failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances." *Karp v. First Conn. Bancorp, Inc.*, 535 F. Supp. 3d 458, 473 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023). Factual evidence is required to establish this standard of care, because without it "the jury could only speculate as to whether" the Proxy Defendants "failed to exercise reasonable care." *SEC v. Shanahan*, 646 F.3d 536, 547 (8th Cir. 2011). Enter Professor Whitehead.

The Proxy Defendants intend to offer expert testimony from Whitehead demonstrating that their conduct in preparing the Proxy and their due diligence followed the custom and practice of directors of public companies, which is evidence that the Proxy Defendants acted with due care. *Baker v. S/S Cristobal*, 488 F.2d 331, 333 (5th Cir. 1974) ("[C]ompliance with the customs and practices of an industry is not in itself due care, but it is evidence of due care."); *Karp*, 535 F. Supp. 3d at 474. One specific aspect of Whitehead's testimony will focus on how often SPACs disclose projections prepared by the target company (as opposed to projections prepared by the SPAC) (the "Projections Testimony").

Whitehead surveyed every proxy (and registration statement) filed with the SEC by a SPAC that completed a de-SPAC transaction during the period January 1, 2016, and December 31, 2020, to evaluate the custom and practice for using target-prepared projections. ECF No. 519-2 (Whitehead Rpt.) ¶¶ 37-53. Whitehead found that 80% of the sample SPACs included financial projections in their proxy statements and that 84% of those SPACs "included financial projections that were prepared by the target company rather than the SPAC or the sponsor." *Id.* ¶¶ 47(1), 49-51, 187-188. Whitehead also found

that nearly every SPAC proxy statement including target-prepared projections also included cautionary language warning stockholders about the risks inherent in the projections. *Id.* ¶¶ 47(2), 53, 189. Based on this empirical analysis, Whitehead concluded that the Proxy Defendants' disclosure of AMH's and KFM's financial projections in the Proxy followed custom and practice. *Id.* ¶¶ 186, 190. Thus, Whitehead's Projections Testimony is relevant in that it will help the jury determine the applicable standard of care and that the Proxy Defendants were not negligent in disclosing these projections. Fed. R. Evid. 702(a) advisory committee's note to 2023 Amendments (expert testimony is relevant if it will assist "the trier of fact to understand the evidence or to determine a fact in issue"); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993) (same); *Clingman & Hanger Mgmt. Assocs., LLC v. Knobel*, 2018 WL 11459532, at *8 (S.D. Fla. May 8, 2018) ("[Expert] may permissibly testify regarding whether certain conduct is consistent with industry custom and practices").

Class Plaintiffs argue that Whitehead's Projections Testimony is irrelevant because "what other companies said in SEC filings … about the preparation of their financial projections has no bearing on the question of whether the Proxy projections in this case were prepared by AMH and KFM." Mot. at 3, 6.[4] This argument itself is irrelevant

---

[4] Plaintiffs do not allege that the Proxy misrepresented that AMH and KFM prepared the financial projections. Rather, Plaintiffs' Section 14(a) claim allege the projections in the Proxy were themselves false and misleading and the Proxy Defendants negligently disclosed them. *See, e.g.*, Third Am. Compl., ECF No. 218 ("TAC") ¶¶ 289-292 (alleging projections were misleading because of "improperly curved vertical bores" and "erroneous assumptions").

5

because, as explained above, this is not Whitehead's contention.[5]  Rather, the import of what "other companies said" is in demonstrating that the inclusion of the AMH and KFM Projections in the Proxy followed industry norms.[6]  Unless Class Plaintiffs intend to admit the Proxy Defendants acted in line with SPAC custom and practice, the Projection Testimony is obviously necessary to the Proxy Defendants' defense and the jury's determination that they were not negligent.

### B.   WHITEHEAD'S PROJECTION TESTIMONY IS BASED ON RELIABLE METHODOLOGY

Whitehead's remarkably straightforward and sound process for reaching his opinion about SPACs' custom and practice of disclosing target-prepared projections is based on his undisputed expertise related to public companies' SEC filings, how projections are normally prepared in connection with business combinations, and boards of directors' processes.  He surveyed every proxy and registration statement filed with the SEC by a SPAC that completed a de-SPAC transaction during the period January 1, 2016, and December 31, 2020, thus there can be no question that the data set is skewed.  ECF No.

---

[5] Failing to cite a single decision analogous to the facts of this case to support the assertion that Whitehead's opinion is irrelevant, Class Plaintiffs unremarkably rely on *Kumho* for its general rule that expert testimony must be relevant.  Mot. at 6 (quoting *Kumho*, 526 U.S. at 152).

[6] *See, e.g.*, Ex. 1 (Whitehead Dep.) at 83:25-84:11 ("Q.  Yes.  I said, isn't that the factual question that you're dealing with is whether or not the financial projections contained in the proxy in this case were prepared solely by the targets?" "A.  So, again, I think the opinion on this speaks for itself.  It's pretty clear.  Right?  The factual question is whether or not the use of the target prepared financial projections in the proxy was consistent with custom and practice, again, as evidenced by the empirical analysis.  So that is what the opinion speaks to and that's what I'm opining on.").

519-2 (Whitehead Rpt.) ¶¶ 37-53.  Whitehead then recorded (1) whether these SEC filings

included financial projections, (2) for those companies that included financial projections,

whether those projections were disclosed as prepared by the target (and not by or in

collaboration with the SPAC or the sponsor), and (3) whether the financial projections were

accompanied by cautionary statements.  *Id.*  This analysis can be easily replicated by Class

Counsel (indeed their expert has done so, albeit only to a limited extent).  *See* ECF No.

519-3 (Badawi Supp. Rpt.) at 17 n.55 ("Given the length of these disclosures and time

constraints, this review cannot claim to be exhaustive."); Ex. 2 (Badawi Dep.) at 95:15-18

("With respect to the custom and practice, have you reviewed all the SPAC proxy

statements referred to in Professor Whitehead's report?  A. I have not.").  Armed with this

empirical data, Whitehead was able to reliably conclude that the vast majority of SPACs

in his data set disclosed target-prepared projections.

This type of analysis is completely uncontroversial in academia.[7]  Class Plaintiffs'

corporate governance expert, Professor Adam Badawi, has himself relied on this method

---

[7] *See, e.g.*, Guhan Subramanian, *Post-Siliconix Freeze-outs: Theory and Evidence*, 36 J. OF
LEGAL STUDIES 1 (2007) (presents empirical evidence on post-Siliconix freeze-outs using
a sample of 76 freeze-outs that were announced in the current doctrinal regime.  For each
transaction, author reviewed SEC filings by the controller and the target company
(primarily 8-K, 14D-9, 13E-3, 13D, and 14A filings), news reports, and company press
releases to collect data on the bargaining process); Matthew B. Cain et al., *The Shifting
Tides of Merger Litigation*, 71 VAND. L. REV. 603, 603-640 (2018) (examines impact of
changes to Delaware laws regarding merger litigation by reviewing by hand merger proxy
statements and other tender documents filed with the SEC for a sample of transactions to
determine if litigation is brought with respect to the transaction.); Karen K. Nelson & Adam
C. Pritchard, *Carrot or Stick?  The Shift from Voluntary to Mandatory Disclosure of Risk
Factors*, 13 J. OF EMPIRICAL LEGAL STUDIES 266, 266-297 (2016).

in numerous published works but did not perform any such analysis here.[8]   Seeking to create controversy where none exists, Class Plaintiffs advocate for a rigid application of the four *Daubert* factors to Whitehead's uncontroversial method.   *See* Mot. at 4-5 (listing (1) testability; (2) known or potential rate of error; (3) peer review and publication; (4) and general acceptance).   The *Daubert* factors are not "a definitive checklist, but comprise a non-exclusive, flexible test to ascertain the validity or reliability of the methodology that the expert employed."   *Castellow v. Chevron USA*, 97 F. Supp. 2d 780, 784 (S.D. Tex. 2000); *Daubert*, 509 U.S. at 593 ("Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test.").   In fact, the Supreme Court cautioned in *Kumho Tire Co. v. Carmichael*, "the factors [identified] in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." 526 U.S. 137, 150 (1999).   *See also America Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1048 (N.D. Tex. 2022).   "Some types of expert testimony will not rely on anything like a scientific method."   Fed. R. Evid. 702 Advisory Committee Note (2000).   That is certainly the case with respect to Whitehead's Projections Testimony since it is based on his personal experience and a survey of SEC

---

[8] *See, e.g.*, Adam B. Badawi & Elisabeth de Fontenay, *Is There a First-Drafter Advantage in M&A?*, 107 CAL. L. REV. 1119, 1119-1172 (2019) (analyzes a sample of public company M&A transactions and codes information from target company's merger proxy statement by hand); Adam B. Badawi,, Matthew B. Cain & Steven Davidoff Solomon, Does Voluntary Financial Disclosure Matter?  The Case of Fairness Opinions in M&A (Univ. of Cal. Berkely Sch. of L., Oct. 19, 2022), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4252984 (documents the disclosure rates of fairness opinion details by targets of over 900 tender offers between 1995 and 2019).

8

filings, that does not involve the hard-sciences.  *See, e.g.*, *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2002) (with "'soft' sciences," "other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observation."); *America Can!*, 597 F. Supp. 3d at 1048-49 ("When assessing the reliability of non-scientific testimony, courts consider other factors including whether the expert has sufficient personal knowledge, work experience, or training to support the opinions offered.").

Here, Whitehead is relying on his immense hands-on experience with public companies, business combinations, SEC filings, and customary academic research methods to evaluate SPAC custom and practice.  Plaintiffs offer no legitimate basis to question the reliability of his work.  In particular, even if rigidly applied to Whitehead's Projections Testimony, the *Daubert* factors do not militate in favor of excluding his testimony:

*Testability.*[9]  Whitehead's method obviously can be tested as Class Plaintiffs' expert did so.  He read some of the SEC filings and identified some on which he and Whitehead disagreed.  ECF No. 519-3 (Badawi Supp. Rpt.) at 17-19.  Class Plaintiffs however contend based on a novel interpretation of the "testability" requirement that Whitehead was obligated to "contact[] those companies and ask[] about the accuracy of their disclosures."

---

[9] Class Plaintiffs' cited cases for the general proposition that an expert's testimony must be testable under *Daubert* are not instructive as both involve experts applying the hard sciences.  Mot. at 7 (citing *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 602 (S.D. Tex. 2001); *Kelley v. Am.  Heyer-Schulte Corp.*, 957 F. Supp. 873, 876 (W.D. Tex. 1997)).

Mot. at 7.[10]  This argument does not find support in any reported decision we are aware of,

nor have Class Plaintiffs offered any evidence that it is common for corporate governance

experts to do so in connection with evaluating SEC filings.  Whitehead made a perfectly

reasonable assumption that the SPAC statements were truthful.  *Cromwell v. Wal-Mart

Stores, Inc.*, 2002 WL 1973906, at *2 (5th Cir. Aug. 9, 2002) ("[E]xperts are permitted to

assume the underlying facts that form the basis for their opinions."); *Moore v. Int'l Paint,

LLC*, 547 F. App'x 513, 516 (5th Cir. 2013) ("[R]eliable expert testimony often involves

estimation and reasonable inferences from a sometimes incomplete record.").  Indeed,

Badawi testified that he too would expect statements in SEC filings to be accurate since

false statements can subject the makers to personal liability under the Exchange Act.  Ex.

2 (Badawi Dep.) at 51:10-53:24.  Class Plaintiffs can challenge Whitehead's assumption,

but their mere desire to do so is not a basis to exclude him.[11]  *See also infra* Part C.

*Peer Review and Publication.*  Class Plaintiffs assert that Whitehead's methodology

(using personal experience in analyzing SEC filings to evaluate disclosures) has not been

---

[10] Class Plaintiffs overstate the holding in *Castellow*, claiming a methodology must be invalid "if the veracity of the factual data is questioned." Mot. at 8 (citing *Castellow*, 97 F. Supp. 2d at 791). But in *Castellow*, the expert initially relied on testimony that was later recanted. 97 F. Supp. 2d at 788. Here, there is no evidence that any of the statements in the SPAC filings was false, much less an admission of falsity.

[11] *See Om Sai Ram Hosp. LLC v. Amguard Ins. Co.*, 2023 WL 5670647, at *2 (W.D. La. July 27, 2023) ("Challenges to the inputs used by an expert rather than his methodology are fodder for cross-examination instead of grounds for exclusion."); *Maiden Biosciences, Inc. v. Doc. Sec. Sys.*, 2022 WL 16964752, at *4 (N.D. Tex. Nov. 16, 2022) ("[A]n expert's opinions are not inadmissible simply because an underlying assumption may be contestable."); *Saint Lawrence Commc'ns LLC v. ZTE Corp.*, 2017 WL 679623, at *2 (E.D. Tex. Feb. 21, 2017) (holding that a challenge to expert's disclosed inputs, and not to his methodology, is not a basis to exclude and is the subject of cross-examination).

"published in any academic article[s] (or otherwise)." Mot. at 9. This is wildly incorrect. One need only peruse the Harvard Law School Forum on Corporate Governance to quickly find dozens of articles and papers doing exactly what Whitehead did. For example, an article analyzing risk factor disclosures in the SEC filings of S&P 500 companies was published just last month.[12] Plaintiffs also ignore that their expert Badawi has published articles that employ a similar methodology in peer-reviewed journals[13] and even relies on others in his report.[14] Academic research based on public companies' SEC filings is common-place.

*Known or Potential Rate of Error.* Since Whitehead is not employing a "scientific technique," "the known or potential rate of error" factor is not really applicable. *Daubert*, 509 U.S. at 594; *see also Johnson v. State Farm Lloyds*, 2022 WL 16901977, at *2 (N.D. Tex. Oct. 12, 2022) ("In cases involving nonscientific methodology and experiential knowledge, a strict application of the Daubert factors can lead to the exclusion of reliable

---

[12] Dean Kingsley, Matt Solomon & Kristen Jaconi, *SEC Risk Factor Disclosure Analysis*, Har. L. Sch. F. on Corp. Governance (Dec. 3, 2023), https://corpgov.law.harvard.edu/2023/12/03/sec-risk-factors-disclosure-analysis/; *see also* Matteo Tonello, *CEO Succession Practices in the Russell 3000 and S&P 500,* Har. L. Sch. F. on Corp. Governance (Sept. 19, 2023), https://corpgov.law.harvard.edu/2023/09/19/ceo-succession-practices-in-the-russell-3000-and-sp-500-2/.

[13] *See supra* note 7.

[14] *See, e.g.*, ECF No. 519-3 (Badawi Supp. Rpt.) at 9 n.19 (citing Felix Z. Feng et al., The Incentives of SPAC Sponsors at 23 (Working Paper, Jan. 31, 2023), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4069007 ("[W]e gather information about SPAC IPOs from the registration statement, the prospectus, and any Form 8-K filed shortly after the IPO. These include information on the size of the offering, the exercise (or not) of the over-allotment option, the structure of a SPAC unit, the nature and amount of external capital that enhances the cash raised in the IPO, the identities of the sponsor and other SPAC participants, the geographic or sector focus of the search for a target, etc.").

expert testimony merely based on an absence of the scientific method."). But Plaintiffs are wrong that it is "impossible to assess" whether Whitehead misread any SEC filings or incorrectly tabulated the results. One would simply read the same documents and compare the results to Whitehead's. Indeed, Plaintiffs note that Badawi did this to a limited extent and identified 8 instances in which he disagreed with Whitehead and Plaintiffs identified another 6. Mot. at 10-12. Thus, Plaintiffs cannot truly claim it is impossible to evaluate Whitehead's method for mistakes.

Moreover, these so-called errors are really just disagreements over how to read a particular filing. For example, seven of the errors identified by Badawi are instances in which the SPAC disclosed target-prepared financial projections, ***in addition*** to other financial projections that were not target-prepared, which Whitehead noted in his report.[15] ECF No. 519-2 (Whitehead Rpt.) ¶ 53 n.81. The eighth claimed error relates to the Monocle SPAC and Whitehead's reliance on the statement that "the following financial projected information was prepared by AerSale [the target]." Ex. 8 (Monocle Acquisition

---

[15] *Compare* ECF No. 519-5 at 149, *with* Ex. 3 at 147-148 (CF Corporation/FGL 2017 Form Schedule 14A). *Compare* ECF No. 519-6 at 177-78, *with* Ex. 4 at 174-77 (GoresI/Hostess Brands 2016 Form Schedule 14A). *Compare* ECF No. 519-7 at 154, *with* Ex. 5 at 151-154 (M III Acquisition Corp./IEA 2018 Form Schedule 14A). *Compare* ECF No. 519-9 at 170, *with* Ex. 6 at 171 (Gores III/PAE 2020 Form Schedule 14A) (disclosing a second set of projections prepared by the target). *See* ECF No. 519-10 at 75 ("The following table summarizes the Computex Projections provided to Pensare by Computex"); ECF No. 519-11 at 176 ("A summary of the two-year internal consolidated financial forecast information regarding Daseke's anticipated future operations … provided by Daseke management to Hennessy Capital is as follows"). *Compare* ECF No. 519-12 at 150, *with* Ex. 7 at 141, 152 (Industrea Acquisition Corp./CPH 2018 Form Schedule 14A) (disclosing "Updated CPH Projections" prepared by the target).

Corp. Form Schedule 14A) at 140.  Badawi believes other statements in the proxy show this statement to be false, while Whitehead does not based on his experience with how projections are normally prepared.  As for four of the errors identified by Class Plaintiffs, none of these are actually errors but are rather Class Plaintiffs misreading the section of the SEC filing disclosing projections or cherry-picking quotations from other sections of the filing.[16]  With respect to the remaining two purported errors, the first is a case of Class Plaintiffs overlooking the financial projection disclosures in one filing. Ex. 12 (Clarivate Analytics Plc, Amendment No. 4 to Form F-4) at 87 (Churchill Capital Corp., the SPAC, disclosing projections prepared by Clarivate, the target).  And the final "error" is that Whitehead's report omitted the relevant SEC filing from its materials considered list, even though the report cites the filing in the note to Figure 3 (and plainly states that the target prepared the projections).  Ex. 13 (The Simply Good Foods Company/Conyers Park Amendment No. 3 to Form S-4) at 90 (Conyers Park, the SPAC, disclosing projections prepared by Atkins, the target); *see also* ECF No. 519-2 (Whitehead Rpt.) at 24 fig. 3; *id.* at App. C.  In sum, Plaintiffs have tried to test Whitehead's methodology and have

---

[16] *Compare* ECF No. 519-13 at 65, *with* Ex. 9 (Black Ridge Acq. Corp./Allied Esports 2019 Schedule 14A, Amend. No. 3) at 71.  *See* ECF No. 519-14 (AKRO Corp. Amend. No. 3 to Form S-4) at introduction (disclosing GPM "operates [the target's] current business); *id.* at 113 (disclosing the target and its operator, GPM, prepared the projections). *Compare* ECF No. 519-16 at 94, *with* Ex. 10 (ChaSerg Tech/Grid Dynamics 2020 Schedule 14A) at 99 ("The projections were prepared by, and are the responsibility of, Grid Dynamics' management.").  *Compare* ECF No. 519-16 at 108, *with* Ex. 11 (Insurance Acquisition Corp/Shift 2020 Form S-4, Amend. No. 5) at 115 (including "summary information from … financial forecasts" that were "prepared by Shift management without any adjustment by our management").

identified no true errors, which further supports the reliability of Whitehead's methodology.

*General Acceptance.*   Based on the discussion above, it should be beyond debate that Whitehead's methodology underlying the Projections Testimony—a manual review of SEC disclosures and categorization of data therein based on his personal experience and observation—is generally accepted in the academic community.   Indeed, Class Plaintiffs need only have asked Badawi whether he has performed similar analysis of SEC filings and whether it is common to do so, and this motion could have been avoided all together.

## C.   PROFESSOR WHITEHEAD'S OPINION NO. 1 PERMISSIBLY ASSUMES THE DISCLOSURES ARE ACCURATE FOR PURPOSES OF THIS ANALYSIS

Class Plaintiffs claim that there is an "analytical gap" between the data Whitehead analyzed and the Projections Testimony because he assumed that the statements about who prepared the projections in the SPAC's SEC filings are accurate.  Mot. at 12-14.  Plaintiffs are wrong for two reasons.

First, experts routinely assume facts to be true to reach opinions for purposes of litigation.  *See, e.g.*, *Nova Consulting Grp. v. End'g Consulting Servs.*, 290 F. App'x. 727, 732-33 (5th Cir. 2008) (an expert's opinion was not rendered unreliable merely because he made a number of assumptions); *United States ex rel. Mitchell v. CIT Bank, N.A.*, 2022 WL 1233651, at *3 (E.D. Tex. Apr. 26, 2022) ("It is axiomatic that expert witnesses are

permitted to make certain assumptions when reaching their opinions.").[17]   Indeed, this argument is curious since Class Plaintiffs' damages expert, Dr. Feinstein, assumed that every allegation made in the complaint is true without performing any analysis to verify that assumption.[18]   *See* ECF No. 511 (Defs.' Mot. Exclude Damages Experts) at 9-10.   And Badawi testified that he too would naturally assume that statements in SEC filings are accurate.   Ex. 2 (Badawi Dep.) at 193:4-24 (admitting he is able to write his articles about SEC filings without speaking with the authors because Badawi's articles are "about the content of proxy statements").   Class Plaintiffs can challenge the basis of the assumptions on cross examination, as this is not a basis to preclude Whitehead's Projection Testimony from reaching the jury.   *Nkansah v. Martinez*, 2017 WL 2798520, at *4 (M.D. La. 2017) ("The most appropriate place to challenge the assumptions made by an expert is at trial on cross-examination and with countervailing expert testimony.").

Second, Class Plaintiffs mischaracterize the Projections Testimony.   Whitehead is not offering an opinion of falsity of any statements in any proxy statement.   In other words, Whitehead's Projection Testimony does not purport to tell the jury how to decide whether the statement about who prepared the Proxy Projections was true.   His opinion is thus

---

[17] Indeed, testifying experts commonly make assumptions and the opposing party attempts to disprove them.   *Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 516 (5th Cir. 2013) (noting that "reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record"); *Cromwell*, 2002 WL 1973906, at *2 ("[E]xperts are permitted to assume the underlying facts that form the basis for their opinions.").

[18] Had Dr. Feinstein asked Defendants about this assumption (as Class Plaintiffs suggest Whitehead should have done for the other SPACs), Defendants would have told him his assumption is wrong.

exactly what Class Plaintiffs argue is valid: "(1) 84% of the companies in the sample subset said in their SEC filings that the financial projections were prepared solely by the targets; (2); the Proxy in this case said that the financial projection were prepared solely by AMH and KFM; and, (3) thus, the Proxy disclosure here is consistent with the subset of companies that said the financial projections were prepared solely by the targets."  Mot. at 13-14.

In any event, Class Plaintiffs are simply wrong that Whitehead did not evaluate whether there was a factual basis supporting his assumption that the statement in the SRII Proxy was accurate.  Appendix C to Whitehead's report details a substantial number of deposition transcripts and documents produced in discovery that he reviewed and relied on in preparing his report which support the statement that AMH and KFM prepared the projections in the proxy, as is customary.[19]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Class Plaintiffs' Motion to Exclude Charles Whitehead's Opinion No. 1.

---

[19] Class Plaintiffs' assertion that Whitehead "did not ask (and was not provided) any evidence by Defendants" regarding who prepared the projections included in the Proxy is wrong.  The testimony cited in their brief simply indicates that Whitehead did not cite any bates number documents or transcript testimony in support of the Projection Testimony, not that he never saw any evidence of how the projections included in the Proxy were prepared. ECF No. 519-3 (Whitehead Dep.) at 171:15-174:14.

Dated: January 19, 2024                    Respectfully submitted,


By */s/ J. Christian Word*
    J. Christian Word
    Attorney-in-Charge for Defendants
    D.C. Bar No. 461346
    S.D. Tex. Bar No. 3398485
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Christian.Word@lw.com

    Of Counsel:
    Heather A. Waller
    IL Bar No. 6302537
    S.D. Tex. Bar No. 2886108
    **LATHAM & WATKINS LLP**
    330 North Wabash Avenue, Suite 2800
    Chicago, IL 60611
    Tel: (312) 876-7700
    Fax: (312) 993-9767
    Heather.Waller@lw.com

    Laura E. Bladow (*pro hac vice*)
    D.C. Bar No. 1740343
    Eunice M. Kabuga (*pro hac vice*)
    D.C. Bar No. 90006573
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Laura.Bladow@lw.com
    Eunice.Kabuga@lw.com

    *Counsel for Defendants Alta Mesa*
    *Resources, Inc., f/k/a Silver Run*

17

*Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Stephen S. Coats; Michael E. Ellis; William D. Gutermuth; James T. Hackett; Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
jschreiber@winston.com

*Co-Counsel for Defendants Harlan H. Chappelle and Michael E. Ellis*

18

## CERTIFICATE OF SERVICE

I certify that on January 19, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.


*/s/ J. Christian Word*
J. Christian Word