# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
|  | Case No. 4:19-cv-00957 (Consolidated) |
|  | Judge George C. Hanks, Jr. |
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | THIS DOCUMENT RELATES TO: |
|  | CASE NO. 4:22-CV-01189 CASE NO. 4:22-CV-02590 |

## DEFENDANTS'[1] OPPOSITION TO DIRECT ACTION PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE THE TESTIMONY OF CHARLES WHITEHEAD

---

[1] Alta Mesa Resources, Inc. ("AMR"), Riverstone Holdings, LLC, Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald J. Smith, Jeffrey H. Tepper, Thomas J. Walker, and Diana J. Walters.

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDING ................................................................. 1

STATEMENT OF THE ISSUES ................................................................................. 1

SUMMARY OF ARGUMENT ................................................................................... 2

LEGAL STANDARD ................................................................................................ 4

ARGUMENT ............................................................................................................. 4

    A.    WHITEHEAD'S OPINION THAT THE PROXY DEFENDANTS' INCLUSION OF AMH'S AND KFM'S PROJECTION IN THE PROXY FOLLOWS SPAC CUSTOM AND PRACTICE IS RELEVANT ....................................................................................... 4

    B.    WHITEHEAD'S OPINIONS THAT THE PROXY DEFENDANTS AND THE AMR DIRECTORS COMPLIED WITH INDUSTRY CUSTOM AND PRACTICE IS ADMISSIBLE EVIDENCE ..................... 9

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Can! v. Arch Ins. Co.*,
   597 F. Supp. 3d 1038 (N.D. Tex. 2022) ...................................................................... 11

*Askanase v. Fatjo*,
   130 F.3d 657 (5th Cir. 1997) .................................................................................... 12

*Baker v. S/S Cristobal*,
   488 F.2d 331 (5th Cir. 1974) ............................................................................ 5, 6, 12

*Bocanegra v. Vicmar Servs., Inc.*,
   320 F.3d 581 (5th Cir. 2003) ...................................................................................... 4

*Cromwell v. Wal-Mart Stores, Inc.*,
   46 Fed. App'x. 733, 2002 WL 1973906 (5th Cir. Aug. 9, 2002) ................................. 7

*In re Draftkings Securities Litig.*,
   No. 1:21-cv-05739, ECF No. 171 (Op. and Order) (S.D.N.Y. Jan. 10, 2023) ............. 9

*Flanagan v. City of Dallas*,
   2017 WL 2817424 (N.D. Tex. May 25, 2017) ........................................................... 11

*Floyd v. Hefner*,
   556 F. Supp. 2d 617 (S.D. Tex. 2008) ................................................................. 11, 12

*Karp v. First Conn. Bancorp, Inc.*,
   2021 WL 1575161 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) ..................... 11

*In re Key Energy Servs., Inc. Sec. Litig.*,
   166 F. Supp. 3d 822 (S.D. Tex. 2016) ..................................................................... 4, 6

*Luongo v. Desktop Metal, Inc.*,
   No. 1:21-cv-12099, ECF No. 124 ............................................................................... 9

*Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*,
   2022 WL 16964752 (N.D. Tex. Nov. 16, 2022) .......................................................... 8

*Mears v. Jones*,
   2019 WL 3483157 (S.D. Miss. July 31, 2019) ........................................................... 11

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
    2022 WL 1233651 (E.D. Tex. Apr. 26, 2022) ........................................................... 7

*Moore v. Int'l Paint, L.L.C.*,
    547 F. App'x 513 (5th Cir. 2013) .................................................................... 7

*Om Sai Ram Hosp. LLC v. Amguard Ins. Co.*,
    2023 WL 5670647 (W.D. La. July 27, 2023) ......................................................... 8

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
    2017 WL 679623 (E.D. Tex. Feb. 21, 2017) .......................................................... 8

## STATUTES

Exchange Act
    § 14(a) .................................................................................................... 2, 4
    § 20(a) ................................................................................................. 2, 5, 10

## RULES

Fed. R. Evid.
    702(a) ...................................................................................................... 4
    702(c) ...................................................................................................... 4
    704(a) .................................................................................................... 10

## NATURE AND STAGE OF PROCEEDING

This is a securities class action, and the parties have completed fact and expert discovery.  Direct Action Plaintiffs (the "DA Plaintiffs") moved to exclude the testimony of Stephen J. Pully and partially exclude the testimony of Professor Charles Whitehead ("Whitehead").  Defendants oppose the DA Plaintiffs' motion to partially exclude Whitehead, ECF No. 522 (the "Motion" or "Mot.").

## STATEMENT OF THE ISSUES

Whether Whitehead's empirical analysis demonstrating the custom and practice of SPACs disclosing target-prepared projections accompanied by cautionary language in proxy statements and the Proxy Defendants'[2] compliance with that custom and practice with respect to the SRII Proxy is relevant to the DA Plaintiffs' attempt to prove that the Proxy Defendants committed fraud.  (Opinion No. 1).

Whether Whitehead's opinions that the Proxy Defendants' due diligence of AMH and KFM and process for preparing the Proxy, and the AMR Board's[3] processes for preparing AMR's SEC filings and other public statements followed custom and practice are proper evidence of due care and not improper legal conclusions.  (Opinions Nos. 6-9).

---

[2] The Proxy Defendants include Alta Mesa Resources, Inc., Riverstone Holdings LLC ("Riverstone"), James Hackett, William Gutermuth, Jeffrey Tepper, and Diana Walters.

[3] AMR's Board included Defendants Harlan H. Chappelle, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Jeffrey H. Tepper, and Diana J. Walters.

## SUMMARY OF ARGUMENT

The DA Plaintiffs have asserted claims against the Defendants under Sections 14(a) and 20(a) of the Exchange Act.  The Section 14(a) claims under these two statutes require the DA Plaintiffs to prove that each Defendant committed fraud, which in this Circuit requires evidence of conduct that is an extreme departure from the standards of ordinary care (i.e., recklessness).  Section 20(a) allows Defendants an affirmative defense if they can prove they acted in good faith, which has been interpreted to mean that they did not act recklessly.  In order for the jury to determine whether Defendants met these standards of care, Defendants retained Whitehead to provide evidence on the custom and practice of public companies and their boards of directors with respect to business combinations and oversight of the company's public statements and to opine on whether the Defendants' conduct followed that custom and practice.  The DA Plaintiffs did not offer any expert to opine on the applicable standard of care with respect to either statute and now challenge some, but not all of, Whitehead's opinions.

The DA Plaintiffs first challenge as irrelevant Whitehead's opinion that, based on his empirical analysis of five years of SPAC SEC filings, it is the custom and practice of SPACs to disclose financial projections prepared by the target company and accompanied by cautionary language in connection with a de-SPAC transaction and that SRII's disclosure of financial projections prepared by AMH and KFM followed this custom and practice.  None of the three irrelevancy arguments the DA Plaintiffs make is valid.  First, Whitehead's testimony about this custom and practice as well as compliance therewith is plainly relevant to Defendants' defense that they did not act recklessly but rather with good

faith.  Second, the DA Plaintiffs' disagreements with the way Whitehead conducted his analysis and his conclusions are topics that are properly addressed through cross examination, and not a basis for exclusion.  Indeed, the DA Plaintiffs do not dispute Whitehead's extensive experience with how projections for business combinations are generally prepared and thus there can be no serious dispute with Whitehead's approach.  And finally, the DA Plaintiffs' belief that Whitehead's analysis should not have included certain SPACs is likewise a criticism for cross examination and, in any event, would not alter his opinions about custom and practice.

The DA Plaintiffs do not challenge the propriety of Whitehead's opinions about the custom and practice of conducting due diligence of a target company in a business combination and the custom and practice of directors overseeing the company's business and affairs, approving and authorizing the filing of the company's proxy statement, periodic SEC disclosures, and other public statements by the company's officers (Opinions Nos. 2-5).  The DA Plaintiffs do, however, challenge Whitehead's opinions that the Defendants' conduct tracks this custom and practice (Opinions Nos. 6-9) on the grounds that Whitehead is offering a legal opinion that the Defendants met the applicable standard of care.  This is incorrect.  Whitehead is offering evidence that can support a jury verdict but he does not reach the ultimate issue or instruct the jury on what conclusion to draw.  Courts routinely allow opinions about compliance with industry norms to go to a jury that must determine whether the applicable standard of care was met.

## LEGAL STANDARD

Expert opinion is admissible if it is "the product of reliable principles and methods" and "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a), (c); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) ("[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.").[4]

## ARGUMENT

### A.   WHITEHEAD'S OPINION THAT THE PROXY DEFENDANTS' INCLUSION OF AMH'S AND KFM'S PROJECTION IN THE PROXY FOLLOWS SPAC CUSTOM AND PRACTICE IS RELEVANT

The DA Plaintiffs' Section 14(a) claims require them to prove among other things, that each of the Proxy Defendants committed fraud by at least recklessly disclosing false financial projections for AMH and KFM in the Proxy.  ECF No. 343 (Mem. Op. and Order) at 11.   In the Fifth Circuit, reckless is defined as conduct that involves "an extreme departure from the standards of ordinary care."  *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 833 (S.D. Tex. 2016).  In addition to demonstrating that the DA Plaintiffs do not have any evidence of such reckless conduct, the Proxy Defendants also intend to offer expert testimony from Whitehead demonstrating that their conduct in preparing the Proxy and their due diligence followed the custom and practice of directors of public companies, which is evidence that the Proxy Defendants acted with due care.

---

[4] Internal quotation marks, emphasis, and citations are omitted unless otherwise noted.

*Baker v. S/S Cristobal*, 488 F.2d 331, 333 (5th Cir. 1974) ("[C]ompliance with the customs and practices of an industry is not in itself due care, but it is evidence of due care.").[5]  One specific aspect of Whitehead's testimony will focus on how often SPACs disclose projections prepared by the target company (as opposed to projections prepared by the SPAC) (the "Projections Testimony").

Whitehead surveyed every proxy and registration statement filed with the SEC by a SPAC that completed a de-SPAC transaction from January 1, 2016, to December 31, 2020, to evaluate the custom and practice regarding use of target-prepared projections.  ECF No. 524-3 (Whitehead Rpt.) ¶¶ 37-53.  Whitehead found that 80% of the sample SPACs included financial projections in their proxy statements and that 84% of those SPACs "included financial projections that were prepared by the target company rather than the SPAC or the sponsor."  *Id.* ¶¶ 47(1), 50, 188.  Whitehead also found that nearly every SPAC proxy statement including target-prepared projections also included cautionary language warning stockholders about the risks inherent in the projections.  *Id.* ¶¶ 47(2), 53.  Based on this empirical analysis, Whitehead concluded that the Proxy Defendants' disclosure of AMH's and KFM's financial projections in the Proxy followed SPAC custom and practice.  *Id.* ¶¶ 186, 190.  Thus, Whitehead's Projection Testimony is evidence that will help the jury determine that the Proxy Defendants were not reckless.

---

[5] The Proxy Defendants will also rely on this evidence to prove their good faith affirmative defense to the DA Plaintiffs' Section 20(a) control person claims.

The DA Plaintiffs argue that Whitehead's Projection Testimony is irrelevant, but do not mention at all their obligation to prove that the Proxy Defendants were reckless or how the Proxy Defendants intend to use this testimony to disprove that element. Instead, they make three primary arguments why Whitehead's Projection Testimony is otherwise irrelevant.

First, they contend that Whitehead's Projection Testimony does not "have any relevance to [1] determining whether the challenged disclosures are false or misleading, or [2] to any other factual issue that the jury will be asked to decide at trial in this action." Mot. at 20; *see also id.* at 22 (regarding cautionary language).[6] As to the former, the DA Plaintiffs are correct that Whitehead is not purporting to testify about falsity. But they are plainly incorrect about the latter—Whitehead's testimony is relevant to the issue of recklessness as explained above.[7]

The DA Plaintiffs next argue the Projection Testimony is irrelevant because they disagree with the factual foundation of Whitehead's analysis. Mot. at 21. Specifically,

---

[6] Whitehead does not opine on the legal question of whether the PSLRA's safe harbor immunizes the AMH and KFM Projections. Mot. at 23. Rather, his opinion is limited to demonstrating that the Proxy Defendants' inclusion of language warning investors not to unduly rely on the projections and the risks inherent in the projections in an attempt to invoke the safe harbor is consistent with industry custom and practice. Whitehead Rpt. ¶¶ 53, 189.

[7] Although the DA Plaintiffs do not mention the element of recklessness, they cite two decisions standing for the unremarkable proposition that expert testimony regarding the wrong standard of care is "irrelevant." *See* Mot. at 21. These decisions are inapt because Whitehead's Projection Testimony bears directly on whether the Proxy Defendants' conduct was an "extreme departure from the standards of ordinary care." *In re Key Energy*, 166 F. Supp. 3d at 833; *see also Baker*, 488 F.2d at 333 (compliance with custom and practice is evidence of due care).

they quibble with Whitehead's assumption that the statements about who prepared the projections in the SPAC's SEC filings are accurate, his conclusion that AMH and KFM prepared the projections in the SRII Proxy, and his definition of "solely." *Id*. at 21-22. But this is fodder for cross examination, not a legitimate basis to prevent the jury from hearing Whitehead's Projection Testimony. *See United States ex rel. Mitchell v. CIT Bank, N.A.*, 2022 WL 1233651, at *3 (E.D. Tex. Apr. 26, 2022) ("It is axiomatic that expert witnesses are permitted to make certain assumptions when reaching their opinions.").[8] Indeed, because the DA Plaintiffs have no basis to question Whitehead's extensive experience with how projections are prepared and disclosed in SEC filings, they cannot legitimately claim that Whitehead's judgment on this matter is so unreliable that it should not reach the jury. In sum, Whitehead's experience, method, and analysis are crystal clear and the jury will have no difficulty understanding it or the DA Plaintiffs' criticisms.

The DA Plaintiffs' last irrelevancy argument is that Whitehead did not "determine whether any of the companies in his sample might have violated the federal securities law" or "account for whether [the SPAC] was involved in litigation, went bankrupt or was investigated by the SEC or DOJ." Mot. at 23. This too is a topic for cross examination,

---

[8] Indeed, testifying experts commonly make assumptions and the opposing party attempts to disprove them. *Cromwell v. Wal-Mart Stores, Inc.*, 46 Fed. App'x. 733, 2002 WL 1973906, at *2 (5th Cir. Aug. 9, 2002) ("[E]xperts are permitted to assume the underlying facts that form the basis for their opinions."); *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 516 (5th Cir. 2013) (noting that "reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record"). For example, the DA Plaintiffs' damages expert, Professor Nye, assumes that every allegation made in the complaint is true and performed no analysis to verify that assumption. *See* ECF No. 511 (Mot. to Exclude Damages Experts) at 9-10.

rather than a basis to exclude.  As the DA Plaintiffs confirm, "Whitehead made absolutely clear that this was not germane to his analysis."  *Id*.  The DA Plaintiffs obviously disagree, but do not explain why their view is correct and Whitehead's is wrong.[9]  In any event, disagreements with the inputs used by an expert is not a sound basis for exclusion.  *See Om Sai Ram Hosp. LLC v. Amguard Ins. Co.*, 2023 WL 5670647, at *2 (W.D. La. July 27, 2023) ("Challenges to the inputs used by an expert rather than his methodology are fodder for cross-examination instead of grounds for exclusion."); *Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*, 2022 WL 16964752 at *4 (N.D. Tex. Nov. 16, 2022) ("[A]n expert's opinions are not inadmissible simply because an underlying assumption may be contestable."); *Saint Lawrence Commc'ns LLC v. ZTE Corp.*, 2017 WL 679623, at *2 (E.D. Tex. Feb. 21, 2017) (holding that a challenge to expert's disclosed inputs, and not to his methodology, is not a basis to exclude and is the subject of cross-examination).  Indeed, the DA Plaintiffs' contention that the statements in the SPAC SEC filings were false is pure speculation because it rests on mere accusations or investigations of potential misconduct (none of which is claimed to involve the statements considered by

---

[9] DAP's only cited case is not on point.  Unlike *Falcon*, where the expert collected twenty to twenty-five samples, sent two of those samples to a lab, and selected the two samples to send based on which samples appeared to support his hypothesis, Whitehead's team collected filings for all de-SPACs that closed in the United States between January 1, 2016 and December 31, 2020, yielding a total data set of 101 companies.  Whitehead Rpt. ¶¶ 42-45.  Whitehead excluded only 3 of those companies from his analysis: AMR, a de-SPAC that did not result in the target company going public, and a de-SPAC that did not involve the filing of a proxy or registration statement related to the de-SPAC transaction.  *Id.* ¶¶ 44-45, nn.70-71.

Whitehead).[10]  As far as we are aware, not one of the 23 de-SPAC's identified by the DA

Plaintiffs has been found by a judge or jury to have actually violated the securities laws.

In fact, 7 of the cases filed against a de-SPAC have been dismissed and 14 do not even

allege misstatements in the proxy or registration statement.[11]  In any event, Whitehead's

opinion about industry custom and practice would remain the same if any of these 23 de-

SPACs were excluded from his dataset.  *See* Ex. 1 (Whitehead Dep.) at 270:16-276:10

(explaining that his analysis used a very large data set to address the possibility of

aberrations in a smaller group of samples).

### B.    WHITEHEAD'S OPINIONS THAT THE PROXY DEFENDANTS AND THE AMR DIRECTORS COMPLIED WITH INDUSTRY CUSTOM AND PRACTICE IS ADMISSIBLE EVIDENCE

Whitehead will testify about the custom and practice of public company directors

exercising their duties in the context of a business combination, the preparation of a proxy

statement, and oversight of the company's periodic SEC filings and other public

statements.  Whitehead Rpt. ¶¶ 191–95 (Opinions 2 through 5).  Defendants offer this

---

[10] The notion that Whitehead should treat every statement in an SEC filing by a public company as false merely because that company was later a defendant in securities litigation is unreasonable.  Accusations of fraud are commonplace, but actual fraud is rare. Historically, about half of all filed cases are dismissed, over 99% are dismissed or settled, and less than half of one percent reach trial.  *See* Cornerstone Research, Securities Class Action Filings 2022 Year in Review 22, https://www.cornerstone.com/wp-content/uploads/2023/05/Securities-Class-Action-Filings-2022-Year-in-Review.pdf.

[11] *See e.g.*, *Luongo v. Desktop Metal, Inc.*, No. 1:21-cv-12099, ECF No. 124 (Mem. and Order) at 12 (D. Mass. Sept. 20, 2023) (granting motion to dismiss where challenged statements relate to unrelated acquisition rather than projections in Proxy); *In re Draftkings Securities Litig.*, No. 1:21-cv-05739, ECF No. 171 (Op. and Order) at 6 (S.D.N.Y. Jan. 10, 2023) (granting motion to dismiss where challenged statements relate to illegal gambling and sources of revenue rather than projections in Proxy).

evidence (1) to refute the DA Plaintiffs' Section 10(b) and Section 14(a) claims, which require the DA Plaintiffs to prove that each of them acted at least recklessly (i.e., in an extreme departure from the applicable standard of care) and (2) to prove their affirmative good faith defense to the Section 20(a) claims.  The DA Plaintiffs do not challenge Whitehead's qualifications to provide this testimony nor seek to exclude these opinions on custom and practice on any other grounds.  And because the DA Plaintiffs did not offer any expert on these topics, this is the only "standard of care" evidence the jury will be able to consider in deciding how a reasonable director would have acted and whether the Defendants' conduct was an extreme departure from that standard and/or acted in good faith.

The DA Plaintiffs, however, seek to prevent the jury from hearing Whitehead's additional testimony that the Defendants' conduct followed industry custom and practice (the "Compliance Testimony"), incorrectly claiming that these are "legal opinions" that invade the province of the jury.  Mot. at 25.  The error in the DA Plaintiffs' argument is it misconstrues Whitehead's Compliance Testimony.  He is not opining that the Defendants were not reckless or acted in good faith; rather he is opining that Defendants' conduct followed industry custom and practice.  The former is an impermissible legal conclusion because it applies the law to the facts.  But the latter is applying facts to facts based on Whitehead's expertise with how directors customarily oversee their corporations.  Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").  As the Fifth Circuit put it in *Baker*, Whitehead's Compliance Testimony is

"evidence of due care," not an instruction to the jury on how to decide the case.  One court

has explained the difference this way:

> The Court understands that this can be a difficult line to walk.  However, some opinions are unquestionably outside the scope of permissible expert testimony.  For example, an expert witness may not instruct the jury as to the duties Mississippi law imposes on the parties.  Likewise, an expert witness may not express an opinion as to whether particular actions or omissions constituted negligence.  An expert may, however, explain how insurance markets work.  An expert may also explain industry standards and express an opinion as to whether particular actions or inactions complied with those standards.

*Mears v. Jones*, 2019 WL 3483157, at *2 (S.D. Miss. July 31, 2019).   Whitehead's

Compliance Testimony is thus a valid opinion about the Defendants' compliance with

industry custom.   *See, e.g.*, *Flanagan v. City of Dallas*, 2017 WL 2817424, at *1 (N.D.

Tex. May 25, 2017) ("Qualified experts are permitted to offer opinion testimony as to

industry standards or norms and whether or not they were followed in a particular case, as

long as such opinions involve questions of fact rather than purely legal matters."); *see also*

*Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022); *Karp v. First*

*Conn. Bancorp, Inc.*, 2021 WL 1575161, at *5 (D. Md. 2021) (relying on expert evidence

that directors complied with custom and practice in granting summary judgment on Section

14(a) claims), *aff'd*, 69 F.4th 223 (4th Cir. 2023).

The *Floyd* decision relied on by the DA Plaintiffs is consistent with the *Mears*

analysis.  Mot. at 18.  In *Floyd*, the court correctly excluded the testimony of the plaintiffs'

expert's "ultimate conclusions that the Directors violated their fiduciary duties and/or were

negligent, grossly negligent, or reckless," (*i.e.*, the applicable standard of care).  *Floyd v.*

*Hefner*, 556 F. Supp. 2d 617, 640 (S.D. Tex. 2008).  However, the court also correctly

refused to exclude that same expert's testimony that the directors' conduct comported with what was a "prudent practice within the industry." *Id*. at 641 (allowing testimony that directors should have appointed a special committee). Whitehead's Compliance Testimony walks on the right side of the line between permissible and impermissible expert testimony and should not be excluded. *See Baker*, 488 F.2d at 333, *cf. Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (excluding expert testimony that directors breached their fiduciary duties because that was the legal issue the jury was to decide).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Direct Action Plaintiffs' Motion to Partially Exclude the Testimony of Charles Whitehead.

Dated: January 19, 2024               Respectfully submitted,

By _/s/ J. Christian Word_          

           J. Christian Word
           Attorney-in-Charge for Defendants
           D.C. Bar No. 461346
           S.D. Tex. Bar No. 3398485
           **LATHAM & WATKINS LLP**
           555 Eleventh Street, NW
           Suite 1000
           Washington DC 20004
           Tel: (202) 637-2200
           Fax: (202) 637-2201
           Christian.Word@lw.com

           Of Counsel:
           Heather A. Waller
           IL Bar No. 6302537
           S.D. Tex. Bar No. 2886108
           **LATHAM & WATKINS LLP**
           330 North Wabash Avenue, Suite 2800
           Chicago, IL 60611
           Tel: (312) 876-7700
           Fax: (312) 993-9767
           Heather.Waller@lw.com

           Laura E. Bladow (_pro hac vice_)
           D.C. Bar No. 1740343
           Eunice M. Kabuga (_pro hac vice_)
           D.C. Bar No. 90006573
           **LATHAM & WATKINS LLP**
           555 Eleventh Street, NW
           Suite 1000
           Washington DC 20004
           Tel: (202) 637-2200
           Fax: (202) 637-2201
           Laura.Bladow@lw.com
           Eunice.Kabuga@lw.com

*Counsel for Defendants Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Stephen S. Coats; Michael E. Ellis; William D. Gutermuth; James T. Hackett; Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
jschreiber@winston.com

*Co-Counsel for Defendants Harlan H. Chappelle and Michael E. Ellis*

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 19, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ J. Christian Word*
J. Christian Word