UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> **CLASS ACTION** <br><br> [Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, <br> Defendants. | Civil Action No. 4:22-cv-001189 <br><br> [Consolidated Case] |

|  |  |
|---|---|
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | Civil Action No. 4:22-cv-02590 [Consolidated Case] |

Plaintiffs,

v.

ALTA MESA RESOURCES, INC., f/k/a
SILVER RUN ACQUISITION
CORPORATION II; RIVERSTONE
HOLDINGS LLC; ARM ENERGY
HOLDINGS LLC; BAYOU CITY
ENERGYMANAGEMENT, LLC; HPS
INVESTMENT PARTNERS, LLC;
JAMES T. HACKETT, HARLAN H.
CHAPPELLE, WILLIAM
GUTERMUTH, JEFFREY H. TEPPER,
DIANA J. WALTERS; MICHAEL E.
ELLIS; RONALD SMITH; DON
DIMITRIEVICH; PIERRE F.
LAPEYRE, JR.; DAVID M.
LEUSCHEN; WILLIAM W.
MCMULLEN; DONALD SINCLAIR;
STEPHEN COATS; and THOMAS J.
WALKER,

Defendants.

**DON DIMITRIEVICH AND WILLIAM MCMULLEN'S OPPOSITION TO
OPT-OUT PLAINTIFFS' MOTION TO EXCLUDE
EXPERT OPINIONS OF AUDRA L. BOONE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF PROCEEDING AND SUMMARY OF ARGUMENT ................... 1

STATEMENT OF ISSUES ................................................................................................ 4

COUNTER-STATEMENT OF RELEVANT FACTS ........................................................... 4

    A.    Class And Opt-Out Plaintiffs Lodge A Plethora Of Thinly Sketched
Claims Against Numerous Defendants .................................................................. 4

    B.    Nye's Deficient Expert Report .............................................................................. 5

    C.    Boone Addresses Deficiencies In Nye's Report ................................................... 7

LEGAL STANDARD ....................................................................................................... 9

ARGUMENT ................................................................................................................. 10

I.      BOONE IS WELL-QUALIFIED ............................................................................ 10

II.     BOONE'S TESTIMONY IS RELIABLE ................................................................. 15

    A.    Boone's Opinions Regarding Disaggregation Are Sound ..................................... 16

    B.    Boone's Opinions Regarding Confounding Information Are Sound ..................... 20

    C.    Boone's Opinions Regarding the SEC Investigation Are Sound .......................... 21

III.    BOONE'S OPINIONS ARE RELEVANT AND HELPFUL ......................................... 22

    A.    Boone's Opinions About the Alleged Misrepresentations Are Relevant .............. 22

    B.    Boone Did Not Ignore the Corrective Disclosure Dates ...................................... 25

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*,
   2006 WL 5503872 (W.D. Tex. Apr. 21, 2006) ....................................................11

*Baker v. SeaWorld Ent., Inc.*,
   423 F. Supp. 3d 878 (S.D. Cal. 2019) ........................................................19, 22

*Bricklayers & Trowel Int'l Pension Fund v. Credit Suisse First Boston*,
   853 F. Supp. 2d 181 (D. Mass. 2012) ...............................................................21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) .................................................................................9, 15

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ...........................................................................15

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................16

*E.E.O.C. v. Boh Bros. Const. Co.*,
   731 F.3d 444 (5th Cir. 2013) ...........................................................................22

*Eldridge v. Pet Supermarket, Inc.*,
   2020 WL 1076103 (S.D. Fla. Mar. 6, 2020) .....................................................11

*Employees' Ret. Sys. v. Whole Foods Mkt., Inc.*,
   905 F.3d 892 (5th Cir. 2018) ......................................................16, 20, 21,, 25

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   309 F.R.D. 251 (N.D. Tex. 2015) .....................................................................21

*ExxonMobil Glob. Servs. v. Bragg Crane Serv.*,
   2023 WL 6213438 (S.D. Tex. Sept. 25, 2023) .................................................11

*Fener v. Operating Engineers Const. Indus. and Misc. Pension Fund (LOCAL 66)*,
   579 F.3d 401 (5th Cir. 2009) ......................................................................17, 18

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   218 F.R.D. 125 (E.D. Tex. 2003) .....................................................................23

*Guzman v. Mem'l Hermann Hosp. Sys.*,
   2008 WL 5273713 (S.D. Tex. Dec. 17, 2008) ..................................................10

*Huddleston v. Herman MacLean*,
   640 F.2d 534 (5th Cir. 1981) ..............................................................................21

*In re Allstate Corp. Sec. Litig.*,
   2022 WL 842737 (N.D. Ill. Jan. 10, 2022) ...................................................18, 19

*In re BP p.l.c. Securities Litigation*
   2014 WL 2112823 (S.D. Tex. May 29, 2014) ...............................................18, 19

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   540 F. Supp 2d 800 (S.D. Tex. 2007) ..................................................................16

*In re Novatel Wireless Sec. Litig.*,
   2013 WL 12247558 (S.D. Cal. Nov. 19, 2013) ...................................................19

*In re St. Jude Med. Inc. Sec. Litig.*
   2014 WL 6908434 (D. Minn. Dec. 8, 2014) ........................................................19

*Johnson v. Arkema, Inc.*,
   685 F.3d 452 (5th Cir. 2012) ................................................................................9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .........................................................................................9, 10

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ...............................................................................16

*Ludlow v. BP, p.l.c.*,
   800 F.3d 674 (5th Cir. 2015) .........................................................................18, 19

*Magruder v. Halliburton Co.*,
   2009 WL 854656 (N.D. Tex. 2009) .....................................................................17

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) ...............................................................................15

*McNamara v. Bre-X Minerals, Ltd.*,
   2002 WL 32076175 (E.D. Tex, Sept. 30, 2002) ..................................................14

*Meyers v. Moody*,
   693 F.2d 1196 (5th Cir. 1982) .............................................................................16

*Muldrow v. Re-Direct, Inc.*,
   493 F.3d 160 (D.C. Cir. 2007) .............................................................................23

*Nat'l. Union Fire Ins. Co. of Pittsburgh v. Smith Tank & Steel, Inc.*,
   2014 WL 12690177 (M.D. La. Nov. 6, 2014) ......................................................14

*Puga v. RCX Sols., Inc.*,
   922 F.3d 285 (5th Cir. 2019) ...................................................................15

*Rivas v. Preston*,
   2012 WL 7782960 (W.D. Tex. Feb. 29, 2012) .........................................19

*Roman v. W. Mfg., Inc.*,
   691 F.3d 686 (5th Cir. 2012) ...................................................................15

*Ruscher v. Omnicare, Inc.*,
   2015 WL 5178074 (S.D. Tex. Sept. 3, 2015) ...........................................24

*Simpson v. Quarterman*,
   593 F.Supp.2d 922 (E.D. Tex. 2009) .......................................................15

*Smilovits v. First Solar, Inc.*,
   2019 WL 7282026 (D. Ariz. Dec. 27, 2019) .......................................18, 19

*Smith v. Goodyear Tire & Rubber Co.*,
   495 F.3d 224 (5th Cir. 2007) ...................................................................12

*Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*,
   662 F. Supp. 2d 623 (S.D. Tex. 2009) .....................................................14

*Tanner v. Westbrook*,
   174 F.3d 542 (5th Cir. 1999) ...................................................................12

*Timoschuk v. Daimler Trucks N. Am., LLC*,
   2014 WL 2533789 (W.D. Tex. June 4, 2014) ...........................................11

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
   2013 WL 12137088 (S.D. Tex. Sept. 25, 2013) ........................................11

*United States v. 14.38 Acres of Land*,
   80 F.3d 1074 (5th Cir. 1996) ................................................................9, 15

*United States v. Cooks*,
   589 F.3d 173 (5th Cir. 2009) ...................................................................12

*United States v. Valencia*,
   600 F.3d 389 (5th Cir. 2010) ...................................................................15

*VeroBlue Farms USA, Inc. v. Wulf*,
   2023 WL 348016 (N.D. Tex. Jan. 20, 2023) ............................................19

*Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*,
   801 F.3d 512 (5th Cir. 2015) ...................................................................12

*Williams v. Manitowac Cranes, L.L.C.*,
    898 F.3d 607 (5th Cir. 2018) ................................................................................10

*Wilson v. Woods*,
    163 F.3d 935 (5th Cir. 1999) ...............................................................................12

## **<u>Statutes</u>**

15 U.S.C. § 78u-4(b)(4) ...................................................................................................16

Securities Exchange Act of 1934 ....................................................................................4

Securities Exchange Act of 1934, Section 10(b) ......................................................16, 17, 20, 25

Securities Exchange Act of 1934, Rules 13a-15(e) and 15d-15(e) ................................8

## **<u>Other Authorities</u>**

Fed. R. Civ. P. 23 .............................................................................................................18

Fed. R. Civ. P. 26(a)(2) ...................................................................................................23

Fed. R. Civ. P.  26(e) .......................................................................................................23

Fed. R. Civ. P. 702 ................................................................................................9, 10, 22

## NATURE AND STAGE OF PROCEEDING AND SUMMARY OF ARGUMENT

This Court should reject Opt-Outs' scatter-shot attempt to disqualify Defendant Don Dimitrievich and William McMullen's expert, Professor Audra Boone, Ph.D., from rebutting Opt-Outs' loss causation and damages expert, Zachary Nye.   Dkt. 514 ("Motion").  Following the completion of fact and expert discovery, Opt-Outs filed their challenge to Professor Boone's qualifications, relevance, and methodology.  Their wide ranging attack should be seen for what it is: an attempt to exclude unfavorable testimony critiquing Nye's analysis, and thereby create a one-sided record.

*First*, Opt-Outs' challenge to Boone's qualifications rests on splitting hairs and mischaracterizing her testimony.  Although Opt-Outs acknowledge that Boone is well-qualified in the areas of corporate finance and economics, they nevertheless claim that she is unequipped to opine on loss causation and damages.  Mot. at 16.  Opt-Outs have no credible argument that Boone—a tenured professor at Texas Christian University with a Ph.D. in finance and relevant experience ***investigating shareholder losses at the Securities and Exchange Commission ("SEC")***—lacks the qualifications to opine on loss causation or damages, mere subtopics within her area of expertise.  Opt-Outs also attempt to discredit Professor Boone by claiming that ██████████████████████████ ██████████████████ but that mischaracterizes her deposition testimony.  Stripped of these misleading claims, Opt-Outs' challenge can be distilled to the hollow argument that Boone is unqualified to testify on these topics because she has never done so.  That logic would disqualify every first-time expert—a result the law does not endorse.

1

*Second*, Opt-Outs' challenge to Boone's methodology is equally unavailing.  In challenging Boone, Opt-Outs highlight the methodological deficiencies of *their own expert*.  For example, Opt-Outs dispute Boone's opinion that their expert, Nye, failed to establish the losses stemming from each alleged misstatement.  As Boone explains, ███

███████████████████████████████████████████████████████

██████████████████.  But the law is clear: a damages expert in a securities fraud case must establish the causal link between *each* alleged misstatement and the price declines that follow when a statement is "corrected."  This is particularly important where, as here, multiple misstatements are alleged, and some defendants (like Messrs. Dimitrievich and McMullen) allegedly made a tiny fraction of the alleged misstatements.

Similarly, Opt-Outs challenge Boone's opinion that ████████████████████

██████████████████.  In an "event study" designed to assess the relationship between the stock price and the disclosure of information correcting an alleged misrepresentation, "confounding information" is information that is *unrelated* to the alleged misrepresentation that can distort the results.  Again, the law and the science are clear: such event studies *must* control for confounding information.   According to Boone,

███████████████████████████████████████████████████████

██████████████████.  Boone's criticisms are thus valid and wholly consistent with the law.  And, despite Opt-Outs' objections, Boone need not perform her own event study to identify flaws in Nye's.

*Third,* Opt-Outs cannot credibly challenge the relevance of Boone's opinions.  Boone offers an important opinion of the utmost relevance: that Dr. Nye committed critical

errors in his analysis.  Specifically, Boone shows that while Nye purports to calculate the aggregate damages caused by ***all*** of the alleged misrepresentations, he does not calculate the damages caused by each alleged misrepresentation on its own.

Opt-Outs take many tacks to undermine the relevance of this opinion, but each fails. At points, Opt-Outs suggest that because Boone ████████████████████████████ ██████████████████████, her opinions are too narrow to be helpful.  But that is not so: Professor Boone's report explains that ███████████████████████████████ ████████████████████████████ And, contrary to Opt-Outs' cries of unfair ambush, that opinion is fully explained in her report.  Regardless, Opt-Outs concede this opinion was fully disclosed at her deposition, where she testified that ██████████ ████████████████████████████████████████████████████ ██████████████████████████████████

But even if Boone's opinions are as narrow as Opt-Outs say they are, and Boone ████████████████████████████████████████████████████ ████████████████████████████████████████ that still reveals a fatal flaw in Opt-Outs' case.  Boone opines that Nye ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████  ███████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Like a house of cards, if there are no damages as to one alleged misrepresentation, Nye's damages calculation collapses. Boone's opinions thus reveal Opt-Outs' cannot prove an essential element of their fraud claims: damages.

At its core, Opt-Outs' Motion is no more than a thinly-veiled effort to exclude unfavorable testimony. Opt-Outs wish to present a one-sided picture to the jury, bolstered by a seemingly complex mathematical model that is, in reality, badly designed. The Court should not endorse this effort.

## STATEMENT OF ISSUES

This Opposition addresses three issues: (1) whether Boone lacks the qualifications to offer a loss causation opinion; (2) whether Boone's methodology—which is consistent with securities fraud law—is unreliable; and, (3) whether Boone's opinions regarding Nye's failure to disaggregate damages or consider confounding information are irrelevant.

## COUNTER-STATEMENT OF RELEVANT FACTS[1]

### A.   Class And Opt-Out Plaintiffs Lodge A Plethora Of Thinly Sketched Claims Against Numerous Defendants

This case concerns the aftermath of a 2018 transaction in which Silver Run (a SPAC) combined with Alta Mesa Holdings ("AMH") and Kingfisher to form a new entity called Alta Mesa Resources ("AMR"). After more than a year of operational issues and significant stock price declines, AMR filed for bankruptcy in September 2019. Looking to cover an unfortunate stock play, a group of former AMR investors (the "Class Plaintiffs") brought suit under several sections of the Securities Exchange Act of 1934 (the "Exchange

---

[1] Opt-Outs' eleven-page "Statement of Facts" largely regurgitates their allegations. Defendants' dispute Opt-Outs' characterization of the record, but limit their factual rebuttal to topics pertinent to this Motion.

Act"). *See generally* Dkt. 218 ("TAC").  Opt-Outs subsequently filed parallel suits, adding still more claims under the Exchange Act and Texas state law.

Plaintiffs named AMR's entire rolodex as defendants (the "Defendants"), bringing claims against nineteen entities and individuals.  Together, Plaintiffs allege that ***over 100 statements*** were false or misleading: Class Plaintiffs challenge thirty-nine, and Opt-Outs challenge sixty-nine.  *See generally* TAC ¶¶ 190-196, 209-257; Alyeska Compl. (Dkt 1, 4:22-cv-01189) ("AC") ¶¶ 152-253; Orbis Compl. (Dkt. 1, 4:22-cv-02590) ("OC") ¶¶ 161-314.  In particular, Opt-Outs allege numerous misstatements by AMR and its officers that Opt-Outs do not (and could not) attribute to Dimitrievich or McMullen.  *Id.*  The alleged misstatements span August 2017 to August 2018 and cover an array of topics, including projections, investment criteria, cost structures, and operational and quarterly updates, and appear in press releases, slide decks, conference calls, and SEC filings.

Opt-Outs' complaints charge Dimitrievich and McMullen with making just nine statements, all within a Form 10-K ("2017 10-K") that they signed as AMR Directors[2] only weeks after the 2018 SPAC transaction closed.  Notably, at summary judgment, Opt-Outs declined to defend their 10(b) claims as to those nine statements.  Dkt. 474 at 5, n.4.

## B.    Nye's Deficient Expert Report

On August 31, 2023, Opt-Outs submitted the expert report of Dr. Zachary Nye, a financial economist who, unlike Boone, holds no tenured faculty position.  As Opt-Outs concede, Nye is a serial testifier for plaintiffs in securities class actions.  Mot. at 7.

---

[2] *See* AC ¶ ¶ 175, 177, 206, 208, 223; OC ¶ ¶ 184, 186, 222, 224, 239.

Opt-Outs offer Nye as an expert on loss causation and damages.  To support his expert report, Nye conducted an event study to calculate the alleged damages stemming from the alleged misrepresentations of all of the defendants.  However, as Nye concedes,

███████████████████████████████████████████████████████████████

█████████████████████████████████  Thus, although Dimitrievich and McMullen are only alleged to have made a subset of the statements at issue, Nye made no attempt to calculate the damages stemming from those statements alone.

Nye justifies his failure to conduct such analysis ███████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████.  *Id.*  For example, by Nye's reasoning, ████████████████████████████████████

███████████████████████████████████████████████████████████████

███ ████ ██ ████ ████ ██ ████████ ██ █ ████ ██ ███ ████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████.[3]

---

[3] Dr. Nye testified that ███████████████████████████████████████████
███████████████████████████████████████████████████████████████

Indeed, Nye's report does not even correct for confounding information.  To calculate the damages stemming from fraud, an expert must tabulate how the alleged fraudulent representations artificially inflated or maintained the stock price.  An event study calculates damages by, among other things, tabulating how the stock price declines once the "truth" about a false representation—or a corrective disclosure—is made public.  But to isolate the decline attributable to disclosure of the purported fraud, an event study must identify and control for confounding information—that is, the release of ***non-fraud related*** information that may also have caused the observed stock price declines.  Nye's event study ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████   In other words, the stock price declines that Nye measures include declines attributable to disclosure of "value relevant" Company-specific information—even when such information has nothing to do with the alleged misrepresentations or correcting them.

### C.   Boone Addresses Deficiencies In Nye's Report

On October 19, 2023, Dimitrievich and McMullen submitted the expert rebuttal report of Professor Audra L. Boone, the C.R. Williams Professor of Finance at Texas Christian University.  Ex. C (Boone Rep.) ¶ 1.  Professor Boone holds a Ph.D. in Finance and a B.S. in Business Administration.  *Id.* ¶  2.  From 2012 to 2013, Boone served as a visiting scholar at the SEC, in the Division on Economic Research and Analysis, with the Office of Litigation Economics, *id.* ¶ 5, where her duties included "estimating ill-gotten

---

████████████████████████████████████████████████████████████
██████████████████████████████████████████ *Id.*

gains and damages" from securities fraud.[4]  From 2015 to 2016, she also served as a senior

financial economist for the SEC in the office of Financial Intermediaries.  *Id.*

After reviewing Nye's expert report, analyst reports, pleadings, and securities filings

relating to this matter, Boone submitted her expert report.  Boone did not opine on the

mathematical processes used in Nye's event studies, *id*. n.51, instead focusing her critique

on the framework that Nye used to calculate damages.  Specifically, Boone ███████████

██████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████.[5]

***First***, Boone opined that Nye failed to disaggregate the damages attributable to each

alleged misrepresentation.  Specifically, ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████  █████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████

---

[4]  *See infra* n.8.
[5]  Professor Boone's report ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████

8

████████████.  In other words, Nye only calculated the ***aggregate*** damages stemming from all of the alleged misrepresentations in the Opt-Out complaints, without isolating the price inflation (and thus damages) associated with each misrepresentation.

***Second***, Boone opined that ████████████████████████████████████████████████████████████████████████████████████████████████████.

***Third***, Boone opined that ████████████████████████████████████████████████████████████████████████████████████████████████████████.

## LEGAL STANDARD

Rule 702 tasks courts with ensuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 580 (1993).  However, "[t]he inquiry envisioned by Rule 702 is … a flexible one." *Id*. at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). While the proponent of an expert bears the burden of showing that the testimony is sufficiently reliable and relevant, it "need not prove to the judge that the expert's testimony is correct." *Johnson v. Arkema, Inc*., 685 F.3d 452, 459 (5th Cir. 2012). In general, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

---

█ ████████████████████████████████████████████
████████████████████████████████

## ARGUMENT

### I.   BOONE IS WELL-QUALIFIED

Opt-Outs' challenge to Boone's qualifications lacks any credible basis and must be rejected.  "[T]he standard for qualifying expert witnesses is fairly liberal; the witness need not have specialized expertise in the area directly pertinent to the issue in question if the witness has qualifications in the **general field** related to the subject matter in question." *Guzman v. Mem'l Hermann Hosp. Sys.*, 2008 WL 5273713, at *15 (S.D. Tex. Dec. 17, 2008) (emphasis added).  That liberal standard permits the admission of expert testimony where a court determines, in its discretion, that the expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues."  *Kumho*, 526 U.S. at 156 (citations omitted).  Mere "[d]ifferences in expertise … bear chiefly on the **weight** to be assigned to the testimony by the trier of fact, not its admissibility."  *Williams v. Manitowac Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018) (emphasis added).

Here, Boone's qualifications far surpass Rule 702's liberal threshold.  As even Opt-Outs concede, Boone is eminently qualified to offer expert testimony on "corporate finance and economics generally."  Mot. at 15-16.  Boone is a tenured professor of finance (unlike Nye, who is not a professor), and she holds a Ph.D. in finance, a subject she has taught for over twenty years.  Ex. C (Boone Rep. App'x A) at 1.  Boone has published at least nineteen articles in well-respected, peer reviewed publications regarding financial reporting and shareholder litigation.  *Id*. at 1-3.  Her work has appeared in still more publications, such as the *Journal of Law and Economics* and the *Handbook of Corporate Finance*.  *Id.* at 3.

While Opt-Outs nonetheless challenge Professor Boone's credentials to testify on the topic of "loss causation and damages," Mot. § 1, those subjects are well within the area in which Opt-Outs concede Professor Boone is an expert. The law does not countenance this type of hair-splitting. Instead, courts regularly permit experts to testify about "narrow sub-topics within h[er] broader expertise—notwithstanding a lack of specific experience with the narrower area." *Eldridge v. Pet Supermarket, Inc.,* 2020 WL 1076103, at *4 (S.D. Fla. Mar. 6, 2020); *see also Timoschuk v. Daimler Trucks N. Am., LLC*, 2014 WL 2533789, at *3 (W.D. Tex. June 4, 2014) ("[C]ourts routinely reject efforts to artificially narrow the scope of a witness's expertise in order to disqualify … her.").[7]

Even defining the relevant area of expertise narrowly, Boone is more than qualified to address "loss causation and damages" specifically. Mot. at 15-16. Professor Boone served for two years as a senior financial economist and visiting scholar for the SEC, where she investigated and estimated damages associated with particular disclosures. Boone's work supported the SEC's risk assessment practices, and its enforcement and litigation efforts by analyzing the very issues at stake here: loss causation and damages, under the same federal securities laws raised by Opt-Outs. *See* Mot. at 1; Ex. C (Boone Rep.) ¶ 5.[8]

---

[7] *See also ExxonMobil Glob. Servs. v. Bragg Crane Serv*., 2023 WL 6213438 at *7 (S.D. Tex. Sept. 25, 2023) (allowing an accountant to rebut damages opinions notwithstanding plaintiffs' claims that he "lack[ed] experience in the workings and valuations of refineries" and "misunderst[ood] a key component" of the opening experts' methodology); *Ultraflo Corp. v. Pelican Tank Parts, Inc*., 2013 WL 12137088, at *1 (S.D. Tex. Sept. 25, 2013) (finding an accountant "sufficiently qualified to offer an opinion on the factors and considerations that must be included in … reliable damages calculations, regardless of the particular industry at issue"); *Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*, 2006 WL 5503872 (W.D. Tex. Apr. 21, 2006) (finding a CPA equipped to opine on a radio show's lost profits despite having no specialized knowledge of the radio industry).

[8] Professor Boone was a visiting scholar in the SEC's Office of Litigation Economics, a group that "[p]rovides support in all aspects of SEC enforcement and litigation, such as identifying evidence of liability, analyzing materiality, estimating ill-gotten gains and damages, providing and responding to expert testimony in the context of negotiations and litigation, and supporting the distribution of recovered funds to harmed investors. *See* SEC, *DERA: Office of Litigation Economics*, https://www.sec.gov/page/dera_ole_page (last visited Jan. 18, 2024). Subsequently,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████

Indeed, Opt-Outs do not explain the specific expertise they believe a financial economist like Boone needs to enable her to evaluate the damages caused by securities fraud.[10]  They intentionally obscure the role of a damages expert, suggesting, without explanation, that it involves something more than "implementing sound economic principals"—expertise they admit that Boone has.  Mot. at 15.

The closest Opt-Outs come is the tenuous assertion that Boone "demonstrated a fundamental lack of understanding" about the subject matter of her testimony,[11] due to her supposed lack of knowledge regarding backcasting.  That outlandish suggestion does not match Boone's testimony.  Opt-Outs assert ████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

she was a senior financial economist in the SEC's Office of Financial Intermediaries, another group within the SEC's Division of Economic and Risk Analysis ("DERA").  *See* SEC, *About the Division of Economic and Risk Analysis,* https://www.sec.gov/dera/about (last visited Jan. 18, 2024).

[9]   In addition to her many academic papers analyzing stock price reactions, Boone teaches a class on financial statement analysis from a finance perspective.

[10] Opt-Outs cite no cases about securities fraud or the calculation of damages where the court disqualified an expert for being insufficiently specialized.  Opt-Outs rely on authority about expertise on accident reconstruction, insurance adjusting, mortgage fraud, tire design, and the causes of cerebral palsy, which shed little light on the type of knowledge they claim Professor Boone lacks.  Mot. at 14-15 (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999), *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins*. *Co*., 801 F.3d 512, 529-30 (5th Cir. 2015), *United States v. Cooks*, 589 F.3d 173, 180 (5th Cir. 2009); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007), and *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999)).

██ ████████████████████████████



. Opt-Outs' selective excerpting of Boone's testimony fails.

is unsurprising given the full context.  Neither has a singular or precise use in economic analysis.[12]  Moreover, the labels "constant dollar," "constant percentage," and "backcasting" ***never appear*** in Nye's report or in the academic sources he cites, nor does he define them.[13]  It is therefore unsurprising that when confronted with these terms

Regardless, this testimony could not disqualify Boone here because she is not offering an opinion on "constant dollar backcasting" as a general methodology, but on Nye's method of calculating out-of-pocket damages, which she demonstrated an in-depth understanding of.[14]    Boone offers the same, straight-forward criticism of Nye's

---

[12] Seminal papers in economics discussing event studies do not use the terms "constant dollar," "constant percentage" or "backcasting" at all.  *See e.g.*, Ex.s G (Fama), H (Campbell),  I (MacKinlay).  Similarly, formative texts on damages and loss causation in the securities litigation context do not use these terms (though they explain the concepts).  *See e.g.*, Exs. J (Fischel), K(Cornell).  Nor do many subsequent articles and major practitioners' texts.  *See, e.g.*, Exs. L (Mitchell), E (Tabak).  Indeed, even well-knowns articles that use the term "back-casting" do not necessarily discuss the "constant dollar" or "constant percentage" approach.  *See, e.g.*, Ex M (Ferrell).

[13] For the Court's convenience, the materials cited in paragraphs 163 and 165 of Nye's report are attached hereto as  Ex. E (Tabak) and Ex. F (Gold).

[14] *See infra* Section II.B (explaining Boone's criticisms of Nye's analysis, which are consistent with black-letter securities fraud law); *see also id.* at pp. 18-19 and notes 20-21 (explaining that even Opt-Outs' authority belies their assertion that the "constant dollar" approach is a "widely accepted damages methodology" and provides no support for their argument that the constant dollar approach ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (citing Mot. 16, 23).

methodology as the other Defendants' expert, Dr. Stulz, who also opines ████████ ████████████████████████████████████████████████████████████████ ████████████████ Regardless, Nye himself admitted ████████████████████ ███████████████████████████████████████████████ Singling out Boone for disqualification because she offered opinions consistent **with every other damages expert in this case** makes little sense.[17]

Distilled to its core, Plaintiffs' argument is that Boone should be disqualified because she has never served as a loss causation expert in a securities fraud trial, (Mot. at 11, 15), which is also no basis for a *Daubert* motion. *See, e.g.*, *McNamara v. Bre-X Minerals, Ltd.,* 2002 WL 32076175, at *3-4 (E.D. Tex, Sept. 30, 2002) (rejecting argument that an economist was unqualified to testify on efficient markets and fraud-on-the-market theory because he had never done so). Courts within the Fifth Circuit "have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be 'qualified' as an expert on that issue." *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 664 (S.D. Tex. 2009) ("Prior qualification as an expert witness [is] not required to be possessed by every witness acting as an expert."); *Nat'l. Union Fire Ins. Co. of Pittsburgh v. Smith Tank & Steel, Inc.*, 2014 WL

---

[15] Ex. N (Stulz Rep.) ¶ 339.

■ ████████████████████████████████████████████████████
████████████████████████████████████
■ ████████████████████████████
████████████████████████████████████████████████████
██████████████  ██████████████

12690177, at *4 (M.D. La. Nov. 6, 2014) ("The fact that Knight has never testified on the specific issue in question does not disqualify him."). Were the law otherwise, *no* expert witness *could ever* appear for the first time.[18]  As an expert in finance with substantial experience with the market impact of disclosures, Boone is undoubtedly qualified.

## II.   BOONE'S TESTIMONY IS RELIABLE

Opt-Outs' request to disqualify Boone on the grounds that she has not applied a reliable methodology is similarly groundless.  Expert testimony is reliable if it is "grounded in the methods and procedures of science" and "more than unsupported speculation or subjective belief."  *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019).  The inquiry is "flexible" and case-specific: it must account for "the nature of the issue, the particular expertise, and the subject of the expert's testimony."  *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citing *Daubert*, 509 U.S. at 594-95); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002).  The essential condition is that the expert use "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 693 (5th Cir. 2012) (quoting *Valencia*, 600 F.3d at 424).  The *Daubert* standard is permissive.  *14.38 Acres of Land*, 80 F.3d at 1079 ("[P]erceived flaws" in expert testimony are "matters properly to be tested in the crucible of adversarial proceedings.").

---

[18] In fact, courts are inherently suspicious of "career expert witnesses."  *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (courts should consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."); *see also Simpson v. Quarterman*, 593 F.Supp.2d 922, 937 (E.D. Tex. 2009) ("Finders of fact are cautioned to consider the possible bias of an expert witness 'including any bias you may infer…from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.").

## A.    Boone's Opinions Regarding Disaggregation Are Sound

Boone's methodology—utilizing economic principles to critique Nye's approach—is not only sound but consistent with well-settled law on loss causation.  Plaintiffs bear "'the burden of proving' that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover.'"  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (quoting 15 U.S.C. § 78u-4(b)(4)).   In *Dura*, the Supreme Court held that evidence that the security's price was inflated at the time of purchase is insufficient to establish damages.  *Id*. at 342.  Plaintiffs' economic loss must result from revealing the fraudulently concealed truth to the market and ***not*** from "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price."  *Id*. at 342-43; *Lormand v. US Unwired, Inc*., 565 F.3d 228, 255 (5th Cir. 2009).[19]  Loss causation requires: "(1) identifying a 'corrective disclosure' (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop."  *Employees' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 903-04 (5th Cir. 2018).

---

[19] *Meyers v. Moody*, 693 F.2d 1196, 1212 (5th Cir. 1982) ([T]he measure of damages recoverable … under Texas common law is the same…as it is under Rule 10b–5."); 15 U.S.C. § 78u–4(b)(4) (requiring that private securities fraud actions under the Exchange Act, including those arising under Section 18, "prov[e] … the act or omission … caused the loss for which the plaintiffs seek to recover damages"); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 813 (S.D. Tex. 2007) (Section 18 plaintiffs must prove that reliance on the false or misleading statement caused loss to the plaintiff); *see also* Ex. D (Nye Rep.) ¶¶ 172 n.340, 183 (explaining that Nye assumes, the methodology for calculating per share damages under Section 10(b) is the same as the methodology for calculating such damages under Section 18 and Texas common law, with minor modifications).

A critical component of establishing loss causation is showing that it was the corrective disclosure, and "***not other unrelated negative statements***, that caused a significant amount of the decline." *Fener v. Operating Engineers Const. Indus. and Misc. Pension Fund (LOCAL 66)*, 579 F.3d 401, 409 (5th Cir. 2009); *Magruder v. Halliburton Co.*, 2009 WL 854656, at *15 (N.D. Tex. 2009) ("Plaintiffs simply fail[ed] to connect the alleged misrepresentations with correlative corrective disclosures during the Class Period"); *id.* ("A corrective disclosure, at a minimum, requires that the prior misrepresentation be identified, and that the fraud of the prior representation be revealed to the market, which subsequently reacts by adjusting the stock price thereby harming the plaintiffs.").

Boone's critique of Nye's failure to disaggregate damages hews closely to this Fifth Circuit guidance.  Boone █████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████   ████████

      █████████████████████████████████████

      █████████████████████████████████████

      ██████████████████████   █████████████

      █████████████████████████████████████

      █████████████████████████████████████

      █████████████████████████████████████

      █████████████████████████████████████

      █████████████████████████████████████

      ██████████████

███████ (emphasis added).   Boone's critique is consistent with applicable law: by lumping the misrepresentations together, Nye failed to calculate the specific harm Messrs. Dimitrievich and McMullen's statements allegedly caused, as distinct from "unrelated negative statements" corresponding to the ***other*** alleged misrepresentations that they did not make.  *Fener*, 579 F.3d at 409.

Opt-Outs' repeated invocation of "constant dollar backcasting" does not rectify this error.  Even Opt-Outs' authority belies their assertion that the "constant dollar" approach is a "widely accepted damages methodology."  *See* Mot. at 16.  In *In re BP p.l.c. Securities Litigation* 2014 WL 2112823 (S.D. Tex. May 29, 2014), aff'd *Ludlow v. BP, p.l.c.,* 800 F.3d 674 (5th Cir. 2015),the Court addressed plaintiffs' use of the "constant dollar" method to calculate losses at the class certification stage under the lenient standard of Rule 23 of the Federal Rules of Civil Procedure.  *Id.* at \*12-13.  The Court doubted that plaintiffs' ultimately could prove damages under this method, noting an "apparent disconnect between certain alleged corrective events and the fraud which [defendants] are alleged to have corrected."  *Id*.; *see also Ludlow,* 800 F.3d at 687-88 (holding plaintiffs would need to prove "that the portion of the price fall they seek in damages is directly attributable to the misrepresentation," but did not need to do so at the certification stage).  Opt-Outs' other cases, which are unpublished and out-of-circuit, either fail to address the validity of the "constant dollar" approach or criticize it.[20]  Further, Opt-Outs cite no cases showing that

---

[20] *See In re St. Jude Med. Inc. Sec. Litig.* 2014 WL 6908434, at \*7-8 (D. Minn. Dec. 8, 2014) (rejecting a class decertification request only because defendants stipulated to class certification and that it was possible to calculate damages on a class-wide basis); *see In re Allstate Corp. Sec. Litig.*, 2022 WL 842737, at \*17-18 (N.D. Ill. Jan. 10, 2022) (mentioning the "constant dollar" method in footnote but noting defendants had not challenged it); *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at \*6 (D. Ariz. Dec. 27, 2019) (agreeing that the "constant dollar"

the use of "constant dollar backcasting" absolves them of the obligation to prove loss causation or to account for confounding information.[21]   *See* Mot. at 23.   Thus, these authorities have no bearing on Boone's critique of Nye's failure to isolate the damages from Dimitrievich and McMullen's specific alleged misstatements.

Opt-Outs also seek to disqualify Boone for failing to replicate Nye's event study, but there is no requirement she do so.   A rebuttal expert need not "reinvent the wheel" or "offer[] an alternative … analysis" to properly "identify flaws" in an opening report. *VeroBlue Farms USA, Inc. v. Wulf*, 2023 WL 348016, at *2 (N.D. Tex. Jan. 20, 2023) (denying motion to exclude a rebuttal expert); *see also Rivas v. Preston*, 2012 WL 7782960, at *6 (W.D. Tex. Feb. 29, 2012).   Indeed, "[d]efendants ha[ve] absolutely no obligation to conduct their own event study" to critique Nye's analysis.   *See Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 916-17 (S.D. Cal. 2019).   While event studies are often necessary for ***plaintiffs*** to establish loss causation, defense experts may criticize such analyses without redoing them.   *Id.* at 916-17 (allowing defense expert to critique plaintiffs' expert's event study without redoing it).   That is exactly the analysis Boone offers here.

---

approach "overstate[s]" inflation); *In re Novatel Wireless Sec. Litig.*, 2013 WL 12247558, at *1, 3-4, n.4 (S.D. Cal. Nov. 19, 2013) (rejecting interlocutory appeal asking court to rule that the "constant percentage method" conflicts with *Dura*, based on the heavy burden imposed by Section 1292(b) and because the issue was more appropriate for summary judgment).

[21] *See In re BP*, 2014 WL 2112823, at *12-13 (certifying plaintiff class, but questioning whether plaintiffs would ultimately be able to prove loss causation because there was a "disconnect" between the alleged fraud and supposedly corrective information); *Ludlow*, 800 F.3d at 687-88 (affirming the *BP* district court because although plaintiffs must ultimately "isolate[] and remove[]" confounding factors contributing to the stock price declines, they need not do so "at the certification stage"); *In re St. Jude*, 2014 WL 6908434, at *7-8 (refusing to decertify class, but noting that "constant inflation" backcasting did not consider impact of new information); *In re Allstate Corp.*, 2022 WL 842737, at *17-18 (noting that defendants had not challenged the "constant dollar" method); *Smilovits*, 2019 WL 7282026, at *9 (denying motion to exclude expert even though his "constant dollar" analysis tended to overstate price inflation; but this "go[es] to … the weight" of his opinions).

### B.      Boone's Opinions Regarding Confounding Information Are Sound

Boone applied appropriate methodology when she criticized Nye's failure to account for confounding factors. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████   ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████   ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████. This process is consistent with the well-settled law on loss causation. *Whole Foods*, 905 F.3d at 903-04 (holding loss causation requires "eliminating other possible explanations for [a] price drop" after a corrective disclosure).

Opt-Outs claim that Boone's criticism is invalid and assert that Nye did correct for confounding information. Mot. at 23. But addressing confounding information requires much more than simply correcting for "broader market or industry factors," as Opt-Outs claim Nye did here. *Id.* "To establish a causal link between stock price movement and misrepresentations," he must also "control for … ***company-specific information released***

*to the market unrelated to the alleged fraud*.”  *Bricklayers & Trowel Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 190 (D. Mass. 2012).  Nye's failure to establish a causal link is the crux of Boone's criticism:  ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████  Thus, Boone's criticism is both methodologically sound and consistent with the law.[22]

### C.    Boone's Opinions Regarding the SEC Investigation Are Sound

Boone is well-supported in her view that it is “fundamentally flawed” to measure the damages caused by the ICFR Statement by using the price declines that followed AMR's May 17, 2019 disclosure of an SEC investigation, as Nye did here.  Boone opines that  █████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████  This opinion is consistent with the black letter principle that “[a]n efficient market is said to digest or impound news into the stock price *in a matter of minutes*.”  *Erica P. John Fund, Inc. v. Halliburton Co*., 309 F.R.D. 251, 269 (N.D. Tex. 2015).  Thus, a “corrective disclosure must reveal some information not already known to the market, otherwise ‘the stock price would have incorporated that information, and its disclosure could not have caused a loss.’”  *Whole Foods*, 905 F.3d at 904 (citation omitted).

---

[22] Opt-Outs criticize Boone for failing to show that non-fraud related factors caused price declines, but that improperly flips the burden of proof.  Instead, Opt-Outs, through Nye, must establish loss causation through reliable methodology.  *See Huddleston v. Herman MacLean*, 640 F.2d 534, 549 (5th Cir. 1981).

Here, Opt-Outs offer no specifics regarding what was revealed on May 17, 2019 that was known by Defendants but withheld during AMR's February 25th disclosure.

Although Opt-Outs counter that Nye's regression "scientifically demonstrates that the drop in the price of Alta Mesa stock on May 19 was caused by new, fraud-related, company specific information," Mot. at 25, that suffers from many fallacies.  ***First***, as set forth above, Nye did not correct for company-specific information that was ***not fraud related***.  Indeed, as Boone explains. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Thus, Nye does not ████████

████████████████████████████████████████████████

████████████████████████████

***Second***, to the extent that Opt-Outs challenge Boone's failure to "conduct a market efficiency analysis" or event study, Mot. at 12-13, 21, that is not required to critique Nye. *See supra Section* II.A at p. 19; *Baker*, 423 F. Supp. 3d at 916-17.

## III.   BOONE'S OPINIONS ARE RELEVANT AND HELPFUL

Opt-Outs' challenge to Boone's relevance and "helpfulness" must also be rejected. Mot. at 17.  Rule 702's "helpfulness threshold is low: it is 'principally … a matter of relevance.'"  *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 459 n. 14 (5th Cir. 2013).

### A.   Boone's Opinions About the Alleged Misrepresentations Are Relevant

Although Opt-Outs incorrectly attack the relevance of Boone's opinions by suggesting that she addressed only one of Opt-Outs' alleged misrepresentations, her

opinions apply to all nine alleged misstatements in the 2017 10-K.  As Boone explained ▮



▮▮▮▮  *See supra* Section II.A.

That point—which applies to all of the misrepresentations Opt-Outs allege—should not surprise Opt-Outs because it is disclosed in her report.  For example, Boone states:

Boone's testimony clarifying these opinions is consistent with Rule 26(a)(2), which "contemplates that the expert will supplement, elaborate upon, [and] explain . . [her] report."  *Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167-8 (D.C. Cir. 2007) ("The purpose of the rule is to eliminate 'unfair surprise to the opposing party'…. But it 'does not limit an expert's testimony simply to reading [her] report.'"); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing*, 218 F.R.D. 125, 132 (E.D. Tex. 2003).[24]

Regardless, even if Boone's testimony extended beyond the strict text of her report, Opt-Outs can scarcely claim unfair surprise for at least three reasons.  ***First,*** Opt-Outs' expert ***conceded*** the very point that they seek to prevent Boone from making. ▮▮▮

---

[23] ▮▮▮▮

[24] Because Boone's elaboration of her written report is proper, she need not supplement it under Rule 26(e).

 Opt-Outs were hardly surprised when Boone said ***the very same thing that Nye admitted***.  Nor should they have been: ***every*** damages expert in this action has agreed with the points Boone makes.

***Second***, even assuming that Boone's report was as limited as Opt-Outs claim, Boone clarified her opinions on the record, and counsel for Opt-Outs had ample opportunity to question Boone and explore the bases of her opinions.  Moreover, Opt-Outs concede that prior to her deposition, Boone disclosed her opinions about ██████████ ██████   ████████████████████████ ███████████████████████████ ███ ████████  If that is true for one misrepresentation, then it must be true as a matter of logic for all of them.

***Third***, even if, as Opt-Outs claim, Boone only addressed a subset of the alleged misstatements, Mot. at 17-18, her opinions "need not be dispositive of ***all issues*** in a case to be relevant to the jury."  *U.S. ex rel. Ruscher v. Omnicare, Inc.,* 2015 WL 5178074, at *12 (S.D. Tex. Sept. 3, 2015).  Boone's analysis of the ICFR Statement alone shows (at least) that Opt-Outs cannot demonstrate that this statement caused damages.  And, more significantly, because Nye ***only*** calculates the damages stemming from ***all*** of the misrepresentations on an aggregate basis, Opt-Outs cannot establish what the revised damages figure should be if even that one misrepresentation is not actionable.

**B.     Boone Did Not Ignore the Corrective Disclosure Dates**

Opt-Outs' falsely claim that Boone ignored the August 2018 and November 2018 corrective disclosure dates.  Mot. at 17.  To the contrary, Boone concludes that ██████ ███████████████████████████████████████████████████████████████████████ ██ Boone reviewed the information released on those dates and determined that Nye failed to establish a plausible causal connection between those statements and the August and November price declines.[26]  *Whole Foods*, 905 F.3d at 903-04 (a "corrective disclosure" must reveal "previously concealed" truth that causes stock price decline).  As Boone testified ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Opt-Outs' motion.

---



[25] ██████████████████████████████████████████████████

Dated:    January 19, 2024

Respectfully submitted,

/s/ *Christopher Porter*
(signed by permission of Attorney-in-Charge)

Karl S. Stern (Attorney-in-Charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 /
Facsimile:   (713) 221-7100
Email:
karlstern@quinnemanuel.com
chrisporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Silpa Maruri (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100
Email:
michaelcarlinsky@quinnemanuel.com
silpamaruri@quinnemanuel.com
courtneywhang@quinnemanuel.com
jacobwaldman@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT PARTNERS, LLC AND DON DIMITRIEVICH**

Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
Kenneth A. Young (Attorney-in-Charge)
Texas Bar No. 25088699,
S.D. Tex. ID 2506614
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS
INTERNATIONAL LLP
609 Main Street
Houston, Texas 77002
Phone:      (713) 836-3600
Fax:          (713) 836-3601
Emails:    nick.brown@kirkland.com
                  kenneth.young@kirkland.com

**COUNSEL FOR BAYOU CITY
ENERGY MANAGEMENT, LLC
AND WILLIAM MCMULLEN**

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served under seal by the Court's ECF system, and

a copy has been served by email to counsel for all parties on January 19, 2024.

/s/ *Christopher Porter*
By:  Christopher Porter
