# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 **CLASS ACTION** [Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., Plaintiffs, v. ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER, Defendants. | Civil Action No. 4:22-cv-001189 [Consolidated Case] |

ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P.,

                    Plaintiffs,

      v.

ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGYMANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; RONALD SMITH; DON DIMITRIEVICH; PIERRE F. LAPEYRE, JR.; DAVID M. LEUSCHEN; WILLIAM W. MCMULLEN; DONALD SINCLAIR; STEPHEN COATS; and THOMAS J. WALKER,

                    Defendants.

Civil Action No. 4:22-cv-02590

[Consolidated Case]

**DEFENDANTS' OPPOSITION TO OPT-OUT PLAINTIFFS' MOTION TO EXCLUDE EXPERT OPINIONS OF STEVEN J. PULLY**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NATURE AND STAGE OF THE PROCEEDING AND  SUMMARY OF THE
    ARGUMENT ....................................................................................................1

STATEMENT OF THE ISSUES.........................................................................................5

LEGAL STANDARD...........................................................................................................5

ARGUMENT ........................................................................................................................7

I.      MR. PULLY'S OPINIONS WERE FORMED AND ARE SUPPORTED BY A
RELIABLE METHODOLOGY ................................................................................7

II.    CONSIDERATION OF CERTAIN EVIDENCE IS NOT GROUNDS FOR
EXCLUSION...........................................................................................................10

      A.     The Evidence Opt-Outs Claim That Mr. Pully Failed To Consider Either
Does Not Exist Or Is Immaterial To His Opinions................................................11

III.   PLAINTIFFS FAIL TO IDENTIFY ANY LEGAL CONCLUSION ..............................13

CONCLUSION....................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Am. Can! v. Arch Ins. Co.*,
   597 F. Supp. 3d 1038 (N.D. Tex. 2022) .................................................................17

*Ariwodo v. U.S. Customs & Immigr. Enf't*,
   2007 WL 580845 (S.D. Tex. Feb. 20, 2007) ............................................................6

*Assure Neuromonitoring Louisiana, LLC v. Fairway Med. Ctr., L.L.C.*,
   2023 WL 5831713 (E.D. La. Sept. 8, 2023) ...........................................................14

*Black v. Toys R US-Delaware, Inc.*,
   2010 WL 4702344 (S.D. Tex. Nov. 10, 2010) ....................................................7, 13

*Browning v. Sw. Rsch. Inst.*,
   2006 WL 6549921 (W.D. Tex. Aug. 17, 2006) ........................................................5

*Cantu Servs., Inc. v. Frazier*,
   2016 WL 237067 (W.D. La. Jan. 19, 2016) ...........................................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..............................................................................3, 4, 5, 6, 13

*E.E.O.C. v. Boh Bros. Const. Co.*,
   731 F.3d 444 (5th Cir. 2013) (en banc) ...................................................................6

*Ergon-West Va., Inc. v. Dynegy Mktg. & Trade*,
   706 F.3d 419 (5th Cir. 2013) .................................................................................15

*Fair v. Allen*,
   669 F.3d 601 (5th Cir. 2012) .................................................................................11

*Flanagan v. City of Dallas*,
   2017 WL 2817424 (N.D. Tex. May 25, 2017) .......................................................17

*Floyd v. Hefner*,
   556 F. Supp. 2d 617 (S.D. Tex. 2008) ...................................................................16

*Garcia v. Harris Cnty.*,
   2018 WL 6068157 (S.D. Tex. Nov. 20, 2018) .......................................................12

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
   2010 WL 4065465 (S.D. Tex. Oct. 9, 2010) .........................................................7, 8

*Jones v. Cain*,
   600 F.3d 527 (5th Cir. 2010) .......................................................................15

*Joseph v. Signal Int'l L.L.C.*,
   2015 WL 12766134 (E.D. Tex. Feb. 12, 2015) ...........................................7

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999).................................................................................6, 7

*Lilley v. Home Depot U.S.A., Inc.*,
   567 F. Supp. 2d 953 (S.D. Tex. 2008) ........................................................11

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) ........................................................................6

*Peteet v. Dow Chem. Co.*,
   868 F.2d 1428 (5th Cir. 1989) ......................................................................9

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ........................................................................7

*Pittman v. U.S. Bank NA, Tr. to Bank of Am., NA*,
   451 F. Supp. 3d 686 (E.D. Tex. 2020)..........................................................5

*Pride Centric Res., Inc. v. LaPorte*,
   2021 WL 4476989 (E.D. La. Sept. 30, 2021) ............................................11

*Estate of Sowell v. United States*,
   198 F.3d 169 (5th Cir. 1999) ................................................................15, 16

*United States v. 14.38 Acres of Land, More or Less Situated In Leflore Cnty., Miss.*,
   80 F.3d 1074 (5th Cir. 1996) ...............................................................2, 5, 11

*United States v. Dazey*,
   403 F.3d 1147 (10th Cir. 2005) ...........................................................5, 14, 15

*Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*,
   278 F.3d 523 (5th Cir. 2002) .................................................................5, 17

## Other Authorities

Fed. R. Evid. 702 ..........................................................................................5, 6, 13

Fed. R. Evid. 704 ................................................................................................5

Opposing Defendants ARM Energy LLC ("ARM"), Bayou City Management, LLC ("Bayou"), HPS Investment Partners ("HPS"), Donald Dimitrievich, and William McMullen (together, "Opposing Defendants") file this response in opposition to the Opt-Out Plaintiffs' (hereinafter, "Opt-Outs") Motion to Exclude the Testimony of Steven J. Pully, Dkt. 522 (the "Motion" or "Mot.").

## NATURE AND STAGE OF THE PROCEEDING AND SUMMARY OF THE ARGUMENT

For years, Opt-Outs have attempted to convince this Court that a single, independent board member or minority shareholder could somehow control a multibillion-dollar, publicly traded company. In furtherance of that fallacy, Opt-Outs now attempt to exclude the opinions of Steven Pully, Opposing Defendants' corporate governance expert. Mr. Pully's opinions demonstrate the absurdity of Opt-Outs' claims in light of industry custom and practice, based on his decades of experience on corporate boards in the oil and gas space.

As a threshold matter, there is no record evidence to support Opt-Outs' claims. Opposing Defendants have moved for summary judgment in this matter, and those motions are currently pending before this Court. *See* Opposing Defendants' Motions for Summary Judgment (Dkts. 422, 423, 424, 427). However, to the extent Opt-Outs' and Class Plaintiffs' claims proceed to trial, Opposing Defendants should be permitted to offer an expert to educate the jury on the industry custom and practice of selling interests in a large corporate merger and the process by which board members review and ultimately sign Form 10-Ks.

Opt-Outs are requesting that this Court exclude Mr. Pully's opinions on these relevant topics on the flawed premise that his opinions: (1) were rendered without a reliable methodology; and (2) are impermissible legal conclusions. These arguments fail for three reasons:

**First**, Mr. Pully's opinions about the industry custom and practice of minority shareholders and corporate board members are based on sound methodology, *i.e.*, his review of the record, analyzed through the lens of industry custom and practice based on his extensive professional experience. Ex. A (Pully Rep.) ¶ 20. Critically, Opt-Outs do not dispute the adequacy of Mr. Pully's professional experience. Mot. at 8 (admitting that "'it is not [Mr. Pully's] CV that is at issue' on this motion") (internal citations omitted). As detailed in his report, ███████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ Ex. A (Pully Rep.) ¶¶ 1, 7-9. ██████████████████████ ████████████████████████████████████████████████ ██████████████ Ex. A (Pully Rep.) ¶¶ 5, 10-11.

**Second**, Opt-Outs' challenge to specific documents that Mr. Pully did, or did not, describe in his report goes to the weight of his opinions, not admissibility. *See United States v. 14.38 Acres of Land, More or Less Situated In Leflore Cnty, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.") (internal quotations and citations omitted).

**Finally**, Opt-Outs have not identified any legal conclusion to be reached by a factfinder that Mr. Pully's opinions supposedly supplant. Nor could they, as Mr. Pully's opinions are limited to industry custom and practice, not any legal standard, and do not replace any ultimate issue to be decided by the jury with respect to any claims asserted against Opposing Defendants.

In reality, Opt-Outs' Motion is nothing more than a belated attempt to remedy their own inaction throughout expert discovery. As a threshold matter, Opt-Outs failed to designate any affirmative corporate governance expert despite bearing the burden of proof on the securities claims asserted against the Opposing Defendants.[1] If the claims against Opposing Defendants proceed to trial, Opt-Outs are left without any expert to explain the industry custom and practice of minority shareholders and corporate board members to the jury. Opt-Outs thus bring this Motion in a transparent attempt to mitigate the impact of their own failures.[2] But that is not a basis to strike Mr. Pully's properly designated expert testimony.

Further, even though "[v]igorous cross-examination" is the appropriate avenue to raise evidence an expert purportedly failed to consider, *Daubert v. Merrell Dow Pharms.,*

---

[1]  Class Plaintiffs designated a **rebuttal** corporate governance expert only. *See* Ex. B (Badawi Rep.).

[2]  To the extent Opt-Outs intend to rely on the Class Plaintiffs' rebuttal corporate governance expert, Adam Badawi—because they failed to disclose one themselves—Mr. Badawi's ███████████████████████████████████████████. Ex. C (Badawi Tr.) at 17:20-24 █████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████; *id.* at 18:8-12 ████████████
███████████████████████████████████████████████████████
███████████████████████████████████.

*Inc.*, 509 U.S. 579, 596 (1993), Opt-Outs simply opted-out of any such cross-examination of Mr. Pully.  Following Class Plaintiffs' questioning of Mr. Pully at his deposition, Opt-Outs questioned him for ***less than five minutes***.[3]  (Notably, despite leading the questioning at his deposition, Class Plaintiffs did not move to exclude Mr. Pully).  Opt-Outs' failure to ask Mr. Pully any questions about the methodology described in his report or the documents Opt-Outs now claim he should have considered are not grounds for exclusion. Likewise, Opt-Outs' failure to address Opposing Defendants' summary judgment motions cannot be remedied with this Motion.  Rather than substantively responding to these summary judgment motions, Opt-Outs simply joined Class Plaintiffs' briefs, Dkt. 447, 448, 450, which addressed different alleged misstatements than those pled by Opt-Outs, *see, e.g.*, Dkt. 474 at 5, n.4; Dkt. 467 (Reply to Opt-Outs' Joinders to Class Plaintiffs Oppositions to the Motions for Summary Judgment by Donald Dimitrievich and William McMullen).  As a result of this failure, Opt-Outs have waived any arguments that address the alleged misstatements that underlie and are specific to their Section 10(b) and 20(a) claims.  This Motion is a transparent attempt by Opt-Outs to mitigate their failure to challenge the pending summary judgment arguments.  Stated differently, Opt-Outs waived their right to participate in that process, and cannot now seek a do-over under the guise of a *Daubert* challenge.

Because Opt-Outs' have offered no viable basis to strike Mr. Pully's expert testimony, their Motion should be denied.

---

[3]  *See* Ex. D (Pully Tr.) at 226:21-229:10.

## STATEMENT OF THE ISSUES

This Opposition addresses:  (1) whether Mr. Pully's expert opinions employed a reliable methodology where he considered record evidence against his decades of relevant professional experience; and (2) whether Mr. Pully's opinions on the industry custom and practice of minority shareholders and board members constitute impermissible "legal" conclusions.

## LEGAL STANDARD

In the Fifth Circuit, expert testimony is "presumptively admissible unless excludable on some other ground." *United States v. 14.38 Acres of Land, More or Less Situated In Leflore Cnty, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (citing *Daubert*, 509 U.S. at 597).  "[T]he rejection of expert testimony is the exception rather than the rule," *Pittman v. U.S. Bank NA, Tr. to Bank of Am., NA*, 451 F. Supp. 3d 686, 688 (E.D. Tex. 2020) (quoting Fed. R. Evid. 702 advisory committee's note), and should only occur if the expert "testimony is so fundamentally unsupported that it cannot possibly help the factfinder." *Browning v. Sw. Rsch. Inst.*, 2006 WL 6549921, at *2 (W.D. Tex. Aug. 17, 2006).  Likewise, an expert opinion is not an impermissible legal conclusion subject to exclusion "just because it embraces an ultimate issue." Fed. R. Evid. 704.  Even if expert "testimony arguably embrace[s] the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment." *United States v. Dazey*, 403 F.3d 1147, 1171–72 (10th Cir. 2005); *see also Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002) (experts are permitted to offer opinion testimony as to industry standards or norms and whether or not they were followed

in a particular case as long as the expert's opinions involve questions of fact and not purely legal matters).

When performing a *Daubert* analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact. *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). This "helpfulness threshold is low: it is principally . . . a matter of relevance." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 459 n.14 (5th Cir. 2013) (en banc) (internal quotation marks and citations omitted). The evaluation of an expert's methodology must also be "flexible" and take into account "the nature of the issue, the expert's particular expertise, and the subject of his testimony," *Mathis*, 302 F.3d at 460 n.17 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)), and consider whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

For non-scientific experts, "indicia of reliability [] considered under *Daubert*[] includ[e] professional experience, education, training, and observations." *Ariwodo v. U.S. Customs & Immigr. Enf't*, 2007 WL 580845, at *4 (S.D. Tex. Feb. 20, 2007). "Some types of expert testimony will not rely on anything like a scientific method." Fed. R. Evid. 702 Advisory Committee Note (2000). Accordingly, where a non-scientific expert offers opinions based on a particular industry's custom and practice, like the opinions Mr. Pully offers here, that testimony is admissible if the expert's opinions are "based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002); *see also Joseph v. Signal Int'l L.L.C.*,

2015 WL 12766134, at *6 (E.D. Tex. Feb. 12, 2015) (expert testimony about what is "normal and customary" based that expert's "expertise about industry customs" in a relevant industry as compared to the facts is reliable and admissible).

## ARGUMENT

## I.   MR. PULLY'S OPINIONS WERE FORMED AND ARE SUPPORTED BY A RELIABLE METHODOLOGY

Non-scientific experts with relevant professional experience, like Mr. Pully, may offer expert opinions using a methodology that involves reviewing case materials and drawing conclusions from a "set of observations based on extensive and specialized experience." *Black v. Toys R US-Delaware, Inc.*, 2010 WL 4702344, at *4 (S.D. Tex. Nov. 10, 2010) (citing *Kumho*, 526 U.S. at 156); *see also Pipitone*, 288 F.3d at 247 (holding that it is appropriate for "[e]xpert's testimony [to be] based mainly on his personal observations, professional experience, education and training."). When an expert who has "amassed knowledge" based on "years of professional experience" in a relevant field offers an opinion after considering his "extensive professional experience" and "appl[ying it] to the facts presented," the expert's methodology is reliable because it is based on "experience." *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 2010 WL 4065465, at *11 (S.D. Tex. Oct. 9, 2010).

Mr. Pully has done precisely that and offered an expert opinion "based upon his extensive professional experience, as applied to the facts presented." *Id.* For example, Mr. Pully's professional background includes:



It is not the case, as Opt-Outs claim, that Mr. Pully's opinions are unreliable because his report lacks an "overarching methodology."  Mot. at 9.  That conclusion can only be reached by ignoring Mr. Pully's report, which, ███████████████████████████████ ██████████████████████████████████████████████████████████████, Ex. A (Pully Rep.) ¶¶ 27-81, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ *Id* ¶ 20.  And at his deposition, Mr. Pully testified that ███████████████████████ ██████████████████████████████████████████████████████████████ Ex. D (Pully Tr.) at 14:7-15:2.

Opt-Outs' argument that Mr. Pully's methodology was flawed because it included a review of case materials "hand-picked by counsel" also falls flat.  Mot. at 10. Specifically, Mr. Pully testified that ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

████████████  ██████████████████  Further, Mr. Pully confirmed that ████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████  *Id.* at 40:8-41:11.

Even if that were not the case, an expert's reliance on information provided by counsel

"does not require the exclusion of the expert's testimony." *Peteet v. Dow Chem. Co.*, 868

F.2d 1428, 1432 (5th Cir. 1989).

Opt-Outs also take issue with Mr. Pully's answer, ███████████  in response to

multiple incomplete hypothetical questions.  Mot. at 12.  Opt-Outs attempt to extrapolate

this response and frame Mr. Pully's methodology as *ad hoc* when, in reality, this truthful

answer was the result of the flawed framing of Class Plaintiffs' questions.  For example,

Class Plaintiffs asked six pages of incomplete hypothetical questions, to which Mr. Pully

explained that █████████████████████████████  ████████████████████████

████████████████████████████████  Ex. D (Pully Tr.) at 135:5-140:10.

Rather than try to ask an appropriate question, Class Plaintiffs repeated the same

incomplete hypothetical.  The full context of this testimony shows that Mr. Pully was not

███████████████████████████████  as Opt-Outs claim, Mot. at 12; he was simply

attempting to answer Class Plaintiffs' flawed questions.

It is also a mischaracterization for Opt-Outs to say that ████████████████████

█████████████████████████████  Mot. at 10.  Rather, Class Plaintiffs asked about

(and Mr. Pully therefore described) how case materials were presented to him.  Mr. Pully

then outlined, in detail, the iterative process where he reviewed certain case materials—

like pleadings, depositions, and exhibits—and then reacted to those materials by asking

questions or requesting additional materials, which were provided to him.  To pejoratively characterize his ***methodology*** as meandering is a blatant mischaracterization of Mr. Pully's actual testimony, which recounts the robust ***process*** he used to review case material.[4]

Opt-Outs' failure to ask about the adequacy of Mr. Pully's clearly outlined methodology, including the process by which he applied his professional experience to the evidentiary record, *see* Ex. A (Pully Rep.) ¶ 20, does not render his process unreliable.  Nor does it mean, as Opt-Outs claim, that Mr. Pully's opinions "rest on nothing more than his own say-so."  Mot. at 8.  If Opt-Outs had any questions about the methodology described in Mr. Pully's report, they should have asked.  Opt-Outs' failure to do so is not grounds for exclusion.

## II.   CONSIDERATION OF CERTAIN EVIDENCE IS NOT GROUNDS FOR EXCLUSION

Opt-Outs' Motion also takes issue with certain materials Mr. Pully did not consider when preparing his report.  But these criticisms go to the "weight to be assigned" to his opinions, and not their "admissibility."  *Lilley v. Home Depot U.S.A., Inc.*, 567 F. Supp. 2d

---

[4] 

Ex. D (Pully Tr.) at 38:11-39:11 (emphasis added).

953, 957 (S.D. Tex. 2008).  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"  *Id.* (citing *14.38 Acres of Land*, 80 F.3d at 1077); *see also Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) ("the basis of an expert's opinion usually goes to the weight, not the admissibility, of the testimony."); *Pride Centric Res., Inc. v. LaPorte*, 2021 WL 4476989, at *3 (E.D. La. Sept. 30, 2021) ("an expert is not required to address every fact in the record").  Opt-Outs have identified no proper grounds on which Mr. Pully's opinions could be excluded.

### A.    The Evidence Opt-Outs Claim That Mr. Pully Failed To Consider Either Does Not Exist Or Is Immaterial To His Opinions

The evidence Opt-Outs claim that Mr. Pully failed to consider does not impact the reliability of his testimony because it is either non-existent or immaterial to the opinions offered.  Opt-Outs, having chosen not to designate their own corporate governance expert, cannot dictate what material is considered by another party's expert.

Mr. Pully's opinions are not unreliable for failing to give weight to evidence that does not exist.  For example, Opt-Outs argue that Mr. Pully's opinion is unreliable because he failed to consider a ***lack of testimony*** from Mr. McMullen regarding "whether McMullen reviewed the 2017 10-K before signing it."  Mot. at 11.  Despite bearing the burden of proof on claims arising from ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████   ██████████████████ ████████████████████████████████  Mr. Pully's opinion should not

be struck due to ████████████████████████████████████████████ ████████████████████████████████ is squarely Opt-Outs' ***own doing***.  To the extent they simply disagree with the conclusions drawn by Mr. Pully based on the available record, Opt-Outs were free to designate their own rebuttal expert or "examine the factual basis for [his] opinion in cross-examination."  *Garcia v. Harris Cnty.*, 2018 WL 6068157, at *3 (S.D. Tex. Nov. 20, 2018) (internal quotations and citations omitted).  They did neither.

It is also of no consequence that Mr. Pully's opinions did not consider information that was immaterial to the opinions he offered, including public commentary surrounding SPACs or unidentified academic materials.  Mot. at 16.  Mr. Pully is offering an expert opinion on behalf of ***counterparties*** to the SPAC entity in the Business Combination—not any person or entity affiliated with the SPAC itself.  Ex. A (Pully Rep.) ¶¶ 29-30.  Given his extensive experience on corporate boards and working in finance, *supra* 6-7, which Opt-Outs do not question, Mot. at 8, Mr. Pully ████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████.  *Id.* ¶ 105.  When asked about this specifically, Mr. Pully responded that █████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████  Ex. D (Pully Tr.) at 227:14-228:4.[5]

---

[5]  It is similarly irrelevant that Mr. Pully has not "served as a director or executive for a SPAC or a company that went public via a de-SPAC merger, nor has he ever worked on a proxy statement for a de-SPAC merger."  Mot. at 16.  Opt-Outs have already admitted that they do not challenge Mr. Pully's extensive professional qualifications, ███████ ████████████████████████████████████████████████████  Mot. at 8.  Notably,

Opt-Outs' claim that Mr. Pully's opinions are unsupported by "objective evidence, such as actual academic or industry studies or other commentary" is similarly baseless. Mot. at 10.  Mr. Pully cited multiple authoritative sources in forming his opinions.  Mot. at 10.  He was under no obligation to consider an arbitrary additional amount of unidentified academic or industry literature, particularly in light of his decades of professional experience.  *See Black*, 2010 WL 4702344, at *4 ("the absence of an expert's reliance on published treatises or journals does not render [an expert's] testimony per se unreliable").  In fact, courts are "specifically caution[ed] against interpreting *Daubert* to require reliance on peer-reviewed publications in every case" when considering the application of Rule 702.  *Id.* at *4 (quoting Fed. R. Evid. 702 Advisory Committee Note).

## III.    PLAINTIFFS FAIL TO IDENTIFY ANY LEGAL CONCLUSION

The parties agree that an expert cannot render legal conclusions.  Mot. at 17-18.  Mr. Pully's opinions, however, are expressly limited to conclusions of ***industry custom and practice***, not any other standard, legal or otherwise.  While expert testimony on industry custom and practice will certainly educate the jury on the corporate backdrop relevant to the claims in this case, it does not supplant any ultimate decision of a factfinder.  *See, e.g.*, *Assure Neuromonitoring Louisiana, LLC v. Fairway Med. Ctr., L.L.C.*, 2023 WL 5831713, at *5 (E.D. La. Sept. 8, 2023) (holding that opinions based on expert's "experience and knowledge" of a relevant industry "offers helpful context regarding the custom and

---

Class Plaintiffs' rebuttal corporate governance expert, Mr. Badawi, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Ex. C (Badawi Tr.) at 21:15-24.

standard practices in the industry for the jury's consideration " and is not an impermissible legal conclusion that "merely tell[s] the jury what result to reach").

Opt-Outs' conclusory statement that Mr. Pully's opinions "interfere with the jury's role in applying the law to the facts," Mot. at 18, should be given no weight.  Opt-Outs do not identify *any* ultimate legal conclusion Mr. Pully has purportedly supplanted.  Nor can they.  Compliance (or noncompliance) with industry custom and practice is not a claim asserted against Opposing Defendants.

Despite this, Opt-Outs argue that Mr. Pully's opinion ████████████████

████████████████████████████████████████

████████████████████████  Mot. at 17.  Opt-Outs offer no support for this argument.  Mr. Pully's opinion is not a recitation of any legal obligation, or an assessment of whether such obligations were met.  *Cantu Servs., Inc. v. Frazier*, 2016 WL 237067, at *4 (W.D. La. Jan. 19, 2016) (distinguishing between expert "opinions [] explained within the context of the customary practices of the industry at issue and [the expert's] own experience and practice" and opinions about a parties' "legal duties" or obligations and finding the former admissible).  In reality, all Mr. Pully offers is a quintessential expert opinion that was reached by comparing his "extensive knowledge" of corporate governance against the actions undertaken by Opposing Defendants.  *Dazey*, 403 F.3d at 1171.  It is not an instruction that "simply tell[s] the jury to reach a particular verdict based on his own say-so."  *Id.*  Opining on whether Opposing Defendants acted in conformance with industry custom is relevant and helpful to a jury who may be unfamiliar with the complex dynamics of corporate boards or complicated financial transactions.  *See,*

*e.g.*, *Ergon-West Va.*, *Inc. v. Dynegy Mktg. & Trade*, 706 F.3d 419 (5th Cir. 2013) (permitting expert testimony regarding trade usage in the gas industry).  It is not grounds for exclusion.

The cases cited in Opt-Outs' Motion do not salvage their arguments.  For example, Opt-Outs cite to *Estate of Sowell v. United States*, Mot. at 17-18, which considered whether an Estate met its burden of proving "reasonable cause" for the late payment of estate taxes. 198 F.3d 169, 170 (5th Cir. 1999).  At trial, the Estate asked its expert "to testify about what a hypothetical estate executor, faced with the identical facts as the Estate in [that] case, would do if acting reasonably." *Id.* at 171.  The Fifth Circuit affirmed the exclusion of this hypothetical expert opinion on the grounds that it would convey to the jury a legal conclusion on the ultimate issue of "reasonable cause."  *Id.* at 173.  But no such hypothetical was rendered by Mr. Pully.  Moreover, Opt-Outs do not even attempt to identify the legal conclusion that Mr. Pully's opinions purportedly invade.[6]  This failure further highlights the difference between the facts here and those in *Sowell*, where the Estate's expert offered an opinion in response to the ***exact same*** ultimate question to be answered by the jury.  *Id.* at 171-72 ("Whether the Estate was 'acting reasonably' was, for all practical purposes, the ***only issue*** for the jury in this case to decide.") (emphasis added). *Sowell* is inapposite.

---

[6]  Nor can they do so on Reply, having waived the right to raise that argument by failing to include it in their opening Motion.  *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("Arguments raised for the first time in a reply brief are generally waived.").

The conclusion reached in *Floyd v. Hefner*, Mot. at 18, is similarly unpersuasive. 556 F. Supp. 2d 617 (S.D. Tex. 2008). In *Floyd*, the court excluded expert testimony about whether corporate directors had "acted in good faith" and "used the requisite care" in certain corporate dealings because the opinions represented impermissible legal conclusions. *Id.* at 640. While the expert in *Floyd* and Mr. Pully both testified on issues of corporate governance—the similarities end there. The claims brought against the director defendants in *Floyd* included breaches of fiduciary duty and a breach of the duty of care, and the opinions offered by plaintiff's expert spoke ***directly*** to elements of those claims. *Id.* at 627, 640. No such duty claims exist here. Ignoring these differences, Opt-Outs embrace *Floyd* and misstate its holding. *Floyd* does not stand for the proposition that "experts speaking to the custom and practice of directors cannot opine on whether the directors complied with that custom and practice," as Opt-Outs claim. Mot. at 18. Under *Floyd*, experts cannot do so when that is the ultimate issue to be decided by the jury. *Floyd*, 556 F. Supp. 2d at 640. That is not the case here.

Unlike the experts in *Sowell* and *Floyd*, Mr. Pully's opinions do not address any legal issue or ultimate question that the jury will need to address here.[7] Nor does Mr. Pully's testimony offer any "legal interpretations of Texas case law" or any relevant "statutes" or "policies." *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex.

---

[7] To the contrary, none of Opt-Outs' claims asserted against Opposing Defendants require proving adherence, or lack thereof, to industry custom and practice. *See* Dkt. 1 (Alyeska Compl.) ¶¶ 323-342, 356-377 and Dkt. 1 (Orbis Compl.) ¶¶ 398-417, 431-465 (listing the elements of each claim, none of which include adherence, or lack thereof, to industry custom and practice).

2022) (denying motion to strike attorney expert's testimony on relevant industry standards). Notably, Class Plaintiffs' rebuttal corporate governance expert, Mr. Badawi, *agreed with* Mr. Pully's ████████████████████████████████████████ ██████████████████████████████████████████.[8]

Indeed, courts in this district have permitted "opinion testimony as to industry standards or norms and whether or not they were followed in a particular case," like Mr. Pully's opinions here, "as long as such opinions involve questions of fact rather than purely legal matters." *Flanagan v. City of Dallas*, 2017 WL 2817424, at *1 (N.D. Tex. May 25, 2017) (citing *Waco Int'l, Inc.*, 278 F.3d at 533). Because industry custom and practice is not the ultimate legal issue to be decided in Opt-Outs' claims against Opposing Defendants, Mr. Pully's opinion regarding the Opposing Defendants' adherence to industry custom and practice is not grounds for exclusion.

## CONCLUSION

Opposing Defendants respectfully request that Opt-Outs' Motion To Exclude the Expert Opinions of Steven J. Pully be denied.

Dated:   January 19, 2024

Respectfully submitted,

/s/ *Christopher Porter*

---

[8] *See* Ex. B (Badawi Rep.) at 38 ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████ (emphasis added).

(signed by permission of Attorney-in-Charge)

Karl S. Stern (Attorney-in-Charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 /
Facsimile:   (713) 221-7100
Email:
karlstern@quinnemanuel.com
chrisporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Silpa Maruri (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100
Email:
michaelcarlinsky@quinnemanuel.com
silpamaruri@quinnemanuel.com
courtneywhang@quinnemanuel.com
jacobwaldman@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT PARTNERS, LLC AND DON DIMITRIEVICH**

David A. Baay (Attorney-in-Charge)
Fed. ID No. 598715
1001 Fannin Street, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6112
Fax: (713) 654-1301
davidbaay@eversheds-sutherland.com

Bruce M. Bettigole (*pro hac vice*)
The Grace Building, 40th Floor
1114 Avenues of the Americas
New York, NY 10023
Telephone: (212) 389-5000
Fax: (212) 389-5099
brucebettigole@eversheds-
sutherland.com

Adam C. Pollet (*pro hac vice*)
Andrea Gordon (*pro hac vice*)
700 Sixth Street N.W., Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Fax: (202) 637-3593
adampollet@eversheds-sutherland.com
andreagordon@eversheds-
sutherland.com

**COUNSEL TO ARM ENERGY
HOLDINGS, LLC**

Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
Kenneth A. Young (Attorney-in-Charge)
Texas Bar No. 25088699,
S.D. Tex. ID 2506614
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS
INTERNATIONAL LLP
609 Main Street
Houston, Texas 77002
Phone:      (713) 836-3600
Fax:          (713) 836-3601
Emails:     nick.brown@kirkland.com
                  kenneth.young@kirkland.com

**COUNSEL FOR BAYOU CITY
ENERGY MANAGEMENT, LLC
AND WILLIAM MCMULLEN**

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served under seal by the Court's ECF system, and a copy has been served by email to counsel for all parties on January 19, 2024.

/s/ *Christopher Porter*
By:  Christopher Porter