**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | CASE NO. 4:19-CV-00957 (CONSOLIDATED) |
| | JUDGE GEORGE C. HANKS, JR. |
| | THIS DOCUMENT RELATES TO: |
| | CASE NO. 4:22-CV-01189<br>CASE NO. 4:22-CV-02590 |

**THE DIRECT ACTION PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT ON OPT-OUT PLAINTIFFS' CLAIMS**

## <u>TABLE OF CONTENTS</u>

**Page**

NATURE AND STAGE OF THE PROCEEDING ...................................................... 1

COUNTERSTATEMENT OF ISSUES TO BE RULED UPON ...................................... 1

SUMMARY OF THE ARGUMENT ...................................................................... 2

COUNTERSTATEMENT OF MATERIAL DISPUTED FACTS ..................................... 4

    I.      Alta Mesa's Fraud ........................................................................... 4

    II.     Plaintiffs' Investment Processes ......................................................... 7

    III.    Plaintiffs Evaluated and Analyzed Information Provided By the Defendants Before Adding to Their Post-IPO Positions .................................. 8

    IV.    Plaintiffs Vote in Favor of the Merger Relying Upon Defendants' Misrepresentation and Omissions .................................................... 10

    V.     Plaintiffs Buy (or Hold) Alta Mesa Common Stock in Reliance on the Disclosures in the 2017 10-K ....................................................... 11

    VI.    Defendants Repeatedly Affirm the Quality of the Acreage Despite Disappointing Results .................................................................... 12

    VII.   Defendants Admit the Acreage Cannot Support 12 or More Wells Per Section…………. .......................................................................... 13

LEGAL STANDARD ..................................................................................... 13

ARGUMENT ............................................................................................... 14

    I.      The Jury Should Resolve Plaintiffs' Section 10(b) Claims ........................... 14

          A.    Defendants' Materially False and Misleading Statements Are Not Protected by the PSLRA's Safe Harbor ........................................... 14

          B.    The Opinion Statements Are Actionable ......................................... 16

          C.    The Jury Should Decide Whether Defendants' Misstatements Are Material ........................................................................... 16

D.     A Jury Should Determine Whether Plaintiffs Relied on Defendants' Misstatements for their Section 10(b) Claims ............ 17

E.     Plaintiffs Have Offered Adequate Evidence That Defendants' Misstatements Caused Their Massive Investment Losses ............... 17

II.     Plaintiffs Have Actionable Claims Under Section 14(a) ............................... 18

III.     Plaintiffs Have Each Established Actionable Claims Under Section 18 ........ 19

IV.     Plaintiffs Have Each Established Actionable Claims Under Texas Law ....... 19

A.     Defendants Made Material Misstatements with Scienter ............... 19

B.     Defendants Intended to Induce Plaintiffs' Reliance ....................... 19

C.     There is Substantial Evidence that Plaintiffs Relied on Defendants' Misrepresentations ....................................................... 20

D.     The Orbis Plaintiffs Have Established Viable Holder Claims ........ 24

E.     The Court Should Again Reject Defendants' Incorrect and Recycled Argument that SLUSA Bars the State Law Claims ........ 25

CONCLUSION ............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ......................................................................... 17

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986)................................................................................. 13, 14

*Del. Cty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  2024 WL 83503 (S.D. Tex. Jan. 8, 2024)...................................................... 15

*Ferguson v. Sec. Life of Denver Ins. Co.*,
  996 F. Supp. 597 (N.D. Tex.) .................................................................. 15, 20

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
  514 F. Supp. 3d 942 (S.D. Tex. 2021)........................................................... 15

*Grant Thornton v. Prospect High Income Fund*,
  314 S.W.3d 913 (Tex. 2010) ......................................................................... 24

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)....................................................................................... 17

*In re Alta Mesa Res., Inc. Sec. Litig.*,
  2023 WL 3873307 (S.D. Tex. June 7, 2023).................................................. 18

*In re Apache Corp.*,
  2022 WL 4277350 (S.D. Tex. Sept. 15, 2022).................................................. 2

*In re BP PLC Sec. Litig.*,
  2016 WL 3090779 (S.D. Tex. May 31, 2016).................................................. 23

*In re Nat'l Century Fin. Enters., Inc. Invest. Litig.*,
  846 F. Supp. 2d 828 (S.D. Ohio 2012) .................................................... 21, 22

*Ion v. Chevron USA, Inc.*,
  731 F.3d 379 (5th Cir. 2013) ......................................................................... 13

*Isquith v. Middle S. Utils., Inc.*,
  847 F.2d 186 (5th Cir. 1988) ......................................................................... 16

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
   546 S.W.3d 648 (Tex. 2018) ...................................................................... 20

*K.A. West, LLC v. GK Invs., Inc.*,
   2013 WL 5270861 (Tex. Ct. App. Sept. 17, 2013) ...................................... 22

*KB P'rs I, L.P. v. Pain Therapeutics, Inc.*,
   2015 WL 7760201 (W.D. Tex. Dec. 1, 2015) .............................................. 17

*Margolies v. Deason*,
   464 F.3d 547 (5th Cir. 2006) ...................................................................... 18

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
   58 F.4th 195 (5th Cir. 2023) ................................................................. 14, 15

*Rubinstein v. Collins*,
   20 F.3d 160 (5th Cir. 1994) ........................................................................ 15

*SEC v. Hoover*,
   903 F. Supp. 1135 (S.D. Tex. 1995) ........................................................... 16

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
   346 F. Supp. 3d 473 (S.D.N.Y. 2018) ................................................... 21, 24

*Spitzberg v. Hous. Am. Energy Corp.*,
   758 F. 3d 676 (5th Cir. 2014) ..................................................................... 14

*Trenholm v. Ratcliff*,
   646 S.W.2d 927 (Tex. 1983) ....................................................................... 19

*United States v. Pro. Compounding Ctrs. of Am., Inc.*,
   2023 WL 2669879 (W.D. Tex. Mar. 27, 2023) ........................................... 24

*Wright v. Carpenter*,
   579 S.W.2d 575 (Tex. Civ. App. 1979) ....................................................... 20

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................ 13

iv

## NATURE AND STAGE OF THE PROCEEDING

These cases arise from the collapse of Alta Mesa,[1] a multibillion dollar energy E&P venture that shockingly fell apart almost as soon as it went public.  The Alyeska Plaintiffs and the Orbis Plaintiffs (together, the "Plaintiffs") were two of the largest investors in Alta Mesa and suffered tremendous economic harm as a result of Defendants' misrepresentations and omissions made both in public disclosures, including the Proxy, and directly to the Plaintiffs.  Defendants now move for summary judgment against all claims asserted by the Plaintiffs.  (Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law on Opt-Out Plaintiffs' Claims (ECF No. 521) ("Defs. Br.").)  Defendants' motion should be denied.

## COUNTERSTATEMENT OF ISSUES TO BE RULED UPON

The issues to be ruled upon are:  whether Defendants have established that there are no genuine issues of disputed fact related to Plaintiffs' Section 10(b) claims and that a jury should not be allowed to resolve whether (a) the PSLRA's safe harbor applies to certain of Defendants' statements, (b) Defendants' purported opinion statements are actionable, (c) certain of Defendants' statements were material, and (d) Plaintiffs have adequately shown loss causation.  In addition, whether Defendants have established that there are no

---

[1] Party names and other relevant terms are defined in Appendix A, submitted herewith.  Citations to "Ex." are to the exhibits to the Declaration of Lawrence M. Rolnick in Opposition to Defendants' Motion for Summary Judgment on Opt-Out Plaintiffs Claims (ECF No. 575).  Citations to "Karr Decl." and "Karr Ex." are respectively to the Declaration of Adam R. Karr (ECF No. 576) and the exhibits thereto.  Citations to "Mitchell Decl." and "Mitchell Ex." are respectively to the Declaration of Randy Mitchell (ECF No. 577) and the exhibits thereto.

disputed issues of fact as to Plaintiffs' (i) Section 14(a) claims; (ii) Section 18 claims; and (iii) claims under Texas law, including Orbis's holder-in-reliance claims.

## SUMMARY OF THE ARGUMENT

There is overwhelming evidence that Defendants knowingly made a plethora of materially false and misleading statements to Plaintiffs about Alta Mesa. Defendants' misrepresentations were based on unfounded assumptions and were directly contrary to the actual data they had at the time they made those statements. The Court should reject Defendants' bid to escape liability for their brazen fraud.

*First*, there is a triable issue of fact about whether the so-called "safe-harbor" for forward-looking statements under the PSLRA renders any of Defendants' statements non-actionable under the Exchange Act. Many of Defendants' purportedly forward-looking statements were actually statements of then-present fact, placing them outside the scope of the safe-harbor. Moreover, the safe-harbor does not apply to Defendants' statements because "[w]hen risks have already begun to materialize, it is no longer sufficient to generally warn of the possibility of those risks in the future." *In re Apache Corp.*, 2022 WL 4277350, at *5 (S.D. Tex. Sept. 15, 2022), *adopted*, 2022 WL 17324439 (S.D. Tex. Nov. 29, 2022). The record shows that the question of whether Defendants knew that their statements were false and misleading must be decided by a jury. Defendants' purported opinion statements must go to the jury for the same reason.

*Second*, Plaintiffs' Section 14 claims should be decided by a jury. This Court has already ruled that those claims are timely, and therefore should reject Defendants' naked

bid for reconsideration.  The record evidence also makes clear that a jury should decide whether Defendants made the misstatements with scienter.

**Third**, Plaintiffs' Section 18 claims present triable issues of fact.  The Court should reject Defendants' attempt to relitigate this Court's motion-to-dismiss ruling that Plaintiffs' Section 18 claims are timely, and the question of Plaintiffs' actual reliance on Defendants' misstatements in Alta Mesa's 2017 Form 10-K is a fact-intensive inquiry.

**Finally**, Plaintiffs' state-law claims present triable issues of fact.  Contrary to Defendants' mischaracterization of the record, investment professionals from both Alyeska and Orbis testified that they relied on Defendants' statements in purchasing Alta Mesa securities.  In addition, Alyeska and Orbis investment professionals have submitted comprehensive declarations describing how they were misled by Defendants.  The Court should also reject Defendants' attempts to graft California law requirements onto Orbis's holder claims.  But in all events, there is ample evidence that Orbis relied on Defendants' misstatements in holding Alta Mesa shares.  A jury should decide the issue.

The evidence shows that Defendants knew well before the Merger that their drilling projections had no reasonable basis in fact and were actually contradicted by the factual data available to them.  Likewise, Defendants' statements about Alta Mesa's midstream business were based on knowingly manipulated data and unfounded assumptions.  A jury should decide whether Plaintiffs should be compensated for the massive investment losses they suffered at the hands of Defendants.

## COUNTERSTATEMENT OF MATERIAL DISPUTED FACTS

**I.  Alta Mesa's Fraud**

Alta Mesa's rise and fall occurred disturbingly quickly.  The Company began as a SPAC, Silver Run II, that was formed by the private equity firm Riverstone in March 2017.[2] On February 6, 2018, following a lengthy sales campaign to attract investors, Silver Run II merged with AMH, an upstream oil and gas production venture, and KFM, a midstream gathering and processing company, to form Alta Mesa.[3]  Barely a year later, on February 25, 2019, Alta Mesa took a $3.1 billion write-down—over 80% of the value ascribed to it in the Merger—and admitted to ineffective internal controls over financial reporting.[4]  Mere months later, on September 11, 2019, the Company filed for bankruptcy—less than two years after Riverstone sold Alta Mesa's shares to public investors.[5]

Alta Mesa's core promise to investors was to embark on a drilling program that would yield at least 4,196 wells across its STACK acreage (plus upside to reach as many as 12,133 wells), with those wells averaging Alta Mesa's "type curve" EUR of 250 MBO.[6] These representations assumed Alta Mesa would drill 12 wells per section and sometimes more.[7]  This drilling program would, in turn, feed—together with a purportedly robust third-party business—AMR's midstream segment, which might then spin off at an

---

[2] Ex. 1 (Mar. 29, 2017 Press Release).
[3] Ex. 2 (Feb. 9, 2018 Press Release).
[4] Ex. 3 (Feb. 25, 2019 Press Release).
[5] Ex. 4 (Sept. 12, 2019 Press Release).
[6] Ex. 5 (Proxy) at 257, 262, 265; Ex. 6 (Aug. 17, 2017 Investor Pres.) at slides 6, 10, 14, 19; Ex. 7 (footnotes to slide 14 of Aug. 17, 2017 Investor Pres.); Ex. 8 (Oct. 3, 2017 Investor Pres.) at slides 11, 22, 42; Ex. 9 (Dudenas Rpt.) ¶¶ 46-54.
[7] *See, e.g.*, Ex. 5 (Proxy) at 262 n.3.

attractive multiple.[8] █████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████[9]

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████[10] ████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████[11]

██████████████████████████████████████████████████

████████████████████████████[12] ████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████[13] ████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████[14]

---

[8] Ex. 5 (Proxy) at 306; Ex. 6 (Aug. 17, 2017 Investor Pres.) at slide 30.
[9] *See, e.g*, Ex. 9 (Dudenas Rpt.) ¶¶ 49-67.
[10] Ex. 10 (Dudenas Rebuttal) ¶ 60.
[11] Ex. 9 (Dudenas Rpt.) ¶¶ 49-67; Ex. 11 (Aug. 3, 2017 e-mail) at AMR_SDTX01307627; Ex. 44 (June 6, 2017 e-mail) (███████████████████████████████████████████████████).
[12] Ex. 10 (Dudenas Rebuttal) ¶ 25.
[13] *Id.* ¶ 26.
[14] *Id.* ¶¶ 28-29.

Another problem was KFM's third-party business.  Rather than the robust system of third-party contractual relationships that Alta Mesa had represented to investors, ███████ ██████████████████████████████████████████████████████████████████ ███████ For example, ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████ [15] ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████ [16] ███████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ [17] ████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ [18] ██ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████ [19]  Immediately after the Merger, Alta

---

[15] *Compare* Ex. 12, *with* Ex. 13 at RIVERSTONE_SDTX00352165.
[16] *See* Ex. 14 (Oct. 30, 2017 e-mail) at AMR_SDTX0112855.
[17] Ex. 15 (July 26, 2017 e-mail); Ex. 16 (July 17, 2017 e-mail); Ex. 17 (July 17, 2017 e-mail).
[18] *See* Ex. 46 (Regan Rpt.) at Schedule 2.1.
[19] Ex. 18 at RIVERSTONE_SDTX00006609-10; Ex. 19 at RIVERSTONE_SDTX00006620.

Mesa's executives ████████████████████████████████████████
████████████████████████████████████████████[20]

As Alta Mesa's upstream segment failed to produce the volumes it promised based on its own unreasonably aggressive assumptions, it—lacking other sources of hydrocarbon volumes except those they fictitiously modeled—also saw its value quickly evaporate.[21]

## II.    Plaintiffs' Investment Processes

The Alyeska and Orbis Plaintiffs are investment funds advised by professional investment firms.  Both invest in publicly traded equities based primarily on fundamental research, which is an investment approach that includes analyzing all material public information about a company, including the company's SEC filings.  Both Alyeska and Orbis followed this process when investing in Alta Mesa.[22]



---

[20] *See* Ex. 20 (Feb. 12, 2018 e-mail) at AMR_SDTX00876793.
[21] *See* Ex. 21 (Aug. 14, 2018 Press Release); Ex. 22 (BCE Presentation) at BCEM_0030791 ████████████████████████████████████████ ); Ex. 23 (Nov. 13, 2018 Press Release).
[22] *See, e.g.,* Karr Decl. ¶¶ 8-88; Mitchell Decl. ¶¶ 7-42; Ex. 24 (Mitchell Dep.) at 67:22 – 69:5.
[23] *See* Ex. 25 (Karr Dep.) at 55:17 – 56:5; Karr Decl. ¶ 65.
[24] Karr Decl. ¶¶ 2, 65, 68.
[25] Karr Dep. at 41:20 – 42:1; Karr Decl. ¶ 11.



## III. Plaintiffs Evaluated and Analyzed Information Provided By the Defendants Before Adding to Their Post-IPO Positions

Orbis and Alyeska purchased two of the largest allocations in the Silver Run II IPO[31]

and had direct interactions with several Defendants in conducting their research. ███████

---

[26] Karr Dep. at 43:5-11; Karr Decl. ¶ 40.
[27] Karr Decl. ¶¶ 10-16; Karr Dep. at 41:20– 42:1, 42:13-15, 116:2-17.
[28] Mitchell Decl. ¶ 3.
[29] Ex. 24 (Mitchell Dep.) at 31:11-24; Mitchell Decl. ¶ 9.
[30] Ex. 27 (Berger Dep.) at 171:19-20 (as to Proxy), 189:20-24 (as to filings), 194:11-12 (as to risk factors); Mitchell Decl. ¶ 39.
[31] Ex. 28 (Mar. 29, 2017 e-mail); Karr Decl. ¶ 37; Mitchell Decl. ¶ 18.
[32] Karr Decl. ¶¶ 26-30; *see also* Karr Ex. 1 at ORBIS_AM00000164-66.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ [33]

Silver Run II's combination with AMH and KFM was announced in an August 16,

2017 8-K.[34]  After reviewing the announcement, ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ [35]

████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████ [36]  ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ [37]  ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ [38]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[33] Mitchell Ex. 4.
[34] Ex. 29 (Aug. 16, 2017 Press Release).
[35] Ex. 30 (Murray Dep.) at 110:4-16; Ex. 31 (Aug. 17, 2017 e-mail); Karr Decl. ¶ 47; Karr Ex. 2 at ORBIS_AM00000399.
[36] Mitchell Decl. ¶¶ 27, 31-37.
[37] *Id.* ¶ 32.
[38] *Id.* ¶¶ 33-35.



[39]

## IV.    Plaintiffs Vote in Favor of the Merger Relying Upon Defendants' Misrepresentation and Omissions

Because Silver Run II was a SPAC, its investors had the absolute right to redeem their shares at the time of the Merger.  This redemption right is critical to the SPAC structure—and to its attractiveness.[40]  The redemption right was far from speculative—the redemption price was set at effectively $10; the redemption date was set as effectively coterminous with the Merger date; and any investor owning Silver Run II common stock could redeem for cash.[41]



[42]

[43]

[44]

[45] Orbis also relied on Defendants' representations in the Proxy and directly to it in not redeeming its Silver

---

[39] Mitchell Decl. ¶ 37.
[40] *See* Karr Decl. ¶¶ 18, 20, 33-34, 45; Mitchell Decl. ¶ 10.
[41] Ex. 5 (Proxy) at 26, 93, 95-96, 99.
[42] Karr Decl. ¶¶ 24-25, 33-34; Mitchell Decl. ¶¶ 18-19.
[43] *See* Mitchell Decl. ¶¶ 39-40.
[44] *See id.*
[45] *Id.* ¶ 42.

Run II shares.[46]



[47]

[48]   Like Alyeska,

Orbis chose not to redeem its shares before the Merger.[49]

## V.    Plaintiffs Buy (or Hold) Alta Mesa Common Stock in Reliance on the Disclosures in the 2017 10-K

Once Defendants convinced Plaintiffs and others to vote in favor of the Merger and not redeem, investors looked to AMR's first release of financial results to confirm the representations it had made about the investment.  On March 29, 2018, AMR did so, announcing its financial results for the fourth quarter of 2017 and the full-year 2017 on a Form 10-K filed with the SEC.[50]



[51]                                                                          [52]

Indeed, both Alyeska and Orbis were highly focused on the information released in the 2017 10-K.

---

[46] Karr Decl. ¶¶ 58, 65; Karr Dep. at 147:25 – 148:2; *see* Murray Dep. at 83:21 – 84:1.
[47] Karr Decl. ¶ 61.
[48] *Id.* ¶¶ 63-64.
[49] *Id.* ¶ 65.
[50] *See* Ex. 32 (2017 10-K) at 53, F-1 – F-6.  Alta Mesa also released a Form 8-K, press release, slide presentation, and held an earnings call.
[51] *See* Mitchell Decl. ¶ 43; Ex. 24 (Mitchell Dep.) at 31:11-20, 156:2-7, 157:2-6; Ex. 38 (Mitchell Dep. II) at 267:12-15; Ex. 27 (Berger Dep.) at 189:20-24, 266:25 – 267:2; Karr Decl. ¶¶ 68-69; Ex. 25 (Karr Dep.) at 116:2-17; Ex. 30 (Murray Dep.) 67:7-68:2; Ex. 26 (Cutler Dep.) 105:22 – 106:7.
[52] Ex. 27 (Berger Dep.) at 197:4-5; Karr Decl. ¶ 71; Ex. 30 (Murray Dep.) at 224:13-24.



## VI. Defendants Repeatedly Affirm the Quality of the Acreage Despite Disappointing Results

As 2018 progressed, Orbis continued to monitor Alta Mesa's performance. ▮

Heading into Alta Mesa's earnings for the first quarter of 2018, Orbis expected ▮

[57] Unfortunately, when Alta Mesa released results on May 14, 2018, they ▮ but the Company reaffirmed its guidance as well as ▮

Orbis remained focused on Alta Mesa's acreage quality as second quarter 2018 earnings approached. ▮

---

[53] Ex. 42 at ORBIS_AM00001046.
[54] *See* Ex. 34 (Apr. 22, 2018 e-mail) at RIVERSTONE_SDTX00252632; Ex. 35 (Alyeska Notes).
[55] Karr Decl. ¶¶ 72-73.
[56] Karr Decl. ¶ 74; Ex. 36 (Q1 2018 Earnings Preview); Karr Exs. 6 (Q1 2018 Earnings Review), 8 (Q2 2018 Earnings Preview), 10 (Q2 2018 Earnings Review), 12 (Q3 2018 Earnings Preview), 13 (Q3 2018 Earnings Review).
[57] Ex. 36 (Q1 2018 Earnings Preview) at ORBIS_AM00001125.
[58] Karr Decl. ¶¶ 76-77.
[59] *See* Karr Decl. ¶ 81.



[60] On August 14, 2018, Alta Mesa released results for the second quarter of 2018.   The Company ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[61] But Alta Mesa ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ attributing the disappointing results to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[62]▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[63]

## VII.   Defendants Admit the Acreage Cannot Support 12 or More Wells Per Section

In the third quarter of 2018, Alta Mesa admitted that its acreage could optimally support only five to seven wells per section rather than 12 or more wells.[64] Alta Mesa filed for bankruptcy less than a year later.

## <u>LEGAL STANDARD</u>

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding the motion, Plaintiffs' evidence must be "believed" and viewed in the light most favorable to them, and the Court must also draw all reasonable inferences in Plaintiffs' favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Moreover, the Court may not weigh conflicting evidence or make credibility determinations.  *See Ion v. Chevron USA, Inc.,* 731 F.3d 379, 389 (5th Cir. 2013).  Rather,

---

[60] Karr Decl. ¶ 81.
[61] *Id.* ¶ 82.
[62] *Id.*
[63] *See, e.g., id.* ¶ 85.
[64] Ex. 37 (Nov. 13, 2018 Earnings Call Transcript) at p. 7.

the relevant inquiry is only "whether the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52. "If reasonable minds could differ as to the import of the evidence," summary judgment must be denied. *Id.* at 250-51.

## ARGUMENT

### I.   The Jury Should Resolve Plaintiffs' Section 10(b) Claims

#### A.   Defendants' Materially False and Misleading Statements Are Not Protected by the PSLRA's Safe Harbor

Defendants argue that numerous materially false statements that they made to the Plaintiffs are somehow "immunized" from liability under the safe-harbor provisions of the PSLRA. (Defs. Br. at 7-9.)  Defendants are wrong.  *First*, "a mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present." *Spitzberg v. Hous. Am. Energy Corp.*, 758 F. 3d 676, 691-92 (5th Cir. 2014).  This includes future statements that are "accompanied by reassurances about present progress" and thus "rooted in the present." *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 217 (5th Cir. 2023).  Accordingly, many of the statements that Defendants claim are protected by the safe harbor are outside of it.[65]

*Second*, Defendants assert that their statements were "accompanied by meaningful cautionary language." (Def. Br. at 7.)  But Defendants do not point to any evidence that the *oral* statements they made directly to Orbis[66] were accompanied by meaningful

---

[65] These statements are: Statements 3, 6, 13, and 25 of Defendants' Appendix A; Statements 3 and 7 of Defendants' Appendix B; and Statements 2, 5, 6, 8, 10, 14, 16, 20, 22, 29, 30, 36 of Defendants' Appendix C.  For example, the statement in the Proxy that "116" wells drilled by Alta Mesa "had sufficient production history to give Alta Mesa's management confidence that Alta Mesa's type well EUR is greater than 650 MBOE" (Defs. App. B, Statement 7) is predicated on "production history" and thus "rooted in the present."  Likewise, Defendants' August 3, 2017 statement to Orbis that their "predictions of 600 MBOE EUR were made based on reliable type curves" (Defs. App. C, Statement 2) was also "rooted in the present."
[66] Those statements are Statements 2, 3, 6, 8, 9, 20, 22-23, 33, 39 and 40 of Defendants' Appendix C.

14

cautionary language—and they weren't.[67]  Thus, those statements are not protected by the safe harbor.   More fundamentally, however, even the written statements were not adequately cautionary because "[w]hen risks have already begun to materialize, it is no longer sufficient to generally warn of the possibility of these risks in the future.  When cautionary language is glossed over as a future risk rather than the certain dangers that had already begun to materialize then the warnings are no longer meaningful."   *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 953 (S.D. Tex. 2021); *see also Del. Cty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2024 WL 83503, at *12 (S.D. Tex. Jan. 8, 2024).  Here, as shown in Class Plaintiffs' Oppositions to Proxy Defendants' MSJ, Management Defendants' MSJ, AMR Directors' MSJ, and the 20(a) MSJ, the risks purportedly warned of had already begun to materialize.  Thus, it is irrelevant that, as Defendants claim, Plaintiffs "were warned about the risks that could prevent AMR from achieving the Projections and understood those risks" (Defs. Br. at 8), where Defendants did not disclose that those risks were already occurring.[68]

---

[67] "Oral statements can qualify for the safe harbor if (i) the statement is accompanied by a cautionary statement that the 'particular' oral statement is forward-looking and that actual results could differ materially . . .; (ii) the statement is accompanied by an oral statement that additional information that could cause actual results to differ materially is contained in a readily-available written document; (iii) the statement identifies the document or portion thereof containing the additional information; and (iv) the identified document itself contains appropriate cautionary language."  *Six Flags*, 58 F.4th at 211 n.13. Alyeska does not bring any claims based on oral statements made directly to it by Defendants.

[68] Whether the projections were guarantees (Defs. Br. at 8-9) is beside the point because the Fifth Circuit has long recognized that "predictive statements are deemed to contain false statements of 'fact' under Rule 10b-5 when the predictions embodied in those statements do not have a reasonable basis."  *Rubinstein v. Collins*, 20 F.3d 160, 168 (5th Cir. 1994).  And whether Plaintiffs think that the projections were made with scienter (Defs. Br. at 9) is irrelevant.  *Defendants'* state of mind matters, not *Plaintiffs'*.  *See Ferguson v. Sec. Life of Denver Ins. Co.*, 996 F. Supp. 597, 604 (N.D. Tex.) ("Nor does [plaintiff]'s admission that [defendant] did not 'fraud' him undermine this cause of action."), *aff'd*, 162 F.3d 1160 (5th Cir. 1998).

*Finally*, contrary to Defendants' argument (Def. Br. at 7-8), Plaintiffs have raised a triable issue of fact about whether Defendants had actual knowledge that their purported forward-looking statements were false at the time that those statement were made, as set forth in Class Plaintiffs' Oppositions to Proxy Defendants' MSJ, Management Defendants' MSJ, AMR Directors' MSJ, and the 20(a) MSJ.

## B.    The Opinion Statements Are Actionable

Defendants concede, as they must, that their "opinion statements" are actionable if they "omitted material facts about the inquiry into or knowledge concerning the beliefs that conflict with what a reasonable investor would take from the statements themselves." (Defs. Br. at 10-11.)  As shown in Class Plaintiffs' Oppositions to Proxy Defendants' MSJ, Management Defendants' MSJ, AMR Directors' MSJ, and the 20(a) MSJ, that is exactly the case here.

## C.    The Jury Should Decide Whether Defendants' Misstatements Are Material

Defendants argue that the challenged statements (other than the projections) were immaterial to Plaintiffs as a matter of law.  (Defs. Br. at 10-13.)  But the materiality "test is . . . objective, not subjective." *SEC v. Hoover*, 903 F. Supp. 1135, 1140 (S.D. Tex. 1995). As the Court of Appeals has held, "materiality only can be judged against an objective standard of investor behavior." *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 208 (5th Cir. 1988).  Plaintiffs have demonstrated that the statements were objectively material to the market through an ***unrebutted*** expert economist's scientific event study.  (Nye Report ¶¶ 71-80.)   Other than their argumentative mischaracterization of the Plaintiffs' interpretation of these statements (refuted below), Defendants do not identify any evidence

16

that those statements "are so obviously unimportant to a reasonable investor that they are immaterial as a matter of law." *KB P'rs I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 7760201, at *8 (W.D. Tex. Dec. 1, 2015). "It is well-established that because materiality is a mixed question of law and fact, it is usually left for the jury." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002). Defendants have not offered any evidence rebutting Plaintiffs' economic analysis and testimony that the statements were material, let alone demonstrated that there is no dispute as to materiality as a matter of law.

### D. A Jury Should Determine Whether Plaintiffs Relied on Defendants' Misstatements for their Section 10(b) Claims

Under the fraud on the market presumption, whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). Defendants do not challenge the Plaintiffs' invocation of this presumption to prove reliance for their Section 10(b) claims. Moreover, as shown *infra* in Section IV.C, Defendants' cherry-picked record evidence is overwhelmed by the substantial documentary and testimonial evidence demonstrating that Plaintiffs did, in fact, rely on Defendants' misstatements. Accordingly, the question of reliance should be decided by the jury.

### E. Plaintiffs Have Offered Adequate Evidence That Defendants' Misstatements Caused Their Massive Investment Losses

For the reasons set forth in the Direct Action Plaintiffs' Opposition to Defendants' Motion to Exclude Opinions of Zachary Nye, Ph.D. (ECF No. 561), Plaintiffs have adduced sufficient evidence that Defendants' materially false and misleading statements caused their investment losses.

17

## II.    Plaintiffs Have Actionable Claims Under Section 14(a)

Plaintiffs' Section 14 claims should be decided by a jury and Defendants are wrong that they are entitled to summary judgment on those claims.  This Court has already ruled that Plaintiffs' Section 14 claims are timely.  *In re Alta Mesa Res., Inc. Sec. Litig.*, 2023 WL 3873307, at *5 (S.D. Tex. June 7, 2023).  In so holding, the Court relied on the Fifth Circuit's decision in *Margolies v. Deason*, 464 F.3d 547, 550 (5th Cir. 2006), two district court decisions from within this Circuit, and its own legal analysis, buttressed by Fifth Circuit authority, that there is "no reason why a claim brought under negligence-based provisions of the securities laws that sounds in fraud cannot be subject to both Rule 9(b) and Section 1658." 2023 WL 3873307, at *5.  Defendants did not seek reconsideration of that decision, but only certification for interlocutory appeal, which the Court properly denied (ECF No. 495).  Defendants now ask the Court to belatedly reconsider that holding. (Defs. Br. at 14.)  But that decision remains correct as a matter of law, and Defendants point to nothing in the record that would justify their naked reconsideration request.

For the reasons shown above, Defendants are also wrong (Defs. Br. at 14-15) that their materially false and misleading statements in the Proxy are inactionable, whether as forward-looking statements, opinions, or corporate puffery.  And for the reasons shown in Class Plaintiffs' Opposition to Proxy Defendants' MSJ, a jury should decide whether Defendants acted with scienter in making the materially false and misleading statements in the Proxy.

III.   **Plaintiffs Have Each Established Actionable Claims Under Section 18**

Defendants' arguments against Plaintiffs' Section 18 claims (Defs. Br. at 16) should be rejected for the reasons set forth in their Opposition to Defendants' Dimitrievich and McMullen's Motion for Summary Judgment, which is incorporated by reference herein.[69]

IV.   **Plaintiffs Have Each Established Actionable Claims Under Texas Law**

In addition to repeating their incorrect arguments regarding SLUSA and the viability of holder claims, Defendants attack Plaintiffs' state-law claims by asserting that, as a matter of law, Plaintiffs did not rely on their material misrepresentations; that Defendants did not intend to induce Plaintiffs' reliance or act with scienter; and that there "was no material misrepresentation." (Defs.' Br. at 19.)  Across the board, Defendants are incorrect.

   A.   **Defendants Made Material Misstatements with Scienter**

As shown in Class Plaintiffs' Oppositions to Proxy Defendants' MSJ, Management Defendants' MSJ, AMR Directors' MSJ, and the 20(a) MSJ, there is a triable issue of fact about whether Defendants made their materially false and misleading statements with scienter.[70]

   B.   **Defendants Intended to Induce Plaintiffs' Reliance**

Defendants argue that there is no evidence of intent to induce reliance with respect to their misleading projections, because they "included statements that the projections

---

[69] *See* ECF No. 460 at 10-19.  Defendants assert that Plaintiffs' Section 18 claims are time-barred because Plaintiffs "began thinking they had been misled . . . as early as March 2018" (Defs. Br. at 16), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and, in all events, as this Court has held, the filing of the Class Action tolled the statute of limitations on Plaintiffs' Section 18 claim under *American Pipe*.

[70] Under Texas law, opinions are actionable as fraud (1) where "the speaker has knowledge of its falsity"; (2) where the "opinion is based on past or present facts"; *or* (3) where "an opinion as to the happening of a future event" is presented by a speaker who "purports to have special knowledge of facts that will occur or exist in the future." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).  All three circumstances are present here.  (*See* Class Plaintiffs' Oppositions to Proxy Defendants' MSJ, Management Defendants' MSJ, AMR Directors' MSJ, and the 20(a) MSJ; Karr Decl. ¶¶ 41-42, 53.)

should not be relied upon." (Defs. Br. at 19.) But under Texas law, "[r]epresentations as to matters not equally open to parties are legally statements of fact." *Wright v. Carpenter*, 579 S.W.2d 575, 580 (Tex. Civ. App. 1979). Moreover, Defendants do not identify any reason for them to have included projections in their repeated statements to investors other than to induce those investors to purchase Alta Mesa securities.[71]

### C.    There is Substantial Evidence that Plaintiffs Relied on Defendants' Misrepresentations

"Justifiable reliance usually presents a question of fact" for the jury to decide. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018). In assessing whether a plaintiff justifiably relied on a defendant's misrepresentation, it is not necessary to show Defendants' misrepresentations were the "*sole* inducement for entering into the transaction." *Ferguson*, 996 F. Supp. at 604 (emphasis in original). Defendants do not argue that Plaintiffs' reliance was unjustified— their sole argument is that as a matter of law, Plaintiffs did not rely on the misstatements. (Defs. Br. at 20.) But Plaintiffs' testimony, contemporaneous documentation, and affidavits overwhelmingly support that they actually relied on Defendants' misrepresentations in purchasing Alta Mesa securities. Defendants' argument—that Orbis and Alyeska did not rely on *anything* Defendants said or did—would require the Court to draw unwarranted inferences in Defendants' favor, including the unreasonable inference

---

[71] If Defendants are adopting the argument made by Dimitrievich and McMullen that Defendants could not have known that Plaintiffs would rely on Alta Mesa's public filings, they are wrong for the reasons set forth in Plaintiffs' opposition to that motion (ECF No. 460 at 19-20), which is incorporated by reference herein.

that both entities ignored Defendants' representations when investing millions upon millions of dollars in Alta Mesa.  The record shows precisely the opposite.

Plaintiffs' investment professionals ██████████████████████

████████████████████████████████████████████████████████[72]

They also ████████████████████████████████████

████████████████████████████████[73]  Plaintiffs also ██████████████

████████████████████████████████[74]  And Plaintiffs have submitted detailed declarations recounting their reliance on Defendants' statements.  Those declarations "should be viewed as supplementing the deposition testimony and other evidence."  *In re Nat'l Century Fin. Enters., Inc. Invest. Litig.*, 846 F. Supp. 2d 828, 880 (S.D. Ohio 2012).  This evidence comfortably creates a triable issue of fact about Plaintiffs' actual reliance.  *See Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 505 (S.D.N.Y. 2018) (testimony that specific, repeated communications with defendant "led [investor] to purchase" "is enough to defeat summary judgment on the question of actual reliance"; and plaintiff's "consistent description of its own investment strategy—primarily based on statements by the individual who purchased the relevant . . . securities . . .—

---

[72] Karr Decl. ¶ 49; Ex. 25 (Karr Dep.) at 58:8-9, 119:7-20; Ex. 24 (Mitchell Dep.) at 88:10-20, 157:2-3, 170:3-9.

[73] Ex. 24 (Mitchell Dep.) at 31:11-22; Ex. 27 (Berger Dep.) at 171:19-20, 189:20-24, 194:11-12; Ex. 25 (Karr Dep.) at 116:2-17; Ex. 30 (Murray Dep.) at 67:7 – 68:2, 224:13-24.

[74] *See* Mitchell Decl. ¶¶ 23, 26-28, 31-35, 40, 42, 44; Ex. 24 (Mitchell Dep.) at 80:3 – 81:21, 88:8-13, 93:15-24, 94:4-19, 98:3 – 100:13, 103:24 – 104:13, 116:17-22, 139:12 – 140:2, 144:1-3, 160:3 – 161:14, 162:20 – 168:4, 187:17 – 188:9; Ex. 38 (Mitchell Dep. II) at 216:23 – 217:5, 229:9-16, 251:7-22, 270:9-16, 305:12-15; Karr Decl. ¶¶ 38-45, 49, 52-57, 65, 70, 72-73, 75-78, 82, 84-88, 96-98; Ex. 25 (Karr Dep.) at 58:8-9, 110:13-14, 137:9-14, 144:16-25, 150:10-18, 164:8-22, 166:23 – 167:16, 219:12 – 220:14, 225:20 – 226:12, 227:14 – 228:5.

provides a sufficient basis for a jury to conclude that [plaintiff] actually relied on" defendant's statements); *In re Nat'l Century*, 846 F. Supp. 2d at 879 (actual reliance was jury issue based on testimony and affidavits that "within the mix of information available and relevant to them, [plaintiffs] relied on [defendant's] representations regarding" specific subjects).

Moreover, Plaintiffs heavily documented their reliance on Defendants' face-to-face misrepresentations.  For example, following a July 2017 meeting with Defendant Hackett,

███████████████████████████████████████████████████████████

██████████████████████████████████████████████[75] ████

████████[76]  Similarly, █████████████████████████████████[7]

███████████████████████████████████████████████████████████

██████████████████████████[78]  This evidence, together with their subsequent purchases, establishes a triable issue of fact as to Plaintiffs' reliance.  *See, e.g.*, *K.A. West, LLC v. GK Invs., Inc.*, 2013 WL 5270861, at *6 (Tex. Ct. App. Sept. 17, 2013) ("evidence of [plaintiffs] funding the investment was sufficient evidence of their reliance.").

Defendants cannot negate Plaintiffs' reliance as a matter of law by plucking isolated testimony out of context and asserting that Plaintiffs have not shown which specific

---

[75] *See, e.g.*, Ex. 34 at RIVERSTONE_SDTX00252632 and -650.
[76] *See, e.g.*, Ex. 24 (Mitchell Dep.) at 81:15-18; Mitchell Decl. ¶ 37 (███████████████████████████
██████████████████).
[77] *See* Exs. 39 (Aug. 2017), 40 (Apr. 2018), 41 (May 2018), 42 (Aug. 2018); Karr Exs. 1 (Mar. 2017), 4 (Oct. 2017), 5 (Nov. 2017), 9 (Aug. 14, 2018), 11 (Aug. 29, 2018); *see also* Exs. 39-43 (containing additional Orbis notes).
[78] *See, e.g.*, Ex. 39 at ORBIS_AM00000149; Karr Ex. 2 at ORBIS_AM00000399.

misstatements motivated which specific purchases.  (Defs. Br. at 12-13, 20.)[79]   This argument requires inferences to be drawn improperly in Defendants' favor.  Defendants' fraud was expansive, beginning even before Alta Mesa's formation as a public company.  Throughout that time, Defendants repeatedly dissembled, lulled, and misdirected Plaintiffs, until Alta Mesa's faulty operations could no longer sustain the weight of Defendants' fraudulent scheme.  To argue, as Defendants do, that they are entitled to summary judgment based on scattered deposition testimony purportedly showing that Plaintiffs did not recall (years later) which specific statements caused each of their purchases imposes an impossible burden.  It is plainly unworkable and would allow those defendants capable of the most complex schemes to avoid responsibility most easily.  When "any piece of news . . . is disclosed, the market does not internalize the news in a vacuum.  Instead, that one shard of information is examined within a pre-existing mosaic of interrelated data points and strategic considerations."  *In re BP PLC Sec. Litig.*, 2016 WL 3090779, at *24 (S.D. Tex. May 31, 2016).[80]   Defendants' quibbles with Plaintiffs' "description of [their]

---

[79] Defendants claim that Plaintiffs did not rely on the Proxy because Plaintiffs could not remember if they read every single word.

[80] Plaintiffs' purchases after Alta Mesa's disappointing results do not show that they "were no longer relying on [Defendants'] earlier statements" (Defs. Br. at 20) because Defendants continued to misrepresent the quality of their asset base, misleading Plaintiffs into believing that significant upside remained.  (*See, e.g.*,

decision-making process" are "not within the province of the court on a motion for summary judgment," but are issues for the jury.  *Silvercreek*, 346 F. Supp. 3d at 505.[81]

### D.    The Orbis Plaintiffs Have Established Viable Holder Claims

For the reasons shown in Plaintiffs' Opposition to Defendants' Dimitrievich and McMullen's Motion for Summary Judgment, which is incorporated by reference herein (*see* ECF No. 460 at 21-23), the Court should again decline Defendants' invitation to hold that Texas does not recognize claims for holding in reliance.  Defendants also seek to impose requirements for Orbis's Texas holder claims from the *California* Supreme Court. (Defs. Br. at 24.)  But although it discussed the "heightened pleading and proof standards" imposed by other courts (including California) on holder claims, *Grant Thornton v. Prospect High Income Fund* ultimately stated that "to the extent" holder claims "are viable, [they] must involve a direct communication between the plaintiff and the defendant."  314 S.W.3d 913, 930 (Tex. 2010).   Thus, *Grant Thornton* did not adopt the additional requirements that Defendants argue should apply.  Moreover, at minimum, a holder claim is readily made out, even under Defendants' view, as to Silver Run II shares not redeemed.

---

Karr Decl. ¶¶ 67-88.)   Regardless, "[u]nless a representation is 'obviously false,' the recipient of a fraudulent misrepresentation . . . is justified in relying on its truth."  *United States v. Pro. Compounding Ctrs. of Am., Inc.*, 2023 WL 2669879, at *23 (W.D. Tex. Mar. 27, 2023).

[81] Defendants argue that Plaintiffs did not rely upon any of their "generalized statements."  (Defs. Br. at 10-13.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Karr Decl. ¶¶ 10-13, 49; Ex. 25 (Karr Dep.) at 119:7-20; Mitchell Decl. ¶ 37.)  And those "generalized" statements were critical for what they *did not say.*



(Karr Decl. ¶ 64.)

(*Id.*)

(*See id.* ¶ 71.)

(*See* Mitchell Decl. ¶ 41.)

The redemption right was not speculative; it was a concrete right inherent in the SPAC structure that an investor could exercise. Orbis was defrauded out of that redemption right.

In all events, the evidence raises a triable issue of fact about the "sale(s)" that Orbis "refrained from making in reliance on Defendants' statements." (Defs. Br. at 24.) ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ (Karr Decl. ¶¶ 65-66.) ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ (*Id.* ¶ 73.) ████████████████████████

████████████████████████ (*Id.* ¶ 84.) Thus, Defendants are not entitled to summary judgment on Orbis's holder claims.

### E. The Court Should Again Reject Defendants' Incorrect and Recycled Argument that SLUSA Bars the State Law Claims

The Court has already rejected Defendants' SLUSA arguments, and denied Defendants' request to appeal that decision (*see* ECF No. 495). With no intervening developments to change the analysis, the Court should again reject Defendants' SLUSA argument, as shown in Plaintiffs' Opposition to Defendants' Dimitrievich and McMullen's Motion for Summary Judgment. (*See* ECF No. 460 at 23-25.)

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion for Summary Judgment on Opt-Out Plaintiffs' Claims.

Dated: January 19, 2024

Respectfully submitted,

By: */s/ Lawrence M. Rolnick*

Lawrence M. Rolnick
Michael J. Hampson
Matthew A. Peller
Joseph R. Sparacio
**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 597-2800
lrolnick@rksllp.com
mhampson@rksllp.com
mpeller@rksllp.com
jsparacio@rksllp.com

*Attorneys for the Direct Action Plaintiffs*

Jules P. Slim
TX Bar No. 00793026
Attorney and Counselor
PO Box 140307
Irving, TX 75014-0307
Tel.: (214) 350-5183
Fax: (214) 350-5184
jslim@slimlawfirm.com

*Counsel for the Direct Action Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 19, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Lawrence M. Rolnick*
Lawrence M. Rolnick

## APPENDIX A: GLOSSARY OF KEY TERMS, ENTITIES, AND PERSONS

*In re Alta Mesa Resources, Inc. Securities Litigation*

| Term | Description |
| --- | --- |
| 2017 10-K | Alta Mesa's Annual Report on Form 10-K for the Year Ended December 31, 2017, filed with the SEC on March 29, 2018. |
| AMR | Alta Mesa Resources, Inc., the publicly traded post-de-SPAC company. |
| AMH | Alta Mesa Holdings, LP, the private pre-de-SPAC company. |
| Alta Mesa | Refers to AMR, including its subsidiaries, AMH and KFM, for the period after the Merger, and to AMH and/or Silver Run II for the period before the Merger. |
| Alyeska Complaint | Complaint of the Alyeska Plaintiffs (Dkt. 1 in 4:22-cv-01189). |
| Alyeska or Alyeska Plaintiffs | Alyeska Master Fund, L.P., Alyeska Master Fund 2, L.P., and Alyeska Master Fund 3, L.P., which are investment funds managed by Alyeska Investment Group, L.P. |
| ARM Energy or ARM | ARM Energy Holdings LLC. |
| BCE | Bayou City Energy Management, LLC. |
| Chappelle | Harlan Chappelle. |
| Class Plaintiffs' Opposition to Proxy Defendants' MSJ | Class Plaintiffs' Opposition to the Proxy Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law on Plaintiffs' Section 14(A) and 20(A) Claims (ECF No. 571). |
| Class Plaintiffs' Opposition to Management Defendants' MSJ | Class Plaintiffs' Opposition to Motion for Summary Judgment by Defendants Alta Mesa Resources, Inc., Chappelle, Ellis, and Smith (ECF No. 572). |
| Class Plaintiffs' Opposition to AMR Directors' MSJ | Class Plaintiffs' Opposition to the AMR Directors' Motion for Summary Judgment on the Section 10(b) and 20(a) Claims (ECF No. 573). |
| Class Plaintiffs' Opposition to the 20(a) MSJ | Class Plaintiffs' Opposition to Riverstone Holdings, LLC, Stephen Coats, and Thomas Walker's Motion for Summary Judgment as to the 20(a) Claim (ECF No. 570). |
| Company | Refers to Alta Mesa. |
| Complaints | The Alyeska Complaint and the Orbis Complaint, collectively. |
| Defendants | All Defendants in the Direct Actions. |

| Dimitrievich | Donald Dimitrievich. |
| Direct Actions | The civil actions pending before this Court filed by the Alyeska Plaintiffs and the Orbis Plaintiffs. |
| Direct Action Plaintiffs or Plaintiffs | The Alyeska Plaintiffs and the Orbis Plaintiffs. |
| E&P | Acronym for the oil and natural gas exploration and production industry. |
| EBITDA | Earnings before interest, taxes, depreciation, and amortization. |
| EUR | Abbreviation for "Estimated Ultimate Recovery," meaning the anticipated total quantity of oil or gas that is potentially recoverable or has already been recovered from a reserve or well. |
| Exchange Act | The Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* |
| Hackett | James T. Hackett. |
| HPS | HPS Investment Partners, LLC. |
| IPO | Initial public offering. |
| KFM or Kingfisher | Kingfisher Midstream LLC, a midstream company that specialized in the gathering, processing, and marketing of hydrocarbons from oil and gas producers that combined with Silver Run II in the de-SPAC. |
| Lapeyre | Pierre F. Lapeyre, Jr. |
| Marathon | Marathon Oil Company. |
| MBO | Industry term for one-thousand barrels of oil. |
| McCabe | Michael A. McCabe. |
| MBOE | Industry term for one-thousand barrels of oil equivalent. |
| MMBO | Industry term for one-million barrels of oil. |
| McMullen | William McMullen. |
| Merger | The merger of Silver Run II with KFM and AMH on February 9, 2018. |
| OOIP | Original oil in place. |
| Orbis Complaint | Complaint of the Orbis Plaintiffs (Dkt. 1 in 4:22-cv-02590). |
| Orbis or Orbis Plaintiffs | Orbis Global Equity LE Fund (Australia Registered), Orbis Global Equity Fund (Australia Registered), Orbis Global Balanced Fund (Australia Registered), Orbis SICAV, Orbis Institutional Global Equity L.P., Orbis Global Equity Fund Limited, Orbis Institutional Funds Limited, Allan Gray Australia Balanced Fund, Orbis OEIC, and Orbis Institutional U.S. Equity L.P., which are investment funds managed by Orbis Investment |

| | |
|---|---|
| | Management (U.S.), L.P. or Orbis Investment Management Limited. |
| Proxy | The proxy statement issued by Silver Run II in connection with the Alta Mesa de-SPAC, dated January 19, 2018. |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 *et seq.* |
| Riverstone | Riverstone Holdings, LLC and its affiliates Riverstone Investment Group LLC and Riverstone VI SR II Holdings, LP, the sponsor of Silver Run II. |
| SEC | United States Securities and Exchange Commission. |
| Silver Run II | Silver Run Acquisition Corporation II, the SPAC entity created by Riverstone that merged with KFM and AMH. |
| Schlumberger | Schlumberger Limited, the petrochemical engineering company that advised Alta Mesa. |
| SLUSA | Securities Litigation Uniform Standards Act of 1998. |
| SPAC | Acronym for "special purpose acquisition company." |
| STACK | Abbreviation for the oil exploration area in Oklahoma where AMH, KFM and AMR were focused. |
| Unaudited Financial Projections | The unaudited financial projections of AMH and KFM contained in the Proxy at pages 172-73. |