UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>Judge George C. Hanks, Jr.<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE
CERTAIN OPINIONS OF CLASS PLAINTIFFS' EXPERT
<u>HAROLD MCGOWEN III UNDER RULE 702</u>**

## STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT

As explained in Defendants' Motion to Exclude Certain Opinions of Class Plaintiffs' Expert Harold McGowen III Under Rule 702 ("Motion" or "Mot.") (ECF No. 509), two of McGowen's opinions should be excluded under Federal Rule of Evidence 702 as unreliable because he conducted no analysis at all to support the opinions; as a result, he had no methodology, much less a reliable one. Class Plaintiffs' 20-page response boils down to two principal arguments: (i) McGowen is qualified, and (ii) he looked at many documents. The first is irrelevant since Defendants do not challenge his engineering expertise. And the second is not a valid excuse because the documents he relied upon have nothing to do with the two opinions Defendants seek to exclude.

## LEGAL STANDARD

Defendants set forth the legal standard in their opening brief. *See* Mot. at 1-2. Class Plaintiffs' argument for a lower standard is unfounded because they rely on case law that has been abrogated by the 2023 amendment of Rule 702. *See* Class Pls.' Opp. to Defs.' Mot. to Exclude Certain Ops. of Expert Harold McGowen III ("Opp.") (ECF No. 557) at 2-3, 19. Specifically, the advisory committee explained that while "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," "[t]hese rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment; *see also Nairne v. Ardoin*, 2023 WL 7388850, at *6 (M.D. La. Nov. 8, 2023) (declining "the invitation to punt [challenges to expert's sources] to the 'weight' of the evidence" and recognizing this practice "is expressly disapproved by the []

1

rules' changes"). Moreover, Class Plaintiffs' case law is also irrelevant because Defendants are not challenging the sources, facts, or assumptions underlying McGowen's opinion, but rather McGowen's failure to perform any analysis of the available facts in reaching his opinions. Defendants agree the former is properly the subject of cross-examination, but the latter is grounds for exclusion.[1] *See, e.g.*, *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 586-87 (5th Cir. 2004) (affirming exclusion of testimony due, *inter alia*, to the expert's "fail[ure] to conduct a dose assessment" of plaintiff's exposure, which was necessary for his radiation exposure opinion); *see also Stevens v. Ford Motor Co.*, 2022 WL 19978265, at *7 (S.D. Tex. Sept. 29, 2022) (excluding opinion testimony of mechanical engineering expert as unreliable where expert failed to conduct an independent analysis of the fuel pump system at issue); *Astro Tech., Inc. v. Alliant Techsystems, Inc.*, 2005 WL 6061803, at *10 (S.D. Tex. Sept. 28, 2005) (excluding damages opinion as unreliable where expert "was unable to provide a coherent explanation of the methodology underlying" his opinion that license worth $15-20 million).

## ARGUMENT

### A. Class Plaintiffs Concede That McGowen's Opinion That Alta Mesa Drilled "Too Many Wells, Too Close Together" Is Not Based on Any Methodology or Analysis

Defendants seek to exclude McGowen's opinion that "Alta Mesa over drilled its acreage by placing too many wells in a section, which led to uneconomic drilling costs and

---

[1] In contrast, Class Plaintiffs' motion to exclude the testimony of Edward Fetkovich (ECF No. 516) argues that he should have relied on different financial data than the data he used and not the reliability of his independent analysis and methodology.

2

much lower than advertised oil recovery per well." Ex. 2 (McGowen Rpt.) ¶ 13(a); *see also id.* ¶ 8 ("drill[ing] too many wells too close together" caused "the downfall of Alta Mesa"). As set forth in Defendants' Motion, McGowen did not conduct any analysis or apply any methodology to reach this opinion, but rather assumes it to be the case because Alta Mesa initially predicted that it could ultimately drill 12 wells per section on average and 12 wells was too many. *See* Mot. at 2-4; Opp. at 8 (citing McGowen's opinion regarding 12 wells per section); Ex. 2 (McGowen Rpt.) ¶¶ 14, 30 (attributing "Alta Mesa's over drilling" to drilling too many wells in order to meet "overly aggressive assumptions," including the assumption that acreage could support 12 wells per section). Class Plaintiffs do not dispute the complete absence of any actual analysis by McGowen of the wells Alta Mesa drilled to determine if it was too many, too few, or just right. Indeed, by mid-2019, Alta Mesa had drilled more than seven wells in only five of its more than 300 sections. *See* Ex. 4 (Fetkovich Rpt.) at 44. Instead, Class Plaintiffs make four excuses for McGowen's failure to perform any analysis.

First, they argue that McGowen's opinion is relevant. *See* Opp. at 11-13, 15-17. But relevance is not a basis to admit unreliable testimony. Indeed, Defendants' position is not that an "over drilling" opinion is irrelevant. Rather, our argument is that such an opinion must be based on reliable supporting analysis or methodology. *See* Mot. at 2-4.[2]

---

[2] In particular, Class Plaintiffs argue that McGowen's "milkshake" analogy would be helpful to a jury. *See* Opp. at 11-12. Not only is this argument irrelevant, the analogy is deeply flawed and only reinforces why McGowen should have conducted an analysis. The analogy presupposes that an operator knows the optimal number of wells (straws) for a given section (in McGowen's example, four wells)—i.e., the operator knew that four wells

3

Second, Class Plaintiffs argue that although McGowen did not perform any analysis, he reviewed documents, deposition testimony, and articles. Opp. at 6, 12-13, 15-16. Irrespective of whether reading what others said is a valid substitute for engineering analysis, McGowen relied on this information for his *other* opinions regarding the validity of Alta Mesa's base case assumptions about expected oil recovery from its acreage and the ability to drill 12 wells per section, and not whether Alta Mesa did in fact over drill. *See* Ex. 2 (McGowen Rpt.) ¶¶ 13(b)-(c), 30-31.[3] Class Plaintiffs do not cite a single document McGowen relied on that showed that more wells than the optimal number were drilled across the acreage, or showed how drilling affected Alta Mesa's economics.

Third, Class Plaintiffs claim that assessing the extent of Alta Mesa's over drilling is "a hypothetical exercise with no bearing" on McGowen's opinions. Opp. at 16. Class Plaintiffs are wrong. One cannot reasonably opine that Alta Mesa over drilled without

---

(straws) would be able to drain the entire reservoir without having so many wells that each well drains too little to be worth the cost of the well. McGowen cannot know—or testify to the jury—that Alta Mesa had too many "straws" without knowing what was the right number. *See* Ex. 2 (McGowen Rpt.) ¶ 12.

[3] More specifically documents Class Plaintiffs point to only suggest that Alta Mesa should have expected interference among its wells, i.e., that new wells were draining the reservoirs of nearby wells. *See, e.g.*, Opp. at 16 (referencing documents showing "degradation" in EUR as well numbers increased and microseismic tests showing interference); *id.* at 12-13 (citing emails discussing interference). But the likelihood of interference is undisputed. McGowen admitted that interference is inevitable, and he agreed that "eliminat[ing] all interference" is not a goal in developing an oil reservoir. Ex. 3 (McGowen Dep.) at 73:23-25; *see* Ex. 2 (McGowen Rpt.) ¶ 22 ("It has been common knowledge in the industry for years that there are significant inherent risks associated with negative infill well interference, both vertically between benches and horizontally between wells."). This again only begs the question as to what was the optimal number of wells (and, accordingly, acceptable level of interference) per section, and how many wells beyond that did Alta Mesa drill. These documents do not say that Alta Mesa did, in fact, over drill.

knowing what was drilled and whether it was too much. Indeed, McGowen himself testified as to what the standard should be for determining whether over drilling has occurred: when the operator "begin[s] to destroy capital as opposed to adding value." Ex. 1 (McGowen Dep.) at 58:17-18. Yet McGowen never attempted to apply this standard to Alta Mesa. *See id.* at 141:1-142:19 ("Q. You don't have an opinion, though, of when it would have been appropriate to dial back? A. I did not dive into that much detail to re-engineer the project."). Class Plaintiffs argue that the case law does not "require[] Mr. McGowen to analyze every section, acre, and well" in order to support his opinion. Opp. at 17 n.6. That is of course correct but is a strawman. The case law does not dictate how an expert must analyze the data, but courts do require the expert to have actually performed some analysis. This is McGowen's failing.

Last, Class Plaintiffs assert that Defendants' challenges are for cross examination and not a basis to exclude. Opp. at 17. However, Class Plaintiffs' authority *supports* the need for McGowen to apply engineering and industry standards to reach this conclusion. *See Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 3744976, at *5 (N.D. Tex. July 30, 2014) (petroleum engineer's opinions based on a methodology that "appl[ied] sound engineering principles and calculations" were reliable).

**B.  Class Plaintiffs Do Not Dispute that McGowen's ESP Opinion Is Not Based on Analysis of Actual ESP Performance**

Defendants' argument with respect to McGowen's ESP Opinion is the same; he did not conduct any analysis of Alta Mesa's ESP program at all. *See* Mot. at 4-5; *see also* Ex. 1 (McGowen Dep.) at 249:15-22; *id.* at 255:15-22. And again, Class Plaintiffs do not

5

dispute this point. Instead, Class Plaintiffs effectively argue that McGowen's opinion is actually about AMR's mental state; i.e., that AMR "began rapidly installing electric submersible pumps . . . to more rapidly increase production in an attempt to meet its forecasts."[4]  Opp. at 17-18; *see also id.* at 14 (framing his opinion as AMR misused ESP technology to boost short-term production); *id.* at 7 (claiming McGowen's opinion was that "Alta Mesa's misuse of ESPs violated industry standards, misled investors, and was implemented to help hide Defendants' manipulation and overstatement of reserve and production projections in the Proxy and thereafter").

Class Plaintiffs cannot reframe McGowen's opinion and run away from his report's fundamental conclusion: that AMR overused ESPs, and that doing so was uneconomic because AMR sustained a high cost to install and use the ESPs, but gained little in additional oil production:

- "Alta Mesa Overused Electric Submersible Pumps." Ex. 2 (McGowen Rpt.) at 23 (**heading** of Section II);

- "Alta Mesa's use of electronic submersible pumps (ESPs) in 2018 was an attempt to inflate production that *it knew or should have known would be uneconomic because of the enormous costs and little benefit to EURs*." *Id.* ¶ 13(d) (**summary** of the opinion) (emphasis added); and

---

[4] The aspect of McGowen's report discussing Alta Mesa's mental state is flawed and inadmissible.  Defendants anticipate filing a motion *in limine* to exclude it as well. McGowen admits that he does not know what evidence Alta Mesa considered or what they were thinking in making their decisions. Ex. 1 (McGowen Dep.) at 65:25-66:7.  Further, simply reviewing plain-English emails to conclude that Alta Mesa intentionally prioritized near-term production over long term economics, *see* Ex. 3 (McGowen Dep.) at 270:15-23, requires no special expertise—a jury is equally as capable of reading and interpreting those emails. *See Floyd v. Hefner*, 556 F. Supp. 2d 617, 644 (S.D. Tex. 2008) (excluding expert testimony where "does not require special expertise and is merely a commentary on the credibility of the [Defendants] and the documentary evidence in" the case).

6

➢ "This is why it is not surprising that implementing ESPs did not significantly increase ultimate recovery for Alta Mesa yet came at a high price tag." *Id.* ¶ 73 (final, ***concluding sentence of his ESP Opinion***).

Further, McGowen unequivocally testified that he did *not* intend to offer opinion testimony on Alta Mesa's mental state. Ex. 1. (McGowen Dep.) at 65:21-24 ("Q. Do you intend to offer any opinions in this litigation with respect to Alta Mesa's mental state? A. No.").

Second, Class Plaintiffs argue that McGowen is qualified to provide the opinion. *See* Opp. at 7, 18. Again, this is irrelevant. It does not matter if McGowen is qualified if he fails to conduct the necessary analysis.

Last, Class Plaintiffs argue that documents supported McGowen's opinion, listing five bullet points. *See* Opp. at 18-19 (referencing internal Alta Mesa emails discussing the use and efficacy of ESPs and a PowerPoint "that has a plot that showed some ESP performance data"). But these sources just speak to Alta Mesa's process for evaluating its ESP use, and they do not obviate the need for McGowen to look at actual ESP performance data or economics to reach his conclusion. Class Plaintiffs do not deny that he did not do so. *See* Ex. 1 (McGowen Dep.) at 255:15-18 ("Q. Did you conduct any of your own analysis to determine what the difference in ultimate recovery was due to the use of ESPs? A. No."); *id.* at 249:19-22 ("Q. You haven't conducted any analysis yourself to know that [the use of ESPs] would be uneconomic; is that correct? A. Yes, that's correct.").

McGowen's ESP opinion should be excluded as unreliable.

## CONCLUSION

For the aforementioned reasons, Defendants respectfully request that the Court exclude Harold McGowen III's testimony regarding Alta Mesa's purported over drilling and use of ESPs.

Dated: February 2, 2024    Respectfully submitted,

By  /s/ J. Christian Word
    J. Christian Word
    Attorney-in-Charge for Defendants
    D.C. Bar No. 461346
    S.D. Tex. Bar No. 3398485
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Christian.Word@lw.com

    Of Counsel:
    Heather A. Waller
    IL Bar No. 6302537
    S.D. Tex. Bar No. 2886108
    **LATHAM & WATKINS LLP**
    330 North Wabash Avenue, Suite 2800
    Chicago, IL 60611
    Tel: (312) 876-7700
    Fax: (312) 993-9767
    Heather.Waller@lw.com

    Sarah M. Gragert (*pro hac vice*)
    D.C. Bar No. 977097
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Sarah.Gragert@lw.com

    Ashley Gebicke (*pro hac vice*)
    CA Bar No. 330300
    **LATHAM & WATKINS LLP**
    12670 High Bluff Drive

9

San Diego, CA 92130
Tel: (858) 523-5400
Fax: (858) 523-5450
Ashley.Gebicke@lw.com

*Counsel for Defendants Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Stephen S. Coats; Michael E. Ellis; William D. Gutermuth; James T. Hackett; Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750

jschreiber@winston.com

*Co-Counsel for Defendants Harlan H. Chappelle and Michael E. Ellis*

## **CERTIFICATE OF SERVICE**

I certify that on February 2, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ J. Christian Word*
J. Christian Word
