UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>Judge George C. Hanks, Jr. |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE CLASS
PLAINTIFFS' EXPERT WITNESS PROFESSOR ADAM BADAWI**

## STATEMENT OF ISSUES

Whether pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), Badawi should not be permitted to testify because the Opinions are based upon an incomplete, cherry-picked set of documents provided to him by counsel and thus are unreliable.

Whether pursuant to Federal Rule of Civil Procedure 37(c), Badawi's Negligence Opinions should be stricken as untimely, affirmative expert disclosures and excluded because Class Plaintiffs bear the burden of proof on negligence for their Section 14(a) claim, but Class Plaintiffs failed to disclose Badawi's Negligence Opinions when required by the Court's Scheduling Order.

## SUMMARY OF ARGUMENT

Defendants first demonstrated in their Motion that Badawi cannot be permitted to testify at all under established case law because he failed to perform a reliable examination of the evidence underlying his opinions and instead considered only a woefully-incomplete and one-sided subset of the evidence chosen by Class Plaintiffs. Defs.' Mot. to Exclude Class Pls.' Expert Witness Professor Adam Badawi ("Mot.") (ECF No. 510-1). In opposition to Defendants' Motion, Plaintiffs do not deny that Badawi did this. Instead, they claim he should be permitted to testify anyway. This position is inconsistent with the Court's gatekeeping function and the law of this Circuit. No reasonable academic would purport to reach definitive conclusions about a board of directors' conduct without at least having reviewed the documents and information the board relied upon when it acted. Badawi admittedly did not do this and cannot testify for that reason. Second, Defendants

1

explained that Badawi's rebuttal opinions regarding whether the Proxy Defendants' pre-deSPAC conduct comported with custom and practice should be struck because Class Plaintiffs bear the burden of proof on negligence and, thus, were obligated to disclose his opinions with opening expert reports. Plaintiffs' response is that Badawi is not offering an opinion on negligence and instead Plaintiffs will show "deliberate misconduct." Class Pls.' Opp'n to Defs.' Mot. to Exclude Class Pls.' Expert Witness Professor Adam Badawi ("Opp.") at 13 (ECF No. 549). Proxy Defendants do not dispute that Badawi's opinions are not untimely under this new standard, but if Class Plaintiffs still seek a verdict based on negligence, then Badawi should not be permitted to testify.

## LEGAL STANDARD AND ARGUMENT

There is no material disagreement between the parties regarding the legal standard. To that end, the parties agree that Badawi should be permitted to testify only if he employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).[1] And further

---

[1] Plaintiffs' argument that the strict *Daubert* factors do not apply to Badawi's custom and practice opinions because they are based on "experience and specialized knowledge" is the exact opposite position they argued in seeking to exclude Whitehead on the very same issue. *See* Pls.' Mot. to Exclude Charles Whitehead's Opinion No. 1 at 2 (ECF No. 540) (arguing Whitehead's Opinion 1 should be excluded because his "methodology does not satisfy a single reliability factor provided in *Daubert*"). Obviously, Plaintiffs cannot have it both ways, and their attempt to apply contrary standards to the same situation can be rejected as gamesmanship. Whitehead's and Badawi's opinions are both properly evaluated for reliability under the *Kumho* standard. *See* Defs.' Opp'n to Class Pls.' Mot. to Exclude Charles Whitehead's Opinion 1 ("Opp.") at 8 (ECF No. 567) ([T]he factors [identified] in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." (quoting *Kumho*, 526 U.S. at 150)).

2

that a hallmark of intellectual rigor is Badawi's consideration of sufficient information, including "substantial and especially significant information" that is inconsistent with an expert's opinion. *See* Mot. at 3-4.

### A. Plaintiffs Concede That Badawi Did Not Consider All Of The Board Materials

As detailed in Defendants' Motion, Badawi's opinions about Defendants' conduct fail to consider the most significant and probative evidence: Defendants' unrefuted testimony in its entirety and all of the board materials. Mot. at 3-7. Class Plaintiffs do not, because they cannot, dispute this. Opp. at 2-4 (admitting Badawi considered "a sampling" of "available evidence" provided by counsel). Instead, Plaintiffs offer a number of reasons why the Court should overlook Badawi's lack of intellectual rigor. None of them are valid.

*First*, while conceding that Badawi did not read all of the board materials relevant to and inconsistent with his opinions, Plaintiffs note that he prepared a "heavily footnoted report" referring to the materials he did consider. Opp. at 6. But that he considered a large number of documents is not evidence that he considered the evidence necessary to establish the reliability of his opinions. *See In re Deepwater Horizon Belo Cases*, 2022 WL 17734414, at *9 (N.D. Fla. Dec. 15, 2022) ("The fact that [the expert] includes 3 pages of references identifying various articles and studies in his report does not make his opinions reliable."), *adopted*, 2023 WL 372646 (N.D. Fla. Jan. 24, 2023).[2]

---

[2] Unless otherwise noted, internal quotation marks and citations are omitted, and emphasis is added.

3

*Second*, Plaintiffs invoke the outdated standard from *Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir. 1987), to argue that Badawi's failure to consider all of the relevant evidence goes to weight and not admissibility. Opp. at 5 ("[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). The 2023 amendments to Rule 702, however, clarified that this is "an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendments. Contrary to Plaintiffs' position, the lack of any valid bases for Badawi's challenged opinions go straight to admissibility. *See* Fed. R. Evid. 702(a), (c).

*Third*, Plaintiffs argue that neither the documents they did not provide to Badawi nor the Defendants' sworn testimony contradict his opinion. Opp. at 7-11. The obvious problem is that Badawi did not decide that the information was not contradictory; counsel did. It was incumbent on Badawi to be intellectually rigorous and actually consider all the relevant evidence, not just blindly adopt counsel's biased opinion of what the evidence proves. Tellingly, Plaintiffs cite no authority or even academic literature suggesting that such an approach is reliable or accepted in court or academia.

As for Plaintiffs' arguments responding to the specific examples of evidence Badawi did not consider, they rely on the same cherry-picked statements or materials shown to Badawi rather than the information not considered. For example, Badawi and Plaintiffs rely on isolated quotes from the Directors' testimony in which each was unable to remember specific details from a particular meeting or event that happened over 5 years ago. *Id.* at 8-9; Ex. 1 (Badawi Supp. Rpt.) at 22-24 (ECF No. 510-1). But this is not all

4

the Directors said on this topic, and Badawi did not read the rest of their testimony. Mot. at 4. Nor did Badawi consider the Directors' responses to Plaintiffs' interrogatories explaining the factual basis for the statements Plaintiffs challenge in the Proxy. *See generally* Ex. 3 (Badawi App. 1) (ECF No. 510-1). Badawi's failure to consider the Directors' testimony specifically recalling their general practices, their participation in board meetings discussing the transaction and the diligence (as well as the voluminous documents reflecting their process), and their factual basis for the statements Plaintiffs challenge is inexcusable. *See, e.g.*, Ex. 5 (Gutermuth Dep.) at 62:14-22, 80:12-15, 84:12-15 (ECF No. 510-1) (testifying that he would "regularly ask questions at every board meeting and every conference call"); Ex. 6 (Tepper Dep.) at 60:7-18, 75:9-76:12 (ECF No. 510-1) ("[M]y normal process is to review all the information thoroughly, confer with experts if they are brought into a situation and then make my own independent investment decision."); Ex. 7 (Walters Dep.) at 53:12-15, 59:23-60:10 (ECF No. 510-1) (recalling TPH's valuation efforts).

Similarly, Plaintiffs point to isolated snippets from TPH's deposition to argue that Badawi appropriately opined that the Board could not rely on TPH because "TPH was never engaged to analyze the reasonableness of a 12 wells per section assumption." Opp. at 9. Plaintiffs cannot dispute, however, that Badawi did not consider the rest of TPH's testimony that is inconsistent with his snippets. PX Ex. BX G (Knupp Dep.) at 174:1-4 (ECF No. 550-7) ("We [TPH] did an analysis, we did geological and reservoir engineering analysis; and as part of that analysis, we came to a conclusion about a potential number of wells that could be drilled per section."); *see also, e.g.*, Ex. 14 (Knupp Dep.) at 70-85

5

(detailing TPH's analysis). Moreover, one would reasonably expect someone opining on the scope of information TPH provided to the Board to have read TPH's report to the Board. But Badawi did not read it. Ex. 2 (Badawi Dep.) at 179:7-181:8 (ECF No. 510-1). If he had, perhaps he would have seen that TPH told the Board that its analysis indicated an average of 13.8 wells per modeled section,[3] almost 2 more wells than AMH was projecting:



---

[3] As indicated on the left-hand side, TPH excluded some locations from its modeling, just as AMH did. In total, TPH had modeled 4,487 wells across AMH's acreage, more than the 4,200 wells that AMH projected.

6

Ex. 8 (Def. Ex. 123) at 18 (Osage Average Wells per Section 7.4; Meramec Average Wells per Section 6.4) (highlighting added) (ECF No. 510-1).

Class Plaintiffs are certainly free to argue that this plain language means something other than what it appears to mean (although they did not ask TPH about it), but that is not relevant to this Motion. Badawi cannot render a reliable opinion if he did not consider the most basic evidence about TPH's conclusions. His failure to read TPH's report while opining on what TPH said renders his opinion undeniably unreliable. And the same is true of his other opinions since none are based upon full review and analysis of the evidence relevant to those opinions. Simply put, an expert cannot opine on a topic and intentionally not read the evidence about that topic.

*Finally,* Plaintiffs contend that Chappelle's failure to "recall the substance of the conversation" between him and Hackett gives Badawi license to invent a scenario in which Hackett directed Chappelle to use certain EBITDAX projections. Opp. at 10-11. But Plaintiffs (like Badawi) ignore the rest of Chappelle's testimony in which he swore under oath that this did not happen:

> Plaintiffs: "***Would it have been consistent with the way those discussions went*** that it was – that Mr. Hackett raised the idea of using 350 to $360 million as the estimated 2018 EBITDAX for Alta Mesa?"
>
> Chappelle: "First, I don't recall the substance of the conversation and ***it would not be consistent for Jim to somehow, as you seem to be suggesting, tell me what the number should be***."

Ex. 10 (Apr. 19, 2023 Chappelle Dep.) (Class) at 51:14-22 (ECF No. 510-1). There is no way to read this testimony other than as a blanket denial of Plaintiffs' suggestion that

7

Hackett directed Chappelle use a particular projection. And Hackett would have testified to the same had Plaintiffs asked him about his conversation with Chappelle or these documents. *See, e.g.*, Ex. 12 (Hackett Dep.) (Class) at 142:18-144:3 (ECF No. 510-1) (explaining he "was not involved in preparing any of these actual numbers" and the projections were AMH's and KFM's numbers). There is not a single document or any witness that supports Badawi's speculation about what was said on this telephone call and Badawi's decision to ignore the only evidence about it means that his opinion is unreliable and should not be permitted to taint the jury.

### B. Plaintiffs Concede That They Failed to Disclose Timely Expert Opinion Regarding the Standard of Care

The Proxy Defendants' additional basis to exclude Badawi's rebuttal opinions regarding whether their conduct was consistent with custom and practice is straightforward: Badawi's rebuttal opinions relate to Plaintiffs' burden to provide evidence regarding the applicable standard of care and, thus, are untimely. Mot. at 8-9. Class Plaintiffs do not dispute that the law required them to disclose any expert opinions on the applicable standard of care, nor do they even mention, much less distinguish the Proxy Defendants' case law holding that failure to do so results in exclusion. *See McAfee v. Murray Ohio Mfg., Inc.*, 2003 WL 21015787, at * 7 (5th Cir. Apr. 7, 2003) (affirming exclusion of rebuttal expert witness because his testimony would have gone to a "necessary element" of plaintiffs' case). Instead, Plaintiffs offer two excuses for their failure to meet their evidentiary burden.

8

To start, Class Plaintiffs contend for the first time ever that they intend to prove "Defendants' deliberate misconduct," not negligence. Opp. at 13. This is the exact opposite of what they pled in their Complaint:

> For purposes of this [Section 14(a)] claim [Count III], Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct. This claim is based solely on negligence.

Third Am. Compl. ("TAC") ¶ 377 (ECF No. 218). Accepting Class Plaintiffs' latest representation as true, Proxy Defendants would no longer dispute that Badawi's Negligence Opinions are untimely under this newly applicable standard. But the consequence is Class Plaintiffs should be ***judicially estopped*** from later arguing that the jury can evaluate their Section 14(a) claim under a negligence standard. *United States v. Cluff*, 857 F.3d 292, 301 (5th Cir. 2017) (noting judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding"). But if Class Plaintiffs still intend to seek a jury verdict based on negligence, the Proxy Defendants do not concede that Badawi can testify.

Plaintiffs' second argument is that under a negligence standard they do not have an evidentiary burden at all because the "Court is more than capable of instructing the jury on the negligence standard applicable in the Fifth Circuit." Opp. at 13. Plaintiffs misunderstand the role of the court and the litigants. The Court will of course instruct the jury on the legal standard of care. For example, the Court could borrow the Eleventh Circuit's Civil Pattern Jury Instruction for Section 14(a) and instruct the jury that "[n]egligence is the failure to exercise the due diligence, care, or competence that a

9

reasonable person would when making representations, or deciding what facts to disclose, in the proxy solicitation. Ask yourself: Would a reasonable person have made or omitted the statements in the proxy solicitation?" Eleventh Circuit Pattern Jury Instruction (Civil Cases) 6.5 (2022). But, as reflected in case law, it is Class Plaintiffs' burden to introduce expert evidence regarding how a reasonable director would have acted in connection with the Business Combination and the Proxy. *Sec. & Exch. Comm'n v. Shanahan*, 646 F.3d 536, 547 (8th Cir. 2011). The Court will not instruct the jury on that matter. Class Plaintiffs did not provide this evidence when they were required to do so, and thus Badawi cannot testify on those matters now.[4]

Finally, Class Plaintiffs make no effort at all to show that their belated disclosure of Badawi's opinions was substantially justified or harmless and, thus, concede this point.

## CONCLUSION

For the foregoing reasons, the Defendants request that the Court grant Defendants' Motion, excluding all of Badawi's Opinions, and, in the alternative, striking the Class Plaintiffs' untimely and improper disclosure of Badawi, and precluding Badawi from offering the Negligence Opinions in this action.

---

[4] Class Plaintiffs also claim that Badawi "merely rebuts" Whitehead's opinions. Opp. at 14. Exactly, and this is the problem. Expert opinion regarding Class Plaintiffs' evidentiary burden cannot be addressed solely on rebuttal.

Dated: February 2, 2024                                    Respectfully submitted,

                                                    By     /s/ *J. Christian Word*

                                                           J. Christian Word
                                                           Attorney-in-Charge for Defendants
                                                           D.C. Bar No. 461346
                                                           S.D. Tex.  Bar No. 3398485
                                                           **LATHAM & WATKINS LLP**
                                                           555 Eleventh Street, NW
                                                           Suite 1000
                                                           Washington DC 20004
                                                           Tel.: (202) 637-2200
                                                           Fax: (202) 637-2201

                                                           Of counsel:
                                                           Heather A. Waller
                                                           IL Bar No. 6302537
                                                           S.D. Tex.  Bar No. 2886108
                                                           **LATHAM & WATKINS LLP**
                                                           330 North Wabash Avenue
                                                           Suite 2800
                                                           Chicago, IL 60611
                                                           Tel: (312) 876-7700
                                                           Fax: (312) 993-9767
                                                           Heather.Waller@lw.com

                                                           Laura E. Bladow (*pro hac vice*)
                                                           D.C. Bar No. 1740343
                                                           Eunice M. Kabuga (*pro hac vice*)
                                                           D.C. Bar No. 90006573
                                                           **LATHAM & WATKINS LLP**
                                                           555 Eleventh Street, NW
                                                           Suite 1000
                                                           Washington DC 20004
                                                           Tel.: (202) 637-2200
                                                           Fax: (202) 637-2201
                                                           Laura.Bladow@lw.com
                                                           Eunice.Kabuga@lw.com

                                                           *Counsel for Defendants Alta Mesa*
                                                           *Resources, Inc., f/k/a Silver Run*

*Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Stephen S. Coats; Michael E. Ellis; William D. Gutermuth; James T. Hackett; Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
jschreiber@winston.com

*Co-Counsel for Defendants Harlan H. Chappelle and Michael E. Ellis*

13

## CERTIFICATE OF SERVICE

I certify that on February 2, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ *J. Christian Word*
J. Christian Word
