UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>Judge George C. Hanks, Jr.<br><br>PUBLIC |

## APPENDIX TO DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE CLASS PLAINTIFFS' ACCOUNTING EXPERT D. PAUL REGAN UNDER RULE 702

In accordance with Court Procedure 7(B)(3), Moving Defendants submit this Appendix in support of their Reply in Support of Motion to Exclude Class Plaintiffs' Accounting Expert D. Paul Regan Under Rule 702, which is filed concurrently herewith. Moving Defendants rely on the following evidence to support their motion:

| Ex. No. | Description |
|---|---|
| 17 | July 26, 2017 Email from M. Christopher to J. Hostettler (ARMEnergy_00055517- ARMEnergy_00055524) (Filed Under Seal) |
| 18 | July 17, 2017 Email from M. Christopher to R. Schneider (ARMEnergy_00135683) (Filed Under Seal) |
| 19 | July 17, 2017 Email from M. Christopher to R. Schneider (ARMEnergy_00113243) (Filed Under Seal) |
| 20 | Excerpts of the Deposition of D. Paul Regan taken November 2, 2023 |

Dated: February 2, 2024

Respectfully submitted,

By /s/ *J. Christian Word*

J. Christian Word
Attorney-in-Charge for Defendants
D.C. Bar No. 461346
S.D. Tex. Bar No. 3398485
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Christian.Word@lw.com

Of Counsel:
Heather A. Waller
IL Bar No. 6302537
S.D. Tex. Bar No. 2886108
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Heather.Waller@lw.com

Stephen T. Nasko (*pro hac vice*)
D.C. Bar No. 1779366
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Stephen.Nasko@lw.com

*Counsel for Defendants Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Stephen S. Coats; Michael E. Ellis;*

2

*William D. Gutermuth; James T. Hackett; Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
jschreiber@winston.com

*Co-Counsel for Defendants Harlan H. Chappelle and Michael E. Ellis*

## CERTIFICATE OF SERVICE

I certify that on February 2, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ J. Christian Word*
J. Christian Word

# EXHIBIT 17
# FILED UNDER SEAL

# EXHIBIT 18
# FILED UNDER SEAL

# EXHIBIT 19
# FILED UNDER SEAL

# EXHIBIT 20

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2           FOR THE SOUTHERN DISTRICT OF TEXAS
 3                    HOUSTON DIVISION
 4
 5   IN RE:  ALTA MESA
 6   RESOURCES, INC.,            Case No.:  4:19-cv-00957
 7   SECURITIES LITIGATION
 8   ------------------------/
 9
10
11
12       Video-recorded deposition of D. PAUL REGAN, at
13       Latham & Watkins, LLP, 505 Montgomery Street,
14       Suite 2000, San Francisco, California,
15       commencing at 9:29 a.m. PDT, Thursday, November
16       2, 2023, before Lorrie L. Marchant, California
17       CSR No. 10523.
18
19
20
21   Stenographically reported by:
     LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
22   California CSR No. 10523
     Washington CSR No. 3318
23   Oregon CSR No. 19-0458
     Texas CSR No. 11318
24
     Job No. MW 6290725
25   California Firm Registration No.:  48
```

Page 2

```
 1              APPEARANCES
 2  ON BEHALF OF CLASS PLAINTIFFS AND THE WITNESS:
 3      LABATON SUCHAROW, LLP
 4      BY: IRA A. SCHOCHET, ESQ.
          DAVID SALDAMANDO, ESQ.
 5      140 Broadway
        New York, NY 1005
 6      (212) 907-0700
        ischochet@labaton.com
 7      dsaldamando@labaton.com
 8  ON BEHALF OF CLASS PLAINTIFFS:
 9      ROBBINS GELLER RUDMAN & DOWD, LLP
        BY: LONNIE A. BROWNE, ESQ. (via Zoom)
10          TRIG R. SMITH, ESQ. (via Zoom)
            JACK KELLEY, ESQ. (via Zoom)
11      655 West Broadway, Suite 1900
        San Diego, CA 92101
12      (619) 231-1058
        lbrowne@rgrdlaw.com
13      tsmith@rgrdlaw.com
        jkelley@rgrdlaw.com
14
    ON BEHALF OF PLAINTIFFS, ALYESKA AND ORBIS:
15
        ROLNICK KRAMER SADIGHI, LLP
16      BY: JOSEPH SPARACIO, ESQ. (via Zoom)
        1251 Avenue of the Americas, 41st Floor
17      New York, NY 10020
        (212) 597-2800
18      jsparacio@rksllp.com
19  ON BEHALF OF DEFENDANTS, BAYOU CITY ENERGY
    MANAGEMENT AND WILLIAM McMULLEN:
20
        KIRKLAND & ELLIS, LLP
21      BY: NICK BROWN, ESQ. (via Zoom)
            BELLE A.E. HARRIS, ESQ., (via Zoom)
22      609 Main Street
        Houston, TX 77002
23      (713) 836-3507
        nick.brown@kirkland.com
24      belle.harris@kirkland.com
25  (Continued)
```

Page 3

```
 1              APPEARANCES
 2
    ON BEHALF OF ALTA MESA RESOURCES, INC., HARLAN H.
 3  CHAPPELLE, JAMES T. HACKETT, THOMAS J. WALKER,
    WILLIAM D. GUTERMUTH, JEFFREY H. TEPPER, DIANNA J.
 4  WALTERS, RIVERSTONE INVESTMENT GROUP LLC, STEPHEN
    COATS, MICHAEL E. ELLIS, PIERRE F. LAPEYRE, DAVID M.
 5  LEUSCHEN, DONALD SINCLAIR, RONALD SMITH:
 6      LATHAM & WATKINS, LLP
        BY: HEATHER WALLER, ESQ.
 7      330 North Wabash Avenue, Suite 2800
        Chicago, IL 60611
 8      (312) 876-6554
        heather.waller@lw.com
 9      BY: HENRY ZAYTOUN, ESQ. (via Zoom)
            STEPHEN NASKO, ESQ. (via Zoom)
10      555 11th St NW
        Washington, DC 20004
11      (202) 637-2200
        henry.zaytoun@lw.com
12      stephen.nasko@lw.com
13
    ON BEHALF OF DEFENDANT, ARM ENERGY HOLDINGS, LLC:
14
        EVERSHEDS SUTHERLAND (US) LLP
15      BY: ADAM POLLET, ESQ. (via Zoom)
        700 Sixth Street, NW, Suite 700
16      Washington, DC 20001
        (202) 383-0812
17      adampollet@eversheds-sutherland.com
18
    ON BEHALF OF DEFENDANTS, HPS INVESTMENT PARTNERS,
19  LLC AND DON DIMITRIEVICH:
20      QUINN EMANUEL URQUHART & SULLIVAN, LLP
        BY: JACOB WALDMAN, ESQ. (via Zoom)
21      51 Madison Avenue, 22nd Floor
        New York, NY 10010
22      (212) 849-7000
        jacobwaldman@quinnemanuel.com
23
24  (Continued)
25
```

Page 4

```
 1              APPEARANCES
 2
    Also present:
 3
        Keigo Painter, Videographer
 4      Dan Acosta, Veritext Concierge (via Zoom)
        Steve McBride, Cornerstone Research
 5          (via Zoom)
        Jean-Philippe Poissant, Cornerstone
 6          Research (via Zoom)
 7              ---oOo---
```

Page 5

```
 1              I N D E X
 2          INDEX OF EXAMINATION
 3  EXAMINATION BY                      PAGE
 4  Ms. Waller                            9
    Mr. Pollet                          210
 5  Mr. Schochet                        213
    Ms. Waller                          227
 6  Mr. Schochet                        252
    Ms. Waller                          254
 7
 8              ---oOo---
```

Page 58

1  BY MS. WALLER:
2  Q. And how does your experience or
3  expertise -- how does your experience as an
4  accountant assist in your review of those documents?
5  A. Well, if we look, for example, at
6  paragraph 60 of Exhibit 47, the -- and my experience
7  when I -- when I see the document, from which we
8  prepared the chart in paragraph 60, it's prepared
9  from the PowerPoint slide in paragraph 59.
10      And my experience, you know, when I -- I
11  look at that header, I see that it's "Alta Mesa Oil
12  UER, comma -- paren, MBO."
13      So this is a measure of the estimated
14  economic ultimate recovery in -- measured in
15  millions of barrels of oil.
16      You know, I've seen charts like this in not
17  just this case but in other cases that I have worked
18  on. And I know that this is a data point. It
19  happens to show data points of various parent wells
20  and infill wells, which are child wells.
21      So I have that background to realize that
22  this is an important chart.
23      What I did with respect to that chart, I
24  thought given when the -- the erroneous use and
25  expectation in the projections that child wells will

Page 59

1  perform similar to parent wells, what I wanted to do
2  was to see, well, what was the EUR/MBO of child
3  wells in comparison to 250 MBO.
4      And I drew the red vertical line that
5  appears in paragraph 60 because that is
6  approximately in the middle of 2017. And I know in
7  the 10-K, Alta Mesa said that it takes 90 to
8  120 days to enable an estimate of the EUR of
9  particular wells. So that vertical line is a line I
10 added to the chart.
11      And what I'm seeing is 17 -- I think it's
12 17 wells, most of which -- of child wells that are
13 to the left of the vertical line, and most of which
14 perform significantly below the 250 MBOE.
15      So my background as an accountant in
16 looking at this chart tells me that an assumption
17 which is done in August of 2017 that assumes child
18 wells will perform the same as parent wells, that
19 the -- the data that is in place at that time is in
20 significant contradiction to that assumption.
21      And that together with a -- several other
22 documents that indicate that an assuming -- an EUR
23 with respect to child wells, it would be the same as
24 the parents and that they should average 250 MBO,
25 that that's a mistake or an oversight that is in

Page 60

1  existence in August of 2017. And it continued to be
2  made in the -- in the proxy statements in February
3  of 2018.
4      And there's a -- a lot of other -- a number
5  of other documents that are referred to in footnotes
6  and the text that follow, including the expert
7  reports that were prepared by plaintiffs' expert,
8  which are consistent with -- with that determination
9  that this was an oversight or misuse of information
10 that was in place at the time.
11  Q. You rely on plaintiffs' other experts for
12 purposes of your opinion; is that fair?
13      MR. SCHOCHET: Objection. Misstates his
14 testimony.
15      THE WITNESS: I've noted that the
16 plaintiffs' other experts have provided expert
17 reports which are consistent with my -- my
18 determination and my report where I indicate that
19 the assumption of performance of -- of child wells
20 will be consistent with parent wells, and the
21 production should approximate 250 MBO.
22      BY MS. WALLER:
23  Q. Are you offering an opinion in this case as
24 to whether the assumption of 250 MBO was appropriate
25 or not, that particular assumption?

Page 61

1      MR. SCHOCHET: Objection.
2      THE WITNESS: What I say --
3      (Simultaneous speakers - unclear.)
4      (Stenographer interrupted for clarification
5       of the record.)
6      MR. SCHOCHET: Misstates his testimony.
7      MS. WALLER: I'm not characterizing his
8  testimony. I'm asking what his opinion is.
9      THE WITNESS: What I'm -- what I'm saying
10 is that the projections which were made and were
11 represented as being the best information and the
12 most reasonable information for Alta Mesa to use in
13 those projections when estimating -- projecting
14 EBITDA, for example, that they did not represent the
15 best information available or the most reasonable
16 information available.
17      And, in fact, that there were documents,
18 credible documents, which contradict that assumption
19 and indicate that that assumption overlooked or
20 misused relevant information in August of 2017 and
21 in February of 2018.
22      BY MS. WALLER:
23  Q. You don't actually have experience, though,
24 analyzing well results; is that right?
25  A. Well, I've certainly looked at a lot of

16 (Pages 58 - 61)

Page 106

1  Q.  And did you do any calculations to perform
2  that back testing to say what AMH's history with
3  respect to its projections versus performance were?
4  A.  I think there's a number of -- of
5  paragraphs that I cite in my report where AMH and
6  KFM had projected EBITDA by quarter in 2017 and in
7  2018.  And they have a consistent record of failing
8  miserably to achieve their projections.  And they
9  not only don't achieve them, they tend to miss them
10 by considerable margin.
11       And that was recognized by folks at
12 Riverstone as well as within Alta Mesa.
13 Q.  What paragraph specifically are you looking
14 at in your report?
15 A.  Well, let's see.  There would be some
16 examples.
17 Q.  Is there a specific paragraph you were
18 looking at when you were answering my question?
19 A.  That there are a number of comments --
20 there are many.
21       If you look at paragraph 90, you know,
22 there's a discussion of Q2 2017, KFM's EBITDA
23 totaled 6.7 million.  That's approximately half of
24 the 12.1 million projected.
25       In the paragraph 95, in Q3 2017, KFM's

Page 107

1  year-to-date total was 16.9.  There was a 21 percent
2  shortfall.
3  Q.  Did you do any of your own calculations on
4  AMH or KFM's prior projections versus what they
5  actually achieved?
6       MR. SCHOCHET:  Just before he answers that,
7  do you want him to give more examples before he
8  answers that question now?
9       MS. WALLER:  If he has any other examples
10 that he can point me to, but I don't really want to
11 spend another five minutes with him flipping through
12 the report.  So ...
13      MR. SCHOCHET:  Okay.  Just want to make
14 sure.
15      THE WITNESS:  Well, in paragraph 97,
16 there's a discussion of how the projected EBITDA was
17 significantly short of what was -- the actual is
18 significantly short of what was projected.
19      In 99, there's a discussion by Mr. Dunne
20 that the existing view was that the result would be
21 less than the public guidance.
22      Paragraph 100, again, there's criticism of
23 the projections.
24 BY MS. WALLER:
25 Q.  Can you point me to calculations that you

Page 108

1  performed analyzing past projections versus actual
2  achievement?
3  A.  Well, these paragraphs contain evidence of
4  what the projection was comparing to what was
5  achieved.
6       Now, for example, in 104, I say KFM
7  disclosed EBITDA of 22 million.  It was
8  approximately 50 percent of the projection in the
9  business proxies.  You know, that 50 percent is
10 probably my calculation of the shortfall.
11      There's, you know, repeated calculations
12 where I compare the -- the projections in EBITDA
13 and/or repeated calculations where I compare the
14 actual performance of the produced volume of oil and
15 gas compared to the 250 -- 250 MBOE.  And we see
16 that there was a significant shortfall.  And I
17 calculate that significant shortfall.
18 Q.  How much weight did you give the prior
19 projections in your opinion that the projections in
20 the proxy were not the best currently available
21 estimates?
22 A.  Can I hear that again?  I'm sorry.  Ira was
23 coughing, so I didn't hear --
24      MR. SCHOCHET:  I apologize.
25 ///

Page 109

1  BY MS. WALLER:
2  Q.  How much weight did you give the fact
3  that -- or did you give your assertion here that AMH
4  had a history of underperforming its projections?
5  How much weight did you give that in your
6  assessment?
7  A.  I haven't tried to put that into a formula.
8  That is one of the factors that I considered.
9       And then when I looked to what's the bases
10 that AM -- that Alta Mesa had for estimating 250
11 MBOE, you know, including that the child wells would
12 perform as well as parent and that -- an estimate
13 that it had three benches, for example, I see -- I
14 don't see a reasonable bases for them making those
15 assumptions.  In fact, they appear to be
16 contradicted by the actual experience that was in
17 place at that time.
18      That together with they continually project
19 EBITDA, they continually project production in terms
20 of oil and gas volumes, they fail to make -- to
21 achieve those projections.
22      KFM projects that it's going to get new
23 customers.  It doesn't get those new customers.  In
24 fact, it loses customers.
25      And when KPMG assesses the skill set and

Page 110

1 capabilities of these people to do these kinds of
2 tasks, KPMG indicates that these folks are not
3 equipped with the skill set to do it. In fact,
4 Alta Mesa agrees with that, and a lot of folks are
5 terminated and a lot of folks are hired in order to
6 recover and mitigate that material weakness.
7         So all of that combination tells me that
8 these were not reasonable assumptions. And they
9 certainly didn't represent the best available
10 information.
11    Q.   How does KPMG's assessment in -- that was
12 done in late 2018; is that right?
13    A.   Yes.
14    Q.   How does that factor into your opinion with
15 respect to the projections that were developed by
16 AMH and KFM in mid-2017?
17    A.   Well, if you look at paragraph 214, you've
18 got Mr. Smith saying (as read):
19           "The common denominator, I'll call
20        it, that relates -- goes back to all of
21        these material weaknesses that were
22        identified was due to the business
23        combination that had occurred."
24        215 says (as read):
25           "At the time of the business

Page 111

1        combination, management recognized the
2        need to hire additional resources to
3        supplement existing personnel within
4        property accounting to ensure the
5        department's resources were aligned with
6        the size and complexity of the company's
7        post-business combination."
8        Now, KPMG makes an assessment in -- after
9 July of 2018, but this is -- these are comments
10 about what management knew was in place at the time.
11        And if we look at Footnote 415, you've got
12 a Riverstone e-mail to Mr. Hackett that says
13 (as read):
14           "We don't have high confidence in
15        AM/KFM's reporting fidelity or
16        frequency."
17        Footnote 418 (as read):
18           "In short, the management team of
19        Alta Mesa was unqualified for the
20        increase in industrial activity on the
21        Alta Mesa position."
22        That increase that they're talking about is
23 the business combination which occurred in February
24 of 2018. That mirrors the comments of KPMG made
25 later, but it is -- it is as of the business

Page 112

1 combination.
2    Q.   So let's take Mr. Smith statement that
3 you're pointing to in 214. You characterize his
4 testimony, that (as read):
5           "Mr. Smith" -- this is from your
6        report -- "similarly traced the material
7        weaknesses to the time of the business
8        combination."
9        If Mr. Smith disagrees with your
10 characterization of his testimony, does that change
11 your opinion?
12    A.   Well, it's testimony that he -- he stated.
13 And it is a statement which is consistent with a
14 KPMG assessment. It's consistent with, you know,
15 the -- the documents that I cite in Footnote 415,
16 consistent with 418. It's consistent with 419.
17        MR. SCHOCHET: Footnotes you mean?
18        THE WITNESS: Footnote -- yeah, footnotes.
19        BY MS. WALLER:
20    Q.   Is it --
21    A.   420.
22    Q.   Is it your opinion that because --
23    A.   There are several others that follow, but
24 I -- I probably have named enough.
25    Q.   So is the answer, no, it doesn't change

Page 113

1 your opinion?
2    A.   No, for the -- his testimony that I'm
3 reading is consistent with KPMG's considered
4 assessment in the finding that there were material
5 weaknesses for the same reason that Mr. Smith is
6 testifying to, as indicated in my paragraph 214.
7        And I know that auditors do not state that
8 something is a material weakness lightly. It's a
9 very sobering and careful determination.
10    Q.   Is it --
11    A.   And the company eventually tried to
12 mitigate these weaknesses by hiring appropriately
13 skilled personnel, but it had occurred much later.
14    Q.   Is it your opinion that because Mr. Smith
15 stated that some of the material weaknesses related
16 to effects of the business combination, that meant
17 that the material weakness existed at the time of
18 the business combination?
19        MR. SCHOCHET: Objection to form.
20        THE WITNESS: Well, I think when he makes
21 that statement, given the context in which he makes
22 that statement, in particular, in relation to the
23 other documents that I cite, I think that's a
24 reasonable interpretation, yes.
25 ///

Page 258

1  THE STENOGRAPHER: And regular delivery of
2  the final or any expedite?
3  MR. SCHOCHET: If you could expedite it,
4  I'd appreciate it.
5  THE STENOGRAPHER: On a three-day expedite,
6  the same as Latham & Watkins?
7  MR. SCHOCHET: That's fine, yes.
8  (Deposition concluded at 7:23 p.m. PDT.)
9  ---oOo---

Page 259

1  STENOGRAPHER'S CERTIFICATE
2
   I, LORRIE L. MARCHANT, a Certified
3  Shorthand Reporter, holding a valid and current
   license issued by the State of California, CSR No.
4  10523, duly authorized to administer oaths, do
   hereby certify:
5      That the witness in the foregoing
   deposition was administered an oath to testify to
6  the whole truth in the within-entitled cause.
       That said deposition was taken down by me
7  in shorthand at the time and place therein stated
   and thereafter transcribed into typewriting, by
8  computer, under my direction and supervision to the
   best of my ability.
9      Should the signature of the witness not be
   affixed to the deposition, the witness shall not
10 have availed himself/herself of the opportunity to
   sign or the signature has been waived.
11     I further certify that I am neither
   counsel for nor related to any party in the
12 foregoing deposition and caption named nor in any
   way interested in the outcome thereof.
13
       THE DISMANTLING, UNSEALING, OR UNBINDING
14 OF THE ORIGINAL TRANSCRIPT WILL RENDER THE
   REPORTER'S CERTIFICATE NULL AND VOID.
15
       In WITNESS WHEREOF, I have hereunto set my
16 hand this November 6, 2023.
17
18  /s/ Lorrie L. Marchant
19
20
21  _____
    LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
22  California CSR No. 10523
    Washington CSR No. 3318
23  Oregon CSR No. 19-0458
    Texas CSR No. 11318

Page 260

Veritext Legal Solutions
1100 Superior Ave
Suite 1820
Cleveland, Ohio 44114
Phone: 216-523-1313

November 7, 2023

To: Ira A. Schocet, Esq.

Case Name: Alta Mesa Resources, Inc. Securities Litigation v.

Veritext Reference Number: 6290725

Witness: D. Paul Regan    Deposition Date: 11/2/2023

Dear Sir/Madam:

Enclosed please find a deposition transcript. Please have the witness review the transcript and note any changes or corrections on the included errata sheet, indicating the page, line number, change, and the reason for the change. Have the witness' signature notarized and forward the completed page(s) back to us at the Production address shown above, or email to production-midwest@veritext.com.

If the errata is not returned within thirty days of your receipt of this letter, the reading and signing will be deemed waived.

Sincerely,
Production Department

NO NOTARY REQUIRED IN CA

Page 261

DEPOSITION REVIEW
CERTIFICATION OF WITNESS

ASSIGNMENT REFERENCE NO: 6290725
CASE NAME: Alta Mesa Resources, Inc. Securities Litigation v.
DATE OF DEPOSITION: 11/2/2023
WITNESS' NAME: D. Paul Regan

In accordance with the Rules of Civil Procedure, I have read the entire transcript of my testimony or it has been read to me.

I have made no changes to the testimony as transcribed by the court reporter.

_____    _____
Date               D. Paul Regan

Sworn to and subscribed before me, a Notary Public in and for the State and County, the referenced witness did personally appear and acknowledge that:

They have read the transcript;
They signed the foregoing Sworn Statement; and
Their execution of this Statement is of their free act and deed.

I have affixed my name and official seal this _____ day of_____, 20____.

_____
Notary Public

_____
Commission Expiration Date

66 (Pages 258 - 261)