# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>Judge George C. Hanks, Jr.<br><br><br>ORAL ARGUMENT REQUESTED |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II *et al.*,<br><br>Defendants. | Civil Action No. 4:22-cv-01189<br><br>Judge George C. Hanks, Jr. |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; *et al.*,<br><br>Defendants. | Civil Action No. 4:22-cv-02590<br><br>Judge George C. Hanks, Jr. |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF EXPERT WITNESSES STEVEN P. FEINSTEIN AND ZACHARY NYE UNDER RULE 702

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDING ....................................................... 1

STATEMENT OF THE ISSUES ..................................................................... 1

SUMMARY OF ARGUMENT ....................................................................... 2

LEGAL STANDARD ..................................................................................... 3

ARGUMENT ................................................................................................. 4

    A.    Plaintiffs' Oppositions Confirm That Feinstein's and Nye's Calculations of Section 10(b) Per-Share Damages Are Unreliable and Unhelpful ................................................................................ 4

    B.    Plaintiffs' Oppositions Confirm That Feinstein's and Nye's Calculations of Section 14(a) Per-Share Damages Are Unreliable and Unhelpful ............................................................................ 12

    C.    Direct Action Plaintiffs' Attempts To Save Nye's Other Opinions Fail ................................................................................................. 14

CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ............................................................................................. 3

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................... 1, 5, 14

*Erikson v. Jernigan Capital, Inc.*,
2023 WL 5966785 (S.D.N.Y. Sept. 14, 2023) ............................................... 13

*Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund
(LOCAL 66)*,
579 F.3d 401 (5th Cir. 2009) ............................................................................ 8

*Fuller v. Werner Enterprises, Inc.*,
No. 3:16-CV-2958-BK, 2018 WL 10380370 (N.D. Tex. Nov. 29, 2018) .................. 9

*Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.*,
141 S. Ct. 1951 (2021) .................................................................................... 10

*Greenberg v. Crossroads Systems, Inc.*,
364 F.3d 657 (5th Cir. 2004) ....................................................................... 7, 8

*Hohenstein v. Behringer Harvard REIT I, Inc.*,
2014 WL 1265949 (N.D. Tex. Mar. 27, 2014) ............................................... 13

*Horowitz v. Pownall*,
582 F.Supp. 665 (D. Md. 1984) ..................................................................... 13

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) .............................................................. 4

*Lormand v. US Unwired*,
565 F.3d 228 (5th Cir. 2009) ........................................................................... 8

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) ......................................................................... 11

*Magruder v. Halliburton Co.*,
2009 WL 854656 (N.D. Tex. Mar. 31, 2009) ................................................. 8

ii

*Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*,
    769 F.3d 313 (2014) ................................................................. 8

*Robles v. Eminent Med. Ctr. LLC*,
    619 F. Supp. 3d 609 (N.D. Tex. 2022) .................................... 4

*Spitzberg v. Hous. Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) ................................................... 8

*United States v. Aegis Therapies, Inc.*,
    2015 WL 1541491 (S.D. Ga. Mar. 31, 2015) ........................... 4

*Wilson v. Great Am. Indus., Inc.*,
    855 F.2d 987 (2d Cir. 1988)................................................... 13

**STATUTES**

15 U.S.C. § 78u-4 ...................................................................... 1

Texas Business and Commercial Code § 27.01 ........................ 15

**RULES**

Fed. R. Civ. P. 37(c)(1)............................................................ 9

Fed. R. Evid. 702 ............................................................ 1, 3, 5

## NATURE AND STAGE OF PROCEEDING

This is a securities class action, and the parties have completed fact and expert discovery.  Defendants have moved under Federal Rule of Evidence 702 to exclude the opinions proffered by Class Plaintiffs' and Opt-Out Plaintiffs' (collectively, "Plaintiffs") loss causation and damages experts, Prof. Steven P. Feinstein and Dr. Zachary Nye, respectively.  Defs.' Mot. to Exclude Class Pls.' Expert Witnesses Stephen P. Feinstein and Zachary Nye ("Motion" or "Mot.") (ECF No. 511).  Class Plaintiffs and Opt-Out Plaintiffs (also referred to herein as "Direct Action Plaintiffs") filed separate oppositions to Defendants' Motion.  Class Pls.' Opp'n to Defs.' Mot. to Exclude Class Pls' Expert Witness Zachary Nye ("Nye Opp.") (ECF No. 561); Class Pls.' Opp'n to Defs.' Mot. to Exclude Class Pls' Expert Witness Steven P. Feinstein ("Feinstein Opp.") (ECF No. 559).  Defendants are filing one consolidated Reply in support of their Motion.

## STATEMENT OF THE ISSUES

The opinions at issue in this Motion, namely Feinstein's and Nye's opinions regarding (1) the maximum amount of per-share damages each opines should be awarded if the Plaintiffs prevail on their Section 10(b) claims; and (2) the maximum amount of per-share damages each opines should be awarded if the Plaintiffs prevail on their Section 14(a) claims, should be excluded under Rule 702.  Each of these opinions are unreliable and unhelpful to the trier of fact because they are contrary to the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005), its progeny, and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 (the "PSLRA").  Plaintiffs' oppositions to Defendants' Motion do not refute, and in fact underscore, these conclusions.

## SUMMARY OF ARGUMENT

Defendants demonstrate in their Motion that both Feinstein's and Nye's efforts to calculate damages under Section 10(b) fail even to attempt to prove any causal connection between each alleged misstatement and a corrective disclosure, as required by the PSLRA, *Dura*, and several Fifth Circuit decisions.   Mot. at 7-14.   One particular answer in Feinstein's deposition reveals the nonsensical and unhelpful nature of their conclusions:

> Q:      . . . How much of the stock price decline that you attribute to the corrective disclosure in February [2019] is connected to the inflation caused by this alleged statement -- misstatement in the 2017 10-K?
>
> A:      . . . I mean, all of it and none of it.

Ex. 3 (Feinstein Dep.) (ECF No. 511-1) at 119:23-120:16.

These are securities fraud damages, not Schrodinger's cat.  An alleged misstatement either caused some corresponding price decline of a specific amount when it was corrected, or it did not.  Defendants are aware of no court that has permitted a damages expert to testify in a securities fraud case without making this causal connection, and Plaintiffs do not cite any.  In fact, in the litany of Fifth Circuit decisions that both Defendants and Plaintiffs cite (including *Flowserve, Spitzberg,* and *Lormand*, among others), the Fifth Circuit methodically analyzed whether plaintiffs had shown a causal connection between each alleged misstatement and at least one corrective disclosure.  Because Feinstein and Nye did not do so, their opinions should be excluded.  Perhaps recognizing belatedly that their expert should have done this work, Class Plaintiffs now claim that Feinstein did.  This is untrue, and Feinstein admitted it:  *See* Ex. 3 (Feinstein Dep.) at 88:2-23 ("I mean, I didn't do the analysis that way.").  Plaintiffs, in a last-ditch effort to save their experts, argue that

it does not matter that their experts do not provide any analysis of which stock price decline and how much of it was caused by which false statement because the jury can figure it out. But if their experts can't, how can the Court expect the jury to do so?

With respect to Section 14(a), Plaintiffs do not meaningfully engage with Defendants' arguments. To start, they do not even attempt to explain how their experts can conclude that the challenged Proxy statements caused the *exact same amount* of per-share damages, for purposes of Section 14(a), as the *completely different set of statements* (made both before and after the Proxy) caused for purposes of Section 10(b). This is because no explanation is possible under applicable law. Likewise, Plaintiffs fail to explain how "benefit-of-the-bargain" damages (Class Plaintiffs) or "lost opportunity" damages (Direct Action Plaintiffs) are consistent with *Dura* or the PSLRA. Nor do they cite any decision in which a court held that Congress excluded Section 14(a) from the PSLRA's loss causation provisions *sub silentio*.

Left with little else, Direct Action Plaintiffs attempt to rescue a subset of Nye's opinions concerning the Section 18 and Texas state law claims. But those attempts fall flat.

For these reasons and those set forth below, Defendants' Motion should be granted.

## LEGAL STANDARD

The parties agree that Rule 702 permits the use of expert testimony only if it "will help the trier of fact to understand the evidence or to determine a fact in issue" (rather than confuse or mislead). Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (explaining that the gatekeeping function under Rule 702 tasks this Court

with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.").

As particularly applicable here and noted in the Motion, courts exclude expert damages analyses as irrelevant and unhelpful to the jury when those analyses calculate damages for a theory of recovery that is inapplicable to the plaintiff's claim. *See, e.g.*, *Robles v. Eminent Med. Ctr. LLC*, 619 F. Supp. 3d 609, 648-49, 651 (N.D. Tex. 2022); *United States v. Aegis Therapies, Inc.*, 2015 WL 1541491, at *8 (S.D. Ga. Mar. 31, 2015) (expert's reliance on inapplicable standard rendered opinions unhelpful to the jury). Put otherwise, "[e]xpert opinions that are contrary to law are inadmissible. They cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact." *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005). The Direct Action Plaintiffs' observation that these decisions are not securities fraud cases does not change the fact that these standards apply to their expert.

## ARGUMENT

### A. Plaintiffs' Oppositions Confirm That Feinstein's and Nye's Calculations of Section 10(b) Per-Share Damages Are Unreliable and Unhelpful

Defendants showed that Feinstein's and Nye's Section 10(b) opinions cannot be squared with the PSLRA's loss causation requirement, as the Supreme Court and this Circuit have interpreted it, because their opinions are completely untethered to any analysis demonstrating which misstatement(s) were "corrected," and how, on each of the alleged corrective disclosure dates, and how much of the resulting stock price decline is attributed

to that misstatement.  *See, e.g.*, *Dura*, 544 U.S. at 342.[1]  In other words, Plaintiffs must causally connect each alleged misrepresentation to each alleged corrective disclosure, but they did not.  *See, e.g.*, *id.*  Their damages experts Feinstein's and Nye's "holistic" analyses do not even attempt to do this because they simply assume that every corrective disclosure corrected every challenged statement, and that the entirety of the price decline following each disclosure can be attributed to every misstatement in its entirety.  Mot. at 6.  Because a core purpose of Rule 702 is to prevent the jury from hearing opinions inconsistent with the law (which would only confuse, rather than be helpful to, the trier of fact), both Feinstein's and Nye's opinions must be excluded.

In response, Plaintiffs argue that Defendants have imposed upon their experts a heightened standard for loss causation that is not supported by Fifth Circuit law, relying principally on the Fifth Circuit's opinion in *Flowserve*.  Contrary to Plaintiffs' selective quotations, *Flowserve* does not absolve Plaintiffs of their burden to come forward with evidence demonstrating a causal connection between each misstatement and (one or more) corrective disclosure(s).  Rather, *Flowserve* recites the well-established loss causation requirement (consistent with the PSLRA and *Dura*) articulated by the Defendants in their

---

[1] Plaintiffs spill much ink defending in painstaking detail both experts' qualifications and construction of their event studies, which Defendants do not challenge.  That discussion is a *non sequitur* to Defendants' Motion, and safely can be ignored.  Plaintiffs further argue that the Motion merely attacks Feinstein's and Nye's conclusions and, therefore, concerns the weight afforded their opinions, not admissibility.  *See, e.g*, Nye. Opp. at 5; Feinstein Opp. at 3, 19, 23.  That blatantly misstates Defendants' Motion.  Defendants argued that Feinstein and Nye *did not do the analysis* (that an event study alone cannot do) that is required to demonstrate a causal connection between each misstatement and one or more corrective disclosures.  *See generally* Mot. at 7-15.

opening brief.  *See* Mot. at 7-8; *Flowserve*, 572 F.3d at 229 ("A plaintiff must also establish that after the purchase and before the loss there was a disclosure of negative truthful information that was related to the allegedly false, non-confirmatory, positive statement made earlier." (internal quotations, citations, and alterations omitted)).  And it is *that* general requirement that Feinstein and Nye do not attempt to meet, as Defendants have demonstrated.

The portions of the *Flowserve* opinion Plaintiffs quote do not alter the requirement, but rather provide guidance on what counts as "relevant corrective information." *Flowserve*, 572 F.3d at 229.  A deeper dive into the arguments and analysis in *Flowserve* is illustrative.  In *Flowserve*, plaintiffs alleged that the company "schemed to misrepresent" its "financial condition by making 'inextricably intertwined' false statements about (1) earnings forecasts, (2) historical financial performance, (3) past and future integration costs and savings related to the acquisitions of [two companies], and (4) debt-covenant compliance." *See Flowserve*, 572 F.3d at 225.  Seeking to reverse the district court's denial of class certification, plaintiffs argued on appeal that certification was appropriate because they pleaded that their losses were caused "when the 'true financial condition' of" the company was revealed, "regardless of whether the disclosure of the company's true financial condition correct[ed] past misstatements." *Flowserve*, 572 F.3d at 230.  Opposing plaintiffs' motion, defendants argued that "a plaintiff must show a 'fact-for-fact' disclosure of information that fully corrected prior misstatements." *Id.*

The Fifth Circuit rejected both parties' positions.  As to plaintiffs' "true financial condition" theory, the court explained that "loss caused solely by a general impression in

6

the market that 'something is wrong' is insufficient to establish causation." *Flowserve*, 572 F.3d at 232.   As for defendants' position, the "fact-for-fact" disclosure standard advocated for was too restrictive, because a defendant could simply defeat liability by refusing to admit the falsity of its prior statements. *Flowserve*, 572 F.3d at 230.   Relying upon a line of Fifth Circuit cases, the court found that the true standard was in the middle, holding that to be "corrective," a disclosure need not "precisely mirror" an earlier misrepresentation, but "the disclosed information must reflect part of the 'relevant truth' – the truth obscured by the fraudulent statements." *Flowserve*, 572 F.3d at 230.   In so doing, the Circuit did not permit the plaintiffs to shirk their obligation to prove a causal connection between an earlier misrepresentation and a later corrective disclosure on a statement-by-statement basis.   To the contrary, the court went into great detail of analysis of how and when (*i.e.*, on which corrective disclosure dates) the market could have learned (or not) of the "relevant truth" with respect to specific alleged misstatements. *Flowserve*, 572 F.3d at 231-32.

The Fifth Circuit's approach in *Flowserve* was based upon, and is consistent with, a laundry list of other cases from this Circuit, cited by Plaintiffs and Defendants alike, which have required a plaintiff to prove a link between each alleged misstatement and a specific corrective disclosure for purposes of establishing loss causation.   For example, in *Greenberg v. Crossroads Systems, Inc.*, plaintiffs attempted to connect several alleged misstatements about a company's first, second, and third quarter financial results to an alleged disclosure that only noted the company's third quarter revenues would be lower. 364 F.3d 657, 668 (5th Cir. 2004).   Because that disclosure made "no reference at all" to

the company's first or second quarter earnings, the court held there was "no relationship" between the disclosure and the first and second quarter misstatements.  *Greenberg*, 364 F.3d 657, 668.  Similarly, in *Lormand v. US Unwired*, plaintiffs alleged that the company had lied to investors about its affiliation with and transfer of key aspects of its business to another company, along with the damaging effects of the company's "sub-prime credit marketing strategy."  565 F.3d 228, 239-43, 260 (5th Cir. 2009).  On appeal from the district court's order dismissing plaintiffs' complaint (on, *inter alia*, loss causation grounds), the court observed that the alleged disclosures "only" concerned the latter misrepresentations *and not the former. Id.* at 260-63.  Thus, plaintiffs could only pursue damages for the disclosures related to the "sub-prime credit marketing strategy" misstatements.  Numerous other decisions are in accord.[2]  Simply put, all of the decisions cited by both sides confirm that Plaintiffs must prove that each challenged statement was corrected by a corrective disclosure, and how.

---

[2] *See, e.g.*, *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 322 (2014) ("This test for 'relevant truth' [for purposes of loss causation] is consistent with similar opinions of our sister courts."); *id.* at 322-26 (discussing connection between individual alleged misstatements and corrective disclosure(s) at pleading stage); *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 688-69 (5th Cir. 2014) (same); *Magruder v. Halliburton Co.*, 2009 WL 854656, at *15 (N.D. Tex. Mar. 31, 2009) ("Despite the myriad of statements identified in the subject Complaint, the Plaintiffs simply fail to connect the alleged misrepresentations with correlative corrective disclosures during the Class Period. The Complaint is simply devoid of facts connecting a misrepresentation with a specific corrective disclosure and an accompanying market reaction."); *see also Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund (LOCAL 66)*, 579 F.3d 401, 411 (5th Cir. 2009) (holding "regardless of the number of disclosures, plaintiffs must establish the connection between the disclosure and the decline in price").

The Direct Action Plaintiffs concede that Nye made no attempt to do this analysis. *See* Nye Opp. at 17-18. Class Plaintiffs, in contrast, claim that Feinstein *did* undertake such an analysis. Feinstein testified, however, that he did not. *See* Feinstein Opp. at 8-18; Ex. 3 (Feinstein Dep.) at 64:22-65:8, 88:2-23. What Class Plaintiffs claim as "analysis" is merely: (1) citing the paragraph of Feinstein's report where he identifies an alleged misleading statement; (2) citing a paragraph of Feinstein's report where he identifies an alleged corrective disclosure; and (3) Class Plaintiffs' naked assertion that Feinstein opined that the particular statement was corrected on that particular day. *See* Feinstein Opp. at 9-18.[3] Since even Feinstein does not claim that this is what his report says, Class Plaintiffs' argument is easily rejected. And his attorneys cannot supplement (much less fill glaring gaps) in his opinions through argument. *See, e.g.*, *Fuller v. Werner Enters., Inc.*, 2018 WL 10380370, at *3 (N.D. Tex. Nov. 29, 2018) ("Consequently, absent harmless error or substantial justification, Defendants cannot present the non-disclosed opinions because they were not disclosed in compliance with Rule 26 (a)(2)." (citing Fed. R. Civ. P. 37(c)(1))).[4]

---

[3] As just one example, Class Plaintiffs point to "Statement Nos. 7 and 8," in paragraphs 70 and 72 of Feinstein's report. Feinstein Opp. at 12. Among other things, those statements noted that KFM was a "'rapidly expanding' midstream business that was 'positioned to capture volume growth from the STACK.'" App'x A at 3-4 (ECF No. 529-1). Plaintiffs assert that Feinstein "associated" this statement with the reduction in KFM's EBITDA projection for 2018 that AMR announced on March 29, 2018. *Id.* But Class Plaintiffs do not—and cannot—point to any portion of Feinstein's report or his deposition testimony showing that Feinstein himself, and not Class Plaintiffs, made such an association.

[4] Class Plaintiffs recognized as much, asking only one question to Feinstein during his deposition to confirm that all of his opinions were contained in his report. *See* Ex. 3

Next, Plaintiffs concede that neither expert apportioned the specific amount of inflation in AMR's stock caused by any given misrepresentation (and consequently dissipated by a corrective disclosure). *See* Feinstein Opp. at 21-22 & n.12; Nye Opp. at 22-23.[5]  Plaintiffs claim that Feinstein's and Nye's opinions are sufficient because they disaggregated the fraud-related stock price declines from the declines caused by non-fraud related factors (the result being that Feinstein and Nye attribute the entirety of the cumulative residual stock price declines they calculate, $4.09 and $3.65, respectively, to the "fraud" because they concluded there were not any non-fraud related factors to disaggregate). *See* Feinstein Opp. at 21-22; Nye Opp. at 20-21 & n.6.  In doing so, however, Plaintiffs concede that such disaggregation is required under *Dura*.  And if the

---

(Feinstein Dep.) at 300:3-6 ("Q.  Dr. Feinstein, one question:  Do you intend to offer any opinions at trial other than those that are contained in your report?  A.  No.").

[5] Direct Action Plaintiffs also assert that Defendants' argument regarding Dr. Nye's Section 10(b) opinions ignores the "price maintenance theory," under which the alleged misstatements did not cause new inflation in Alta Mesa's stock, but rather, "caused Alta Mesa's stock price to remain inflated."  Nye Opp. at 21-22.  But that is not what the price maintenance theory is.  Under this theory, a misleading statement creates inflation in the stock price by concealing the information that would have caused the stock price to decline (*i.e.*, it maintains the existing price).  That is not the Direct Action Plaintiffs' theory.  Instead, they claim the inflation caused by *all* of the alleged misstatements made throughout the entire class period was present in AMR's stock price *on August 17, 2017*, at the beginning of the class period.  Thus, the statements made after this date did not "cause" any inflation because it was already there.

What's more, a case that Direct Action Plaintiffs cite in support of their "price maintenance theory" argument, *Goldman*, undermines it.  Nye Opp. at 21.  As *Goldman* explained, under the price maintenance theory, whether an alleged misstatement maintained inflation in a company's stock price will depend on the level of generality of that statement *as compared to a specific disclosure*.  *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1960-61 (2021).  But, as Defendants have demonstrated, Nye (and Feinstein) have not made any such comparison.  So simply invoking the "price maintenance theory," without more, cannot save Nye's opinions.

jury finds that any alleged misstatements are not actionable (and thus any impact on the stock price becomes a "non-fraud related factors"), Feinstein's and Nye's opinions offer no guidance to the jury for how to remove the portions of the per-share damages (*i.e.*, the portion of $4.09 or $3.65) attributable to those non-actionable statements.  Their damages models are thus critically flawed.  *See Ludlow v. BP, P.L.C.*, 800 F.3d 674, 688 (5th Cir. 2015) ("If certain corrective events were later determined to be independent of the misrepresentations, but those corrective events could not be disaggregated from the damages model, the plaintiffs would travel to a place forbidden by *Comcast*:  they would recover damages other than those 'resulting from the particular . . . injury on which [defendant's] liability in this action is premised.'"  (citation omitted)).

Plaintiffs brush this off, insisting that the jury somehow will be able to apportion damages to each statement at trial, should they find liability for some but not all alleged misrepresentations.  *See* Feinstein Opp. at 21-22 & n.13; Nye Opp. at 22-23, 25.[6]  Plaintiffs do not explain, however, how the jury could perform this economic analysis that their experts cannot.[7]  Unsurprisingly, Plaintiffs do not cite any authority for the "let the jury do it" method.

---

[6] Direct Action Plaintiffs further insist that Nye's "models can be recalibrated, if necessary, to conform to the jury's findings."  Nye Opp. at 22.  But the trial has not been bifurcated into a liability and damages phase.  Nor should Defendants be left to guess as to what such "recalibration" would look like.

[7] Class Plaintiffs assert that "Moving Defendants' expert did not dispute" that a jury could make this allocation.  This is false.  Plaintiffs are referring to Audra Boone, who is not Moving Defendants' expert (Rene Stulz is).  And what Boone actually said is, "I don't know what the jury would be able to determine.  That's not my role here is to do that, other

**B.      Plaintiffs' Oppositions Confirm That Feinstein's and Nye's Calculations of Section 14(a) Per-Share Damages Are Unreliable and Unhelpful**

Defendants further demonstrated that Feinstein's and Nye's calculations of Section 14(a) "per-share" damages also fail to comport with the law on loss causation, and must be excluded on that basis.  Mot. at 14-16.   Neither the Direct Action Plaintiffs or Class Plaintiffs dispute that *Dura* applies to Section 14(a), or that they must show losses were proximately caused by the alleged misstatements in the Proxy.  *See* Feinstein Opp. at 19; Nye Opp. at 13-14, 24.  But their experts' opinions do not comport with this standard.

*First*, Plaintiffs fail to even attempt to reconcile the fact that Feinstein and Nye both opine that same amount of total per-share damages ($4.09 and $3.65, respectively) were caused by the correction of two separate sets of alleged misstatements (*i.e.*, the Proxy misstatements and all of the other alleged misstatements).  This is nonsensical.  *See* Mot. at 14-15.  How can the loss caused by two different sets of misstatements be the same regardless of the number, content, and timing of those alleged misstatements?[8]   Under *Dura*, this is simply not possible.  Defendants are not aware of any court that has accepted expert testimony plagued by such irreconcilable inconsistencies that are contrary to the basic tenets of *Dura*, and Plaintiffs do not cite any.

---

than, again, to point out that based on what I've seen there's not information -- presented to them that would do that." Ex. 5 (Boone Dep.) at 173:9-20.

[8] Direct Action Plaintiffs criticize, but misunderstand, Defendants' illustration of this point. Mot. at 15 n. 12.  In footnote 12, Defendants are not arguing that the "full truth" was revealed on March 29, 2018.  Nye Opp. at 23.  Rather, Defendants' assert that the "full truth" about *one statement*, the 2017 projections, was revealed on that date (with the announcement of the 2017 actual results).  Any statement *after* that date, then, could not further "correct" those 2017 projections.  Direct Action Plaintiffs have no response.

*Second,* Defendants demonstrated that Section 14(a) is subject to the PSLRA and *Dura* just like Section 10(b).  Mot. at 15.  Plaintiffs do not dispute this principle of law, but instead claim that their respective "benefit-of-the-bargain" and "lost opportunity" theories remain good law, each citing a single decision dated after the PSLRA was adopted.  *See* Feinstein Opp. at 25 (citing *Erikson v. Jernigan Capital, Inc.*, 2023 WL 5966785, at *4 (S.D.N.Y. Sept. 14, 2023)); Nye Opp. at 24 (citing *Hohenstein v. Behringer Harvard REIT I, Inc.*, 2014 WL 1265949, at *8 (N.D. Tex. Mar. 27, 2014)).  Neither decision helps Plaintiffs because both courts' suggestion that the alternative damage theories were permissible was based on decisions from the 1980s, before the PSLRA was adopted. *See Erikson*, 2023 WL 5966785, at *4 (relying on *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 996 (2d Cir. 1988)); *Hohensein*, 2014 WL 1265949, at *8  (relying on *Horowitz v. Pownall*, 582 F. Supp. 665, 668 (D. Md. 1984)).[9]  Neither court even considered whether the decisions upon which the court relied are applicable after the PSRLA and *Dura*, perhaps because that argument was not made.  Defendants, however, make this argument, and it is correct.

Plaintiffs do not dispute, because they cannot, that their alternative damages theories would compensate them for stock price declines unrelated to the correction of the allegedly

---

[9] Class Plaintiffs incorrectly claim that Defendants did not challenge Feinstein's "benefit-of-the-bargain" calculation as speculative.  Feinstein Opp. at 24-25.  Defendants, in fact, argued Feinstein's "benefit-of-the-bargain" calculation is unduly speculative in that it rests on the unsupported assumption that Alta Mesa's enterprise value as of February 2018 was the same as in December 2018.  Mot. at 16 n.13.  Defendants similarly demonstrated that Nye's theory, that nothing else would have changed if Defendants had "disclosed the truth" other than Alyeska and Orbis redeeming their shares, has no basis in fact and is wholly speculative.  *Id.*  Direct Action Plaintiffs do not meaningfully dispute this.

false statements.  This is directly prohibited by *Dura* (again, something Plaintiffs do not dispute).  *See Dura*, 544 U.S. 342-43.  As a result, Plaintiffs' benefit-of-the-bargain and lost opportunity theories are impermissible as a matter of law.

### C.     Direct Action Plaintiffs' Attempts to Save Nye's Other Opinions Fail

In an attempt to rescue a subset of Nye's flawed opinions, Direct Action Plaintiffs suggest that the Motion does not address Nye's Section 18 damages model.  Nye Opp. at 16.  Not so.  Nye admits he used the "same methodology" for Section 18 damages as for Section 10(b) damages.  *See* Ex. 2 (Nye Rpt.) at ¶ 172 n.340.  So if Nye's Section 10(b) opinions are excluded, so too should his Section 18 damages be excluded.  Direct Action Plaintiffs also assert that Nye's Texas statutory and common law damages are not governed by *Dura* and the PSLRA.  Nye Opp. at 16.  But Nye himself limited his analysis of certain state law claims to the losses "for which loss causation under the federal securities laws can be demonstrated."  Ex. 2 (Nye Rpt.) at ¶¶ 183, 186, 188.  And his analysis for the other state law claims is indistinguishable from his analysis of Section 14(a) damages.  *See id.* ¶¶ 185, 187.  Left with little else, Direct Action Plaintiffs argue that Defendants, by referencing the Texas statutory and common law claims in a footnote, waived the argument.  Nye Opp. at 16.  But Defendants made no argument in the footnote; rather, Defendants merely pointed out the implications of their arguments (made in the text) for Direct Action Plaintiffs' remaining claims in notes two and eleven of the Motion.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the amount of per-share damages each expert opines should be awarded if Plaintiffs were

to prevail on the merits of their Section 10(b) claims, Section 14(a) claims, the Texas common law claims, and the Texas Business and Commercial Code § 27.01 claims.

Dated: February 2, 2024                    Respectfully submitted,

By  /s/  *J. Christian Word*
    J. Christian Word
    Attorney-in-Charge for Defendants
    D.C. Bar No. 461346
    S.D. Tex. Bar No. 3398485
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Christian.Word@lw.com

    Heather A. Waller
    IL Bar No. 6302537
    S.D. Tex. Bar No. 2886108
    **LATHAM & WATKINS LLP**
    330 North Wabash Avenue, Suite 2800
    Chicago, IL 60611
    Tel: (312) 876-7700
    Fax: (312) 993-9767
    Heather.Waller@lw.com

    Matthew Peters (*pro hac vice*)
    DC Bar. No. 1015700
    Laura E. Bladow (*pro hac vice*)
    D.C. Bar No. 1740343
    Henry Zaytoun (*pro hac vice*)
    D.C. Bar No. 1672976
    **LATHAM & WATKINS LLP**
    555 Eleventh Street, NW
    Suite 1000
    Washington DC 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Matthew.Peters@lw.com
    Laura.Bladow@lw.com
    Henry.Zaytoun@lw.com

*Counsel for Defendants Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Stephen S. Coats; Michael E. Ellis; William D. Gutermuth; James T. Hackett; Pierre F. Lapeyre, Jr.; David M. Leuschen; Donald R. Sinclair; Ronald J. Smith; Jeffrey H. Tepper; Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
jschreiber@winston.com

*Co-Counsel for Defendants Harlan H. Chappelle and Michael E. Ellis*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

<em>/s/ J. Christian Word</em>
J. Christian Word