## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | CASE NO. 4:19-CV-00957 (CONSOLIDATED) <br><br> JUDGE GEORGE C. HANKS, JR. <br><br> THIS DOCUMENT RELATES TO: <br><br> CASE NO. 4:22-CV-01189 <br> CASE NO. 4:22-CV-02590 |

## THE DIRECT ACTION PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF PROFESSOR AUDRA L. BOONE, PH.D.

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.     DEFENDANTS HAVE FAILED TO REFUTE THAT BOONE IS NOT
          QUALIFIED ......................................................................................................... 2

    II.    DEFENDANTS HAVE FAILED TO REFUTE THAT BOONE'S
          OPINIONS ARE IRRELEVANT ..................................................................... 8

    III.   DEFENDANTS HAVE FAILED TO REFUTE THAT BOONE'S
          OPINIONS ARE UNRELIABLE .................................................................. 11

CONCLUSION ................................................................................................................. 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ........................................................................ 12

*Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*,
    2006 WL 5503872 (W.D. Tex. Apr. 21, 2006) ............................................. 5

*Bodzin v. City of Dall.*,
    768 F.2d 722 (5th Cir. 1985) ........................................................................ 12

*Branch v. CEMEX, Inc.*,
    2012 WL 2357280 (S.D. Tex. June 20, 2012) ............................................. 16

*Brown v. Ill. Cent. R.R. Co.*,
    705 F.3d 531 (5th Cir. 2013) ........................................................................ 11

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................ 1

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...................................................................................... 13

*Eldridge v. Pet Supermarket, Inc.*,
    2020 WL 1076103 (S.D. Fla. Mar. 6, 2020) ................................................. 5

*ExxonMobil Glob. Servs. Co. v. Bragg Crane Serv.*,
    2023 WL 6213438 (S.D. Tex. Sept. 25, 2023) .............................................. 5

*Fener v. Operating Eng'r Constr. Indus. & Miscellaneous Pension Fund*,
    579 F.3d 401 (5th Cir. 2009) ........................................................................ 13

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    218 F.R.D. 125 (E.D. Tex. 2003) ................................................................... 9

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005) ........................................................................ 14

*Hernandez v. K-Mart Corp.*,
    993 F.2d 1543, 1993 WL 185736 (5th Cir. 1993) ........................................ 14

*Hill v. Koppers Indus.*,
    2009 WL 3246630 (N.D. Miss. Sept. 30, 2009) ............................................ 9

*In re BP p.l.c. Sec. Litig.*,
   2014 WL 2112823 (S.D. Tex. May 20, 2014) ................................................. 13

*In re Novatel Wireless Sec. Litig.*,
   2013 WL 12247558 (S.D. Cal. Nov. 19, 2013) ................................................ 6

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016) .......................................................................... 12

*Koenig v. Beekmans*,
   2018 WL 297616 (W.D. Tex. Jan. 4, 2018) .................................................... 9

*Ludlow v. BP, P.L.C.*,
   800 F.3d 674 (5th Cir. 2015) ............................................................. 6, 11, 13

*McNamara v. Bre-X Mins., Ltd.*,
   2002 WL 32076175 (E.D. Tex. Sept. 30, 2002) .............................................. 8

*Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*,
   493 F.3d 160 (D.C. Cir. 2007) ....................................................................... 9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Smith Tank & Steel, Inc.*,
   2014 WL 12690177 (M.D. La. Nov. 6, 2014) ................................................. 8

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ................................................................. 12, 16

*Renfroe v. Parker*,
   974 F.3d 594 (5th Cir. 2020) ........................................................................ 12

*Rivas v. Preston*,
   2012 WL 7782960 (W.D. Tex. Feb. 29, 2012) .............................................. 14

*Smith v. Goodyear Tire & Rubber Co.*,
   495 F.3d 224 (5th Cir. 2007) .......................................................................... 4

*Spitzberg v. Hous. Am. Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) ........................................................................ 13

*Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*,
   662 F. Supp. 2d 623 (S.D. Tex. 2009) ............................................................ 8

*Timoschuk v. Daimler Trucks N. Am., LLC*,
   2014 WL 2533789 (W.D. Tex. June 4, 2014) ................................................. 5

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
  2013 WL 12137088 (S.D. Tex. Sept. 25, 2013) ......................................................... 5

*United States v. Cooks*,
  589 F.3d 173 (5th Cir. 2009) ...................................................................................... 4

*VeroBlue Farms USA Inc. v. Wulf*,
  2023 WL 348016 (N.D. Tex. Jan. 20, 2023) .............................................................. 14

*Viterbo v. Dow Chem. Co.*,
  826 F.2d 420 (5th Cir. 1987) ..................................................................................... 14

*Wilson v. Woods*,
  163 F.3d 935 (5th Cir. 1999) ....................................................................................... 7

**Other Authorities**

Allen Ferrell & Atanu Saha, *Forward-Casting 10b-5 Damages: A Comparison to Other
  Methods*, 37 J. Corp. L. 365 (2012) ............................................................................ 7

Allen Ferrell, *Hidden History of Securities Damages*, 1 U. Chi. Bus. L. Rev. 97 (2022) .. 7

David Tabak, *Implications for Market Efficiency and Damages Analysis of Plaintiff
  Interpretations of Halliburton II's Statement That "Market Efficiency Is A Matter of
  Degree"*, 46 Loy. U. Chi. L.J. 467 (2015) .................................................................. 7

Douglas L. Miller, *An Introductory Guide to Event Study Models*, 37 Journal of
  Economic Perspectives 203 (2023) ............................................................................. 3

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................. 2

Fed. R. Civ. P. 37 ........................................................................................................... 10

Fed. R. Evid. 702 ............................................................................................................. 1

**INTRODUCTION**[1]

The Direct Action Plaintiffs' motion to exclude the testimony of Professor Audra Boone is not, as Defendants assert, an attempt to create a one-sided record at trial. Rather, Plaintiffs' motion is a valid challenge under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), based on Boone's lack of qualifications, her incomplete opinions, and her failure to apply any methodology in attempting to rebut the opinions of Plaintiffs' loss causation and damages expert, Dr. Zachary Nye. Indeed, contrary to Defendants' unfounded assertion, there will not be a one-sided trial because Plaintiffs have not moved to exclude the testimony of Defendants' other loss causation and damages expert, Professor René Stulz. Unlike Boone, Stulz has sufficient expertise to opine about loss causation and damages. Although Plaintiffs (and Nye) disagree with Stulz's conclusions, his opinions do not contain the fundamental relevance and reliability infirmities that plague Boone.

At trial, the jury will be exposed to a traditional "battle of experts" between Nye and Stulz. Defendants should not be permitted to tag-team Nye by adding another witness (Boone) who is cloaked with the imprimatur of being a professor but who is – by her own

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning as set forth in Plaintiffs' motion and Appendix A thereto. (ECF No. 514.) Citations to "Pls. Br." are to the Direct Action Plaintiffs' Motion to Exclude the Testimony of Professor Audra L. Boone, Ph.D. (*Id.*) Citations to "Defs. Br." are to Don Dimitrievich and William McCullen's Opposition to Opt-Out Plaintiffs' Motion to Exclude Expert Opinions of Audra L. Boone. (ECF No. 586.) Citations to "Stulz Dep." are to the transcript of the deposition of René Stulz, dated November 17, 2023, and attached as Ex. 1 to the Declaration of Lawrence M. Rolnick in Further Support of the Direct Action Plaintiffs' Motion to Exclude the Testimony of Professor Audra L. Boone, Ph.D. (the "Reply Declaration"). Citations to "Boone Dep." are to the transcript of the deposition of Audra L. Boone, Ph.D., dated November 16, 2023, and attached as Ex. 2 to the Reply Declaration. Citations to "Nye Dep." are to transcript of the deposition of Zachary Nye, Ph.D., dated November 14, 2023, and attached as Ex. 3 to the Reply Declaration.

1

admission – unfamiliar with the very damages analysis she is being offered to rebut, and who renders incomplete conclusions that are based on nothing but her own say-so.

## ARGUMENT

### I.   DEFENDANTS HAVE FAILED TO REFUTE THAT BOONE IS NOT QUALIFIED

Boone is not qualified because she has no experience or training in the fields of securities fraud loss causation or damages. (Pls. Br. at 14-16.) Realizing that Boone is not fit for the assignment they asked her to perform, Defendants resort to sleights of hand to create the illusion that she has expertise that she does not have. Defendants first make the unsupported claim that while Boone was a visiting scholar at the SEC's Office of Litigation Economics ("OLE") in 2012, "her duties included 'estimating ill-gotten gains and damages' from securities fraud." (Defs. Br. at 7-8.) Curiously, rather than provide a citation alongside the text, as they do throughout their brief, Defendants footnote this statement. (*Id.* at 8.) But rather than provide any support in that footnote, Defendants suspiciously cross-reference another footnote later in their brief. (*Id.* at 8 n.4.) Once the reader reaches the end of this trail of breadcrumbs, Defendants cite the OLE webpage, which merely describes *what roles OLE currently performs generally as a division of the SEC*, not what Boone's duties were as a visiting scholar there more than a decade ago.

If Boone actually had duties at the SEC calculating securities fraud damages, she surely would have disclosed that experience in her report or appended curriculum vitae. *See* Fed. R. Civ. P. 26(a)(2)(B)(iv) (requiring expert to disclose qualifications in report). However, nothing in Boone's report or resume suggests – let alone establishes – that

Boone's duties at OLE involved calculating securities fraud damages.  (*See* Boone Rpt. ¶ 5 (listing position without description of responsibilities).)  That is not surprising, given that when asked directly whether she had performed "any kind of backcasting damages methodology" – which is the predominant methodology for calculating securities fraud damages and the one that Nye used here – she replied under oath that she had not, either at the SEC or in her academic work.  (Boone Dep. at 265:10-267:2.)[2]

Defendants next point to the articles that Boone has authored on "financial reporting and shareholder litigation."  (Defs. Br. at 10.)  Experience in financial reporting – i.e., how companies account for and present their financial results – does not qualify someone as a securities fraud damages expert.  While securities fraud cases often involve misstatements in corporate books and records, the calculation of damages from those misstatements does not involve an analysis of the propriety of the financials themselves.  Moreover, Boone's articles regarding "shareholder litigation" appear to primarily concern mergers and acquisitions litigation, addressing issues such as appraisal rights and hostile takeovers.  (*See* Boone Rpt. App'x A at 1-3.)  None of them is about calculating damages under the antifraud provisions of the federal securities laws.  Thus, it is of no moment that Boone has

---

[2] Defendants' citation to another portion of Boone's deposition testimony also does not support their statement that her duties at the SEC involved calculating damages for securities fraud.  (*See* Defs. Br. at 12.)  Boone testified only that she conducted event studies while at the SEC.  (Boone Dep. 275:3-276:9.)  An event study is an empirical analysis using statistics to determine the cause of an event.  *See generally* Douglas L. Miller, *An Introductory Guide to Event Study Models*, 37 Journal of Economic Perspectives 203 (2023).  Although event studies are an important component of the securities fraud loss causation and damages analysis, they are used in many other contexts outside of this specific area.  Thus, experience with event studies generally does not constitute experience calculating loss causation and damages in securities fraud cases.

authored articles in several corporate finance publications because these articles have nothing to do with the issues about which she is purporting to offer expert testimony.

Stripped of its inaccuracies, Defendants' argument boils down to that Boone is qualified to testify about loss causation and damages simply because she is a corporate finance professor with general expertise in economics, even though she has no experience or training in the specific areas of securities fraud loss causation and damages. Defendants' position that Boone's general economics expertise qualifies her to testify on the specific subject matters for which she is being offered here is contrary to Fifth Circuit law. As the Court of Appeals explained in rejecting a polymer scientist as an expert in the cause of a car tire's failure:

> [Plaintiff] insists that a tire is simply an application of the fundamental issues of polymer science. That is true in some sense, just as it is true that asbestos, heart valves, and cupcakes can all be broken down into their basic atomic particles; but that does not mean an atomic physicist is qualified to testify regarding any asbestosis, medical malpractice, or confectionary issue. It's the science's application to tires that concerns us here, and [the polymer scientist] has absolutely no experience applying polymer science to tires.

*Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007); *see also United States v. Cooks*, 589 F.3d 173, 180 (5th Cir. 2009) (holding that expert's "general certification as a fraud examiner" did not qualify him "as an expert in any area of fraud"). The same is true of Boone. General expertise as an economist is not sufficient. Although calculating securities fraud damages requires the application of economic principles,

Boone's lack of experience or training in this specific exercise is what renders her unqualified to testify in this case.[3]

During her deposition, Boone



(Boone Dep. at 264:16-265:9 (form objections omitted).)

---

[3] The cases cited by Defendants are inapposite. (*See* Defs. Br. at 11 & n.7.) None of them involved an economist who lacked relevant experience being qualified as a securities fraud loss causation and damages expert. On the contrary, the courts qualified the experts because the parties seeking exclusion were lobbying for an unreasonably high bar with regard to the specific subject matter of the expert testimony. *See Eldridge v. Pet Supermarket, Inc.*, 2020 WL 1076103, at *4 (S.D. Fla. Mar. 6, 2020) (expert in wireline and wireless network technology qualified to provide opinion on whether the defendant made automatic calls even though he did not have experience with the specific phone system at issue); *Timoschuk v. Daimler Trucks N. Am., LLC*, 2014 WL 2533789, at *2 (W.D. Tex. June 4, 2014) (automotive design and safety expert qualified to testify about truck design defects even though he lacked experience in installing emergency exits); *ExxonMobil Glob. Servs. Co. v. Bragg Crane Serv.*, 2023 WL 6213438, at *7 (S.D. Tex. Sept. 25, 2023) (expert accountant specializing in the oil and gas industry qualified to testify about damages associated with refinery crane collapse even though not an expert on workings of refineries); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 2013 WL 12137088, at *1 (S.D. Tex. Sept. 25, 2013) (accountant qualified to testify about basic damages even though not experienced in specific industry); *Amigo Broad., L.P. v. Spanish Broad. Sys., Inc.*, 2006 WL 5503872, at *3 (W.D. Tex. Apr. 21, 2006) (same). That is not the case here. Plaintiffs are not arguing that Boone is unqualified because she lacks experience measuring damages from the collapse of an E&P de-SPAC that went bankrupt after a few months. Rather, she lacks experience or training measuring loss causation and damages for securities fraud *in any context*.

Defendants argue that Boone's lack of knowledge about the constant-dollar damages methodology is immaterial because she has a general understanding of what backcasting is. (Defs. Br. at 12-13.) But their argument misses the point. It is not that Boone was unfamiliar with backcasting generally, but that she has never heard of the specific type of backcasting – the constant-dollar approach – that she is being offered to rebut. *See Ludlow v. BP, P.L.C.*, 800 F.3d 674, 684 (5th Cir. 2015) (describing constant-dollar approach); *In re Novatel Wireless Sec. Litig.*, 2013 WL 12247558, at *3 (S.D. Cal. Nov. 19, 2013) ("[T]he Court is faced with two alternative methods of calculating the same thing, Plaintiff's constant percentage and Defendant's constant dollar. Both methods are ways of calculating the 'out of pocket' damages, a standard measurement of damages in securities fraud cases."); Allen Ferrell & Atanu Saha, *Forward-Casting 10b-5 Damages: A Comparison to Other Methods*, 37 J. Corp. L. 365, 368 (2012) (describing the constant-dollar methodology as "a type of back-casting often used in practice").[4] Her criticisms of Nye ignore the very methodology Nye applies (Pls. Br. at 22-23), a methodology with which she is not familiar.

---

[4] Defendants' footnoted argument that "[s]eminal papers," "major practitioners' texts," and "well-known articles" do not use the terms "constant dollar" or "constant percentage" is pure sophistry. (*See* Defs. Br. at 13 n.12.) The "[s]eminal papers" Defendants cite have nothing to do with securities fraud damages. Moreover, as demonstrated above, articles written by the exact authors Defendants cite discuss the constant-dollar methodology as a widely used approach for calculating securities fraud damages. Ferrell & Saha, 37 J. Corp. L. at 368; *see also* Allen Ferrell, *Hidden History of Securities Damages*, 1 U. Chi. Bus. L. Rev. 97, 109 (2022) (describing constant-dollar methodology and stating that it is "called 'constant dollar'"); David Tabak, *Implications for Market Efficiency and Damages Analysis of Plaintiff Interpretations of Halliburton II's Statement That "Market Efficiency Is A Matter of Degree"*, 46 Loy. U. Chi. L.J. 467, 480 (2015) (describing "constant-dollar method" and "constant-percentage method" as "common" damages methodologies).

Defendants' finger-pointing at Nye for not using the term "constant dollar" in his damages report simply underscores Boone's lack of qualifications.  (*See* Defs. Br. at 13.) Any qualified securities fraud damages expert would immediately recognize the methodology that Nye is using to be the constant-dollar methodology – without Nye having to label it for them.  Indeed, when asked whether Nye was using the constant-dollar methodology, Defendants' other damages expert – Professor René Stulz, whose qualifications Plaintiffs do not contest – ██████████████████ (Stulz Dep. at 351:21-352:7.)  That Boone ████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████ (Boone Dep. at 264:16-265:9.)

Defendants erroneously assert that Plaintiffs' position is that Boone is not qualified because she has never been accepted by a court as a securities fraud loss causation and damages expert.  (*See* Defs. Br. at 14-15.)  That is not the case at all.  Boone is unqualified because she lacks any experience or training in the field of securities fraud damages.  If Boone wants to ████████████████████████████████████████████████ ██████████████████████████ (*see* Boone Dep. at 33:11-37:4), she first must gain the experience and training required to do so.  *See Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir. 1999).  Being an economist does not render her qualified to testify as an expert about complex subject matters with which she is not familiar simply because, at a high level, they

involve ███████████████████████████ (Boone Dep. at 234:18-235:10.)  The

law demands more.[5]

## II. DEFENDANTS HAVE FAILED TO REFUTE THAT BOONE'S OPINIONS ARE IRRELEVANT

Boone's testimony should be excluded because it will not help the trier of fact.  (Pls.

Br. at 17-20.)  Boone's opinions address only a fraction of the misstatements made by

Dimitrievich and McMullen in the 2017 10-K.  Specifically, Boone focuses solely on the

Internal Control Disclosures (Boone Rpt. ¶¶ 23, 32), but offers no opinion about the

Upstream Risk Disclosures or the Midstream Risk Disclosures (Boone Dep. at 244:36-

246:10, 247:12-249:9), which the Direct Action Plaintiffs allege were materially false and

misleading statements made by Dimitrievich and McMullen.

Defendants improperly attempt to broaden Boone's opinions beyond those she

disclosed.  They cite to paragraph 36 of her report and claim that she is offering an opinion

about all of Dimitrievich's and McMullen's misstatements.  (Defs. Br. at 23.)  Not so.  In

the very next paragraph of her report, Boone is clear that she is opining about the Internal

Control Disclosures only.  (Boone Rpt. ¶ 37.)  She refers only to "the Alleged ICFR

---

[5] Defendants' reliance on cases concerning the qualifications of first-time experts, therefore, is misplaced. (*See* Defs. Br. at 14-15.)  In each of those cases, the proffered expert had the necessary real-world experience and training to qualify as an expert on the subject matter at issue.  *See, e.g.*, *McNamara v. Bre-X Mins., Ltd.*, 2002 WL 32076175, at *3 (E.D. Tex. Sept. 30, 2002) (expert qualified to testify about market efficiency because, among other things, he had conducted several studies regarding the effects of market information on stock prices); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 664 (S.D. Tex. 2009) (expert qualified to testify about cause and origin of welding fire because he had conducted several fire investigations that involved welding or hot work as the cause or origin); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Smith Tank & Steel, Inc.*, 2014 WL 12690177, at *2, *4 (M.D. La. Nov. 6, 2014) (expert qualified to testify about cause of tank's failure because he had performed over 250 failure analysis investigations).

Misstatements" and "the Alleged Risk Misstatements" – terms defined in her report, and neither of which includes the Upstream Risk Disclosures or the Midstream Risk Disclosures.[6]  Defendants cannot claim that Boone's opinion applies to all misstatements if she did not actually review and analyze all misstatements.

Defendants' attempt to supplement Boone's report through her deposition testimony is improper.  (Pls. Br. 18-19.)  Defendants incorrectly contend that Boone was merely "clarifying" her report.  (Defs. Br. at 23.)  But her testimony – offering an opinion that is not in her report about misstatements that are not referenced in her report – is not mere clarification, but rather a material change.  That is not permitted.  *See Koenig v. Beekmans*, 2018 WL 297616, at *3 (W.D. Tex. Jan. 4, 2018) (finding that Rule 26 "does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony"); *Hill v. Koppers Indus.*, 2009 WL 3246630, at *3 (N.D. Miss. Sept. 30, 2009); ("[I]t is not proper federal practice to assume that one can submit an incomplete expert report only to provide new opinions and/or new information during the deposition. The deposition itself does not supplement the report. Rather, only a timely filed supplemental report that comports with Rule 26(a)(2) can supplement an original expert report.").[7] Defendants' argument that Plaintiffs could have questioned Boone about her new opinions

---

[6] The "Alleged Risk Misstatements" is a risk factor in the 2017 10-K that is not alleged to be false by the Direct Action Plaintiffs.  (Boon Rpt. ¶¶ 14, 24.)  Boone confirmed in deposition that this risk factor is not the Upstream Risk Disclosures or the Midstream Risk Disclosures.  (Boone Dep. at 244:36-249:9.)

[7] The cases cited by Defendants are easily distinguishable.  (Defs. Br. at 23.)  In *Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 168 (D.C. Cir. 2007), the testimony simply was an elaboration of the expert's written report.  The district court's decision in *Ferko v. National Association for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003), addressed disputes over fact depositions and the potential waiver of privilege and work product, so it is unclear why Defendants are citing it here.

"and explore[d] the bases" for them at deposition (Defs. Br. at 24) completely disregards the procedures mandated by the Federal Rules of Civil Procedure, which are designed to, among other things, prevent unfair surprise.  Indeed, failure to make the required expert disclosures under Rule 26(a)(2) renders them subject to exclusion.  *See* Fed. R. Civ. P. 37(c)(1).

Boone's opinions do not address all of the information that Nye found to be corrective of the Upstream Risk Disclosures or the Midstream Risk Disclosures.  Boone confines her opinion to █████████████████████████████████████████ ███████  (Boone Dep. at 298:25-301:19.)  Nye's analysis of two other corrective events as they relate to the Upstream Risk Disclosures or the Midstream Risk Disclosures is uncontested by Boone.  Thus, even if the Court accepts Boone's improper supplementation of her opinions, they do not provide a basis for the jury to reject Nye's damages opinion because they ignore two of the disclosures (August 14–15, 2018, and November 14–15, 2018) that Nye determined generate damages.

In response, Defendants can only muster a flawed, strawman argument.  They argue that Boone concluded that the August 14–15, 2018 and November 14–15, 2018 corrective events did not correct the Internal Control Disclosures.  (Defs. Br. at 25.)  Boone may have reached that conclusion with respect to the Internal Control Disclosures, but she did not analyze whether those disclosures were corrective of the Upstream Risk Disclosures or the Midstream Risk Disclosures.  The deposition testimony of Boone that Defendants cite also is █████████████████████████████████████████████████  (Boone Dep.

300:10-301:19.)  Thus, even if credited by the jury, Boone's opinions would not undermine Nye's conclusions with respect to Plaintiffs' damages.[8]

Boone's opinions apply to only a subset of the legal claims asserted against Dimitrievich and McMullen.  Defendants only response to this argument is a footnote at the back of their brief, summarily asserting that Boone's opinions about Section 10(b) apply to all of Plaintiffs' claims.  (Defs. Br. at 25 n.27.)  But Boone never offered such an opinion, even in deposition.  Moreover, there are differences in how Nye ████████

████████████████████████████████████████████████

████████  (*See* Nye Rpt. ¶¶ 192-93.)  Boone's testimony therefore should be excluded as irrelevant.

## III.  DEFENDANTS HAVE FAILED TO REFUTE THAT BOONE'S OPINIONS ARE UNRELIABLE

Boone's opinions are conclusory *ipse dixit* unsupported by any testable or replicable scientific basis, and therefore should be excluded as unreliable.  (Pls. Br. at 20-25.) Defendants respond by arguing that Boone utilizes "economic principles" to criticize Nye for failing to isolate damages attributable to the Internal Control Disclosures in the 2017 10-K from other misstatements made by other Defendants.  (Defs. Br. at 16.)  As an initial matter, simply saying that an expert is applying scientific principles without more does not establish reliability.  *See Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)

---

[8] In the Introduction to their brief, Defendants make the unsupported claim that if the jury agrees with Boone about the Internal Control Disclosures, then all of Nye's opinions collapse "[l]ike a house of cards." (Defs. Br. at 3-4.)  That is demonstrably false.  The constant-dollar approach applied by Nye does not require calculating the particular amount of inflation caused by each misstatement, and therefore is not impacted by the exclusion of a single misstatement.  *See Ludlow*, 800 F.3d at 684.

11

("To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of [his] methodology"—an "expert's assurances that he has utilized generally accepted [principles] is insufficient." (internal quotation marks omitted)).  Moreover, the only principles that Defendants identify are *legal* principles, not *economic* principles.  (Defs. Br. at 16-17.)  To the extent that Boone's "methodology" is simply applying legal principles to criticize Nye's analyses, she improperly invades the province of the Court.  *See Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) ("Experts cannot render conclusions of law or provide opinions on legal issues." (quotation omitted)); *Bodzin v. City of Dall.*, 768 F.2d 722, 725 (5th Cir. 1985) ("The judge is the source of the law and the only expert needed by a jury.").  Boone's opinions are not based on any identified economic methodology, but rather Defendants' (erroneous) view of the law.

Moreover, the mirror-image, one-to-one matching legal standard Boone purports to apply is contrary to governing law.  (*See* Defs. Br. at 17-18.)  Rather than impose a one-to-one matching requirement, the Court of Appeals has stated that multiple disclosures can be considered collectively to determine whether they reveal the relevant truth, *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014), and has refused to adopt a "fact-for-fact" misrepresentation-to-disclosure standard, *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009).  Furthermore, the law does not require Nye to determine how much specific price inflation was attributable to Dimitrievich's and McMullen's misstatements.  *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 260 (2d Cir. 2016) (rejecting contention that "an alleged misstatement must be associated with an increase in inflation to have any effect on a company's stock price" and

12

finding that damages expert "did not have to show such an association for each alleged misstatement"). Rather, all Nye was required to do was find that the corrective disclosures contained the "'relevant truth' with a logical link to the ultimate drop in stock price," *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 688 (5th Cir. 2014) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005)), which he did by applying his event study and other economic analysis. Thus, the "methodology" Boone is purporting to apply does not even exist.[9]

Defendants mischaracterize Judge Ellison's class certification decision in *BP*. (Defs. Br. at 18.) The court did not, as Defendants state, "doubt[]" that the plaintiffs could prove damages using the constant-dollar damages methodology. Rather, the court was skeptical that BP's canceling of its dividend several weeks after the oil spill was a disclosure that corrected the defendants' misrepresentations about the flow rate of the oil spill. *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *13 (S.D. Tex. May 20, 2014), *aff'd sub nom., Ludlow*, 800 F.3d 674. But with respect to constant-dollar backcasting, the court expressly found "no legal or logical impediment to its use," *BP*, 2014 WL 2112823, at *12, and determined that there was "ample support" for the plaintiffs' expert's use of that methodology, *id.* at *9. *BP* thus undermines Boone's attacks, not supports them.

Defendants also falsely assert that Plaintiffs "seek to disqualify Boone for failing to replicate Nye's event study." (Defs. Br. 19.) It is not that Boone failed to *replicate Nye's*

---

[9] Defendants' reliance on *Fener v. Operating Engineers Construction Industry & Miscellaneous Pension Fund*, 579 F.3d 401, 409 (5th Cir. 2009), is misplaced. (Defs. Br. at 18.) In *Fener*, the Court of Appeals' concern was with the plaintiffs' treatment of both fraud-related and non-fraud-related information in a press release as corrective of the fraud. Nye does no such thing here – he considered only fraud-related information as corrective in his event study.

*economic analysis*, but that she did not *perform her own economic analysis* to scientifically demonstrate that factors other than the revelation of Defendants' fraud caused Plaintiffs' investment losses.  Without conducting any replicable or testable analysis to support her conclusions, Boone baldly opines that non-fraud factors caused the price of Alta Mesa stock to drop.  Such an opinion, which is based purely on Boone's own say-so, is inadmissible.  *See Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).[10]

Defendants argue that Boone "applied appropriate methodology" in criticizing Nye for purportedly failing to disaggregate supposedly "confounding" information disclosed on February 25, 2019, and on May 17, 2019.  (Defs. Br. at 20.)  However, the "methodology" that Defendants describe is simply the following:  (1) Boone identified the misstatements attributed to Dimitrievich and McMullen; (2) Boone then examined the information that was disclosed on February 25, 2019, and May 17, 2019; and, finally, (3) Boone determined whether any of the disclosed information was unrelated to the misrepresentations.  (*Id.*) That is not a scientific analysis grounded in economics.  Rather, it is an analysis of basic facts that usurps the fact-finding role of the jury.  As such, it is not an admissible expert methodology.  *See Hernandez v. K-Mart Corp.*, 993 F.2d 1543, 1993 WL 185736, at *1 n.1 (5th Cir. 1993) (per curiam) (finding that there is no need for expert testimony when

---

[10] The in-Circuit cases cited by Defendants do not say otherwise.  (*See* Defs. Br. at 19.)  The language that Defendants quote from *VeroBlue Farms USA Inc. v. Wulf*, 2023 WL 348016, at *2 (N.D. Tex. Jan. 20, 2023), is a recitation of one of the party's arguments, not the court's decision.  In *Rivas v. Preston*, 2012 WL 7782960, at *2 (W.D. Tex. Feb. 29, 2012), the court rejected the plaintiff's argument that his witness need not meet the requirements of Fed. R. Evid. 702 merely because he was a rebuttal expert.

the "testimony offered by the expert[] relate[s] to matters within the common knowledge of typical people").

In addition to encroaching on the jury's role, Boone mischaracterizes what Nye actually did.  Nye did not, as Defendants' assert, attempt to control for all confounding information solely by eliminating market and industry factors in his regression analysis. (*See* Defs. Br. at 20-21.)  Nye performed additional analysis.  Nye empirically analyzed whether the entry of corrective information into the market caused a statistically significant, negative, abnormal return in Alta Mesa's stock price.  (Nye Rpt. ¶ 196.)  Then, for each day on which Nye found such an abnormal return, Nye considered and analyzed the degree to which information unrelated to the fraud-correcting information, if any, impacted the stock price.  (Nye Rpt. ¶ 86.)  Thus, Nye did exactly what Boone claims he did not do.

Defendants contend that – because the market for Alta Mesa stock was efficient – "Boone is well-supported" in criticizing Nye for using May 17, 2019, as a corrective event when Alta Mesa had already disclosed material weaknesses in its internal controls.  (Defs. Br. at 21-22.)  But as Defendants themselves recognize, Nye's event study statistically proves that the stock dropped on that date in response to new, Alta Mesa-specific information.  (*Id.* at 22.)  Nye determined that there was no confounding information on that date, and that there was economic evidence that the May 17, 2019 disclosures partially revealed the relevant truth.  (Nye Rep. ¶¶ 154-58.)  Defendants' position that the partial disclosure on February 25, 2019, precludes further disclosure of the truth on May 17, 2019, ignores well-established law that the relevant truth does not have to be revealed all at once

15

– it can leak into the market through a series of partial, but incomplete disclosures, as was the case here.  *See Amedisys*, 769 F.3d at 322 ("Nor does the corrective disclosure have to be a single disclosure; rather, the truth can be gradually perceived in the marketplace through a series of partial disclosures.").

Faced with Nye's scientific analysis, Defendants' resort to summarily asserting that the information released on May 17, 2019, was not related to the fraud because it revealed that Alta Mesa might file for bankruptcy.  (Defs. Br. at 22.)   However, Defendants' argument rests on the erroneous premise that news of a potential bankruptcy filing was not fraud-related news.  The increased risk of bankruptcy was a foreseeable consequence of Defendants' misrepresenting Alta Mesa's prospects, financial condition, and internal controls.  (Nye Dep. at 172:21-173:25.)  Thus, the news of increased bankruptcy risk was a partial revelation of the relevant truth.  Boone's unsupported conjecture is unreliable and should be excluded.[11]

---

[11] Defendants attempt to use their opposition as a Trojan horse for the spurious argument that the Direct Action Plaintiffs somehow waived their arguments against the Motions for Summary Judgment by Donald Dimitrievich and William McMullen as to the Section 10(b) and 20(a) claims.  (Defs. Br. at 4.)  In addition to being irrelevant to whether the Court should exclude Boone, that argument is demonstrably wrong.  Neither Dimitrievich nor McMullen made any arguments in their summary judgment motions (ECF Nos. 422, 427) specifically directed to the Direct Action Plaintiffs' Section 10(b) and 20(a) claims.  (*See, e.g.*, ECF No. 427 (McMullen MSJ) at 4 n.4 (explaining that, because class claims and opt-out claims are "essentially substantively identical," "Mr. McMullen's arguments center on the [class complaint] but apply with equal force to the Opt-Out Plaintiffs' complaints").)  Accordingly, the Direct Action Plaintiffs were not required to separately oppose those motions and waived nothing whatsoever by joining the Class Plaintiffs' oppositions thereto (*see* ECF Nos. 448, 450).  As to any argument that the Direct Action Plaintiffs conceded that their claims are somehow time-barred, that, too, is incorrect.  Defendants tried to incorporate by reference an argument from their motion to dismiss that was rejected by this Court mere months before, but Plaintiffs' joinders specifically explained why the Court should not grant Defendants' re-hashed motion to dismiss arguments.  (*See* ECF Nos. 448, 450.)  Moreover, Defendants only mentioned this point in a footnote, so it was never properly raised.  *Branch v. CEMEX, Inc.*, 2012 WL 2357280, at *12 n.8 (S.D. Tex. June 20, 2012) (a "one-sentence footnote briefly mentioning the issue" in a summary judgment motion

## CONCLUSION

For the reasons set forth above and in Plaintiffs' motion, the Court should grant the

Direct Action Plaintiffs' motion to exclude Boone's testimony.

Dated:  February 2, 2024

Respectfully submitted,

By: */s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
Michael J. Hampson
Matthew A. Peller
Joseph R. Sparacio
**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 597-2800
lrolnick@rksllp.com
mhampson@rksllp.com
mpeller@rksllp.com
jsparacio@rksllp.com

*Attorneys for the Alyeska and Orbis
Plaintiffs*

Jules P. Slim
TX Bar No. 00793026
Attorney and Counselor
PO Box 140307
Irving, TX 75014-0307
Tel.: (214) 350-5183
Fax: (214) 350-5184
jslim@slimlawfirm.com

*Counsel for the Alyeska and Orbis
Plaintiffs*

---

is insufficient to raise the issue).  Finally, Plaintiffs responded to any timeliness arguments that were properly raised in their opposition to Defendants' summary judgment motion as to the Section 18 and state law claims.  (*See* ECF No. 460.)  Defendants cannot avoid a trial on the merits by cobbling together meritless waiver arguments supposedly based on cross-references, footnotes, and other minutiae.

## CERTIFICATE OF SERVICE

I certify that on February 2, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
