# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | CASE NO. 4:19-CV-00957 (CONSOLIDATED) <br><br> JUDGE GEORGE C. HANKS, JR. <br><br> THIS DOCUMENT RELATES TO: <br><br> CASE NO. 4:22-CV-01189 <br> CASE NO. 4:22-CV-02590 |

# THE DIRECT ACTION PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF STEVEN J. PULLY AND TO PARTIALLY EXCLUDE THE TESTIMONY OF CHARLES WHITEHEAD

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    I.    WHITEHEAD'S AND PULLY'S LEGAL CONCLUSIONS SHOULD BE EXCLUDED ............................................................................................... 3

    II.    THE PULLY OPPOSITION CONFIRMS THAT HE DID NOT EMPLOY A RELIABLE METHODOLOGY ............................................................... 5

    III.    THE WHITEHEAD OPPOSITION MAKES CLEAR THAT HIS SAMPLE DE-SPAC ANALYSIS IS IRRELEVANT AND UNRELIABLE ................................................................................................................ 8

CONCLUSION ................................................................................................................... 14

## **TABLE OF AUTHORITIES**

Page

**Cases**

*America Can! v. Arch Ins. Co.*,
597 F. Supp. 3d 1038 (N.D. Tex. 2022) ................................................................... 5

*Branch v. CEMEX, Inc.*,
2012 WL 2357280 (S.D. Tex. June 20, 2012) .......................................................... 2

*Broad v. Rockwell Int'l Corp.*,
642 F.2d 929 (5th Cir. 1981) .................................................................................... 9

*Brown v. Ill. Cent. R.R. Co.*,
705 F.3d 531 (5th Cir. 2013) .................................................................................... 6

*Cantu Servs. v. Frazier,*
2016 WL 237067 (W.D. La. Jan. 19, 2016) ............................................................. 4

*Carlson v. Bos. Sci. Corp.*,
2015 WL 1931311 (S.D.W. Va. Apr. 28, 2015) ..................................................... 11

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
84 F.4th 979 (Fed. Cir. 2023) ................................................................................. 12

*Edwards v. McDermott Int'l, Inc.*,
2021 WL 1421603 (S.D. Tex. Apr. 13, 2021) ....................................................... 10

*Ergon-West Virginia, Inc. v. Dynegy Marketing & Trade*,
706 F.3d 419 (5th Cir. 2013) .................................................................................... 5

*Falcon v. State Farm Lloyds*,
2014 WL 2711849 (W.D. Tex. June 16, 2014) ...................................................... 11

*Floyd v. Hefner*,
556 F. Supp. 2d 617 (S.D. Tex. 2008) ............................................................. 1, 3, 4

*Garcia v. Harris County*,
2018 WL 6068157 (S.D. Tex. Nov. 20, 2018) ...................................................... 6, 7

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) .................................................................................. 13

*In re Apache Corp.*,
  2022 WL 4277350 (S.D. Tex. Sept. 15, 2022) .............................................................. 10

*In re Key Energy Servs., Inc. Sec. Litig.*,
  166 F. Supp. 3d 822 (S.D. Tex. 2016) ........................................................................... 9

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  230 F.R.D. 61 (D. Mass. 2005) ..................................................................................... 11

*In re Zicam Cold Remedy Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  2011 WL 798898 (D. Ariz. Feb. 24, 2011) ................................................................... 11

*Karp v. First Conn. Bancorp, Inc.*,
  535 F. Supp. 3d 458 (D. Md. 2021) ............................................................................... 5

*Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*,
  2022 WL 16964752 (N.D. Tex. Nov. 16, 2022) ............................................................ 12

*Minton v. Intercontinental Terminals Co.*,
  2023 WL 6394385 (S.D. Tex. Oct. 2, 2023) .................................................................. 10

*Moore v. Int'l Paint, L.L.C.*,
  547 F. App'x 513 (5th Cir. 2013) ................................................................................. 13

*Nucor Corp. v. Requenez*,
  578 F. Supp. 3d 873 (S.D. Tex. 2022) ........................................................................... 10

*Om Sai Ram Hospitality LLC v. Amguard Ins. Co.*,
  2023 WL 5670647 (W.D. La. July 27, 2023) ................................................................ 11

*Paz v. Brush Engineered Materials, Inc.*,
  555 F.3d 383 (5th Cir. 2009) ......................................................................................... 13

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) ........................................................................... 10

*Singh v. 21Vianet Grp., Inc.*,
  2017 WL 4322483 (E.D. Tex. Sept. 13, 2017) ............................................................... 9

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004) ........................................................................... 11

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
  2022 WL 1233651 (E.D. Tex. Apr. 26, 2022) ............................................................... 13

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ....................................................................................... 6

**Rules**

Fed. R. of Evid. 702............................................................................................................... 1

**Other Sources**

Special Purpose Acquisition Companies, Shell Companies, and Projections, SEC Release
    Nos. 33-11265; 34-99418; IC-35096; File No. S7-13-22 (Jan. 24, 2024) ....................... 8

## INTRODUCTION

The Oppositions confirm that the Court should grant the Direct Action Plaintiffs' motion under Federal Rule of Evidence 702 to exclude and partially exclude, respectively, the testimony of Defendants' corporate governance experts Steven J. Pully ("Pully") and Charles Whitehead ("Whitehead"), for the following reasons.[1]

*First*, the Oppositions fail to distinguish the closely analogous case of *Floyd v. Hefner*, 556 F. Supp. 2d 617, 640 (S.D. Tex. 2008), in which another court in this District held that a corporate governance expert may not opine that particular defendants "comported with the actions of reasonably prudent individuals in the same or similar circumstances." Defendants' bases to distinguish *Floyd* are wrong, and their "contrary" authority is consistent with its holding. This Court should follow *Floyd* and exclude Pully's and Whitehead's opinions that Defendants conformed with custom and practice as impermissible legal opinions.

*Second*, the Pully Opposition largely ignores the Direct Action Plaintiffs' argument that Pully's proffered expert opinion is based entirely on *ipse dixit*, and does not apply a reliable methodology. Although Defendants fall back on Pully's qualifications, simply

---

[1] To conserve the parties' and the Court's resources, the Direct Action Plaintiffs' Reply in Further Support of Their Motion to Exclude the Testimony of Steven J. Pully and to Partially Exclude the Testimony of Charles Whitehead (the "Reply") responds to the arguments presented in both (1) Defendants' Opposition to Direct Action Plaintiffs' Motion to Partially Exclude the Testimony of Charles Whitehead (ECF No. 568) (the "Whitehead Opposition") and (2) Defendants' Opposition to Opt-Out Plaintiffs' Motion to Exclude Expert Opinions of Steven J. Pully (ECF No. 574) (the "Pully Opposition" and, together with the Whitehead Opposition, the "Oppositions"). This Reply refers to the Direct Action Plaintiffs' Motion to Exclude the Testimony of Steven J. Pully and to Partially Exclude the Testimony of Charles Whitehead (ECF No. 522) as the "Moving Brief." Unless otherwise defined herein, capitalized terms shall have the same meaning as set forth in Plaintiffs' Moving Brief and Appendix A thereto.

1

because an expert is qualified does not permit him to forego a reliable methodology. And where Defendants do address the substantive arguments of the Moving Brief, they largely miss the point, focusing on everything but the fact that Pully's opinion relies on nothing more than his own say-so. Fifth Circuit law is clear that even an expert qualified by experience must employ a reliable methodology to render expert testimony. Pully has not done so here.[2]

*Finally*, the Whitehead Opposition all but concedes the irrelevance—and fails to establish the reliability—of Whitehead's Sample de-SPAC Analysis and Opinion 1 (as defined on pp. 4-5 of the Moving Brief). Defendants concede that Whitehead's Sample de-SPAC Analysis and Opinion 1 are relevant only to the standard of care that the jury will use in assessing Defendants' recklessness. But Whitehead admitted that he derived his

---

[2] The Pully Opposition attempts to smuggle in the spurious argument that the Direct Action Plaintiffs somehow waived their arguments against the Motions for Summary Judgment by Donald Dimitrievich and William McMullen as to the Section 10(b) and 20(a) claims. (Pully Opp. at 4.) In addition to being irrelevant to whether the Court should exclude Pully, that argument is demonstrably wrong. Neither Dimitrievich nor McMullen made any arguments in their summary judgment motions (ECF Nos. 422, 427) specifically directed to the Direct Action Plaintiffs' Section 10(b) and 20(a) claims. (*See, e.g.*, ECF No. 427 (McMullen MSJ) at 4 n.4 (explaining that, because class claims and opt-out claims are "essentially substantively identical," "Mr. McMullen's arguments center on the [class complaint] but apply with equal force to the Opt-Out Plaintiffs' complaints").) Accordingly, the Direct Action Plaintiffs were not required to separately oppose those motions and waived nothing whatsoever by joining the Class Plaintiffs' oppositions thereto (*see* ECF No. 448 (Joinder in Class's Opposition to Dimitrievich MSJ); ECF No. 450 (Joinder in Class's Opposition to McMullen MSJ)). As to any argument that the Direct Action Plaintiffs conceded that their claims are somehow time-barred, that, too, is incorrect. Defendants tried to incorporate by reference an argument from their motion to dismiss that was rejected by this Court mere months before, but Plaintiffs' joinders specifically explained why the Court should not grant Defendants' re-hashed motion-to-dismiss arguments. (*See* ECF Nos. 448, 450.) Moreover, Defendants only ever mentioned this point in a footnote, so it was never properly raised. *Branch v. CEMEX, Inc.*, 2012 WL 2357280, at *12 n.8 (S.D. Tex. June 20, 2012) (a "one-sentence footnote briefly mentioning the issue" in a summary judgment motion is insufficient to raise the issue). Finally, Plaintiffs responded to any timeliness arguments that were properly raised in their opposition to Defendants' summary judgment motion as to the Section 18 and state law claims. (*See* ECF No. 460.) Defendants cannot avoid a trial on the merits by cobbling together meritless waiver arguments supposedly based on cross-references, footnotes, and other minutiae.

"custom and practice" for disclosures without considering whether those disclosures had a factual basis, and thus his opinion is irrelevant to whether Defendants were reckless in making the materially false statements in the Proxy Statement. Defendants are also wrong that the methodological issues infecting Whitehead's Sample de-SPAC Analysis and Opinion 1, including reliance on a biased data set, do not justify exclusion by undermining the reliability of Whitehead's conclusions.

Accordingly, the Court should exclude the testimony of Steven J. Pully and partially exclude the testimony of Charles Whitehead.

## ARGUMENT

### I. WHITEHEAD'S AND PULLY'S LEGAL CONCLUSIONS SHOULD BE EXCLUDED

Defendants fail to distinguish *Floyd v. Hefner*, 556 F. Supp. 2d 617, 640 (S.D. Tex. 2008), a well-reasoned decision from this District applying established Fifth Circuit law, which held that where a corporate governance expert opines that particular defendants "comported with the actions of reasonably prudent individuals in the same or similar circumstances"—as Pully and Whitehead attempt to do here—that opinion should be excluded as an improper legal conclusion.

The Whitehead Opposition argues that *Floyd* permitted "testimony that directors should have appointed a special committee." (Whitehead Opp. at 11-12.) But while *Floyd* permitted the expert in that case to opine that "it is prudent practice within the industry to appoint an independent special committee when interested [d]irectors are involved in a transaction," 556 F. Supp. 2d at 641, the decision nowhere says that the expert could testify

3

as to whether those defendants comported with that "prudent practice." For its part, the Pully Opposition argues that that *Floyd* is off point because the Direct Action Plaintiffs' claims here do not "require proving adherence, or lack thereof, to industry custom and practice." (Pully Opp. at 16 & n.7.) But of course, those were not elements of the claims in *Floyd*, either, where, like here, testimony on director custom and practice was intended as a proxy for due care. *See* 556 F. Supp. 2d at 640. Thus, this Court should reject Defendants' attempt to graft onto *Floyd* an unwritten limitation that it applies only when custom and practice is the ultimate issue.

Indeed, Defendants' own authorities are in accord with *Floyd*. For example, in *Cantu Services v. Frazier* (Pully Opp. at 14), the court permitted expert testimony about industry "due diligence criteria," "but *not* whether [defendant] did due diligence." 2016 WL 237067, at *4 (W.D. La. Jan. 19, 2016) (emphasis added). Likewise, *Cantu* permitted expert testimony about *what* "the best practices utilized by other [State Licensing Agencies] around the country are, but *not whether* the requirement that the Louisiana [State Licensing Agency] approve the selection of the teaming partner *is consistent with those practices*." *Id.* (emphasis added). Similarly, in *America Can! v. Arch Insurance Co.* (Pully Opp. at 16-17; Whitehead Opp. at 11), the court permitted expert testimony about "insurance industry customs and ordinary practices concerning the issues in dispute," "to

enable *the jury* to evaluate how Defendants' conduct measured up against such standards. 597 F. Supp. 3d 1038, 1048 (N.D. Tex. 2022) (emphasis added).[3]

Accordingly, as in *Floyd*, the opinions of Pully and Whitehead that Defendants comported with the custom and practice of directors by taking certain actions should be excluded as impermissible legal conclusions.

## II. THE PULLY OPPOSITION CONFIRMS THAT HE DID NOT EMPLOY A RELIABLE METHODOLOGY

The Pully Opposition concedes that experts qualified by their "relevant professional experience," like Pully, must employ "a methodology." (Pully Opp. at 7.) Although the Pully Opposition claims that Pully "considered industry custom and practice," based on his experience, "and compared it to the context in this case," (*id.* at 8), it largely ignores the arguments in the Moving Brief showing that as to each of his three opinions, Pully's purported "methodology" did not reach beyond *ipse dixit*. (*See* Moving Br. at 11-16.) As the Fifth Circuit has stated, "[t]o establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of [his] methodology"—an "expert's assurances that he has utilized generally accepted [principles] is insufficient."

---

[3] *Ergon-West Virginia, Inc. v. Dynegy Marketing & Trade*, 706 F.3d 419, 423 (5th Cir. 2013) (Pully Opp. at 15) is simply irrelevant. That decision discussed expert testimony about industry custom and practice, but the court's opinion did not address one way or the other whether the expert opined on a party's conformity to those industry standards. *See id.* ("[T]he witness testified that it is a 'universal practice' in the gas industry for a downstream supplier to declare force majeure when its upstream supplier has done so and that the downstream supplier is not expected or obligated to search for replacement gas" and that "'there were sound economic reasons for this approach,' and, particularly that it stabilized prices during a force majeure event by quelling demand."). Similarly, *Karp v. First Conn. Bancorp, Inc.*, 535 F. Supp. 3d 458 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2021) (Whitehead Opp. at 11), adds nothing to the discussion, because in that case the plaintiff did not move to exclude the testimony of defendant's industry expert, 535 F. Supp. 3d at 467.

*Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal quotation marks omitted).

The Pully Opposition first falls back on Pully's qualifications—his professional experience—rather than his analytics, pointing to Pully's "professional background," including four bullet points about his work experience. (Pully Opp. at 7-8.) But an expert's qualifications are a separate requirement for admissibility from the reliability requirement under Rule 702 and *Daubert*. Indeed, "[i]f admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

The Pully Opposition's other attempts to paper over Pully's lack of a methodology also fall flat. For example, Defendants paint Pully's failure to discuss the lack of evidence that Defendant McMullen reviewed Alta Mesa's 2017 Form 10-K before signing it as a dispute over "evidence that does not exist." (Pully Opp. at 11-12.) But that misses the point. Pully discussed that Defendant Dimitrievich reviewed the 2017 10-K before signing it, ignored whether McMullen similarly reviewed the 2017 10-K, and then concluded that both Dimitrievich and McMullen acted in accordance with custom and practice, thus making it unclear what standard of custom and practice, if any, Pully actually employed in reaching his conclusion.[4] (Moving Br. at 11.) Similarly, Defendants assert that Pully's

---

[4] *Garcia v. Harris County*, 2018 WL 6068157 (S.D. Tex. Nov. 20, 2018) (Pully Opp. at 12), is irrelevant. That case concerned critique of an expert report for relying on allegedly "unreliable sources of information"

6

repeated testimony of ▆▆▆▆▆ to questions about custom and practice governing director diligence was due to "Class Plaintiffs' flawed questions." (Pully Opp. at 9.) But again, this ignores the relevant issue, which is that while Pully opined that directors are required to review ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and that they ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Pully Rpt. ¶ 88), neither his report nor his testimony provided any explanation of how custom and practice defines ▆▆▆▆ in this context, or what constitutes reasonable reliance on management. (*See* Moving Br. at 12.)

Defendants also seek to justify Pully's failure to provide any basis—whether his experience or otherwise—for his opinions about the Proxy Statement. (Pully Opp. at 12.) Defendants concede—as they must—that Pully has never "worked on a proxy statement for a de-SPAC merger," but speculate, quoting Pully's testimony, that a de-SPAC proxy statement like the one at issue here ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Pully Opp. at 12 & n.5.) But that is naked *ipse dixit*. As Defendants admit, Pully's only basis for expertise on this point is his experience—as he cites no authoritative sources about SPACs—and that experience admittedly does not include working on de-SPAC proxy statements. Thus, Pully has no basis—other than his "say-so"—to conclude that a de-SPAC proxy statement is akin to

---

and whether the "factual basis" for the expert's opinion was "complete and accurate." 2018 WL 6068157, at *3. But the relevant issue here is not whether the evidence on which Pully relied was accurate. Rather, it is the fact that he did not discuss the different evidence as between Dimitrievich and McMullen, yet arrived at the same conclusion for both, thereby highlighting his lack of a reliable methodology.

7

unspecified ██████████████████████████████████████
███████

Indeed, de-SPAC mergers are *not* the same as an ordinary M&A transaction undertaken by a public operating company. Just last week, the SEC adopted enhanced rules to provide additional protection to investors "in subsequent business combination transactions between SPACs and private operating companies (commonly known as de-SPAC transactions)." Special Purpose Acquisition Companies, Shell Companies, and Projections, SEC Release Nos. 33-11265; 34-99418; IC-35096; File No. S7-13-22, at 1 (Jan. 24, 2024).[5] In so doing, the SEC recognized that "although de-SPAC transactions have many of the same features of traditional M&A transactions, they have a different purpose." *Id.* at 289. The SEC also made clear that its new SPAC rules are "not intended to influence current practice in traditional M&A, as the two situations"—*i.e.*, de-SPAC transactions and traditional M&A transactions—"are readily distinguishable." *Id.*

### III. THE WHITEHEAD OPPOSITION MAKES CLEAR THAT HIS SAMPLE DE-SPAC ANALYSIS IS IRRELEVANT AND UNRELIABLE

The Whitehead Opposition confirms that the Court should exclude Whitehead's Sample de-SPAC Analysis and Opinion 1 because they are both irrelevant and unreliable.

***Whitehead's de-SPAC Analysis Is Irrelevant.*** Defendants concede that Whitehead's Sample de-SPAC Analysis and Opinion 1 are purportedly relevant to only a single issue—scienter (specifically, Defendants' recklessness). (Whitehead Opp. at 4-6 & n.7.) But even this narrow basis for relevance does not stand up to scrutiny.

---

[5] *Available at* https://www.sec.gov/files/rules/final/2024/33-11265.pdf.

8

Defendants do not dispute that Whitehead never considered ▓▓▓▓▓▓ ▓▓▓▓▓▓ upon which the Sample SPACs—or Defendants—may have based ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[6] Instead, Whitehead only considered whether the Sample SPACs included certain language in their proxy statements, ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in those proxy statements.[7] Thus, what Whitehead actually addresses is irrelevant to the specific scienter issue that the jury will be asked to decide here—whether Defendants were reckless in overlooking ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in the Proxy Statement. *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 833 (S.D. Tex. 2016) (defining recklessness as embracing "those highly unreasonable omissions or misrepresentations" that not only involve "an extreme departure from the standards of ordinary care," but also that "present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it" (quoting *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir. 1981))); *Singh v. 21Vianet Grp., Inc.*, 2017 WL 4322483, at *3 (E.D. Tex. Sept. 13, 2017) (scienter satisfied where defendants "knew facts or had access to information suggesting that their public statements were not accurate" (citation omitted)).

---

[6] Whitehead Dep. at 271:16-19; *see also id.* at 273:19-25 (explaining that ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).

[7] *Id.* at 273:19-25, 271:16-18 ("So, again, we're providing custom and practice as to the disclosures that were actually made and the way in which they were presented.").

9

To decide whether Defendants were reckless in this case, the jury will necessarily have to compare the disclosures in the Proxy Statement against the information available to Defendants—*i.e.*, to determine whether Defendants were reckless not in some abstract sense, but whether they were reckless in including materially false or misleading statements in the Proxy Statement, given the information known to them at the time. *See, e.g.*, *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 854 (N.D. Tex. 2018) (scienter where defendants had "reason to know the financial statements . . . were materially misleading" because they received "in depth briefings"); *In re Apache Corp.*, 2022 WL 4277350, at *7 (S.D. Tex. Sept. 15, 2022) (scienter where defendants "willfully ignored" data contradicting the feasibility of their drilling plan); *Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421603, at *7 (S.D. Tex. Apr. 13, 2021) (concluding that plaintiffs adequately pled Section 14(a) violation where "[i]nternal [company] forecasts and risk registers" belied information disclosed in proxy statement).

Because Whitehead's Sample de-SPAC Analysis provides evidence of a custom and practice that is wholly unrelated to the process for ensuring the *accuracy* of those disclosures, it goes, at best, to an irrelevant standard of care and must be excluded. *See Nucor Corp. v. Requenez*, 578 F. Supp. 3d 873, 895-96 (S.D. Tex. 2022); *Minton v. Intercontinental Terminals Co.*, 2023 WL 6394385, at *4 (S.D. Tex. Oct. 2, 2023).

**Whitehead's de-SPAC Analysis Is Unreliable.** Defendants argue (Whitehead Opp. at 7-8) that Whitehead's failure to exclude from his Sample de-SPAC analysis companies that may have violated disclosure laws (*see* Moving Brief, App'x B)—and his testimony ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*see* Whitehead Dep. at 273:11-25)—goes only

10

to the weight of his testimony, not its admissibility. But an expert opinion premised on a tainted, anecdotal data set warrants exclusion under *Daubert*. *See, e.g.*, *Falcon v. State Farm Lloyds*, 2014 WL 2711849, at *14 (W.D. Tex. June 16, 2014) (excluding expert opinion based on "skewed data set")[8]; *Carlson v. Bos. Sci. Corp.*, 2015 WL 1931311, at *27 (S.D.W. Va. Apr. 28, 2015) (excluding opinion relying on data that had not been "peer-reviewed" or "reviewed for accuracy" and where "court has no way to determine the rate of error associated with [the expert's] use of it"); *In re Zicam Cold Remedy Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2011 WL 798898, at *11 (D. Ariz. Feb. 24, 2011) ("Uncontrolled anecdotal information is not the foundation of a reliable causation methodology."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 89 n.28 (D. Mass. 2005) (dispute "about the reliability of the underlying data and problems of sample bias is the kind of technical dispute that . . . should be the subject of a *Daubert* hearing"); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 239 (S.D.N.Y. 2004) ("[T]o the extent that any of [the expert's] conclusions concerning liability are based on the skewed data sample, they do not meet the *Daubert* requirements and are thus inadmissible.").

Nor do Defendants' authorities hold otherwise. For example, *Om Sai Ram Hospitality LLC v. Amguard Insurance Co.*, 2023 WL 5670647, at *2 (W.D. La. July 27, 2023) (Whitehead Opp. at 8), addressed an attack on an expert's reliance on an estimate

---

[8] Defendants argue that *Falcon* is off-point because in that case the expert elected to test only two of twenty-five samples collected, whereas here, Whitehead only excluded three SPACs from his sample. (Whitehead Opp. at 8 n.9.) But the unreliability of Whitehead's sample flows from his failure to test whether certain SPACs should have been *excluded* from his sample, and his ultimate failure to exclude any SPACs that may have violated disclosure laws.

11

prepared by a third party, but where there were no allegations that the third-party estimate was unreliable and there was no tainted data set constructed by the expert himself. Similarly, *Maiden Biosciences, Inc. v. Document Security Systems, Inc.*, 2022 WL 16964752, at *4 (N.D. Tex. Nov. 16, 2022) (Whitehead Opp. at 8), concerned an assumption underlying an expert report about the evidence in the case that would ultimately be resolved by the jury, rather than a tainted, expert-derived data set. *See, e.g.*, *Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 989 (Fed. Cir. 2023) ("data sources" must be "sufficiently reliable" to permit jury to determine whether expert assumptions "were valid").

Defendants also argue that allegations of wrongdoing against certain of the Sample SPACs are irrelevant because, "as far as [Defendants] are aware," none of those companies have "been found by a judge or jury to have actually violated the securities laws." (Whitehead Opp. at 9.) But that is of no moment where Whitehead did not screen his sample to identify any Sample SPACs that may have violated the securities laws, testified that any such violations would be irrelevant, and where certain of the Sample SPACs, including Nikola and XL Fleet, have settled serious allegations of wrongdoing with the SEC. (*See* Mov. Br. at 24-25 & nn.59-60.)

Finally, Defendants also argue that Whitehead permissibly "assumed" that the Sample SPACs' proxy statements were, in fact, target-prepared. (Whitehead Opp. at 7.) This is wrong. As Defendants' own authority explains, although an expert may "make basic assumptions about *disputed* facts," he may not base his opinion on "unsubstantiated assertions," and "an opinion based on insufficient, erroneous information should be

12

excluded." *United States ex rel. Mitchell v. CIT Bank, N.A.*, 2022 WL 1233651, at *3 (E.D. Tex. Apr. 26, 2022) (emphasis added) (Whitehead Opp. at 7). Here, Defendants do not contest that Whitehead's definition of target-prepared projections simply assumes that where a SPAC merely disclosed that its projections were target-prepared, those projections were, in fact, target prepared. But Whitehead does not ███████████████████

███████████████████████████████████████

███████████████████████████████████████

████████.[9] Indeed, Whitehead's assumption is undermined by the evidence in this case—where the Proxy Statement said that the projections were target-prepared, but Hackett and many others in fact assisted with preparing those projections (*see* Moving Br. at 21 & n.52). To satisfy *Daubert*, expert testimony must be supported by "more than . . . unsupported speculation." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (affirming exclusion of expert because, *inter alia*, he did not "offer any specific factual support for the reliability of his initial assumptions"); *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 516 (5th Cir. 2013) (affirming exclusion of expert who, *inter alia*, "made numerous assumptions with no apparent underlying rationale").

---

[9] Whitehead Dep. at 71:18-20 ███████████████████████████████████████ ); *see also id.* at 68:8-11.

13

## **CONCLUSION**

For the reasons set forth in the Moving Brief, and for the foregoing reasons, the Court should (i) exclude the testimony of Steven J. Pully and (ii) partially exclude the testimony of Charles Whitehead.

Dated: February 2, 2024

Respectfully submitted,

By: */s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
Michael J. Hampson
Matthew A. Peller
Joseph R. Sparacio
**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 597-2800
lrolnick@rksllp.com
mhampson@rksllp.com
mpeller@rksllp.com
jsparacio@rksllp.com

*Attorneys for the Alyeska and Orbis Plaintiffs*

Jules P. Slim
TX Bar No. 00793026
Attorney and Counselor
PO Box 140307
Irving, TX 75014-0307
Tel.: (214) 350-5183
Fax: (214) 350-5184
jslim@slimlawfirm.com

*Counsel for the Alyeska and Orbis Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 2, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
