# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>**PUBLIC VERSION OF DKT. 607** |

# CLASS PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY BY DEFENDANTS' EXPERT ROBERT RASOR

# **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING ............................................................... 1

STATEMENT OF ISSUE TO BE RULED UPON ............................................................... 1

APPLICABLE LEGAL STANDARD .................................................................................... 1

SUMMARY OF THE ARGUMENT ....................................................................................... 2

ARGUMENT .............................................................................................................................. 3

    A.    Defendants Fail to Support the Premise That Data from Old Wells Could Not Inform Production Estimates for New Wells – A Premise Directly at Odds with Their Position in this Litigation. ................................. 3

    B.    The Chosen Reference Date Has No Basis Beyond *Ipse Dixit* ...................... 4

    C.    Exclusion is the Appropriate Remedy for Mr. Rasor's Statistical Analysis ................................................................................................................... 7

CONCLUSION ......................................................................................................................... 8

i

# **TABLE OF AUTHORITIES**

**Cases**

*Bailey v. Stanley Access Techs., Inc.*,
  No. 3:14-CV-72-SA-JMV, 2015 WL 6828921 (N.D. Miss. Nov. 6, 2015) ............ 8

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................. 1, 2, 3, 8

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136, 146 (1997) ................................................................................... 6

*Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*,
  No. 3:21-CV-0327-D, 2022 WL 16964752 (N.D. Tex. Nov. 16, 2022) .................. 7

*Moore v. Int'l Paint, L.L.C.*,
  547 F. App'x 513 (5th Cir. 2013) ........................................................................ 4

*Om Sai Ram Hosp. LLC v. Amguard Ins. Co.*,
  No. 6:21-CV-02999, 2023 WL 5670647 (W.D. La. July 27, 2023) ..................... 7

*Puga v. RCX Sols., Inc.*,
  922 F.3d 285 (5th Cir. 2019) .............................................................................. 2

*Viterbo v. Dow Chem. Co.*,
  826 F.2d 420 (5th Cir. 1987) .............................................................................. 2

*Watkins v. Telsmith, Inc.*,
  121 F.3d 984 (5th Cir. 1997) .............................................................................. 2

**Rules**

Fed. R. Civ. P. 26 ....................................................................................................... 5

Fed. R. Evid. 702 .................................................................................................. 1, 3

## NATURE AND STAGE OF THE PROCEEDING

This is a certified class action pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act. Dkt. 241. The dispute arose in the wake of the catastrophic collapse of Alta Mesa Resources, Inc. ("AMR") within a year after it was taken public on February 9, 2018, at a valuation of $3.8 billion by way of a SPAC named Silver Run II. The class includes shareholders who were entitled to vote on the De-SPAC transaction, as well as persons and entities who bought shares in the public SPAC or the successor entity. Expert discovery has concluded, and the matter is scheduled for a docket call on April 12, 2024 (*see* Dkt. 376). On December 22, 2023, Class Plaintiffs moved to exclude one of Mr. Rasor's opinions, a junk-science exercise that took arbitrary inputs and wholly unsupported assumptions, wrapped them in a "statistical analysis" and spit out the precise conclusion the purported methodology was designed to find. Dkt. 513 ("Motion").

## STATEMENT OF ISSUE TO BE RULED UPON

Is Mr. Rasor's proffered testimony regarding a purported statistical analysis, as described in his report (Dkt. 513-2, "Rasor Report") at section VI(A), inadmissible pursuant to Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and related decisional authority because it arbitrarily excludes results from numerous wells?

## APPLICABLE LEGAL STANDARD

Fed. R. Evid. 702(c)-(d) provides that an expert witness may only offer opinion testimony "if the proponent demonstrates to the court that it is more likely than not that: . . . (c) the testimony is the product of reliable principles and methods; and (d) the expert's

opinion reflects a reliable application of the principles and methods to the facts of the case." In other words, before expert opinion is presented to the jury, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

In the Fifth Circuit, while a trial court has "wide latitude in determining the admissibility of expert testimony," *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)), the court must "ensur[e] that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Puga*, 922 F.3d at 294.[1]

## SUMMARY OF THE ARGUMENT

Mr. Rasor's statistical analysis is junk science. Rasor designed a methodology, not generally used in the industry, that would necessarily yield a date about 10 months after the "reference date," and then chose a reference date about 10 months prior to Alta Mesa's last misstatement about its oil production without any justification beyond his own say-so (*ipse dixit*). The entire exercise is a tautology offered to confuse, rather than assist, the jury.

Defendants' opposition entirely misses the point and fails to save Rasor's opinion. Defendants do not even attempt to explain why Rasor was justified in assuming that data

---

[1] In other words, exclusion is available but disfavored in this Circuit. "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

2

from "old wells" could not inform estimates for "new wells" – an assumption that *directly contradicts Defendants' core position in this litigation*. And, while they baldly assert that the choice of December 1, 2017 as a "reference date" reflects "a reliable application" of "sound methodology." Defendants still cannot say why it was chosen, beyond noting that Rasor believed "it was time get a fresh sample," (in other words, because he says so). This is not a dispute about whether the input reference date was correct, as Defendants frame it. Rather, Class Plaintiffs have demonstrated that the entire methodology is unsound because Defendants can cause it to literally yield any output desired simply by choosing the reference date, which they, through their expert, chose without basis. Thus, the Court should fulfil its role as a gatekeeper by excluding his pseudoscience, so that the lay jury may focus on the actual evidence.

## ARGUMENT

**A.     Defendants Fail to Support the Premise That Data from Old Wells Could Not Inform Production Estimates for New Wells – A Premise Directly at Odds with Their Position in this Litigation.**

Defendants wholly ignore that Mr. Rasor's analysis depends on the premise that data from "old wells" could not inform the estimated recovery from "new wells," which is by itself fatal to Mr. Rasor's analysis. They point to nothing in Mr. Rasor's report, in the evidentiary record, or the scientific and technical literature that would support such a claim. *See Daubert*, 509 U.S. at 594 ("The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration . . ."). Underscoring the absurdity of Rasor's opinion (and perhaps explaining Defendants' silence) is this contradiction: if Rasor is correct that prior results could not inform estimates of production

3

from future "new" wells, Defendants' public statements in 2017 indicating that past results supported their projections for oil production from new wells would necessarily be false. Thus, to find Rasor's statistical analysis meaningful at all, one must accept that Defendants' class-period projections were baseless and that their statements about their projections were false, undercutting their core defense in the litigation. For that reason, this case is different than all the cases Defendants cite. While several of those cases indeed involved disputed assumptions, none of them involved an assumption that directly contradicted a core litigation position taken by the *proponent* of the expert opinion, as Rasor's assumption does here.[2]

### B. The Chosen Reference Date Has No Basis Beyond *Ipse Dixit*

Defendants mischaracterize Class Plaintiffs' objection to Rasor's selection of a reference date as a quibble about the inputs to Mr. Rasor's formula, which would be more appropriately addressed through cross examination. But the problem is not that some other input might be more appropriate (a classic "battle of experts"); it is that there is no basis whatsoever for the key input Mr. Rasor used (grounds for exclusion). Mr. Rasor's conclusion is driven almost entirely by the selection of a "reference date" – he looked at "old wells" (wells on production before his reference date) and performed a statistical analysis to opine when Defendants had sufficient information to evaluate EURs for "new

---

[2] Defendants' attempt to distinguish *Moore v. International Paint, L.L.C.*, 547 F. App'x 513 (5th Cir. 2013) fails. There, the district court excluded an expert opinion that made assumptions contrary to the undisputed factual record. Here, there is no dispute that data from the "old wells" could, to some extent, inform estimated recovery from "new wells." Rasor's statistical analysis depends on his assumption to the contrary that data from "old wells" could not inform estimated recovery from "new wells."

4

wells" (wells on production after his reference date). But Alta Mesa had wells coming online on a rolling basis at all relevant times and, given his opinion that it takes eight months of production before EUR for a new well can be reliably estimated, his analysis spits out a date approximately 10 months after the reference date regardless of what date is chosen. (*See* Ex. 18 (Rasor Dep. Tr.) 227:7-22, 230:16-25 (conceding his methodology builds in eight months after the reference date before even applying statistical analysis)).[3]

The lack of basis for the choice of a reference date is demonstrated by Rasor's and Defendants' continually shifting justification for it.

First, Rasor wrote that December 1, 2017 was chosen "to link smoothly to historical data." Rasor Report, Dkt. 513-2 ¶ 94. But Rasor conceded at deposition, and Defendants do not dispute, that the historical data available to Mr. Rasor could be used to conduct the analysis for ***any*** reference date prior to the end of 2018. (Ex. 18 at 217:24-218:1; 223:11-224:6). This "link smoothly" explanation is the only rationale stated in Mr. Rasor's report and therefore the only rationale he could present to the jury without supplementing his report, which he has not sought to do. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) ("[t]he report ***must contain*** . . . a complete statement of . . . the basis and reasons for [all opinions]").

Confronted at his deposition, Mr. Rasor improvised and suggested that wells after that date in general had a different completion technique and tighter spacing. (Ex. 18 at

---

[3] References herein to "Ex. 18" are to the exhibit to the Declaration of Andrew J. Entwistle in Support of Class Plaintiffs' Reply in Further Support of their Motion To Exclude Certain Testimony By Defendants' Expert Robert Rasor ("Reply Declaration"). To avoid confusion with the exhibits submitted with the Motion (which are Exhibits 1-17 at Dkt. 513-1), the sole exhibit to the Reply Declaration is identified as Exhibit 18.

213:8-16, 218:12-219:5). But Rasor admitted that some of the "old wells" had the new completion technique and that he did not know whether any of the "old wells" had tighter spacing (they did). (Ex. 18 at 219:13-220:10). Indeed, Alta Mesa had been publicly presenting production data from the "new" ("Gen. 2.5") wells for months prior to December 1, 2017. (Rasor Rpt., Dkt. 513-2 at p. 61 Figure 10 and note 119.)

So, Mr. Rasor fell back to saying that December 1, 2017 "was time to get a fresh sample." Why was it time? Because he says so.[4] This is precisely the sort of *ipse dixit* ("because I say so") explanation that experts are not allowed to present as scientific or technical evidence. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")

Defendants' other explanations for the choice of reference date, which do not appear in Mr. Rasor's report, and which he did not claim at deposition were supportive of his choice, are red herrings:

- While Defendants assert that "a high number of wells came online in December 2017," neither Defendants nor Rasor offer any reason why this would call for the bright-line distinction they draw at December 1, 2017.

---

[4] Q. (BY MR. BRODEUR) Why was December 2017 time to get a fresh sample?
A. Well, I just -- I was saying you needed a fresh sample. I looked at the wells that were included in the 125, and it looked like most of those wells were pre- -- they're data was pre- -- as I mentioned like the second or third week of November, I can't remember which -- well, now, I was saying you've got some new wells in December. And you should add those to your Sample B, if you will, you want to -- you know you had a Sample A. Now, you're going to get a Sample B. (Ex. 18 at 217:4-14.)

6

      They do not suggest, nor could they, that any time an oil company brings on a large number of wells in a given month, that all of its existing production data instantly becomes meaningless to future production estimates.

- Defendants argue it was necessary to avoid overlap with the wells included in the YE 2017 type curve in order to determine whether that type curve "was accurate." Mr. Rasor did not purport to analyze or opine on when in 2018 Defendants had enough data to know whether the YE 2017 type curve was accurate and did not offer this explanation in his report or at his deposition. Indeed, the August 2017 projections and the crucial projections in the Proxy were based on a prior iteration of the type curve.[5] And that would not explain why wells that came online before December 1, 2017, but too late for inclusion in the YE 2017 type curve, were excluded from the analysis.

Rasor's "statistical analysis" simply packages as science the result of assumptions that are nothing more than his say-so – all the math that follows is just an effort to hide that reality. That *is* pseudoscience, and it is not permitted under Fed. R. Evid. 702 or the pertinent decisional authority.[6]

### C. Exclusion is the Appropriate Remedy for Mr. Rasor's Statistical Analysis

As it is, the lay jury will be asked to understand and weigh highly technical evidence, including evidence contained in contemporaneous internal documents, fact-witness testimony, and other, proper expert testimony. Rasor is just one of eight defense

---

[5] *See, e.g.* Rasor Report, Dkt. 513-2 at p. 61, Figure 10 and note 119 (type curves presented in Alta Mesa's (Silver Run II's) August 2017 Form 8-K).

[6] Defendants' reliance on *Om Sai Ram Hospitality LLC v. Amguard Insurance Co.*, No. 6:21-CV-02999, 2023 WL 5670647 (W.D. La. July 27, 2023) is misplaced. There, the court rejected a *Daubert* challenge to a general contractor's monetary estimate of property damage and conclusion that water damage he observed was so severe that it could not have been caused by humidity. There was no suggestion that inputs the expert used were baseless, just that they were not sufficiently reliable. Nor did that expert cloak his opinion in a technically complex but substantively meaningless exercise in statistics, as here. Similarly, in *Maiden Biosciences, Inc. v. Document Security Systems, Inc.*, No. 3:21-CV-0327-D, 2022 WL 16964752 (N.D. Tex. Nov. 16, 2022), on which Defendants also rely, the inputs used were questionable, but not entirely arbitrary and without basis, as here.

expert witnesses, and Class Counsel already intend to cross examine him on the contested technical opinions contained in the other 82 pages of his report and rebuttal report. Requiring Class Counsel to also debunk Mr. Rasor's wholly baseless, unsupported, and tautological exercise in junk science through cross examination will needlessly add to the jurors' task in this regard, further taxing their attention and wasting their time. And such cross examination of Rasor on this point risks "confusion of the issues" for the jury (*Daubert*, 509 U.S. at 595) because Defendants' expert will be required to defend an assumption that contradicts Defendants' own testimony and defense counsel's argument.

The dicta Defendants quote in *Bailey v. Stanley Access Technologies, Inc.*, No. 3:14-CV-72-SA-JMV, 2015 WL 6828921, at *5 (N.D. Miss. Nov. 6, 2015), only further undermines their argument that cross-examination is the appropriate remedy here. Class Plaintiffs object squarely to Mr. Rasor's sham *process*, which *Bailey* explicitly states is properly addressed through exclusion on a *Daubert* motion. *Id*.

The Court should protect the jury and the proceeding by exercising the extraordinary remedy of exclusion with respect to this part of Mr. Rasor's proffered opinion testimony.

## CONCLUSION

For all of the foregoing reasons, Class Plaintiffs respectfully request that the Court issue an Order striking from the Expert Report of Robert Rasor Section VI(A) (*i.e.* paragraphs 92 through 105), and the bulleted paragraph beginning on page 7. Class Plaintiffs further request that the Court decline to consider the stricken portions of the Report or any testimony regarding Mr. Rasor's statistical analysis or the conclusions drawn from that analysis in connection with any motion for summary judgment. Class Plaintiffs

8

further request that the Court order Mr. Rasor not to testify at trial regarding his statistical analysis or the conclusions drawn from that analysis and order defense counsel not to elicit such testimony.

Dated: February 2, 2024                                                Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle (attorney-in-charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308

**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7278

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*


Carol Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway

*/s/ Trig Smith*
Trig Smith (*pro hac vice*)
Lonnie Browne (*pro hac vice*)
John Kelley (*pro hac vice*)

**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

*Court-Appointed Co-Lead Counsel*

9

New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust*

**CERTIFICATE OF SERVICE**

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on February 2, 2024.

/s/ *Andrew J. Entwistle*
Andrew J. Entwistle