# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

IN RE ALTA MESA RESOURCES, INC.
SECURITIES LITIGATION

Case No. 4:19-cv-00957

**PUBLIC VERSION OF DKT. 608**

## CLASS PLAINTIFFS' REPLY
## IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE
## CERTAIN TESTIMONY BY DEFENDANTS' EXPERT EDWARD FETKOVICH

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING ............................................................. 1

STATEMENT OF ISSUE TO BE RULED UPON .......................................................... 1

APPLICABLE LEGAL STANDARD ............................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................ 2

ARGUMENT ..................................................................................................................... 4

      A.      Fetkovich Should be Required to Use Actual Cost Data to the Extent it Exists Within His Client's Possession, Custody or Control ...................... 4

      B.      Fetkovich Should not be Allowed to Opine on the Economic Impact of the Whole ESP Program When He Evaluated Only Part of it. ................. 5

      C.      The Court Should Disregard Defendants' Contortions of the Record Unrelated to the Motion. ............................................................................... 6

CONCLUSION ................................................................................................................. 7

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Biomet Orthopedics, Inc. v. Tact Med. Instruments, Inc.*,
    No. 3:01CV895PS, 2004 WL 5499505, at *6 (N.D. Ind. Nov. 2, 2004) ................ 3

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ...................................................................................... 1, 2, 5

*FUJIFILM N. Am. Corp. v. Big Value Inc.*,
    No. 16-CV-5677 (BMC), 2018 WL 4210132 (E.D.N.Y. Sept. 4, 2018) ................ 5

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000) ......................................................................... 4

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    986 F. Supp. 2d 776 (N.D. Tex. 2013) ....................................................... 5

*Puga v. RCX Sols., Inc.*,
    922 F.3d 285 (5th Cir. 2019) ......................................................................... 2

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ......................................................................... 2

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ......................................................................... 2

**Rules**

Fed. R. Evid. 702 ............................................................................................ 1, 2

## NATURE AND STAGE OF THE PROCEEDING

This is a certified class action pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act. Dkt. 241. The dispute arose in the wake of the catastrophic collapse of Alta Mesa Resources, Inc. ("AMR") within a year after it was taken public on February 9, 2018, at a valuation of $3.8 billion by way of a SPAC named Silver Run. The class includes shareholders who were entitled to vote on the de-SPAC transaction, as well as persons and entities who bought shares in the public SPAC or the successor entity. Expert discovery has concluded, and the matter is scheduled for a docket call on April 12, 2024 (*see* Dkt. 376). Class Plaintiffs moved against one of Fetkovich's opinions, a purported retrospective economic analysis of Alta Mesa's ESP program, offered in rebuttal, which did not use Alta Mesa's actual data and which excluded the costs of wells for which Fetkovich could ascertain no benefit (Dkt. 516, "Motion").

## STATEMENT OF ISSUE TO BE RULED UPON

Is Mr. Fetkovich's proffered testimony regarding a purported economic analysis of Alta Mesa's ESP usage in 2018, as described in his rebuttal report at Section IV and summarized on page 2 thereof, inadmissible pursuant to Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and related decisional authority because it: (i) uses unrealistic ESP cost assumptions instead of actual cost data; and (ii) completely ignores a significant subset of the wells on which Alta Mesa installed ESPs?

## APPLICABLE LEGAL STANDARD

Fed. R. Evid. 702 provides that an expert witness may only offer opinion testimony "if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

In the Fifth Circuit, while a trial court has "wide latitude in determining the admissibility of expert testimony," *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)), the court must "ensur[e] that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Puga*, 922 F.3d at 294.[1]

## SUMMARY OF THE ARGUMENT

As Class Plaintiffs establish in their Motion, Mr. Fetkovich's economic analysis is inadmissible because it uses assumptions regarding the costs of ESPs instead of Alta Mesa's actual cost data, and because it excludes the costs of 21 ESPs that yielded no measurable economic benefit. Thus, his opinion is not "based on sufficient facts or data," (Fed. R. Evid. 702(b)), nor does it "reflect[ ] a reliable application of the principles and methods to the facts of the case" (Fed. R. Evid. 702(d)). In an effort to save Fetkovich's opinion that Alta Mesa's 2018 ESP program was economic, Defendants misconstrue the

---

[1] In other words, exclusion is available but disfavored in this Circuit. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

factual record, the opinions of their own expert and Class Plaintiffs' objection. First, Defendants argue that Fetkovich should be allowed to use what he deems the best cost data "in the record" – but that is a record Defendants themselves left incomplete. Defendant AMR, on whose behalf Fetkovich is offered, has never certified that the actual accounting data needed to calculate the true costs of the ESP program does not exist within its possession, custody or control. It is fundamentally unfair for Alta Mesa to selectively produce only certain prospective cost estimates (which have been called into doubt), supplement those data with guesswork, and offer the resulting opinion as a matter of mathematical fact. Alta Mesa cannot choose not to produce the actual ESP accounting data that it controls, and then at the same time have its own expert use the unreliable data it selectively produced.[2] Second, Fetkovich did not offer an opinion on the economic impact of the 81 wells he evaluated as defendants pretend, he offered an opinion as to the economic impact of the entire program, including the 21 wells he chose not to analyze. His opinion as to the overall economic impact of the program is thus unsupported and inadmissible. Finally, Defendants invite the Court to follow them in a detour through their misconstruction of the record, which is not relevant to the present motion but appears to be merely an effort to bolster the opinion by misstating facts to make it appear more

---

[2] Class Plaintiffs' experts' opinions regarding ESPs are admissible, including their qualitative opinions regarding the costs of ESPs. Mr. Kirkland and Mr. McGowen could not conduct an economic analysis of the use of ESPs because the required accounting information was not available to them or Class Plaintiffs. See *Biomet Orthopedics, Inc. v. Tact Med. Instruments, Inc.*, No. 3:01CV895PS, 2004 WL 5499505, at *6 (N.D. Ind. Nov. 2, 2004) ("it is somewhat odd that [defendant] would refuse to provide data to [plaintiffs], then criticize them for not using it in their expert report.")

3

reasonable.  Notwithstanding these artifices, Mr. Fetkovich's purported economic analysis should be excluded at summary judgment and trial.

## ARGUMENT

### A.   Fetkovich Should be Required to Use Actual Cost Data to the Extent it Exists Within His Client's Possession, Custody or Control

None of the cases Defendants cite suggest that a party can proffer an expert to opine on a topic while that party is itself withholding the indisputably more reliable information. Yet that is what AMR attempts to do here, relying on guesswork and its own prospective estimates, which numerous witnesses have indicated were unreliable.  *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (affirming exclusion of expert opinion where "[expert] relied on the plaintiffs' compilations of data, which gives rise to a "common-sense skepticism" regarding the expert's evaluation").

Not only is Defendants' proffer in this regard unreliable, it is fundamentally unfair. When asked for all relevant files about the costs of operating its wells and, specifically, costs of artificial lift, AMR objected that it would be burdensome, preventing Class Plaintiffs from conducting a quantitative economic analysis of the ESP program.  Ex. 18.[3] AMR should not be allowed to use prospective estimates and guesswork in place of the actual data it has simply because it refused to produce the relevant records during fact discovery.  *See FUJIFILM N. Am. Corp. v. Big Value Inc*., No. 16-CV-5677 (BMC), 2018

---

[3] References herein to "Ex. __" are to the exhibits to the Declaration of Andrew J. Entwistle in Support of Class Plaintiffs' Reply in Further Support of their Motion To Exclude Certain Testimony By Defendants' Expert Edward Fetkovich ("Reply Declaration").  To avoid confusion with the exhibits submitted with the Motion (which are Exhibits 1-17 at Dkt. 516-1), the exhibits to the Reply Declaration begin at Ex. 18.

WL 4210132, at *5 (E.D.N.Y. Sept. 4, 2018) (excluding defense experts' opinion that was based on summary data defendants produced because defendants had refused to produce the underlying data on which the summary was based).

> **B.    Fetkovich Should not be Allowed to Opine on the Economic Impact of the Whole ESP Program When He Evaluated Only Part of it.**

Defendants' opposition reads as if Mr. Fetkovich had offered an opinion on the economic impact of installing ESPs on the 81 wells he evaluated.  But Mr. Fetkovich's rebuttal report clearly states, repeatedly, that he calculated the actual economic impact of the overall ESP program, to the dollar.  *See, e.g.* Rebuttal Report at 22 ("An analysis of the actual results and costs of ESPs demonstrates that Alta Mesa's use of ESPs was net beneficial . . . .").  By offering an opinion broader than the analysis supports, Mr. Fetkovich took his opinion on ESP economics outside the scope of Rule 702. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 805 (N.D. Tex. 2013) (excluding expert opinion about overall failure rate of a product derived from analysis of an unrepresentative sample). Allowing Fetkovich to opine on the overall economic impact of the program, whereas he examined only part of it, would risk both "confusion of the issues" and "misleading the jury." *Daubert*, 509 U.S. at 595 (internal quotation omitted).

Defendants concede that it would be possible to include the costs of the ESPs in the 21 new wells in the economic analysis and that Fetkovich simply chose not to because he identified no offsetting benefit from the ESPs in those wells.[4]

---

[4] Defendants assert that it is impossible to calculate the benefit from ESPs in new wells, but do not say why.  For example, Fetkovich simply chose not to compare production from new wells with ESPs installed to production from new wells using gas lift. Ex. 19 at 253:10-254:14.

### C.   The Court Should Disregard Defendants' Contortions of the Record Unrelated to the Motion.

Defendants use their opposition to grossly mischaracterize the record on ESPs.  For example, they misconstrue an article cited by one of Class Plaintiffs' experts, which relates to wells in a different basin and with different geological characteristics (including less sand, making ESPs more viable).  That article actually shows that ESPs cost almost $20,000 more per month to operate than gas lift and that gas lift is less expensive after 10.2 months (the life of a well can be 30 years).  And importantly, the higher cost of assembling the gas lift, as shown in the table and on which Defendants fixate, had already been incurred by AMR in the wells Fetkovich analyzed prior to the use of ESPs and thus was not "saved" by switching to ESPs, as Defendants misleadingly imply.  In fact, in many of the wells Fetkovich analyzed, AMR incurred this cost *again* when it dismantled the ESP program in 2019 and placed those wells back on gas lift (a cost that Fetkovich's "economic analysis" inexplicably omits).[5]  The Court should not allow Defendants' misdirection to save his fatally flawed opinion.

---

[5] Fetkovich's economic analysis suffers from numerous additional flaws.  Thus, Defendants' suggestion that Class Plaintiffs should address the deficiencies raised in their motion through cross examination would result in confrontation of Fetkovich with the facts that: (a) he did not include the costs of 21 wells; (b) he did not use AMR's actual data, using Alta Mesa's admittedly low estimates and his own guesses instead; (c) he did not account for the costs of conversion back to gas lift by subsequent management (because many wells were not proper candidates for ESPs in the first place); (d) he did not account for lower future production due to depletion caused by the ESPs; (e) he did not account for reduced production from nearby wells due to communication (interference); (f) he did not account for normal expected post-frac-hit recovery; and (g) he did not account for the cost of repairs. Ex. 19 at 249:25-251:1, 252:19-253:9, 255:6-258:6, 261:18-24. Exclusion is called for under Rule 702 and *Daubert* and will avoid wasting the jury's time and attention on an analysis that is so flawed it cannot be helpful.

## **CONCLUSION**

For all of the foregoing reasons, Class Plaintiffs respectfully request that the Court issue an Order striking from the Expert Rebuttal Report of Edward Fetkovich: (1) Section IV(A), including its headers and sub-headers shown in the table of contents; (2) the header sentence on page 22 reading "ECONOMIC ANALYSIS OF ESP INSTALLATIONS DEMONSTRATES THEY PROVIDED NET BENEFITS" and the corresponding text in the table of contents; and (3) the summary sentence on Page 2 reading "The overall economic benefit of the program was positive, creating over $8 million of present value using a discount rate of 10% (PV10%)."  Class Plaintiffs further request that the Court decline to consider Mr. Fetkovich's purported economic analysis in connection with Defendants' motions for summary judgment.  Class Plaintiffs further request that the Court order Mr. Fetkovich not to testify at trial regarding his purported economic analysis and order defense counsel not to elicit such testimony.

Dated: February 2, 2024                    Respectfully submitted,


_/s/ Andrew J. Entwistle_                  _/s/ Trig Smith_
Andrew J. Entwistle (attorney-in-charge)   Trig Smith (*pro hac vice*)
State Bar No. 24038131                     Lonnie Browne (*pro hac vice*)
Callie Crispin                             John Kelley (*pro hac vice*)
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308                      **ROBBINS GELLER RUDMAN &
                                           DOWD LLP**
                                           655 West Broadway, Suite 1900
**ENTWISTLE & CAPPUCCI LLP**               San Diego, CA 92101
500 West 2nd Street, Suite 1900            Telephone: (619) 231-1058
Austin, TX 78701                           Facsimile: (619) 231-7423
Telephone: (512) 710-5960
Facsimile: (212) 894-7278                  *Court-Appointed Co-Lead Counsel*

7

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*

Carol Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on February 2, 2024.


*/s/ Andrew J. Entwistle*
Andrew J. Entwistle