# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | **CASE NO. 4:19-CV-00957**<br><br>**PUBLIC VERSION OF DKT. 610** |

# CLASS PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF JOHN FIEBIG

# **TABLE OF CONTENTS**

Page

NATURE AND STAGE OF THE PROCEEDING ................................................................... 1

STATEMENT OF ISSUES TO BE RULED UPON .................................................................. 2

APPLICABLE LEGAL STANDARD ......................................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................................................... 3

ARGUMENT ................................................................................................................................. 4

    A.    Fiebig's Qualifications as A Public Auditor Are Not Relevant Because Mr. Regan Explicitly Did Not Opine on the Audits of AMR ................................. 4

    B.    Fiebig's Rebuttal Opinions Should Be Excluded As Unreliable on the Basis That He Did Not Review the Underlying Facts Supporting Regan's Opinions ................................................................................................................ 5

    C.    The Unreliable Nature of Fiebig's Methodology Is Further Heightened by the Fact That Fiebig Utilized Cornerstone to Collect and Review Documents ............................................................................................................ 9

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Childers v. Trustees of the Univ. of Pa.*,
    No. 14-2439, 2016 WL 1086669 (E.D. Pa. Mar. 21, 2016) .................................... 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................................................................................ 1, 2

*Hathaway v. Bazany*,
    507 F.3d 312 (5th Cir. 2007) ........................................................................................ 6

*Loy v. Rehab Synergies, LLC*,
    558 F. Supp. 3d 402 (S.D. Tex. 2021) ...................................................................... 3, 7

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. 2000) ....................................................................................... 9

*Nikolova v. Univ. of Texas at Austin*,
    585 F. Supp. 3d 936 (W.D. Tex. 2022) ...................................................................... 11

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ....................................................................................... 3

*Poole-Ward v. Affiliates for Woman's Health P.A.*,
    329 F.R.D. 156 (S.D. Tex. 2018) ................................................................................. 5

*Puga v. RCX Sols., Inc.*,
    922 F.3d 285 (5th Cir. 2019) ....................................................................................... 2

*R&O Const. Co. v. Rox Pro Int'l Grp., Ltd.*,
    No. 2:09-cv-01749-LRH-LRL, 2011 WL 2923703 (D. Nev. July 18, 2011) ......... 7, 8

*VeroBlue Farms USA Inc. v. Wulf*,
    No. 3:19-cv-764-X, 2023 WL 348016 (N.D. Tex. Jan. 20, 2023) ............................... 7

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ....................................................................................... 8

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ....................................................................................... 2

**Rules**

Fed. R. Evid. 702 ................................................................................................................... 1

Lead Plaintiffs FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach and United Association National Pension Fund (f/k/a Plumbers and Pipefitters National Pension Fund), along with Plaintiff Camelot Event Driven Fund (collectively, "Class Plaintiffs"), respectfully submit this Reply in further support of their motion to exclude, in its entirety, the opinions and testimony of Defendants Alta Mesa Resources, Inc. ("AMR"), Riverstone Holdings, LLC, Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald J. Smith, Jeffrey H. Tepper, Thomas J. Walker, and Diana J. Walters' (collectively, "Defendants") expert, John Fiebig ("Fiebig"), pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## NATURE AND STAGE OF THE PROCEEDING

This is a certified class action pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act. Dkt. 241. The dispute arose in the wake of the catastrophic collapse of Alta Mesa Resources, Inc. ("AMR") on February 9, 2018, within a year after it was taken public, at a valuation of $3.8 billion by way of a SPAC named Silver Run II. The class includes shareholders who were entitled to vote on the De-SPAC transaction, as well as persons and entities who bought shares in the public SPAC or the successor entity. Expert discovery has concluded, and the matter is scheduled for a docket call on April 12, 2024 with trial to be set on the Court's May trial calendar (Dkt. 376). On December 26, 2023, Class Plaintiffs filed their Motion to Exclude the Testimony of John Fiebig and Incorporated Memorandum of Points and Authorities in Support (Dkt. 535) (the "Motion"),

under seal. Class Plaintiffs filed the Public Version of the Motion on January 2, 2024. Dkt. 538. On January 19, 2024, Defendants filed their Opposition to Class Plaintiffs' Motion to Exclude the Testimony of John Fiebig (Dkt. 565) (the "Opposition" or "Opp.").

## STATEMENT OF ISSUES TO BE RULED UPON

Whether John Fiebig's expert report dated October 19, 2023 (the "Fiebig Report") should be excluded by the Court in its entirety because it does not meet the standards of Fed. R. Evid. 702 and *Daubert.*

## APPLICABLE LEGAL STANDARD

Fed. R. Evid. 702(c)-(d) provides that an expert witness may only offer opinion testimony "if the proponent demonstrates to court that it is more likely than not that: [ ]; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." In other words, before an expert opinion is presented to the jury, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In the Fifth Circuit, while a trial court has "wide latitude in determining the admissibility of expert testimony," *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997)), the court must "ensur[e] that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Puga*, 922 F.3d at 294.

**SUMMARY OF THE ARGUMENT**

In their opening Motion, Class Plaintiffs asserted that Fiebig's opinions and testimony should be excluded on the basis that Fiebig conducted an unreliable methodology. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) ("Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers'" and to test whether the expert's "methodology" is "valid"). Fiebig was not hired to run an independent analysis of the facts at hand. Rather, the sole—and **_only_** focus—of Fiebig's engagement was to critique and review the analysis conducted by Class Plaintiffs' accounting expert, Mr. Paul Regan. Here, Fiebig's conclusions are unreliable for three major reasons: (1) Fiebig is not a forensic accountant, but an auditor, and this case does not involve analysis of a public audit; (2) Mr. Regan—in contrast—*is* a forensic accountant, and while Fiebig claims Mr. Regan did not conduct a "comprehensive analysis" or have a "sufficient basis" for his forensic opinions, Fiebig **reviewed less than 20% of the record that Mr. Regan reviewed**; and (3) Fiebig himself did not review key documents in this action that would have undermined his opinions. As this district has already found, "[a]n opinion based on 'insufficient . . . information,' fails the reliability standard." *Loy v. Rehab Synergies, LLC*, 558 F. Supp. 3d 402, 409 (S.D. Tex. 2021). Nothing in Defendants' Opposition papers undermines this conclusion, and their arguments do nothing to correct the notion that Fiebig did not sufficiently apply a reliable methodology or review sufficient information in this case.[1] Fiebig's opinions should therefore be excluded.

---

[1] All citations are omitted and emphasis is added, unless otherwise stated. References herein to "Ex. __" are to the exhibits to the Declaration of Andrew J. Entwistle in Support of Class Plaintiffs'

3

**ARGUMENT**

**A. Fiebig's Qualifications as A Public Auditor Are Not Relevant Because Mr. Regan Explicitly Did Not Opine on the Audits of AMR**

First, Defendants argue in their Opposition that Class Plaintiffs hope to "concoct a relevant distinction between 'auditing' and 'forensic' accounting," Opp. at 7 – as if such distinctions were non-existent in the industry. But this ignores Fiebig's own testimony to that effect: "Q: And tell me, what is your understanding as to the difference between auditing and forensic accounting? A: I think it's generally – the purpose of the – of the procedures you're performing, the purpose of the engagement in terms of, while it includes a lot of the same types of principles, ***auditing has it own standards, forensic has its***[.]. Ex. 16 at 10:16-11:1.

Here, a close review of Fiebig's CV shows that he is firmly encamped as an auditor, and not a forensic specialist like Mr. Regan. Opp at 6 (arguing that Fiebig has experience in auditing "large, independent public oil and gas companies."). Fiebig confirmed the same at deposition. Ex. 16 at 11:1-11:6 (***Q: Did you do any forensic accounting work at Arther Anderson? A: I don't believe so. Q: How about Ernst & Young? A***: ***No***."). As asserted in Class Plaintiffs' Motion, Fiebig's experience as an auditor is not relevant, because his sole purpose in this litigation is as a rebuttal to Mr. Regan, and Mr. Regan offered no opinions whatsoever concerning the public audits conducted by Alta Mesa Resources.

---

Reply in Further Support of their Motion To Exclude the Testimony of John Fiebig ("Reply Declaration"). To avoid confusion with the exhibits submitted with the Motion (which are Exhibits 1-15 at Dkt. 535-1), the exhibits to the Reply Declaration begin at Ex. 16.

Motion at 7. *See Poole-Ward v. Affiliates for Woman's Health P.A.*, 329 F.R.D. 156, 169 (S.D. Tex. 2018) (expert's testimony "must be relevant").

Moreover, Fiebig's lack of forensic accounting credentials and experience is self-evident. In their Opposition, Defendants cannot—and do not—dispute that Fiebig *himself* testified that he is (1) not "a member of the AICPA's Forensic Valuation Services section"; (2) is **not** a CFF ("Certified in Financial Forensics"); (3) has never "performed an engagement pursuant to SSFS" at either Aurther Anderson or Ernst & Young; (4) has never analyzed as part of his responsibilities with the PCAOB "whether an accountant had appropriately applied SSFS"; (5) has never "attended the AICPA's Forensic and Valuation Services ("FVS") national conference"; (6) could not name any "FVS practice aids" when asked by counsel; and (7) has never spoken at a forensic accounting conference. *See* Motion at 6. Here, the point is not that Fiebig is not generally experienced or qualified as an accountant. The point is that in order to conduct a reliable review of Mr. Regan's underlying forensic accounting analysis, Fiebig himself ought to be qualified as a forensic accountant and have forensic accounting experience. As detailed above, he does not.

### B. Fiebig's Rebuttal Opinions Should Be Excluded As Unreliable on the Basis That He Did Not Review the Underlying Facts Supporting Regan's Opinions

Given this lack of forensic expertise, it should come as no surprise that Fiebig's underlying methodology was flawed. At bottom, because (i) the ***sole scope*** of Fiebig's engagement was to critique Mr. Regan's forensic accounting opinions in this action, and (ii) Fiebig concluded that Mr. Regan was wrong—***on the basis that Mr. Regan himself did not have a "sufficient basis" for his own opinions*** (Fiebig Report ¶33)— Fiebig was

5

therefore required to sufficiently review the record in order to form an intellectually honest and **_reliable_** opinion about Mr. Regan's analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("the existence of sufficient facts and a reliable methodology [for the expert's opinions] is in all instances mandatory.").

Here, Mr. Fiebig in his proffered report critiques and states that the findings of Class Plaintiffs' accounting expert Mr. Regan were in error, stating that (i) "Mr. Regan's opinions on the projections included in the Proxy Statements rely on a fundamentally flawed methodology"; (ii) "Mr. Regan's opinion that AMR's accounting for its Upstream Assets violated GAAP lacks a sufficient basis"; (iii) "Mr. Regan's opinion that AMR's accounting for its Contract Intangible and Goodwill balances violated GAAP lacks a sufficient basis"; and (iv) "Mr. Regan's opinions regarding AMR's ICFR are fundamentally flawed and misleading in a number of respects." Fiebig Report ¶33.

Mr. Regan arrived at his opinions based on a diligent analysis and review of more than 1,000 documents produced by Defendants in this action. Fiebig knew what those ~1,000 documents were, as they were listed in the Appendix to Mr. Regan's expert report as documents considered in forming Mr. Regan's expert accounting opinions. ***Yet, Fiebig only reviewed 176 documents in arriving at his opinions about Mr. Regan's forensic accounting opinions.*** Nothing in Defendants' Opposition indicates otherwise, and Defendants do not dispute this figure in their Opposition.[2]

---

[2] In their Motion, Class Plaintiffs indicated that Mr. Regan reviewed 1082 documents produced in discovery in this action. Defendants retorted that about 140 documents were duplicates. Opp. at 14 n.5. Even assuming that 140 documents were duplicates, Mr. Regan considered and reviewed more than 940 documents in forming his opinions. Fiebig, in turn, only reviewed 176 documents,

6

Here, therefore, Fiebig's methodology and opinions are unreliable because, consistent with the requirements of *Daubert* and Federal Rule of Evidence 702, a proper review would have included a review of ***all*** the "facts" underpinning Mr. Regan's conclusions. *See R&O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-cv-01749-LRH-LRL, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011) ("Rebuttal expert reports 'necessitate "***a showing of facts supporting*** the opposite conclusion" of those at which the opposing party's experts arrived in their responsive reports.'") (quoting cases); *Loy,* 558 F. Supp. 3d at 409 ("An opinion based on 'insufficient . . . information,' fails the reliability standard."); *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-cv-764-X, 2023 WL 348016, at *10 (N.D. Tex. Jan. 20, 2023) ("The Court should exclude expert testimony where . . . there is simply too great and analytical gap between the basis for the expert opinion and the opinion proffered [or] the expert testimony is based on . . . insufficient facts.").

Contrary to Defendants' arguments, Class Plaintiffs are not seeking the exclusion of Fiebig's report merely on the basis of failing a "memory test" at his deposition. Opp at 10-11. Rather, Mr. Fiebig fails the more fundamental test of not having sufficiently reviewed enough information to make a final determination that Mr. Regan's analysis and conclusions were not premised on a "sufficient basis." Fiebig Report ¶33. *See Loy*, 558 F. Supp. 3d at 409-410 ("Under *Daubert*, 'any step that renders the analysis unreliable . . .renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology, or merely misapplies the methodology.").

---

or about 18% of the documents that informed Mr. Regan's opinions; Defendants do not dispute this conclusion in their Opposition. *See id.*

7

Indeed, Fiebig's unreliable methodology is further heightened by the fact that Fiebig's main claim is that Regan did not conduct a "*comprehensive analysis*" under the AICPA SSFS standard. Opp. at 9. Putting aside the notion that Fiebig derives this "comprehensive analysis" standard out of thin air—as Class Plaintiffs argued in their Motion at 8-9, and to which Defendants have no meaningful response[3]—it is patently improper for a rebuttal expert to opine that another expert did not have a "sufficient basis" for his opinions and did not conduct a "comprehensive analysis" of the record, when the rebuttal expert did not review the full data and documents supporting the expert's opinions. *See R&O Const. Co.*, 2011 WL 29223703, at *2 (rebuttal reports require "a showing of facts supporting the opposite conclusion"). Here, if Mr. Fiebig wanted to opine that Mr. Regan did not conduct a comprehensive analysis or have a sufficient basis for his opinions, at minimum, he should have reviewed all the data that Mr. Regan reviewed. He did not. His opinions should therefore be excluded.

---

[3] Defendants argue that "Class Plaintiffs offer selective quotes" in support of the argument that the comprehensive analysis standard that Fiebig created was not based on any support outside of his own say-so. Opp at 9. Not so. The deposition testimony is clear: "Q: Just to be clear, then, are you saying that the standards require – when the standards refer to sufficient relevant data, that they mean a comprehensive – a comprehensive analysis of the data? A: Again, in this situation, I believe so. [] Q: Do you derive any support for the view that a sufficient relevant data equals a comprehensive analysis of the data from any FVS forensic accounting practice aids? A: I have not. Q: From any treatises adopted by forensic accountants? A: Not that I'm aware of, no." Ex. 16 at 43:20-45:1. Indeed, in their own brief, Defendants cite to the same exchange. *See* Opp at 9. Thus, "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

8

### C. The Unreliable Nature of Fiebig's Methodology Is Further Heightened by the Fact That Fiebig Utilized Cornerstone to Collect and Review Documents

Here, again, Defendants seem to misconstrue Class Plaintiffs' argument. Class Plaintiffs did not assert that it was improper for Fiebig to utilize "assistants" or a "team" in assistance with the production of an expert report. Opp. at 12. Rather, it was improper for Mr. Fiebig to utilize third-party firm Cornerstone as a decision-maker and to outsource Mr. Fiebig's independent decision-making to that firm. *See* Motion at 12-13 (quoting Fiebig's deposition testimony) ("I'm relying on their significant experience in this field and experience reviewing documents in support in terms ***of being able to provide me with any views that would be relevant to my opinion.***") (emphasis added); *Munoz v. Orr*, 200 F.3d 291, 301-302 (5th Cir. 2000) (excluding expert testimony where expert relied on a party's compilations of data, "which gives rise to a common-sense skepticism' regarding the expert's evaluation," and where expert "did not seek to verify the information presented to him.").

Indeed, the most notable example of this is Mr. Fiebig's failure to review the Ryder Scott 30(b)(6) deposition testimony. Fiebig devoted an *entire section* in his expert report captioned: "Mr. Regan's Opinion is Inconsistent with the Audit Opinion of Ryder Scott, AMR's Oil & Gas Reserve Auditor." *See* Fiebig Report ¶¶107-112. Class Plaintiffs asserted in their Motion that an analysis of the Ryder Scott transcript would have undermined Fiebig's conclusion that Regan should have reconciled his opinions with the third-party audit of Ryder Scott. Motion at 14-15. As it pertains here, the reason *why* Mr. Fiebig did not review the transcript was because of the faulty methodology employed by

9

him: Cornerstone did not provide the Ryder Scott transcript to Mr. Fiebig. *See* Ex. 16 at 90:15-19 (Fiebig stating in his deposition that the reason he did not read the transcript was based on "reliance on the experience and knowledge of the Cornerstone staff who did review it."). Here, again, the issue is not that Mr. Fiebig utilized assistance, but that he affirmatively made an opinion about Mr. Regan's lack of reconciliation to the Ryder Scott audit, without ever personally reviewing the Ryder Scott deposition testimony that would have undermined that opinion, due to Fiebig's unreliable methodology.[4]

Further, while Defendants quibble about whether Fiebig actually reviewed one of the four exemplar documents listed by Class Plaintiffs in their Motion, *i.e.*, CP-815, they do not dispute whatsoever that Fiebig did not review CP-816, CP-821, and the Ryder Scott testimony. *See* Opp. at 14-15. Here, CP-816 and CP-821 are consequential documents. Indeed, and as stated in Class Plaintiffs' Motion, CP-816 is a key email demonstrating that Alta Mesa Holdings, Defendant Hal Chappelle, and other key Alta Mesa insiders knew—as early as June 2017 (*i.e.*, about eight months before the close of the Alta Mesa Business Transaction)—that there was "interference" among the wells due to the increased number of wells that were being drilled in the same section, which negatively affected the fair value of the oil and gas reserves. Motion at 17. Similarly, CP-821 demonstrates that the chief engineer for Alta Mesa, Tim Turner, found that "On patterns with more than 5 wells (and

---

[4] Notably, this approach is in sharp contrast to Mr. Regan's approach, wherein Mr. Regan testified that even with assistance from Greg Regan—his son and certified CPA and CFF, and partner in Mr. Regan's consulting practice—"Greg and I met, and we began to outline the issues in this case and to structure an outline of what our report should discuss. ***We went over key documents.*** After we decided the structure of the report he would prepare portions. I would meet with him. ***I would look at the documents***[.]" Ex. 17 at 46:20-47:11.

10

all happen to include Upper Miss), the recovery efficiency averages less than 5%. . . . Implies to me that wells may be draining larger areas than I originally thought." *Id.* While Defendants seek to pivot from Fiebig's deafening silence on these documents by arguing that "[t]he examples cited in the Motion are addressed, either directly or indirectly, through the opinions of oil and gas experts Edward Fetkovich and Robert Rasor," Opp. at 14 n.6, that does **_nothing_** to answer the question as to whether *Fiebig's* conclusions are supported by a reliable methodology. As stated *supra*, they are not.[5]

---

[5] Additionally, Defendants' purported distinguishing of Class Plaintiffs' cited case *Nikolova v. Univ. of Texas at Austin*, 585 F. Supp. 3d 936, 946 (W.D. Tex. 2022)—whereby the court excluded the testimony of the expert for failure to review the "deposition of the decisionmaker" in the case— is unpersuasive. *See* Opp. at 14 n.6. Here, Class Plaintiffs submit that the import of the case does not turn on whether the deposition is from a "decisionmaker" or not, but rather, how important the missing deposition testimony is to the expert's underlying analysis. *See Nikolova*, 585 F. Supp. 3d at 946. Here, the deposition testimony was important to the analysis and would have undermined Fiebig's conclusions. *See* Motion at 14-15. Indeed, Mr. Fiebig explicitly affirmed that Mr. Regan's conclusions were wrong – **_on the basis_** that Mr. Regan did not reconcile his opinions with Ryder Scott's audit. *See* Fiebig Report ¶¶107-112. Thus, Fiebig's failure to review the deposition testimony of the Ryder Scott 30(b)(6) witness is fully consistent with a faulty and unreliable methodology as supported by the case law. *See also Childers v. Trustees of the Univ. of Pa.*, No. 14-2439, 2016 WL 1086669, at *6 (E.D. Pa. Mar. 21, 2016) ("[The expert's] methodology of sifting through evidence to find passages that support the [party's] theory of the case does not meet Rule 702's requirement of reliability.").

11

## CONCLUSION

For all the above reasons, this Court should grant Class Plaintiffs' Motion to Exclude the Testimony of John Fiebig.

Dated:  February 2, 2024

/s/ Andrew J. Entwistle
Andrew J. Entwistle (attorney-in-charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308
**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7278

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Respectfully submitted,

/s/ Trig Smith
Trig Smith (*pro hac vice*)
Lonnie Browne (*pro hac vice*)
John Kelley (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

*Court-Appointed Co-Lead Counsel*

12

*Counsel for Plaintiff Camelot Event
Driven Fund, A Series of Frank Funds
Trust*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on February 2, 2024.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
