# EXHIBIT 17

```
                                                          Page 1

 1          IN THE UNITED STATES DISTRICT COURT
 2           FOR THE SOUTHERN DISTRICT OF TEXAS
 3                    HOUSTON DIVISION
 4
 5   IN RE:  ALTA MESA
 6   RESOURCES, INC.,              Case No.:  4:19-cv-00957
 7   SECURITIES LITIGATION
 8   -------------------------/
 9
10
11
12       Video-recorded deposition of D. PAUL REGAN, at
13       Latham & Watkins, LLP, 505 Montgomery Street,
14       Suite 2000, San Francisco, California,
15       commencing at 9:29 a.m. PDT, Thursday, November
16       2, 2023, before Lorrie L. Marchant, California
17       CSR No. 10523.
18
19
20
21   Stenographically reported by:
     LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
22   California CSR No. 10523
     Washington CSR No. 3318
23   Oregon CSR No. 19-0458
     Texas CSR No. 11318
24
     Job No. MW 6290725
25   California Firm Registration No.:  48
```

[PAGES INTENTIONALLY OMITTED]

Page 46

1  Q.  Who are the other individuals,
2  Travis Armstrong and Perry Carter?
3  A.  Travis is another one of my partners.
4      Perry Carter is an associate.
5      And there's an intern that did some work on
6  this matter.
7  Q.  What was the responsibility of your son for
8  purposes of his work on this matter?
9  A.  My recollection is that Greg had the
10 original contact in connection with this matter,
11 spent time on this case, gathering documents,
12 assisting with some depositions that were taken.
13 Q.  What do you mean by assisting with
14 depositions taken?
15 A.  Assisting counsel and identifying documents
16 and areas in which witnesses would be asked
17 questions about such documents, discussing with
18 counsel the areas of importance to ask those
19 witnesses.
20     And then Greg and I met, and we began to
21 outline the issues in the case and to structure an
22 outline of what our report should discuss.  We went
23 over key documents.
24     After we decided the structure of the
25 report, he would prepare portions.

Page 47

1      I would meet with him.  I would look at the
2  documents, edit the reports, suggest changes.
3      Greg would consider those comments.
4      And the report eventually was fleshed out
5  and finalized.  And I think it's in August 2023.
6  Q.  Is Greg a CPA?
7  A.  Yes.  He's been a CPA for -- I haven't
8  looked at his CV lately, but it's probably 20 years.
9      He's also a CFF.  He's partner in charge of
10 our litigation practice and has testified many times
11 around the country.
12 Q.  Take a look at the Appendix B-1 in your
13 report, the Documents Considered.
14     Does Appendix B-1 contain all of the
15 materials that you considered in forming your
16 opinions?
17 A.  Yes.
18 Q.  Are there any documents that were produced
19 in this litigation that you reviewed that you did
20 not include on your Documents Considered list?
21 A.  I don't -- I'm not aware of any such
22 documents.
23 Q.  The first case filing is "Alta Mesa Request
24 For Admission."
25     Do you -- do you know, is that responses to

Page 48

1  requests for admission or just the requests
2  themselves?
3  A.  I think that's likely to be both.
4  Q.  Did you personally review the plaintiffs'
5  responses to the defendants' requests for admission?
6  A.  In my discussions with Greg, I have a
7  recollection of discussing requests for admissions
8  and responses.
9      So I have a recollection that I became
10 aware of responses to certain of the requests.
11 Q.  Did any of -- did you take into account any
12 of the responses where plaintiffs admitted facts in
13 response to those requests for admission -- did you
14 take those into account in your opinions?
15 A.  Where plaintiffs responses?
16 Q.  Where plaintiffs admitted facts in their
17 responses to the requests for admission, did you
18 take those admissions into account in your opinions
19 in this case?
20 A.  As I sit here today, I don't have a
21 recollection of that.  I don't have a recollection
22 that any of -- that any were relevant to my
23 opinions.
24 Q.  Were any of them contrary to the opinions
25 that you offered in this case?

Page 49

1  A.  I don't have a present recollection of
2  that.
3  Q.  Did you review any of the filings from
4  Alta Mesa's bankruptcy?
5  A.  I don't recall that.
6  Q.  Are you aware of the findings that were
7  made by Judge Isgur in the bankruptcy matter for
8  Alta Mesa?
9  A.  I don't have a -- I don't have a personal
10 recollection of that.
11 Q.  Do you have any understanding whether any
12 of his findings are contrary to your opinions in
13 this case?
14 A.  I'm not aware that they are.
15 Q.  You didn't take his findings into
16 consideration in your opinion?
17 A.  I don't have a recollection of doing that.
18 Q.  How did you determine which depositions to
19 review?
20 A.  Based on -- the depositions that I reviewed
21 are listed on the first page of Appendix B-1.  And
22 based on -- or my recollection is based upon the
23 original depositions.
24     Documents were introduced.  People were
25 identified as relating to facts and circumstances

13 (Pages 46 - 49)

[PAGES INTENTIONALLY OMITTED]