BX E

1

2    UNITED STATES DISTRICT COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 4:19-cv-00957

5    -----------------------------------x

6    IN RE ALTA MESA RESOURCES, INC.

7    SECURITIES LITIGATION

8    -----------------------------------x

9                    April 11, 2023

10                   9:00 a.m.

11

12              CONFIDENTIAL TRANSCRIPT

13

14              Remote video-teleconference

15    deposition via Zoom of JEFFREY TEPPER,

16    pursuant to notice, before Jineen Pavesi,

17    a Registered Professional Reporter,

18    Registered Merit Reporter, Certified

19    Realtime Reporter and Notary Public of the

20    State of New York.

21

22

23

24

25

[PAGES INTENTIONALLY OMITTED]

```
                                        Page 60
 1              TEPPER - CONFIDENTIAL
 2   diligence with respect to Silver Run II's
 3   investment in Alta Mesa and Kingfisher?
 4              MS. WALLER:  Object to the
 5   form.
 6       A.      Yes.
 7       Q.      What due diligence did you do?
 8       A.      I can't specifically recall
 9   what I did, but my normal course, having
10   worked in the industry for --  worked in
11   investment banking for 30 plus years,
12   worked with companies and boards, invested
13   in many companies, provided fairness
14   opinions for companies, my normal process
15   is to review all the information
16   thoroughly, confer with experts if they
17   are brought into a situation and then make
18   my own independent investment decision.
19       Q.      Did you look to approve Silver
20   Run II's acquisition --  strike that.
21              Did the Silver Run II board of
22   directors have to approve the entry into
23   the agreement to merge with Alta Mesa
24   Holdings and Kingfisher Midstream?
25       A.      I believe so.
```

[PAGES INTENTIONALLY OMITTED]

```
 1              TEPPER - CONFIDENTIAL
 2    you.
 3        Q.       In general, was it someone at
 4    Riverstone?
 5        A.       I don't know.
 6        Q.       Did Silver Run II have any of
 7    its own employees during this time period?
 8        A.       I don't know.
 9        Q.       Were you personally involved in
10    any due diligence during this time period?
11                 MS. WALLER:  Object to form.
12        A.       I was conducting my own due
13    diligence all the time, so these things
14    are fluid and one is continually trying to
15    learn if there is new information and
16    continue to reevaluate the information
17    already received.
18                 But I was not directly
19    conducting that diligence directly with
20    the counterparty.
21        Q.       In connection with your own due
22    diligence, what information or types of
23    information were you relying upon?
24        A.       Again, I can't be specific, but
25    in general my practice would be to review
```

```
                    TEPPER - CONFIDENTIAL
 1
 2   all materials I felt relevant in a
 3   continual evaluation of the subject
 4   matter.
 5       Q.        How did you generally obtain
 6   that material, just public material or did
 7   you request information from someone, I am
 8   trying to understand --
 9       A.        It could be a combination of
10   information provided to the board, it
11   could be information requested by the
12   board.
13       Q.        Let's look at the next exhibit,
14   this has been marked as Class Plaintiff
15   Exhibit 0307, Bates stamped Tepper SDTX
16   291.
17                 (CP Tepper Exhibit 307, Bates
18   stamped Tepper SDTX 291, was marked for
19   identification, as of this date.)
20       A.        Got it.
21       Q.        This is an e-mail from Olivia
22   Wassenaar; do you know who Olivia
23   Wassenaar is?
24       A.        Yes.
25       Q.        Who is Olivia Wassenaar?
```

[PAGES INTENTIONALLY OMITTED]