# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

IN RE ALTA MESA RESOURCES, INC.
SECURITIES LITIGATION

Case No. 4:19-cv-00957

**PUBLIC VERSION OF DKT. 659**

# CLASS PLAINTIFFS' MOTION FOR SEPARATE TRIALS OF THE
# CLASS ACTION AND THE INDIVIDUAL ACTIONS
# <u>PURSUANT TO FED. R. CIV. P. 42(b)</u>

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS...................................................... 1

STATEMENT OF ISSUE TO BE RULED UPON ............................................. 2

APPLICABLE LEGAL STANDARD ................................................................ 2

INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 3

STATEMENT OF FACTS .................................................................................. 5

       A.    The Court has Upheld Class Plaintiffs' Section 10(b), 14(a), and 20(a) Claims.......................................................................................... 5

       B.    The Court's Order Granting Class Certification and Appointing Lead Plaintiffs and Lead Counsel ............................................ 5

       C.    The Individual-Action Plaintiffs' Later-Filed Actions ................................. 6

       D.    The Court Consolidated the Cases While Preserving the Parties' Rights to Request Separate Trials at a Later Date ....................... 8

       E.    Defendants Took Separate and Individualized Discovery of the Individual-Action Plaintiffs............................................................ 8

       F.    The Individual-Action Plaintiffs' Expert Discovery ................................. 11

ARGUMENT & AUTHORITIES ...................................................................... 15

I.    A Separate Trial of the Class Action and the Individual Actions is Necessary to Prevent Potential Prejudice and Jury Confusion .................................................... 15

II.    Conducting Separate Trials Promotes the Interests of Judicial Economy and Efficiency............................................................................................ 18

III.    If the Court Agrees to Order Separate Trials, the Procedure Established in *Vivendi* with Respect to Issue Preclusion is Instructive ........................................ 18

IV.    The Class is Entitled to a Trial Conducted at the Direction of Class Representatives by Class Counsel, the Fiduciaries Appointed for That Purpose, and Free from Interference by Non-Representative Parties .................................. 20

CONCLUSION .................................................................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alaniz v. Zamora-Quezada*,
   591 F.3d 761 (5th Cir. 2009) ................................................................. 2

*Divine Restoration Apostolic Church v. Nationwide Mut. Ins. Co.*,
   No. 4:09-CV-0926, 2010 WL 1064727 (S.D. Tex. Mar. 19, 2010) ......................... 2

*GAMCO Inv'rs, Inc. v. Vivendi, S.A.*,
   927 F. Supp. 2d 88 (S.D.N.Y. 2013) ..................................................... 19

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
   No. H-01-3624, 2006 WL 1006611 (S.D. Tex. Apr. 12, 2006) ............................ 20

*In re Lucent Techs. Inc. Sec. Litig.*,
   No. Civ. A. 00-621JAP, 2002 WL 32818345 (D.N.J. May 9, 2002) ...................... 17

*In re Vivendi Universal, S.A. Sec. Litig.*,
   910 F. Supp. 2d 500 (S.D.N.Y. 2012) .................................................. 19

*In re Vivendi Universal, S.A. Sec. Litig.*,
   No. 02 Civ. 5571, 2009 WL 10795068 (S.D.N.Y. Aug. 18, 2009) ........... 3, 4, 16, 18

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02 Civ. 3288(DLC), 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) ............. 16, 18

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   No. 02 C 5893, 2005 WL 3801463 (N.D. Ill. Apr. 18, 2005) ............................. 17

*Trejo-Munoz v. Henderson*,
   615 F. Supp. 3d 558 (S.D. Tex. 2022) ................................................. 15

*Walsh v. Ford Motor Co.*,
   130 F.R.D. 260 (D.C. Cir. 1990) ........................................................ 17

**Other Authorities**

9A Charles Alan Wright & Arthur R. Miller,
   *Federal Practice and Procedure* § 2388 (3d ed. 2023)................................. 15

**Rules**

Fed. R. Civ. P. 42 ......................................................................... 2, 4

## NATURE AND STAGE OF PROCEEDINGS

More than two years ago, the Court issued its January 24, 2022 Order Granting Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (Dkt. 241), thereby certifying this case to proceed as a class action (the "Class Action") and appointing Lead Plaintiffs FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach and United Association National Pension Fund and Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust (collectively, the "Class Plaintiffs") as Class Representatives.  On November 30, 2022, upon the parties' joint motion for consolidation and a motion hearing, the Court consolidated the certified Class Action with two later-filed cases, *Alyeska Master Fund, LP et al. v. Alta Mesa Resources, Inc. et al.*, Case No. 4:22-cv-01189, and *Orbis Global Equity LE Fund (Australia) et al. v. Alta Mesa Resources, Inc. et al.*, Case No. 4:22-cv-02590 (the "Individual Actions"), brought by certain institutional investors (the "Individual-Action Plaintiffs") pursuant to Federal Rule of Civil Procedure 42(a), while expressly preserving "[t]he parties' rights to request bifurcation of expert discovery and/or trial at a later date." (Dkt. 259).

Now-concluded fact discovery, expert discovery, and summary judgment and *Daubert* briefing have made clear the likelihood that proof of individualized issues of reliance and damages unique to the Individual-Action Plaintiffs will overwhelm the trial of the Class Action which has none of those issues.  Accordingly, Class Plaintiffs hereby move under Federal Rule of Civil Procedure 42(b) for separate trials of the Class Action and the

Individual Actions to avoid confusion to the jury, prejudice to the Class, and unnecessarily protracting the Class Action trial.[1]

### STATEMENT OF ISSUE TO BE RULED UPON

Whether the certified Class Action and the Individual Actions should be tried separately under Federal Rule of Civil Procedure 42(b) because proof related to individualized issues of reliance and damages unique to the Individual-Action Plaintiffs will overwhelm proof of the Class Action claims, will confuse the jury, are potentially prejudicial to the Class, and will otherwise unnecessarily complicate the presentation of issues and evidence.

### APPLICABLE LEGAL STANDARD

Under Rule 42(b), a district court may order separate trials of any issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  "Whether to conduct separate trials under the Rule is a matter left to the sound discretion of the trial court on the basis of circumstances of the litigation before it."  *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 773–74 (5th Cir. 2009) (internal quotation marks and citation omitted).  In determining whether to order separate trials, "the two primary factors to be considered . . . are efficient judicial administration and potential prejudice."  *Divine Restoration Apostolic Church v. Nationwide Mut. Ins. Co.*, No. 4:09-CV-0926, 2010 WL 1064727, at *2 (S.D. Tex. Mar. 19, 2010).

---

[1] Class Plaintiffs met and conferred with all parties on the issues addressed herein.  The Individual-Action Plaintiffs indicated their intention to oppose, as did certain Defendants, but at the time of this filing, the formal position of all Defendants has not been confirmed despite Class Plaintiffs' request that they provide one.

2

## INTRODUCTION AND SUMMARY OF ARGUMENT

Class Plaintiffs recognized from the outset that while consolidation fostered judicial efficiency for pretrial matters, it was possible the Class Action and the Individual Actions would need to be tried separately because the individualized issues of reliance and damages that could be raised in the Individual Actions were not present in the Class Action.  The Court's consolidation order specifically anticipated that concern and preserved the parties' ability to seek separate trials.  (Dkt. 259).

To our knowledge there is only one securities fraud litigation where an opt-out case has actually proceeded to trial.  In that case, *In re Vivendi Universal, S.A. Securities Litigation*, No. 02 Civ. 5571, 2009 WL 10795068, at *1 (S.D.N.Y. Aug. 18, 2009), the trial court ruled that the opt-out cases (which had been consolidated for pretrial purposes in much the same way as here) would go forward only after the trial of the class action because individualized issues of reliance unique to the opt-out cases were likely to overwhelm the proof in the class action, potentially prejudice the class, and confuse the jury.  *Id.*

The individualized issues of reliance confronted by the *Vivendi* court are further complicated here.  First, the Individual-Action Plaintiffs do not enjoy the benefit of the class-wide fraud-on-the-market presumption of reliance for any of the individualized claims they bring under the federal securities laws and Texas state law.  Not only must they prove direct reliance as an element of those claims, but at least with respect to their Section 18 claim, they must prove so-called "eyeball reliance."  Further, the Individual-Action Plaintiffs' claims also present individualized claims of Section 14(a) damages under a "lost opportunity" damages theory not available on a class-wide basis under the facts of this case

3

and individualized damages claims under various Texas state-law theories not pled by the Class.

In all, the Individual-Action Plaintiffs advance 25 separate damages claims, theories, and methodologies that are different than those articulated by the Class. Under these circumstances, the procedural approach adopted by the *Vivendi* court in ordering separate trials of the class action and the opt-out cases is instructive here: Try the Class Action to the jury first, and then—as and if necessary—proceed with the trial of individualized issues of reliance and damages to a jury in the Individual Actions. While Class Plaintiffs expect Defendants may complain that this approach means they will have to "try the action twice," this is not necessarily so.

It may be true in the unlikely event Defendants prevail in the Class Action trial that they will not have the benefit of issue preclusion against the Individual-Action Plaintiffs. On the other hand, if—as is far more likely—the Class is successful against Defendants at trial, then the Individual-Action Plaintiffs will be entitled the benefit of issue preclusion on all but the individualized issues unique to their cases, such as, for example, reliance and lost opportunity damages.

Put simply, a separate trial of the Class Action and the Individual Actions here avoids the risks of confusing the jury and prejudicing the Class Plaintiffs in the Class Action trial by asking the jury to consider individualized issues and damages theories not relevant to the Class claims and promotes judicial economy and efficiency by streamlining the Class Action trial. *See* Fed. R. Civ. P. 42(b); *Vivendi*, 2009 WL 10795068, at *1.

## STATEMENT OF FACTS

**A.    The Court has Upheld Class Plaintiffs' Section 10(b), 14(a), and 20(a) Claims**

On December 6, 2021, Class Plaintiffs filed the third consolidated amended complaint for violations of the federal securities laws ("Third Amended Complaint"), asserting claims under Sections 10(b), 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act").[2]  (Dkt. 218).  Following voluminous motion practice, on March 31, 2021, the Court denied Defendants' eight motions to dismiss Class Plaintiffs' complaint (Dkt. 157), and, on April 14, 2021, the Court issued a Memorandum Opinion and Order holding that Class Plaintiffs have pled sufficient facts to establish claims against Defendants under Sections 10(b), 14(a), and 20(a) of the Exchange Act (Dkt. 160).

**B.    The Court's Order Granting Class Certification and Appointing Lead Plaintiffs and Lead Counsel**

Following class-certification discovery, with no opposition from Defendants, on January 24, 2022, the Court granted Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (Dkt. 241) (which included a detailed record establishing the standing of Class Plaintiffs and the declaration of Class Plaintiffs' expert Dr. Michael Hartzmark establishing the efficiency of the market and the entitlement of the Class to the benefit of the "fraud on the market presumption"), thereby certifying this case to proceed as a class action and appointing Class Plaintiffs as Class Representatives.  In so doing, the Court found:

---

[2] Capitalized terms not defined herein are as defined in the Third Amended Complaint.

- "[P]ursuant to Federal Rule of Civil Procedure 23(a) that: (i) the Class (as hereinafter defined) is so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact common to the Class; and (iii) Plaintiffs' claims are typical of the Class claims" (p. 1);

- Class Plaintiffs "will fairly and adequately protect the interests of the Class as Class Representatives" (p. 2);

- "Pursuant to Federal Rule of Civil Procedure 23(b)(3)," "questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy" (p. 2); and

- "[P]ursuant to Federal Rule of Civil Procedure 23(g), that Co-Lead Counsel Entwistle & Cappucci LLP and Robbins Geller Rudman & Dowd LLP will fairly and adequately represent the interests of the Class as Class Counsel" (p. 2).

## C.    The Individual-Action Plaintiffs' Later-Filed Actions

Over three years after this lawsuit was initiated by the Class, the Individual-Action Plaintiffs filed their complaints against Defendants.  The Alyeska Plaintiffs filed their complaint on April 13, 2022 (*Alyeska Master Fund, L.P. v. Alta Mesa Resources, Inc.,* No. 22-cv-01189) (the "*Alyeska* Complaint"), and the Orbis Plaintiffs filed their complaint on August 3, 2022 (*Orbis Global Equity LE Fund, L.P. v. Alta Mesa Resources, Inc.,* No. 22-cv-02590) (the "*Orbis* Complaint").

Through their complaints, the Individual-Action Plaintiffs asserted state-based causes of action and accompanying theories of damages that are not being raised (and cannot be raised) by Class Plaintiffs, including common law fraud and violations of section 27.01 of the Texas Business and Commerce Code.  *Alyeska* Complaint, pp. 82-84; *Orbis* Complaint, pp. 103-108.  With respect to their Section 18(a) claim—which requires that plaintiffs affirmatively demonstrate actual "eyeball" reliance as a precondition to recovery

as opposed to the rebuttable presumption of reliance that governs the Class—the Individual-Action Plaintiffs' complaints allege that "[i]n ignorance of the falsity of Defendants' statements, or of the true facts, Plaintiffs purchased Alta Mesa common stock *in actual, justifiable, eyeball reliance* upon the representations made by Alta Mesa, the Management Defendants, and the Board Defendants" (emphasis added).   *Alyeska* Complaint at ¶ 338; *Orbis* Complaint at ¶ 413.

Further, the Orbis Plaintiffs' allegations involve additional misrepresentations that Defendants made privately to Orbis and not the Class and the investing public.  For example, the Orbis Plaintiffs allege that, in addition to "materially false and misleading statements that were made by Defendants to the investing public at large (including Orbis), materially false and misleading statements were also made directly to Orbis Investments during telephone calls and meetings" (*Orbis* Complaint at ¶ 271).  The *Orbis* Complaint explains that "Orbis Investments' direct communications with Defendants began even before Silver Run's initial public offering" (*id.* ¶ 272) and details misleading statements made by certain Defendants directly to the Oribis Plaintiffs, beginning on March 20, 2017, during a private conference call:

> "Defendants told Orbis Investments that Silver Run would seek to create value from any combined company by identifying technical uplifts but not paying for them.  Defendants emphasized that if Silver Run could not find a merger target that made sense, they would be fully willing to redeem Silver Run investors and move on to their next fund opportunity" (*id.*); and

> "Defendant Hackett also explained that his work at Riverstone had given him greater knowledge of oil basins than he had obtained as Chairman of Anadarko. Defendant Hackett did not directly answer whether he was personally investing in Silver Run, but stated that no amount of money could motivate him to damage his reputation" (*id.* ¶ 273).

7

The claims in both the *Alyeska* and *Orbis* actions—including certain of the additional claims not raised by Class Plaintiffs—require proof of those plaintiffs' actual reliance and other facts unique to them that are not part of the Class Action.

### D.    The Court Consolidated the Cases While Preserving the Parties' Rights to Request Separate Trials at a Later Date

On November 30, 2022, upon the parties' joint motion for consolidation and a motion hearing, the Court consolidated the certified Class Action with the Individual Actions pursuant to Federal Rule of Civil Procedure 42(a), while expressly preserving "[t]he parties' rights to request bifurcation of expert discovery and/or trial at a later date." (Dkt. 259).

### E.    Defendants Took Separate and Individualized Discovery of the Individual-Action Plaintiffs

Defendants completed separate and individualized discovery of the Individual-Action Plaintiffs, including written discovery and depositions focused on individualized issues of reliance and other factual issues unique to the Individual-Action Plaintiffs.  For example, Defendants served 368 requests for admission on the Orbis Plaintiffs and 376 requests for admission on the Alyeska Plaintiffs largely related to their individual reliance and direct conversations that Defendants had with each of those Plaintiffs that go beyond the public statements at issue in Class Plaintiffs' complaint.

Defendants similarly took depositions of the Individual-Action Plaintiffs that involved significant questioning on issues not applicable to the Class, including surrounding individual reliance, the meetings Defendants had directly with the Individual-Action Plaintiffs, and the Individual-Action Plaintiffs' trading practices,

including with respect to the dates that they traded Alta Mesa shares prior to the end of the Class Period, creating unique damages and reliance issues and calling into question whether some of the unique factual information they had may have played a part in those decisions.

For example, during the deposition of Jonathan Berger, an Alyeska representative (attached hereto as Ex. A), Defendants asked, *ad nauseam*, questions such as the following:

Q. "So if your general practice is to sometimes read word for word but not always, then you can't say for sure you read this in full, can you?" (190:8-11);

Q. "Were you making any investment decisions in January 2018 based on this language about potential risks?" (181:18-20);

Q. "Okay. You didn't rely on this statement in any sense with respect to making investment decisions?" (196:21-23);

Q. "Okay. In January of 2018 at Alyeska were you basing investment decisions off of this language?" (182:20-22);

Q. "So at this point in time, then, March 29 of '18, Alyeska has invested in AMR. Were you basing investment decisions for Alyeska on the language that we've just read?" (192:10-13);

Q. "Okay. Did you rely on this statement in the sense of making an investment decision because you read it?" (199:19-21);

Q. "So sticking with the April 2, 2018, sale that sort of starts out this trend, why is it that we see this -- at least when tabulated this way -- seemingly start change from almost exclusively or pretty much exclusively buying to almost exclusively selling?" (234:5-10); and

Q. "So March 29, what you just pointed out for me, that's like -- Alta Mesa, at that point in time, is conducting an earnings call. It's revising its guidance. Its figures as announced at that point are revised related to what they previously were announced to be. So at that point Alyeska starts selling off the shares; right? ... March 29. We just talked about these materials. At that point in time, Alta Mesa is revising its financial guidance. So immediately

thereafter, Alyeska sells shares, and I'm asking whether that's connected." (235:5-11, 15-19).

Likewise, during the deposition of Alec Cutler, who testified in his individual capacity and as a 30(b)(6) corporate representative for Orbis (attached hereto as Ex. B), Defendants asked a multitude of questions surrounding individual reliance, individual trading decisions and internal processes at Orbis regarding making investment decisions, and the direct conversations members at Orbis had with Alta Mesa management, such as the following:

Q. "Do you recall Adam making recommendations with respect to these five funds for Alta Mesa or Silver Run II?" (87:6-11);

Q. "So why are you buying if Brad told you that this was one of the least helpful calls he had seen and the recommendation was to hold?" (270:2-5);

Q. "Why are you guys buying if the recommendation was to -- that it was more prudent to wait?" (277:9-11);

Q. "What could Brad and Adam learn in a **private** meeting [with AMR management] that would make you know something or act differently than you would have acted on the basis of public information?" (273:6-10) (emphasis added);

Q. "So over the next several weeks, you're executing these trades, selling down your position in AMR?" (123:4-6);

Q. "Are you able to transfer shares amongst the ten funds that we're talking about today, the ten Orbis funds? So if you wanted to get rid of some shares, you could transfer them to U.S. L.P., for example; U.S. L.P. could transfer cash back to your funds?" (125:9-15); and

Q. "The complaint alleges that if Orbis began to sell its stock, it could depress the stock price? Do you agree with that?" (238:6-9).

There was likewise extensive discovery by the Individual-Action Plaintiffs on what they claim they were told by Defendants, and it is fair to assume that the Individual-Action

Plaintiffs will spend an equal amount of trial time proving those claims to the jury—none of which are relevant to the Class claims and all of which are likely to confuse the jury.

### F.   The Individual-Action Plaintiffs' Expert Discovery

The Individual-Action Plaintiffs also engaged separate experts and completed separate expert discovery.  The Alyeska and Orbis Plaintiffs together engaged two experts:  Paul Dudenas, a petroleum engineer expert; and Zachary Nye, a damages expert.

Notably, Dr. Nye offered a "Lost Opportunity" damages theory under Section 14(a), which is an individualized damages theory not available to the Class and which hypothesizes that the Individual-Action Plaintiffs had other investment alternatives of greater value that they "lost" when they invested in the Silver Run II SPAC.  *See* Expert Report of Dr. Zachary Nye, Ex. C at ¶¶ 176-180 ("Nye Report").  In this regard, Dr. Nye opined that because of Defendants' misrepresentations and omissions regarding the true nature of the Merger in the Proxy, the Individual-Action Plaintiffs lost the right to redeem their shares for their *pro rata* share of the Silver Run II Trust Account, valued at approximately $10.00 per share.  *Id.*

In contrast, Class Plaintiffs' expert, Dr. Steven Feinstein, analyzed class-wide damages under a "Benefit of the Bargain" theory for Section 14(a) damages in which he calculated that the true value of the shares at the time of the Business Combination was $1.77 per share—not the $10 per unit they paid to invest in the Silver Run II SPAC—meaning Class members lost $8.23 per share.  *See* Expert Report of Dr. Steven Feinstein, Ex. D at ¶¶ 342-359 ("Feinstein Report").  Thus, the Individual-Action Plaintiffs proffer an individualized Section 14(a) damages theory that is not available to the Class

and that requires substantially different proof and expert testimony than that advanced by the Class.

The Individual-Action Plaintiffs' expert, Dr. Nye, also advances an individualized analysis of Section 10(b) damages, applying his theories and methodology to the individual trading of each of the Alyeska and Orbis Plaintiffs.  *See* Ex. C, Nye Report at ¶¶ 170-172.

Dr. Nye also evaluates per-share damages for the Individual-Action Plaintiffs' Texas common law claims, which are not causes of action pursued by Class Plaintiffs.  The Texas common law claims advanced by the Individual-Action Plaintiffs consist of two separate sub-claims, the "Acquisition Claims" and the "Holder Claims."  *Id.* ¶¶ 182-187.

For the "Acquisition Claims," Dr. Nye's damages analysis requires significant deviation from the standard method for calculating per-share damages under Section 10(b)—which standard methodology is addressed in the report of Class Plaintiffs' expert in connection with the Class-wide claims.  *See generally* Ex. D, Feinstein Report at ¶¶ 272-310.  Specifically, Dr. Nye explains that the common law calculation does not apply the "constraints imposed by *Dura*" and that "the PSLRA 90-day lookback provisions do not apply."  Ex. C, Nye Report at ¶ 183.  Dr. Nye further explains that "the concept of 'loss causation' as it has been applied in federal securities cases, is inapplicable here and the more general standards of proximate causation, as determined and developed by Texas common law, apply."  *Id.*

For the "Holder Claims," Dr. Nye further breaks this sub-claim into three common law theories alleged by the Individual-Action Plaintiffs: "Redemption Forfeiture" theory

(*id.* ¶ 185); "Direct Loss From Holding" theory (*id.* ¶ 186); and "Pre-vs-Post Redemption" theory (*id.* ¶ 187).  None of these theories are applicable to the claims asserted by the Class.

The Individual-Action Plaintiffs also assert a claim under Texas Business and Commerce Code § 27.01, and it is Dr. Nye's "understanding from Counsel that Texas Business and Commerce Code § 27.01 allows for actual damages, exemplary damages, as well as other collateral damages" (*id.* ¶ 188).  These claims and their related proof, including that of damages, are also not part of the Class Action.

The following charts excerpted from Dr. Nye's expert report (*id.* ¶¶ 192-193) underscore the confusion to the jury if it were asked to consider proof on the various individualized damages theories advanced by the Individual-Action Plaintiffs:

| Summary of Aggregate Damages Incurred by Alyeska | | | |
|---|---|---|---|
| Claim | Assumption / Theory | Share Matching Algorithm | |
| | | FIFO | LIFO |
| Section 10(b) | Assumption 1 | $27,178,730 | $27,178,730 |
| | Assumption 2 | $22,362,162 | $11,827,655 |
| Section 18 | N/A | $938,952 | $193,463 |
| Section 14(a) | Lost Opportunity | $38,518,403 | $61,434,311 |
| | Out of Pocket | $14,229,679 | $23,835,512 |
| TX Common Law Acquisition Claims | Assumption 1 | $27,178,730 | $27,178,730 |
| | Assumption 2 | $22,362,162 | $11,827,655 |
| TX Common Law Holder Claims | Redemption Forfeiture | $44,332,223 | $64,730,194 |
| | Direct Loss From Holding | $27,178,730 | $27,178,730 |
| | Pre-vs-Post Redemption | $54,789,712 | $67,275,916 |
| TX Statutory | Assumption 1 | $27,178,730 | $27,178,730 |
| | Assumption 2 | $22,362,162 | $11,827,655 |

13

| Summary of Aggregate Damages Incurred by Orbis | | | |
|---|---|---|---|
| Claim | Assumption / Theory | Share Matching Algorithm | |
| | | FIFO | LIFO |
| Section 10(b) | Assumption 1 | $90,384,735 | $90,384,735 |
| | Assumption 2 | $90,384,735 | $90,384,735 |
| Section 18 | N/A | $14,782,215 | $12,850,222 |
| Section 14(a) | Lost Opportunity | $110,140,342 | $124,454,944 |
| | Out of Pocket | $40,818,339 | $45,211,513 |
| TX Common Law Acquisition Claims | Assumption 1 | $90,384,735 | $90,384,735 |
| | Assumption 2 | $90,384,735 | $90,384,735 |
| TX Common Law Holder Claims | Redemption Forfeiture | $141,109,087 | $153,947,622 |
| | Direct Loss From Holding | $90,384,735 | $90,384,735 |
| | Pre-vs-Post Redemption | $179,488,955 | $188,450,292 |
| TX Statutory | Assumption 1 | $90,384,735 | $90,384,735 |
| | Assumption 2 | $90,384,735 | $90,384,735 |

Of the six claims summarized in each of these charts, Dr. Nye advances theories and methodologies unique to the Individual-Action Plaintiffs for their Section 10(b) and Section 14(a) claims (the only claims that overlap with the Class claims), and opines on individualized damages for four other causes of action not at issue in the Class Action—the Individual-Action Plaintiffs' allegations under Section 18 of the Exchange Act; their Texas common law "Acquisition Claims"; their Texas common law "Holder Claims"; and their Texas statutory claims.  Adding to the complexity of the Individual-Action Plaintiffs' damages theories, Dr. Nye includes an overlay of a total of *seven* separate "assumption[s] / theor[ies]" for the Individual-Action Plaintiffs' Texas state-law claims for each of Alyeska and Orbis, which had their own separate and unique trading patterns—making a total of 14 separate damages analyses on the Individual-Action Plaintiffs' Texas state-law claims and another 10 separate analyses on Alyeska's and Orbis's unique federal damages theories and claims.

14

## ARGUMENT & AUTHORITIES

**I.      A Separate Trial of the Class Action and the Individual Actions is Necessary to Prevent Potential Prejudice and Jury Confusion**

Federal Rule of Civil Procedure 42(b) allows the Court, in its discretion, to order separate trials for the reasons of "convenience, expedition, economizing, and avoiding prejudice." *Trejo-Munoz v. Henderson*, 615 F. Supp. 3d 558, 562 (S.D. Tex. 2022).  It is well settled that "the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court on the basis of the circumstances of the litigation before it."  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2023).

Separate trials are appropriate when ordered "to avoid prejudice," particularly in circumstances "when evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues." *Id.*  That potential for prejudice is manifest here, where the Individual-Action Plaintiffs seek to try individualized issues of reliance unique to them and a multitude of damages theories and claims in a class action trial in which those issues are irrelevant and/or potentially prejudicial and confusing.  As one court put it:

> [T]he claims of the relatively unsophisticated investors who typically make up the bulk of a class [should not be influenced] by thrusting issues particular to institutional [investors] into the forefront of an action.  ***It would therefore seem that a court should be especially cognizant of the risks inherent in admitting potentially prejudicial or confusing evidence regarding the knowledge or conduct of a[n] [institutional investor] with an atypical level of sophistication in the phase of a trial in which class-wide issues are adjudicated***.

15

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2005 WL 408137, at *4 (S.D.N.Y. Feb. 22, 2005) (emphasis added).  Given those risks, the Southern District of New York in *WorldCom* ruled that the individualized issues of reliance and damages in that case – quite similar to those at issue in the Individual Actions here – were properly reserved for proceedings that followed the plenary class action trial.  *Id.* at *2, *5.

Likewise, in *Vivendi*, the only time an opt-out securities fraud case actually went to trial that Class Counsel is aware of, the court ordered separate trials less than two months from the previously scheduled consolidated trial to avoid overwhelming the class action trial and confusing the jury:

> Regarding the scope of the upcoming trial, the Court concludes that it would not be manageable to try the claims of the Class Plaintiffs with those of the Individual Plaintiffs.  ***Regardless of where the burden of proof lies, issues of individualized reliance would overwhelm the trial and impermissibly distract the jury from reasoned determination of the Class claims***.  The upcoming trial scheduled to start on September 29, 2009 will go forward only for the Class.  The Court will set a trial date for the claims of the Individual Plaintiffs following completion of the Class Plaintiffs' trial.

*Vivendi*, 2009 WL 10795068, at *1 (emphasis added).

The circumstances here are even more compelling than those in *WorldCom* and *Vivendi*.  Indeed, the significant individualized issues of reliance (both direct reliance and so-called "eyeball reliance") and damages unique to the Individual-Action Plaintiffs are manifestly more complex than those at issue in *Vivendi* and *WorldCom*, given the facts surrounding conversations the Individual-Action Plaintiffs had with Defendants before, during, and after the De-SPAC, and the multitude of unique damages theories advanced by the Individual-Action Plaintiffs in connection with their federal and Texas state-law

16

claims. Leaving aside the 25 separate individualized damages claims and theories advanced by the Individual-Action Plaintiffs described above, the independent and extensive discovery Defendants served on the Alyeska and Orbis Plaintiffs surely portends protracted and vigorous cross-examination of those parties on their trading patterns, conversations with Defendants, and individual reliance that is likely to overwhelm the proof of issues relevant to the Class case. *See, e.g.*, *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 277 (D.C. Cir. 1990) (in class certification context, noting that where "evidence of liability and causation will involve highly technical and complex mechanical and statistical studies which a lay jury will need to digest and comprehend," there is risk the litigation "will degenerate into numerous trials within a trial resulting in confusion and possible injustice to the parties"); *see also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2005 WL 3801463, at *4 (N.D. Ill. Apr. 18, 2005) (recognizing that where, as here, plaintiffs in a certified class action rely on the fraud-on-the-market presumption, "resolution of individualized reliance issues is not necessary to establishing class-wide liability"); *In re Lucent Techs. Inc. Sec. Litig.*, No. Civ. A. 00-621JAP, 2002 WL 32818345, at *1 (D.N.J. May 9, 2002) (finding that the investment behavior of a "handful of plaintiffs" did not "shed any light on the overall issue of liability, in particular on whether the entire class acted in reliance on the market price of [the company's] stock" and thus was not "probative of the question of class-wide reliance on the market"), *aff'd*, 2002 WL 32815233 (D.N.J. July 16, 2002).

A separate trial of the Class Action and the Individual Actions pursuant to Rule 42(b) provides a straightforward solution that removes the possibility that a jury will improperly

conflate the class-wide issues of liability and damages and the individualized issues unique to the Individual-Action Plaintiffs, and avoids the risks of potential prejudice and confusion inherent in admitting individualized evidence in a securities class action trial where such evidence is wholly irrelevant. *See, e.g.*, *Vivendi*, 2009 WL 10795068, at *1; *WorldCom*, 2005 WL 408137, at *4.

## II.    Conducting Separate Trials Promotes the Interests of Judicial Economy and Efficiency

A separate trial of the Class Action and the Individual Actions also serves judicial economy and promotes the just and expeditious final disposition of this entire case.

For example, both *Vivendi* and *WorldCom* reserved individualized issues of reliance and damages for proceedings that followed the plenary trial on class-wide issues. *See Vivendi*, 2009 WL 10795068, at *1 ("The upcoming trial scheduled to start on September 29, 2009 will go forward only for the Class.  The Court will set a trial date for the claims of the Individual Plaintiffs following completion of the Class Plaintiffs' trial."); *WorldCom*, 2005 WL 408137, at *5 ("The claims to be tried at the plenary trial are brought against the defendants, not against the named plaintiffs.  The individualized issues regarding class members, including the named plaintiffs, will be reserved for proceedings that follow.").

## III.    If the Court Agrees to Order Separate Trials, the Procedure Established in *Vivendi* with Respect to Issue Preclusion is Instructive

Even if the Class Action is tried first, there would be no risk of duplicative litigation, overlapping witnesses, or potentially inconsistent rulings in a subsequent proceeding in which the individualized issues unique to the Individual-Action Plaintiffs are adjudicated because the Individual-Action Plaintiffs would be entitled to collateral estoppel on certain

issues based on the jury verdict in the Class Action, as was done in perhaps the only opt-out case that has ever gone to trial in a securities class action. *See In re Vivendi Universal, S.A. Sec. Litig.*, 910 F. Supp. 2d 500, 502 (S.D.N.Y. 2012).

In 2012, the court addressed in a post-trial decision whether certain opt-out plaintiffs – the GAMCO Plaintiffs – could benefit from the use of "offensive collateral estoppel" in a subsequent proceeding when defendants argued the GAMCO Plaintiffs "could easily have joined in the earlier action." *Id.* at 505. Although the court agreed that the GAMCO Plaintiffs would not be entitled to collateral estoppel if they had been incentivized not to join the earlier action so they would receive a favorable judgment later, the court found that reasoning inapplicable to the GAMCO Plaintiffs because the GAMCO Plaintiffs had specifically requested to be deconsolidated from the class three months before the scheduled trial "***because of the . . . individualized reliance issues unique to the GAMCO Plaintiffs***." *Id.* (emphasis added). In an effort to promote judicial efficiency, the court granted the GAMCO Plaintiffs' motion for collateral estoppel such that the issues of falsity, materiality, and scienter were deemed fully determined against Defendants based on the jury verdict in the class action trial. *See id.* at 503–05.

What followed was a short two-day bench trial in which the GAMCO Plaintiffs solely addressed the individualized reliance issues unique to them without any overlapping evidence or witnesses from the class action trial because the class-wide issues of liability applied with equal force in their proceeding. *See GAMCO Inv'rs, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88 (S.D.N.Y. 2013).

19

**IV.    The Class is Entitled to a Trial Conducted at the Direction of Class Representatives by Class Counsel, the Fiduciaries Appointed for That Purpose, and Free from Interference by Non-Representative Parties**

In granting Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (Dkt. 241), the Court appointed Class Plaintiffs and Class Counsel to serve as fiduciaries for the Class.  Alyeska and Orbis elected to opt-out of the Class and pursue individual claims with their own counsel.  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. H-01-3624, 2006 WL 1006611, at *1 (S.D. Tex. Apr. 12, 2006) (recognizing that Federal Rule of Civil Procedure 23 "expressly contemplates that class members will ordinarily be given a single opportunity at an early stage of the class action to decide whether or not to participate in the action, and that, as the courts have repeatedly recognized, a class member that opts out of the litigation does so for all purposes").  That is their right, but those parties and their counsel do not speak for the Class.  And their participation in a trial of the Class Action—however well meaning—can only serve to distract the jury, disrupt the proof and arguments advanced by Class Counsel, create confusion, and prejudice the Class.  Simply put, Rule 23 (and the PSLRA) anticipate that the Class case will be prosecuted by duly-appointed Class representatives, free from the participation of non-representative parties and their counsel—a goal served here only by holding a separate trial of the Class Action and the Individual Actions.

## <u>CONCLUSION</u>

For the foregoing reasons, Class Plaintiffs respectfully request that the Court grant their motion for separate trials of the Class Action and the Individual Actions pursuant to Rule 42(b) so that the Class Action may be tried separately.

Dated:  February 14, 2024                                       Respectfully submitted,

*/s/ Andrew J. Entwistle*                                       */s/ Trig Smith*
Andrew J. Entwistle (attorney-in-charge)          Trig Smith (*pro hac vice*)
State Bar No. 24038131                                       Lonnie Browne (*pro hac vice*)
Callie Crispin                                                        John Kelley (*pro hac vice*)
State Bar No. 24104231                                       **ROBBINS GELLER RUDMAN &**
Sal H. Lee                                                           **DOWD LLP**
State Bar No. 24127308                                       655 West Broadway, Suite 1900
**ENTWISTLE & CAPPUCCI LLP**                      San Diego, CA 92101
500 West 2nd Street, Suite 1900                      Telephone: (619) 231-1058
Austin, TX 78701                                               Facsimile: (619) 231-7423
Telephone: (512) 710-5960
Facsimile: (212) 894-7278                                 *Court-Appointed Co-Lead Counsel*

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*

Carol Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005

Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven*
*Fund, A Series of Frank Funds Trust*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing has been served under seal via the Court's ECF system, and a copy has been served via email to counsel for all parties on February 14, 2024.


<u>*/s/ Andrew J. Entwistle*</u>
Andrew J. Entwistle