# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> Judge George C. Hanks, Jr. <br><br> ORAL ARGUMENT REQUESTED |

# DEFENDANTS' OPPOSITION TO CLASS PLAINTIFFS' <u>MOTION FOR SEPARATE TRIALS</u>

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

NATURE AND STAGE OF PROCEEDING .................................................................. 1

STATEMENT OF THE ISSUE ................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT........................................... 1

STATEMENT OF FACTS......................................................................................... 4

LEGAL STANDARD ............................................................................................... 4

ARGUMENT............................................................................................................ 5

      A.     The Benefits of Continued Consolidation Have Not Changed ................... 5

      B.     Class Plaintiffs' Claims of Prejudice Are Groundless ................................ 7

      C.     Multiple Trials Will Result In Wasted Resources, Repetition Of
             Evidence, And Significant Delay, And Therefore Undermines
             Judicial Economy And Efficiency................................................................ 10

      D.     Multiple Trials Would Risk Significant Prejudice For Defendants ............ 12

CONCLUSION ......................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aspen Tech., Inc. v. Kunt*,
    2011 WL 86556 (S.D. Tex. Jan. 10, 2011) ...................................................... 4

*C.W. v. Zirus*,
    2012 WL 12919097 (W.D. Tex. Aug. 7, 2012) ................................................ 8

*Domco Prods. Tex. Inc. v. Cont'l Ins. Co.*,
    2013 WL 2386632 (S.D. Tex. May 29, 2013) ................................................ 11

*GAMCO Invs., Inc. v. Vivendi Universal, S.A.*,
    838 F.3d 214 (2d Cir. 2016) .......................................................................... 12

*Garza v. Phillips 66 Co.*,
    2016 WL 1171004 (M.D. La. Mar. 4, 2016), *adopted*, 2016 WL
    1215413 (M.D. La. Mar. 23, 2016) .................................................................. 8

*Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*,
    2010 WL 2787810 (S.D. Tex. July 14, 2010) ................................................ 11

*Hous. McLane Co. v. Conn. Gen. Life Ins. Co.*,
    2006 WL 3050812 (S.D. Tex. Oct. 24, 2006) ...................................... 5, 11, 12

*In re Am. Realty Cap. Properties, Inc. Litig.*,
    No. 1:15-mc-00040 (S.D.N.Y. June 18, 2019) ............................................... 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
    2009 WL 1075068 (S.D.N.Y. Aug. 18, 2009) .................................................. 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
    No. 02-cv-05571 (S.D.N.Y. filed July 18, 2002) ....................................... 9, 12

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) .......................................................................... 12

*In re WorldCom, Inc. Sec. Litig.*,
    2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) .................................................... 9

*McDaniel v. Anheuser-Busch, Inc.*,
    987 F.2d 298 (5th Cir. 1993) ..................................................................... 5, 13

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ............................................................................ 11, 13

*Peace Lake Towers, Inc. v. Indian Harbor Ins. Co.*,
  2007 WL 925845 (E.D. La. Mar. 23, 2007) ............................................... 11

*Progressive Paloverde Ins. Co. v. Est. of Jenkins*,
  2020 WL 5819995 (E.D. La. Sept. 30, 2020) .............................................. 5

*United States v. Cisneros-Gutierrez*,
  517 F.3d 751 (5th Cir. 2008) .................................................................. 8

## RULES

Fed. R. Civ. P. 42(b) ................................................................................ 4, 5

## TREATISES

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and
  Procedure* § 2388 (3d ed. Apr. 2023 update) ............................................ 5

## NATURE AND STAGE OF PROCEEDING

This consolidated action is anticipated to go to trial in three months.  Class Plaintiffs have moved to deconsolidate and seek a separate trial for their claims.  Class Pls.' Mot. for Separate Trials ("Mot."), ECF No. 659.  Defendants oppose that motion.

## STATEMENT OF THE ISSUE

Whether the Court should have two separate trials about the same underlying factual issues regarding Silver Run II, the Business Combination, and Alta Mesa Resources—one for Class Plaintiffs and another for the two groups of Opt-Out Plaintiffs—requiring duplicate testimony by fact and expert witnesses, substantial increased burden on Defendants and the Court, and prejudice to Defendants from previewing their case in the first trial, potentially being subjected to differing jury verdicts on the same claims, and creating complex issues of potential collateral estoppel.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In late 2022, the parties including Class Plaintiffs stipulated to consolidated pre-trial proceedings for good reason.  The Class and Opt-Out cases each arise from the same transaction and largely the same underlying facts.  The core claims—under Section 10(b), Section 14(a), and 20(a)—are the same.  The Defendants are the same.  And the witnesses for each case are essentially identical.  Just a few months before trial, however, Class Plaintiffs have moved to try their case separately, ignoring the overwhelming factors that supported consolidation in the first place and predicated largely on two unproven (and incorrect) assertions of fact.

1

First, Class Plaintiffs claim that "individualized issues of reliance and damages unique to the opt out cases" will confuse the jury and could prejudice the class. But they do not actually set forth any analysis to support this contention in either respect. Countless securities cases involve multiple claims with varying elements—including strict liability claims under Section 11 coupled with reliance-based claims under Section 10(b)—yet juries are entrusted to sort through the respective elements with the guidance of the Court's instructions and the use of specific questions on the verdict form. By Class Plaintiffs' reasoning, the Opt-Out cases also would require separate trials (*i.e.*, three total trials) given Opt-Out Plaintiffs bring multiple claims that include reliance and non-reliance theories.

Class Plaintiffs attempt to overcome the continued logic and reasons for consolidation by pointing to the *Vivendi* district court's decision to hold separate trials for the class and the opt-outs. But Class Plaintiffs ignore that the potential for confusion in *Vivendi* stemmed from the fact that there were *eighty-five opt-out plaintiffs* which meant that the evidence about each of their reliance would have overwhelmed the issues common to both their claims and the class claims. That is not the case in this consolidated action, where there are *essentially just two* opt outs who, presumably, will present their evidence of reliance through just two or three witnesses. By contrast, separate trials here would require literally dozens of fact and expert witnesses to testify twice, and consume twice the Court's time.

Class Plaintiffs' other assertion is that holding two trials promotes judicial economy because it is "far more likely" that "the Class is successful against Defendants at trial," resulting in collateral estoppel as to factual issues and reducing the follow-on trial to issues

of reliance and damages.  Mot. at 4.  Putting aside their brazen declaration of victory in the face of Defendants' formidable defenses, courts in this district routinely deny motions for separate trials when  efficiencies will be achieved only if the movant runs the table on its claims.  But even their premise of eliminating factual issues is misplaced, as Opt-Out Plaintiffs challenge a variety of different statements, necessitating presentation of the same evidence in the second trial regardless of the outcome of the first trial.

Nor do Class Plaintiffs ever contend with the massive burden and prejudice that would result from separate trials.  Beyond the sheer duplicate expense and imposition on witnesses and the Court, the first trial would provide a distinct advantage for the Opt-Out Plaintiffs—and corresponding prejudice to Defendants.  At a minimum, it would prejudice Defendants by enabling Opt-Out Plaintiffs to gain a preview of the defense case; and at worst, it would prejudice Defendants by possibly subjecting Defendants to inconsistent verdicts on claims that they win against the Class, while creating the potential for collateral estoppel if Class Plaintiffs are correct even in part.  And even in *Vivendi*, the opt-out cases entailed lengthy battles about the preclusive scope and effect of the initial class action trial, diminishing the supposed "judicial economy."

In the end, these actions each turn on largely the same set of underlying facts.  A single trial with a single jury can hear that evidence a single time and decide all of the claims against Defendants.  For these reasons, Defendants respectfully request that Class Plaintiffs' motion be denied.

## STATEMENT OF FACTS

As Class Plaintiffs explained in their motion to consolidate the Class Action with the Opt-Out Actions, Opt-Out Plaintiffs "pursue similar claims against the same defendants and based upon the same conduct that forms the basis of the Class Action."  Joint Mot. to Consolidate (ECF No. 256) at 2 ("Consolidation Motion"); *see also id.* at 3-4 (explaining that "the three cases involve the same defendants and common questions of law and fact" and that consolidation would "avoid[] duplicative discovery and preserve[] judicial resources").  In particular, Class Plaintiffs argued that "the factual allegations supporting [Opt-Out Plaintiffs'] claims are substantially similar to those in the Class Action," and "the three related suits assert claims against the same Defendants, challenge as materially false or misleading statements based upon the same alleged conduct, and seek damages based on the same declines in the price of Alta Mesa's securities."  *Id.* at 5.  The core legal claims in all cases are under Sections 10(b), 14(a), and 20(a).  The only difference is that Opt-Out Plaintiffs also bring claims under Section 18 and Texas state law and base their claims on a variety of different, additional statements.  *See* Defs.' Mot. for Summ. J. on Opt-Out Pls.' Claims (ECF No. 690) at 7 nn.4 & 5 ("Opt-Out MSJ"); Appendix C (ECF No. 529-1) nn.1 & 2.

## LEGAL STANDARD

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  "The party seeking . . . separate trials under Rule 42(b) bears the burden of proving that such action is necessary."  *Aspen Tech., Inc. v.*

4

*Kunt*, 2011 WL 86556, at *3 (S.D. Tex. Jan. 10, 2011). "[T]he two primary factors to be considered in determining whether to order separate trials are efficient judicial administration and potential prejudice." *Hous. McLane Co. v. Conn. Gen. Life Ins. Co.*, 2006 WL 3050812, at *2 (S.D. Tex. Oct. 24, 2006); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. Apr. 2023 update) (explaining "[t]he major consideration" is whether separation "is more likely to result in a just and expeditious final disposition of the litigation").

"Separation of issues [under Rule 42(b)] is not the usual course that should be followed." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993). "A court should not order separate trials unless the issue to be tried separately is 'so distinct and separate from the others that a trial of it alone may be had without injustice.'" *Progressive Paloverde Ins. Co. v. Est. of Jenkins*, 2020 WL 5819995, at *2 (E.D. La. Sept. 30, 2020) (citation omitted).

Class Plaintiffs have not come close to meeting this high legal standard.

## ARGUMENT

### A. The Benefits of Continued Consolidation Have Not Changed

In reversing course and advocating separate trials, Class Plaintiffs largely ignore all the reasons that supported consolidation in the first place. The Class and Opt-Out cases all arise from precisely the same transactions and fact patterns relating to Silver Run II, the Business Combination, and Alta Mesa Resources. They include core identical legal theories under Sections 10(b), 14(a), and 20(a). The fact witnesses—the majority of which are individual Defendants or entity Defendants' current or former employees—are largely

the same, and their testimony will cover largely the same ground. The documentary evidence is likewise virtually the same. The witnesses and documents relevant only to Opt-Out issues pale in comparison to the evidence relevant to issues common to both Class Plaintiffs and Opt-Out Plaintiffs.

None of that has changed since the parties first requested and the Court granted consolidation. Indeed, discovery proved the efficiency in consolidating the cases, with Opt-Out Plaintiffs relying on Defendants' document production to Class Plaintiffs and asking minimal questions of defense witnesses after Class Plaintiffs completed their questioning. The benefit of consolidation is further underscored by the fact that the Court is deciding all summary judgment motions at the same time, despite the different legal arguments and parties involved in some of them. And the parties' briefing of the Opt-Out claims relies heavily on the corresponding briefing of the same issues as to Class Plaintiffs, given the substantial overlap in claims. *See, e.g.*, Opt-Out MSJ at 2 (explaining that given the significant overlap between Opt-Out Plaintiffs' allegations and Class's claims, Opt-Out Plaintiffs' overlapping claims cannot withstand summary judgment for the same reasons the Class Plaintiffs' claims fail); Opt-Out Pls.' Opp. to Defs.' Mot. for Summ. J. on Opt-Out Pls.' Claims (ECF No. 578) at 15, 16, 18-19 (relying on Class Plaintiffs' Oppositions to Defendants' motions for summary judgment). At bottom, all these cases substantially overlap, and the overwhelming efficiencies from maintaining consolidation through trial easily outweigh issues specific to the Opt-Out Plaintiffs and the purported prejudice Class Plaintiffs now allege.

## B.    Class Plaintiffs' Claims of Prejudice Are Groundless

Class Plaintiffs spend most of their motion arguing that a separate trial for the Class claims is necessary to prevent potential prejudice and jury confusion.  *See* Mot. at 15-18. The gaping hole in that argument, however, is that Class Plaintiffs cannot explain why the jury will be more confused than in any other case involving multiple claims with varying elements.  Indeed, Class Plaintiffs identify only two potential sources of confusion, and both are exceedingly narrow.  The first is reliance, just one of the several elements of the claims, and the second is damages, an issue the jury may never even reach.  Mot. at 16. Neither of these topics is inherently confusing, so Class Plaintiffs' argument is merely that they are different and this difference will overwhelm the jury.  Class Plaintiffs are wrong because these differences are minor, especially compared to the complexities of a trial based on multiple claims involving dozens of statements against twenty-one Defendants.

With respect to reliance, Class Plaintiffs speculate that Defendants will conduct a "protracted and vigorous cross-examination of [Opt-Out Plaintiffs] on their trading patterns."  *Id.* at 17.  Even if that is true, Class Plaintiffs do not explain why cross-examination of a few fact witnesses who are all clearly identified as testifying only for Opt-Out Plaintiffs would "overwhelm the proof issues relevant to the Class case."  *Id.*  Indeed, the common fact issues in this case will involve testimony from dozens of fact witnesses; Opt-Out Plaintiffs' reliance will be only a part of this trial.

The same is true of damages.  The jury will potentially hear testimony from four experts:  Class Plaintiffs' expert, Opt-Out Plaintiffs' expert, and two experts for

Defendants.[1]  Class Plaintiffs' contend that unless Opt-Out Plaintiffs' expert is excluded, the jury will not be able to keep straight which testimony relates to the Class claims, but that is farfetched.  Presumably, both Class and Opt-Out Plaintiffs will attempt to make clear to the jury which testimony is relevant to each their claims.  There is no basis to speculate that the jury will fail to understand one expert is for Class Plaintiffs and the other for Opt-Out Plaintiffs.

Moreover, any potential for confusion will be ameliorated by the Court's instructions to the jury, which occurs anytime there are varying claims and elements in a single trial.  *See, e.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 762-63 (5th Cir. 2008) ("We have explained that jury instructions 'can ameliorate a jury's confusion' in this situation, and we are mindful of 'the rule that juries are presumed to follow their instructions.'" (citation and alteration omitted)); *Garza v. Phillips 66 Co.*, 2016 WL 1171004, at *6 (M.D. La. Mar. 4, 2016), *adopted*, 2016 WL 1215413 (M.D. La. Mar. 23, 2016) (explaining that in case with joinder of thirteen plaintiffs "any potential confusion to the jury can surely be remedied at trial through a limiting instruction by the court" (citation omitted)); *C.W. v. Zirus*, 2012 WL 12919097, at *3 (W.D. Tex. Aug. 7, 2012) (explaining that "any risk of confusion or prejudice [in consolidated trial] can be adequately addressed by particularized jury instructions").  Indeed, Class Plaintiffs themselves advance multiple

---

[1] The jury should not hear from either Opt-Out Plaintiffs' damages expert Dr. Zachary Nye or Class Plaintiffs' damages expert Dr. Steven Feinstein at all for the reasons set forth in Defendants' motion to exclude their testimony.  *See* Defs.' Mot. to Exclude Feinstein & Nye (ECF No. 511).

theories with different elements, which will presumably be sorted out through instructions and the verdict form.

Class Plaintiffs' reliance on *WorldCom* and *Vivendi* as warranting a different result is misplaced.  Mot. at 15-16 (citing *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005); *In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 1075068 (S.D.N.Y. Aug. 18, 2009)).  *WorldCom* is not even a Rule 42 case.  It did not involve bifurcation, separate trials, or opt-out plaintiffs; instead, it involved a ruling on a motion in limine under Federal Rule of Evidence 402.  2005 WL 408137, at *1-2.  And contrary to Class Plaintiffs' assertions, the court in *WorldCom* did not rule that individualized determinations of reliance and damages should be reserved for after trial because of risks of juror confusion.  *Id.*  Instead, *all of the parties agreed* that individualized issues of reliance and materiality would be resolved after a plenary trial.  *Id.*

Class Plaintiffs' reliance on *Vivendi* fares no better.  *Vivendi* initially involved more than *eighty-five* individual opt-out plaintiffs whose claims were consolidated with a class action.  *See generally In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-cv-05571 (S.D.N.Y. filed July 18, 2002).  The idea that Class Plaintiffs would call *this* case—which essentially involves two Opt-Out Plaintiffs, two additional expert witnesses, five additional fact witnesses, and the same or substantially overlapping claims that arise from largely the same

underlying facts—"manifestly more complex" than *Vivendi* is deeply unserious hyperbole. Mot. at 16.[2]

### C. Multiple Trials Will Result In Wasted Resources, Repetition Of Evidence, And Significant Delay, And Therefore Undermines Judicial Economy And Efficiency

Class Plaintiffs' argument that separate trials will be more efficient (*see* Mot. at 18) also fails, for at least two reasons. First, Class Plaintiffs' argument depends on the invalid assumption that they will achieve a complete victory at trial, which they claim would streamline the issues for determination in the second trial. Second, even putting Class Plaintiffs' invalid assumption aside, their argument ignores that Opt-Out Plaintiffs challenge many different statements, meaning that regardless of the result on Class Plaintiffs' claims, any subsequent trial would involve calling the vast majority of witnesses all over again to testify about the same or very similar evidence. In other words, even under Class Plaintiffs' best-case scenario, *no* efficiencies will be gained by separating these trials. To the contrary, separating these trials will only result in wasted resources, repetition of evidence, and significant delay.

First, Class Plaintiffs' efficiency arguments are premised on the assumption that they will run the table and achieve a complete victory on *all* of their claims and that collateral estoppel will flow from the victory. But if Defendants defeat *any* of Class Plaintiffs' claims—to say nothing of a complete defense victory—those claims would have

---

[2] The more apt comparator is *American Realty Capital Properties*, where the class plaintiffs (represented, as here, by Robbins Geller) consented to a joint trial with the opt-out plaintiffs. *See* Dkt. No. 883, *In re Am. Realty Cap. Properties, Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y. June 18, 2019).

to be relitigated from scratch in the Opt-Out Action as collateral estoppel would not apply at all. *Cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-30 (1979).

Other courts in this district have easily concluded that separate trials are inappropriate in situations like this because (notwithstanding Class Plaintiffs' declaration of victory) the outcome of the first trial is inherently uncertain. For example, in *Houston McLane Co. v. Connecticut General Life Insurance Co.*, Judge Ellison rejected a motion for separate trials when separating the trials would "save time and resources only if, in fact, [the movant] prevails on the [] claim." 2006 WL 3050812, at *2. "If it does not," by contrast, "then a great deal of time will be wasted . . . when, as here, many of the same facts and witnesses are relevant to both [issues the movant seeks to try separately]." *Id.* The same is true of Class Plaintiffs' motion here. *See also Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*, 2010 WL 2787810, at *4 (S.D. Tex. July 14, 2010) (denying motion for separate trial on similar grounds); *Peace Lake Towers, Inc. v. Indian Harbor Ins. Co.*, 2007 WL 925845, at *3 (E.D. La. Mar. 23, 2007) (similar); *Domco Prods. Tex. Inc. v. Cont'l Ins. Co.*, 2013 WL 2386632, at *1 (S.D. Tex. May 29, 2013) ("Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." (citation and alterations omitted)).

Second, even if Class Plaintiffs prevail, the assumption that collateral estoppel will abbreviate or narrow a subsequent trial ignores that Opt-Out Plaintiffs challenge many *unique* statements, meaning that Opt-Out Plaintiffs would still need to prove all of the elements of their claims for each statement challenged only in the Opt-Out Action but not

11

in the Class Action.  That would entail virtually *all* of the same witnesses testifying twice—including potentially all of the Defendants.  And because Class Plaintiffs and Opt-Out Plaintiffs "challenge as materially false or misleading statements based upon the same alleged conduct," the evidence presented at both trials would be redundant and duplicative. Consolidation Motion at 5.  Thus, even under Class Plaintiffs' best-case scenario, there are no efficiencies to be gained from separate trials.

Indeed, Class Plaintiffs' efficiency arguments are belied by the fact that their poster child for efficiency from bifurcated trials is *Vivendi*.  That case took more than seven years to reach a class action verdict after a four-month trial, and a further three years after that to resolve the individual actions including a fierce battle over the scope of collateral estoppel, and was presided over by four different judges.  *See generally In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-cv-05571 (S.D.N.Y. filed July 18, 2002).  And subsequent appeals in both the class and individual actions were not resolved until *fourteen* years after the cases were filed.  *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016); *GAMCO Invs., Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214 (2d Cir. 2016).  If that is an efficient timeline from separating trials, it is hard to imagine what an inefficient one would look like.

### D. Multiple Trials Would Risk Significant Prejudice For Defendants

"[P]otential prejudice" is one of the "two primary factors to be considered in determining whether to order separate trials."  *Houston McLane Co.*, 2006 WL 3050812, at *2.  But Class Plaintiffs ignore completely the risk of prejudice *to Defendants* from separate trials, which would not simply impose cost and burden, but could also result in inconsistent verdicts on essentially the same underlying facts and legal theories.  Here,

12

there is a real and significant risk of prejudice to Defendants from the possibility that Defendants will prevail on all or some of Class Plaintiffs' claims, only to have to relitigate those claims from the ground up in a subsequent Opt-Out Action. *Cf. Parklane Hosiery*, 439 U.S. at 329-30.

Consider, for example, a scenario in which Defendants defeat Class Plaintiffs' Section 10(b) claims. Opt-Out Plaintiffs challenge many of those same statements. *See* Opt-Out MSJ at 7 nn.4 & 5; Appendix C nn.1 & 2. Separating the Class Action and the Opt-Out Action creates the risk that two different juries could reach diametrically opposed judgments on the *same exact statements* and the *same exact underlying facts*. As the Fifth Circuit has recognized, separate trials should be denied in circumstances like these because "if two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results." *McDaniel*, 987 F.2d at 305. But Class Plaintiffs do not acknowledge this danger at all. The risk of this intolerable result alone justifies denial of Class Plaintiffs' motion.

And by definition, forcing Defendants to endure two trials would cause strategic prejudice. For one thing, if collateral estoppel does apply in any respect, that benefit for Opt-Out Plaintiffs would impose corresponding prejudice for Defendants. And even absent collateral estoppel, Opt-Out Plaintiffs at a minimum would gain a preview of Defendants' case during the first trial, bestowing on them an unfair tactical advantage at Defendants' expense.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Class Plaintiffs' motion for separate trials.

Dated: March 6, 2024

Respectfully submitted,

/s/ *J. Christian Word*
J.  Christian Word
Attorney-in-Charge for Defendants
D.C. Bar No. 461346
S.D. Tex.  Bar No. 3398485
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington DC 20004
Tel: (202) 637-2200
Fax: (202) 673-2201
Christian.Word@lw.com

Of Counsel:
Heather A. Waller
IL Bar No. 6302537
S.D. Tex.  Bar No. 2886108
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Heather.Waller@lw.com

Laura E. Bladow (*pro hac vice*)
D.C. Bar No. 1740343
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 673-2201
Laura.Bladow@lw.com

*Counsel for Defendants Alta Mesa*
*Resources, Inc., f/k/a Silver Run*
*Acquisition Corporation II; Riverstone*
*Holdings LLC; Harlan H. Chappelle;*
*Stephen S. Coats; Michael E. Ellis;*
*William D. Gutermuth; James T.*
*Hackett; Pierre F. Lapeyre, Jr.; David*
*M. Leuschen; Donald R. Sinclair;*

*Ronald J. Smith; Jeffrey H. Tepper;*
*Thomas J. Walker; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel.: (213) 615-1700
Fax: (213) 615-1750
JSchreiber@winston.com

*Co-Counsel for Harlan H. Chappelle,*
*Michael E. Ellis*

16

## **CERTIFICATE OF SERVICE**

I certify that on March 6, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ *J. Christian Word*
J. Christian Word