# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | CASE NO. 4:19-CV-00957 (CONSOLIDATED) |
| | JUDGE GEORGE C. HANKS, JR. |
| | THIS DOCUMENT RELATES TO: |
| | CASE NO. 4:22-CV-01189 |
| | CASE NO. 4:22-CV-02590 |

## THE OPT-OUT ACTION PLAINTIFFS' OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR SEPARATE TRIALS OF THE CLASS ACTION AND OPT-OUT ACTIONS PURSUANT TO FED. R. CIV. P. 42(b)

## <u>TABLE OF CONTENTS</u>

Page

NATURE AND STAGE OF THE PROCEEDING ...................................................... 1

COUNTER-STATEMENT OF ISSUES TO BE RULED UPON ..................................... 2

SUMMARY OF THE ARGUMENT .......................................................................... 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................................... 6

      A.    The Class Action ................................................................... 6

      B.    The Opt-Out Actions ............................................................ 6

      C.    The Court Consolidates the Class Action and the Opt-Out Actions ................................................................................... 7

      D.    The Court Denies Defendants' Motion to Dismiss the Opt-Out Actions ......................................................................... 7

      E.    Fact and Expert Discovery .................................................... 7

      F.    Pre-Trial Proceedings and this Motion ................................. 8

LEGAL STANDARD ............................................................................................ 9

ARGUMENT ...................................................................................................... 9

    I.    A Consolidated Trial Will Be More Efficient and Class Plaintiffs' Efficiency Arguments About Separate Trials Are Illusory ............................. 9

    II.    Class Plaintiffs Demonstrate No Prejudice from a Consolidated Trial, Nor Explain Why Jury Instructions and Similar Precautions Cannot Minimize Any Hypothetical Prejudice .......................................................... 14

      A.    Class Plaintiffs' Authorities on Supposed Prejudice Are Distinguishable ................................................................... 15

      B.    Class Plaintiffs Exaggerate Potential Confusion from Opt-Out Action Plaintiffs' Damages Theories ................................. 17

      C.    Class Plaintiffs Do Not Show—As They Must—That Precautions Such As Jury Instructions Cannot Minimize or Eliminate Any Hypothetical Prejudice or Confusion ..................... 20

III.    Neither Rule 23 Nor the PSLRA Prevent a Consolidated Trial......................24

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alvarado v. Shipley Donut Flour & Supply Co.*,
 2007 WL 4577397 (S.D. Tex. Dec. 21, 2007) ............................................................ 22

*Backe v. City of Galveston, Texas*,
 2014 WL 1091365 (S.D. Tex. Mar. 18, 2014) ........................................................... 22

*Berger v. Compaq Computer Corp.*,
 279 F.3d 313 (5th Cir. 2002) ....................................................................................... 24

*Boguslavsky v. Kaplan*,
 159 F.3d 715 (2d Cir. 1998) ........................................................................................ 10

*Britt v. Mississippi Farm Bureau Casualty Insurance Co.*,
 2022 WL 619655 (N.D. Miss. Mar. 1, 2022) ............................................................... 9

*Cedillo v. General Insurance Co. of America.*,
 2015 WL 12827783 (E.D. Tex. Jan. 26, 2015) ........................................................... 21

*Daniels v. AETC II Privatized Housing, LLC*,
 2020 WL 6791520 (W.D. Tex. Nov. 9, 2020) ............................................................ 23

*Divine Restoration Apostolic Church v. Nationwide Mutual Insurance Co.*,
 2010 WL 1064727 (S.D. Tex. Mar. 19, 2010) ...................................................... passim

*Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Co.*,
 51 S.W.3d 573 (Tex. 2001) .......................................................................................... 11

*First-Class Monitoring, LLC v. United Parcel Service of America, Inc.*,
 389 F. Supp. 3d 456 (E.D. Tex. 2019) ........................................................................ 23

*Guedry v. Marino*,
 164 F.R.D. 181 (E.D. La. 1995) ................................................................................... 22

*Guerrero v. Satterwhite*,
 2014 WL 1052417 (S.D. Tex. Mar. 18, 2014) ........................................................... 23

*Hanley v. First Investors Corp.*,
 151 F.R.D. 76 (E.D. Tex. 1993) .............................................................................. 21, 22

*Hardesty Builders, Inc. v. Mid-Continent Casualty Co.*,
 2010 WL 2787810 (S.D. Tex. July 14, 2010) ......................................................... 4, 13

*Hardy v. Johns-Manville Sales Corp.*,
  681 F.2d 334 (5th Cir. 1982) ................................................................. 11, 12

*Houston McLane Co. v. Connecticut General Life Insurance Co.*,
  2006 WL 3050812 (S.D. Tex. Oct. 24, 2006) ................................. 5, 13, 14, 23

*In re Alta Mesa Resources, Inc. Securities Litigation*,
  2023 WL 3873307 (S.D. Tex. June 7, 2023) ......................................... 3, 7, 9

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,
  2006 WL 1006611 (S.D. Tex. Apr. 12, 2006) ............................................. 25

*In re First Energy Corp. Securities Litigation*,
  2022 WL 17091263 (S.D. Ohio Nov. 21, 2022) ......................................... 25

*In re Lucent Technologies Inc. Securities Litigation*,
  2002 WL 32818345 (D.N.J. May 9, 2002) ................................................. 16

*In re Petrobras Securities Litigation*,
  193 F. Supp. 3d 313 (S.D.N.Y. 2016) ...................................................... 24

*In re Vivendi Universal, S.A. Securities Litigation*,
  183 F. Supp. 3d 458 (S.D.N.Y. 2016) ...................................................... 12

*In re Vivendi Universal, S.A. Securities Litigation*,
  910 F. Supp. 2d 500 (S.D.N.Y. 2012) ................................................. 10, 15

*In re Vivendi Universal, S.A., Securities Litigation*,
  842 F. Supp. 2d 522 (S.D.N.Y. 2012) ...................................................... 15

*In re Vivendi, S.A. Securities Litigation*,
  838 F.3d 223 (2d Cir. 2016) .................................................................. 12

*In re WorldCom, Inc. Securities Litigation*,
  2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) .............................................. 16

*Johnson v. BAE Sys. Land & Armaments, L.P.*,
  2014 WL 1714487 (N.D. Tex. Apr. 30, 2014) ........................................... 21

*Kimner v. Capital Title of Texas, LLC*,
  2023 WL 4033330 (S.D. Tex. June 15, 2023) ........................................... 10

*Kreger v. General Steel Corp.*,
  2011 WL 1594839 (E.D. La. Apr. 25, 2011) ............................................. 21

*Lawrence E. Jaffe Pension Plan v. Household International, Inc.*,
  2005 WL 3801463 (N.D. Ill. Apr. 18, 2005) ..................................................... 16

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
  861 F. Supp. 2d 262 (S.D.N.Y. 2012) ............................................................. 11

*Maguire v. State Farm Mutual Automobile Insurance Co.*,
  2020 WL 13441595 (S.D. Tex. Mar. 3, 2020) ................................................... 9

*McWhorter v. Ryder Tank Line, Inc.*,
  387 F.2d 635 (5th Cir. 1968) ......................................................................... 22

*North Sound Capital LLC v. Merck & Co.*,
  938 F.3d 482 (3d Cir. 2019) .......................................................................... 12

*PEMEX Exploración y Producción v. BASF Corp.*,
  2011 WL 13134611 (S.D. Tex. Oct. 4, 2011) ................................................... 22

*Progressive Paloverde Insurance Co. v. Estate of Jenkins*,
  2020 WL 13886404 (E.D. La. Nov. 20, 2020) ................................................. 23

*Singleton v. Cannizzaro*,
  2020 WL 4038979 (E.D. La. July 17, 2020) .................................................... 23

*Taylor v. Sturgell*,
  553 U.S. 880 (2008).................................................................................... 12

*Test Masters Educational Services, Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005) ........................................................................ 10

*Walsh v. Ford Motor Co.*,
  130 F.R.D. 260 (D.C. Cir. 1990) .................................................................... 20

**Statutes, Rules, and Other Authorities**

Private Securities Litigation Reform Act ................................................... 2, 5, 24

Federal Rule of Civil Procedure 23 .......................................................... 2, 5, 24

23B Am. Jur. Pl. & Pr. Forms Trial.............................................................. 20

Pattern Jury Instructions (Civil Cases), Fifth Circuit ....................................... 21

## NATURE AND STAGE OF THE PROCEEDING

The three consolidated securities cases pending before this Court are scheduled to go to trial together in June 2024. These cases arise from the same fraud and involve identical Defendants.[1] The securities fraud class action (the "Class Action") and the actions brought by the Alyeska and Orbis Plaintiffs[2] (together, the "Opt-Out Action Plaintiffs" to the "Opt-Out Actions") were consolidated in November 30, 2022, pursuant to the parties' joint motion for consolidation. (ECF No. 259; the "Consolidation Order.") The cases proceeded jointly through fact and expert discovery. Defendants filed omnibus motions for summary judgment—making the same arguments against both the Class Action and the Opt-Out Actions—and filed a joint *Daubert* motion seeking to exclude the Class Plaintiffs' and the Opt-Out Action Plaintiffs' damages experts on the same grounds.[3] A docket call has been scheduled for April 12, 2024, in contemplation of a June 2024 joint trial. Having previously sought consolidation of the actions, proceeding in lockstep with the Opt-Out Action Plaintiffs though discovery and pretrial dispositive motions, and never

---

[1] Defendants are: Alta Mesa Resources, Inc. ("Alta Mesa"), James T. Hackett, Thomas J. Walker, William Gutermuth, Jeffrey H. Tepper, Diana J. Walters, Stephen Coats, Harlan H. Chappelle, Michael E. Ellis, Ronald Smith, David M. Leuschen, Pierre F. Lapeyre, Jr., William W. McMullen, Don Dimitrievich, Donald Sinclair, Riverstone Holdings LLC, Bayou City Energy Management, LLC, HPS Investment Partners, LLC, and ARM Energy Holdings LLC.

[2] The Alyeska Plaintiffs are: Alyeska Master Fund, L.P.; Alyeska Master Fund 2, L.P.; and Alyeska Master Fund 3, L.P. The Alyeska Plaintiffs are investment funds managed by Alyeska Investment Group, L.P. The Orbis Plaintiffs are: Orbis Global Equity LE Fund (Australia Registered); Orbis Global Equity Fund (Australia Registered); Orbis Global Balanced Fund (Australia Registered); Orbis SICAV; Orbis Institutional Global Equity L.P.; Orbis Global Equity Fund Limited; Orbis Institutional Funds Limited; Allan Gray Australia Balanced Fund; Orbis OEIC; and Orbis Institutional U.S. Equity L.P. The Orbis Plaintiffs are investment funds managed by Orbis Investment Management (U.S.), L.P. or Orbis Investment Management Limited.

[3] Although Defendants filed other summary judgment motions and *Daubert* motions that were specific to each action, the potentially case dispositive motions filed by Defendants were omnibus motions making the same arguments against all Plaintiffs.

1

before raising the prospect of separate trials, the Class Plaintiffs now move under Federal Rule of Civil Procedure 42(b) for separate trials of the Class Action and the Opt-Out Actions.  (ECF No. 659; "Class Pls. Br.").  Class Plaintiffs' arguments lack merit, and their motion should be denied.

## COUNTER-STATEMENT OF ISSUES TO BE RULED UPON

The issue to be ruled upon is whether the Class Action and the Opt-Out Actions, which are currently consolidated for trial, should be tried separately, despite that (a) the Class Action Plaintiffs' claims of potential prejudice and jury confusion from a joint trial are speculative and exaggerated; (b) the Class Action Plaintiffs do not make the required showing as to why precautions such as motions in limine, jury instructions, and special verdict forms would not eliminate any hypothetical confusion or prejudice—as in the mine-run of cases; (c) separate trials would waste judicial and party resources, including by requiring a second jury to hear duplicative testimony from certain witnesses and potentially render inconsistent verdicts on identical issues; (d) the efficiency benefits that the Class Plaintiffs posit are illusory; and (e) Rule 23 and the Private Securities Litigation Reform Act ("PSLRA") in no way preclude a consolidated trial.

## SUMMARY OF THE ARGUMENT

As Class Plaintiffs' authorities recognize, separate trials are unusual and "the burden is on the party seeking separate trials to prove that separation is **necessary**."  *Divine Restoration Apostolic Church v. Nationwide Mut. Ins. Co.*, 2010 WL 1064727, at *2 (S.D. Tex. Mar. 19, 2010) (emphasis added) (Class Pls. Br. at 2).  As this Court recently commented, its goal in this action is to get the parties "to trial one time, if [the Court] can"

2

and "try to get everything done one time, as efficiently" as possible.  (Ex. A (Tr. of Feb. 21, 2024 Pre-Motion Hearing) 16:8-11.)

In denying Defendants' motions to dismiss the Opt-Out Actions, this Court recognized that the Class Action and the Opt-Out Actions were consolidated because the parties agreed that the actions "involve the same defendants, common questions of law and fact," that the Opt-Out Action Plaintiffs "are nominally members of the Class certified in the Class Action," and that "the factual allegations supporting their claims are substantially similar to those in the Class Action."  *In re Alta Mesa Res., Inc. Sec. Litig.*, 2023 WL 3873307, at *6 (S.D. Tex. June 7, 2023).  In addition, "the three related suits assert claims against the same Defendants, challenge as materially false or misleading statements based upon the same alleged conduct, and seek damages based on the same declines in the price of Alta Mesa's securities."  *Id.*  Despite all that, Class Plaintiffs now ask this Court to order separate trials for the Class Action and the Opt-Out Actions, based on illusory claims of purported efficiency, speculative and exaggerated claims of prejudice and jury confusion, and inapposite case law.  The Class Plaintiffs' motion should be denied.

***First***, given the overlap between the Class Action and the Opt-Out Actions, separate trials would be inefficient, forcing the Court to empanel a second jury for the Opt-Out Actions trial and receive testimony from certain of the same witnesses as in the Class Action trial, as well as raise the prospect of inconsistent jury verdicts on identical issues, such as falsity, materiality, and scienter.  As this Court recently recognized, the parties "will be spending a lot of money getting ready for . . . trial" and should only have to do so "once, instead of multiple times."  (Ex. A (Tr. of Feb. 21, 2024 Pre-Motion Hearing) at

16:3, 6-7.)  Thus, the efficiencies to be gained from a consolidated trial—as currently contemplated—are substantial.  Ignoring these glaring benefits, Class Plaintiffs falsely assure the Court that separate trials would promote judicial economy and efficiency based on the hypothetical application of collateral estoppel in the subsequent trial of the Opt-Out Actions.  That assumption is incorrect.  If Defendants obtain a defense verdict as to any portion of the Class Action claims—*e.g.*, if any individual defendant prevails or if any of the numerous misstatements alleged are found by the jury not to be false, material, or made with scienter—those findings cannot be asserted against the Opt-Out Action Plaintiffs through collateral estoppel because the Opt-Out Action Plaintiffs will not have had a full and fair opportunity to litigate the issues.  Moreover, even if Class Plaintiffs were to obtain a total trial victory, collateral estoppel may not avoid the Opt-Out Action Plaintiffs re-examining Defendants in the subsequent trial, because Opt-Out Plaintiffs' Texas common law and statutory claims will involve proof that Defendants intended the Opt-Out Plaintiffs to rely on the misstatements.

Accordingly, the *Vivendi* trial that Class Plaintiffs hold up as a model for this case is a mirage—not only because the reasoning for separate trials in that case does not exist here, but because *Vivendi* court was fortuitously able to apply collateral estoppel against the defendants in that case *only because the jury found completely for the class plaintiffs*.  Class Plaintiffs here cannot guarantee that result.  Tellingly, courts in this District have rejected Class Plaintiffs' collateral estoppel gambit in analogous circumstances.  *See, e.g.*, *Divine Restoration*, 2010 WL 1064727, at *2; *Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*, 2010 WL 2787810, at *3-4 (S.D. Tex. July 14, 2010); *Hous. McLane Co. v.*

*Conn. Gen. Life Ins. Co.*, 2006 WL 3050812, at *2 (S.D. Tex. Oct. 24, 2006).  Thus, the Court must assume at least two jury trials will be necessary if it grants Class Plaintiffs' motion.

**Second**, Class Plaintiffs' arguments as to supposed prejudice from a consolidated trial are speculative or unfounded, and the cases on which they rely are readily distinguishable from the facts here.  In particular, Class Plaintiffs again lean heavily on *Vivendi*, in which there were ***dozens of individual plaintiffs*** and defendants contemplated calling ***85 individual plaintiff witnesses*** to testify about reliance.  *Vivendi* is a far cry from this case, which involves effectively *two* individual plaintiffs, Alyeska and Orbis.  Class Plaintiffs' confusion argument also misconstrues the Opt-Out Action Plaintiffs' damages theories, which are nowhere near as complicated as Class Plaintiffs make them out to be.  More fundamentally, despite bearing the burden on this motion to demonstrate that separate trials are "necessary," Class Plaintiffs nowhere explain why the usual precautions, such as motions in limine, jury instructions, and special verdict forms, cannot minimize or eliminate any hypothetical confusion or prejudice from a consolidated trial.  This failure is fatal to Class Plaintiffs' motion.

**Finally**, the Court should reject out of hand Class Plaintiffs' flimsy argument that Federal Rule of Civil Procedure 23 or the PSLRA somehow preclude a consolidated trial here.  Tellingly, Class Plaintiffs do not cite any portion of Rule 23 or the PSLRA that so instructs, or even suggests, and ignore decisions approving of joint proceedings of securities class actions and opt-out cases.  The one decision that Class Plaintiffs do cite is

entirely irrelevant, and did not even address consolidated trials of class and individual securities claims.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Class Action and the Opt-Out Actions arise from a plethora of misstatements made by Defendants about Alta Mesa, a multibillion-dollar energy exploration-and-production venture that shockingly fell apart almost as soon as it went public.

**A.      The Class Action**

The Class Action was originally filed on March 14, 2019.  (ECF No. 1.)  The Court thereafter denied Defendants' motions to dismiss the Class Action.  (ECF No. 160.)  On December 6, 2021, Class Plaintiffs filed the operative class complaint, which asserts claims under Sections 10(b), 14(a), and 20(a) of the Exchange Act.  (ECF No. 218.)   On January 24, 2022, the Court granted Class Plaintiffs' unopposed motion for class certification.  (ECF No. 241.)

**B.      The Opt-Out Actions**

The Alyeska Plaintiffs and the Orbis Plaintiffs were two of the largest investors in Alta Mesa and suffered tremendous economic harm as a result of Defendants' misrepresentations and omissions.  Accordingly, the Alyeska Plaintiffs and the Orbis Plaintiffs exercised their constitutional rights to file their own Opt-Out Actions against Defendants.  The Opt-Out Action Plaintiffs each assert claims against Defendants under Sections 10(b), 14(a), 18, and 20(a) of the Exchange Act, as well as under Texas statutory and common law.

### C.    The Court Consolidates the Class Action and the Opt-Out Actions

On November 30, 2022, the Court granted the parties' joint motion for consolidation of the Class Action and the Opt-Out Actions.  (Consolidation Order.)  As the Court subsequently recognized:

> The parties themselves, in a joint motion to consolidate signed by counsel for every party in all three lawsuits, have stated that "[a]ll parties have consented to consolidation and agree that consolidation is appropriate because ***the Class Action and the Opt Out Actions involve the same defendants, common questions of law and fact*** and will require largely the same discovery."  The joint motion to consolidate further states that "[t]he ***plaintiffs in the Opt Out Actions are nominally members of the Class certified in the Class Action and the factual allegations supporting their claims are substantially similar to those in the Class Action.  In addition, the three related suits assert claims against the same Defendants, challenge as materially false or misleading statements based upon the same alleged conduct, and seek damages based on the same declines in the price of Alta Mesa's securities.***" No party objected to these statements.

*In re Alta Mesa*, 2023 WL 3873307, at *6 (emphasis added; citations omitted).

### D.    The Court Denies Defendants' Motion to Dismiss the Opt-Out Actions

On June 7, 2023, the Court denied in full Defendants' motions to dismiss the Opt-Out Actions.  *In re Alta Mesa*, 2023 WL 3873307, at *7.

### E.    Fact and Expert Discovery

The Class Action Plaintiffs and the Opt-Out Action Plaintiffs jointly participated in both fact and expert depositions of Defendants.  The Class Action Plaintiffs and the Opt-Out Action Plaintiffs retained their own experts.  For their part, the Opt-Out Action Plaintiffs retained an oil-and-gas expert and a loss causation/damages expert, Zachary Nye,

Ph.D.  Dr. Nye submitted a report detailing the Opt-Out Action Plaintiffs' loss causation and damages theories.  (*See* ECF No. 659-4.)

### F.    Pre-Trial Proceedings and this Motion

Fact and expert discovery has concluded.  Summary judgment and *Daubert* motions have been fully briefed.  Among other motions, various Defendants filed seven motions for summary judgment making the same arguments directed to both the Class Action and the Opt-Out Actions.  (*See* ECF Nos. 422, 423, 427, 518, 520, 523, 526.)  In addition, Defendants filed a joint *Daubert* motion against Class Plaintiffs' damages expert and Dr. Nye, the Opt-Out Plaintiffs' damages expert, making identical arguments against both experts.  (*See* ECF No. 511.)

On February 1, 2024, the Court held a Status Conference to discuss pre-trial preparations, given that summary judgment and *Daubert* motions were fully briefed, and a docket call was scheduled for April 12, 2024.  During that hearing, Class Counsel discussed their trial preparation, including asking the Court about various trial logistics issues, but did not mention anything about seeking separate trials of the Class Action and the Opt-Out Actions.  (*See* Ex. B (Tr. of Feb. 1, 2024 Status Conference) at 14:12-24, 23:12-25, 33:7-15.)  On February 4, 2024, Class Plaintiffs sent Opt-Out Plaintiffs and Defendants a proposed Stipulation Concerning Pretrial Deadlines that contemplated a joint trial of the Class Action and the Opt-Out Actions.  (*See* Ex. C.)  On February 6, 2024, Class Plaintiffs changed their position and raised ***for the first time*** that they intended to seek separate trials of the Class Action and the Opt-Out Actions.  Thereafter, on February 14, 2024, the Class

Plaintiffs filed a motion under Federal Rule of Civil Procedure 42(a) for separate trials of the Class Action and the Opt-Out Actions.  (*See* ECF No. 659.)

The Court currently contemplates a consolidated trial of the Class Action and the Opt-Out Actions in June 2024, following the April 12, 2024 docket call.

## LEGAL STANDARD

As Class Plaintiffs' authorities recognize, separate trials are unusual and "the burden is on the party seeking separate trials to prove that separation is ***necessary***."  *Divine Restoration*, 2010 WL 1064727, at *2 (emphasis added) (Class Pls. Br. at 2); *see also Maguire v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 13441595, at *2 (S.D. Tex. Mar. 3, 2020) ("The burden is on the party seeking separate trials to show they are necessary . . . ."); *Britt v. Miss. Farm Bureau Cas. Ins. Co.*, 2022 WL 619655, at *1 (N.D. Miss. Mar. 1, 2022) ("Under Rule 42, the party seeking separate trials carries the burden of proving that separation is necessary.").

## ARGUMENT

### I.   A Consolidated Trial Will Be More Efficient and Class Plaintiffs' Efficiency Arguments About Separate Trials Are Illusory

Separate trials of the Class Action and Opt-Out Actions would be inefficient, as it would require empaneling a second jury, receiving testimony from nearly all of the same witnesses who testified in the first trial, and raise the specter of inconsistent outcomes on identical issues, such as falsity, materiality, and scienter.  Indeed, as this Court recognized, certain of these considerations justified consolidating the Class Action and the Opt-Out Actions in the first place.  *See In re Alta Mesa*, 2023 WL 3873307, at *6.

9

In the face of these facts auguring heavily in favor of a joint trial, Class Action Plaintiffs argue that separate trials of the Class Action and Opt-Out Actions would be efficient because "the Individual-Action Plaintiffs would be entitled to collateral estoppel on certain issues based on the jury verdict in the Class Action." (Class Pls. Br. at 18-19.) But this argument rests upon a false assumption—that the result of the separate Class Action trial that Class Plaintiffs seek would be binding on the Opt-Out Action Plaintiffs. Issue preclusion cannot bind the Opt-Out Action Plaintiffs if Class Plaintiffs fail to prevail as to any element of any of their claims against any Defendant because Class Plaintiffs are proposing that the Opt-Out Action Plaintiffs not be permitted to appear and cross-examine witnesses at the Class Action trial.

As *In re Vivendi Universal, S.A. Securities Litigation*—an action on which Class Plaintiffs rely heavily (Class Pls. Br. at 3, 4, 16, 18, 19)—recognized, collateral estoppel can only be asserted where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [against whom it is asserted] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." 910 F. Supp. 2d 500, 503 (S.D.N.Y. 2012) (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005) ("Collateral estoppel prevents parties from re-litigating the same issues conclusively determined *between them* in a previous action.") (emphasis added); *Kimner v. Cap. Title of Tex., LLC*, 2023 WL 4033330, at *4 (S.D. Tex. June 15, 2023). As the Fifth Circuit has held, "collateral estoppel can only be applied against parties who have

had a prior full and fair opportunity to litigate their claims." *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982) (cleaned up).

Class Plaintiffs point to *Vivendi*, where they say that the court permitted individual securities plaintiffs to benefit from "offensive collateral estoppel" following a class action verdict. (Class Pls. Br. at 19.) But the individual plaintiffs in *Vivendi* were only able to benefit from collateral estoppel because the class action trial in that case resulted in an across-the-board favorable verdict for the class, and thus the court was able to bind defendants on the issues of falsity, materiality, and scienter. *See Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 270 (S.D.N.Y. 2012) ("The second, third, and fourth prongs of the collateral estoppel test are not seriously disputed here—the falsity, materiality, and scienter associated with Vivendi's public statements were actually litigated in the class trial, Vivendi had a fair opportunity and very strong incentive to litigate the issue, and the finding was necessary to support the jury verdict."). Indeed, Class Plaintiffs recognize as much. (See Class Pls. Br. at 19 (recognizing that *Vivendi* granted individual plaintiffs' collateral estoppel motion "based on the jury verdict in the class action trial").)

Even if Class Plaintiffs were to prevail at trial on all issues, collateral estoppel may not avoid the Opt-Out Action Plaintiffs re-examining Defendants in the subsequent trial, because Opt-Out Plaintiffs' Texas common law and statutory claims will involve proof that Defendants intended the Opt-Out Plaintiffs to rely on the misstatements. *See, e.g.*, *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001). More fundamentally, there is no guarantee that Class Plaintiffs here will prevail as the class did in *Vivendi*. If Defendants prevail on some or all issues in the Class Action trial, the Opt-

Out Action Plaintiffs would not be bound by that verdict in the subsequent trial of the Opt-Out Action Plaintiffs' claims, because the Opt-Out Action Plaintiffs would not have had "a prior full and fair opportunity to litigate their claims." *Hardy*, 681 F.2d at 338. As the Supreme Court has recognized, "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit," and "[t]he application of . . . issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008). And to the extent that Class Plaintiffs suggest that the Opt-Out Action Plaintiffs would be bound by any adverse findings in the Class Trial—in which the Opt-Out Action Plaintiffs would not participate—such a result would violate the Opt-Out Action Plaintiffs' due process rights. *See, e.g., N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 492 (3d Cir. 2019) ("to the extent that a policy burdens [a class member's] opt-out right or, worse yet, saps it of meaning, it would raise serious constitutional concerns"). Thus, the supposed efficiency benefits posited by the Class Plaintiffs are illusory.[4]

      Class Plaintiffs' own authority agrees. In *Divine Restoration*, 2010 WL 1064727, at *2 (Class Pls. Br. at 2), a case involving contractual and extra-contractual insurance claims, the defendant, Nationwide, argued "that separate trials will promote judicial efficiency in this case because the extra-contractual claims depend on the outcome of the

---

[4] Indeed, it is surprising that Class Plaintiffs would point to *Vivendi* as an example of efficiency. The consolidated class action complaint in that case was filed in 2003; the class action trial did not conclude until 2010; individual and post-liability class member trials on reliance stretched on until 2016; and the jury verdict in the class action was not affirmed by the Second Circuit until 2016. *See, e.g., In re Vivendi, S.A. Sec. Litig.,* 838 F.3d 223, 237 (2d Cir. 2016); *In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458 (S.D.N.Y. 2016). All told, *Vivendi* was litigated for about *thirteen years*.

contract claim."  The court rejected this argument, holding that "[s]eparate trials will save time and resources only if Nationwide prevails on the contractual claim.  If it does not, then time will be wasted in empanelling a new jury and undergoing a second trial."  *Divine Restoration*, 2010 WL 1064727, at *2.  This was especially true where "many of the same facts and witnesses are relevant to both the contractual and extra-contractual issues."  *Id.*  The court summed up the efficiency calculus thusly:

> Nationwide's judicial economy argument demonstrates instead that the potential disadvantages cancel each other out.  If Nationwide prevails on the contractual claim, litigation on the extra-contractual claims will be moot and this Court's time and resources will be saved.  If, on the other hand, Divine Restoration is successful on its contractual claim, the Court's resources will be wasted by undergoing a second trial on the extra-contractual claims.

*Id.*  Other decisions from this District are in accord with *Divine Restoration*.  *See, e.g.*, *Hardesty Builders*, 2010 WL 2787810, at *3-4 ("Separate trials will save time and resources only if, in fact, [defendant] prevails on the contractual claim.  If it does not, then a great deal of time will be wasted . . . empanelling a new jury, and conducting a second trial.  This is particularly so when, as here, many of the same facts and witnesses are relevant to both the contractual and extra-contractual issues."); *Hous. McLane*, 2006 WL 3050812, at *2 (articulating identical reasoning).

These decisions are on all fours:  separate trials here will result in efficiency only if Class Plaintiffs prevail on all issues in the Class Action trial, and even then the efficiencies gained will be limited.  This is especially true where, as in *Divine Restoration* and *Hardesty*, "many of the same facts and witnesses are relevant to both the" Class Plaintiffs'

13

claims and the Opt-Out Action Plaintiffs' claims.  Unless Class Plaintiffs prevail across the board in proving falsity, materiality, scienter, and loss causation as to each misrepresentation and each Defendant, this Court, Defendants, a new jury, and potentially dozens of witnesses will be facing a "do over" trial lasting weeks, and perhaps yielding a different result on the same underlying facts.  These are the problems that consolidation under Rule 42(a) seeks to avoid.  Class Plaintiffs' "judicial economy argument is therefore a wash."  *Hous. McLane*, 2006 WL 3050812, at \*3.

## II. Class Plaintiffs Demonstrate No Prejudice from a Consolidated Trial, Nor Explain Why Jury Instructions and Similar Precautions Cannot Minimize Any Hypothetical Prejudice

Class Plaintiffs will suffer no prejudice through a single trial of the claims of the Class Action and the Opt-Out Action Plaintiffs.  Reaching to come up with some form of prejudice that would justify the extraordinary procedure of trying this securities fraud trial two different times to two different juries, Class Plaintiffs assert that they will somehow be prejudiced by cross-examination of the Opt-Out Action Plaintiffs about reliance and the Opt-Out Action Plaintiffs' damages theories.  (Class Pls. Br. at 17.)  But the Class Plaintiffs' prejudice arguments rely on inapposite decisions, their confusion argument misconstrues the Opt-Out Action Plaintiffs' damages theories, and they ignore the use of motions in limine and jury instructions—as is common practice—to avoid any potential prejudice to the Class Plaintiffs from issues specific to the Opt-Out Action Plaintiffs, despite having the burden to show why those measures would be inadequate.

### A. Class Plaintiffs' Authorities on Supposed Prejudice Are Distinguishable

Class Plaintiffs cite *Vivendi*, where the court ordered separate trials of a securities fraud class action and the securities fraud claims of individual plaintiffs to avoid jury confusion about reliance.  (Class Pls. Br. at 16 (citing 2009 WL 10795068, at *1).)  But *Vivendi* bears no resemblance to this action.  In that case, which involved ***dozens of individual plaintiffs excluded from the class***, *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F. Supp. 2d 522, 525 (S.D.N.Y. 2012), defendants proposed calling ***85 individual plaintiff witnesses*** to testify as to reliance in a single trial, (Ex. D (July 20, 2009 *Vivendi* Tr.) at 179:17-18).  Defendants proposal raised "manageability considerations" about a single trial, leading the court to conclude:

> It is hard for me to believe that you would have a jury that would still focus and remember all of the issues that they have to decide ***if they had sat here for an extra month, say, to listen to 85 individual plaintiffs testify about reliance***.

(*Id.* at 179:21-22, 180:16-20 (emphasis added).)

In sharp contrast, here, there are effectively only *two* individual plaintiffs (Alyeska and Orbis), who are typical to the Class and would fall in the Class definition, but who chose to bring their own individual claims.  Opt-Out Action Plaintiffs anticipate calling one witness from Alyeska and one witness from Orbis to testify as to those plaintiffs' reliance.  Moreover, in *Vivendi*, certain of the individual plaintiffs affirmatively sought to have their claims deconsolidated from the class action trial and tried together as a group. *See In re Vivendi Universal, S.A. Sec. Litig.*, 910 F. Supp. 2d 500, 505 (S.D.N.Y. 2012). Here, by contrast, it is the Opt-Out Action Plaintiffs (as well as Defendants) who wish to proceed with a single trial.

Nor does Class Plaintiffs' other authority, *In re WorldCom, Inc. Securities Litigation*, 2005 WL 408137, at *4 (S.D.N.Y. Feb. 22, 2005) (Class Pls. Br. at 15-16), support their argument. *WorldCom* was a class action and did not even involve individual plaintiff claims. Rather, in that case, the court granted a motion in limine to preclude defendants from examining class representatives (or presenting deposition testimony of those representatives) regarding reliance, choosing instead to have reliance issues addressed after liability issues, thereby effectively bifurcating the trial. *WorldCom*, 2005 WL 408137, at *5. Thus, *WorldCom* did not endorse separate liability trials—as Class Plaintiffs propose here—due to any concerns about reliance issues.[5] To the extent that the Class Plaintiffs wish to sequence or otherwise bifurcate the upcoming consolidated trial of the Class Action and the Opt-Out Actions, they are free to raise that issue with the parties during the Pre-Trial Order negotiations, or through a motion in limine.

Finally, Class Plaintiffs' position that the Opt-Out Action Plaintiffs' claims will somehow prejudice the Class Plaintiffs' claims is inconsistent with Class Counsel's past conduct and other securities actions. Indeed, one of the firms representing the Class Action Plaintiffs and Individual Plaintiffs' Counsel were involved in ARCP, another securities fraud matter where a class action and individual action were consolidated for trial. (*See* Ex. E.) Those actions were consolidated for trial with no objection from class counsel—

---

[5] Likewise, *Lawrence E. Jaffe Pension Plan v. Household International, Inc.*, 2005 WL 3801463, at *4 (N.D. Ill. Apr. 18, 2005) (Class Pls. Br. at 17), was a class action where individualized reliance issues were bifurcated to be addressed after determining classwide liability. *In re Lucent Technologies Inc. Securities Litigation*, 2002 WL 32818345, at *2 (D.N.J. May 9, 2002), *aff'd*, 2002 WL 32815233 (D.N.J. July 16, 2002) (Class Pls. Br. at 17), is even further afield, as that decision concerned whether defendants could obtain discovery from named (but not lead) plaintiffs, and not any issues of consolidated versus separate trials.

one of the firms that represents the Class Plaintiffs here.  (*See id.*)  This practice is not unusual.  One of the firms representing the Class Plaintiffs here represented individual action plaintiffs in a large securities fraud matter where the class and no fewer than 27 individual actions were consolidated for trial.  (*See* Ex. F); *see also In re Petrobras Sec. Litig.*, 193 F. Supp. 3d 313 (S.D.N.Y. 2016).  Moreover, the purported prejudice that Class Plaintiffs believe they will suffer from the Opt-Out Action Plaintiffs at trial is completely illusory.  To the contrary, the Class Plaintiffs are likely to benefit from the presence of the Opt-Out Action Plaintiffs at trial.  The Opt-Out Action Plaintiffs were two of the largest investors in Alta Mesa who will testify that they were lied to directly by Defendants, including in face-to-face meetings.  Their testimony will demonstrate to the jury that there were real victims of Defendants' fraud.

### B.    Class Plaintiffs Exaggerate Potential Confusion from Opt-Out Action Plaintiffs' Damages Theories

Class Plaintiffs also speculate that Opt-Out Action Plaintiffs' damages theories will somehow confuse the jury and justify the extraordinary step of conducting two separate trials in this action.  (*See* Class Pls. Br. at 11-14, 16, 17.)  But Class Plaintiffs grossly distort those damages theories in order to make them more complex than they actually are.  In reality, although the Opt-Out Action Plaintiffs assert several damages theories, those damages theories are either all based on a standard Section 10(b) damages calculation, or would simply require the jury to make minor adjustments based on their factual findings.

*First*, Class Plaintiffs appear to argue that the Opt-Out Action Plaintiffs' Section 14(a) damages somehow will require evaluation of "other investment alternatives"

available to the Opt-Out Action Plaintiffs.  (Class Pls. Br. at 11.)  This is wrong.  The Opt-Out Action Plaintiffs' Section 14(a) "Lost Opportunity" damages theory is straightforward: the "lost opportunity" was the absolute right to redeem their Silver Run II shares at a set price of $10 per share rather than become shareholders of Alta Mesa.  (ECF No. 659-4 (Nye Report) ¶ 180.)  The Opt-Out Action Plaintiffs will testify that if they had known the truth that Defendants concealed, they would have exercised their redemption right and cashed out at $10 per share.  If the jury were to adopt this damages measure, they would simply award damages of $10 less any proceeds ultimately received by Alyeska or Orbis for their Alta Mesa shares.  (*Id.* ("In that event, net damages per share would be the $10.00 less sale proceeds received for the share.").)  Alyeska and Orbis will not present—nor will the jury be asked to consider—any unique evidence of supposed "alternative investments." Indeed, Class Plaintiffs appear to recognize as much.  (*See* Class Pls. Br. at 11 (recognizing that Opt-Out Action Plaintiffs allege that they "lost the right to redeem their" Silver Run II shares for "approximately $10.00 per share").)

*Second*, Class Plaintiffs argue that the Opt-Out Action Plaintiffs' Texas common law "Acquisition Claims" damages theory "requires significant deviation from the standard method for calculating per-share damages under Section 10(b)."  (Class Pls. Br. at 12.)  Not so.  Although Opt-Out Action Plaintiffs' Texas common law claims are not subject to federal restrictions on loss causation, Opt-Out Action Plaintiffs' damages expert "treat[ed] only those per-share losses, for which loss causation under the federal securities laws can be demonstrated, to fit the view of proximate causation under the Common Law acquisition

claims." (ECF No. 659-4 (Nye Report) ¶ 183.)[6]  Accordingly, contrary to Class Plaintiffs'

argument, there is no daylight between the damages that the jury will be asked to calculate

for the Opt-Out Action Plaintiffs' Section 10(b) claims and the "Acquisition Claims"

damages the jury will be asked to calculate for the Opt-Out Action Plaintiffs' Texas

common law claims.  The same is true of the Opt-Out Action Plaintiffs' Texas statutory

claims.  (*Id.* ¶ 188.)

*Third*, Class Plaintiffs state that the Opt-Out Action Plaintiffs are advancing three

theories of holder damages that are inapplicable to the Class Action.  (Class Pls. Br. at 12-

13.)  But those three theories are based on, or essentially equivalent to, the Opt-Out Action

Plaintiffs' Section 10(b) and 14(a) damages theories, with mechanical adjustments based

on the Opt-Out Action Plaintiffs' trading patterns.  Damages under the "Redemption

Forfeiture" theory are simply "$10.00 less sale proceeds received for the share."  (ECF

No. 659-4 (Nye Report) ¶ 185.)  Similarly, damages under the "Direct Loss from Holding"

theory are simply Section 10(b) damages mechanically adjusted to account for the trading

patterns of Alyeska and Orbis.  (*Id.* ¶ 186.)  Finally, the "Pre-vs-Post Redemption" is

simply a mechanical combination of the two proceeding theories, depending on when

specific shares were held or acquired.  (*Id.* ¶ 187.)

When all is said and done, Opt-Out Action Plaintiffs' damages theories will by-and-

large simply require the jury to calculate damages consistent with all sides' theory of the

---

[6] Although the 90-day lookback provision of the PSLRA does not apply to the Opt-Out Action Plaintiffs' Texas common law claims, that provision has no relevance here, because Alta Mesa's share price went to zero and did not ever exceed the price that the Opt-Out Action Plaintiffs ever paid for their shares.  (*See* ECF No. 659-4 Ex. 15B (90-day lookback mean trading price of Alta Mesa shares was 15 cents).)

case—*i.e.*, deciding how much money investors lost due to Defendants' fraud as the price of Alta Mesa shares dropped when Defendants' fraud was revealed to the market.[7]  The specific damages theories that the jury will be asked to perform with respect to the Opt-Out Action Plaintiffs are either straightforward ("Lost Opportunity" and "Redemption Forfeiture") or will involve simple, mechanical adjustments to how Section 10(b) damages are calculated.[8]

### C.   Class Plaintiffs Do Not Show—As They Must—That Precautions Such As Jury Instructions Cannot Minimize or Eliminate Any Hypothetical Prejudice or Confusion

Class Plaintiffs never explain why the prejudice or confusion they (incorrectly) fear cannot be remedied—as in nearly all other cases—through motions in limine, jury instructions, or special verdict forms.  *See, e.g.*, 23B Am. Jur. Pl. & Pr. Forms Trial § 258.40 Instruction to jury—Limited purpose ("You will recall that during the course of this trial I instructed you that I admitted certain testimony *[and certain exhibits]* for a limited purpose and I instructed you that you may consider some testimony *[and documents]* as evidence against one party but not against another.  You may consider such

---

[7] Thus, the situation here is entirely distinguishable from *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 277 (D.C. Cir. 1990) (Class Pls. Br. at 17), on which Class Plaintiffs rely.  *Walsh* did not address consolidated or separate trials at all.  Rather, in that case, the court denied class certification because the putative class would have involved claims concerning "four engine systems consisting of twenty-three or more component configurations employed in at least seventeen different models of Ford automobiles over five model years," "evidence of liability and causation will involve highly technical and complex mechanical and statistical studies which a lay jury will need to digest and comprehend," and there were "layers of legal standards and choice of law dilemmas."  130 F.R.D. at 277.

[8] The "Assumption 1" and "Assumption 2" referred to in the damages charts in the Class Plaintiffs' brief (at 13, 14) concern whether the receipt of Alta Mesa shares for prior-held Silver Run II units in the de-SPAC merger constituted an acquisition of new shares.  (*See* ECF No. 659-4 (Nye Report) ¶ 191.)  This determination is an issue of law for the Court, and not a factual question for the jury.

evidence only for the specific limited purposes for which it was admitted."); Pattern Jury Instructions (Civil Cases), Fifth Circuit § 2.6 Limiting Instruction ("When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.").

Given that Class Plaintiffs must show that separate trials are "necessary," this failure is fatal to their motion.  *See, e.g.*, *Cedillo v. Gen. Ins. Co. of Am.*, 2015 WL 12827783, at *1 (E.D. Tex. Jan. 26, 2015) ("While the Court is sensitive to the potential for prejudice, the Court expects, at least, a showing that actual prejudice will occur at trial *and a showing that such prejudice could not be otherwise cured (e.g. by an instruction to the jury)*." (emphasis added)); *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2014 WL 1714487, at *36 (N.D. Tex. Apr. 30, 2014) (denying separate trials where, *inter alia*, party did not "show[] why proper jury instructions will be insufficient to cure any potential confusion"); *Kreger v. Gen. Steel Corp.*, 2011 WL 1594839, at *2 (E.D. La. Apr. 25, 2011) (denying separate trials where, *inter alia*, parties did not "explain how jury instructions could not cure any prejudice they may suffer from a joint trial").

For example, in *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 77 (E.D. Tex. 1993), nineteen separate plaintiffs brought securities fraud claims against an individual and corporate defendant based on mutual fund purchases.  The corporate defendant sought separate trials, arguing, among other things, that "the jury might be confused by the large number of claims and would be unable to distinguish the varying facts associated with each individual claim or might award damages without considering the individual damages each plaintiff bore."  *Id.* at 80.  The court denied the motion, holding that this concern could "be

21

addressed by instructions" and explaining that "[b]ased on the court's experience, it seems well within the jury's abilities to distinguish between the idiosyncrasies of each case." *Id.* The court explained that the jury would "be instructed to keep each plaintiff's claim separate, and to force each plaintiff to prove his or her claim and damages separately." *Id.*; *see also, e.g.*, *Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995) ("The Court rebuffs defendant's argument that the sheer number of claims presented coupled with the testimony of each plaintiff's witnesses will cause prejudice and confusion. . . . [P]rejudice based on these factors can be addressed by instructions.").

Indeed, courts routinely find that different claims—even those with different elements or standards, such as governing causation, or common law and statutory claims— may be tried together, with the proper precautions. *See, e.g.*, *McWhorter v. Ryder Tank Line, Inc.*, 387 F.2d 635, 635-36 (5th Cir. 1968) (rejecting argument of prejudice in joint trial where "separate standards of care and conduct" applied to each plaintiff because jury "charge [was] adequate and sufficient"); *Backe v. City of Galveston, Tex.*, 2014 WL 1091365, at *2 (S.D. Tex. Mar. 18, 2014) (even assuming some evidence was "irrelevant or unduly prejudicial," "the Court can and will carefully instruct the jury on the purposes for which the evidence is offered and on the appropriate limitations regarding its use"); *PEMEX Exploración y Producción v. BASF Corp.*, 2011 WL 13134611, at *4 (S.D. Tex. Oct. 4, 2011) ("the possibility of jury confusion at trial does not preclude consolidation, and any risk of confusion can be adequately addressed by particularized jury instructions and special verdict forms"); *Alvarado v. Shipley Donut Flour & Supply Co.*, 2007 WL 4577397, at *2 (S.D. Tex. Dec. 21, 2007) ("The Court frequently gives, and jurors are

capable of following, jury instructions laying out different evidentiary standards for different claims in the same trial.  The presence of statutory and common law claims in the same case does not warrant separate trials."); *Hous. McLane*, 2006 WL 3050812, at *3 ("Evidence relevant to one claim may not be relevant to another claim, but there is no inherent prejudice, and any potential confusion is generally remedied through jury instructions."); *Daniels v. AETC II Privatized Hous., LLC*, 2020 WL 6791520, at *2 (W.D. Tex. Nov. 9, 2020) ("proper presentation of evidence, paired with proper instructions, will eliminate any prejudice that may arise from any differences in the relevant claims"); *Progressive Paloverde Ins. Co. v. Est. of Jenkins*, 2020 WL 13886404, at *1 (E.D. La. Nov. 20, 2020) ("any prejudice that could be caused through jury confusion due to these different causation standards can be resolved through jury instructions and special verdict forms"); *Singleton v. Cannizzaro*, 2020 WL 4038979, at *2 n.11 (E.D. La. July 17, 2020) ("Courts in this district have routinely found that jury instructions sufficiently cure prejudice concerns.").

Class Plaintiffs have offered no explanation whatsoever why this usual procedure is inadequate here.  And having failed to do so in their opening brief, Class Plaintiffs have waived any such argument and should not be permitted to try and make such a showing— although they cannot—in reply.  *See, e.g.*, *Guerrero v. Satterwhite*, 2014 WL 1052417, at *5 n.3 (S.D. Tex. Mar. 18, 2014) ("By failing to provide any legal or factual basis in . . . opening brief, [litigant] has waived the issue."); *First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 469 (E.D. Tex. 2019) ("[N]ot having raised the issue in its opening brief, [party] has waived that argument.").

23

### III.   Neither Rule 23 Nor the PSLRA Prevent a Consolidated Trial

Class Plaintiffs argue that Federal Rule of Civil Procedure 23 and the PSLRA somehow "anticipate" that securities class actions will be tried without the involvement of individual plaintiffs.   (Class Pls. Br. at 20.)   Tellingly, Class Plaintiffs do not cite any portion of Rule 23 or the PSLRA supporting this proposition, nor any decision construing Rule 23 or the PSLRA to so hold.   Indeed, the 2003 Advisory Committee Notes to Rule 23(g)(1)(C) state that "[t]he court might also direct that potential class counsel indicate how parallel litigation might be coordinated *or consolidated* with the [class] action before the court," confirming that nothing in Rule 23 itself prevents a class action from proceeding alongside opt-out actions.   As the Fifth Circuit has recognized, the lead plaintiff provisions of the PSLRA were intended only to ensure that "the most sophisticated investor available"—one "capable of understanding and controlling the litigation"—shepherd the class action, *Berger v. Compaq Comput. Corp.*, 279 F.3d 313, 313 (5th Cir. 2002) (per curiam), and do not prevent a joint trial of a class action and opt-outs.   Thus, for example, in *Petrobras*, the court was prepared to conduct a single consolidated trial of a securities fraud class action and *twenty-seven* separate opt-out actions, despite recognizing that the "entire litigation . . . [had] evolved into one that is primarily a non-class action."   193 F. Supp. 3d at 317.   Similarly, in *In re First Energy Corp. Securities Litigation*, the court rejected class plaintiffs' argument that coordinating discovery between the class action and opt-out actions would violate the PSLRA's lead plaintiff provisions, concluding that "no fiduciary duty, statutory requirement, or Court order has the effect of prohibiting Class

Counsel from coordinating with other counsel to minimize inefficiency." 2022 WL 17091263, at *4 (S.D. Ohio Nov. 21, 2022) (cleaned up).

Class Plaintiffs' sole authority, *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 2006 WL 1006611, at *1 (S.D. Tex. Apr. 12, 2006) (Class Pls. Br. at 20), rejected an attempt by a class member to opt-out of class settlements with certain defendants, while remaining in the class settlement as to another defendant. *Enron* did not address the issue of consolidation or joint trials of class and individual securities claims. Moreover, *Enron*'s observation that "a class member that opts out of the litigation does so for all purposes," *id.*, is irrelevant here, where the Class Action and the Opt-Out Actions have been consolidated for trial. (*See* Consolidation Order.)

## CONCLUSION

For the reasons set forth above, the Court should deny Class Plaintiffs' motion for separate trials of the Class Action and the Opt-Out Actions.

Dated: March 6, 2024

Respectfully submitted,

By: */s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
Michael J. Hampson
Matthew A. Peller
Joseph R. Sparacio
**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 597-2800
lrolnick@rksllp.com
mhampson@rksllp.com
mpeller@rksllp.com
jsparacio@rksllp.com

*Attorneys for the Alyeska and Orbis Plaintiffs*

Jules P. Slim
TX Bar No. 00793026
Attorney and Counselor
PO Box 140307
Irving, TX 75014-0307
Tel.: (214) 350-5183
Fax: (214) 350-5184
jslim@slimlawfirm.com

*Counsel for the Alyeska and Orbis Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 6, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

<u>/s/ Lawrence M. Rolnick</u>
Lawrence M. Rolnick
