# EXHIBIT A

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE SOUTHERN DISTRICT OF TEXAS

 3                          HOUSTON DIVISION

 4   CAMELOT EVENT DRIVEN FUND      §    CASE NO. 4:19-CV-957
                                    §    HOUSTON, TX
 5   VERSUS                         §    WEDNESDAY,
                                    §    FEBRUARY 21, 2024
 6   ALTA MESA RESOURCES            §    1:31 P.M. TO 2:20 P.M.

 7                         PRE-MOTION HEARING

 8             BEFORE THE HONORABLE GEORG C. HANKS, JR.
                    UNITED STATES DISTRICT JUDGE
 9
                            APPEARANCES:
10

11       FOR THE PARTIES:            SEE NEXT PAGE

12       COURT REPORTER:             REBECCA BECKNAL

13       COURT CLERK:                KIMBERLY PICOTA

14

15

16

17

18

19

20

21                   TRANSCRIPTION SERVICE BY:

22                   Veritext Legal Solutions
                  330 Old Country Road, Suite 300
23                      Mineola, NY 11501
                 Tel: 800-727-6396 ▼ www.veritext.com
24
         Proceedings recorded by electronic sound recording; transcript
25                 produced by transcription service.
```

```
 1                              APPEARANCES:

 2   FOR THE PLAINTIFFS:         ENTWISTLE & CAPPUCCI LLP
                                 Andrew Entwistle
 3                               Trig Smith
                                 500 West 2nd Street, Suite 1900
 4                               Austin, Texas 78701
                                 512-710-5960
 5
                                 ROBBINS GELLER RUDMAN & DOWD LLP
 6                               Trig Smith
                                 655 West Broadway, Suite 1900
 7                               San Diego, California 92101
                                 619-231-1058
 8

 9                               ROLNICK KRAMER SADIGHI LLP
                                 Michael J. Hampson
10                               Matthew A. Peller
                                 JOSEPH R. SPARACIO
11                               1251 Avenue of the Americas,
                                 Floor 18
12                               New York, New  York
                                 212-597-2847
13
     ATTORNEYS FOR DEFENDANT     QUINN EMMANUEL URQUHART &
14   HPS INVESTMENT PARTNERS, LLC SULLIVAN
                                 Christopher D. Porter
15                               Courtney Whang
                                 Melanie Guzman
16                               711 Louisiana Stret, Suite 500
                                 Houston, Texas 77002
17                               713-221-7000

18

19

20

21

22

23

24

25
```

1    <u>HOUSTON, TEXAS; WEDNESDAY, FEBRUARY 21, 2024; 1:31 P.M.</u>

2         THE COURT:  Good afternoon, everyone.  The next case

3    on the Court's docket is Cause Number 19-CV-957, Camelot Event

4    Driven vs. Alta Mesa.  I know we've got a number of attorneys

5    on the line this afternoon.  Can the attorneys who will be

6    speaking just introduce their side?  And then that way we might

7    short-circuit.  If you're not going to be speaking, just you

8    can let somebody else introduce you.

9         MR. ENTWISTLE:  Good afternoon Your Honor, Andrew

10   Entwistle for the lead Plaintiffs and my colleague, Trig Smith,

11   who is also with us today, will be -- will likely be speaking,

12   as well, depending on the flow of the issues today.  I've got a

13   number of colleagues on the phone and there are a number of

14   others from both Mr. Smith's firm and also the Labaton firm,

15   but we won't take your time in introducing all of them, they

16   won't be speaking.

17        THE COURT:  Okay.  Thank you, Mr. Entwistle.  And

18   then, on behalf -- or next?

19        MR. PORTER:  Good afternoon, Judge.  Sorry, Mr.

20   Hampson, (indiscernible).

21        MR. HAMPSON:  Yes, thank you, Chris.  Good afternoon,

22   Judge.  My name is Mike Hampson of the law firm of Rolnick

23   Kramer Sadighi for the two sets of Alta Plaintiffs.  I have on

24   the Zoom call, my colleagues, Matthew Peller and Joseph

25   Sparacio, though I don't anticipate either of them will be

1    speaking today.  Thank you.

2              THE COURT:  Okay.  Great.  Welcome.

3              MR. HAMPSON:  Thanks.

4              MR. PORTER:  Judge Hanks, good afternoon.  Good

5    afternoon.  Chris Porter with Quinn Emanuel on behalf of HPS

6    and Mr. Dimitrievich.  We have a couple of things to discuss

7    and so, on behalf of all Defendants, we've submitted a

8    PowerPoint regarding the Continuance Letter, but obviously if

9    all the folks on the Defense side want to speak, that's

10   perfect. (indiscernible), we submitted also a PowerPoint to

11   (indiscernible) our request for a hearing.  And so, today,

12   regarding the Continuance, my colleague, Courtney Whang, is

13   going to be arguing that position for us.  We've been on this

14   case along when we started, Ms. Whang was an associate.  She's

15   now a partner, so --

16             THE COURT:  Congratulations.

17             MR. PORTER:  -- my partner, will be arguing that and

18   Melanie Guzman will be speaking on behalf of requesting the

19   hearing.  She's not a partner yet, but she's doing great work.

20             THE COURT:  Great.  Fantastic.  Well, welcome

21   everyone.  Well, let me just get right to it.  I did get the

22   materials regarding the Motion for Continuance, and I know that

23   a lot of time has been spent on putting together the

24   PowerPoint.  But respectfully, I don't need argument on this.

25   The Motion of Continuance is denied.  I am well into the

1    Motions for Summary Judgment at this point.  I will get them

2    ruled on and you will get an answer back from me so that you'll

3    know exactly what issues will be tried and how the case is

4    going to proceed.  The Motion for Continuance, at this time, is

5    premature.  And I appreciate, Ms. Whang, I know that you and

6    Ms. Guzman and Mr. Porter put a lot of time and effort into the

7    PowerPoint and maybe at a future date it might be necessary,

8    but at this point in time, I will have the Motions ruled on and

9    the case -- unless I hear later on in the next couple of months

10   that we run into some sort of problems, we will have this case

11   ready for trial at the time that the Court stated that we were

12   going to proceed with trial with the current docket control

13   Order.

14          With respect to -- let's see, I'm sorry.  With

15   respect to the request for hearing, I know that I like to give

16   young lawyers or lawyers that have been licensed more recently

17   an opportunity to argue, but in this case, you guys have

18   briefed this issue to death.  I mean, it is very clear what the

19   issues are, what the facts are, so far because the discovery is

20   pretty much developed at this point in time.  I can rule based

21   on the pleadings.  So, with respect to the Motion for

22   Continuance, respectfully denied.  Motion for Hearing, again,

23   respectfully denied.  We're moving forward.  I will get you

24   guys ready for trial at the time that I promised to.  That is

25   my goal.  If something comes up, then of course, I will want to

1   obtain a Motion for Continuance, but at this point in time,

2   things are moving pretty smoothly.  I think I can get it done

3   in time to get everyone ready for trial.

4           But what I want to do as far as the Status

5   Conference, we're going to take turns.  First, Ms. Entwistle,

6   for this Status Conference, you're going to start and then next

7   time, we'll have the Defendants start and we'll just rotate

8   back and forth each Status Conference.  So, Mr. Entwistle, if

9   you can tell me, sort of, where you are with discovery and

10  focus if there's anything that you believe that we need to

11  flesh out to keep the case moving forward to trial.  If there's

12  anything like any problems with documents or witness

13  availability or anything that comes up that you think that

14  affects our ability to go to trial, please let me know.  In

15  terms of a Motion, don't worry about that, I will get rulings

16  out timely.

17          MR. ENTWISTLE:  Thank you, Your Honor.  So, let me

18  just, sort of, run through a couple of quick housekeeping

19  things and then we can go from there.  So, first, you now have

20  all of the hyperlink briefs from the Plaintiff on --

21          THE COURT:  Yes.  I wanted to say thank you so much

22  for that.  That made my job a lot easier.

23          MR. ENTWISTLE:  Good.

24          THE COURT:  And it's actually sped up the process of

25  getting an answer back to you all.

```
 1              MR. ENTWISTLE:  Terrific.  So, we did that for the
 2    Summary Judgment for the (indiscernible) and also the Motion to
 3    Strike.  We didn't hyperlink the Motion for Separate Trial
 4    because (indiscernible) exactly right.  That's a very
 5    straightforward issue that you've dealt with on any number of
 6    occasions, so we didn't do that.  So, you've got all that in
 7    front of you.  We are -- you know, obviously, everyone is
 8    moving at pace, preparing logistically to get everything to you
 9    for the 5th, which is seven days before the docket call, in
10    accordance with your rules.  We had made a proposal immediately
11    following the last conference, on the 1st to the Defendants.
12    They responded on the 16th, we had a Meet and Confer on the
13    19th about it.  We sent them a further proposal, just for
14    logistics, to keep the flow going yesterday, fairly late in the
15    day, and I expect that we'll talk again either tomorrow or
16    Friday just following this conference, particularly now that
17    Your Honor's made it clear that we're moving forward with the
18    Docu-Call on the 5th.  So, that's very helpful.  Thank you for
19    that.  But I don't see any issues at this point.  If we do,
20    obviously we'll let you know and having these regularly
21    scheduled, obviously, is very helpful.
22              When we met and conferred with the Defendants, we did
23    advise them that we're going to get Class Notice out.  It's not
24    time to do that.  We're going to do simple postcard notice and
25    publication.  We're going to send them -- they've already sent
```

1   us information from the transfer agent.  We will send them a

2   draft of the Motion regarding the Notice either later --

3   probably some time tomorrow with the hope that we can get that

4   to Your Honor the beginning of the week.  I expect it to be

5   unopposed.  They never are opposed, but we always like to give

6   the Defendants the courtesy of seeing it before we send it to

7   you, and then, as soon as you approve it, we'll get that out.

8   So, we'll be set with that.  Kind of a ministerial task, but

9   now that we're at the point where we're coming to our trial,

10  it's important just to let folks know.  You have -- I mentioned

11  Motion for Separate Trials.  If you have that, again, not an

12  issue.  Your Honor will address that in due course.  It won't

13  affect the timing of any of this as a practical matter.  As you

14  can appreciate, we're all moving forward a pace.

15          And then, really the only, sort of, the last issue,

16  is one that we haven't really discussed directly with the

17  Defendants yet.  We did note it in our letter that we sent in

18  yesterday.  We've mentioned it to you before just in terms of

19  what we think the length of the trial might be.  It is worth

20  discussing, I think just very briefly, on this call and so Mr.

21  Smith will address that issue, unless you've got questions on

22  any of the other things I've mentioned.

23          THE COURT:  Oh, no questions at all.  Mr. Smith, if

24  you could chime in.  And let me be clear, for the parties.  The

25  reason why I want to get you to trial on the scheduled date is

1   that I've got an opening.  I've got a lot of time available

2   during that time to get you to trial.  If I move this around or

3   we continue it, to get that kind of block of time that the

4   parties are expecting to get this case to trial, I don't know -

5   - I mean, possibly I can do it.  Of course, we'll eventually

6   get to it.  But now I know, I've got this block, we can go to

7   trial, let's do it while everything is clear because I don't

8   know what my future schedule may be.

9            MR. ENTWISTLE:  And we appreciate that, Your Honor,

10  and we'll make sure that everyone's ready on our side.  But to

11  just, sort of, very briefly let you know what length of trial,

12  kind of, looks like from our point of view, and then, we don't

13  need to address it further now, but we just wanted to let you

14  know what we were thinking.

15           THE COURT:  Sure.  Mr. Smith?

16           MR. SMITH:  And thank you, Your Honor.  Good

17  afternoon.  I'll be brief.  The parties have not had direct

18  communication regarding potential trial length.  But I'd just

19  like to share some observations from Plaintiff's perspective.

20  So, if you could just give me a moment, I'll be done.

21           THE COURT:  Sure.

22           MR. SMITH:  Plaintiff's position is we anticipate

23  that we need 7 to 8 trial days to put on our case in chief.  We

24  think that the other side should be able to do the same within

25  7 to 8 days.  Given the number of defendants and the law firms

1   here, I'm presuming the opening would probably take better part

2   of the day and closing would take a better part of the day and

3   I just want to be clear that the opening and closing time

4   periods are exclusive of the case in chief presentations.  And

5   we do --

6          THE COURT:  Okay.  Well, let me point out, you're not

7   going to get like, hours for opening.  I mean, that's not

8   happening, just to let you know.  I mean, at most, you're going

9   to get an hour for opening --

10          MR. SMITH:  Okay.

11          THE COURT:  -- just to be clear.

12          MR. SMITH:  Okay.

13          THE COURT:  Each side -- we'll need to figure out how

14   we're going to divide it out, but probably no more -- well, not

15   probably, no more than an hour and not less than that.  Maybe a

16   little bit more, but that's going to be it.  You won't have

17   half a day to each side to do an opening.  I mean, I know

18   that's what you'd prefer, but I just went through a three-week

19   anti-trust lawsuit and the parties wanted that kind of time for

20   openings and it was just, quite frankly, kind of a waste of

21   time.  So, not to say that you all don't have a lot of great

22   things to say, but if you can't put it, in this case, in an

23   hour, there's some issues.  So, we can talk about it more.  But

24   don't plan on half a day for -- or the better part of a day for

25   opening.

```
1            MR. SMITH:  Understood, Your Honor.  The only thing
2   I'd like to add to that, and we appreciate the Court's
3   guidance.  We really appreciate it.  Probably, you know, half
4   day -- probably half day to a day for rebuttal, but again,
5   (indiscernible) right now, the parties are meeting and
6   conferring, and we'll probably get a little bit more
7   intelligence on that question.  This is all I wanted to add to
8   the conference, and I appreciate Your Honor's patience.
9            THE COURT:  Sure.  Not a problem.  And is that
10  everything from the Plaintiff's side, Mr. Entwistle?
11           MR. ENTWISTLE:  Yes, that is, Your Honor.  We just
12  wanted to give you a heads-up on what we were thinking.  I know
13  it's entirely consistent with what we've told you in prior
14  discussions.  But just as we get closer, guidance like you just
15  gave regarding the length of openings, any other guidance you
16  can give us as we move along in terms of time management, etc.,
17  obviously, our Motion for Separate Trials as an effort on our
18  part to not only avoid confusion and prejudice to the class,
19  but also to streamline it.  Because we actually were involved
20  in the (indiscernible) case, which we cited in those papers
21  when we sent them to you and it was much more efficient to deal
22  with the -- we represented the individual action, plaintiffs in
23  that case, and so, much more efficient to deal with a 2 or 3
24  day, what was a bench trial there, would be a jury trial here.
25  But with the benefit of the issue preclusion in that case
```

1    because, of course, the class prevailed on all of the issues.

2    So, again, I only mention that in terms that we're trying to

3    streamline.

4           So, as much guidance as you can give us in terms of

5    how you're thinking about managing the trial, those types of

6    things are amazingly helpful, as you appreciate, because I know

7    you were a trial lawyer before you were a trial judge.  So,

8    anything you can give us in that regard, very much appreciated.

9    But we don't have any other issues right now.  If we run into

10   any type of an issue with the Defendants on logistics, we'll

11   let you know.  But right now, I think everyone is oriented

12   towards getting things all to you in good order, working

13   towards the goals that you've set forth in your Court

14   procedures and otherwise.

15          THE COURT:  Thank you, Mr. Entwistle.  And the reason

16   -- let me just talk to you just briefly about the length of

17   time for opening.  I don't -- I let the parties try their case

18   the way they want to, but what I found, my experience,

19   especially in this last case, the longer I give in these

20   complex cases for opening statement, it turns into opening

21   argument, and that's problematic.  And by keeping the time and

22   by focusing the parties on a road map of the evidence and

23   telling a story rather than arguing, the jury really gets the

24   case -- gets to understand the case clearer.  They don't get

25   bogged down with a lot of unnecessary detail.  I know all of

1    you guys are great lawyers and I know you wouldn't do this, but

2    it's just been my experience in the past, including most

3    recently, that when we have extended long openings, the jury

4    just gets more confused.  It's not really helpful for the jury.

5    So, in a jury case, we're going to -- and I'll rethink the time

6    a little bit as we get closer.  But right now, at a minimum --

7    basically, it's going to be, I'm looking at an hour, maybe a

8    little bit more, an hour and 15, maybe an hour and a half, but

9    that's pretty much it.  And so, and again, that isn't to make

10   your lives more difficult because, as you said, I've been a

11   trial lawyer, I know what you need to be able to tell your

12   story.  But, at the same time, half day, day long opening

13   statements aren't very helpful to juries.  So, I just wanted to

14   explain to you my reasoning.

15         MR. ENTWISTLE:  Your Honor, we appreciate it.  We

16   appreciate that, Your Honor.  And whatever amount of time you

17   give us, we'll make it work without question.  So, we think

18   this is actually a pretty straightforward case to present to

19   the jury, even though, obviously, you're dealing with 55 briefs

20   or whatever it is at the moment.

21         THE COURT:  Right.

22         MR. ENTWISTLE:  So, it may not appear that way, but

23   we think that the jury will readily understand this and that

24   the (indiscernible) should go in fairly smoothly.  But I'm just

25   pointing out, it's very helpful.  Any guidance you give us

1    along the way with regard to that, trial management, how you're

2    going to take presentation from Defendants, etc., etc., will

3    all be very helpful as we continue to march rapidly toward the

4    Docu-Call and then trial.

5            THE COURT:  Sounds like a plan Mr. Entwistle, and one

6    thing that working out Motion for Summary Judgment has shown me

7    is that the Charge Conference is really difficult.  What we're

8    going to end up having to do, as I said, I'm going to really

9    start working -- like I typically do, I'll start working on the

10   charge during trial.  But I really need your proposed jury

11   charge in as good as shape as you can get it, so that during

12   the course of the trial -- and not just the charge but send me

13   the instructions to give to the jury, because I'm going to need

14   to start thinking about those issues ahead of time based on the

15   evidence.  Some of those issues I'm already thinking about in

16   terms of what are dispositive questions.  But in a jury charge,

17   they'd have to take up those issues again.  So, the one thing

18   you could do that'll help, and we'll talk about it later at

19   Status Conferences, is to get your jury charges in as good as

20   shape as you can, specifically the instructions that you'd like

21   the Court to consider as in good shape as you can so that I can

22   work with those during the presentation of the evidence.

23           MR. ENTWISTLE:  That's terrific.  We will, Your

24   Honor.

25           THE COURT:  Okay, and then, Ms. Whang, I saw you

1    raise your hand?

2          MS. WHANG:  Yeah, I see Mr. Hampson jumped in and I

3    wanted to (indiscernible) an opportunity to respond, but

4    (indiscernible).

5          MR. HAMPSON:  If you don't mind, Ms. Whang, I'd

6    appreciate it.  And Your Honor, just very, very quickly on the

7    Alta side.  Just on a separate trial point that Mr. Entwistle

8    raised, obviously they just filed their Motion.  It hasn't been

9    raised previously with the Court and our opposition wasn't due

10   until March 6th.  We obviously have a different view and I

11   believe Defendants do about whether it would promote

12   efficiency.  You could see it in our opposition papers, but

13   right now I just want, in terms of guidance, Your Honor, has

14   been solving these cases.  As far as we're concerned, there is

15   a Joint Trial and until Your Honor orders otherwise, we should

16   be preparing as if it's going to be a Joint Trial.  And so, I

17   just wanted to be sure that is the guidance that Your Honor is

18   issuing because that would -- we want to make sure we are

19   included in the process of preparing for trial.

20         THE COURT:  Yes.  Well, right now, I haven't gotten

21   an answer, I mean, a Response yet for the Motion.  So, I

22   haven't really formed an opinion one way or the other.  Right

23   now, it's a joint trial.  I've got to hear the different

24   response, consider it, and then I'll get an answer back to you

25   as quickly as I can.  I think you'll have an idea because one

```
 1   thing that the presentation about continuance brought home,
 2   which I was aware of, but it really rang forth the point that
 3   you guys will be spending a lot of money getting ready for this
 4   trial.  So, we want to -- I want to minimize that as much as I
 5   can and give you as much information so that you won't have to
 6   gear up, one, and spend all the money, once, instead of
 7   multiple times figuring out how to do this and getting
 8   witnesses and resources together.  My goal is to try to get you
 9   guys to trial one time, if I can, and as I said, I haven't seen
10   the Response, I haven't considered the Motion yet, and try to
11   get everything done one time, as efficiently as we can so that
12   you guys can get some closure and then move on.
13            MR. HAMPSON:  Thank you, Your Honor, and I'll pass
14   the torch to Ms. Whang.
15            THE COURT:  Okay.
16            MR. HAMPSON:  Ms. Whang?
17            MS. WHANG:  Thank you, Your Honor and thank you, Mr.
18   Hampson.  I think that the last point that Your Honor just made
19   about one trial is something that is really important.  I think
20   they glossed over it during prosecution's presentation saying,
21   "It doesn't affect anything.  It doesn't affect anything."
22   Motion to Sever really does affect a lot of things
23   (indiscernible) with respect to the timing 7 or 8 trial days
24   multiplied by 2 plus (indiscernible) plus rebuttal, that's a
25   nearly 4-week trial.  And the last time we were all here in
```

1   front of Your Honor on February 1st, the discussion was around

2   a 2-week trial in the beginning of June and Your Honor said

3   you'd have to clear your docket to give us that section.  And I

4   understand there may be a window now, but the four weeks that

5   were just outlined doesn't fit into that 2-week block and it

6   surely doesn't fit while there's a pending Motion to Sever.

7   So, the idea of the long list that we put in our slide that the

8   pre-trial (indiscernible) that have to get done in this

9   compressed period when the Motion to Sever wouldn't even be

10  briefed is one that doesn't feel tenable right now.  And that's

11  something that's different from the last time we were before

12  Your Honor, right.  Because the last time we were before Your

13  Honor, was we were talking about an April 12th docket call and

14  talking about a potential June trial.  Our Plaintiffs never

15  once raised their hand and said, "Hey, we have this forthcoming

16  Motion to Sever", but there was no discussion of that, and that

17  very much changed the landscape.  We can proceed to trial and

18  prep for trial as if it's going to be a joint trial.  But as

19  (indiscernible) advocates, we always have to think about what

20  might happen given any ruling from Your Honor.  So, we have to

21  plan for all these contingencies.  What if the Motion to Sever

22  is granted?  What if it's not?  And so, we're prepping for all

23  these issues of trial, kind of, with blindfolds on.

24          And I recognize Your Honor's ruling and I understand

25  it and we're no strangers, all of us on this call, to rushing

```
 1    to prepare for trial and putting the hard work in and that's
 2    the issue.  It's really one of how does it get done in that
 3    amount of time?  And how do you do it efficiently so that we're
 4    only putting, for example, the Motions in Limine, in front of
 5    Your Honor, that actually apply to the trial at hand?  Is it to
 6    a joint trial?  Is it Motions in Limine for a trial just for
 7    the class witness?  Is it just for the (indiscernible)
 8    Plaintiffs?  Is it just (indiscernible) issues?  Those are all
 9    iterations that we don't have clarity into yet and I recognize
10    the incredible burden that it puts on the Court to rush through
11    the Summary Judgment process.  It's a voluminous brief like
12    we've been talking about.  I recognize the Court is incredibly
13    generous with giving us guidance about when decisions are going
14    to be coming out.  I know that that's a difficult thing to do.
15    I know it's a difficult thing for busy Chambers like yours to
16    do.  And I understand the ruling, but I respectfully think a
17    lot has changed since the last time we were convened on
18    February 1st and in particular, the exacerbated burden on
19    preparing for trial when a Motion to Sever is pending.
20              THE COURT:  Okay.  I hear your argument, but Mr.
21    Hampson, your response is going to be filed March 6th, which is
22    basically, what, a week and a half away.  So, if I get the
23    Motion, I've got the Responses.  I can rule on the Motions,
24    what, two weeks, three weeks, max, with respect to additional
25    costs.  I mean, I know that you guys are probably -- this is a
```

1   very expensive case, but you'll get an answer from me pretty

2   shortly and if you don't, for some reason, if something

3   happens, please send me a letter and say, "Judge, we're about

4   to make schedules for witnesses that are going to come overseas

5   or some sort of experts.  It's going to cost a lot of money.

6   Do you have an idea of maybe when we'll be expecting a

7   response?"  So, what I'm saying is, two weeks, maybe three

8   weeks is going to add that much of a burden to the parties

9   given the fact that you've got to start getting ready for the

10  trial anyway, until I rule on the Motions for Summary Judgment,

11  which I'm on?  I hear you, but we're talking three weeks here,

12  before I get a chance to rule on the Motion to Sever.  But just

13  -- like I said, I have not made out a response yet, but my

14  preference, typically, absent unusual circumstances it to try

15  to get these cases tried once and for all.  I mean, but I'm not

16  pre-ruling on the Motion because I haven't seen the Response

17  yet.  I'm just telling you, sort of, my general practice is to

18  try to get all this done.  But in terms of the cost, I'll rule

19  as quickly as I can.  I'm trying to get rulings out to you as

20  quickly as I can.  You'll have to wait three weeks.

21          MR. ENTWISTLE:  We appreciate that, Your Honor.  And

22  as a practical matter, it's the same preparation no matter what

23  because --

24          THE COURT:  It is.

25          MR. ENTWISTLE:  The only difference will be that

1   there'll be some issues that wouldn't be tried in the class

2   case, they'd just be deferred because they're individualized

3   for the separate trial, if you go that way.  And if not,

4   they'll get tried together.  But either way, it doesn't matter

5   and even with regard to the Pre-Trial Order or Motions in

6   Limine, the parties will file whatever Motions they need to

7   file.  The jury charge becomes a little more complicated, but

8   there'll be separate charges that relate to the individual

9   actions, etc.  We'll deal with the logistics of all of that.  I

10  don't think we need to worry about those issues for now.  We'll

11  prepare, continue to prepare and exchange materials as if it's

12  being tried jointly and then we can deal with the separate

13  pieces as we move forward.  So, no worries there.  We

14  appreciate your thoughts and guidance on that.

15          (Crosstalk)

16          MR. WORD:  Thank you, Your Honor.  I appreciate, like

17  everyone else, the guidance you've given us.  I do have some

18  operational questions about how it will work.

19          THE COURT:  Sure.

20          MR. WORD:  We're all, sort of, aiming towards getting

21  you the Joint Pre-Trial Order by April 5th, I believe the date

22  before the docket call.  Our Order didn't have a date for that

23  to be filed.  We're assuming that seven days in advance is

24  pursuant to Rules, so you can let us know if we've misread you

25  on that, but that's what we're targeting.

```
 1              THE COURT:  That's (indiscernible).

 2              MR. WORD:  One question I have that needs to be

 3     mentioned in jury instructions in getting those in as good as

 4     shape as possible, and my question is, how much of this do you

 5     prefer we get done before the April 12th, recognizing that we

 6     have a couple more months afterwards before we actually get

 7     towards the trial?  Should we be racing to get stuff done on

 8     the trial the next couple of weeks or do we have some time

 9     after that docket call to formalize exhibit lists, deposition

10     designations, jury instructions, things like that?

11              THE COURT:  Good question, Mr. Word.  So, here's what

12     -- you don't need to do that for the docket call because the

13     trial won't be for 45 days after the docket call, so you're

14     looking at the first week of June.  So, you don't need to have

15     everything ready.  If you can have all that information ready

16     by the middle of May, that would be plenty enough time for me.

17     The reason I need the jury charge in good as shape as you can

18     get it is because I need to work on it during the trial and you

19     can't really finalize the jury charge probably until after you

20     -- or start working completely on the jury charge until after

21     you get my ruling with respect to the MSJs.  And by then,

22     you'll have that information so it's easier to get it done a

23     little bit later.  That's not a problem.  (indiscernible).

24              MR. WORD:  (indiscernible).

25              THE COURT:  I'm sorry.
```

Page 22

```
 1            MR. WORD:  I didn't mean to cut you off.
 2            THE COURT:  Oh, no, no.  I cut you off.  I apologize.
 3            MR. WORD:  That was my thinking, as well.  Because
 4    Mr. Entwistle has accurately represented several times that
 5    this could (indiscernible), we're all going to need to make
 6    changes to our exhibits, to our witnesses, things come up
 7    (indiscernible).  So, I agree.  We'll be working diligently
 8    with the Plaintiffs to prepare those forms and get as much to
 9    you as we can in time for the docket call but recognizing that
10    some things are just going to take a little more time,
11    especially on my end, depending on rulings.
12            My next question, Your Honor, is you mentioned that
13    we had two weeks.  I think that Ms. Whang had done the math for
14    us.  It was about a four-week trial what Plaintiffs were
15    proposing right now.  Does that fit with Your Honor's calendar
16    in June, essentially with the trial being all of June?  I need
17    to inform my witnesses when I think they might go and make sure
18    they're available during that whole time period.
19            THE COURT:  Yeah.  I've got to get that.  We're going
20    to have to go through June.  Does anyone else have -- except
21    for the latter part of June, I'm going to have to bump them,
22    unless it's a criminal case, which I haven't had to bump a case
23    or a criminal case in eight years.  So, usually criminal cases
24    plead at the last minute.  So, unless that happens, you
25    literally are one of my oldest cases and a 2019 case, so you've
```

1    got to take priority.  I'm going to have to have that

2    conversation with whoever -- whatever case that's set by the

3    end of June that we're not going to be able to get to them.

4    (indiscernible).

5            MR. ENTWISTLE:  Your Honor, just on logistics for

6    what we would be submitting then since it's Plaintiff's

7    obligation to pull all this together for you for the Joint Pre-

8    Trial Order, we would intend to follow your rules, get you

9    whatever we can, all of the attachments, the Order itself,

10   Trial Memos, etc.  We'll get you all of that material with,

11   sort of, the notion of depending on timing of Orders, etc.,

12   obviously there'll be some additions, changes, whatever, to the

13   charges.  There may be changes to the exhibit lists, etc.  But

14   our thought would be, we'll follow your schedule, we'll get you

15   everything that the parties have put together for all of those

16   attachments, exhibit lists, etc., etc., witness lists, and the

17   like, with the filing of the Joint Pre-Trial Order.  And then,

18   the parties will work after that to make adjustments, deal with

19   objections to exhibits and the like, along with normal

20   schedule, recognizing that we will be, as Mr. Word said,

21   necessarily working further on the charges, etc., as we move

22   forward.

23           MR. PORTER:  I think that it sounds like

24   (indiscernible).  One thing I did want to raise, given that

25   we're going to be working together very closely as we all get

```
 1   ready for trial and move forward, I just want to raise an issue
 2   of just basic decorum.  There was a conference on Monday, and
 3   I've heard from several sources, one of the things that I do,
 4   that we do here is (indiscernible) handle Meet and Confers is
 5   get opportunities to work with opposing counsels, so on and so
 6   forth.  So, I was -- Ms. Guzman was attending, as well as Ms.
 7   Whang, but Ms. Guzman was on the call, and she was talking or
 8   attempting to talk to raise a point and she was yelled down, as
 9   I heard it from several folks, by Mr. Entwistle and he's
10   speaking to her in a very rude manner.  And again, because
11   we're going to be working very closely together, that's
12   something that I do want to raise because at the end of the
13   day, Your Honor, change/no change doesn't matter.  I don't
14   appreciate anybody on my team being treated like that,
15   especially when it's something that we try to do to give
16   younger associates opportunities and so, something that I will
17   always make sure that my team knows that I'm going to speak to
18   them --
19          Ms. Guzman (indiscernible) speak for her because she
20   handled it on the call, as I understand it.  But what I'm
21   asking from the Court is just a reminder to the parties on both
22   sides that we need to be courteous as we go throughout this
23   process because again, we are going to be working very close
24   together over the next couple of months and I'm not saying
25   anything to try to raise anything other than if we could just
```

1  get a reminder from the Court so that we don't have to come to

2  you with anything like that in the future.

3          THE COURT:  Okay.  Well, you guys are excellent

4  lawyers and very professional.  There's really no need for that

5  and I'm not taking sides and I'm not saying anybody did

6  something or didn't do something.  But life is short.  Don't

7  make it more stressful through the practice of law.  I mean,

8  all it's going to do is lead to a shorter lifestyle and you'll

9  just be miserable.  A shorter lifespan, a miserable lifestyle

10  and nobody ends up being happy.  I mean, basically, I don't

11  want to do this, so, in the future, if it does happen again, or

12  if somebody's concerned about it, what I've done in the past,

13  I've only done this once is, I get everybody's permission to

14  have Meet and Confers recorded and all parties have to give

15  their permission to have all Meet and Confers by June and if

16  they are not in person by June, everybody agrees to have those

17  Meet and Confers recorded.  And therefore, there's a record of

18  the Meet and Confers, exactly what everyone said, how everyone

19  behaved and what everyone treated each other, how everyone

20  treated each other, and you just present that to me.  So, I'm

21  willing to do that once during the era of Zoom, but I don't

22  think I need to do it here because you guys are good lawyers.

23  Just treat each other the way you want to be treated, and you

24  should be able to get this case tried.  There's no excuse for

25  yelling or mistreating anyone.  I mean, that's just ridiculous.

1    And I'm not saying that anybody did it, so I'm not implying

2    that anyone did, it's just that when things get a little tense,

3    people can say things or take things in different ways.  It

4    happens.

5           But in the future, if there is a concern, what we're

6    going to do is, everyone is going to provide me with a written

7    consent to be recorded for Meet and Confers and then all the

8    Meet and Confers will be by Zoom since you guys can't do it in

9    person.  And we'll just have a recording and that way, if

10   there's ever an issue, you can just submit to me the Zoom

11   recording, I'll know exactly who said what and then we'll move

12   on.

13          MS. GUZMAN:  Thank you, Your Honor.  We appreciate --

14   oh, I'm sorry.

15          THE COURT:  Oh, no.  I'm all done.

16          MS. GUZMAN:  I was just going to add.  We appreciate

17   your guidance and hope that it doesn't reach that point.  Of

18   course, we don't like having to raise this issue in the first

19   place because as you said, it's important that we, amongst the

20   legal profession, treat each other with respect and maintain

21   decorum, even outside the courtroom.  But as Mr. Porter said

22   and just to reiterate that it's important that we all use a

23   tone and speak to each other respectfully during these

24   conversations, even when not in your presence because I have a

25   very short legal career, but I can still recognize when

1    screaming or yelling, especially when you're trying to have a

2    productive conference about reaching an agreement is just not

3    productive and not conducive to a healthy legal environment.

4            THE COURT:  I completely agree with your sentiments

5    and Ms. Guzman, of course, you've been on the other side, and

6    you've been sitting where I'm sitting basically, next to a

7    judge and you understand that in these discovery disputes --

8    and Ms. Guzman already knows this, but I'll just tell you guys

9    this.  I mean, what any judge is looking for, is the attorneys

10   to be the adult in the room.  That is, we're looking for the

11   attorney who gives a solution to the problem, not creating more

12   problems.  And if you can be that attorney, the attorney that

13   comes to the Court and says, "Judge, here's the issue and

14   here's how I can help you resolve the issue."  And here's what

15   I've seen as a law clerk, that is a lot -- that gets you a lot

16   farther with the Court and your client's position than being

17   nice to the Court on hearings or -- it's just -- being the

18   adult in the room gets you things that you can't get any other

19   way in legal procedure.  Let me just put it that way.  And

20   that's what the Court's looking for.  So, if you guys can be

21   the adult in the room, that is the folks that bring to me

22   solutions to the problems rather than just yelling at each or

23   pointing a finger at each other, that's so much more helpful.

24   And so, if you guys can do that, that would be helpful.

25            And remember, even if somebody makes a mistake -- my

1    dad always taught me, the first time it's a mistake, the second

2    time it's a choice.  So, if somebody makes a mistake, don't

3    jump their case, don't assume that what they've done is evil or

4    terrible.  Assume it's a mistake, move on until it happens

5    again.  The second time it happens, it's a choice, then we have

6    to deal with it.  But the first time, as members of the Bar and

7    professionals, we extend the benefits of the doubt and then if

8    it happens again, then we'll talk about it.  And then the

9    second one is, be the adult in the room, be the one that

10   presents the Court with solutions to the problems and things

11   work out a lot easier.  And then it gets you advantages before

12   the Court that you really can't get another way.  So, hopefully

13   that's helpful to you all.

14          MS. GUZMAN:  Thank you.

15          MR. ENTWISTLE:  It's very helpful, Your Honor.  And

16   obviously, we're completely solution oriented.  Obviously, in

17   the Joint Pre-Trial process, the burden, for what it's worth,

18   of coordinating and keeping the process moving, falls to the

19   Plaintiffs and sometimes the Defendants are a little reluctant.

20   I'm not suggesting that's the case here.  I've been doing this

21   a couple of years now.  And during that time, no-one has ever

22   suggested what Mr. Porter just did.  He, of course, wasn't even

23   on the call, but it was a call, right, not a Zoom, and there

24   certainly -- I mean, calls are what they are, right, people are

25   trying to get a word in edgewise, you can't see other folks on

1    the call.  Not always simple for someone to get that word in

2    edgewise and it may be that someone was frustrated, but as you

3    know, because we've been together a bit, I don't scream and

4    shout or raise my voice.  And if someone was frustrated, then

5    that was never the intent.  The intent was just to move the

6    process forward as we've been trying to do throughout.  So, I'm

7    sure we'll be back on a call or a Zoom or whatever we do as we

8    work productively forward.  We have been working productively

9    forward.  We, obviously -- we don't all agree with one another

10   all the time on the bid process.  It's a (indiscernible)

11   process.  So, we certainly all understand that.  But everyone

12   eventually gets their chance to make their points.  And I think

13   even what we sent back to the Defendants yesterday shows we

14   were listening.  So, there'll be more to work through.

15          We'll look forward to the next time we're before Your

16   Honor, whenever that is.  I don't know what your schedule or

17   calendar is, but having these conferences every -- it makes

18   sense to do the next one on the -- just following the

19   oppositions on the Motion for Separate Trials.  I don't know

20   what your schedule is.  I don't know that we'll even a Reply or

21   that we'll be entitled to one, but I don't know that we would

22   need a Reply.  I think the issues are pretty self-evident.  But

23   if we had a conference immediately after, if we thought there

24   was something more to be said, we could even do that.  We could

25   just talk to you about it.  But I think the issues are very

```
 1    straightforward and I think Your Honor will, as you have on

 2    most issues, understand fully from the briefing, where things

 3    need to land under the circumstances.  We appreciate your time

 4    today, Your Honor, as always.  And then, just let us know when

 5    you would like to schedule the next conference.

 6          MR. PORTER:  And Judge, if I could just follow up

 7    with that very briefly.  I'll just -- I'm not trying to make --

 8    cast any aspersions on anyone.  I certainly (indiscernible) --

 9    you've heard from Ms. Guzman, I've heard it from several people

10    what took place and I asked and so, what happened, happened.

11    And this isn't an issue that we're just trying to take shots at

12    the Plaintiff.  And in fact, I've heard from several people

13    that Mr. Trig Smith was perfectly reasonable and actually was

14    the calming factor on the call.  So, this is not done to take a

15    shot.  What happened is what happened is what several people

16    said.  So, this is not an issue of if someone felt or someone

17    was whatever.  That was not the case.  And I don't want to get

18    into a he said/she said.  I asked the Court respectfully for

19    the guidance on this.  I thanked the Court for the guidance on

20    this.  But I'm -- it's very important to me that particularly

21    my younger associates, that they continue to get these

22    opportunities to be able to go on to these types of

23    conferences, on these types of calls.  I'm sitting in Delaware

24    right now, getting ready for trial on Monday, so I'm not

25    available (indiscernible).  So, I need to be able to turn it
```

```
 1    over to people I trust, but I also need to make sure that

 2    they're going to get the opportunity to speak and that they

 3    won't be shouted down.  The reason Mr. Entwistle notes they

 4    sent a letter is because he had been recalled the following

 5    day, Ms. Whang just said, "Well, no, because of the way he

 6    behaved.  Just put everything in the letter."  So, that's why

 7    everything went into a letter.  But again, we have the Court's

 8    guidance on that.  That's all that I was asking for and we will

 9    be respectful.  I think that now, everyone else will be

10    respectful going forward.  And so, I think that we will be able

11    to work reasonably and work together to get to the point that

12    the Court needs us to get to for all the Pre-Trial

13    (indiscernible), so I appreciate the Court's guidance on that.

14            THE COURT:  Great.  I think we've spent enough on

15    this issue.  I'm going to let you guys go.  So, you all have a

16    great afternoon.  I'm going to set the hearing -- the next

17    Status Conference in two weeks, probably two weeks from --

18    well, we can't do it in two weeks because the folks that are on

19    the call right after you, they'll be in the middle of trial,

20    but we might be able to set it during lunchtime during that

21    trial.  Let me see what we're going to do in the next case and

22    then I will probably schedule you two weeks from today over

23    lunchtime.

24            MR. ENTWISTLE:  We'll look forward to it.  Thank you

25    again for all of your time today and your guidance.  We
```

1   appreciate it.

2          MR. HAMPSON:  So, Your Honor, not to belabor

3   anything or cause more trouble, but two weeks from today is the

4   date of the opposition.  So, if you were planning to set the

5   next one after the opposition to the (indiscernible) Motions

6   (indiscernible).

7          THE COURT:  Oh, that's right.  I'm still -- I've been

8   in trial non-stop.  I thought two weeks was March 13th, but

9   it's not.  I'm sorry.  Never mind.  I will schedule it probably

10  the end of the week, that Friday.  But I just need to double

11  check.  I think I'm going to schedule it the 8th.

12         MR. HAMPSON:  Thank you, Your Honor.

13         THE COURT:  Okay.

14         MR. HAMPSON:  You will hear from me sooner.

15         THE COURT:  Terrific.  Thank you.  Okay?

16         MR. HAMPSON:  Thank you.  Have a great one.

17         THE COURT:  Take care, everyone.  It's good to see

18  you.

19         MR. HAMPSON:  You, too.  Goodbye.

20         MS. GUZMAN:  You, too.

21         THE COURT:  Goodbye.

22      (Hearing adjourned at 2:18)

23                          *  *  *  *  *

24

25

```
1                           I N D E X

2

3                            RULINGS

4                                        Page        Line

5   Motion for Continuance Denied         4          25

6   Motion for Hearing Denied             5          22

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 34

```
 1                    C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4   transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8   Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  February 27, 2024
```