# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| CAMELOT EVENT DRIVEN FUND, | § | CASE NO. 4:19-cv-00957 |
| A SERIES OF FRANK FUNDS TRUST | § | HOUSTON, TX |
| VERSUS | § | THURSDAY, |
| ALTA MESA RESOURCES, INC. | § | FEBRUARY 1, 2024 |
| f/k/a SILVER RUN ACQUISITION | § | 11:32 A.M. TO 12:32 P.M. |
| CORPORATION II, et al. | § | |

STATUS CONFERENCE

BEFORE THE HONORABLE GEORGE C. HANKS, JR.
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PARTIES:              SEE NEXT PAGE

COURT REPORTER:              REBECCA BECKNAL

COURT CLERK:                 BYRON THOMAS

TRANSCRIPTION SERVICE BY:

Veritext Legal Solutions
330 Old Country Road, Suite 300
Mineola, NY 11501
Tel: 800-727-6396 ▼ www.veritext.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

```
 1                              APPEARANCES:
    FOR ARM ENERGY HOLDINGS LLC:  EVERSHEDS SUTHERLAND (US) LLP
 2                                Adam Pollet
                                  700 Sixth Street NW
 3                                Suite 700
                                  Washington, D.C. 20001
 4                                713.427.5000

 5  FOR ALLAN GRAY AUSTRALIA      ROLNICK KRAMER SADIGHI LLP
    BALANCED FUND, et al.:        Matthew A. Peller
 6                                Michael J. Hampson
                                  1251 Avenue of the Americas
 7                                New York, NY 10020
                                  212.597.2815
 8
    FOR ALTA MESA RESOURCES INC.: LATHAM & WATKINS LLP
 9                                Heather Ann Waller
                                  James Christian Word
10                                330 N. Wabash Avenue
                                  Suite 2800
11                                Chicago, IL 60611
                                  312.876.6554
12
    FOR BAYOU CITY ENERGY         KIRKLAND AND ELLIS LLP
13  MANAGEMENT LLC, et al.:       Kenneth Alan Young
                                  609 Main Street
14                                Suite 2500
                                  Houston, TX 77002
15                                713.835.3748

16  FOR PAUL J. BURBACH, JR.,     ENTWISTLE & CAPPUCCI
    et al:                        Andrew J. Entwistle
17                                500 West 2nd Street
                                  Suite 1900
18                                Austin, TX 78701
                                  512.710.5960
19
    FOR CAMELOT EVENT DRIVEN      LABATON KELLER SUCHAROW LLP
20  FUND, A SERIES OF FRANK       Carol C. Villegas
    FUNDS TRUST:                  140 Broadway
21                                New York, Ny 10005
                                  212.907.0824
22
    FOR DON DIMITRIEVICH, et al.: QUINN EMANUEL URQUHAR & SULLIVAN
23                                Christopher Darnell Porter
                                  711 Louisiana Street
24                                Suite 500
                                  Houston, TX 77002
25                                713.221.7000
```

```
1           HOUSTON, TEXAS; THURSDAY, FEBRUARY 1, 2024; 11:32 A.M.

2               THE COURT:  Call No. 4:19-cv-957 Camelot Event Driven

3      Fund, et al. v. Alta Mesa Resources Inc.  I know we have a

4      number of counsel on the line.  If we could just start with

5      plaintiff's council and then we'll go through the list of

6      everyone that will be speaking.  If there's folks that are on

7      your team that won't be speaking, whoever is speaking can just

8      introduce them to save time.

9               MR. ENTWISTLE:  Thank you, Your Honor, and good

10     morning.  Andrew Entwistle, Entwistle and Cappucci for the

11     class.  Several of my colleagues are with me today, but I'll,

12     I'll handle most of the conversation with you as we go through

13     the -- through your process this morning.  Also with me today

14     is Trig Smith and his colleagues from the Robbins Geller firm

15     and Carol Villegas and her colleagues from Labaton firm.

16     You'll see Mr. Smith on the Zoom there and he may speak to

17     certain issues, depending on what Your Honor may cover today.

18     Ms. Villegas, while she's been working on the case, has only

19     recently submitted a pro hac vice motion.  That's still pending

20     before the Court and so when Your Honor gets a chance, given

21     the multitude of paper in this and other cases, if someone

22     could -- can sign that, we'd appreciate it.  But in the

23     meantime, thank you, and thank you for your time.  Obviously,

24     you've had a busy morning already and so we're here, ready,

25     willing and able to address any issues that you have on your
```

1    mind this morning.

2              THE COURT:  Great.  Thanks, Mr. Entwistle.  And Ms.

3    Villegas, really quickly, your motion has been granted, you'll

4    get an order this morning or it should be coming through any

5    time now.  So, welcome to the Southern District of Texas.

6              MS. VILLEGAS:  Thank you, Your Honor.  I appreciate

7    that.

8              THE COURT:  Not a problem.  And for the other

9    plaintiffs?

10             MR. HAMPSON:  Good morning, Your Honor.  This is

11   Michael Hampson of Rolnick Kramer Sadighi for the Alyeska and

12   (indiscernible) plaintiffs.  With me on the phone is Matthew

13   Peller, too -- sorry, on the Zoom with Matthew Peller.  I

14   imagine to the extent you have questions of us, I'll be doing

15   the majority of the speaking, but Mr. Peller will chime in

16   depending on the issues.

17             THE COURT:  Thank you, Mr. Hampson.  Anyone else?

18   Okay, then let's start with the defendants.

19             MR. WORD:  Good morning, Your Honor.  It's Christian

20   Word of Latham & Watkins, and as you know, I represent Alta

21   Mesa, a number of the board -- members of the board of

22   directors, and Riverstone.  And, excuse men and the former

23   officers.

24             THE COURT:  Welcome.

25             MR. PORTER:  Good morning, Judge Hanks.  Chris Porter

1    with Quinn Emanuel, represent HPS and Mr. Donald, the Emanuel,

2    represent HPS and Mr. Donald, (indiscernible).

3            THE COURT:  Welcome.

4            MR. PORTER:  We have a number of Quinn Emanual

5    attorneys on the line, but in the interest of time, I won't go

6    through everyone.

7            THE COURT:  Well, welcome all of your associates and

8    partners that are on the line as well.

9            MR. YOUNG:  Good morning, Your Honor.  Kenneth Young

10   with Kirkland & Ellis on behalf of William McMullen and Bayou

11   City Energy Management, LLC,  I have my partner Nick Brown on

12   the line as well.

13           THE COURT:  All right, welcome.

14           MR. POLLETT:  And Your Honor, Adam Pollett of

15   Eversheds Sutherland on behalf of ARM Energy Holdings, joined

16   by my colleagues Bruce Bettigole and Andrea Gordon.  Thank you

17   for your time.

18           THE COURT:  Thank you for being here.  Welcome.

19   Okay.  If that is everyone, I wanted to first go through and

20   let you know what my rulings were on several things that were

21   pending.  The first thing was Ms. Villegas' pro hac vice

22   motion.  That has been granted.  So, I know you'll be happy

23   about that.  That's all set.

24           All the unopposed motions to unseal -- I mean to seal

25   documents is grant -- are granted.  The only one that I had a

```
 1    question about was Documentary 442 which was a motion to

 2    unseal, and I was trying to figure out -- let's see.  Right,

 3    442, the motion to unseal defendant McMullen's motion for

 4    summary judgment and accompanying exhibit.  I -- that wasn't an

 5    agreed upon motion, and I didn't really understand if the

 6    parties were still fighting about this.  And if they were,

 7    let's talk about the issue.  So who'd ever like to begin.  I

 8    guess, first, is this still an issue between the parties, this

 9    motion to unseal defendant McMullen's motion for summary

10    judgment and accompanying exhibits?  And if it is, what's the

11    issue?

12              MR. ENTWISTLE:  So Your Honor, that motion is still

13    live.  It's fully briefed before the Court.  And -- but the

14    parties are continuing to meet and confer with regard to that.

15    As you know, from our letter Docket Entry 592 from January the

16    25th, there are a number of summary judgment motions that have

17    been more recently filed and so our suggestion to the Court is

18    to just leave that motion for now, let the parties continue to

19    meet and confer about it and about the various other materials

20    that are -- have been or are being filed in connection with the

21    various summary judgment motions.

22              As you know, briefing will be, you know, fully -- you

23    know, fully completed as of tomorrow.  And then if there's

24    still an open issue, we'll come back to you.  We'll update you

25    in, you know, let's say two weeks and we'll let you know
```

1    whether there's still an open issue with regard to that or with

2    regard to the other motions.

3         I think based on discussion so far, that at least for

4    the most part, we will have all agreed that, you know, that,

5    you know, what was filed under seal initially can be opened up,

6    but there may be some items that we need to come back to you

7    for, you know, but we don't anticipate that there will be much

8    of a dispute happening by the time the parties are finished

9    going through it and, you know, talking to the third parties,

10   et cetera.

11        THE COURT:  On the -- so that will be great.  So, let

12   me know, you know, once the briefing's done tomorrow, that's

13   why -- well, I knew the briefing was going to be done tomorrow.

14   That's why I've waited on some of the motions with respect to

15   the Daubert motions on your experts, I wanted to get all of the

16   briefing in on the motions, then I'd be able to rule on what

17   should or should not be open and unsealed.  And then also the

18   next step was to address the issue with the experts.

19        That's sort of my kind of plan of attack, that is get

20   your motions ready to go, then once the motions are ready, then

21   figure out which experts' testimony I can or cannot rely upon

22   in ruling on those motions if any, if needed, and then the

23   final thing was, what -- issue is what documents should or

24   should not be unsealed.  I couldn't tell whether that might

25   play in a part of the motions or not, but I'll leave that to

1    you guys.

2           MR. ENTWISTLE:  Thank you, Your Honor, and the

3    sealing motions won't play a part in terms of what you can or

4    can't consider on the motions as a practical matter.  The

5    Daubert motions will, of course, you know, to some extent.  So,

6    thank you.

7           THE COURT:  Great. And then, so that was first thing.

8    The second thing was, you know, as far as the timeline, once

9    the briefing's done, this is going to -- I'm going to give this

10   a priority starting in March to try to get you an answer back

11   as quick as I can.  I don't want this -- these motions to lay

12   around for a long time because you guys need to know what you -

13   - what's going to be ready for trial, so I will do my very best

14   to get an answer back to you on these motions as quickly as

15   possible.

16          But I don't plan on starting until later this later

17   this month on those.  We just don't have the bandwidth right

18   now to get started on that -- this many motions.  So it'll be

19   in March, but in March, I'm going to start and we'll try to get

20   it done as quickly as we can.

21          MR. ENTWISTLE:  Your Honor in that regard -- in that

22   regard, would it be helpful for you when the briefing is

23   complete, if we get you and your clerks a thumb drive or a hard

24   drive that has the declarations with jump sites where you can

25   just click on the declarations and get to the exhibits and for

 1  the brief, same thing, where you can get it to the sites, et

 2  cetera?  Would that be helpful?

 3          THE COURT:  Wow, that would be very, very helpful.  I

 4  -- it's a lot of work and expense on your part, but if you can

 5  do that, that makes life a lot easier for us.  I, you know, I'm

 6  not requiring it, but if you can, that would be great, makes

 7  our life easier because, you know, obviously we have to go back

 8  and forth in the record trying to find stuff and then looking

 9  at the cases that are cited and you guys are great lawyers,

10  both sides, so, you know, the issues are very -- there's a lot

11  of play in the cases and you guys know how to argue those, that

12  play, very, very well, both sides.

13          So having the cases that I can look at right away

14  when I'm reading the briefs and just click to them make --

15  would make my life a lot easier.  So that would be great.

16          MR. ENTWISTLE:  We'll do that on the plaintiff's

17  side, and if Mr. Word wants to do that on -- or, and the rest

18  of the defendants want to do that on the defense side, we can

19  collect that and get it all to Your Honor and we'll try and do

20  that in the next two weeks so that you have it when you turn to

21  these motions at that time.

22          THE COURT:  Thank you, Mr. Entwistle.  That's great.

23  That would be great.  So, the next thing I wanted to talk to

24  you about is this -- there's an old motion that was pending.

25  It was Document Entry No. 392.  The motion for sanctions that

 1   was filed by Don Dimitrievich and HPS Investment Partners.

 2   Respectfully, that motion is denied, but I just want to let the

 3   parties know.

 4           And I think I was clear from our last conversation,

 5   once is a mistake, twice is a choice.  So, if you have problems

 6   in the future with people not showing up for depositions or

 7   manipulating depositions, we're not going to be, you know,

 8   parsing through what he said, she said.  Basically, there's

 9   already been a mistake.  That mistake's been resolved.  It

10   shouldn't happen again.

11           So, I understand, Mr. Porter, that were costs

12   involved, but the motion was sanctioned.  At this time, is

13   denied without prejudice to being reheard, if there are other

14   problems in discovery.

15           MR. PORTER:  And does that --

16           THE COURT:  I'm sorry.

17           MR. PORTER:  I'm sorry, Judge Hanks.  I don't -- I'm

18   not sure why that -- I think that motion should've been taken

19   off.  The parties resolved that with the costs already.  That

20   was taken care of months ago, so I'm not -- I apologize but I'm

21   not sure why that was still a pending motion.  If we -- if the

22   optouts, I think that you all filed something.  I don't want to

23   speak for you, but I think you all filed something to let the

24   Court know that that was moot after the payment of the costs,

25   so that should not have still been on your -- but I don't want

 1   to speak for the optouts.

 2           MR. HAMPSON:  I actually think, Mr. Porter, that you

 3   (indiscernible) filed something, but I agree with you --

 4           MR. PORTER:  Okay.

 5           MR. HAMPSON:  -- amicably resolved it and we actually

 6   did make considerable payments to (indiscernible) and you and I

 7   understand what you're saying.  We did scrupulously comply

 8   after that conference, including flying witnesses on private

 9   jets from Bermuda to get them here.  So, we took Your Honor's

10   word very seriously and we appreciate the Court's attention to

11   that and I understand your direction.

12           THE COURT:  Not a problem, Mr. Hampson.  You guys are

13   all great lawyers.  You're doing a good job, you know, and

14   very, very professional and that -- the Court really

15   appreciates it, because it makes my job a lot easier.  So,

16   thank you, and that motion is taken off of the Court's docket.

17           MR. PORTER:  Yeah, and Your Honor, that should be

18   docket -- and I'm seeing now, that should be Docket No. 402.

19   It was a letter that we wrote to the docket letting you know

20   that there was a request to withdraw.  So that's Docket No.

21   402.

22           THE COURT:  Great.  I'm sorry we missed that.  Going

23   through, there was a lot of documents.  I missed that.  I

24   apologize and --

25           MR. PORTER:  No problem, Your Honor.

```
 1            THE COURT:  -- moving it from the Court's

 2  consideration.

 3            MR. PORTER:  Thank you, Your Honor.

 4            THE COURT:  Now, the next thing I need -- the next

 5  thing I need to talk to you all about is what do you need from

 6  me to get the case ready for trial?  You know, I know that I've

 7  got a rule on the motion for summary judgment as soon as those

 8  have all been filed, as I said, starting in end of this month,

 9  first of next month, I'm going to be on those and try to get

10  answers back to you on those.  What else do you need from me to

11  keep the case moving?

12            MR. PORTER:  Judge Hanks --

13            THE COURT:  I know it's a 19 case.

14            MR. PORTER:  Judge Hanks, I have -- I have a

15  question.  My clients, HPS and Mr. Dimitrievich, you know, with

16  the permission of the Court, we filed our summary judgment well

17  before this.  It was in August and the -- and everything was

18  fully briefed by October the 10th, and so that's

19  (indiscernible) have been fully briefed (indiscernible) before

20  the Court since October 10th.  I believe that the same is -- I

21  don't want to speak for other -- my co-defendants, but I

22  believe the same is true for ARM, the same is true for Bayou

23  City and Mr. McMullen.

24            So those have been pending since October 10th, so

25  when the Court is saying that, you know, you want maybe this
```

```
 1   flash drive, the flash drive that Mr. Entwistle was saying,
 2   what have you, does that does that apply to us as well?
 3   Because, you know, we've been fully briefed for some time now.
 4   I know you're saying you get things in March, but I just kind
 5   of -- just for clarification on our end.
 6            THE COURT:  You're right.  I guess to be fair to both
 7   sides, you're absolutely right, Mr. Porter.  To be fair to goth
 8   sides, Mr. Entwistle, I appreciate the willingness to incur the
 9   cost and expense of doing that, but if I let you do it and then
10   not the other side have the opportunity to do it, then that's
11   not really fair, even though it would be very helpful for me.
12   But we'll just have to do it the hard way.  I mean, not your
13   fault.  I mean, hard way for us.  Because --
14            MR. ENTWISTLE:  Your Honor --
15            THE COURT:  -- already --
16            MR. ENTWISTLE:  Your Honor, I mean, the briefing is
17   complete, but if you haven't turned to those earlier motions,
18   it sounds like you're preparing to address all the motions
19   together, and if -- that being the case, it seems to me it
20   makes sense to make life as easy as possible.  There are over
21   50 briefs, you know, in total, and I think what I heard from
22   Mr. Porter was, you know, are we on this -- are they on the
23   same schedule the more recent motions.  It sounds like they
24   are, and so that being the case, I think the best way to do it
25   is to -- we'll get you hyperlinked both briefs and the, you
```

1    know, and the declarations because obviously there are some 400

2    exhibits that we've submitted and I think probably a comparable

3    number from all of the defendants if you were to add them all

4    up.

5            And so we'll get you those on the summary judgment

6    motions.  Defendants have obviously a full opportunity to do

7    the same and since they're all going to be on the same

8    schedule, you know, from what I understand, you know, I think

9    it behooves all of us to make your life as easy as possible and

10   your clerks, so that we can get those as soon as -- those

11   rulings as soon as you're able to, as we prepare for trial.

12           So we're all turning back to trial prep and actively

13   doing that.  And I think, you know, the parties will probably

14   meet and confer next week.  We were waiting for this hearing to

15   talk about some of the timing of, you know, and whatnot and

16   logistics and we'll deal with all that.  We've all done it

17   plenty of times.  We're all aware of your rules in terms of

18   having everything to you in time so that any motions in limine,

19   et cetera can all be addressed, you know, at the docket call if

20   not before.

21           We'll have -- certainly have the pretrial to you in

22   advance of that as well.  So, I think we're on track for most

23   of that.  You know, at some point we'll be in touch with your

24   case manager to get access for our tech people, you know, so --

25           MR. PORTER:  Judge Hanks, I'm sorry for cutting in,

```
 1    because we haven't moved past my issue.  I know Mr. Entwistle

 2    wants to get to the trial to move over -- to kind of gloss

 3    over.  Number one, Your Honor, if you want us to -- I just want

 4    to be clear because you're the Court, not Mr. Entwistle.

 5          And so if you want my client to get you the briefing

 6    in the format that he suggested, I would like to hear from the

 7    Court on that, not Mr. Entwistle.  We are happy to do that and

 8    like -- and I just want to make sure that we can get this

 9    resolved because I do, again, want to make known for the Court

10    that we have been fully briefed and waiting since October the

11    10th on all of these issues.

12          And I'm not trying to push the Court whatsoever for a

13    ruling because I would never do that, despite Mr. Entwistle's

14    letter last week.  I'm not saying anything on that.  I just

15    need to know kind of what direction and I want to take this in

16    piecemeal, because we've not moved past this yet and I know we

17    could get to the trial setting it in just a moment, but my

18    question is simply this, Judge Hanks.  Do you want us to --

19    we're happy to do it if it would make the Court's life easier.

20          I know it's been pending -- everything's been since

21    October 10th.  We can just go back and we can do it if the

22    Court hasn't had a chance to turn its attention to those briefs

23    and if it would be helpful for us to do that, that's fine.  I

24    just don't -- I want it to come from Your Honor and not from

25    Mr. Entwistle.  So if the Court would like us to do that, I can
```

```
1    represent for HPS and Mr. Dimitrievich that we'll go back and

2    link our motions, our MSJs, and then also our, you know, our

3    reply, if that is what the Court would like for us to do.

4              THE COURT:  Two things really quickly.  I know you

5    guys have a lot to say, but here's the deal.  First, all the

6    motions are going to be considered at one time.  Not going to -

7    - I'm not going to do it piecemeal.  I know that there were

8    earlier motions (indiscernible).  I know there were earlier

9    motions filed, but I'm considering this all at once.

10             So once the last brief is filed, I'm going to

11   consider all of it so that you're going to get an answer from

12   me on everything at once.  So, I'm not -- even though

13   everything was briefed in October, honestly, I haven't looked

14   at it yet because I knew there was additional briefing that was

15   coming in and I didn't know how that additional briefing and

16   replies might affect the motions that have already been filed.

17             So, I haven't done anything at all on the pending

18   motions.  So, Mr. Entwistle, you're absolutely correct.  It's

19   all going to be heard at the same time.  Second, I hear you,

20   Mr. Entwistle.  If you're willing to do it, then I'm just going

21   to -- because we have limited resources.  If you're willing to

22   do it, I'm not going to look at gift horse in the mouth.

23   Please do it.  I need the help.  And Mr. Porter, if your

24   resources allow it, I would really appreciate it because --

25             MR. PORTER:  Yes, Your Honor.
```

```
 1              THE COURT:  -- you know, it's a lot.  I mean, I

 2    started looking at the motions and I'm thinking it's going to

 3    take several months to get you answers back on these.  And that

 4    time falls within the CJRA reporting time, which is when I have

 5    to get all my cases that are six months or over and motions

 6    resolved.  So, it's going to be probably, you know, late May,

 7    early June before I can get you some answers back on this.

 8              I will get them to you before trial, but it's going

 9    to take me several months to do it and the more you can help me

10    get an answer back to you, the better it'll be.  So --

11              MR. PORTER:  (indiscernible).  We will do that from -

12    - again, from our end.  I'm happy to do that, but I do want --

13    I would want to note, Your Honor, because we filed a motion for

14    whatever your planning purposes are, because the motions were

15    filed on, I believe it was August 30th, I think that the six

16    month list is triggered by March 31st, but I certainly am in no

17    position to tell the Court when that -- I just raised that

18    because you brought up the six-month list.

19              THE COURT:  Right.  Actually it doesn't -- the motion

20    doesn't appear on my six month list this time because of when

21    the motion for -- when the reply -- it's not just when they

22    were filed, but when the response dates --

23              MR. PORTER:  Fully briefed.  Okay.

24              THE COURT:  When the issues are fully briefed, so

25    it's not going to appear on my six month list until October.
```

1    Hopefully, by then I'll get an answer back --

2              MR. PORTER:  -- one way or the other.

3              THE COURT:  Yes, long before then, but it doesn't

4    appear on my six month list.  That's why I'm not -- I'm not

5    worried.  I mean, I'm trying to get it done for you, obviously,

6    but I'm not concerned about my list.  I mean, I will get an

7    answer back to you.

8              MR. PORTER:  I think I may have some incorrect

9    information, Your Honor, on that point.  I thought it was -- I

10   was under the impression it was triggered off of the filing

11   date, but not the reply date, but understood.

12             THE COURT:  Oh, not the reply date, but when the

13   issue is fully briefed, depending on when the --

14             MR. PORTER:  Yeah.

15             THE COURT:  Like, for example -- well, just trust me

16   on this.  It doesn't show up on my six month list.  The only

17   thing that -- motion that shows up on my six month list would

18   be the motion for sanctions because of when it was filed.  And

19   that's been resolved between the parties, so we're all good.

20             MR. WORD:  And Your Honor, this is Christian Word.

21   We're happy to provide the Court with hyperlinked versions of

22   our briefs, both Daubert and motion for summary judgment.  So,

23   we'll file those (indiscernible) timeline that Mr. Entwistle

24   indicated he would file (indiscernible).

25             THE COURT:  Thank you.  And Mr. Hampson, I'm not

 1    putting you on the spot.  If you --

 2              MR. HAMPSON:  No --

 3              THE COURT:  -- fine as well.

 4              MR. HAMPSON:  Absolutely, Your Honor.  We would be

 5    happy to do it.  It was actually a requirement in New York

 6    State court where you have to actually do that now you file

 7    electronic documents.  So we're actually pretty well versed in

 8    it.  So we're happy to do that for you and submit it along with

 9    the other parties.

10              MR. SMITH:  Your Honor, this is Trig Smith.  Pardon

11    the interruption.  I just want to get clarification.  I believe

12    I heard the Court reference producing the cases as well?  Would

13    that help the Court?

14              THE COURT:  It would, I mean --

15              MR. SMITH:  Okay.

16              THE COURT:  -- if you can.  The high points, that

17    would be great.  Mr. Entwistle, I really appreciate the

18    suggestion.  I hate to put that burden on the parties, but

19    given the volume of what I'm looking at and the limited amount

20    of time I have to try to get this done for you all before your

21    trial setting, it just really is helpful.  So Mr. Entwistle,

22    thank you.

23              MR. WORD:  Your Honor, (indiscernible) Mr. Entwistle,

24    (indiscernible) paying for it all.

25              THE COURT:  I guess somebody's going to be paying for

1    it all but from our standpoint, we really appreciate it though.

2    Seriously, because it makes my job a lot easier.  I've got one

3    law clerk that's going to be dedicated to working on this with

4    me, so, it make all our lives a lot easier.

5            MR. ENTWISTLE:  Well, that's our goal, Your Honor, so

6    we're happy to do that and we will get it to you promptly.

7    It'll probably take us, you know, ten days to two weeks just to

8    button it all up given, you know, for all the pending motions

9    and the two main declarations, but we'll get all that and

10   you'll have it and -- in a nice easy format to use and, you

11   know, we look forward to doing that.  For shifting to trial

12   prep, we are working hard to get ready for the April docket

13   call and getting you, you know, all those materials.

14           I expect us to talk to Mr. Word and whoever else from

15   the defense group is participating next week, to sort of just

16   coordinate the logistics of exhibit lists and all of the other

17   normal things that go into your pretrial order and so that

18   we're, you know, we have you everything for that docket call

19   and, you know, we'll be -- from the plaintiff's side, we'll be

20   ready to go for the May setting that we currently have on the

21   calendar, assuming we get there with everything else from your

22   point of view.

23           THE COURT:  Great.

24           MR. PORTER:  Judge Hanks, is a May setting even

25   realistic at this stage, given what the Court just said, that

```
 1    we wouldn't get anything until maybe by June or July?

 2              THE COURT:  Well, I'm just --

 3              MR. PORTER:  Yeah, just trying to plan around kind of

 4    other things because I know we have an April 12th trial.  I'm

 5    sorry, we have an April 12th pretrial conference and I think

 6    that the Court is going to give us a date.  I remember

 7    previously you had said that the date would, you know, like 45

 8    days.  So likely sometime in May.  However, given the

 9    instruction that we just received from the Court where we're

10    looking at, maybe, you know, June or July, just real -- from a

11    realistic standpoint, should we be thinking about May?  Because

12    we're -- you know, there's a lot of moving parts, as the Court

13    can imagine, to get that done.

14              THE COURT:  Sure.  So basically, if I start in March,

15    I'm -- we'll get you with my plan right now is to get started

16    in March.  I should have you an answer by the end of May, is

17    what I'm shooting for and that puts you, giving you trial

18    settings in June, first of June.  So, basically at the April

19    setting, 45 days ahead of that -- after that would be the end

20    of May, which puts me right where I expect us to be, which is

21    trial -- actual trial setting, you know, sometime early June.

22              MR. PORTER:  Early June.  Okay.  Got it.

23              THE COURT:  Because I'm going to block out, you know,

24    a couple of weeks for this.  I mean, I've got to basically

25    clear my docket if this case goes forward.  And the time I have
```

1    are available right now is those first two weeks in June.

2              MR. PORTER:  Okay.

3              THE COURT:  So, my goal is to get you answers on the

4    MSJs by the end of May, so that we can get started.  And I know

5    that's cutting it close, but that's realistically as quickly as

6    I'll be able to get it done, is by the end of May.  And then

7    we'll set the trial, you know, in the first two weeks of June,

8    if it needs to go forward.

9              MR. ENTWISTLE:  That time (indiscernible).  We'll

10   still plan on --

11             MR. PORTER:  I'm sorry, (indiscernible), the judge is

12   talking.  Can you let him finish, Judge Hanks?

13             THE COURT:  No, I completed, Mr. Entwistle.  You were

14   saying?

15             MR. ENTWISTLE:  So, we'll still plan on the April

16   12th docket call then, as a touch point with you.  We'll get

17   our trial prep work done anticipating that you'll then, you

18   know, give us rulings as you have them and we'll move forward

19   from there.  Is that -- do I have that right?

20             THE COURT:  That's the game plan, Mr. Entwistle.  O -

21   - as I said, I know you guys are expecting answers.  I will try

22   to get them as quickly as possible, but we're going to go

23   forward in April to lay the groundwork for going to trial the

24   first two weeks of June.

25             MR. PORTER:  And Judge Hanks, just one final question

1    from me.  Does this -- do the rulings include not just the MSJ,

2    but will it include also the Dauberts that have been -- are you

3    going to endeavor to get those in May as well?

4              THE COURT:  Right.  That -- all that has to be

5    decided together, but what I was looking at was some of the

6    Daubert, some of the summary judgment evidence is going to

7    determine on -- turn on whether or not I allow certain

8    witnesses to test -- I mean to provide the testimony.  So, I

9    need to get all that to you as quickly as possible so that, A,

10   you can get rulings on the MSJ; and then second, you can figure

11   out which experts you need to keep paying.

12             MR. ENTWISTLE:  We appreciate that, Your Honor, and

13   you did indicate that you intended to sort of attack the

14   Daubert motions first, so we will get all that, all the

15   hyperlinked materials to you as soon as we possibly can, but

16   certainly within the next ten days to two weeks.  We will --

17   we'll work together with the defendants to get all our ducks in

18   a row for the April 12th docket call.

19             And right now, tentatively, you know, looking either

20   at the May setting, you know, or later into the first -- that

21   first two weeks of June, but that gives us a good target for

22   planning purposes and we appreciate that and in advance, we

23   appreciate all the time and energy it's going to take you and

24   your clerks to address the multitude of evidence, summary

25   judgment evidence and motions that have been filed.

```
 1              THE COURT:  Well, honestly, it's very interesting.  I
 2    mean, you guys have made this case very interesting, good
 3    arguments.  You know, the cases that you're citing,. the
 4    arguments that you're making related to those cases, very, very
 5    interesting.  So, I'm looking forward to helping you try to,
 6    you know, get this case resolved one way or the other.  So, I
 7    guess I'm saying, I appreciate your professionalism, all of
 8    you, and all of your help to the Court.  So, I know I've been
 9    talking a lot.  What do you need from me?
10              MR. ENTWISTLE:  Judge Hanks, I just want to -- from
11    my standpoint, I just want -- and I completely understand where
12    we are and where the Court is going with the briefing.  I just
13    want to make sure that, you know, we're not going to be, kind
14    of placed with -- placed in a bucket with everyone else if you
15    will, because that was, if you recall, the plaintiffs wanted
16    everybody to file on the same date and everybody to have to do
17    the big omnibus briefing.
18              And we said, well, no, we have the right to go early
19    because, you know, we're differently situated, and which the
20    court agreed with at that time.  I understand, how busy Courts
21    are.  I mean, Judge Martinez was extremely busy.  So trust me,
22    I get it.  But at the same time, I just would hope that, you
23    know, we would still be viewed in the same light in which we
24    filed, which is that, you know, we filed early, you know, we
25    specifically filed early for a reason so that we wouldn't be
```

1   kind of everybody locked together.  And I'm just hoping that

2   that will still be the case here.

3          THE COURT:  Respectfully, I understand the issue, but

4   respectfully, I'm considering them all together.  When I

5   started looking at some of the motions, they're interlocking.

6   I mean, in the evidence from some of these motions kind of

7   color the summary judgment evidence that's been presented in

8   other defendants' motions, so I cannot -- I understand the

9   parties' positions, but I don't think that I can decide these

10  separately.  The issues are too intertwined for me to say,

11  well, I can rule on this motion and not have already ruled on

12  this motion.  They're all intertwined.  I mean, I know that

13  parties -- the argument is, is that -- they're very distinct.

14         The arguments for summary judgment are very distinct

15  between the parties, but they're not -- but they're --

16  unfortunately, they're intertwined.  So, I'm not going to

17  consider them apart from the others.

18         MR. PORTER:  And when you say, just for

19  clarification, does that mean that we can expect just kind of

20  like one -- is that what you mean when you say -- I'm just --

21  when you say one order for every -- for kind of every --

22         THE COURT:  Right.

23         MR. PORTER:  Okay.

24         THE COURT:  So, each motion's going to get its own

25  separate order, but --

1          MR. PORTER:  Okay.

2          THE COURT:  -- understanding how this all fits

3   together, I have to look at all the motions.  The issues are

4   intertwined.

5          MR. ENTWISTLE:  I understand, Judge Hanks, but if

6   each motion gets its own order, that's more what I'm saying.  I

7   -- that I can appreciate.  So, thank you for that

8   clarification.

9          THE COURT:  So everybody -- every defendant that's

10  filed a motion is going to get a separate order.

11         MR. ENTWISTLE:  (indiscernible).

12         THE COURT:  Now, there might be some overlap in the

13  facts in my factual background, because the actual background

14  kind of applies to everyone.  But then there are some specifics

15  that are -- that, you know, issues that are specific to certain

16  individual defendants and I will address those in that order.

17  But --

18         MR. ENTWISTLE:  Okay.  That -- that answers -- the

19  Court, you just you articulated it -- you articulated your

20  answer much better than what my question was.  Yes.  That's

21  what I wanted to make sure, that everyone is going to get their

22  own individual order based upon their motion.  It wouldn't be

23  just one (indiscernible) order.  And then the -- I guess the

24  last thing I have, Your Honor, we -- I don't -- this may not be

25  relevant at this stage, but at one point, the Court said, if

1    you request a hearing, you'll get a hearing.

2           We did request it.  We have a letter in that did

3    request a hearing on the -- on these motions, but frankly, if

4    the briefing is sufficient and the Court doesn't want or need

5    to hear from us, then that's fine.  We were just --  we were

6    waiting for whatever the Court wanted to do, but that request

7    was made.  But if the Court thinks that you have enough on the

8    papers and you don't at this point want a hearing, then I'm

9    happy to move past that.  But I just -- I did want to note that

10   was still a request that was pending, that we had filed back

11   in, you know, back in October.

12          THE COURT:  I found it.  Mr. Entwistle, Mr. Hampson,

13   do you want oral argument?  I mean, I might grant it depending

14   on what I -- once I get into the motions, but does either -- do

15   you, either of you specifically want to request oral argument

16   in this case?

17          MR. ENTWISTLE:  Not from our point of view, Your

18   Honor.  The briefing is voluminous and extremely detailed.

19   There's a mountain of summary judgment evidence.  I think

20   you've got everything you need to decide these motions,

21   particularly in the context of, you know, the issues for trial.

22   If it turns out that you have questions that arise as you and

23   your clerk, you know, sort of dig through this, obviously,

24   we're happy to jump on a call or come down, you know, to the

25   Court and discuss them with you, but I think that you all have

```
 1   more than enough work to do without taking additional Court

 2   time for you to hear rehashed by any party of issues that have

 3   been developed fully in multiple summary judgment briefs.

 4        MR. YOUNG:  Your Honor, respectfully, my client would

 5   client would like to request an oral argument.  So to the

 6   extent that -- whenever the Court's ready, we would love the

 7   opportunity to be able to argue our motion.

 8        THE COURT:  Okay.  Well, I will think about all of

 9   that.  Oh, Mr. Hampson, I didn't hear from you.

10        MR. HAMPSON:  Unfortunately, I didn't get a chance to

11   go to that, but I essentially agree with Mr. Entwistle.  If

12   Your Honor needed oral argument, we'd be happy to conduct it,

13   but the briefing is comprehensive.  There is a lot of it.  I --

14   frankly, oral argument might last several days if you had to

15   hold it and that would create more work for the Court, so we

16   agree with Mr. Entwistle.  But whatever Your Honor's preference

17   is, we're happy to comply.

18        MR. ENTWISTLE:  And Your Honor, just to be clear, it

19   wouldn't last several days because there's only three

20   defendants who requested it.  There's only, I think it would

21   only cover two motions, but because of the joinder, two or

22   three motions.  This is not an oral argument for every single

23   thing in the case.  I don't want to speak for Mr. Word or

24   anyone else as to whether they want to request oral argument

25   for theirs.  That's, you know, up to them.
```

1        THE COURT:  You know they're going to, though.  If

2   you request oral argument -- well, Judge, if you're going to

3   give it to them, I'm going to request oral argument.

4        MR. ENTWISTLE:  Well, no -- that's fair.  That's

5   fair, Judge Hanks, but I just want to be clear.  We have

6   already -- like, the request is in.  We made it months ago.  So

7   we -- but the request -- the only pending request is for a

8   very, you know, narrow -- it's for three of the defendants.

9   That's it.

10        So, I just want -- I just want to make sure that it's

11   not -- that the Court isn't thinking that this request is for

12   every -- but to Your Honor's point, if it's -- you know, it's

13   like if you're giving out cookies, they're going to want more,

14   so if you give us an argument -- I get it.  Understand it.  But

15   I just wanted -- addressing Mr. Hampson's point about two or

16   three days or whatever he said.  No, you're looking at two,

17   three hours because it's a very limited number of folks, in

18   fact, as we sit here today who have requested oral argument.

19        MR. YOUNG:  Your Honor.

20        THE COURT:  Yes, I'm sorry.

21        MR. YOUNG:  Sorry I was just -- and frankly, it's

22   because of the, you know, the breadth of the briefing that I

23   think an oral argument would be helpful.  Sometimes if there's

24   lots of briefing, even if it's a narrow, limited time for oral

25   argument, that can help crystallize issues where, you know, if

1    you have sprawling kind of briefing, that can make it more

2    difficult to see where the rubber meets the road.  So, that's

3    why I think oral argument can be helpful.

4          MR. WORD:  Your Honor, this is Chris Word.  Just -- I

5    didn't want to (indiscernible) Your Honor.  You have it exactly

6    right.  I do think oral arguments can be helpful here.  I know

7    that (indiscernible) even Justice Thomas has come around on

8    oral argument.  But I do think that, again, with the volume of

9    briefing here, the number of issues that we're dropping on the

10   Court, perhaps we can provide some -- answer questions, short

11   cut you through some of the more difficult or voluminous

12   portions of these motions.  So, I tend to think it's helpful.

13   But, of course, I think the, the real issue is whether you find

14   it helpful.  So, I'm happy to do what the Court would do, but I

15   do tend to agree with my colleagues.

16         MR. PORTER:  And Your Honor, if I can make a

17   suggestion, it may be that we, you know, if it's going to be

18   multiple days, then maybe you do the early trial defendants

19   first and then the other defendants second, just because in our

20   motion, there was no expert testimony that -- neither party

21   cited nor -- neither party cited expert testimony because the

22   expert discovery was still open at the time.  And plaintiffs

23   never stated that they needed expert discovery.

24         So, you don't even need expert discovery for our --

25   this is just straight up on the law and on the papers and on

```
 1    what the Fifth Circuit has said, from our standpoint, and so,

 2    given that fact, it may make sense to the extent that the Court

 3    is inclined to allow argument to, you know, break it up in that

 4    respect because I do think that's also an important difference,

 5    Judge Hanks, is that again, when we filed back in August, there

 6    was no -- there was no -- you know, expert discovery hadn't

 7    even started.  I don't even think there had been an expert that

 8    was deposed and the plaintiffs never said that they needed

 9    expert discovery to -- in their response.

10           So, that is not an issue in our set of briefing, if

11    you will, and so I think that that just further narrows what

12    you would be looking at as it pertained to us.  So that would,

13    that would just be one suggestion, because I think once you

14    remove the need or their citations to experts, I think that

15    that makes it even -- that even further narrows the issue.

16           THE COURT:  Okay.  Well, I'll just cut to the chase

17    really quickly.  Once I get into the briefing, if I think I

18    need oral argument, I'll revisit.  I'll follow -- I'm going to

19    follow Mr. Entwistle's suggestion.  I'm going to get you on the

20    line and see what, you know, if there's a very narrow issue, if

21    I can resolve it with just talking to the parties and getting

22    additional letter briefing, possibly if there's an issue, but

23    given the expense and cost of this case to all the parties

24    involved, if -- I'm not going to ask you for oral argument,

25    unless I really, really think I need it.  I
```

```
 1              f I don't think I need it, then I'm not going to ask

 2     you for it because, you know, I see that we've got what, 12 --

 3     like 10 lawyers on the line right now, something like that, at

 4     least.  If I don't really need that oral argument, I'm not

 5     going to ask you guys for it.  So, but I don't know that until

 6     I get into the briefing.  So, let me get into the briefing,

 7     look at this, and think about it and think about whether or not

 8     oral argument can really be helpful on the issues that I'm

 9     looking at.  If I don't think that, then I'm not going to ask

10     you for oral argument.

11              I do like to request, as Mr. Porter pointed out, I do

12     like to honor parties' request for oral argument, but the

13     caveat is, it has to be -- I have to think it's helpful before

14     I do that.  And if I don't think it's helpful, that oral

15     argument would be helpful, then I'm not going to either take

16     your time or the Court's time to do that.  I think we can spend

17     our time either -- better, either, A, getting ready for trial,

18     or B, you know, digging a little deeper into the motion.

19              So, got to run, unfortunately.  I've got another

20     matter starting at 12:15.  Thank you all for your patience and

21     your time.  I'm going to have another status report with you, a

22     status conference with you in a couple of weeks to see how your

23     trial is coming -- trial prep is coming along and whether or

24     not you need anything from me, but it sounds like from what I'm

25     hearing, you guys are well on your way.  Everything's going
```

1   well.  You just need me to rule on these motions so you can

2   figure out exactly what you need to do -- and you need a trial

3   date, which we'll get for you in April.

4            MR. ENTWISTLE:  Thank you so much, Judge Hanks.

5            MR. PORTER:  Thank you again, Your Honor.  Have a

6   good day.

7            MR. SMITH:  Just (indiscernible).  Yes.  I wanted to

8   ask -- address a question that the Court had, is what can you

9   do to help us with trial prep.  Does the Court have a

10  preference in terms of contacting either the case manager or

11  the deputy clerk regarding just, you know, everyday trial

12  preference that the Court has, for example -- I can give you an

13  example.  You have a witness.  Does the Court allow a witness

14  to be handed an exhibit binder during trial, minor things like

15  that.  I was just (indiscernible) the Court --

16           THE COURT:  Ask my case manager.  I mean, I can tell

17  you, the answer is yes on that case binder, obviously.

18           MR. SMITH:  Okay.

19           THE COURT:  I just finished a three week antitrust

20  trial that involved dozens of binders and dozens of witnesses.

21  Whatever -- basically, whatever makes your job easier and also

22  help to the Court, I'll allow.  Like, for example, if you need

23  to approach a witness, you only need to ask once during that

24  witness's examination.  After that, you can approach the

25  witness as needed during the examination just to make it easier

```
 1    for you.

 2              Examination of witnesses, a lot of federal courts

 3    require you use the podium.  I'm a former state court judge

 4    here in Texas.  You can examine a witness from the table or the

 5    podium, and I follow that tradition as well.  So if you want to

 6    use the podium, great.  If you want to use the -- sit at the

 7    table, great.  Whatever makes it easier for you and it doesn't

 8    interfere with the jury understanding the evidence and the

 9    Court maintaining decorum in the courtroom, you're fine.  So,

10    little things like that.

11              Another one you might have a question about is would

12    you need two copies of the witness notebooks, one for the

13    witness and one for -- sorry.  One for the judge and the other

14    for the law clerk.  Typically not.  Really, you just need it

15    for the witness and the judge.  I share everything with my law

16    clerk, so that's not going to be a problem.

17              MR. SMITH:  Okay.  And then just one last simple

18    question.  In those communications with the case manager, does

19    the Court prefer that they're -- both -- all parties are there

20    or can it be an ex parte reach out?

21              THE COURT:  I prefer that you send it in writing to

22    the case managers and CC all of the parties so that everybody -

23    - because they might have the same questions you have.  My case

24    manager will be answering that question, what, one, two, three,

25    four, at least four times with counsel, so if you put it in
```

```
 1    writing and let all the other counsel know we might get one

 2    stop shopping,, that is, one answer covers it for everyone.

 3              MR. SMITH:  Thank you, and I think that we'll plan on

 4    doing this before those letters are submitted to the Court.

 5    We'll run it by counsel in case they want to ask some questions

 6    as well.  So I appreciate your time, Your Honor, and I didn't

 7    mean interrupt at the break.

 8              THE COURT:  No.  No, no, no.  It -- that's a good

 9    question.  So, those are the questions posed to my case manager

10    in writing.  Two things that are good about it.  One, everybody

11    knows what the question is and the answer.  And then second, it

12    allows -- well, also it allows us to keep track of what

13    questions you're asking so, we're not answering the same

14    questions multiple times.

15              MR. SMITH:  Understood.  Terrific.

16              MR. ENTWISTLE:  Thank you, Your Honor, for your time.

17              THE COURT:  Okay.  Well, everyone have a great

18    afternoon and we'll talk again soon.

19         (Hearing adjourned at 12:32 p.m.)

20                        *  *  *  *  *

21

22

23

24

25
```

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6        _Sonya M. Ledanski Hyde_

7

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  February 8, 2024