# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 |

## REPLY IN FURTHER SUPPORT OF CLASS PLAINTIFFS' MOTION FOR SEPARATE TRIALS OF THE CLASS ACTION AND THE INDIVIDUAL ACTIONS PURSUANT TO FED. R. CIV. P. 42(b)

## **TABLE OF CONTENTS**

STATEMENT OF ISSUE TO BE RULED UPON ............................................................... 1

APPLICABLE LEGAL STANDARD ................................................................................. 1

SUMMARY OF REPLY ARGUMENT ............................................................................... 1

ARGUMENTS & AUTHORITIES ...................................................................................... 4

    I.    The Individual Actions Raise Substantially Different Claims, Evidentiary Issues, and Damage Theories ........................................................................ 4

    II.    Separate Trials Will Promote Judicial Economy and Efficiency .................. 9

    III.    Defendants' and the Individual-Action Plaintiffs' Remaining Opposition Arguments Do Not Support a Consolidated Trial ....................................... 10

CONCLUSION ................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases**

*C.W. v. Zirus*,
  No. SA-10-CA-1044-XR, 2012 WL 12919097 (W.D. Tex. Aug. 7, 2012) ............. 6

*Divine Restoration Apostolic Church v. Nationwide Mut. Ins. Co.*,
  No. 4:09-CV-0926, 2010 WL 1064727 (S.D. Tex. Mar. 19, 2010) ......................... 1

*Garza v. Phillips 66 Co.*,
  No. 13-742-SDD-EWD, 2016 WL 1171004 (M.D. La. Mar. 4, 2016) .................... 6

*Hanley v. First Invs. Corp.*,
  151 F.R.D. 76 (E.D. Tex. 1993) .............................................................................. 6

*Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*,
  No. C-10-142, 2010 WL 2787810 (S.D. Tex. July 14, 2010) ................................. 8

*Houston McLane Co. v. Conn. Gen. Life Ins. Co.*,
  No. H-06-1508, 2006 WL 3050812 (S.D. Tex. Oct. 24, 2006) ............................... 8

*In re American Realty Capital Properties, Inc. Litig.*,
  No. 1:15-mc-00040 (S.D.N.Y. June 18, 2019) .................................................... 7, 8

*In re Enron Corp. Sec. Litig.*,
  529 F. Supp. 2d 644 (S.D. Tex. 2006) .................................................................... 3

*In re Innotron Diagnostics*,
  800 F.2d 1077 (Fed. Cir. 1986) ............................................................................ 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
  No. 02 Civ. 5571, 2009 WL 10795068 (S.D.N.Y. Aug. 18, 2009) .................... 9, 11

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288(DLC), 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) ............... 9, 11

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
  252 F. Supp. 3d 537 (E.D. Va. 2017) ................................................................... 10

*United States v. Cisneros-Gutierrez*,
  517 F.3d 751 (5th Cir. 2008) .................................................................................. 6

**Rules**

Fed. R. Civ. P. 42 .............................................................................................................. 1

**STATEMENT OF ISSUE TO BE RULED UPON**

Whether the certified Class Action and the Individual Actions should be tried separately under Federal Rule of Civil Procedure 42(b) because proof related to the individualized issues of reliance and damages unique to the Individual-Action Plaintiffs will prejudice the Class, contrast with proof offered to prove the Class Action claims, confuse the jury, and unnecessarily complicate the presentation of issues and evidence.[1]

**APPLICABLE LEGAL STANDARD**

The Court may order separate trials of any issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). In determining whether to order separate trials, "the two primary factors to be considered . . . are efficient judicial administration and potential prejudice." *Divine Restoration Apostolic Church v. Nationwide Mut. Ins. Co.*, No. 4:09-CV-0926, 2010 WL 1064727, at *2 (S.D. Tex. Mar. 19, 2010).

**SUMMARY OF REPLY ARGUMENT**

Defendants and the Individual-Action Plaintiffs repeatedly argue that the Class and Individual Actions arise from the same claims and underlying facts and, thus, separate trials are unwarranted. But their central argument collides with reality. And the controlling question is not the commonality of the facts, but whether the cases involve the same claims and defenses. Here, the Individual Action cases present profoundly different claims, unique elements of those claims, distinctive facts relevant to those claims, and atypical

---

[1] Capitalized terms undefined herein shall have the meaning ascribed to them in Class Plaintiffs' Motion for Separate Trials of the Class Action and the Individual Actions Pursuant to Fed. R. Civ. P. 42(b) (the "Motion") (Dkt. 659).

damages theories. Further, Defendants and the Individual-Action Plaintiffs have failed to address the Class's demonstration that it will be prejudiced by trying its claims together with the Individual Actions.

Moreover, Defendants' halfhearted, unsupported assertion that they will incur some unquantified additional cost is not a reason to confuse the jury and prejudice the Class. Nor does it justify inefficiently trying wholly disparate reliance and damages theories, as well as entirely distinct direct federal, Texas statutory, and common law claims, in the same trial proceeding as the Class's straightforward securities class action.

For example, Defendants seek to require the jury to consider the "eyeball"/direct reliance required of the Individual-Action Plaintiffs, when no such showing is required for the Class. In fact, they further invite the prospect of a confused jury by demanding the jury consider the presentation of multiple conflicting damages theories attendant to Individual-Action Plaintiffs' federal, Texas statutory, and common law claims. Here, Defendants' opposition actually supports the Class Plaintiffs' motion for separate trials.

Nor does the Individual-Action Plaintiffs' opposition persuasively address the real danger of prejudice to the Class. Again, the Individual-Action Plaintiffs' primary argument is that "[t]hese cases arise from the same fraud and involve identical Defendants." (*See*, *e.g.*, IAP Opp. at 1). While only nominally true – the Individual Actions assert several alleged fraudulent statements not asserted in the Class Action – it glosses over the real danger of prejudice to the Class case. The Individual-Action Plaintiffs assert actual-reliance-based claims and that Defendants made unique statements directed just to them. Defendants are likely to take substantial time arguing that the Individual-Action

2

Plaintiffs' attendance at one-on-one meetings and possession of non-public materials – including pitch meetings where they were solicited by Defendants and their bankers – gave them all they needed to know regarding the truth about the reserves and projections.  *None* of this is relevant to the Class, which did not have those materials, and the fact that the Individual-Action Plaintiffs had special knowledge could easily be taken by the jury to assume the Class had the same information.  This creates the real risk of serious prejudice to the Class and is a genie that cannot be put back in the lamp with a jury instruction.

Notably, for all the foregoing reasons and others, the Individual-Action Plaintiffs would have been barred from serving as a class representative here because they are indisputably subject to unique defenses that "threaten to become the focus of the litigation" and to which they will likely devote "considerable time to rebut" at trial.  *In re Enron Corp. Sec. Litig.*, 529 F. Supp. 2d 644, 674 (S.D. Tex. 2006).  Defendants and the Individual-Action Plaintiffs contend that prejudice to the Class could be minimized by motions in limine, jury instructions, and special verdict forms.  (Def. Opp. at 8; IAP Opp. at 5).  But if these purported solutions were a magic bullet, Rule 23(a) would not mandate that representative plaintiffs bring claims and face defenses that are typical of the class.  That the rule and uncontradicted case law bars plaintiffs subject to unique defenses or bringing unique claims from serving as class representatives exist is precisely because the prejudice to a class arising from unique claims and defenses cannot be magically cured with the reading of a jury instruction.

3

Defendants, faced with overwhelming evidence of wrongdoing to the Class, want to take the strategic path most likely to confuse and confound the jury. The Individual-Action Plaintiffs understandably want to ride the coattails of the Class Plaintiffs' trial presentation and, if possible, distract the jury from the fact they possessed information from Defendants that the Class did not. However, neither group's desires are the basis for forcing disparate elements and claims to be tried together at real and demonstrable risk of prejudice to the certified Class.

## ARGUMENTS & AUTHORITIES

**I.    The Individual Actions Raise Substantially Different Claims, Evidentiary Issues, and Damage Theories**

The opposition briefs do not, and cannot, dispute that Class Plaintiffs assert a typical claim under Section 10(b) (and an accompanying Section 20(a) control person claim) for which they are entitled to the fraud-on-the-market presumption of reliance and Section 14(a) (and an accompanying Section 20(a) control person claim) for which reliance is not an element. Accordingly, the Class Action trial will be a straightforward presentation to the jury of Defendants' deliberately false statements.

The Individual Actions' claims, by contrast, are not so straightforward. As set forth in Class Plaintiffs' opening Motion, the Individual-Action Plaintiffs:

- Assert eight (8) unique federal securities, Texas statutory, and common law claims that contain different elements than Class Plaintiffs' Section 10(b), 14(a), and 20(a) claims – including Section 18, Texas consumer protection, and common law fraud claims that require direct reliance;

- Allege direct statements by Defendants to the Individual-Action Plaintiffs for which they will need to demonstrate justifiable reliance on a statement-by-statement basis, which collides with the fraud-on-the-market theory;

- Allege statements requiring eyeball reliance made *before* Silver Run's initial public offering and months *before* the Class Period alleged in the Class Action commenced upon the announcement of the merger;

- Assert several distinct theories of damages that have nothing to do with the Class Action. The Individual-Action Plaintiffs' "lost opportunity" damages theory, for example, would have precluded class certification and it is ironic that two plaintiffs who refused to join the class now wish to prejudice the Class by insisting on the theory's presentation in a consolidated trial; and

- Rely on fact and expert witnesses on behalf of the Individual-Action Plaintiffs that, based on Defendants' discovery of the Individual-Action Plaintiffs and their experts, will again draw the jury's focus on direct reliance and disparate damage theories.

Accordingly, Defendants' and the Individual-Action Plaintiffs' contentions that the Class and Individual Actions arise from the same facts and allegations (*see, e.g.*, Def. Opp. at 1, 3, 4; IAP Opp. at 1) discount the reality of the unique claims brought by the Individual-Action Plaintiffs and their very real dissimilarity to the Class Action.

Given the reality of distinct claims, theories of reliance, and allegations, it is clear Defendants invite the larding of Class Plaintiffs' trial presentation with evidence of their unique defenses to the Individual-Action Plaintiffs' claims. The inclusion of these unique issues in a consolidated trial are almost certain to confuse the jury and prejudice the Class Plaintiffs, creating a sideshow at a minimum and potentially dominating the trial. For example, during a consolidated trial, the jury almost certainly faces days of testimony on issues irrelevant to the Class case, including:

- The investment procedures and policies of the three investment managers acting on behalf of the thirteen domestic and international investment funds comprising the Individual-Action Plaintiffs;

- Whether the Individual-Action Plaintiffs or their investment managers read and relied on Defendants' public statements;

- Competing testimony between the Individual-Action Plaintiffs' investment managers and certain Defendants concerning what, if any, direct statements were made by Defendants during individual meetings and communications, what other non-public information was communicated in pitch decks and other solicitation materials provided privately by Defendants to them, and whether the Individual-Action Plaintiffs or their investment managers reasonably relied on any such statements; and

- Proof of what, if any, damages were sustained by the Individual-Action Plaintiffs based on their unique damages theories posited by their expert.

Once again, these issues have *nothing* whatsoever to do with the claims or damages in the Class Action. In addition to increasing the length of the Class trial and impacting the jury's attention span, there is a real danger that the jury will question why the Class remains silent while the Defendants attack the issues purely unique to the Individual-Action Plaintiffs' unique claims.

Of course, Defendants argue that such potential prejudice can be prevented by the Court's jury instructions. (Def. Opp. at 8).[2] However, a confused jury, or one that thinks

---

[2] Both oppositions' cases on the jury instruction issue (Def. Opp. at 8; IAP Opp. at 21-22) are factually or procedurally distinguishable. *See, e.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 762-63 (5th Cir. 2008) (court's repeated instruction to the jury in a criminal trial against a single defendant on impeachment by prior inconsistent statements to which the defendant did not object was sufficient to avoid reversible error following conviction); *Garza v. Phillips 66 Co.*, No. 13-742-SDD-EWD, 2016 WL 1171004, at *6 (M.D. La. Mar. 4, 2016) (turning on the fact that defendant failed to show plaintiffs were misjoined under Rule 20(a) where "every plaintiff was exposed to the same asbestos-containing products produced by the same Asbestos Defendants while at their worksites"); *C.W. v. Zirus*, No. SA-10-CA-1044-XR, 2012 WL 12919097, at *3 (W.D. Tex. Aug. 7, 2012) (defendants' concern that a consolidated trial of two plaintiffs assaulted at the same time by the same defendant was inadequate to avoid consolidation where "it is unlikely that the jury will be confused or influenced by the more serious nature of damages sustained" by one of the two plaintiffs"); *Hanley v. First Invs. Corp.*, 151 F.R.D. 76, 77 (E.D. Tex. 1993)

Class Plaintiffs must also prove the unique elements of the Individual-Action Plaintiffs' claims, may find that the Class has not satisfied (a non-existent) burden such as on reliance. A similar risk exists that a confused jury may find that the Class had the same non-public information conveyed to the Individual-Action Plaintiffs in various private meetings with and solicitations by the Defendants, which could result in findings adverse to the Class on materiality and falsity. Class Plaintiffs are confident that Defendants will also advocate for jury verdict forms that are combined to include the disparate claims.

The risk of prejudice and confusion is too great for the Class. While the Court and counsel have expertise sufficient to distinguish between the respective elements and proof in the Class and Individual Actions, the same cannot be said for all members of a jury—particularly after hearing hours of presentations by Defendants related to the defenses unique to the Individual-Action Plaintiffs. That is precisely why neither Defendants nor the Individual-Action Plaintiffs have identified any authority demonstrating that individualized claims – which would otherwise defeat class certification – were tried with a securities class action case.

Defendants rely on *In re American Realty Capital Properties, Inc. Litigation*, No. 1:15-mc-00040 (S.D.N.Y. June 18, 2019) and claim it is comparable to the instant case. (Def. Opp. at 10 n.2). Not so. Here the Individual-Action Plaintiffs are taking the *opposite* position as the opt-out plaintiff in *American Realty*, who argued *against* consolidated trials:

> [Coordinated discovery] in and of itself does not mean that there's going to be a joint judgment entered in the case, or even

---

(weighing the potential prejudice from nineteen plaintiffs suing the same brokerage and brokerage firm versus the obvious benefit of "one large trial versus nineteen medium ones").

7

> that there's going to be a joint trial of our case with the Class case.
>
> We have additional claims that have nothing to do with the class. We have a Section 18 claim based on actual reliance that the class can't bring. We have claims based on – you know, there are other aspects of our claim that are different from the Class.

(*See American Realty*, Dkt. No. 849 at 127; 129-30).³ The class plaintiffs in *American Realty* also noted they did not want a joint trial because of the unique reliance issues of the opt-out. (*Id*. at 129-30 ("Just for the record, we don't want to be consolidated with Jet for trial. And we can address that with the Court when it comes up. But, you know, they have eyeballed reliance claims"). The cases settled before the court determined whether the class and opt-out case would be tried jointly or separately, but the import is the same. The opt-out and class plaintiffs sought a separate trial so, among other things, the opt-outs unique claims and reliance issues would not be confused with the class's issues.⁴

Notably, the Individual-Action Plaintiffs do not contend they would be prejudiced if they are not allowed to participate in a consolidated trial. This is because if Class Plaintiffs are successful at trial, the Individual-Action Plaintiffs will enjoy the benefit of

---

³ The Defendants' reliance (Def. Opp. at 10 n.2) on the parties' subsequent letter in *American Realty* merely requesting the court to move up the trial start dates (Dkt. No. 883) is of no moment given the actual discussion at the conference that is reflected in the transcript.

⁴ The Individual-Action Plaintiffs likewise rely on inapposite cases (IAP Opp. at 4-5, 13) that reject severance of contractual and extra-contractual claims by the same plaintiff against the same insurance carrier. *See, e.g.*, *Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*, No. C-10-142, 2010 WL 2787810, at *4 (S.D. Tex. July 14, 2010) (declining to sever for separate trial the contractual and extra-contractual claims of the same plaintiff); *Houston McLane Co. v. Conn. Gen. Life Ins. Co.*, No. H-06-1508, 2006 WL 3050812, at *2 (S.D. Tex. Oct. 24, 2006) (failing to demonstrate potential prejudice from failing to sever contractual and extra-contractual claims of the same plaintiff).

8

issue preclusion on common issues. On the other hand, if Class Plaintiffs are unsuccessful, the Individual-Action Plaintiffs will still have their unique claims. In any event, the Individual-Action Plaintiffs will benefit from presenting their claims and damages theories to a focused, attentive, and unconfused jury.

The only theoretical prejudice that the Individual-Action Plaintiffs will suffer is being unable to take advantage of the evidence elicited by Class Plaintiffs at trial. But not being able to piggyback on the work of Class Plaintiffs is not prejudicial—particularly where the Individual-Action Plaintiffs deliberately opted-out of the benefits of the class action vehicle only after this Court denied Defendants' motions to dismiss, and where they have the benefit of issue preclusion.

## II.  Separate Trials Will Promote Judicial Economy and Efficiency

In addition to avoiding prejudice to the Class, separate trials will promote judicial economy and efficiency. The Court and counsel will not be forced to deal with the very real complications and inefficiencies arising from multiple plaintiffs, presenting multiple unique claims with different elements of proof, and multiple damages theories.

The trial courts in *In re Vivendi Universal, S.A. Sec. Litig.*, No.02 Civ. 5571, 2009 WL 10795068, at *1 (S.D.N.Y. Aug. 18, 2009) and *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2005 WL 408137, at *4 (S.D.N.Y. Feb. 22, 2005) recognized that the procedure that was most efficient and free from potential prejudice was to try individualized issues of reliance and damages only after the plenary class action trial had concluded. The same reasoning applies here.

Similarly, in *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 252 F. Supp. 3d 537, 551 (E.D. Va. 2017), the court found separate trials appropriate under Rule 42(b) because they would "effectuate efficiencies in trial presentation and case management that will offset any inefficiency created by having [separate] trials." The court also found that "the elements [of the claims] are materially different and consequently the evidence to prove them will be different," and "even though . . . many of the same witnesses will testify in respect of the claims, counterclaims, and defenses, the testimony will address different topics and different times." *Id*. at 549. *In re Innotron Diagnostics*, 800 F.2d 1077, 1086 (Fed. Cir. 1986), the court rejected argument that separate jury trials should not be held where there are overlapping facts and issues between distinct claims because "even in the unlikely event that the same testimony and documents may be placed before two juries, . . . it has been well said that the prohibition is not against having two juries review the same *evidence*, but rather against having two juries *decide* the same *essential issues*" (quotation marks and citation omitted).

### III. Defendants' and the Individual-Action Plaintiffs' Remaining Opposition Arguments Do Not Support a Consolidated Trial

The remaining opposition arguments do not overcome the foregoing and the showing in Class Plaintiffs' opening Motion that separate trials are necessary:

- Defendants' assertion that the Class and Individual Actions arise from "precisely the same transactions" and "fact patterns," and include "core identical legal theories under Sections 10(b), 14(a), and 20(a)" (Def. Opp. at 5) is simply not correct. The *thirteen* Individual-Actions Plaintiffs allege *eight* total federal securities, Texas statutory, and common law claims that are not relevant to the Class Action, many of which require individual proof of actual reliance, and more than a *dozen* different individual damages theories not present in the Class Action;

- Defendants' speculative assertion that the fact witnesses are "largely the same" and "their testimony will cover largely the same ground" (Def. Opp. at 5-6), even if it proves to be true, misses the point. If the Defendants' and Individual-Action Plaintiffs' witnesses testify as to private meetings between them, direct representations to the Individual-Action Plaintiffs, and whether Individual-Action Plaintiffs reasonably relied on those statements, the jury will find the silence of the Class Plaintiffs on these issues deafening and confusing;

- Defendants next assert that "the parties' briefing of the Opt-Out claims relies heavily on the corresponding briefing of the same issues as to Class Plaintiffs, given the substantial overlap in claims" (Def. Opp. at 6). The fact the Individual-Action Plaintiffs chose to piggyback on Class Plaintiffs' work (and continue to try to do so) is no fault of the Class Plaintiffs and shows, if anything, that Class should not be prejudiced by a trial in which the Individual-Action Plaintiffs cleave closely to Plaintiffs or, worse, dominate the issues so their cases become the tail wagging the dog;

- Defendants argue that the potential sources of confusion by the jury and resulting prejudice to the Class are "exceedingly narrow" in that reliance is "just one of the several elements of the claims" and damages is "an issue the jury may never even reach" (Def. Opp. at 7). But reliance is far from narrow in that, in a consolidated trial, it will be the subject of almost all (non-expert) testimony provided by any plaintiff witnesses and will have an outsize role in jurors' assessments of the plaintiffs' collective claims. And the confusion created by the Individual Plaintiffs' complicated damages theories should not be an acceptable risk just because Defendants *might* win on liability;

- Defendants' attempt to distinguish *In re WorldCom, Inc. Securities Litigation*, No. 02 CIV.3288(DLC), 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) (Def. Opp. at 9) by noting that it is a motion in limine case rather than a Rule 42 case is irrelevant to the broader point about prejudice. In *WorldCom*, the court recognized that issues of reliance created a risk of prejudice that was so great that court granted "plaintiff's motion to exclude evidence from the plenary trial relating to the individualized issues" (*id.* at *5);

- Defendants' argument that *In re Vivendi Universal, S.A. Sec. Litig.*, No.02 Civ. 5571, 2009 WL 10795068 (S.D.N.Y. Aug. 18, 2009) "involved more than *eighty-five* individual opt-out plaintiffs whose claims were consolidated with a class action" (Def. Opp. at 9 (emphasis in original)) is likewise

11

    unpersuasive. The precise number of opt-outs is irrelevant, the fact is that here, like in *Vivendi*, more than a dozen Individual-Action Plaintiffs must prove individualized issues of reliance and damages that create a real possibility of confusion among jurors;

- Defendants, arguing in favor of a consolidated trial, nonetheless repeatedly concede "that Opt-Out Plaintiffs challenge many different statements" (Def. Opp. at 10) and "that Opt-Out Plaintiffs challenge many *unique* statements, meaning that Opt-Out Plaintiffs would still need to prove all of the elements of their claims for each statement challenged only in the Opt-Out Action but not in the Class Action" (Def. Opp. at 11-12 (emphasis in original)). This is precisely Class Plaintiffs' point: why should Class Plaintiffs and the jury be required to sit through evidence concerning these different statements, issues or reliance, and theories of damages, that Defendants admit do not apply to the Class Action;

- Defendants make only passing claims of a purported "substantial increased burden on Defendants and the Court" (Def. Opp. at 1) or the fact two trials will supposedly "impose cost and burden" (Def. Opp. at 12) on them, but never seriously attempt to demonstrate this is true. This is because Defendants must prepare for the witnesses, evidence, and arguments that are relevant to the Class Action on one hand, and the witnesses, evidence, and arguments that are relevant to the Individual Actions on the other hand, whether or not the respective issues are tried together or the Individual Action issues follow in a subsequent trial;

- Defendants argue that two trials verdicts would prejudice Defendants "by possibly subjecting Defendants to inconsistent verdicts" (Def. Opp. 3), "could . . . result in inconsistent verdicts" (Def. Opp. at 12), and "the verdicts rendered . . . could be inconsistent" (Def. Opp. at 13). The prejudice that "possibly" and/or "could" occur is abject speculation with no actual attempt by Defendants to demonstrate any real likelihood of inconsistent verdicts; and

- Finally, Defendants argue speciously that separate trials will cause them prejudice because the Individual-Action Plaintiffs "at a minimum would gain a preview of Defendants' case during the first trial, bestowing on them an unfair tactical advantage at Defendants' expense" (Def. Opp. at 13). Following the hundreds of pages of detailed summary judgment briefing, the notion that the parties are not already well-versed of the substance of their opponents' proof and/or defenses strains credulity.

The Individual-Action Plaintiffs' remaining arguments likewise are unpersuasive:

12

- Individual-Action Plaintiffs argue that separate trials would be inefficient because a second jury would have to hear "testimony from nearly all of the same witnesses who testified in the first trial" (IAP Opp. at 9). This is not true. *First*, in separate trials, the jury in the Class trial would not hear any of the Individual-Action Plaintiff witnesses that will testify related to the statements made directly to them in the various one-on-one meetings between them and the Defendants. *Second*, in separate trials, the Class jury would not be subjected to potentially days of direct and eyeball testimony related to reliance from those same witnesses and related cross-examination. *Third*, the Class jury would not hear any of the testimony from the Individual-Action Plaintiffs' damages expert. Lastly, while certain Defendants may be asked to testify in both trials, this will be minimized by issue preclusion on the one hand and by the fact such testimony will be limited in the second trial to the specific non-public direct statements and related pitch and solicitation materials made or provided to the Individual-Action Plaintiffs in the various one-on-one meetings;

- Individual-Action Plaintiffs also argue that separate trials would create the risk of inconsistent jury verdicts on identical issues, such as falsity, materiality, and scienter (IAP Opp. at 3, 9). The notion that separate trials would "raise the specter of inconsistent outcomes on identical issues" (IAP Opp. at 9) is an entirely speculative concern that is only an issue if, as Class Plaintiffs acknowledged in their opening Motion, the benefit of issue preclusion becomes unavailable in the unlikely event Defendants prevail in the Class Action trial" (Mot. at 4);

- Individual-Action Plaintiffs' argument that "to the extent that Class Plaintiffs suggest that the Opt-Out Action Plaintiffs would be bound by any adverse findings in the Class Trial . . . such a result would violate the Opt-Out Action Plaintiffs' due process rights" (IAP Opp. at 12) is a straw man. Nowhere in Class Plaintiffs' opening Motion did they make any such suggestion, and it is demonstrably not the law;

- Like Defendants, the Individual-Action Plaintiffs claim that "the use of motions in limine and jury instructions" is sufficient to avoid any potential prejudice to Class Plaintiffs in a consolidated trial. (IAP Opp. at 14). But in a litigation as complicated at this, involving multiple plaintiff groups, different defendant types and affiliations, and complex individualized legal and factual issues concerning the Individual Actions, the notion that jury instructions can be a miracle cure for all the likely prejudice is unrealistic, rank speculation; and

13

- The Individual-Action Plaintiffs argue that Class Plaintiffs are "likely to benefit from the presence of the Opt-Out Plaintiffs at trial" because they will "testify that they were lied to directly by Defendants, including in face-to-face meetings." (IAP Opp. at 17). Setting aside the fact that Class Plaintiffs' counsel, who have experience in trying securities fraud actions to a jury, have determined otherwise, the Individual-Action Plaintiffs' argument demonstrates that Class Plaintiffs' concerns about prejudice are correct. The argument is inherently premised on the jury being confused about the relevance of the Individual-Action Plaintiffs' testimony to the Class. If the jury assumes that Defendants lied to the Class Plaintiffs or other Class members in face-to-face meetings, that would be improper, entirely irrelevant, and confusing in a case where the Class is relying on the fraud-on-the-market presumption of reliance. But, more likely, Defendants will exploit the Individual-Action Plaintiffs' testimony to imply that knowledge of the non-public information provided to the Individual-Action Plaintiffs in solicitation materials and one-on-one conversations can be imputed to the Class, creating additional confusion around issues of falsity and materiality. There is also the risk Defendants will imply the lack of face-to-face meetings by Class Plaintiffs, a failure to do other diligence, or a failure to directly read Defendants' statements, undermine reliance or otherwise render the claims brought by Class Plaintiffs (and with them, the entire Class) infirm. These are unnecessary risks to which the Class simply should not be exposed.

## **CONCLUSION**

The Court should grant Class Plaintiffs' motion for separate trials of the Class Action and the Individual Actions pursuant to Rule 42(b) so that the Class Action may be tried separately, and before, the Individual Actions.

Dated:  March 7, 2024                                           Respectfully submitted,


/s/ Andrew J. Entwistle                                         /s/ Trig Smith
Andrew J. Entwistle (attorney-in-charge)                        Trig Smith (*pro hac vice*)
State Bar No. 24038131                                          Lonnie Browne (*pro hac vice*)
Callie Crispin                                                  John Kelley (*pro hac vice*)
State Bar No. 24104231                                          **ROBBINS GELLER RUDMAN &**
Sal H. Lee                                                      **DOWD LLP**
State Bar No. 24127308                                          655 West Broadway, Suite 1900
**ENTWISTLE & CAPPUCCI LLP**                                    San Diego, CA 92101
500 West 2nd Street, Suite 1900                                 Telephone: (619) 231-1058
Austin, TX 78701                                                Facsimile: (619) 231-7423
Telephone: (512) 710-5960
Facsimile: (212) 894-7278                                       *Court-Appointed Co-Lead Counsel*

-and-
Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Court-Appointed Co-Lead Counsel*


Carol Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust*

15

**CERTIFICATE OF SERVICE**

I certify that on March 7, 2024, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle