# EXHIBIT A

2024 WL 1635680
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

IN RE UNDER ARMOUR SECURITIES LITIGATION

Civil Action No. RDB-17-0388
|
Signed April 16, 2024

### MEMORANDUM OPINION

Richard D. Bennett, United States Senior District Judge

 **\*1** The instant securities class action against Defendants Under Armour, Inc. ("Under Armour") and Kevin Plank ("Plank") (collectively, "Defendants") has been ongoing since February 10, 2017. (ECF No. 1.) A twelve-day jury trial is scheduled to begin on July 15, 2024. (ECF No. 295.)

This matter comes before the Court on the three (3) motions to exclude expert testimony and opinions filed by Plaintiffs (ECF Nos. 302, 305, 308), and four (4) motions to exclude expert testimony and opinions filed by Defendants (ECF Nos. 309, 311, 314, 316) (collectively with ECF Nos. 302, 305, 308, the "*Daubert* Motions"). The Court heard oral argument on the *Daubert* Motions on April 9, 2024. (ECF No. 387.) As the seven pending *Daubert* Motions (ECF Nos. 302, 305, 308, 309, 311, 314, 316) are all DENIED by separate Order, this Memorandum Opinion expounds upon the Court's reasoning.

### BACKGROUND

This securities class action is scheduled for a twelve-day trial beginning on July 15, 2024. (ECF No. 295.) The parties' *Daubert* Motions concern the parties' disagreement as to whether one of the proposed experts may testify at all [1] and whether certain of the proposed experts' testimony and opinions should be limited. Specifically, Defendants move to exclude entirely testimony and opinions of Mark A. Cohen ("Cohen"), Plaintiffs' proffered experiential expert on the retail and apparel industry, (ECF No. 314); and Plaintiffs move to exclude certain testimony of Defendant Under Armour's proffered rebuttal expert to Cohen, Laurie Wilson ("Wilson"), (ECF No. 308). Defendants seek to limit the testimony and opinions of Professor M. Todd Henderson

("Henderson"), Plaintiffs' proffered expert on Plank's trading of Under Armour stock and Plank's Rule 10b5-1 trading plan, (ECF No. 309); and Plaintiffs seek to limit the testimony and opinions of Defendant Plank's proffered rebuttal expert to Henderson, Wayne Guay ("Guay"), (ECF No. 305). Defendants have also moved to limit the testimony and opinions of Plaintiffs' proffered accounting expert D. Paul Regan ("Regan"). (ECF No. 11.) Lastly, Defendants seek to limit the testimony and opinions of Dr. Matthew Cain, Ph.D. ("Cain"), Plaintiffs' proffered market efficiency, materiality, loss causation, and damages expert, (ECF No. 316); and Plaintiffs seek to limit the testimony and opinions of Defendant Under Armour's proffered rebuttal expert to Cain, Paul A. Gompers ("Gompers"), (ECF No. 302).

[1]   While Defendants' written submissions requested to exclude entirely the testimony and opinions of Professor M. Todd Henderson (ECF No. 309) and Matthew D. Cain, Ph.D. (ECF No. 316), Defendants clarified on the record at the April 9, 2024 hearing that they only sought to limit Henderson and Cain's testimony. Similarly, while Plaintiffs' written submissions requested to exclude Laurie Wilson entirely (ECF No. 308), Plaintiffs clarified on the record at the April 9, 2024 hearing that they only sought to limit Wilson's testimony.

### STANDARD OF REVIEW

Pursuant to Rule 104(a) of the Federal Rules of Evidence, courts are responsible for determining "preliminary questions concerning the qualifications of a person to be a witness" and "the admissibility of evidence." This includes the admissibility of expert testimony under Rule 702, which provides:

 **\*2** A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

  (b) the testimony is based on sufficient facts or data;

  (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Pursuant to Rule 702, a properly qualified expert witness may testify regarding technical, scientific, or other specialized knowledge in a given field if the testimony would assist the trier of fact in understanding the evidence or to determine a fact in issue, and the testimony is both reliable[2] and relevant.[3] *United States v. Young*, 916 F.3d 368, 379 (4th Cir. 2019). The proponent of the expert testimony in question must establish admissibility by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592 n.10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

[2] To be reliable, testimony must be grounded "in the methods and procedures of science," and it must be something more than subjective belief or unsupported assumptions. *Daubert*, 509 U.S. at 589–90, 113 S.Ct. 2786.

[3] Evidence or testimony must be relevant to the extent that it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. An expert's testimony is relevant if it has " 'a valid scientific connection to the pertinent inquiry.' " *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (citation omitted).

A court's role in applying Rule 702 is to act as a gatekeeper, ensuring that expert testimony is relevant and reliable. *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (holding that *Daubert*'s gatekeeping obligation applies not only to scientific testimony but to all expert testimony); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) ("Under Rule 702 ... [c]ourts are required to act as 'gatekeepers' to ensure that expert testimony is relevant and reliable." (quoting *Cooper*, 259 F.3d at 199)). However, the Supreme Court did not intend the gatekeeper role to replace the adversary system or the role of the jury: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786; *see United States v. Moreland*, 437 F. 3d 424, 431 (4th Cir. 2006) (recognizing that "expert testimony is

subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"). "[C]onsequently, the rejection of expert testimony is the exception rather than the rule." *Lipitor (Atorvastatin Calcium) Mktg. v. Pfizer, Inc.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013)).

Although Rule 702 allows for a liberal introduction of expert evidence, "courts must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.' " *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court set forth several factors for courts to consider in assessing the admissibility of expert testimony: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *Id.* at 593–94, 113 S.Ct. 2786; *see Belville v. Ford Motor Co.*, 919 F.3d 224, 233 (4th Cir. 2019). The *Daubert* factors are "neither definitive, nor exhaustive." *Cooper*, 259 F.3d at 199 (citing *Kumho Tire Co.*, 526 U.S. at 150, 119 S.Ct. 1167). Rather, "[t]he district court must be granted 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.' " *United States v. McLean*, 695 F. App'x 681, 684 (4th Cir. 2017) (quoting *United States v. Wilson*, 484 F.3d 267, 273 (4th Cir. 2007)).

## ANALYSIS

### I. Defendants' Motion to Exclude the Opinions and Testimony of Plaintiffs' Proposed Expert Mark A. Cohen (ECF No. 314)

**\*3** Plaintiffs proffer Mark A. Cohen as an experiential expert on the retail apparel business. Cohen has "over three decades" of experience in the apparel industry, including as Chairman and Chief Executive Officer ("CEO") of three different companies. (ECF No. 303-22 \*SEALED\* at 51–54.) He currently is on Columbia University Business School's faculty as Director of Retail Studies and an Adjunct Professor of Retailing. (*Id.*) Cohen submitted one report dated April 3, 2023 (ECF No. 303-22 \*SEALED\*) and a reply report

responding to Under Armour's retail expert Laurie Wilson dated June 30, 2023 (ECF No. 303-23 *SEALED*).

Defendants have moved to exclude Cohen's opinions and testimony entirely for failure to meet the admissibility requirements of Rule 702 and *Daubert*. (ECF No. 314.) First, Defendants complain that Cohen offers his own interpretation of selective facts, unsupported by any meaningful expert analysis. (*Id.* at 4–7.) This challenge, however, does not go to the reliability of Cohen's expert testimony. Cohen is offered as an experiential expert, who may testify on the basis of either "experience alone" or "experience in conjunction with other knowledge, skill, training or education." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's notes on 2000 amendments). Such testimony satisfies the reliability requirement where the expert can "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Id.* (quoting Fed. R. Evid. 702 advisory committee's notes on 2000 amendments). Applying this standard, this Court finds that Cohen has sufficiently explained how his experience in the retail apparel industry informed his testimony in this case. With respect to Defendants' challenge to Cohen's testimony as "his own interpretation of selective facts," Defendants are free to explore this issue on cross-examination. With respect to Defendants' argument that Cohen's testimony is unsupported by any meaningful expert analysis, this Court is satisfied that Cohen performed extensive analysis to prepare his reports. (ECF No. 303-22 *SEALED* at 39–50; 303-23 *SEALED* at 38–39; 303-6 *SEALED*.)

Second, Defendants argue that his opinions are "flawed" and "unreliable," improperly speculating about Defendants' state of mind (ECF No. 314 at 8–11), witness credibility (*id.* at 11), Defendants' sales practices (*id.* at 12–14), and areas outside of his area of expertise—specifically, disclosures (*id.* at 14–16). Defendants' arguments seeking to exclude Cohen on the bases that he improperly speculates as to witness credibility, Under Armour's sales practices, and disclosures mischaracterize Cohen's proffered testimony. With respect to Defendants' argument seeking to exclude Cohen's testimony and opinions because he improperly speculates about Defendants' state of mind and intentions, this Court emphasizes that care must be taken during trial to avoid crossing boundaries that would amount to impermissible legal conclusions or opinions about Defendants' state of mind or intentions. With that reservation, Defendants' Motion to Exclude the Opinions and Testimony

of Plaintiffs' Proposed Expert Mark A. Cohen (ECF No. 314) is DENIED.

## II. Plaintiffs' Motion to Exclude the Opinions and Testimony of Defendant Under Armour, Inc.'s Proposed Expert Laurie Wilson (ECF No. 314)

Defendant Under Armour proffers Laurie Wilson as a rebuttal expert to Cohen. Wilson has over three decades of professional experience leading strategy and planning at large retailers, and currently serves as Chief Supply Chain Officer and Head of Planning, Allocation, and Pricing at JCPenney. (ECF No. 310-1 *SEALED* at 5–7.) Wilson submitted one report dated May 15, 2023 (ECF No. 310-1 *SEALED*).

**\*4**  In their written submissions, Plaintiffs move to exclude Wilson's testimony and opinions entirely. (ECF No. 310 *SEALED* at 4–16.) At oral argument, Plaintiffs clarified that they do not seek to exclude Wilson's testimony entirely, limiting their challenge to Wilson's general opinions regarding pull forward practices. Specifically, Plaintiffs take issue with paragraphs 90–96 of Wilson's report, wherein she offers "an illustrative, but not exhaustive, list of why a manufacturer-requested pull forward may occur." (ECF No. 310-1 *SEALED* ¶¶ 90–96.) While Plaintiffs argue that such opinions are irrelevant and do not satisfy *Daubert* or Rule 702, this Court is unpersuaded that exclusion of Wilson's opinions on pull forwards is necessary or appropriate. As such, Plaintiffs' Motion to Exclude the Opinions and Testimony of Defendant Under Armour, Inc.'s Proposed Expert Laurie Wilson (ECF No. 314) is DENIED.

## III. Defendants' Motion to Exclude the Opinions and Testimony of Plaintiffs' Proposed Expert Professor M. Todd Henderson (ECF No. 309)

Plaintiffs proffer M. Todd Henderson, the Michael J. Marks Professor of Law at the University of Chicago Law School, (ECF No. 303-25 *SEALED* at 2–3), as an expert concerning Plank's trading of Under Armour stock and Plank's Rule 10b5-1 trading plan.[4]  Henderson submitted two reports: one report dated April 3, 2023 (ECF No. 303-25 *SEALED*); and a reply report to Plank's proposed rebuttal expert Wayne Guay (ECF No. 303-26 *SEALED*).

[4]  Under Rule 10b5-1, corporate insiders, such as Plank, can set up trading plans to sell company shares at predetermined times and amounts to avoid accusations of illegal insider trading. *See* 17 C.F.R.

§ 240.10b5-1(c) (stating that it is an affirmative defense in insider trading cases that the defendant's purchases or sales were made pursuant to a "written plan for trading securities").

In their written submissions, Defendants moved to exclude Henderson's testimony and opinions entirely. (ECF No. 309 at 9–19.) At oral argument, Defendants clarified that they do not seek to exclude Henderson's testimony entirely, limiting their challenge to Henderson's opinion on Mr. Plank's intent, motives, and state of mind, (ECF No. 309-1 at 9–11; ECF No. 349 at 7–9); Henderson's " 'hallmarks' for a legitimate 10b5-1 plan," (ECF No. 309-1 at 11–17; ECF No. 349 at 9–12); Henderson's "available-to-sell" metric, (ECF No. 309-1 at 17–19; ECF No. 349 at 13–14); and Henderson's opinion that 10b5-1 plans are often abused.

With respect to Henderson's "available-to-sell" metric, Plaintiffs clarified on the record that Henderson does not intend to use this metric to compare Plank's sales to other CEOs' sales. Rather, Henderson only intends to use this metric to compare Plank to himself. Defendants concede that Henderson's "available-to-sell" metric—limited to this context—is appropriate. [5] As such, this Court need not address this issue further.

[5]     Defendants' concern was that Henderson would use this "available-to-sell" metric to compare Plank's sales to the sales of other CEOs using CEOs' total shareholdings.

With respect to Henderson's hallmarks for a legitimate 10b5-1 plan, Defendants concede that Henderson's hallmarks have been used for background in other cases, *see, e.g.*, *In re Twitter, Inc. Sec. Litig.*, No. 16-cv-05314-JST, 2020 WL 9073168, at *—— – ——, 2020 U.S. Dist. LEXIS 252718, at *20–23 (N.D. Cal. Apr. 20, 2020); *Smilovits v. First Solar, Inc.*, No. CV12-0555-PHX-DGC, 2019 WL 7282026 at *—— – ——, 2019 U.S. Dist. LEXIS 221424, at *9–17 (D. Ariz. Dec. 27, 2019); *In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2012 WL 5463214 at *—— – ——, 2012 U.S. Dist. LEXIS 160555, at *7–14 (S.D. Cal. Nov. 8, 2012), but dispute Henderson's application of the hallmarks to the trading activity at issue in this case, contending that other courts have not allowed Henderson to go that far. While Henderson was not able to discuss the trading activity at issue in the *Twitter* case, it does not appear that *Smilovits* and *Novatel* were so limiting. To be sure, Professor Henderson will not be permitted to offer his legal opinions or conclusions as part of his testimony, and Defendants may object at trial

if they believe Henderson crosses the line into such opinions. The same is true with respect to any potential testimony and opinions about Plank's intent, motives, and state of mind. Lastly, to the extent that Henderson intends to opine that 10b5-1 plans are often abused, Henderson is precluded from offering this opinion at trial. With those reservations, the Defendants' Motion to Exclude the Opinions and Testimony of Plaintiffs' Proposed Expert Professor M. Todd Henderson (ECF No. 309) is DENIED.

### IV. Plaintiffs' Motion to Exclude Certain Testimony and Opinions of Defendant Kevin A. Plank's Proposed Expert Wayne Guay (ECF No. 305)

**\*5** Defendant Plank proffers Wayne Guay, a faculty member of the Wharton School of Business at the University of Pennsylvania for over 25 years, (ECF No. 306-1 \*SEALED\* at 4), as a rebuttal expert to Henderson ("Henderson"). Guay submitted one report dated May 15, 2023 (ECF No. 306-1 \*SEALED\*).

Plaintiffs move to exclude two paragraphs contained in Guay's report—paragraphs 72 and 80. (ECF No. 305.) In brief, Plaintiffs complain that Guay purports to set forth "the three key SEC requirements of 10b5-1 plans," but he ignores the "good faith" requirement set forth in Rule 10b5-1(c)(ii), warranting exclusion under Fed. R. Evid. 702. (ECF No. 306 \*SEALED\* at 3–5.) This Court is unpersuaded. Simply stated, there is nothing in the two challenged paragraphs which is "patently incorrect," and Guay does not deny the existence of a "good faith" requirement under Rule 10b5-1. As such, there is no reason to exclude either challenged paragraph and Plaintiffs' Motion to Exclude Certain Testimony and Opinions of Defendant Kevin A. Plank's Proposed Expert Wayne Guay (ECF No. 305) is DENIED.

### V. Defendants' Motion to Exclude Certain Opinions and Testimony of Plaintiffs' Proposed Expert D. Paul Regan (ECF No. 311)

Plaintiffs proffer D. Paul Regan, a CPA with over 50 years of accounting and auditing experience, (ECF No. 303-28 \*SEALED\* at 9), as an expert on disclosure rules and regulations issued by the U.S. Securities and Exchange Commission ("SEC") and U.S. Generally Accepted Accounting Principles ("GAAP"). Regan submitted an expert report dated April 3, 2023 (ECF No. 303-28 \*SEALED\*) and a reply report responding to Under Armour's

accounting expert Michael F. Maloney dated June 30, 2023 (ECF No. 303-29 *SEALED*).

According to Defendants, several of Regan's opinions are inadmissible, including his opinions on pull forwards (ECF No. 313 *SEALED* at 4–11) and "tone at the top" (*id.* at 11–13.) Defendants further argue that Regan's "legal opinions regarding Under Armour's purported obligations under the terms of its arrangement with Quetico" should be excluded as Regan—a non-attorney—is unqualified to offer such an opinion. (*Id.* at 13–14.) Lastly, Defendants contend that Regan should not be permitted to testify about "unsubstantiated" allegations of GAAP violations. (*Id.* at 14–15.) During oral argument, Plaintiffs confirmed Regan's Item 303 materiality opinions and the "unsubstantiated" allegations of GAAP will be excluded. Thus, this Court need not address these arguments further.

This Court is unpersuaded that Regan's pull forward quantifications are unreliable and invade the province of the jury, and further unpersuaded that Regan has offered legal opinions on the Quetico deal. Considering Regan's "tone at the top" opinion, this Court agrees that this opinion invades the authority of the trier of fact to determine for itself the plain meanings of the evidence presented at trial. As such, Regan is precluded from testifying as to the "tone at the top." With that reservation, the Defendants' Motion to Exclude the Opinions and Testimony of Plaintiffs' Proposed Expert D. Paul Regan (ECF No. 311) is DENIED.

### VI. Defendants' Motion to Exclude the Opinions and Testimony of Plaintiffs' Proposed Expert Matthew D. Cain, Ph.D. (ECF No. 316)

Plaintiffs proffer Dr. Matthew Cain, Ph.D. as their market efficiency, materiality, loss causation, and damages expert. Cain is a Senior Fellow at the Berkeley Center for Law and Business where he teaches courses and conducts research related to finance, economics, accounting, law, and business. (ECF No. 303-19 *SEALED* at 7.) Cain submitted two reports relevant to the instant motion—one report dated April 3, 2023 (ECF Nos. 303-19 *SEALED*, 303-20 *SEALED*); and a reply report to Defendant Under Armour's rebuttal expert Paul A. Gompers dated June 30, 2023 (ECF No. 303-21 *SEALED*).

**\*6** According to Defendants, several of Cain's opinions are inadmissible, including: (1) his opinions related to loss causation, (ECF No. 316-1 at 5–10); (2) Cain's inflation

estimates and damages, (*id.* at 10–14); and (3) his opinions related to economic materiality, (*id.* at 14–16).

This Court first considers the admissibility of Cain's opinions related to loss causation. To study and opine on the stock price movements for Under Armour over the Class Period and on relevant days, Cain performed an event study. (ECF No. 303-19 *SEALED* ¶¶ 40–113.) It is well-established that event studies are a common method of establishing loss causation:

> The tool most often used by experts to isolate the economic losses caused by the alleged fraud is the "event study." An event study is a statistical regression analysis that examines the effect of an event on a dependent variable, such as a corporation's stock price. For securities-fraud purposes, the "event" analyzed is the disclosure of the alleged fraud to the market.

*See In re Apollo Grp. Inc. Sec. Litig.*, 509 F. Supp. 2d 837, 844 (D. Ariz. 2007) (internal citations omitted); *see also City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 688 (D. Md. 2018); *SEC v. Jacoby*, No. CCB-17-3230, 2022 WL 980113, at *—— – ——, 2022 U.S. Dist. LEXIS 59959, at *5–6 (D. Md. Mar. 30, 2022); *Smilovits*, 2019 WL 7282026, at *—— – ——, 2019 U.S. Dist. LEXIS 221424, at *19; *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 827 F. Supp. 2d 559, 571 (D.S.C. 2011). Cain's event study identifies statistically significant movements in Under Armour's stock price; identifies the Under Armour-specific news that caused Under Armour's stock price to change; quantifies the amount of the daily stock price movement in Under Armour's stock price caused by the Under Armour-specific news by controlling for general market and industry factors; and analyzes the news that caused the stock price movements to determine whether, and if so, how it related to the alleged fraudulent misstatements and omissions. (ECF No. 303-19 *SEALED* ¶¶ 40–113.)

Defendants do not challenge Cain's event study; rather, Defendants contend that Cain's opinions on loss causation are unreliable because he failed to "conduct[ ] ... analysis to establish the necessary predicate of his conclusions regarding

foreseeability—*i.e.*, what was the specific information that should have been disclosed earlier and how would *that* information have impacted the 'timing, level, and risk of expected future cash flows' at different points in the Class Period." (ECF No. 316-1 at 7.) While Defendants critique Cain's opinions as "rest[ing] on the flawed opinion that the specific dollar amount of investor losses was foreseeable at the start of the Class Period," [6] Defendants have not provided a basis for excluding Cain's opinions on loss causation. Cain is well-qualified and applies a generally accepted methodology for determining loss causation. Such procedural critiques of Cain's methodology—which, to be clear, do not concern reliability—are more appropriately explored during cross-examination.

[6]     This Court finds it prudent to note that Cain merely opines that *if* Plaintiff proves their fraud allegations, *then* it was foreseeable at the time of the alleged misstatements that when the relevant truth became known through partial disclosures, the market values of Under Armour's stock would fall. (*See* ECF No. 303-19 ¶¶ 44–45.)

 **\*7**  Briefly considering Defendants' argument that Cain relies on unsupported assumptions, suggesting "the assumptions [he] ascribes to Plaintiffs are neither present in the [Third Amended Complaint] nor consistent with Plaintiffs' theory of the case," (ECF No. 316-1 at 8–10), "the Court must look to Plaintiffs, not Defendants, for the nature of their liability case." *Smilovits*, 2019 WL 7282026, at \*——, 2019 U.S. Dist. LEXIS 221424, at \*30. Plaintiffs claim they can prove their case and support Cain's opinion that the full amount of the fraud-related inflation was in the stock from the start of the Class Period. As such, the jury must assess the validity of Cain's conclusions.

Turning to Cain's inflation estimates and damages, Defendants contend that Cain "fails to reliably apply the constant dollar method because he offers no reliable basis for his opinion that the allegedly concealed information had the same value to investors as the corrective disclosures and remained constant throughout the Class Period ... assum[ing] that the 'nature of the misrepresented and/or omitted information did not change during the Class Period' insofar as 'Plaintiffs expect to prove that Defendants knew, or recklessly disregarded, that both prior to and during the Class Period Under Armour's customer demand was declining and revenue growth deteriorating.' " (ECF No. 316-1 at 11–12 (quoting ECF No. 303-19 \*SEALED\* ¶ 116).) According

to Defendants, Cain was required to assess "whether the *magnitude* of the alleged decline in demand that was allegedly known at the beginning of the Class Period was the same as the magnitude of the alleged decline in demand that was ultimately revealed on the alleged corrective disclosure dates," and because he did not, his assumption that the nature of the misrepresented and/or omitted information did not change during the Class Period is unreasonable and unsupported. (*Id.* at 12.)

To evaluate the level of artificial inflation in the stock price attributable to the fraud on each day of the Class Period, Cain applied the "constant dollar" method. (ECF No. 303-19 \*SEALED\* ¶ 115.) According to Cain, this method is "commonly relied upon" and "used by a wide variety of experts in matters such as this, and in [his] experience, is often advocated by defense experts." (*Id.* (citing Jeff G. Hammel & B. John Casey, *Sizing Securities Fraud Damages: "Constant Percentage" on Way Out?*, NEW YORK L.J. (2009))); *see also Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 908 (S.D. Cal. 2019). This method is calculated by working chronologically backward from the disclosures of the relevant truth and cumulating the artificial inflation in the stock price on each day. (ECF No. 303-19 \*SEALED\* ¶¶ 114–126.)

 **\*8**  At bottom, this Court is satisfied that Cain's constant dollar inflation method is sufficiently reliable. As Defendants concede, (ECF No. 356 at 2), courts commonly accept the constant dollar inflation method. *See, e.g.*, *Baker*, 423 F. Supp. 3d at 908 ("[T]he constant dollar inflation method is commonly used to calculate 10b-5 damages."). And, as in *Baker*, because "the jury is ultimately responsible for deciding whether [constant dollar inflation], or another calculation, is a reasonable measurement of damages," Cain's "decision to use the [constant dollar inflation] method in this case is sufficiently reliable for purposes of *Daubert*." *Id.* To the extent that Defendants contend that there is evidence in the record to show that the magnitude of the fraud fluctuated throughout the Class Period, the remedy is not exclusion, but "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.

Lastly, Defendants argue that Cain's opinions on economic materiality should be excluded because it usurps the role of the judge and the jury and will confuse and mislead the jury. (ECF No. 316-1 at 14–16.) Plaintiffs note that it is permissible for experts to opine "on the concept of materiality in the field of economics," as Cain does here. (ECF No. 332 \*SEALED\*

at 21–22 (citing *Baker v. SeaWorld, Ent., Inc.*, 423 F. Supp. 3d 878, 898–99 (S.D. Cal. 2019)).) Plaintiffs ask that if the Court finds that the phrase "economic materiality" risks confusion, the Court should simply instruct Cain to describe his opinion as "economic importance." (*Id.*) While this Court sees no reason to exclude Cain's opinions on economic materiality, this Court agrees that, to avoid confusion, Cain should describe his opinions as relating to economic "importance" as opposed to economic "materiality." With that reservation, the Defendants' Motion to Exclude the Opinions and Testimony of Plaintiffs' Proposed Expert Matthew D. Cain, Ph.D. (ECF No. 316) is DENIED.

### VII. Plaintiffs' Motion to Exclude Certain Opinions and Testimony of Defendant Under Armour, Inc.'s Proposed Expert Paul A. Gompers (ECF No. 302)

Defendant Under Armour proffers Paul A. Gompers, the Eugene Holman Professor of Business Administration at Harvard Business School, as rebuttal expert to Cain. Gompers submitted one report dated May 15, 2023 (ECF No. 304-1 *SEALED*).

Plaintiffs move to exclude two paragraphs contained in Gompers' report—paragraphs 8 and 46. (ECF No. 305.) In brief, Plaintiffs complain that Gompers' report "contains inaccurate statements of law with respect to loss causation[,] set[ting] forth a standard for loss causation that conflicts with the standard articulated in controlling Fourth Circuit precedent." (ECF No. 304 *SEALED* at 2 (citing ECF No. 304-1 *SEALED* ¶¶ 8, 46)). "Because Gompers's opinion, by introducing an incorrect loss causation standard, would (i) usurp the role of the Court and fail to help the jury, and (ii) mislead the jury, confuse the issues, and unfairly prejudice Plaintiffs—without any countervailing probative value—the Court should exclude ¶¶ 8 and 46 of the Gompers [r]eport and order [Defendants] not to elicit similar testimony from Gompers at trial." (*Id.* at 2.)

Considering whether Gompers sets forth an incorrect legal standard, to prove a violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Plaintiffs must establish: (1) a material misrepresentation (or omission); (2) scienter (i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation;" (5) economic loss; and (6) loss causation (i.e., a causal connection between the material misrepresentation and the loss). *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d

577 (2005) (internal citations omitted). The parties' dispute over paragraphs 8 and 46 of the Gompers' Report (ECF No. 304-1 *SEALED*) involves the sixth element, loss causation.

**\*9** According to Plaintiffs, Gompers' Report is inconsistent with the Fourth Circuit's loss causation standard.[7] According to Defendants, the Gompers' challenged opinions relate to damages, not liability.

[7] Plaintiffs are mainly concerned with that Gompers "sets forth his own purported standard for establishing loss causation that would incorrectly burden Plaintiffs with identifying some 'but-for disclosure' that Defendants should have made to investors during the class period. (ECF No. 304 *SEALED* at 4.) Plaintiffs criticize paragraphs 8 and 46 as "seek[ing] not only to set forth a legal standard for loss causation, but also to narrowly prescribe what a plaintiff must do to meet that standard[,] ... [which] is inconsistent with the Fourth Circuit's approach to loss causation." (*Id.* at 4–5.)

As the Fourth Circuit explained in *Singer v. Reali*, 883 F.3d 425 (4th Cir. 2018),

[T]he ultimate loss causation inquiry under either the corrective disclosure theory or the materialization of a concealed risk theory is the same: whether a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." That is, pursuant to each theory, the plaintiff must show "that the loss caused by the alleged fraud results from the 'relevant truth ... leak[ing] out.' "

*Id.* at 446 (quoting *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261–62 (2d Cir. 2016)). "[T]o establish 10b-5 liability, a plaintiff need only prove that defendant's misrepresentation was a *substantial* cause of the loss by showing '[a] direct or proximate relationship between the loss and the misrepresentation.' " *Miller v. Asensio & Co.*, 364 F.3d 223, 232 (4th Cir. 2004) (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 360 (4th Cir. 1996)). "On the other hand, recovering out-of-pocket damages based on the market price of a security ... 'require[s] elimination of that portion of the price decline that is the result of forces unrelated to the wrong,' so as to limit recovery to 'actual damages on account of the act complained of.' " *Id.* (quoting *In re Exec. Telecard, Ltd. Sec. Litig.*, 979 F. Supp. 1021, 1025 (S.D.N.Y. 1997); 15 U.S.C. § 78bb(a)).

Plaintiffs' arguments mischaracterize Gompers' opinions as relating to establishing the legal element of loss causation. According to Gompers, he has not opined, and does not intend to opine at trial, that identification of but-for disclosures is a necessary component for establishing the loss causation element of a Rule 10b-5 claim. (ECF No. 331-1 at 16–17, 19–20.) Because paragraphs 8 and 46 are appropriately limited to the issue of assessing damages, Gompers' opinions do not conflict with Fourth Circuit law. Accordingly, Plaintiffs' Motion to Exclude Certain Testimony and Opinions of Defendant Under Armour, Inc.'s Proposed Expert Paul A. Gompers (ECF No. 302) is DENIED.

## CONCLUSION

For the reasons stated above as well as on the record at this Court's April 9, 2024 hearing, Defendants' Motion to Exclude the Opinions and Testimony of Professor Mark A.

Cohen (ECF No. 314) is DENIED; Plaintiffs' Motion to Exclude the Testimony and Opinions of Defendant Under Armour, Inc.'s Proposed Expert Laurie Wilson (ECF No. 308) is DENIED; Defendants' Motion to Exclude the Opinions and Testimony of Professor M. Todd Henderson (ECF No. 309) is DENIED; Plaintiffs' Motion to Exclude Certain Testimony and Opinions of Defendant Kevin A. Plank's Proposed Expert Wayne Guay (ECF No. 305) is DENIED; Defendants' Motion to Exclude Certain Opinions and Testimony of D. Paul Regan (ECF No. 311) is DENIED; Defendants' Motion to Exclude the Opinions and Testimony of Matthew D. Cain, Ph.D. (ECF No. 316) is DENIED; and Plaintiffs' Motion to Exclude Certain Testimony and Opinions of Defendant Under Armour, Inc.'s Proposed Expert Paul A. Gompers (ECF No. 302) is DENIED. A separate Order follows.

**All Citations**

--- F.Supp.3d ----, 2024 WL 1635680

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.