# **Exhibit A**

Case 4:19-cv-00957   Document 782-2   Filed on 08/21/24 in TXSD   Page 2 of 7

2024 WL 3710186
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

IN RE: CCIV / LUCID MOTORS
SECURITIES LITIGATION,

Max Royal LLC; Seung R. Lee; Hee K.
Lee; Aaron Lan; Paradigm Business Park
LLC; Sichao Xu, Plaintiffs-Appellants,
v.
Atieva, Inc., dba Lucid Motors; Peter
Rawlinson, Defendants-Appellees.

No. 23-16049
|
Argued and Submitted June 13,
2024 San Francisco, California
|
Filed August 8, 2024

**Synopsis**
**Background:** Investors brought putative class action against electric car manufacturer and its chief executive officer (CEO) for securities fraud under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, alleging defendants made misrepresentations about manufacturer that affected stock price of special purpose acquisition company (SPAC) in which they were shareholders and which later acquired manufacturer. Defendants moved to dismiss for lack of standing and failure to state a claim. The United States District Court for the Northern District of California, Yvonne Gonzalez Rogers, J., 2023 WL 325251, granted motion in part and denied it in part. Investors appealed.

**Holdings:** The Court of Appeals, Gould, Circuit Judge, held that:

[1] as a matter of first impression, standing to bring a claim under § 10(b) is limited to purchasers and sellers of the security about which the misrepresentation is made, and

[2] investors in SPAC lacked standing to bring claim under § 10(b) based on misrepresentations about manufacturer.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Lack of Standing.

West Headnotes (5)

[1] **Federal Courts** 🔗 **Pleading**

A dismissal for failure to state a claim is reviewed de novo. Fed. R. Civ. P. 12(b)(6).

[2] **Federal Courts** 🔗 **Dismissal for failure to state a claim**

On review of the grant of a motion to dismiss for failure to state a claim, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6).

[3] **Federal Courts** 🔗 **Standing**

A district court's decision regarding standing is reviewed de novo.

[4] **Securities Regulation** 🔗 **Buyers or sellers**

As a bright-line rule, standing to bring a securities fraud claim under § 10(b) is limited to purchasers and sellers of the security about which the alleged misrepresentations were made.

Securities Exchange Act of 1934 § 10, 🚩 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

[5] **Securities Regulation** 🔗 **Buyers or sellers**

Investors who purchased stock in special purpose acquisition company (SPAC) lacked standing under § 10(b) to bring securities-fraud action against electric car manufacturer and its CEO, both of which were shareholders in SPAC, based on allegations that manufacturer and CEO made misrepresentations about manufacturer, that misrepresentations affected stock price of SPAC at time when it was widely speculated that SPAC would acquire manufacturer but no such merger had yet been announced, and that SPAC subsequently acquired manufacturer;

investors did not purchase or sell manufacturer's stock, alleged misrepresentations were made about manufacturer rather than SPAC, and manufacturer's alleged misrepresentations about itself could not be imputed to SPAC, which was separate company at that time. Securities Exchange Act of 1934 § 10, 🔖 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

Appeal from the United States District Court for the Northern District of California, Yvonne Gonzalez Rogers, District Judge, Presiding, D.C. No. 4:21-cv-09323-YGR

**Attorneys and Law Firms**

Jake Bissell-Linsk (argued), Carol C. Villegas, and Guillaume Buell, Labaton Keller Sucharow LLP, New York, New York; Jeremy A. Lieberman and Brenda F. Szydlo, Pomerantz LLP, New York, New York; Shannon L. Hopkins, Levi & Korsinsky LLP, New York, New York; for Plaintiffs-Appellants.

Brian M. Burnovski (argued), Daniel J. Schwartz, and Chui-Lai Cheung, Davis Polk & Wardwell LLP, New York, New York; Neal Potischman, Davis Polk & Wardwell LLP, Menlo Park, California; for Defendants-Appellees.

Before: Ronald M. Gould, Richard C. Tallman, and Ryan D. Nelson, Circuit Judges.

## OPINION

GOULD, Circuit Judge:

Plaintiff-investors brought this securities fraud class action against auto manufacturer Atieva, Inc., d/b/a Lucid Motors ("Lucid") and Lucid CEO Peter Rawlinson (together, "Defendants"), alleging that Defendants made misrepresentations about Lucid that affected the stock price of a company in which Plaintiffs were shareholders and that later acquired Lucid. Defendants moved to dismiss Plaintiffs' action under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), contending that Plaintiffs lacked standing and that Plaintiffs had failed to allege a material misrepresentation. The district court held that Plaintiffs had standing but granted Defendants' motion to dismiss on the grounds that Plaintiffs

had not sufficiently alleged materiality. We have jurisdiction under 🔖 28 U.S.C. § 1291, and we affirm the dismissal of the suit on the alternative ground that Plaintiffs lack standing.

## I. BACKGROUND

### A. Facts

Before February 2021, Lucid was a private company in the business of manufacturing electric cars. On February 22, 2021, Lucid was acquired by a nonparty company, Churchill Capital Corporation IV ("CCIV"), and then these two companies merged into one. CCIV was a "special purpose acquisition company" ("SPAC"). SPACs are publicly traded companies created for the sole purpose of acquiring another company within a limited window of time. [1]

**\*2** Merger negotiations between Lucid and CCIV occurred between January 11 and February 22, 2021. During that time, it was widely speculated that CCIV would acquire Lucid, based on extensive reporting in the financial press. However, neither CCIV nor Lucid spoke publicly about the merger negotiations during this time. On February 5 and 12, 2021, Lucid CEO Rawlinson made misrepresentations about Lucid's ability to meet certain production targets. In an interview on CNBC, Rawlinson confirmed the interviewer's understanding that "[Lucid] expect[ed] to produce 6,000 to 7,000 units [in 2021]" and represented that "we've already built our first phase of our factory in Arizona, which is good for 34,000 units." In a pre-recorded video aired by CNBC, Rawlinson stated that Lucid's cars were ready for production and would "be launching this year, this Spring [2021]."

Plaintiffs purchased CCIV stock at various times after Rawlinson's public statements but before the merger was announced. Plaintiffs did not purchase or own any interest in Lucid, because Lucid was a privately held company before the merger.

On the day that the merger was announced, Defendants first publicly disclosed that Lucid expected to produce only 577 cars in 2021, far lower than the 6,000-7,000 Rawlinson had estimated days earlier in his televised February 5 CNBC appearance. Defendants also at that time disclosed that production would begin months later than Rawlinson's previous projection. CCIV's stock price plunged in response to the unexpectedly grim production news.

**B. District Court Proceedings**

Plaintiffs filed suit, alleging that Defendants' misrepresentations and their corresponding effect on CCIV's stock price amounted to securities fraud actionable under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.

Defendants moved to dismiss Plaintiffs' claims on the grounds that Plaintiffs lacked standing and had failed to state a claim under FRCP 12(b)(6). *In re CCIV*, Case No. 4:21-cv-9323-YGR, 2023 WL 325251, at *1 (N.D. Cal. Jan. 11, 2023). On standing, Defendants "assert[ed] that to have Section 10(b) standing, plaintiffs must allege the defendant made misrepresentations about the security actually purchased or sold by the plaintiffs." *Id.* at *4. On the merits, Defendants contended that Plaintiffs had not adequately alleged a misrepresentation, scienter, or materiality. *Id.* at *1.

The district court first held that Plaintiffs had standing. *Id.* at *10. The district court agreed with Plaintiffs' construction of the legal standard for Section 10(b) standing, concluding that a plaintiff has standing if he purchased or sold a security affected by a defendant's alleged misrepresentations, even if the purchased security was not the subject of the misrepresentations. *Id.*

Proceeding to the merits, the district court concluded that Plaintiffs had not adequately pleaded that Defendants' alleged misrepresentations were material. *Id.* at *10-11. The district court granted Plaintiffs leave to amend their complaint to add materiality allegations. *Id.* at *11. But when Plaintiffs later moved to amend, the district court denied the proposed amendments as futile, concluding that Plaintiffs had not plausibly alleged materiality. The district court dismissed the action with prejudice, and Plaintiffs timely appealed both the district court's initial dismissal order and its final dismissal order denying leave to amend.

## II. ANALYSIS

### A. Standard of Review

**[1] [2] [3]** "A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Stoner v. Santa Clara Cnty Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007) (internal citations and quotation marks omitted). Likewise, a district court's decision regarding standing is reviewed *de novo*. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002).

### B. Standing

#### 1. Legal Standard

**\*3** "Section 10(b) of the Exchange Act bars conduct involving manipulation or deception, manipulation being practices that are intended to mislead investors by artificially affecting market activity, and deception being misrepresentation, or nondisclosure intended to deceive." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)); 15 U.S.C. § 78j. Section 20(a) of the Exchange Act imposes secondary liability on controlling persons involved in a primary Section 10(b) violation. *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1180 (9th Cir. 2024); 15 U.S.C. § 78t(a).

Section 10(b) gives the SEC rulemaking power to prohibit the use of "manipulative or deceptive device[s] or contrivance[s] ... in connection with the purchase or sale of any security." 15 U.S.C. 78j(b). SEC Rule 10b-5, promulgated thereunder, states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange ....
>
> (a) To employ any device, scheme, or artifice to defraud, [or]
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ...
>
> in connection with the purchase or sale of any security.

17 C.F.R. 240.10b-5.

Although the text of Section 10(b) does not provide a private right of action, courts create one, and the Supreme Court —wary of such judicially created causes of action—has cautioned against expanding it further. *See* 🔖 *Stoneridge Partners, LLC v. Sci. Atlanta, Inc.*, 552 U.S. 148, 164-65, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) ("Congress did not enact [the right of action] in the text of the relevant statutes.... [which] caution[s] against its expansion.") To limit the class of plaintiffs who may bring an action under Section 10(b), the Supreme Court has adopted the "purchaser-seller rule" (also known as the "*Birnbaum* Rule"), which confines standing to "purchasers or sellers of the stock in question." 🔖 *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 742, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The stock in question is "the security to which the prospectus, representation, or omission relates." 🔖 *Id.* at 747, 95 S.Ct. 1917. The Supreme Court recognized that the *Birnbaum* Rule's bright line could be fairly criticized as "an arbitrary restriction which unreasonably prevents some deserving plaintiffs from recovering damages." 🔖 *Id.* at 738, 95 S.Ct. 1917. But the Court was persuaded by the "countervailing advantages" of the bright-line rule—namely, that it prevented "endless case-by-case erosion" of the limitations on standing that would result from courts' engaging in a "shifting and highly fact-oriented disposition of" whether plaintiffs have standing. 🔖 *Id.* at 739, 755, 95 S.Ct. 1917.

The Second Circuit is the only circuit court to have considered Section 10(b) standing in the context we face today: alleged misstatements made in advance of an anticipated merger. In 🔖 *Menora*, the Second Circuit held that "purchasers of a security of an acquiring company do not have standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger between the two companies." 🔖 *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022); *accord* 🔖 *Ontario Pub. Serv. Emps. Union Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004). 🔖 *Menora* rejected the plaintiffs' contention that "they [had] standing because there was a sufficiently 'direct' relationship" between [the target's] misstatements about itself and the price of [the acquirer's] shares." 🔖 *Menora*, 54 F.4th

at 86. The Second Circuit reasoned that adopting "Plaintiffs' 'direct relationship' test" would result in a " 'shifting and highly fact-oriented' inquiry ... requiring courts to determine whether there was a sufficiently direct link between one company's misstatements and another company's stock price." 🔖 *Id.* at 87 (quoting 🔖 *Blue Chip*, 421 U.S. at 755, 95 S.Ct. 1917). 🔖 *Menora* instead reaffirmed 🔖 *Blue Chip*'s bright-line rule: that standing depends on "whether the plaintiff bought or sold the securities about which the misstatements were made." 🔖 *Id.* at 88 (citing 🔖 *Nortel*, 369 F.3d at 32).

**\*4**   **[4]** Here, the district court considered and expressly rejected the reasoning of the Second Circuit, noting that the Ninth Circuit had not yet spoken on the limits of Section 10(b) standing. We now address that issue and agree with the Second Circuit that the *Birnbaum* Rule and 🔖 *Blue Chip* limit Section 10(b) standing to purchasers and sellers of the security about which the alleged misrepresentations were made. Thus, we endorse and apply the bright-line rule that we think is commanded by Supreme Court precedent in 🔖 *Blue Chip*.

As noted above, 🔖 *Blue Chip* limits standing to "purchasers or sellers of the stock in question." 🔖 421 U.S. at 742, 95 S.Ct. 1917. Plaintiffs contend that the "stock in question" is "the security about which Plaintiffs allege injury," and not necessarily a security of the company that made the alleged misrepresentations. Plaintiffs further contend that the "🔖 *Blue Chip* rule merely checks whether plaintiffs allege injury from the purchase or sale of a security" and that standing is determined based on "whether the security plaintiff purchased is sufficiently *connected* to the misstatement."

For several reasons, we conclude that Plaintiffs' construction of standing is inconsistent with 🔖 *Blue Chip*. First, 🔖 *Blue Chip* says that the "stock in question" means the security about which the alleged misrepresentations were made. The Supreme Court held that a plaintiff must demonstrate he purchased or sold "the securities described in the allegedly misleading prospectus" and must allege that he was misled by "the representations contained in" "a prospectus of the issuer." 🔖 *Id.* at 727, 746, 95 S.Ct. 1917. The Court also described the "virtue of the *Birnbaum* rule," adopted by

*Blue Chip*, as "limit[ing] the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates." *Id.* at 747, 95 S.Ct. 1917.

Plaintiffs ignore the plain language of *Blue Chip* and assert that Section 10(b) standing extends to any stockowner who claims that the misstatements of another person or company negatively affected the value of the owner's stock. Under Plaintiffs' desired formulation of the standard, hypothetical plaintiffs would need only to have purchased a security —*any* security—to satisfy the purchaser-seller requirement. But Plaintiffs' interpretation of the securities laws would vastly expand the boundaries of Section 10(b) standing and contradict the express limiting purpose of the *Birnbaum* Rule. The Supreme Court has cautioned that Section 10(b) does not "provide a cause of action to the world at large," and "should not be interpreted to provide a private cause of action against the entire marketplace in which the issuing company operates." *Stoneridge*, 552 U.S. at 162, 128 S.Ct. 761 (cleaned up) (quoting *Blue Chip*, 421 U.S. at 733 n.5, 95 S.Ct. 1917).

Also, Plaintiffs' construction of Section 10(b) standing would require courts to determine "whether the security plaintiff purchased is sufficiently *connected* to the misstatement" on a case-by-case basis. Plaintiffs cite no authority for this proposition and do not point to any cases that have analyzed whether a security is sufficiently connected to a misstatement for standing purposes. Further, in proposing this "sufficiently connected" test, Plaintiffs ask us to engage in the fact-intensive inquiry that the Supreme Court expressly rejected. The Second Circuit considered a similar proposed standard— which it named the "direct relationship test"—and rejected it, reasoning that it would entail a "highly fact-oriented inquiry." *Menora*, 54 F.4th at 87 (citation and punctuation omitted).

**\*5** We agree with the Second Circuit's reasoning in *Menora* and likewise reject Plaintiffs' "sufficiently connected" test. The Supreme Court adopted a bright-line rule for standing—even at the risk of it being "arbitrary" in some cases—to avoid the type of "endless case-by-case" analysis contemplated by Plaintiffs. *See Blue Chip*, 421 U.S. at 738-39, 755, 95 S.Ct. 1917; *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1283 (11th

Cir. 2007) ("[T]he Court deliberately endorsed a standing rule that would not be subject to 'endless case-by-case erosion' by courts employing a functional analysis to every new group of potential plaintiffs." (quoting *Blue Chip*, 421 U.S. at 755, 95 S.Ct. 1917)). Plaintiffs' "sufficiently connected" test is anything but a bright-line rule and would require an extensive qualitative analysis by a court at the outset of a securities action. This is not consistent with *Blue Chip*. Instead, the plain language of *Blue Chip* makes clear that a plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities about which the alleged misrepresentations were made.

### 2. Application

Having clarified the requirements of Section 10(b) standing, we turn to whether Plaintiffs satisfy those requirements. Under the *Birnbaum* Rule and *Blue Chip*, the question is whether Plaintiffs purchased or sold the securities about which Defendants' alleged misrepresentations were made.

**[5]** It is undisputed that the securities about which Defendants allegedly made misrepresentations were those of Lucid. Under the *Birnbaum* Rule, Plaintiffs would need to have purchased or sold Lucid stock to have standing to bring this action under Section 10(b). Here, Plaintiffs did not purchase or sell Lucid stock, as Lucid was a privately held company during the relevant period. Plaintiffs purchased CCIV stock, but their complaint does not allege that anyone made misrepresentations about CCIV stock. Because Plaintiffs did not purchase or sell the securities about which the alleged misrepresentations were made, Plaintiffs lack standing under Section 10(b).

That CCIV later acquired Lucid does not change our analysis. At the time of Defendants' alleged misrepresentations, CCIV and Lucid were two entirely separate companies. Lucid's alleged misrepresentations made about itself cannot be imputed to another company that later acquired it. *See Menora*, 54 F.4th at 88. Although there are exceptions to the *Birnbaum* Rule, there is no recognized exception for transactions involving SPACs. *See Sec. Inv. Prot. Corp. v. Vigman*, 803 F.2d 1513, 1518-20 (9th Cir. 1986) (explaining the limited exceptions to the *Birnbaum* Rule). If Congress wants to treat SPAC acquisitions differently than traditional mergers, it has the authority to do so. *Cf.*

*Non-Financial Disclosures*, SEC. L. HANDBOOK § 5:105 (discussing proposed rule to "align the regulation of de-SPAC transactions with that of traditional IPOs"). In view of the Supreme Court's express guidance on this issue in 🚩 *Blue Chip*, we decline to undertake that expansion of Section 10(b) standing. 🚩 *Stoneridge*, 552 U.S. at 165, 128 S.Ct. 761 ("The decision to extend the cause of action is for Congress, not for us.").

### C. Materiality

We affirm the district court's dismissal of Plaintiffs' claims on the alternative ground that Plaintiffs lack standing under Section 10(b). 🚩 *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 875 (9th Cir. 2012) ("[D]ismissal may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning."). Because we conclude that Plaintiffs lack standing, we need not and do not consider the district court's ruling on materiality.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Plaintiffs' claims under FRCP 12(b)(6) on the alternative ground that Plaintiffs lack standing under Section 10(b).

**All Citations**

--- F.4th ----, 2024 WL 3710186

### Footnotes

1    *How special purpose acquisition companies (SPACs) work*, PRICEWATERHOUSECOOPERS LLP, https://www.pwc.com/us/en/services/consulting/deals/library/spac-merger.html (last visited May 14, 2024).

End of Document        © 2024 Thomson Reuters. No claim to original U.S. Government Works.