# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., *et al.* <br><br> Defendants. | Judge George C. Hanks, Jr. <br><br> ORAL ARGUMENT REQUESTED <br><br> No. 4:22-cv-01189 |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., *et al.*, <br><br> Defendants. | No. 4:22-cv-2590 |

# BAYOU CITY'S 12(b)(1) MOTION TO DISMISS FOR LACK OF STANDING, OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, Federal Rule of Civil Procedure 12(c), Bayou City Energy Management, LLC ("Bayou City") submits this Motion to Dismiss Plaintiffs' claims for lack of standing, or, in the alternative, Motion for Judgment on the Pleadings.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................... 1

II. ISSUE TO BE RULED UPON .................................................................................. 4

Whether Plaintiffs, holders of Silver Run and AMR stock, have standing to bring securities fraud claims relating to statements made by Defendant Chappelle about AMH and Kingfisher. ......................................... 4

III. STATEMENT OF FACTS ......................................................................................... 4

IV. LEGAL STANDARD ................................................................................................. 7

V. ARGUMENT ............................................................................................................... 8

    A. Plaintiffs lack standing to assert claims relating to statements made by the CEO of a company for which they owned no stock and about a company in which they owned no stock. ....................................................... 9

    B. If this Court disagrees, Bayou City seeks approval for immediate review from the Fifth Circuit. .................................................................... 12

CONCLUSION ....................................................................................................................... 13

CERTIFICATE OF SERVICE .............................................................................................. 14

CERTIFICATE OF CONFERENCE .................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell v. Hood*, 327 U.S. 678 (1946) ................................................................................................ 8

*Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952) .................................................... 8

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ............................................. 3, 8, 9

*Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005) ............................ 3

*In re Alibaba Grp. Holding Ltd. Sec. Lit.*, 20 Civ. 9568 (GBD), 2023 WL 2601472 (S.D.N.Y. March 22, 2023) ......................................................................................................... 9

*In re CCIV/Lucid Motors Sec. Litig.*, No. 23-16049, 2024 WL 3710186 (9th Cir. Aug. 8, 2024) ............................................................................................................ 10, 11

*In re R. Hoe & Co., Inc.*, No. 69 B 461 HRT, 1974 WL 399 (S.D.N.Y. May 2, 1974) ................. 9

*Jackson v. Gautreaux*, 3 F.4th 182 (5th Cir. 2021) ........................................................................ 3

*Kusnier v. Virgin Galactic Holdings, Inc.*, No. 21 Civ. 3070 (E.D.N.Y. Aug. 7, 2023) .............. 12

*MCG, Inc., v. Great W. Energy Corp.*, 896 F.2d 170 (5th Cir. 1990) ........................................... 7

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022) ...................... 10

*Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004) ........................................................................................................ 9

*Pittman v. U.S. Bank NA*, 840 F. App'x 788 (5th Cir. 2021) ........................................................ 3

*Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011) .................................. 7

*Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345 (5th Cir. 1989) 7

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2003) ............................. 4

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) .......................................... 8, 9

*Stringer v. Frito-Lay Corp.*, No. 22-60518, 2023 WL 5235217 (5th Cir. Aug. 14, 2023) ............. 7

**Other Authorities**

28 U.S.C. § 1292(b) ................................................................................................................. 12

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ 7

Fed. R. Civ. P. 12(c) ................................................................................................................ 8

Fed. R. Civ. P. 12(h)(3) ............................................................................................................ 7

Fed. R. Civ. P. 16(b) ................................................................................................................ 8

Securities & Exchange Act Section 10(b) ........................................................................ passim

Securities & Exchange Act Section 20(a) ........................................................................ passim

Securities & Exchange Commission Rule 10b-5 ............................................................. passim

Thomas Lee Hazen, The Law of Securities Regulation (4th ed. 2002) .................................. 9

## I. INTRODUCTION

Plaintiffs—shareholders of Silver Run II Acquisition Corporation ("Silver Run") and Alta Mesa Resources, Inc. ("AMR")—seek to hold Defendant, Harlan Chappelle ("Chappelle") liable for statements he made about Alta Mesa Holdings, L.P. ("AMH") and Kingfisher Midstream LLC ("Kingfisher"). Also, in Plaintiffs' summary judgment response, Plaintiffs claimed for the first time in their pleadings that among other defendants, Bayou City was liable for control of those statements under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). But Plaintiffs never owned stock in AMH or Kingfisher—***entirely separate companies from Silver Run and AMR***. And Chappelle had no affiliation with Silver Run or AMR at the time. Therein lies the rub: stockholders bring a securities fraud claim against Chappelle, a *third party*, claiming that he made misstatements that negatively affected the value of their stock *in another company*, Silver Run and AMR. In bringing these claims, Plaintiffs ignore a fatal jurisdictional defect: Plaintiffs lack standing. The Court cannot allow the Section 20(a) claims against Bayou City proceed to trial because, in addition to never being pled, the Court unquestionably lacks subject matter jurisdiction to hear them.

In 2022, when Plaintiffs filed their Third Amended Complaint, the Class Action Complaint ("CAC"),[1] Plaintiffs asserted securities fraud claims under Section 10(b) and

---

[1] CAC is the operative complaint for this consolidated action, because complaints for the "Alyeska Plaintiffs," Civil Action No. 4:22-cv-01189 and the "Orbis Plaintiffs," Civil Action No. 4:22-cv-02590, (collectively, the "Opt-Out Plaintiffs") contain the same allegations brought in the CAC. Counsel for the Opt-Out Plaintiffs acknowledged at the March 28, 2023 hearing that "the claims . . . in the class action complaint are essentially substantively identical to the claims in the [Opt-Out] complaint[s]." Dkt. 318 at 36:4–17. For this reason,

Rule 10b-5 of the Exchange Act for various statements relating to a 2018 business transaction (the "Business Combination"). Through the Business Combination, Silver Run—a publicly traded, special purpose acquisition company ("SPAC")—combined two private energy companies in a de-SPAC merger to form AMR. Plaintiffs alleged that certain Defendants made false or misleading statements about the Business Combination, inducing Plaintiffs to buy Silver Run or AMR stock to their detriment.

In addition to Plaintiffs' allegations of fraudulent misstatements under Section 10(b) and Rule 10b-5, Plaintiffs also asserted various control claims under Section 20(a) of the Exchange Act, claiming that Bayou City, among other defendants, controlled the makers of the allegedly fraudulent statements, and thus were secondarily liable as control entities. Plaintiffs' control claims against Bayou City related to both pre- and post-Business Combination statements, but as it related to pre-Business Combination statements, Plaintiffs alleged control only with respect to statements made in *Silver Run's* Definitive Merger *Proxy* Statement (the "Proxy"). Bayou City moved for summary judgment on all claims, which the Court granted. *See, e.g.*, ECF No. 423. Plaintiffs never pled that Bayou City was liable under Section 20(a) for pre-Business Combination statements made by *Chappelle.*

For the first time in their pleadings, Plaintiffs raised in their Opposition to the Motion for Summary Judgment (the "Opposition") filed September 2023 (ECF No. 445) ***additional*** Section 20(a) control claims relating to certain statements made ***prior*** to the

---

the arguments in this Motion center on the CAC but apply with equal force to the Opt-Out Plaintiffs' complaints.

Proxy. These claims are absent from Plaintiffs' Complaints.[2] Plaintiffs nonetheless alleged that Chappelle, the CEO of AMH, acted as a primary violator of statements made in August 2017, when the company had no public shareholders, and that Bayou City was secondarily liable as a control entity of AMH and Chappelle. Opp. at 12.

In this Court's August 2024 Memorandum Opinion and Order, granting in part Defendants' Motion for Summary Judgment on the 20(a) claims (ECF No. 778), this Court found a fact issue as to "claims arising out of statements made by [Chappelle] before the SPAC transaction while Chappelle was Chief Executive Officer of [AMH]."

Bayou City now addresses Plaintiffs' reinvented claim of control[3]—a claim that necessarily invokes a theory of standing that has been expressly rejected by the Supreme Court and Circuit Courts alike. In fact, just days before this Court's Order, the Ninth Circuit reaffirmed the fifty-year-old Supreme Court precedent in *Blue Chip*[4] and squarely foreclosed nearly identical claims for want of standing. As such, Bayou City brings this

---

[2] *See* Counts II and IV of the Third Amended Complaint for Class Plaintiffs, ECF No. 218, and Counts II and V of both the Alyeska, ECF No. 1, and Orbis, ECF No 1, Complaints.

[3] Bayou City continues to maintain its objection that Plaintiffs' 20(a) claim of control prior to the Business Combination is limited to the Proxy and that any other assertions of control predating the Business Combination are not properly pleaded. *See* Reply in Support of Joint Motion for Summary Judgment of HPS, Bayou City, and ARM Energy, ECF No. 463 ("As a threshold matter, these August 2017 statements are irrelevant to the Section 20(a) analysis, as Plaintiffs have not actually alleged a Section 20(a) claim for any pre-Business Combination statements other than the Proxy Statement."). It is well settled in the Fifth Circuit that a "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (collecting cases). Fifth Circuit caselaw further precludes a plaintiff from advancing a new claim or "**reframing a previously presented one** in response to a motion for summary judgment." *Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789–90 (5th Cir. 2021) (emphasis added) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)). On this basis alone, Plaintiffs' Section 20(a) claim fails.

[4] *Blue Chip Stamps v. Manor Drug Stores* 421 U.S. 723, 742 (1975).

12(b)(1) Motion to Dismiss, or in the alternative, Motion for Judgment on the Pleadings, seeking dismissal of Plaintiffs' Section 10(b) and Rule 10b-5 claims against Chappelle regarding statements pre-dating the Business Combination (i.e., the "primary violation"). Likewise, Bayou City also seeks dismissal of the 20(a) claim asserted against it for control which arises exclusively under Chappelle's alleged misstatements (*i.e.*, the "secondary violation"[5]) and creates the only basis for the pending claim asserted against Bayou City.

## II.   ISSUE TO BE RULED UPON

**Whether Plaintiffs, holders of Silver Run and AMR stock, have standing to bring securities fraud claims relating to statements made by Defendant Chappelle about AMH and Kingfisher.**

## III.   STATEMENT OF FACTS[6]

Shareholders of Silver Run and AMR[7] brought this action challenging statements made in connection with the Business Combination, in which Silver Run, purchased two companies, AMH and Kingfisher,[8] resulting in a de-SPAC merger.[9] Defendants Bayou City, HPS Investment Partners, LLC ("HPS"), and ARM Energy Holdings, LLC's ("ARM Energy") were the arms' length counterparties who sold AMH and Kingfisher to

---

[5] *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2003) ("Control person liability is secondary only and cannot exist in the absence of a primary violation.").
[6] Given this Court's extensive review of the parties' previous briefings in this matter, we tailor the facts to only those pertinent to this motion.
[7] CAC at ¶¶ 30–34. Under the Court's order certifying the class, the class included persons or entities that purchased Silver Run common stock prior to the close of the Business Combination and persons or entities that purchased AMR stock after the Business Combination. (ECF No. 241 Ex. 1).
[8] CAC at ¶ 86.
[9] CAC at ¶ 73.

4

Silver Run. Prior to the Business Combination, AMH was a subsidiary of non-party High Mesa Holdings GP, LLC and High Mesa Holdings, LP (together, "High Mesa"), which HPS and Bayou City each partially owned.[10] Kingfisher, the other acquisition target, was owned in part by High Mesa and ARM Energy.[11]

In advance of the Business Combination, Silver Run's board issued the Proxy statement on January 19, 2018 to solicit Silver Run stockholders' approval for the combination.[12] The stockholders approved the transaction, which closed on February 6, 2018.[13] Silver Run was then renamed Alta Mesa.[14]

Plaintiffs contend that the allegedly false statements at issue relate to statements made on August 16, 2017, when Silver Run issued a press release announcing the Business Combination,[15] and August 17, 2017, when management from Silver Run and AMH had a conference call to discuss the Business Combination.[16] The purportedly actionable statements at issue derive solely from statements that Plaintiffs attribute to Chappelle, while Chappelle was AMH's CEO.[17] These statements are repurposed below for ease of reference:

| **August 16, 2017: Pre-Merger Press Release** | - "We formed [Alta Mesa] with the objective of acquiring-low breakeven, stacked-pay, oil-weighted assets, preferably with an integrated midstream platform." (¶190). "We see this as a tremendous way to continue our evolution as a low-cost, high-value producer in the STACK." *Id*. |
|---|---|

---

[10] CAC at ¶¶ 65, 129.
[11] CAC at ¶¶ 63, 65.
[12] CAC at ¶ 103.
[13] CAC at ¶ 125.
[14] CAC at ¶ 126.
[15] CAC at ¶ 13.
[16] CAC at ¶ 192.
[17] CAC at ¶¶ 50, 190–97.

| | |
|---|---|
| | - AMH identified "about 4,200 gross identified drilling locations" and based on its currently producing wells AMH "expects EURs at year end to exceed 650 MBOE per well." (¶190). |
| **August 17, 2017: Pre-Merger Investor Call and Presentation** | - "First, we'll talk about the introduction. When we went out to look for targets for [Alta Mesa], we had laid out investment criteria that are shown on slide 5. And both individually as an Upstream and Midstream company and collectively as an integrated platform, this transaction satisfies those criteria." (¶192).<br><br>- The STACK was a "[h]igh margin core basin with low field break-events [with] deep inventory." (¶192).<br><br>- "We have over 200 wells that we've drilled here and we've demonstrated the value, and we have confidence in the upside. As an illustration of that, at the end of the second quarter [of 2017], we drilled on the order of 200 wells; of those, over 160 were on production. And of that number, about 114 had sufficient production history to give us confidence that at the end of this year, our year-end reserves will reflect better than 650,000 BOE." (¶194).<br><br>- Kingfisher was "rapidly expanding" and "positioned to capture volume growth from the STACK." Kingfisher was "well positioned to serve other operators" and take advantage of the "[e]xpansion opportunities in [the] rapidly growing basin." Kingfisher was estimated to have achieved $42 million in 2017 EBITDA, and was expected to increase its 2018 EBITDA to $185 million and its 2019 EBITDA to $318 million. (¶196).<br><br>- Alta Mesa was estimated to achieve $358 million in EBITDA in 2018 and $701 million in EBITDA in 2019 (¶109).<br><br>- Alta Mesa stated there was an opportunity to monetize Kingfisher and fund upstream capital needs through spinning off Kingfisher as a master limited partnership (MLP) IPO. (¶196). |

6

Plaintiffs now allege that Bayou City controlled Chappelle and AMH when making these statements.[18] This Court has dismissed all other claims regarding Bayou City and should dismiss these claims as well for Plaintiffs' lack of standing.

## IV.  LEGAL STANDARD

The Fifth Circuit has routinely held that district courts have a "continuing obligation to examine the basis for jurisdiction." *MCG, Inc., v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990); *see also Stringer v. Frito-Lay Corp.*, No. 22-60518, 2023 WL 5235217, at *2 (5th Cir. Aug. 14, 2023).  To that end, "[t]he district court must dismiss [an] action if it finds that it lacks subject matter jurisdiction." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing FED. R. CIV. P. 12(h)(3)). A party may challenge a court's subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Federal courts have established several limits on its jurisdiction to hear a case. Relevant here, the Fifth Circuit has stated that standing is "essential to the exercise of jurisdiction," and that "lack of standing can be raised at any time by a party or by the court." *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any

---

[18]  Class Plaintiffs' Opposition to Motion for Summary Judgment by Defendants, ECF No. 445 at 12–17.

time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[19] The Supreme Court has further stated that a district court lacks jurisdiction to hear a case when "a claim is wholly insubstantial and frivolous." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (internal quotation marks omitted)).

## V.    ARGUMENT

Nearly fifty years ago, the Supreme Court adopted a bright-line rule from *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952) (the "*Birnbaum* Rule" or the "purchaser-seller rule") to limit plaintiffs under Section 10(b) to the actual "purchasers or sellers of the stock in question." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 742 (1975). Yet Plaintiffs bring allegations of securities fraud relating to the pre-Business Combination statements made by Chappelle ***about AMH and Kingfisher***. It is undisputed that Plaintiffs never purchased or sold stock in AMH or Kingfisher. Given the Supreme Court's clear pronouncement of the rule for standing in Section 10(b) and Rule 10b-5 claims, any claims in violation of this rule, namely, a plaintiff's claim for fraud in the absence of ownership of the stocks in question, is a

---

[19] To the extent that this court determines standing under Section 10(b) and Rule 10b-5 is not jurisdictional, Bayou City pleads in the alternative a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Bayou City further satisfies Rule 16's standard for "good cause" to consider the motion. FED. R. CIV. P. 16(b). Plaintiffs newly raised in their Opposition to the Motion for Summary Judgment *additional* Section 20(a) control claims they had not previously pleaded relating to certain statements made prior to the Proxy. Given that this Court's August 12, 2024 Order determined that open fact questions existed for these statements, Bayou City properly asserts a 12(c) motion before the Court to address these new theories.

8

wholly "insubstantial and frivolous" claim. *Steel Co.*, 523 U.S. at 89 (citation omitted). In other words, such an insubstantial claim presents a question of jurisdiction.

The proper vehicle to raise this jurisdictional lack of standing is Federal Rule of Civil Procedure 12(b)(1) as a motion to dismiss for lack of subject matter jurisdiction. *See, e.g., In re Alibaba Grp. Holding Ltd. Sec. Lit.*, 20 Civ. 9568 (GBD), 2023 WL 2601472 at *5 (S.D.N.Y. March 22, 2023); *see also In re R. Hoe & Co., Inc.*, No. 69 B 461 HRT, 1974 WL 399 at *1 (S.D.N.Y. May 2, 1974) (considering whether claimants "satisfied the *jurisdictional requirement* of Rule 10b-5") (emphasis added).

Plaintiffs have failed to demonstrate that they were the actual "purchasers or sellers of the stock in question," and thus lack standing to assert their claims.

### A. Plaintiffs lack standing to assert claims relating to statements made *by* the CEO of a company for which they owned no stock and *about* a company in which they owned no stock.

Plaintiffs cannot demonstrate standing with respect to the August 2017 statements made by Chappelle in his role at AMH. In adopting the *Birnbaum* Rule, the Supreme Court confined standing under Section 10(b) not to just the purchasers or sellers of *any* security about which Plaintiffs allege injury, but to the purchasers or sellers of the "security **to which the prospectus, representation, or omission relates**." *Blue Chip*, 421 U.S. at 747 (emphasis added); *see also Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 32 (2d Cir. 2004) ("[T]he phrase 'any security' . . . indicates that the regulations reach *all types* of securities, and not *any affected company's* securities." (citing Thomas Lee Hazen, THE LAW OF SECURITIES REGULATION § 12.4 (4th ed. 2002)). All circuits to consider the issue of standing in the

9

context we face today—alleged misstatements made in advance of an anticipated merger—have agreed that the purchaser-seller rule limits Section 10(b) standing to purchasers and sellers of the security about which the alleged misrepresentations were made.

Most recently, just days before the Court's Order, the Ninth Circuit considered this exact issue, joining the Second Circuit[20] (the only other circuit court to consider the issue) in holding that the *Birnbaum* Rule prevents persons who purchased stock in acquiring company from having Section 10(b) standing for "alleged misstatements made in advance of an anticipated merger." *In re CCIV/Lucid Motors Sec. Litig.*, No. 23-16049, 2024 WL 3710186 at *3 (9th Cir. Aug. 8, 2024). This forecloses any doubt about what the Fifth Circuit would do; given the firm underpinnings of the rule, it is astoundingly improbable that the Fifth Circuit would rule directly contrary to black letter Supreme Court law and confer broader standing on securities plaintiffs than the Ninth and Second Circuits.

The facts of *Lucid* are materially indistinguishable from the case at bar. The *Lucid* plaintiffs claimed that they were induced to purchase stock in a SPAC (referred to as "CCIV") based upon false statements made by Lucid, CCIV's merger target, and Lucid's CEO, about Lucid's business. *Lucid* at *5. The Ninth Circuit succinctly explained that under the Supreme Court's "bright-line rule," "Plaintiffs would need to have purchased

---

20  *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022) ("[P]urchasers of a security of an acquiring company do not have standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger between the two companies.").

or sold Lucid stock to have standing to bring this action under Section 10(b)." *Id.* The Ninth Circuit rejected plaintiff's argument that as a shareholder of the acquiring company, its stock was "sufficiently connected" to the misstatements of the target company. *Id.* at *4.

The court further held that the later acquisition of stock in the merger target did not change the analysis:

> That CCIV later acquired Lucid does not change our analysis. At the time of Defendants' alleged misrepresentations, CCIV and Lucid were two entirely separate companies. Lucid's alleged misrepresentations made about itself cannot be imputed to another company that later acquired it. *See Menora*, 54 F.4th at 88. Although there are exceptions to the *Birnbaum* Rule, there is no recognized exception for transactions involving SPACs . . . . In view of the Supreme Court's express guidance on this issue in *Blue Chip*, we decline to undertake that expansion of Section 10(b) standing. *Stoneridge*, 552 U.S. at 165, 128 S. Ct. 761 ("The decision to extend the cause of action is for Congress, not for us.").

*Id.*

The facts of *Lucid* map onto those in this case. Plaintiffs' claims against Chappelle for pre-Business Combination statements are based on public statements about AMH and Kingfisher—companies **for which Plaintiffs indisputably owned no stock**.[21] Order, ECF No. 778 (describing Plaintiffs' claims as arising from "public statements **regarding AMH and Kingfisher** before the SPAC transaction, while Chappelle was AMH's CEO") (emphasis added). Just as in *Lucid*, Plaintiffs who purchased stock in the acquiring company (Silver Run and AMR), have no standing under Section 10(b) or Rule 10b-5 to

---

[21] Both Kingfisher and AMH were privately held at the time Chappelle made the alleged misstatements.

11

challenge alleged misstatements made by and about the target companies (AMH and Kingfisher) prior to the merger.

The case law could not be clearer on this point. *See* Opinion & Order at 14–15, *Kusnier v. Virgin Galactic Holdings, Inc.*, No. 21 Civ. 3070 (E.D.N.Y. Aug. 7, 2023) ("[T]he Second Circuit was unconvinced that misrepresentations made 'about' an acquisition target, even if incorporated into SEC filings by the acquiror, meant that the misstatements were 'about' the acquiror's securities."). Applying the *Birnbaum* Rule to this case thus requires dismissal of all Section 10(b) and Rule 10b-5 claims for statements Chappelle made prior to the Business Combination (and related Section 20(a) claims) and the complete dismissal of Bayou City.

**B.     If this Court disagrees, Bayou City seeks approval for immediate review from the Fifth Circuit.**

To the extent that this Court disagrees with the Second and Ninth Circuits, Bayou City requests that this Court certify its decision for interlocutory appeal and immediate review by the Fifth Circuit pursuant to 28 U.S.C. § 1292(b).  The Court's order would easily satisfy the three statutory criteria for certification because (1) this is a pure "controlling question of law" that will materially affect the case going to trial (including whether certain defendants go to trial at all); (2) the decisions of the Second and Ninth Circuit (and numerous district courts) means there is a "substantial ground for difference of opinion;" and (3) resolution by the Fifth Circuit "may materially advance the ultimate termination of the litigation" by reducing the scope of the trial.  28 U.S.C. § 1292(b).

The Court should not force Bayou City to go through the expense and burden of a multi-week trial when the Plaintiffs did not plead this issue prior to summary judgment, a tactic which is expressly foreclosed by law.

## CONCLUSION

Bayou City respectfully requests that this Court enter an order granting the following: (1) dismissal of the Section 10(b) and Rule 10b-5 claims arising out of Chappelle's 2017 statements; (2) dismissal of the 20(a) control claim against Bayou City upon which Chappelle's statements as the primary violation are based; and (3) grant any other and further relief as this Court deems just and proper.

DATED: August 21, 2024

/s/ Kenneth A. Young
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699   S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182   S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:     (713) 836-3601
Emails:  kenneth.young@kirkland.com
         nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC*

13

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on August 21, 2024.

/s/ Kenneth A. Young
Kenneth A. Young

## CERTIFICATE OF CONFERENCE

I certify that, on August 21, 2024, counsel for Bayou City conferred by e-mail twice with counsel for all parties regarding the substance of this motion. Counsel for Bayou City advised Plaintiffs of the grounds for this Motion and were unable to obtain assent for the relief sought.[22]

/s/ Kenneth A. Young
Kenneth A. Young

---

[22] Bayou City understands that per the Court's direction, Local Rule 6(B)'s Pre-Motion Conference requirement does not apply to this dispositive motion. May 8, 2023 Status Conference Tr. at 17:23–18:1 ("[T]he parties do not need to file a premotion letter on dispositive motions going forward because [the Court] know[s] what the issues are.").