# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |

## CLASS PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

## I.     INTRODUCTION

On August 12, 2024, this Court issued its Memorandum Opinion and Order denying in part and granting in part Defendants' overlapping motions for summary judgment and sending this case to trial. Dkt. 778 (the "Summary Judgment Order"). Instead of making final preparations for trial, on August 21, 2024, Defendants HPS and BCE – with ARM Energy and the remaining Defendants filing joinders – elected to ignore this Court's December 22, 2023 deadline for dispositive motions (Dkt. 376 at 3) and filed two putative motions to dismiss for lack of subject matter jurisdiction and a motion for judgment as a matter of law.[1] The fact that these motions were filed 243 days late is sufficient on its own to merit dismissal.

Defendants' sole justification for burdening the Court and Plaintiffs with further motion practice is the issuance of a non-binding decision from another circuit, *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024), which does little more than apply the Second Circuit's decision in *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd*., 54 F.4th 82 (2nd Cir. 2022) – a decision cited by defendants AMR, Chappelle, Ellis, and Smith (the "Management Defendants") in their rejected summary judgment motion arguing

---

[1] Defendant HPS filed a Rule 12(c) motion for judgment on the pleadings. Dkt. 782. Defendant BCE filed a motion to dismiss under Rule 12(b)(1), or for judgment on the pleadings under Rule 12(c) in the alternative. Dkt. 783. Not to be left out, ARM Energy filed a joinder with the HPS motion (Dkt. 784), and the remaining Defendants (the "AMR Defendants") filed a joinder with both the HPS and BCE motions. Dkt. 785. As the parties make and join the same arguments, they are referred to collectively herein as the "Moving Defendants" or "Defendants." This memorandum stands in opposition to all of the above motions and joinders.

the purchaser-seller rule and standing.[2] *See* Dkt. 688 at 14-15 (Management Defendants' purchaser-seller rule argument); Dkt. 778 at 2 (denying the Management Defendants' summary judgment motion in relevant part). None of the other defendants bothered to make or join the Management Defendants' argument in their summary judgment motions. *See* Dkts. 422, 423, 424, 427, 518, 689, 690. The Moving Defendants offer no new argument; they simply use the *Lucid* decision as a pretext to rehash the argument the Management Defendants already made and lost at summary judgment. *Id.*

The fact that the Court already considered and rejected the Management Defendants' purchaser-seller rule argument is completely missing from the two Rule 12 motions and is buried in a footnote in the AMR Defendants' joinder. Dkt. 785 at 2, n.2. Worse yet, that footnote claims that "this Court did not address [the standing argument] in its decision" on summary judgment, when the Court plainly denied the Management Defendants' motion for summary judgment on all grounds except for the statements in AMR's 2017 Form 10-K (which the purchaser-seller argument did not concern). *Id*; Dkt. 778 at 2.[3]

---

[2]   Citations are omitted and emphasis is added unless otherwise stated.

[3]   This misdirection explains why Defendants failed to follow the Local Rules and this Court's procedures regarding meeting-and-conferring with Plaintiffs and seeking a pre-motion conference with the Court. Court Procedures § 6.B. ("a pre-motion conference **must** be requested before filing: (i) Any motion pursuant to Fed. R. Civ. P. 12") (emphasis in original). Rather than risking that the Court would see the motions for what they are – improper and unsupported motions for reconsideration of the Summary Judgment Order – Defendants simply filed their motions on the pretense the Court had not rejected the identical argument on the same theory at summary judgment.

With their threats to immediately seek interlocutory appeal, Defendants tacitly acknowledge that the Court has already rejected their standing argument and that there is no basis for reconsidering or changing that opinion. The Ninth Circuit opinion in *Lucid* certainly does not provide such a basis. The Court was already presented with the Supreme Court and Second Circuit authority that, Defendants assert, *Lucid* merely "reaffirmed" (Dkt. 783 at 3) and the specific facts underlying the Ninth Circuit's opinion relate to a wholly different situation that provides no relevant comparison to this case. Defendants are merely seeking, yet again, to delay the inevitable; this case is going to trial.

## II.   ARGUMENT

### A.   Only a Fraction of the Defendants Ever Made a Purchaser-Seller Rule Standing Argument and it has Already Been Rejected by this Court

Despite now claiming that their purchaser-seller rule standing argument is based on decades old Supreme Court and Second Circuit authority, not a single defendant moved to dismiss the pre-Business Combination claims on that argument when Defendants collectively filed over 294 pages of Rule 12(b)(6) briefing in June 2020. *See* Dkts. 116, 119, 120, 125, 126, 127, 128, 129, 142, 143, 144, 145, 146, 148, 149, 150. Over the following three-and-a-half years, no standing motion or related argument was made by any defendant. In fact, Defendants did not even oppose the appointment of Plaintiffs as Class Representatives or otherwise challenge class certification. Dkts. 240, 241. It was only at the summary judgment stage – the second summary judgment stage – that a few of the defendants, the Management Defendants, raised the issue of standing. Just like the Moving Defendants do now, the Management Defendants relied on *Menora* and argued that "in

Section 10(b) cases involving the merger of two companies (such as SPAC cases), . . . courts have consistently held that the statements about the target company cannot be challenged by persons who purchase stock in the acquiring company." Dkt. 523 at 14-15; *see also* Dkt. 629 at 4-5.[4] Neither HPS and BCE, who filed the Rule 12 motions, nor ARM Energy, Riverstone, Hackett, Gutermuth, Tepper, or Walters who now join in those motions, made a standing argument at summary judgment.

In response to the Management Defendants' standing argument, Plaintiffs made clear that under Fifth Circuit authority the so-called purchaser-seller rule "simply limits 'standing to sue under Section 10(b) to actual purchasers and sellers,' rather than persons who 'decide not to purchase the stock due to the [alleged fraud].'" Dkt. 572 at 15 (citing *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 227 (5th Cir. 1994). Subsequently, the Court denied the Management Defendants' motion for summary judgment and rejected the request to dismiss the pre-Business Combination statements on standing grounds. Dkt. 778 at 2. The *Lucid* case does nothing to change the settled rule in the Fifth Circuit, and, like the previously argued *Menora* decision, it is otherwise factually inapposite.

---

[4]    The Management Defendants also cited to *Alley v. Miramon*, 614 F.2d 1372, 1385-86 (5th Cir. 1980) without any explanation as to why it was relevant. Dkt. 523 at 14-15. Not surprisingly, none of the Moving Defendants now cite *Alley* or any other 5th Circuit authority, because there is none that can support their standing argument.

### B.   Defendants' Motions Constitute Infirm and Improper Requests for Reconsideration of the Summary Judgment Order

Given that the purchaser-seller standing argument was previously raised (by a few defendants) and rejected by the Court, the question is why didn't Defendants admit that they were moving for reconsideration of the Summary Judgment Order under Rule 59(e) (which at least would have been timely)? The answer is that the Management Defendants knew they could not meet the strict standard for justifying reconsideration, and the remaining Defendants had no basis to seek reconsideration because they failed to ever make a purchaser-seller standing argument. Nonetheless, Defendants' motions are seeking reconsideration and labeling them as Rule 12 motions cannot obscure that fact.

While the Federal Rules of Civil Procedure do not recognize a motion for reconsideration, the Fifth Circuit has held that such a motion should be treated as a motion to alter or amend judgment under Rule 59(e). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). A Rule 59(e) motion is one that seeks to "alter or amend" a previous judgment entered by the Court. Fed R. Civ. P. 59(e). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). The Fifth Circuit has held "that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id. See also Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) ("These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.").

A Rule 59(e) motion """"must clearly establish either a manifest error of law or fact or must present newly discovered evidence"""" that was not available before the judgment

- 5 -

issued. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566-68 (5th Cir. 2003). In order to prevail on a Rule 59(e) motion, the movant must show at least one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).

Defendants' motions are premised on a new opinion, *Lucid*. But that opinion from the Ninth Circuit is not controlling law. Moreover, Defendants admit that *Lucid* did not change what they claim is the decades of precedent on the purchaser-seller rule that this Court already received and considered prior to issuing the Summary Judgment Order. In other words, Defendants cannot and have not shown that there was an intervening change in controlling law, let alone one that would justify reconsideration of the Summary Judgment Order.

Nothing in Defendants' motions even suggests that they can meet any of the other three bases for reconsideration. There is no new evidence relevant to Plaintiffs' standing. Class certification discovery ended more than 34 months ago. Tellingly, Defendants do not argue that the Court made a clear or manifest error of law or fact when it rejected the Management Defendants' purchaser-seller rule argument. Nor do they identify any manifest injustice that stems from the Court's Summary Judgment Order. Indeed, HPS and BCE, the defendants that filed the instant motions, can hardly claim that there was a clear error of law or a manifest injustice with respect to a standing argument that they never even made at motion to dismiss or summary judgment – a failure they cannot now cure by what

is effectively a request to reconsider the Court's rejection of the Management Defendants' motion on identical grounds.

The Court should see through Defendants' efforts to evade the strict requirements of Rule 59(e) by styling their filings as Rule 12 motions. Defendants' failure to even try to comply with the strict requirements of Rule 59(e) (as well as the Local Rules and this Court's procedures) underscores the fact that they have no basis for revisiting arguments they made, or could have made, at summary judgment.[5] Accordingly, the motions should be denied.

**C.    In Addition to Being Out-of-Circuit and Non-Controlling, *Lucid,* Like the Previously Cited *Menora* Decision, is Readily Distinguishable**

The fact that *Lucid* is non-controlling and, by Defendants' own admission, follows case law that this Court already considered before issuing the Summary Judgment Order should end the inquiry. But if the Court elects to consider *Lucid* further, it will see that the factual disposition that underlays the Ninth Circuit's application of the purchaser-seller rule is wholly distinguishable from the facts here.

The plaintiffs in *Lucid* brought claims against Lucid, the target company, and CCIV, the SPAC shell, over misrepresentations made by the Lucid CEO on February 5 and

---

[5]    HPS and BCE's threats to seek interlocutory appeal also make clear that they styled their requests for reconsideration as Rule 12 motions in an attempt to generate standing for an eventual appeal. Obviously, HPS and BCE waived the right to appeal the Summary Judgment Order regarding the purchaser-seller standing issue because they never made the argument. *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 402 (5th Cir. 2022) ("A party forfeits an argument by failing to raise it in the first instance in the district court – thus raising it for the first time on appeal[.]") [alteration in original].

February 12, 2021. 110 F.4th at 1183. These statements occurred while merger negotiations between CCIV and Lucid were still proceeding confidentially. *Id.* (identifying that non-public merger negotiations took place between January 11 and February 22, 2021). While there was some public speculation, "neither CCIV nor Lucid spoke publicly about the merger negotiations during this time." *Id.* A seminal fact in the Ninth Circuit case is that Lucid and Lucid's CEO had no public affiliation with CCIV at the time the alleged misstatements were made. Non-public merger negotiations had begun, but there had been no announcement of a merger agreement. The de-SPAC merger was publicly announced on February 22, 2021 and that is the day the alleged class period in *Lucid **ends***. *In re: CCIV / Lucid Motors Sec. Litig.*, 2023 WL 325251, at *3 (N.D. Cal. Jan. 11, 2023).

In this case, the Class Period ***begins*** with the merger announcement, which includes the false statements by Chappelle that the Moving Defendants take issue with. Moreover, when Lucid's CEO made his allegedly false statements, there was no Lucid stock to buy (it was a private company), no merger agreement, and, as a result, no securities that would be converted into Lucid stock. But, when Chappelle spoke here, the merger was already announced, his false statements were about the company to be merged, and investors could and did purchase stock in the go-forward entity. That entity, AMR, is what Chappelle was promoting alongside Hackett.

The similarity between *Lucid* and this case begins and ends with the fact that they both involve SPACs. Defendants' assertion that the allegations in *Lucid* and those here are "nearly identical" and "materially indistinguishable" is absurd. Dkt. 783 at 3, 10. Indeed, the very same statements that Defendants bafflingly claim were made when "Chappelle

had no affiliation with Silver Run or AMR" (*Id.* at 1) were included in the ***actual merger announcement*** filed by Silver Run II Acquisition Corporation ("Silver Run") on August 16, 2017, beginning the Class Period. Dkt. 218 at ¶ 190. Defendants' contention that "Chappelle had no affiliation with Silver Run or AMR at the time" (Dkt. 783 at 1) is flatly false. The very same press release issued by Silver Run and filed with the SEC on Form 8-K which included the relevant Chappelle statements also reported that Silver Run had "entered into definitive agreements to combine with Alta Mesa Holdings, LP ('Alta Mesa') and Kingfisher Midstream, LLC ('Kingfisher')," directed investors to Silver Run securities ("Silver Run Acquisition Corporation II ('Silver Run II') (NASDAQ: SRUN, SRUNU, SRUNW) today announced . . ."), and identified Chappelle as the CEO of the go-forward entity. Ex. A at 1, 4.[6] The press release also reported that "Silver Run II is expected to be renamed Alta Mesa Resources, Inc. and trade on the NASDAQ stock exchange under the ticker symbol 'AMR.'" *Id.* at 4. On August 16, 2017, Alta Mesa Holdings ("AMH"), which HPS, BCE, and ARM Energy controlled, filed a Form 8-K announcing the merger and attaching the same press release containing the above statements. Ex. B at 1, 6, 7.

The very next day, AMH filed another Form 8-K regarding the merger announcement. Ex. C at 2 ("On August 16, 2017, Alta Mesa Holdings, LP, a Texas limited partnership ('***Alta Mesa***'), entered into a Contribution Agreement . . . with Silver Run

---

[6]   Just as Chappelle was affiliated with Silver Run and AMR as of August 16, 2017, by joining together to trumpet AMR, the go-forward entity, to public investors, ARM Energy themselves appear in the same Silver Run press release, announcing: "We have experienced firsthand the production growth Alta Mesa has been able to achieve and are pleased to be a shareholder and continue our partnership with our existing financial partner, HPS Investment Partners, as well as Silver Run II, Riverstone, and Alta Mesa." Ex. A at 4.

Acquisition Corporation II, a Delaware corporation ('**SRII**') . . .."). Attached to that Form 8-K was a joint press release with Silver Run. *Id.* at 12.

On August 17, 2017, Chappelle joined Hackett on a conference call, the transcript of which was filed for the benefit of investors as an exhibit to both a Silver Run Form 8-K and the AMH August 17, 2017 Form 8-K, in order to pitch investors on what Jim Hackett called "a compelling investment opportunity." Ex. C at 3; Ex. D at 3. During the call, they both made further false statements. Dkt. 218 at ¶¶ 192, 194. At a time when Defendants claim that he had "no affiliation with Silver Run or AMR" (Dkt. 783 at 1), Chappelle introduced himself to investors by saying: "We cannot be more excited than to work with Jim Hackett and Silver Run II to build upon the value we've created and the progress that we've made in the STACK." Ex. D at 3.[7]

Yet another fact that distinguishes this case from Lucid and that is conspicuously ignored by the Moving Defendants is that both SEC Form 8-Ks filed by Silver Run on August 16 and 17 regarding the merger agreement checked the box indicating that they were: "Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)." Ex. A at 1; Ex. D at 1. These solicitation materials and the statements they contained thus became part of the Proxy solicitation materials and the joint solicitation-related statements cannot be separated from the Proxy as the Moving Defendants now seek

---

[7]   Somehow, AMR, Riverstone, and the remaining Individual Defendants intend to join HPS' argument here. Dkt. 785 at 2. However, their joinder fails to articulate how exactly they could join HPS or BCE's motions, as Hackett was CEO of Silver Run at the time, and Silver Run was the publicly traded, acquiring company releasing the merger announcement Form 8-K, which Silver Run specifically published as proxy materials for the upcoming merger. Ex. A at 1.

to do. In fact, even *Menora*, which is at the heart of the Moving Defendants' arguments, explicitly allows claims against third parties for statements made "in connection with the purchase or sale of" Silver Run and AMR securities. *Menora,* 54 F.4th at 85, 88 n.3 ("Plaintiffs may be able to sue entities other than the issuer of a security if those entities made material misstatements about the security, as long as the plaintiffs purchased or sold the securities about which the misstatements were made.").

Hackett and Chappelle made their false statements at and following the announcement of the merger, to pitch investors on a "compelling investment opportunity." Ex. D at 3. Chappelle's false statements were made, publicized, and filed with the SEC as self-identified "soliciting material" for the Alta Mesa de-SPAC merger. Ex. D at 1. In stark contrast, the allegedly false statements by the Lucid CEO were made in an interview on CNBC prior to any merger announcement and were not in any way connected to a merger.

These facts not only render underscore the inapplicability of *Lucid* (and *Menora)* here, but they also reconfirm that the Court did not err in rejecting the Management Defendants' purchaser-seller standing argument at summary judgment.[8]

---

[8]   In an effort to buttress their arguments based on *Lucid*, the Moving Defendants repeatedly cite to the Second Circuit's opinion in *Menora*. Dkt. 782 at 6-7; Dkt. 783 at 10; Dkt. 785 at 2. Of course, *Menora* was the case the Management Defendants relied on for their rejected standing argument. Dkt. 523 at 14-15; *see also* Dkt. 629 at 4-5. Like *Lucid*, it is not controlling. And, like *Lucid*, the facts and allegations in *Menora* bear no resemblance to those here. Notably, the statements at issue in *Menora* were made before there was any merger announcement. 54 F.4th at 88. In fact, the allegations in *Menora* concerned statements about a bribery scheme which the plaintiffs alleged had been undertaken by the target company ***four years prior*** to the announcement of the merger. *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *26 (S.D.N.Y. Mar. 30, 2021). Here, Class Plaintiffs bring claims against the Moving Defendants for statements made """in connection with the purchase or sale""" of Silver Run and AMR securities – a claim *Menora* explicitly allows. 54 F.4th at 85 n.3, 88

### D.     There is No Basis for Granting Interlocutory Appeal of the Rejected Purchaser-Seller Standing Argument

Defendants HPS and BCE's request, made without support of any kind, that the Court certify its decision for interlocutory appeal (Dkt. 782 at 8; Dkt. 783 at 12-13) underscores two fundamental truths: (1) Defendants know that the Court has already rejected the standing argument and they have not presented any compelling reason for the Court to reconsider and reverse that decision; and (2) Defendants are desperate for any procedural means to delay the October 7, 2024 trial in this case. Defendants' desperation, however, is not a basis for an interlocutory appeal pursuant to 28 U.S.C § 1292(b).

As the Fifth Circuit has repeatedly recognized, "Section 1292(b) appeals are exceptional." *Clark-Dietz & Associates-Engineers, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). Section 1292(b) only authorizes a district judge to certify an order for interlocutory appeal when the order "involves [(1)] a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and . . . [(3)] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "Unless all three criteria are satisfied, a court cannot certify an interlocutory appeal." *Rodriguez v. City of Corpus Christi*, 2023 WL 6371029, at *1 (S.D. Tex. June 10, 2023).

Defendants here make no effort to meet the Fifth Circuit standard. *Lucid*, the case their motions are premised on, is not controlling law and in no way alters the current

---

("Plaintiffs may be able to sue entities other than the issuer of a security if those entities made material misstatements about the security, as long as the plaintiffs purchased or sold the securities about which the misstatements were made.").

application of the purchaser-seller rule in this Circuit under *7547 Corp.*, 38 F.3d at 227. Even if *Lucid* altered the law or was precedential, the mere fact that "counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 724 (N.D. Tex. 2006). HPS and BCE, the defendants that seek interlocutory appeal, are also hard-pressed to explain how there is "substantial ground for difference of opinion" on standing under the purchaser-seller rule, particularly given the fact that they never even made a standing argument at summary judgment, class certification, or on motion to dismiss. 28 U.S.C. § 1292(b). And an immediate appeal certainly will not "materially advance the ultimate termination of the litigation." *Id.* Quite the opposite. This case is set to go to trial on October 7, 2024, and an interlocutory appeal would only delay that trial for months (if not years), while the Fifth Circuit considered the request. The notion that resolving this issue before trial would alleviate appeals afterwards is not credible. If Class Plaintiffs prevail at trial, there is no doubt all Defendants will appeal the Court's judgment on any grounds they can conjure. Simply put, there is no basis for interlocutory appeal, just as there is no basis for the Rule 12 motions.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions, as well as their request for interlocutory appeal.

Dated:  September 6, 2024                                     Respectfully submitted,


/s/ Andrew J. Entwistle
Andrew J. Entwistle (attorney in charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308
**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Suite 1900
Austin, TX  78701
Telephone:  (512) 710-5960
Facsimile:  (212) 894-7278

– and –

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7278

*Court Appointed Co-Lead Counsel*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

/s/ Trig R. Smith
Tor Gronborg (*pro hac vice*)
Trig R. Smith (*pro hac vice*)
John M. Kelley (*pro hac vice*)
Stephen Johnson (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

Shawn A. Williams (*pro hac vice*)
Daniel J. Pfefferbaum (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile:  (415) 288-4534 (fax)

*Court Appointed Co-Lead Counsel*

*Counsel for Plaintiff Camelot Event Driven*
*Fund, A Series of Frank Funds Trust*