# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | CASE NO. 4:19-CV-00957 (CONSOLIDATED) <br><br> JUDGE GEORGE C. HANKS, JR. <br><br> THIS DOCUMENT RELATES TO: <br><br> CASE NO. 4:22-CV-01189 <br> CASE NO. 4:22-CV-02590 |

# THE ALYESKA AND ORBIS PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................... 4

ARGUMENT........................................................................................................... 6

    I.     The 12(b)(1) Motion Affirmatively Misstates Binding Law ............................ 6

    II.    The 12(c) Motion and 12(b)(1) Motion Are Untimely and Improper Under the Federal Rules of Civil Procedure ........................................................... 8

    III.   The Motions Rely on Out-of-Circuit Law That is Not Broadly Accepted and That Pre-Dated the Dismissal and Summary Judgment Motions ...................... 9

    IV.   The Out-of-Circuit Cases Relied Upon By Defendants Are Inapposite........... 13

    V.    Trial is Inevitable Because the Motions Do Not Affect the Individual Action Plaintiffs' State Law Claims ............................................................... 15

CONCLUSION ..................................................................................................... 16

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Avelar-Oliva v. Barr,*
   954 F.3d 757 (5th Cir. 2020) ........................................................... 9

*Blanchard 1986, Ltd. v. Park Plantation, LLC,*
   553 F.3d 405 (5th Cir. 2008) ........................................................... 7

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975).................................................. 4, 7, 12, 15

*Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,*
   554 F.3d 595 (5th Cir. 2009) ......................................................... 16

*Camsoft Data Sys., Inc. v. Southern Elecs. Supply, Inc.,*
   756 F.3d 327 (5th Cir. 2014) ........................................................... 7

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
   634 F.3d 787 (5th Cir. 2011) ........................................................... 7

*In re CCIV/Lucid Motors Sec. Litig.,*
   110 F.4th 1181 (9th Cir. 2024) .......................................... 9, 13, 15

*In re Waggoner Cattle, LLC,*
   2022 WL 5264707 (Bankr. N.D. Tex. Apr. 28, 2022) ................... 8

*Klein v. Altria Grp., Inc.,*
   525 F. Supp. 3d 638 (E.D. Va. 2021) .......................................... 11

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.,*
   54 F.4th 82 (2nd Cir. 2022) ...............................................passim

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.,*
   2024 WL 1674125 (5th Cir. Apr. 18, 2024)................................... 7

*Simmons v. UBS Fin. Servs., Inc.,*
   972 F.3d 664 (5th Cir. 2020) ........................................................... 7

*Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan,*
   883 F.2d 345 (5th Cir. 1989) ........................................................... 6

*Thompson v. Wal-Mart Stores Tex. LLC,*
   706 F. Supp. 3d 689 (S.D. Tex. 2023)........................................... 8

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................................ passim

Fed. R. Civ. P. 12(c) ............................................................................................. 1, 3, 6, 8

Tex. R. Prof'l. Cond. 3.03 ............................................................................................... 7

Individual Action Plaintiffs Alyeska Master Fund, L.P., Alyeska Master Fund 2, L.P., and Alyeska Master Fund 3, L.P. (collectively, the "Alyeska Plaintiffs"), Orbis Global Equity LE Fund (Australia Registered), Orbis Global Equity Fund (Australia Registered), Orbis Global Balanced Fund (Australia Registered), Orbis SICAV, Orbis Institutional Global Equity L.P., Orbis Global Equity Fund Limited, Orbis Institutional Funds Limited, Allan Gray Australia Balanced Fund, Orbis OEIC, and Orbis Institutional U.S. Equity L.P. (collectively, the "Orbis Plaintiffs" and, together with the Alyeska Plaintiffs, the "Individual Action Plaintiffs"), hereby file this Omnibus Opposition to HPS Investment Partners, LLC's ("HPS") motion for judgment on the pleadings under Rule 12(c) (ECF No. 782) (the "12(c) Motion") and Bayou City Energy Management LLC's ("BCE") motion to dismiss under Rule 12(b)(1), or in the alternative, for judgment on the pleadings under Rule 12(c) (ECF No. 783) (the "12(b)(1) Motion" and, together with the 12(c) Motion, the "Motions"), and the remaining Defendants' Joinders as to the Motions.  (ECF Nos. 784, 785.)

## PRELIMINARY STATEMENT

Defendants' Motions are their latest improper and futile attempt to distract from and delay the trial beginning in 26 days.  Defendants' arguments are out of time, already rejected by this Court, and should be rejected again.  This Court's Fourth Amended Scheduling Order set December 22, 2023 as the deadline to file dispositive motions.  (ECF No. 376.)  On January 10, 2023, BCE and HPS (along with the other Defendants) moved to dismiss the Individual Action Plaintiffs' complaints for failure to state a claim (ECF Nos. 263, 265), and the Court denied those motions on June 7, 2023.  (ECF No. 343.)

1

Although the Second Circuit's decision in *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2nd Cir. 2022)—the case creating the minority rule underlying these Motions—already had issued, the motions to dismiss did not attack the Individual Action Plaintiffs' statutory standing. (*See* ECF Nos. 263, 265.) Defendants subsequently filed nine motions for summary judgment, with several Defendants joining in the motions filed by other Defendants. (ECF Nos. 422, 423, 424, 427, 518, 520, 521, 523, 526, 531, 532.) The Management Defendants (defined below) moved for summary judgment based, in part, on lack of statutory standing relying on the reasoning of the Second Circuit's decision in *Frutarom,* but BCE and HPS made the tactical decision not to join in those motions. (*See* ECF No. 688 at 14-15.) The Court, following oral argument, issued fulsome and detailed rulings on August 12, 2024, denying the portion of the Management Defendants' motion based on lack of statutory standing. (ECF No. 778.) BCE and HPS, joined by the remaining defendants, now bring the Motions on the eve of trial to rehash the same standing arguments they left out of their 12(b)(6) motions, and/or made and already lost at summary judgment. Worse, in a blatant tactical effort to disguise and retry these untimely and already rejected arguments, Defendants, *inter alia,* present another case from outside of this Circuit that followed *Frutarom* as (i) new law to be considered by the Court, and (ii) giving rise to a jurisdictional standing motion that can and must be taken up at any time. Neither is true.

    *First*, BCE's counsel styles its argument as a 12(b)(1) Motion to dismiss for lack of subject matter jurisdiction, presumably in an effort to avoid this Court's governing (and long past) deadline for filing dispositive motions. However, and as the Individual Action

Plaintiffs advised BCE prior to opposing the 12(b)(1) Motion, binding Fifth Circuit law holds unambiguously that the statutory standing grounds upon which they now move ***do not implicate*** the Court's subject matter jurisdiction. BCE hides this binding law from the Court because it is fatal to its motion, and, to the extent its motion is considered under Rule 12(c), like HPS's 12(c) Motion, it is untimely. The Court should view the procedurally deficient and meritless 12(b)(1) and 12(c) Motions for what they are—a delay tactic that should be denied out of hand.

*Second,* BCE's and HPS's untimely and improper Motions were not precipitated by any change in binding law, but are based on a non-binding Ninth Circuit decision adopting a minority rule created by the Second Circuit ***prior to the Defendants' motions to dismiss*** the Individual Action Plaintiffs' complaints. This very same argument also was already raised by the Management Defendants, and it was considered and correctly rejected by the Court at summary judgment. Furthermore, the Second Circuit rule Defendants now raise in their latest effort to delay trial has not been broadly adopted by other courts. The Third Circuit, for instance, has held that investors can pursue securities fraud claims against individuals and entities other than the issuer in whose securities they traded when those third parties disseminate information material to a pending merger in a medium where investors are likely to rely upon it. That is what Defendants did here.

In addition, the non-binding cases Defendants rely upon had facts vastly different than those here. The recent Ninth Circuit case relied upon by Defendants involved alleged misstatements made by an acquisition target company about its business before any merger was publicly announced. The Second Circuit case Defendants rely on involved an

acquisition target that had been covering up a bribery scheme for more than a decade—long before its acquisition was even contemplated.  But in this case, the misstatements were made entirely about the proposed combined entity to promote investment in the SPAC, Silver Run Acquisition Corporation II ("Silver Run"), and to prevent investors like the Individual Action Plaintiffs—two of the largest investors in Silver Run—from redeeming their shares.  Thus, Defendants' reliance on cases not involving an announced merger and involving misstatements about a company's activities years prior to being acquired is misplaced.

Finally, Defendants' last-ditch effort to avoid trial is in any event fruitless.  The meritless arguments raised by Defendants have no bearing on the Individual Action Plaintiffs' state-law claims, which will proceed to trial in this Court regardless of the Motions.  Including for the foregoing reasons, and as set forth more fully below, the Motions are a waste of time and resources designed to distract the parties from preparing for the inevitable trial in this matter.  The Court should deny the frivolous Motions so the parties can proceed to trial on October 7th.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Following the filing of the Individual Action Plaintiffs' complaints in this action, on January 10, 2023, Defendants HPS, BCE, and Arm Energy Holdings, LLC ("ARM") filed their own motion to dismiss the complaints for failure to state a claim pursuant to Rule 12(b)(6).  (ECF Nos. 263, 265.)  Although the authority they now rely on—*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) as interpreted by *Frutarom*—pre-dated the motion to dismiss, neither HPS nor BCE (nor any other Defendants for that matter)

4

argued that the Individual Action Plaintiffs failed to state a claim on their Exchange Act claims for lack of statutory standing. (*See* ECF Nos. 263, 265.) All of Defendants' motions to dismiss the Individual Action Plaintiffs' complaints were denied by the Court on June 7, 2023. (ECF No. 343.)

On July 10, 2023, the Court entered the Fourth Amended Scheduling Order in this action, setting December 22, 2023 as the deadline for the parties to file summary judgment or *Daubert* motions. (ECF No. 376.) On August 31, 2023, HPS, BCE, and ARM moved for summary judgment against the Individual Action Plaintiffs. (ECF No. 423.) As was the case with their motion to dismiss, neither HPS, BCE, nor ARM moved for summary judgment on the basis that the Individual Action Plaintiffs lacked statutory standing to assert their claims under the Exchange Act. (*See id.*) On December 22, 2023, Defendants Alta Mesa Resources, Inc. ("AMR"), Harlan Chapelle ("Chapelle"), Michael Ellis ("Ellis"), and Ronald Smith ("Smith" and collectively, the "Management Defendants") moved for summary judgment (the "Management Defendants' MSJ"). (ECF No. 523, corrected version at ECF No. 688.) The Management Defendants' MSJ did move for summary judgment on the basis that Plaintiffs lack statutory standing to bring Exchange Act claims for statements made prior to the de-SPAC transaction. (*See id.* at 14-15.) As numerous Defendants moved for summary judgment on December 22, 2023, HPS and BCE joined in certain portions of other defendants' summary judgment motions, but both chose not to join in any aspect of the Management Defendants' MSJ, apparently making the tactical decision to hold back an argument that they could try to disguise and spring on the parties later, if necessary. (*See* ECF No. 531, 532.)

On August 12, 2024, the Court granted certain of the Defendants' motions for summary judgment, and denied the remainder, either in their entirety or in part. (ECF No. 778.) The Court denied the Management Defendants' MSJ to the extent it sought dismissal of the Exchange Act claims against them based on Plaintiffs' purported lack of statutory standing. (*See id.*) It further denied HPS's, BCE's, and ARM's motions for summary judgment as to Section 20(a) claims relating to pre-transaction alleged misstatements made by Chapelle. (*Id.* at 50-52.). Now, reaching back to the argument they left lying in wait, defendants improperly recast the statutory standing argument as both a new and timely challenge to the Court's subject matter jurisdiction. The Motions are without merit and should be denied.

## ARGUMENT

### I.   The 12(b)(1) Motion Affirmatively Misstates Binding Law

BCE affirmatively misrepresents binding Fifth Circuit law in a failed attempt to shoehorn its meritless arguments into a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Unlike a Rule 12(b)(6) or 12(c) motion, a party can move for dismissal based on lack of subject matter jurisdiction at any point in the proceeding. *See Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989). Apparently seeking this benefit for its eve-of-trial motion, BCE affirmatively states that "[t]he proper vehicle to raise this jurisdictional lack of standing is Federal Rule of Civil Procedure 12(b)(1) as a motion to dismiss for lack of subject matter jurisdiction." (ECF No. 783 at 9.) But this is an affirmative misstatement of binding Fifth Circuit law—binding law that BCE **_conspicuously left out of its Motion_**.

6

As recently as April of this year, the Fifth Circuit re-affirmed that the standing argument based on *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), which BCE raises in the 12(b)(1) Motion, does not raise an issue of ***Article III standing***, which would implicate the Court's subject matter jurisdiction, but rather is a matter of ***statutory standing***, which does not implicate subject matter jurisdiction and is properly raised in a 12(b)(6) motion to dismiss. *See Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 2024 WL 1674125, at *3, n.5 (5th Cir. Apr. 18, 2024) (explaining that *Blue Chip* "delineat[es] the requirements for statutory standing" and not for Article III standing). It has long been established in the Fifth Circuit that, "[u]nlike Article III standing, statutory standing ***is not jurisdictional***. Instead, it asks the 'merits question' of 'whether or not a particular cause of action authorizes an injured plaintiff to sue.'" *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020) (emphasis added) (quoting *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008)); *see also Camsoft Data Sys., Inc. v. Southern Elecs. Supply, Inc.*, 756 F.3d 327, 332 (5th Cir. 2014) (explaining that statutory standing is not jurisdictional and should not be addressed under Rule 12(b)(1)); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."). BCE ***omits entirely*** this clear and binding law from its 12(b)(1) Motion.[1]

---

[1] Texas Rule of Professional Conduct 3.03(a)(4) requires that counsel disclose to the Court any authority in the controlling jurisdiction directly adverse to the client's position.

Pursuant to controlling Fifth Circuit law, the 12(b)(1) Motion fails to raise an issue as to the Court's subject matter jurisdiction and must be denied on that ground.

## II.   The 12(c) Motion and 12(b)(1) Motion Are Untimely and Improper Under the Federal Rules of Civil Procedure

The 12(c) Motion, and the 12(b)(1) Motion to the extent it is considered under Rule 12(c), filed on the effective eve of trial, are untimely and improperly seek a third bite at the apple in seeking dismissal of the Individual Action Plaintiffs' complaints, which the Court has twice found state claims against the Defendants.  A motion for judgment on the pleadings must be brought "early enough not to delay trial[.]" Fed. R. Civ. P. 12(c).  HPS and BCE have filed their motions following the denial of their summary judgment motions on the eve of the October 7, 2024 trial date, and for the apparent purpose of delaying trial. The Motions are frivolous and have already prejudiced the Individual Action Plaintiffs by forcing them to divert resources responding to the Motions when the parties should be preparing for trial.

Further, the 12(c) Motion and 12(b)(1) Motion should be denied as improperly seeking dismissal following the close of discovery and summary judgment.  "Courts have cast doubt on the validity of Rule 12(c) motions filed after substantial or completed discovery." *Thompson v. Wal-Mart Stores Tex. LLC*, 706 F. Supp. 3d 689, 697 (S.D. Tex. 2023) (denying a motion for judgment on the pleadings filed concurrently with a motion for summary judgment); see also *In re Waggoner Cattle, LLC*, 2022 WL 5264707, at *1-2 (Bankr. N.D. Tex. Apr. 28, 2022) (finding it "would not be appropriate to entertain" a

motion under Rule 12(c) where "extensive discovery has already been completed and the Court has issued a report and recommendation on motions for summary judgment.").

The Court has already denied Defendants' motions to dismiss the Individual Action Plaintiffs' complaints, which have not been changed since, and denied their motions for summary judgment on a complete fact record.  With trial mere weeks away, the Court should not entertain the Defendants' late-filed, post-summary judgment motions for judgment on the pleadings.

## III.    The Motions Rely on Out-of-Circuit Law That is Not Broadly Accepted and That Pre-Dated the Dismissal and Summary Judgment Motions

In addition to being procedurally improper, the Motions rely on out of circuit law that is not broadly accepted.  The purported impetus for filing the Motions was the Ninth Circuit's decision in *In re CCIV/Lucid Motors Securities Litigation*, 110 F.4th 1181 (9th Cir. 2024).  To state the obvious, *Lucid* had no effect on Fifth Circuit law and, therefore, does not excuse Defendants' late filing of their motions for judgment on the pleadings. *See, e.g.*, *Avelar-Oliva v. Barr*, 954 F.3d 757, 765 (5th Cir. 2020) ("Decisions issued by other circuits . . . are not binding on this court.").  Further, the Ninth Circuit in *Lucid* merely adopted an earlier-issued rule from the Second Circuit decision *Frutarom*, stating that a Section 10(b) plaintiff has statutory standing to sue where the plaintiff "purchased or sold the securities about which the alleged misrepresentations were made."  *Lucid*, 110 F.4th at 1186.  Notably, the Ninth Circuit is the only circuit aside from the Second Circuit to adopt this plainly wrong interpretation.

9

Indeed, there is no reason to believe the Fifth Circuit would adopt the Second Circuit's *Frutarom* rule to reach the absurd result of effectively immunizing defendants from securities fraud committed in connection with a SPAC merger. The Third Circuit, for instance, has long allowed securities fraud claims to proceed against individuals and entities other than the issuer "simply by showing that the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 176 (3d Cir. 2000). In *Semerenko*, Cendant Corporation ("Cendant") made a tender offer to acquire all of the common stock of American Bankers Insurance Group, Inc. ("ABI"). *Id.* at 169-70. After announcing the terms of the merger agreement with ABI— and despite questions in the market over whether the deal would close—Cendant repeatedly reaffirmed its commitment to the tender offer and merger with ABI. *Id.* at 170-71. After these statements, however, Cendant announced that it was terminating the merger agreement. *Id.* at 171.

Shareholders of ABI filed suit alleging that Cendant had violated Section 10(b) by making "fraudulent misrepresentations concerning Cendant's financial condition, its willingness to complete the tender offer, and its willingness to complete the proposed merger." *Id.* The district court dismissed, finding that the plaintiffs "failed to establish that the alleged misrepresentations were made 'in connection with' [their] purchases of ABI common stock." *Id.* at 172. The Third Circuit reversed, however, holding "it is no defense that the alleged misrepresentations were made in the context of a tender offer . . . or that they did not specifically refer to the investment value of the security that was bought

or sold." *Id.* at 177.  The Third Circuit further found that "[i]t is well established that information concerning a tender offer or a proposed merger may be material to persons who trade in the securities of the target company." *Id.*

That is precisely the case here.  The Defendants made material misrepresentations and omissions about the ***pending merger*** between Silver Run, Alta Mesa Holdings, and Kingfisher Midstream, and about the combined entity that would result from the merger. They disseminated these misstatements in media upon which reasonable investors would, and did, rely ***for the very purpose*** of promoting investment in Silver Run and preventing Silver Run's shareholders from redeeming their shares.  Given the Third Circuit's intuitive and logical recognition that misstatements concerning a ***pending transaction*** can defraud purchasers and sellers of the securities involved in that pending transaction, BCE's statement that "it is astoundingly improbable that the Fifth Circuit would rule directly contrary" to the Second and Ninth Circuits is nonsensical.  (ECF No. 783 at 10); *see also Klein v. Altria Grp., Inc.*, 525 F. Supp. 3d 638, 657-59 (E.D. Va. 2021) (finding Altria shareholders had standing to pursue securities fraud claims against JUUL and related defendants for misstatements about intent to market vaping products to youths where Altria had made an investment in JUUL that would result in the merger of marketing and distribution functions of the companies).

BCE's feigned certainty that the Fifth Circuit would adopt the Second Circuit's *Frutarom* rule is even more disingenuous given that the rule existed before ***both*** the Defendants' motions to dismiss the Individual Action Plaintiffs' complaints and their motions for summary judgment—and *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S.

723 (1975), which Defendants now refer to as "black letter Supreme Court law" requiring dismissal (ECF No. 783 at 10), existed for nearly fifty years before that.  Nonetheless, ***no Defendant*** raised this argument in moving to dismiss the Individual Action Plaintiffs' complaints (ECF Nos. 263, 265) and only the Management Defendants, with whom BCE and HPS did not join, raised the argument on summary judgment.  (ECF No. 688 at 14-15.)  The Court, properly, considered and rejected this argument on summary judgment. (*See* ECF No. 778.)  It goes without saying that, if BCE and HPS believed that *Frutarom* correctly interpreted *Blue Chip* as barring claims such as this one—such that the Fifth Circuit would follow suit—they would have made that argument in the two successive rounds of dismissal and summary judgment briefing rather than on late-filed, eve-of-trial Rule 12 motions.  Their silence in previous rounds of briefing exposes the current Motions for what they are—an obvious delay tactic.

In short, *Lucid* did not change controlling law, but is an out-of-circuit case adopting a minority rule that has not been broadly adopted by other circuits.  The case establishing the rule, *Frutarom*, pre-dated Defendants' motions to dismiss the Individual Action Plaintiffs' complaints and summary judgment, but neither BCE nor HPS argued for dismissal on that basis until these late-filed Motions ***and*** the Court already expressly rejected this argument in denying the Management Defendants' motion for summary judgment.  The Ninth Circuit's wrongly-decided *Lucid* decision does not provide a basis for dismissal of the Individual Action Plaintiffs' federal securities fraud claims. Defendants' delay in raising these arguments belies either (i) their tacit understanding that the *Lucid* decision – like *Frutarom* before it – has no bearing on the cases at hand; or (ii) a

12

deliberate decision to hold back an argument to be disguised and represented if the first shot failed.  In either case, Defendants' disingenuous and strategic delay tactics should not be rewarded.

## IV.    The Out-of-Circuit Cases Relied Upon By Defendants Are Inapposite

In addition to their not being binding upon the Court, the facts of both *Lucid* and *Frutarom* are vastly different from those in this case and, accordingly, the Court should not apply the reasoning in those cases to dismiss the Individual Action Plaintiffs' claims. Unlike the misstatements alleged here—which were uniformly made in furtherance of Defendants' efforts to promote an announced merger and prevent Silver Run shareholder redemptions—the misstatements alleged in *Lucid* were made by the acquisition target about its expected vehicle production ***prior to the announcement of a merger***.  *See Lucid*, 110 F.4th at 1183.  Indeed, the plaintiffs in *Lucid* all purchased their stock prior to the announcement of the merger, and alleged that the truth was revealed about its expected vehicle production ***when the merger was announced***.  *Id.*  Thus, unlike the Defendants here, the defendants in *Lucid* were alleged to have provided truthful information to the market when the merger was announced and none of the alleged misstatements were made to promote the merger, which had not yet been announced.  *Id.*

*Frutarom* involved alleged misstatements made by an acquisition target about its historical activities long pre-dating the merger announcement.  In *Frutarom*, the plaintiffs alleged that the acquisition target had hidden a foreign bribery scheme dating back to 2002 (pre-dating the 2018 merger announcement by sixteen years) and made additional misstatements regarding the factors leading to its growth in 2016 and 2017, long before the

13

merger was announced.  *See* 54 F.4th at 84.  Thus, the misstatements solely related to the target company's activities and financial condition long pre-dating its announced acquisition.  *See id.*

The Individual Action Plaintiffs' claims here could not be more different than those advanced in *Lucid* and *Frutarom* because they all related to the proposed combined entity's oil production and financial projections and were made to promote investment in Silver Run.   The Individual Action Plaintiffs allege that the Defendants' misstatements **commenced** with Silver Run's filing of an SEC Form 8-K (the "8-K") attaching a press release announcing and promoting the contemplated merger with AMH and Kingfisher, including misstatements made by Chapelle about the proposed combined entity. (*See, e.g.*, Alyeska Compl.  ¶¶ 152, 194.)  Chapelle and other Defendants made additional misstatements the following day in a conference call promoting the merger, and they continued making misstatements in meetings with the Individual Action Plaintiffs during Silver Run's "road show" in the months leading up to the merger's closing.  (*See, e.g.*, *id.* ¶¶ 156, 196; Orbis Compl. ¶¶ 283-292.)  Needless to say, the misstatements made in the 8-K, the conference call, and the road show (the point of which was to convince investors to purchase Silver Run stock and not redeem the shares they already owned) were "about" Silver Run securities because they falsely described, in detail, the combined entity in which the Defendants were promoting investment and votes in favor of the merger.  (*See id.*); *see*

*also Lucid*, 110 F.4th at 1186 (adopting rule that, to be actionable, misstatements must be "about" the securities plaintiffs purchased and/or sold).[2]

In sum, both *Lucid* and *Frutarom* involved fact patterns bearing no resemblance to this action.  The Individual Action Plaintiffs' claims, with which the Court is very familiar, arise from the Defendants' unlawful course of conduct in promoting the purchase of Silver Run stock, and preventing the redemption of that stock, with false statements about the combined entity that would result from a successful merger.  All of the misstatements alleged by the Individual Action Plaintiffs (two of Silver Run's largest investors) were made for these purposes, and related to the going forward entity, not to AMH's or Kingfisher's past practices as standalone companies.  The Individual Action Plaintiffs' claims bear no resemblance to those in *Lucid* and *Frutarom* and should not be dismissed based on those non-binding decisions.

**V.     Trial is Inevitable Because the Motions Do Not Affect the Individual Action Plaintiffs' State Law Claims**

The Motions (and Joinders) seek dismissal of both the Class and Individual Action Plaintiffs' claims arising under the federal securities laws based solely on an erroneous argument regarding statutory standing under the Securities Exchange Act of 1934.  As incorrect and untimely as Defendants' Motions are, they also are a waste of this Court's

---

[2] *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 742 (1975), on which both the 12(b)(1) Motion and the 12(c) Motion rely, is similarly inapposite.  (*See* ECF No. 782 at 5; ECF No. 783 at 8.)  That case established the "purchaser-seller rule," which merely limits plaintiffs under Section 10(b) to actual purchasers and sellers of the security at issue.  *See Blue Chip*, 421 U.S. at 742.  In that case, the plaintiffs alleged they ***chose not to purchase*** securities based on the defendants' misrepresentations, which is the opposite of what the Individual Action Plaintiffs allege here.  *Id.* at 726-27.

and the parties' resources, as they have no bearing on the Individual Action Plaintiffs' common law and statutory fraud claims, nor do any of the Joinders filed by the remaining Defendants.  (*See* ECF Nos. 782-85.)  Accordingly, and because of the advanced stage of these proceedings, the Individual Action Plaintiffs' state law claims will proceed to trial in this Court regardless of the outcome of the Motions.  *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (explaining that declining to exercise jurisdiction over remaining state law claims following dismiss of federal law claims "after investing a significant amount of judicial resources in the litigation" is an abuse of discretion and citing cases to that effect).  Given the Court's previous denial of motions based on Defendants' erroneous arguments, the lack of intervening controlling law, the procedural impropriety of the Motions, and the inevitability of trial in this matter, the Individual Action Plaintiffs respectfully submit that the Court should deny the Motions and proceed to trial.

## <u>CONCLUSION</u>

For the foregoing reasons, the Individual Action Plaintiffs respectfully request that the Court deny the Motions in their entirety.

Dated:  September 11, 2024

Respectfully submitted,

By: */s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
Richard Bodnar
Frank T.M. Catalina
**ROLNICK KRAMER SADIGHI LLP**
1251 Avenue of the Americas
New York, New York 10020
(212) 597-2800

16

lrolnick@rksllp.com
rbodnar@rksllp.com
fcatalina@rksllp.com

*Attorneys for the Alyeska and Orbis Plaintiffs*

17