# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 <br><br> **<u>CLASS ACTION</u>** <br><br> [Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; and RONALD SMITH. <br><br> Defendants. | Civil Action No. 4:22-cv-001189 <br><br> [Consolidated Case] |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., | Civil Action No. 4:22-cv-02590 <br><br> [Consolidated Case] |

ORBIS GLOBAL EQUITY FUND
LIMITED, ORBIS INSTITUTIONAL
FUNDS LIMITED, ALLAN GRAY
AUSTRALIA BALANCED FUND, ORBIS
OEIC, and ORBIS INSTITUTIONAL U.S.
EQUITY L.P.,

               Plaintiffs,

     v.

ALTA MESA RESOURCES, INC., f/k/a
SILVER RUN ACQUISITION
CORPORATION II; RIVERSTONE
HOLDINGS LLC; ARM ENERGY
HOLDINGS LLC; BAYOU CITY
ENERGY MANAGEMENT, LLC; HPS
INVESTMENT PARTNERS, LLC; JAMES
T. HACKETT, HARLAN H. CHAPPELLE,
WILLIAM GUTERMUTH, JEFFREY H.
TEPPER, DIANA J. WALTERS;
MICHAEL E. ELLIS; and RONALD
SMITH,

               Defendants.

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF HPS INVESTMENT
PARTNERS, LLC'S MOTION FOR A JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 3

I.   CHAPPELLE'S PRE-BUSINESS COMBINATION STATEMENTS DO
     NOT SUPPORT STANDING BECAUSE THEY ARE NOT ABOUT
     SILVER RUN OR AMR ................................................................................. 3

     a.   Plaintiffs Cannot Demonstrate Section 10(b) Standing By Showing
          That Chappelle's Statements Were "Connected" To The Sale of
          Silver Run or AMR Securities ...................................................... 4

     b.   Chappelle's Pre-Business-Combination Statements Are About AMH
          and/or Kingfisher .................................................................... 6

     c.   Plaintiffs Attempt to Rely on Statements That Chappelle Did Not
          Make And Which Plaintiffs Do Not Allege Are Misrepresentations .......... 9

II.  HPS'S MOTION IS NEITHER AN IMPROPER SUMMARY
     JUDGMENT MOTION NOR A MOTION FOR RECONSIDERATION ........... 11

III. HPS DID NOT VIOLATE THE SCHEDULING ORDER, THE LOCAL
     RULES, OR THE COURT'S PROCEDURES BY FILING ITS RULE
     12(C) MOTION ........................................................................... 13

     a.   The Scheduling Order Did Not Contain A Deadline For Dispositive
          Motions ............................................................................. 14

     b.   Defendants Did Not Violate Any Of The Pre-Motion Requirements
          In The Local Rules Or Court Procedures ..................................... 14

IV.  PROPER APPLICATION OF THE PURCHASER-SELLER RULE IS A
     CONTROLLING QUESTION OF LAW AND RESOLVING IT WOULD
     MATERIALLY ADVANCE THE TERMINATION OF MANY OF
     PLAINTIFFS' CLAIMS ................................................................. 16

CONCLUSION .............................................................................................. 18

CERTIFICATE OF SERVICE ....................................................................... 20

i

### TABLE OF AUTHORITIES

**Page**

### Cases

*Austin v. Kroger Tex., L.P.*,
864 F.3d 326 (5th Cir. 2017) ...................................................................... 13

*Blue Chips Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ......................................................................... 2, 3, 4

*In re CarLotz, Inc. Sec. Litig.*,
2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) ................................................ 9

*Edwards v. Occidental Chem. Corp.*,
892 F.2d 1442 (9th Cir. 1990) .................................................................. 14

*Escobedo v. Ace Gathering, Inc.*,
2023 WL 5511199 (S.D. Tex. Aug. 25, 2023) ................................... 16, 17, 18

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ................................................................... 14

*In re: CCIV / Lucid Motors Sec. Litig.*,
110 F.4th 1181 (9th Cir. 2024) ....................................... 1, 2, 3, 4, 6, 7, 8

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ................................................................... 17

*Lavespere v. Niagara Mach. Tool & Works, Inc.*,
910 F.2d 167 (5th Cir. 1990) ............................................................. 12, 13

*Linton v. Shell Oil Co.*,
563 F.3d 556 (5th Cir. 2009) ................................................................... 16

*Mayo v. Hartford Life Ins. Co.*,
214 F.R.D. 458 (S.D. Tex. 2002) .............................................................. 18

*McClendon v. United States*,
892 F.3d 775 (5th Cir. 2018) ............................................................. 12, 13

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
54 F.4th 82 (2d Cir. 2022) ............................................................ 3, 4, 5, 9

*Morales v. OK Trans, Inc.*,
　　2024 WL 3223676 (S.D. Tex. June 18, 2024) ............................................... 17

*Pasco v. Knoblauch*,
　　566 F.3d 572 (5th Cir. 2009) ........................................................................ 12

*Schiavone v. Fortune*,
　　477 U.S. 21 (1986) ....................................................................................... 14

*Vaughan v. Anderson Reg'l Med. Ctr.*,
　　849 F.3d 588 (5th Cir. 2017) ........................................................................ 17

*Water Island Event-Driven Fund v. Maxlinear, Inc.*,
　　2024 WL 3974758 (S.D. Cal. Aug. 28, 2024) ........................................... 5, 6

## Rules

Fed. R. Civ. P. 1 ....................................................................................................... 14

Local Rule LR7.1 ..................................................................................................... 15

Rule 10b-5 ................................................................................................................... 3

## Statutes

15 U.S.C.A. § 78j ....................................................................................................... 4

28 U.S.C. § 1292(b) ...................................................................................... 16, 17, 18

Exchange Act Section 20(a), 15 U.S.C. § 78t(a) ....................................... 3, 10, 11, 14, 18

## INTRODUCTION

In their Omnibus Opposition to Defendants' Motions to Dismiss and for Judgment on the Pleadings, Dkt. 811 (hereinafter, the "Opposition"), Class Plaintiffs try desperately to distance themselves from the Ninth Circuit's recent ruling, *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024) ("*In re CCIV*").  But no amount of misdirection will allow Plaintiffs to escape the bright-line drawn by the purchaser-seller rule:

> "a plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities ***about which the alleged misrepresentations were made***."

*In re CCIV*, 110 F.4th at 1186 (applying the "plain language of *Blue Chip*") (emphasis added).

Indeed, Plaintiffs make no effort to address the fact that the public statements Chappelle allegedly made prior to the Business Combination (and for which Plaintiffs seek to hold HPS liable under a Section 20(a) control theory) were about AMH and/or Kingfisher, and ***not*** Silver Run or AMR, as the Court itself has explicitly stated.  *See* Dkt. 778 ("MSJ Order") at 52 (recognizing that Chappelle made "public statements ***regarding AMH and Kingfisher*** before the SPAC transaction, while Chappelle was AMH's CEO") (emphasis added).

Rather than grapple with the issues raised in HPS's Motion for a Judgment on the Pleadings, Dkt. 782 (hereinafter, the "Motion"), Plaintiffs attack a number of strawmen, answering questions no one asked and that are irrelevant to the resolution of the Motion. For example, Plaintiffs confidently assert that Chappelle made statements "in connection with" the purchase or sale of Silver Run and AMR securities, Opp. at 11, while ignoring

the issue identified in the Motion—that Chappelle's statements were not, in fact, ***about Silver Run or AMR***.  *See In re CCIV*, 110 F.4th at 1185 (limiting standing to "purchasers and sellers of the security ***about which*** the alleged misrepresentations were made") (emphasis added).  Under *In re CCIV*, asking "whether the security plaintiff purchased is sufficiently *connected* to the misstatement" has no bearing on the standing inquiry.  *Id.* at 1185 (citing *Blue Chips Stamps v. Manor Drug Stores*, 421 U.S. 723, 742 (1975)).

The Opposition does not even attempt to explain how Plaintiffs prevail using the correct standard.  A review of Chappelle's pre-Business Combination statements—the only purported misstatements on which HPS's alleged 20(a) control liability can be premised—make clear why:  Chappelle's statements were not about Silver Run (or AMR) which had no operations, results, or history at the time Chappelle's statements were made.  Rather, Chappelle's pre-Business Combination statements, which were made "while Chappelle was AMH's CEO," are ***about*** "AMH and Kingfisher."  MSJ Order at 52.  That AMH and Kingfisher were later acquired by Silver Run to become AMR does not change that fact.

Unable to argue that they have standing under the standard set forth in *In re CCIV*, Plaintiffs instead try pointing to the Motion's purported procedural deficiencies.  In any event, Plaintiffs have not moved to strike the Motion.  HPS's desire to seek relief from the Fifth Circuit should its Motion be denied is not an acknowledgement that the Motion is meritless, as Plaintiffs claim, Opp. at 12.  Instead, HPS filed its Motion motivated by a desire to resolve the remaining claims against it on the merits using the appropriate legal standard.  Applying the correct framework makes clear that Chappelle's pre-Business Combination statements do not convey standing for Plaintiffs, as purchasers of Silver

Run/AMR securities, to bring Section 10(b) claims.  Accordingly, Plaintiffs' Section 10(b) claims arising from Chappelle's pre-Business Combination statements and the remaining Section 20(a) control person claims against HPS should be dismissed.

## <u>ARGUMENT</u>

I.  **Chappelle's Pre-Business Combination Statements Do Not Support Standing Because They Are Not About Silver Run or AMR**

Plaintiffs claim that the only similarity between *In re CCIV* and this action are that both actions involve SPACs.  Opp. at 8.  Not so.  Plaintiffs can only reach this conclusion by disregarding the facts in *In re CCIV* and ignoring the context (and content) of Chappelle's pre-Business Combination statements.   A fulsome review of Plaintiffs' allegations show that, like the alleged misstatements at issue in *In re CCIV*, Chappelle's pre-Business Combination statements were about AMH or Kingfisher—***and not about Silver Run or AMR***.  But Plaintiffs do not even bother to address the content of the alleged misstatements at issue and instead choose to misdirect the Court, quote statements that are not at issue (and that Chappelle is not alleged to have made), and incorrectly apply the bright-line purchaser-seller rule adopted in *Blue Chip Stamps*[1] and applied to a SPAC

---

[1]  To the extent Plaintiffs believe that the Court should weigh the sufficiency of the connection or relationship between Chappelle's alleged misstatements and the sale of Silver Run or AMR securities, the Supreme Court in *Blue Chip Stamps* was explicit in rejecting "a shifting and highly fact-oriented disposition of the issue of who may bring a damages claim for violation of Rule 10b-5."  *Blue Chip Stamps*, 421 U.S. at 754.  *See also In re CCIV*, 110 F.4th at 1185 ("*Menora* . . . reaffirmed *Blue Chip's* bright-line rule: that standing depends on whether the plaintiff bought or sold the securities about which the misstatements were made.") (quotation marks omitted); *Menora*, 54 F.4th at 87 (rejecting plaintiffs' proposed "direct relationship" test because such a test "would begin exactly the 'endless case-by-case erosion' of the purchaser-seller rule about which *Blue Chip Stamps* warned") (quoting *Blue Chip Stamps*, 421 U.S. at 755).

transaction by the Ninth Circuit in *In re CCIV* and to a merger by the Second Circuit in

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022)

("*Menora*").  Plaintiffs' Opposition does nothing to salvage their Section 10(b) claims

based on Chappelle's alleged pre-Business Combination misstatements.

> **a.   Plaintiffs Cannot Demonstrate Section 10(b) Standing By Showing That Chappelle's Statements Were "Connected" To The Sale of Silver Run or AMR Securities**

The Opposition dedicates significant space to showing that Chappelle's alleged

misstatements were "made 'in connection with the purchase or sale of' Silver Run and

AMR securities."  Opp. at 10-11; *see also* Dkt. 797 (Aug. 22, 2024 Hr'g Tr.) at 32:11-19

(Chappelle's pre-Business Combination statements were "joint statements…about the

merged entity and … filed by Silver Run.").  But that ***is not*** the issue raised in the Motion

or decided in *In re CCIV*.  *See* Mot. at 5-7.  The Ninth Circuit's clear articulation that "a

plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities

***about which the alleged misrepresentations were made***" is novel only in its application to

a SPAC transaction.  *In re CCIV*, 110 F.4th at 1186 (applying the "plain language of *Blue*

*Chip*") (emphasis added).  This is the same standard that was articulated and applied by the

Second Circuit in *Menora*, despite Plaintiffs' attempts to argue otherwise.  *Compare* Opp.

at 11 (claiming that *Menora* "explicitly allows claims against third parties for statements

made 'in connection with the purchase or sale' of securities") *with Menora*, 54 F.4th at 88

("Plaintiffs may be able to sue entities other than the issuer of a security if those entities

made material misstatements ***about the security***, as long as the ***plaintiffs purchased or sold***

*the securities about which the misstatements were made*.") (emphasis added).[2]  Plaintiffs' misguided attempt to change the standard to fit their narrative should be disregarded out of hand.

The one district court to consider Section 10(b) statutory standing in light of *In re CCIV* has also unequivocally interpreted the ruling as rejecting "an alternative to the 'purchaser-seller' rule, which asks the court to decide whether a security is 'sufficiently connected to a misstatement' to establish statutory standing" and made clear that, under the purchaser-seller rule, standing to bring claims turns on "whether the misrepresentations were ***made about***" the company in which Plaintiffs purchased securities.  *Water Island Event-Driven Fund v. Maxlinear, Inc.*, 2024 WL 3974758, at *4-5 (S.D. Cal. Aug. 28, 2024) ("*Water Island*") (emphasis added).  Applying *In re CCIV*, the *Water Island* court ruled that because plaintiffs bought shares in the ***target company***, they did not have standing to sue over statements made by the ***acquiring company*** that "***relat[ed] to*** [the ***acquiring company***'s]: (1) evaluation of the merger, including [the target's] benefits to [the purchaser], and (2) commitment to completing the merger."  *Id.* at *4.  Despite acknowledging "a ***significant connection*** between the shares of a target and the merger-related statements of its acquirer," the *Water Island* court determined that plaintiffs lacked standing because "the key issue … is whether the misrepresentations were made ***about***" the company in which plaintiffs had purchased securities.  *Id.* at *4 (emphasis added).

---

[2]  Plaintiffs' attempts to show that Chappelle's statements were "connected" to and integrated with Silver Run's proxy materials, Opp. at 10, have no impact on the standing analysis, for the same reasons.

The same is true here.   As the Court recognized in its MSJ Order, each of Chappelle's pre-Business Combination alleged misstatements were ***about AMH or Kingfisher, not Silver Run or AMR***.   *See* Dkt. 778 at 52 (recognizing that Chappelle made "public statements ***regarding AMH and Kingfisher*** before the SPAC transaction, while Chappelle was AMH's CEO").   And like the *Water Island* plaintiffs who lacked standing to pursue Section 10(b) claims against the acquiring company because they "did not hold [the acquiring company's] stock during the Class Period and the alleged misrepresentations were made about [the acquiring company]," *Water Island*, 2024 WL 3974758, at *5, Plaintiffs' 10(b) claims based on Chappelle's alleged public pre-Business Combination statements, and the remaining 20(a) claims against HPS based on those statements, should be similarly dismissed.[3]

### b.   Chappelle's Alleged Pre-Business-Combination Statements Are About AMH and/or Kingfisher

Conspicuously absent from Plaintiffs' Opposition is any attempt to grapple with the content of the specific alleged misstatements at issue, ***despite each being laid*** out in Bayou City's motion.   Dkt. 783 at 5-6.   A review of Chappelle's purported misstatements makes clear why:   none of the statements are ***about*** Silver Run or AMR as required under the purchaser-seller rule.   For example, in the August 16, 2017 press release, Chappelle is

---

[3]   That the *Water Island* plaintiffs purchased shares in the target company as opposed to the acquiring company, as Plaintiffs did here, does not change the analysis.   The bottom line is the same.   Under *In re CCIV*, plaintiffs must be purchasers of securities from the entity "about which the alleged misrepresentations were made" to establish standing. *In re CCIV*, 110 F.4th at 1186.   Neither the *Water Island* plaintiffs nor Plaintiffs here can make that showing.

quoted as saying, "We see this as a tremendous way to **continue our evolution as a low-cost, high-value producer in the STACK**." Class Plaintiffs' Third Amended Compl., Dkt. 218 (hereinafter, "TAC") ¶ 190 (emphasis added). That statement is **about AMH** as a producer in the STACK. Plaintiffs likewise point to another Chappelle statement about **AMH's** acreage and production in the STACK on the August 17, 2017 investor call. *See* TAC ¶ 194.[4] It is not enough, as Plaintiffs claim, that Chappelle's statements were made "in connection with" Plaintiffs' purchase of Silver Run or AMR securities. What matters is that the statements **were not about those securities**. A "connection" is not enough. *See In re CCIV*, 110 F.4th at 1186 (rejecting plaintiff's proposed construction of Section 10(b) standing that "would require courts to determine 'whether the security plaintiff purchased is sufficiently connected to the misstatement' on a case-by-case basis").

Plaintiffs' own allegations of falsity further underscore that Chappelle's pre-Business Combination statements were about AMH and not Silver Run or AMR. Plaintiffs allege that the first statement above is false because, at the time it was made, "nearly 90% of all STACK wells operating … had improperly drilled vertical bores – including S-curved well bores – which literally made it impossible to economically extract oil using rod-lift capability" and because the "650 MBOE per well guidance was … artificially inflated by as much as 40% **due to [AMH]'s** erroneous assumptions for optimal well spacing and

---

[4] Quoting Chappelle as saying "We have over 200 wells that we've drilled here and we've demonstrated the value, and we have confidence in the upside. As an illustration of that, at the end of the second quarter [of 2017], we drilled on the order of 200 wells; of those, over 160 were on production. And of that number, about 114 had sufficient production history to give us confidence that at the end of this year, our year-end reserves will reflect better than 650,000 BOE."

number of wells per pad." TAC ¶ 191 (emphasis added). When Chappelle made this statement, Silver Run **did not have** any operations and, as Plaintiffs acknowledge, it was **AMH's** assumptions that gave rise to the 650 MBOE per well guidance. *See id.* The second statement is also indisputably about AMH and not Silver Run or AMR because it describes the work that **AMH** had already performed and explains what **AMH** expects to do by year end, before the merger with Silver Run closed. *Id.* ¶ 194.

Moreover, at the time Chappelle made the alleged misstatements at issue, AMH and Silver Run were "two entirely separate companies. [Chappelle's] alleged misrepresentations made about [AMH] cannot be imputed to [Silver Run,] another company that later acquired it." *In re CCIV*, 110 F.4th at 1187. It does not matter, as Plaintiffs claim, that these statements were made during a public conference call or contained in a press release issued contemporaneously with announcement of the prospective Silver Run acquisition.[5] *See* Opp. at 9-11. Chappelle's alleged pre-Business Combination statements were not *about* Silver Run or AMR—the only securities Plaintiffs purchased. Under *In re CCIV*, that is all that matters.[6] *See In re CCIV*, 110 F.4th at 1187 (applying *Blue Chip* to hold that plaintiffs lacked standing to bring Section 10(b) claim

---

[5] To the extent Chappelle's statements were incorporated by Silver Run II into its Proxy materials as Plaintiffs argue, Opp. at 10-11, that also has no bearing on Plaintiffs' standing.

[6] As noted in Section I.a, Plaintiffs' reliance on the statement in *Menora* that "[p]laintiffs may be able to sue entities other than the issuer of a security if those entities made material misstatements about the security, as long as the plaintiffs purchased or sold the securities about which the misstatements were made," is misplaced. Opp. at 11, n.8. Again, the question is not whether Chappelle can be sued for making statements about Silver Run or AMR; *it is whether the statements upon which Plaintiffs' claims are based are, in fact, about Silver Run or AMR*.

8

unless "Plaintiffs purchased or sold the securities *about which Defendants' alleged misrepresentations were made*"); *see also Menora*, 54 F.4th at 87-88 (alleged misstatements made in "joint press releases, [an acquiring company's] SEC filings and investor presentations, and investment bank reports about [an acquiring company's] acquisition of [a target]" do not convey standing because plaintiffs, as "purchasers of a security of an acquiring company do not have standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger between the two companies"); *In re CarLotz, Inc. Sec. Litig.*, 2024 WL 1348749, at *6 (S.D.N.Y. Mar. 29, 2024) (finding plaintiffs lack standing to bring a Section 10(b) claim based on the target company's pre-acquisition statements, even though those statements were included in the acquiring company's SEC filings and when "read in context [were] also 'about' the securities of the [SPAC], which [plaintiffs] did purchase"). Because Plaintiffs do not own and have never owned shares in AMH or Kingfisher, they do not have standing to bring Section 10(b) claims based on Chappelle's alleged pre-Business Combination statements ***about either pre-acquisition entity***.

      **c.**     **Plaintiffs Attempt To Rely On Statements That Chappelle Did Not Make And Which Plaintiffs Do Not Allege Are Misrepresentations**

In a desperate attempt to save their claims, the Opposition cites to certain pre-Business Combination statements to try to show that Chappelle's statements were made "in connection" with the Silver Run merger. Opp. at 11. As noted above, this cannot help Plaintiffs. *See supra* § I.a. Significantly, however, neither of these additional statements actually forms the basis of the Section 10(b) claims underlying the remaining Section 20(a)

claims against HPS.  For example, Plaintiffs write that "Hackett and Chappelle made their false statements at and following the announcement of the merger, to pitch investors on a 'compelling investment opportunity.'"  Opp. at 11.  But not only is this ***not*** one of the alleged misstatements in the TAC, this statement was actually made by Jim Hackett, ***and not Chappelle***—as Plaintiffs themselves recognize.  *See* Opp. at 10 (stating that "***Jim Hackett*** called [the merger] 'a compelling investment opportunity'") (emphasis added).

Plaintiffs also point to Chappelle's introduction on the August 17, 2017 investor conference call, where he stated, "***We*** cannot be more excited than to work with Jim Hackett and Silver Run II to build upon the value ***we've*** created and the progress that ***we've*** made in the STACK."  Opp. at 10 (citing Dkt. 811-5) (emphasis added).  Chappelle's repeated references to "we" make clear that he is speaking about and on behalf of AMH, as AMH's then-CEO.  And again, this statement ***is not*** one of the alleged misstatements underlying Plaintiffs' Section 10(b) claims against Chappelle.

Tellingly, with less than a month to go before trial, Plaintiffs are still trying to add new alleged misstatements to try to salvage their claims.  This moving target must stop.  Plaintiffs must live with what they have pled and cannot now, at the eleventh hour, try to point out new statements.  And regardless, these new statements that Plaintiffs cite further underscore that Chappelle was speaking about AMH or Kingfisher, ***not*** Silver Run or AMR.

## II.    HPS's Motion Is Neither An Improper Summary Judgment Motion Nor A Motion For Reconsideration

Although the Opposition repeatedly states that the Management Defendants raised a standing argument in their motion for summary judgment, Plaintiffs fail to explain why that is relevant.  *See* Opp. at 2.[7]  HPS was not obligated to join the Management Defendants' summary judgment motion, nor was it required to make this standing argument in its own summary judgment motion.  Indeed, Plaintiffs ***never even alleged that*** HPS was responsible as a control person under Section 20(a) for Chappelle's pre-Business Combination statements about AMH.  *See* TAC, Count II for Alleged Violations of Section 20(a), ¶ 369 ("Defendants each acted as controlling persons of ***[AMR]*** within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their high-level positions, participation in and/or awareness of ***[AMR's]*** operations, direct involvement in the day-to-day operations of ***[AMR]***, and/or intimate knowledge of ***[AMR's]*** actual performance, and their power to control the materially false and misleading public statements about Alta Mesa during the Class Period, Defendants had the power and ability to control the actions of the Management Defendants, Board Defendants, [***AMR***], and ***[AMR's]*** employees.") (emphasis added).[8]

---

[7]    Stating that "None of the other defendants [including HPS] bothered to make or join the Management Defendants' argument in their summary judgment motions," but failing to explain the import of that fact on Defendants' ability to move for relief now.

[8]    This argument was improperly raised for the first time in Plaintiffs' opposition to HPS's summary judgment motion.  *See* Dkt. 445 § I.A.  Further, when the Management Defendants moved for summary judgment, no Circuit Court had applied the purchaser-seller rule to statements made before the closing of a SPAC transaction.  That did not

Further, Plaintiffs' assertion that HPS's 12(c) Motion is actually a Rule 59(e) motion for reconsideration has no merit for three reasons.

*First*, as Plaintiffs repeatedly acknowledge and as noted immediately above, HPS did not previously make a standing argument at summary judgment.  *See, e.g.*, Dkt. 797 (Aug. 22, 2024 Hr'g Tr.) at 33:4-7; Opp. at 3-5.  Nor was it required to do so.  In fact, Plaintiffs cite no authority to support their assertion that arguments previously raised by the Moving Defendants should be construed as arguments raised by HPS.  This meritless contention should be seen for what it is—yet another attempt by Plaintiffs to improperly group Defendants together.

*Second*, with respect to the standing argument made by the Management Defendants at summary judgment, the MSJ Order was not a final "judgment on the merits," which is required to bring a motion for reconsideration under Rule 59(e).  *Lavespere v. Niagara Mach. Tool & Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).  In the Fifth Circuit, "Rule 59(e) applies only to final judgments."  *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018).  An order denying a motion for summary judgment motion does not qualify as such, regardless of the argument previously made.  *See Pasco v. Knoblauch*, 566 F.3d 572, 576 (5th Cir. 2009) ("Generally, denials of summary judgment are not final orders.").

*Third*, even if HPS's Motion could be considered a motion for reconsideration, it should be assessed as a Rule 54(b) motion, which applies to "any order or other decision

change until the Ninth Circuit's opinion was issued in *In re CCIV*, which is HPS's basis for bringing the Motion now.

… that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties [and] does not end the action," Fed. R. Civ. P. 54(b), and "permits the district court 'to reconsider and reverse its decision *for any reason it deems sufficient*.'" *McClendon*, 892 F.3d at 781 (emphasis added).  Rule 54(b) motions are assessed using a more flexible standard than Rule 59(e) and allow a trial court to "reconsider and reverse its decision ... *even in the absence of new evidence or an intervening change in or clarification of the substantive law*."  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citing *Lavespere*, 910 F.2d at 185) (emphasis added).  As a result, Plaintiffs' assertions regarding the application of Rule 59(e) and its standards should be disregarded.

## III.   HPS Did Not Violate The Scheduling Order, The Local Rules, Or The Court's Procedures By Filing Its Rule 12(c) Motion

In their Opposition, Plaintiffs argue that HPS violated the operative scheduling order, Dkt. 376 ("Scheduling Order"), and failed to follow Your Honor's Court Procedures and the Local Rules of the United States District Court for the Southern District of Texas (the "Local Rules") in filing the Motion.  Putting aside that these claims are patently false, accepting Plaintiffs' argument would require the court to eschew an opportunity to resolve the remaining claims against HPS on the merits before having to go through an extensive trial.  *See Austin*, 864 F.3d at 337 (district courts "should construe the procedural rules with a preference toward resolving the case on the merits") (citing Fed. R. Civ. P. 1).  Because Rule 12(c) provides a means of "dispos[ing] of cases where … a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts," *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312

(5th Cir. 2002) (citation omitted), HPS respectfully requests that the Court issue a "decision[] on the merits" finding that Plaintiffs lack standing to bring their Section 10(b) claims upon which the remaining Section 20(a) claims against HPS are based, *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 (9th Cir. 1990) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 27 (1986)).

### a.   The Scheduling Order Does Not Contain A Deadline For Dispositive Motions

Despite Plaintiffs' attempt to claim otherwise, Opp. at 1, the plain text of the Scheduling Order does not provide a deadline by which all dispositive motions must be filed.   Instead, the December 22, 2023 deadline in the Scheduling Order applies to "Summary Judgment and/or Daubert Motions."  Scheduling Order at 3.  This language was specifically negotiated and jointly proposed by the parties. *See* Dkt. 368, 368-1.  Indeed, the parties filed numerous letters with the Court on the case deadlines before the Scheduling Order was entered, *see, e.g.*, Dkt. Nos. 345, 346, 348, and the same deadline for "Summary Judgment and/or Daubert Motions" was contained in earlier versions of the schedule to which Plaintiffs also stipulated, *see* Dkt Nos. 179, 220, 336, 336-1, 368, 368-1.  If Plaintiffs wanted to set a deadline by which the parties had to file all "dispositive motions," they could have done so.  That they chose not to is not grounds for reinterpreting the Scheduling Order's plain text now.

### b.   Defendants Did Not Violate Any Pre-Motion Requirements In The Local Rules Or Court Procedures

Plaintiffs claim that HPS violated the Court Procedures by failing to seek a pre-motion conference before filing the Motion. *See* Opp. at 2, n.3.  But the Court has made

clear that, although Rule 6.B of the Court Procedures ordinarily requires that a party request a pre-motion conference before filing a Rule 12 motion, Defendants need not do so here given the Court's familiarity with this action: "With respect to the premotion conference requirement, I stated that ***the parties do not need to file a premotion letter on dispositive motions going forward because I know what the issues are.  And you guys aren't going to agree on them***."  Dkt. 334 (May 8, 2023 Hr'g) Tr. at 17:23-18:1 (emphasis added); *see also id.* at 16:4-18 ("because I know the issues here and I understand that a premotion conference would not be helpful, the parties do not need to request a premotion conference before they proceed to file … So if the parties wish to proceed, they may proceed").  By forgoing a pre-motion conference request, HPS was simply following the Court's instructions and promoting judicial efficiency—endeavors for which it should not be punished.[9]

---

[9]    Notably, Plaintiffs recently filed multiple motions without conferring with Defendants, in violation of Local Rule LR7.1 and Section 6.C of the Court Procedures.  *See* Dkt. 808 (Class Plaintiffs' Motion for an Order) at 12 (stating that "Class Plaintiffs have conferred with Defendants numerous times regarding the issues raised in this motion," but not about the motion itself); Dkt. 809 (Class Plaintiffs' Motion to Bifurcate and to Preclude Evidence) at 12 (stating that "Class Plaintiffs have conferred with Defendants numerous times regarding the issues raised in this motion," but not about the motion itself); Dkt. 810 (Class Plaintiffs Motion to Set the Order of Proof) at 13 (stating that Plaintiffs' filed their motion without conferring with Defendants "given the limited time before the October 7, 2024 commencement of trial and the need to have the order of proof established before that date).  At the September 9, 2024 status conference, Plaintiffs' only explanation for this failure was the imminent trial date and a desire to get their motions in front of the Court. Plaintiffs cannot attempt to hold Defendants accountable to the rules while simultaneously excusing themselves from the same.

**IV.    Proper Application Of The Purchaser-Seller Rule Is A Controlling Question Of Law And Resolving It Would Materially Advance The Termination Of Many Of Plaintiffs' Claims**

The Opposition suggests that HPS's request for an interlocutory appeal is in some way intended to avoid going to trial.  Not so.  Should its Motion be denied, HPS requests that this Court certify its decision for interlocutory appeal and immediate review by the Fifth Circuit pursuant to 28 U.S.C. § 1292(b) in order to protect itself from undertaking the burden of preparing for and defending itself at a weeks-long trial.  "Under 28 U.S.C. § 1292(b), a district court judge may certify an order for interlocutory appeal if three conditions are met: the order (1) 'involves a controlling question of law'; (2) 'there is substantial ground for difference of opinion' on the question; and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Escobedo v. Ace Gathering, Inc.*, 2023 WL 5511199, at *1 (S.D. Tex. Aug. 25, 2023) (citing *Linton v. Shell Oil Co.*, 563 F.3d 556, 557–58 (5th Cir. 2009)).  The issue of statutory standing under Section 10(b), as articulated in HPS's Motion, meets these requirements.

Plaintiffs claim that HPS cannot satisfy the § 1292(b) certification criteria because *In re CCIV* is not controlling law in the Fifth Circuit.  *See* Opp. at 12-13.  Notwithstanding the fact that *In re CCIV* applies the purchaser-seller rule as adopted by the Supreme Court in *Blue Chip Stamps*, Plaintiffs' articulation is not the standard.  "[W]hether an issue of law is controlling generally hinges upon ***its potential to have some impact on the course of the litigation***."  *Morales v. OK Trans, Inc.*, 2024 WL 3223676, at *2 (S.D. Tex. June 18, 2024) (internal citation removed) (emphasis added).  It does not turn, as Plaintiffs suggest, on

16

whether there is clear, existing and controlling law on a legal issue.  Indeed, if that were the case, there would be no reason for HPS to request that the Fifth Circuit weigh in on the issue.

HPS's Motion also presents an issue that gives rise to a substantial ground for difference.   As the Opposition itself demonstrates, "fair-minded jurists might reach contradictory conclusions" regarding the proper application of the purchaser-seller rule in the context of a SPAC transaction.  *Escobedo*, 2023 WL 5511199, at *2; *see also Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 532 (5th Cir. 2008) (granting an interlocutory appeal to rule on the "PSLRA's heightened securities fraud pleading requirements").   Moreover, the Fifth Circuit has never applied the purchaser-seller rule in the context of a SPAC transaction.  This type of "novel and difficult question[] of first impression[]" is precisely the type of issue about which the parties would benefit from the Fifth Circuit's guidance.  *Morales,* 2024 WL 3223676, at *2; *see also Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 590 (5th Cir. 2017) ("divergent views held by other circuits" on the interpretation of a key statute in the litigation are sufficient to find that there is "a controlling question of law as to which there is substantial ground for difference of opinion … under 28 U.S.C. § 1292(b)").

Finally, there is no doubt that resolving the proper application of the purchaser-seller rule to Chappelle's alleged pre-Business Combination statements would "materially advance[] the termination of the litigation" because adopting HPS's view "would result in [the] dismissal of [HPS from this] action."  *Escobedo*, 2023 WL 5511199, at *2 (internal citations omitted).  Indeed, if the Fifth Circuit were to find that Plaintiffs lack standing to

maintain their primary claims based on Chappelle's alleged pre-Business Combination statements, then not only are those Section 10(b) claims dismissed, but the only control person claims remaining against three defendants in this action—HPS, Bayou City, and ARM Energy—will also be dismissed, allowing these parties to avoid the "serious expense" of preparing for and participating at trial. *Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 458, 462 (S.D. Tex. 2002) (granting an interlocutory appeal where "definitive resolution of [] threshold issues" would materially advance the termination of the litigation).

Because the question presented in HPS's Motion satisfies each of the criteria for an interlocutory appeal under § 1292(b), HPS respectfully requests immediate certification to the Fifth Circuit should the Court deny its Motion.

## CONCLUSION

For the foregoing reasons, and for those stated in the Motion, HPS respectfully requests that the Court grant its Motion for a Judgment on the Pleadings and dismiss the remaining Section 20(a) claims against HPS, or in the alternative, certify the issue for interlocutory appeal.

Dated:    September 12, 2024

Respectfully submitted,

*/s/ Christopher D. Porter*
(signed by permission of Attorney-in-Charge)
Karl S. Stern (attorney in charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone: (713) 221-7000 / Facsimile: (713) 221-7100
Email: karlstern@quinnemanuel.com
chrisporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Jesse Bernstein (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000 / Facsimile: (212) 849-7100
Email: michaelcarlinsky@quinnemanuel.com
courtneywhang@quinnemanuel.com
jessebernstein@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT PARTNERS, LLC**

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served by the Court's ECF system, and a copy has been served by email to counsel for all parties on September 12, 2024.

<u>/s/ *Christopher Porter*</u>
By:  Christopher Porter