# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., | Judge George C. Hanks, Jr. |
| Plaintiffs, | No. 4:22-cv-01189 |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.* | ORAL ARGUMENT REQUESTED |
| Defendants. | |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., | No. 4:22-cv-2590 |
| Plaintiffs, | |
| v. | |
| ALTA MESA RESOURCES, INC., *et al.*, | |
| Defendants. | |

**BAYOU CITY'S REPLY IN SUPPORT OF ITS 12(b)(1) MOTION TO DISMISS FOR LACK OF STANDING, OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, Federal Rule of Civil Procedure 12(c), Bayou City Energy Management, LLC ("Bayou City") submits this reply brief in favor of its Motion to Dismiss for Lack of Standing, or, In the Alternative, Motion for Judgment on the Pleadings.

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      SUMMARY OF ARGUMENT ........................................................... 1

II.     ARGUMENT ................................................................................... 3

      A.   THE COURT SHOULD DISMISS PLAINTIFFS' SECURITIES
          FRAUD CLAIMS RELATING TO COMPANIES IN WHICH
          THEY NEVER OWNED STOCK ................................................. 3

          1.   *Blue Chip* and its Circuit-Court Progeny Foreclose Standing ........... 3

          2.   Bayou City's 12(b)(1) Motion Is Both Timely and Proper ............. 13

III.    CONCLUSION ............................................................................... 19

CERTIFICATE OF SERVICE .............................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*,
    38 F.3d 211 (5th Cir. 1994) ............................................................... 9, 15, 17

*Alibaba Grp. Holding Ltd. Sec. Lit.*,
    20 Civ. 9568 (GBD), 2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) ........................ 14

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
    821 F.3d 352 (2d Cir. 2016) ................................................................ 14

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ................................................................ 10

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) .........................................................................passim

*Carlton v. Cannon*, 184 F. Supp. 3d 428 (S.D. Tex. 2016) ............................................. 16

*Herpich v. Wallace*,
    430 F.2d 792, 804 (5th Cir. 1970) ........................................................... 5

*In re Alibaba Grp. Holding Ltd. Sec. Lit.*,
    20 Civ. 9568 (GBD), 2023 WL 2601472 (S.D.N.Y. March 22, 2023) ....................... 8

*In re CCIV/Lucid Motors Sec. Litig.*, Case No. 4:21-cv-09323-YGR, 2023 WL
    325251 (N.D. Calif. Jan. 11, 2023) *vacated in part by In re CCIV/Lucid
    Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. Aug. 8, 2024) ................................ 2, 8, 9

*In re R. Hoe & Co., Inc.*,
    No. 69 B 461 HRT, 1974 WL 399 (S.D.N.Y. May 2, 1974) ................................. 15

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135, 142 (2011) .................................................................... 13

*Manor Drug Stores v. Blue Chip Stamps*,
    492 F.2d 136 (9th Cir. 1973) ................................................................ 5

*Ontario Public Service Employees Union Pension Trust Fund v.
    Nortel Networks Corp.*,
    369 F.3d 27 (2d Cir. 2004) .............................................................. 8, 10, 11, 12

*Rowinski v. Salomon Smith Barney Inc.*,
  398 F.3d 294 (3d Cir. 2005) ................................................................ 12

*SEC v. Tex. Gulf Sulphur Co.*,
  401 F.2d 833, 867 (2d Cir. 1968) ........................................................... 5

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000) ..................................................... 10, 11, 12

*Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*,
  883 F.2d 345 (5th Cir. 1989) ............................................................... 13

*Southland Sec. Corp. v. INSpire Ins. Sols.*, Inc., 365 F.3d 353 (5th Cir. 2004) ............... 16

*Steel Co. v. Cit. for a Better Environment*,
  523 U.S. 83, 89 (1998) ........................................................................ 17

*Stoneridge Partners, LLC v. Sci. Atlanta, Inc.*,
  552 U.S. 148, 165 (2008) ..................................................................... 13

*Zelman v. JDS Uniphase Corp.*,
  376 F. Supp. 2d 956 (N.D. Calif. 2005) ................................................. 11

## Other Authorities

A. BROMBERG, SECURITIES LAW: FRAUD—SEC RULE 10B-5 (1968) ............................... 4

IFF TO COMBINE WITH FRUTAROM TO CREATE A GLOBAL LEADER IN TASTE,
  SCENT AND NUTRITION (2018), https://ir.iff.com/news-releases/news-release-
  details/iff-combine-frutarom-create-global-leader-taste-scent-
  and#:~:text=(NYSE%3AIFF)%20(Euronext,
  assumption%20of%20Frutarom's%20net%20debt ......................................... 7

## I.    SUMMARY OF ARGUMENT

In their responses, Plaintiffs talk about a lot of things—procedure, other parties' motions, history of the case, grievances—but not standing.  They do not cite a single case supporting standing to bring their remaining claims against Bayou City—***not a single case***. Yes, they spend a lot of time trying to factually distinguish this case from others (like *Lucid*) where standing ***was not*** found.  But distinguish in favor of what?  A Third Circuit case that does not discuss *Blue Chip*, much less standing generally.

This is not surprising because ***there is no case*** supporting their having standing here; the Supreme Court answered the question of standing for 10(b) claims ***almost fifty years ago*** when it adopted a bright-line rule in *Blue Chip*: standing is limited to the class of plaintiffs "who have at least dealt in the security to which the prospectus, representation, or omission relates."  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 742 (1975). In doing so, the Supreme Court went further to note that although there might be potentially deserving factual scenarios that could be covered by the judicially created claims under Section 10-b, the Supreme Court was adopting a bright-line rule to avoid the very type of factual hairsplitting that Plaintiffs attempt to do here.  It does not matter if a merger agreement was announced; it does not matter that assets would eventually be owned by an acquiring company.  If the statement is made about an entity that the Plaintiffs do not hold securities in—when said—there is no standing for a Section 10(b) claim.  Period.  Full

stop. Due to this long-established, bright-line rule, there is no case[1] creating a factual exception to the Supreme Court's bright-line rule like the one Plaintiffs now seek.

As held by this Court in its Memorandum Opinion and Order, Plaintiffs' sole remaining claim against Bayou City is a claim cabined to Bayou City's purported control over Hal Chappelle's "public statements *regarding AMH and Kingfisher* before the SPAC transaction." ECF No. 778 at 52. The relevant facts are undisputed: (1) Plaintiffs are purchasers of Silver Run Acquisition Corporation ("Silver Run") and Alta Mesa Resources, Inc. ("AMR"); (2) the statements at issue were made "regarding AMH and Kingfisher before the SPAC";[2] and (3) Silver Run did not own AMH and Kingfisher before the SPAC, when the statements were made. Based on this alone, binding Supreme Court precedent forecloses any argument to standing as a matter of law. All circuits to apply *Blue Chip*'s purchaser-seller rule under nearly identical fact patterns have recognized this binding, bright-line rule and rejected the same recycled argument Plaintiffs make now.

---

[1]    Reference to *Lucid*'s district court being the only one, and it was overturned. *See In re CCIV/Lucid Motors Sec. Litig.*, Case No. 4:21-cv-09323-YGR, 2023 WL 325251 (N.D. Calif. Jan. 11, 2023) *vacated in part by In re CCIV/Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1187 (9th Cir. Aug. 8, 2024)

[2]    ECF No. 778 at 52. To the extent that Plaintiffs take issue that the alleged misstatements were not about AMH and Kingfisher, they improperly seek for this Court's reconsideration of its August 2024 Memorandum Opinion and Order. *Compare* Individual Action Plaintiffs' Joinder in Opposition, ECF No. 822 at 14 ("Needless to say, the misstatements . . . were 'about' Silver Run securities . . . .") *and id.* at 15 ("All of the misstatements alleged by the Individual Action Plaintiffs . . . related to the going forward entity, not to AMH's or Kingfisher's past practices as standalone companies.") *with* Memorandum Opinion & Order ECF No. 778 at 52 (recognizing that Chappelle made "public statements *regarding AMH and Kingfisher* before the SPAC transaction, while Chappelle was AMH's CEO" (emphasis added)).

Thus, all Section 10(b) and Rule 10b-5 claims against Harlan Chappelle regarding statements he made prior to the Business Combination, and for which Bayou City and other Defendants are held secondarily liable, must be dismissed for lack of standing. Given that the only pending claim against Bayou City arise from such statements, Bayou City should likewise be dismissed from this action.

Despite Plaintiffs' misplaced contentions of delay, the issue of standing is timely before the court. As a jurisdictional issue, standing can be raised at any time. In fact, the Fifth Circuit case for which Plaintiffs favorably cite expressly recognizes the **_jurisdictional_** nature of the dispute. *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 226 (5th Cir. 1994). Similarly, other district courts have considered 10(b) standing under 12(b)(1) motions to dismiss. Even if not jurisdictional, however, it would be manifestly unjust to require a party to participate in a five-plus week trial on claims that were never pleaded and for which Plaintiffs clearly have no standing. That is more than sufficient good cause to consider the issue of Plaintiffs' standing, regardless of the procedural posture in which it is brought.

## II.    ARGUMENT

### A.    THE COURT SHOULD DISMISS PLAINTIFFS' SECURITIES FRAUD CLAIMS RELATING TO COMPANIES IN WHICH THEY NEVER OWNED STOCK

#### 1.    Blue Chip and its Circuit-Court Progeny Foreclose Standing

This issue has long been settled by the Supreme Court. In interpreting whether a party had standing to bring a Section 10(b) claim, the Court adopted a bright-line rule, referred to as the "Birnbaum" or "purchaser-seller" rule. *Blue Chip*, 421 U.S. at 742. Under

3

the Court's own recitation of the rule, "[t]he Birnbaum rule . . . permits exclusion prior to trial of those plaintiffs who were not themselves purchasers or sellers of the stock in question." *Id.* In this way, plaintiffs bringing suit under Section 10(b) must have "at least dealt in the security to which the prospectus, representation, or omission relates." *Id.* at 747.

And for good reason. In adopting the purchaser-seller rule, the Supreme Court acknowledged and accepted the obvious disadvantages that accompany a bright-line rule, including that imposing an "arbitrary restriction" may "unreasonably prevent[] some deserving plaintiffs from recovering damages which have in fact been caused by violations of Rule 10b-5." *Id.* at 738 (citations omitted). But the Court was ultimately persuaded by a number of "countervailing advantages" to the adoption of a bright-line rule, including preventing "endless case-by-case erosion" of the limitations on standing that would inevitably result from courts engaging in a "shifting and highly fact-oriented disposition of" whether plaintiffs have standing. *Id.* at 739, 755. Plaintiffs' attempts to seek an exception to the bright-line rule invoke the very "particularized judicial inquiry into the facts surrounding a complaint" that the Supreme Court sought to avoid. *Id.* at 751.

Not only does the bright-line rule avoid the significant judicial inefficiencies warned of by the Court, but from a practical standpoint, this rule makes sense. Expanding the class of potential plaintiffs beyond buyers or sellers of the stock in question has serious implications in the securities realm and "looks suspiciously speculative," A. BROMBERG, SECURITIES LAW: FRAUD—SEC RULE 10B-5 § 8.8 (1968), thereby stretching the scope of securities claims to allow any shareholder owning a single stock to allege damage by the

securities transaction of a third party.[3] As the *Blue Chip* Court recognized, "litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Blue Chip*, 421 U.S. at 739 (citations omitted). But "'[t]he purchaser-seller rule has maintained the balances built into the congressional scheme by permitting damage actions to be brought only by those persons whose active participation in the marketing transaction promises enforcement of the statute without undue risk of abuse of the litigation process and without distorting the securities market.'" *Id.* (quoting *Manor Drug Stores v. Blue Chip Stamps*, 492 F.2d 136, 147 (9th Cir. 1973) (Hufstedler, J., dissenting)).[4]

The Supreme Court was especially wary of adopting a rule that encouraged individuals to engage in potentially abusive litigation, a concern based in part on the fact

---

[3]   In considering the practical effects of broadening 10(b) standing, the *Blue Chip* Court was persuaded by the observations of Judge Friendly, who commented on another aspect of Rule 10b-5 litigation and "referred to the possibility that unduly expansive imposition of civil liability 'will lead to large judgments, payable in the last analysis by innocent investors, for the benefit of speculators and their lawyers.'" *Blue Chip*, 421 U.S. at 739 (citing *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 867 (2d Cir. 1968) (concurring opinion)).

[4]   In a similar vein, the Fifth Circuit too has recognized the delicate nature of securities markets and the important care with which courts should consider applying Rule 10b-5. According to the Fifth Circuit: "In the formulation of relief . . . concepts of fairness to those who are expected to govern their conduct under Rule 10b-5 should be considered. Protection for investors is of primary importance, but it must be kept in mind that the nation's welfare depends on the maintenance of a viable, vigorous business community. Considered alone, the sweeping language of Rule 10b-5 creates an almost completely undefined liability . . . . Without further delineation, civil liability is formless, and the area of proscribed activity could become so great that the beneficial aspects of the rule would not warrant the proscription." *Herpich v. Wallace*, 430 F.2d 792, 804 (5th Cir. 1970) (citations omitted); *see also Manor Drug Stores*, 492 F.2d at 147 (Hufstedler, J., dissenting) ("Opening the valve, even a little, that controls the flow of section 10(b) damage actions can so far unsettle the market as to defeat, rather than to promote, the benevolent purposes of Congress in enacting the statute.").

that an individual's claim would rest on uncorroborated testimony that could not adequately be evaluated until presented to a jury. *See id.* at 742.  In this way, the Court sought to protect companies from having to defend and settle meritless cases which rely heavily on oral testimony at trial to prove the crucial elements of a claim. *See id.*

Plaintiffs' fatal mistake is that they assert claims regarding statements made by Chappelle ***about AMH and Kingfisher***. Having undoubtedly never purchased stocks in AMH and KFM,[5] Plaintiffs attempt an end run around the Supreme Court's clear rule by arguing that their purchase of stock in Silver Run and AMR is nevertheless *sufficiently related* to confer standing to sue. In other words, Plaintiffs argue that the post-Business Combination relationship between the AMH and AMR entities is sufficient to establish standing for statements made about AMH prior to the Business Combination.

This relationship argument has been repeatedly rejected by district and circuit courts alike as directly contradicting *Blue Chip*. In fact, plaintiffs before the Second Circuit made this exact losing argument. *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022). There, the two merging entities announced an anticipated merger in a joint press release. *Id.* at 84. In the press release, the two entities touted the transaction as a "big win and a fantastic outcome for shareholders, customers and employees of both companies," with the target entity's chairman of the board stating that the transaction

---

[5]    Plaintiffs have not, and cannot, dispute this fact given that AMH and Kingfisher were privately held at the time the alleged misstatements were made.

"opens the door to a new chapter of growth and shareholder value creation."[6] Certain of these misstatements were later incorporated into the acquiring company's Form S-4 Registration Statement. *Id.* The plaintiffs contended that as stockholders of the acquiring company they had standing due to the "sufficiently 'direct relationship' between [the target company's] statements and [the acquiring company's] stock price." *Id*. at 88. Plaintiffs further argued that a merger creates a "significant relationship" between two companies such that a potential merger should be treated differently under *Blue Chip*. *Id.* The Second Circuit, applying *Blue Chip*, flatly rejected this argument: "In short, Section 10(b) standing does not depend on the significance or directness of the relationship between two companies. Rather, the question is whether the plaintiff bought or sold the securities about which the misstatements were made." *Id.* (citation omitted).

So to here. Plaintiffs rely on indistinguishable facts from those before the Second Circuit when they assert that "when Chappelle spoke here, the merger was already announced, his false statements were about the company to be merged, and investors could and did purchase stock in the go-forward entity." Opp. at 8. It is inapposite that Chappelle's statements in part, later became part of Silver Run's SEC filings when the statements were not about Silver Run, a SPAC with no operations or assets.

---

[6]   IFF TO COMBINE WITH FRUTAROM TO CREATE A GLOBAL LEADER IN TASTE, SCENT AND NUTRITION (2018), https://ir.iff.com/news-releases/news-release-details/iff-combine-frutarom-create-global-leader-taste-scent-and#:~:text=(NYSE%3AIFF)%20(Euronext,assumption%20of%20Frutarom's%20net%20debt.

Other courts to consider *Blue Chip* have held similarly. *See Ontario Public Service Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 32 (2d Cir. 2004) (finding no standing when plaintiffs purchased securities in a company that had a "business relationship with the misrepresenter"); *In re Alibaba Grp. Holding Ltd. Sec. Lit.*, 20 Civ. 9568 (GBD), 2023 WL 2601472 at *5 (S.D.N.Y. March 22, 2023) (determining plaintiffs lacked standing despite plaintiffs' contentions that they owned stock in "highly related companies," for which the value of their stock was "directly and materially linked" to the value of the third-party alleged to have made misrepresentations).

In full accordance with *Blue Chip* and the Second Circuit's opinion, the Ninth Circuit recently confirmed that the purchaser-seller rule bars standing for stockholders of an *acquiring company* as it relates to pre-merger statements about the *target company*— including within the context of SPACs.[7] *In re CCIV/Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1187 (9th Cir. Aug. 8, 2024) (holding that purchasers of stock in an acquiring company lacked Section 10(b) standing for alleged misstatements made about the target company in advance of the SPAC transaction).

Plaintiffs' attempts to distinguish from the black letter law by arguing that Chappelle's statements were "about the company to be merged," Opp. at 8, are foreclosed by this Court's holding. In its Memorandum Opinion and Order, this Court held that a fact

---

[7]   While we acknowledge, as Plaintiffs contend, that the Fifth Circuit has not expressly cited with approval either the Ninth Circuit's or Second Circuit's recent opinions, we find it entirely improbable that the Fifth Circuit deviate from the binding bright-line rule established by the Supreme Court and recognized by its sister circuits.

issue remained as to whether Bayou City, among other defendants, controlled Chappelle to make "public statements *regarding AMH and Kingfisher* before the SPAC transaction." ECF No. 778 (emphasis added). Chappelle's misrepresentations about AMH and Kingfisher "cannot be imputed to another company that later acquired [them]." *See Lucid*, 110 F.4th at 1187.

Any attempt by Plaintiff to blur the lines of corporate separateness while merger discussions were ongoing undermines the purpose and intent of Congress. If Congress wants to treat pre-merger SPAC acquisitions differently than other business transactions, it has the authority to do so. Up and until the business combination was finalized in February 2018, AMH and Kingfisher were "two entirely separate companies" from Silver Run and AMR. *See id.*

Plaintiffs further point to the Fifth Circuit opinion in *7547 Corporation* as the "Fifth Circuit standard" that is the "current application of the purchaser-seller rule." Opp. at 12–13 (citing *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 227 (5th Cir. 1994)). Yet the Fifth Circuit in *7547 Corporation*, while considering an entirely distinguishable fact pattern, nonetheless supports Bayou City's position. There, a business transaction occurred in which certain target companies were rolled up into a new, acquiring company, in exchange for stock in the acquiring company. *7547 Corp.*, 38 F.3d at 214. Plaintiffs, shareholders of a *target* entity, brought suit as a result of pre-combination statements made in a proxy statement *about the target company*. *Id.* at 222–25. The issue before the Fifth Circuit was whether the plaintiffs' transfer of stock in the target company was a "purchase or sale" sufficient to establish standing under *Blue Chip*. *Id.* at 226. The

Fifth Circuit's holding—that the plaintiffs had standing—comports with the rule established in *Blue Chip* and other Circuits applying *Blue Chip*: plaintiffs must have purchased or sold stock in the company about which the misstatements were made.

        a.    *The Third Circuit Decision in* Semerenko v. Cendant Corp. *is Inapposite*

In a last-ditch effort to support standing, Individual Action Plaintiffs point to a Third Circuit decision that has no bearing on the issue of standing. Individual Action Opp., ECF No. 822 at 10 (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000)). As a preliminary matter, Individual Action Plaintiffs cite *Semerenko* for the proposition that the Second and Ninth Circuit cases applying *Blue Chip* are not "broadly accepted." *Id.* But the Third Circuit Court in *Semerenko* not once mentions *Blue Chip* or even the issue of standing in its opinion. *See Menora*, 54 F.4th at 88 n.6 ("[A]s we noted in *Nortel*, [*Semerenko*] did not discuss standing." (citing *Nortel*, 369 F.3d at 33)). Nor do Individual Action Plaintiffs cite to a single case which relies on *Semerenko* to support Section 10(b) standing.[8] Not only does Individual Action Plaintiffs' proposed reading of *Semerenko* introduce a circuit split where there is none, but their factual reading of the case is inconsistent with binding Supreme Court precedent.

In *Semerenko*, a merger was to take place such that the acquiring entity made several public statements about "its willingness to complete the tender offer, and its willingness to

---

[8]    *Semerenko* is cited routinely for purposes of loss causation under Rule 10b-5. *See, e.g.*, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 223 (3d Cir. 2006). Yet Individual Action Plaintiffs point to no case—and Bayou City can find none—in which a court relies on *Semerenko* for purposes of establishing Section 10(b) standing.

complete the proposed merger," further stating that it was "contractually committed" to completing the merger. *Semerenko*, 223 F.3d at 171. Later, after the deal fell apart, plaintiffs, owners of stock in the target entity, brought suit against the acquiring entity for these very statements—about the execution of the merger—claiming them to be false. *Id.* The Third Circuit's holding was narrow: "the district court applied the incorrect analysis for determining whether the complaint alleges that the purported misrepresentations were made 'in connection with' the purchase or the sale of a security." *Id.* at 169.

Plaintiffs' reliance on *Semerenko* improperly conflates standing, as discussed by *Blue Chip,* with the prima facie requirement of "in connection with" as discussed by *Semerenko*:

> Although the "in connection with" language appears in § 10(b) adjacent to the "purchase or sale" language interpreted in *Blue Chip Stamps,* courts have not considered the "in connection with" issue to be one of standing. Rather, courts have construed the "in connection with" requirement as an element of the plaintiff's prima facie case. *See, e.g., Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005).

*Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 961 (N.D. Calif. 2005) (distinguishing *Semerenko*, 223 F.3d at 175–77). Prior to this Court even reaching the merits issue of the case, including the "in connection with" requirement, it "must first find that the parties involved have met the basic requirements of standing." *Nortel*, 369 F.3d at 34.

In fact, the Third Circuit has since clarified that its holding in *Semerenko* "addressed the '***in connection***' requirement in the context of § 10(b) and Rule 10b-5" when it held that the "'in connection' criteria is satisfied where material misrepresentations are

11

'disseminated to the public in a medium upon which a reasonable investor would rely.'" *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 301 (3d Cir. 2005) (citing *Semerenko*, 223 F.3d at 176) (emphasis added).

It comes as no surprise that courts have thus been unwilling to rely on *Semerenko* to support a finding of standing. *See, e.g., Nortel*, 369 F.3d at 33 ("[T]he [*Semerenko*] opinion never explicitly addressed the standing requirement of Rule 10b-5, and this limits its persuasiveness."); *see also id.* ("[W]e do not agree with the plaintiffs that [*Semerenko*] presents a compelling argument in favor of standing."); *Menora*, 54 F.4th at 88 n.6 ("Plaintiffs' attempt to invoke [*Semerenko*] to argue that other courts have allowed plaintiffs in their circumstances to sue is unavailing.").

In any event, the facts of *Semerenko* align with the holding of *Blue Chip* where the misstatements arose from assurances about *the execution of the merger itself*. *See Semerenko*, 223 F.3d at 171. In other words, the false statements were that a merger was set to occur, meaning the statements were *about the target entity*—for which plaintiffs owned stock—that was set to be acquired. In fact, the target company and the acquiring company were so deeply intertwined when the statements were made that when the merger was eventually terminated, the acquiring entity paid the target entity a $400 million break-up fee. *Id.*[9] Here, the facts are readily distinguishable. Chappelle's statements at issue

---

[9]    For this reason, the Third Circuit noted the possibility that "members of the Class would not have purchased shares of [the target] common stock had they been unable to exchange them for shares of [the acquiring company]." *Semerenko*, 223 F.3d at 180.

concern the business of AMH, not false assertions about AMH's willingness to enter a merger.

Of course, Plaintiffs would have this Court believe that such a ruling leaves similarly situated plaintiffs without a proper remedy. This is simply not true. As recognized by the Second Circuit, "this does not mean that a target company and its officers are free to make material misstatements or omissions as long as the company is acquired." *Menora*, 54 F.4th at 88. Rather, "[i]n appropriate circumstances, the acquiring company or its shareholders may have claims against the target company and its officers under state law." *Id.* In light of the Supreme Court's express guidance in *Blue Chip*, this Court should decline Plaintiffs' invitation to undertake an expansion of Section 10(b) standing. *Stoneridge Partners, LLC v. Sci. Atlanta, Inc.*, 552 U.S. 148, 165 (2008) ("The decision to extend the cause of action is for Congress, not for us."); *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("[W]e must give narrow dimensions . . . to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law." (citation omitted)).

## 2. Bayou City's 12(b)(1) Motion Is Both Timely and Proper

Plaintiffs' arguments that Bayou City's motion was filed "243 days late," after the deadline for dispositive motions is a sideshow distraction. *See* Opp. at 1. Addressing a jurisdictional question is never "too late." Standing "goes to the very power of the court to act," and is "essential to the exercise of jurisdiction," meaning that the "lack of standing can be raised at any time." *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989); *see also In re Alibaba Grp. Holding Ltd. Sec.*

13

*Lit.*, 20 Civ. 9568 (GBD), 2023 WL 2601472 at *5 (S.D.N.Y. Mar. 22, 2023) (dismissing under Rule 12(b)(1) Plaintiffs' Section 10(b) claim for lack of standing).

<ol type="a"><li><em>Class Plaintiffs Concede that Bayou City's Motion is Jurisdictional</em></li></ol>

Glaringly absent from Class Plaintiffs' Opposition is a response to this jurisdictional issue raised by Bayou City. Plaintiffs' omission amounts to a devastating concession that Bayou City's claims are in fact jurisdictional, and therefore timely asserted. Rather than addressing the merits of the issue, Plaintiffs seek to divert the Court's attention from what is really at stake: Plaintiffs lack standing to assert such claims meaning this Court acts ultra vires to adjudicate those claims.

For Individual Action Plaintiffs' part, they can cite to ***no*** binding precedent stating that standing within the context of 10(b) is not jurisdictional. And context matters because as recognized by other courts, reference to "statutory standing" within the context of securities law is unique. It is not an issue of statute because "[n]o language in either [Section 10(b) or Rule 10b-5] speaks at all to the contours of a private cause of action for their violation." *See Blue Chip*, 421 U.S. at 748–49. And, as explained by the Second Circuit, "'statutory standing'… is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (internal quotation marks omitted).

Other courts to consider this issue have considered Section 10(b) standing as jurisdictional. *See In re Alibaba Grp. Holding Ltd. Sec. Lit.*, 20 Civ. 9568 (GBD), 2023 WL 2601472 at *5 (S.D.N.Y. March 22, 2023) (considering Section 10(b) standing within

the context of a 12(b)(1) motion); *see also In re R. Hoe & Co., Inc.*, No. 69 B 461 HRT, 1974 WL 399 at *1 (S.D.N.Y. May 2, 1974) (considering whether claimants "satisfied the *jurisdictional requirement* of Rule 10b-5") (emphasis added). Plaintiffs point to no controlling authority otherwise.

Even the case for which Plaintiffs expressly deems the "Fifth Circuit standard," Opp. at 12, contemplates the jurisdictional nature of questions relating to standing. There, the Fifth Circuit considered Section 10(b) and Rule 10b-5 claims, among others. *7547 Corp.*, 38 F.3d at 226. In addressing whether the plaintiffs lacked "standing under the federal securities laws because the plaintiffs were neither 'purchasers' nor 'sellers' of the unit interests," the Fifth Circuit observed:

> These standing issues are obviously quite complicated and permeate all of the plaintiffs' causes of action; however, ***as the district court properly determined, their resolution is jurisdictional and therefore critical to our assessment of the case***. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, –—, 112 S. Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (characterizing standing as a "core component" of the case-or-controversy requirement of Article III); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 117 (2d Cir. 1991) ("Because standing is jurisdictional under Article III . . . , it is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court.").

*Id.* at 217 (emphasis added).

Plaintiffs' argument that Bayou City raises this motion to "delay the inevitable" trial date, does not negate this Court's ultimate duty to dismiss an action at any point after determining that it lacks subject-matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). And certainly any contention that possible delay of trial by granting an

interlocutory appeal to determine the jurisdictional issue might somehow prejudice Plaintiffs, *see* Opp. at 14, is wholly negated by the prejudice Bayou City will face if forced to stand trial on claims for which this Court has no jurisdiction.

Individual Action Plaintiffs seem to suggest that the 10(b) standing issue need not be resolved because it has no bearing on their common law and statutory fraud claims. Individual Action Opp., ECF No. 822 at 15–16. This puzzling assertion is a non sequitur. Not only did this Court dismiss all claims against Bayou City aside from certain pre-merger statements made by Chappelle, *see* ECF No. 778 at 52, but to the extent that common law or statutory fraud claims survived summary judgment against Chappelle, it matters not to Bayou City, whose sole remaining claim against it relates to Section 20(a) control of Chappelle, *see* ECF No. 778 at 51 ("Plaintiffs have sued HPS, BCE, and ARM *solely under Section 20(a)* and have not alleged that any of the three firms made any misleading statements."). Section 20(a) claims cannot be maintained without a primary violation under federal securities laws, here a Section 10(b) claim, regardless of whether Individual Action Plaintiffs still maintain state law claims. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383–84 (5th Cir. 2004) ("Control person liability is secondary only and cannot exist in the absence of a primary violation."); *see also Carlton v. Cannon*, 184 F. Supp. 3d 428, 495 (S.D. Tex. 2016) ("[Defendant] is not liable for primary violations under § 10(b), so he cannot be liable under a control-person theory.").

> b.   *This Court Lacks Article III Jurisdiction to Rule on Plaintiffs'*
> *Frivolous Claims*

The Supreme Court has stated that a district court lacks jurisdiction where a claim is "wholly insubstantial and frivolous" or is "implausible, foreclosed by prior decisions of this court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Cit. for a Better Environment*, 523 U.S. 83, 89 (1998) (citations omitted).

As outlined above, the Supreme Court nearly fifty years ago in *Blue Chip* held that standing is limited to "those who have at least dealt in the security to which the prospectus, representation, or omission relates." *Blue Chip*, 421 U.S. at 747. There is no question as to which security Chappelle's purported misstatements relate: this Court already held that Chappelle's statements, for which Bayou City is potentially liable, were "***about AMH and Kingfisher before the SPAC transaction***," ECF No. 778 at 52. Plaintiffs, obviously never owning stock in KFM or AMH, stand in direct opposition to both this Court's holding and Supreme Court precedent.[10]

> c.   *Bayou City Challenges Plaintiffs' Newly Raised Claims*

Plaintiffs' additional argument that Bayou City is attempting to "rehash" an argument made by the Management Defendants by disguising a motion for reconsideration as a motion to dismiss is similarly unavailing. *See* ECF No. 811 at 5. This is Bayou City's first bite at the apple: this issue is newly and squarely before the Court at this time precisely because ***Plaintiffs never asserted these Section 20(a) claims in their complaint***. *See* Orbis

---

[10]   Given the Supreme Court's clear holding in *Blue Chip*, it comes as no surprise why the Fifth Circuit in *7547 Corporation* deemed such issues of standing "jurisdictional." *7547 Corp.*, 38 F.3d at 217.

Compl. at 99, 103 (pleading Section 20(a) control of the *proxy* pre-Business Combination and pleading Section 20(a) control of *AMR* post-Business Combination, but not pre-combination control of *Chappelle* outside of the proxy); Class Compl. at 113, 119 (pleading 20(a) control of public statements by Defendants about "Alta Mesa [Resources]," and "the information contained in the Proxy"). While Bayou City contends that such claims are improperly pleaded and should be dismissed on that basis alone, to the extent that this Court disagrees, Bayou City addresses ***for the first time*** Plaintiffs' new theories of control that they raised ***for the first time*** in their Opposition to the Motion for Summary Judgment (ECF No. 445).

The question of whether dismissal for lack of standing is properly sought under a 12(b)(1) motion is largely academic, however, because Bayou City asserts this motion as a 12(c) motion in the alternative. Bayou City further provides sufficient evidence of good cause for this Court to consider its motion at this time as demonstrated by the extreme injustice Bayou City would face if forced to stand a lengthy and costly trial on claims for which Plaintiffs' lack standing and have not been pleaded. *See* Orbis Compl. at 99, 103 (pleading Section 20(a) control of the *proxy* pre-Business Combination and pleading Section 20(a) control of *AMR* post-Business Combination, but not pre-combination control of *Chappelle* outside of the proxy); Class Compl. at 113, 119 (pleading 20(a) control of public statements by Defendants about "Alta Mesa [Resources]," and "the information contained in the Proxy").

## III.   CONCLUSION

Bayou City respectfully requests that this Court enter an order granting its Motion and grant any other and further relief as this Court deems just and proper.

DATED: September 18, 2024

/s/ Kenneth A. Young
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699
S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:      (713) 836-3601
Emails:  kenneth.young@kirkland.com
              nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on September 18, 2024.

/s/ Kenneth A. Young
Kenneth A. Young