## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>**CLASS ACTION**<br><br>[Lead Case] |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., f/k/a SILVER RUN ACQUISITION CORPORATION II; RIVERSTONE HOLDINGS LLC; ARM ENERGY HOLDINGS LLC; BAYOU CITY ENERGY MANAGEMENT, LLC; HPS INVESTMENT PARTNERS, LLC; JAMES T. HACKETT, HARLAN H. CHAPPELLE, WILLIAM GUTERMUTH, JEFFREY H. TEPPER, DIANA J. WALTERS; MICHAEL E. ELLIS; and RONALD SMITH.<br><br>Defendants. | Civil Action No. 4:22-cv-001189<br><br>[Consolidated Case] |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., | Civil Action No. 4:22-cv-02590<br><br>[Consolidated Case] |

ORBIS GLOBAL EQUITY FUND
LIMITED, ORBIS INSTITUTIONAL
FUNDS LIMITED, ALLAN GRAY
AUSTRALIA BALANCED FUND, ORBIS
OEIC, and ORBIS INSTITUTIONAL U.S.
EQUITY L.P.,

                  Plaintiffs,

      v.

ALTA MESA RESOURCES, INC., f/k/a
SILVER RUN ACQUISITION
CORPORATION II; RIVERSTONE
HOLDINGS LLC; ARM ENERGY
HOLDINGS LLC; BAYOU CITY
ENERGY MANAGEMENT, LLC; HPS
INVESTMENT PARTNERS, LLC; JAMES
T. HACKETT, HARLAN H. CHAPPELLE,
WILLIAM GUTERMUTH, JEFFREY H.
TEPPER, DIANA J. WALTERS;
MICHAEL E. ELLIS; and RONALD
SMITH,

                Defendants.

**HPS INVESTMENT PARTNERS, LLC'S MEMORANDUM OF LAW IN
RESPONSE TO INDIVIDUAL ACTION PLAINTIFFS' OPPOSITION
<u>TO HPS'S MOTION FOR A JUDGMENT ON THE PLEADINGS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.   THE COURT SHOULD NOT BE PERSUADED BY THE REASONING
     IN *CENDANT* BECAUSE THAT CASE DOES NOT CONCERN
     STATUTORY STANDING .......................................................................... 2

     A.   Statutory Standing And The "In Connection With" Requirement Of
          A Section 10(b) Claim Are Two Different Inquiries ................................ 3

     B.   Adopting *Cendant* Would Drastically Enlarge The Number Of
          Plaintiffs Permitted To Bring Section 10(b) Claims And Would Fly
          In The Face Of *Blue Chip's* Mandate ................................................ 6

II.  BOTH *LUCID* AND *MENORA* ARE RELEVANT AND APPLICABLE
     TO SECTION 10(B) CLAIMS ARISING FROM CHAPPELLE'S
     ALLEGED PRE-BUSINESS COMBINATION STATEMENTS ...................... 8

     A.   Applying The Standard From *Lucid* Demonstrates That The
          Individual Action Plaintiffs Cannot Establish Standing .......................... 9

     B.   The Facts In *Lucid* And *Menora* Are Analogous To The Facts Here ........ 11

III. HPS'S 12(C) MOTION IS NEITHER UNTIMELY NOR IMPROPER .............. 12

CONCLUSION .................................................................................................. 16

CERTIFICATE OF SERVICE ............................................................................ 18

## <u>Cases</u>

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .................................................................. 5

*Benavides v. Harris County*,
    678 F.Supp.3d 869 (S.D. Tex. 2023) (J. Hanks) .......................... 12

*Blue Chip Stamps v. Manor Drug Stores*,
    421 U.S. 723 (1975) ....................................................... 1, 4, 6, 8, 12

*In re: CCIV / Lucid Motors Sec. Litig.*,
    110 F.4th 1181 (9th Cir. 2024) ................. 1, 5, 6, 7, 8, 10, 11, 13, 14

*Luxottica Grp., S.p.A. v. Ochoa's Flea Market, LLC*,
    2022 WL 836823 (S.D. Tex. Mar. 21, 2022) ............................... 12

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
    54 F.4th 82 (2d Cir. 2022) ........................................... 2, 4, 6, 7, 13

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks
    Corp.*,
    369 F.3d 27 (2d Cir. 2004) ................................................. 2, 5, 6

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) ............................................. 2, 3, 4, 5

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008) ............................................................... 7

*Thompson v. Wal-Mart Stores Tex., LLC*,
    706 F. Supp. 3d 689 (S.D. Tex. 2023) ..................................... 13

*In re Waggoner Cattle, LLC*,
    2022 WL 5264707 (Bankr. N.D. Tex. Apr. 28, 2022) ................... 13

## <u>Statutes</u>

15 U.S.C. § 78j(b) ..................................................................... 4

## <u>Other Authorities</u>

17 C.F.R. § 240.10b–5(b) ............................................................. 4

17 C.F.R. § 240.10b-5 ................................................................................... 5, 6, 7

Fed. R. Civ. P. 12(c) .................................................................................... 12, 13

Fed. R. Civ. P. 12(f) ........................................................................................ 13

## INTRODUCTION

Consistent with their approach throughout this litigation, the Alyeska and Orbis Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss and for Judgment on the Pleadings, Dkt. 822 ("IAP Opposition" or "IAP Opp."), follows on the heels of Class Plaintiffs' Opposition brief and levels the same assertions that Class Plaintiffs have already raised. For the reasons set forth in HPS's reply brief to the Class Plaintiffs' Opposition, *see* Dkt. 823 ("HPS Reply Br."), which HPS fully incorporates here, none of Plaintiffs' arguments hold water. In addition to leveling baseless accusations that HPS's Motion for a Judgment on the Pleadings, Dkt. 782 (hereinafter, the "Motion" or "Mot."), was a "disingenuous" and "obvious delay tactic," IAP Opp. at 12, 13, the Individual Action Plaintiffs rely on a Third Circuit case that ***does not even address*** the issue of statutory standing. Indeed, rather than grapple with the standard from *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024) ("*In re CCIV*" or "*Lucid*"), the Individual Action Plaintiffs prefer once again to confuse the issues and engage in the very case-by-case analysis eschewed by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755 (1975) ("*Blue Chip*").

Focusing on the correct inquiry into standing, it is clear that the Individual Action Plaintiffs cannot demonstrate that they are "purchasers and sellers of the security ***about which*** the alleged misrepresentations were made" because each of Chappelle's pre-Business Combination alleged misstatements was ***about AMH or Kingfisher***. *Lucid*, 110 F.4th at 1185; *see also* Dkt. 778 ("MSJ Order") at 52. Accordingly, the Individual Action Plaintiffs' Section 10(b) claims arising from Chappelle's alleged pre-Business

Combination statements and the remaining Section 20(a) control person claims against HPS should be dismissed.

## ARGUMENT

**I.    The Court Should Not Be Persuaded By The Reasoning In *Cendant* Because That Case Does Not Concern Statutory Standing**

In an effort to escape the clear conclusion that the Individual Action Plaintiffs lack standing to maintain their Section 10(b) claims under the standard articulated in *Lucid*, the Individual Action Plaintiffs reach back over 20 years and try to convince the Court that the Third Circuit's articulation of Section 10(b)'s "in connection with" requirement should be applied instead.  *See* IAP Opp. at 9-13 (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) (hereinafter, "*Cendant*")).   But the issue of statutory standing was not presented or argued in *Cendant*, and the Third Circuit **did not** address it.   Accepting Plaintiffs' argument requires conflating distinct inquiries and ignoring the Supreme Court's directive in *Blue Chip* to avoid the very case-by-case standing analysis in which the Individual Action Plaintiffs want the Court to engage.

As the Second Circuit explained in *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, "*Cendant* did not discuss standing" and should not be considered in connection with a standing inquiry because "Section 10(b) standing does not depend on the significance or directness of the relationship between two companies.  Rather, ***the question is whether the plaintiff bought or sold the securities about which the misstatements were made***."  54 F.4th 82, 88 & n.6 (2d Cir. 2022) ("*Menora*") (emphasis added) (citing *Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27, 32 (2d Cir. 2004)

("*Nortel*") ("stating that the plaintiffs' argument that they had standing was 'entirely at odds with the purchaser-seller requirement in *Blue Chip Stamps* that 'limits the class of plaintiffs to those who have at least dealt in the security to which the prospectus, representation, or omission relates.'")).

The Second Circuit's reasoning was adopted by the Ninth Circuit in *Lucid*, making clear that HPS's position does not rest on a "minority" rule, as the Individual Action Plaintiffs assert. *See* IAP Opp. at 12. Instead, both the Ninth and Second Circuits—the only two Circuits to have considered the specific issue raised in the Motion—have faithfully applied the Supreme Court's bright-line purchaser-seller rule as articulated in *Blue Chip*.

Because the Individual Action Plaintiffs are unable to show that they meet the threshold standing requirement to bring a Section 10(b) claim premised on Chappelle's alleged pre-Business Combination statements, the remaining Section 20(a) claims against HPS should be dismissed.

### A. Statutory Standing And The "In Connection With" Requirement Of A Section 10(b) Claim Are Two Different Inquiries

In their Opposition, the Individual Action Plaintiffs try desperately to argue that *Lucid* does not support dismissal of their Section 10(b) claims based on Chappelle's alleged pre-Business Combination statements about AMH and Kingfisher and that the standard articulated in *Cendant* should apply instead. *See* IAP Opp. at 10 (claiming that Section 10(b) claims may "proceed against individuals and entities other than the issuer 'simply by showing that the misrepresentations in question were disseminated to the public in a

medium upon which a reasonable investor would rely, and that they were material when disseminated'") (citing *Cendant*, 223 F.3d at 176).   This argument ignores that (i) establishing statutory standing and (ii) determining whether an alleged misstatement is made "in connection with" the purchase or sale of a security are ***two distinct inquiries***.  The Third Circuit's articulation of Section 10(b)'s "in connection with" requirement does not salvage the Individual Action Plaintiffs' claims.  When the proper standard is applied, it is clear that Plaintiffs lack standing to maintain their Section 10(b) claims.

Put simply, and including the gloss imparted on the statute by the Supreme Court in *Blue Chip*, a Section 10(b) claim requires an alleged material misrepresentation that is:

(1) made in connection with;

(2) the purchase or sale of any security;

(3) about which the alleged misrepresentations were made.

*See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5(b); *Blue Chip*, 421 U.S. at 729.

Importantly, *Cendant* concerns and articulates a standard ***for the first element***.  *See Cendant*, 223 F.3d at 176 (holding "that the Class may ***establish the 'in connection with' element*** simply by showing that the misrepresentations in question were disseminated to the public in a medium upon which a reasonable investor would rely, and that they were material when disseminated") (emphasis added).  *Blue Chip* and its progeny, *Menora* and *Lucid*, ***each concern the third requirement***.  *See Blue Chip*, 421 U.S. at 743-746 (discussing the *Birnbaum* rule's requirements for standing to bring a Section 10(b) claim); *Menora*, 54 F.4th at 84 (applying *Blue Chip* and holding that "Plaintiffs ***lack statutory standing to sue***" because "[u]nder the purchaser-seller rule, standing to bring a claim under

4

Section 10(b) is limited to purchasers or sellers of securities *about which a misstatement was made*") (emphasis added); *Lucid*, 110 F.4th at 1187 ("Because Plaintiffs did not purchase or sell the securities about which the alleged misrepresentations were made, *Plaintiffs lack standing under Section 10(b)*.") (emphasis added).   Indeed, the Third Circuit reached its decision in *Cendant* without even citing to *Blue Chip*,[1] and a review of the underlying briefing reveals that statutory standing was not at issue.[2]

This distinction has been noted by other courts in response to arguments similar to those leveled by the Individual Action Plaintiffs.  In *Nortel*, the Second Circuit noted that *Cendant's* persuasiveness in determining statutory standing is "limit[ed]" because the *Cendant* court "never explicitly addressed the standing requirement of Rule 10b–5," and "*[i]t is unclear whether the Cendant court even considered the standing question and it is unreasonable to assume that the court believed standing to be so clearly established that it did not even warrant discussion in the opinion*."  369 F.3d at 33 (citing *Cendant*, 223 F.3d at 177-78) (emphasis added).[3]  And the Second Circuit did not deviate from this

---

[1]    Instead, the Third Circuit reached its conclusion by citing to *Basic Inc. v. Levinson*, a case concerning the *materiality* of an alleged misstatement.  *See Cendant*, 223 F.3d at 177 (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 238-39 (1988) for the proposition that "[i]t is well established that information concerning a tender offer or a proposed merger may be material to persons who trade in the securities of the target company").

[2]    The Individual Action Plaintiffs' description of *Blue Chip* as "inapposite," IAP Opp. at 15 n.2, is disingenuous, given that *Blue Chip* is the seminal Supreme Court case discussing statutory standing to bring a Section 10(b) claim.

[3]    In considering whether the plaintiffs before it had statutory standing to bring Section 10(b) claims, the Second Circuit made clear that "conflat[ing] the issue of standing with the question of whether the 'in connection with' requirement had been met … is misleading because these *are two distinct inquiries*."  *Nortel*, 369 F.3d at 34 (emphasis added).

interpretation of *Cendant* when it issued its decision in *Menora*, nearly 20 years later.  *See Menora*, 54 F.4th at 88 n.6 ("Plaintiffs' attempt to invoke *Cendant* to argue that other courts have allowed plaintiffs in their circumstances to sue is unavailing.  In any event, as we noted in *Nortel*, *Cendant* did not discuss standing.") (citing *Nortel*, 369 F.3d at 33).

The Court here should not deviate from the established precedent in *Blue Chip* and its progeny, despite the Individual Action Plaintiffs' arguments.

### B.  Adopting *Cendant* Would Drastically Enlarge The Number Of Plaintiffs Permitted To Bring Section 10(b) Claims And Would Fly In The Face Of *Blue Chip's* Mandate

Even assuming *Cendant*'s applicability to the arguments raised in the Motion despite the fact that statutory standing was not addressed in that case, applying its rationale in the context of a standing analysis here would result in this Court engaging in precisely the kind of "shifting and highly fact-oriented" inquiry that *Blue Chip* counsels against.  In *Blue Chip*, the Supreme Court stated that it declined to:

> leave the *Birnbaum* rule open to ***endless case-by-case erosion*** depending on whether a particular group of plaintiffs was thought by the court in which the issue was being litigated to be sufficiently more discrete than the world of potential purchasers at large to justify an exception.  ***We do not believe that such a shifting and highly fact-oriented disposition of the issue of who may bring a damages claim for violation of Rule 10b-5 is a satisfactory basis for a rule of liability*** imposed on the conduct of business transactions.  ***Nor is it as consistent as a straightforward application of the Birnbaum rule*** with the other factors which support the retention of that rule.

*Blue Chip*, 421 U.S. at 755 (emphasis added).  As noted by the Ninth Circuit in *Lucid*, limiting statutory standing to only purchasers of the securities about which alleged misrepresentations were made represents a policy choice to limit a judicially created private right of action—the availability of which courts are loath to expand.  *See Lucid*,

110 F.4th at 1186 (explaining that "[t]he Supreme Court has cautioned that Section 10(b) does not 'provide a cause of action to the world at large,' and 'should not be interpreted to provide a private cause of action against the entire marketplace in which the issuing company operates'") (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 162 (2008)).  Alternatively, accepting a test for standing that requires only that "the security plaintiff purchased is sufficiently *connected* to the misstatement" would "vastly expand the boundaries of Section 10(b) standing and contradict the express limiting purpose of the *Birnbaum* Rule."  *Lucid*, 110 F.4th at 1186.  Indeed, this is precisely the type of test for which the Individual Action Plaintiffs are advocating here, and it would result in precisely the expansion against which the *Blue Chip* Court cautioned.[4]

The Ninth Circuit, heeding the Supreme Court's directive regarding rational limitations on the class of plaintiffs entitled to bring claims under Rule 10b-5, stuck to the clear formulation that "a plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities ***about which the alleged misrepresentations were made***."  *Id.* (applying the "plain language of *Blue Chip*") (emphasis added).[5]  The Individual Action

---

[4]    Take the hypothetical of Manufacturing Company A making an alleged misstatement regarding its access to critical components needed in its manufacturing process.  The disclosure of the truth might impact the share price of securities of other manufacturing companies or suppliers to those companies.  Plaintiffs coming out of the woodwork to argue that Company A's alleged misstatement was sufficiently connected to their purchase of any security issued by any allegedly impacted company is precisely the sort of "vexatious" litigation the Supreme Court sought to prevent in rendering its decision in *Blue Chip*.

[5]    This is the same standard that was articulated and applied by the Second Circuit in *Menora*.  *See Menora*, 54 F.4th at 88 ("Plaintiffs may be able to sue entities other than the issuer of a security if those entities made material misstatements ***about the security***, as

Plaintiffs have presented no compelling reason why the Court here should not accept the standard from *Lucid* and instead are asking this Court to expand standing under Section 10(b), in contravention of the Supreme Court's bright-line rule.

## II. BOTH *LUCID* AND *MENORA* ARE RELEVANT AND APPLICABLE TO SECTION 10(b) CLAIMS ARISING FROM CHAPPELLE'S ALLEGED PRE-BUSINESS COMBINATION STATEMENTS

The Individual Action Plaintiffs claim that, in addition to not being binding case law (just as *Cendant* is not binding), *Lucid* and *Menora* are "vastly different" from the facts here and should thus be disregarded.  IAP Opp. at 13.  This assertion is not only inaccurate; it also misses the point.  As explained in HPS's Reply Brief, under the purchaser-seller rule, the key question in determining Section 10(b) standing is whether a plaintiff "purchased or sold 'the securities described in the allegedly misleading [statement].'" *Lucid*, 110 F.4th at 1186 (citing *Blue Chip*, 421 U.S. at 727); *see also* HPS Reply Br. § I.a. That the Individual Action Plaintiffs fail to meet that standard should end the inquiry.  But whether the Court analyzes the facts of *Lucid* and *Menora* or directly applies the standard of *Lucid* to the relevant alleged misstatements here, the same conclusion should be reached: the Individual Action Plaintiffs lack standing to maintain their Section 10(b) claims premised on Chappelle's pre-Business Combination alleged misstatements.

---

long as the ***plaintiffs purchased or sold the securities about which the misstatements were made***.") (emphasis added).

### A. Applying The Standard From *Lucid* Demonstrates That The Individual Action Plaintiffs Cannot Establish Standing

In their Opposition, the Individual Action Plaintiffs acknowledge that the Ninth Circuit "adopt[ed a] rule that, to be actionable, misstatements must be 'about' the securities plaintiffs purchased and/or sold." *See* IAP Opp. at 14-15 (citing *Lucid*, 110 F.4th at 1186). Despite this, the Individual Action Plaintiffs choose to obfuscate and ignore *Lucid*'s standard in the same manner as the Class Plaintiffs and for the same reason: they cannot establish standing to bring a Section 10(b) claim based on Chappelle's "public statements ***regarding AMH and Kingfisher*** before the SPAC transaction, [that were made] while Chappelle was AMH's CEO." Dkt. 778 at 52; *see also* HPS Reply Br. § I.a.

In an attempt to distance themselves from this obvious conclusion, the Individual Action Plaintiffs claim that Chappelle's alleged misstatements "were 'about' Silver Run securities because they falsely described, in detail, the combined entity in which the Defendants were promoting investment and votes in favor of the merger." IAP Opp. at 14. But, as HPS has already explained, that is not true. *See* HPS Reply Br. § I.b (explaining that "none of [Chappelle's purported pre-Business Combination] statements are ***about*** Silver Run or AMR as required under the purchaser-seller rule"). The Individual Action Plaintiffs' opposition does not refute HPS's arguments. *See id*. § I.a-b.

The additional alleged misstatements that the Individual Action Plaintiffs claim Chappelle made during pre-Business Combination meetings with Orbis fail for the same reasons. *See* IAP Opp. at 14 (citing Orbis Compl. ¶¶ 283-292). For each of those allegations, it is clear that Chappelle is describing the work performed by ***AMH or***

***Kingfisher*** and not Silver Run or AMR.  For example, the Orbis Plaintiffs allege that, at a November 14, 2017 meeting, "Chappelle, Hackett, McCabe and Turner told Orbis Investments that while there was production variability after ***[AMH's]*** STACK wells are drilling and begin producing oil, this variability did not affect the overall EUR of the wells and that the consistency of oil EUR was very high."  Orbis Compl. ¶ 287 (emphasis added). To support their claim that this statement is false, the Orbis Plaintiffs again focus solely on AMH and the work AMH began in the STACK prior to the Business Combination, *see id.* ¶ 288, making clear that Chappelle's alleged misstatement do not concern Silver Run or AMR, which had no operations at that time.

Likewise, the Orbis Plaintiffs allege that, at the same meeting, Chappelle and others "stated that ***[AMH's]*** parents wells would cost approximately $4 million each to drill, and that child wells would cost approximately $3.5 million each to drill."  *Id.* ¶ 291 (emphasis added).  The Orbis Plaintiffs allege this statement was untrue because Chappelle failed to "disclose that ***[AMH]*** could only achieve these drilling costs by using improperly drilled vertical bores that would dramatically increase the cost of oil extraction while at the same time eliminating about a third of the well's revenue generating capabilities."  *Id.* ¶ 292 (emphasis added).  Once again, it is clear from the Orbis Plaintiffs' own allegations that Chappelle's alleged statement was not ***about*** Silver Run or AMR, which would be required for Plaintiffs—as purchasers of Silver Run and AMR securities—to have standing to bring their Section 10(b) claims.  *See Lucid*, 110 F.4th at 1186 (under *Lucid*, plaintiffs must be purchasers of securities from the entity "about which the alleged misrepresentations were

made" to establish standing).  Instead, these allegations describe statements **about AMH and/or Kingfisher** and cannot support Section 10(b) standing as alleged.

### B.   The Facts In *Lucid* And *Menora* Are Analogous To The Facts Here

Since the purchaser-seller rule established in *Blue Chip* and subsequently applied in *Menora* and *Lucid* clearly demonstrates that the Individual Action Plaintiffs' claims are insufficient to establish Section 10(b) standing, the Individual Action Plaintiffs attempt to distance themselves from the facts by claiming that both cases are distinguishable.  But that argument not only has no effect on a determination of whether the Individual Action Plaintiffs have Section 10(b) standing—it is also flat out wrong.

For example, the Individual Action Plaintiffs claim that Chappelle's alleged misstatements are unlike the alleged misstatements in *Menora* and *Lucid* because Chappelle's alleged pre-Business Combination statements "were made to promote investment in Silver Run."  IAP Opp. at 14; *see also id.* at 15 (Chappelle's alleged "false statements [are] about the combined entity [Silver Run and AMR] that would result from a successful merger.").  But the Individual Action Plaintiffs themselves acknowledged that the alleged misstatements in *Menora* "related to the target company's activities and financial condition" before the merger.  IAP Opp. at 14.  Likewise, in *Lucid*, the alleged misstatements at issue were about the proposed SPAC target and its expectations about future performance.  *See Lucid*, 110 F.4th at 1183 (stating that the alleged "misrepresentations [were] about [the target company's] ability to meet certain production targets" and what the target company "expect[ed] to produce" that year).

11

Even if it were advisable for the Court to engage in a "case-by-case" inquiry into the alleged misstatements' connection to the proposed transaction, which the Supreme Court has counseled against, *see Blue Chip*, 421 U.S. at 751, the only logical conclusion to reach is that the alleged misstatements here—which Chappelle made before the Business Combination closed and which were about AMH and Kingfisher—do not convey standing, as HPS has already demonstrated. *See* HPS Reply Br. at § I.b.

## III.   HPS'S 12(c) MOTION IS NEITHER UNTIMELY NOR IMPROPER

Taking a page from Class Plaintiffs' book, the Individual Action Plaintiffs complain that HPS's 12(c) Motion is "untimely and improper[]" because the "deadline for filing dispositive motions" has passed.  IAP Opp. at 1, 8.  But as explained in HPS's Reply to the Class Plaintiffs' opposition, the Scheduling Order contains ***no deadline*** by which the parties were required to file dispositive motions.  *See* HPS Reply Br. § III.a (citing Dkt. 376, Scheduling Order, at 3).  HPS is not required to adhere to a completely made up deadline that Plaintiffs now unilaterally seek to enforce.  Further, the Individual Action Plaintiffs' baseless claim the Motion was filed "for the apparent purpose of delaying trial," IAP Opp. at 8, should be disregarded for three reasons.

*First*, it is not the case that courts in this district view Rule 12(c) motions filed after discovery closes with skepticism, as the Individual Action Plaintiffs claim.  *See* IAP Opp. at 8-9.  Indeed, courts in the Southern District of Texas routinely consider 12(c) motions filed after the parties have "engaged in extensive discovery," and even after discovery has closed.  *See, e.g.*, *Benavides v. Harris County*, 678 F. Supp. 3d 869, 874-75 (S.D. Tex. 2023) (J. Hanks) (considering a motion for judgment on the pleadings after the parties

"engaged in extensive discovery" and deciding the motion on the merits ***one month before pre-trial materials were to be filed***); *Luxottica Grp., S.p.A. v. Ochoa's Flea Market, LLC*, 2022 WL 836823 at \*14 (S.D. Tex. Mar. 21, 2022) (considering a 12(c) motion after discovery had closed and when the final pretrial conference was scheduled for the following month, and holding that the motion should not be "breezily dismissed because it was not filed earlier").

The cases that the Individual Action Plaintiffs rely on to support their position are inapposite. *See generally* IAP Opp. at 8-9. In *Thompson v. Wal-Mart Stores Tex., LLC*, 706 F. Supp. 3d 689 (S.D. Tex. 2023), the court determined that where a motion for summary judgment and a 12(c) motion are filed ***concurrently***, it was not proper to rule on the 12(c) motion because "[f]or any claim that survives summary judgment scrutiny, dismissal based on inadequate pleading … Plaintiff could amend the Complaint to allege whatever facts preclude summary judgment." *Id.* at 697. But here, the Individual Action Plaintiffs could not amend their complaint to meet the standard from *Lucid* because the Individual Action Plaintiffs never "bought or sold the securities [of AMH or Kingfisher] about which the misstatements were made." *Lucid*, 110 F.4th at 1185 (citing *Menora*, 54 F.4th at 88). *In re Waggoner Cattle, LLC*, 2022 WL 5264707 (Bankr. N.D. Tex. Apr. 28, 2022), is equally unpersuasive. There, like in *Thompson*, the court denied plaintiffs' 12(c) motion because considering it on the merits would be "a mechanical, perfunctory exercise to ignore such facts" that had been uncovered during discovery. *Id.* at \*2.[6]

---

[6]   *In re Waggoner* is also inapposite because the Court denied the motion in part due to plaintiff's improper use of Rule 12(c) as a vehicle for challenging defendant's

But HPS's Motion does not ask the Court to arbitrarily ignore facts the parties have already uncovered.  In fact, ruling on HPS's 12(c) motion does not require any inquiry beyond the pleadings and this Court's findings.  The Court has already determined that the only alleged misstatements for which HPS can be held liable as a control person are alleged statements "*regarding AMH and Kingfisher*" made by Chappelle "before the SPAC transaction, while Chappelle was AMH's CEO."  MSJ Order at 52 (emphasis added).  And the Individual Action Plaintiffs do not allege that they ever purchased AMH or Kingfisher securities.  Thus, the key question at issue—whether the plaintiffs purchased shares of the security about which the alleged misrepresentations were made—has been answered clearly:  No.  *See Lucid*, 110 F.4th at 1186 ("[A] plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities *about which the alleged misrepresentations were made.*") (applying the "plain language of *Blue Chip*") (emphasis added); *see also* Mot. § I.  No new facts introduced or uncovered at trial will change that fact.

*Second*, HPS did not and could not intentionally leave its standing challenge "lying in wait," as Plaintiffs disingenuously claim, IAP Opp. at 6, because, as noted in HPS's Reply Brief, Plaintiffs' theory that HPS is liable as a control person for Chappelle's alleged pre-Business Combination statements was unpled and raised *for the first time* in response to HPS's summary judgment motion.  *See* HPS Reply Br. at 11 n.8 (citing Dkt. 445 § I.A);

---

affirmative defenses—an issue irrelevant to the Motion here.  *See In re Waggoner*, 2022 WL 5264707, at *1 (plaintiffs could not use Rule 12(c) to strike defendants' affirmative defenses a year after their answer was filed because Rule 12(f) requires that a party move to strike "within 21 days of being served with the pleading").

*see also* Orbis Compl. ¶ 409 (alleging that "Each Defendant acted as a controlling person of *[AMR]* within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). By virtue of their high-level positions, participation in and awareness of *[AMR's]* operations, direct involvement in the day-to-day operations of *[AMR]*, and intimate knowledge of *[AMR's]* actual performance, and their power to control public statements about *[AMR]*, Defendants had the power and ability to control the actions of *[AMR]* and *[AMR's]* employees, as well as the Management defendants and the Board Defendants." (emphasis added); Alyeska Compl. ¶ 334 (same).

Moreover, *Lucid*, the key decision on which HPS's Motion turns, was only decided on August 8, 2024.  Once the Court issued its MSJ Order on August 12, HPS worked diligently to understand its mandate and consider how *Lucid*—the only case where a Circuit Court had considered Section 10(b) standing arising from a SPAC transaction—applied to the remaining claims against HPS.  After determining that the ***only*** claims remaining against HPS were based on statements that do not withstand *Lucid*'s standard, HPS filed its Motion on August 21—9 days after the Court issued the MSJ Order and two days ***before*** the trial start date was even scheduled.[7]  Attacking Plaintiffs' eleventh-hour claims in light of (1) the Court's MSJ Order, and (2) newly decided case law does not render HPS's Motion improper or frivolous.  To the contrary, the Motion is a reflection of HPS's desire

---

[7]   HPS has continued to work diligently during this briefing process.  After the Class Plaintiffs filed their opposition to the Motion before their deadline to do so, HPS did the same.

to receive clarity and a ruling on the merits before being forced to participate in a five-week trial where Plaintiffs lack standing to maintain their claims against HPS.[8]

*Third*, the Individual Action Plaintiffs' complaint that the 12(c) Motion was filed "on the effective eve of trial," IAP 8, is unpersuasive, especially given the Court's order resetting the first day of the trial to November 4.  *See* Dkt. 825.  Any purported burden Plaintiffs must face in responding to this Motion has already been addressed and will have no impact on the parties' ability to be trial ready, particularly in light of the additional four weeks they have now been given by the Court to prepare.

## CONCLUSION

For the foregoing reasons, and for those stated in the Motion, HPS respectfully requests that the Court grant its Motion for a Judgment on the Pleadings and dismiss the remaining Section 20(a) claims against HPS, or in the alternative, certify the issue for interlocutory appeal.

---

[8]   The Court should also disregard entirely the Individual Action Plaintiffs' claims that the Motion is improper, "frivolous," and a "waste of this Court's and the parties' resources" because "the Individual Action Plaintiffs' common law and statutory fraud claims" are still proceeding to trial.  IAP Opp. at 8-9, 15-16.  Although true for some defendants, the ***only claim remaining against HPS is a Section 20(a) claim arising from the alleged misstatements discussed in its Motion***.  *See* Mot. § II.  Every other claim against HPS (and Mr. Dimitrievich) has been dismissed, ***including the Individual Action Plaintiffs' state law claims***.  *See* MSJ Order at 52-53.  The irony is that, by forcing HPS to go to trial for claims that Plaintiffs lack standing to bring, the Individual Action Plaintiffs are wasting far more of the Court's and HPS's time than is required to resolve the discrete issue raised in the Motion.

Dated:    September 18, 2024

Respectfully submitted,

/s/ *Christopher D. Porter*
(signed by permission of Attorney-in-Charge)
Karl S. Stern (attorney in charge) (SBN 19175665)
Christopher D. Porter (SBN 24070437)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:  (713) 221-7000 / Facsimile:  (713) 221-7100
Email: karlstern@quinnemanuel.com
chrisporter@quinnemanuel.com

**-AND-**

Michael B. Carlinsky (*pro hac vice*)
Courtney C. Whang (*pro hac vice*)
Jesse Bernstein (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000 / Facsimile:  (212) 849-7100
Email: michaelcarlinsky@quinnemanuel.com
courtneywhang@quinnemanuel.com
jessebernstein@quinnemanuel.com

**COUNSEL TO HPS INVESTMENT PARTNERS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served by the Court's ECF system, and a copy has been served by email to counsel for all parties on September 18, 2024.

/s/ *Christopher Porter*
By:  Christopher Porter