# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |

**CLASS PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO BIFURCATE AND TO PRECLUDE EVIDENCE AS TO INDIVIDUALIZED ISSUES, INCLUDING TESTIMONY BY CLASS <u>REPRESENTATIVES, DURING THE CLASS-WIDE PHASE OF TRIAL</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     VIRTUALLY ALL SIMILARLY SITUATED CASES HAVE
        BIFURCATED TRIAL AND PRECLUDED EVIDENCE REGARDING
        INDIVIDUAL ISSUES IN THE CLASS-WIDE PHASE OF TRIAL ................... 2

III.    CLASS PLAINTIFFS' TESTIMONY IS IRRELEVANT TO CLASS-
        WIDE LIABILITY .............................................................................................. 5

        A.      Class Plaintiff-Specific Evidence is Irrelevant to a Class-Wide
                Determination of Materiality ......................................................................... 5

        B.      Class Plaintiff Specific-Evidence is Irrelevant to a Class-Wide
                Determination of the Fraud on the market Presumption of Reliance ............ 8

        C.      Class Plaintiff-Specific Evidence is Irrelevant to a Class-Wide
                Determination of Whether Defendants' Statements are Protected by
                the PSLRA Safe Harbor ................................................................................ 9

IV.     THE MAJORITY APPROACH BEST SERVES THE PURPOSE OF
        RULE 42 ........................................................................................................... 11

V.      CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Audet v. Fraser,*
2020 WL 2113620 (D. Conn. May 4, 2020)................................................................ 13

*Baker v. SeaWorld Ent., Inc.,*
2020 WL 241441 (S.D. Cal. Jan. 16, 2020)............................................................... 5

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988)................................................................................................... 10

*Bell v. Ascendant Sols., Inc.,*
422 F.3d 307 (5th Cir. 2005) ................................................................................... 10

*Commodity Futures Trading Comm'n v. Walczak,*
2022 WL 855562 (W.D. Wis. Mar. 23, 2022)........................................................... 7

*Dubin v. Miller,*
132 F.R.D. 269 (D. Colo. 1990) .............................................................................. 12

*Ford v. U.S. Steel Corp.,*
638 F.2d 753 (5th Cir. 1981) ................................................................................... 12

*Halliburton Co. v. Erica P. John Fund, Inc.,*
573 U.S. 258 (2014)................................................................................................ 5, 8

*Hsu v. Puma Biotechnology, Inc.,*
2018 WL 11669124 (C.D. Cal. Oct. 24, 2018)....................................................... 4, 5, 9

*In re ICN/Viratek Sec. Litig.,*
1996 WL 34448146 (S.D.N.Y. July 15, 1996) ....................................................... 6, 13

*In re REMEC Inc. Sec. Litig.,*
702 F. Supp. 2d 1202 (S.D. Cal. 2010).................................................................... 5

*In re Under Armour Sec. Litig.,*
2024 WL 2230177 (D. Md. May 16, 2024)............................................................. 3, 13

*In re WorldCom, Inc. Sec. Litig.,*
2005 WL 408137 (S.D.N.Y. Feb. 22, 2005)............................................................ 6, 11

*Isquith ex rel. v. Middle S. Utilities, Inc.,*
847 F.2d 186, 207 (5th Cir. 1988) .......................................................................... 6

**Page**

*Lawrence E. Jaffe Pension Plan v. Household Int'l*,
　2005 WL 3801463 (S.D.N.Y. Apr. 18, 2005) ........................................................ 3, 9

*McCray v. Neely*,
　2017 WL 11503824 (E.D. Va. Jan. 23, 2017) ...................................................... 6, 10

*Pension Tr. v. Guebert*,
　751 F. Supp. 1333 (C.D. Ill. 1990) ............................................................................ 8

*Rand v. Cullinet Software, Inc.*,
　847 F. Supp. 200 (D. Mass. 1994) ........................................................................... 12

*SEC v. Collectors' Coffee Inc.*,
　2023 WL 8111865 (S.D.N.Y. Nov. 22, 2023) .......................................................... 7

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
　_F. Supp. 3d_, 2024 WL 1208778 (S.D.N.Y. Mar. 21, 2024) ............................. 1, 2, 6

*Smilovits v. First Solar, Inc.*,
　2019 WL 6698199 (D. Ariz. Dec. 9, 2019) .................................................. 6, 9, 13, 14

*TSC Indus., Inc. v. Northway, Inc.*,
　426 U.S. 438 (1976) .................................................................................................... 5

*U.S. Parole Comm'n v. Geraghty*,
　445 U.S. 388 (1980) .................................................................................................. 12

*United States v. Biesiadecki*,
　933 F.2d 539 (7th Cir. 1991) ..................................................................................... 7

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
　§ 78u(c) ................................................................................................................. 9, 10
　§ 78u-4 .......................................................................................................... 1, 5, 9, 11

Federal Rules of Civil Procedure
　Rule 12 .................................................................................................................... 11
　Rule 42 .................................................................................................................... 11
　Rule 42(b) ................................................................................................................. 2

**Page**

Federal Rules of Evidence
    Rule 402 ........................................................................................................ 9
    Rule 403 ........................................................................................................ 9

## I.     INTRODUCTION

Class Plaintiffs' Motion asks the Court to align "with the majority approach in cases, such as this," by (1) bifurcating the trial into two phases: a first phase to determine Class-wide issues ("Phase One"), and a second phase concerning any individualized issues ("Phase Two"); and (2) precluding evidence or argument regarding individual members of the Class from Phase One of trial. Dkt. 809 ("Motion") at 1; *Sjunde AP-Fonden v. Gen. Elec. Co.*, _F. Supp. 3d_, 2024 WL 1208778, at *2 (S.D.N.Y. Mar. 21, 2024).[1]

Defendants concede that bifurcation is "necessary to promote judicial economy and the orderly presentation of certain issues." Dkt. 839 ("Opposition" or "Opp.") at 2. Defendants also concede that "issues related solely to individual absent class members obviously cannot be adjudicated at the trial set for November 4, 2024, and that a Phase Two will be required if Defendants do not prevail." *Id.* at 1 (emphasis in original omitted). Nevertheless, Defendants insist that the Class Plaintiffs should still be required to testify in the Phase One trial because testimony regarding their individual investment decisions could be relevant to Class-wide determinations of materiality, reliance, and whether Defendants' misstatements qualify for the PSLRA safe harbor. *Id.* at 9-10. Even more far-fetched, Defendants claim that if they could rebut the presumption of reliance for each of the Class Plaintiffs, the entire case would somehow fall apart obviating the need for any Phase Two. *Id.*

On these issues, Defendants ask the Court to stray from the pack, reciting an array of routinely rejected arguments and making strained attempts (where they make any) to

---

[1]     Unless otherwise noted, citations are omitted and emphasis added throughout.

distinguish this case from the overwhelming weight of authority. In the end, Defendants fail to raise any persuasive rationale for why this securities class action trial is any different from the 14 (out of 15) preceding securities fraud class actions that all adopted the framework Class Plaintiffs propose here. *See* Motion at 4-7 (listing cases).

## II. VIRTUALLY ALL SIMILARLY SITUATED CASES HAVE BIFURCATED TRIAL AND PRECLUDED EVIDENCE REGARDING INDIVIDUAL ISSUES IN THE CLASS-WIDE PHASE OF TRIAL

As set forth in the Motion, in similarly situated securities class actions across the country, courts have almost uniformly bifurcated trial into two phases – the first addressing class-wide issues and the second addressing individual issues – and precluded evidence of individual issues, including those related to the class representatives, in phase one. *See* Motion at 4-7. Just a few months ago, the court in the *General Electric* securities fraud class action recognized that proceeding

> with a Phase One limited to class-wide issues concerning liability and damages; and, only if necessary, a Phase Two addressing individual issues, including class member damages and any individual issues concerning reliance of both Class Representatives and other class members . . . accords with the majority approach in cases, such as this, where the plaintiffs proceed on a 'fraud on the market' theory and, thus, reliance is presumed . . . [and] is more likely to serve the purposes of Rule 42(b) than Defendants' approach of mixing class-wide and individualized issues in Phase One.

*Gen. Elec.*, 2024 WL 1208778, at *2.[2]

_____

[2]   Defendants' only response to *General Electric*, and the litany of cases it cites in support of bifurcation and preclusion of individualized issues in a phase one trial, is to claim that "Judge Furman left open the **possibility** that evidence of Class Plaintiffs' stock purchases **could** be relevant for purposes other than materiality." Opp. at 8 n.3. But Judge Furman was clear that class plaintiff-specific evidence "'has little, if any, probative value'" on the issues of materiality, adequacy, or typicality and that value, if any, "'is greatly outweighed by the potential for jury confusion.'" *Gen. Elec.*, 2024 WL 1208778, at *3. The fact that Judge Furman did not foreclose that there was some theoretical world in which class

The *General Electric* opinion was followed in May of this year in the *Under Armour* securities class action, which also bifurcated the case, with "Phase One focusing solely on common, class-wide issues concerning liability and damages" and, as a result, the court did "not envision such [class plaintiff-specific] evidence being admissible in the first phase of trial." *In re Under Armour Sec. Litig.*, 2024 WL 2230177, at *1 (D. Md. May 16, 2024). And *General Electric* and *Under Armour* were preceded by many more securities class actions where the trial was bifurcated and the phase one trial was limited to evidence relevant to class-wide issues. *See* Motion at 4-7.

Defendants ignore *Under Armour* and make a feeble attempt to distinguish the litany of other cases where, to use their own words, "courts overwhelmingly favor bifurcation." Opp. at 11. For example, Defendants suggest that one of the *Household* decisions was only "concerning [a] motion to quash third-party subpoena." Opp. at 11 n.4; *Lawrence E. Jaffe Pension Plan v. Household Int'l*, 2005 WL 3801463, at *4 (S.D.N.Y. Apr. 18, 2005). But they leave out that those subpoenas were to the investment advisors of the class representative and, in quashing the subpoenas, the court recognized that testimony from the investment advisors was not relevant to issues of class-wide liability. Motion at 6. Class Plaintiffs also cited to two additional opinions in *Household* excluding evidence regarding the individual plaintiffs from the class-wide trial (*id.*), but Defendants ignore those decisions. Defendants also claim some of the orders are "inapplicable because the parties

---

plaintiff-specific evidence could be relevant in the trial on class-wide issues does nothing for Defendants because here, as in *General Electric*, they have failed "to identify the evidence with particularity and explain the basis for its admission." *Id*. at 3 n.3.

consented to bifurcation." Opp. at 11-12. The fact that other defendants have recognized, and courts have agreed, that class plaintiff-specific evidence is not relevant in a trial on class-wide issues is not only germane, it undercuts Defendants' hyperbolic claims that they would be prejudiced and it would be a "gross abuse of discretion" if the same procedure was followed here. Finally, Defendants contend that some of the cases stacked up against them should be disregarded because they were just "tentative rulings or presented unique facts." Opp. at 12. But there is nothing significant about any order on trial procedure and admissible evidence being subject to revision. What Defendants cannot do is identify a single case where any of these courts reversed course and allowed class plaintiff-specific evidence to be admitted during a trial on class-wide issues. And while all cases have unique facts, Defendants here have failed to identify what facts make this case unique from the overwhelming number of other securities fraud class actions where the relief sought by Class Plaintiffs here has been adopted.

Not surprisingly, Defendants latch onto the one securities fraud case in which evidence regarding individual reliance was admitted in a trial on class-wide issues, *Hsu v. Puma Biotechnology, Inc.*, 2018 WL 11669124 (C.D. Cal. Oct. 24, 2018). Opp. at 7-8, 11. What Defendants leave out (as their counsel, who were counsel for the defendants in *Puma*, know) is that the reliance issue in *Puma* involved the lead plaintiff's investment manager, who was a personal friend of the individual defendant and testified before trial that she did not think the defendants had committed a fraud. *See, e.g., Hsu v. Puma Biotechnology, Inc.*,

No. 15-cv-00865, Dkt. 843-1 at 12-16 (C.D. Cal. Aug. 16, 2021).[3] Here, there is no evidence even remotely similar that would justify departing from the standard practice of bifurcating the trial and precluding class plaintiff-specific evidence from the phase of trial on class-wide issues.[4]

## III.   CLASS PLAINTIFFS' TESTIMONY IS IRRELEVANT TO CLASS-WIDE LIABILITY

Defendants contend that evidence specific to the Class Plaintiffs is relevant to the class-wide issues of whether the alleged misstatements and omissions were material, whether the Class can rely on the fraud on the market presumption of reliance, and if any of the alleged misstatements are protected by the PSLRA Safe Harbor. Opp. at 4-9. Defendants are wrong on all counts.

### A.   Class Plaintiff-Specific Evidence is Irrelevant to a Class-Wide Determination of Materiality

Defendants do not contest – nor could they – that the standard for materiality is objective. *Id.* at 4 (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014) (reiterating that materiality is determined as to the hypothetical "'reasonable

---

[3]   The referenced filing is a post-verdict motion by the *Puma* defendants to exclude the claims of the lead plaintiff's investment manager. That motion was denied and judgment was entered as to all claims. *See Hsu v. Puma Biotechnology, Inc.* No. 8:15-cv-00865, Dkt. 879 (C.D. Cal. Oct. 29, 2021).

[4]   The only authority relied on by the court in *Puma* was *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1262 (S.D. Cal. 2010), which Defendants also cite in their Opposition. *Puma*, 2018 WL 11669124, at *2; Opp. at 7 n.2. But as discussed in the Motion, *REMEC* did not concern any aspect of a trial and Judge Anello, who authored *REMEC*, later declined to follow *Puma* and actually ordered a bifurcated securities fraud class action trial in *Baker v. SeaWorld Ent., Inc.*, 2020 WL 241441, at *1 (S.D. Cal. Jan. 16, 2020).

investor'")); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976) ("The question of materiality, it is universally agreed, is an objective one"); *Isquith ex rel. v. Middle S. Utilities, Inc.*, 847 F.2d 186, 207 (5th Cir. 1988) ("[t]he objective nature of this test, of course, comes from the definition of materiality the Supreme Court adopted in *TSC Industries*"). Nevertheless, Defendants argue "[t]he jurors are entitled to hear from the Class Plaintiffs why [each] statement was material to them." Opp. at 4-5 (citing nothing).

But "most courts have rejected that argument," for precisely the reasons Class Plaintiffs have argued: whatever an individual plaintiff may or may not think about a particular statement says nothing about whether it is material. *Gen. Elec.*, 2024 WL 1208778, at *3 (citing *In re ICN/Viratek Sec. Litig.*, 1996 WL 34448146, at *3-*4 (S.D.N.Y. July 15, 1996)); *see also* Motion at 8-9 (citing *McCray v. Neely*, 2017 WL 11503824, at *3 (E.D. Va. Jan. 23, 2017); *Smilovits v. First Solar, Inc.*, 2019 WL 6698199, at *7 (D. Ariz. Dec. 9, 2019); *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 408137, at *1-*2 (S.D.N.Y. Feb. 22, 2005)). That is particularly true in cases, like this one and those cited in the Motion, where Class Plaintiffs and the Class are proceeding under the fraud on the market presumption of reliance, and do not contend to have read or directly relied on any of the alleged misstatements or omissions.[5]

---

[5]   Belying the tactic they hope to use with the jury, Defendants cite to testimony by a representative of Class Plaintiff Camelot Event Driven Fund that he had not read Alta Mesa's Proxy and argue that, therefore, "the Proxy [was] not material to. . . Camelot." Opp. at 5-6. But pursuant to the fraud on the market presumption, Camelot, like the other Class Plaintiffs and the members of the Class they represent, relied on the market price of Alta Mesa securities reflecting the information publicly disclosed by the Defendants. This is not a direct reliance case, and there was no obligation for Class Plaintiffs or any Class Member to read the Proxy or other statements issued by Defendants in order to be harmed by Defendants' fraud. Accordingly, a jury could not be allowed to infer that a plaintiff, relying

Unwilling to grapple with the similarly situated cases that have rejected their argument, Defendants cite to three out-of-circuit decisions for the proposition that "courts have repeatedly found evidence concerning individual investors' views probative to materiality." Opp. at 6. But none of the cases they cite are securities fraud class actions and none of the cases involve the fraud on the market presumption of reliance. *SEC v. Collectors' Coffee Inc.*, 2023 WL 8111865, at *4 (S.D.N.Y. Nov. 22, 2023), was an SEC enforcement action which did not involve any individual plaintiffs – the proposed "investor" testimony was to come from third parties that had been solicited by the defendants – and in which the SEC did not have to prove reliance. *Commodity Futures Trading Comm'n v. Walczak*, 2022 WL 855562, at *4 (W.D. Wis. Mar. 23, 2022), was also a government enforcement action, not a class action, did not involve the testimony of any plaintiffs, and the court recognized that "[t]he Seventh Circuit has previously excluded testimony of investor beliefs, finding that 'testimony of the . . . customers would have improperly shifted the jury's attention away from the knowledge and intent of [the defendant] and focused instead on the beliefs of the victims of the alleged scheme to

---

on the fraud on the market presumption, must have thought a press release or SEC filing was immaterial simply because he or she did not read it. Yet that is exactly what Defendants hope to accomplish by introducing Class Plaintiff-specific evidence during the Phase 1 trial on class-wide issues.

Ironically, Defendants also cite to testimony from Eugene Khmelnik, an outside investment advisor for United Association National Pension Fund, and claim that because he ***did*** read the Proxy it must not have been material. Opp. at 5-6. Khmelnik never said that. To the contrary, even the testimony Defendants cite shows that Khmelnik relied on the projections in the Proxy to build his own financial models. *Id*. In the end, the fact that one Class Plaintiffs' investment advisor did read and rely on Alta Mesa's Proxy is no more probative of materiality in a fraud on the market case then the fact that another Class Plaintiff didn't read the Proxy.

defraud.'" (quoting *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991)). And *Branch-Hess Vending Servs. Emps.' Pension Tr. v. Guebert*, 751 F. Supp. 1333 (C.D. Ill. 1990), involved a bench trial in which four pension trusts asserted that they were misled about certain fees in meetings with the defendants. It was not a class action, did not involve the fraud on the market presumption, and the plaintiffs' claims were based on the defendants' direct misrepresentations to them. *Id.*

In sum, Defendants have failed to identify how Class Plaintiff-specific evidence is in any way relevant to a jury's determination of materiality on a class-wide basis.

**B.    Class Plaintiff Specific-Evidence is Irrelevant to a Class-Wide Determination of the Fraud on the Market Presumption of Reliance**

Defendants argue that Class Plaintiffs' ***individual*** reliance is relevant to whether a Class-wide fraud on the market presumption of reliance can be established. Opp. at 6-7. But a cursory review of the elements required to invoke the fraud on the market presumption of reliance reveals that every question is subject to Class-wide proof. *Halliburton*, 573 U.S. at 278-79 ("(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock [or other security] traded in an efficient market, and (4) the stock traded between when the misrepresentations were made and when the truth was revealed").[6]

---

[6]    Defendants say that "Class Plaintiffs concede that their testimony about their purchases of Alta Mesa stock is relevant to whether they can invoke the class-wide fraud on the market presumption of reliance." Opp. at 6-7 (citing Dkt. 808 at 3). Class Plaintiffs made no such concession. Rather, they simply noted that under Defendants' preferred scenario the Class Plaintiffs would have to testify about stock trades, but such testimony was not necessary given the judicially noticed fact that Class Members traded millions of shares of AMR securities on every trading day. *See* Dkt. 808 at 9-10.

Defendants essentially concede as much, arguing instead that they "can rely upon evidence about the Class Plaintiffs to **rebut** that presumption even if invoked." Opp. at 7. During Phase One, however, the question is not whether the presumption of reliance can be rebutted on an **individual** basis, but whether it can be rebutted on a **class-wide** basis. And there is no Class Plaintiff-specific evidence that is in any way relevant to the rebuttal of the fraud on the market presumption for the entire class. That is why Defendants' argument has been routinely rejected. *See*, *e.g.*, *First Solar*, 2019 WL 6698199, at *7 (rejecting the argument that "Lead Plaintiffs possible individual lack of reliance on the market" has any bearing on "class-wide issues"); *Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-cv-5893, Dkt. 2282 at 170-76 (N.D. Ill. Dec. 21, 2016) (granting plaintiffs' motion *in limine* to exclude evidence regarding lead plaintiffs under Rules 402 and 403).[7] The Court should do the same here.

### C.    Class Plaintiff-Specific Evidence is Irrelevant to a Class-Wide Determination of Whether Defendants' Statements are Protected by the PSLRA Safe Harbor

In a final stab at conjuring some way Class Plaintiff-specific evidence is relevant to any class-wide issues, Defendants contend it "is relevant to whether [their forward-

---

[7]    Defendants make no attempt to distinguish *FirstSolar* or the pre-trial order in *Household*. *Compare* Opp. at 11 n.4 (distinguishing *Household* as "not concern[ing] bifurcation of trial at all") *with* Motion at 6 (citing *Household* bifurcation motion). Indeed, Defendants cite only one case – *Puma*, 2018 WL 11669124, at *2 – in support of their reliance argument. As discussed above, not only is *Puma* an outlier, but the reliance issue in *Puma* involved the plaintiff's investment manager testifying that she did not think the defendant had committed a fraud.

looking] statements are immunized by the PSLRA safe harbor." Opp. at 8. The infirmity of this argument is laid bare by Defendants' failure to cite a single case in support of it.[8]

The crux of Defendants' argument is that at trial the Class Plaintiffs would have to "provide evidence about whether they read and understood the extensive warnings by Alta Mesa." *Id*. But Class Plaintiffs do not have to prove they personally read any of Alta Mesa's SEC filings or press releases, let alone whatever warnings those documents may have included. Once again, this is not a direct reliance case. Class Plaintiffs and the Class are proceeding on the fraud on the market presumption of reliance which exists precisely because investors are not expected to read all of the filings and releases issued by public companies. *See Bell v. Ascendant Sols., Inc.*, 422 F.3d 307, 310 n.2 (5th Cir. 2005) ("The fraud on the market theory enables investors who cannot satisfy the traditional requirement of proving actual reliance on a fraudulent representation (*i.e.*, those investors who did not read the documents or hear the statements alleged to contain the fraudulent representations) nevertheless to maintain a fraud action for which reliance is an essential element.") (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988)).

And, again, it is clear that Defendants' real aim is to put on a show at trial about the Class Plaintiffs' failure to read all the statements issued by Alta Mesa and suggest that this means they and the Class could not have been defrauded. But whether or not any of the Class Plaintiffs personally read any of the statements made by Defendants is completely

---

[8]   The plain language of the statute explains the dearth of authority. *See* 15 U.S.C. § 78u(c). The elements relate solely to what Defendants said, whether those statements were material, and what Defendants knew, which are each determinations susceptible to class-wide proof. *Id.*

irrelevant to any of the class-wide issues in this case. *See, e.g.*, *McCray*, 2017 WL 11503824, at \*3 ("Defendants' attenuated theory of relevance is more likely to distract and confuse a jury than to add anything of merit").[9]

The singular purpose behind Defendants' proffered examination of Class Plaintiffs is plain: "[D]efendants seek to use the evidence about the named plaintiffs to divert the jury's attention from the serious issues before them, including an evaluation of what the defendants themselves did and did not do." *WorldCom*, 2005 WL 408137, at \*5.

## IV.     THE MAJORITY APPROACH BEST SERVES THE PURPOSE OF RULE 42

Defendants claim that there is "no good reason" why nearly every securities class action trial is bifurcated, calling each of the (dozen plus) decisions Class Plaintiffs cite "gross abuse[s] of discretion." Opp. at 11-12. According to Defendants, the approach taken in each of these securities class actions and proposed by Class Plaintiffs here is "inefficient, because it makes it impossible for the jury to render a judgment in Phase One." *Id.* at 9. Defendants are, again, wrong.

---

[9]     Defendants contend testimony by Class Plaintiff Paul Burbach that he considered the risk disclosures in the Proxy to be generic, "catchalls" must mean that "the Class Plaintiffs will have admitted that Defendants' cautionary language was 'meaningful' and Defendants therefore cannot be found liable for claims based upon the forward-looking statements." Opp. at 8-9. Setting aside the fact that neither Burbach nor any other Class Plaintiff testified that Alta Mesa's risk disclosures were meaningful, Defendants' argument is belied by the fact that they have never made it previously. Despite filing hundreds of pages of summary judgment and post-summary judgment Rule 12 motions, not a single defendant in this case cited to any testimony by any Class Plaintiff in support of the assertion that Alta Mesa's disclosures were meaningful or that their forward-looking statements were immunized by the PSLRA safe harbor.

The entire argument concerning the relative efficiency of "Defendants' Approach," rests on a flawed assumption: if Defendants can rebut the presumption of reliance as to each of the Class Plaintiffs themselves, that would "require the Court to decertify the class with respect to the Section 10(b) claims." Opp. at 8-9. But that is not true. Even in the far-fetched hypothetical where the jury returned a verdict finding Defendants liable on a class-wide basis, but also found that none of the Class Plaintiffs were damaged, the Class would not be decertified and neither the verdict for the Class nor the case would be dismissed. At most, the Court could simply replace the Class Plaintiffs with another representative from the thousands of Class Members that the jury already determined were defrauded and entitled to the fraud on the market presumption of reliance. *See, e.g.*, *Ford v. U.S. Steel Corp.*, 638 F.2d 753, 761 (5th Cir. 1981) (holding that after a class representative is deemed inadequate, "[i]f the district court determines that there is an appropriate class with a 'live' controversy, one question remains: who should litigate it?") (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 407 (1980) (holding where a class representative is deemed inadequate, "'the District Court can determine whether [the representative] may continue to press the class claims or whether another representative would be appropriate.'")).

The two cases Defendants cite in support of their "approach" are entirely inapposite. Opp. at 9-10. The first, *Rand v. Cullinet Software, Inc.*, 847 F. Supp. 200, 203 (D. Mass. 1994), is an order on a motion for summary judgment where the court found the class representative lacked privity with the defendants and, thus, standing to pursue the class's claims. *Id.* The second, *Dubin v. Miller*, 132 F.R.D. 269, 271-72 (D. Colo. 1990), was a case in which a class representative was removed for severely abdicating their duties to

pursue the class's claims. In stark contrast, Class Plaintiffs here have vigorously prosecuted this action at every stage, and are now ready for trial. Indeed, it is telling that in response to a motion that cites to over a dozen securities fraud class action cases headed for trial, Defendants were unable to provide the Court with a single decision that even references post-trial decertification on these grounds as a possibility.[10]

With no such decision to rely on, Defendants argue that "there is no good reason to postpone" trying the Phase Two reliance issues as to Class Plaintiffs. Opp. at 11. But the reason that court after court postpone individual issues, including those involving class representatives, until a Phase Two is that those individualized issues are irrelevant to class-wide determinations of liability and are likely to confuse the jury. *See, e.g., Under Armour*, 2024 WL 2230177, at *1 (finding bifurcation "minimizes prejudice and risk of juror confusion"); *ICN/Viratek*, 1996 WL 34448146, at *2 (finding "bifurcation[] 'avoid[s] prejudice' to the parties, in that it . . . avoid[s] potential jury confusion").

There is no question that "Defendants' Approach" is less efficient. As set forth in the Motion, and worth repeating (particularly in light of Defendants' failure to even address it), the court in *First Solar* recognized that one of the most prejudicial impacts of allowing individualized evidence as to reliance during the class-wide phase of trial is revealed upon considering the result of such a challenge being successful:

---

[10]   In fact, Defendants cite a case wherein the court found individualized issues as to one element (there damages) predominated, denying the motion for decertification in favor of a bifurcated approach that tried the class-wide issues separately from those applying only to individual class members. *See* Opp. at 11 (citing *Audet v. Fraser*, 2020 WL 2113620, at *1 (D. Conn. May 4, 2020)).

Yet if Defendants' were permitted to present evidence that Lead Plaintiffs did not rely on the market and the jury were to agree and enter a defense verdict, then what? Because individual reliance by absent class members would not have been adjudicated, and those members would still be entitled to the presumption of the fraud on the market theory if Defendants could not rebut it in their cases, judgment against them would not be appropriate. The case would need to be tried again on a class-wide basis, or would proceed class-member-by-class-member contrary to the Court's class certification.

2019 WL 6698199, at *7.

Of the 15 securities fraud class actions that have addressed issue of bifurcating individualized issues from class-wide liability, 14 have adopted the approach proposed by Class Plaintiffs. It is more efficient, more convenient and reduces the risk of prejudice and juror confusion.[11] Defendants have offered nothing to suggest that this securities fraud class action trial should diverge from the approach taken in nearly every case before it.

## V.    CONCLUSION

For all of the foregoing reasons (1) the trial should be bifurcated into two phases: Phase One concerning Class-wide issues of proof and Phase Two concerning individualized issues, if any, with individual Class members; (2) evidence and argument regarding the Class Plaintiffs and absent Class members should be precluded at trial; and (3) Defendants should be precluded from making any comment or argument regarding Class Plaintiffs or any other member of the Class's lack of testimony or absence from trial.

---

[11] Predictably, Defendants contend that any confusion or prejudice could "be cured by careful instructions." Opp. at 13. But what is the point of having the jury sit through testimony from each of the Class Plaintiffs only to turn around and instruct them that the testimony is not relevant to issues of class-wide liability? And Defendants make no effort to identify what such a "careful instruction" would look like. No surprise there since in virtually every other case such testimony was precluded from the trial on class-wide liability and no such instruction is needed.

DATED:  October 4, 2024                          Respectfully submitted,

/s/ Andrew J. Entwistle                          /s/ Trig Smith
Andrew J. Entwistle (attorney in charge)         Tor Gronborg (*pro hac vice*)
State Bar No. 24038131                           Trig R. Smith (*pro hac vice*)
Callie Crispin                                   John M. Kelley (*pro hac vice*)
State Bar No. 24104231                           Stephen Johnson (*pro hac vice*)
Sal H. Lee                                       **ROBBINS GELLER RUDMAN**
State Bar No. 24127308                           **  & DOWD LLP**
**ENTWISTLE & CAPPUCCI LLP**                      655 West Broadway, Suite 1900
500 West 2nd Street, Floor 19, Suite 140         San Diego, CA  92101
Austin, TX  78701                                Telephone:  (619) 231-1058
Telephone:  (512) 710-5960                       Facsimile:  (619) 231-7423
Facsimile:  (212) 894-7278

– and –                                          *Court Appointed Co-Lead Counsel*

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7278

*Court Appointed Co-Lead Counsel*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW
LLP**
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*