# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., *et al.* <br><br> Defendants. | Judge George C. Hanks, Jr. <br><br> No. 4:22-cv-01189 |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ALTA MESA RESOURCES, INC., *et al.*, <br><br> Defendants. | No. 4:22-cv-2590 |

**BAYOU CITY ENERGY MANAGEMENT, LLC'S
OBJECTION TO TRIAL BY CONSENT AND MOTION TO EXCLUDE**

---

### Specific Order Requested

The only claim ostensibly remaining against Bayou City Energy Management, LLC ("BCE") appears nowhere in the complaint. Instead, the plaintiffs raised it for the first time in response to summary judgment—two and a half years after the amendment deadline. Fifth Circuit precedent forbids sending unpleaded claims to the jury. BCE therefore objects to any trial on this claim. Because this unpleaded claim is the only remaining claim against BCE, BCE objects and moves to exclude all evidence offered against BCE at trial. Trying an unpleaded claim, which BCE had no fair notice of, without BCE's consent, and over its express objection, would violate Fifth Circuit law and BCE's due process rights.

The Court should enter an order holding that the sole claim against BCE has not been pleaded and is therefore, in the Fifth Circuit's parlance, "not properly before the Court." The summary judgment order disposed of all claims against BCE that were pleaded in the complaint. There is nothing left to try.

To be clear, the plaintiffs also lack standing to pursue this claim under black letter law. ECF No. 783. The failure to plead this claim is a separate and independent reason it cannot be sent to a jury. Collectively, forcing BCE to go to trial on an unpleaded claim that plaintiffs lack standing to pursue would be clear and indisputable error.

## TABLE OF CONTENTS

**Page**

I.    **SUMMARY OF ARGUMENT** .................................................................... 1

II.   **REQUEST FOR EXPEDITED RULING** ................................................ 5

III.  **ISSUE TO BE RULED UPON** ................................................................ 6

IV.  **KEY FACTS** ............................................................................................ 6

      A.     The Section 20(a) claim in Count II does not allege that BCE
            controlled Chappelle's August 2017 Statements. ......................... 7

      B.     The Section 20(a) claim in Count IV does not allege that BCE
            controlled Chappelle's August 2017 Statements. ......................... 9

      C.     For the first time in their summary judgment response, Plaintiffs
            assert that BCE controlled Chappelle's statements before the merger. ...... 10

      D.     Plaintiffs have never sought to add a claim alleging that BCE is
            liable for controlling Chappelle's pre-combination statements. ................. 11

V.    **LEGAL STANDARD** ............................................................................ 12

      A.     Fifth Circuit caselaw precludes the Court from considering
            unpleaded factual or legal theory not raised in the complaints. ................. 12

      B.     The Court applies the *Twombly-Iqbal* standard to determine whether
            a claim is properly raised in the pleading. .................................................. 13

VI.  **ARGUMENT** ........................................................................................ 16

      A.     Under *Twombly-Iqbal*, Plaintiffs did not plead that BCE controlled
            Chappelle's August 2017 Statements. ......................................................... 16

      B.     BCE does not consent to the trial of the new unpleaded claim that
            BCE controlled Chappelle's statements in the August 2017 press
            release and investor presentation. ............................................................... 18

VII. **ADDITIONAL DUE PROCESS OBJECTION** ..................................... 20

      A.     Forcing BCE through this trial would consummate a due process
            violation, causing irreparable harm to BCE as a matter of law. ................. 20

  B. Forcing BCE through this trial would be inordinately prejudicial given that all discovery has closed. ...............................................22

**VIII. EQUITY TOO CRIES OUT FOR THE COURT TO RULE ON BCE'S MOTIONS. ...................................................................................23**

  A. Including BCE in the trial will taint the entire trial for the other defendants. ...................................................................24

**IX. CONCLUSION ............................................................................25**

**CERTIFICATE OF SERVICE ...............................................................26**

**CERTIFICATE OF CONFERENCE .......................................................27**

iv

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AmGuard Ins. Co. v. Meisel*,
  No. CV H-16-2592, 2022 WL 15777591 (S.D. Tex. Sept. 29, 2022) ........................ 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)) ............................................................................................ 13, 14

*Bailey v. Ramos*,
  657 F. Supp. 3d 927 (W.D. Tex. 2023) ....................................................................... 12

*Charles v. K-Patents, Inc.*,
  No. 1:17-CV-339, 2020 WL 1480734 (E.D. Tex. Mar. 19, 2020), *aff'd*,
  2021 WL 826402 (5th Cir. Mar. 3, 2021) .................................................................... 13

*De Franceschi v. BAC Home Loans Servicing, L.P.*,
  477 F. App'x 200 (5th Cir. 2012) ............................................................................... 15

*De Leon v. Perry*,
  975 F. Supp. 2d 632 (W.D. Tex. 2014), *aff'd*, 791 F.3d 619 (5th Cir.
  2015) ....................................................................................................................... 20

*U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*,
  475 F. App'x 521 (5th Cir. 2012) ............................................................................... 15

*Domar Ocean Transp. Ltd., Div of Lee-Vac, Ltd. v. Ind. Refining Co.*,
  783 F.2d 1185 (5th Cir. 1986) .................................................................................... 20

*Fiesta Mart, LLC v. Willis of Illinois, Inc.*,
  No. 4:20-CV-03484, 2024 WL 1394235 (S.D. Tex. Mar. 31, 2024) ............. 12, 14, 16

*Gilmour v. Gates, McDonald & Co.*,
  382 F.3d 1312 (11th Cir. 2004) ................................................................................. 15

*Grant v. Administrators of Tulane Educ. Fund*,
  No. CV 22-66, 2024 WL 4216041 (E.D. La. Sept. 17, 2024) ..................................... 15

*Great Lakes Ins., S.E. v. Gray Group Investments, LLC*,
  No. CV 20-2795, 2021 WL 6063247 (E.D. La. Dec. 22, 2021) ................................... 17

*Jackson v. Gautreaux*,
  3 F.4th 182 (5th Cir. 2021) ............................................................................ 13, 16, 17

*Jimenez v. Tuna Vessel Granada*,
  652 F.2d 415 (5th Cir. 1981). ..................................................................... 20

*Jones v. Wells Fargo Bank, N.A.*,
  858 F.3d 927 (5th Cir. 2017) ...................................................................... 20

*Le v. Exeter Fin. Corp.*,
  No. 3:15-CV-3839-L, 2020 WL 1158429 (N.D. Tex. Mar. 9, 2020),
  *aff'd sub nom.*, 990 F.3d 410 (5th Cir. 2021) ....................................... 12, 16

*Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*,
  446 F.2d 353 (5th Cir. 1971) ...................................................................... 20

*Med-Cert Home Care, LLC v. Becerra*,
  No. 3:18-CV-02372-E, 2023 WL 6202050 (N.D. Tex. Sept. 21, 2023) .............. 12, 16

*Park v. Direct Energy GP, L.L.C.*,
  832 F. App'x. 288 (5th Cir. 2020) ............................................................... 15

*Presidio Valley Farmers Ass'n v. Brock*,
  765 F.2d 1353 (5th Cir. 1985) .................................................................... 18

*Price v. Wheeler*,
  834 F. App'x 849 (5th Cir. 2020) ................................................................ 15

*SH Tobacco & Cigars, LLC v. Masters 96th LLC*,
  No. 3:23-CV-0781-D, 2024 WL 1687663 (N.D. Tex. Apr. 17, 2024).................. 14, 20

*Sims v. City of Madisonville*,
  894 F.3d 632 (5th Cir. 2018) ................................................................. 13, 14

*Smith v. BCE Inc. [Note: No Relation to this BCE]*,
  No. CIV.A.SA-04-CA0303XR, 2005 WL 3454104 (W.D. Tex. Nov. 29,
  2005), *aff'd*, 225 F. App'x 212 (5th Cir. 2007) ........................................... 17

*Strong v. Green Tree Servicing, L.L.C.*,
  716 F. App'x. 259 (5th Cir. 2017) ............................................................... 15

*Taylor v. Trevino*,
  569 F. Supp. 3d 414 (N.D. Tex. 2021) ....................................................... 15

*Toccoa, Ltd. v. N. Am. Roofing Services, LLC*,
  No. 1:21-CV-00313, 2023 WL 4106440 (E.D. Tex. June 21, 2023) ................... 14, 15

*Triad Elec. v. Power Sys.*,
  117 F.3d 180 (5th Cir. 1997) ...................................................................... 18

**Statutes**

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ............................................*passim*

**Rules**

Fed. R.Civ. P. 26...................................................................................................... 1, 11

## I.     SUMMARY OF ARGUMENT

It would be a waste of the Court's time and manifest injustice for the Court to force BCE through multi-phase, multi-week trials on a claim that never appears in Plaintiffs' pleadings. The new theory of this unpleaded claim is that BCE is liable under Section 20(a) for statements made by Chappelle in an August 26, 2017 press release and an August 17, 2017 investor presentation (together, the "August 2017 Statements"). This theory is not alleged anywhere in the complaints. There were and are zero facts or allegations in Plaintiffs' pleadings that BCE controlled Chappelle's August 2017 Statements. The Section 20(a) claim against BCE in Plaintiffs' pleadings does not even mention the August 2017 Statements or Chappelle. Nor is this claim mentioned once in Plaintiffs' Rule 26 disclosures. Despite being given leave to amend several times, Plaintiffs never sought leave to amend to add such a claim. Nor could they do so, considering that the deadline to amend passed over two and a half years ago, 72 depositions have been taken, expert deadlines expired, discovery is closed, and the dispositive motion deadline has lapsed. Forcing BCE through expensive and complex trials on a claim that was not even mentioned—let alone pleaded—for the first five years of this litigation would be a quintessential trial by ambush. BCE had no idea it needed to be defending or conducting discovery on a claim that it had no fair notice was in the case.

Plaintiffs' unpleaded Section 20(a) claim appeared out of thin air in response to BCE's motion for summary judgment. ECF No. 445. Plaintiffs' *pleadings* contain a single factual basis for a Section 20(a) claim against BCE prior to the Business Combination: that BCE (on the sell-side) controlled *the Proxy* statement filed by *Silver*

1

*Run* (on the buy-side) on *January 19, 2018*, the theory of liability being that BCE *acted* by providing *incorrect projections to Buyer Silver Run to use in the Proxy*. The Court granted summary judgment on this claim; sellers cannot control buyers.

But, in a disingenuous sleight of hand, Plaintiffs' *response* to BCE's motion for summary judgment made it sound like somewhere in their 124-page complaint lurked another claim under Section 20(a): that *Chappelle* (*who was on the opposite side of the transaction from Silver Run*) made certain alleged misstatements while he was the CEO of AMH in a *press release and investor presentation* (not the Proxy) dated *August 16-17, 2017* (five months before the Proxy), with the new theory of liability being that BCE (a minority shareholder in AMH's parent company) *failed to act by not revising the press release or investor presentation* before signing off. ECF No. 445 at 16. Obviously, this claim was not mentioned in BCE's motion for summary judgment because it had never been pleaded.

Everything about this new Section 20(a) claim is different from what Plaintiffs asserted in their pleadings. First, who BCE is alleged to have controlled is different (Chappelle, a sell-side employee, as opposed to Silver Run, on the buy side). Second, the document at issue is different (the August 2017 press release and investor presentation as opposed to the Proxy). Third, the timeframe is different (August 2017 as opposed to January 2018). Fourth, who BCE acted in concert with to exercise "control" is different (sell-side HPS as opposed to buy-side Silver Run). Fifth and sixth, the conduct and theory of liability is different (failing to edit a press release and investor presentation as opposed to providing false projections to Silver Run for the Proxy).

2

Had this claim been in the case prior to Plaintiffs' summary judgment response, BCE would have moved for summary judgment (and to dismiss for lack of standing, *see* ECF No. 783). BCE would have provided the Court with information that Plaintiffs omitted, such as the fact that BCE was a minority shareholder in a parent company with no power to direct Chappelle what to tell investors; no power to force AMH to affirmatively act; and no power to control because it did not act in concert with HPS.

Plaintiffs exhibited an extreme lack of candor when they decided to pretend in their summary judgment response that they had pleaded a Section 20(a) claim against BCE for Chappelle's August 2017 Statements. The Court had 36 motions to review, hundreds of pages of extremely dense briefing, and thousands of pages of even denser exhibits. Plaintiffs slipped their argument about this new claim in less than two pages in a single brief, and rather than disclosing it had not been pleaded or seeking leave to amend, implied without any citation that the Court could find it pleaded somewhere in one of the three complaints that collectively totaled over 300 pages. BCE's reply brief objected that this claim had not been pleaded, *see* ECF No. 463 at 24, but because of page limits, that argument was confined to a single page. That one page appeared in just one of the 36 motions before the Court. Given the sheer volume of paper, the Court could not realistically parse the details of all 300 pages of Plaintiffs' complaints. The Court instead accepted representation in Plaintiffs' response brief that the Section 20(a) claim had indeed been pleaded. Making this clear, the Court's summary judgment order even quoted, ***not from the complaints***, but from Plaintiffs' response brief. ECF No. 778 at 51.

The Court has never considered the veracity of Plaintiffs' representation that they pleaded the Section 20(a) claim as represented in their response brief. They did not. This motion addresses this issue in three parts. First, it proves, with direct quotes, that the Section 20(a) claims against BCE in the complaint have nothing to do with Chappelle's August 2017 Statements, and thus that the Section 20(a) claim now being tried against BCE was never pleaded. Second, it cites Fifth Circuit law holding that an unpleaded claim not raised until a summary judgment response is not properly before the Court. And finally, it outlines the extraordinary prejudice of sending an unpleaded claim to trial.

Given the total absence of notice and the extreme cost of forcing BCE through multi-phase, multi-week trials, the prejudice of allowing a new unpleaded claim to proceed is so extraordinary that it would amount to a due process violation. The deadlines for amending the complaint, discovery, experts, and dispositive motions have all expired, and all the while, Plaintiffs never gave BCE anything approaching fair notice that they would assert Section 20(a) claims based on controlling Chappelle's August 2017 Statements. All the rights granted to BCE under the Federal Rules are rendered worthless when BCE did not have the fair notice required by the Federal Rules to exercise them in the first place.

BCE would have cross examined Chappelle, Plaintiffs, non-parties, and others on the August 2017 Statements; it did not. BCE would have moved to dismiss for lack of standing at the outset of the case and would have moved for summary judgment and included a plethora of additional evidence on the August 2017 Statements. Plaintiffs did not give BCE fair notice that any of these things were necessary.

4

Forcing BCE through the extraordinary burden of these trials on a different case than the one BCE has spent five years defending would deprive BCE of all these rights.

## II.    REQUEST FOR EXPEDITED RULING

The Court should decide this issue as soon as possible. This trial is already going to consume an extraordinary amount of the Court's and the public's resources even without injecting the complexities associated with trying a brand-new claim against BCE on which no discovery was conducted.

BCE cannot count on other defendants' lawyers to ask the questions that will help BCE defend the case, which means BCE is going to need its own time to defend against these unpleaded statements. BCE was not afforded an opportunity to conduct discovery on these claims, so BCE does not know what the witnesses will say. And there will be *more than forty witnesses*; the Class "will call" 23, and the Latham defendants "will call" 19, not to mention the almost 30 "may call" witnesses. Conservatively assuming BCE needs just 15 minutes to rebut the testimony solicited by Plaintiffs, 7.5 minutes to rebut whatever Latham asks, and 7.5 minutes to rebut ARM/HPS, that's still 30 minutes *per* witness *just for BCE.*

Thirty minutes per witness is especially conservative because BCE had no opportunity for discovery on this claim and thus has no idea what these witnesses will say about the August 2017 Statements. And this does not count the extra time or extra resources the trial will require by having an additional law firm, including with respect *voir dire* time, opening statements, evidentiary objections, JMOLs, the charge

conference, closing statements, and so forth. Forcing BCE to try an unpleaded claim without having done any discovery complexifies everything.

And that is just talking about the "Phase One" trial. All parties apparently agree that, if there is not a complete defense verdict, the Class claims will need a "Phase Two." *E.g.*, ECF No. 809, Class's Mtn. to Bifurcate; ECF No. 839, Defendants' Resp. Allowing an unpleaded claim to advance adds time, complexity, and most importantly, clear error.

### III.   ISSUE TO BE RULED UPON

Whether Plaintiffs are precluded from advancing an unpleaded Section 20(a) claim that BCE controlled Chappelle's statements in the August 2017 press release and investor presentation (collectively, the "August 2017 Statements").[1]

### IV.   KEY FACTS

In reviewing the complaints, the Court must keep in mind that "Alta Mesa" and "Company" are terms that Plaintiffs have defined. Both "Alta Mesa" and "the "Company" mean "Alta Mesa Resources, Inc., ***f/k/a*** Silver Run Acquisition Corporation II" or "Alta Mesa." ECF No. 218 at 1 (emphasis added). The "f/k/a" confirms that these terms refer to the new company; the company was not "formerly known as" Silver Run

---

[1]   According to Plaintiffs' "Chart of Alleged Misstatements," filed at the outset of this case, ECF No. 139-3, these August 2017 Statements are the only statements that can arguably be at issue because these are the only pre-merger statements where defendant Chappelle is quoted as having made the statement at issue. *See* ECF No. 139-3 at 1 (Statement 1: "We see this as a tremendous way to continue our evolution as a low-cost, high-value producer in the STACK."); *id.* (Statement 2: "We have over 200 wells that we've drilled here and we've demonstrated the value, and we have confidence in the upside. As an illustration of that, at the end of the second quarter [of 2017], we drilled on the order of 200 wells; of those, over 160 were on production. And of that number, about 114 had sufficient production history to give us confidence that at the end of this year, our year-end reserves will reflect better than 650,000 BOE.").

until after the merger.  Neither term is used in reference to Alta Mesa Holdings (or AMH), the *privately held* company in which BCE owned an indirect minority interest prior to the Business Combination.

### A. The Section 20(a) claim in Count II does not allege that BCE controlled Chappelle's August 2017 Statements.

There are two Section 20(a) claims in the complaints,[2] and neither alleges that BCE controlled *Chappelle's August 2017 Statements* before the merger. Instead, the complaints allege the "Control Entity Defendants" controlled the statements of the new *publicly traded company formerly known as Silver Run*.

The very definition of "Control Entity Defendants" is "ARM Energy, Bayou City, HPS and Riverstone, the entities that *controlled* [*the public company formed in 2018*] during the Class Period through controlling 73% of the voting power and four seats on the Board of Directors." ECF 218-2.

The first Section 20(a) claim in the complaint, Count II, likewise contains only a single paragraph alleging control of statements by the new publicly traded company:[3]

> 369.   Defendants each acted as *controlling persons of* [*the public company formed in 2018*] within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). By virtue of their high-level positions,

---

[2]   To be clear, Alyeska's complaint does not assert any Section 20(a) claims against BCE. The Section 20(a) claim brought by Orbis is materially identical to the one asserted by the Class, and Orbis has stipulated that "the claims . . . in the class action complaint are essentially substantively identical to the claims in the [Opt-Out] complaint[s]." ECF 318 at 36:4–17. Accordingly, for the sake of simplicity, BCE's citations are to the Third Amended Class Action Complaint, ECF 218.

[3]   To underscore that the complaints' allegations of control over statements by "the Company" or "Alta Mesa" are about the public company formed in 2018, Alta Mesa Resources, those terms have been substituted here.

participation in and/or awareness *of [the public company formed in 2018]*'s operations, direct involvement in the day-today operations *of [the public company formed in 2018]*, and/or intimate knowledge of *[Silver Run]*'s actual performance, and their power to control the materially false and misleading public statements about *[the public company formed in 2018]* during the Class Period, Defendants had the power and ability to control the actions of the Management Defendants, Board Defendants, [the new publicly traded company formerly known as Silver Run], and [the new publicly traded company formerly known as Silver Run]'s employees. By reason of such conduct, Defendants are each liable pursuant to Section 20(a) of the Exchange Act.

ECF No. 218 at 129 (emphasis added). Count II alleges nothing else.

Count II does not allege control over anyone besides the publicly traded company formerly known as Silver Run. And the public company formerly known as Silver Run did not exist in August 2017. Chappelle's statements in August 2017 were thus not the statements of the new publicly traded company formerly known as Silver Run, because that company did not exist yet and could make no statements.

And to state the indisputable, even before the merger, "Silver Run" does not equal "Chappelle." Chappelle was not an employee of Silver Run in August 2017. Chappelle did not hold any position at Silver Run in August 2017. Silver Run, on the buy-side, was *not even on the same side of the transaction* as Chappelle in August 2017. And obviously "Chappelle," a human, has never been the same person as "Silver Run," a company. And as the Court's summary judgment order acknowledges, the Section 20(a) claim against BCE is not based on control of AMH: "Although HPS, BCE, and ARM did own portions of AMH and Kingfisher prior to the SPAC transaction, Plaintiffs have not accused either AMH or Kingfisher of making false statements." ECF No. 778 at 52.

8

In short, Count II alleges only that Defendants "acted as controlling persons of" the new publicly traded company formally known as Silver Run. ***Not*** Chappelle.

The Court dismissed this Section 20(a) claim against BCE on summary judgment: "Plaintiffs also fail to present evidence showing that HPS, BCE, or ARM had the ability to control statements made by Alta Mesa after the SPAC transaction." *Id.* In doing so, the Court rejected Plaintiffs' only specific allegation of control tied to Count II, the joint drilling program: "Plaintiffs' evidence does not show that the well development agreement gave BCE, let alone McMullen, the power to control Alta Mesa's statements to investors or potential investors." *Id.* at 50.

### B. The Section 20(a) claim in Count IV does not allege that BCE controlled Chappelle's August 2017 Statements.

Similarly, the only other Section 20(a) claim in the complaint also does not allege that BCE controlled Chappelle's August 2017 Statements:

> 393. Each of the Proxy Defendants and Control Entity Defendants acted as controlling persons within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). By virtue of their ownership interest, high-level positions, participation in and/or awareness of ***[the public company formed in 2018]***'s operations, direct involvement in the day-to-day operations of the ***[public company formed in 2018]***, control over material operational data and/or intimate knowledge of the ***[public company formed in 2018]*** actual performance, and their power to control the Proxy, the Proxy Defendants and Control Entity Defendants ***had the power and ability to control the information contained in the Proxy.*** Indeed, Defendants Bayou City, HPS and ARM Energy ***provided the operational information contained in the Proxy*** and were unjustly enriched when they received over $1.3 billion from the Business Combination. ***By reason of such conduct,*** the Proxy Defendants and Control Entity Defendants are liable pursuant to Section 20(a) of the Exchange Act.

ECF No. 218 at 123, ¶ 393.

Everything in this claim is about "the Proxy" filed **by Silver Run** (not Chappelle) on **January 19, 2018**. This claim also appears in the "Proxy Claims" section of the complaints. *Id.* at 118. The August 2017 press release or investor presentation is never referenced.

The Court granted summary judgment on this claim for the simple reason that sellers like BCE obviously did not control the buyer Silver Run's Proxy: "It is undisputed that neither HPS nor BCE nor ARM owned any interest in Silver Run II." ECF No. 778 at 51 (dismissing the Section 20(a) claim that alleged "HPS, BCE and ARM . . . each had the ability to control, and did control, the false and misleading statements in the Proxy").

### C. For the first time in their summary judgment response, Plaintiffs assert that BCE controlled Chappelle's statements before the merger.

Seeing the writing on the wall for the Section 20(a) claims as pleaded, Plaintiffs raised a brand new claim in their response to BCE's motion for summary judgment.

Plaintiffs represented to the Court that **another** Section 20(a) claim existed based on a never-before-alleged theory: BCE was liable for Chappelle's statements prior to the merger. ECF 445 at 12. This could only be a reference to the August 2017 Statements, where Chappelle is directly quoted. The only statements where "Chappelle" is identified as a "Defendant" prior to the merger—according to the chart filed by Plaintiffs in opposition to 12(b)(6), *supra* n.1—are the August 2017 Statements where Chappelle is quoted a total of two times. Plaintiffs did not cite where in their complaints this claim appears, because it does not appear anywhere and Plaintiffs had nothing they could cite.

In the summary judgment ruling, the Court assumed Plaintiffs had accurately represented the allegations in the complaints. ECF No. 778 at 51 (quoting from Plaintiffs' opposition brief rather than Plaintiffs' complaint). As a result, the Court's order did not analyze whether Plaintiffs had, in fact, pleaded such a claim, nor did it address BCE's argument that such a claim had not been pleaded. ECF No. 463 at 24.

### D.  Plaintiffs have never sought to add a claim alleging that BCE is liable for controlling Chappelle's pre-combination statements.

BCE has spent nearly five years defending the Section 20(a) claims that Plaintiffs pleaded, and every pre-trial deadline has expired. The pleading deadline was April 15, 2022. ECF No. 233. The motion to dismiss deadline lapsed on January 10, 2023. ECF No. 261. Fact discovery closed on June 29, 2023. ECF No. 376. Leading up to the close of discovery, 55 fact witnesses were deposed, amounting to hundreds of hours of questioning. Expert designations were due on August 31, 2023. *Id.* All these deadlines expired without BCE having fair notice that Plaintiffs intended to try a Section 20(a) claim against BCE based on Chappelle's August 2017 statements. And Plaintiffs never once—to this day—sought leave to amend to add this claim.

Although it would not make up for failing to allege the theory in the complaints, the prejudice is magnified because Plaintiffs did not disclose these claims elsewhere either. Plaintiffs' disclosures under Rule 26 never allege that BCE is liable for controlling Chappelle's statements in the August 2017 Statements. None of the 31 topics in BCE's 30(b)(6) deposition involved control over Chappelle's statements in the August 2017 Statements. Ex. A, Lead Plaintiffs' Notice of Rule 30(b)(6) Deposition of BCE. During

the 16-hour deposition of BCE's corporate witness, no questions were asked about such a claim. Nor was Chappelle, at his deposition, asked any questions about whether BCE controlled his August 2017 Statements. Nor were HPS or ARM asked at their depositions about the supposed conspiracy with BCE wherein they controlled Chappelle's August 2017 Statements.

## V.    LEGAL STANDARD

### A.    Fifth Circuit caselaw precludes the Court from considering unpleaded factual or legal theory not raised in the complaints.

Plaintiffs cannot go to trial on a legal theory that has never been pleaded. "[I]n the Fifth Circuit, plaintiffs are ***precluded*** 'from advancing a new claim ***or reframing a previously presented one*** in response to a motion for summary judgment.'" *Fiesta Mart, LLC v. Willis of Illinois, Inc.*, No. 4:20-CV-03484, 2024 WL 1394235, at *9 (S.D. Tex. Mar. 31, 2024) (emphasis added). "A claim ***or theory of relief*** that is not raised in a party's pleadings but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Le v. Exeter Fin. Corp.*, No. 3:15-CV-3839-L, 2020 WL 1158429, at *8 (N.D. Tex. Mar. 9, 2020), *aff'd sub nom.*, 990 F.3d 410 (5th Cir. 2021) (emphasis added). "[T]he ***prohibition*** on asserting new claims in opposition to summary-judgment motions extends the assertion of ***new factual allegations*** and ***theories of liability*** as well." *Med-Cert Home Care, LLC v. Becerra*, No. 3:18-CV-02372-E, 2023 WL 6202050, at *11 (N.D. Tex. Sept. 21, 2023) (emphasis added). To the extent that Plaintiffs' claims are premised on a theory that was "raised only in response to a motion

for summary judgment," those claims are "not properly before the court" and "fail as a matter of law." *Bailey v. Ramos*, 657 F. Supp. 3d 927, 958–59 (W.D. Tex. 2023)

Because Plaintiffs cannot advance different facts, claims, or theories of liability than those alleged in the complaint, they cannot simply point back to a cause of action (*e.g.*, Section 20(a)) and claim they can now substitute whatever facts or theories suit them. *See e.g.*, *Jackson v. Gautreaux*, 3 F.4th 182, 188–89 (5th Cir. 2021). In *Jackson*, for example, the plaintiffs brought Section 1983 claims under the Fourth Amendment based on the defendant having "failed to adequately train officers to avoid *excessive force*." *Id.* "After the officers moved for summary judgment, Plaintiffs argued for the first time that the Sheriff failed to adequately train his officers to deal with *mentally unstable individuals*." *Id.* This new theory of liability was based on the same cause of action (Section 1983) and same facts (shooting a mentally unstable person), and the Court still held: "This is precisely the sort of surprise switcheroo that our precedents ***forbid***." *Id.* (emphasis added). So too here.

## B.   The Court applies the *Twombly-Iqbal* standard to determine whether a claim is properly raised in the pleading.

"To determine whether a claim has been properly pleaded, as opposed to being raised for the first time in response to a motion for summary judgment, the 'complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" *Charles v. K-Patents, Inc.*, No. 1:17-CV-339, 2020 WL 1480734, at *14–15 (E.D. Tex. Mar. 19, 2020), *aff'd,* 2021 WL 826402 (5th Cir. Mar. 3, 2021) (quoting *Sims v. City of*

*Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009))).

Because a claim or theory that does not meet the *Twombly-Iqbal* standard fails to give fair notice for purposes of this rule, it cannot be argued for the first time in response to summary judgment. *See e.g.*, *Sims*, 894 F.3d at 643 (holding, under *Twombly-Iqbal*, that the plaintiff "failed to raise those theories in his first amended complaint and could not do so for the first time on summary judgment"); *Toccoa, Ltd. v. N. Am. Roofing Services, LLC*, No. 1:21-CV-00313, 2023 WL 4106440, at *2–3 (E.D. Tex. June 21, 2023) (refusing to consider "new theories of law raised in response to a motion for summary judgment" because they "were not described with any particularity in the complaint" and thus failed to do "what is required of a plaintiff's complaint in *Twombly*"); *SH Tobacco & Cigars, LLC v. Masters 96th LLC*, No. 3:23-CV-0781-D, 2024 WL 1687663, at *6 (N.D. Tex. Apr. 17, 2024) (citing *Iqbal* to decide whether a claim was properly raised in the complaint as opposed to for the first time in response to summary judgment); *Fiesta Mart*, 2024 WL 1394235, at *9 (citing *Iqbal* to decide whether the plaintiff was "advancing a new claim or reframing a previously presented one," and holding plaintiffs were doing so by raising an argument that was not pleaded).

The purpose of applying the *Twombly-Iqbal* standard is to prevent parties from relying on conclusory assertions in their pleadings to justify reframing claims or raising new theories outside the complaint for the first time at summary judgment. *See e.g.*, *Sims*, 894 F.3d at 643. For example, in *Sims*, the court held that a statement in a pleading that the defendant "is liable for civilly conspiring, while acting under color of law, to retaliate

14

against Plaintiff and/or deprive Plaintiff of constitutionally protected interests without due process of law," did not offer "fair notice of what the claim is and the ground upon which it rests." *Sims*, 894 F.3d at 643.

A legion of cases have similarly applied *Twombly/Iqbal* to hold that "plaintiffs' theories" "which [are] not described with any particularity in the complaint" should be disregarded when "first raised in a motion opposing summary judgment." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012).[4]

---

[4]   *See e.g.*, *Price v. Wheeler*, 834 F. App'x 849, 860 (5th Cir. 2020) ("Price first discussed tangible employment actions in response to the EPA's motion for summary judgment, but a claim first made in such a manner is not properly before the court."); *Park v. Direct Energy GP, L.L.C.*, 832 F. App'x. 288, 295 (5th Cir. 2020) (finding a theory based on a separation agreement was not pleaded until a response to summary judgment where "his complaint doesn't mention the proposed separation agreement at all"); *Strong v. Green Tree Servicing, L.L.C.*, 716 F. App'x. 259, 265 (5th Cir. 2017) ("[T]his theory of recovery is not properly before the court because the Strongs pleaded only the 'debt collection' theory of recovery under the TDCA."); *Taylor v. Trevino*, 569 F. Supp. 3d 414, 429 (N.D. Tex. 2021) ("Because the amended complaint provides no indication that the Receiver intended to base his TUFTA claim on transfers to Okpo occurring after February 8, 2016, the court concludes that the Receiver has not alleged a TUFTA claim based on these transfers."); *Toccoa*, 2023 WL 4106440, at *2–3 (holding that an estoppel theory could not be raised in response to summary judgment when it failed to meet the *Twombly* standards); *Grant v. Administrators of Tulane Educ. Fund*, No. CV 22-66, 2024 WL 4216041, at *3 (E.D. La. Sept. 17, 2024) (holding a claim was raised for the first time in opposition to summary judgment where the complaint "does not include any facts that would put Defendants on notice as to what conduct would support an age discrimination claim"); *see also U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("[T]he Supreme Court has mandated a liberal pleading standard for civil complaints . . . . This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (holding, even under pre-*Twombly* standards, that "[l]iberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint")).

## VI.    ARGUMENT

### A.    Under *Twombly-Iqbal*, Plaintiffs did not plead that BCE controlled Chappelle's August 2017 Statements.

BCE could not be on "fair notice" of allegations that Plaintiffs never made. The *Twombly-Iqbal* standard required Plaintiffs to plead their theory that BCE is liable for controlling Chappelle's August 2017 Statements, and the particular facts supporting that theory. They did not. Nowhere in the complaints does that allegation appear. Nowhere in Plaintiffs' pleaded Section 20(a) claims will the Court find the allegation that BCE is liable for controlling Chappelle's August 2017 Statements. The only pre-merger statements that the complaints allege BCE controlled are ***the Proxy***, ECF No. 218, ¶393, and that claim, Count IV, has been dismissed, ECF No. 778 at 51–52. The only other Section 20(a) claim Plaintiffs allege is that "Defendants each acted as controlling persons of [the public company formed in 2018]," and that company, by definition, did not even exist in August 2017. *Id.*, ¶369. And neither that new publicly traded company nor Silver Run are the same person as Chappelle. When Plaintiffs file their response, they will not be able to point the Court to a single paragraph in either of the Section 20(a) claims alleging that BCE is liable for controlling Chappelle's statements in the August 2017 press release and investor presentation.

"This is precisely the sort of surprise switcheroo that our precedents ***forbid***." *Jackson*, 3 F.4th at 188–89 (emphasis added). Because the complaints do not allege that BCE is liable for controlling Chappelle's statements in the August 2017 press release or investor presentation, that claim "*is not properly before the court.*" *Le*, 2020 WL

16

1158429, at *8 (emphasis added).  Under Fifth Circuit law, "[P]laintiffs are *precluded from advancing*" the unpleaded theory that BCE controlled Chappelle's August 2017 Statements and whatever unspecified facts allegedly support it. *See Fiesta Mart*, 2024 WL 1394235, at *9.  Plaintiffs are "*prohibited*" from advancing either new theories or new factual allegations, and here they do both. *Becerra*, 2023 WL 6202050, at *11 ("[T]he *prohibition* on asserting new claims in opposition to summary-judgment motions extends the assertion of *new factual allegations* and *theories of liability* as well.") (emphasis added)).  Sending these claims to trial would be clear and indisputable error.

This is an easier case than the one where the Fifth Circuit found a "surprise switcheroo that our precedents *forbid*." *Jackson*, 3 F.4th at 188–89 (emphasis added).  In *Jackson*, the underlying facts and "failure to train" theory remained the same. *Id.* All that changed was the specific theory of liability; plaintiffs reframed their pleaded theory from failing to train officers to avoid "*excessive force*" into failing to train officers to deal "with *mentally unstable individuals*." *Id.* By comparison, this case is not even close. Plaintiffs have switched the primary violation (the August 2017 press release and investor presentation instead of the January 2018 Proxy) and the primary violator (Chappelle's statements instead of Silver Run's). Nothing about this claim is the same as the Section 20(a) claims in the complaints. The *Twombly* standard could not possibly be satisfied.[5]

---

[5]  *See also Great Lakes Ins., S.E. v. Gray Group Investments, LLC*, No. CV 20-2795, 2021 WL 6063247, at *2–3 (E.D. La. Dec. 22, 2021) (holding that "newly raised misrepresentation claims are not properly before the Court" where "Great Lakes did not allege any misrepresentation by Gray Group in its complaint"); *AmGuard Ins. Co. v. Meisel*, No. CV H-16-2592, 2022 WL 15777591, at *4 (S.D. Tex. Sept. 29, 2022) (holding that a theory of agency raised for the first time in response to summary

**B.     BCE does not consent to the trial of the new unpleaded claim that BCE controlled Chappelle's statements in the August 2017 press release and investor presentation.**

The Court dismissed the Section 20(a) claims pleaded against BCE at summary judgment. The only claim ostensibly remaining against BCE is the new unpleaded one. The only way the Court can try that unpleaded claim is with BCE's express or implied consent. *Triad Elec. v. Power Sys.*, 117 F.3d 180, 193 (5th Cir. 1997) ("No notice was given; nor was there express consent. Therefore, a ruling on the new claim was allowable ***only*** if Triad had impliedly consented to trial of the fraud claims." (emphasis added)); *Presidio Valley Farmers Ass'n v. Brock*, 765 F.2d 1353, 1358 (5th Cir. 1985) ("Absent pleadings and evidence to support the theory or trial by consent, the district court could not have used the sham corporation theory to impose joint and several liability on the growers for the damages assessed against PVFA; nor can we do so on appeal.").

BCE does not consent, expressly or impliedly, to a trial of the new unpleaded claim or any other claim. BCE disclaims any implication that it consents to a trial of the new unpleaded claim or any other claims. BCE objects to all testimony, documents, evidence, motions for judicial notice, and demonstratives offered at the trial, because summary judgment has been entered in BCE's favor on all pleaded claims, and thus there is no basis to offer anything against BCE at trial or conduct a trial against BCE at all. On

judgment that was not found anywhere else was an attempt to "advance[e] a new claim or refram[e] a previously presented one in response to a motion for summary judgment."); *cf. Smith v. BCE Inc. [Note: No Relation to this BCE]*, No. CIV.A.SA-04-CA0303XR, 2005 WL 3454104, at *3 (W.D. Tex. Nov. 29, 2005), *aff'd*, 225 F. App'x 212 (5th Cir. 2007) (holding that "written misrepresentation claims are not properly before the Court" because they were not raised in the complaint, even though "oral fraud and negligent misrepresentation claims" were).

this same basis, BCE objects to being on the verdict form, in the jury instructions, and in any final judgment. BCE's appearance and evidence at trial is all subject to this objection.

BCE is not even in a position where it *could* exercise consent to try the new unpleaded claim because Plaintiffs still have not alleged what facts they believe show that BCE controlled Chappelle's August 2017 Statements. Because the new claim is not pleaded in the complaints, BCE does not have any idea what facts Plaintiffs intend to rely on to show BCE somehow controlled Chappelle's statements in the August 2017 press release and investor presentation. The claim is clearly not based on a purported duty to correct the August 2017 Statements. ECF No. 778 at 42.[6] Nor is it based on whatever input BCE supposedly had. *Id.* at 44 ("[I]nput does not equate to control."). BCE was a minority shareholder in a parent company, and it could not (and did not) have "final authority," *id.* at 45, over Chappelle in August 2017.

Even Plaintiffs' opposition brief fails to provide fair notice. The Court's order only cited one collection of Plaintiffs' exhibits, and it is a collection of emails from *November* 2017. *See* ECF No. 778 at 52 (citing ECF No. 444-7). November 2017 emails cannot show final authority over statements made three months earlier, in *August* 2017. And again, *according to Plaintiffs*, the *August 2017* are the only statements that can be

---

[6]   Holding: "It is not enough to argue, as Plaintiffs do, that [Defendant] 'had the opportunity to review and comment on [Alta Mesa] press releases and other public statements in advance of them being publicly issued and could have—but chose not to—stop the false and misleading information statements from being issued.' There is no evidence showing that [Defendant] personally had the ability to stop any other party from making statements; and, even if it can be accurately said that he breached a duty to correct any false or misleading statements made by another party, that alone is not sufficient to hold him liable under Section 20(a)."

at issue: The only pre-merger statements where "Chappelle" is a defendant are the August 2017 Statements according to the "Chart of Alleged Misstatements" filed by Plaintiffs at the outset of this case. ECF No. 139-3. BCE has no notice of the evidence against it or how to prepare. This is further reason why BCE cannot and is not consenting.

## VII.   ADDITIONAL DUE PROCESS OBJECTION

### A.   Forcing BCE through this trial would consummate a due process violation, causing irreparable harm to BCE as a matter of law.

Forcing BCE to trial on an unpleaded claim is tantamount to hauling BCE off the street, depriving of the fair notice needed to exercise every available due process right under the Federal Rules, and then forcing BCE to spend virtually all of its remaining insurance policy on trial, none of which it can ever recover. "Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm as a matter of law." *De Leon v. Perry*, 975 F. Supp. 2d 632, 663–64 (W.D. Tex. 2014), *aff'd*, 791 F.3d 619 (5th Cir. 2015). The loss of time, money, and insurance proceeds are all irreparable; BCE will never be compensated for the astronomical burden of going through a multi-week, multi-phase trial on an unpleaded claim that it had no fair notice of during discovery and which Plaintiffs lack standing to bring.

Sending the claims against BCE to trial would consummate a due process violation for the simple reason that "basic fairness entitles a defendant to notice, ***before trial***, of who sued it and the nature of the claims being asserted against it." *Domar Ocean Transp. Ltd., Div of Lee-Vac, Ltd. v. Ind. Refining Co.*, 783 F.2d 1185, 1189 (5th Cir.

1986) (emphasis added). The rule prohibiting new theories being raised for the first time in response to summary judgment "is rooted in the need to provide adequate notice." *SH Tobacco & Cigars, LLC v. Masters 96th LLC*, No. 3:23-CV-0781-D, 2024 WL 1687663, at *6 (N.D. Tex. Apr. 17, 2024). "Notice remains a first-reader element of procedural due process, and trial by ambush is no more favored here than elsewhere." *Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 420 (5th Cir. 1981). Notice is required for a party to construct a defense. *Id.*; *see also Jones v. Wells Fargo Bank, N.A.,* 858 F.3d 927, 933 (5th Cir. 2017) ("[Defendant] was never on notice that that issue was being litigated, so it could not construct an appropriate defense."). All the rights under the Federal Rules are illusory without notice of the need to exercise them. *Marshall Durbin Farms, Inc. v. Nat'l Farmers Org., Inc.*, 446 F.2d 353, 356 (5th Cir. 1971) ("The right of defendants to present controverting factual data is illusory unless there is adequate notice of plaintiffs' claims.").

The lack of notice here is clear, indisputable, and egregious. Beyond just the complaints, none of the Class representatives mentioned a claim against BCE based on those August 2017 Statements in their testimony. Nor did the Opt Outs in theirs. None of the 38 exhibits that Plaintiffs used during McMullen's 16-hour (all in one day) deposition as BCE's corporate representative were about controlling statements in the August 16-17, 2017 press release and investor presentation, nor was he asked about the specific statements made by Chappelle. Notice is the first element of due process, and here, it is totally lacking. So too is a respect for BCE's due process.

**B.**     **Forcing BCE through this trial would be inordinately prejudicial given that all discovery has closed.**

The consequences of this due process violation could not be more severe. This action has proceeded with Plaintiffs raising dozens of issues against nearly a dozen defendants, with little attention to narrowing the issues or refining the claims. Plaintiffs' new theory changes the entire strategy of how BCE would have conducted discovery. This is especially true given that the allegations relate to control over statements not made by BCE or its employees, but *made by third-party Chappelle*. Given the fact that there were hundreds of hours of questioning in the 72 depositions conducted, yet no questions about BCE's supposed control over Chappelle in August 2017, BCE would have conducted further fact-finding by asking additional questions of fact and expert witnesses in depositions. To give the most obvious example, BCE would have cross-examined Chappelle and his subordinates to establish BCE's lack of control. As exhibits, BCE would have used whatever mysterious documents that Plaintiffs contend support their control contentions. BCE would have cross examined other fact witnesses, many of whom are no longer available and are outside subpoena range, involved in August 2017.

And those are just the fact witnesses. BCE would have also asked more questions of Plaintiffs' damages expert to establish that Plaintiffs failed to disaggregate the alleged damages for Chappelle's statements in the August 2017 press release and investor presentation. BCE itself would have cross examined Plaintiffs' liability experts on the August 2017 Statements, which it previously had no need to do, because those statements were not alleged to be an issue for BCE.

Sending the unpleaded Section 20(a) claim to trial would consummate the due process violation. Had this claim been in the case from the beginning, the trial would look radically different for BCE. BCE will never know what witnesses that it did not depose might have said. Some witnesses are not coming to trial at all, meaning BCE's right to cross examine them is effectively lost forever. As to witnesses that are coming to trial, the Court stated at the last status conference that each side would be time limited. Being required to cross examine witnesses without the benefit of discovery allowed by the federal rules and under time pressure means that questions will not get asked.

## VIII.  EQUITY TOO CRIES OUT FOR THE COURT TO RULE ON BCE'S MOTIONS.

Whenever BCE has had notice of the claims against it and the opportunity to develop its defense, it has prevailed. Beyond this Court's summary judgment ruling, Judge Isgur scrutinized BCE's conduct in the bankruptcy and granted BCE a full release. Ex. B, Continued Sale Hearing Tr., Jan. 23, 2020 at 227. After robust litigation, including "extreme reports done, extreme analysis done, and millions of dollars spent to conduct [an] independent analysis," Judge Isgur held that he "didn't see any claims that [he] thought had material value." *Id.* at 227:3–6. Judge Isgur continued "[t]here is simply ***no evidence, literally none*** that the initiation of [the Joint Well Development Program] program was not done properly, that it was not done independently and that it was not done after thorough work." *Id.* at 227:19–22 (emphasis added).[7] He further explained:

---

[7]  Judge Isgur relied on the ***same*** set of documents and the ***same*** set of facts over the ***same*** time period to make his determination about BCE. Judge Isgur considered the 2018 Joint Well Development Program, which was a continuation of the 2016

"There is *zero* evidence that there was bias in the decision-making process in which BCE participated to keep the program going . . . ." *Id.* at 228:8–10 (emphasis added).

And as the Court already knows, BCE received zero cash—literally $0.00—from the merger. Instead of taking cash, BCE believed so much in the merger that it took only stock. As the counsel hired by the AMH Trustee to investigate claims against BCE summarized: "BCE puts it[s] own money where its mouth was[.]" Ex. C, Robbins Russell Memo at 28.  Plaintiffs' theory that BCE gave up the right to take hundreds of millions of dollars in cash as part of a grand plan to obtain stock that BCE knew was worthless is absurd. That is especially true because BCE later bought *even more stock*, which would make no sense if it knew the stock was worthless. "BCE's election to purchase additional AMR stock is hard to square with an allegation that it believed the company's substantial capital expenditure on a drilling program was not going to be a profitable endeavor." *Id.*

Plaintiffs' new unpleaded Section 20(a) claim could not have survived discovery (and cannot survive a motion to dismiss for lack of standing). Keeping it in the case, as though it has been vetted by the adversarial process when it has not, is precisely why BCE's due process rights would be violated by a trial. Neither the Constitution nor equity permits that result.

### A.    Including BCE in the trial will taint the entire trial for the other defendants.

Including BCE in the multi-week, multi-phase trials of this case will taint the trial. The entire trial will have to be vacated because BCE's presence has a significant impact

---

Program, such that any findings relating to the 2018 Program apply similarly to the 2016 Program.

on how the case is presented to the jury. BCE will take away time from the other defendants. BCE will ask questions that the other defendants do not want asked, and which are not relevant to any pleaded claims in the case. Evidence will be solicited on the unpleaded claim that is prejudicial to the other defendants. All that would be accomplished by keeping BCE in the trial on an unpleaded claim is subjecting the entire trial to the possibility of reversal.

Having BCE in the trial objecting to every piece of evidence (since none are relevant to the Section 20(a) claim against BCE), disagreeing with the other defendants and Plaintiffs over time allocations, arguing about the jury instructions and verdict form should describe unpleaded claims, and so forth, is going to make the trial of this case far lengthier and more complex for all involved. Sometimes, that is what the law requires. But here, the exact opposite is true. Keeping BCE in this case violates the law. And in doing so, it violates the rights of the other defendants, and injects error into the trial.

## IX.   CONCLUSION

In addition to dismissing the Section 20(a) claim against BCE based on controlling Chappelle's pre-merger statements for lack of standing, *see* ECF No. 783, the Court should hold that Plaintiffs failed to plead that claim against BCE, and as a result, that claim is not properly before the Court and will not be tried. BCE requests any other and further relief as this Court deems just and proper.

DATED: October 16, 2024

/s/ Kenneth A. Young
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699
S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone:   (713) 836-3600
Fax:       (713) 836-3601
Emails:   kenneth.young@kirkland.com
                nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on October 16, 2024.

/s/ Kenneth A. Young
Kenneth A. Young

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that, on October 8, 2024, counsel for Bayou City conferred by e-mail and by Zoom call with counsel for all parties regarding the relief sought in this motion. Plaintiffs are opposed.[8]

*/s/ Kenneth A. Young*
Kenneth A. Young

---

[8] Local Rule 6(B)'s Pre-Motion Conference does not apply to this motion. May 8, 2023 Status Conference Tr. at 17:23–18:1 ("[T]he parties do not need to file a premotion letter on dispositive motions going forward because [the Court] know[s] what the issues are.").

27