**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., *et al.*<br><br>Defendants. | Judge George C. Hanks, Jr.<br><br>No. 4:22-cv-01189 |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., *et al.*,<br><br>Defendants. | No. 4:22-cv-2590 |

**BAYOU CITY'S MOTION TO EXCLUDE JOINT WELL DEVELOPMENT PROGRAM AS EVIDENCE OF CONTROL**

---

Bayou City Energy Management, LLC ("BCE") submits this Motion to Exclude evidence concerning the 2016 joint well development agreement (the "JDA" or the "Joint Well Development Program"), which the Court has already held is not relevant to demonstrate Bayou City's alleged Section 20(a) control.

This motion is subject to BCE's Motion to Dismiss for Lack of Standing (ECF 783) and Objection to Trial by Consent and Motion to Exclude (ECF 849). The sole claim against BCE scheduled for trial was not pleaded and is one that Plaintiffs lack standing to bring. The Court should grant those motions, in which case the motion to exclude is moot. Nothing in this motion operates as a consent or waiver of BCE's objection to Plaintiffs' lack of standing and their failure to plead the claim at issue.

# TABLE OF CONTENTS

**Page**


**I. SUMMARY OF ARGUMENT ... 1**

**II. ISSUE TO BE RULED UPON ... 2**

**III. FACTUAL BACKGROUND ... 2**

**IV. LEGAL STANDARD ... 6**

**V. ARGUMENT ... 7**

A. Plaintiffs should not be allowed to waste the jury's and the court's time with evidence that the Court already found irrelevant. ... 7

B. If Plaintiffs are allowed to present—or attempt to produce—evidence of the Joint Well Development Program, it will add unnecessary confusion to an already-complex securities matter. ... 11

**VI. CONCLUSION ... 13**

**CERTIFICATE OF SERVICE ... 14**

**CERTIFICATE OF CONFERENCE ... 14**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Alta Mesa Resources, Inc. and Alta Mesa Holdings, LP*, Case No. 19-35133-H1-11 (S.D. Tex. Bankr.) .......... 5

*Harpring v. Continental Oil Co.*, 628 F.2d 406 (5th Cir. Unit A 1980) .......... 8

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) .......... 12

*United States v. Tsarnaev*, 595 U.S. 302 (2022) .......... 10

*United States v. Williams,* 30 F.4th 263 (5th Cir. 2022) .......... 11

**Statutes**

Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) .......... 7, 12

**Rules**

Fed. R. Civ. P. 401 .......... 2, 6

Fed. R. Civ. P. 403 .......... 2, 6

## I. SUMMARY OF ARGUMENT

This motion seeks to exclude evidence that the Court has already held irrelevant to the issue of BCE's control: the Joint Well Development Agreement.

At a recent status conference, the Court stated that its summary judgment rulings made it "clear on what issues were going to trial," so that the parties could "figure out what evidence [they] needed to get together to go to trial" and "fine tune [their] trial strategy." Status Conference Tr., Aug. 22, 2024, at 12:14-18. The Court's summary judgment ruling did just that when the Court held that "Plaintiffs' evidence does not show that the [joint] well development agreement gave BCE, let alone McMullen, the power to control Alta Mesa's statements to investors or potential investors." ECF No. 778 at 50.

Despite this Court's clear ruling on the irrelevance of the Joint Well Development Agreement, Plaintiffs rely on the Joint Well Development Agreement for the purpose of arguing that BCE allegedly controlled misstatements made to investors. Allowing Plaintiffs to present evidence to the jury that the Court already found irrelevant would be both confusing and a waste of time. And, because BCE will need to explain the history and nuances of the program to make sure the jury understands why such evidence is irrelevant, it would needlessly extend the length of trial. In this way, allowing evidence of the Joint Well Development Program to demonstrate BCE's alleged control would extremely prejudice BCE, who must go to lengths to explain the evidence, and would otherwise defeat the whole point of the Court adjudicating the issue at summary judgment.

The Court should exclude this evidence altogether under the Federal Rules of Civil Procedure 401 and 403, or, in the alternative, grant a motion in limine.

## II. ISSUE TO BE RULED UPON

> Whether Plaintiffs are barred from presenting evidence relating to the Joint Well Development Agreement to demonstrate BCE's alleged control when the Court already held that such evidence was insufficient to demonstrate control.

## III. FACTUAL BACKGROUND

Because the Court already held this evidence to be irrelevant to the question of control, see ECF No. 778 at 50, the facts here are only briefly recited to refresh the Court's recollection of why this evidence is irrelevant and how convoluted and time-consuming it will be to allow the jury to hear this evidence.

None of the defendants in this case, including BCE, were parties to the Joint Well Development Agreement, which predated the Business Combination by more than two years. The Class alleges that in January 2016, non-party BCE-STACK Development LLC ("BCE-STACK Development"), entered a joint well development agreement (the "JDA" or "Joint Well Development Agreement") with Oklahoma Energy Acquisitions, LP ("Oklahoma Energy"), a subsidiary of Alta Mesa Holdings, LP ("AMH"). CAC ¶¶ 61, 89. Under that Joint Well Development Agreement, BCE-STACK Development agreed to provide funding for Oklahoma Energy wells in exchange for interest in those wells. *Id.* ¶ 90. Specifically, BCE-STACK Development committed to fund 100% of Oklahoma Energy's working interest share up to $3.2 million in drilling and completion costs per well. *Id.* In exchange, BCE-STACK Development was to receive an 80% working

interest in each well and information about well performance. *Id.* The Joint Well Development Agreement initially established the development of two tranches of 20 wells each and was later amended to include two additional tranches of wells. *Id.* ¶ 89.

Plaintiffs have not pointed to any evidence that, as a result of the Joint Well Development Agreement, BCE had any power to control Chappelle's statements to investors prior to the merger. Far from alleging that agreement had anything to do with control, Plaintiffs confusingly allege that as a result of the Joint Well Development Program, BCE had "detailed drilling and production data related to [AMH's] STACK wells," such that it knew "exactly what these wells were producing," which has nothing to do with control over Chappelle. ECF No. 449, Opp. to Mot. for Summary Judgment Filed by McMullen, at 4, 13–14. Nonetheless, Plaintiffs' assert that the Joint Well Development Agreement somehow evinces BCE's alleged control over statements to potential investors. *See id.* at 4 ("The JDA also gave BCE governance rights at [AMH], including the right to approve (or disapprove) of [AMH's] development plans for [AMH] wells—JDA and non-JDA wells alike."); *see also id.* at 3 ("BCE had and exerted control through [its] . . . joint operation with [AMH] of many of the subject wells through a joint development agreement ('JDA')"); *see also* ECF No. 445, Opp. to Motion for Summary Judgment Filed by HPS, Bayou City, and ARM Energy, at 4 ("As part of the JDA, BCE had control and approval rights over AMH's development plan and budget.").

This Court considered and rejected this argument at summary judgment. After reviewing the Joint Well Development Program in connection with its Memorandum Opinion and Order granting in part BCE's motion for summary judgment, *see* ECF No.

778 at 49–50, the Court held that the Joint Well Development Program did not demonstrate Bayou City's alleged control, holding that:

> Plaintiffs also fail to explain how the existence of a joint well development agreement between BCE and Alta Mesa proves that McMullen personally had the ability to control some specific transaction or activity upon which a primary violation is based. Plaintiffs argue that the agreement gave McMullen "significant operational involvement in [Alta Mesa] through the joint wells." (Dkt. 449 at pp. 29–30). However, ***Plaintiffs' evidence does not show that the well development agreement gave BCE***, let alone McMullen, ***the power to control Alta Mesa's statements to investors or potential investors.***

*Id.* (emphasis added).

Despite the Court's clear ruling rejecting the Joint Well Development Agreement as evidence of BCE's control over alleged misstatements, and despite the obvious weaknesses of relying on such evidence—as observed in AMR's bankruptcy proceedings—Plaintiffs continue to point to the Joint Well Development Program as evidence of BCE's alleged control person liability. In fact, in Class Plaintiffs' recent Request for Judicial Notice and Motion for an Order Deeming Certain Admitted Facts Established, Plaintiffs seek judicial notice of facts relating to the Joint Well Development Program ***based on admissions made by HPS***—an entirely different defendant that was not a party to the Joint Well Development Program, and that is no longer a party-opponent to the Class. *See* ECF No. 844, Request for Judicial Notice at Ex. A. In this way, Plaintiffs' demonstrate their clear intent to produce evidence relating to the Joint Well Development Program at trial. BCE therefore requests that this Court exclude evidence of the Joint Well Development Program to the extent that it is used to further Plaintiffs' arguments of BCE's alleged control.

Plaintiffs' efforts to admit the Joint Well Development Program fly in the face of not only this Court's summary judgment order, but also Judge Isgur's findings. BCE's conduct under the JDA has already been subjected to vigorous, independent investigation and adjudication, including by Judge Marvin Isgur of the U.S. Bankruptcy Court for the Southern District of Texas, the presiding judge over the consolidated Chapter 11 cases of AMR and AMH. *See In re: Alta Mesa Resources, Inc. and Alta Mesa Holdings, LP*, Case No. 19-35133-H1-11 (S.D. Tex. Bankr.).

After robust litigation, including "extreme reports done, extreme analysis done, and millions of dollars spent to conduct [an] independent analysis," Judge Isgur gave BCE a release of the claims after holding that he "didn't see any claims that [he] thought had material value." Ex. B, Continued Sale Hearing Tr., Jan. 23, 2020 at 227:3–6. Judge Isgur held that "[t]here is simply ***no evidence, literally none*** that the initiation of [the Joint Well Development Program] program was not done properly, that it was not done independently and that it was not done after thorough work." *Id.* at 227:19–22 (emphasis added).[1] He further explained: "There is ***zero*** evidence that there was bias in the decision-making process in which BCE participated to keep the program going . . . ." *Id.* at 228:8–10 (emphasis added). Further, in connection with the bankruptcy, an independent law firm hired by the trustee investigated BCE's actions in connection with the JDA. ECF 849, Ex. C, Robbins Russell Report on the Investigation Into Alta Mesa Holdings, LP's

---

1 In the Bankruptcy proceeding, Judge Isgur considered the 2018 Joint Well Development Program—a continuation of the 2016 Joint Well Development Program—such that any findings related to the 2018 Program apply similarly to the 2016 Program.

2018 Drilling Program. This third-party law firm concluded that based on its investigation, it saw no "viable claim against McMullen and BCE based on the adoption of the [JDA]." *Id.* at 30.

Judge Isgur's decision to retain independent law firms to analyze the JDA illustrates how complex the program is, and how allowing Plaintiffs to introduce evidence of this program would open up a proverbial can of worms. The fact that Judge Isgur found it had no probative value reinforces this Court's holding that it is not probative of any wrongdoing by BCE.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Rule 403 further states that a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. CIV. PRO. 403.

This Court has already made clear that the evidence of the Joint Well Development Program does not make BCE's alleged control more probable, and it is obvious that the inclusion of this evidence will not only confuse and mislead the jury but will waste the court's time uncovering facts that are not of importance to the claims at bar. The Court should exclude evidence of the Joint Well Development Program as evidence of BCE's alleged control.

## V. ARGUMENT

### A. Plaintiffs should not be allowed to waste the jury's and the court's time with evidence that the Court already found irrelevant.

This Motion relates to the evidence that Plaintiffs intend to present against BCE at trial regarding the sole remaining issue: that BCE alleged control over Chappelle's statements in an August 16, 2017 Press Release and an August 17, 2017 Investor Presentation (together, the "August 2017 Statements[2]"). BCE maintains that this claim of Section 20(a) control is not properly before the Court because it was never pleaded until Plaintiffs' opposition to Bayou City's Motion for Summary Judgment, *see* ECF No. 849, and Plaintiffs lack standing to assert this claim, *see* ECF No. 783.

Despite these procedural barriers, if Plaintiffs are nonetheless permitted to try this issue of control over BCE's objection, they certainly should not be permitted to do so by offering evidence that this Court has already held was irrelevant at summary judgment. This is especially true given that the trial will already be difficult to squeeze into five weeks where there are three different defense groups competing for time. The admission

[2] According to Plaintiffs' "Chart of Alleged Misstatements," filed at the outset of this case, ECF No. 139-3, these August 2017 Statements are the only statements that can arguably be at issue because these are the only pre-merger statements where defendant Chappelle is quoted as having made the statement at issue. *See* ECF No. 139-3 at 1 (Statement 1: "We see this as a tremendous way to continue our evolution as a low-cost, high-value producer in the STACK."); *id.* (Statement 2: "We have over 200 wells that we've drilled here and we've demonstrated the value, and we have confidence in the upside. As an illustration of that, at the end of the second quarter [of 2017], we drilled on the order of 200 wells; of those, over 160 were on production. And of that number, about 114 had sufficient production history to give us confidence that at the end of this year, our year-end reserves will reflect better than 650,000 BOE.").

of evidence relating to the Joint Well Development Program will undoubtedly and unnecessarily increase the length of the trial proceeding.

This Court has already considered Plaintiffs' arguments and held as a matter of law that the Joint Well Development Program does not demonstrate Bayou City's alleged control. *See* ECF No. 778 at 49–50. Plaintiffs argued to the Court that "BCE had and exerted control through [its] . . . joint operation with [AMH] of many of the subject wells through a joint development agreement ('JDA')." ECF No. 449, Opp. to Motion for Summary Judgment Filed by McMullen at 3; ECF No. 445, Opp. to Motion for Summary Judgment Filed by HPS, Bayou City, and ARM Energy, at 4 ("As part of the JDA, BCE had control and approval rights over AMH's development plan and budget."). In the Court's Summary Judgment opinion, however, it ruled that "***Plaintiffs' evidence does not show that the well development agreement gave BCE***, let alone McMullen, ***the power to control Alta Mesa's statements to investors or potential investors***." ECF No. 778 at 50.

Allowing Plaintiffs to publish evidence about the JDA—in direct opposition to this Court's clear holding otherwise—will open Pandora's box to a myriad of other documents and exhibits which will be necessary to help the jury to understand the genesis, nuance, and irrelevance of the Joint Well Development Program. After all, BCE will need to establish a proper defense and destroy any false impression relating to the Joint Well Development Program. This will necessarily require slogging through the

history of the Joint Well Development Program beginning in 2015 when BCE-STACK began its analysis of the potential deal.[3]

BCE will also need to present evidence counterbalancing Plaintiffs' accusations by presenting the findings from the bankruptcy court and the trustee's investigation, which relied on the ***same*** set of documents and the ***same*** set of facts over the ***same*** time period. *Cf. Harpring v. Continental Oil Co.*, 628 F.2d 406, 410 (5th Cir. Unit A 1980) (affirming the exclusion of evidence because it would have involved "trying another lawsuit within the existing lawsuit"). This is not just a wasteful exercise for Plaintiffs, but one that does nothing to advance their view of the case if BCE is given an opportunity to rebut. And the result would be the same regardless if the Joint Well Development Program is admitted into evidence or even raised at trial at all.

A firm hired by AMR's bankruptcy trustee and approved by Judge Isgur, Robbins Russell, evaluated the same Joint Well Development Program at issue today to determine whether there was evidence of McMullen's or BCE's breach of fiduciary duties.[4] ECF 849, Ex. C at 1. Robbins Russell reviewed thousands of documents relating to the potential Joint Well Development Program claims. *Id.* at 3. At the conclusion of its review, Robbins Russell provided a highly technical memo about the Joint Well

---

3 *See* Ex. C, Proposed Investment in BCE-STACK Development LLC for the Joint Development of Oklahoma Energy Acquisitions, LP's assets in the STACK play.

4 Robbins Russell specifically considered the claim that "BCE and McMullen deliberately caused AMH to overdrill, at considerable expense of corporate resources, in an effort to move earnings over to KFM in anticipation of spinning KFM off at its relatively higher EBITDA multiple." ECF 849, Ex. C, Robbins Russell report at 25 n.111. Yet the firm rejected this theory, stating that its review of the documents and testimony "has not located any meaningful evidence to support it." *Id.*

Development Program and explained why the Joint Well Development Program nonetheless exculpated BCE. *See id.*

The memo outlines Robbins Russell's determination that the Joint Well Development Program was a "logical approach to advancing the corporation's objectives," and that there was no evidence that Bayou City "knew the drilling program was going to or was failing." *Id.* at 26. Notably, Robbins Russell reported that operational decisions under the Joint Well Development Program including "how many and where to drill wells ***were made by AMH executives***, *i.e.*, Chappelle, Ellis, McCabe, Cole, Bourque and Turner" and that "[n]either Bourque nor Turner could recall input on this decision from McMullen or anyone else at BCE." *Id.* (emphasis added). In fact, rather than demonstrating fraud, as Plaintiffs here allege, Robbins Russell determined that Bayou City's actions regarding the Joint Well Development Program "provide[d] evidence that [Bayou City] believed that AMH's [Joint Well Development Program] would be successful." *Id.* at 27.

Judge Isgur agreed with Robbins Russell's evaluation and released Bayou City of claims against it relating to the Joint Well Development Program, finding "no evidence, literally none that the initiation of [the Joint Well Development] program was not done properly, that it was not done independently and that it was not done after thorough work." Ex. B, Continued Sale Hearing Tr., Jan. 23, 2020 at 227: 19–22.

Both the Robbins Russell report and the Bankruptcy hearing transcripts will need to be reviewed in careful detail with the jury to help the jury understand the implications and shortfalls of relying on—or attempting to introduce—this evidence to prove control,

which will in turn, prompt a "minitrial" of what happened with the Joint Well Development Program and Bayou City's role. *See United States v. Tsarnaev*, 595 U.S. 302, 324 (2022); *see also id.* at 333 (Bryer, J., dissenting) ("In my view, the District Court's strongest reason for excluding the Waltham evidence . . . is that admitting the evidence might have confused the jurors by prompting a 'minitrial' about what actually happened in Waltham and what role [Defendant] played."). The risk of unnecessarily wasting the jury and the court's time is particularly great given that the use of this evidence comes on the heels of this Court's own holding that the evidence is irrelevant to Plaintiffs' claims of control—or any other claim remaining in the case.

**B. If Plaintiffs are allowed to present—or attempt to produce—evidence of the Joint Well Development Program, it will add unnecessary confusion to an already-complex securities matter.**

The sole remaining claim against BCE is limited to BCE's alleged control of "statements made by Defendant Harlan Chappelle ('Chappelle') before the SPAC transaction while Chappelle was Chief Executive Officer of Alta Mesa Holdings, LP ('AMH')." ECF No. 778 at 53 (Court's Order). Yet Plaintiffs have not explained, alleged, or identified any link between the Joint Well Development Program and BCE's alleged control of Chappelle's misstatements.

The Court acknowledged as much in its Order when it held, "Plaintiffs also fail to explain how the existence of a joint well development agreement between BCE and Alta Mesa proves that McMullen personally had the ability to control some specific transaction or activity upon which a primary violation is based," and that "Plaintiffs' evidence does not show that the well development agreement gave BCE, let alone

McMullen, the power to control Alta Mesa's statements to investors or potential investors." *Id.* at 54–55.

Because this Court has already determined that the Joint Well Development Program provides no evidentiary support for control over Chappelle's pre-Business Combination statements, "[a]dmitting the [Joint Well Development Program] evidence gives the jury the chance to decide the case on an improper basis." *United States v. Williams,* 30 F.4th 263 (5th Cir. 2022) at 268. That is, the JDA will confuse the jury into evaluating whether BCE exerted control over ***AMH***, a nonparty in this action, which is not a primary violator, or even worse, that BCE itself is a primary violator. Plaintiffs have pleaded neither basis for liability, and this Court has squarely foreclosed both bases. *See* ECF No. 778 at 51–52. AMH is not accused of making any material misstatements for which Plaintiffs relied upon. *See id.* ("Plaintiffs have not accused either AMH or Kingfisher of making false statements."). In other words, BCE's alleged control of AMH is a non-issue because Plaintiffs allege no underlying primary violation with respect to AMH. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 383 (5th Cir. 2004) ("Control person liability is secondary only and cannot exist in the absence of a primary violation." (citation omitted)). Similarly, Plaintiffs have not alleged that Bayou City made any misleading statements upon which a primary violation is based. *See id.* at 51 ("Plaintiffs have sued HPS, BCE, and ARM solely under Section 20(a) and have not alleged that any of the three firms made any misleading statements.").

Introducing or admitting evidence pertaining to the Joint Well Development Program at trial will likewise add unnecessary complexity and confusion when the Court has already determined these facts do not demonstrate BCE's control.

## VI. CONCLUSION

Bayou City respectfully requests that this Court enter an order excluding all evidence relating to the Joint Well Development Program to further Plaintiffs' Section 20(a) control claims against BCE and any other relief as this Court deems just and proper.

DATED: October 16, 2024

*/s/ Kenneth A. Young*

Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699
S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone: (713) 836-3600
Fax: (713) 836-3601
Emails: kenneth.young@kirkland.com
nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on October 16, 2024.

*/s/ Kenneth A. Young*
Kenneth A. Young

**CERTIFICATE OF CONFERENCE**

I certify that, on October 8, 2024, counsel for Bayou City conferred by e-mail and by Zoom call with counsel for all parties regarding the relief sought in this motion. Plaintiffs are opposed.

*/s/ Kenneth A. Young*
Kenneth A. Young