# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P., <br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., *et al.*<br><br>Defendants. | Judge George C. Hanks, Jr.<br><br>No. 4:22-cv-01189 |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., *et al.*,<br><br>Defendants. | No. 4:22-cv-2590 |

## BAYOU CITY'S EMERGENCY MOTION TO STAY TRIAL TO AVOID DUE PROCESS VIOLATION AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE

Bayou City Energy Management, LLC ("BCE") submits this Emergency Motion to Stay Trial to Avoid Due Process Violation and Request for Expedited Briefing Schedule (the "Motion"). This Motion is related to other pending motions—BCE's Motion to Dismiss for Lack of Standing, ECF No. 783; Objection to Trial By Consent, ECF No. 849; and Motion to Exclude Joint Well Development Program, ECF No. 852—that seek relief based on the fact that Plaintiffs are attempting to try a claim against BCE that they never pleaded. BCE raised this issue as early as practicable and even requested a hearing related to the dispute. *See* Letter to Court, ECF No. 835. With trial still fast approaching, BCE now asks that the Court stay the claim against BCE so that the issue can be resolved and the integrity of any trial verdict can be preserved. To avoid delay, BCE also asks for an expedited response due October 25, 2024.

**TABLE OF CONTENTS**

Page(s)

I. SUMMARY OF ARGUMENT ................................................................................1

II. ISSUE TO BE RULED UPON ................................................................................2

III. FACTUAL BACKGROUND ...................................................................................3

IV. LEGAL STANDARD................................................................................................3

V. ARGUMENT .............................................................................................................3

    A. Staying trial against BCE will not unduly prejudice or tactically disadvantage Plaintiffs, but a stay would prevent improper harm. ...............3

        1. Staying trial against BCE avoids the irreparable harm of BCE defending against an unpleaded claim in breach of due process. ......................................................................................................4

        2. Staying trial against BCE will benefit, not unduly prejudice or disadvantage, Plaintiffs because it creates efficiencies.......................6

    B. Staying trial against BCE will simplify the issues and streamline trial by clarifying the claims against BCE. ............................................................8

    C. Staying trial against BCE is still warranted even though a trial date is set and discovery is complete, given the interests at stake. .........................9

VI. CONCLUSION .......................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bilberry v. JPMorgan Chase Bank, N.A.*,
2021 WL 536440 (W.D. Tex. Jan. 13, 2021) ............................................................... 3

*Burlington v. News Corp.*,
2011 WL 79777 (E.D. Pa. Jan. 10, 2011) ..................................................................... 9

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
661 F.2d 328 (5th Cir. 1981) ........................................................................................ 5

*De Leon v. Perry*,
975 F. Supp. 2d 632 (W.D. Tex. 2014) ..................................................................... 4, 5

*Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*,
2016 WL 270224 (E.D. Wis. Jan. 20, 2016) ................................................................ 8

*Laufer v. T & C Inn, LLC*,
2021 WL 5097572 (C.D. Ill. Nov. 2, 2021) ................................................................. 8

*Tullis v. Exxonmobil Corp.*,
2022 WL 18359154 (S.D. Tex. Dec. 2, 2022) ..................................................... 3, 7, 8

*United States v. Adcox*,
2016 WL 616533 (W.D. La. Feb. 16, 2016) ................................................................ 8

*United States v. Cockrell*,
353 F. Supp. 2d 776 (N.D. Tex. 2005) ......................................................................... 9

I. SUMMARY OF ARGUMENT

The claim currently set for trial against BCE present the classic example of trial by ambush. Essentially, BCE was told for several years that it was defending against a particular set of claims only for Plaintiffs to later represent, but never plead, that they would assert at trial a new claim against BCE they had never before mentioned. That is inappropriate, and the issue is the subject of BCE's pending Objection to Trial By Consent, ECF No. 849. But trial is still approaching so BCE must ask the Court to stay trial on all claims involving BCE.

An analogy illustrates the injustice of the position in which BCE finds itself. Imagine a person is told he will be defending himself against multi-million dollar claims in a five-week trial involving dozens of defendants and witnesses, but he will not be told the accusations against him until just before trial begins. The person is free to take discovery, but he must do so in the dark, without any hint of the legal or factual nature of the claims against himself, because he never received fair notice of the claims.

Here, likewise, BCE defended against the actual claims pleaded in the complaints for five years only to learn that different a claim, that was not pleaded, will be tried against BCE. Specifically, the pleaded claims alleged that BCE controlled a ***publicly-traded company's statements in 2018***; the Court dismissed those claims with prejudice. *See* Order, ECF No. 778 at 53. But now BCE has been told it must defend itself at trial against a different, unpleaded claim which allege that BCE controlled ***Mr. Chappelle's statements in 2017 about a different company (AMH/KFM) before the public company ever existed***.

1

However, the pleaded claims against BCE (Counts II and IV) say nothing about BCE's control over Mr. Chappelle's statements during 2017. BCE did not have fair notice of a claim that Plaintiffs never alleged, and if that claim against BCE is put before the jury it will violate BCE's constitutional right to due process and inject error into the entire trial, ensuring that this dispute drags on for several more years. The problem also ensures that BCE-specific issues in this case are not streamlined and will continue to frustrate any attempt to resolve this matter. This is all discussed in detail in BCE's pending Motion to Dismiss for Lack of Standing, ECF No. 783, and Objection to Trial By Consent, ECF No. 849.

The instant Motion asks only that the Court rule on BCE's pending motions before BCE is subjected to trial on the unpleaded claim. The Court should stay the trial as to BCE and grant one or more of BCE's motions. Only this relief will prevent BCE's due process rights from being violated. Only this relief will preserve the integrity of any verdict that results from the trial.

At bottom, even after the Court previously dismissed all pleaded claims against it, BCE is still trapped in this case, constrained by its own finances from reaching any resolution, and defending itself against an unpleaded, never-before-mentioned claim. The Court should defer the trial of such a claim against BCE and order Plaintiffs to respond to BCE's pending motions by October 25, 2024.

## II.   ISSUE TO BE RULED UPON

Whether the Court should delay the trial of any claims against BCE and require expedited briefing to avoid a violation of due process and a reversible trial verdict.

### III. FACTUAL BACKGROUND

To avoid duplicative briefing, BCE incorporates by reference the briefing on the factual background and procedural posture of this case in its pending motions. *See* BCE's Objection to Trial By Consent, ECF No. 849 and Motion to Exclude Joint Well Development Program, ECF No. 852.

### IV. LEGAL STANDARD

The Court cannot violate BCE's due process rights, and it also has the power to stay "incidental to [its] power to control the disposition of [its] docket . . . ." *Tullis v. Exxonmobil Corp.*, 2022 WL 18359154, at *1 (S.D. Tex. Dec. 2, 2022), *report and recommendation adopted*, 2023 WL 289723 (S.D. Tex. Jan. 18, 2023) (citing *Bilberry v. JPMorgan Chase Bank, N.A.*, 2021 WL 536440, at *2 (W.D. Tex. Jan. 13, 2021)). "When considering whether to stay a case, courts must consider: '(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party[;] (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Id.* (citing *Bilberry*, 2021 WL 536440, at *2).

### V. ARGUMENT

**A.  Staying trial against BCE will not unduly prejudice or tactically disadvantage Plaintiffs, but a stay would prevent improper harm.**

A stay of trial against BCE will not harm Plaintiffs (and in some ways will benefit them). A stay would provide clarity about the scope of claims—if any—against BCE, thus streamlining trial, avoiding delay, and encouraging cooperation between Plaintiffs and BCE. Furthermore, only a stay ensures that BCE's due process rights are vindicated.

3

> **1.  Staying trial against BCE avoids the irreparable harm of BCE defending against an unpleaded claim in breach of due process.**

To address the affirmative benefit of a stay first, a stay is warranted because otherwise BCE will be subjected to a trial based on an unpleaded claim in violation of due process. On top of that, there is the practical matter of how such a claim against BCE will necessarily muddy the waters of trial (*i.e.*, BCE will have to constantly delay proceedings to preserve its objections and the Court will have to address the arguments in BCE's pending motions on the busy backend of trial). It is altogether better to stay the trial against BCE until the issues in BCE's motions are resolved.

*First*, allowing an unpleaded claim against BCE to proceed to trial would violate BCE's due process rights and cause BCE irreparable harm. Put simply, imposing upon BCE the tremendous burden of defending itself in a multi-week, multi-phase trial against a claim for which it had no fair notice, without the benefit of discovery, flies in the face of Fifth Circuit precedent that forbids sending unpleaded claims to trial on the basis of due process. *See generally* Objection to Trial By Consent, ECF No. 849 (explaining why the only claim scheduled to be tried against BCE was never pleaded and why this violates basic tenants of due process). Worse, this constitutional violation would not be fixable after final judgment. *See De Leon v. Perry*, 975 F. Supp. 2d 632, 663–64 (W.D. Tex. 2014), *aff'd sub nom*, 791 F.3d 619 (5th Cir. 2015) ( "Federal courts at all levels have recognized that violation of constitutional rights constitutes irreparable harm as a matter of law.") (citation omitted).

***Second***, the potential harm to BCE is not simply an abstract legal issue.[1]  "An injury is irreparable if money damages cannot compensate for the harm."  *Id.* (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 332 (5th Cir. 1981)).  Here, should BCE go to trial on an unpleaded claim, it would never be compensated for the time or attorney's fees lost in contravention of its due process rights.  And BCE is even more vulnerable because its rapidly eroding insurance policy is the only asset it has to fund its defense or settlement and trial will exhaust that fund.  For example, the Class counsels' attorney's fees from other cases disclose hourly rates of roughly $1,500 per hour for partners and $750 per hour for associates—and that was in 2019.  *See* Ex. A.  If the Court applies those rates to BCE, it would cost BCE at least $1.3 million just for trial.[2]  Again, BCE's insurance fund is nearly depleted and its financial condition leaves it without other meaningful funds.  Even if the unpleaded claim issue were to be corrected on appeal, BCE's capacity to litigate or offer a settlement pending further proceedings would be eviscerated if it is forced to go to trial now.

Sending BCE to trial on an unpleaded claim would be disastrous for BCE, and tantamount to imposing a fatal, $1.3 million fine on BCE.  No longer could BCE meaningfully litigate; no longer could BCE offer any contribution to any settlement; no longer, perhaps, could BCE continue to exist.

---

[1]   Even the abstract principle, alone, is important and of constitutional significance.

[2]   Based on 25 days in trial, plus 8 days on weekends, at 10 hours per day, there would be about 330 hours per attorney. With a conservative assumption of a three person trial team, with two partners and one associate, that would roughly equal $990,000 for partners and $250,000 for the associate.

### 2. Staying trial against BCE will benefit, not unduly prejudice or disadvantage, Plaintiffs because it creates efficiencies.

The constitutional imperative of protecting BCE's due process rights is more than enough reason to stay the trial, but a stay will also benefit Plaintiffs and the Court. Succinctly, a stay will streamline the issues for trial and the logistics of trial. Under such circumstances, Plaintiffs cannot show they will be prejudiced by a stay for BCE.

*First*, delaying the trial of claims against BCE so that the Court can first consider BCE's motions will clarify what claims against BCE are at issue. This will meaningfully influence trial because a plaintiff's claims are the bedrock for all aspects of trial (*e.g.*, opening statements, evidentiary arguments, closing argument, the jury charge, etc.). Furthermore, after the Court clarifies the scope of any remaining pleaded claims against BCE the parties will have greater efficiency and success in their attempts to understand the case, minimizing disputes and fostering greater cooperation.

Also consider the defendants that are the main target of this case.[3] No matter what happens, not granting a stay to BCE gives those defendants a built-in appellate argument that trial was tainted by BCE's presence. Specifically, those defendants can argue any verdict against them should be reversed because (1) BCE should not have been part of the trial and (2) BCE solicited damaging evidence or its presence was otherwise harmful. BCE's place at trial in conjunction with an unpleaded claim undermines any finality that trial could offer the parties or the Court in this years-long case.

---

[3] BCE is now accused only of controlling two statements by Mr. Chappelle in August 2017. *See* Objection to Trial By Consent, ECF No. 849 at 16–20. Other defendants allegedly made multiple misstatements over almost two years.

***Second***, BCE's defense against the unpleaded claim will add logistic complexity. This is a make-or-break case for BCE, which already faces vastly diminished resources. To survive, BCE must defend itself, and it cannot (and will not) entrust that defense to other defendants with different priorities and incentives. With 40 witnesses, giving BCE just 25 minutes for each witness (15 minutes for rebuttal, and 10 to rebut whatever other defendants may say) increases trial time by nearly 20 percent. However, the issue reaches farther than just basic trial procedure. Without a ruling on BCE's pending motions, BCE will have to constantly object to evidence, request limiting instructions, dispute the jury charge, assert motions for judgment as a matter of law, and so forth.

***Third***, against all this Plaintiffs cannot carry their burden[4] of showing any undue prejudice or clear tactical disadvantage that would result from the requested stay. As detailed above, BCE is only a minor part of this case; almost all (or perhaps even all) the preparatory work Plaintiffs do for trial they would do regardless of BCE. Moreover, discovery is complete; there is no risk of loss of evidence or testimony. *See Tullis*, 2022 WL 18359154, at *10 (finding a lack of prejudice where there was no risk of "the loss of testimonial and documentary evidence").

The Court would be best served by dealing with the claims related to BCE now, instead of at the end of trial. Making sure the bags are packed and stowed is always easier and more convenient before the train has left the station.

---

[4] *See Tullis*, 2022 WL 18359153, at *10 (noting non-movant had "not shown that he or the putative collective members would be prejudiced").

7

**B.      Staying trial against BCE will simplify the issues and streamline trial by clarifying the claims against BCE.**

As discussed above, staying trial against BCE and first deciding BCE's pending motions will streamline trial by clarifying the claims against BCE. When a stay allows the Court to "resolve the question of what issues will be relevant" or "potentially narrow[] the defenses," the stay is warranted. *See id.*

Here, BCE repeatedly objected to the unpleaded claim against it. As soon as Plaintiffs raised this issue in response to BCE's Motion for Summary Judgment Brief, BCE objected that the claim had not been pleaded. ECF No. 463 at 24. Several months ago, BCE filed a Motion to Dismiss for Lack of Standing, which raised the pleading issue, and that motion remains pending. *See* ECF No. 783 at 3, n. 3. BCE also filed an Objection to Trial By Consent, ECF No. 849. Resolution of these motions will affect the scope of issues to be tried against BCE and will the steps BCE must take for its defense.

Again, if a ruling will "affect not only the jury instructions, but the substantive charges" against a defendant, it is proper to stay trial pending that ruling. *United States v. Adcox*, 2016 WL 616533, at *2 (W.D. La. Feb. 16, 2016); *accord Laufer v. T & C Inn, LLC*, 2021 WL 5097572, at *1 (C.D. Ill. Nov. 2, 2021) (holding stay was proper because a related decision could "provide clarity and guidance on significant issues in this case [because] the appellate decision [could] affect [the] [p]laintiff's standing to bring this suit"); *Hannahan Endodontic Grp., P.C. v. Inter-Med, Inc.*, 2016 WL 270224, at *1 (E.D. Wis. Jan. 20, 2016) (holding stay was proper because a related ruling on standing had "enormous potential to simplify the issues . . . and reduce the burden of litigation").

8

C.  **Staying trial against BCE is still warranted even though a trial date is set and discovery is complete, given the interests at stake.**

Although discovery is complete and a trial date is set, the Court should still stay trial against BCE to avoid the due process harm that BCE has identified.

When there is a risk of serious harm (like a due process violation), the imminency of a trial must give way to the demands of the law. For example, in one case the government moved to dismiss an indictment, the district court refused, and the case proceeded to trial. *See United States v. Cockrell*, 353 F. Supp. 2d 776 (N.D. Tex. 2005). During voir dire, the government asked "that the trial be stopped so that the government could seek an order from the [Fifth Circuit] directing th[e] court to grant the government's motion to dismiss the indictment." *Id.* The district court declined, and the government filed a petition for a writ of mandamus. *See id.* Trial was nearly done (all evidence was submitted, both sides had presented closing arguments, and the jury charge was finalized) when the Fifth Circuit directed the district court to stay proceedings and to dismiss the indictment. *See id.* Despite a trial that was almost complete, the Fifth Circuit stepped in to correct the district court because it "ha[d] exceeded the bounds of [its] discretion . . . ." *Id.*; *accord Burlington v. News Corp.*, 2011 WL 79777, at *2 (E.D. Pa. Jan. 10, 2011) (noting the "[p]laintiffs maintain[ed] that [the] [d]efendants ha[d] waited until the eve of trial to move for a stay when they could have raised the issue earlier" but "[n]otwithstanding the timing" the court was "unwilling to take th[e] case to trial based on a legal standard that w[ould] almost certainly be clarified").

9

Furthermore, BCE objected that the claim had not been pleaded when first raised in response to BCE's Motion for Summary Judgment Brief, ECF No. 463 at 24. BCE again timely raised the pleading issue on August 21, 2024, when it filed its Motion to Dismiss for Lack of Standing, ECF No. 783. When trial continued to approach (and with no hearing scheduled for that motion), BCE took the next step of filing a Objection to Trial By Consent, ECF No. 849. Now, the only means BCE has left to protect itself is to ask that trial against it be stayed even though a date has been set.

## VI.   CONCLUSION

BCE has done its best to defend itself without creating issues for the Court despite receiving zero dollars from a transaction it supposedly orchestrated to commit fraud (this, even though the bankruptcy court retained an independent firm to scrutinize BCE and cleared it of any wrongdoing—the only Defendant for whom he did so). In fact, BCE ***lost its entire investment***, ***more cash than any single Plaintiff in this case***. But for over five years BCE produced hundreds of thousands of pages of documents, had its sole owner sit for a 16-hour deposition to avoid burdening the Court with a motion to compel, and fought off an inexplicable attempt to release its trade secrets to the public. Order, ECF No. 834 (denying motion to unseal). All this time, BCE was not involved in a single discovery dispute; it reserved its minimal time at hearings for arguing against the merits.

BCE now has no option but to speak up. There are important issues that need to be resolved before trial against BCE can proceed. Resolving those issues before trial not only protects BCE but also best serves all the parties and the Court. Accordingly, BCE respectfully requests that the Court grant its Motion.

|  |  |
|---|---|
| DATED: October 18, 2024 | /s/ Kenneth A. Young |
|  | Kenneth A. Young (*Attorney-in-Charge*) |
|  | Texas Bar No. 25088699 |
|  | S.D. Tex. ID 2506614 |
|  | Nick Brown |
|  | Texas Bar No. 24092182 |
|  | S.D. Tex. ID 2725667 |
|  | **KIRKLAND & ELLIS LLP** |
|  | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
|  | 609 Main Street |
|  | Houston, Texas 77002 |
|  | Phone:    (713) 836-3600 |
|  | Fax:        (713) 836-3601 |
|  | Emails:   kenneth.young@kirkland.com |
|  |                nick.brown@kirkland.com |

*Counsel for Bayou City Energy Management, LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on October 18, 2024.

*/s/ Kenneth A. Young*
Kenneth A. Young

## CERTIFICATE OF CONFERENCE

I certify that counsel for BCE conferred regarding this Motion by phone with the Class's counsel on October 11, 2024, and again by Zoom with Plaintiffs' counsel on October 15, 2024. Plaintiffs' counsel stated they oppose the motion for stay,

I further certify that BCE conferred regarding the request for expedited briefing by email with Plaintiffs' on October 17, 2024 and again by email on October 18, 2024. Plaintiffs' counsel stated that they oppose the request for expedited briefing.
.

*/s/ Kenneth A. Young*
Kenneth A. Young