**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 |
| | Judge George C. Hanks, Jr. |

**DEFENDANTS'[1] PRETRIAL MEMORANDUM OF LAW**

---

[1] This Memorandum is filed on behalf of Defendants Alta Mesa Resources, Inc. ("AMR"), Riverstone Holdings LLC ("Riverstone"), Harlan H. Chappelle, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Ronald J. Smith, Jeffrey H. Tepper, and Diana J. Walters. Defendants have settled the claims brought by the Individual Action Plaintiffs and therefore address only the Class Plaintiffs' remaining claims.

# TABLE OF CONTENTS

**Page**

OVERVIEW ................................................................................................................ 1

ARGUMENT ............................................................................................................. 5

    I.      Plaintiffs Cannot Prove Their Section 14(a) Claims ..................................... 5

          A.      The Proxy Statement Was Not Materially False Or Misleading, And Most Challenged Statements Are Protected By The Safe Harbor........................................................................... 6

          B.      AMR, Riverstone, Hackett, Gutermuth, Tepper, and Walters Did Not Act Negligently ................................................. 10

          C.      Plaintiffs Cannot Prove Loss Causation or Damages ...................... 14

          D.      Riverstone Did Not Solicit the Proxy................................................ 15

    II.      Plaintiffs Cannot Prove Section 10(b) Claims ........................................... 16

          A.      Plaintiffs Cannot Overcome the Purchaser-Seller Rule. ................. 16

          B.      The Challenged Statements Are Not Materially False or Misleading ........................................................................................ 17

          C.      Plaintiffs Cannot Prove Scienter ...................................................... 19

          D.      Plaintiffs Cannot Invoke the Fraud-On-The-Market Presumption Of Reliance, And Defendants Will Rebut The Presumption For Plaintiffs ............................................................. 21

          E.      Plaintiffs Cannot Prove Loss Causation or Damages ...................... 21

    III.     The Section 20(a) Control-Person Claims Fail ........................................... 23

          A.      Plaintiffs Cannot Prove Control ....................................................... 24

          B.      Defendants Acted in Good Faith ....................................................... 25

CONCLUSION ......................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ...................................................................... 20

*In re ArthroCare Corp. Secs. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010)........................................................ 25

*Baker v. S/S Cristobal*,
   488 F.2d 331 (5th Cir. 1974) ...................................................................... 11

*In re Browning Ferris Indus., Inc. S'holder Derivative Litig.*,
   830 F. Supp. 361 (S.D. Tex. 1993), *aff'd sub nom. Cohen v.*
   *Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994) ................................................... 6

*Carlton v. Cannon*,
   184 F. Supp. 3d 428 (S.D. Tex. 2016) ......................................................... 8

*Coates v. Heartland Wireless Commc'ns, Inc.*,
   100 F. Supp. 2d 417 (N.D. Tex. 2000) ...................................................... 19

*Dura Pharms. Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................... 14

*Edwards v. McDermott Int'l, Inc.*,
   No. 4:18-CV-4330, 2021 WL 1421603 (S.D. Tex. Apr. 13, 2021)
   (Hanks, J.) ..................................................................................................... 6

*Fener v. Operating Eng'rs Const. Indus. & Misc. Pension Fund (Local 66)*,
   579 F.3d 401 (5th Cir. 2009) ...................................................................... 14

*In re Franklin Bank Corp. Sec. Litig.*,
   782 F. Supp. 2d 364 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher*
   *Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012) ........ 18

*G. A. Thompson & Co. v. Partridge*,
   636 F.2d 945 (5th Cir. 1981) ...................................................................... 25

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   594 U.S. 113 (2021)............................................................................. 21, 22

ii

*Golub v. Gigamon Inc.*,
   994 F.3d 1102 (9th Cir. 2021) ........................................................................ 9

*Karp v. First Conn. Bancorp. Inc.*,
   535 F. Supp. 3d 458 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) .......... 6, 11, 13

*Krim v. BancTexas Grp. Inc.*,
   989 F.2d 1435 (5th Cir. 1993) ................................................................... 7, 21

*Lormand v. U.S. Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ...................................................................... 14

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
   54 F.4th 82 (2d Cir. 2022) ......................................................................... 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ............................................................................... 8, 18

*Oscar Priv. Equity Invs. v. Allegiance Telecom, Inc.*,
   487 F.3d 261 (5th Cir. 2007), *abrogated on other grounds by Erica P.
   John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) ................................. 22, 23

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) ...................................................................... 20

*Panella v. Tesco Corp.*,
   No. 17-CV-02904, 2019 WL 1606349 (S.D. Tex. Mar. 29, 2019) ........................... 7

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) .................................................................. 16, 19

*Raab v. Gen Physics Corp.*,
   4 F.3d 286 (4th Cir. 1993) ........................................................................... 7

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) .................................................................. 19, 20

*SEC v. Cole*,
   No. 12 Civ. 8167 (RJS), 2015 WL 5737275 (S.D.N.Y. Sept. 19, 2015) ................... 13

*SEC v. Falstaff Brewing Corp.*,
   629 F.2d 62 (D.C. Cir. 1980) ...................................................................... 15

*SEC v. Ginder*,
   752 F.3d 569 (2d Cir. 2014) ....................................................................... 11

*SEC v. Shanahan,*
   646 F.3d 536 (8th Cir. 2011) ........................................................................ 11

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.,*
   365 F.3d 353 (5th Cir. 2004) ........................................................................ 19

*Yamamoto v. Omiya,*
   564 F.2d 1319 (9th Cir. 1977) ...................................................................... 15

## STATUTES

15 U.S.C.
   § 78n(a)(1) ..................................................................................................... 15
   § 78t(a) .......................................................................................................... 25
   § 78u-5(i)(A)-(D) ............................................................................................ 6
   § 78u-5(c)(1)(A)-(B) ................................................................................. 7, 17
   § 78u-5(c)(1)(B)(i) .......................................................................................... 7

**OVERVIEW**

This case arises out of Alta Mesa Resources ("AMR") not finding as much oil and gas in the STACK[2] as had been publicly predicted.  Plaintiffs assert this disappointing performance was not a function of the inherent uncertainty and risks of oil and gas exploration (that were disclosed to investors), but rather that Defendants knew from the outset that the business was doomed and intentionally plowed ahead to drive AMR into bankruptcy, although this caused no one to lose more than the Defendants themselves. Indeed, Riverstone and the individual Defendants invested ***hundreds of millions*** into their belief that AMR would be a success, and they lost it all.  Plaintiffs' theory of fraud, therefore, requires Plaintiffs to show that Defendants squandered hundreds of millions knowing that the venture would fail but pressing forward on the doomed venture all while supposedly lying to the public.  But that theory makes no sense and is contrary to all relevant evidence in this case.  Indeed, Riverstone's internal documents evaluating the potential Business Combination predicted that AMR's equity would nearly double in value after the first year and triple after year two.

Based on that expectation, Riverstone invested over $600 million into the transaction.  Despite extensive discovery, Plaintiffs do not have any evidence supporting their illogical theory that Riverstone purposefully threw away $600 million and harmed its reputation in the industry and with investors.

_____

[2] The STACK refers to a geographic area in Oklahoma and refers to the Sooner Trend (oil field), Anadarko (basin), and Canadian and Kingfisher (counties) (*i.e.*, the "STACK").

The undisputed evidence will show that at least until late 2018, Riverstone, AMR, and all of the individual Defendants genuinely believed AMR would succeed by executing the plans laid out for the Business Combination. Silver Run II ("SRII") and Riverstone conducted five months of intensive due diligence before the announcement of the Business Combination.[3] This process involved retaining multiple different expert advisors, numerous meetings with management of Alta Mesa Holdings ("AMH") and Kingfisher Midstream ("KFM"), extensive internal analysis, multiple board meetings, and numerous presentations to investors of the key assumptions underlying the business. Not a single witness will testify that they believed AMH's and KFM's management projections were unachievable or unreasonable. In fact, Tudor Pickering Holt ("TPH")—a highly sophisticated and experienced technical expert hired by SRII—conducted extensive analysis and built their own models that resulted in even higher projections than AMH and KFM management's projections disclosed to the public.

Similarly, before AMR embarked on its development plan, multiple third-party consultants closely analyzed and validated the geological, engineering, and financial assumptions for AMH's oil and gas reserves and financial projections. These key assumptions were also consistent with the assumptions of other companies operating in the

---

[3] There is no evidence to support Plaintiffs' contention that SRII and Riverstone rushed to close a deal following a failed private investment in public equity offering. To the contrary, Pierre Lapeyre—one of the co-founders and a senior managing director of Riverstone—told his fellow co-founder David Leuschen that he was "ok to walk" away from the deal and "look elsewhere" rather than risking a bad deal for the fund's investors and Riverstone's reputation.

STACK at that time—many of whom also invested in pursuing operations in the STACK but had to change assumptions, cut back rig activity and/or also file for bankruptcy. Given this evidence, Plaintiffs will not prove that Defendants acted knowingly, recklessly, or even negligently.

What's more, Defendants included 52 pages of warnings in the Proxy about the various factors that could cause actual results to differ from what was projected. These detailed risk factors plainly and repeatedly cautioned investors about the unreliability of projections (especially in the oil and gas industry) and expressly warned stockholders "not to place undue reliance on the unaudited financial projections and that the inclusion of the unaudited financial projections in [the] proxy statement should not be regarded as a representation by any person that the results contained therein will be achieved."[4] Further, the Proxy included disclosures that the projections were prepared by "Management of Alta Mesa [Holdings] and Kingfisher" to "assist [the SRII board] in evaluating Alta Mesa [Holdings]'s and Kingfisher's operations and prospects and the potential business combination."[5] Given that six months had passed since the announcement of the Business Combination, the Proxy stated that the projections "have not been updated since the date of preparation," and that there were no plans to update them.[6] No reasonable investor was misled about the very real prospect that the stale projections would not be achieved,

---

[4] *See* Ex. 65 (Proxy) at 172 (ECF 529-6). Unless otherwise noted, all numeric exhibits are the exhibits to ECF 529, Declaration of J. Christian Word in Support of Defendants' Motions for Summary Judgment.

[5] *Id.*

[6] *Id.*

satisfying the PSLRA Safe Harbor guidelines and defeating Plaintiffs' Section 10(b) and 14(a) claims.

Contrary to Plaintiffs' story of fraud from inception, the evidence will demonstrate that after AMR began well development per the drilling plan in 2018, the wells performed as expected for some time but then unexpectedly deteriorated.  It is undisputed that an operator requires many months of data before it can meaningfully assess the long-term expected performance of wells.  During that time, diligent operators employ a variety of techniques to stimulate oil production, which AMR did.  Indeed, Plaintiffs' experts have no rebuttal to Defendants' expert opinion that the techniques AMR used in 2018 were economical.  Moreover, as the year progressed, the Company invested substantial time and resources to analyze the new incoming well results, including hiring third-party expert Meridian to do a deep dive on the well results and implementing meaningful operational adjustments in response to reflect its evolving evaluation of the new incoming well results and drop in oil prices.  Beginning in October 2018, for example, the Company reduced the number of wells per section it drilled.[7]  The next month, AMR reduced its pace of ESP installations.  By the end of 2018, however, AMR had sufficient data and analysis of that data to revise its initial assumptions.  Thus, by January 2019, AMR had reduced its active rig count to zero in order to revise its operational approaches (in turn substantially reducing operational costs).  No one at that time, including third-party advisors and AMR's independent auditor, believed the original assumptions were fraudulent, instead concluding

---

[7] *See* Ex. 227B (Fetkovich Rpt.) at 36.

that months of actual production data were necessary before anyone could begin to assess whether they were inaccurate.[8]   This was not an elaborate, self-harming, fraudulent scheme, but rather the all-too-familiar tale of reasonably trying, but failing, to find oil under fundamentally uncertain conditions.   As Plaintiffs have admitted, no one can reliably predict how much oil will come out of the ground.

AMR's failure does not equate to a securities law violation.   Plaintiffs' claims suffer from many defects—to name just a few: (i) they cannot prove Riverstone solicited the Proxy; (ii) the PSLRA Safe Harbor protects the challenged forward-looking statements, including the projections; (iii) they cannot prove negligence for the 14(a) claims (let alone their theory that each Defendant willingly and intentionally invested time, money, and their reputations into a doomed enterprise, as required for the rest of the Section 10(b) and 14(a) claims); (iv) they did not rely on the challenged statements (many of which are immaterial puffery); and, (v) they have no evidence to prove loss causation or damages.   There was no fraud, and Plaintiffs will not be able to prove the elements necessary to succeed on their claims.

## ARGUMENT

### I.   Plaintiffs Cannot Prove Their Section 14(a) Claims

Plaintiffs assert Section 14(a) claims against AMR, Riverstone, Hackett, Gutermuth, Tepper, and Walters.   Section 14(a) requires, among other things, that Plaintiffs

---

[8] The evidence will further show that if AMR had been able to negotiate for more favorable credit terms from its lender, the Company's liquidity issues in 2019 may have been averted altogether.

prove these Defendants (i) "acted at least negligently in distributing the proxy statement," and (ii) "misrepresented or omitted a material fact in a proxy statement."  *In re Browning Ferris Indus., Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994).  Contrary to Plaintiffs' novel view that Section 14(a) imposes a specter of negligence that is effectively strict liability, negligence under the Exchange Act is "the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances."  *Karp v. First Conn. Bancorp. Inc.*, 535 F. Supp. 3d 458, 473 (D. Md. 2021), *aff'd*, 69 F.4th 223 (4th Cir. 2023) (citation omitted).  Plaintiffs must also prove that the transaction itself caused their losses.  *See Edwards v. McDermott Int'l, Inc.*, No. 4:18-CV-4330, 2021 WL 1421603, at *6 (S.D. Tex. Apr. 13, 2021) (Hanks, J.) (applying *Dura* and loss causation requirements to Section 14(a) claims).

These Defendants are entitled to a verdict in their favor, as Plaintiffs will not be able to present evidence to prove their claims.

### A.    The Proxy Statement Was Not Materially False Or Misleading, And Most Challenged Statements Are Protected By The Safe Harbor

None of the eight challenged Proxy statements[9] were materially false or misleading, and most are forward-looking statements protected by the PSLRA's Safe Harbor.

**Projections**.  First, nearly all of the statements that Plaintiffs challenge in the Proxy are projections that are undeniably forward-looking (15 U.S.C. § 78u-5(i)(A)-(D)) and thus

---

[9] Attached as Appendix 1 is a chart of the alleged misstatements remaining in the case, along with the Defendants alleged to have liability for each statement under Section 10(b), Section 14(a), and/or Section 20(a).

cannot form the basis of Section 14(a) liability if ***any one*** of the following is true: (1) the forward-looking statements were accompanied by meaningful cautionary language, (2) the statements were not presented as guarantees, ***or*** (3) Plaintiffs fail to prove the projections were made without actual knowledge that they were false or misleading.  15 U.S.C. § 78u-5(c)(1)(A)-(B); *Panella v. Tesco Corp.*, No. 17-CV-02904, 2019 WL 1606349, at *4 (S.D. Tex. Mar. 29, 2019) (Section 14(a) claims are subject to the PSLRA's Safe Harbor).  Put differently, Plaintiffs must win on all three inlets for a forward-looking statement to be actionable.  Though any one of the three inlets provides a safe harbor to defeat Plaintiffs' Section 14(a) claims, the Plaintiffs will fail on all three inlets.

First, the evidence will show that these types of statements were explicitly identified as forward-looking and were accompanied by approximately 52 pages of warnings and meaningful cautionary language that identified real risks that these projections would not come to pass.  *See* Ex. 65 (Proxy) at 43-96, 172-73.

Second, there is no evidence that these projections were represented to anyone as guarantees, and thus they are immaterial and "not actionable under the federal securities laws."  *Krim v. BancTexas Grp. Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993); *Raab v. Gen Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993) ("[P]redictions … about future growth are hardly material.").

Finally, Plaintiffs cannot prove that AMR, Riverstone, Hackett, Gutermuth, Tepper, or Walters made these projections "with actual knowledge … that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1)(B)(i).  To the contrary, this Court has already determined that Plaintiffs "cite to no record evidence to support their contentions," that

"the company knew that its drilling program would cause a financial disaster when it filed its March 29, 2018 Form 10-K." *See* Court's Mem. Op. and Order (ECF No. 778, "SJ Ruling") at 25-26.   Thus, Plaintiffs will be unable to show any evidence that these Defendants knew these projections were false two months earlier in the January 2018 Proxy.   Indeed, each of these Defendants testified that they earnestly believed the projections could be achieved and did not have "actual knowledge" that they were false or misleading.[10]   Further, every relevant witness testified that they did not tell any of these Defendants that the projections were false or misleading.[11]   Plaintiffs have no evidence to refute this testimony.   Plaintiffs' claims will fail as to these statements, particularly given that "knowing falsity" is a much "stricter" requirement than scienter.   *Carlton v. Cannon*, 184 F. Supp. 3d 428, 493 (S.D. Tex. 2016).

**Opinion Statements.**   Plaintiffs will not prove that two opinion statements in the Proxy were false and misleading, as the record evidence demonstrates that AMR, Riverstone, Hackett, Gutermuth, Tepper, and Walters sincerely believed both statements were true.   *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575

---

[10] *See* Ex. 213 (Hackett's Am. Interrog. Resps.) at 6-8, 12-13, 15; Ex. 217 (Gutermuth's Am. Interrog. Resps.) at 3, 5-6, 10-13; Ex. 214 (Tepper's Am. Interrog. Resps.) at 5-6, 10-13; Ex. 212 (Walters' Am. Interrog. Resps.) at 3, 5, 9-13; Ex. 222 (Riverstone Am. Interrog. Resps.) at 2-10.

[11] Ex. 163 (Dimitrievich Dep.) at 178:7-179:4, 179:10-180:2; Ex. 183 (McMullen Dep.) at 169:15-170:15; Ex. 167 (Turner Dep.) at 249:22-250:16 (ECF 686); Ex. 252 (Chappelle Decl.); Ex. 251 (Ellis Decl.); Ex. 221 (Pltfs' Obj. and Resps. to Defs. First Set of RFAs) at RFA No. 55-56; Ex. 182 (Christopher Dep.) at 263:18-264:20

U.S. 175, 183, 189 (2015); *Golub v. Gigamon Inc.*, 994 F.3d 1102, 1106 (9th Cir. 2021) (applying *Omnicare* to Section 14(a) claim).

The first opinion statement reads: "Kingfisher had developed a *strong*, local midstream system…Kingfisher was *well-positioned* to benefit from increasing upstream development activity…there was *significant upside* in completion of the Kingfisher system…"  Ex. 65 (Proxy) at 162 ("KFM Opinion Statement").  Plaintiffs cannot prove their claim because there is no evidence to refute these Defendants' testimony that they believed that Kingfisher would be successful, following the extensive due diligence of AMH and KFM.[12]  And this Court already found that the claims regarding the midstream risk factors in the March 29, 2018 Form 10-K were not viable because there was no "evidence showing that Alta Mesa understood the near certainty of any such risk at the time that it disclosed the midstream risk factors."  *See* SJ Ruling at 25.  So, too, with statements made prior in January 2018, there is simply no evidence that AMR, Riverstone, Hackett, Gutermuth, Tepper, or Walters believed KFM would be anything but successful.[13]

The other opinion states: AMH's "policies and practices regarding *internal controls over financial recording of reserves* … present values in compliance with rules, regulations and guidance provided by the SEC, as well as … in accordance with the 2017 Petroleum Resources Management System." (emphasis added).  Again, there is no evidence AMR,

---

[12] Ex. 213 (Hackett's Am. Interrog. Resps.) at 2, 6-17; Ex. 217 (Gutermuth's Am. Interrog. Resps.) at 2-15; Ex. 214 (Tepper's Am. Interrog. Resps.) at 2-15; Ex. 212 (Walters' Am. Interrog. Resps.) at 2-15; Ex. 222 (Riverstone Am. Interrog. Resps.) at 2, 6.
[13] *Id.*

Riverstone, Hackett, Gutermuth, Tepper, or Walters did not believe the statement was true. To the contrary, they testified that they relied on the work performed by AMH and the independent experts in this area (*i.e.*, Ryder Scott, TPH, and others) and genuinely believed that AMH's oil and gas reserves were fairly and accurately presented.[14]   Specifically, these Defendants knew that AMH's independent reserve auditor Ryder Scott had reviewed the reserve process and reported the following conclusion to AMH: "Based on our review, including the data, technical processes and interpretations presented by AMH, it is our opinion that the overall procedures and methodologies utilized by AMH in preparing their estimates of the proved reserves as of December 31, 2017 comply with the current SEC regulations…."[15]   As this Court already decided, Plaintiffs have presented no evidence demonstrating that AMR, Riverstone, Hackett, Gutermuth, Tepper, or Walters "knew that [AMR's] drilling program" and the assumptions used to calculate AMH's reserves, "would cause a financial disaster" in March 2018 let alone in January 2018 when the Proxy was filed.  *See* SJ Ruling at 25.

### B.   AMR, Riverstone, Hackett, Gutermuth, Tepper, and Walters Did Not Act Negligently

Plaintiffs' theory of negligence is brand new for trial and perhaps the most troubling of all their claims.  Despite this Court making clear at the outset that Section 14(a) requires Plaintiffs to prove negligence, (ECF No. 160 at 22), Plaintiffs have not offered, and

---

[14] Ex. 213 (Hackett's Am. Interrog. Resps.) at 2, 16-17; Ex. 217 (Gutermuth's Am. Interrog. Resps.) at 2, 14-15; Ex. 214 (Tepper's Am. Interrog. Resps.) at 2, 14-15; Ex. 222 (Riverstone Am. Interrog. Resps.) at 2-6.

[15] Ex. 38 (September 17, 2017 Ryder Scott Audit).

therefore will not be able to present at trial, any evidence of the applicable standard of care for preparing and soliciting a proxy. *See, e.g.*, *SEC v. Shanahan*, 646 F.3d 536, 547 (8th Cir. 2011) ("[A]bsent probative evidence regarding [defendant's] duties as outside director and member of the Compensation Committee, the jury could only speculate as to whether he failed to exercise reasonable care in overseeing ESSI's proxy communications with shareholders"); *see also SEC v. Ginder*, 752 F.3d 569, 576 (2d Cir. 2014) (same). That failure is dispositive.

The only evidence about the applicable standard of care comes from Defendants' expert, Professor Whitehead, who describes in detail the custom and practice of preparing a proxy, including the due diligence regarding the underlying transaction, and AMR, Riverstone, Hackett, Gutermuth, Tepper, and Walters's compliance with custom and practice.[16]  Ordinarily, compliance with custom and practice "is not in itself due care … but it is evidence of due care." *Baker v. S/S Cristobal*, 488 F.2d 331 (5th Cir. 1974) (citation omitted).  In this case, however, there is no other evidence for the jury to consider, as Plaintiffs offer none, so these Defendants' compliance with the custom and practice described by Professor Whitehead necessarily proves their due care. *Karp*, 535 F. Supp. 3d at 474.

Realizing this failure, Plaintiffs pivoted at summary judgment and argued that they will prove these Defendants ***actually knew*** the statements in the Proxy were false and misleading.   ECF No. 571.   But Plaintiffs cannot prove actual knowledge (or even

---

[16] Ex. 226B (Whitehead Rpt.) ¶¶ 54-71, 191-94.

negligence had they any evidence to offer on the standard of care). Every AMH and KFM witness who has had contact with these Defendants testified under oath that they believed the projections were reasonable and that they never told AMR, Riverstone, Hackett, Gutermuth, Tepper, or Walters otherwise.[17] It is thus no surprise that each of these Defendants testified that based on diligence performed and their personal review, they believed the challenged statements in the Proxy were neither false nor misleading; Plaintiffs have cited no evidence to the contrary.[18] Moreover, it is undisputed that (1) AMH and KFM were contractually obligated to inform AMR, Riverstone, Hackett, Gutermuth, Tepper, and Walters if any of the statements in the Proxy about AMH and KFM were or became false or misleading (including the Projections), (2) these Defendants repeatedly asked AMH and KFM to confirm that they remained on track to meet their projections, and (3) AMH and KFM always responded that they were.[19]

In addition, the extensive and unrefuted evidence demonstrates that these Defendants reviewed and/or relied upon the considerable scientific and technical analysis performed by numerous third-party experts and carefully evaluated whether the Business

[17] Ex. 163 (Dimitrievich Dep.) at 178:7-179:4, 179:10-180:2; Ex. 183 (McMullen Dep.) at 169:15-170:15; Ex. 167 (Turner Dep.) at 249:22-250:16 (ECF 686); Ex. 252 (Chappelle Decl.); Ex. 251 (Ellis Decl.); Ex. 221 (Pltfs' Resps. and Objs. to RFAs) at RFA Nos. 55-56; Ex. 182 (Christopher Dep.) at 263:18-264:20.

[18] Ex. 213 (Hackett's Am. Interrog. Resps.) at 2, 6-17; Ex. 217 (Gutermuth's Am. Interrog. Resps.) at 2-15; Ex. 214 (Tepper's Am. Interrog. Resps.) at 2-15; Ex. 212 (Walters' Am. Interrog. Resps.) at 2-15.

[19] Ex. 31 (AMH Contribution Agreement) at §§ 4.27, 6.9(e), 6.13; Ex. 30 (KFM Contribution Agreement) at §§ 4.27, 6.12(e), 6.17; *see, e.g.*, Ex. 52 (Nov. 10, 2017 Email from K. Wang to D. Karian); Ex. 82 (Mar. 27, 2018 Email from J. Hackett to O. Wassenaar); Ex. 221 (Pltfs' Resps. and Objs. to RFAs) at RFA Nos. 61-62, 64.

Combination was in stockholders' best interests.[20]   In turn, the SRII board received multiple detailed reports from the Riverstone diligence team about this analysis as well as from TPH, who validated the assumptions underlying AMH's projections and the enterprise valuation.[21]   As for the Proxy itself, the unrefuted evidence demonstrates that the Proxy was the result of a months'-long, iterative and thorough drafting process involving SRII, AMH, and KFM, as well as their respective attorneys and independent auditors, and the Proxy accurately reflected the information resulting from the extensive due diligence.[22]

Plaintiffs' inability to present evidence that the AMR, Riverstone, Hackett, Gutermuth, Tepper, or Walters acted negligently (let alone with actual knowledge as Plaintiffs argued at summary judgment) entitles these Defendants to a verdict in their favor. Perhaps yet again, recognizing the massive hole in their case, Plaintiffs now, for trial, argue for the first time that Section 14(a) is a strict liability offense, rather than requiring evidence of negligence, citing a few out-of-context statements from a handful of decisions.  JPTO at 78-79.  When read in context, it is clear that none of these courts interpreted Section 14(a) as a strict liability statute.  Instead, under the Exchange Act, negligence is "the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances." *Karp*, 535 F. Supp. 3d at 473 (quoting *SEC v. Cole*, No. 12 Civ. 8167 (RJS), 2015 WL 5737275, at *6 (S.D.N.Y. Sept. 19, 2015)).

---

[20] Ex. 65 (Proxy) at 160-71, 195; Ex. 103 (Apr. 21, 2018 SRII Advisors Presentation).

[21] Ex. 3 (Apr. 25, 2017 TPH Initial Valuation Review Materials) at 18.

[22] Ex. 226B (Whitehead Rpt.) ¶¶ 4, 17, 80-148, 196-208.

## C.      Plaintiffs Cannot Prove Loss Causation or Damages

Nor can Plaintiffs prove (as they must) loss causation: "the causal connection"
between any alleged misrepresentation in the Proxy and any alleged corrective disclosure.
*Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  To prove this, Plaintiffs must
provide expert evidence demonstrating a causal connection between each misstatement and
each corrective disclosure.  *See, e.g.*, *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 260-
62 (5th Cir. 2009) (disclosures unrelated to the subject of misstatements do not establish
loss causation); *Fener v. Operating Eng'rs Const. Indus. & Misc. Pension Fund (Local
66)*, 579 F.3d 401, 409 (5th Cir. 2009) ("[T]he testimony of an expert—along with some
kind of analytical research or event study—is required to show loss causation.").  But as
explained in more detail in Defendants' Daubert motion (ECF No. 511) that Defendants
will renew at trial, Plaintiffs' damages expert, Feinstein, has not done the necessary work
to prove that causal connection.

This problem is particularly pronounced when considering Feinstein's "benefit of
the bargain" Section 14(a) damages theory.  He does not *attempt* to show proximate
causation.  Feinstein instead treats the entirety of his calculated "loss in value" as
recoverable damages without connecting that loss to any corrective disclosure (much less
to any specific challenged statements in the Proxy).  In other words, he does exactly what
the Supreme Court held was impermissible by allowing Plaintiffs to recover from
economic losses unrelated to the alleged misrepresentations in the Proxy.  *See Dura*, 544
U.S. at 344-46 (cautioning the Exchange Act does not "provide investors with broad
insurance against market losses").

14

These are just some of the problems with Plaintiffs' damages theories about which Defendants will elicit expert testimony from Professor Rene Stulz at trial.

### D.     Riverstone Did Not Solicit the Proxy.

Plaintiffs' Section 14(a) claim suffers from an additional defect as to Riverstone. Section 14(a) reaches only those persons who (1) solicit proxies or (2) permit the use of their names to solicit proxies.  15 U.S.C. § 78n(a)(1).  Riverstone Holdings LLC—the only Riverstone-affiliated entity that Plaintiffs chose to sue—did neither.  The Proxy itself states that SRII and its board of directors solicited the proxies. Ex. 65 (Proxy) at 4, 8.  And under the established case law, the name "Riverstone Holdings LLC"—which appears in just three footnotes in the entire 770-page Proxy[23]—was not "used to solicit" proxies.  *See, e.g.*, *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 68 (D.C. Cir. 1980) ("[T]he simple appearance of one's name in a proxy statement does not trigger liability or any misstatement appearing therein.").  Nor can Riverstone Holdings be liable when use of its name was completely irrelevant to the issues for which the stockholders' proxies were solicited.  *See Yamamoto v. Omiya*, 564 F.2d 1319, 1323 (9th Cir. 1977) (holding that for a third-party non-solicitor to be liable under Section 14(a) there must be "a substantial connection between the use of the person's name and the solicitation effort").  Plaintiffs will not be able to prove that Riverstone Holdings LLC is a proper defendant under their 14(a) claims in the first place.

---

[23] Ex. 65 (Proxy) at 318-19 nn.2, 8, 9.

## II.     Plaintiffs Cannot Prove Section 10(b) Claims

After this Court's SJ Ruling, Plaintiffs have remaining Section 10(b) claims against AMR, its former CEO Harlan Chappelle, and James T. Hackett.  Plaintiffs challenge over 30 statements (the "Challenged Statements") from August 16, 2017 to May 17 2019 (the "Class Period"), and Section 10(b) requires Plaintiffs to prove *for each Challenged Statement*, *that each Defendant*, (1) made the material misstatement or omission (2) with scienter (3) on which the Plaintiffs relied (4) that proximately caused Plaintiffs' injury.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005).  AMR, Chappelle, and Hackett are entitled to a verdict in their favor, as Plaintiffs will be unable to present evidence to prove their claims as to any of the elements.

### A.     Plaintiffs Cannot Overcome the Purchaser-Seller Rule.

To start, Plaintiffs' claims as to statements made *prior* to the Business Combination fail under the purchaser-seller rule.  As the parties have briefed in significant detail in their pending motions on this issue (ECF Nos. 782, 783, and 785), "[t]he purchaser-seller rule requires plaintiffs to have bought or sold the security about which a misstatement was made" in order to have standing to sue under Section 10(b).  *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022).  Courts have consistently held that statements about the target company cannot be challenged by persons who purchase stock in the acquiring company.  *Id.* at 86-88.  Thus, these Defendants are entitled to a verdict in their favor on all statements arising out of the pre-Business Combination.  Appendix A at Statement Nos. 3, 6, 9 (ECF No. 529-1).

### B.     The Challenged Statements Are Not Materially False or Misleading

Plaintiffs will not meet their burden to prove that the Challenged Statements are materially false or misleading.

**Projection Statements.**  Many of the statements Plaintiffs challenge are projections that are protected by the PSLRA Safe Harbor because they are (1) forward-looking statements accompanied by meaningful cautionary language, (2) are immaterial, and (3) are made without actual knowledge that they were false or misleading.  *See supra* at Section I.A. Projections; 15 U.S.C. § 78u-5(c)(1)(A)-(B).  While only one of the Safe Harbor inlets must be met for protection under the PSLRA, these projections meet all three for the same reasons described *supra* in Section 14(a).

**Opinions.**   Plaintiffs also challenge certain statements of opinion as false and misleading when in fact they were sincerely held beliefs.  *See, e.g.*, "We see this as a tremendous way to continue our evolution as a low-cost, high-value producer in the STACK."  Ex. 29 (Aug. 16, 2017 Announcement Press Release) at 2.  Take, for example, Chappelle's internal controls statements such as: "Other than changes related to the succession (i.e., the acquisition of Alta Mesa) and the acquisition of Kingfisher, ***there has been no change in our internal control over financial reporting*** during the three months ended June 30, 2018 ***that has materially affected, or is reasonably likely to materially affect***, our internal control over financial reporting."  Ex. 24 (August 15, 2018 Form 10-Q) at 67 (emphases added).  These statements are pure opinion which Chappelle had no reason to believe were not true.  Chappelle's sworn interrogatory responses explain the process he undertook and information he relied on in making these statements about AMR's internal

17

controls.  *See* Ex. 218 at 7-8, 11-13.  Chappelle is not an accountant and instead reasonably relied on AMR personnel and experienced third parties like the Company's internal controls consultant Weaver and independent auditor KPMG to ensure the statements' accuracy.  There is no evidence that anyone, including from Weaver and KPMG, ever suggested to him before he made these statements through Q3 2018 that AMR's internal controls had material weaknesses.  In fact, KPMG, reviewed AMR's disclosures and was required to tell AMR if it had identified a material weakness (it did not and had not).  Plaintiffs will be unable to succeed on the merits of these opinion-based claims as the record evidence demonstrates that AMR, Chappelle, and Hackett sincerely believed the statements were true.  *See Omnicare,* 575 U.S. at 183, 189.

**Immaterial Puffery.**  Plaintiffs allege other statements are false and misleading that constitute corporate puffery that could not have misled anyone.  *See, e.g.*, Business Combination is "a tremendous way to continue … AMH's "evolution" (Ex. 29) (Aug. 16, 2017 Announcement Press Release); Kingfisher was "rapidly expanding" and "well positioned" (Ex. 32) (Aug. 17, 2017 Invs. Presentation); "our vision for growth remains" (Ex. 100) (Q4 2017 AMR Earnings Call).  "Vague, optimistic statements" and statements "that amount to little more than corporate 'cheerleading' are puffery" and "are not actionable under federal securities law because no reasonable investor would consider such vague statements material and because investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts."  *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 381 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012).

18

**No Fraud by Hindsight**.  Plaintiffs' entire case hinges on the fact that the oil that AMR projected it could recover from the ground did not turn out as projected—*i.e.*, the statements ended up being incorrect in retrospect.  But securities claims can be premised only on statements that were false at the time they were made, as "the securities laws do not entitle plaintiffs to bring claims based on fraud by hindsight." *Coates v. Heartland Wireless Commc'ns, Inc.*, 100 F. Supp. 2d 417, 429 (N.D. Tex. 2000); *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 868 (5th Cir. 2003) (affirming dismissal of securities fraud class action where plaintiffs relied on hindsight assessments).

### C.      Plaintiffs Cannot Prove Scienter

Plaintiffs have adduced no evidence and, thus, cannot prove that any of AMR, Chappelle, and Hackett made any of the Challenged Statements with scienter—*i.e.*, an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)).  To the contrary, this Court has already determined that Plaintiffs "cite to no record evidence to support their contentions," that "the company knew that its drilling program would cause a financial disaster when it filed its March 29, 2018 Form 10-K." *See* SJ Ruling at 25-26.  Thus, Plaintiffs will be unable to show any evidence that AMR, Hackett, or Chappelle knew any of the Challenged Statements were false prior to this date, and the evidence shows that they did not act with scienter after as well.

19

Indeed, all evidence demonstrates that Chappelle and Hackett were firm believers in the potential for AMR's acreage and did not have any reason to believe until much later in 2018, with the benefit of significantly more well data from the 2018 drilling operations, that the volume of anticipated oil would not ultimately be found, at which time they acted quickly to modify their operations and inform the market.[24]  This is consistent with the way other STACK operators acted and management's testimony that they all believed that the projections statements were reasonable and obtainable.[25]

Further, it is undisputed that Hackett and Chappelle (along with every other acting AMR Director) never sold any of their AMR stock, demonstrating their honest belief in their statements.  *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002) (no motive when defendants did not profit from inflated stock value or offerings); *see also Owens v. Jastrow*, 789 F.3d 529, 545 n.18 (5th Cir. 2015) (executives holding through price drop is "evidence of lack of scienter"); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 867 (5th Cir. 2003) (no evidence of stock sales calls "into question the alleged motive to artificially inflate the stock price").[26]  Lastly, the independent third parties who evaluated AMR's actions all unanimously concluded that there was no fraud.  Put simply, Plaintiffs cannot prove Hackett, Chappelle or AMR had actual knowledge or were severely reckless when making the Challenged Statements.

---

[24] Ex. 160 (Hackett Test. (Bankr.) (Dec. 12, 2019)) at 134:7-135:5.

[25] *See, e.g.*, Ex. 174 (Chappelle Dep.) at 26:11-20, 42:16-43:14, 165:13-166:14 (ECF 686); Ex. 137 (Dec. 2018 Reserve Report Pattern Analysis and Assessment) at 7; Ex. 167 (Turner Dep.) 40:1-18; 252:21-253:6 (ECF 686); Ex. 176 (Hackett Dep.) at 265:19-23.

[26] *See e.g.*, Ex. 176 (Hackett Dep.) at 196:25-197:11.

### D.     Plaintiffs Cannot Invoke the Fraud-On-The-Market Presumption Of Reliance, And Defendants Will Rebut The Presumption For Plaintiffs

Plaintiffs have the burden of proof to invoke the fraud-on-the-market presumption of reliance.  As explained in Defendants' Opposition to Plaintiffs' Motion seeking an order deeming their burden satisfied (Dkt. 838), the jury will hear evidence from Plaintiffs' own experts (in an attempt to inflate the potential damages) that AMR's stock took multiple days to reflect new information—which is inconsistent with an efficient market.  Moreover, many of the statements were not material, including the projections that were not worded as guarantees.  *Krim*, 989 F.2d at 1446 ("[P]rojections of future performance not worded as guarantees are generally not actionable under the federal securities laws.")

Moreover, Defendants will be able to rebut the presumption for the Plaintiffs by introducing evidence that Plaintiffs did not actually rely on the challenged statements or the market price of AMR when making their investment decisions.  *See Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys*., 594 U.S. 113, 118 (2021).

### E.     Plaintiffs Cannot Prove Loss Causation or Damages

As discussed, *Dura* requires Plaintiffs to demonstrate a causal connection between each misstatement and a corrective disclosure.  But Plaintiffs' damages expert admitted that he did not do the analysis required to establish such a causal connection.  Rather, he adopted Plaintiffs' "holistic" theory that *every single* corrective disclosure supposedly revealed the truth concealed by *every single* alleged misstatement.  *See, e.g.*, Ex. 198 (Feinstein Dep.) at 89:7-14 (ECF 686).

The Supreme Court's recent guidance shines a light on Plaintiffs' fatal error. Plaintiffs' theory is that Defendants' failure to disclose the supposed "truth" about AMH and KFM *maintained* inflation in AMR's stock price during the entirety of the Class Period. Ex. 9 (Feinstein Rep.) (ECF 511-1, Ex. 1).  Plaintiffs purport to measure this inflation by observing the market-adjusted declines in AMR's stock price following five supposed "Corrective Disclosures" that they claim revealed undisclosed truth to the market.  *Id.* ¶¶ 24-27.  Addressing that theory, the Supreme Court explained that a supposed causal connection "break[s] down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure," such as "when the earlier misrepresentation is generic (*e.g.*, 'we have faith in our business model') and the later corrective disclosure is specific (*e.g.*, 'our fourth quarter earnings did not meet expectations')."  *Goldman Sachs*, 594 U.S. at 123.

For the vast majority of the Challenged Statements here, there is no link between the subject matter of the statement and any corrective disclosure.  As just one example, Hackett explained that SRII was formed "with the objective of acquiring low-breakeven, stacked pay, oil-weighted assets, preferably with an integrated midstream platform."  Ex. 29 (Aug. 16, 2017 Announcement Press Release) at 1.  *None* of the five Corrective Disclosures even touch upon the issue of why SRII was created, or, after it came into its existence, what its objective was.

In addition, Feinstein's "holistic" theory ignores that Plaintiffs must link their claimed damages—*i.e.*, a stock drop after a Corrective Disclosure—to each particular Challenged Statement.  *See Oscar Priv. Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d

261, 266 (5th Cir. 2007) (holding plaintiffs must prove "it is more probable than not that it was *this* negative statement, and not other unrelated negative statements, that caused a significant amount of the decline" (emphasis added)), *abrogated on other grounds by Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011); Defs.' Mot. to Exclude Opinions of Feinstein and Nye Under Rule 702 (ECF No. 511).   Feinstein offers no evidence of how much AMR's stock price allegedly reacted to the different pieces of information in each Corrective Disclosure.   *See Oscar Priv. Equity Invs.*, 487 F.3d at 271; ECF No. 511.   So the jury is left without any guidance from Feinstein on how much in damages to assign to any one statement should they find for Plaintiffs on some, but not all, of the misstatements.

Feinstein's "holistic" theory also leads to nonsensical results.   He opines that all misstatements and omissions were incrementally corrected by all corrective disclosures. That means that alleged misstatements made in November 2018 were corrected by disclosures in March 2018, before the alleged misstatements were even made.

Relying solely on Feinstein's novel "holistic" theory that every corrective disclosure provided the truth about every challenged statement, Plaintiffs cannot prove the necessary causal connection between each misstatement and a corrective disclosure and cannot prove any damages.

## III.   The Section 20(a) Control-Person Claims Fail

Plaintiffs will not prove their Section 20(a) control claims because they cannot prove that any Defendant controlled AMR, Riverstone, Hackett, Gutermuth, Tepper, or Walters with regard to the Proxy (for the 14(a)-related claims) or AMR, Chappelle, or

Hackett with regard to the other Challenged Statements (for the 10(b)-related claims). Even so, the evidence is overwhelming that Defendants acted in good faith.

## A.    Plaintiffs Cannot Prove Control

Plaintiffs bear the burden to prove control but will not be able to prove that Defendants "had an ability to control the specific transaction or activity upon which the primary violation is based."  SJ Ruling at 8.  This Court has already held that AMR Board members Don Dimitrievich, David Leuschen, Pierre Lapeyre, Donald Sinclair, and William McMullen cannot be held liable under Section 20(a) of the Exchange Act, because "[p]laintiffs provide little to support their Section 20(a) claims beyond the fact that [Defendants were] one of 11 Alta Mesa board members who signed Alta Mesa's March 29, 2018 Form 10-K."  *See* SJ Ruling at 40.  The same logic applies to the other director defendants Ellis, Hackett, Gutermuth, Walters, and Tepper.

Similarly, this Court held that HPS, BCE, and ARM could not be held liable for post de-SPAC statements under Section 20(a) because they were "minority owners of Alta Mesa" and appointed only a minority of directors to the Alta Mesa board.  *See* SJ Ruling at 50-51.  The same reasoning applies to Riverstone, who owned approximately 22% of the voting interest in AMR—less than HPS—and appointed a minority of directors to AMR's eleven-member board.

And Plaintiffs have zero evidence that Mike Ellis (former Chief Operating Officer) and Ron Smith (former Chief Accounting Officer) had "final authority" over AMR's public statements, let alone Chappelle's and Hackett's statements.  *See* SJ Ruling at 45; *see also id.* at 37 ("[B]ecause there is no allegation that [defendant] had substantial control over the

dissemination of any false information to the public, which is the basis of Plaintiff's § 10(b) claims—he cannot be held liable as a control person simply due to his involvement in the underlying activities about which the Individual Defendants are alleged to have misled investors" (quoting *In re ArthroCare Corp. Secs. Litig.*, 726 F. Supp. 2d 696, 731–32 (W.D. Tex. 2010)).

## B.   Defendants Acted in Good Faith

Plaintiffs' Section 20(a) claims fail for another reason:  each of the alleged control Defendants "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action,"  a full defense to any control claim.  15 U.S.C. § 78t(a).  A Section 20(a) defendant acts in good faith unless he commits "an extreme departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious" that the defendant "was almost certainly aware" of it.  *G. A. Thompson & Co. v. Partridge*, 636 F.2d 945, 962 & n.33 (5th Cir. 1981) (quotation marks, citation, and alteration omitted).

Defendants will present to the jury evidence that none of their actions constituted such an extreme departure, or indeed any departure at all from what is typical of management and directors of a public company.  The Defendants properly relied on third parties, reacted to information as it emerged, and changed course as required.

## CONCLUSION

Plaintiffs cannot succeed on any of their claims.  As such, Defendants are entitled to a verdict in their favor on all counts.

Dated: October 21, 2024

Respectfully submitted,

/s/  *J. Christian Word*

J. Christian Word
Attorney-in-Charge for Defendants
D.C. Bar No. 461346
S.D. Tex. Bar No. 3398485
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington DC 20004
(202) 637-2200
Christian.Word@lw.com

Of Counsel:
Heather A. Waller
IL Bar No. 6302537
S.D. Tex. Bar No. 2886108
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Heather.Waller@lw.com

Laura E. Bladow (*pro hac vice*)
D.C. Bar No. 1740343
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 673-2201
Laura.Bladow@lw.com

*Counsel for Defendants Alta Mesa
Resources, Inc., f/k/a Silver Run
Acquisition Corporation II; Riverstone
Holdings, LLC, Harlan H. Chappelle,
Michael E. Ellis, William D. Gutermuth,
James T. Hackett, Ronald J. Smith,
Jeffrey H. Tepper, and Diana J. Walters*

26

Walter M. Berger
TX Bar No. 00798063
Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel.: (213) 615-1700
Fax: (213) 615-1750
JSchreiber@winston.com

*Co-Counsel for Harlan H. Chappelle,*
*Michael E. Ellis*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was filed with the

Clerk of Court using the CM/ECF system, which will send electronic notification of such

filing to all counsel of record.

/s/ *J. Christian Word*

J. Christian Word
