# EXHIBIT H

## DEFENDANTS' PROPOSED VERDICT FORM[1]

---

[1] Explanatory comments are included in footnotes, which will be removed from the final Verdict Form provided to the jury.

**Section 10(b) and Related 20(a) Claim Form**

**Introductory Section 10(b) Questions**
*(answer for all 10(b) statements)*

## ALLEGED MATERIAL MISREPRESENTATIONS

**A. For each challenged statement listed in the chart below, did the Class Plaintiffs prove that the statement was false or misleading when made?**

*You may also refer to the attached chart of alleged statements which contains the date, source, and Defendants alleged to have liability for each statement.*

*Where emphasis is added, the emphasized portion of the statement is the only portion that Class Plaintiffs allege to be false or misleading.  Additionally, where Class Plaintiffs challenge particular statements or depictions within a larger slides or charts, the challenged portion is identified with a red box.*

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| *1.* | "We formed Silver Run II with the objective of acquiring-low breakeven, stacked-pay, oil-weighted assets, preferably with an integrated midstream platform." | | |
| *2.* | "We see this as a tremendous way to continue our evolution as a low-cost, high-value producer in the STACK." | | |
| *3.* | "With approximately 120,000 contiguous net acres and **about 4,200 gross identified drilling locations,** [AMH] is among the largest and most active operators in the STACK. Since 2012, Alta Mesa [AMH] has drilled to total-depth 205 STACK horizontal wells, in order to further delineate and de-risk its approximate 300 square mile position in the up-dip oil window of the STACK. To date, Alta Mesa [AMH] has completed 173 of these wells, with 167 on production. Based upon production through the second quarter of 2017, Alta Mesa [AMH] **expects EURs at year end to exceed 650 MBOE per well** or approximately 140 BOE per foot of lateral." [emphasis added] | | |
| *4.* | "First, we'll talk about the introduction.  When we went out to look for targets for [Alta Mesa], we had laid out investment criteria that are shown on slide 5.  And both individually as an Upstream and Midstream company and collectively as an integrated platform, this transaction satisfies those criteria." | | |

| No. | CHALLENGED STATEMENT | False or Misleading? | |
| --- | --- | --- | --- |
| | | YES | NO |
| 5. |  | | |
| 6. |  | | |
| 7. | "We have over 200 wells that we've drilled here and we've demonstrated the value, and we have confidence in the upside. As an illustration of that, at the end of the second quarter [of 2017], we drilled on the order of 200 wells; of those, over 160 were on production. And of that number, about 114 had sufficient production history to give us confidence that at the end of this year, our year-end reserves will reflect better than 650,000 BOE." | | |

2

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| *8.* |  | | |
| *9.* |  | | |
| *10.* |  | | |

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| |  | | |
| *11.* | "2017 was a year of significant progress for our company marked by several important milestones that we believe has set us up for success in 2018 and beyond. We achieved year-over-year growth in our production, reserves and EBITDAX; **we have de-risked our acreage with over 250 operated horizontal wells and a comprehensive scientific and engineering effort to begin systematic development with multi-well patterns**. Creating Alta Mesa Resources with the upstream assets of Alta Mesa Holdings and midstream assets of Kingfisher, we believe we have a strong balance sheet that will allow us to execute on our vision for years to come." [emphasis added] | | |
| *12.* | "In [AMH's] STACK play, the company has assembled a highly contiguous leasehold position of over 130,000 net acres. In the fourth quarter of 2017, AMHLP completed 36 horizontal wells in the Osage and Meramec formations. AMHLP had 43 horizontal wells in progress as of the end of the fourth quarter, 22 of which were on production subsequent to the end of the quarter. AMHLP currently has seven rigs operating in the STACK play, with a contracted eighth rig arriving in April and plans to maintain this level for the balance of 2018. In total, AMHLP plans to drill between 170 and 180 gross wells during the year. **We expect drilling and completion costs on these wells to average $3.8 million and our type curve has been approximately 650 MBOE per well**." [emphasis added] | | |

4

| No. | CHALLENGED STATEMENT | False or Misleading? | |
|---|---|---|---|
| | | YES | NO |
| *13.* |  | | |
| *14.* | "Importantly, we have up to 90 million cubic feet a day available on wet gas offtake agreements in addition to our existing 260 million a day of operating plant capacity. So **despite setbacks in late 2017 and early 2018, with regard to [Kingfisher], our vision for growth remain [sic] strong**.<br><br>. . .<br><br>**We believe our margins are going to continue to expand as we build out critical infrastructure and expand production on existing wells** through artificial lift optimization. And again, the fanatical focus on production operations generally." [emphasis added] | | |
| *15.* | "I'd like to start by reviewing highlights from 2017 and then follow with some key messages of our 2018 program. 2017 and, of course, early 2018 were literally transformational for Alta Mesa as we changed from a private upstream company to a publicly traded fully integrated midstream and upstream company. **During this time [2017 and early 2018]**, we fortified our balance sheet, **further de-risked and delineated our Kingfisher County acreage [in STACK]** and began a larger-scale development of our STACK assets in the normally pressured naturally fractured oil window. We have accelerated infrastructure investments to further reduce both our capital and our operating expenses and support our growth.<br><br>. . . . | | |

5

| | | | False or Misleading? | |
|---|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | | **YES** | **NO** |
| | **We have transitioned from spacing tests to development patterns.** As shown in the slide deck, we now have 4 multiwell patterns with more than 60 days of flowback and are systematically drilling, completing and bringing more multiwell patterns on production." [emphasis added] | | | |
| *16.* | "Now, here's one simple example of a well that we optimized with an ESP, obviously a very good outcome if you're producing on the order of 800 barrels a day** when in fact you are very, very low until you are able to put in the right solution. **But the point is there are opportunities like this.  We've got a lot of effort focused on that**." [emphasis added] | | | |
| *17.* |  | | | |

|  |  | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| *18.* |  | | |
| *19.* | | | |

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| | <br>When Chappelle showed this slide to investors, he stated: "I'd like to refer you to Slide 9 in our presentation for three recent examples of the gains we've seen in that lift optimization." | | |
| *20.* | "We are reaffirming our FY '18 guidance. We have confidence in presenting operating results such as production, revenue, expenses as those numbers will not change." | | |
| *21.* | ***Changes in Internal Control Over Financial Reporting***<br><br>Other than changes related to the succession (i.e., the acquisition of Alta Mesa) and the acquisition of Kingfisher, there has been no change in our internal control over financial reporting during the three months ended March 31, 2018 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting | | |
| *22.* | **CERTIFICATION OF CHIEF EXECUTIVE OFFICER**<br><br>I, Harlan H. Chappelle, certify that:<br><br>1. I have reviewed this Quarterly Report on Form 10-Q of Alta Mesa Resources, Inc.;<br><br>2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period | | |

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| | covered by this report;<br><br>3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of Alta Mesa Resources, Inc. as of, and for, the periods presented in this report;<br><br>4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) for Alta Mesa Resources, Inc. and have:<br><br>a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to Alta Mesa Resources, Inc., including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;<br><br>b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;<br><br>c. Evaluated the effectiveness of Alta Mesa Resources, Inc.'s disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and<br><br>d. Disclosed in this report any change in Alta Mesa Resources, Inc.'s internal control over financial reporting that occurred during Alta Mesa Resources, Inc.'s most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, Alta Mesa Resources, Inc.'s internal control over financial reporting. | | |

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| | 5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to Alta Mesa Resources, Inc.'s auditors and the audit committee of Alta Mesa Resources, Inc.'s board of directors (or persons performing the equivalent functions): <br><br> a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect Alta Mesa Resources, Inc.'s ability to record, process, summarize and report financial information; and <br><br> b. Any fraud, whether or not material, that involves management or other employees who have a significant role in Alta Mesa Resources, Inc.'s internal control over financial reporting. | | |
| *23.* |  | | |

| | | False or Misleading? | |
|---|---|---|---|
| No. | CHALLENGED STATEMENT | YES | NO |
| 24. |  | | |
| 25. | "Other than changes related to the succession (i.e., the acquisition of Alta Mesa) and the acquisition of Kingfisher, **there has been no change in our internal control over financial reporting** during the three months ended June 30, 2018 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting." [emphasis added] | | |
| 26. | **CERTIFICATION OF CHIEF EXECUTIVE OFFICER** I, Harlan H. Chappelle, certify that: 1. I have reviewed this Quarterly Report on Form 10-Q of Alta Mesa Resources, Inc.; 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report; 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of Alta Mesa Resources, Inc. as of, and for, the periods presented in this report; | | |

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| | 4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) for Alta Mesa Resources, Inc. and have:<br><br>a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to Alta Mesa Resources, Inc., including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;<br><br>b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;<br><br>c. Evaluated the effectiveness of Alta Mesa Resources, Inc.'s disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and<br><br>d. Disclosed in this report any change in Alta Mesa Resources, Inc.'s internal control over financial reporting that occurred during Alta Mesa Resources, Inc.'s most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, Alta Mesa Resources, Inc.'s internal control over financial reporting.<br><br>5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to Alta Mesa Resources, Inc.'s auditors and the audit committee of Alta Mesa Resources, Inc.'s board of directors (or persons performing the equivalent functions):<br><br>a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect Alta Mesa Resources, Inc.'s ability to record, process, summarize and report financial information; and | | |

| No. | CHALLENGED STATEMENT | False or Misleading? | |
|---|---|---|---|
| | | YES | NO |
| | b. Any fraud, whether or not material, that involves management or other employees who have a significant role in Alta Mesa Resources, Inc.'s internal control over financial reporting. | | |
| 27. | "I would like to start off by highlighting our announcement that the Board of Directors has approved a share buyback program. When the business combination of Alta Mesa Holdings, Kingfisher Midstream and Silver Run II was conceived, management and investors saw significant opportunity to capture and create long-term value in the STACK. Our belief in that has strengthened as we have integrated these businesses and continue to grow production and progress our knowledge of this incredible resource. The opportunity to invest in our own high-quality acreage and integrated midstream business at recent trading levels **offers compelling long-term returns to our shareholders**." [emphasis added] | | |
| 28. | "During that 5-year period that preceded our becoming a public company, combining earlier this year with Kingfisher Midstream and Silver Run, we drilled about 250 wells and we went through 4 generations of completions. We also engaged in 7 pattern tests. **That period established the basis for the development drilling with multi-well pads that we're engaged in today.** . . . . Now with regard to our future development, I just showed 5 years of progressive definition and delineation. We've got a large resource. It's in the normally pressured, naturally fractured Black-Oil Window. We've applied engineering and science in a very intensive way to affirm the multi-billion barrel resource that we have. We drilled over 250 wells, defined a mean well result for an original DSU well, in other words, the first well in the pattern being -- a lot of people would use the word the parent well. **During that period of time, we performed 7 pattern tests that gave us insight into the intensive multi-well patterns that we see as being necessary to produce all the economic oil that we have here.** We found that 1,500 feet spacing between wells is a good base case from which to start. We tested the boundaries of those as well, and we had as narrow as 660 feet within a given bench or 330 feet, if you will, as you look at the staggered spacing between multiple benches. That literally would have been – **that would infer 24 wells per section**. | | |

| | | False or Misleading? | |
|---|---|---|---|
| **No.** | **CHALLENGED STATEMENT** | **YES** | **NO** |
| | We're not going with that, **but it does illustrate the potential for down spacing, and in fact, it gave us a lot of confidence because one of our strategic anchors is that we need to limit our downside.** That boundary condition of 660-foot spacing still gave us an economic pattern. So that gave us the confidence to move forward with this base case of 1,500-foot spacing." [emphasis added] | | |
| *29.* |  | | |
| *30.* | "As discussed in this quarterly report, on February 9, 2018, we completed the acquisition of Alta Mesa and Kingfisher. We are currently integrating these acquisitions into our control environment. In executing this integration, we are analyzing, evaluating and, where appropriate, making changes in controls and procedures in a manner commensurate with the size, complexity and scale of operations subsequent to the acquisitions. We expect to complete the Kingfisher integration in fiscal year 2019 and consequently expect to exclude Kingfisher from our assessment of internal control over financial reporting as of December 31, 2018. The evaluation of internal controls over financial reporting for the Company has required and will continue to require significant time and resources from management and other personnel.<br><br>. . . .<br><br>**Other than the changes described above, there have been no changes in our internal control over financial reporting during the three months ended September 30, 2018 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.**" [emphasis added] | | |

14

| No. | CHALLENGED STATEMENT | False or Misleading? | |
| --- | --- | --- | --- |
| | | YES | NO |
| | | | |
| *31.* | **CERTIFICATION OF CHIEF EXECUTIVE OFFICER** | | |
| | I, Harlan H. Chappelle, certify that: | | |
| | 1. I have reviewed this Quarterly Report on Form 10-Q of Alta Mesa Resources, Inc.; | | |
| | 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report; | | |
| | 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of Alta Mesa Resources, Inc. as of, and for, the periods presented in this report; | | |
| | 4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) for Alta Mesa Resources, Inc. and have: | | |
| | a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to Alta Mesa Resources, Inc., including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared; | | |
| | b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; | | |
| | c. Evaluated the effectiveness of Alta Mesa Resources, Inc.'s disclosure controls and procedures and presented in this report our | | |

| No. | CHALLENGED STATEMENT | False or Misleading? | |
|---|---|---|---|
| | | YES | NO |
| | conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and | | |
| | d. Disclosed in this report any change in Alta Mesa Resources, Inc.'s internal control over financial reporting that occurred during Alta Mesa Resources, Inc.'s most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, Alta Mesa Resources, Inc.'s internal control over financial reporting. | | |
| | 5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to Alta Mesa Resources, Inc.'s auditors and the audit committee of Alta Mesa Resources, Inc.'s board of directors (or persons performing the equivalent functions): | | |
| | a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect Alta Mesa Resources, Inc.'s ability to record, process, summarize and report financial information; and | | |
| | b. Any fraud, whether or not material, that involves management or other employees who have a significant role in Alta Mesa Resources, Inc.'s internal control over financial reporting. | | |

**B. For only those challenged statements listed in the chart above that you marked "Yes," did the Class Plaintiffs prove that the statement was <u>material</u>?**

**If "Yes" the statement is material, identify that/those statement(s) below by Statement Number:**

_____

*If you did not list any Challenged Statements in response to Question B, you are done with the Section 10(b) Claim Form and can proceed to the Section 14(a) and Related 20(a) Claim Form.*

*For each Challenged Statement you listed in response to Question B, please complete a packet of Questions 1 through 17, to the extent instructed based on your answers, for each statement. Please be sure to identify on each packet the number of the Challenged Statement being addressed.*

*For any Challenged Statement not listed in response to Question B, you do not need to do anything further for that statement.*

*When you have completed a packet for each statement you answered "Yes" to both Questions A and B, please proceed to the Section 14(a) and Related 20(a) Claim Form.*

17

**Packet of Section 10(b) and Related 20(a) Statement-Specific Questions**
*(answer Questions 1 through 17)*

*You will be provided a packet of Questions 1 through 17 for each statement which you listed in response to Question B.  Please identify the particular statement number from the Chart on pages 1 - 16) that you are addressing in this packet:*[2]

| |
|---|
| **Section 10(b) Statement No. _____** |

---

## MAKER

1.     **Did one of the Section 10(b) Defendants make the statement?  Please check either Yes or No for each Section 10(b) Defendant.**

| SRII / AMR | ___ Yes<br>___ No |
|---|---|
| Harlan Chappelle | ___ Yes<br>___ No |
| Jim Hackett | ___ Yes<br>___ No |

---

[2] Once the form is agreed and approved by Judge Hanks, the parties will prepare packets for each statement that includes the statement on this first page.  The jury can fill out the packet(s) necessary based on their answers to Questions A and B and discard any unnecessary packets after those initial questions.

## FORWARD-LOOKING STATEMENTS

**2.     Was the statement forward looking?**

*Examples of forward-looking statements are (1) statements of the plans and objectives of management for future operations; (2) a statement of future economic performance; and (3) statements containing a projection of revenues, income, earnings per share, capital expenditures, dividends, capital structure, or other financial items.*

__Yes
__ No

*If Yes, answer the next question.  If No, skip to Question 6.*

**3.     Was the statement identified as forward looking and accompanied by meaningful cautionary language?**

*A "meaningful" cautionary statement is one that identifies important factors that could cause actual results to differ materially from those in the forward-looking statement.*

__ Yes
__ No

*If Yes, you have completed the questions regarding this statement.*

*Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

*If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

*If No, answer the next question.*

4.      **Was the statement worded as a guarantee?**

__ Yes
__ No

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

*If Yes, answer the next question.*

5.      **For the Defendant(s) identified in Question 1 who made this statement, did the Class Plaintiffs prove any such Defendant actually knew the forward-looking statement was false or misleading at the time it was made?**

__ Yes
__ No

If Yes, identify the Defendant(s): _____

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

*If Yes to any of the Defendants, answer the next question.*

---

## <u>OPINION STATEMENTS</u>

**6.      Was the statement a statement of fact or a statement of opinion?  Please select only one.**

*A statement of fact expresses certainty about a thing, such as the statement "the coffee is hot."  A statement of opinion is a belief, a view, or a sentiment which the mind forms of persons or things, such as the statement "I think the coffee is hot."  Examples of statements of opinion include financial projections.*

> __Statement of Fact
> __Statement of Opinion

*If you selected Statement of Fact, please go to Question 8.  You do not need to answer Question 7.*

*If you selected Statement of Opinion, please answer the next question.*

**7.      Did the Class Plaintiffs prove any of the following about the opinion statement:**

|   |   | Yes | No |
|---|---|---|---|
| a. | The maker(s) of the statement identified in Question 1 did not, in fact, hold the stated opinion when making it, and the opinion was objectively untrue. *If yes, for which maker(s):* |   |   |
| b. | The opinion statement contained statements of fact that were untrue. |   |   |
| c. | The opinion statement omitted material facts known by the maker(s) in Question 1 at the time it was made regarding the basis for the Defendant's opinion, and the omission of those facts made the opinion misleading. *If yes, for which maker(s):* |   |   |

*If you marked Yes for any of Question 7(a), (b), or (c), please answer the next question.*

*If you marked No for all three of Question 7(a), (b), and (c), you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

21

**SCIENTER FOR NON-FORWARD LOOKING STATEMENTS**

*Answer Question 8 only for statements that you identified as **not** forward-looking in Question 2.*

8.   **For the maker(s) of the statement you identified in Question 1, did any of those Defendants make the statement with scienter, that is, with the intent to deceive, manipulate or defraud?  If Yes, identify below the Defendant(s) that did so by name:**

_____

*If Yes for any Defendant, answer the next question.*

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

---

**<u>RELIANCE</u>**

9.   **Did the Class Plaintiffs prove that an active, open market for Alta Mesa securities existed at the time of the transactions in question?**

__ Yes
__ No

*If Yes, please answer the next question.*

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

10.     **Did the Class Plaintiffs prove that the statement was publicly known?**

    \_\_ Yes
    \_\_ No

*If Yes, please answer the next question.*

*If No, you have completed the questions regarding this statement.*

    *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

    *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

---

## CAUSATION

11.     **When was the statement corrected?  For each disclosure listed below, please select Yes or No for whether the Class Plaintiffs proved the disclosure corrected the statement.**

    **You may select Yes for more than one disclosure only if first disclosure you find to be corrective did not fully correct the statement and a later disclosure provided new information that corrected any uncorrected portion of the statement.**

    If the alleged corrective disclosure was made **before** the challenged statement, you should ignore that disclosure for purposes of this question.

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| Alta Mesa 2017 Form 10-K and press release (issued on March 29, 2018) | • "Kingfisher's 2018 projected Net Income is expected to range between $81.2 million and $96.2 million and projected EBITDA is expected to range between $95 million and $110 million (based on consolidating financial statements), and capital expenditures are expected to range from $175 million to $215 million. EBITDA is a non-GAAP measure and is explained in greater detail under 'Non-GAAP Financial Information and Reconciliation.'"<br>• "For 2018, AMHLP forecasts total STACK production to average 33 to 38 MBOE per day, representing an | \_\_ Yes<br>\_\_ No |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| | estimated year-over-year growth of 70% at the midpoint, compared to 2017 STACK production ." <br>• "AMHLP's full-year 2017 STACK production was approximately 20.6 MBOE per day, a 58% increase over 2016 production of approximately 13.1 MBOE per day." <br>   • "Adjusted EBITDAX [for AMH] from continuing operations for full-year 2017 was $138.7 million compared to $146.3 million for full-year 2016. The change in adjusted EBITDAX between the annual periods is, in part, a result of lower average realized commodity prices, offset in part by increased production and decreased interest expense." | |
| 2018 Second Quarter Form 10-Q and press release (issued on August 14, 2018) | • "Alta Mesa 2018 net production grew by more than 50% from average December daily production to estimated average July production of 31,800 BOE per day . . . Alta Mesa is providing a 2018 exit production guidance of 38,000 to 40,000 BOE per day, and updated annual production guidance of 29,000 to 31,000 BOE per day for full year 2018." <br>• "Total production for the second quarter of 2018 was 2,334 MBOE, an average of 25,600 BOE per day. Production in the second quarter was impacted by offset well shut-ins for fracture stimulation effectiveness." <br>• "Net loss, attributable to Alta Mesa's stockholders, during the second quarter of 2018 was $6.4 million or $0.04 per basic and diluted share. Adjusted earnings before interest, income taxes, depreciation, depletion and amortization and exploration costs and other items ('Adjusted EBITDAX') was $47.4 million for the second quarter of 2018. AMHLP had a net loss during the second quarter 2018 of $22.5 million, and Adjusted EBITDAX of $41.6 million. Kingfisher had a net loss during the second quarter of nearly $3.1 million, and Adjusted EBITDA of $6.1 million." | __ Yes <br> __ No |
| 2018 Third Quarter Form 10-Q and press release (issued on November 13, 2018) | • "Net income, attributable to Alta Mesa Resources' stockholders, during the third quarter of 2018 was $7.1 million or $0.04 per basic and diluted share.  Adjusted earnings before interest, income taxes, depreciation, depletion and amortization and exploration costs and other items ('Adjusted EBITDAX') was $83.8 million for the third quarter of 2018." | __ Yes <br> __ No |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| | • "Kingfisher Midstream issued EBITDA guidance of $14 to $16 million for Q4-2018 and updated full year 2018 EBITDA guidance to $36 to $38 million." | |
| Form 8-K (issued on February 25, 2019) | • "Alta Mesa Resources has determined that it had an ineffective internal control over financial reporting due to an identified material weakness in both the design of its controls and the execution of its control procedures. As a result of this determination, the Company is performing extensive additional analyses and other procedures to ensure that its consolidated financial statements to be included in the Annual Report are prepared in accordance with US GAAP. Accordingly, the Company expects it will need to file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission indicating a delay in the filing of its Annual Report. The extension period provided by Form 12b-25 will give the Company until March 18, 2019 to file its Annual Report. While the Company is targeting that timeframe, there can be no assurance that the Company will complete the preparation and filing of the Annual Report within the extension period."<br><br>• "Alta Mesa Resources expects to record material, non-cash asset impairment charges to both of its upstream and midstream segments in the fourth quarter of 2018. The Company does not expect the impairment charge to have any impact on future operations, its liquidity, cash flows from operating activities, or affect compliance with provisions set forth in its debt instruments. The impairment charge will reduce future depreciation, depletion and amortization expense. The impairment expense is estimated to be approximately $2.0 billion for the upstream segment and approximately $1.1 billion for the midstream segment."<br><br>• "2019 upstream capital program of $190 to $210 million is expected to deliver full year 2019 average production of 29,500 to 31,500 BOE per day (45% oil, 70% liquids)."<br><br>• "Alta Mesa Upstream entered 2019 with six rigs actively working but reduced the active rig count to zero by the end of January." | __ Yes<br>__ No |
| AMH's 10-K and AMR's 8- | • "The SEC is conducting a formal investigation into, among other things, the facts involved in the material | __ Yes |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| K (issued on May 17, 2019) | weakness in our internal controls over financial reporting and the impairment charge disclosed previously and in this annual report." <br> • "If the SEC determines that violations of the federal securities laws have occurred, the agency has a broad range of civil penalties and other remedies available, some of which, if imposed on us, could be material to our business, financial condition or results of operations." <br> • "The Company continues to make progress in finalizing its Form 10-K as well the first quarter 2019 Forms 10-Q for both Alta Mesa Resources and Alta Mesa Upstream but is unable to estimate the date at which these filings will be completed." <br> • "On February 25, 2019, Alta Mesa Upstream provided an initial estimate of 158 MMBoe for December 31, 2018 proved reserves. Based on its April 2019 assessment of its ability to continue as a going concern and the uncertainty of funding the related development costs, Alta Mesa Upstream removed a total of 89 MMBoe of proved undeveloped ('PUD') reserves. As a result, at December 31, 2018, AMH Upstream had 69 MMBoe of proved developed reserves, comprised of 25 MMBbl of oil, 20 MMBbl of natural gas liquids and 144 BCf of natural gas." <br> • "If an agreement is reached with our creditors and we pursue a restructuring, it may be necessary for us to file a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code in order to implement the agreement through the confirmation and consummation of a plan of reorganization approved by the bankruptcy court in the bankruptcy proceedings. We also may conclude that it is necessary to initiate Chapter 11 proceedings to implement a restructuring of our obligations even if we are unable to reach an agreement with our creditors and other relevant parties regarding the terms of such a restructuring. If a plan of reorganization is implemented in a bankruptcy proceeding, it is possible that holders of claims and interests with respect to, or rights to acquire, our equity securities would be entitled to little or no recovery, and those claims and interests may be canceled for little or | __ No |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| | no consideration. If that were to occur, we anticipate that all or substantially all of the value of all investments in our equity securities would be lost and that our equity holders would lose all or substantially all of their investment. It is also possible that our stakeholders, including our secured and unsecured creditors, will receive substantially less than the amount of their claims." | |

*If you answered Yes for any disclosure date, please answer the next question.*

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

---

## **DAMAGES**

**12.**   **How much of the stock price decline following the corrective disclosure(s) did the Class Plaintiffs prove was caused by the correction of this statement?**

<div style="border:1px solid black; width:200px; height:50px"></div>

*If you identified any amount of damages in response to this question, please answer the next question.*

*If you have awarded no damages, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

## REBUTTING THE PRESUMPTION OF RELIANCE

**13.  Did the Defendants prove that one or more Class Plaintiffs did not actually rely on the integrity of the market price of SRII/AMR's stock?  A Class Plaintiff did not rely on the integrity of the market price if it would have bought SRII/AMR stock at the same price it did, even if it had not known about the alleged fraud.**

*Answer Yes for each Class Plaintiff that the Defendants proved did not rely on the integrity of the market price of SRII/AMR's stock.  Otherwise, answer no for that Class Plaintiff.*

| Lead Plaintiff | Yes | No |
|---|---|---|
| FNY Partners Fund L.P. | | |
| FNY Managed Accounts, LLC | | |
| Paul J. Burbach | | |
| United Association National Pension Fund | | |
| Camelot Event Driven Fund | | |

*Please answer the next question.*

**14.  Did the Defendants prove that the statement did not affect the market price of SRII/AMR's stock?**

__ Yes
__ No

*If you answered No, please answer the next question.*

*If Yes, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

*This completes the Section 10(b) questions for this statement.*

## SECTION 20(A) CONTROL PERSON

15.    **For each of the Section 20(a) Defendants listed below in the lefthand column, identify whether the Class Plaintiffs proved that each Section 20(a) Defendant was a "controlling person" over the person who made this challenged statement at the time it was made.**

*A "controlling person" is one who: (1) actually participated in (i.e., exercised control over) the operations of the corporation in general; and (2) had actual power or control over a controlled person's allegedly fraudulent actions. This means that at a minimum, the Class Plaintiffs must show that the Defendant had an ability to control the specific transaction or activity upon which the primary violation is predicated.*

*Answer the columns only for the Section 10(b) Defendants identified as making the statement in Question 1.*

<table>
<tr>
<td rowspan="2"><em>Did the following person control the person who made this statement?</em></td>
<td colspan="3" align="center"><strong>Section 10(b) Defendants[3]</strong></td>
</tr>
<tr>
<td align="center"><strong>SRII / AMR</strong></td>
<td align="center"><strong>H. Chappelle</strong></td>
<td align="center"><strong>J. Hackett</strong></td>
</tr>
<tr>
<td></td>
<td colspan="3" align="center"><strong><em>Answer the columns only for makers in Question 2.</em></strong></td>
</tr>
<tr>
<td rowspan="7" align="center"><strong>Section 20(a) Defendants</strong></td>
<td></td>
<td></td>
<td></td>
<td></td>
</tr>
<tr>
<td>H. Chappelle</td>
<td>__ Yes<br>__ No</td>
<td>N/A</td>
<td>__ Yes<br>__ No</td>
</tr>
<tr>
<td>Jim Hackett</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
<td>N/A</td>
</tr>
<tr>
<td>Bill Gutermuth</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
</tr>
<tr>
<td>Jeff Tepper</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
</tr>
<tr>
<td>Diana Walters</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
</tr>
<tr>
<td>Mike Ellis</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
<td>__ Yes<br>__ No</td>
</tr>
<tr>
<td>ARM[4]</td>
<td></td>
<td>__ Yes<br>__ No</td>
<td></td>
</tr>
</table>

---

[3] The parties will gray out in the statement-specific packets the Defendants who did not make the specific statement at issue.

[4] ARM and BCE will be included only in the packets prepared for the pre-business combination statements made by Hal Chappelle.

| *Did the following person control the person who made this statement?* | | **Section 10(b) Defendants**[3] | | |
| --- | --- | --- | --- | --- |
| | | **SRII / AMR** | **H. Chappelle** | **J. Hackett** |
| | | ***Answer the columns only for makers in Question 2.*** | | |
| | BCE | | __ Yes<br>__ No | |

*If you answered Yes for any Section 20(a) Defendant, please answer the next question.*

*If you answered No for all Section 20(a) Defendants, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

---

## **GOOD FAITH**

16. **For any "controlling person" that controlled the maker of this statement (you answered "yes" in question 15), did that person or entity prove that they acted in good faith?**

   ***For any Defendant you answered "no" in the prior question or left blank, leave the righthand column of the chart below blank.***

| | |
|---|---|
| H. Chappelle | __ Yes<br>__ No |
| Jim Hackett | __ Yes<br>__ No |
| Bill Gutermuth | __ Yes<br>__ No |
| Jeff Tepper | __ Yes<br>__ No |
| Diana Walters | __ Yes<br>__ No |
| Mike Ellis | __ Yes<br>__ No |
| Ron Smith | __ Yes<br>__ No |
| Riverstone | __ Yes<br>__ No |
| ARM | __ Yes<br>__ No |
| BCE | __ Yes<br>__ No |

*Please answer the next question.*

31

17.    For each of the following persons/entities, assign the percentage of responsibility of such person, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the Class Plaintiffs.  The total responsibility assigned must equal 100%.   Not all of the following individuals or entities may be relevant for every statement.

| Person/Entity[5] | Percentage of Responsibility |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **TOTAL** *[please confirm total is 100%]* |  |

---

[5] Prior to providing the forms to the jury, Defendants will populate the list for the particular statement and based on the evidence that comes in at trial.

*This completes the Section 20(a) questions for this statement.*

*Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

*If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

**Section 14(a) and Related 20(a) Claim Form**

**Introductory Section 14(a) Questions**
*(answer for all statements)*

## ALLEGED MATERIAL MISREPRESENTATIONS

**A.** **For each challenged Proxy statement listed in the chart below, did the Class Plaintiffs prove that the statement was false or misleading when made?**

*You may also refer to the attached chart of alleged statements which contains the date, source, and Defendants alleged to have liability for each statement.*

*Where emphasis is added, the emphasized portion of the statement is the only portion that Class Plaintiffs allege to be false or misleading.  Additionally, where Class Plaintiffs challenge particular statements or depictions within a larger slides or charts, the challenged portion is identified with a red box.*

| No. | CHALLENGED PROXY STATEMENT | False or Misleading? | |
|---|---|---|---|
| | | YES | NO |
| *1.* |  | | |
| *2.* | "The unaudited financial projections of Alta Mesa and Kingfisher set forth in the forecasts included under 'Proposal No. 1—The Business Combination Proposal—Unaudited Financial Projections of Alta Mesa and Kingfisher' were not prepared with a view toward public disclosure or with a view toward complying with the guidelines established by the American Institute of Certified Public Accountants with respect to prospective financial information. In the view of Alta Mesa's management and Kingfisher's management, the **financial projections were prepared on a reasonable basis, reflected the best currently available estimates and judgments of Alta Mesa and Kingfisher, as applicable, and presented, to the best of their knowledge and belief, the expected course of action and the expected future financial performance of Alta Mesa and Kingfisher, respectively**. However, the financial projections are not | | |

34

| | | False or Misleading? | |
|---|---|---|---|
| No. | CHALLENGED PROXY STATEMENT | YES | NO |
| | fact. Further, none of the unaudited financial projections reflect any impact of the proposed transaction and have not been updated since the date of preparation." [emphasis added] | | |
| 3. | "As of September 2017, **[AMH] was operating six horizontal drilling rigs in the STACK with plans to continue to operate that number of rigs through the end of 2017**." [emphasis added]<br><br>In developing the unaudited financial projections set forth below, the principal quantifiable assumptions material to such projections include the following assumptions regarding pricing of crude oil and natural gas and average number of rigs in operation: <table><tr><td></td><td>2017</td><td>2018</td><td>2019</td></tr><tr><td>Price of Crude Oil (per Bbl)</td><td>$51.16</td><td>$54.90</td><td>$58.00</td></tr><tr><td>Price of Natural Gas (per MMBtu)</td><td>$3.16</td><td>$3.14</td><td>$3.05</td></tr><tr><td>Average Rigs in Operation</td><td>6</td><td>10</td><td>11</td></tr></table> | | |
| 4. | "As of September 30, 2017, Alta Mesa has drilled more than 220 horizontal STACK wells, and currently has a multi-rig program, averaging six rigs in 2017. **Of the 220 wells drilled, over 183 were on production, and of that number, about 116 had sufficient production history to give Alta Mesa's management confidence that Alta Mesa's type well EUR is greater than 650 MBOE.**" [emphasis added] | | |
| 5. | Alta Mesa Projections <table><tr><td></td><td colspan="3">Year Ending December 31,</td></tr><tr><td></td><td>2017E</td><td>2018E</td><td>2019E</td></tr><tr><td></td><td colspan="3">($ in millions)</td></tr><tr><td>Average Net Daily Production (Boe/d)(1)</td><td>20,841</td><td>38,591</td><td>68,900</td></tr><tr><td>Adjusted EBITDAX(2)</td><td>$ 155</td><td>$ 358</td><td>$ 701</td></tr><tr><td>Capital Expenditures</td><td>$ 349</td><td>$ 552</td><td>$ 611</td></tr><tr><td>Free Cash Flow</td><td>$ (237)</td><td>$ (233)</td><td>$ 51</td></tr></table>(1)   Includes 349 boe/d, 1,698 boe/d and 2,003 boe/d for 2017, 2018 and 2019, respectively, attributable to the Bayou City DrillCo joint venture.<br>(2)   Alta Mesa defines Adjusted EBITDAX as net income (loss) before interest expense, loss on extinguishment of debt, exploration expense, depletion, depreciation and amortization, impairment expense, accretion expense, provision (benefit) for income taxes, (gain)/loss on sale of assets and (gain)/loss on derivative contracts. See "Selected Historical Financial Information of Alta Mesa—Non-GAAP Financial Measure." | | |
| 6. | "Based on Mr. Hackett's and Riverstone's review of the diligence materials, Mr. Hackett and Riverstone determined that ... (iv) Kingfisher had developed a strong, local midstream system underpinned by long-term acreage dedication contracts from multiple active producers, as well as firm takeaway contracts on key pipelines ... (v) [that] Kingfisher was well-positioned to benefit from increasing upstream development activity in an active and prolific basin with upside potential from further expansion projects ... [and that] (vii) there was significant upside in the completion of the Kingfisher system and the potential for a subsequent midstream initial public offering." | | |

| No. | CHALLENGED PROXY STATEMENT | False or Misleading? | |
|---|---|---|---|
| | | YES | NO |
| 7. | Kingfisher Projections<br><br>*Year Ending December 31,*<br>*2017E    2018E    2019E*<br>*($ in millions)*<br>Adjusted EBITDA(1)(2)        $  42      $  185      $  318<br>Capital Expenditures(2)      $  124     $  373      $  174<br>Free Cash Flow               $  (83)    $  (189)    $  144<br><br>(1)  Kingfisher defines Adjusted EBITDA as net income (loss) before interest expense, income taxes, depreciation and amortization, acquisition and divestiture transaction expense and impairments. See "Selected Historical Financial Information of Kingfisher—Non-GAAP Financial Measure."<br>(2)  Adjusted EBITDA includes projected results derived from Alta Mesa's upstream development program.<br><br>173 | | |
| 8. | "[AMH]'s policies and practices regarding internal controls over the recording of reserves are structured to objectively and accurately estimate its oil and gas reserves quantities and present values in compliance with rules, regulations and guidance provided by the SEC, as well as established industry practices used by independent engineering firms and its peers and in accordance with the 2007 Petroleum Resources Management System sponsored and approved by the Society of Petroleum Engineers, the World Petroleum Council, the American Association of Petroleum Geologists and the Society of Petroleum Evaluation Engineers. . . .<br><br>[AMH's]'s methodologies include reviews of production trends, material balance calculations, analogy to comparable properties and/or volumetric analysis." | | |

**B. For only those challenged statements listed in the chart above that you marked "Yes," did the Class Plaintiffs prove that the statement was material?**

**If "Yes" the statement is material, identify that/those statement(s) below by Statement Number:**

_____

*If you did not list any Challenged Statements in response to Question B, you are done with the Section 14(a) Claim Form and can sign and return this form to the Clerk.*

*If you listed any Challenged Statements in response to Question B, please answer Question C and then:*

- *For each Challenged Proxy Statement you listed in response to Question B, please complete a packet of Questions 1 through 16, to the extent instructed based on your answers, for each statement.  Please be sure to identify on each packet the number of the Challenged Proxy Statement being addressed.*

- *For any Challenged Proxy Statement not listed in response to Question B, you do not need to do anything further for that statement.*

*When you have completed a packet for each statement you answered "Yes" to both Questions A and B, please sign and return this form to the Clerk.*

---

## **PROXY SOLICITATION**

**C. Did Riverstone Holdings, LLC solicit the Proxy?**

__ Yes
__ No

If you answered "Yes," you should include Riverstone Holdings LLC as a Proxy Defendant for the questions that follow.

If you answered "No," you should **not** include Riverstone Holdings LLC as a Proxy Defendant for the questions that follow.

---

**Packet of Section 14(a) and Related 20(a) Statement-Specific Questions**
*(answer Questions 1 through 16)*

*You will be provided a packet of Questions 1 through 16 for each statement which you listed in response to Question B.  Please identify the particular statement number from the Chart on pages 36-38) that you are addressing in this packet:*[6]

---

| |
|---|
| **Section 14(a) Proxy Statement No. ____** |

---

## <u>FORWARD-LOOKING STATEMENTS</u>

**1.    Was the statement forward looking?**

*Examples of forward-looking statements are (1) statements of the plans and objectives of management for future operations; (2) a statement of future economic performance; and (3) statements containing a projection of revenues, income, earnings per share, capital expenditures, dividends, capital structure, or other financial items.*

__Yes
__ No

*If Yes, answer the next question.  If No, skip to Question 5.*

**2.    Was the statement identified as forward looking and accompanied by meaningful cautionary language?**

*A "meaningful" cautionary statement is one that identifies important factors that could cause actual results to differ materially from those in the forward-looking statement.*

__ Yes
__ No

---

[6] Once the form is agreed and approved by Judge Hanks, the parties will prepare packets for each statement that includes the statement on this first page.  The jury can fill out the packet(s) necessary based on their answers to Questions A and B and discard any unnecessary packets after those initial questions.

*If Yes, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged proxy statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please sign and return this form to the Clerk.*

*If No, answer the next question.*

**3.**     **Was the statement worded as a guarantee?**

__ Yes
__ No

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please sign and return this form to the Clerk.*

*If Yes, answer the next question.*

**4.     Did the Class Plaintiffs prove that any Proxy Defendant actually knew the forward-looking statement was false or misleading at the time it was solicited?**

If you answered "No" to Question C, you should **not** consider Riverstone Holdings, LLC as a Proxy Defendant.

__ Yes
__ No

If Yes, identify the Proxy Defendant(s): _____

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

> *If this is the last statement which you listed in response to Question B, please sign and return this form to the Clerk.*

*If Yes to any of the Proxy Defendants, answer the next question.*

---

## OPINION STATEMENTS

**5.     Was the statement a statement of fact or a statement of opinion?  Please select only one.**

*A statement of fact expresses certainty about a thing, such as the statement "the coffee is hot."  A statement of opinion is a belief, a view, or a sentiment which the mind forms of persons or things, such as the statement "I think the coffee is hot."  Examples of statements of opinion include financial projections.*

__ Statement of Fact
__ Statement of Opinion

*If you selected Statement of Fact, please go to Question 7.  You do not need to answer Question 6.*

*If you selected Statement of Opinion, please answer the next question.*

**6.** **Did the Class Plaintiffs prove any of the following about the opinion statement:**

|  |  | Yes | No |
|---|---|---|---|
| a. | The Proxy Defendant(s) did not, in fact, hold the stated opinion when soliciting it, and the opinion was objectively untrue. *If yes, for which Proxy Defendant(s):* |  |  |
| b. | The opinion statement contained statements of fact that were untrue. |  |  |
| c. | The opinion statement omitted material facts known by the Proxy Defendant at the time it was solicited regarding the basis for the Proxy Defendant's opinion, and the omission of those facts made the opinion misleading. *If yes, for which Proxy Defendant(s):* |  |  |

*If you marked Yes for any of Question 7(a), (b), or (c), please answer the next question.*

*If you marked No for all three of Question 7(a), (b), and (c), you have completed the questions regarding this statement.*

*Please start a new packet starting at Question 1 for the next challenged statement for which you listed in response to Question B.*

*If this is the last statement for which you listed in response to Question B, please sign and return this form to the Clerk.*

---

41

**NEGLIGENCE FOR NON-FORWARD LOOKING STATEMENTS**

*Answer Question 7 only for statements that you identified as **not** forward-looking in Question 1.*

7.     **Did Class Plaintiffs prove that any Proxy Defendant was negligent in distributing the statement?  If Yes, identify below the Proxy Defendant(s) that did so by name:**

If you answered "No" to Question C, you should **not** consider Riverstone Holdings, LLC as a Proxy Defendant.

_____

*If No, you have completed the packet of Section 14(a) and Related 20(a) Statement-Specific Questions for this statement.*

   *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

   *If this is the last statement which you listed in response to Question B, please sign and return this form to the Clerk.*

*If Yes, answer the next question.*

**<u>RELIANCE</u>**

8.     **Did the Class Plaintiffs prove that an active, open market for Alta Mesa securities existed at the time of the transactions in question?**

__ Yes
__ No

*If Yes, please answer the next question.*

*If No, you have completed the questions regarding this statement.*

   *Please start a new packet starting at Question 1 for the next challenged statement for which you listed in response to Question B.*

   *If this is the last statement for which you listed in response to Question B, please sign and return this form to the Clerk.*

42

9.      **Did the Class Plaintiffs prove that the statement was publicly known?**

__ Yes
__ No

*If Yes, please answer the next question.*

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement for which you listed in response to Question B.*

> *If this is the last statement for which you listed in response to Question B, please sign and return this form to the Clerk.*

---

## CAUSATION

10.     **When was the statement corrected?  For each disclosure listed below, please select Yes or No for whether the Class Plaintiffs proved the disclosure corrected the statement.**

**You may select Yes for more than one disclosure only if first disclosure you find to be corrective did not fully correct the statement and a later disclosure provided new information that corrected any uncorrected portion of the statement.**

If the alleged corrective disclosure was made **before** the challenged statement, you should ignore that disclosure for purposes of this question.

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| Alta Mesa 2017 Form 10-K and press release (issued on March 29, 2018) | • "Kingfisher's 2018 projected Net Income is expected to range between $81.2 million and $96.2 million and projected EBITDA is expected to range between $95 million and $110 million (based on consolidating financial statements), and capital expenditures are expected to range from $175 million to $215 million. EBITDA is a non-GAAP measure and is explained in greater detail under 'Non-GAAP Financial Information and Reconciliation.'"<br><br>• "For 2018, AMHLP forecasts total STACK production to average 33 to 38 MBOE per day, representing an | __ Yes<br>__ No |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| | estimated year-over-year growth of 70% at the midpoint, compared to 2017 STACK production ."<br>• "AMHLP's full-year 2017 STACK production was approximately 20.6 MBOE per day, a 58% increase over 2016 production of approximately 13.1 MBOE per day."<br>• "Adjusted EBITDAX [for AMHLP] from continuing operations for full-year 2017 was $138.7 million compared to $146.3 million for full-year 2016. The change in adjusted EBITDAX between the annual periods is, in part, a result of lower average realized commodity prices, offset in part by increased production and decreased interest expense." | |
| 2018 Second Quarter Form 10-Q and press release (issued on August 14, 2018) | • "Alta Mesa 2018 net production grew by more than 50% from average December daily production to estimated average July production of 31,800 BOE per day . . . Alta Mesa is providing a 2018 exit production guidance of 38,000 to 40,000 BOE per day, and updated annual production guidance of 29,000 to 31,000 BOE per day for full year 2018."<br>• "Total production for the second quarter of 2018 was 2,334 MBOE, an average of 25,600 BOE per day. Production in the second quarter was impacted by offset well shut-ins for fracture stimulation effectiveness."<br>• "Net loss, attributable to Alta Mesa's stockholders, during the second quarter of 2018 was $6.4 million or $0.04 per basic and diluted share. Adjusted earnings before interest, income taxes, depreciation, depletion and amortization and exploration costs and other items ('Adjusted EBITDAX') was $47.4 million for the second quarter of 2018. AMHLP had a net loss during the second quarter 2018 of $22.5 million, and Adjusted EBITDAX of $41.6 million. Kingfisher had a net loss during the second quarter of nearly $3.1 million, and Adjusted EBITDA of $6.1 million." | __ Yes<br>__ No |
| 2018 Third Quarter Form 10-Q and press release (issued on November 13, 2018) | • "Net income, attributable to Alta Mesa Resources' stockholders, during the third quarter of 2018 was $7.1 million or $0.04 per basic and diluted share. Adjusted earnings before interest, income taxes, depreciation, depletion and amortization and exploration costs and other items ('Adjusted EBITDAX') was $83.8 million for the third quarter of 2018." | __ Yes<br>__ No |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| | • "Kingfisher Midstream issued EBITDA guidance of $14 to $16 million for Q4-2018 and updated full year 2018 EBITDA guidance to $36 to $38 million." | |
| Form 8-K (issued on February 25, 2019) | • "Alta Mesa Resources has determined that it had an ineffective internal control over financial reporting due to an identified material weakness in both the design of its controls and the execution of its control procedures. As a result of this determination, the Company is performing extensive additional analyses and other procedures to ensure that its consolidated financial statements to be included in the Annual Report are prepared in accordance with US GAAP. Accordingly, the Company expects it will need to file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission indicating a delay in the filing of its Annual Report. The extension period provided by Form 12b-25 will give the Company until March 18, 2019 to file its Annual Report. While the Company is targeting that timeframe, there can be no assurance that the Company will complete the preparation and filing of the Annual Report within the extension period."<br><br>• "Alta Mesa Resources expects to record material, non-cash asset impairment charges to both of its upstream and midstream segments in the fourth quarter of 2018. The Company does not expect the impairment charge to have any impact on future operations, its liquidity, cash flows from operating activities, or affect compliance with provisions set forth in its debt instruments. The impairment charge will reduce future depreciation, depletion and amortization expense. The impairment expense is estimated to be approximately $2.0 billion for the upstream segment and approximately $1.1 billion for the midstream segment."<br><br>• "2019 upstream capital program of $190 to $210 million is expected to deliver full year 2019 average production of 29,500 to 31,500 BOE per day (45% oil, 70% liquids)."<br><br>• "Alta Mesa Upstream entered 2019 with six rigs actively working but reduced the active rig count to zero by the end of January." | __ Yes<br>__ No |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| AMH's 10-K and AMR's 8-K (issued on May 17, 2019) | • "The SEC is conducting a formal investigation into, among other things, the facts involved in the material weakness in our internal controls over financial reporting and the impairment charge disclosed previously and in this annual report." <br> • "If the SEC determines that violations of the federal securities laws have occurred, the agency has a broad range of civil penalties and other remedies available, some of which, if imposed on us, could be material to our business, financial condition or results of operations." <br> • "The Company continues to make progress in finalizing its Form 10-K as well the first quarter 2019 Forms 10-Q for both Alta Mesa Resources and Alta Mesa Upstream but is unable to estimate the date at which these filings will be completed." <br> • "On February 25, 2019, Alta Mesa Upstream provided an initial estimate of 158 MMBoe for December 31, 2018 proved reserves. Based on its April 2019 assessment of its ability to continue as a going concern and the uncertainty of funding the related development costs, Alta Mesa Upstream removed a total of 89 MMBoe of proved undeveloped ('PUD') reserves. As a result, at December 31, 2018, AMH Upstream had 69 MMBoe of proved developed reserves, comprised of 25 MMBbl of oil, 20 MMBbl of natural gas liquids and 144 BCf of natural gas." <br> • "If an agreement is reached with our creditors and we pursue a restructuring, it may be necessary for us to file a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code in order to implement the agreement through the confirmation and consummation of a plan of reorganization approved by the bankruptcy court in the bankruptcy proceedings. We also may conclude that it is necessary to initiate Chapter 11 proceedings to implement a restructuring of our obligations even if we are unable to reach an agreement with our creditors and other relevant parties regarding the terms of such a restructuring. If a plan of reorganization is implemented in a bankruptcy proceeding, it is possible that holders of claims and interests with respect to, or rights to acquire, our equity securities would be entitled to little or no recovery, and those claims and interests may be canceled | __ Yes <br> __ No |

| Public Disclosure | Alleged Corrective Disclosure | Corrective of Challenged Statement? |
|---|---|---|
| | for little or no consideration. If that were to occur, we anticipate that all or substantially all of the value of all investments in our equity securities would be lost and that our equity holders would lose all or substantially all of their investment. It is also possible that our stakeholders, including our secured and unsecured creditors, will receive substantially less than the amount of their claims." | |

*If you answered Yes for any disclosure date, please answer the next question.*

*If No, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement for which you listed in response to Question B.*

> *If this is the last statement for which you listed in response to Question B, please sign and return this form to the Clerk.*

---

## DAMAGES

**11.** **How much of the stock price decline following the corrective disclosure(s) did the Class Plaintiffs prove was caused by the correction of this statement?**

<div style="border:1px solid; height:50px; width:200px;"></div>

*If you identified any amount of damages in response to this question, please answer the next question.*

*If you have awarded no damages, you have completed the questions regarding this statement.*

> *Please start a new packet starting at Question 1 for the next challenged statement for which you listed in response to Question B.*

> *If this is the last statement for which you listed in response to Question B, please sign and return this form to the Clerk.*

47

## REBUTTING THE PRESUMPTION OF RELIANCE

12.    **Did the Defendants prove that one or more Class Plaintiffs did not actually rely on the integrity of the market price of SRII/AMR's stock?  A Class Plaintiff did not rely on the integrity of the market price if it would have bought SRII/AMR stock at the same price it did, even if it had not known about the alleged fraud.**

*Answer Yes for each Class Plaintiff that the Defendants proved did not rely on the integrity of the market price of SRII/AMR's stock.  Otherwise, answer no for that Class Plaintiff.*

| Lead Plaintiff | Yes | No |
|---|---|---|
| FNY Partners Fund L.P. | | |
| FNY Managed Accounts, LLC | | |
| Paul J. Burbach | | |
| United Association National Pension Fund | | |
| Camelot Event Driven Fund | | |

*Please answer the next question.*

13.    **Did the Defendants prove that the statement did not affect the market price of SRII/AMR's stock?**

__ Yes
__ No

*If you answered No, please answer the next question.*

*If Yes, you have completed the questions regarding this statement.*

>       *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

>       *If this is the last statement which you listed in response to Question B, please turn to the Section 14(a) and Related 20(a) Claim Form.*

*This completes the Section 14(a) questions for this statement.*

---

## SECTION 20(A) CONTROL PERSON

14. **For each of the Section 20(a) Defendants listed below in the lefthand column, identify whether the Class Plaintiffs proved that each Section 20(a) Defendant was a "controlling person" over the person who solicited the Proxy.**

   *A "controlling person" is one who: (1) actually participated in (i.e., exercised control over) the operations of the corporation in general; and (2) had actual power or control over a controlled person's allegedly fraudulent actions. This means that at a minimum, the Class Plaintiffs must show that the Defendant had an ability to control the specific transaction or activity upon which the primary violation is predicated.*

   *If you answered "No" to Question C, you should __not__ consider Riverstone Holdings, LLC as a Proxy Defendant.*

<table>
<tr><td rowspan="2"><i>Did the Section 20(a) Defendant Control the Section 14(a) Defendant for this statement?</i></td><td colspan="6"><b>Section 14(a) Proxy Defendants</b></td></tr>
<tr><td><b>SRII</b></td><td><b>J. Hackett</b></td><td><b>B. Gutermuth</b></td><td><b>J. Tepper</b></td><td><b>D. Walters</b></td><td><b>Riverstone</b> <i>(only if "Yes" to Question C)</i></td></tr>
<tr><td rowspan="5"><b>Section 20(a) Defendants</b><br>Riverstone</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>N/A</td></tr>
<tr><td>Jim Hackett</td><td>__ Yes<br>__ No</td><td>N/A</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td></tr>
<tr><td>Bill Gutermuth</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>N/A</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td></tr>
<tr><td>Jeff Tepper</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>N/A</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td></tr>
<tr><td>Diana Walters</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>__ Yes<br>__ No</td><td>N/A</td><td>__ Yes<br>__ No</td></tr>
</table>

*Note: The leftmost column header reads "Section 20(a) Defendants" rotated vertically, spanning the five data rows (Riverstone, Jim Hackett, Bill Gutermuth, Jeff Tepper, Diana Walters).*

   *If you answered Yes for any Section 20(a) Defendant, please answer the next question.*

   *If you answered No for all Section 20(a) Defendants, you have completed the questions regarding this statement.*

   *Please start a new packet starting at Question 1 for the next challenged statement which you listed in response to Question B.*

*If this is the last statement which you listed in response to Question B, please sign and return this form to the Clerk.*

---

## **GOOD FAITH**

**15.** **For any "controlling person" that controlled a Proxy Defendant (you answered "yes" in question 14), did that person or entity prove that they acted in good faith?**

***For any Defendant you answered "no" in the prior question or left blank, leave the righthand column of the chart below blank.***

| Jim Hackett | __ Yes<br>__ No |
|---|---|
| Bill Gutermuth | __ Yes<br>__ No |
| Jeff Tepper | __ Yes<br>__ No |
| Diana Walters | __ Yes<br>__ No |
| Riverstone | __ Yes<br>__ No |

---

16. **For each of the following persons/entities, assign the percentage of responsibility of such person, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the Class Plaintiffs.  The total responsibility assigned must equal 100%.   Not all of the following individuals or entities may be relevant for every statement.**

| Person/Entity[7] | Percentage of Responsibility |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **TOTAL** *[please confirm total is 100%]* |  |

---

[7] Prior to providing the forms to the jury, Defendants will populate the list for the particular statement and based on the evidence that comes in at trial.