# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957<br><br>Judge George C. Hanks, Jr. |

## **CLASS PLAINTIFFS' PRE-TRIAL MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY OF CLAIMS AND DEFENSES .................................................... 2

III. CLASS PLAINTIFFS' SECTION 14(a) and RULE 14a-9 CLAIM ...................... 3

    A. Elements of Section 14(a) .......................................................................... 4

        1. Material Misrepresentation or Omission ........................................... 4

        2. Negligence ........................................................................................ 5

        3. "Essential Link" ................................................................................ 7

        4. Loss Causation .................................................................................. 7

        5. Damages ............................................................................................ 9

            a. "Out-of-Pocket" Theory ......................................................... 9

            b. "Benefit-of-the-Bargain" Theory ........................................... 10

    B. CLASS PLAINTIFFS' SECTION 10(b) AND RULE 10b-5 CLAIM ....... 11

        1. Elements of Section 10(b) ................................................................ 12

            a. False and/or Misleading Statements – or "Falsity" ............... 12

            b. Materiality .............................................................................. 12

            c. Scienter .................................................................................. 12

            d. "In Connection With" ............................................................ 14

            e. Reliance .................................................................................. 14

            f. Loss Causation ....................................................................... 15

            g. Damages ................................................................................. 15

    C. CLASS PLAINTIFFS' SECTION 20(a) CLAIM ..................................... 15

IV. REQUESTED RELIEF ...................................................................................... 17

    A. "Out-of-Pocket" Damages ......................................................................... 17

**Page**

B. "Benefit-of-the-Bargain" Damages ................................................................ 17

C. Awards of Pre- and Post-Judgment Interest .................................................. 17

V. DEFENSES ................................................................................................................ 17

A. Statutory Safe Harbor Defense .................................................................... 17

B. "Good Faith" Defense to Section 20(a) ........................................................ 18

VI. MATERIAL TRIAL DISPUTES ............................................................................... 19

VII. CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*ABC Arbitrage Plaintiffs Grp. v. Tehurak,*
  291 F.3d 336 (5th Cir. 2002) ................................................................. 12

*Ala. Elec. Pension Fund v. Flowserve Corp.,*
  572 F.3d 221 (5th Cir. 2009) ................................................................. 8

*Beck v. Dobrowski,*
  559 F.3d 680 (7th Cir. 2009) ................................................................. 6

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ................................................................. 9

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.,*
  2021 WL 1416025 (S.D. Tex. Apr. 14, 2021) .................................... 3, 18

*Del. Cnty. Emps.' Ret. Sys. v. Cabot Oil & Gas Corp.,*
  620 F. Supp. 3d 603 (S.D. Tex. 2022) ................................................. 8

*Edwards v. McDermott Int'l, Inc.,*
  2021 WL 1421603 (S.D. Tex. Apr. 13, 2021) .................................... 4, 18

*Erickson v. Jernigan Cap., Inc.,*
  692 F. Supp. 3d 114 (S.D.N.Y. 2023) ................................................. 10

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976) ............................................................................. 12

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,*
  565 F.3d 200 (5th Cir. 2009) ................................................................. 13

*G.A. Thompson & Co., Inc. v. Partridge,*
  636 F.2d 945 (5th Cir. 1981) ........................................................... 18, 20

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.,*
  514 F. Supp. 3d 942 (S.D. Tex. 2021) ................................................. 18

*Gerstle v. Gamble-Skogmo,*
  478 F.2d 1281 (2d Cir. 1973) ............................................................... 5

*Greenberg v. Crossroads Sys., Inc.,*
  364 F.3d 657 (5th Cir. 2004) ........................................................... 8, 15

**Page**

*Guidry v. Booker Drilling Co.*,
    901 F.2d 485 (5th Cir. 1990) ................................................................. 17

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ............................................................. 3, 4, 5

*In re Browning-Ferris Indus., Inc. S'holder Derivative Litig.*,
    830 F. Supp. 361 (S.D. Tex. 1993),
    *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994) .................... 4, 7

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    2003 WL 230688 (S.D. Tex. Jan. 28, 2003) ......................................... 16

*In re Exxon Mobil Corp. Sec. Litig.*,
    500 F.3d 189 (3d Cir. 2007) .................................................................. 6

*In re Venator PLC Sec. Litig.*,
    547 F. Supp. 3d 624 (S.D. Tex. 2021) ................................................... 16

*In re Willis Towers Watson PLC Proxy Litig.*,
    439 F. Supp. 3d 704 (E.D. Va. 2020) ..................................................... 6

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ................................................................................ 4

*Justin Indus., Inc. v. Choctaw Sec., L.P.*,
    920 F.2d 262 (5th Cir. 1990) ................................................................. 5

*Krim v. BancTexas Grp., Inc.*,
    989 F.2d 1435 (5th Cir. 1993) ............................................................. 12

*Landair Transport, Inc. v. Schneider Nat'l Carriers, Inc.*,
    2009 WL 3416273 (N.D. Tex. Oct. 20, 2009) ....................................... 17

*Laperriere v. Vesta Ins. Grp., Inc.*,
    526 F.3d 715 (11th Cir. 2008) ............................................................. 16

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ............................................................ 8, 13

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ............................................................... 12

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ........................................................... 9, 10

**Page**

*Matrixx Initiatives, Inc. v. Siracusano,*
    563 U.S. 27 (2011) ................................................................................. 12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
    547 U.S. 71 (2006) ................................................................................. 14

*Mills v. Electric Auto-Lite Co.,*
    396 U.S. 375 (1970) ................................................................. 3, 5, 7, 10

*Paul F. Newton & Co. v. Tex. Commerce Bank,*
    630 F.2d 1111 (5th Cir. 1980) ............................................................... 18

*Pharo v. Smith,*
    621 F.2d 656 (5th Cir. 1980) ................................................................. 16

*Plotkin v. IP Axess Inc.,*
    407 F.3d 690 (5th Cir. 2005) ................................................................. 13

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.,*
    769 F.3d 313 (5th Cir. 2014) ................................................................ 8, 9

*R2 Invs. LDC v. Phillips,*
    401 F.3d 638 (5th Cir. 2005) ............................................................ 12, 13

*Rosenzweig v. Azurix Corp.,*
    332 F.3d 854 (5th Cir. 2003) ................................................................. 12

*S.E.C. v. Gann,*
    565 F.3d 932 (5th Cir. 2009) ................................................................. 12

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,*
    365 F.3d 353 (5th Cir. 2004) ............................................................ 13, 16

*Spitzberg v. Houston Am. Energy Corp.,*
    758 F.3d 676 (5th Cir. 2014) ................................................................... 9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
    552 U.S. 148 (2008) ............................................................................... 12

*Superintendent of Ins. v. Bankers Life & Cas. Co.,*
    404 U.S. 6 (1971) ................................................................................... 14

*TSC Indus., Inc. v. Northway, Inc.,*
    426 U.S. 438 (1976) ................................................................................. 5

**Page**

*Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs*,
    2015 WL 1737286 (S.D. Tex. Apr. 16, 2015).......................................................17

*Wilson v. Great Am. Indus. Inc.*,
    855 F.2d 987 (2d Cir. 1988) .............................................................................6, 10

**STATUTES**

15 U.S.C. § 78j .........................................................................................................13

15 U.S.C. § 78n(a) ......................................................................................................3

15 U.S.C. § 78t(a) ..............................................................................................18, 22

15 U.S.C. § 78u–4(b)(4) .............................................................................................8

15 U.S.C. § 78u-5 .....................................................................................................21

17 C.F.R. § 230.405 ..................................................................................................19

17 C.F.R. § 240.10b-5 ...............................................................................................13

17 C.F.R. § 240.14a-9(a) ....................................................................................3, 5, 7

Tex. Fin. Code § 304.003 .........................................................................................21

Lead Plaintiffs FNY Partners Fund L.P., FNY Managed Accounts, LLC, Paul J. Burbach, and United Association National Pension Fund, and additional plaintiff Camelot Event Driven Fund (collectively, "Class Plaintiffs"), respectfully submit this Pre-Trial Memorandum of Law pursuant to Court Procedures § 9.B.3.c.

## I.      INTRODUCTION

This is a certified Class Action alleging violations of §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78j(b), 78n(a), and 78t(a)), and Rules 10b-5 and 14a-9 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") (17 C.F.R. §§ 240.10b-5, 240.14a-9).

The case arises from the February 9, 2018 business combination (the "Business Combination") in which Silver Run Acquisition Corporation II ("Silver Run"), a special purpose acquisition company ("SPAC"), consummated the acquisition of Alta Mesa Holdings LP ("AMH") and Kingfisher Midstream LLC ("Kingfisher"). AMH was an oil and gas exploration and production company operating in a region of Oklahoma known as the STACK. Kingfisher was a midstream company engaged in the storage, processing, and transportation of oil and gas. Following the Business Combination, Silver Run was renamed Alta Mesa Resources, Inc. ("AMR"). This Court certified the case as a class action under Federal Rule of Civil Procedure 23. Dkt. 241. The Class Period is August 16, 2017 through May 17, 2019, inclusive. *Id.* at 3-4.

While the basic facts, as well as many of the governing legal principles, are not in serious dispute, Defendants have refused to enter into any proposed stipulations of fact or

law.[1]  Accordingly, an empaneled jury will need to decide nearly all substantive factual issues.  Further, the Court will need to make certain decisions concerning governing legal principles, particularly with respect to Class Plaintiffs' § 14(a) and Rule 14a-9 claim.  Class Plaintiffs submit this Pre-Trial Memorandum to help guide the Court prior to and during the trial of the case.

## II.   SUMMARY OF CLAIMS AND DEFENSES

Class Plaintiffs allege that certain Defendants made material misrepresentations in SEC filings and other public statements during the Class Period while under the control of various other entities and individuals.  Defendants' alleged misconduct constitutes violations of §§ 10(b), 14(a) and 20(a) of the Exchange Act.  Class Plaintiffs seek out-of-pocket damages for Defendants' unlawful conduct.  However, should the jury find that Defendants knowingly violated § 14(a) and Rule 14a-9, Class Plaintiffs will also seek a "benefit-of-the-bargain" damages award from the jury on that claim.

Defendants deny all allegations of wrongdoing asserted in the Class Action and deny any liability whatsoever to any members of the Class.  Further, Defendants contend that Class Plaintiffs will be unable to prove that their claimed losses were caused by any of Defendants' alleged misstatements.  Defendants have raised two affirmative defenses to Class Plaintiffs' claims:  (i) the statutory "good faith" defense to Class Plaintiffs' § 20(a)

---

[1]   Defendants are AMR, ARM Energy Holdings LLC ("ARM Energy"), Bayou City Energy Management, LLC ("Bayou City"), Riverstone Holdings LLC ("Riverstone"), Harlan H. Chappelle ("Chappelle"), Michael E. Ellis ("Ellis"), James T. Hackett ("Hackett"), William D. Gutermuth ("Gutermuth"), Ronald Smith ("Smith"), Jeffrey H. Tepper ("Tepper"), and Diana J. Walters ("Walters").  *See* Dkts. 218, 778.

control person liability claims; and (ii) the "Safe Harbor" defense for forward-looking statements under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## III.   CLASS PLAINTIFFS' SECTION 14(a) and RULE 14a-9 CLAIM

Class Plaintiffs assert that Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and Walters (collectively, the "Proxy Defendants") violated § 14(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder, based on alleged material misstatements and omissions in the January 19, 2018 Proxy.

Section 14(a) makes it unlawful for any person "to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security" in contravention of SEC rules and regulations.  15 U.S.C. § 78n(a); *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).  Rule 14a-9, in turn, prohibits proxy statements which are "false or misleading with respect to any material fact, or which omit[] to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).  Put simply, "Section 14(a) prohibits [misleading] statements in proxy solicitations associated with registered securities."  *Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, 2021 WL 1416025, at *10 (S.D. Tex. Apr. 14, 2021) (citing 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9).

The fundamental purpose of § 14(a) and Rule 14a-9 is "to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies [are] solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'"  *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 381 (1970) (quoting H.R. Rep. No. 1383, 73d Cong., 2d Sess., 14; S. Rep. No. 792, 73d Cong., 2d Sess., 12);

*see also J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964) (explaining that Congress enacted § 14(a) "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation" so as to protect the voting rights of shareholders (citation omitted)).

### A.     Elements of Section 14(a)

To establish a violation of § 14(a) and Rule 14a-9, Class Plaintiffs must show that:  (1) the Proxy Defendants misrepresented or omitted a material fact in a proxy statement; (2) the Proxy Defendants acted at least negligently in solicitation of the proxy; and (3) the false or misleading proxy statement was an "essential link" in causing the corporate action.  *See In re Browning-Ferris Indus., Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994).  In addition, Class Plaintiffs must prove loss causation and damages.  *See Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421603, at *6 (S.D. Tex. Apr. 13, 2021) (Hanks, J.) (applying *Dura* and loss causation requirements to § 14(a) claims).

### 1.     Material Misrepresentation or Omission

The first element—whether the Proxy Defendants misrepresented or omitted a material fact in the January 19, 2018 Proxy—requires proof of "an affirmatively false or misleading statement."  *Heinze*, 971 F.3d at 483.  Class Plaintiffs can satisfy this requirement by showing either that the Proxy contained a statement of material fact that was false or misleading on its face, or that the Proxy Defendants omitted material facts from the Proxy that were "necessary . . . to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Heinze*, 971 F.3d at 480.  In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus.*, 426 U.S. at 449.  Materiality is "a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts." *Id.* at 450; *see also Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 267 (5th Cir. 1990) (materiality "is determined by taking into account all information in the public domain and facts reasonably available to the public to be used by shareholders in interpreting the information in the proxy sent to them" (quoting T. Hazen, *The Law of Securities Regulation* § 11.4 at 315)).

### 2.     Negligence

The Supreme Court has unequivocally held that the "[u]se of a solicitation that is materially misleading is itself a violation of the law." *Mills*, 396 U.S. at 383.  With regard to the negligence element, several circuit court decisions have also defined the applicable duty of care.  These decisions make clear that where, as here, "the plaintiffs represent the very class who were asked to approve a merger on the basis of a misleading proxy statement and are seeking compensation from the beneficiary who is responsible for the preparation of the statement, they are not required to establish any evil motive or even reckless disregard of the facts." *Gerstle v. Gamble-Skogmo*, 478 F.2d 1281, 1301–02 (2d Cir. 1973).  Thus, § 14(a) liability may be imposed upon a jury finding that defendants in fact

disseminated a materially false or misleading proxy statement to shareholders. *See, e.g.*, *Wilson v. Great Am. Indus. Inc.*, 855 F.2d 987, 995 (2d Cir. 1988) ("As a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the *Gerstle* negligence standard."); *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 196–97 (3d Cir. 2007) ("For liability to attach under § 14(a), all that is required is that a proxy statement be 'false or misleading with respect to any material fact.'" (quoting 17 C.F.R. § 240.14a-9(a))); *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) (affirming that "a proxy solicitation that contains a misleading misrepresentation or omission violates [§ 14(a)] even if the issuer believed in perfect good faith that there was nothing misleading in the proxy materials"); *see also In re Willis Towers Watson PLC Proxy Litig.*, 439 F. Supp. 3d 704, 714 (E.D. Va. 2020) ("This Court concludes, as did the Seventh Circuit in *Beck*, that . . . 'negligence' is the failure to comply with the legal obligation not to solicit a proxy with false or misleading statements or omissions, imposed on an identified category of persons, irrespective of any subjective intent or level of diligence or care.").

Accordingly, the Court should instruct the jury with the following negligence instruction: "The Proxy Defendants were under a fiduciary duty to shareholders of record to solicit a proxy free from material misrepresentation. To the extent you find the proxy in this case to be materially misleading, you must also find defendants' conduct to be at least negligent."

Class Plaintiffs believe they will establish negligence by a preponderance of the evidence, including that the Proxy misstated and omitted material information and that

Defendants Hackett and Chappelle (among others) knew such statements were false or misleading when made.

### 3. "Essential Link"

Class Plaintiffs must also prove that the false or misleading proxy statement itself (as opposed to any particular misstatement) was "an essential link in the accomplishment of the transaction" for which it was issued. *Mills*, 396 U.S. at 385; *see also Browning-Ferris*, 830 F. Supp. at 365; Dkt. 778 at 7.

The Proxy Defendants admitted this element in the Proxy itself by informing shareholders of record that "[a]pproval of the Business Combination . . . requires the affirmative vote (in person or by proxy) of the holders of a majority of the outstanding shares of Class A Common Stock and Class B Common stock entitled to vote and actually cast thereon at the special meeting, voting as a single class."

### 4. Loss Causation

To show loss causation, a plaintiff must demonstrate that the defendant "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4). With respect to that causal connection, the Supreme Court has held that:

> Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

*Mills*, 396 U.S. at 385.

Under Fifth Circuit law, plaintiffs can establish loss causation by showing: "(1) that the negative 'truthful' information causing the decrease in price is related to an allegedly

false, non-confirmatory positive statement [or material omission] made earlier and (2) that it is more probable than not that it was this negative statement, and not other unrelated negative statements, that caused a significant amount of the decline." *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 666 (5th Cir. 2004); *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–56 (5th Cir. 2009) ("The *Dura* Court's articulation of the proof of loss causation requirement in a private securities fraud-on-the-market case is very similar to that adopted by this court prior to *Dura* in [*Greenberg*].").

The Fifth Circuit has rejected the notion that a corrective disclosure must "precisely mirror [an] earlier misrepresentation." *Ala. Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) . Rather, all that is required is a showing that "the truth that emerged was 'related to' or 'relevant to' the defendants' fraud and earlier misstatements." *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014); *see, e.g., Greenberg*, 364 F.3d at 669 (loss causation sufficiently pleaded where the corrective disclosure "concerned a significant revenue shortfall for [the company]'s third fiscal quarter," which related to the company's previous false statements about its third-quarter earnings); *Del. Cnty. Emps.' Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 633–34 (S.D. Tex. 2022) ("disappointing production guidance" was related to misrepresentations that oil and gas company had remediated its environmental violations because its failure to remediate impeded its drilling).  This standard "is not a steep or difficult one to satisfy." *Amedisys*, 769 F.3d at 321 ("The test for relevant truth simply means that the truth disclosed must make the existence of the actionable fraud more probable than it would be without that alleged fact, taken as true."); *see also Spitzberg v.*

*Houston Am. Energy Corp.*, 758 F.3d 676, 688 (5th Cir. 2014) ("the applicable standard in this circuit under *Lormand* . . . is that a corrective disclosure must 'make the existence of the actionable fraud more probable than it would be without that alleged fact (taken as true).'"  (quoting *Lormand*, 565 F.3d at 256 n.20)).  The truth may be revealed through a series of partial corrective disclosures that "must be viewed together with the totality of the other alleged partial disclosures." *Amedisys*, 769 F.3d at 324.

Class Plaintiffs, through their expert Dr. Steven Feinstein and other evidence, will demonstrate by a preponderance of the evidence that the Proxy Defendants' corrective disclosures made between March 2018 and May 2019 were statistically significant and attributable only to the artificial inflation in AMR's stock price as a result of Defendants' unlawful conduct.  *See Ludlow v. BP, P.L.C.*, 800 F.3d 674, 683 (5th Cir. 2015) (recognizing that an event study, like the one conducted by Dr. Feinstein, "is a statistical regression analysis that examines the effect of an event[, such as the release of information,] on a dependent variable, such as a corporation's stock price"  (internal quotation omitted)).  Accordingly, Class Plaintiffs will carry their burden in demonstrating that the disclosure of Defendants' Class Period misstatements and omissions was a substantial factor in causing Class Plaintiffs' economic losses.

### 5. Damages

#### a. "Out-of-Pocket" Theory

Damages are determined by calculating the difference between price inflation at the time of purchase and price inflation at the time of sale.  *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975).  It is undisputed, moreover, that "cognizable damage must be caused

by the misstatements in question." *Ludlow*, 800 F.3d at 682.  One method of determining damages is the "out-of-pocket" rule, which estimates damages by calculating the difference between the price inflation at the time of the stock purchase and remaining price inflation after a corrective disclosure.  *See id.*  Under this methodology, Dr. Feinstein will demonstrate that $4.09 per share price inflation existed in AMR's stock price at the beginning of the Class Period, but that it decreased through a series of corrective disclosures made by Defendants.

### b.      "Benefit-of-the-Bargain" Theory

Another damage calculation is known as the "benefit-of-the-bargain" rule.  Federal courts have recognized that plaintiffs are entitled to benefit-of-the-bargain damages where the defendant's conduct strays from mere negligence into fraud.  *See, e.g.*, *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 123 (S.D.N.Y. 2023) (finding benefit-of-the-bargain damages appropriate where a defendant's "conduct extended beyond negligence to fraud"); *Wilson*, 855 F.2d at 996 (same); *see also Mills*, 396 U.S. at 386 ("In devising retrospective relief for violation of the proxy rules, the federal courts should consider the same factors that would govern the relief granted for any similar illegality or fraud.").  Benefit-of-the-bargain  damages reflect the difference between the value a Class member received and the value which was represented by Defendants as coming to a Class Member in a merger.  *See Mills*, 396 at 388.

As the Court is aware, the jury will be asked to assess evidence that shows the Proxy Defendants' conduct was not only negligent, but also deliberately deceitful.  Accordingly, Class Plaintiffs' expert, Dr. Feinstein, will demonstrate by a preponderance of the evidence

that the undisclosed true value of AMR's stock as of February 6, 2018, was $1.77 per share due to Defendants' unlawful conduct, but Defendants had represented that each share was purportedly worth $10.00.  Accordingly, Class Plaintiffs will seek a jury award of $8.23 per share in benefit-of-the-bargain damages.

### B.   CLASS PLAINTIFFS' SECTION 10(b) AND RULE 10b-5 CLAIM

Class Plaintiffs also assert claims under § 10(b) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder, against Defendants AMR, Chappelle and Hackett for making various alleged false and misleading statements throughout the Class Period.

Section 10(b) of the Exchange Act makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j.  Rule 10b-5 in turn makes it unlawful to, among other things, "make any untrue statement of material fact" or "omit to state a material fact necessary in order to make the statements made . . . not misleading."  17 C.F.R. § 240.10b-5.

To prove a violation of § 10(b) and Rule 10b-5, a plaintiff "must prove: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss

causation.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc*., 552 U.S. 148, 157 (2008)); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 641 (5th Cir. 2005).

### 1.    Elements of Section 10(b)

### a.    False and/or Misleading Statements – or "Falsity"

To establish falsity, Class Plaintiffs must demonstrate by a preponderance of the evidence which defendant made a statement, what the statement was, when the statement was made, where it was made, and why the statement was false or misleading. *ABC Arbitrage Plaintiffs Grp. v. Tehurak*, 291 F.3d 336, 350 (5th Cir. 2002).

### b.    Materiality

A "material misrepresentation" under § 10(b) is a statement or omission that "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *S.E.C. v. Gann*, 565 F.3d 932, 937 n.17 (5th Cir. 2009) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865–66 (5th Cir. 2003)). "Materiality is not judged in the abstract, but in light of the surrounding circumstances." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993).

### c.    Scienter

Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). Defendants acted with the requisite "scienter" if, at the time that they made the alleged misrepresentations, they had the "intent to deceive, manipulate, or defraud or that severe recklessness in which the

danger of misleading buyers or sellers [was] either known to the defendant or [was] so obvious that the defendant must have been aware of it." *R2 Invs.*, 401 F.3d at 643 (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004)). Scienter cannot be inferred by hindsight, but "later-emerging facts can, in some circumstances, provide warrant for inferences about an earlier situation." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 698 (5th Cir. 2005) ("it is not unwarranted to infer that when a company's big deal collapses so fast, something was amiss at the outset"); *see also Lormand*, 565 F.3d at 254 (finding that a plaintiff's reliance on post-class period facts does not amount to "fraud by hindsight" where the facts "directly and cogently tend to prove [the defendants'] state-of-mind at the time of their misleading statements and omissions, *i.e.*, they are evidence that the defendants actually knew earlier that the course of action would turn out badly").

While not dispositive on its own, evidence of motive and opportunity "may meaningfully enhance the strength of the inference of scienter." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009).

Here, Class Plaintiffs will introduce substantial evidence from which a jury can find that Defendants AMR, Chappelle and Hackett acted with both the intent to defraud (or with severe recklessness), and that prior to and throughout the Class Period, these Defendants possessed the motive and opportunity to defraud investors in connection with the AMH/Kingfisher merger before its rapid collapse.

### d.    "In Connection With"

Class Plaintiffs need not show that Defendants AMR, Chappelle and Hackett actually participated in any securities transaction so long as these Defendants were engaged in fraudulent conduct that was "in connection with" a purchase or sale. *See Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12–13 (1971) (holding that "in connection with" means any activity "touching the sale of securities"); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else.").

Here, Class Plaintiffs will show by a preponderance of the evidence that they purchased AMR securities after Defendants AMR, Chappelle and Hackett uttered their materially false and misleading statements, and before the disclosure of corrective information.

### e.    Reliance

With regard to Class Plaintiffs' § 10(b) claim, they must establish that they justifiably relied upon Defendants' false and misleading statements in purchasing AMR securities.  In cases like this, where AMR securities traded in a public market, Class Plaintiffs will present evidence establishing the *Basic* presumption of reliance.  To do so, a plaintiff must show by a preponderance of the evidence that:   (1) the alleged misrepresentations at issue were publicly known; (2) they were material; (3) the subject securities traded in an efficient market; and (4) the plaintiff traded the company's securities

between the time the misrepresentations were made and the time the truth was revealed. *See Greenberg*, 364 F.3d at 661.

Here, Class Plaintiffs' market efficiency expert, unchallenged by Defendants, will demonstrate that AMR securities traded in an efficient market. Class Plaintiffs will also conclusively demonstrate that Defendants AMR, Chappelle and Hackett uttered false and/or misleading statements to the public during the Class Period and that Class Plaintiffs purchased AMR securities after Defendants started making their false statements, but before that fraudulent conduct was revealed.

### f.      Loss Causation

*See* § III.A.4, *supra*.

### g.      Damages

*See* § III.A.5.b, *supra*.

### C.      CLASS PLAINTIFFS' SECTION 20(a) CLAIM

Class Plaintiffs assert that Defendants Riverstone, Bayou City, ARM Energy, Hackett, Chappelle, Ellis, Smith, Gutermuth, Tepper and Walters are liable as "controlling persons" under § 20(a) of the Exchange Act.

Section 20(a) states that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Thus, to prove a violation of § 20(a), a

plaintiff must first establish a primary violation of the Exchange Act, and then establish that the defendant was a "controlling person" over that primary violation. *Southland*, 365 F.3d at 383.

"The purpose of control-person liability is to 'prevent people and entities from using straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that would be forbidden directly by the securities laws.'" *In re Venator PLC Sec. Litig.*, 547 F. Supp. 3d 624, 651 (S.D. Tex. 2021) (quoting *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 721 (11th Cir. 2008)).   "The term 'control' . . . means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Pharo v. Smith*, 621 F.2d 656, 670 (5th Cir. 1980); 17 C.F.R. § 230.405.   Courts have construed the term broadly "to cover many situations, not necessarily only those foreseen at the time of enactment." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2003 WL 230688, at *8 (S.D. Tex. Jan. 28, 2003).

At trial, Class Plaintiffs will introduce evidence of Defendants Riverstone, Bayou City and ARM Energy's control over Defendant Chappelle's alleged false and misleading statements made before the Business Combination.  *See* Dkt. 778.  Further, Class Plaintiffs will introduce evidence of Defendants Riverstone, Hackett, Chappelle, Ellis, Smith, Gutermuth, Tepper and Walters' control over all other alleged false and misleading statements made throughout the Class Period.  *Id.*

## IV.     REQUESTED RELIEF

### A.     "Out-of-Pocket" Damages

*See* §§ III.A.5.a., III.B.1.g., *supra*.

### B.     "Benefit-of-the-Bargain" Damages

*See* § III.A.5.b., *supra*.

### C.     Awards of Pre- and Post-Judgment Interest

In federal cases in which the statute governing a plaintiff's claim is silent on pre-judgment interest (and such statute does not preclude its award), trial courts generally apply the prevailing interest rate as determined by state law.  *See, e.g.*, *Guidry v. Booker Drilling Co.*, 901 F.2d 485, 488 (5th Cir. 1990); *Turner Indus. Grp., LLC v. Int'l Union of Operating Eng'rs*, 2015 WL 1737286, at *17 (S.D. Tex. Apr. 16, 2015) (applying Texas's pre-judgment interest rate, which "is usually calculated at the prime rate published by the Board of Governors of the Federal Reserve System" (citing Tex. Fin. Code § 304.003(c))); *Landair Transport, Inc. v. Schneider Nat'l Carriers, Inc.*, 2009 WL 3416273, at *2 (N.D. Tex. Oct. 20, 2009) (same).  Currently, the pre-judgment rate of interest (simple interest, compounded annually) is 8.25%.  *See* Tex. Fin. Code § 304.003.

## V.     DEFENSES

### A.     Statutory Safe Harbor Defense

Defendants assert that the PSLRA's "Safe Harbor" provision [15 U.S.C. § 78u-5(c)(1)(A)] should preclude any finding of liability at trial for alleged misleading projections.  The parties do not dispute whether certain alleged misleading statements bound over for trial are forward-looking.  Those statements concern AMR's 2018

midstream and upstream EBITDA projections, and the estimated average daily production of oil and gas from AMR's operations in the STACK.   At trial, Class Plaintiffs will establish by a preponderance of the evidence that those statements were materially misleading, and that Defendants knew those statements to be misleading at the time they were made.  *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 953 (S.D. Tex. 2021) ("the Safe Harbor clause does not protect statements when the plaintiff adequately alleges that the defendant knew his statements were misleading when made"); *Edwards*, 2021 WL 1421603, at *7.  *Cf Camelot Event Driven Fund*, 2021 WL 1416025, at *3–5; Dkt. 778.

### B.    "Good Faith" Defense to Section 20(a)

The § 20(a) statutory "good faith" defense is available to a control defendant who can prove he did not act recklessly "in inducing, either by his action or his inaction, the 'act or acts constituting the violation.'"  *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 960 (5th Cir. 1981) (quoting 15 U.S.C. § 78t(a)).  The burden of proving good faith is on each defendant asserting the defense, and "the question is whether the defendant acted recklessly in failing to do what he could have done to prevent the violation."  *Id.*  "[A] showing that [a defendant], as a controlling person, failed to establish, maintain, or diligently enforce a proper system of supervision and control . . . would suffice to show its lack of good faith."  *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1120 (5th Cir. 1980) (internal quotation marks omitted).

## VI.   MATERIAL TRIAL DISPUTES

As discussed in prior status conferences with the Court, Class Plaintiffs intend to file several motions *in limine* to preclude Defendants from offering evidence and argument relating to certain categories of evidence Defendants believe to be admissible at trial.  By way of example, Class Plaintiffs intend to move to preclude evidence and argument concerning the post-hoc investigation and conclusions of AMR's auditor, KPMG LLP.  *See, e.g.*, Dkt. 671; Dkt. 778 (Conclusion No. 7).

While the Court will rule on those motions at the appropriate time, Class Plaintiffs would like to draw the Court's attention to two material legal disputes that will also need to be resolved prior to the case going to a jury.  First, the parties do not agree about what the appropriate standard of care the jury should be instructed with in relation to Class Plaintiffs' § 14(a) claim against the Proxy Defendants.  As noted above, the jury should be instructed that the Proxy Defendants (insiders to Silver Run/AMR) owed a fiduciary duty to shareholders of record to solicit a proxy statement free of material misrepresentation.  *See* § III.A.2., *supra*.  The Proxy Defendants, on the other hand, have taken the position that the jury should be instructed that they are liable only if they failed to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances.  *See* Joint Pre-Trial Order, § IX.B.1.d.

Second, the parties do not agree on the appropriate mental state applicable to the § 20(a) good faith defense.  As the Court is aware, Defendants have argued that the "reckless" standard associated with the § 20(a) good faith defense requires a showing that their conduct was ***not*** "'an extreme departure from the standards of ordinary care' meaning

- 19 -

the danger to mislead investors was 'either known . . . or [was] so obvious' that the defendant 'was almost certainly aware of it.'"   Dkt. 520 at 24 (quoting *G.A. Thompson*, 636 F.2d at 962, n.33).   In pre-trial filings, Defendants have misstated the standard.   *See* Dkt. 674 at 25.   Indeed, the Fifth Circuit has explicitly stated that "the degree of recklessness required for liability under the controlling person doctrine ***is less than for noncontrolling persons*** under *Southwest Coal* and *Croy*, which spoke of a severe form of recklessness."   *G.A. Thompson*, 636 F.2d at 960 (emphasis added).   The panel in *G.A. Thompson* invoked *Southwest Coal* and *Croy* in the next section of the opinion, which only addressed the § 10(b) scienter standard.   *Id.* at 960–62.

## VII.   CONCLUSION

At trial, the jury will likely find in Class Plaintiffs' favor on their §§ 10(b), 14(a) and 20(a) claims, and award appropriate damages in light of the evidence.   After entry of the verdict, Class Plaintiffs intend to seek all such further relief to which they may be entitled to, including pre- and post-judgment interest, under the law or principles of equity.

Dated:  October 21, 2024

Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle (attorney-in-charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308
**ENTWISTLE & CAPPUCCI LLP**

*/s/ Trig Smith*
Trig Smith (*pro hac vice*)
Tor Gronborg (*pro hac vice*)
John Kelley (*pro hac vice*)
Stephen Johnson (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900

500 West 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (512) 710-5960
Facsimile: (212) 894-7278

-and-

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY 10169
Telephone: (212) 894-7200
Facsimile: (212) 894-7278

*Co-Lead Counsel for the Class*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust*

San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

-and-

Shawn A. Williams (*pro hac vice*)
Daniel J. Pfefferbaum (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile:  (415) 288-4534

*Co-Lead Counsel for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served on counsel of record via the Court's ECF system on October 21, 2024.

s/ Trig R. Smith
TRIG R. SMITH