**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 |
| | Judge George C. Hanks, Jr |

**DEFENDANT'S PRETRIAL MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ............................................................................... iii

NATURE AND STAGE OF THE PROCEEDING .............................................. 1

STATEMENT OF THE ISSUES ........................................................................ 1

INTRODUCTION ............................................................................................... 2

ARGUMENT ...................................................................................................... 3

    I.    Plaintiffs Failed to Plead that ARM Energy Is Liable Under Section 20(a) for the Remaining Statements ........................................................ 3

    II.    At Most, Only Two Statements Can Serve as Potential Bases for ARM Energy's Section 20(a) Liability .................................................. 5

    III.    Plaintiffs Lack Standing Because They Were Purchasers or Sellers of Silver Run Stock, Not AMH or Kingfisher Stock ................................. 8

    IV.    Plaintiffs' Primary Claims—And Thus Their Derivative Control Person Claims—Will Fail ............................................................................. 11

        A.    The Remaining Statements are not actionable ................................ 11

        B.    Plaintiffs cannot prove "loss causation" ......................................... 14

    V.    Plaintiffs Cannot Prove That ARM Energy Controlled Chappelle ........... 15

        A.    Participation and input are not sufficient to show control ............... 16

        B.    Plaintiffs cannot show ARM Energy controlled Chappelle with respect to the Remaining Statements. ............................................. 18

        C.    Any evidence that ARM Energy controlled AMH or Kingfisher is irrelevant. ....................................................................................... 21

    VI.    ARM Energy Acted in Good Faith and Did Not Induce a Section 10(b) Violation ....................................................................................... 21

CONCLUSION ................................................................................................... 22

CERTIFICATE OF SERVICE ........................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Equity Grp., Inc.*, 2 F.3d 613 (5th Cir. 1993) ............................................. 16, 22

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019)............. 11

*Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009) ............... 14

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)...............................8, 9, 10

*Carlton v. Cannon*, 184 F. Supp. 3d 428 (S.D. Tex. 2016)................................................ 12

*Carlton v. Cannon*, No. H-15-012, 2016 WL 3959164 (S.D. Tex. July 22, 2016) .......... 17

*Dartley v. ErgoBilt Inc.*, No. 3:98-cv-1442-M, 2001 WL 313964 (N.D. Tex. Mar. 29, 2001).................................................................................................................... 20

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) ......................................................... 14

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)................................. 15

*Fener v. Operating Eng'rs Constr. Indus. & Misc. Pension Fund*, 579 F.3d 401 (5th Cir. 2009)..................................................................................................................... 14

*G.A. Thompson & Co. v. Partridge*, 636 F.2d 945 (5th Cir. 1981) ................................. 22

*Heck v. Triche*, 775 F.3d 265 (5th Cir. 2014) .......................................................... 16, 21

*In re Advance Auto Parts, Inc., Sec. Litig.*, No. 18-212-RGA, 2020 WL 599543 (D. Del. Feb. 7, 2020) ........................................................................................................ 20

*In re Alta Mesa Res., Inc. Sec. Litig.*, No. 4:19-cv-957, 2024 WL 3760481 (S.D. Tex. Aug. 12, 2024) ................................................................................................. passim

*In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696 (W.D. Tex. 2010) .................. 16

*In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712 (S.D. Tex. 2012) ................................... 12

*In re BP p.l.c. Sec. Litig.*, No. 4:13-cv-1393, 2014 WL 4923749 (S.D. Tex. Sept. 30, 2014)................................................................................................................. 17, 20

*In re CarLotz, Inc. Sec. Litig.*, No. 21-cv-5906(AS), 2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024)................................................................................................................ 8, 10

*In re CCIV/Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024)........................ 9, 10

*In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804 (S.D. Tex. 2004) ............................. 19

*In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012).................................................................................................................................. 12

*In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345 (N.D. Ga. 2005)...................... 16

*In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145 (D. Or. 2015) .............. 18

*In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283 (S.D.N.Y. 2021) ............................. 13

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870 (S.D. Tex. 2017).... 14

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007)................................. 18

*In re Splash Technology Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ............................................................................ 20

*Jackson v. Gautreaux*, 3 F.4th 182 (5th Cir. 2021)...............................................3, 4, 5, 6

*Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) .............. 6, 7, 8

*Kerr v. Exobox Techs. Corp.*, No. H-10-4221, 2012 WL 201872 (S.D. Tex. Jan. 23, 2012) ................................................................................................................................... 7

*Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435 (5th Cir. 1993) ........................................ 12

*Menora Mictachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022)....8, 9, 10

*Metge v. Baehler*, 762 F.2d 621 (8th Cir. 1985) ............................................................. 16

*Nathenson v. Zonagen Inc.*, 267 F.3d 400 (5th Cir. 2001) .............................................. 13

*Neiman v. Bulmahn*, 854 F.3d 741 (5th Cir. 2017) .................................................... 2, 15

*Omnicare, Inc. v. Lab. Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) ................................................................................................................................. 14

*Oscar Priv. Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007)....... 15

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003)...................................... 12, 13

*S.E.C. v. Killion*, No. H-16-621, 2017 WL 7052310 (S.D. Tex. Mar. 24, 2017)............... 7

*S.E.C. v. Winemaster*, 529 F. Supp. 3d 880 (N.D. Ill. 2021).......................................... 18

iv

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004) ..6, 8, 11, 12

*Town North Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-cv-3125-L, 2014 WL 4851558 (N.D. Tex. Sept. 30, 2014) ................................................................... 17, 20

*Zishka v. Am. Pad & Paper Co.*, No. 3:98-cv-0660-M, 2001 WL 1748741 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th Cir. 2003) ............................................. 20

## Statutes

15 U.S.C. § 78t .............................................................................................7, 15, 22

15 U.S.C. § 78u-5 ................................................................................... 11, 12

## Other Authorities

Section 20(a) of the Securities Exchange Act of 1934 ...................................... 1

## Rules

Court Procedures Rule 9.B.2.e ........................................................................ 1

## NATURE AND STAGE OF THE PROCEEDING

Pursuant to Court Procedures Rule 9.B.2.e, Defendant ARM Energy Holdings, LLC ("ARM Energy") submits this trial memorandum to advise the Court of the legal standards governing the case and the contested issues under those standards.[1] The case is scheduled for jury trial beginning November 4, 2024.

## STATEMENT OF THE ISSUES[2]

The issues raised by this brief are whether, at trial, Plaintiffs can prove their claims against ARM Energy under Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by a preponderance of the evidence because:

1.   In the operative Third Amended Complaint ("TAC"), Plaintiffs did not plead that ARM Energy controlled Defendant Harlan Chappelle's pre-SPAC statements about Alta Mesa Holdings, L.P. ("AMH") and Kingfisher Midstream, LLC ("Kingfisher")[3];

2.   Plaintiffs cannot establish the requisite standing to sue under Section 10(b) of the Exchange Act for Chappelle's pre-SPAC statements about AMH and Kingfisher;

3.   Plaintiffs cannot establish that any of Chappelle's pre-SPAC statements about AMH or Kingfisher violated Section 10(b) of the Exchange Act;

4.   Plaintiffs cannot establish that ARM Energy controlled Chappelle's pre-SPAC statements; and

5.   ARM Energy can, if necessary, establish a good faith defense to any Section 20(a) liability.

---

[1] By filing this memorandum, ARM Energy does not waive its right to make additional, different, or revised arguments based upon the evidence admitted or legal arguments presented at trial. Likewise, any facts referenced in this brief are intended only as examples of evidence ARM Energy believes will be admitted at trial and do not represent the full measure of ARM Energy's evidence in support of its arguments that Plaintiffs are not entitled to recovery.

[2] Because the Court is familiar with the facts and legal analysis involved in this case, ARM Energy will only include additional facts and analysis as necessary.

[3] Defendant Bayou City Energy Management, LLC ("Bayou City") filed an Objection to Trial by Consent and Motion to Exclude (ECF No. 849), which ARM Energy joined (ECF No. 854). This motion argues that, because Plaintiffs failed to plead a control person liability claim based on Chappelle's pre-SPAC statements about AMH and Kingfisher, any such claim is "not properly before the Court." ECF No. 849 at 16–17. Bayou City and ARM have not consented to trial of any unpled claims, so any unpled control person liability claims should not be tried. *Id*. at 25.

1

## <u>INTRODUCTION</u>

The Court's summary judgment order dismissed all Plaintiffs' Section 20(a) claims against ARM Energy except for claims arising out of Defendant Harlan Chappelle's "public statements regarding AMH and Kingfisher before the SPAC transaction, while Chappelle was AMH's CEO." *In re Alta Mesa Res., Inc. Sec. Litig.*, No. 4:19-cv-957, 2024 WL 3760481, at *25 (S.D. Tex. Aug. 12, 2024) ("MSJ Order").

Plaintiffs failed to plead any such claims in the TAC. Even if they had, at most, only two such statements remain in this case (collectively and specifically defined below, the "Remaining Statements"). To hold ARM Energy liable under Section 20(a), Plaintiffs must establish that (1) the Remaining Statements violated Section 10(b) of the Exchange Act, and (2) ARM Energy was a "controlling person" over those violations. *See, e.g.*, *Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017). Plaintiffs can do neither.

First, as mentioned, Plaintiffs did not plead that ARM Energy controlled the Remaining Statements made by Chappelle. Second, Plaintiffs lack standing under Supreme Court precedent. Third, even if they had standing, they cannot prove a violation of Section 10(b): (i) the Remaining Statements are not actionable under federal securities laws because they are protected by the Private Securities Litigation Reform Act of 1995 ("PSLRA")'s "safe harbor" provision and are merely optimistic projections of future performance and (ii) Plaintiffs did not suffer any losses caused by the Remaining Statements. Fourth, Plaintiffs cannot prove ARM Energy, which indisputably had zero ownership interest in AMH, controlled Chappelle while he was CEO of AMH and made the Remaining Statements. Each of these deficiencies is fatal to Plaintiffs' claims. Finally,

2

even if Plaintiffs could meet their burden of proof, their claims against ARM Energy would still fail, because ARM Energy acted in good faith with respect to the Remaining Statements. For these reasons, Plaintiffs' Section 20(a) claims against ARM Energy will fail at trial.

## ARGUMENT

### I.    Plaintiffs Failed to Plead that ARM Energy Is Liable Under Section 20(a) for the Remaining Statements

The Court's MSJ Order dismissed nearly all Plaintiffs' Section 20(a) claims against ARM Energy, leaving only Chappelle's statements regarding AMH and Kingfisher before the SPAC transaction, while Chappelle was AMH's CEO. *In re Alta Mesa*, 2024 WL 3760481, at *25. However, Plaintiffs did not plead that ARM Energy controlled these statements in the TAC.

In Plaintiffs' opposition to ARM Energy's motion for summary judgment, Plaintiffs claimed ***for the first time*** that ARM Energy controlled the content of statements made in certain Silver Run investor communications in August 2017 (i.e., a press release, an investor presentation, and announcement call). *See* ECF No. 445 at 15–16. This was the ***first time*** Plaintiffs asserted ARM Energy controlled these statements, including, apparently, the Remaining Statements. The Fifth Circuit has "repeatedly emphasized" that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (citations omitted). This Court should not countenance

Plaintiffs' attempt to sandbag ARM Energy with new claims that were not included in their complaints or subject to discovery.[4]

The TAC does not allege any Section 20(a) claim based on the Remaining Statements. Plaintiffs made two Section 20(a) claims against ARM Energy—one concerning alleged misstatements made after the Business Combination (Count II) and one concerning alleged misstatements in the Proxy (Count IV). But as explained below, neither of these claims "aris[es] out of statements made by Defendant Harlan Chappelle." *See In re Alta Mesa*, 2024 WL 3760481, at *25.

In the TAC, Plaintiffs claimed Section 20(a) liability against ARM Energy for controlling alleged misstatements made after the Business Combination by Alta Mesa Resources ("AMR"), its management, and its board of directors, based on alleged violations of Section 10(b). *See* TAC ¶¶ 367–69 (Count II), ECF No. 218. This count alleged ARM Energy "had the power and ability to control the actions of the Management Defendants, Board Defendants, Alta Mesa [Resources, Inc.], and the Company's employees." *Id.* ¶ 369. These defined terms relate to AMR, its management, board, and employees **after the Business Combination**. Since these claims necessarily arise from conduct that occurred after the Business Combination when Chappelle was CEO of AMR, not AMH, they are not "claims arising out of statements made by [Chappelle] before the

---

[4] Nor should the Court reward Plaintiffs' subterfuge by "constru[ing] their new summary-judgment argument as an implied motion to amend their complaint under Federal Rule of Civil Procedure 15." *See Jackson*, 3 F.4th at 189. Such relief is inappropriate where, as here, Plaintiffs "were represented by experienced counsel," who "never moved to amend under Rule 15." *See id.* (noting such relief "is normally reserved for pro se litigants").

SPAC transaction" and were therefore dismissed at summary judgment. *See In re Alta Mesa*, 2024 WL 3760481, at *25.

Plaintiffs also claimed that ARM Energy controlled alleged misstatements contained in the Proxy, based on alleged violations of Section 14(a). *See* TAC ¶¶ 391–96 (Count IV), ECF No. 218. But Plaintiffs did not claim these statements were made by Chappelle. Instead, they allege the statements were made by Defendants James Hackett, Thomas Walker, William Gutermuth, Jeffrey Tepper, Diana Walters, Stephen Coates, Riverstone, Bayou City Energy Management, LLC ("Bayou City"), and ARM Energy.[5] *Id.* ¶ 392. In other words, none of these claims "aris[e] out of statements **made by Defendant Harlan Chappelle**." *See In re Alta Mesa*, 2024 WL 3760481, at *25 (emphasis added). In any event, Count IV of the TAC was dismissed by the MSJ Order. *See id.*

In sum, Plaintiffs' only Section 20(a) claims against ARM Energy were TAC Counts II and IV—neither of which claimed control person violations "arising out of statements made by [Chappelle] before the SPAC transaction." *See id.* Plaintiffs' pleading deficiencies preclude any finding that ARM Energy is liable for controlling the Remaining Statements. *See Jackson*, 3 F.4th at 188.

## II.    At Most, Only Two Statements Can Serve as Potential Bases for ARM Energy's Section 20(a) Liability

Pursuant to the MSJ Order and as discussed further below, of the nearly ninety alleged misstatements in this case, Chappelle only made **two** statements before the Business Combination:

---

[5] Plaintiffs also allege the statements in question were controlled by non-party HPS Investment Partners, LLC.

(1) <u>Statement from August 16, 2017 Press Release</u>: "We see this as a tremendous way to continue our evolution as a low-cost, high-value producer in the STACK."[6]

(2) <u>Statement from August 17, 2017 Investor Conference Call</u>: "We have over 200 wells that we've drilled here and we've demonstrated the value, and we have confidence in the upside. As an illustration of that, at the end of the second quarter [of 2017], we drilled on the order of 200 wells; of those, over 160 were on production. And of that number, about 114 had sufficient production history to give us confidence that at the end of this year, our year-end reserves will reflect better than 650,000 BOE."[7]

These two statements (the "Remaining Statements") are therefore the only possible bases for any remaining claims against ARM Energy.[8]

A defendant can only be liable for a material misrepresentation or omission that he or she made, and under Supreme Court precedent, a statement is "made by" a person who has "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

For statements made by a company (for example, in SEC filings), the company's officers and directors are not deemed to have "made" any of the statements contained therein solely based on their positions with the company. *See, e.g.*, *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("[C]orporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is

---

[6] TAC ¶ 190, ECF No. 218.
[7] TAC ¶ 194, ECF No. 218.
[8] As discussed above, neither of these statements serves as the basis for a Section 20(a) claim against ARM Energy in the TAC, so they are "not properly before the court" at this stage in the proceedings. *Jackson*, 3 F.4th at 188.

pleaded."); *Kerr v. Exobox Techs. Corp.*, No. H-10-4221, 2012 WL 201872, at *11 (S.D. Tex. Jan. 23, 2012) (defendant who held 100% or 88% of company during the relevant period and who signed updates attached to the company's SEC filings had not "made" any statements in the company's SEC filings). Similarly, simply because a company's officer reviewed the statement does not mean that he or she "made" it. *See, e.g.*, *S.E.C. v. Killion*, No. H-16-621, 2017 WL 7052310, at *7 (S.D. Tex. Mar. 24, 2017) (CFO did not "make" statements contained in SEC filings merely by reviewing those documents prior to filing). Nor is a statement deemed to be "made" by a person just because that individual substantially assisted or participated in drafting a statement made by another individual. *See Janus Capital Grp.*, 564 U.S. at 142–44 ("Such suits—against entities that contribute 'substantial assistance' to the making of a statement but do not actually make it—may be brought by the SEC, see 15 U.S.C. § 78t(e), but not by private parties.").

Thus, legally, Chappelle did not "make" any of the statements in Silver Run's filings for purposes of Section 10(b).[9] First, Chappelle did not have "ultimate authority" over ***any*** of the statements in Silver Run's filings. Chappelle had no ownership interest in Silver Run. Nor was he an officer or director of Silver Run. Even if he had been, that alone would be insufficient to attribute any such statements to him. Moreover, any assistance he provided in drafting the statements contained in the filings was subject to Silver Run's approval. Finally, Chappelle's position as CEO of ***AMH*** is insufficient to attribute statements in ***Silver Run's*** SEC filings to Chappelle because even being an officer of ***the***

---

[9] While the Remaining Statements are contained in Silver Run's filings, they are specifically attributed to Chappelle in the August 16 press release and the August 17 conference call transcript. *See* TAC ¶¶ 190, 194, ECF No. 218.

*company that made the statements* is insufficient. *See Southland*, 365 F.3d at 365. Because Chappelle did not "make" any of the statements in Silver Run's SEC filings not specifically attributed to him, he cannot be liable for them under Section 10(b), nor can ARM Energy be liable as a control person under Section 20(a).[10] *See Janus Capital Grp.*, 564 U.S. at 142.

### III.   Plaintiffs Lack Standing Because They Were Purchasers or Sellers of Silver Run Stock, Not AMH or Kingfisher Stock

The Section 10(b) claims underlying Plaintiffs' remaining Section 20(a) claims against ARM Energy fail under the decades-old purchaser-seller rule established by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). The purchaser-seller rule limits the class of plaintiffs with standing to bring a Section 10(b) claim to "actual purchasers and sellers" of the securities about which the alleged misstatement relates. *Id.* at 731.

In determining whether a plaintiff has standing under Section 10(b), the relevant question is "not which company plaintiffs are suing or which company made the statement, but which company the statement is 'about.'" *In re CarLotz, Inc. Sec. Litig.*, No. 21-cv-5906(AS), 2024 WL 1348749, at *6 (S.D.N.Y. Mar. 29, 2024) (citation omitted). In other words, a plaintiff must "have bought or sold the security about which a misstatement was made in order to have standing to sue under Section 10(b)." *Menora Mictachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022); *see also In re CCIV/Lucid Motors*

---

[10] The fact that AMH also filed an 8-K with the SEC containing the press release, investor presentation, and conference call transcript does not change the analysis: Chappelle was not the "maker" of any statement not specifically attributed to him.

*Sec. Litig.*, 110 F.4th 1181, 1185 (9th Cir. 2024). Thus, in the context of a merger, "purchasers of a security of an acquiring company do not have standing under Section 10(b) to sue the target company for alleged misstatements the target company made about itself prior to the merger." *Menora*, 54 F.4th at 88. As the Supreme Court has cautioned, "Section 10(b) does not 'provide a cause of action to the world at large,' and 'should not be interpreted to provide a private cause of action against the entire marketplace in which the issuing company operates.'" *In re CCIV*, 110 F.4th at 1186 (internal quotation omitted).

Earlier this year, the Ninth Circuit became the first circuit court of appeals to address the purchaser-seller rule in the SPAC context. It concluded, "[a target company's] alleged misrepresentations made about itself cannot be imputed to another company that later acquired it." *Id.* at 1187. There, the defendant company, Lucid Motors, was acquired by CCIV, a special purpose acquisition company. *Id.* at 1183. In the lead-up to the merger, "it was widely speculated that CCIV would acquire Lucid." *Id.* During that time, Lucid's CEO "made misrepresentations about Lucid's ability to meet certain production targets." *Id.* The plaintiffs purchased CCIV stock after these public statements but before the merger was announced. *Id.* Significantly, they "did not purchase or own any interest in Lucid, because Lucid was a privately held company before the merger." *Id.* On the date of the merger, the defendants revealed that the statements made by Lucid's CEO were inaccurate, and CCIV's stock price plummeted. *Id.* The plaintiffs sued under Sections 10(b) and 20(a) of the Exchange Act. *Id.*

On appeal, the Ninth Circuit held the plaintiffs lacked standing. The Court reasoned, "*Blue Chip* limits standing to 'purchasers or sellers of the stock in question,'" that is, "the

security about which the alleged misrepresentations were made." *Id.* at 1185–86 (quoting 421 U.S. at 742). Thus, because "the securities about which [the] [d]efendants allegedly made misrepresentations were those of Lucid," the plaintiffs "would need to have purchased or sold Lucid stock to have standing." *Id.* at 1187. The court concluded, "Lucid's alleged misrepresentations made about itself cannot be imputed to another company that later acquired it." *Id.*

Thus, a plaintiff who purchases shares of stock in an acquiring company (such as a SPAC) cannot bring a Section 10(b) claim based on alleged misstatements made by the target company or its CEO before the acquisition was complete. *See id.* (concluding that plaintiffs lacked standing to sue under Section 10(b) because the CEO's alleged misrepresentations "were those of [the target company]," and the plaintiffs had purchased only stock in the SPAC, not the target company's stock); *see also Menora*, 54 F.4th at 88. That is true even if the target company's statements were included in the acquiring company's press releases and SEC filings or provided to its investors. *See Menora*, 54 F.4th at 87; *In re CarLotz*, 2024 WL 1348749, at *6.

So too, here. This Court has found that the statements ARM Energy allegedly controlled are Chappelle's "public statements regarding **AMH** and **Kingfisher**" before the Business Combination. *See In re Alta Mesa*, 2024 WL 3760481, at *25 (emphasis added). Plaintiffs, however, purchased **Silver Run** and/or **AMR** securities, not AMH or Kingfisher securities. Thus, Plaintiffs do not have standing to bring a Section 10(b) claim based on Chappelle's statements about AMH or Kingfisher. Accordingly, Plaintiffs' remaining

Section 20(a) control person claims against ARM Energy arising from the Remaining Statements should be dismissed.

## IV. Plaintiffs' Primary Claims—And Thus Their Derivative Control Person Claims—Will Fail

Control person liability "cannot exist in the absence of a primary violation." *Southland*, 365 F.3d at 383. Plaintiffs cannot prove their primary Section 10(b) violations based on the Remaining Statements for two reasons. First, the Remaining Statements are not actionable under Section 10(b), both because they are forward-looking statements protected by the "safe harbor" provision of the PSLRA and because they are merely optimistic projections of future performance. And second, Plaintiffs cannot prove "loss causation" tied to the Remaining Statements—an essential element of a Section 10(b) claim. Because Plaintiffs cannot establish a primary violation, their derivative Section 20(a) claims against ARM Energy fail. *See Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 986 (5th Cir. 2019).

### A. The Remaining Statements are not actionable.

Plaintiffs' Section 10(b) claims based on the Remaining Statements would fail because these statements are not actionable. First, they are forward-looking statements protected by the "safe harbor" provision of the PSLRA. *See* 15 U.S.C. §§ 78u-5(c)(1)(A)–(B), 78u-5(i)(1). The "PSLRA establishes a 'safe harbor' protecting a forward-looking statement from liability where such a statement is made by a natural person, unless defendants prove that it was made with actual knowledge that the statement was false and misleading." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 380 (S.D. Tex.

2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012). Plaintiffs cannot prove that Chappelle made the two relevant statements with "actual knowledge" that they were "false or misleading." *See* 15 U.S.C. § 78u-5(c)(1)(B). Thus, the Remaining Statements are protected by the PSLRA's safe harbor and are not actionable. *See id.* §§ 78u-5(c)(1)(A)–(B), 78u-5(i)(1).

Second, the Remaining Statements are not actionable because they are merely optimistic projections of future performance. "A statement 'of the vague and optimistic type . . . cannot support a securities fraud action because it contains no concrete factual or material misrepresentation.'" *Carlton v. Cannon*, 184 F. Supp. 3d 428, 455 (S.D. Tex. 2016) (quoting *Southland*, 365 F.3d at 372) (alterations omitted); *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003) (noting a company has "no duty to cast its business in a pejorative, rather than a positive, light"). "[P]rojections of future performance not worded as guarantees are generally not actionable under the federal securities laws." *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993). Such "puffery" or "corporate cheerleading" is "not actionable under federal securities law because no reasonable investor would consider such statements material and because investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 748 (S.D. Tex. 2012) (citing *Krim*, 989 F.2d at 1446).

The two Remaining Statements are precisely the type of "projections of future performance not worded as guarantees" that are not actionable under federal securities laws. *See Krim*, 989 F.2d at 1446. The Remaining Statement from the August 16, 2017

press release says: "We see this as a tremendous way to continue our evolution as a low-cost, high-value producer in the STACK." TAC ¶ 190, ECF No. 218. This statement is merely a vague expression of optimism concerning AMH's progress and position in the industry; it makes no guarantees—positive or otherwise—about this continuing "evolution." Such a statement is not a basis for liability. *See Nathenson v. Zonagen Inc.*, 267 F.3d 400 (5th Cir. 2001) ("[G]eneralized positive statements about a company's progress are not a basis for liability."); *Rosenzweig*, 332 F.3d at 869–70 (holding a company's statement "The pipeline of private transactions and announced public tenders that we are pursuing remains strong" was "obviously immaterial puffery").

The statement from the August 17, 2017 Investor Conference Call is not actionable for similar reasons. Chappelle purportedly stated:

> We have over 200 wells that we've drilled here and we've demonstrated the value, and we have confidence in the upside. As an illustration of that, at the end of the second quarter [of 2017], we drilled on the order of 200 wells; of those, over 160 were on production. And of that number, about 114 had sufficient production history to give us confidence that at the end of this year, our year-end reserves will reflect better than 650,000 BOE.

TAC ¶ 194, ECF No. 218. While Chappelle expresses "confidence" regarding AMH's production and year-end reserves, an expression of confidence does not amount to a guarantee, even if it relates to a specific goal. *E.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 309 (S.D.N.Y. 2021) (holding statements that the defendant was "confident" about reaching a specific target and the defendant corporation was "on track" to do so were not guarantees and thus not actionable).

Finally, both Remaining Statements are patently statements of opinion, which cannot serve as the bases of Section 10(b) violations. *See Omnicare, Inc. v. Lab. Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 892 (S.D. Tex. 2017).

      B.    <u>Plaintiffs cannot prove "loss causation."</u>

Plaintiffs' claims also would fail because they cannot prove "loss causation"—an essential element of their Section 10(b) claims against Chappelle. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343–44 (2005). Both the PSLRA and Supreme Court precedent require Plaintiffs to establish a causal connection between each Relevant Statement and their alleged economic loss to prevail under Section 10(b). *See id*. Plaintiffs have made no attempt to disaggregate the losses purportedly caused by the Remaining Statements from any of the other nearly 90 misstatements or other non-fraud related factors, including changed circumstances. *See, e.g.*, *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009).

The damages model of Plaintiffs' expert fails to disaggregate any stock price reaction to any specific misstatement, including the Remaining Statements, from any other alleged misstatement or other factors, which is required for a Section 10(b) claim under *Dura*. *See* 544 U.S. at 342–44. Plaintiffs thus lack evidence of the necessary causation tying any of their purported losses to the Remaining Statements. *Fener v. Operating Eng'rs Constr. Indus. & Misc. Pension Fund*, 579 F.3d 401, 409 (5th Cir. 2009) ("[T]he testimony of an expert—along with some kind of analytical research or event study—is ***required*** to show loss causation.") (emphasis added); *Oscar Priv. Equity Invs. v. Allegiance Telecom,*

*Inc.*, 487 F.3d 261, 270–71 (5th Cir. 2007) (rejecting a damages theory where "there [was] no evidence linking the ***culpable*** disclosure to the stock-price movement," as opposed to "the ***entire bundle*** of negative information" and holding that Plaintiffs must show "it is more probable than not that it was this negative statement, and not other unrelated negative statements, that caused a significant amount of the decline") (emphasis in original), *abrogated on other grounds by Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011) (reiterating that "investors must demonstrate that ***the defendant's*** deceptive conduct caused their claimed economic loss") (emphasis added).

Because Plaintiffs cannot establish loss causation, their Section 10(b) claims tied to the Remaining Statements fail. And because their Section 10(b) claims fail, their derivative Section 20(a) claims against ARM Energy also fail.

## V.      Plaintiffs Cannot Prove That ARM Energy Controlled Chappelle

Regardless of whether Plaintiffs can sustain their Section 10(b) claims against Chappelle for the Remaining Statements, they cannot show by a preponderance of the evidence that ARM Energy "controlled" those statements under Section 20(a). Section 20(a) of the Exchange Act imposes liability on "controlling persons"—people "who, directly or indirectly, control[] any person liable under any provision of" the Exchange Act. 15 U.S.C. § 78t(a). To prove a violation of Section 20(a), a plaintiff must establish, first, a primary violation of the Exchange Act and, second, that the defendant is a "controlling person" over that primary violation. *See, e.g.*, *Neiman*, 854 F.3d at 746.

A "controlling person" is one who (1) "actually participated in (*i.e., exercised* control over) the operations of the corporation in general"; and (2) "had actual power or

control over a controlled person's allegedly fraudulent actions." *See, e.g.*, *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985) (emphasis in original); *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 620 (5th Cir. 1993); *see also In re Alta Mesa*, 2024 WL 3760481, at *18 ("Plaintiffs must prove 'some facts beyond [the defendant's] position or title from which it can reasonably be inferred that [the defendant] had **actual power or control** over a controlled person's allegedly fraudulent actions.") (emphasis added and alterations omitted). At minimum, Plaintiffs must "show that [ARM Energy] had an ability to control the specific transaction or activity upon which [a] primary violation is based"—i.e., the Remaining Statements. *See Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014).

A.  <u>Participation and input are not sufficient to show control.</u>

To that end, the Fifth Circuit and district courts in Texas have set forth clear examples of who ***cannot*** qualify as a "controlling person." As relevant here, plaintiffs cannot show that a defendant is "liable as a control person simply due to his involvement in the underlying activities about which [defendants] are alleged to have misled investors." *See In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 731 (W.D. Tex. 2010); *see also In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1374 (N.D. Ga. 2005) ("The Company's financial reporting . . . is what forms the basis of [p]laintiffs' claims, not the operations themselves. That [the defendant] set the Company's collection policies is irrelevant . . . ."). Similarly, "[g]eneral allegations about day-to-day participation in corporate affairs" are not enough to show that a defendant had "the ability to control the *specific* transaction identified as the basis for primary liability." *In re Alta Mesa*, 2024 WL

3760481, at *18 (emphasis in original) (quoting *Carlton v. Cannon*, No. H-15-012, 2016 WL 3959164, at *7 (S.D. Tex. July 22, 2016)).

Providing input into a public filing or statement does not equate to control either. *See In re Alta Mesa*, 2024 WL 3760481, at *22 ("Although the record reflects that [the defendant] may have had some input into the August 16, 2017 press release, that input does not equate to control over any person who committed an alleged primary violation."). Thus, "[i]t is not enough to argue" that a defendant "had the opportunity to review and comment on . . . press releases and other public statements in advance of them being publicly issued." *Id.* at *20. Relatedly, plaintiffs cannot prove Section 20(a) liability based on evidence that the defendant only "suggest[ed]" what was said by the primary violator, *Town North Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-cv-3125-L, 2014 WL 4851558, at *13 (N.D. Tex. Sept. 30, 2014), or "the substance of the alleged falsehoods originated with [the defendant]," *In re BP p.l.c. Sec. Litig.*, No. 4:13-cv-1393, 2014 WL 4923749, at *6 (S.D. Tex. Sept. 30, 2014).

Rather, plaintiffs must present evidence showing other indicia of control—such as the defendant's involvement in the company's day-to-day activities or management—and demonstrate that the defendant had final authority over the public filing or statement containing the alleged misstatement or omission. *See, e.g.*, *In re Alta Mesa*, 2024 WL 3760481, at *20 ("Plaintiffs have not pointed to any evidence showing that [the defendant] had ***final authority*** over the August 16, 2017 press release or over any of Silver Run II's

or Alta Mesa's other public statements or filings.") (emphasis added).[11] Thus, a defendant cannot be found liable under Section 20(a) simply for requesting that a public filing include a statement that the plaintiff does not allege is false and that is not part of their lawsuit. *See id.* at \*19 (finding defendant had no control person liability based on an email showing only "that [defendant] requested the inclusion in a press release of a statement that Plaintiffs do not allege is false and have not made a part of their lawsuit").

    B.    <u>Plaintiffs cannot show ARM Energy controlled Chappelle with respect to the Remaining Statements.</u>

Trial will show that Plaintiffs cannot meet their burden to prove that ARM Energy controlled Chappelle before the Business Combination with respect to the Remaining Statements. At the outset, Plaintiffs cannot satisfy the basic pleading requirements in this District, as they have repeatedly failed to specify which alleged misstatements ARM Energy controlled or how ARM Energy controlled them. *See* Section I, *supra*. For that reason alone, their Section 20(a) claims against ARM Energy fail.

Setting aside Plaintiffs' pleading deficiencies, Plaintiffs have no evidence, much less legally sufficient evidence, that ARM Energy "had actual power or control" over the Remaining Statements. *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 913 (S.D.

---

[11] *See also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 639 (S.D.N.Y. 2007) (declining to dismiss control claims against defendants who not only "prepared and approved" an IPO registration statement, but also served as corporate officers of the company that made the alleged misstatements, and were "deeply involved with [the company's] day-to-day activities"); *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1200–02 (D. Or. 2015) (declining to dismiss control claims against defendants who "reviewed, edited, and approved of the allegedly false" statements, but who also held management positions as CEO, president, director, and vice-president at the primary violator and directly oversaw the company's day-to-day management); *S.E.C. v. Winemaster*, 529 F. Supp. 3d 880, 924–25 (N.D. Ill. 2021) (declining to dismiss control claims where defendant was responsible for "reviewing and approving" financial statements and public filings and was also the primary violator company's CEO who controlled "the day-to-day management and overall direction" of the company).

Tex. 2004). Again, Plaintiffs must prove that ARM Energy had the ability to control Chappelle—the CEO of *AMH*. ARM Energy indisputably had *zero* ownership interest in AMH—the subject of the Remaining Statements—and *no* involvement in its operations. It defies logic (and the evidence) that ARM Energy could somehow control statements made by an independent company's CEO.

At trial, Plaintiffs will likely attempt to establish ARM Energy's control over Chappelle by pointing to ARM Energy's (i) indirect minority ownership interest in Kingfisher before the Business Combination, and (ii) alleged assistance in drafting the statements at issue.[12] Both points are wholly irrelevant—both factually and legally—to determining whether ARM Energy could be secondarily liable for the Remaining Statements, and Plaintiffs do not point to *any* other relevant purported indicia of ARM Energy's control that would suffice to prove Section 20(a) liability.

First, ARM Energy's indirect minority interest in and operation of *Kingfisher* before the Business Combination is completely irrelevant to determining whether ARM Energy had the ability to control Chappelle—the CEO of *AMH*. *Even if* that minority ownership interest in and operation of Kingfisher were somehow relevant in any way to the determination of ARM Energy's control over *Chappelle*, it would still be insufficient to establish the requisite level of control. Plaintiffs cannot rely solely on a defendant's ownership interest in a company or appointment of a minority number of board members to create control person liability. *See Zishka v. Am. Pad & Paper Co.*, No. 3:98-cv-0660-

---

[12] Because Plaintiffs failed to plead these claims, no discovery was undertaken or disclosure made about them. So ARM Energy can only speculate how Plaintiffs plan to prove ARM Energy's control of Chappelle with respect to the Remaining Statements at trial.

M, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th Cir. 2003) (holding that the "[p]laintiffs have not pleaded sufficient exercise of power and control by the . . . [d]efendants" over the CEO and COO of a company where the plaintiffs alleged that the defendants were liable under Section 20(a) as control persons simply because they owned 50% of the company and had the power to appoint members of the company's board of directors).[13] Having an ownership interest in a company is insufficient to prove that a defendant was a control person of an executive or officer of that company— let alone the executive of a *separate* company. *Id.*; *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 675 (N.D. Tex. 2013); *Dartley v. ErgoBilt Inc.*, No. 3:98-cv-1442-M, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001).

Even if ARM Energy's indirect minority interest in and operation of Kingfisher before the Business Combination were relevant, the evidence shows HPS could effectively exercise complete control over Kingfisher by withholding funding for actions it did not approve.

Second, Plaintiffs' contention that ARM Energy supposedly worked with Chappelle "to craft alleged misleading statements regarding AMH and Kingfisher in August 2017" is insufficient as a matter of law to prove control person liability. *See Town North Bank,*, 2014 WL 4851558, at *13; *In re BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *6. As this

---

[13] *In re Advance Auto Parts, Inc., Sec. Litig.*, No. 18-212-RGA, 2020 WL 599543, at *9–10 (D. Del. Feb. 7, 2020) (dismissing Section 20(a) claims where the plaintiffs "merely allege[d] that the defendant[s] owned a minority stock interest and selected a minority number of directors" and did not "allege that the [] [d]efendants controlled the drafting or publishing of the press releases at issue, or that [they] . . . reviewed or signed them before publication"); *In re Splash Technology Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (finding that plaintiffs failed to allege that the defendant controlled a company's officers merely because the defendant controlled 20% of the company).

Court has recognized, input into a public statement "does not equate to control over any person who committed an alleged primary violation." *In re Alta Mesa*, 2024 WL 3760481, at *22. But even if editing or commenting on a document were sufficient (and this Court has ruled it is not), Plaintiffs do not present any evidence—legally sufficient or otherwise—that ARM Energy actually worked with Chappelle on drafting the Remaining Statements, much less that ARM Energy had "final authority" over them. Plaintiffs thus cannot prove that ARM Energy had the "ability to control the specific transaction or activity" underlying their Section 10(b) claims against Chappelle for the Remaining Statements. *See id.* at *4; *Heck*, 775 F.3d at 283. For that reason, the remaining Section 20(a) claims against ARM Energy fail.

C.      Any evidence that ARM Energy controlled AMH or Kingfisher is irrelevant.

Plaintiffs have indicated their intent to introduce evidence that ARM Energy controlled other entities, including AMH and Kingfisher. Because Plaintiffs' surviving claims are limited to control of *Chappelle* before the Business Combination, however, any evidence purporting to show ARM Energy controlled AMH, Kingfisher, or any other entity or individual is wholly irrelevant, prejudicial, and likely to confuse the jury. And even if it were relevant, the evidence indisputably shows that ARM Energy did not control AMH or Kingfisher.

**VI.     ARM Energy Acted in Good Faith and Did Not Induce a Section 10(b) Violation**

Because Plaintiffs cannot sustain their Section 20(a) claims, ARM Energy will not need to rely on the good faith affirmative defense. If necessary, however, ARM Energy

will prove at trial that it acted in good faith at all times regarding the Remaining Statements and did not induce a Section 10(b) violation.

Under Section 20(a), a controlling person is not liable if "the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). A person acts in good faith if he did "not act recklessly in inducing, either by his action or his inaction, the 'act or acts constituting the violation.'" *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 960 (5th Cir. 1981) (citation omitted). In this context, a person acts recklessly if his conduct represents "an extreme departure from the standards of ordinary care" that "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious" that the defendant "was almost certainly aware" of it. *Id.* at 962 & n.33 (quotation omitted); *see also Abbott*, 2 F.3d at 621 n.25. ARM Energy will demonstrate, if necessary, that it is not liable as a control person because (1) it conducted itself with due care at all times with respect to the Remaining Statements, and (2) it did not induce Chappelle to make the Remaining Statements. *See G.A. Thompson*, 636 F.2d at 958–59.

## CONCLUSION

For these reasons, ARM Energy respectfully submits that Plaintiffs will be unable to prove their claims against ARM Energy under Section 20(a) of the Exchange Act by a preponderance of the evidence at trial.

22

Dated: October 21, 2024        Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ James L. Silliman*
James L. Silliman (*Attorney-in-Charge*)
State Bar No. 24081416
Fed. ID No. 2365032
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Fax: (713) 654-1301
jimsilliman@eversheds-sutherland.com

Bruce M. Bettigole (*pro hac vice*)
The Grace Building, 40th Floor
1114 Avenue of the Americas
New York, NY 10023
Telephone: (212) 389-5000
Fax: (212) 389-5099
brucebettigole@eversheds-sutherland.com

Adam C. Pollet (*pro hac vice*)
Andrea Gordon (*pro hac vice*)
Jessica R. Rodgers (*pro hac vice*)
700 Sixth Street N.W., Suite 700
Washington, DC 20001
Telephone: (202) 383-0100
Fax: (202) 637-3593
adampollet@eversheds-sutherland.com
andreagordon@eversheds-sutherland.com
jessicarodgers@eversheds-sutherland.com

Samantha N. Darnell (*pro hac vice*)
Ian Jones (*pro hac vice*)
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309
Telephone: (404) 853-8004
Fax: (404) 853-8806
samanthadarnell@eversheds-sutherland.com
ianjones@eversheds-sutherland.com

***Counsel for Defendant ARM Energy Holdings, LLC***

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2024, a copy of the foregoing Defendant's Pretrial Memorandum of Law was electronically filed using the Court's CM/ECF system, which will send notification of such filing to all counsel and parties of record.

*/s/ James L. Silliman*

James L. Silliman (*Attorney-in-Charge*)
