# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |

## CLASS PLAINTIFFS' OPPOSITION TO BAYOU CITY ENERGY MANAGEMENT, LLC'S MOTION TO EXCLUDE JOINT WELL DEVELOPMENT AS EVIDENCE OF CONTROL

Class Plaintiffs hereby oppose Bayou City's Motion to Exclude Joint Well Development Program as Evidence of Control. Dkt. 852 ("Motion to Exclude").

## I.     SUMMARY OF THE ARGUMENT

In an effort to exclude unfavorable evidence, Bayou City Energy Management, LLC's ("BCE") Motion to Exclude blatantly mischaracterizes the Court's prior comments on the Joint Well Development Program, treating those comments as if the Court made an evidentiary determination when the Court did no such thing, in its summary judgment opinion or otherwise. BCE's mischaracterizations alone are sufficient to warrant denying their Motion to Exclude.

It is also fundamental that any motion seeking to exclude evidence must have a sound basis in the Rules of Evidence ("FRE"). Here, BCE offers no such basis.

Lastly, the Joint Well Development Program is plainly relevant to BCE's knowledge and control over statements by Alta Mesa Holding's ("AMH") CEO Hal Chappelle on topics related to the development of Alta Mesa's acreage in the STACK. Put simply, there is no reason why the jury should not be permitted to consider the Joint Well Development Program evidence as an indicium, and possible mechanism, of BCE's control.

## II.    FACTUAL BACKGROUND

In 2016, well before the SPAC transaction, AMH entered into a joint development agreement with BCE to develop a portion of AMH's drilling operations. The agreement provided for the joint development of four tranches of 20 wells each (80 total wells). ¶ 89.[1]

---

[1]     All references to "¶" are to the Third Consolidated Amended Complaint for Violations of the Federal Securities Laws (Dkt. 218).

- 1 -

Through the Joint Well Development Program, BCE not only funded half of AMH's wells at the time, it also obtained control and approval rights over AMH's development plan and budget. *See* Dkt. 852-3 at 21 ("These details make up the Development Plans, which are subject to [BCE]'s review and approval before [BCE] is obligated to fund costs associated with any Joint Wells under the Development Plan. Below are some pertinent items from the preliminary Development Plan delivered to [BCE] for approval before proceeding to closing on the initial two 20 well tranches, and the funding of the initial AFEs and associated capital calls provided thereunder.")

Under the Joint Well Development Program, BCE committed to fund 100% of AMH's working interest share up to the maximum of $3.2 million in drilling and complete costs per well ($64 million per tranche, for a total of $256 million when fully developed) in exchange for an 80% working interest in each of the 80 wells. ¶ 90. BCE's working interest would be incrementally reduced once BCE achieved certain internal rate of return benchmarks for each tranche of wells. AMH was responsible for any drilling and completion costs exceeding $3.2 million per well. *Id.*

BCE also invested an additional $300 million in AMH through a holding company, High Mesa, on or about November 10, 2016. ¶ 91.

## III. ARGUMENT

### A. The Joint Well Development Program Is Relevant and Not Subject to Exclusion

BCE's argument to exclude the Joint Well Development Program based on relevancy is wrong. In support of this position, BCE offers only a single sentence, ripped out of context from the Court's summary judgment opinion, that BCE mischaracterizes as an evidentiary

4858-5740-6195.v1

ruling. All the Court said at summary judgment about the Joint Well Development Program was that, standing alone, it did not establish William McMullen's "power to control Alta Mesa's statements to investors or potential investors." Dkt. 778 at 49-50. But that finding is clearly not an evidentiary ruling on relevancy or any other issue related to the admissibility of the Joint Well Development Program.

It is not surprising that BCE fails to make any credible argument to exclude the Joint Well Development Program under FRE 401 or any other evidentiary rule. That is because it cannot. As this Court held at summary judgment:

> [A] reasonable jury could return a verdict for Plaintiffs on their Section 20(a) claims against . . . BCE[] and ARM for statements made by Chappelle that predate the SPAC transaction.

> . . . BCE is a private equity firm[] and ARM is a producer services firm. Prior to the SPAC transaction that turned Silver Run II into Alta Mesa . . . BCE[] and ARM owned portions of Kingfisher; and . . . BCE owned portions of AMH. After the SPAC transaction, . . . BCE[] and ARM became minority owners of Alta Mesa . . . BCE a 17.93% interest[] and ARM a 4.8% interest. BCE . . . appointed one director to Alta Mesa's eleven-member board of directors; ARM did not appoint any.

Dkt. 778 at 50-51. This Court further recognized that:

> [T]here is evidence in the record showing that representatives of HPS, BCE, and ARM worked extensively with Chappelle to craft public statements regarding AMH and Kingfisher before the SPAC transaction, while Chappelle was AMH's CEO. Given the large *ownership stakes* held by HPS, ***BCE,*** and ARM ***in AMH*** and Kingfisher, ***the close relationship between AMH and Kingfisher,*** and ***Chappelle's position as AMH's CEO,*** the Court concludes that a reasonable jury could return a verdict for Plaintiffs on their Section 20(a) claims against HPS, BCE, and ARM for statements made by Chappelle that predate the SPAC transaction.

Dkt. 778 at 51-52. The Joint Well Development Program, through which BCE funded half of AMH's wells and obtained control and approval rights over AMH's development plan and

- 3 -

budget, is clear evidence of BCE's "ownership stakes" in and "close relationship" (*id.*) to AMH and Chappelle, easily satisfying FRE 401's threshold requirement that evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." FRE 401; *see also Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 809 (5th Cir. 2017) ("[T]he bar is low – evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'").

BCE's argument that it will have to "go to lengths to explain the evidence" at trial only underscores the significance of this evidence to the control person claims. Dkt. 852 at 1. The fact that certain evidence is difficult to defend is no basis to exclude it. If it was, no adverse evidence would ever be admitted against an objecting party. *United States v. Rocha*, 916 F.2d 219, 239 (5th Cir. 1990) ("It is not enough simply to show that the evidence is prejudicial as virtually all evidence is prejudicial or it is not material. To warrant reversal, the prejudice must be unfair.").

And, of course, BCE has asserted a "good faith" affirmative defense. However spurious the assertion of that defense may be, BCE cannot credibly argue that the intimate knowledge, information, and control and approval rights over AMH's development program and budget that the Joint Well Development Program provided is anything but relevant.

- 4 -

## IV.    CONCLUSION

For the foregoing reasons, BCE's Motion to Exclude should be denied in its entirety.

DATED:  October 28, 2024                                 Respectfully submitted,


s/ Andrew J. Entwistle

Andrew J. Entwistle (attorney in charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308
**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Floor 19, Suite 140
Austin, TX  78701
Telephone:  (512) 710-5960
Facsimile:  (212) 894-7278


– and –

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7278

*Court Appointed Co-Lead Counsel*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*


s/ Trig R. Smith

Tor Gronborg (*pro hac vice*)
Trig R. Smith (*pro hac vice*)
John M. Kelley (*pro hac vice*)
Stephen Johnson (*pro hac vice*)
**ROBBINS GELLER RUDMAN
   & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423


*Court Appointed Co-Lead Counsel*

- 5 -

4858-5740-6195.v1

**<u>CERTIFICATE OF SERVICE</u>**

I certify that this motion has been served on counsel of record via the Court's ECF system on October 28, 2024.

s/ Trig R. Smith
TRIG R. SMITH