# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957 |
| | Judge George C. Hanks, Jr. |

**PARTIES' AMENDED PROPOSED JURY CHARGE AND JURY INSTRUCTIONS[1]**

---

[1] This is a preliminary draft only and reflects the parties' initial proposed jury charge and jury instructions. These are subject to change based on, for example, the Court's later rulings. The parties reserve the right to revise the jury charge and jury instructions prior to the charging conference.

**AGREED OPENING INSTRUCTION NO. 1:**

<u>INTRODUCTIONS FOR BEGINNING OF TRIAL</u>

Members of the jury panel, if you have a cell phone, smart phone, tablet, iPad or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down.  During jury selection, you must leave it off.

There are certain rules you must follow while  participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate.  I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court.  You should warn them not to ask you about this case, tell you anything they know  or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as Twitter), Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror.  This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.  Some of the people you encounter may have some connection to the case.  If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own.  Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony.  Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.  If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about that has been presented here in court.  If you do any research, investigation

or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

## POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 1:

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 1.1.
- Ninth Circuit Model Civil Jury Instructions (2017), Instruction 3.2 (modified to change "Twitter" to "X"). *The Fifth Circuit instruction contains a list of methods of communications, but the Ninth Circuit's instructions are more comprehensive and reference more popular social media tools.*

**AGREED OPENING INSTRUCTION NO. 2:**

<u>PRELIMINARY INSTRUCTIONS TO JURY</u>

You have now been sworn as the jury to try this case.  As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts.  At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

Pay close attention to the testimony and evidence.  You may take notes during the trial.  Do not allow your note-taking to distract you from listening to the testimony.  Your notes are an aid to your memory.  If your memory should later be different from your notes, you should rely on your memory.  Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.  Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day.  During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate.  It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other.  The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case.  You must rely solely on what you see and hear in this courtroom.  Do not try to learn anything about the case from any other source.  In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, tablet, or computer to research any issue touching on this case.  Do not go online or read any newspaper account of this trial or listen to any radio, podcast, or television newscast about it.  In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss.  These issues are not part of what you must decide and they are not properly discussed in your presence.  To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing.  When I

confer with the attorneys at the bench, please do not listen to what we are discussing.  If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues.  I will try to keep these interruptions as few and as brief as possible.

Keep an open mind during the entire trial.  Do not decide the case until you have heard all of the evidence, the closing arguments, and my instructions.

## POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 2:

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 1.2, *"Alternate 2"*;
- Ninth Circuit Model Civil Jury Instruction (2020), Instruction 3.2.

**AGREED OPENING INSTRUCTION NO. 3:**

<u>DESCRIPTION OF THE PARTIES</u>

The party that brings a lawsuit is called the plaintiff.  This case has been brought as a class action and has been ordered by the Court to proceed as a class action, meaning that certain named plaintiffs, called "Class Representatives," represent themselves and a large number of other persons and entities, called the "Class."  The Class Representatives in this case are:

- Paul J. Burbach, an individual investor who is a resident of Milwaukee, Wisconsin;

- Camelot Event Driven Fund, a mutual fund based in Broadview Heights, Ohio;

- FNY Partners Fund LP, a Delaware partnership that provides investment management services to its clients;

- FNY Managed Accounts, LLC, a Delaware company that provides securities brokerage and investment services; and

- United Association National Pension Fund, a pension fund that provides retirement benefits to employees, and their beneficiaries, represented by the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, headquartered in Alexandria, Virginia.

The Class consists of (i) AMR shareholders who were entitled to vote on the merger and (ii) AMR shareholders who acquired AMR securities during the period from August 16, 2017 to May 17, 2019, inclusive, which I will refer to as the "Class Period."  Unless I distinguish them, I will refer to the Class Representatives and the Class collectively as the "Class Plaintiffs."

The parties against whom the lawsuit is brought are called the defendants.  In this case, the defendants are:

- Alta Mesa Resources, Inc. or "AMR":  AMR was originally named Silver Run, which was a SPAC formed on November 16, 2016, for the purpose of effectuating an acquisition or business combination involving one or more privately held companies.  On February 9, 2018, Silver Run acquired AMH and Kingfisher as part of the Business Combination and changed its name to AMR.

5

- Riverstone Holdings, LLC or "Riverstone": Riverstone is an energy-focused private equity business investing primarily in exploration and production (E&P) and midstream oil and gas companies. Riverstone affiliates were the sponsor and investors in Silver Run, and then were investors in AMR.

- Harlan H. Chappelle: Mr. Chappelle served as the President and CEO of AMH from November 2004 until the February 9, 2018 Business Combination. Following the Business Combination, Mr. Chappelle served as the CEO and a Director of AMR.

- Michael E. Ellis: Mr. Ellis was the founder, Chairman and COO of AMH and, following the Business Combination, COO of AMR's upstream business and a Director of AMR;

- James T. Hackett: Mr. Hackett was a partner or a senior advisor with Riverstone during part of the Class Period. Mr. Hackett served as Silver Run's Chief Executive Officer and a Director prior to the Business Combination. Afterwards, Hackett served as AMR's Executive Chairman and COO of AMR's midstream business (*i.e.*, KFM) until April 3, 2018. Following Chappelle's resignation from AMR in December 2018, Hackett served as the interim CEO.

- William D. Gutermuth: Mr. Gutermuth served as a Director of Silver Run and then as a Director of AMR following the Business Combination until June 18, 2018.

- Jeffrey H. Tepper: Mr. Tepper served as a Director of Silver Run and then as a Director of AMR following the Business Combination.

- Diana J. Walters: Ms. Walters served as a Director of Silver Run and then as a Director of AMR following the Business Combination;

- Ronald Smith: Mr. Smith was Vice President and Chief Accounting Officer of both AMH and, later, AMR. He served in that role from 2015 until July 19, 2019. Before that, Smith served as AMH's Controller beginning in 2008.

- Bayou City Energy Management, LLC or "Bayou City": Bayou City is an energy-focused private equity firm headquartered in Houston, Texas.

A glossary will be provided to you as [Court's Exhibit _] that identifies the relevant parties and other defined terms that the parties have agreed upon.

The fact that this is a class action does not indicate whether or not the claims made on behalf of the Class have merit. Your consideration of the facts and your verdict should

6

not be influenced in any regard merely because the litigation is presented in the form of a class action.  Other than as I instruct you, you are not to draw any conclusions or reach any preconceptions, one way or another, by virtue of this being a class action.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 3:**

- Dkt. 160, Memorandum Opinion and Order (Apr. 14, 2021);

- Dkt. 218, Third Consolidated Amended Complaint for Violations of the Federal Securities Laws (Dec. 6, 2021);

- Dkt. 241, Order Granting Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (Jan. 24, 2022).

**DISPUTED OPENING INSTRUCTION NO. 4:**

**Class Plaintiffs' Proposal**

<u>DESCRIPTION OF THE CLASS ACTION</u>

Class Plaintiffs allege violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rules 10b–5 and 14a–9 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC").  The case arises out of the financial collapse of AMR following what is known as a de-SPAC transaction.  AMR began as a special purpose acquisition company called Silver Run Acquisition Corporation II ("Silver Run II"), which was created and sponsored by Defendant Riverstone.  A special purpose acquisition company is essentially a shell company that exists solely to raise funds through an initial public offering ("IPO") that are then used to acquire another company or companies.  Following Silver Run II's IPO, Riverstone identified two private oil-and-gas companies as its potential acquisition targets, an upstream company called Alta Mesa Holdings LP ("AMH") and a midstream company called Kingfisher Midstream LLC ("KFM" or "Kingfisher").  AMH "focused on the development and acquisition of unconventional oil and natural gas reserves" in Oklahoma's STACK shale play.  Kingfisher "focused on providing crude oil gathering, gas gathering, and processing and marketing to producers of natural gas, natural gas liquids, . . . crude oil and condensate in the STACK play."  The two companies, though nominally separate, had overlapping owners and were interconnected from an operational perspective.

Class Plaintiffs allege that during the August 16, 2017 to May 17, 2019 Class Period, Defendants made false and misleading statements regarding the proposed AMH and Kingfisher merger as well as AMR's operational capabilities prior to and after shareholders voted to approve the merger on February 6, 2018.  Class Plaintiffs claim that the shareholders who voted to approve the merger and investors who purchased AMR securities during the Class Period suffered damages when the price of AMR securities declined when the truth was revealed to the public.

Defendants deny all of Class Plaintiffs' claims and assert a good faith affirmative defense to their Section 20(a) claims.  Class Plaintiffs deny Defendants' good faith and all other defenses.

During the trial you may hear the terms "class member" or "absent class member."  This refers to the individual members of the Class who voted on whether to approve the AMH and Kingfisher merger and/or purchased or otherwise acquired AMR securities during the Class Period.  Those persons do not have to appear or testify at the trial, and you should not draw any adverse or negative inference from the fact that members of the Class do not testify during the trial.  Indeed, neither the Class Representatives nor

any other Class member are required to appear in court personally to prove their case.  Your verdict, however, will bind each and every member of the Class.

**Defendants' Proposal**

## DESCRIPTION OF THE CLASS ACTION

This case involves a certified Class Action alleging violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (or the "Exchange Act"), and Rules 10b-5 and 14a-9 set forth in the Exchange Act by the U.S. Securities and Exchange Commission (or "SEC").  The claims arise out of the February 9, 2018, business combination involving Silver Run Acquisition Corporation II (or "Silver Run"), a special purpose acquisition company or "SPAC" for short.  Silver Run acquired two privately held companies, Alta Mesa Holdings LP (which I'll refer to as "AMH") and Kingfisher Midstream LLC (which I'll refer to as "Kingfisher").  Going forward, I will refer to this transaction as the Business Combination.

AMH was an oil and gas exploration and production company operating in a region of Oklahoma known as the STACK.  Kingfisher was a midstream company engaged in the storage, processing, and transportation of oil and gas.  Following the Business Combination, Silver Run was renamed Alta Mesa Resources, Inc. (which I'll refer to as "AMR").

The party that brings a lawsuit is called the plaintiff.  This case has been brought as a class action, meaning that certain named plaintiffs, called "Class Representatives," represent themselves and other persons and entities, called the "Class" or "Class Plaintiffs." The parties against whom the lawsuit is brought are called the defendants.

The Class Plaintiffs allege that certain Defendants made material misrepresentations in SEC filings and other public statements, while under the control of various other entities and individuals, between August 16, 2017, to May 17, 2019.  This will be referred to as the "Class Period."  Defendants deny all allegations of wrongdoing asserted in the Class Action—including that they made any fraudulent misrepresentations or controlled others who did—and deny any liability whatsoever to any members of the Class.  Further, Defendants assert various other defenses, including that the Class Plaintiffs have failed to prove that their claimed losses were caused by any of the alleged misstatements.

**AGREED OPENING INSTRUCTION NO. 5:**

<u>LIABILITY OF CORPORATIONS</u>

Do not let bias, prejudice, or sympathy play any part in your deliberations.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  A corporation can only act through its employees, directors, or officers.  Therefore, in general, a corporation is responsible for the acts of its employees, directors, and officers performed within the scope of their authority.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 5:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.16;
- Eleventh Circuit Pattern Civil Jury Instructions (2022), Instruction 3.2.2.

**AGREED OPENING INSTRUCTION NO. 6:**

<u>BURDEN OF PROOF</u>

Class Plaintiffs have the burden of proving their case by a preponderance of the evidence.  To establish by a preponderance of the evidence means to prove something is more likely so than not so.  If you find that Class Plaintiffs have failed to prove any element of their claim by a preponderance of the evidence, they may not recover on that claim.

On certain issues, called affirmative defenses, a defendant has the burden of proving their defense by a preponderance of the evidence.  Again, proof by a preponderance of the evidence means to prove something is more likely so than not so.  If you find that Defendants have failed to prove an affirmative defense by a preponderance of the evidence, that defense must be rejected.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 6:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.2 (modified for instruction on affirmative defenses).

**AGREED OPENING INSTRUCTION NO. 7:**

<u>EVIDENCE</u>

The evidence you will be asked to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.   The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 7:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.3.

**AGREED OPENING INSTRUCTION NO. 8:**

<u>STIPULATIONS OF FACT</u>

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The following facts have been stipulated to:

[ADD STIPULATED FACTS HERE]

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 8:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.3.

**AGREED OPENING INSTRUCTION NO. 9:**

<u>JUDICIAL NOTICE</u>

You must accept as proved facts of which the court takes judicial notice.

The court has taken judicial notice that:

[<mark>ADD ANY JUDICIALLY NOTICED FACTS HERE</mark>]

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 9:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.4.

## DISPUTED OPENING INSTRUCTION NO. 10:

## Class Plaintiffs' Proposal[2]

LIMITING INSTRUCTIONS

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

## POINTS & AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' PROPOSED OPENING INSTRUCTION NO. 10:

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.6.

## Defendants' Proposal[3]

LIMITING INSTRUCTIONS

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

In certain instances, evidence may be admitted only concerning a particular party or only for a particular purpose and not generally against all parties or for all purposes.  For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves.  You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.[4]

## POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED OPENING INSTRUCTION NO. 10:

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.6.
- O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 11.09 (6th ed. 2008).

---

[2] In accordance with the Court's Procedures, for disputed instructions based on Fifth Circuit Pattern Civil Jury Instructions, the Class Plaintiffs have identified deviations from the Pattern Civil Jury Instructions, if any, with green highlighted text.

[3] Defendants have identified deviations with footnotes citing to the applicable case law or statutes.

[4] O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, § 11.09 (6th ed. 2008).

**AGREED OPENING INSTRUCTION NO. 11:**

<u>CHARTS AND SUMMARIES</u>

Certain charts and summaries may be shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 11:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.7.

**AGREED OPENING INSTRUCTION NO. 12:**

<u>DEMONSTRATIVE EVIDENCE</u>

      Certain illustrations may be shown to you that are a party's description or picture used to describe something in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 12:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.8.

**AGREED OPENING INSTRUCTION NO. 13:**

## WITNESSES

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

Certain testimony may be presented to you through the reading or playing of a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. If necessary, the questions and answers will be read or played to you during this trial. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility in the same way as if the witness had been present and had testified from the witness stand in court.

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 13:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instructions 2.11, 2.13, 3.4.

**AGREED OPENING INSTRUCTION NO. 14:**

<u>EXPERT WITNESSES</u>

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. These persons are known as expert witnesses. However, you are not required to accept the opinion of an expert witness. As with any other witness, it is up to you to decide whether to rely on it.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 14:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.5.

**AGREED OPENING INSTRUCTION NO. 15:**

<u>JUDGE'S QUESTIONS TO WITNESSES</u>

During the trial, I may sometimes ask a witness questions.  Please do not assume that I have any opinion about the subject matter of my questions.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 15:**

- Final Jury Instructions at 5, *United States v. Allied Home Mortg. Co.*, No. 4:12-CV-2676 (S.D. Tex. Nov. 18, 2016) (J. Hanks), ECF No. 434.

**AGREED OPENING INSTRUCTION NO. 16:**

The trial will now begin.  Lawyers for each side will make an opening statement.  Opening statements are intended to assist you in understanding the significance of the evidence that will be presented.  The opening statements are not evidence.

After the opening statements, the plaintiff will present its case through witness testimony and documentary or other evidence.  Next, the defendant will have an opportunity to present its case.  The plaintiff may then present rebuttal evidence.  After all the evidence is introduced, I will instruct you on the law that applies to this case.  The lawyers will then make closing arguments.  Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown.  Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial.  Do not decide the case until you have heard all of the evidence, the closing arguments, and my instructions.

It is now time for the opening statements.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED OPENING INSTRUCTION NO. 16:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 1.2, *"Alternate 2"*

**AGREED CLOSING INSTRUCTION NO. 1:**

<u>JURY CHARGE</u>

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I gave you the impression during the trial that I favor either party, you must disregard that impression.  If I gave you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I said or did during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties will constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that will be admitted and determine whether the evidence that is admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you will hear and the other evidence that will be submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for any plaintiff or the defendant in arriving at your verdict.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 1:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.1.

**AGREED CLOSING INSTRUCTION NO. 2:**

<u>BURDEN OF PROOF</u>

Class Plaintiffs have the burden of proving their case by a preponderance of the evidence.  To establish by a preponderance of the evidence means to prove something is more likely so than not so.  If you find that Class Plaintiffs have failed to prove any element of their claim by a preponderance of the evidence, they may not recover on that claim.

On certain issues, called affirmative defenses, a defendant has the burden of proving their defense by a preponderance of the evidence.  Again, proof by a preponderance of the evidence means to prove something is more likely so than not so.  If you find that Defendants have failed to prove a good faith defenses by a preponderance of the evidence, that defense must be rejected.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 2:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.2.

**AGREED CLOSING INSTRUCTION NO. 3:**

<u>EVIDENCE</u>

The evidence you will be asked to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 3:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.3.

**AGREED CLOSING INSTRUCTION NO. 4:**

<u>STIPULATIONS OF FACT</u>

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

[ADD ANY STIPULATED FACTS HERE]

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 4:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.3.

## DISPUTED CLOSING INSTRUCTION NO. 5:

## Defendants' Proposal

<u>WITNESS NOT CALLED</u>

[NAME OF WITNESS] was available to both sides.  Plaintiff/Defendant [name] cannot complain that [NAME OF WITNESS] was not called to testify, because either Plaintiff or Defendant [NAME] could have called [NAME OF WITNESS].

## POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 5:

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.9.

**AGREED CLOSING INSTRUCTION NO. 6:**

<u>IMPEACHMENT BY WITNESS'S INCONSISTENT TESTIMONY</u>

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it.  People may forget some things or remember other things inaccurately.  If you believe a witness gave inaccurate testimony, consider whether that testimony was an intentional falsehood or simply an innocent mistake.  The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 6:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.11.

27

**AGREED CLOSING INSTRUCTION NO. 7:**

<u>JUDICIAL NOTICE</u>

You must accept as proved facts of which the court takes judicial notice.

The court has taken judicial notice that:

[ADD ANY JUDICIALLY NOTICED FACTS HERE]

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 7:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.4.

**AGREED CLOSING INSTRUCTION NO. 8:**

<u>CHARTS AND SUMMARIES</u>

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence.  These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

**POINTS   &   AUTHORITIES   IN   SUPPORT   OF   AGREED   CLOSING INSTRUCTION NO. 8:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.7.

**AGREED CLOSING INSTRUCTION NO. 9:**

<u>DEMONSTRATIVE EVIDENCE</u>

Exhibits [<mark>INSERT #S</mark>] are illustrations.  They are a party's description or picture used to describe something in this trial.  If your recollection of the evidence differs from any of these exhibits, rely on your recollection.

**POINTS  &  AUTHORITIES  IN  SUPPORT  OF  AGREED  CLOSING INSTRUCTION NO. 9:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.8.

**AGREED CLOSING INSTRUCTION NO. 10:**

<u>DEPOSITION TESTIMONY</u>

Certain testimony has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers have been read or shown to you.  This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 10:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 2.13.

31

**AGREED CLOSING INSTRUCTION NO. 11:**

<u>WITNESSES</u>

You alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 11:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.4.

**AGREED CLOSING INSTRUCTION NO. 12:**

<u>EXPERT WITNESSES</u>

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters.  However, you are not required to accept the opinion of an expert witness.  As with any other witness, it is up to you to decide whether to rely on it.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 12:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.5.

**DISPUTED CLOSING INSTRUCTION NO. 13:**

**Defendants' Proposal**

NO INFERENCE FROM FILING SUIT

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that they are entitled to a judgment.  Anyone may make a claim and file a lawsuit.  The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 13:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.6.

**<u>DISPUTED CLOSING INSTRUCTION NO. 14</u>:**

**<u>Class Plaintiffs' Proposal</u>**

<u>CLASS PLAINTIFFS' EXCHANGE ACT CLAIM – § 14(a) and Rule 14a–9</u>

The Exchange Act is a federal statute that allows the SEC to enact rules and regulations prohibiting certain conduct in the purchase or sale of securities.  Section 14(a) of the Exchange Act makes it unlawful for any person, in contravention of such rules and regulations as the SEC may prescribe as necessary or appropriate in the public interest for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security.

Rule 14a–9 forbids a person from soliciting proxies, consents, or authorizations from security holders by any written or oral communication that, at the time and in light of the circumstances under which the person makes it, is false or misleading about any material fact, or which omits any material fact that is necessary to make the communication not false or misleading.

For the purposes of Rule 14a–9, a "security" is generally a share of stock that has the right to cast a vote in connection with the election of directors or approval of corporate actions or transactions.

A "proxy" is simply an authorization the holder of stock grants to vote that stock.  Because shareholders usually can't attend shareholder meetings in person, most votes cast at those meetings are cast through proxies that have been acquired from shareholders through a proxy solicitation.

A "proxy solicitation" is a communication to shareholders under circumstances reasonably calculated to procure a proxy.

A "proxy statement" is a document that must be sent to security holders whenever their votes are solicited.

To succeed on this claim, Class Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1.  in soliciting proxies, either through a proxy statement or other written or oral communication, Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters misstated or omitted material information necessary to prevent the proxy solicitation from being misleading;

2.  Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters were at least negligent in making the material misstatement or omission;

3.    the proxy materials were an essential link in the accomplishment of a corporate action or transaction; and

4.    Class Plaintiffs suffered actual damages as a proximate result of Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters' wrongful conduct.

The first element requires a material misrepresentation or omission by Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters. A "misrepresentation" is a statement that is not true. Forward-looking statements, such as predictions or expressions of opinion, are not representations of material facts so long as they are not worded as fact or guarantees and the person making the statements reasonably believed them at the time they were made. But if the person or entity making the statements omits facts about their inquiry into or knowledge concerning the predictions, opinions, or projections, and those facts conflict with what a reasonable investor would take from the statements themselves, then the statements are materially misleading statements of fact. An "omission" is actionable if it omitted to state facts that would be necessary to make other statements by Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters, in light of the circumstances under which they were made, not misleading. A "material" fact is one that a reasonable investor would consider significant in the decision whether to invest, a fact that alters the "total mix" of information available to a reasonable investor. A minor or trivial detail is not material.

To establish the second element, Class Plaintiffs must prove that Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters were at least negligent in making the misrepresentation or omission. Section 14(a) imposes a duty on corporate insiders to shareholders of record to solicit proxies that do not misrepresent or omit material information necessary to prevent the proxy statement from being false or misleading. Accordingly, for purposes of finding liability under Section 14(a), "negligence" is defined as the solicitation of a proxy statement that misrepresents or omits material information necessary to prevent the proxy statement from being false or misleading, irrespective of any defendants' subjective intent, level of diligence or care, or claimed good faith. If you find that the proxy statement misrepresented or omitted material information necessary to prevent the proxy statement from being false or misleading, you must find that the defendant is negligent. To the extent you find that a defendant knew the proxy statement misrepresented or omitted material information necessary to prevent the proxy statement from being false or misleading, you must also find that the negligence element of the Section 14(a) claim has been proven.

For the third element, Class Plaintiffs must prove that the proxy solicitation was an essential link in accomplishing a corporate action or transaction. Here, Class Plaintiffs must prove that the proxy statement was necessary for the approval of the business combination.

As to the fourth element, Class Plaintiffs must show that they suffered actual damages as a proximate result of Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters' alleged misrepresentation or omission. That is, Class Plaintiffs must prove that the misrepresentation or omission was a substantial or significant contributing cause for the loss so that – except for the misrepresentation or omission – the loss wouldn't have occurred.

If you find for Class Plaintiffs on their Section 14(a) claim, you must then consider the issue of the amount of money damages to award. You should award Class Plaintiffs an amount of money they show by a preponderance of the evidence to be fair and adequate compensation for the loss that proximately resulted from Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters' wrongful conduct that you have found.

Here, Class Plaintiffs have offered two theories for measuring damages: one is referred to as "benefit-of-the-bargain" damages and the other is referred to as "out-of-pocket" damages. If you find that Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters knowingly misrepresented or omitted material information necessary to prevent the proxy statement from being false or misleading, you may award either benefit-of-the-bargain or out-of-pocket damages. If you find that Defendants AMR, Riverstone, Hackett, Gutermuth, Tepper and/or Walters only acted negligently, then you are limited to awarding out-of-pocket damages.

## POINTS & AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' PROPOSED CLOSING INSTRUCTION NO. 14:

- Eleventh Circuit Civil Pattern Jury Instructions (2022), Instruction 6.5;
- Fifth Circuit Civil Pattern Jury Instructions (2020), Instruction 7.1 (material misrepresentations and omissions; damages);
- 15 U.S.C. § 78n(a);
- 17 C.F.R. § 240.14a–9;
- Dkt. 160, Apr. 14, 2021 Memorandum Opinion and Order, at 22-23 ("The elements of a section 14(a) claim are: (1) defendants misrepresented or omitted a material fact in a proxy statement; (2) defendants acted at least negligently in distributing the proxy statement; and (3) the false or misleading proxy statement was an essential link in causing the corporate actions."); Dkt. 778, Aug. 12, 2024 Memorandum Opinion and Order, at 7 (same);
- *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (materiality);
- *Rubenstein v. Collins*, 20 F.3d 160, 167–69 (5th Cir. 1994) (predictions);
- *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988); *Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) (duty of care);

- *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 371–72 (5th Cir. 2004) (safe harbor);

- *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183, 189 (2015) (opinion statements);

- *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384–89 (1970) (essential link).

**Defendants' Proposal**

SECURITIES EXCHANGE ACT – § 14(a) and Rule 14a-9[5]

Class Plaintiffs assert a claim under Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 against Defendants Riverstone Holdings LLC, Alta Mesa, James T. Hackett, William Gutermuth, Jeffrey H. Tepper, and Diana J. Walters.

Section 14(a) of the Securities Exchange Act makes it "unlawful for any person . . . in contravention of such rules and regulations as the SEC may prescribe as necessary or appropriate in the public interest for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security."

Rule 14a-9 forbids a person from soliciting proxies, consents, or authorizations from security holders by any written or oral communication that, at the time and in light of the circumstances under which the person makes it, is false or misleading about any material fact, or which omits any material fact that is necessary to make the communication not false or misleading.

For the purposes of Rule 14a-9, a "security" is generally a share of stock that has the right to cast a vote in connection with the election of directors or approval of corporate actions or transactions. A "proxy" is simply an authorization the holder of stock grants to vote that stock. Because shareholders usually can't attend shareholder meetings in person, most votes cast at those meetings are cast through proxies that have been acquired from shareholders through a proxy solicitation. A "proxy solicitation" is a communication to shareholders under circumstances reasonably calculated to procure a proxy. A "proxy statement" is a document that must be sent to security holders whenever their votes are solicited.

To prove a claim under Exchange Act § 14(a) and Rule 14a-9, Class Plaintiffs must prove each of the following elements by a preponderance of the evidence:

---

[5] The Fifth Circuit Civil Pattern Jury Instructions do not include an instruction for Section 14(a)/Rule 14a-9 claims. Defendants' proposed instructions are thus based on the text of Section 14(a) and the Rule, the Eleventh Circuit Civil Pattern Jury Instruction, and applicable case law.

*First*, you must find that in soliciting proxies through the January 19, 2018 Silver Run II proxy statement, Defendants Riverstone Holdings LLC, Alta Mesa, James T. Hackett, William Gutermuth, Jeffrey H. Tepper, and Diana J. Walters misstated or omitted material information necessary to prevent the proxy solicitation from being misleading.

For purposes of Section 14(a), "solicit" is defined as:

(i)     any request for a proxy whether or not accompanied by or included in a form of proxy;

(ii)    any request to execute or not to execute, or to revoke, a proxy; or

(iii)   the furnishing of a form of proxy or other communication to security holders under circumstances reasonably calculated to result in the procurement, withholding or revocation of a proxy.

The simple appearance of one's name in the January 19, 2018 Silver Run II proxy statement does not trigger liability for any misstatement appearing therein.

*Second*, you must find that Defendants Riverstone Holdings LLC, Alta Mesa, James T. Hackett, William Gutermuth, Jeffrey H. Tepper, and Diana J. Walter actually knew the alleged misrepresentations or omissions in the January 19, 2018 Silver Run II proxy statement were materially false or misleading.

*Third*, you must find that the January 19, 2018 Silver Run II proxy statement directly authorized the loss-generating corporate action.

*Fourth*, you must find that the Class Plaintiffs suffered actual damages as a proximate result of a defendant's wrongful conduct.

## POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 14:

- 15 U.S.C. § 78n(a).

- Eleventh Circuit Civil Pattern Jury Instruction, Civil Cases (2024), Instruction 6.5.

- 17 C.F.R. § 240.14a–9.

- Mem. Op. and Order, at 22-23 ("The elements of a section 14(a) claim are: (1) defendants misrepresented or omitted a material fact in a proxy statement; (2) defendants acted at least negligently in distributing the proxy statement; and (3) the false or misleading proxy statement was an essential link in causing the corporate actions."); *c.f. Butala v. Owlet, Inc.*, No. 2:21-CV-09016-FLA (JEMX), 2024 WL 3648141, at *8 (C.D. Cal. Aug. 5, 2024) (for a Section 14(a) claim, "it is insufficient to allege merely that the [Defendants] should have known through due diligence

alone that the challenged statements were false, and that the [Defendants] acted negligently in signing a statement containing false information").

- 17 C.F.R. § 240.14a-1(*l*)(1).

- *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 68 (D.C. Cir. 1980) ("Of course, the simple appearance of one's name in a proxy statement does not trigger liability for any misstatement appearing therein. Instead, there must have been a substantial connection between the use of the person's name and the solicitation effort.") (internal quotations and citations omitted).

- Class Pls.' Opp'n to Proxy Defs.' Motion Summ. J. (Dkt. 571), at 11 (Class Plaintiffs, who failed to put forth an expert on the standard of care for soliciting a proxy statement, abandoned negligence and contend they will prove that the Proxy Defendants actually knew that each challenged statement in the Proxy was false or misleading); *SEC v. Shanahan*, 646 F.3d 536, 546-47 (8th Cir. 2011); *Karp v. First Conn. Bancorp., Inc.*, 535 F. Supp. 3d 458, 473-74 (D. Md. 2021) *Wilson v. Great Am. Indus. Inc.*, 855 F.2d 987, 995 (2d Cir. 1988); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 989 (E.D. Mo. 1999); *In re Wells Real Estate Inv. Trust Inc. Secs. Litig.*, 2010 WL 11468441, at *10 (N.D. Ga. Aug. 2, 2010); *Azar v. Blount Int'l, Inc.*, 2017 WL 1055966, at *9 (D. Or. Mar. 20, 2017); *Brown v. Brewer*, 2010 WL 2472182, at *14 (C.D. Cal. June 17, 2010); *In re Envision Healthcare Corp.*, 2019 WL 3494407, at *9 (D. Del. Aug. 1, 2019); *Fradkin v. Ernst*, 571 F. Supp. 829, 843 (N.D. Ohio 1983).

- *Hulling v. Bolen*, 548 F. Supp. 2d 336 (N.D. Tex. 2008) ("[I]t is well established that the "essential link" required for proxy fraud liability can only be established when the proxy at issue directly authorizes the loss-generating corporate action."); *In re Browning-Ferris Indus., Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994); *Camelot Event Driven Fund v. Alta Mesa Resources, Inc.*, 2021 WL 1416025, at *10 (S.D. Tex. Apr. 14, 2021) (Hanks, J.).

**DISPUTED CLOSING INSTRUCTION NO. 15:**

**Defendants' Proposal**

§ 14(a) and Rule 14a–9:  MISSTATEMENTS AND OMISSIONS[6]

To satisfy the first element of their Section 14(a) claims against a Defendant, Class Plaintiffs must prove, by a preponderance of the evidence, that the Defendant made a material misstatement or omission.[7]

A "misstatement" is a statement that is not true when it is made.

An "omission" is actionable only if a Defendant omitted to state facts that would be necessary to make the statement made by that Defendant not misleading, in light of the circumstances under which the statement was made.[8]  Before determining if other facts are needed to make a statement not misleading, Class Plaintiffs must identify affirmative assertions, or statements that were actually made, by the Defendant.[9]

Defendants do not have an affirmative duty to disclose any and all material information.[10]  Absent a duty to disclose, silence is not misleading.[11]  Even a duty to disclose, however, does not automatically render silence misleading.[12]  Thus, Class Plaintiffs cannot recover under Section 14(a) based on a "pure omission."[13]  A "pure omission" occurs when a speaker says nothing, in circumstances that do not give any

---

[6]  *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("Because we have concluded that Plaintiffs failed to allege any misstatements or omissions by JPMC that could be found to be material, Plaintiffs' claims under section 14(a) of the Exchange Act and section 11 of the Securities Act must also fail."); *Heinze v. Tesco Corp.*, 971 F.3d 475, 483 (5th Cir. 2020).

[7]  Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; 17 C.F.R. § 240.10b–5(b).

[8]  Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, *9 (S.D. Tex. Aug. 12, 2024) ("Disclosure is required under these provisions only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." (cleaned up)) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)).

[9]  *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024).

[10]  *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *9 ("It bears emphasis that § 10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information." (cleaned up)) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)); *Macquarie Infrastructure Corp.*, 601 U.S. at, 263.

[11]  *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *9 ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5." (cleaned up)) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 238, 239 n.17 (1988)); *see also Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019) ("To plead an omission with sufficient particularity, plaintiff must specifically plead when a given disclosure should have been made.").

[12]  *Macquarie Infrastructure Corp.*, 601 U.S. at 263.

[13]  *Macquarie Infrastructure Corp.*, 601 U.S. at 263.

particular meaning to that silence.[14]

---

[14] *Macquarie Infrastructure Corp.*, 601 U.S. at 263.

## DISPUTED CLOSING INSTRUCTION NO. 16:

## Defendants' Proposal

### § 14(a) and Rule 14a-9: MATERIALITY[15]

If you find that Class Plaintiffs have established that a Defendant made a misstatement or omission, Class Plaintiffs must also prove that the misstatement or omitted fact was material.[16]

A misstatement or omission concerning a security is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding whether to buy or sell that security.[17] A material misrepresentation gives a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.[18] Put another way, there must be a substantial likelihood that the disclosure of the omitted fact [or correction of the misstated fact] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available to the investor.[19]

---

[15]   *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Heinze v. Tesco Corp.*, 971 F.3d 475, 480 (5th Cir. 2020); *Camelot Event Driven Fund v. Alta Mesa Resources, Inc.*, 2021 WL 1416025, at *10 (S.D. Tex. Apr. 14, 2021) (quoting *TSC Industries* to apply materiality standard to plaintiffs' Section 14(a) claims).

[16]   Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; *Basic Inc.*, 485 U.S. at 238.

[17]   *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Basic Inc.*, 485 U.S. at 231; *Heinze v. Tesco Corp.*, 971 F.3d 475, 480 (5th Cir. 2020); *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002); *Southland Sec. Corp.*, 365 F.3d at 362; Final Jury Instructions at 40, *In re Tesla Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal. Jan. 15, 2023), ECF No. 573.

[18]   *Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541 (5th Cir. 2008); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *Emps.' Ret. Sys. of R. I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1164 (10th Cir. 2018); Final Jury Instructions at 40, *In re Tesla Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal. Jan. 15, 2023), ECF No. 573.

[19]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *3 ("Omissions are material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (cleaned up)) (citing *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 747 (S.D. Tex. 2012) (quoting *Basic Inc.*, 485 U.S. at 232); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) (quoting *TSC Indus.*, 426 U.S. at 449); Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002); *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988).

A factual representation can be untrue but not material.[20]  For example, if a company inaccurately reports its revenue, this representation is untrue.  The factual representation would be material if the difference between the disclosed revenue and the accurate revenue is significant enough to influence a reasonable investor's decision whether to buy or sell securities in that company.  If it is not, it would not be material.[21]

You must judge whether a misstatement or omission was material in light of all its surrounding circumstances, including hedges, disclaimers, and apparently conflicting information, not in the abstract.[22]  In addition, you should consider whether the omitted or misstated information was already in the public domain and the market was aware of the truth of the matter.  If you find the market was aware of the information that was misrepresented or omitted, then you should find that the misrepresentation was not material.[23]  So, if analysts or investors were aware of a fact, from whatever source, then the Defendants cannot be liable for misrepresenting or omitting disclosure of that fact.[24]

In addition, a misstatement or omission concerning a security is material if there is a substantial likelihood that a reasonable shareholder consider it important in deciding how to vote.[25]  In other words, a reasonable investor would have regarded what was not disclosed to it as having significantly altered the total mix of information available.[26]  Vague, optimistic statements regarding a company's performance, progress, or goals are not material because a reasonable investor would not rely on them.[27]

---

[20]   Final Jury Instructions at 40, *In re Tesla Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal. Jan. 15. 2023), ECF No. 573; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988) ("It is not enough that a statement is false or incomplete, if the misrepresented fact is otherwise insignificant.").

[21]   Final Jury Instructions at 40, In re Tesla Inc. Sec. Litig., No. 3:18-cv-04865-EMC (N.D. Cal. Jan. 15. 2023), ECF No. 573.

[22]   *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003); *Owens v. Jastrow*, 789 F.3d 529, 541 (5th Cir. 2015); *Omnicare, Inc.*, 575 U.S. at 190; *see also* Class Pls.' Opp'n to Mot. Summ. J. by Defs. Alta Mesa Resources, Inc., Chappelle, Ellis and Smith (Dkt. 572), at 19 ("[M]ateriality is not judged in the abstract, but in light of the surrounding circumstances.").

[23]   Jury Instructions at 13, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 07-61542-UU (S.D. Fla. Nov. 9. 2010), ECF No. 635.

[24]   Jury Instructions at 13, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 07-61542-UU (S.D. Fla. Nov. 9. 2010), ECF No. 635.

[25]   *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Heinze v. Tesco Corp.*, 971 F.3d 475, 480 (5th Cir. 2020); *Camelot Event Driven Fund v. Alta Mesa Resources, Inc.*, 2021 WL 1416025, at *10 (S.D. Tex. Apr. 14, 2021).

[26]   *S.E.C. v. Gann*, 565 F.3d 932, 937 n.17 (5th Cir. 2009); *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

[27] *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 381 (S.D. Tex. 2011) ("Vague, optimistic statements … are not actionable.  Allegations that amount to little more than corporate 'cheerleading' are

To determine the materiality of a misstatement or omission in a proxy statement, you must take into account all information in the proxy statement, as well as other information in the public domain and facts reasonably available to the public to be used by shareholders in interpreting the information in the proxy sent to them.[28]

---

puffery, projections of future performance not worded as guarantees, and are not actionable under federal securities law because no reasonable investor would consider such vague statements material[.]"), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419 (5th Cir. 2001) ("[P]laintiffs' allegations regarding statements by the defendants that Vasomax was a 'fast-acting,' 'improved formulation' for delivering phentolamine fail because they identify nothing more than inactionable 'puffing.'"); *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 731 (5th Cir. 2019) (company's "aspirational statements" of "generalized positive goals" were inactionable "corporate cheerleading").

[28] *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 267 (5th Cir. 1990) (quoting T. Hazen, THE LAW OF SECURITIES REGULATION § 11.6 at 324).

**DISPUTED CLOSING INSTRUCTION NO. 17:**

**Defendants' Proposal**

§ 14(a) and Rule 14a-9: FORWARD-LOOKING STATEMENTS[29]

Some of the statements that Class Plaintiffs allege contain material misrepresentations or omissions are "forward-looking statements."[30] In considering whether the Defendant made a misstatement of a material fact or omitted a material fact necessary to make other statements, in light of the circumstances under which they were made, not misleading, you must distinguish between statements of fact and forward-looking statements.[31]

Forward-looking statements, such as predictions or expressions of opinion, are not representations of material facts so long as they are not worded as fact or guarantees and the person making the statements reasonably believed them at the time they were made.[32] Forward-looking statements include:

- financial projections;

- management's plans and objectives;

- expectations for future performance, even if they appear within management's discussion of the company's financial condition or operational results; and

- any assumptions underlying a forward-looking statement.[33]

Projections, predictions, and other forward-looking statements are not a basis for a violation of the federal securities laws simply because actual results differ from what was

---

[29] 15 U.S.C. § 78u-5(c)(1)(A), (i)(1); *see Panella v. Tesco Corp.*, 2019 WL 1606349, at *4 (S.D. Tex. Mar. 29, 2019) ("[C]laims under Section 14(a) are subject to the PSLRA's safe harbor for 'forward-looking statements.'"), *aff'd sub nom.*, *Heinze v. Tesco Corp.*, 971 F.3d 475 (5th Cir. 2020); *Edwards v. McDermott Int'l*, 2021 WL 1421603, at *7 (S.D. Tex. Apr. 13, 2021) (Hanks, J.) (applying PSLRA's safe harbor for forward-looking statements to Section 14(a) claims).

[30] Jury Charge at 32, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 1:02-cv-05571-PAE-HBP (S.D.N.Y. May 13, 2010), ECF No. 1052-2; Jury Instructions at 17, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 07-61542-UU (S.D. Fla. Nov. 9, 2010), ECF No. 635.

[31] Ninth Circuit Model Civil Jury Instruction (2021), Instruction 18.4; 15 U.S.C. § 78u-5(c)(1)(A).

[32] Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1.

[33] 15 U.S.C. § 78u-5(i)(1); Jury Charge at 32, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 1:02-cv-05571-PAE-HBP (S.D.N.Y. May 13, 2010), ECF No. 1052-2 at 35.

projected or predicted.[34]  Rather, such forward-looking statements may constitute a basis for a violation of the federal securities laws only if Class Plaintiffs prove by a preponderance of the evidence that at the time each forward-looking statement was made, the statement:

1.  was not identified as a forward-looking statement or accompanied by meaningful cautionary statements;

2.  was worded as a guarantee; and

3.  was made by the speaker with actual knowledge that the statement was materially false or misleading.[35]

As to the first element, a cautionary statement is meaningful if it identifies important factors that could cause actual results to differ materially from those in the forward-looking statement.[36]

As to the second element, if you find that a forward-looking statement was not worded as a guarantee, Class Plaintiffs cannot prove their Section 14(a) claim with respect to that statement.[37]

As to the third element, a Defendant has "actual knowledge" that a forward-looking statement was materially false or misleading only if, at the time the Defendant made the statement, the Defendant knew that event predicted to occur in the future would not actually occur.  Even if a Defendant was severely reckless about whether a forward-looking statement would come to pass at the time the statement was made, that is not enough to prove the Defendant acted with "actual knowledge."[38]

If you conclude that Class Plaintiffs have not proven all of elements 1 through 3 by a preponderance of the evidence for each forward-looking statement, then your verdict must be for the Defendants.

---

[34]  Ninth Circuit Model Civil Jury Instruction (2021), Instruction 18.4.

[35]  15 U.S.C. § 78u-5(c)(1); *Oklahoma Firefighters Pension & Retirement Sys. v. Six Flags Ent't Corp.*, 58 F.4d 195, 214-15 (5th Cir. 2023); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004).

[36]  15 U.S.C. § 78u-5(c)(1)(A)(i); *Oklahoma Firefighters Pension & Retirement Sys.*, 58 F.4th at 211.

[37]  *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993).

[38]  *Oklahoma Firefighters Pension & Retirement Sys.*, 58 F.4th at 214-15 (agreeing with other circuits to hold that "[l]iability arises only upon proof of knowing falsity because the provision explicitly specifies that a defendant must have made the statement with 'actual knowledge' of its falsity"); *see also* Class Pls.' Opp'n to Mot. Summ. J. by Defs. Alta Mesa Resources, Inc., Chappelle, Ellis and Smith (Dkt. 572), at 16-18 (Class Plaintiffs conceding that knowing falsity is the appropriate standard).

**DISPUTED CLOSING INSTRUCTION NO. 18:**

**Defendants' Proposal**

§ 14(a) and Rule 14a-9: OPINION STATEMENTS[39]

In considering whether any Defendant made a misstatement of a material fact or omitted a material fact necessary to make other statements, in light of the circumstances under which they were made, not misleading, you must distinguish between statements of fact and opinion statements.[40]

An "opinion" statement is a belief, a view, or a sentiment which the mind forms of persons or things.[41]  For example, financial projections, or predictions about the amount of oil in the Earth, are not only forward-looking statements, but also statements of opinion.[42]

If you find that a Defendant's statement is an opinion, the Defendant may be liable for that statement only if Class Plaintiffs prove by a preponderance of the evidence that:

1.   the Defendant did not, in fact, hold the stated opinion when the Defendant made it, and the opinion was objectively untrue;

2.   the opinion statement contained statements of fact that were untrue;

3.   The opinion statement omitted material facts known by the Defendant at the time it was made regarding the basis for the Defendant's opinion, and the

---

[39] *Edwards v. McDermott Int'l*, 2021 WL 1421603, at *7 (S.D. Tex. Apr. 13, 2021) (Hanks, J.) (applying the *Omnicare* framework to Section 14(a) claims).

[40]  Ninth Circuit Model Civil Jury Instruction (2017), Comment to Instruction 18.1 (modified); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

[41]  *Omnicare, Inc.*, 575 U.S. at 183.

[42]  *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 524 (5th Cir. 1993) ("Statements that are predictive in nature are actionable only if they were false when made."); *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002) ("[P]rojections of future performance not worded as guarantees are generally not actionable under the federal securities laws as a matter of law."); *Southland Sec. Corp.*, 365 F.3d at 372 ("[P]redictions of future earnings and revenues … meet the PSLRA's definition of a forward-looking statement."); *see also Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 227 (S.D.N.Y. 2018), *aff'd sub nom. Kapitalforeningen Lægernes Inv. V. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019) (statements that defendant "expect[s] revenue to grow," "see[s] topline momentum," "still expect[s]" growth, "expect[s] stronger commercial aftermarket," is "on the right track," and is "moving along exactly in line" with expectations were non-misleading statements of opinion under *Omnicare*).

omission of those facts made the opinion misleading.[43]

A reasonable investor understands that opinions sometimes rest on a weighing of competing facts. Therefore, an opinion statement is not necessarily misleading merely because a defendant knows, but fails to disclose, some fact cutting the other way.[44] Additionally, an opinion statement is not misleading simply because the stated opinion turns out to be wrong.

---

[43] *See Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 672-73 (N.D. Tex. 2022); *In re Plains All Am. Pipeline*, L.P. Sec. Litig., 307 F. Supp. 3d 583, 616-617 (S.D. Tex. 2018); *Omnicare, Inc.*, 575 U.S. at 176-77, 189.

[44] *Omnicare, Inc.*, 575 U.S. at 189-90 ("Reasonable investors understand that opinions sometimes rest on a weighing of competing facts. … A reasonable investor does not expect that every fact known to an issuer supports its opinion statement."); *In re B.P. p.l.c.*, 2016 WL 3090779, at *13 n.141 (S.D. Tex. May 31, 2016) (same); *City of Warren Police & Fire Retirement Sys. V. Prudential Fin.*, 70 F.4th 668, 685 (3d Cir. 2023) ("More broadly, every other Court of Appeals to encounter the issue has applied the Omnicare framework for opinion falsity to claims for Rule 10b-5 violations. *See Emps.' Ret. Sys. Of the City of Baton Rouge & Par. Of E. Baton Rouge v. MacroGenics*, Inc., 61 F.4th 369, 386-91 (4th Cir. 2023); *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 7 (1st Cir. 2021); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1322 n.7 (11th Cir. 2019); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. V. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017); *Tongue v. Sanofi*, 816 F.3d 199, 209–10 (2d Cir. 2016); *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1159 (10th Cir. 2015).").

**DISPUTED CLOSING INSTRUCTION NO. 19:**

**Defendants' Proposal**

§ 14(a) and Rule 14a-9: ACTUAL KNOWLEDGE

The second element of a Section 14(a) claim requires Class Plaintiffs to prove by a preponderance of the evidence that the particular Defendant actually knew the alleged misrepresentations or omissions in the proxy were materially false or misleading.  Actual knowledge is what a person clearly knows; it is not what a person merely suspects.

**POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 19:**

- Class Pls.' Opp'n to Proxy Defs.' Motion Summ. J. (Dkt. 571), at 11 (Class Plaintiffs, who failed to put forth an expert on the standard of care for soliciting a proxy statement, abandoned the standard of negligence and contend they will prove actual knowledge, *i.e.*, that the Proxy Defendants actually knew that each challenged statement in the Proxy was false or misleading).

- *SEC v. Shanahan*, 646 F.3d 536, 546-47 (8th Cir. 2011); *Karp v. First Conn. Bancorp., Inc.*, 535 F. Supp. 3d 458, 473-74 (D. Md. 2021) *Wilson v. Great Am. Indus. Inc.*, 855 F.2d 987, 995 (2d Cir. 1988); *In re BankAmerica Corp. Sec. Litig.*, 78 F. Supp. 2d 976, 989 (E.D. Mo. 1999); *In re Wells Real Estate Inv. Trust Inc. Secs. Litig.*, 2010 WL 11468441, at *10 (N.D. Ga. Aug. 2, 2010); *Azar v. Blount Int'l, Inc.*, 2017 WL 1055966, at *9 (D. Or. Mar. 20, 2017); *Brown v. Brewer*, 2010 WL 2472182, at *14 (C.D. Cal. June 17, 2010); *In re Envision Healthcare Corp.*, 2019 WL 3494407, at *9 (D. Del. Aug. 1, 2019); *Fradkin v. Ernst*, 571 F. Supp. 829, 843 (N.D. Ohio 1983).

## DISPUTED CLOSING INSTRUCTION NO. 20:

## Defendants' Proposal

### § 14(a) and Rule 14a-9: ESSENTIAL LINK IN THE ACTION

Class Plaintiffs and must prove by a preponderance of the evidence that an "essential link" exists between the January 19, 2018 Silver Run II proxy statement and the harm. Said differently, Class Plaintiffs must prove by a preponderance of the evidence that their alleged injury resulted directly from the business combination itself, not other events or occurrences.

## POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 20:

- Eleventh Circuit Pattern Jury Instruction, Civil Cases (2024), Instruction 6.5; *Hulling v. Bolen,* 548 F. Supp. 2d 336 (N.D. Tex. 2008) ("[I]t is well established that the "essential link" required for proxy fraud liability can only be established when the proxy at issue directly authorizes the loss-generating corporate action."); *In re Browning-Ferris Indus., Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993), *aff'd sub nom. Cohen v. Ruckelshaus*, 20 F.3d 465 (5th Cir. 1994); *Camelot Event Driven Fund v. Alta Mesa Resources, Inc.*, 2021 WL 1416025, at *10 (S.D. Tex. Apr. 14, 2021) (Hanks, J.).

- *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 340 (N.D. Tex. 2008); *In re Browning-Ferris Indus., Inc., S'holder Derivative Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993).

51

**DISPUTED CLOSING INSTRUCTION NO. 21:**

**Defendants' Proposal**

§ 14(a) and Rule 14a-9: ECONOMIC LOSS, LOSS CAUSATION, AND DAMAGES[45]

*Economic Loss*

Class Plaintiffs must prove by a preponderance of the evidence is that they actually suffered an economic injury.[46]

*Loss Causation*

Class Plaintiffs must prove by a preponderance of the evidence is that a material misrepresentation or omission by a Defendant was the proximate cause of the Class Plaintiffs' economic injury.[47]

To meet their burden to establish causation, Class Plaintiffs must prove by a preponderance of the evidence, and for each alleged misstatement or omission, that

    (i)    the alleged misstatement or omission was corrected on either March 29, 2018; August 14, 2018; November 13, 2018; February 29, 2019; or May 17, 2019;

    (ii)    the correction of the alleged misstatement or omission played a substantial

---

[45] *Edwards v. McDermott Int'l, Inc.*, 2021 WL 1421603, at *6 (S.D. Tex. Apr. 13, 2021) (Hanks, J.) (applying *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) and loss causation requirements to Section 14(a) claims); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (requiring both economic loss and proximate causation under loss causation in the Section 10(b) securities fraud context). Even though the Supreme Court has not separately held that loss causation must be proved under Section 14(a) as well as Section 10(b), there is growing consensus among circuit courts that the loss causation requirement of 15 U.S.C. § 78u-4(b)(4) applies equally to Section 14(a) and 10(b) claims. *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) ("We have also noted that both loss causation and transaction causation must be proven in the context of a private action under § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder."); *Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 37 (2d Cir. 2021); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 637-38 & n.1 (7th Cir. 2021); *New York City Employees' Retirement Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc); *Karp v. First Conn. Bancorp, Inc.*, 69 F.4th 223, 234 (4th Cir. 2023); *In re Resolute Energy Corp. Sec. Litig.*, 2022 WL 260059, at *2-3 (3rd Cir. Jan. 27, 2022); *see also Jaroslawicz v. M&T Bank Corporation*, 2024 WL 474846, at *13 (D. Del. 2024) ("Loss causation requires proving both economic loss and proximate causation.").

[46] Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1.

[47] Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *see also FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1311-12 (11th Cir. 2011).;

part in causing the price of AMR securities to decline on any of March 29–April 2, 2018; August 14–15, 2018; November 14–15, 2018; February 26–27, 2019; or May 20, 2019.[48]

There may be factors other than the alleged misrepresentations or omissions that caused Alta Mesa securities' price to decline on any given day, such as changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, the materialization of known risks, or other factors independent of the fraud.[49] Defendants are not liable for any decline in the price of AMR securities attributable to these other non-fraud related factors.[50] Class Plaintiffs have the burden of proving by a preponderance of the evidence that the decline in the price of AMR securities can be attributed to the correction of one or more alleged misstatements or omissions, rather than these non-fraud related factors, on the dates previously listed.[51] This means that Class Plaintiffs must disaggregate, or separate out, (i) any decline in the price of AMR securities caused by the correction of an alleged misrepresentation or omission from (ii) the market's reaction to any other factors, such as other information or events that could affect AMR's stock price.[52]

---

[48]  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255 (5th Cir. 2009); *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 903-04 (5th Cir. 2018); *see also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund (LOCAL 66)*, 579 F.3d 401, 407 (5th Cir. 2009); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009); ABA Model Jury Instructions Securities Litigation ¶ 4.02[6].

[49]  *Dura Pharms., Inc.*, 544 U.S. at 342-43; *Alaska Elec. Pension Fund*, 572 F.3d at 229; *Menorah Mivtachim Ins. Ltd.*, 2024 WL 1613907, at *2.

[50]  *Dura Pharms., Inc.*, 544 U.S. at 342-43; *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 906 (W.D. Tex. 2008); *Greenberg v. Crossroads Sys. Inc.*, 364 F.3d 657, 661 (5th Cir. 2004).

[51]  *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 904 (5th Cir. 2018); *Alaska Elec. Pension Fund*, 572 F.3d, at 230; *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 315 (5th Cir. 2008); *Greenberg*, 364 F.3d at 661; *Fener v. Operating Eng'rs Constr. Indus. & Miscellaneous Pension Fund (LOCAL 66)*, 579 F.3d 401, 411 (5th Cir. 2009); *Dura Pharms., Inc.*, 544 U.S. at 342-43; *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 906 (W.D. Tex. 2008).

[52]  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("But the [securities] statutes make these latter actions available, not to provide investors with broad insurance against market losses, but *to protect them against those economic losses that misrepresentations actually cause*." (emphasis added)); *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 665-66 (5th Cir. 2004) ("In sum, in order for plaintiffs to show that a stock's price was actually affected through evidence of a significant price decrease following the revelation of the alleged "truth" of earlier false statements, plaintiffs must demonstrate . . . that it is more probable than not that it was this negative statement, and not other unrelated negative statements, that caused a significant amount of the decline."); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 688 (5th Cir. 2015) ("If certain corrective events were later determined to be independent of the misrepresentations, but those corrective events could not be disaggregated from the damages model, the plaintiffs would travel to a place forbidden by *Comcast*: they would recover damages other than those 'resulting from the particular . . . injury on which [defendant's] liability in this action is premised.'" (citation omitted)),.

***Damages***[53]

I am instructing you on damages only so that you will have guidance in the event you decide that one or more of these Defendants are liable and that the Class Plaintiffs are entitled to recover money from those Defendants.[54]  You do not need to, and should not, consider the question of damages if you find that Class Plaintiffs have not proved all of the elements of their Section 14(a) claims against at least one Defendant.

If you find that Class Plaintiffs have proven each element of their Section 14(a) claims against any Defendant by a preponderance of the evidence, then you must consider and decide the specific amount of inflation per share of Alta Mesa securities caused by the material misrepresentations for which Plaintiffs have proven a violation of Section 14(a) claims.[55]

You may award only actual damages in the specific amount of inflation per share of AMR securities caused by each particular material misrepresentation on which Class Plaintiffs have prevailed.  Your determination must be based on evidence and not upon speculation, guesswork or conjecture.  You should assess the monetary amount that a preponderance of the evidence justifies as the impact of each misrepresentation on the price of AMR securities—no more, no less.  You should also consider any contributing factors, which taken separately or together, account for some or all of the declines in the price of AMR securities.  You must not select an amount designed to punish or penalize any Defendant.  Class Plaintiffs have the burden of proving damages by a preponderance of the evidence.  Class Plaintiffs also bear the burden of disaggregating, or separating out, (i) any declines in the price of AMR securities that were caused by other contributing factors from (ii) the portion of the price declines that were caused by the alleged misrepresentations or omissions.[56]

---

[53] Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1 (modified); *id.* at Instruction 15.1 (modified); Eleventh Circuit Pattern Civil Jury Instruction (2024), Instruction 6.2 (modified); Ninth Circuit Model Civil Jury Instruction (2017), Model Instruction 18.9 (modified); *Dura Pharm., Inc.*, 544 U.S. at 342-43; *Alaska Elec. Pension Fund*, 572 F.3d at 230-33.

[54] Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 15.1 (modified).

[55] *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 207–08 (N.D. Tex. 1997) (citing *Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 785 F.2d 1274, 1278 (5th Cir. 1986)); *id.* (citing *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 682 (5th Cir. 2015).

[56] *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("But the [securities] statutes make these latter actions available, not to provide investors with broad insurance against market losses, but *to protect them against those economic losses that misrepresentations actually cause*." (emphasis added)); *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 665-66 (5th Cir. 2004) ("In sum, in order for plaintiffs to show that a stock's price was actually affected through evidence of a significant price decrease following the revelation of the alleged "truth" of earlier false statements, plaintiffs must demonstrate . . . that it is more probable than not that it was this negative statement, and not other unrelated negative statements, that

You should not interpret the fact that I am giving instructions about Class Plaintiffs' damages as an indication in any way that I believe that Class Plaintiffs have proved their case.  It is your task first to decide whether a Defendant is liable under Section 14(a).

---

caused a significant amount of the decline."); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 688 (5th Cir. 2015) ("If certain corrective events were later determined to be independent of the misrepresentations, but those corrective events could not be disaggregated from the damages model, the plaintiffs would travel to a place forbidden by *Comcast*: they would recover damages other than those 'resulting from the particular . . . injury on which [defendant's] liability in this action is premised.'" (citation omitted)).

## DISPUTED CLOSING INSTRUCTION NO. 22:

## Class Plaintiffs' Proposal

### CLASS PLAINTIFFS' EXCHANGE ACT CLAIM – § 10(b) and Rule 10b–5

Class Plaintiffs claim that Defendants AMR, Chappelle, and/or Hackett violated Section 10(b) of the Exchange Act and the corresponding SEC Rule 10b–5, which make it unlawful to:

1.    employ any device, scheme, or artifice to defraud;

2.    make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement not misleading; or

3.    engage in any act, practice, or course of business that operates or would operate as a fraud or deceit on any person,

in connection with the purchase or sale of any security.

To succeed on this claim, Class Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1.    a material misrepresentation or omission by Defendants AMR, Chappelle and/or Hackett;

2.    made with an intent to deceive, manipulate, or defraud;

3.    a connection between the misrepresentation or omission and the purchase or sale of a security;

4.    reliance on the misrepresentation or omission;

5.    economic loss; and

6.    loss causation.

The first element requires a material misrepresentation or omission by Defendants AMR, Chappelle and/or Hackett.  A "misrepresentation" is a statement that is not true. Forward-looking statements, such as predictions or expressions of opinion, are not representations of material facts so long as they are not worded as fact or guarantees and the person making the statements reasonably believed them at the time they were made.  In other words, if the person making the statements knew that they were false or misleading at the time they were made, those statements are *not* forward-looking.  An "omission" is actionable if it omitted to state facts that would be necessary to make other statements by Defendants AMR, Chappelle, and/or Hackett, in light of the circumstances under which

they were made, not misleading.  A "material" fact is one that a reasonable investor would consider significant in the decision whether to invest, a fact that alters the "total mix" of information available to a reasonable investor.  A minor or trivial detail is not material.

To establish the second element, that Defendants AMR, Chappelle, and/or Hackett acted with an intent to deceive, manipulate, or defraud, Class Plaintiffs must show that these defendants stated material facts they knew to be false or with reckless disregard for their truth or falsity, stated untrue facts with reckless disregard for their truth or falsity, or that they knew of the existence of material facts that were not disclosed although they knew that knowledge of those facts would be necessary to prevent their other statements from being misleading.  Put another way, scienter requires an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it.  Class Plaintiffs do not satisfy this burden of proof merely by showing that Defendants AMR, Chappelle, and/or Hackett acted accidentally or made a mistake.

To satisfy the third element, Class Plaintiffs must prove that members of the Class purchased or otherwise acquired AMR securities between when the alleged misrepresentations and omissions were made and when the truth was revealed.

Class Plaintiffs satisfy the fourth element of the claim, reliance, if they prove that they have met the requirements for invoking a presumption of class-wide reliance that is referred to as the fraud-on-the-market presumption.  To invoke the fraud-on-the-market presumption, Class Plaintiffs must show that:  (1) that the alleged misrepresentations at issue were publicly known; (2) that they were material; (3) that AMR's securities at issue traded in an efficient market; and (4) that Class members traded AMR securities between when the alleged misrepresentations and omissions were made and when the truth was revealed.

Defendants AMR, Chappelle, and Hackett may rebut, or overcome, the presumption of reliance if they prove, by a preponderance of the evidence, that the alleged misrepresentations and omissions did not affect the price of AMR's securities.

As to the fifth and sixth elements of the claim, economic loss and loss causation, Class Plaintiffs must show that they actually suffered an economic injury, and that there is a causal connection between the alleged misrepresentations and omissions and that economic injury.

If you find for Class Plaintiffs on their Section 10(b) claim, you must then consider the issue of the amount of money damages to award.  You should award Class Plaintiffs an amount of money they show by a preponderance of the evidence to be fair and adequate compensation for the loss that proximately resulted from Defendants AMR, Chappelle, and/or Hackett's wrongful conduct that you have found.

**POINTS & AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' PROPOSED CLOSING INSTRUCTION NO. 22:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 7.1;

- 15 U.S.C. § 78j(b);

- 17 C.F.R. § 240.10b–5;

- Dkt. 778, Aug. 12, 2024 Memorandum Opinion and Order, at 6-7 (for second element (scienter));

- *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (for second element (scienter));

- *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (for third element (in connection with));

- *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 661–62 (5th Cir. 2004) (for fourth element (reliance));

- *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 360–64 (5th Cir. 1987) (for fourth element (reliance));

- *Hsu v. Puma Biotechnology, Inc.*, Case No. 8:15-cv-00865-AG-SHK (C.D. Cal.), Final Jury Instructions (ECF 700) at Court's Instruction No. 32 (for fourth element (reliance)).

**Defendants' Proposal**

<u>SECURITIES EXCHANGE ACT – § 10(b) and Rule 10b-5</u>

Class Plaintiffs claim that Defendants AMR, Harlan H. Chappelle, and James T. Hackett violated Section 10(b) of the Exchange Act and SEC Rule 10b-5, which make it unlawful to make any untrue statement of a material fact, or to omit to state a material fact necessary in order to make the statement not misleading, in connection with the purchase or sale of any security.

To succeed on this claim against any of the aforementioned Defendants, Class Plaintiffs must prove each of the following elements by a preponderance of the evidence:

1.     a material misstatement or omission by the Defendant; [57]

2.     made with an intent to deceive, manipulate, or defraud;

3.     a connection between the misrepresentation or omission and the purchase or

---

[57] 17 C.F.R. § 240.10b–5(b).

sale of a security;

4.      reliance on the misrepresentation or omission;

5.      economic loss; and

6.      loss causation.

## **POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 22:**

- Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; 17 C.F.R. § 240.10b–5(b).

## DISPUTED CLOSING INSTRUCTION NO. 23:

## Defendants' Proposal

### § 10(b) and Rule 10b-5: MISSTATEMENTS AND OMISSIONS

I have already instructed you on the definition of "Misstatement Or Omission" in Instruction No. [X].  You are to consider that definition when deciding whether Class Plaintiffs have proven the first element of their Section 10(b) and Rule 10b-5 claims by a preponderance of the evidence.

**DISPUTED CLOSING INSTRUCTION NO. 24:**

**Defendants' Proposal**

### § 10(b) and Rule 10b-5: FORWARD-LOOKING STATEMENTS

When deciding whether Class Plaintiffs have proven the first element of their Section 10(b) and Rule 10b-5 claims by a preponderance of the evidence, you must distinguish between statements of fact and forward-looking statements. I have already instructed you on the meaning of "Forward-Looking Statements" in Instruction No. [X]. You are to consider that definition when deciding whether Class Plaintiffs have proven the first element of their Section 10(b) and Rule 10b-5 claims by a preponderance of the evidence.

## DISPUTED CLOSING INSTRUCTION NO. 25:

## Defendants' Proposal

### § 10(b) and Rule 10b-5: OPINIONS

When deciding whether Class Plaintiffs have proven the first element of their Section 10(b) and Rule 10b-5 claims by a preponderance of the evidence, you must distinguish between statements of fact and opinion statements.  I have already instructed you on the meaning of "Opinion Statements" in Instruction No. [X].  You are to consider that definition when deciding whether Class Plaintiffs have proven the first element of their Section 10(b) and Rule 10b-5  claims by a preponderance of the evidence.

**DISPUTED CLOSING INSTRUCTION NO. 26:**

**Defendants' Proposal**

§ 10(b) and Rule 10b-5: MATERIALITY

I have already instructed you on the definition of "Materiality" in Instruction No. [X].  You are to consider that definition when deciding whether Class Plaintiffs have proven the first element of their Section 10(b) and Rule 10b-5 claims by a preponderance of the evidence.

**DISPUTED CLOSING INSTRUCTION NO. 27:**

**Defendants' Proposal**

<u>§ 10(b) and Rule 10b-5: "MADE BY"</u>

A Defendant can only be liable for a material misstatement or omission that he or she made.[58]

A statement is "made" by a person when the person states it themselves or has ultimate authority over the statement, including its content and whether and how to communicate it. Without such control, a person or entity can merely suggest what to say, not "make" a statement in its own right.[59]

A statement is not "made" by a person just because (1) the person was a director or officer, even if the individual reviewed statements of others;[60] (2) because an individual substantially assists or merely participates in the drafting of a statement made by another individual; or (3) because a person is present and does not correct a statement made by another individual.[61]   Attribution to a particular person within a statement is strong evidence that a statement was made by—and only by—the party to whom it is attributed. For example, when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it.  And it is the speaker who takes credit—or blame—for what is ultimately said.[62]

A person who did not sign the statement cannot be considered a maker without evidence that the person's involvement in preparing the filings was equivalent to signing

---

[58]   Jury Charge at 27, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 1:02-cv-05571-PAE-HBP (S.D.N.Y. May 13, 2010), ECF No. 1052-2.

[59]   *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *Lorenzo v. SEC*, 587 U.S. 71, 74 (2019); *In re Enron Corp. Secs., Derivative, & "ERISA" Litig.*, 238 F. Supp. 3d 799, 822-23 (S.D. Tex. 2017).

[60]   *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 779 (S.D. Tex. 2012) ("Corporate officers . . . cannot be liable for allegedly fraudulent statements solely because of their positions at BP."); *Kerr v. Exobox Techs. Corp.*, 2012 WL 201872, at *11 (S.D. Tex. Jan. 23, 2012) (defendant who held 100% or 88% of company during the relevant period and who signed updates attached to the company's SEC filings had not "made" any statements in the company's SEC filings); *SEC v. Killion*, 2017 WL 7052310, at *7 (S.D. Tex. Mar. 24, 2017) (CFO did not "make" statements contained in SEC filings merely by reviewing those documents prior to filing).

[61]   *Janus Cap. Grp., Inc.*, 564 U.S. at 142-44 ("Such suits—against entities that contribute 'substantial assistance' to the making of a statement but do not actually make it—may be brought by the SEC, see 15 U.S.C. § 78t(e), but not by private parties."); *see Lorenzo v. SEC*, 587 U.S. at 74.

[62]   *Janus Cap. Grp., Inc.*, 564 U.S. at 142-43.

them.[63]

---

[63] *Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 627 (S.D. Tex. 2022); see also *In re Virtus Investment Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) (that one defendant signed public filings was "sufficient to establish that he 'made' the statements," but the remaining defendants who neither signed nor had authority over their contents were not makers of those statements); *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 163 (S.D.N.Y. 2012) ("[C]ourts consistently hold that signatories of misleading documents 'made' the statements in those documents, and so face liability under Rule 10b–5(b).").

**DISPUTED CLOSING INSTRUCTION NO. 28:**

**Defendants' Proposal**

§ 10(b) and Rule 10b-5: SCIENTER

To establish the second element against any Defendant, Class Plaintiffs must prove, by a preponderance of the evidence, that the Defendant acted with the intent to deceive, manipulate, or defraud."[64]  This necessary state of mind is known as scienter.[65]

Scienter cannot be based solely on the fact that the Defendant signed a public SEC filing[66] or on the Defendant's status or position within the company.[67]  Further, it cannot be based solely on the fact that the Defendant had access, or could have had access, to information that could show the statement was untrue.[68]  Class Plaintiffs also cannot prove scienter by showing the Defendant later found out that a statement was false; rather, Class Plaintiffs must show that the Defendant had the requisite scienter at the time the statement

---

[64]  Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 7.1; *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *3 ("Scienter requires an intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." (cleaned up)) (citing *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009)).

[65]  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005); *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 207 (5th Cir. 2009); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996); *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir. 1981) (en banc); Final Jury Instructions at 44, *In re Tesla Inc. Sec. Lit.*, No. 3:18-cv-04865-EMC (N.D. Cal. Jan. 15, 2023), ECF No. 573.

[66]  *See, e.g., Yang v. Nobilis Health Corp.*, 2021 WL 3619863, at *2-3 (5th Cir. Aug. 13, 2021) (describing plaintiffs' allegations about defendant's position as CEO and signature on a SOX certification as insufficient to support an inference of scienter); *Plaisance v. Schiller*, 2019 WL 1205628, at *32 (S.D. Tex. Mar. 14, 2019) ("A defendant's signature on an SEC filing with false or misleading statements cannot by itself support a strong inference of scienter.") (emphasis added) (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007)); *Edgar v. Anadarko Petroleum Corp.*, 2018 WL 3032573, at *13 (S.D. Tex. June 19, 2018) (dismissing Section 10(b) claim where "plaintiffs allege that [defendants] signed the 2015 Form 10-K, but [] allege nothing to indicate that those defendants knew material facts inconsistent with the … statements at issue.").

[67]  *See Owens*, 789 F.3d at 546 ("Scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." (quotations omitted)); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 376 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012) ("Conclusory assertions that a defendant 'should have known' about internal corporate problems based merely on his position or status within the corporation will not suffice to establish scienter.").

[68]  *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 616 (S.D. Tex. 2018), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. Of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019).

66

was made.[69]

To prove scienter, Class Plaintiffs must prove that the particular Defendant made the materially false statement or omitted a material fact with *severe recklessness* as to its material falsity.[70]

Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve an extreme departure from the standards of ordinary care presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.[71] Class Plaintiffs cannot not prove severe recklessness by showing a Defendant acted mistakenly or with simple or even

---

[69] *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *15 ("[T]he Opt-out Plaintiffs may not turn [statements] into fraud by hindsight") (quoting *Karth v. Keryx Biopharmaceuticals*, Inc., 6 F.4th 123, 138 (1st Cir. 2021); *see also Southland Sec. Corp.*, 365 F.3d at 383; *Carlton v. Cannon*, 184 F. Supp. 3d 428, 469 (S.D. Tex. 2016) (alterations omitted) (quoting *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009)); *Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 755-56 (S.D. Tex. 2001); *Rosenzweig*, 332 F.3d at 867-68 (declining to interpret a "hindsight assessment" describing company's "problems since the acquisition" to mean "that management knew when it acquired the [asset] that it was inheriting [] problems" and also finding that such allegations, which "fail[] to identify exactly who supplied the information or when they knew the information," were "not sufficiently particular" to form a "strong inference of scienter" (emphasis in original) (internal quotations omitted)); *Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 471 (N.D. Tex. 2018) ("Scienter must exist at the time the misrepresentation occurred," and evidence of what a Defendant later knew "are tantamount to fraud by hindsight" (internal quotations omitted)).

[70] *Southland Sec. Corp.*, 365 F.3d at 383; *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 n. 2 (5th Cir. 1996); *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 840 (S.D. Tex. 2015); *In re Paracelsus Corp. Sec. Litig.*, 61 F. Supp. 2d 591, 595 (S.D. Tex. 1998); Final Jury Instructions at 19, *Sekuk Global Enters. v. Apollo Grp. Inc.*, No. 2:04-cv-02147-JAT (D. Ariz. Jan. 16, 2018), ECF No. 496; Final Jury Instructions at 29, *In re Vivendi Universal S.A. Sec. Litig.*, No. 1:02-cv-05571-PAE-HBP (S.D.N.Y. May 13, 2010), ECF No. 1052-2; Jury Instructions at 16, *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 07-61542-UU (S.D. Fl. Nov. 9, 2010), ECF No. 635.

Note that the Model Instruction uses a different but similar formulation for scienter. *See* Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1, p. 76-77 ("To establish the second element, that Defendant [name] acted with an intent to deceive, manipulate, or defraud, Plaintiff [name] must show that Defendant [name] [stated material facts [he/she] knew to be false] [stated untrue facts with reckless disregard for their truth or falsity] [knew of the existence of material facts that were not disclosed although [he/she] knew that knowledge of those facts would be necessary to prevent [his/her] other statements from being misleading]." (emphasis added)).

[71] *In Re Alta Mesa Res. Sec. Litig.*, 2024 WL 3760481, at *3 ("Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care.") (citing *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 207); *Shaw Grp., Inc.*, 537 F.3d at 541; *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007); Final Jury Instructions at 19, *Sekuk Global Enters. v. Apollo Grp. Inc.*, No. 2:04-cv-02147-JAT (D. Ariz. Jan. 16, 2018), ECF No. 496.

inexcusable negligence.[72]  Recklessness is a form of intentional conduct.[73]

---

[72]   Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; *Abrams v. Baker Hughes Inc*., 292 F.3d 424, 430 (5th Cir. 2002).

[73]   Final Jury Instructions at 19, *Sekuk Global Enters. v. Apollo Grp. Inc*., No. 2:04-cv-02147-JAT (D. Ariz. Jan. 16, 2018), ECF No. 496.

**DISPUTED CLOSING INSTRUCTION NO. 29:**

**Defendants' Proposal**

### § 10(b) and Rule 10b-5: RELIANCE

The fourth element Class Plaintiffs must prove, by a preponderance of the evidence, is that they in fact relied on a material misrepresentation or omission made by a Defendant when purchasing AMR securities.[74]  If you find that Class Plaintiffs would have bought AMR securities anyway, and that the misrepresentation had no effect on his or her decision to purchase, then there was no reliance and your verdict must be for the Defendants on this claim.[75]

In addition, Class Plaintiffs must prove that their reliance was justified.  It is not justifiable for Class Plaintiffs to have intentionally closed their eyes and refused to investigate the circumstances in disregard of a risk known to them, or a risk that was so obvious that they should have been aware of it, and so great as to make it highly probable that harm would follow.[76]

Class Plaintiffs do not have to prove that they justifiably relied on the alleged false statements in deciding to purchase AMR securities if they prove the requirements for invoking a presumption that they and the Class relied on the integrity of the market price, otherwise known as the "fraud-on-the- market" presumption.

The fraud-on-the-market presumption applies if you find that Class Plaintiffs have proven by a preponderance of the evidence that:

1.    an active, open market for Alta Mesa securities existed at the time of the transactions in question;

2.    Class Plaintiffs reasonably relied on that market as an accurate reflection of the current market value of the securities;

3.    the misrepresentations were publicly known and material, meaning that a reasonable investor would have regarded the misrepresentations as having significantly altered the total mix of information they took into account in deciding whether to buy or sell the AMR security; and

4.    Class Plaintiffs traded the security between when the alleged material

---

[74]   Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1.

[75]   Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1.

[76]    Fifth Circuit Pattern Civil Jury Instruction (2020), Instruction 7.1; ABA Model Jury Instructions Securities Litigation ¶ 4.02[5].

misrepresentations were made and when the truth was revealed.

If the fraud-on-the-market presumption applies, you may find that Class Plaintiffs have proven that they relied on a Defendant's statements.

An "active, open market" means that there were a large number of traders, a high level of activity, and frequent trades, such that the price of the security immediately reflects all publicly available information.[77]

Defendants have the right to rebut the presumption that Class Plaintiffs relied on the integrity of the market price when purchasing Alta Mesa securities. Accordingly, if you find that Class Plaintiffs have proven all four elements for invoking the presumption, you must then consider whether Defendants have rebutted the presumption of reliance.

In general, to rebut the presumption of reliance, any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the Class Plaintiffs, or their decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance.[78]  Defendants can rebut the presumption by proving by a preponderance of the evidence that: (1) Class Plaintiffs did not actually rely on the integrity of the market price when they purchased the Alta Mesa securities; or (2) the alleged misrepresentation did not affect the market price of Alta Mesa's securities.[79]

---

[77]  Final Jury Instructions at 49, *In re Tesla Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal. Jan. 15. 2023), ECF No. 573.

[78]  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014).

[79]  *See Goldman Sachs Group, Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 118-19 (2021); ABA Model Jury Instructions Securities Litigation ¶ 4.02[5].

**DISPUTED CLOSING INSTRUCTION NO. 30:**

**Defendants' Proposal**

§ 10(b) and Rule 10b-5: ECONOMIC LOSS, LOSS CAUSATION, AND DAMAGES

The Class Plaintiffs must prove, by a preponderance of the evidence, that they suffered economic loss and loss causation.  I have already instructed you on the definition of "Economic Loss," "Loss Causation," and "Damages" in Instruction No. [X].  You are to consider those definitions when deciding whether Class Plaintiffs have proven their Section 10(b) and Rule 10b-5 claims by a preponderance of the evidence.

**DISPUTED CLOSING INSTRUCTION NO. 31:**

**Class Plaintiffs' Proposal**

<u>CLASS PLAINTIFFS' EXCHANGE ACT CLAIM – § 20(a)</u>

Under Section 20(a) of the Exchange Act, a defendant may be liable if during the period that someone else defrauded the plaintiff, the defendant had the authority to control that person or company. Such defendant is referred to as a "controlling person" under the federal securities laws.

For their Section 14(a) and Rule 14a–9 claim, Class Plaintiffs allege that Defendants Riverstone, Hackett, Gutermuth, Tepper, and Walters each acted as "controlling persons" within the meaning of Section 20(a). Specifically, they allege that these Defendants each had the power and ability to control the information contained in the Proxy. For their Section 10(b) and Rule 10b–5 claim, Class Plaintiffs allege that each Defendant was a "controlling person" of Defendant AMR or one or more of the Defendants alleged to have violated Section 10(b) and Rule 10b–5.

Control person liability does not require participation in the fraudulent transaction. Rather, Class Plaintiffs have the burden of proving by a preponderance of the evidence that either (1) one or more Defendants had the power to directly or indirectly control or influence the policies of one or more of the primary defendants, or (2) one or more Defendants had an ability to control the specific activity upon which a primary violation is based. In this case, the issuance of the allegedly false or misleading proxy statement for the Section 14(a) and Rule 14a–9 claim and the issuance of the allegedly false or misleading statements for the Section 10(b) and Rule 10b–5 claim.

**POINTS & AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' PROPOSED CLOSING INSTRUCTION NO. 31:**

- Ninth Circuit Model Civil Jury Instruction 18.10;

- Dkt. 160, Apr. 14, 2021 Memorandum Opinion and Order, at 23-24 ("Section 20(a) of the Exchange Act imposes derivative liability upon any person who indirectly controlled any entity that committed securities fraud in violation of the Exchange Act.");

- Dkt. 778, Aug. 12, 2024 Memorandum Opinion and Order, at 8 ("Control person liability does not require participation in the fraudulent transaction.");

- Dkt. 218, Third Consolidated Amended Complaint for Violations of the Federal Securities Laws ¶¶ 369, 393 (Dec. 6, 2021);

- 17 C.F.R. § 230.405;

- 15 U.S.C. § 78t(a);

- *Heck v. Triche*, 775 F.3d 265, 283–84 (5th Cir. 2014);

- *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1118 (5th Cir. 1980).

**Defendants' Proposal**

<u>SECURITIES EXCHANGE ACT – § 20(a)</u> [80]

Class Plaintiffs claim that Defendants AMR, Harlan H. Chappelle, Michael E. Ellis, William D. Gutermuth, Ronald Smith, Jeffrey H. Tepper, Diana J. Walters, Riverstone Holdings LLC, James T. Hackett, and Bayou City Energy Management, LLC violated Section 20(a) of the Exchange Act.[81]   Under Section 20(a) of the Exchange Act, a defendant may be liable as a "controlling person" if the defendant had the authority to control another person or company that violated federal securities laws.

Each party listed above is a separate Defendant that you must evaluate on an individual basis. You cannot hold a Defendant responsible unless all elements are satisfied as to that specific defendant.  To prove that a Defendant is liable under Section 20(a), each Plaintiff must prove each of the following elements[82] against each Defendant by a preponderance of the evidence:

1.     that another Defendant (the "primary violator") violated Section 10(b) or 14(a); and

2.     that the Defendant was a "controlling person" of the primary violator at the time the primary violator violated Section 10(b) or 14(a).

A "controlling person" is one who: (1) actually participated in (*i.e.*, exercised control over) the operations of the corporation in general;[83] and (2) had actual power or control over a controlled person's allegedly fraudulent actions.[84]  This means that at a minimum,

---

[80] The Fifth Circuit Civil Pattern Jury Instructions do not have a specific Section 20(a) instruction. Defendants' proposed instructions are thus based on the text of the statute and applicable case law.

[81]  15 U.S.C. § 78t(a).

[82]  *Meek v. Howard*, 95 F.3d 45, [published in full-text format at 1996 WL 405436, at *3], (5th Cir. 1996); *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509-10 (5th Cir. 1990); *see also Lillie v. Off. of Fin. Insts. of State of La.*, 997 F.3d 577, 582-83 (5th Cir. 2021) (applying Louisiana law, but looking to federal law for guidance).

[83]  *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985); *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992); *see also Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 620 (5th Cir. 1993) (noting that the Fifth Circuit's decision in *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990), is consistent with prong one).

[84]  *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *20 (S.D. Tex. Aug. 12, 2024) ("[I]n order to create a triable fact issue on Section 20(a) liability, Plaintiffs must prove some facts beyond [Dimitrievich's] position or title from which it can reasonably be inferred that [Dimitrievich] had actual

Class Plaintiffs must show that the Defendant had an ability to control the specific transaction or activity upon which the primary violation is predicated.[85]

Merely showing that a Defendant had an ownership interest in a company or appointed a minority number of the company's board members is insufficient to prove that the Defendant was a controlling person of an executive or officer of that company.[86] General allegations about a Defendant's day-to-day participation in corporate affairs are insufficient to show that the Defendant had actual power or control over the specific transaction or activity identified as the basis for the primary violation.[87]  Class Plaintiffs

---

power or control over [a controlled person's] allegedly fraudulent actions." (quotation and alteration omitted)); *id.*, at * 19 ("The email, which does not mention Dimitrievich, does not constitute evidence that such a committee, assuming that it was formed, had actual power or control over any specific actions that allegedly caused any of the misrepresentations underlying this lawsuit."); *id.* at *23 ("Beyond the bare fact that Walker signed those two SEC filings, Plaintiffs do not provide any evidence showing that Walker had any actual power or control over any other person's allegedly fraudulent actions."); *id.* ("However, Plaintiffs do not present evidence showing that McMullen had any actual power or control over any other person's allegedly fraudulent actions.").

[85]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *18 (S.D. Tex. Aug. 12, 2024) ("At a minimum, Plaintiffs must show that Dimitrievich had an ability to control the specific transaction or activity upon which a primary violation is based.") (citing *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014)); *see also Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 620 (5th Cir. 1993) (noting that the Fifth Circuit's decision in *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990) is consistent with prong one); *Meek v. Howard*, 95 F.3d 45, [published in full-text format at 1996 WL 405436, at *3], (5th Cir. 1996) (holding consistent with prong two that plaintiffs must "at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based."); *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 652 (S.D. Tex. 2021) (Eskridge, J.) (same).

[86]   *Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th Cir. 2003) (holding that the "[p]laintiffs have not pleaded sufficient exercise of power and control by the [] [d]efendants" over the CEO and COO of a company where the plaintiffs alleged that the defendants were liable under Section 20(a) as control persons simply because they owned 50% of the company and had the power to appoint members of the company's board of directors); *In re Splash Technology Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (finding that plaintiffs failed to allege that the defendant controlled a company's officers merely because the defendant controlled 20% of the company).

[87]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *18 (S.D. Tex. Aug. 12, 2024) ("General allegations about day-to-day participation in corporate affairs are insufficient to show the ability to control the *specific* transaction identified as the basis for primary liability." (emphasis in original) (quoting *Carlton v. Cannon II*, No. 4:15-CV-12, 2016 WL 3959164, at *7 (S.D. Tex. July 22, 2016)); *id.* at *24 (same); *see also id.* at *18 (citing *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 731–32 (W.D. Tex. 2010) ("[B]ecause there is no allegation Applegate signed any of the press releases or SEC forms which contained the misstatements or omissions, or had final authority over any of ArthroCare's public statements or filings—in other words, because there is no allegation that Applegate had substantial control over the dissemination of any false information to the public, which is the basis of Plaintiff's § 10(b) claims—he cannot be held liable as a control person simply due to his involvement in the underlying activities about which the Individual Defendants are alleged to have misled investors."), and 78 Cong. Rec. 8095 (1934)

cannot prove that the Defendant was a controlling person simply because the Defendant's participation was essential to completing the Business Combination.[88]

Providing input into a public filing or statement also does not equate to control.[89] Plaintiffs must do more than show that a Defendant suggested what was said by a primary violator or that the substance of the alleged falsehoods originated with a Defendant.[90]

Additionally, Class Plaintiffs must show that the Defendant had final authority over the public filing or statement containing the alleged misstatement or omission.[91]   A Defendant cannot be found liable under Section 20(a) simply for requesting that a public filing include a statement that Class Plaintiffs do not allege is false.[92]

Similarly, Section 20(a) liability cannot be based solely on a party's purported duty to correct someone else's false or misleading statements.[93]   It is not enough to demonstrate that a Defendant had the opportunity to review and comment on press releases and other public statements in advance of them being publicly issued and could have—but chose not to—stop the false and misleading information statements from being issued.[94]

---

(remarks of Rep. Lea) ("The man charged with control is only responsible to the extent he did control the action complained of, and his actual control must be established."))

[88]   *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 620-21 (5th Cir. 1993).

[89]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *22 (S.D. Tex. Aug. 12, 2024) ("Although the record reflects that Lapeyre may have had some input into the August 16, 2017 press release, that input does not equate to control over any person who committed an alleged primary violation.").

[90]   *Town N. Bank, N.A. v. Shay Fin. Servs., Inc*., 2014 WL 4851558, at *13 (N.D. Tex. Sept. 30, 2014); *In re BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *6 ("[T]he question is … not whether the substance of the alleged falsehoods originated with [the defendant]."

[91]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *20 (S.D. Tex. Aug. 12, 2024) ("Plaintiffs have not pointed to any evidence showing that Leuschen had final authority over the August 16, 2017 press release or over any of Silver Run II's or Alta Mesa's other public statements or filings."); *id.*, at *22 ("Plaintiffs have not pointed to any evidence showing that Lapeyre had final authority over the August 16, 2017 press release or over any of Silver Run II's or Alta Mesa's other public statements or filings."); *id.* ("Plaintiffs have not pointed to any evidence showing that Coats had final authority over any of Silver Run II's or Alta Mesa's public statements or filings.").

[92]    *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *19 (finding Dimitrievich had no control person liability based on email showing only "that Dimitrievich requested the inclusion in a press release of a statement that Plaintiffs do not allege is false and have not made a part of their lawsuit").

[93]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *20 (S.D. Tex. Aug. 12, 2024)  ("[E]ven if it can be accurately said that [the Defendant] breached a duty to correct any false or misleading statements made by another party, that alone is not sufficient to hold him liable under Section 20(a).")

[94]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *20 (S.D. Tex. Aug. 12, 2024) ("It is not enough to argue, as Plaintiffs do, that Leuschen 'had the opportunity to review and comment on [Alta Mesa] press releases and other public statements in advance of them being publicly issued and could have—but

Furthermore, to prove that a Defendant actually exercised control over the operations of the corporation, Class Plaintiffs must do more than identify the status or title of the alleged controlling person because a director or officer of a corporation is not automatically deemed to have "controlled" the corporation.[95]   Likewise, the fact that a Defendant signed a public document is insufficient, by itself, to prove that the Defendant was a controlling person.[96]

---

chose not to—stop the false and misleading information statements from being issued.'" (quoting Dkt. 676 at p. 29)).

[95]   *See e.g.*, *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *18 (S.D. Tex. Aug. 12, 2024) ("Plaintiffs must prove some facts beyond Dimitrievich's position or title from which it can reasonably be inferred that Dimitrievich had actual power or control over a controlled person's allegedly fraudulent actions.") (citing *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 913 (S.D. Tex. 2004); *id.* at *19 ("Numerous courts have held that Section 20(a) control person liability cannot be based solely on the allegation that the defendant was a director or officer who signed SEC filings."); *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990) ("While Robinson was a director of New South, this status alone will not automatically cause him to be deemed a Section 15 or 20 controlling person.").

[96]   *In re Alta Mesa Res., Inc. Sec. Litig.*, 2024 WL 3760481, at *23 (S.D. Tex. Aug. 12, 2024) ("[T]he Court will again follow the cases holding that Section 20(a) control person liability cannot be based solely on the allegation that the defendant was a director or officer who signed SEC filings").

**DISPUTED CLOSING INSTRUCTION NO. 32:**

**Class Plaintiffs' Proposal**

GOOD FAITH DEFENSE TO CONTROLLING PERSON LIABILITY

Defendants contend that they are not liable to Class Plaintiffs even if they were "controlling persons" because they did not induce the Section 14(a) and Rule 14a–9 and/or Section 10(b) and Rule 10b–5 violations that led to Class Plaintiffs' economic injury and they acted in good faith.  Defendants have the burden of proving both of the following elements by a preponderance of the evidence:

      1.      the defendant did not directly or indirectly induce the violation; and

      2.      the defendant acted in good faith.

If you find that any Defendant has proved both of these elements, your verdict on the Section 20(a) claim should be for that Defendant.  A Defendant can prove good faith only by establishing that they maintained and enforced a reasonable and proper system of supervision and internal control.  If you find that any Defendant has failed to prove either or both of these elements, your verdict with respect to that Defendant should be for Class Plaintiffs on the Section 20(a) claim.

**POINTS & AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' PROPOSED CLOSING INSTRUCTION NO. 32:**

- Ninth Circuit Model Civil Jury Instruction 18.11;

- *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 960 (5th Cir. 1981) (burden of proving good faith lies with defendants);

- *Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1120 (5th Cir. 1980) (failure to maintain and enforce a reasonable and proper system of supervision and control shows lack of good faith).

**Defendants' Proposal**

§20(a): GOOD FAITH DEFENSE TO CONTROLLING PERSON LIABILITY

Even if you find that a Defendant is a controlling person, you must next consider whether that Defendant established the good faith defense and is therefore not liable under Section 20(a) as a controlling person.  In order to establish a good faith defense to control person liability, each Defendant who was found to be a "controlling person" under Section 20(a) has the burden of proving both of the following elements by a preponderance of the

evidence:[97]

1.    the Defendant did not directly or indirectly induce the alleged violation (*i.e.*, the Section 10(b) or 14(a) violation) by another Defendant (the "primary violator"); and

2.    the Defendant acted in good faith.

Inducement means enticing or persuading another person to take a certain course of action.  Mere suggestion or the offering of an opportunity is not enough.[98]

A person acts in good faith when he did not act recklessly in inducing, either by his action or his inaction, the act or acts constituting the primary violation.[99]  Recklessness under Section 20(a) means that the defendant acted in "an extreme departure from the standards of ordinary care" that indicates the defendant "was almost certainly aware" of the alleged misconduct.[100]

A Defendant can meet the requirements of a good faith defense by showing that he used reasonable care to prevent the alleged violation of Section 10(b) or 14(a).[101]  Thus, the good faith defense is warranted where the Defendant was required to rely heavily on the primary violator's superior technical expertise and had to no reason to believe that the sources it looked to in evaluating the primary violator would prove unreliable.[102]  If a Defendant invests large amounts of its own energies and funds into the underlying

---

[97]    15 USC § 78t(a); *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 958-59 (5th Cir. 1981).

[98]    Jury Instructions at 26, *In re Homestore.com, Inc. Sec. Litig.*, Case No. 2:01-cv-11115-RSWL-CWX (C.D. Cal. Feb. 24, 2011), ECF No. 1358.

[99]    *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 960 (5th Cir. 1981).

[100]    *G.A. Thompson*, 636 F.2d at 962 n.33 (stating that recklessness under Section 20(a) is different than under Section 10(b) as a matter of degree); *id.* ("Under the controlling person standard, the test would be whether the defendant "was almost certainly aware of the danger" whereas under the 10(b) standard "must have been aware of [the danger of misleading the plaintiff].").

[101]    *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 594 (S.D. Tex. 2002); *G.A. Thompson*, 636 F.2d at 957–58, 960 (5th Cir. 1981); *Donohoe v. Consolidated Operating & Prod. Corp.*, 30 F.3d 907, 912 (7th Cir. 1994).

[102]    *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 912 (7th Cir. 1994) (granting summary judgment on good faith defense where defendant was "required to rely heavily on [the primary violator's] superior technical expertise," and where "there [was] no suggestion in the record that the defendants had any reason to believe that the sources to whom they looked in evaluating [the primary violator] would prove unreliable"); *see also Dellastatious v. Williams*, 242 F.3d 191, 195-97 (4th Cir. 2001) (affirming judgment for control defendants under both a Virginia statute and Section 20(a) of the Exchange Act where control defendants "were not experts on the LaserVision technology and they had no role in SAIL's plan to market the technology," so "[i]t was reasonable for [them] to delegate the creation and review of SAIL's offering documents to" more involved personnel)).

transaction, that is evidence of good faith.[103]  Further, the involvement of experienced third parties and a Defendant's reliance on those third parties may be evidence that a defendant acted in good faith in connection with securities fraud claims.[104]

If you find that a Defendant has proved by a preponderance of the evidence that the Defendant did not induce, or was not reckless in inducing, a misrepresentation or omission made by the primary violator, then the Defendant has established the good faith defense and is not liable under Section 20(a).  Any such evidence must be viewed without benefit of hindsight.[105]

---

[103]   *Donohoe*, 30 F.3d at 912 ("And perhaps most importantly, the defendants invested a large amount of their own energies and funds (more than $100,000) in this project, making it fairly clear that their actions taken with respect to the undertaking were in good faith, as that term is commonly understood.").

[104]   *See, e.g., S.E.C. v. Shanahan,* 646 F.3d 536, 644 (8th Cir. 2011) ("Depending on others to ensure the accuracy of disclosures to purchasers and sellers of securities—even if inexcusably negligent—is not severely reckless conduct that is the functional equivalent of intentional securities fraud") (citing *SEC v. Pasternak*, 561 F. Supp. 2d 459, 513–14 (D.N.J. 2008)).

[105]   *Carpenter v. Harris, Upham & Co*., 594 F.2d 388, 494-95 (4th Cir. 1979) (applying good faith defense in the broker-dealer context and holding that there was no evidence in the record to "indicate any wrongdoing on [the primary violator's] part concerning possible securities violations" that would negate the defendant's good faith defense).

**DISPUTED CLOSING INSTRUCTION NO. 33:**

**Class Plaintiffs' Proposal**

## APPORTIONMENT OF LIABILITY

If you find that the Class Plaintiffs proved that any Defendants violated Section 14(a) and/or Section 10(b) with reckless disregard, you must determine what percentage of responsibility, if any, to assign to each Defendant whom you have found to be liable. When apportioning responsibility, the percentages you calculate must total 100% among those parties you find responsible, and the percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found.

In determining the percentage of responsibility, you shall consider the nature of the conduct of each person you determine caused or contributed to the loss incurred by the Class Plaintiffs as a result of the Section 14(a) and/or Section 10(b) violations, and the nature and extent of the causal relationship between that conduct and the damages incurred by the Class Plaintiffs.

**POINTS & AUTHORITIES IN SUPPORT OF CLASS PLAINTIFFS' PROPOSED CLOSING INSTRUCTION NO. 33:**

- 15 USC § 78u-4(f).
- Texas Pattern Jury Charges—Business, Consumer, Insurance & Employment (2020), 115.36.

**Defendants' Proposal**

## APPORTIONMENT OF LIABILITY – § 10(b)/Rule 10b-5, § 14(a), and § 20(a)[106]

If you find that Class Plaintiffs proved any of their Section 10(b) and Rule 10b-5, Section 14(a), or Section 20(a) claims against any Defendant, then you must determine the percentage of responsibility, if any, to assign to each Defendant and to each of the other persons who caused or contributed to the loss incurred by the Class Plaintiffs, including persons who have entered into settlements with any Plaintiff or Plaintiffs, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the Class Plaintiffs.

In apportioning responsibility, the percentages you calculate must total 100% among all those persons. In determining the percentage of responsibility, you must

---

[106] The Fifth Circuit Civil Pattern Jury Instructions do not have a specific apportionment of liability instruction. Defendants' proposed instruction is based upon the text of the statute.

consider (i) the nature of the conduct of each person you determine caused or contributed to the losses, if any, incurred by the Class Plaintiffs; and (ii) the nature and extent of the causal relationship between that person's conduct and the losses, if any, incurred by the Class Plaintiffs.  If you determine that any person did not cause or contribute to the loss incurred by the Class Plaintiffs, then you are to assign 0% responsibility to that person.

## POINTS & AUTHORITIES IN SUPPORT OF DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 33:

- 15 USC § 78u-4(f), (f)(3), and (f)(3)(A).

- Final Jury Instructions at 66, *In re Tesla Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC (N.D. Cal. Jan. 15. 2023), ECF No. 573.

**AGREED CLOSING INSTRUCTION NO. 34:**

<u>DUTY TO DELIBERATE</u>

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

**POINTS & AUTHORITIES IN SUPPORT OF AGREED CLOSING INSTRUCTION NO. 34:**

- Fifth Circuit Pattern Civil Jury Instructions (2020), Instruction 3.7.

82

**PARTIES' PROPOSED GLOSSARY OF KEY TERMS, ENTITIES AND PERSONS (OPENING INSTRUCTION NO. 3)**

| Term | Description |
|---|---|
| AMH | Alta Mesa Holdings, LP, an upstream oil and gas exploration company that Silver Run II acquired on February 9, 2018. |
| AMR | Defendant Alta Mesa Resources, Inc., the public company previously named Silver Run II. |
| ARM Energy | ARM Energy Holdings LLC. |
| Artificial Lift | The use of mechanical or other means to reduce pressure on the reservoir to increase the flow of liquids from the reservoir and into the well bore to be recovered. |
| Bayou City or BCE | Defendant Bayou City Energy Management LLC. |
| Bench | One of multiple productive intervals, possibly separated by a nonproductive interval, within a defined or named geologic formation. |
| Bourque | Kevin Bourque, Vice President of Mid-Continent Operations at AMR. |
| Business Combination or De-SPAC | Silver Run II's acquisition of Kingfisher and AMH which closed on February 9, 2018. |
| CAO | Chief Accounting Officer. |
| CEO | Chief Executive Officer. |
| CFO | Chief Financial Officer. |
| Chappelle | Defendant Harlan Chappelle, CEO of AMH and, following the Business Combination, CEO and a Director of AMR until December 2018. |
| Christopher | Michael Christopher, CFO at ARM Energy during the relevant period. |
| Citi | Citigroup Global Markets Inc., financial advisor to High Mesa. |
| Class Period | August 16, 2017 to May 17, 2019. |

83

| **Term** | **Description** |
|---|---|
| Class Plaintiffs | Plaintiffs and Court-appointed Class Representatives: FNY Partners Fund, LP, FNY Managed Accounts, LLC, Paul J. Burbach, United Association National Pension Fund (formerly Plumbers and Pipefitters National Pension Fund), and Camelot Event Driven Fund, a Series of Frank Funds Trust. |
| Coats | Stephen Coats, former General Counsel at Riverstone and Corporate Secretary of Silver Run II prior to the Business Combination. |
| Cole | Homer "Gene" Cole, Chief Technology Officer and a Vice President at AMR until December 2018. |
| Collins | Craig Collins, Vice President and COO of Kingfisher from April 2018 to April 2019. |
| Class Complaint | Third Consolidated Amended Complaint for Violations of the Federal Securities Laws filed December 6, 2021. |
| COO | Chief Operating Officer. |
| Defendants | AMR, Riverstone, Bayou City, Harlan Chappelle, Michael Ellis, James Hackett, Ronald Smith, William Gutermuth, Jeffrey Tepper, and Diana Walters. |
| Dimitrievich | Don Dimitrievich, former Managing Director of HPS and a Director of AMR following the Business Combination. |
| Downspacing | The drilling of additional wells in an already developed area. |
| Dunne | Charles "Bo" Dunne, Vice President of Finance at ARM Energy during the relevant period. |
| E&P | Exploration & Production, the "upstream" portion of the oil and gas industry. |
| Ellis | Defendant Michael Ellis, COO and founder of AMH, and later a Director of AMR and COO of the AMR upstream business following the Business Combination until December 2018. |
| ESP | Abbreviation for "electrical submersible pump," a means of Artificial Lift. |

| Term | Description |
|------|-------------|
| EUR | Abbreviation for "Estimated Ultimate Recovery," meaning the sum of the quantity of oil and/or gas that has been recovered from a producing well as of a certain date, plus the quantity of oil and/or gas that is estimated to be commercially recoverable over the remaining life of the well. |
| Exchange Act | The Securities Exchange Act of 1934. |
| Gutermuth | Defendant William Gutermuth, a Director of Silver Run II and a Director of AMR following the Business Combination until June 2018. |
| Hackett | Defendant James Hackett, a former Riverstone Partner, CEO and a Director of Silver Run II, and following the Business Combination, Executive Chairman of the AMR Board of Directors, head of the AMR midstream business (Kingfisher), and later interim CEO of AMR. |
| High Mesa | High Mesa, Inc., a now-bankrupt entity, which owned AMH and approximately one-third of Kingfisher prior to the Business Combination. |
| HPS | HPS Investment Partners, LLC. |
| KFM or Kingfisher | Kingfisher Midstream LLC, a midstream company that specialized in the gathering, processing and marketing of hydrocarbons from oil and gas producers that was acquired by Silver Run II in the Business Combination that closed on February 9, 2018. |
| KPMG | AMR's independent auditor starting in June 2018. |
| Lapeyre | Pierre Lapeyre, Jr., a co-founder and senior partner at Riverstone and a Director of AMR following the Business Combination. |
| Leuschen | David Leuschen, a co-founder and senior partner at Riverstone and a Director of AMR following the Business Combination. |
| MBO | Acronym for thousand barrels of oil. |
| MBOE | Acronym for thousand barrels of oil equivalent. |
| MMBOE | Acronym for millions barrels of oil equivalent. |
| McCabe | Michael McCabe, CFO of AMH and AMR. |

| Term | Description |
|------|-------------|
| McMullen | William McMullen, a founder and Managing Partner of Defendant Bayou City, and a Director of AMR following the Business Combination. |
| Meramec | A horizontal geologic formation in the STACK. |
| Meridian | A consulting group affiliated with Riverstone. |
| Midstream | The portion of the oil and gas industry that links upstream (exploration and production) and downstream (refining and distributing products), including the storage, processing, and transportation of petroleum products. |
| Osage | A horizontal geologic formation in the STACK. |
| Parent Well | The first horizontal well drilled, completed, and producing in a Section. |
| Proxy | The Definitive Merger Proxy Statement issued to Silver Run II's shareholders on Schedule 14A, dated January 19, 2018, and all supplements and amendments thereto. |
| Riverstone | Defendant Riverstone Holdings LLC. |
| Ryder Scott | AMH's and AMR's independent oil reserve auditor. |
| Section | A 640-acre (one square mile) land area applied by the State of Oklahoma. |
| Schlumberger | An oil and gas services company that performed various technical studies for AMH and AMR. |
| Sheils | Tamara Sheils (formerly Alsarraf), a senior financial analyst at AMH and, after the Business Combination, AMR. |
| Silver Run II, Silver Run or SR II | The SPAC that acquired Kingfisher and AMH in the Business Combination. |
| Sinclair | Donald Sinclair, a Director of AMR following the Business Combination. |
| Smith | Defendant Ronald Smith, Chief Accounting Officer at AMR for a portion of the relevant period. |
| SPAC | Acronym for "special purpose acquisition company," also called "blank check" company. |

| Term | Description |
| --- | --- |
| Sponsor Shares | Stock of the SPAC that are "sold" to the SPAC sponsor for a nominal fee. Also called founder shares. |
| STACK | Acronym for **S**ooner **T**rend oil field; **A**nadarko Basin; **C**anadian County, Oklahoma; and **K**ingfisher County, Oklahoma. |
| Tepper | Defendant Jeffrey Tepper, a Director of Silver Run II and AMR following the Business Combination. |
| TPH | Tudor, Pickering, Holt & Co. |
| Turner | Tim Turner, Vice President of Corporate Planning and Reserves at AMH, and later Vice President of Corporate Development at AMR. |
| Upstream | The portion of the oil and gas industry focused on identifying, developing, and producing (extracting) hydrocarbons. |
| Walker | Defendant Thomas Walker, former CFO of Defendant Riverstone and CFO of Silver Run II. |
| Walters | Defendant Diana Walters, a Director of Silver Run II and AMR following the Business Combination. |
| WPS | The number of wells per Section. |