UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | No. 4:19-cv-00957 |
| ALYESKA MASTER FUND, L.P., ALYESKA MASTER FUND 2, L.P., and ALYESKA MASTER FUND 3, L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., *et al.*<br><br>Defendants. | Judge George C. Hanks, Jr.<br><br>No. 4:22-cv-01189 |
| ORBIS GLOBAL EQUITY LE FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL EQUITY FUND (AUSTRALIA REGISTERED), ORBIS GLOBAL BALANCED FUND (AUSTRALIA REGISTERED), ORBIS SICAV, ORBIS INSTITUTIONAL GLOBAL EQUITY L.P., ORBIS GLOBAL EQUITY FUND LIMITED, ORBIS INSTITUTIONAL FUNDS LIMITED, ALLAN GRAY AUSTRALIA BALANCED FUND, ORBIS OEIC, and ORBIS INSTITUTIONAL U.S. EQUITY L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>ALTA MESA RESOURCES, INC., *et al.*,<br><br>Defendants. | No. 4:22-cv-2590 |

1

## BAYOU CITY'S REPLY IN SUPPORT OF OBJECTION TO TRIAL BY CONSENT AND EMERGENCY MOTION TO STAY TRIAL

Sending the one Section 20(a) claim against BCE to trial would inject clear and indisputable error because the Class did not plead it. The Class's efforts to mischaracterize their own pleading are nothing short of astonishing. Equally astonishing is the Class's position that this Section 20(a) claim has been in the case for five years, yet somehow, it was never mentioned in a single brief, deposition, expert report, or Rule 26 disclosure by anyone—including the Class. If the parties had, in fact, been litigating this Section 20(a) claim against BCE, there would be some proof that the parties had, in fact, been litigating this claim against BCE. But there is none, because they were not. Adopting the Class's position would mean trying the case twice: once with BCE, over its strenuous objection, and once without BCE, following reversal.

The Class's argument that the Court already decided this issue is a farce. If the Court had already addressed BCE's argument, the Class would be able to point to somewhere in the Court's orders addressing BCE's argument. But it cannot, because the Court did not.

The prejudice to BCE of having to go through multi-week, multi-phase trials on a claim that the Class never pled is astronomical. Like the Class, BCE did not take any discovery on this claim because it was not pled. BCE did not designate a liability or damages expert as it would have. Forcing BCE to go to trial on a claim for which it never had fair notice is tantamount to yanking BCE off the street, depriving it of fair notice to exercise its rights under the Federal Rules, and then imposing a multi-million dollar fine.

### A. The Class's Section 20(a) claim against BCE does not plead that BCE controlled Chappelle's August 2017 statements.

The sole claim against BCE that the Class intends to try is for allegedly controlling Chappelle's *pre-merger* statements *about AMH/KFM* in *August 2017*. ECF 778 at 52 (dismissing the claim that BCE "had the ability to control statements made by Alta Mesa after the SPAC transaction," but saying it will try the claim for controlling Chappelle's "public statements regarding AMH and Kingfisher before the SPAC transaction"). The Class must be able to point to somewhere in the Section 20(a) claim in the complaint that both alleges that BCE controlled Chappelle's *pre-merger* statements *about AMH/KFM* in *August 2017* and provides facts sufficient to meet *Twombly-Iqbal*. ECF 849 at 16 (explaining that the *Twombly-Iqbal* standard governs whether a claim was first brought in opposition to summary judgment).

The Class cannot do *either* because the Class did not plead such a claim. In an attempt to mislead the Court, the Class purports to quote one paragraph from that claim that says "during [August 16, 2017 to May 17, 2019], [BCE] had the power and ability to control the actions of [Chappelle]." ECF 895 at 3 & n.1. But the *very first sentence* of that *exact same paragraph* says that the Section 20(a) claim asserted in this paragraph is for controlling *the publicly-traded company formed in 2018 formerly known as Silver Run II*: "Defendants each acted as controlling persons of [the publicly-traded company formed in 2018 formerly known as Silver Run II] within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a)." *Id.* Silver Run is not Chappelle, and by extension, a claim for controlling Silver Run is not a claim for controlling Chappelle.

3

Even worse, the sentence fragment quoted by the Class is not even the complete statement. The Class tells the Court that the sentence fragment reads: "during [August 16, 2017 to May 17, 2019], [BCE] had the power and ability to control the actions of [Chappelle]." False. Keep in mind that the Section 20(a) claim being tried over BCE's objection is for controlling Chappelle's statements *about AMH/KFM*, *not* Chappelle's statements about the public company. ECF 778 at 52. So, for this sentence to help the Class, it would have to allege that BCE controlled statements *about AMH/KFM*, not Chappelle's statements about the public company. But when the words omitted from the sentence fragment by the Class are added back in, it is crystal clear that sentence fragment is not for statements *about* AMH/KFM, but instead *about the publicly traded company formed in 2018*: "their power to control the materially false and misleading **statements about [the publicly-traded company formed in 2018 formerly known as Silver Run II]** during the Class Period, Defendants . . . ." In fact, the entire sentence is also about controlling the publicly traded company formed in 2018 formerly known as Silver Run II; statements about AMH/KFM *are never even mentioned.*[1]

---

[1] In full, the sentence reads: "By virtue of their high-level positions, participation in and/or awareness of [the publicly-traded company formed in 2018 formerly known as Silver Run II], direct involvement in the day-to-day operations of [the publicly-traded company formed in 2018 formerly known as Silver Run II], and/or intimate knowledge of [the publicly-traded company formed in 2018 formerly known as Silver Run II]'s actual performance, and their power to control the materially false and misleading statements about [the publicly-traded company formed in 2018 formerly known as Silver Run II] during the Class Period, Defendants had the power and ability to control the actions of the Management Defendants, Board Defendants, [the publicly-traded company formed in 2018 formerly known as Silver Run II], and [the publicly-traded company formed in 2018 formerly known as Silver Run II]'s employees."

On top of all this, this assertion is a five-word pure legal conclusion devoid of any facts. By definition, it cannot meet the required *Twombly-Iqbal* standard. ECF 849 at 16–17.

### B. The Class's motion to dismiss briefing confirms that the Class is attempting to reframe its Section 20(a) claim from controlling the publicly traded company.

The Class points to the Court's conclusion that the Section 20(a) claim in the complaint satisfied the *Twombly-Iqbal* standard, but far from showing that the Class pled a claim for BCE controlling Chappelle, this shows the exact opposite. The Class's motion to dismiss briefing directly contradicts the proposition that the Section 20(a) claim is about anything other than controlling the publicly traded company *Silver Run* (not Chappelle). The Class's "Statement of Issues" only has a single issue about whether the Section 20(a) claim is properly pleaded, and, like the very first sentence of the Section 20(a) claim itself, the Class represented to the Court that the Section 20(a) claim is about controlling the public-company formerly known as Silver Run, *not* Chappelle:

> [Class's Statement of Issues]
>
> Does the Complaint plead Section 20(a) claims where, as here, the Control Entity Defendants had nearly universal control over the creation and operation of [***the public company formed in 2018 formerly known as Silver Run II***], including providing all information for the Proxy, appointing the majority of the board, and holding 55.8% economic interest in [***the public company formed in 2018 formerly known as Silver Run II***] and over 73% of the voting rights in the ***[the public company formed in 2018 formerly known as Silver Run II***].

ECF 139 at 24.

5

In Plaintiffs' own words, the Section 20(a) claims in the complaint are about controlling the public company. BCE's purported control over Chappelle is never even mentioned, nor are his statements in August 2017 about AMH or KFM.

### C. The total absence of evidence that the Class and BCE litigated a Section 20(a) claim against BCE for Chappelle's August 2017 statements about AMH/KFM proves that claim was never litigated.

The Class's bald assertion that they have told BCE about this claim "at every juncture" is preposterous. 70+ depositions taken in this case, including one of McMullen that lasted 16 straight hours, and the Class cannot point to a single witness asked about BCE purportedly controlling Chappelle's August 2017 statement about AMH/KFM. Out of the 25 expert reports in this case, the Class cannot point to a single one who opines regarding BCE's purported control over Chappelle's August 2017 statements about AMH/KFM, including for liability or damages. Out of literally hundreds of pages of briefing on file with the Court, the Class cannot point to a single one prior to its response brief at summary judgment asserting that BCE is liable for controlling Chappelle's statements. The Class cannot point to any disclosures or discovery between the Class and BCE that says anything about BCE's purported control over Chappelle's August 2017 statements about AMH/KFM.

Unsurprisingly, the Court will not find any citation to support the Class's assertion that it has provided notice of this claim to BCE "at every juncture." The Class's total inability to cite something show this claim was disclosed in this case proves it has not been.

6

### D. The Class's citation to HPS's interrogatories proves this claim was not litigated against BCE.

Rather than pointing to what its complaint alleged against BCE, the Class points to what it said in response to *another party's* interrogatories. Just as tellingly, the part of the interrogatories the Class quotes from has literally nothing to do with BCE: "Defendants ***HPS and Dimitrievich*** are also each liable pursuant to Section 20(a) of the Exchange Act for all misleading statements made by Alta Mesa (whether AMH or AMR) and its officers/directors from August 17, 2017 through November 14, 2018." ECF 895 at 4.

The contrast between what it told HPS and what it put in the complaint against BCE proves that the complaint does not assert this claim against BCE. The Class's interrogatory response states that they are pursued claims against "Defendants HPS and Dimitriviech" for statements "by Alta Mesa (whether AMH or [the publicly-traded company formerly known as Silver Run II])[.]" ECF 895 at 4. Thus, as used in these interrogatory responses, the Class defined "Alta Mesa" to include "AMH" rather than just the public company. But the Class's complaint takes the exact opposite approach, defining "Alta Mesa" to mean "Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II." *See* ECF 218 at 5.

And in direct contrast to the interrogatory responses, in the complaint, the Section 20(a) claim against BCE ***does not mention*** AMH ***at all***. The first sentence, and every sentence thereafter, only asserts control over the public company formerly known as Silver Run II: "Defendants each acted as controlling persons of [the publicly-traded company formed in 2018 formerly known as Silver Run II] within the meaning of Section 20(a) of

7

the Exchange Act, 15 U.S.C. § 78t(a)." The Class could have sought leave to amend its complaint to add "AMH" to this assertion. But it didn't.

Also in direct contrast to the interrogatory responses, the definition of "Alta Mesa" in the complaint ***does not include AMH***. *Compare* ECF 218 at 5, ¶(i) (defining "Alta Mesa" as "Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II"); *with id.* n.2 (referring to "Alta Mesa" separately from "AMH"). Unlike the HPS interrogatories, when the Class's Section 20(a) claim asserts control over "Alta Mesa," it does not include AMH.

If this claim had actually been litigated against BCE, the Class would be able to point to something more than a single line in a different party's interrogatories that never mentions BCE and that uses a different definition of "Alta Mesa" from the one in the complaint.

**E.  The Court should not be duped by the Class's efforts to stitch together parts of its complaint that reference AMH.**

The very first line of the Class's Section 20(a) claim states that it is about controlling the publicly traded company in 2018 formerly known as Silver Run II. The Section 20(a) claim never mentions AMH, let alone the assertion that BCE controlled AMH. Yet, in another effort to mischaracterize its Section 20(a) claim, the Class now apparently asserts that the Section 20(a) claim is for BCE controlling AMH, rather than the public company formed in 2018 formerly known as Silver Run II.

First, the Section 20(a) claim never mentions control over AMH. The idea that the Class could reframe this claim to assert control over an entity that the claim never even mentions is exactly the "surprise switcharoo" that the Fifth Circuit forbids. ECF 849 at 16

8

(citing caselaw prohibiting a party from reframing an existing claim or asserting new facts or legal theories in support of the same claim).

Second, the Section 20(a) claim that the Class is trying to advance against BCE *is not even for controlling AMH*. As the Court's summary judgment order recognized: "Plaintiffs have not accused either AMH or Kingfisher of making false statements." ECF 778 at 51-52. As for Chappelle, the paragraphs cited by the Class (61, 64, 65, and 87-95) *never allege that BCE controlled Chappelle, nor do they mention his statements in August 2017.*

Third, attempting to inject random allegations about controlling AMH into the Section 20(a) claim about controlling the publicly traded company formerly known as Silver Run violates every "fair notice" pleading rule in the book. This is puzzle pleading because the Section 20(a) claim, as written, never even mentions AMH; Plaintiffs' efforts to bring together disparate pieces of the complaint could not give BCE fair notice.[2] This is also group pleading at its absolute worst: Plaintiffs try to latch onto "Management Defendants" to bring in Chappelle, and then try to somehow equate Chappelle with AMH.[3] In attempting to equate a Section 20(a) claim for controlling a publicly-traded company with control over Chappelle, to then equate that with control over AMH, and then somehow

---

[2] *E.g.*, *Dresner v. Silverback*, 2022 WL 16716165, *8 (W.D. Wash. Nov. 4, 2022) ("'puzzle pleadings' fail to satisfy Rule 8"); *Dugan v. State Farm*, 2018 WL 1612854, at *2 ("the complaint is a prototypical puzzle pleading that violates Rule 8."); *Primo v. Pacific Biosciences*, 940 F. Supp. 2d 1105 (N.D. Cal. 2013) (holding that puzzle pleading violates Rule 8(a)); *Lord Abbett Aff. V. Navient Corp.*, 2017 WL 3891676, *3 (same).

[3] *E.g.*, *Childers v. Lifestyle Unlimited, Inc.*, 2023 WL 3961702, at *4 (N.D. Tex. June 12, 2023) (holding that "impermissible group pleading" does not give fair notice); *Gurganus v. Furniss*, 2016 WL 3745684, at *5 (holding that group pleading failed to meet the requirements of Rule 8).

make that about BCE's control over August 2017 statements, Plaintiffs would have the court endorse a hybrid of puzzle pleading and group pleading that could not possibly give BCE fair notice.

### F. The Court has never analyzed whether the Class pled a Section 20(a) claim against BCE for controlling Chappelle's August 2017 statements.

The Court has never analyzed whether the Class pleaded a Section 20(a) claim against BCE for controlling Chappelle's statements in August 2017. The Court's summary judgment ruling did not discuss the Class's pleading, or which part of the Class's pleading supposedly asserts the Section 20(a) claim now being sent to trial.

BCE did not move for summary judgment on this claim because it was not in the case. The fact that the Court did not grant summary judgment does not mean that the Court intended to allow Plaintiffs to reframe a claim or inject new legal or factual theories that had not been pleaded, something which Fifth Circuit law squarely forbids. ECF 849 at 16–17 (citing Fifth Circuit law).

### G. The Class does not even address the magnitude of the prejudice to BCE.

The Class ignores how BCE did not have fair notice that it needed to be conducting discovery, designating experts, or taking advantage of its rights because this claim was not pled in the complaint. The Court cannot ignore that very real harm to BCE.

### H. The trial poses an existential risk for BCE.

The Class essentially says that sending an unpleaded claim to trial is just BCE complaining about incurring expenses. That is a gross understatement of BCE's situation. "Sending BCE to trial on an unpleaded claim would be disastrous for BCE, and tantamount

10

to imposing a fatal, $1.3 million fine on BCE. No longer could BCE meaningfully litigate; no longer could BCE offer any contribution to any settlement; no longer, perhaps, could BCE continue to exist." ECF 883 at 7. Forcing BCE to trial "will push BCE to the brink of its assets, perhaps beyond, dooming its ability to litigate" simply because of the cost of doing so. *Id.* at 8.

BCE is trapped defending an unpleaded claim, which Plaintiffs do not have standing to bring, with no assets to settle (besides its rapidly vanishing insurance proceeds). Given that BCE has not had fair notice of this claim, and the financial ramifications for BCE that can never be reversed, sending BCE to trial violates its due process.

DATED: November 4, 2024

/s/ Kenneth A. Young
Kenneth A. Young (*Attorney-in-Charge*)
Texas Bar No. 25088699
S.D. Tex. ID 2506614
Nick Brown
Texas Bar No. 24092182
S.D. Tex. ID 2725667
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002
Phone: (713) 836-3600
Fax: (713) 836-3601
Emails: kenneth.young@kirkland.com
nick.brown@kirkland.com

*Counsel for Bayou City Energy Management, LLC*

11

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on November 4, 2024.

>  */s/ Kenneth A. Young*
>  Kenneth A. Young