UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Case No. 4:19-cv-00957<br><br>Judge George C. Hanks, Jr.<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF THEIR MOTIONS IN LIMINE</u>**

**SUMMARY OF ARGUMENT**

Class Plaintiffs' responses to Defendants' motions *in limine* underscore that the Court's intervention is needed now to avoid the jury being exposed to highly irrelevant and unfairly prejudicial information as to the two narrowly tailored issues presented:

- Can Plaintiffs introduce unpled statements as a basis for falsity and liability?; and

- Must Plaintiffs clearly delineate which party opponent made each statement and therefore as to which Defendant(s) the statement is admissible?

Plaintiffs mischaracterize Defendants' first motion *in limine*, which seeks to exclude argument or evidence about the supposed falsity of unpled statements, but their own jury verdict form seeks to impose liability on Defendants for unpled claims. Plaintiffs' only purported justification is that the unpled statements would establish Defendants' supposed "habit" of lying. But Plaintiffs are not describing "habit" evidence; they are describing classic inadmissible character "propensity" or "bad acts" evidence. The Court should grant the motion and make clear that Plaintiffs cannot use trial to confuse the jury with (or affirmatively seek liability for) unpled, class-period statements. Defendants have sought to resolve this issue via a meet and confer, but Plaintiffs have refused to remove the unpled claims—despite the fact that new claims are time-barred, contrary to the PSLRA and the pleading deadlines established by this Court, and obviously unfairly prejudicial to Defendants who have had no opportunity to test or defend against these claims via discovery or motions practice.

Plaintiffs also try to preserve their ability to offer party opponent statements against

all Defendants by recasting Defendants' second motion *in limine* as a premature request to decide the admissibility of hearsay evidence. But Defendants' second motion does not ask the Court to rule on the admissibility of any evidence. It asks the Court to create a streamlined process to determine whether party opponent statements are admissible and, if so, to ensure the jury has clear guidance as to the specific parties against whom they are admissible. This process is necessary to protect against the substantial risk of confusion that trying multiple Defendants together in a complex dispute can create—as highlighted by Plaintiffs' own supposed inability (or unwillingness) to keep this evidence straight enough to even advise the jury on this issue. Defendants' proposal offers a practical solution to assist the Court and jury on an issue that presents a risk of substantial unfair prejudice to Defendants.

## ARGUMENT

Defendants have taken seriously this Court's admonition that motions *in limine* should address only "serious" issues likely to be raised in front of the jury before the Court has a chance to consider the background and "issue a proper ruling." Mar. 22, 2024 Status Conference Tr. at 16:11-15. They have made only two requests for: 1) an order precluding Plaintiffs from introducing evidence or argument intended to establish the falsity of unpled statements or claims; and 2) procedures to safeguard against juror confusion related to statements admitted under the party opponent exception to the hearsay rule. Both of these requests raise serious concerns going to the fundamental fairness and structure of the proceedings, and both are best addressed now.

## I. Defendants' MIL 1: The Court Should Exclude Evidence Intended to Show the Falsity of Unpled Statements

### A. Plaintiffs Cannot Add New Unpled Statements And Claims At Trial

Plaintiffs seek—even now—to add new statements and claims to their theories of liability. Plaintiffs' proposed jury verdict form contains three statements not alleged in their operative pleadings (*See* ECF No. 868-7 at 15, 23, 30[1] (Questions 33, 54, and 72))[2] and several new Section 10(b) claims that, even if they had been pled, were waived at summary judgment (*id.* at 11-15 (Questions 18-35)). But Plaintiffs' attempt to add new statements on the eve of trial is not only unfairly prejudicial, it runs afoul of the statute of repose.

Plaintiffs fail to address Defendants' actual objections to the discrepancies between the statements they seek to include in their proposed verdict form and the statements that have actually been litigated in this matter. *See* Pls. Opp. at 3-4. Most importantly, their response nowhere addresses the fact that no allegations about these three statements appear

---

[1] Pin cites refer to the PDF page numbers. Defendants raised and attempted to meet and confer with Plaintiffs regarding other issues with Plaintiffs' proposed verdict form, including Plaintiffs' incorrect attribution of statements to Mr. Hackett and/or Mr. Chappelle, as well as incorrect characterizations of the statements challenged. *See* Ex. 1, Letter from Defendants to Class Plaintiffs dated October 25, 2024, with attached chart comparing Defendants' Verdict Form and Plaintiffs' Verdict Form. Defendants will address these issues with the Court at the charging conference.

[2] Plaintiffs' amended jury verdict form changes the numbering of the questions but does not eliminate any of these unpled statements or claims. Because Plaintiffs' opposition refers to the questions using the numbering on the pre-amended verdict form, Defendants' reply also refers to the questions using this numbering. On Plaintiffs' amended jury verdict form (filed today), the question formerly appearing at 33 now appears as Question 30; 54 as Question 51; and 72 as Question 69. ECF No. 929-7.

3

in the section of the Complaint entitled "Defendants' Material Misstatements and Omissions in Violation of Section 10(b) of the Exchange Act." TAC Section V. Likewise, they have no response to the fact that none of these statements appeared in Plaintiffs' Interrogatory Responses when Defendants specifically asked Plaintiffs to identify *all* challenged statements. *See* Ex. 2, March 30, 2023, Interrogatory Response Nos. 1, 4 & attached Chart of Alleged Misstatements; Ex. 3, July 18, 2023, Supplemental Interrogatory Response No. 1 & attached Chart of Alleged Misstatements. Nor did Plaintiffs identify these statements in their chart summarizing the challenged statements in response to Defendants' Motion to Dismiss. *See* ECF No. 139-3. Instead, over a year beyond the statute of repose, two of the statements (Questions 33 and 54) appeared for the first time in Plaintiffs' demonstrative chart for argument at summary judgment (Ex. 4, Plaintiffs' Demonstrative Chart of Alleged False and Misleading Statements for Use at Oral Argument on April 22, 2024), while the third (Question 72) appeared for the first time just weeks ago in Plaintiffs' proposed verdict form, ECF No. 868-7 at 30.

  The best that Plaintiffs can muster is to argue that the statements in Questions 33 and 54 of Plaintiffs' proposed verdict form were mentioned in the Complaint's background section and (for Question 54) in the loss causation section. *See* Pls. Opp. at 3 (citing ECF No. 218 ("TAC") ¶ 105 (Question 33 in background)); *id.* at 3-4 (citing TAC ¶ 140 (Question 54 in background) and ¶ 306 (Question 54 in loss causation)).[3] But Defendants

---

[3] Plaintiffs create a strawman, arguing that a "partial disclosure" can still be a misleading statement. Pls. Opp. at 3-4. If Plaintiffs had alleged that the partial disclosure in ¶ 306 also contained a statement Plaintiffs intended to challenge as false, that might be true. But

4

(and this Court) cannot be asked (now or at the outset of a case) to puzzle together Plaintiffs' allegations from the factual background or loss causation sections of their Complaint—particularly when not even Plaintiffs initially read their Complaint to include these allegations. *See, e.g.*, *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) ("[T]he who, what, when, and where must be laid out before access to the discovery process is granted."); *see also N. Port Firefighters' Pension--Loc. Option Plan v. Temple-Inland, Inc.*, 936 F. Supp.2d 722, 739–40 (N.D. Tex. 2013) (dismissing Complaint as puzzle pleading where "numerous allegations of the Amended Complaint which appear to be allegations of false statements by the Defendants are, in fact, not intended to be considered actionable conduct").

Worse, Question 72 of Plaintiffs' proposed jury verdict form seeks to impose liability for a statement related to Defendants' "disclosure controls and procedures" that wasn't mentioned in the Complaint at all. Plaintiffs pretend this allegation is somehow related to ¶ 233 of the Complaint (Pls. Opp. at 4 n.3). But ¶ 233 takes issue with the statement certifying the effectiveness of Alta Mesa's "internal controls over financial

---

a statement included in a complaint as a partial disclosure is not thereby automatically alleged to be a false statement when (as here) Plaintiffs fail to identify that partial disclosure in the section dedicated to alleged false statements. Indeed, Plaintiffs themselves did not think this was a challenged statement until argument for summary judgment. *Compare* ECF 139-3, *and See* Ex. 2, Chart of Alleged Misstatements, attached to Plaintiffs' March 30, 2023 Interrogatory Response; Ex. 3, Chart of Alleged Misstatements, attached to Plaintiffs' July 18, 2023 Interrogatory Response (not identifying Question 54 as challenged in response to Defendants' motion to dismiss and interrogatories), *with* Exhibit 4, Plaintiffs' Demonstrative Chart of Alleged False and Misleading Statements for Use at Oral Argument on April 22, 202 (identifying statement as challenged for the very first time at summary judgment).

5

reporting," not the effectiveness of its "disclosure controls and procedures." These are distinct issues, as the following paragraph of the Complaint further confirms, *see* TAC ¶ 234 ("Those statements concerning Alta Mesa's *internal controls over financial reporting* were materially false and misleading and omitted material facts . . ." (emphasis added)).[4] Internal controls over financial reporting and disclosure controls may sound similar, but they involve different control regimes and certification requirements—as the Court itself explained in its summary judgment decision as to the Opt-Out Plaintiffs' challenge to Alta Mesa's disclosure controls statement in the Form 10-K. ECF No. 778 at 34 (explaining difference between internal controls over financial reporting and disclosure controls). Unlike the Opt-Out Plaintiffs' express challenge to disclosure controls in their Complaints, the Class Plaintiffs have never challenged Alta Mesa's *disclosure* controls and the statement that now appears in Question 72 of Plaintiffs' proposed jury verdict form does not appear anywhere in Plaintiffs' pleadings.

In addition to the three unpled statements, the Complaint does not adequately plead the Section 10(b) Proxy Statement claims that now also appear in Plaintiffs' jury verdict form. *See* ECF No. 868-7 at 11-15 (Questions 18-35). In their response to Defendants'

---

[4] Plaintiffs' response also addresses Question 36 of Plaintiffs' jury verdict form. *See* Pls. Opp. at 3. But Defendants have never claimed that the statement in Question 36 does not appear in the Complaint. Rather, they have argued that Plaintiffs cannot create the appearance that they are challenging the entirety of a slide on which a single challenged statement appears. Ex. 1, Letter from Defendants to Class Plaintiffs dated October 25, 2024, with attached chart comparing Defendants' Verdict Form and Plaintiffs' Verdict Form. Defendants intend to address the multiple instances where Plaintiffs mischaracterize the statement challenged with the Court at the charging conference.

first motion *in limine*, Plaintiffs do not address the inclusion of these Section 10(b) claims related to the Proxy Statement.  Although the Complaint references alleged misstatements in the Proxy Statement in a section of the Complaint describing Section 10(b) violations, *see* TAC ¶¶ 198-208, the Complaint goes on to distinguish the "Proxy Claims" from the "Fraud Claims," writing: "Plaintiffs' Proxy Claims do not sound in fraud and Plaintiffs expressly disavow and disclaim any allegations of fraud, scheme or intentional conduct as part of their Proxy Claims."  TAC ¶ 370.  A "[C]omplaint must give 'fair notice of what the claim is and the grounds upon which it rests.'"  *Charles v. K-Patents, Inc.*, 2020 WL 1480734, at *14–15 (E.D. Tex. Mar. 19, 2020), *aff'd*, 2021 WL 826402 (5th Cir. Mar. 3, 2021) (citation omitted).  Disclaiming any allegation of fraud with respect to the Proxy Claims hardly gives fair notice that Plaintiffs intend to bring Section 10(b) *fraud* claims for statements in the Proxy Statement.  But even if these statements were adequately pled in the first instance, Plaintiffs' failure to reply to Defendants' summary judgment arguments with respect to these issues confirms their absence from the case.  *Compare* ECF No. 520 n.2 ("To the extent Plaintiffs challenge these same statements under 10(b), that claim likewise fails for the same reasons as the 14(a) claim, including because Plaintiffs cannot prove that Defendants acted knowingly or with reckless disregard."), *with* ECF No. 571 (rejecting Defendants' interpretation of the Section 14(a) standard but nowhere addressing the Section 10(b) claims); *see, e.g.*, *Jackson v. Fanning*, 2016 WL 11212420, at *13 (W.D. Tex. June 13, 2016) (finding that failure to respond to summary judgment arguments results in waiver and citing cases); *Hill v. Sodexho Servs. of Tex., L.P.*, 2007 WL 4234261, at *2 n. 1 (W.D. Tex. Nov. 29, 2007) (same).

7

Allowing Plaintiffs to add these new claims to the case now, on the eve of trial, would circumvent the statute of repose, *Dorsey v. Portfolio Equities, Inc.*, 2006 WL 8448243, at *2 (N.D. Tex. May 25, 2006) ("[F]ederal securities claims are now subject to a 5-year statute of repose."); the PSLRA's heightened pleading and notice requirements, *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362–63 (5th Cir. 2004) ("The PSLRA reinforces the particularity requirements of Rule 9(b), requiring the plaintiffs to state not only the time, place, the identity of the speaker, and the content of the alleged misrepresentation, but also to explain why the challenged statement or omission is false or misleading. . . . "with respect to *each* act or omission alleged." (citation omitted; emphasis in original)); and the pleading deadlines in this case. *See* ECF No. 874 ("Defs' MILs"). It would also subject Defendants to trial by surprise on issues they have not had a chance to test via dispositive motions practice or meaningful discovery. *See Domar Ocean Transp., Ltd., Div. of Lee-Vac, Ltd. v. Ind. Refining Co.*, 783 F.2d 1185, 1189 (5th Cir. 1986). Defendants have conducted substantial discovery and prepared expert testimony all without knowing that Plaintiffs intended to challenge these additional statements. Plaintiffs cannot and should not be permitted to add new claims at this very late stage. *See Galyean v. Guinn*, 2023 WL 4938098, at *1 (N.D. Tex. July 7, 2023) (granting similar motion *in limine* to exclude evidence of unpled claims); *Fiesta Mart, LLC v. Willis of Illinois, Inc.*, 2024 WL 1394235, at *9 (S.D. Tex. Mar. 31, 2024) ("[P]laintiffs are precluded 'from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment.'"); *see also SH Tobacco & Cigars, LLC v. Masters 96th LLC*, No. 3:23-CV-0781-D, 2024 WL 1687663, at *6 (N.D. Tex. Apr. 17,

8

2024) ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint[.]").

Plaintiffs' response selectively takes issue with some—though not all—of the examples Defendants have offered of Plaintiffs' *past* attempts to introduce unpled statements into this case. *See* ECF No. 892 ("Pls. Opp") at 2-3. Those efforts to rewrite history fall short.[5] They are also irrelevant. As noted, Plaintiffs' jury verdict form *still* seeks to impose liability for unpled statements and claims—despite Defendants' efforts to resolve these issues without this Court's involvement. *See* Ex. 1, Letter from Defendants to Class Plaintiffs dated October 25, 2024, with attached chart comparing Defendants' Verdict Form and Plaintiffs' Verdict Form. This is not a hypothetical problem. It is a live concern that will shape and (should Plaintiffs' prevail) lengthen the trial—from the overall presentation of evidence and arguments to the jury to the legal claims the jury must assess.

---

[5] Plaintiffs only even attempt to address the examples provided in footnote 1 of Defendants' motion. They offer no response at all to the examples provided in the text of the brief—namely, that Plaintiffs' summary judgment demonstrative and expert evidence have referenced unpled claims (*see* Defs' MILs at 2-3 & nn.2-3). But even as to the three examples Plaintiffs do discuss, Plaintiffs are unable to escape the reality that they have repeatedly tried to inject unpled statements and claims into this case. For two of the three, Plaintiffs' only rebuttal is that, as of now, they no longer intend to pursue those unpled claims. Pls. Opp. at 2. But that, of course, does not explain their attempt to do so at summary judgment, nor does it provide any meaningful guard against their attempt to do so again at trial. As to the third, Plaintiffs are simply wrong. While their Complaint lists part (but not all) of this statement in ¶ 190, even the portion that does appear is de-emphasized. *Compare* Class. Pls.' Opp., ECF No. 572 at 16 (quoting August 16, 2017, press release where Silver Run II claimed AMH had "4,200 gross identified drilling locations" and that AMH had "de-risked" its acreage), *with* TAC ¶ 190 (omitting the "de-risked its acreage" portion of the statement and de-emphasizing the "4,200 gross identified drilling locations" portion of the statement).

9

The parties should know what statements are at issue before the trial starts, and the Court should reject Plaintiffs' continued efforts to "move the target" and add new unpled statements.

### B. Plaintiffs Cannot Introduce Unpled Statements As "Habit" Evidence

Plaintiffs' response also makes clear that they intend to introduce evidence and argument to establish the falsity of other statements that even Plaintiffs have to admit are not even mentioned in the Complaint. Pls. Opp. at 6 (arguing that evidence of unpled misstatements should be admitted as evidence of "habit" under Federal Rule of Evidence ("FRE") 406). The Court should forbid this too because the probative value (if any) of this evidence is far outweighed by the potential for jury confusion and unfair prejudice to Defendants. *See* FRE 403.

Plaintiffs' effort to recast Defendants' motion as an effort to exclude all "context" or all "public statements" (Pls. Opp. at 4-8) has no basis. Defendants are not seeking an order excluding *all* class-period statements from the case. Indeed, it is Plaintiffs who seek to exclude relevant context by excerpting relevant context from the statements they challenge. Rather, Defendants are seeking only to limit evidence and arguments intended to show that unpled, class-period statements *are false*. This will not impact Plaintiffs' ability to argue materiality, scienter, or loss causation nor limit their ability to provide the relevant context for their claims. It will instead ensure the jury is not left with a confusing morass of pled and unpled statements or that evidence related to unpled statements inadvertently forms the basis of the jury's verdict.

Plaintiffs' only real effort to argue that the *falsity* of unpled statements has any

10

relevance here is as evidence of "habit" under FRE 406. Pls. Opp. at 6. But this is not evidence of habit. Habit "describes one's regular response to a repeated specific situation." FRE 406, Advisory Committee Notes. Plaintiffs have established no basis for the proposition that each (or any) Defendant had a reflexive "habit" of lying—let alone lying about the many subjects included in Plaintiffs' Complaint. This, in short, is character or bad acts evidence, that is itself inadmissible. *See* FRE 404(a)(1), (b)(1); *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791, 793 (5th Cir. 1979) ("This general rule of exclusion, applicable to both civil and criminal proceedings, is based upon the assumption that such evidence is of slight probative value yet very prejudicial."); *see also Collins v. Benton*, 2021 WL 12096912, at *3 (E.D. La. Nov. 12, 2021) ( "Habit suggests a regular response to a repeated specific situation that has become semi-automatic" and "Plaintiffs have not shown that lying is a regular practice of [the defendant] such that it is semi-automatic."); *see also Redcell Corp. v. A.J. Trucco, Inc.*, 2023 WL 8187843, at *5 (S.D.N.Y. Nov. 24, 2023) (granting defendant-company's motion *in limine* because the evidence could show a "pattern of conduct," which "would likely cause the jury to improperly conclude [sic] that Defendants engaged in similar conduct here and could lead the jury to conclude that Defendants have a propensity for violating the law"). This strained effort to manufacture an ultimately impermissible relevance underscores why the Court should grant Defendants' motion.

**II.    Defendants' MIL 2: The Court Should Grant Defendants' Request to Create an Orderly Process for the Admission of Party Opponent Statements to Limit Juror Confusion**

Plaintiffs do not appear to contest the basic problem at the heart of Defendants'

11

second motion *in limine*: This case involves multiple Defendants, some of whom have made statements that cannot be admitted against others. *See* Defs' MILs at 8-12. Indeed, Plaintiffs' hand-waving about the difficulty of categorizing this evidence for the jury (Pls. Opp. at 11) illustrates the very concern. If Plaintiffs' counsel thinks it will be too difficult and confusing for *the parties* to keep this evidence straight, a lay jury has little chance.

This request is not, as Plaintiffs' argue, "entirely premature." Pls. Opp. at 9. Given the number of Defendants and allegations involved in this case, the complexity of the legal and factual issues, and the likelihood of juror confusion absent safeguards, an upfront process for addressing these issues and guarding against the potential for confusion makes sense. Resolving whether this process is appropriate does not turn on whether the underlying evidence is admissible "under a different hearsay exception." Pls. Opp. at 9. Defendants' motion does not seek upfront exclusion of any evidence. It seeks to create an upfront *process* for dealing with these issue when Plaintiffs seek to admit evidence as a party admission. That process will not prevent Plaintiffs' from arguing for the admission of evidence under any exception to the hearsay rule they think applies.

Defendants' proposed process likewise will not "grind the trial to [a] halt." Pls. Opp. at 10. As Plaintiffs acknowledge, Defendants have the right to object to the admission of evidence. *Id.* Defendants simply ask the Court to adopt an order of operations—not to introduce new delay. And far from adding delay, Defendants' proposed process would streamline trial by allowing the Court to resolve these issues in advance of individual efforts to introduce evidence before the jury.

Plaintiffs' final effort to resist a jury instruction by feigning confusion about the

12

nature of Defendants' request falls especially short. *See* Pls. Opp. at 10-11. Defendants' request is hardly "impossible to assess." *Id.* at 11. Defendants seek exactly what their motion asks for: an instruction that the statement (if admitted) is admissible "only against the party that made the statement." Defs' MILs at 8. If Plaintiffs are, as they say, amenable to that instruction (Pls. Opp. at 11), the Court should grant Defendants' second motion *in limine* and issue the requested instruction.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motions *in limine* Nos. 1 and 2.

Dated: November 4, 2024                                     Respectfully submitted,

/s/ *J. Christian Word*
J. Christian Word
Attorney-in-Charge for Defendants
D.C. Bar No. 461346
S.D. Tex. Bar No. 3398485
Andrew S. Clubok
S.D. Tex. Bar No. 3891875
Matthew Peters (*pro hac vice*)
D.C. Bar No. 1015700
Laura E. Bladow (*pro hac vice*)
D.C. Bar No. 1740343
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington DC 20004
(202) 637-2200
Christian.Word@lw.com
Andrew.Clubok@lw.com
Matthew.Peters@lw.com
Laura.Bladow@lw.com

Of Counsel:
Heather A. Waller
IL Bar No. 6302537
S.D. Tex. Bar No. 2886108
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Heather.Waller@lw.com

*Counsel for Defendants Alta Mesa Resources, Inc., f/k/a Silver Run Acquisition Corporation II; Riverstone Holdings LLC; Harlan H. Chappelle; Michael E. Ellis; William D. Gutermuth; James T. Hackett; Ronald J. Smith; Jeffrey H. Tepper; and Diana J. Walters*

Walter M. Berger
TX Bar No. 00798063

Attorney-in-Charge
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com

Of Counsel:
Katherine A. Preston
TX Bar No. 24088255
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
kpreston@winston.com

John E. Schreiber (*pro hac vice*)
CA Bar No. 261558
**WINSTON & STRAWN LLP**
333 S. Grand Ave., 38th Floor
Los Angeles, CA 90071
Tel.: (213) 615-1700
Fax: (213) 615-1750
JSchreiber@winston.com
*Co-Counsel for Harlan H. Chappelle, Michael E. Ellis*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ *J. Christian Word*
J. Christian Word