# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |
| --- | --- |

# CLASS PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING THE SETTLEMENT WITH DEFENDANTS AND PROVIDING FOR NOTICE

# TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS ................................................ 1

II.  STATEMENT OF ISSUES TO BE RULED UPON ............................................... 2

III. SUMMARY OF THE ARGUMENT ........................................................................ 3

IV.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................ 5

V.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ............................. 7

   A.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION
        SETTLEMENTS ............................................................................................ 7

   B.   THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE
        PROPOSED SETTLEMENT UNDER RULE 23(e)(2) ............................. 10

        1.   Class Plaintiffs and Class Counsel Have Zealously
             Represented the Class ....................................................................... 10

        2.   The Settlement Is the Product of Good Faith, Informed, and
             Arm's-Length Negotiations by Experienced Counsel ..................... 11

        3.   The Settlement Provides Substantial Relief, Especially in
             Light of the Costs, Risks, and Delay of Further Litigation ............. 12

        4.   The Settlement Does Not Unjustly Favor Any Class Member ........ 13

        5.   The Anticipated Request for Attorneys' Fees Is Reasonable .......... 13

        6.   Class Plaintiffs Have Identified All Agreements Made in
             Connection with the Settlement ....................................................... 14

VI.  THE CLASS SATISFIES THE STANDARDS FOR CLASS
     CERTIFICATION ................................................................................................ 15

VII. NOTICE OF SETTLEMENT SHOULD BE APPROVED .................................. 15

VIII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ................. 17

IX.  CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ............................................................ 9, 14

*Celeste v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ........................................................... 17

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................................. 15

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
2015 WL 965693 (W.D. La. Mar. 3, 2015) ................................................................ 12

*Claudet v. Cytec Ret. Plan*,
2020 WL 3128611 (E.D. La. June 12, 2020) ................................................................ 8

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ................................................................................. 12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .............................................. 11, 14, 18

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ...................................................................................... 7

*In re EZCORP, Inc. Sec. Litig.*,
2019 WL 6681962 (W.D. Tex. Dec. 6, 2019) ............................................................. 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ............................................................ 14

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) .................................................................................... 11

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ...................................................................... 14

*Marcus v. J.C. Penney Co., Inc.*,
2017 WL 6590976 (E.D. Tex. Dec. 18, 2017)
*R. & R. adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) ....................................... 8

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977) ...................................................................................... 8

**Page**

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................... 16

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
  2019 WL 2352837 (N.D. Tex. June 3, 2019) ........................................................ 17

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .................................................................................. 9

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)................................................. 11, 18

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  § 78j(b) ................................................................................................................... 1
  § 78n(a) .................................................................................................................. 1
  § 78t(a) .................................................................................................................... 1
  § 78u-4(a)(4) ........................................................................................................... 2
  § 78u-4(a)(7) ......................................................................................................... 16

28 U.S.C.
  §1715(b) .................................................................................................................. 4

Federal Rules of Civil Procedure
  Rule 23 .................................................................................................. 2, 8, 15, 18
  Rule 23(a) ............................................................................................................. 15
  Rule 23(b)(3) ........................................................................................................ 15
  Rule 23(c)(2)(B) ............................................................................................. 15, 16
  Rule 23(c)(3)(B) .................................................................................................. 16
  Rule 23(e) ............................................................................................................... 8
  Rule 23(e)(1)(B) ............................................................................................ 9, 15, 16
  Rule 23(e)(1)(B)(ii) ............................................................................................ 15
  Rule 23(e)(2)(A) .................................................................................................. 10
  Rule 23(e)(2)(B) .................................................................................................. 11
  Rule 23(e)(2)(C) .................................................................................................. 12
  Rule 23(e)(2)(C)(ii) ............................................................................................ 13
  Rule 23(e)(2)(D) ........................................................................................... 13, 16

17 C.F.R.
  § 240.10b-5 ............................................................................................................. 1
  § 240.14a-9............................................................................................................. 1

**Page**

## SECONDARY AUTHORITIES

*Manual for Complex Litigation (Fourth)* (2020)
    § 13.14...................................................................................................................... 8

Plaintiffs and Court-appointed Class Representatives FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach, United Association National Pension Fund (f/k/a Plumbers and Pipefitters National Pension Fund), and Camelot Event Driven Fund, a series of Frank Funds Trust, for themselves and on behalf of each Class Member (collectively, "Class Plaintiffs"), respectfully move, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure ("Rule(s)"), for entry of the Settling Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") submitted herewith. The Preliminary Approval Order will, among other things, grant preliminary approval of the proposed $126.3 million global settlement ("Settlement") comprised of separate settlements reached with four groups of Defendants in this action ("Action").[1] This motion supersedes the previously-filed motions for preliminary approval of the partial settlements reached with a number of the Defendants (*see* ECF 891, 937, and 946) and presents all of the separate Stipulations for approval on this single motion.[2]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This Action is a securities class action asserting claims under §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78j(b), 78n(a), and 78t(a)), and Rules 10b-5 and 14a-9 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") (17 C.F.R. §§ 240.10b-5, 240.14a-9). After more than five

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the various Stipulations of Settlement between Class Plaintiffs and Defendants ("Stipulations" or "Stips."), which are attached as Exhibits 1-4 to the accompanying Declaration of Tor Gronborg. Citations are omitted and emphasis is added throughout unless otherwise indicated.

[2]    Defendants HPS Investment Partners, LLC and Donald Dimitrievich are still reviewing this motion and related filings but do not anticipate having any opposition.

years of litigation, and shortly before and/or in the midst of trial, Class Plaintiffs have agreed to resolve the Action against all Defendants for a total of $126.3 million in cash.[3] At this time, Class Plaintiffs seek the Court's preliminary approval of the Settling Parties' proposed Settlement under Rule 23 so that notice of the global Settlement can be provided to the Class and the final Settling Hearing can be scheduled.

## II.   STATEMENT OF ISSUES TO BE RULED UPON

1.     Whether the Court will likely be able to approve the proposed $126.3 million global Settlement of the claims against all Defendants under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Class.

2.     Whether the proposed form and content of the notices and Proof of Claim form and the manner for disseminating them to the Class (including the retention of JND Legal Administration ("JND") as the Claims Administrator) should be approved; and

3.     Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's forthcoming motion for attorneys' fees and expenses, including awards to Class Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4).

---

[3]     As used herein, the term "Defendants" means Alta Mesa Resources, Inc., Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald Smith, Jeffrey H. Tepper, Thomas J. Walker, Diana J. Walters, Riverstone Holdings LLC, HPS Investment Partners, LLC, Donald Dimitrievich, ARM Energy Holdings, LLC, Bayou City Energy Management LLC, and William McMullen, and includes all persons or entities identified in the definitions of Defendants and Settling Defendants in the Stipulations of Settlement. The "Settling Parties" are Class Plaintiffs and the "Settling Defendants" as defined in each of the Stipulations.

### III.    SUMMARY OF THE ARGUMENT

Following more than five years of highly contested litigation, Class Plaintiffs have agreed to resolve the Class's claims against all Defendants for a $126.3 million cash payment pursuant to the terms of the Stipulations. In agreeing to settle, Class Plaintiffs and Class Counsel made a fully-informed evaluation of the risks of continuing to litigate this complex case against the Defendants – including risks related to the ongoing trial and potential appeals – against the benefits of a certain recovery at this time.

Class Plaintiffs and Class Counsel believe that the Settlement – reached following well-informed, arm's-length negotiations among multiple parties facilitated by an experienced mediator – provides an excellent benefit to the Class given the significant risks, costs, and delays attendant to continued litigation. While Class Plaintiffs and Class Counsel believe strongly in the merits of their case against the Defendants, they recognize that Defendants do as well as to their defenses. Indeed, in the absence of settlement, Defendants would continue to vigorously assert numerous defenses to Class Plaintiffs' claims, and Class Plaintiffs faced the risk that they would not prevail at trial of the Action or the likely appeals that would follow, which could have precluded *any* recovery for the Class from some or all of the Defendants, let alone a recovery greater than the Settlement amount.

When the Settlement was reached, the Action was at an advanced stage and Class Plaintiffs and Class Counsel had a well-developed understanding of the strengths and weaknesses of the Class's claims and the Defendants' defenses. In addition to the Court's rulings on, among other things, motions to dismiss, a motion for class certification, discovery and other evidentiary motions, summary judgment and pretrial motions, Class Plaintiffs and

Class Counsel had developed a robust factual record through their extensive investigation into the claims at issue, including several years of document discovery and depositions. They prepared for and were mid-way though trial with the remaining Defendants when the fourth and final settlement was reached. Further, the Settling Parties engaged in arm's-length negotiations facilitated by a highly-experienced and well-respected mediator, the Honorable Layn R. Phillips (Ret.) of Phillips ADR Enterprises, P.C., including formal and informal mediation sessions. Ultimately, Class Plaintiffs and each of the four groups of Defendants accepted Judge Phillips' respective proposals to resolve the Action against the Defendants for a total of $126.3 million.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the Preliminary Approval Order will begin this process by, among other things: (i) preliminarily approving the Settlement; (ii) approving the form and content of the notices and Proof of Claim; (iii) approving the plan for disseminating notice of the Settlement to the Class; (iv) approving JND as the Claims Administrator for the Settlement; and (v) setting a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Class Counsel's motion for attorneys' fees and expenses.[4]

---

[4]    As set forth in Section VIII below, Class Plaintiffs request that the Settlement Hearing be scheduled for at least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow sufficient time for providing notice to the Class and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b), *et seq.*

For the reasons stated herein, Class Plaintiffs respectfully submit that the Settlement warrants the Court's preliminary approval and respectfully request entry of the Preliminary Approval Order.

## IV.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Given the Court's familiarity with the case's lengthy history, the following is a summary of the allegations and proceedings.

This case was initiated in January 2019, and in January 2020, FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach, and United Association National Pension Fund were appointed Lead Plaintiffs, Camelot Event Driven Fund, a series of Frank Funds Trust, was appointed as an additional class representative, and Entwistle & Cappucci LLP and Robbins Geller Rudman & Dowd LLP were appointed as Lead Counsel. Class Plaintiffs subsequently filed a consolidated complaint and the named Defendants collectively filed eight motions to dismiss. On March 31, 2021, the Court denied all eight motions to dismiss, and the stay of discovery that had been imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") was lifted.

As the Court is aware, the parties engaged in over two years of intensive fact discovery, including document requests, interrogatories, requests for admissions, and both party and third-party depositions. While this was ongoing, Class Plaintiffs moved for class certification, which was granted in January 2022. Following the completion of fact discovery, the parties engaged in expert discovery, including the exchange of more than a dozen expert reports and the depositions of each of the parties' experts. During and after expert discovery, Defendants filed 14 summary judgment motions and the parties

collectively filed 20 *Daubert* motions. On August 12, 2024, the summary judgment motions were granted in part and denied in part and the *Daubert* motions were all denied without prejudice to being reasserted at trial.

Subsequent to the August 12, 2024 Memorandum Opinion and Order (ECF 778), Class Plaintiffs continued to prepare for trial. Class Plaintiffs reached a partial settlement with HPS Investment Partners, LLC and Donald Dimitrievich on October 16, 2024, a settlement with ARM Energy Holdings, LLC on October 29, 2024, a settlement with Bayou City Energy Management LLC and William McMullen on November 8, 2024, and resolved the case with the remaining Defendants on December 9, 2024, all subject to Court approval following notice to the Class.

The Stipulations provide that, collectively, Defendants and/or their insurers on their behalf, have paid, will pay, or will cause to be paid a total of $126.3 million into an interest-bearing escrow account maintained on behalf of the Class. The Settlement is not claims-made and is non-reversionary. Accordingly, if the Settlement is approved, the Class will receive the full benefit of the $126.3 million obtained, plus interest, after deducting: (i) the amount of the Fee and Expense Award and any Plaintiffs' Award, if requested, and to the extent allowed by the Court; (ii) Class Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) any other fees or expenses approved by the Court ("Net Settlement Fund"), without regard to the number of claims submitted. After the Settlement becomes final, the Net Settlement Fund will be distributed among eligible Class Members who submit valid claims in accordance with a Court-approved plan of allocation. Pursuant to its Class Certification Order dated January 24, 2022, the Court certified the following Class:

(a) all persons and entities that held shares of Alta Mesa (Silver Run II) common stock, and/or Silver Run II Units ("Silver Run Units") on the January 22, 2018 record date that were entitled to vote on Alta Mesa's proposed transaction with AMH and Kingfisher (the "Section 14a Class Members");

(b) all persons and entities that purchased or otherwise acquired Alta Mesa (Silver Run II) common stock, Alta Mesa (Silver Run II warrants), and/or Silver Run II Units on or after August 16, 2017 and prior to the closing of the Business Combination on February 9, 2018 (the "Silver Run Class Members"); and

(c) all persons and entities that purchased or otherwise acquired Alta Mesa common stock or Alta Mesa warrants (other than those automatically converted from Silver Run Units by operation of the Business Combination) between the February 9, 2018 closing of the Business Combination and May 17, 2019.[5]

## V.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.     STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Settlement is a strongly favored method for resolving class action litigation. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "'overriding public

---

[5]   For the avoidance of doubt, the three above categories are not mutually exclusive. Excluded from the Class are: (i) Defendants; (ii) the officers and directors of Alta Mesa, Silver Run II, Alta Mesa Holdings, LP, Kingfisher Midstream, LLC and the Control Entity Defendants during the Class Period (the "Excluded Officers and Directors"); (iii) members of the immediate families of the Individual Defendants and of the Excluded Officers and Directors; (iv) any entity in which any Defendant, any Excluded Officer or Director or any of their respective immediate family members has and/or had during the Class Period a controlling interest; (v) Defendants' liability insurance carriers; (vi) any affiliates, parents, or subsidiaries of Alta Mesa, Silver Run II, AMH, KFM, or the Control Entity Defendants; (vii) all Alta Mesa, Silver Run II, AMH, KFM, and Control Entity Defendants' plans that are covered by ERISA; and (viii) the legal representatives, heirs, agents, affiliates, successors-in-interest or assigns of any excluded person or entity, in their respective capacity as such. Also excluded from the Class are those persons and entities who requested exclusion in response to the Notice of Pendency of Class Action (*see* ECF 774-1) and the plaintiffs in the individual actions *Alyeska Master Fund, L.P., et al. v. Alta Mesa Resources, Inc., et al.*, Case No. 4:22-cv-01189 and *Orbis Global Equity LE Fund (Australia Registered), et al. v. Alta Mesa Resources, Inc., et al.*, Case No. 4:22-cv-02590.

interest in favor of settlement' that [the Fifth Circuit has] recognized '[p]articularly in class action suits'") (alteration in original); *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong judicial policy in favor of settlements, particularly in the class action context."), *R. & R. adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018). Further, the Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).

Rule 23(e) requires judicial approval of class action settlements. Such approval is a two-step process. First, the court performs a preliminary review to determine whether the terms of the proposed settlement are sufficient to warrant notice of the settlement to the class and a hearing; and second, after notice has been provided and a hearing held, the court determines whether to grant final approval of the settlement. *See Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, at *3 (E.D. La. June 12, 2020) (describing two-step process as required under Rule 23 and applied in the Fifth Circuit); *Manual for Complex Litigation (Fourth)* § 13.14 (2020).

With respect to the first step of the approval process, a court should grant preliminary approval and authorize notice to the class upon a finding that the court "***will likely be able***" to: (i) finally "approve the [settlement] under Rule 23(e)(2); and (ii) certify the class for

purposes of [the settlement]." Fed. R. Civ. P. 23(e)(1)(B).[6] In considering whether final

approval is likely, Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[7]

Fed. R. Civ. P. 23(e)(2). All of these factors support approval of the Settlement and, thus,

preliminary approval is appropriate here.

---

[6]   Here, the Court already certified the Class in the course of litigation. ECF 241. There is no difference between the Class previously certified and the Class the proposed Settlement will bind.

[7]   Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent they do not overlap, the following Fifth Circuit approval factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Rule 23(e)(2) factors are not intended to "displace any factor" traditionally used by courts to assess settlement approval, but rather to focus on core concerns to guide the approval decision. Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment; *see also, e.g.*, *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's '*Reed* factors'").

## B. THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE PROPOSED SETTLEMENT UNDER RULE 23(e)(2)

### 1. Class Plaintiffs and Class Counsel Have Zealously Represented the Class

In determining whether to approve a class action settlement, a court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Here, Class Plaintiffs, sophisticated investors, have been active and informed participants in the Action. Class Plaintiffs consulted with Class Counsel on litigation strategy and case developments, oversaw the drafting of the complaints and reviewed briefing on Defendants' motions to dismiss and their class certification motion, and actively participated in discovery, producing documents to Defendants and sitting for depositions. Class Plaintiffs also conferred with Class Counsel about trial strategy and prepared to testify, and in two instances did testify at trial. During the Settling Parties' settlement negotiations, Class Plaintiffs were kept aware of both sides' principal arguments, and reviewed and approved the terms of the settlements. Additionally, by appointing Class Plaintiffs as Class Representatives in connection with class certification, the Court has already found Class Plaintiffs to have claims typical of those of other Class Members. Moreover, like the rest of the Class, Class Plaintiffs have an interest in obtaining the largest possible recovery from all Defendants.

Likewise, Class Counsel, law firms experienced in prosecuting complex class actions, had a clear view of the strengths and risks of the case and were equipped to make an informed decision regarding the reasonableness of a potential settlement with Defendants. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at \*21 (N.D. Tex. Nov. 8, 2005) ("where the

parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case'"). Prior to reaching the various settlements, Class Counsel developed a deep understanding of the case by conducting a comprehensive investigation into the claims asserted, completing fact and expert discovery, and ultimately preparing the case for a trial which commenced on November 6, 2024. Further, through the mediation process, Class Counsel comprehensively vetted the factual record, analyzed Defendants' arguments and contrary facts, thoroughly considered their arguments (and their potential impact on recoverable damages) and the costs and risks of ongoing litigation, and negotiated vigorously with Defendants to secure the global $126.3 million recovery.

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In assessing a proposed settlement, courts must also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In conducting this assessment, courts recognize "[t]he involvement of 'an experienced and well-known mediator [to be] a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (approving securities class action settlement that was "obtained through formal mediation before [an experienced mediator], which strongly suggests that the settlement was not the result of improper dealings").

Here, the Settling Parties' negotiations were at arm's length and Judge Phillips' close involvement in the settlement process (including through formal mediation sessions and

- 11 -

additional settlement discussions) – as well as the issuance of mediator's proposals to resolve the Action against the Defendants following these negotiations – further supports that the settlements (and the global Settlement) are fair and that the Settling Parties achieved it free of collusion.

### 3. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor in assessing whether to approve a class action settlement is a plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. *See* Fed. R. Civ. P. 23(e)(2)(C).[8] Here, the Settlement provides for a substantial and certain cash recovery of $126.3 million, plus interest, to be allocated among Class Members who submit valid claims following deduction of Court-approved fees and costs.

In comparison, if the Action had continued against the Defendants, Class Plaintiffs would face numerous factual and legal risks at trial that could have substantially decreased the Class's potential recovery from the Defendants, or eliminated it altogether. To this day, the Defendants adamantly deny any wrongdoing. As they have throughout the course of the Action, the Defendants maintain they made no materially false or misleading statements, did not act negligently or with scienter, and/or are not control persons with respect to the statements they are alleged to be liable for, that Class Plaintiffs do not have standing to pursue claims regarding certain of those statements, and that even if the alleged statements were materially false or misleading, they did not result in any damages to Class Plaintiffs.

---

[8]   "It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Further, courts repeatedly recognize federal securities litigation to be an "extremely complex" and "highly technical and specialized area of the law." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015).

The Settlement is a strong result when balanced against these risks. Thus, the Settlement provides a significant recovery for Class Members.

### 4.    The Settlement Does Not Unjustly Favor Any Class Member

The Court must also assess the Settlement's effectiveness in equitably distributing relief to the Class. Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D). The proposed Plan of Allocation (the "Plan") set forth in the long-form Notice and developed with Class Plaintiffs' damages expert, provides a fair and effective means of distributing the Net Settlement and treats Class Members equitably relative to each other. The Plan contemplates a *pro rata* distribution of the Net Settlement Fund to Class Members that submit timely and valid claims demonstrating a loss on their transactions in Alta Mesa securities during the relevant period.[9] Here, the Court can readily find the Settlement will likely earn approval.

### 5.    The Anticipated Request for Attorneys' Fees Is Reasonable

The proposed notices to the Class advise that Class Counsel will apply for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund, plus payment of expenses. In light of Class Counsel's efforts over the past five years without any payment

---

[9]    The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved to serve as Claims Administrator, upon Court approval of the form and manner of providing notice to the Class, JND will employ a standard and well-tested protocol for processing claims in securities class actions. Namely, Class Members will submit claims, either by mail or electronically and, based on the information submitted, JND will determine each claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. Claimants will be notified of (and given the chance to remedy) any defects in their claims, and will also have the opportunity to contest a rejection. Any claim disputes that cannot be resolved will be presented to the Court. JND was previously approved by the Court to serve as Notice Administrator in connection with providing the Notice of Pendency of Class Action. ECF 721.

whatsoever, a fee of up to 33% is reasonable and falls within the range of attorneys' fees regularly awarded in this Circuit. *See, e.g.*, *Al's Pals Pet Care*, 2019 WL 387409, at *4 (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 (granting one-third fee).[10]

### 6. Class Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

Notice of the pendency of this Action has been provided to the Class, and Class Members have had the opportunity to request exclusion. No additional opportunity to opt out is required and the Settling Parties do not believe that providing a second opportunity to opt out of the Class is warranted. *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 663 (N.D. Tex. 2010). Moreover, because the statute of repose has run on the Class claims, providing another opportunity to opt out of the Class would only be to the detriment of those Class Members who elected to do so.[11]

---

[10]   Additionally, the proposal that Class Counsel receive their fee award immediately after the Court executes the Judgment and an order awarding such fees and expenses is appropriate and consistent with common practice in cases of this nature. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions.")(collecting cases).

[11]   However, if a second opt out opportunity was required by the Court, the Settling Parties have entered into standard, confidential Supplemental Agreements that give the Defendants the option to terminate their respective settlements in the event that requests for exclusion from the Class exceed certain agreed-upon conditions. Stips., ¶ 10.5. "This type of agreement is common in securities fraud actions and does not weigh against [settlement] approval." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019). Also, as is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with its terms, the Supplemental Agreements may be submitted to the Court *in camera*.

## VI.   THE CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION

The second part of the settlement approval process is to determine whether the litigation may be maintained as a class action for settlement purposes under Rule 23. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Here, the Court certified a class on January 24, 2022, finding that the Class satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements as well as Rule 23(b)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. ECF 241. Accordingly, the Court need not determine whether, pursuant to Rule 23(e)(1)(B) it "will likely be able to" certify the Class, as it has already certified a class in this Action and there is no difference between the class previously certified and the Class.

## VII.   NOTICE OF SETTLEMENT SHOULD BE APPROVED

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Moreover, notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the proposed notices here will collectively apprise recipients of (among other disclosures): (i) the nature of the Action; (ii) the definition of the Court-certified Class; (iii) the claims and issues involved; (iv) that a

Class Member may enter an appearance through an attorney if desired; (v) that no further opportunity to request exclusion will be provided; and (vi) the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B). The long-form Notice also satisfies the PSLRA's additional notice requirements by stating: (i) the Settlement amount in the aggregate and on an average per security basis; (ii) that the parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Class Counsel intend to apply for attorneys' fees and expenses (including the amount of such fees and estimated expenses on an average per share basis); (iv) Class Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. §78u-4(a)(7).

As outlined in the Preliminary Approval Order, if the Settlement is preliminarily approved, the Claims Administrator[12] will provide direct notice via mail and/or email (*see* Postcard Notice, Ex. F to the Stipulation) to those Class Members set forth in the records previously provided by Alta Mesa, or who were otherwise identified through a network of banks, brokerage firms, and other nominees.[13] The Postcard Notice provides important information regarding the Settlement, along with the rights of Class Members in connection

---

[12]  Class Plaintiffs also request the Court's approval to retain JND as the Claims Administrator. JND is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements throughout the country. The Court approved the appointment of JND in connection with the Notice of Pendency of Class Action. ECF 721.

[13]  JND will utilize its proprietary list of the largest and most common banks, brokerage firms, and nominees ("Nominees") to facilitate the dissemination of notice. JND will send notice to all Nominees on its list. Nominees who held, purchased or otherwise acquired Alta Mesa securities during the relevant period on behalf of other beneficial owners will be required to either mail the Postcard Notice to their customers or provide the names and addresses of the beneficial owners to JND, which will then promptly send the Postcard Notice by first-class mail or email to such identified owners.

therewith, and directs recipients to the Settlement website (*www.AltaMesaSecuritiesLitigation.com*) and detailed long-form Notice for more information regarding the Action and Settlement.[14] The Claims Administrator will post downloadable copies of the Notice and Proof of Claim (Exs. B & D to the Stipulation), as well as other important documents, on the Settlement website and will cause the Summary Notice (Ex. E to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.

The proposed plan for providing notice here is the same method used in numerous other securities class actions. Courts routinely find that comparable notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of Rule 23 and due process. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *3 (holding that notices delivered through similarly procedures – *i.e.*, mailed notice, publication notice, and website – satisfied the Rule 23 requirement); *Schwartz*, 2005 WL 3148350, at *10-*11 (same). Accordingly, Class Plaintiffs respectfully submit that the Court should approve the proposed manner and form of providing notice to Class Members.

## VIII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (*i.e.*, the Settlement Hearing, mailing of notice, and deadlines of submitting Proofs of Claim and objecting to the Settlement). Class Plaintiffs respectfully

---

[14]   Courts routinely allow notice by postcard as proposed here. *See, e.g.*, *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *8 (E.D. Tex. Dec. 16, 2022) (approving notice through mailing of postcard, posting of long-form notice on website, and publishing a summary notice); *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6681962, at *2 (W.D. Tex. Dec. 6, 2019) (same); *Parmelee v. Santander Consumer USA Holdings, Inc.*, 2019 WL 2352837, at *2 (N.D. Tex. June 3, 2019) (same).

propose the schedule set forth in the chart below, as agreed to by the Settling Parties and set forth in the proposed Preliminary Approval Order. Additionally, Class Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. The Court need only enter the date of the Settling Hearing at ¶ 2 of the Preliminary Approval Order, as all other dates referenced below will be set based on either (a) the date the Preliminary Approval Order is entered, or (b) the date selected by the Court for the Settlement Hearing.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing/e-mailing the Postcard Notice to Class Members (which date shall be the "Notice Date") and posting the Notice and Proof of Claim on the Settlement website | Not later than 20 calendar days after entry of Preliminary Approval Order ("PAO") (PAO ¶ 7) |
| Deadline for publishing the Summary Notice | Not later than 7 calendar days after Notice Date (PAO ¶ 8) |
| Deadline for filing papers in support of final approval of the Settlement, Plan of Allocation, and Class Counsel's motion for attorneys' fees and expenses | Not later than 35 calendar days prior to Settlement Hearing (PAO ¶ 18) |
| Deadline for receipt of objections | Not later than 21 calendar days prior to Settlement Hearing (PAO ¶ 16) |
| Deadline for filing reply papers | Not later than 7 calendar days prior to Settlement Hearing (PAO ¶ 18) |
| Settlement Hearing | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (PAO ¶ 2) |
| Deadline for Proofs of Claim to be postmarked/submitted electronically | No later than 90 calendar days from the Notice Date (PAO ¶ 12) |

## IX.   CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court (i) preliminarily approve the global Settlement; (ii) approve the retention of JND as the Claims Administrator for the Settlement; (iii) approve the proposed form and manner of

providing notice to Class Members; and (iv) schedule a date and time for the Settlement

Hearing to consider final approval of the global Settlement and related matters.

DATED:  January 6, 2025                                        Respectfully submitted,


s/ Andrew J. Entwistle
Andrew J. Entwistle (attorney in charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308
**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Suite 1900
Austin, TX  78701
Telephone:  (512) 710-5960
Facsimile:  (212) 894-7278

– and –

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7278

*Court Appointed Co-Lead Counsel*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*

s/ Tor Gronborg
Tor Gronborg (*pro hac vice*)
Ellen Gusikoff Stewart (*pro hac vice*)
Trig R. Smith (*pro hac vice*)
John M. Kelley (*pro hac vice*)
Stephen Johnson (*pro hac vice*)
**ROBBINS GELLER RUDMAN
  & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

*Court Appointed Co-Lead Counsel*

<u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served on counsel of record via the Court's ECF system on January 6, 2025.

s/ Tor Gronborg
TOR GRONBORG