# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND APPROVAL OF PLAN OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS .............................................. 1

II.   STATEMENT OF ISSUES TO BE RULED UPON ............................................. 2

III.  SUMMARY OF THE ARGUMENT ...................................................................... 3

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL ..................................... 6

    A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class in the Litigation ........................................................................................... 8

    B.    The Settlements Were Negotiated at Arm's Length and There Was No Fraud or Collusion ........................................................................................ 10

    C.    The Settlements Provide the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors............ 11

        1.    The Complexity, Expense, and Likely Duration of the Litigation ......................................................................................... 11

        2.    The Stage of the Proceedings and Discovery Completed ............... 13

        3.    The Probability of Plaintiffs' Success on the Merits ...................... 14

        4.    The Range of Possible Recovery ..................................................... 15

        5.    The Opinions of Lead Counsel, Plaintiffs, and Absent Class Members ........................................................................................... 15

    D.    The Remaining Rule 23(e)(2) Factors Support Final Approval of the Settlements .................................................................................................. 17

V.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ................ 19

VI.   NOTICE OF THE SETTLEMENTS SATISFIED RULE 23, THE PSLRA, AND DUE PROCESS ...................................................................................... 20

VII.  CONCLUSION ................................................................................................. 22

## TABLE OF AUTHORITIES

**Page**

## CASES

*Berger v. Compaq Comput. Corp.*,
    257 F.3d 475 (5th Cir. 2001) ....................................................................... 8

*Billitteri v. Sec. Am., Inc.*,
    2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)............................................. 10

*Burnett v. CallCore Media, Inc.*,
    2024 WL 3166453 (S.D. Tex. June 25, 2024)............................................ 22

*Celeste v. Intrusion Inc.*,
    2022 WL 17736350 (E.D. Tex. Dec. 16, 2022).............................. 12, 20, 22

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014),
    *aff'd sub nom. Arbuthnot v. Pierson*,
    607 F. App'x 72 (2d Cir. 2015) .................................................................. 16

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
    4:21-cv-02045, Dkt. 218 (S.D. Tex. Oct. 29, 2024) .................................. 21

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................................... 21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ..................................... 15, 18

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............................................ 19

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
    *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ................................................................... 12

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ..................................................................... 19

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    424 F. Supp. 3d 456 (E.D. La. 2020)......................................................... 10

**Page**

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ........................................................................ 6

*In re Dell Inc. Sec. Litig.*,
2010 WL 2371834 (W.D. Tex. June 11, 2010),
*aff'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) .................................................................. 11, 19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................. 10, 11

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185 (5th Cir. 2010) ...................................................................... 21

*In re OCA, Inc. Sec. & Deriv. Litig.*,
2009 WL 512081 (E.D. La. Mar. 2, 2009) .................................................. 12

*In re Oil Spill by Oil Rig Deepwater Horizon*,
295 F.R.D. 112 (E.D. La. 2013) ................................................................. 16

*In re Waste Mgmt., Inc. Sec. Litig.*,
2002 WL 35644013 (S.D. Tex. May 10, 2002) ..................................... 19, 20

*Jenkins v. Trustmark Nat'l Bank*,
300 F.R.D. 291 (S.D. Miss. 2014) ............................................................... 6

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ...................................................... 11

*Marcus v. J.C. Penney Co.*,
2017 WL 6590976 (E.D. Tex. Dec. 18, 2017).......................................... 9, 16

*Matson v. NIBCO Inc.*,
2021 WL 4895915 (W.D. Tex. Oct. 20, 2021),
*aff'd sub nom. Garcia v. Matson*,
2022 WL 6935303 (5th Cir. Oct. 12, 2022)............................... 9, 13, 14, 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)................................................................................... 21

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) ....................................................................... 7

- iii -

**Page**

*O'Donnell v. Harris Cnty., Tex.*,
  2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ...................................................... 7

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .............................................................................. *passim*

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...................................................... 12, 14

*Shen v. Exela Techs., Inc.*,
  2023 WL 8527091 (N.D. Tex. Dec. 7, 2023) ...................................................... 22

*Welsh v. Navy Fed. Credit Union*,
  2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .................................................... 15

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(4) ...................................................................................................... 18
  §78j(b) ................................................................................................................ 1
  §78n(a) ............................................................................................................... 1
  §78t(a) ................................................................................................................ 1

Federal Rules of Civil Procedure
  Rule 23 ............................................................................................................... *passim*
  Rule 23(a) ........................................................................................................... 8
  Rule 23(a)(4) ....................................................................................................... 8
  Rule 23(b)(3) ....................................................................................................... 8
  Rule 23(c)(2)(B) .................................................................................................. 21
  Rule 23(e) ........................................................................................................... 1, 6
  Rule 23(e)(1)(B) ................................................................................................. 8, 21
  Rule 23(e)(1)(B)(ii) ............................................................................................. 8
  Rule 23(e)(2) ....................................................................................................... *passim*
  Rule 23(e)(2)(B) .................................................................................................. 10
  Rule 23(e)(2)(C) .................................................................................................. 11
  Rule 23(e)(2)(C)(i) .............................................................................................. 11
  Rule 23(e)(2)(C)(ii) ............................................................................................. 17
  Rule 23(e)(2)(C)(iii) ............................................................................................ 17, 18
  Rule 23(e)(2)(C)(iv) ............................................................................................ 17
  Rule 23(e)(2)(D) .................................................................................................. 11, 17

**Page**

## SECONDARY AUTHORITIES

*Newberg & Rubenstein on Class Actions*, 4 William B. Rubenstein
    §13:49 (6th ed. 2023) ................................................................................................ 11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule(s)"), Plaintiffs and Court-appointed Class Representatives FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach, and United Association National Pension Fund ("UANPF") (together, "Plaintiffs"), on behalf of themselves and the Court-certified Class, hereby respectfully move for: (i) final approval of the proposed settlements of this securities class action ("Litigation") on the terms set forth in the various Stipulations of Settlement dated October 16, 2024 (Dkt. 891-3), October 29, 2024 (Dkt. 937-3), November 8, 2024 (Dkt. 946-3), and January 6, 2025 (Dkt. 1019-6) ("Stipulations" or "Stips."); and (ii) approval of the proposed plan for allocating the net proceeds of the Settlements to the Class ("Plan of Allocation" or "Plan").[1]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This Litigation asserts claims under §§10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 against Defendants HPS Investment Partners, LLC, Donald Dimitrievich, ARM Energy Holdings, LLC, Bayou City Energy Management LLC, William McMullen, Alta Mesa Resources, Inc., Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald Smith, Jeffrey H. Tepper, Thomas J. Walker, Diana J. Walters, and Riverstone Holdings LLC on behalf of a Court-certified Class of investors who, with

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulations and in the Joint Declaration of Andrew J. Entwistle and Trig R. Smith ("Joint Declaration" or "Joint Decl."), filed herewith.  The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, *inter alia*: the history of the Litigation; the nature of the claims asserted; the negotiations leading to the Settlements; and the risks of continued litigation.  Citations to "¶__" refer to paragraphs in the Joint Declaration and citations to "Ex. __" refer to exhibits to the Joint Declaration.  Citations are omitted and emphasis is added unless otherwise indicated.

certain exceptions, (a) held shares of Alta Mesa (Silver Run II) common stock, and/or Alta Mesa (Silver Run II) Units on January 22, 2018; (b) purchased or otherwise acquired Alta Mesa (Silver Run II) common stock, Alta Mesa (Silver Run II) warrants, and/or Alta Mesa (Silver Run II) Units between August 16, 2017 and February 9, 2018; and (c) purchased or otherwise acquired Alta Mesa common stock or Alta Mesa warrants (other than those automatically converted from Silver Run Units by operation of the Business Combination) between February 9, 2018 and May 17, 2019.[2]

Subject to the Court's approval, Plaintiffs have agreed to settle all claims in the Litigation in exchange for a non-reversionary, all-cash payment of $126.3 million for the benefit of the Class. The Court granted preliminary approval of the Settlements on January 17, 2025. *See* Dkt. 1020. Plaintiffs now move for final approval of the Settlements and approval of the Plan of Allocation.

## II. STATEMENT OF ISSUES TO BE RULED UPON

1. Whether the Court should finally approve the proposed Settlements of this Litigation as fair, reasonable, and adequate under Rule 23(e)(2);

2. Whether the Court should approve the proposed Plan of Allocation as fair and reasonable; and

3. Whether notice to the Class satisfied the requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

---

[2] For avoidance of doubt, the above three categories are not mutually exclusive.

## III.    SUMMARY OF THE ARGUMENT

Plaintiffs respectfully submit that the proposed Settlements represent an excellent result for the Class and readily satisfy the standards for final approval under Rule 23(e)(2). As detailed in the Joint Declaration and summarized below, the Settlements: (i) are the culmination of more than five years of vigorous litigation efforts, including three weeks of trial; and (ii) result from formal mediation followed by continued arm's-length negotiations under the guidance of an experienced class-action mediator.

At the time of the final settlement, the Litigation was undoubtedly at an advanced stage – three weeks into the jury trial.  In addition to reviewing the nearly four million pages of documents produced by Defendants and nonparties and deposing or defending 70 fact and expert witnesses, Plaintiffs and Plaintiffs' Counsel also conducted a wide-ranging investigation into the Class's claims, prepared detailed complaints, opposed eight separate motions to dismiss, worked to protect the Class's interests in connection with Alta Mesa's September 2019 bankruptcy, engaged in class certification proceedings, briefed seven summary judgment motions, *Daubert* challenges, and motions *in limine*, and otherwise prepared for and conducted three weeks of trial.  As a result of these and other extensive efforts, Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the Class's claims when they agreed to resolve the Litigation.

The $126.3 million Settlements are particularly beneficial for Class Members in light of the risks of further litigation.  While Plaintiffs believe the Class's claims are meritorious and supported by Lead Counsel's investigative efforts and evidence developed during discovery and trial, they also recognize that there were substantial risks to taking this case

- 3 -

through the completion of trial. To this day, Defendants adamantly deny any wrongdoing and would have continued to assert strong defenses to the Class's claims had the Settlements not been reached.

For example, the Alta Mesa Defendants argued that they made no materially false statements or omissions during the Class Period or in the Proxy issued in connection with the Business Combination. ¶114. Defendants also maintained Plaintiffs could not establish scienter for the §10(b) claims, with several defendants testifying that they sincerely believed the public statements about Alta Mesa and argued that their actions (such as investing in Alta Mesa) were inconsistent with a belief that the Company would rapidly fail. ¶115. The Proxy Defendants argued that Plaintiffs could not prove they acted at least negligently with respect to the §14(a) claims, that they acted in good faith, and/or did not intend to deceive Silver Run shareholders in connection with the proxy vote held on February 6, 2018. ¶116. The Control Defendants vigorously disputed that they controlled the allegedly false and misleading statements, and had already narrowed the claims against them in their partially successful motions for summary judgment. ¶117.

Plaintiffs also faced challenges to establishing loss causation and damages. Defendants would continue to assert that Plaintiffs would be unable to demonstrate that the misrepresentations alleged in the Litigation directly or proximately caused the economic losses claimed by the Class. ¶¶119-120. Defendants also argued that Plaintiffs' expert utilized an improper model for calculating damages. ¶121.

Moreover, if Plaintiffs prevailed on liability at trial, Defendants would seek to overcome the presumption of reliance with respect to at least some absent Class Members in

- 4 -

a second phase of the trial, potentially reducing the amount of any recovery, and, without a doubt, creating a significant burden, delay, and uncertainty for those absent Class Members. ¶127. Finally, even if Plaintiffs prevailed on all of the above, the Class faced risks relating to collecting on any judgment as a result Alta Mesa's September 2019 bankruptcy, Riverstone's corporate structure, and the limited personal assets of the remaining Alta Mesa Individual Defendants. ¶¶123-126.

Adverse determinations on any of these or other issues could have reduced or entirely eliminated a recovery for the Class. The $126.3 million Settlements avoid these risks – as well as the delay and expense of continued litigation – while providing a substantial and certain near-term benefit to the Class. Moreover, none of the Settlements are "claims-made." Rather, all settlement proceeds, after deducting Court-approved fees and expenses, will be distributed to Class Members who submit valid Claims. Plaintiffs' Counsel understand the $126.3 million cash recovery is the largest ever in a securities class action involving a special purpose acquisition company (SPAC).

In January 2025, the Court preliminarily approved the Settlements, subject to further consideration at the Settlement Hearing. Dkt. 1020 at ¶1. Nothing has changed since then to alter the Court's conclusion. The Settlements have the full support of Plaintiffs – sophisticated investors that took an active role in supervising the litigation – and the reaction of the Class to date has been positive. While the objection deadline has not yet passed,

following an extensive notice campaign, there have been no objections to the Settlements or Plan of Allocation.[3]

Given the foregoing considerations and the factors addressed below, Plaintiffs respectfully submit that: (i) the Settlements meet the standards for final approval under Rule 23, and are fair, reasonable, and adequate for the Class; and (ii) the Plan is a fair and reasonable method for equitably allocating the Net Settlement Fund to Class Members who submit valid Claims.

## IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. A class action settlement should be approved if the court finds it to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this finding, a court should be guided by this Circuit's judicial policy favoring settling class action lawsuits. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting "'overriding public interest in favor of settlement'" in class action cases); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 301 (S.D. Miss. 2014) (finding "Rule 23(e) analysis should be 'informed by the strong judicial policy favoring settlements'").

Rule 23(e)(2) provides that, in determining whether a class action settlement is "fair, reasonable, and adequate," the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing

---

[3]   Any objections received after this submission, will be addressed in Plaintiffs' reply to be filed with the Court on April 23, 2025.

relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Consistent with this guidance, courts in the Fifth Circuit have long considered the following six factors in deciding whether to approve a class action settlement:

(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (the "*Reed* factors"); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).[4]

At the preliminary approval stage, this Court considered the Rule 23(e)(2) factors in assessing the Settlements, and found it to be "fair, reasonable, and adequate to the . . . subject to further consideration at the Settlement Hearing." *See* Dkt. 1020 at ¶1. As noted above, nothing has changed to alter this finding, and the factors supporting the Court's determination to preliminarily approve the Settlements remain applicable. Accordingly,

---

[4]    The Advisory Committee Notes to the 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Accordingly, Plaintiffs discuss below the fairness, reasonableness, and adequacy of the Settlements principally in relation to the four Rule 23(e)(2) factors, but also discuss the application of the non-duplicative factors articulated by the Fifth Circuit in *Reed*. *See O'Donnell v. Harris Cnty., Tex.*, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (observing that "courts in this circuit often combine [the Rule 23 and *Reed* factors] in analyzing class settlements").

Plaintiffs and Lead Counsel respectfully submit that the Settlements are fair, reasonable, and adequate, and warrant final approval under the Rule 23(e)(2) factors and Fifth Circuit law.[5]

### A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class in the Litigation

The first Rule 23(e)(2) factor – whether plaintiffs and class counsel "have adequately represented the class" – favors approval of the Settlements.  This factor looks at: (1) "'the zeal and competence of the representative[s'] counsel'" and (2) "'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees.'"  *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (alterations in original).

In certifying the Class in January 2022, the Court found Plaintiffs and Lead Counsel had satisfied Rule 23(a)(4)'s adequacy requirement.  Dkt. 241 at 2 ("The Court further finds that Lead Plaintiff[s] . . . will fairly and adequately protect the interests of the Class as Class Representatives"; "The Court further finds . . . that Co-Lead Counsel . . . will fairly and adequately represent the interests of the Class as Class Counsel.").  Since that time, Plaintiffs and Lead Counsel have continued to adequately represent the Class in their aggressive prosecution of the Litigation up to and including trial, and in negotiating the Settlements.

---

[5]    The second part of the settlement approval process is to determine whether the Litigation may be maintained as a class action for settlement purposes under Rule 23.  *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).  Here, the Court certified a class on January 24, 2022, finding that the Class satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements as well as Rule 23(b)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Dkt. 241.  Accordingly, because there is no difference between the previously-certified class and the class seeking settlement approval, the Court need not determine whether, pursuant to Rule 23(e)(1)(B) it "will likely be able to" certify the Class, as it has already certified a litigation class.

- 8 -

Here, Plaintiffs diligently supervised and participated in the Litigation on behalf of the Class and through their efforts have provided valuable and meaningful assistance to Lead Counsel. Plaintiffs' efforts included, *inter alia*, filing the complaints; communicating regularly with Lead Counsel about case developments and strategy; reviewing court filings; responding to Defendants' discovery requests, including by reviewing and verifying interrogatory responses and searching for and producing potentially relevant documents; preparing for and providing testimony at their depositions and at trial; and keeping abreast of settlement discussions. *See* Ex. 4, ¶¶2, 5; Ex. 5, ¶¶2, 5; Ex. 6, ¶¶3, 6; Ex. 7, ¶3. Moreover, Plaintiffs – whose claims are based on a common course of alleged wrongdoing by Defendants and are typical of other Class Members – have no interests antagonistic to the Class. *See Matson v. NIBCO Inc.*, 2021 WL 4895915, at *5 (W.D. Tex. Oct. 20, 2021) (noting in adequacy analysis that "named Plaintiffs' legal and remedial theories are substantially similar to those of other members of the Class, and they are further 'united in asserting a common right, such as achieving the maximum possible recovery for the class'"), *aff'd sub nom. Garcia v. Matson*, 2022 WL 6935303 (5th Cir. Oct. 12, 2022).

Likewise, Plaintiffs retained counsel who are highly experienced in complex securities litigation. *See* Exs. 3A, 3B, and 3C. Lead Counsel actively pursued the Class's claims against seasoned and well-regarded defense counsel, and ultimately negotiated favorable Settlements on behalf of the Class. *See Marcus v. J.C. Penney Co.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class . . . .").

- 9 -

### B.    The Settlements Were Negotiated at Arm's Length and There Was No Fraud or Collusion

Rule 23(e)(2)(B) and the first *Reed* factor also support final approval because the Settlements were negotiated at arm's length after extensive fact and expert discovery and there is no evidence of fraud or collusion. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012) ("'A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."'"). Indeed, the Settlements were reached only after mediation sessions with the Hon. Layn R. Phillips (Ret.) of Phillips ADR, followed by continued negotiations among the Parties and with Judge Phillips' assistance. ¶¶100-108. Following these negotiations, which resulted in three partial pre-trial settlements prior to trial, Judge Phillips ultimately issued a mediator's proposal to resolve the Litigation against the remaining defendants, which both sides accepted on December 6, 2024. ¶108. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020) ("arms-length negotiations between sophisticated parties with the guidance of an experienced, professional mediator" provides strong presumption of fairness); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) (finding no fraud or collusion in settlement reached through arm's length negotiations before neutral mediator).

Further, there can be no question that Plaintiffs and their counsel possessed a deep understanding of the strengths and weaknesses of the case before reaching the Settlements. As detailed in the Joint Declaration, this case was heavily litigated from its inception in 2019 through three weeks of trial in November 2024. As a result, Plaintiffs and Lead Counsel

- 10 -

were well informed of the strengths and risks of the case when they agreed to resolve the Litigation. *See* 4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* §13:49 (6th ed. 2023) (approval warranted "[w]here a court can conclude that the parties had 'sufficient information to make an informed decision about settlement'").

### C. The Settlements Provide the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and Other Relevant Factors

Rule 23(e)(2)(C) and many of the remaining *Reed* factors entail "a 'substantive' review of the terms of the proposed settlement" and the "relief that the settlement is expected to provide to" the class, and weigh strongly in favor of settlement. *See* Fed. R. Civ. P. 23(e)(2) (C) & (D) advisory committee's note to 2018 amendment.

### 1. The Complexity, Expense, and Likely Duration of the Litigation

Rule 23(e)(2)(C)(i) and the second *Reed* factor support approval of the Settlements, as continued litigation would involve complex trial and post-trial proceedings that would delay the ultimate resolution of the Litigation without any guarantee of recovery. As here, when "ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010); *see also Heartland*, 851 F. Supp. 2d at 1064 (approving settlement and noting that litigating case to trial would be "time consuming, and 'inevitable appeals would likely prolong the litigation, and any recovery by class members, for years'") (alteration omitted).

Courts consistently recognize that securities class actions are "'notoriously difficult and unpredictable,'" *see In re Dell Inc. Sec. Litig.*, 2010 WL 2371834, at *7 (W.D. Tex. June

- 11 -

11, 2010), *aff'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012), and this case was no exception.[6]   In addition to the complexities involved in securities class actions generally, this Litigation involved highly technical concepts regarding necessitating regular consultation with industry experts, including experts in the oil and gas industry, reservoir engineering and geological issues, accounting and financial projections, due diligence, market efficiency, and damages.   ¶¶72-76.   Further, as discussed in the Joint Declaration and below, Plaintiffs' ability to establish liability and damages was also far from certain.   ¶¶113-122.   Continuing to prosecute the Litigation through the completion of trial, and potential post-trial appeals would have required substantial additional time and expense.[7]   In contrast, the Settlements avoid the risk, expense, and delay of continued litigation while providing a substantial, near-term recovery for the Class, underscoring the Settlements' fairness.

---

[6]   *See also Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *4 (E.D. Tex. Dec. 16, 2022) ("Securities claims are particularly 'difficult to prove' because of the high bar for establishing falsity and scienter.").

[7]   Additionally, even if Plaintiffs prevailed at trial, Defendants surely would have appealed the verdict.   Post-trial motions and appellate proceedings would have added significantly to the expense of this Litigation and delayed, potentially for years, any recovery to the Class (with no assurance that Plaintiffs would ultimately prevail or recover more than the Settlement Amount).   *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) ("After trial, the parties could still expect years of appeals."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *19 (N.D. Tex. Nov. 8, 2005) (noting that even "if Plaintiffs were to succeed at trial, they still could expect a vigorous appeal by Defendants and an accompanying delay in the receipt of any relief").   *See also, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law on the basis of loss causation and overturning jury verdict and award in plaintiff's favor), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

### 2.    The Stage of the Proceedings and Discovery Completed

Courts in this Circuit also look to "the stage of the proceedings and the amount of discovery completed" when determining the adequacy of a class action settlement. *See Reed*, 703 F.2d at 172. Under the third *Reed* factor, courts consider "whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *See Matson*, 2021 WL 4895915, at *10.

In the months leading up to the commencement of this Litigation in January 2019 (in the Southern District of New York) through its final resolution in December 2024 (three weeks into jury trial in the Southern District of Texas), Plaintiffs and Lead Counsel spent substantial time and resources researching, evaluating, and litigating the factual and legal issues in play. As noted above and described in detail in the Joint Declaration, Plaintiffs through Lead Counsel conducted a thorough investigation of the claims and, before reaching the Settlements, engaged in substantial fact discovery – including serving written discovery requests and subpoenas on Defendants and over a dozen relevant nonparties; analyzing nearly four million pages of documents produced in response thereto; conferring with Defendants and nonparties on discovery disputes; preparing and exchanging expert reports; and taking/defending scores of depositions. Lead Counsel also defeated Defendants' eight separate motions to dismiss, moved for and obtained class certification, and briefed seven summary judgment motions, *Daubert* challenges, motions *in limine*, and various other pretrial motions. In addition, Lead Counsel prepared detailed mediation statements, and participated in lengthy settlement negotiations, including formal mediation with Judge Phillips. This substantial record demonstrates that, when each of the Settlements were

- 13 -

reached, Plaintiffs and Lead Counsel had ample information to make an informed decision about settlement.

### 3.    The Probability of Plaintiffs' Success on the Merits

The fourth *Reed* factor looks at the risks of continued litigation and the probability of the plaintiff's success on the merits.  *See Matson*, 2021 WL 4895915, at *11-*12.  In evaluating the likelihood of success, a court "must compare [the settlement's] terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.  Plaintiffs recognize that, although they believed that substantial evidence supported their claims, there were significant risks to continued litigation, including challenging arguments by Defendants on all core claim elements.  Weighing these risks (as discussed herein and in the Joint Declaration) against the certain and substantial recovery obtained for the Class demonstrates that the Settlements are fair, reasonable, and adequate. *See, e.g.*, *Schwartz*, 2005 WL 3148350, at *18 ("plaintiffs' uncertain prospects of success through continued litigation" supported approval of securities class action settlement).

As more fully described in the Joint Declaration, Plaintiffs faced significant risks, including the challenges of: (i) establishing Defendants' liability for their alleged misstatements and the required state of mind; (ii) proving loss causation, class-wide reliance on the alleged misstatements, and the class-wide measure of damages; (iii) proving some Defendants with minority ownership positions and/or board seats had "control" over the violations and rebutting those Defendants' "good faith" defense; and (iv) recovering on any favorable judgment in light of Alta Mesa's bankruptcy and dwindling remaining insurance

policy proceeds, Riverstone's corporate and capital structure, and the limited resources of the remaining AMR Individual Defendants. ¶11.

### 4. The Range of Possible Recovery

The fifth *Reed* factor requires a court to determine the "'value of the settlement in light of the potential for recovery.'" *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *13 (W.D. Tex. Aug. 20, 2018). In making this determination, courts compare "the settlement amount to the relief the class could expect to recover at trial, *i.e.*, the strength of the plaintiff's case." *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018). In doing so, "a court should keep in mind that 'compromise is the essence of settlement.'" *Matson*, 2021 WL 4895915, at *12.

Here, Plaintiffs' damages expert has offered various estimates of the Class's reasonably recoverable damages in this Litigation (assuming success by Plaintiffs on all liability and loss causation issues) and Defendants contended that Plaintiffs suffered little to no cognizable damages because they made no materially false or misleading statements, the truth was fully disclosed after the first alleged corrective disclosure, and Plaintiffs' expert utilized an improper calculation methodology – demonstrating that the $126.3 million Settlement Amount represent a very favorable resolution for the Class. This factor therefore supports final approval.

### 5. The Opinions of Lead Counsel, Plaintiffs, and Absent Class Members

Lead Counsel, Plaintiffs, and Class Members all support final approval of the Settlement, thereby satisfying the sixth *Reed* factor. Lead Counsel conducted a thorough investigation into the claims against Defendants and, after more than five years of intense

- 15 -

litigation, trial, and hard-fought settlement negotiations, have a firm understanding of the strengths and risks attendant to these claims. Based on this understanding, as well as their substantial experience litigating complex securities class actions like this one, Lead Counsel have concluded that the Settlements are fair, reasonable, and adequate. *See Marcus*, 2017 WL 6590976, at *3 ("Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class . . . ."); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 150 (E.D. La. 2013) ("In evaluating a settlement, the Court should rely on counsel who know the strengths and weaknesses of their cases.").

Likewise, Plaintiffs – sophisticated investors with significant financial stakes in the outcome of the Litigation, and the type of fiduciaries envisioned by Congress when enacting the PSLRA, also strongly endorse the Settlement. *See* Ex. 4, ¶3; Ex. 5, ¶3; Ex. 6, ¶4; Ex. 7, ¶4. Plaintiffs actively supervised Lead Counsel during the Litigation, and were kept apprised of the settlement negotiations with Defendants as well as developments in the underlying litigation. Plaintiffs' support for the Settlements further demonstrates their fairness. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) ("[T]he recommendation of Lead Plaintiff, a sophisticated institutional investor, also supports the fairness of the Settlement."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 72 (2d Cir. 2015).

The positive response of the Class to date also supports final approval. The Court-appointed Claims Administrator, JND Legal Administration ("JND"), has mailed or emailed the Postcard Notice to over 21,000 potential Class Members and nominees. *See* Ex. 2 at ¶10. The Postcard Notice and long form notice, which has been posted to the case-specific

- 16 -

website, collectively describe the essential terms of the Settlements and inform Class Members of their rights in connection therewith.  While the April 9, 2025 deadline for Class Members to object has not yet passed, to date, there have been no objections.[8]

### D. The Remaining Rule 23(e)(2) Factors Support Final Approval of the Settlements

In evaluating settlements, Rule 23(e)(2) instructs courts to also consider: (i) "the effectiveness of [the] proposed method of distributing relief to the class, including the method of processing class-member claims;" (ii) "the terms of any proposed award of attorney's fees, including timing of payment;" (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated "equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) & (e)(2)(D).  These factors also support final approval.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Class Members.  Class Members' Claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions.  The Claims Administrator, JND, will review and process all Claims received, provide each Claimant with an opportunity to cure any deficiency in their Claim or request judicial review of the denial of their Claim, if applicable, and will ultimately mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation.  *See infra* §V; ¶¶137-141.  Importantly, none of the settlement proceeds will revert to Defendants.

---

[8]    Plaintiffs will address any objections received after the filing of this motion in their April 23, 2025 reply.

- 17 -

*Second*, the relief provided by the Settlements remains adequate upon consideration of "the terms of [the] proposed award of attorney's fees" and expenses incurred in prosecuting this Litigation, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As shown in the Fee and Expense Memorandum, the requested attorneys' fees of 33% of the Settlement Fund, to be paid upon the Court's approval, are reasonable in light of Lead Counsel's efforts over the past 5+ years and the $126.3 million cash recovery, as well as the significant risks shouldered by Lead Counsel.[9] Additionally, the request is fully supported by Fifth Circuit case law. *See Halliburton*, 2018 WL 1942227, at *12. Additionally, the proposal that any Court-awarded fee be paid upon issuance of such a ruling is reasonable and consistent with common practice in similar cases, as the Stipulations dictate that if the Settlements are terminated or any fee award subsequently modified, Lead Counsel must repay the subject amount with interest. Most importantly, with respect to the Court's consideration of the Settlements' fairness, is the fact that approval of attorneys' fees is entirely separate from approval of the Settlements, and neither Plaintiffs nor Lead Counsel may terminate the Settlements based on this Court's or any appellate court's ruling with respect to fees or expenses.

*Lastly*, as previously disclosed, the only agreements the Settling Parties entered into beyond the Stipulations were confidential Supplemental Agreements regarding requests for

---

[9] Lead Counsel also seek payment from the Settlement Fund of Plaintiffs' Counsel's expenses in the total amount of $6,068,414.24 and a request for payments to Plaintiffs in the aggregate amount of $120,232.75 in accordance with 15 U.S.C. §78u-4(a)(4). ¶142.

exclusion should the Court have required another opt-out opportunity.[10]  The Supplemental

Agreements provide Defendants with the right to terminate the Settlements in the event that

Class Members who requested exclusion meet certain conditions.  This type of agreement is

standard in securities class actions and does not undermine the fairness of the Settlements.

*See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018)

("The existence of a termination option triggered by the number of class members who opt

out of the Settlement does not by itself render the Settlement unfair.").

 For the reasons set forth above and in the Joint Declaration, the Settlements are fair,

reasonable, and adequate under applicable standards, supporting final approval.

## V. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

 A plan for allocating settlement proceeds under Rule 23 is evaluated under the same

standard as the settlement – the plan must be "fair, adequate, and reasonable."  *In re Chicken

Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  A plan of allocation need not

be perfect – to be fair, reasonable, and adequate, "[t]he allocation formula 'need only have a

reasonable, rational basis, particularly if recommended by "experienced and competent class

counsel."'"  *Dell*, 2010 WL 2371834, at *10; *see also In re Waste Mgmt., Inc. Sec. Litig.*,

2002 WL 35644013, at *20 (S.D. Tex. May 10, 2002) (approving plan where class received

proceeds "based on the size and strength of their claims"), *amending judgment on other

grounds*, 2003 WL 27380802 (S.D. Tex. July 31, 2003).

---

[10] Class members were afforded an opt-out opportunity when Class Notice was issued in the
Spring 2024.

Here, the Plan set forth in the Notice was developed by Lead Counsel in consultation with Plaintiffs' loss causation and damages expert. ¶138. The Plan will equitably distribute the Net Settlement Fund to Class Members who timely submit valid Claims demonstrating they suffered economic losses as a proximate result of Defendants' alleged violations of the federal securities laws. *Id.*

As is typical in securities class actions, a Claimant's loss will depend upon several factors, including: (i) the type and number of Alta Mesa Securities purchased or acquired; (ii) when those securities were purchased or acquired; (iii) whether the securities were held or sold; (iv) if sold, the date and price at which they were sold; and (v) for shares of common stock, whether the shares were owned as of January 22, 2018. ¶140. Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund based on their calculated recognized loss. *Id. See Celeste*, 2022 WL 17736350, at *5 (approving plan of allocation in which each class member would receive a pro rata share of recognized loss). Plaintiffs' trading activity is treated in the same manner as that of all other Class Members.

The Plan will result in a fair and equitable distribution of the settlement proceeds among Class Members who suffered losses as a result of Defendants' alleged conduct. The Plan was fully disclosed in the Notice and, to date, there have been no objections to the Plan. ¶136. For these reasons, the Plan should be approved.

## VI.     NOTICE OF THE SETTLEMENTS SATISFIED RULE 23, THE PSLRA, AND DUE PROCESS

Plaintiffs have provided the Class with adequate notice of the Settlements. Notice satisfied both: (i) Rule 23, as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the"

- 20 -

Settlements (Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974)); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (notice must provide class members with "information reasonably necessary for them to make a decision whether to object to the settlement"). Collectively, the notices to the Class provide all information specifically required by Rule 23 and the PSLRA. *See* Dkt. 1020 at ¶4; Ex. 2.

JND has disseminated over 21,000 Postcard Notices to potential Class Members and nominees through March 21, 2025. *See* Ex. 2, ¶10. In addition, JND caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on February 13, 2025, and maintains a dedicated website, www.AltaMesaSecuritiesLitigation.com, to provide information about the Settlements and access to downloadable copies of the Notice, Claim Form, and other settlement-related documents. *Id.*, ¶¶11, 12. Defendants have also informed Lead Counsel that they have issued notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715.

In sum, the notice campaign here provides sufficient information for Class Members to make informed decisions regarding the Settlements, fairly apprises them of their rights, represents the best notice practicable under the circumstances, and complies with the Preliminary Approval Order, Rule 23, the PSLRA, and due process. Comparable notice programs have routinely been approved. *See, e.g.*, *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil &*

- 21 -

*Gas Corp.*, 4:21-cv-02045, Dkt. 218 (S.D. Tex. Oct. 29, 2024); *Burnett v. CallCore Media, Inc.*, 2024 WL 3166453, at \*3 (S.D. Tex. June 25, 2024); *Shen v. Exela Techs., Inc.*, 2023 WL 8527091, at \*2 (N.D. Tex. Dec. 7, 2023); *Celeste*, 2022 WL 17736350, at \*8.

## VII.    CONCLUSION

Lead Counsel and Plaintiffs left no stone unturned and obtained a significant recovery for Class Members.  For the reasons set forth herein, Plaintiffs respectfully request that the Court grant final approval of the Settlements and approve the Plan of Allocation.

DATED:  March 26, 2025                              Respectfully submitted,


s/ Andrew J. Entwistle

Andrew J. Entwistle (attorney in charge)
State Bar No. 24038131
Callie Crispin
State Bar No. 24104231
Sal H. Lee
State Bar No. 24127308
**ENTWISTLE & CAPPUCCI LLP**
500 West 2nd Street, Floor 19, Suite 140
Austin, TX  78701
Telephone:  (512) 710-5960
Facsimile:  (212) 894-7278

– and –

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7278

*Court Appointed Co-Lead Counsel*


s/ Trig R. Smith

Tor Gronborg (*pro hac vice*)
Ellen Gusikoff Stewart (*pro hac vice*)
Trig R. Smith (*pro hac vice*)
John M. Kelley (*pro hac vice*)
Stephen Johnson (*pro hac vice*)
**ROBBINS GELLER RUDMAN
 & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

*Court Appointed Co-Lead Counsel*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*

- 23 -

<u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served on counsel of record via the Court's ECF

system on March 26, 2025.

s/ Trig R. Smith
TRIG R. SMITH