# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |

## LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

II.   STATEMENT OF ISSUES TO BE RULED UPON ............................................... 2

III.  SUMMARY OF THE ARGUMENT ...................................................................... 2

IV.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS
      REASONABLE AND SHOULD BE APPROVED ................................................. 5

      A.    Lead Counsel Are Entitled to a Reasonable Fee from the Common
            Fund .......................................................................................................... 5

      B.    The Requested Attorneys' Fees Are Reasonable Under Either the
            Percentage-of-the-Fund Method or the Lodestar Method ........................... 6

            1.    The Requested Attorneys' Fees Are Reasonable Under the
                  Percentage-of-the-Fund Method .......................................................... 7

            2.    The Requested Attorneys' Fees Are Reasonable Under the
                  Lodestar Method ................................................................................. 8

      C.    The *Johnson* Factors Confirm the Requested Fee Is Fair and
            Reasonable ................................................................................................ 10

            1.    The Time and Labor Expended ......................................................... 12

            2.    The Novelty and Difficulty of the Issues .......................................... 13

            3.    The Amount Involved and the Results Achieved ............................... 16

            4.    The Skill Required to Perform the Legal Services Properly,
                  and the Experience, Reputation, and Ability of the Attorneys ........ 16

            5.    The Preclusion of Other Employment ............................................... 17

            6.    The Customary Fee and Awards in Similar Cases ............................ 18

            7.    The Contingent Nature of the Fee ..................................................... 18

            8.    The Undesirability of the Case ......................................................... 19

            9.    Other Factors Considered by Courts Further Support the
                  Requested Fee as Fair and Reasonable ............................................ 19

**Page**

a.    Public Policy Considerations ................................................. 19

b.    Plaintiffs Have Approved the Requested Fee ....................... 20

c.    The Class's Reaction to Date .................................................. 20

V.    PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ............................... 21

VI.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER THE PSLRA ......................................................................... 22

VII.    CONCLUSION ....................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ................................................................. 8

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .................................................................................... 18

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990)......................................................................................... 18

*Barton v. Drummond Co.*,
636 F.2d 978 (5th Cir. 1981) ........................................................................................ 6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ............................................................................................... 6, 19

*Bentley v. Legent Corp.*,
849 F. Supp. 429 (E.D. Va. 1994),
*aff'd sub nom. Herman v. Legent Co.*,
50 F.3d 6 (4th Cir. 1995) ............................................................................................ 18

*Billitteri v. Sec. Am. Inc.*,
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)....................................................... 11, 21

*Blackmon v. Zachary Holdings, Inc.*,
2022 WL 2866411 (W.D. Tex. July 21, 2022) ............................................................ 22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................... 5

*Burford v. Cargill, Inc.*,
2012 WL 5471985 (W.D. La. Nov. 8, 2012).............................................................. 17

*Burnett v. CallCore Media, Inc.*,
2024 WL 3166453 (S.D. Tex. June 25, 2024)............................................................... 7

*Celeste v. Intrusion Inc.*,
2022 WL 17736350 (E.D. Tex. Dec. 16, 2022)..................................................... 7, 17

4907-6518-1995.v1

**Page**

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974),
    *abrogated by Goldberg v. Integrated Res. Inc.*,
    209 F.3d 43 (2d Cir. 2000) ............................................................................. 18

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .................................................................. 9

*Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*,
    2021 WL 118288 (N.D. Tex. Jan. 12, 2021) ................................................ 23

*Glock v. FTS Int'l*,
    2021 WL 1422714 (S.D. Tex. Apr. 13, 2021) ............................................... 8

*Hicks v. Morgan Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................................... 6

*In re Apple Comput. Sec. Litig.*,
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................ 18

*In re Arthrocare Corp. Sec. Litig.*,
    2012 WL 12951371 (W.D. Tex. June 4, 2012) ........................................... 24

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
    *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ..................................................................... 18

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) .................................................... 9, 20

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
    2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ............................................ 23

*In re Dell Inc., Sec. Litig.*,
    2010 WL 2371834 (W.D. Tex. June 11, 2010),
    *aff'd sub nom. Dell*, 669 F.3d 632 ............................................................. 16

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................................................... 10

4907-6518-1995.v1

**Page**

*In re OCA, Inc. Sec. & Deriv. Litig.*,
    2009 WL 512081 (E.D. La. Mar. 2, 2009) ................................................................. 13

*In re Tesla, Inc. Sec. Litig.*,
    No. 3:18-cv-04865-EMC, Dkt. 671 (N.D. Cal. Feb. 3, 2023) ..................................... 18

*In re Waste Mgmt., Inc. Sec. Litig.*,
    2002 WL 35644013 (S.D. Tex. May 10, 2002) ........................................................... 20

*Jenkins v. Trustmark Nat'l Bank*,
    300 F.R.D. 291 (S.D. Miss. 2014) .................................................................... 6, 11, 20

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974),
    *abrogated by Blanchard v. Bergeron*,
    489 U.S. 87 (1989) .............................................................................................*passim*

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) .............................................................. 4, 9, 11

*Leroy v. City of Hous.*,
    831 F.2d 576 (5th Cir. 1987) ...................................................................................... 10

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015)........................................................................... 15

*Miller v. Glob. Geophysical Servs. Inc.*,
    2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ........................................................... 24

*Mo. v. Jenkins*,
    491 U.S. 274 (1989) .................................................................................................... 10

*Parmelee v. Santander Consumer USA Holdings Inc.*,
    2019 WL 2352837 (N.D. Tex. June 3, 2019) ............................................................... 8

*Robbins v. Koger Props. Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .................................................................................. 18

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)........................................................ 7, 8, 18

4907-6518-1995.v1

**Page**

*Shen v. Exela Techs., Inc.*,
    2023 WL 8518901 (N.D. Tex. Dec. 7, 2023) ............................................................ 23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ...................................................................................................... 6

*The Erica P. John Fund, Inc. v. Halliburton Co.*,
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........................................... 8, 19, 21, 24

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .............................................................................. 6, 7, 8

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)................................................................ 9

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4 ................................................................................................................ *passim*
    §78u-4(a)(4) ........................................................................................................ 4, 22
    §78u-4(a)(6) .............................................................................................................. 7

Federal Rules of Civil Procedure
    Rule 23(h) .................................................................................................................. 1

**SECONDARY AUTHORITIES**

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2024 Full-Year Review* (NERA January 22, 2025) ................................... 16

H.R. Conf. Rep. No. 104-369 (1995)
    *reprinted in* 1995 U.S.C.C.A.N. 730 ......................................................................... 20

4907-6518-1995.v1

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Rule(s)"), Court-appointed Lead Counsel Entwistle & Cappucci LLP and Robbins Geller Rudman & Dowd LLP (together, "Lead Counsel") hereby respectfully move for: (i) an award of attorneys' fees for Plaintiffs' Counsel[1] in the amount of 33% of the Settlement Fund; (ii) payment of $6,068,414.24 for expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the above-captioned securities class action ("Litigation"); and (iii) payment in the aggregate amount of $120,232.75 to Court-appointed Class Representatives (together, "Plaintiffs") for time and expenses directly related to their representation of the Class in the Litigation, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In a separate, contemporaneous motion, Plaintiffs seek final approval of four proposed Settlements with Defendants totaling $126.3 million.  If approved, the Settlements will resolve all claims in this Litigation.  By this Motion, Lead Counsel move for an award of attorneys' fees and expenses to Plaintiffs' Counsel and PSLRA awards to Plaintiffs.

---

[1]    Plaintiffs' Counsel consists of Lead Counsel and additional counsel Labaton Keller Sucharow LLP.

[2]    All capitalized terms not defined herein have the meanings ascribed to them in the various Stipulations of Settlement between Class Plaintiffs and Defendants ("Stipulations") and in the Joint Declaration of Andrew J. Entwistle and Trig R. Smith ("Joint Declaration" or "Joint Decl."), filed herewith.  The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, *inter alia*: the history of the Litigation and Lead Counsel's extensive litigation efforts (¶¶13-98); the settlement negotiations (¶¶100-101, 108); and the risks of continued litigation (¶¶113-129). Citations to "¶_" refer to paragraphs in the Joint Declaration and citations to "Ex. _" refer to exhibits to the Joint Declaration.  Citations are omitted and emphasis is added unless otherwise indicated.

## II.    STATEMENT OF ISSUES TO BE RULED UPON

1.    Whether the Court should approve Lead Counsel's request for an award of attorneys' fees.

2.    Whether the Court should approve Lead Counsel's request for litigation expenses.

3.    Whether the Court should approve awards to Plaintiffs for their time and expenses in connection with their prosecution of the Litigation on behalf of the Class, as permitted by the PSLRA.

## III.    SUMMARY OF THE ARGUMENT

Following more than five years of dedicated efforts, Lead Counsel successfully negotiated four separate settlements of the Litigation with Defendants.  The Settlements, if approved by the Court, will resolve this highly contentious Litigation in its entirety in exchange for $126.3 million in cash.  Based on Lead Counsel's and Plaintiffs' thorough understanding of the risks and uncertainties in this Litigation as well as the assessment of recoverable damages, the Settlements are an excellent result.  The Settlements not only eliminate the possibility of an adverse ruling for the Class at trial, as well as the risk, delays, and expense of post-trial appeals, but it also provides a significant recovery for the Class.

As detailed in the Joint Declaration, Lead Counsel vigorously pursued this Litigation from its outset.  Among their efforts, Lead Counsel: (i) conducted a far-reaching investigation; (ii) prepared detailed complaints; (iii) opposed eight separate motions to dismiss; (iv) briefed a motion for class certification and participated in class-related discovery, including defending the depositions of Plaintiffs' expert and Plaintiffs'

- 2 -

representatives; (v) pursued myriad sources of discovery, from parties and relevant nonparties, and conferred on dozens of occasions with Defendants and nonparties regarding discovery disputes; (vi) analyzed nearly four million pages of documents produced by Defendants and nonparties during discovery and deposed or defended the depositions of more than 40 fact witnesses; (vii) exchanged opening and rebuttal expert reports and defended or took 15 expert witness depositions; (viii) briefed and argued seven separate summary judgment motions; and (ix) conducted extensive pretrial motion practice, including *Daubert* challenges to experts and motions *in limine*, jury instructions, and other pre-trial materials. Plaintiffs were three weeks into a jury trial against Riverstone and the AMR Defendants when the final settlement was reached. Lead Counsel also engaged in protracted settlement negotiations with Defendants, including the exchange of detailed mediation statements and participation in mediation followed by continued negotiations with the assistance of a highly experienced mediator, the Hon. Layn R. Phillips (Ret.) of Phillips ADR. *See generally* Joint Declaration.

As fully set forth in the Joint Declaration, the litigation risks in this complex case were substantial, including with respect to establishing liability, damages, and loss causation. Plaintiffs' Counsel assumed all of these risks by taking this case on a fully contingent basis and devoted substantial resources to prosecuting the Litigation against highly skilled opposing counsel. To succeed in the Litigation, Plaintiffs' Counsel deployed an extremely dedicated group of professionals to develop, support, and aggressively pursue the Class's claims, including not only litigators skilled in the area of securities litigation, but also experienced investigators, paralegals, trial support specialists, and administrative staff.

As compensation for these efforts and their commitment to bringing the Litigation to a successful conclusion with a cash recovery for the Class, Lead Counsel, on behalf of Plaintiffs' Counsel, request a fee of 33% of the Settlement Fund. The quality legal work Plaintiffs' Counsel dedicated to the prosecution of this Litigation – and the significant risk they took on by prosecuting and funding this Litigation with no guarantee of recovery – justifies the request. As discussed below, Plaintiffs' Counsel's fee request is consistent with percentage fees awarded in other securities class actions. Further, if approved, a 33% fee would result in a "negative multiplier" of approximately 0.59 on Plaintiffs' Counsel's lodestar. *See, e.g.*, *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 680 (N.D. Tex. 2010) (awarding fee representing 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that the 2.5 multiplier was warranted "due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class"). Lead Counsel also request payment from the Settlement Amount of $6,068,414.24 in expenses, plus the interest earned thereon, and awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in the aggregate amount of $120,232.75. After their diligent involvement in the Litigation, Plaintiffs have reviewed and approved Lead Counsel's requests for attorneys' fees and expenses.[3]

The reaction of the Class to date also supports Lead Counsel's requests. Pursuant to the Court's Preliminary Approval Order (Dkt. 1020), over 21,000 Postcard Notices have

---

[3]     *See* Ex. 4, ¶4; Ex. 5, ¶4; Ex. 6, ¶5; Ex. 7, ¶5.

been mailed or emailed to potential Class Members and nominees.[4]  This postcard advised recipients that Lead Counsel would be applying to the Court for attorneys' fees in an amount not to exceed 33% of the Settlement Amount and expenses in an amount not to exceed $7 million, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund.  While the April 9, 2025 objection deadline has not yet passed, to date, there have been *no* objections to the fee and expense amounts.  ¶136.[5]

For the reasons discussed herein, Lead Counsel respectfully submit that their requested fee is fair and reasonable under the applicable legal standards.  Lead Counsel also respectfully submit that the expenses for which they seek payment were reasonable and necessary for the successful prosecution of the Litigation and that the request for payment to Plaintiffs pursuant to the PSLRA for the time they dedicated to the Litigation on behalf of the Class is likewise reasonable and appropriate.  Accordingly, Lead Counsel request that this Motion be granted in full.

## IV. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A. Lead Counsel Are Entitled to a Reasonable Fee from the Common Fund

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled

---

[4]      *See* Declaration of Luiggy Segura Regarding: (A) Notice Dissemination; (B) Publication/Transmission of the Summary Notice; and (C) Continuation of Call Center Services and Website (Ex. 2 to Joint Decl.), ¶10.

[5]      If any objections are received after this submission, Lead Counsel will address them in their April 23, 2025 reply.

to a reasonable attorney's fee from the fund as a whole"); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the 'common benefit' or 'common fund' equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts."). Fee awards from a common fund serve the "'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

Further, the Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313, 318-19 (2007). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### B.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases"). Under either method, the requested fee in this Litigation is fair and reasonable.

- 6 -

### 1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained.  As noted above, the Fifth Circuit has expressly approved the percentage method for determining a fee award, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of [Lead] [C]ounsel with those of the class members."  *Id.*, 669 F.3d at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Burnett v. CallCore Media, Inc.*, 2024 WL 3166453, at *5 (S.D. Tex. June 25, 2024) (The percentage method for determining fees is generally "'the preferred method'" in this Circuit "'because it aligns the interests between [Lead] [C]ounsel and the class members, encouraging successes and penalizing failure.'").

In light of these advantages, a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery" has developed.  *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8, 2005).  The percentage method is particularly appropriate in securities cases like this one, as the PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6) (emphasis added).

Lead Counsel's 33% request falls within the range of percentage fees routinely awarded in the Fifth Circuit.  *See Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022) ("Recognizing that common fund litigation is risky for counsel, on the one hand, and beneficial to the public, on the other, courts frequently award attorney's fees

ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund."); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Schwartz*, 2005 WL 3148350, at *27 (courts "regularly" award fees of "30% or more of the total recovery").

Moreover, ample precedent exists in this Circuit for granting percentage-based fees in class actions at the level requested here. *See, e.g.*, *Glock v. FTS Int'l*, 2021 WL 1422714, at *1 (S.D. Tex. Apr. 13, 2021) (awarding 33%); *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding 33-1/3%); *The Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) (awarding 33-1/3% and stating "[c]ompared to other common fund cases in this Circuit, [Lead] [C]ounsel is not asking for an unusually large or high fee").

### 2. The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

Lead Counsel's fee request is also eminently reasonable when considering counsel's lodestar, which courts may utilize as a cross-check to confirm the reasonableness of the requested percentage fee. *See Halliburton*, 2018 WL 1942227, at *13 ("A court is to apply a lodestar calculation as a cross-check of the percentage method."). In this case, Plaintiffs' Counsel's lodestar strongly confirms the reasonableness of the fee request.

When utilizing the lodestar method "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642-43. In securities class actions and other complex cases with substantial contingency risks, fees

- 8 -

representing multiples above the lodestar are typically awarded to reflect contingency risks and other relevant factors. *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Klein*, 705 F. Supp. 2d at 680 (awarding 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that 2.5 multiplier was "warranted due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class").

Through February 28, 2025, Plaintiffs' Counsel have spent over 82,900 hours of attorney and other professional support time prosecuting the Litigation on behalf of the Class. ¶148. Based on these hours, Plaintiffs' Counsel's lodestar is $70,576,801.50. *Id.*; *see also* Ex. 3. This lodestar represents the vigorous prosecution of the case for more than five years, as described in the Joint Declaration. Accordingly, the 33% fee request represents a "negative multiplier" of approximately 0.59 on the lodestar value of Plaintiffs' Counsel's time. *Id.* In other words, the requested fee is equal to 59% of the value of the time expended by Plaintiffs' Counsel at their regular hourly rates. This fact strongly supports the reasonableness of the requested fee. *See, e.g.*, *In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving negative fee multiplier and noting it to be "strong indication of the reasonableness of the [requested] fee").[6]

---

[6]     Should the Court approve the Settlement, Lead Counsel will continue to perform legal work on behalf of the Class – assisting Class Members with their claims and related inquires and working with the Claims Administrator, JND Legal Administration, to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work. *See Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18,

Moreover, in conducting a lodestar analysis, the appropriate hourly rates to use are the current prevailing market rates.[7] *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (an attorney's hourly rates should be judged in relation to "'prevailing market rates for lawyers with comparable experience and expertise' in complex class-action litigation" and "'[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested'") (alteration in original). In this respect, Plaintiffs' Counsel's current hourly rates, or similar hourly rates, have been approved in numerous cases throughout the country. *See* Exs. 3A, 3B, and 3C to the Joint Declaration.

In sum, whether calculated utilizing the percentage-of-the-fund or lodestar method, the requested fee is reasonable and well within the range of fees awarded by courts in these actions.

### C. The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable

An analysis of the factors identified by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*"), *abrogated by Blanchard v.*

---

2011) ("The fact that [Lead] [C]ounsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

[7]     The use of current hourly rates to calculate lodestar as a means of compensating for the delay in payment was approved in this Circuit, *see Leroy v. City of Hous.*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"), even before the Supreme Court adopted this approach in *Mo. v. Jenkins*, 491 U.S. 274, 284 (1989).

- 10 -

*Bergeron*, 489 U.S. 87 (1989), further confirms that a 33% fee award is fair and reasonable in this case. The *Johnson* factors are:

> (1) The time and labor required. . .[;] (2) The novelty and difficulty of the questions. . .[;] (3) The skill requisite to perform the legal service properly. . .[;] (4) The preclusion of other employment by the attorney due to acceptance of the case. . .[;] (5) The customary fee. . .[;] (6) Whether the fee is fixed or contingent. . .[;] (7) Time limitations imposed by the client or the circumstances. . .[;] (8) The amount involved and the results obtained. . .[;] (9) The experience, reputation, and ability of the attorneys. . .[;] (10) The "undesirability" of the case. . .[;] (11) The nature and length of the professional relationship with the client. . .[; and] (12) Awards in similar cases.[8]

*Johnson*, 488 F.2d at 717-19; *see also Billitteri v. Sec. Am. Inc.*, 2011 WL 3585983, at *3 (N.D. Tex. Aug. 4, 2011) (applying *Johnson* factors). In addition, courts may consider other factors, such as: (i) public policy considerations; (ii) plaintiffs' approval of the fee; and (iii) the reaction of the class. *See, e.g.*, *Jenkins*, 300 F.R.D. at 309 ("Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee."); *Klein*, 705 F. Supp. 2d 632, 661-62, 678 (noting proposed settlement, including requested fee, was supported by "virtually all class members"). Consideration of these factors here provides further confirmation that the requested fee is reasonable.

---

[8]    Two *Johnson* factors – the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client" – are not relevant in this case. *See Klein*, 705 F. Supp. 2d at 676 ("'not every factor need be necessarily considered'").

### 1.    The Time and Labor Expended

The substantial time and effort expended by Plaintiffs' Counsel in prosecuting this Litigation and achieving the Settlements amply supports the requested fee.  As detailed in the Joint Declaration, Plaintiffs' Counsel among other things:

- Conducted a thorough and wide-ranging investigation concerning the alleged misrepresentations made by Defendants;

- Prepared and filed the Complaint (Dkt. 59) and three amendments thereto (Dkt. Nos. 60, 69, 218) based on Lead Counsel's extensive investigation, conferral with Defendants' counsel, and developments in Alta Mesa and KFM's bankruptcy proceedings;

- Successfully opposed eight separate motions to dismiss the Amended Complaint;

- Prepared for and defended depositions of Plaintiffs' market efficiency and price impact expert and the Class Representatives during class certification discovery;

- Achieved (following full briefing and argument) certification of the Class and provided notice of pendency to Class Members;

- Conducted extensive party and third-party document discovery;

- Prepared for and conducted or defended more than 40 depositions of fact witnesses;

- Responded to Defendants' various discovery requests, requests for admissions, and interrogatories;

- Engaged in multiple lengthy and contentious discovery-related disputes concerning the scope of fact discovery, Defendants' privilege logs and assertions of privilege over various materials;

- Preserved the Class's claims and certain AMR insurance policy proceeds following Alta Mesa's bankruptcy filing;

- Retained and consulted extensively with experts across a variety of disciplines, including experts in the oil and gas industry, reservoir engineering and geological issues, accounting and financial projections,

due diligence, director and officers' duties, market efficiency, materiality, and damages;

- Supervised the preparation of six expert reports and three rebuttal reports in preparation for trial and defended seven expert depositions, while taking the deposition of eight defense experts;

- Opposed and argued seven summary judgment motions;

- Briefed ten *Daubert* motions;

- Prepared and responded to comprehensive pre-trial submissions;

- Conducted three weeks of trial before a jury;

- Engaged in protracted and hard-fought settlement discussions with Defendants, including mediation with an experienced, well-regarded mediator, and engaged in post-mediation negotiation efforts, in an attempt to resolve the Litigation; and

- Negotiated the final terms of the Settlements with Defendants and drafted, finalized, and filed the Stipulations and related Settlement documents.

Lead Counsel *alone* expended over 72,000 hours prosecuting this Litigation. This time and effort was critical in obtaining the excellent result represented by the Settlements and confirms the reasonableness of the fee requested here.

## 2.    The Novelty and Difficulty of the Issues

The difficulty of questions presented by the litigation is also considered in determining the reasonableness of a requested fee. *See Johnson*, 488 F.2d at 718. Courts have long recognized that securities class actions are complex and challenging, and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult." *In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009). This case was no exception. It involved not only

the complexities of a securities class action generally but also highly technical concepts regarding Alta Mesa's oil and gas assets requiring regular consultation with industry experts.

Plaintiffs faced substantial challenges to establishing Defendants' liability. To this end, Plaintiffs would be required to show that the statements at issue in the Litigation were materially false or misleading and, with respect to the Class Period statements alleged to have been the product of fraudulent conduct, made with scienter. In their defense, Defendants would have argued, among other things, that: they never misrepresented or omitted information regarding Alta Mesa's business prospects or operational results; any misrepresentations were immaterial; and, in any event, the full truth was known to the market. ¶114. Defendants Chappelle, Ellis, Hackett, and Riverstone's co-founder Pierre Lapeyre Jr. each testified at trial that they sincerely believed the public statements about Alta Mesa and that their actions (such as investing in and/or causing Riverstone to invest in Alta Mesa) were inconsistent with Plaintiffs' allegations that they expected the Company to rapidly fail. ¶115.

The Proxy Defendants argued that there was no evidence they acted at least negligently, or, in the alternative, that they could prove they acted in good faith and did not intend to deceive Silver Run shareholders who approved the deal during the proxy vote on February 6, 2018. ¶116. The Control Defendants argued that they did not control the allegedly false and misleading statements, and therefore could not be liable, even if the statements were indeed false. ¶117. These defendants successfully narrowed the claims against them at the summary judgment phase of the case. ¶117.

- 14 -

Plaintiffs also faced formidable challenges with respect to proving loss causation and damages.   On these issues, Plaintiffs would ultimately have to prove through expert testimony that the revelation of Defendants' alleged unlawful conduct through the partial corrective disclosures proximately caused declines in the prices of Alta Mesa securities, and that any other information released around the same time played little or no role in the price declines.  Defendants, on the other hand, have argued with the assistance of their experts that Plaintiffs could not prove that many (or any) of Defendants' alleged misrepresentations directly or proximately caused the economic losses incurred.   Further, Defendants would continue to argue that any losses suffered by Class Members on their investments in Alta Mesa Securities were not sufficiently attributable to the alleged corrective disclosures. Defendants challenged Plaintiffs' expert's methodologies, and argued that the jury would be unable to calculate the amount of damages attributable to any remaining alleged misstatements.  ¶¶119-121.  Defendants also challenged Plaintiffs' expert's "benefit of the bargain" damages methodology for the Proxy Claims.  These contested issues had come down to a battle of the experts and unsettled areas of the law that would likely be appealed to the Fifth Circuit.  *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) ("On the issue of damages, a trial would likely have turned heavily on a 'battle of the experts' between the parties' respective economists.  It is impossible to predict which party's model of damages – if either – the jury would credit.").

Notwithstanding these difficulties and uncertainties regarding the outcome of the case, Plaintiffs' Counsel zealously prosecuted this Litigation in order to secure the best result for the Class.  Accordingly, this factor weighs in favor of the requested fee.

### 3.    The Amount Involved and the Results Achieved

Courts have consistently recognized that the result achieved is a significant factor to be considered in awarding attorneys' fees.  *See, e.g.*, *In re Dell Inc.*, *Sec. Litig.*, 2010 WL 2371834, at *18 (W.D. Tex. June 11, 2010) ("The United States Supreme Court and the Fifth Circuit have held 'the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'"), *aff'd sub nom. Dell*, 669 F.3d 632.  In 2024, the average securities case settled for $43 million, and the median settlement value was $14 million. Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA January 22, 2025) ("NERA Report") at 22-23, figs. 21-22. Ex. 8.  Here, Lead Counsel secured almost three times that amount – $126.3 million in Settlements that will provide payment to Class Members in the near term while avoiding the serious risks of continued litigation.

These Settlements reflect the informed assessment by Lead Counsel and Plaintiffs of the strengths of the Class's claims and the risks of litigating this complex case through the completion of trial and appeals.  Thus, this factor supports the requested fee.

### 4.    The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The *Johnson* factors also consider the skill required to litigate the case and "the experience, reputation, and ability of the attorneys" involved.  *See Johnson*, 488 F.2d at 719 (emphasis omitted).  Lead Counsel prosecuted the Litigation vigorously, provided high-quality legal services, and obtained a favorable result for the Class.  Lead Counsel's experience in the field of securities class actions and other complex litigation, along with

their effort and skill in defeating Defendants' motions to dismiss the Complaint, developing the evidentiary record, obtaining and digesting the voluminous discovery in the Litigation, defeating, in large part, Defendants' summary judgment motions, protecting the Class's interests in bankruptcy court, proceeding to trial against the remaining defendants, and presenting a strong case at mediation and during the settlement discussions that followed were essential to achieving a meaningful resolution.[9]

Courts have also recognized the quality of opposing counsel in assessing plaintiffs' counsel's efforts. *See, e.g.*, *Celeste*, 2022 WL 17736350, at *12 ("[Lead] [C]ounsel obtained a favorable settlement against 'formidable legal opposition' – a fact demonstrating the 'superior quality of [the class] representation.'").  In this Litigation, Defendants were represented by highly experienced and well-respected counsel from the largest and most respected defense firms in the country, who aggressively litigated this Litigation at every step of the way.  In the face of this formidable opposition, Lead Counsel were able to persuade Defendants to settle the case on terms that were favorable to the Class.  This factor strongly supports the requested fee.

### 5.    The Preclusion of Other Employment

Plaintiffs' Counsel spent over 82,900 hours prosecuting this Litigation.  Those hours represented time that counsel could have devoted to other matters.  Further, counsel dedicated this time despite the significant risks of no recovery or payment of their fees and expenses.  Accordingly, this factor also supports the requested fee. *See, e.g.*, *Johnson*, 488 F.2d at 718; *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012).

---

[9]    *See* Exs. 3A, 3B, and 3C to the Joint Declaration for Plaintiffs' Counsel's resumes.

4907-6518-1995.v1

### 6.    The Customary Fee and Awards in Similar Cases

As discussed above, Lead Counsel's fee request falls within the range of fees awarded in similar cases on a percentage basis.  *See* § IV.B.1 above.  This factor supports the reasonableness of the requested fee.  *See Johnson*, 488 F.2d at 717-19.

### 7.    The Contingent Nature of the Fee

Lead Counsel undertook this Litigation on a contingent basis, assuming a substantial risk that the action would yield no recovery and leave counsel uncompensated.  Courts have consistently recognized that "the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."), *abrogated by Goldberg v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000).

Even with the most vigorous and skillful of efforts, success in contingent-fee, complex securities fraud litigation such as this is never assured.[10] Any fee award has always

---

[10]     There have been many hard-fought lawsuits where excellent professional efforts produced no fee for counsel.  *See, e.g., In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, Dkt. 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities fraud defendants where court had previously granted summary judgment in favor of plaintiffs on certain elements); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law following plaintiff's jury verdict), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities class action jury verdict for plaintiffs' in case filed in 1973 and tried in 1988); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994) (entering judgment as a matter of law for defendants after plaintiffs' presentation of their case to the jury), *aff'd sub nom. Herman v. Legent Co.*, 50 F.3d 6 (4th Cir. 1995); *In re Apple Comput. Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (after jury verdict for plaintiffs following an extended trial, the court overturned the verdict); *Backman v. Polaroid*

been at risk, and completely dependent on the result achieved.  Accordingly, the contingent risk also supports the requested fee.

### 8.    The Undesirability of the Case

Although Lead Counsel did not consider this case to be "undesirable," there were substantial risks in financing and prosecuting the Litigation and Lead Counsel knew they would need to devote substantial resources to the case in order to generate a successful outcome.  *See, e.g.*, *Halliburton*, 2018 WL 1942227, at \*12 (the "risk of non-recovery and 'undertaking expensive litigation against . . . well-financial corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee") (ellipsis in original).  This factor supports the requested fee.

### 9.    Other Factors Considered by Courts Further Support the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, courts often consider certain other factors in determining an appropriate fee in a class action.  The below factors also confirm the reasonableness of the fee request.

#### a.    Public Policy Considerations

A recognized public policy interest favors rewarding firms that bring successful securities litigation.  As noted above, the Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman*, 472 U.S. at 310.  Here, that public policy was advanced, as Lead Counsel achieved a meaningful recovery for

---

*Corp.*, 910 F.2d 10 (1st Cir. 1990) (after eleven years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

investors. *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee.").

### b.    Plaintiffs Have Approved the Requested Fee

Plaintiffs are investors that played an active role in the prosecution and resolution of the Litigation.  As such, each has a sound basis for assessing the reasonableness of the fee request.[11]  Plaintiffs, after considering the extensive time and effort dedicated to the case by Plaintiffs' Counsel and the considerable risks of the litigation, have endorsed the requested fee as fair and reasonable.  *See* Ex. 4, ¶4; Ex. 5, ¶4; Ex. 6, ¶5; Ex. 7, ¶5; *see also In re Waste Mgmt., Inc. Sec. Litig.*, 2002 WL 35644013, at *25 (S.D. Tex. May 10, 2002) (finding fee request "fair and reasonable" where lead plaintiff, who was "heavily involved in each facet of this litigation, including the settlement negotiations, fully support[ed] the fee requested"), *amending judgment*, 2003 WL 27380802 (S.D. Tex. July 31, 2003); *Bear Stearns*, 909 F. Supp.2d at 272 (where "'sophisticated lead plaintiff possessing a large stake in the litigation . . . endorses the [fee] application following close supervision of the litigation, the court should give [this] great weight'").

### c.    The Class's Reaction to Date

The reaction of the Class also supports the requested fee.  To date, over 21,000 Postcard Notices have been mailed or emailed to potential Class Members and nominees

---

[11]    The PSLRA was intended to encourage institutional investors like Lead Plaintiffs FNY and UANPF to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731.

informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Amount and payment of expenses in an amount not to exceed $7 million, plus interest. *See* Ex. 3 (Exs. A-D). To date, there have been no objections. ¶136.[12]

## V. PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel also respectfully request that this Court approve payment of Plaintiffs' Counsel's litigation expenses. These expenses, which are set forth in Plaintiffs' Counsel's individual firm declarations (Exs. 3A through 3C to Joint Decl.), were reasonably necessary for the prosecution and settlement of this Litigation and are properly recovered by counsel. *See Halliburton*, 2018 WL 1942227, at *14 ("'Expenses and administrative costs expended by [Lead] [C]ounsel are recoverable from a common fund in a class action settlement.'"); *Billitteri*, 2011 WL 3585983, at *10 (same).

Plaintiffs' Counsel incurred an aggregate of $6,068,414.24 in litigation expenses in the prosecution and resolution of the Litigation. ¶161.[13] The largest component of Plaintiffs' Counsel's expenses – $2,738,187.34 or approximately 45% of total expenses – was for experts and consultants. ¶¶29-31, 72-76. Lead Counsel retained several industry experts to assist in navigating the complex issues involved in this matter and five of the experts testified at trial prior to the resolution of the case. ¶¶72-76.

---

[12]     Lead Counsel will address any objections that may be received in their reply papers to be filed with the Court on April 23, 2025.

[13]     These expense items are not duplicated in the firms' hourly rates.

In addition to these expert expenses, expenses included: (i) $1,023,463.45 in connection with hosting the nearly four million pages of documents produced in the Litigation; (ii) $178,812.59 for Plaintiffs' portion of the costs for formal mediation and ongoing settlement negotiations with Judge Phillips; (iii) $150,525.25 for online legal and financial research; (iv) $1,027,554.92 for travel-related expenses; (v) $391,964.11 for court reporters, videographers, and transcripts in connection with pretrial depositions and trial; (vi) $20,189.15 for photocopies and document-reproduction costs; and (vii) $163,664.33 for trial-related expenses; Exs. 3A, 3B, and 3C; *see also Blackmon v. Zachary Holdings, Inc.*, 2022 WL 2866411, at *5 (W.D. Tex. July 21, 2022) (approving filing fees, mediation expenses, expert fees, copying, delivery, and telecommunications charges, computer-based research and database charges and noting all were "associated with [Lead] Counsel's investigation, discovery, and mediation, and other activities necessary to effectively prosecute this case"). The notices informed recipients that Lead Counsel would seek payment of expenses in an amount not to exceed $7 million, plus interest. The total amount of expenses requested is below this maximum amount and, to date, no objections have been received. ¶136. As such, Lead Counsel's request for expenses should be approved.

## VI. PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER THE PSLRA

Lastly, Plaintiffs also seek payment of a total of $120,232.75 for their time and expenses directly related to their representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §§78u-4(a)(4). Here, Plaintiffs seek awards based on the

- 22 -

time dedicated in furthering and supervising the Litigation. Specifically, FNY seeks reimbursement of $50,000 in costs, Paul J. Burbach seeks $50,000, UANPF seeks $10,232.75; and Camelot Event Driven Fund seeks $10,000. *See* Ex. 4, ¶¶5-6; Ex. 5, ¶¶5-6; Ex. 6, ¶¶6-7; Ex. 7, ¶7.

Each of the Plaintiffs took an active role in the Litigation and has been committed to pursuing the Class's claims. Plaintiffs expended substantial time overseeing the Litigation, including communicating with counsel concerning significant developments in the Litigation and case strategy; reviewing and commenting on significant pleadings and briefs filed in the Litigation; assisting Lead Counsel in preparing Plaintiffs' responses to Defendants' discovery requests; collecting documents for production in response to Defendants' discovery requests; preparing for and/or providing deposition and trial testimony; consulting with Lead Counsel regarding settlement negotiations; and evaluating and approving the proposed Settlements. *See* Ex. 4, ¶¶2, 5; Ex. 5, ¶¶3, 5; Ex. 6, ¶¶3, 6; Ex. 7, ¶¶3, 7. These efforts required Plaintiffs and their staff to dedicate time and resources to the Litigation that they would have otherwise devoted to their regular duties. The requested reimbursement amounts are based on the number of hours that each of the Plaintiffs committed to these activities and a reasonable hourly rate for their time. *Id.*

Courts routinely grant awards to plaintiffs for their time and effort spent in similar cases. *See, e.g.*, *Shen v. Exela Techs., Inc.*, 2023 WL 8518901, at *2 (N.D. Tex. Dec. 7, 2023) (awarding $25,000 to lead plaintiff); *Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*, 2021 WL 118288, at *2 (N.D. Tex. Jan. 12, 2021) (awarding approximately $37,000 in total to lead plaintiffs); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL

- 23 -

6043440, at *2 (S.D. Tex. Feb. 13, 2019) (awarding over $56,000 to four institutional plaintiffs); *Halliburton*, 2018 WL 1942227, at *14 (awarding $100,000 as "compensation for the time [lead plaintiff] dedicated in supervising this action"); *Miller v. Glob. Geophysical Servs. Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to lead plaintiff); *In re Arthrocare Corp. Sec. Litig.*, 2012 WL 12951371, at *6 (W.D. Tex. June 4, 2012) (awarding $55,850 to plaintiff for time spent, *inter alia*, in "overseeing and communicating with Lead Counsel on a regular basis, reviewing and commenting on various pleadings, [and] sitting for depositions"). Accordingly, the awards sought by Plaintiffs are reasonable and justified under the PSLRA and should be granted.

## VII.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court award: (i) attorneys' fees in the amount of 33% of the Settlement Amount, plus interest; (ii) $6,068,414.24 for Plaintiffs' Counsel's reasonable expenses, plus interest; and (iii) a total of $120,232.75 to Plaintiffs for costs related to their representation of the Class.[14]

---

[14]    A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

- 24 -

DATED:  March 26, 2025                          Respectfully submitted,

s/ Andrew J. Entwistle                          s/ Trig R. Smith
Andrew J. Entwistle (attorney in charge)        Tor Gronborg (*pro hac vice*)
State Bar No. 24038131                          Ellen Gusikoff Stewart (*pro hac vice*)
Callie Crispin                                  Trig R. Smith (*pro hac vice*)
State Bar No. 24104231                          John M. Kelley (*pro hac vice*)
Sal H. Lee                                      Stephen Johnson (*pro hac vice*)
State Bar No. 24127308                          **ROBBINS GELLER RUDMAN**
**ENTWISTLE & CAPPUCCI LLP**                      **& DOWD LLP**
500 West 2nd Street, Floor 19, Suite 140        655 West Broadway, Suite 1900
Austin, TX  78701                               San Diego, CA  92101
Telephone:  (512) 710-5960                      Telephone:  (619) 231-1058
Facsimile:  (212) 894-7278                      Facsimile:  (619) 231-7423

– and –                                         *Court Appointed Co-Lead Counsel*

Joshua K. Porter (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
Andrew M. Sher (*pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
230 Park Avenue, 3rd Floor
New York, NY  10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7278

*Court Appointed Co-Lead Counsel*

Carol C. Villegas (*pro hac vice*)
David Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Counsel for Plaintiff Camelot Event Driven
Fund, A Series of Frank Funds Trust*

<u>CERTIFICATE OF SERVICE</u>

I certify that this motion has been served on counsel of record via the Court's ECF system on March 26, 2025.

s/ Trig R. Smith
TRIG R. SMITH