**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE ALTA MESA RESOURCES, INC. SECURITIES LITIGATION | Civil Action No. 4:19-cv-00957 |

**LEAD PLAINTIFFS' MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

# **TABLE OF CONTENTS**

I. BACKGROUND ..................................................................................................... 2

II. CLAIMS ADMINISTRATION ............................................................................. 3

    A. Timely Claims ............................................................................................. 5

    B. Late Claims – and Final Cut-Off Date for the Initial Distribution ................ 5

    C. Disputed Claims .......................................................................................... 6

    D. Rejected Claims ........................................................................................... 6

III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ................................. 7

IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ........................ 7

    A. Initial Distribution of the Net Settlement Fund ........................................... 8

    B. Additional Distribution(s) of the Net Settlement Fund ............................. 10

V. RELEASE OF CLAIMS ...................................................................................... 11

VI. CONCLUSION ..................................................................................................... 11

Lead Plaintiffs and Court-appointed Class Representatives FNY Partners Fund LP, FNY Managed Accounts, LLC, Paul J. Burbach, and United Association National Pension Fund ("UANFP") (together, "Plaintiffs")[1] on behalf of themselves and the Class, respectfully move for entry of the accompanying proposed Order Approving Distribution Plan (the "Class Distribution Order") for the proceeds of the settlements (the "Settlements") in the above-captioned action (the "Action"). The Distribution Plan is included in the accompanying Declaration of Luiggy Segura in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan (the "Segura Declaration" or "Segura Decl."), submitted on behalf of the Court-approved Claims Administrator, JND Legal Administration ("JND").[2]

If entered by the Court, the Class Distribution Order would, among other things, (i) approve JND's administrative recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by JND as valid and approved by the Court, while maintaining a reserve for any tax liability and claims administration-related contingencies that may

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the accompanying Segura Declaration or in the Stipulation and Agreement Between the Class Plaintiffs and HPS Investment Partners, LLC and Donald Dimitrievich (Dkt. 1019-3), Stipulation and Agreement Between the Class Plaintiffs and ARM Energy Holdings, LLC (Dkt. 1019-4), Stipulation and Agreement Between the Class Plaintiffs and Bayou City Energy Management LLC and William McMullen (Dkt. 1019-5) and Stipulation and Agreement Between the Class Plaintiffs and Alta Mesa Resources, Inc., Harlan H. Chappelle, Stephen S. Coats, Michael E. Ellis, William D. Gutermuth, James T. Hackett, Pierre F. Lapeyre, Jr., David M. Leuschen, Donald R. Sinclair, Ronald Smith, Jeffrey H. Tepper, Thomas J. Walker, Diana J. Walters and Riverstone Holdings LLC (Dkt. 1019-6) (collectively, the "Stipulations").

[2] *See* Order Preliminarily Approving Settlement and Providing for Notice (Dkt. 1020) ("Preliminary Approval Order").

arise; (iii) direct, until no longer cost effective, the Second Distribution and additional distributions of the Net Settlement Fund to eligible Claimants from the funds remaining in the Net Settlement Fund after prior distributions; and (iv) approve JND's unpaid fees and expenses incurred and estimated to be incurred in the administration of the Settlements.

Pursuant to the settlement Stipulations, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulations ¶ 8. Nevertheless, Lead Counsel have conferred with Defendants' Counsel and they do not take a position on the relief sought herein.

I.   **BACKGROUND**

The Court's *Final Judgment and Order of Dismissal With Prejudice* (Dkt. 1032) authorized and directed implementation of all terms and provisions of the Stipulations entered into by Lead Plaintiffs, on behalf of themselves and the other members of the Class, and the Defendants in the Action. The Stipulations set forth the terms of the Settlements, which represent a complete resolution of the claims against the Defendants in this Action in return for a payment collectively totaling $126.3 million.

In accordance with the Preliminary Approval Order entered by the Court, JND mailed 21,797 Postcard Notices to potential Class Members and other nominees. *See* Supplemental Segura Decl. ¶ 3. (Dkt. 1024-2). The Postcard Notice informed Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form received or postmarked no later than May 7, 2025. *See id.* ¶ 8.

On May 6, 2025, the Court issued orders approving the Settlements[3] and approving the Plan of Allocation of Net Settlement Fund (Dkt. 1031). The Effective Date of the Settlements has occurred, and claims administration is complete. Accordingly, the Net Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 8 of each of the Stipulations, Lead Plaintiffs respectfully ask the Court to enter the Class Distribution Order approving the Distribution Plan.[4]

## II.   CLAIMS ADMINISTRATION

As detailed in the accompanying Segura Declaration, through September 15, 2025, JND received 6,454 Claims. *See* Segura Decl. ¶ 8. All Claims received through September 15, 2025, have been fully processed in accordance with the Stipulations and the Court-approved Plan of Allocation included in the Notice (*see id.*), and JND has worked with Claimants to help them perfect their Claims.[5] *See id.* ¶¶ 4, 20-31.

As discussed in the Segura Declaration, many of the Claims submitted in the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by JND. *See id.* ¶¶ 20-31.

---

[3] *See* Final Judgment and Order of Dismissal with Prejudice (Dkt. 1032) (the "Final Judgment").

[4] The Court retained continuing and exclusive jurisdiction over, among other things, implementing the Settlements, including the disposition of the Settlement Fund and any motion to approve the Class Distribution Order. *See* Final Judgment ¶ 2.

[5] In order to allow a proportional allocation of the Net Settlement Fund, and so that a distribution to eligible Claimants would not be delayed, Claims received after September 15, 2025 have not been processed. *See* Segura Decl. ¶ 33.

If JND determined a paper or online Claim to be defective or ineligible, JND sent a Notice of Deficient/Ineligible Claim Submission (the "Deficiency Notice") to the Claimant, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and what was necessary to cure any curable defect(s) in the Claim. *See id.* ¶ 21. If JND determined an electronic claim filer to have submitted a defective or ineligible claim, JND sent an email to the electronic claim filer with the same information (the "Deficiency Email"). *See id.* ¶¶ 24. The Deficiency Notice and Deficiency Email advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the Deficiency Notice or JND would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *See id*. ¶¶ 21, 24. An example of the Deficiency Letter is attached as Exhibit A to the Segura Declaration and an example of the Deficiency Email is attached as Exhibit B to the Segura Declaration.

As shown in the Segura Declaration, 6,454 Claims were received by September 15, 2025 and have been processed. JND has determined that 2,783 Claims are acceptable in whole or in part, and that 3,671 should be wholly rejected because they are ineligible for payment from the Net Settlement Fund. *See* Segura Decl. ¶¶ 38-42. Lead Plaintiffs respectfully request that the Court approve JND's administrative determinations accepting and rejecting Claims as stated in the Segura Declaration.

4

### A. Timely Claims

6,439 Claims were received or postmarked on or before the Court-approved Claim submission deadline of May 7, 2025, of which 2,773 were determined by JND to be eligible and recommended for approval. *See* Segura Decl. ¶ 39.

### B. Late Claims – and Final Cut-Off Date for the Initial Distribution

The 6,454 Claims received through September 15, 2025, include 15 that were postmarked or received after the Court-ordered Claim submission deadline of May 7, 2025, but that were received before September 15, 2025. *See* Segura Decl. ¶ 40. Those late Claims have been fully processed, and 10 of them are, but for their late submission, otherwise eligible to participate in the Settlements. *See id.* Although these 10 Claims were late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. The Court has discretion to accept Claims received after the Claim submission deadline.[6] Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline, if it was submitted while timely Claims were still being processed.

---

[6] *See* Preliminary Approval Order ¶ 13 ("Class Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby, but will bear no liability for failing to accept such late claims.")

To facilitate the efficient distribution of the Initial Distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that this Court order that no new Claims be accepted after September 15, 2025, and no further adjustments to submitted Claims received on or before September 15, 2025, be made for any reason on or after September 15, 2025, except for good cause shown.

### C. Disputed Claims

JND carefully reviewed Claimants' and filers' responses to the Deficiency Notices and Deficiency Emails and worked with them to resolve deficiencies where possible. *See* Segura Decl. ¶¶ 20-31. The Deficiency Notice and Deficiency Email specifically advised the Claimant or filer of the right, within 20 days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of JND's administrative determination of the Claim. *See* Segura Decl. ¶¶ 21, 24, and Exhibits A and B. JND received two requests for Court review of rejected claims but has subsequently been able to resolve those disputes without Court intervention. *See* Segura Decl. ¶¶ 30-31. Accordingly, there are currently no disputed claims.

### D. Rejected Claims

After the responses to the Deficiency Notices were processed, 3,671 Claims remain recommended for rejection by the Court. *See* Segura Decl. ¶¶ 41-42. Lead Plaintiffs respectfully request that the Court approve JND's recommendation to reject these claims.

### III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with JND's agreement with Lead Counsel to act as the Claims Administrator for the Settlements, JND was responsible for, among other things, disseminating notice of the Settlements to the Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. *See* Segura Decl. ¶ 3. As stated in the accompanying Segura Declaration, JND's fees and expenses for its work performed on behalf of the Class to date are $423,503.25 plus $10,580.23 in brokerage firm and nominee expenses, and JND estimates the work that will be performed and the costs that will be incurred in connection with the Initial Distribution of the Net Settlement Fund will be $50,811.50.[7] *See* Segura Decl. ¶ 43. To date, JND has been reimbursed $344,030.88 for its fees and expenses. *See id*. Accordingly, there is an outstanding balance of $140,864.13 payable to JND, which amount includes the estimated fees and expenses to be incurred by JND in connection with the Initial Distribution. *See id*. Lead Counsel reviewed JND's invoices and respectfully request on behalf of Lead Plaintiffs that the Court approve all of JND's unpaid fees and expenses.

### IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed. Lead Plaintiffs respectfully move the Court for entry of an order approving JND's determinations concerning

---

[7] Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *See* Segura Decl. ¶ 43.

7

acceptance and rejection of the Claims that are included in the present motion and approving the proposed Distribution Plan as stated in the Segura Declaration (the "Distribution Plan").

### A. Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, JND will distribute approximately 95% of the Net Settlement Fund, after deducting all payments previously allowed and the payments approved by the Court on this motion, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (the "Initial Distribution"). *See* Segura Decl. ¶ 45. For the purposes of executing the Distribution Plan for the Net Settlement Fund, JND has developed a proprietary "calculation module" that would calculate a Recognized Claim, pursuant to the Court-approved Plan of Allocation of the Net Settlement Fund stated in the Notice. *See* Segura Decl. ¶ 9.

To conduct the Initial Distribution, JND will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim, calculating award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *See* Segura Decl. ¶ 45(a). In accordance with the Court-approved Plan of Allocation and given the costs of making payments, JND will eliminate from the Initial Distribution any Authorized Claimant whose combined *pro rata* recovery calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by JND. *See id.* ¶ 45(b). After eliminating Claimants that would have received less than $10.00, JND will recalculate the *pro rata* shares for Authorized Claimants who would have received $10.00

8

or more pursuant to the calculations described in subparagraph ¶ 45(b) of the Segura Declaration. *See id.* ¶ 45(c). The sum of these *pro rata* shares is the Authorized Claimants' "Distribution Amount." *See id.* The First Distribution will be comprised of approximately 95% of the balance of the Net Settlement Fund which will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $10.00 or more under subparagraph 48(b) of the Segura Declaration. *See id.* ¶ 45(e). Authorized Claimants whose Distribution Amount calculates to less than $100.00 will be paid their full Distribution Amount in the Initial Distribution. *See id.* ¶ 45(d). These Authorized Claimants will receive no additional funds in any subsequent distributions. *See id.* The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *See id.* ¶ 45(e). To the extent the Reserve is not depleted, the remainder will be distributed in the "Second Distribution" and subsequent distributions as described in paragraphs 46 and 47 of the Segura Declaration. *See id.*

In order to encourage Authorized Claimants to cash their checks promptly, the distribution checks will bear the notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY DATE 90 DAYS AFTER ISSUE DATE." *See id.* ¶ 45(f). Authorized Claimants that do not cash their checks within the time allotted or on the conditions stated in paragraph 45(d) of the Segura Declaration will irrevocably forfeit all recovery from the Settlements, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution, as described below. *See id.* ¶ 45(g).

### B. Additional Distribution(s) of the Net Settlement Fund

After JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, JND will conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). *See* Segura Decl. ¶ 46. In the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, including from the Reserve and the funds for all void stale-dated checks, after deducting JND's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid, including the estimated costs of the Second Distribution, and after deducting payment of any taxes or estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution that cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *See id*. As discussed above, Authorized Claimants whose Distribution Amount calculates to less than $100.00 that receive their full Distribution Amount in the Initial Distribution will not be entitled to receive additional funds in the Second Distribution or subsequent distributions. *See id*. ¶ 45(d).

If any funds shall still remain in the Net Settlement Fund after the above-mentioned distributions, JND will conduct additional distributions using the same methodology as set forth above for the Second Distribution until it is no longer cost effective to do so.

At the point that it is not cost effective to make any further distributions, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Settlement and after the payment

of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be donated to Lone Star Legal Aid. *See id.* ¶ 49.

### V.     RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlements, or who are otherwise involved in the administration or taxation of the Settlements, be released and discharged from all claims arising out of that involvement. Accordingly, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order, which will release and discharge all such claims.

### VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully submit that Lead Plaintiffs' Motion for Approval of Distribution Plan should be granted, and the [Proposed] Order Approving Distribution Plan should be entered.

DATED:  October 17, 2025               Respectfully submitted,

| | |
|---|---|
| */s/ Andrew J. Entwistle* | */s/ Trig R. Smith* |
| Andrew J. Entwistle (attorney in charge) | Trig R. Smith (*pro hac vice*) (attorney in charge) |
| State Bar No. 24038131 | Tor Gronborg (*pro hac vice*) |
| Callie Crispin | Ellen Gusikoff Stewart (*pro hac vice*) |
| State Bar No. 24104231 | John M. Kelley (*pro hac vice*) |
| Sal H. Lee | Stephen Johnson (*pro hac vice*) |
| State Bar No. 24127308 | **ROBBINS GELLER RUDMAN** |
| **ENTWISTLE & CAPPUCCI LLP** | **  & DOWD LLP** |
| 500 West 2nd Street, Floor 19, Suite 140 | 655 West Broadway, Suite 1900 |
| Austin, TX  78701 | San Diego, CA  92101 |
| Telephone:  (512) 710-5960 | Telephone:  (619) 231-1058 |
| Facsimile:  (212) 894-7278 | Facsimile:  (619) 231-7423 |
| | |
| – and – | *Court Appointed Co-Lead Counsel* |
| | |
| Joshua K. Porter (*pro hac vice*) | |
| Brendan J. Brodeur (*pro hac vice*) | |
| Andrew M. Sher (*pro hac vice*) | |
| **ENTWISTLE & CAPPUCCI LLP** | |
| 230 Park Avenue, 3rd Floor | |
| New York, NY  10169 | |
| Telephone:  (212) 894-7200 | |
| Facsimile:  (212) 894-7278 | |
| | |
| *Court Appointed Co-Lead Counsel* | |
| | |
| Carol C. Villegas (*pro hac vice*) | |
| David Saldamando (*pro hac vice*) | |
| **LABATON KELLER SUCHAROW LLP** | |
| 140 Broadway | |
| New York, NY  10005 | |
| Telephone:  (212) 907-0700 | |
| Facsimile:  (212) 818-0477 | |
| | |
| *Counsel for Plaintiff Camelot Event Driven Fund, A Series of Frank Funds Trust* | |