# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

IN RE ALTA MESA RESOURCES, INC.
SECURITIES LITIGATION

Civil Action No. 4:19-cv-00957

## DECLARATION OF LUIGGY SEGURA IN SUPPORT OF PLAINTIFFS' MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUND

I, LUIGGY SEGURA, declare and state as follows:

1.      I am the Vice President at Securities Operations at JND Legal Administration ("JND").  I am over 21 years of age and am not a party to the above-captioned action (the "Action").[1]  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2.      Pursuant to paragraph 6 of the Court's Order Preliminarily Approving Settlements and Providing for Notice, dated January 17, 2025 (ECF 1020) (the "Preliminary Approval Order"), JND was authorized to act as the Claims Administrator in connection with the above-captioned Action.  On May 6, 2025, the Court granted final approval of the Settlements in its Final Judgment and Order of Dismissal with Prejudice (ECF 1032) and entered the Order Approving Plan of Allocation of Net Settlement Fund (ECF 1031) and the Order Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (ECF 1030).  Pursuant to

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed in each of the Stipulations of Settlement ("Stipulations") against Defendants.

the Settlements, $126,300,000 was deposited into an interest-bearing Escrow Account (the "Settlement Fund"). The Effective Date of the Settlement has occurred, Class Members' claims have been processed, and the Net Settlement Fund may be distributed to Authorized Claimants as approved by the Court.

3.      As Claims Administrator, JND has, among other things: (i) mailed the short-form Notice of Proposed Settlement of Class Action (the "Postcard Notice") to potential Class Members and nominees; (ii) created and continues to maintain a toll-free helpline for inquiries during the course of the administration; (iii) created and continues to maintain a website for the Settlement ("Settlement Website") and posted case-specific documents on it, including the Notice of Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release Form (the "Claim Form" or "Proof of Claim Form"; (iv) caused the Summary Notice to be published; (v) provided, upon request, additional copies of the Postcard Notice to potential Class Members and nominees; and (vi) received and processed each Claim Form received by the Claims Administrator (a "Claim").

4.      JND has completed processing all Claims received through September 15, 2025, in accordance with the terms of the Stipulations and the Court-approved Plan of Allocation governing the allocation of the proceeds of the Settlement, and hereby submits its administrative determinations accepting and rejecting the Claims in preparation for a distribution of the Net Settlement Fund to Authorized Claimants and in support of Plaintiffs' Motion for Distribution of Class Action Settlement Fund.

**DISSEMINATION OF NOTICE**

5.      As more fully described in the Declaration of Luiggy Segura Regarding: (A) Notice Dissemination; (B) Publication/Transmission of the Summary Notice; and (C) Continuation of Call Center Services and Website ("Mailing Decl.") (ECF 1024-2) and the

Supplemental Declaration of Luiggy Segura Regarding: (A) Continued Notice Dissemination; (B) Update on Call Center Services and Website; and (C) Requests for Exclusion and Objections Received to Date ("Supp. Mailing Decl.") (ECF 1026-1), as of April 23, 2025, JND mailed 21,797 Postcard Notices to potential Settlement Class Members and nominees. Supp. Mailing Decl. ¶ 3.

6.     JND established and continues to maintain the Settlement Website (www.AltaMesaSecuritiesLitigation.com) and a toll-free telephone helpline (855-208-4124) to assist potential Class Members.  Supp. Mailing Decl. ¶ 4.  The Settlement Website provides access to important documents relevant to the Settlement.  The Settlement Website and the telephone helpline enable Class Members to obtain information about the Settlement.  In connection with establishing and maintaining the Settlement Website and the telephone helpline, JND, among other things, formulated a system to ensure that proper responses were provided to all telephone and electronic inquiries.  That work included training telephone agents to respond to inquiries specific to the Settlement; developing a series of common questions and the answers thereto known as Frequently Asked Questions or "FAQs;" loading key documents onto the Settlement Website; and programming the Settlement Website to permit the viewing and downloading of those documents.

7.     In accordance with paragraph 8 of the Preliminary Approval Order, on February 13, 2025, JND caused the Summary Notice to be (i) published once in the national edition of *The Wall Street Journal*; and (ii) transmitted once over *PR Newswire. Mailing Decl. ¶ 11.

**PROCEDURES FOLLOWED IN PROCESSING CLAIMS**

8.     Under the terms of the Preliminary Approval Order and as set forth in the Notice, each Class Member that wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to JND a properly executed Claim Form postmarked (if mailed) or online no later than May 7, 2025, together with adequate supporting documentation

for the transactions and holdings reported in the Claim Form.  Through September 15, 2025, JND received 6,454 Claims ("Presented Claims").

9.      In preparation for receiving and processing Claims, JND: (i) conferred with Class Counsel to define the guidelines for processing Claims; (ii) created a unique database to store Claim details, images of Claims, and supporting documentation ("Settlement Database"); (iii) trained staff in the specifics of the Settlement so that Claims would be properly processed; (iv) formulated a system so that telephone and email inquiries would be properly responded to; (v) developed various computer programs and screens for entry of Class Members' identifying information and their transactional information; and (vi) developed a proprietary "calculation module" that would calculate Recognized Claims pursuant to the Court-approved Plan of Allocation for the Net Settlement Fund set forth in the Notice.

## PROCESSING CLAIMS

### B.      Paper and Online Claims

10.      Of the 6,454 Presented Claims, 244 are Claims that were submitted on paper or via the online filing component of the Settlement Website provided for individual investors. Once received, the paper Claims were opened and prepared for scanning.  This process included unfolding documents, removing staples, copying nonconforming-sized documents and sorting documents.  This manual task of preparing the paper Claims is laborious and time-intensive. Once prepared, paper Claims were scanned into the Settlement Database together with all submitted documentation.

11.      Each Claim was assigned a unique Claim number.  Once scanned, the information from each Claim (including the Claimant's name, address, account number/information from his, her or its supporting documentation and the Claimant's purchase/acquisition transactions, sale

transactions and holdings listed on the Claim) was entered into the Settlement Database. Once entered into the Settlement Database, Claims were reviewed to verify that all required information had been provided. The documentation provided by the Claimant in support of the Claim was reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and the purchase/acquisition transactions, sale transactions and holdings listed on the Claim. Some Claimants provided hundreds of pages of supporting documentation.

12.     To process the transactions detailed in the Claims, JND utilized internal messages to identify and classify deficiency or ineligibility conditions existing within those Claims. Appropriate messages were assigned to the Claims as they were processed. For example, where a Claim was submitted by a Claimant who did not have any eligible transactions in Alta Mesa Securities during the Class Period (e.g., the Claimant did not hold Silver Run II common stock or Units on January 22, 2018 and/or purchase Alta Mesa Securities during the Class Period), that Claim would receive a "Claim-level" message that denoted ineligibility because the Claimant was not a Class Member. Similar Claim-level ineligible messages were used to denote other ineligible conditions, such as duplicate Claims. These messages would indicate to JND that the Claimant is not eligible to receive any payment from the Net Settlement Fund with respect to that Claim unless the deficiency was cured in its entirety. Examples of Claim-level messages are as follows:

- Inadequate Documentation Submitted for Entire Claim

- No Supporting Documentation Submitted for Entire Claim

- No Eligible Purchase or Holdings Submitted for Entire Claim

13.     Because a Claim may be deficient only in part, but otherwise acceptable, JND also utilized messages that were applied only to specific transactions within a Claim. For example, if a Claimant submitted a Claim with supporting documentation for all but one purchase transaction,

that one transaction would receive a "transaction-level" message.  The message indicates that although the transaction is deficient, the Claim is otherwise eligible for payment if other transactions in the Claim calculated to a Recognized Claim pursuant to the Court-approved Plan of Allocation.  Thus, even if the transaction-level deficiency is never cured, the Claim could still be partially accepted. Examples of transaction-level messages are as follows:

- No Supporting Documentation for Specific Transaction/Position

- Inadequate Documentation for Specific Transaction/Position

- Illegible Documentation for Specific Transaction/Position

**C.    Electronic Claims**

14.      Of the 6,454 Presented Claims, 6,210 were filed electronically by, primarily, institutions ("Electronic Claims" or "E-Claims"). Electronic Claim filers ("Electronic Claim Filers" or "E-Claim Filers") are typically banks, brokers, nominees and other-third party filers that file Claims on behalf of numerous Claimants. Because E-Claim Filers typically submit a high volume (hundreds or thousands) of transactions on behalf of the beneficial owners of the security in question, JND provides E-Claim Filers with the opportunity to mail a computer disc or electronically submit a file containing all the transactions — rather than provide reams of paper requiring data entry — so that JND can upload all transactions to the Settlement Database.  Given the ease with which Electronic Claims are submitted, one recent trend that JND has noticed is that E-Claim Filers in class actions will submit a claim without carefully checking whether the beneficiary of the Claim actually qualifies as a class member.

15.      JND maintains an electronic filing operations team (the "Electronic Filing Team") to coordinate and supervise the receipt and handling of all Electronic Claims.  In this case, the Electronic Filing Team reviewed and analyzed each electronic file to ensure that it was formatted

in accordance with JND's required format and to identify any potential data issues or inconsistencies within the file.  If any issues or inconsistencies are seen, JND notified the E-Claim Filer. If the electronic file was deemed to be in an acceptable format, it was then loaded to the Settlement Database.

16.     Once each electronic file was loaded, the Electronic Claims were coded with messages to denote any deficient or ineligible conditions that existed within them.  These messages are similar to those applied to paper/online Claims.  In lieu of manually applying messages, the Electronic Filing Team performed programmatic reviews on Electronic Claims to identify deficient and ineligible conditions (such as, but not limited to, transactions transferred out, out-of-balance conditions, transactions outside the Class Period, *etc*.).  The output was thoroughly verified and confirmed as accurate.

17.     The review process also included message coding Electronic Claims that were submitted with a cover email, but not accompanied by a signed Claim Form, which serves as a "Master Proof of Claim Form" for all Claims referenced in the electronic file submitted.  This process was reviewed by JND's Electronic Filing Team and, when appropriate, JND contacted the E-Claim Filers whose submissions were missing information.  This process ensured that only fully completed Claims, submitted by properly authorized representatives of the Claimants, were considered eligible for payment from the Net Settlement Fund.

18.     Finally, at the end of this process, JND performed various targeted reviews of Electronic Claims.  Specifically, JND used criteria such as the calculated Recognized Claim amounts and other criteria to flag and reach out to a number of E-Claim Filers and request that various sample purchases/acquisitions, sales and holdings selected by JND be further documented through the provision of confirmation slips or other transaction-specific supporting

documentation. These targeted reviews helped to ensure that electronic data supplied by Claimants did not contain inaccurate information.

## EXCLUDED PERSONS

19. JND also reviewed all Claims to ensure that they were not submitted by, or on behalf of, excluded persons, to the extent that the identities of such persons or entities were known to JND through the list of Defendants and other excluded persons and entities excluded by the definition set forth in the Stipulations, the Notice and from the Claimants' certifications on the Claim Forms. JND also reviewed all Claims against the list of persons who were excluded from the Class pursuant to request. JND identified Claims submitted on behalf three (3) persons or entities otherwise excluded, as discussed above, and sent notification concerning the ineligibility of their Claim(s). JND has not received any responses contesting these rejections.

## THE DEFICIENCY PROCESS

### A.    Paper and Online Claims

20. Approximately 61 of the 244, or 25%, paper and online Claims were incomplete or had one or more defects or conditions of ineligibility, such as not being signed, not being properly documented, or indicating no eligible holdings or transactions in Alta Mesa Securities during the Class Period. The "deficiency process," which involved mailing letters to Claimants, as well as telephone calls and emails to Claimants, was intended to assist claimants in properly completing their otherwise deficient or ineligible submissions so that they would be eligible to participate in the Settlement.

21. If paper or online Claims were determined to be defective, a Notice of Deficient/Ineligible Claim Submission ("Deficiency Notice") was sent to the Claimants describing the defect(s) in the Claims and what, if anything, was necessary to cure the defect(s) in these Claims. The Deficiency Notice advised Claimants that submission of appropriate information and/or

documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice, or the Claim would be recommended for rejection to the extent that the deficiency or condition of ineligibility was not cured. The Deficiency Notice also advised Claimants that to contest these administrative determinations, they were required to submit written statements to JND requesting Court review of their Claims and setting forth the basis for such requests. JND sent a total of 61 Deficiency Notices to Claimants that filed paper or online Claims that JND determined to be defective. Attached hereto as Exhibit A are examples of Deficiency Notices.

22.     Claimants' responses to Deficiency Notices were scanned into the Settlement Database and associated with the corresponding Claims. The responses were then carefully reviewed and evaluated by JND's team of processors. If a Claimant's response corrected the defect(s), JND manually updated the Settlement Database to reflect the changes in the status of the Claim.

### B.    Electronic Claims

23.     Approximately 4,009 of the 6,210, or 64.6% E-Claims were incomplete or had one or more defects or conditions of ineligibility. These 4,009 deficient E-Claims were filed by a total of 26 E-Claim Filers. JND informed each of these 26 E-Claim Filers of the deficiencies by sending an email ("Deficiency Email") to the email address included with the respective E-Claim Filers' Claim Form with an attached report containing detailed information associated with the Claims and indicating which of the Claims within the original submission were deficient and/or rejected ("Deficiency Spreadsheet"). Attached hereto as Exhibit B is an example of the Deficiency Email and Deficiency Spreadsheet.

24.     The Deficiency Email:

(a)     Notified the E-Claim Filer that any Claims with deficiencies not corrected within twenty (20) days from the date of the email may be rejected;

     (b)     Advised the E-Claim Filer of his, her or its right to contest the rejection of the Claim(s) and request the Court's review of JND's administrative determination within twenty (20) days from the date of the Deficiency Email; and

     (c)     Provided instructions for how to submit corrections.

25.    The Deficiency Spreadsheet attached to the Deficiency Email identified each of the individual Claims that were found to be deficient or ineligible and the basis for that deficiency or condition of ineligibility.

26.    The E-Claim Filers' responses were reviewed, scanned and/or loaded into the Settlement Database, and associated with the corresponding Electronic Claims in the Settlement Database.  If a response corrected the defect(s) or affected an Electronic Claim's status, JND manually and/or programmatically updated the database to reflect such change in status of the Electronic Claim.

## C.    **Outreach Campaign to Claimants Who Did Not Cure Deficiencies**

27.    After responses to the Deficiency Letters and Deficiency Emails were received and evaluated, and the Claims updated, JND emailed and/or initiated calls to Claimants with still-deficient Claims to provide them with a final opportunity to cure the deficiencies in their Claims. JND contacted the still-deficient Claimants to inform them that there are still outstanding deficiencies in their Claim(s) and to advise them to contact JND by phone or email with any questions about the deficiencies.

28.    When a JND agent communicated with a Claimant by phone or email, he or she explained that the Claim submitted was still deficient.  JND provided assistance to Claimants where possible, depending on the nature of the deficiency.  For example, if a Claimant needed

additional supporting documentation, JND explained the types of documentation that would render the Claim eligible, and how the Claimant could obtain the necessary documentation.

29.     If, in response to a telephone call or email, a Claimant cured the deficiency in a Claim by providing the appropriate information and/or supporting documentation, JND updated the Settlement Database to reflect the change in the status of the Claim.

## NO DISPUTED CLAIMS

30.     As noted above, Claimants were advised that they had the right to contest JND's administrative determination of deficiencies or ineligibility within twenty (20) days from the date of notification and that they could request that the dispute be submitted to the Court for review.  More specifically, Claimants were advised in the Deficiency Notice or Deficiency Email that, if they disputed JND's determination, they had to provide a statement of reasons indicating the grounds for contesting the determination, along with supporting documentation, and if the dispute concerning the Claim could not otherwise be resolved, Class Counsel would thereafter present the request for review to the Court for a final determination.

31.     JND received two (2) requests for Court review of the determinations made by JND.  To resolve these disputes without necessitating the Court's intervention, JND promptly contacted each Claimant requesting Court review and attempted to answer all questions, fully explain JND's administrative determination of the Claim's status, and facilitate the submission of missing information or documentation to cure the deficiencies associated with the Claims.  As a result of these efforts, each of the Claimants resolved their deficiencies, and their Claims are recommended for approval.  There are, therefore, no disputed Claims requesting Court review.

## LATE BUT OTHERWISE ELIGIBLE CLAIMS

32.     Of the Claims received through September 15, 2025, 15 were received or postmarked after the May 7, 2025, Claim submission deadline established by the Court.  JND

processed all late Claims received through September 15, 2025 and 10 have been found to be otherwise eligible in whole or in part (the "Late But Otherwise Eligible Claims"). JND has not rejected any Claim received through September 15, 2025, solely based on its late submission. It is typical, and in fact the norm, for courts to accept late filed claims in securities cases if distribution of the Net Settlement Fund is not delayed by such acceptances. Therefore, to the extent these Claims are eligible, but for the fact that they were late, they are recommended for payment by JND, subject to the Court's determination.

33.    However, there must be a final cut-off date after which no more Claims will be accepted so that there may be a proportional allocation of the Net Settlement Fund and the distribution may be accomplished. Acceptance of additional Claims or responses to notices of deficiency received during the finalization of the administration and the preparation of this application would necessarily require a delay in the distribution. Accordingly, JND respectfully requests that the Court order that no Claim received or adjusted after September 15, 2025 be eligible for payment. Class Counsel approves of this Claim cut-off date.

## QUALITY ASSURANCE

34.    An integral part of the claims administration process is the Quality Assurance review. Throughout the administration process, JND's Quality Assurance personnel worked to verify that Claims were processed properly by ensuring that information was entered correctly into the database, deficiency and/or rejection message codes were assigned accurately and deficiency and/or rejection notification letters were sent appropriately. After all Claims were processed, deficiency and/or rejection letters were mailed and Claimants' responses to the deficiency and/or rejection letters were reviewed and processed, JND's Quality Assurance personnel performed additional Quality Assurance reviews. These final Quality Assurance reviews further ensured the correctness and completeness of all Claims processed prior to the preparation of this declaration

and JND's final documents in support of the distribution of the Net Settlement Fund.  As part of the Quality Assurance reviews, JND:

(a)    Verified that Claim Forms had signatures of authorized individuals;

(b)    Verified that true duplicate Claims were identified and rejected;

(c)    Verified that persons and entities excluded from the Class did not file Claims or their Claims were rejected;

(d)    Performed a final Quality Assurance audit of Claims and all supporting documentation to ensure completeness of Claims;

(e)    Determined that Claimants requiring deficiency and/or rejection notifications were sent such notification;

(f)    Performed an audit of deficient Claims;

(g)    Performed additional review of Claims with high Recognized Claim amounts;

(h)    Audited Claims that were designated invalid;

(i)    Audited Claims with a Recognized Claim amount equal to zero;

(j)    Performed other auditing based on Claim completion requirements and calculation specifications based on the Court-approved Plan of Allocation; and

(k)    Re-tested the accuracy of the Recognized Claim amount calculation program.

35.    In support of the work described above, JND's computer staff designed and implemented, and the project team tested, the following programs for this administration: (a) data entry screens that store Claim information (including all transactional data included with each

Claim Form) and attach messages and, where necessary, text to denote conditions existing within the Claim; (b) programs to load and analyze transactional data submitted electronically for all Electronic Claims; (c) a program to compare the claimed transaction prices against the reported market prices to confirm that the claimed transactions were within an acceptable range of the reported market prices; (d) a calculation program to analyze the transactional data for all Claims and calculate each Claimant's Recognized Claim based on the Court-approved Plan of Allocation; and (e) programs to generate various reports throughout and at the conclusion of the administration, including lists of all eligible and ineligible Claims.

36.     JND also used a variety of fraud protection controls throughout the administration process to identify potential fraudulent Claims.  Duplicate Claim searches, high value reviews, spot reviews and other standard audit reports that examined the information in a variety of ways were used during the Claim review process.

37.     As part of its due diligence in processing the Claims, JND reviewed and compared the entire Settlement Database against a "watch list" of known questionable filers that JND has developed throughout its years of experience as a Claim Administrator.  JND has worked closely with law enforcement to update that watch list with the latest information available.  JND performs searches based on names, aliases, addresses and city/zip codes.  In addition, JND's claim processors are trained to identify any potentially inauthentic documentation when processing Claims, including Claims submitted by Claimants not previously captured in the "watch list."  Processors are instructed to message code any Claim that matches to a record on the "watch list" and escalate them to management for review.  JND's Fraud Protection procedures identified no potentially fraudulent Claims.

## RECOMMENDATIONS FOR APPROVAL AND REJECTION

38.     As noted above, through September 15, 2025, 6,454 Claims have been processed.

### A.    Timely Submitted and Valid Claims

39.    A total of 6,439 Claims were received or postmarked on or before the Court-approved Claim submission deadline of May 7, 2025, of which 2,773 were determined by JND to be eligible and are recommended for approval ("Timely Eligible Claims").  The total Recognized Claim amount for these timely submitted and valid Claims is $285,513,325.43. A list of the timely Eligible Claims is attached hereto as Exhibit C.

### B.    Late But Otherwise Eligible Claims

40.    A total of 15 Claims were received or postmarked after the Court-approved Claim submission deadline of May 7, 2025, but received on or before September 15, 2025.  Of those, 10 were determined by JND to be otherwise eligible and are recommended for approval ("Late But Otherwise Eligible Claims").  The total Recognized Claim amount for these Late but Otherwise Eligible Claims is $5,594,932.12. A list of the Late But Otherwise Eligible Claims is attached hereto as Exhibit D.

### C.    Rejected Claims

41.    After the responses to Deficiency Notices and Deficiency Emails were processed, a total of 3,671 Claims remain recommended for rejection by the Court ("Rejected Claims") for the following reasons:

    (a)    2,017 Claims Did Not Result in a Recognized Claim under the Court-approved Plan of Allocation;

    (b)    1,298 Claims Did Not fit the Definition of the Class;

    (d)    12  Claims were Duplicate Claims; and

    (e)    344 Claims were otherwise Deficient and Never Cured.

42.     A list of the Rejected Claims with the reasons for rejection is attached hereto as Exhibit E.

## FEES AND EXPENSES

43.     JND has agreed to be the Claims Administrator in exchange for payment of its fees and out-of-pocket expenses.  JND's total fees and expenses for this matter through September 30, 2025, are $423,503.25, which does not include brokerage firm and nominee expenses of $10,580.26 for their work related to this matter, charged to JND.  See Exhibit F for copies of all JND invoices to-date.  JND anticipates incurring monthly fees and expenses of up to approximately $5,000 until a Class Distribution Order is entered, and anticipates the work performed in conjunction with the initial distribution to be $50,811.50.  To date, JND has been reimbursed a total of $344,030.88.  Accordingly, there is an outstanding balance of $140,864.13, plus the anticipated monthly charges until the initial distribution is authorized.  The outstanding balance includes the estimate for completing the Initial Distribution.  If this estimate of fees and expenses to conduct the initial distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

44.     Should the Court concur with JND's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Eligible Claims, JND recommends the following distribution plan (the "Distribution Plan"):

45.     JND will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any Taxes, the costs of preparing appropriate tax returns and any escrow fees, while maintaining a 5% reserve to address any tax lability and claims administration-related contingencies that may arise,

including paying amounts resulting from adjustments to Claims received on or before September 15, 2025, for good cause shown, as follows:

(a)   JND will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the Net Settlement Fund in accordance with the Court-approved Plan of Allocation, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

(b)   Pursuant to the terms of the Plan of Allocation, JND will eliminate from the Initial Distribution any Claimants whose *pro rata* share calculates to less than $10.00.

(c)   After removing all Claimants who would have received less than $10.00, JND will recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would receive $10.00 or more pursuant to the calculations described above. This *pro rata* share is the Authorized Claimant's "Distribution Amount."

(d)   Authorized Claimants whose Distribution Amount calculates to less than $100.00 will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). These Authorized Claimants will receive no additional funds in subsequent distributions.

(e)   After deducting the payments to Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $100.00 or

more.  The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax lability and claims administration-related contingencies that may arise following the Initial Distribution.  To the extent that the Reserve is not depleted, the remainder will be distributed in the "Second Distribution" described in paragraph 46 below.

(f)  In order to encourage Authorized Claimants to promptly deposit their payments, all Initial Distribution checks will bear a notation "CASH PROMPTLY.  VOID AND SUBJECT TO REDISTRIBUTION 90 DAYS AFTER ISSUE DATE."[2]

(g)  Authorized Claimants that do not cash their Initial Distribution checks within the time allotted or on the conditions set forth above will irrevocably forfeit all recovery from the Settlement.  The funds allocated to all such stale-dated checks will be available for redistribution to other Authorized

---

[2]  For Authorized Claimants whose checks are returned as undeliverable, JND will endeavor to locate new addresses by running the undeliverable addresses through address-lookup services. Where a new address is located, JND will update the database accordingly and reissue a distribution check to the Authorized Claimant at the new address.  In the event an Authorized Claimant loses or damages his, her or its check, or otherwise requires a new check, JND will issue replacements.  Distribution re-issues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate.  For all checks, JND will void the initial payment prior to reissuing a payment.  In order not to delay further distributions to Authorized Claimants that have timely cashed their checks, JND's outreach program, described in preceding sentences, shall end 30 days after the initial void date.  Authorized Claimants will be informed that, if they do not cash their Initial Distribution checks within 90 days of the mailing date, or they do not cash reissued checks within 30 days of the mailing of such reissued check, their check will lapse, their entitlement to recovery will be irrevocably forfeited and the funds will be reallocated to other Authorized Claimants.  Reissue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the reissue is received no later than 45 days prior to the next planned distribution.  Requests for reissued checks in connection with any subsequent distributions (should such distributions occur) will be handled in the same manner.

Claimants in the Second Distribution.  Similarly, Authorized Claimants that do not cash their second or subsequent distribution checks, should such distributions occur, within the time allotted or according to the conditions set forth in footnote 2 will irrevocably forfeit any further recovery from the Net Settlement Fund.

46.     After JND has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks, which efforts shall consist of the follow-up efforts described in footnote 2,  any balance remaining in the Net Settlement Fund after a reasonable time after the Initial Distribution will be distributed in a Second Distribution, after deducting JND's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, in an equitable and economic fashion to Authorized Claimants in the Initial Distribution (other than Claims Paid in Full) that cashed their Initial Distribution checks and that would receive at least $10.00 in the Second Distribution based on their *pro rata* share of the remaining funds.

47.     In order to allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise if cost effective, JND will conduct a further distribution of the Net Settlement Fund, pursuant to which all funds remaining in the Net Settlement Fund, after deducting JND's unpaid fees and expenses incurred or to be incurred in connection with administering the Net Settlement Fund (including the estimated costs of such distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to Authorized Claimants who cashed their most

recent distribution checks in an equitable and economic fashion. Additional redistributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter at reasonable intervals until Class Counsel, in consultation with JND, determines that further redistribution is not cost-effective.

48.     No new Claims may be accepted after September 15, 2025, and no further adjustments to submitted Claims received on or before September 15, 2025, may be made for any reason on or after September 15, 2025, except for good cause shown.

49.     If any funds shall still remain in the Net Settlement Fund after the above-mentioned distributions, at the point that it is not cost effective to make any further distributions, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Settlement and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be donated to Lone Star Legal Aid.

50.     One year after the last distribution of the Net Settlement Fund, JND will destroy the paper copies of the Proofs of Claim and all supporting documentation, and three years after all funds have been distributed, JND will destroy electronic copies of the same.

## **CONCLUSION**

51.     JND respectfully requests that the Court enter an Order approving its administrative determinations accepting and rejecting the Claims submitted in the Settlement and approving the proposed Distribution Plan. JND further respectfully submits that its fees and expenses, as reflected in the invoices attached hereto as Exhibit F, along with incurred monthly fees and expenses during the interim period between submission of this declaration and entry of a Class

Distribution Order, as outlined in paragraph 43, should be approved for payment from the Settlement Fund.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in New Hyde Park, New York, on October 17, 2025.

_____
Luiggy Segura