UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAMELOT EVENT DRIVEN FUND, A SERIES OF FRANK FUNDS TRUST, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-00957 |
| ALTA MESA RESOURCES, INC., *et al.*, Defendants. | § § § | |

## ORDER

The Court's order awarding attorneys' fees (Dkt. 1030) is **RESCINDED**. All class counsel are **ORDERED** to provide the Court with their billing records and summaries and expense records in this case **no later than close of business January 26, 2026**.

The order awarding attorneys' fees was entered based on the Court's understanding that:

(1) all counsel were in agreement with respect to the total amount of work done by participating counsel in this case and the value of that work to the class,

(2) all counsel were in agreement with respect to the allocation of the fee award among participating counsel based on the total amount of work done by participating counsel and the value of that work to the class, and

(3) using the lodestar method to determine the reasonable attorneys' fees would result in a fees award that is substantially similar to an award calculated using the percentage of recovery method.

After reading the parties' briefs regarding the present fee dispute, it has become apparent that the first two understandings are clearly incorrect and the third understanding

may also be incorrect. While nothing forecloses an agreement among participating counsel regarding fees, "its absence leaves no choice" but for the Court to award fees "by the book" regardless of how difficult and time consuming this may be. *Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 355 (5th Cir. 2019). The result will be a fee award that is "equitable" but not necessarily the result the parties may be expecting. *Id*.

"The standards employed calculating attorneys' fees awards are legal questions subject to plenary review, but '[t]he amount of a fee award … is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005). Thus, the amount of an attorney's fee award by the district court is reviewed by the Fifth Circuit for abuse of discretion, while any fact finding underlying the award is reviewed for clear error. *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998).

In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel. *See, e.g., Strong*, 137 F.3d at 849 ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."); *Manual for Complex Litigation* § 14.11(4th ed. 2004) ("The court must distribute the [fee award] among the various plaintiffs' attorneys, which may include class counsel, court-designated lead and liaison counsel, and individual plaintiff's counsel."). The court's

review "guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class." *Id*. at 849 (emphasizing that the "court's oversight function" serves to deflect the "potential public misunderstandings that they may cultivate in regard to the interests of class counsel")). To fulfill its duty, "the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties."[1] *Id*. at 850; *see also Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 680 (S.D. Tex. 1976), *aff'd*, 577 F.2d 335 (5th Cir. 1978) (explaining that the court has the "obligation in any Rule 23 class action to protect [the class action device] from misuse" because the "most commonly feared abuse is the possibility that Rule 23 encourages strike suits promoted by attorneys who simply are seeking fat fees") (internal quotations and citations omitted)).

In awarding and allocating attorneys' fees from a common settlement fund, the Court must conform to "traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight." *In re: High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 234 (5th Cir. 2008). This process requires creating a sufficient record that includes making sufficient factual findings, accurately recording the time worked, analyzing the *Johnson* factors, providing all applicants an opportunity to be heard, and exercising independent judgment in allocating those fees rather than "pulling it out of the air." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 2047, 2019

---

[1] Accordingly, the parties' assertions that they are not disputing the total amount of the attorneys' fees awarded in the order have little bearing on the Court's oversight duties in in this case.

U.S. Dist. LEXIS 32629, at *11 (E.D. La. Feb. 4, 2019). Although exacting judicial review of fee applications may be burdensome, it is "necessary to discharge the [court's] obligation to award fees that are reasonable and consistent with governing law." *Manual for Complex Litigation* § 14.231 (4th ed. 2004). The Court is guided by these principles.

In all common settlement fund cases, courts have typically used one of two methods for calculating and allocating attorneys' fees: (1) the percentage method, where fees are based on a reasonable percentage of the common fund; or (2) the lodestar method, where fees are computed by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in the court's discretion, applying an upward or downward multiplier. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012). Virtually all of the recent common fund fee awards in class actions by district courts in the Fifth Circuit have used the percentage method, with an overlay analysis of reasonableness, using the *Johnson* factors. *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, No. 2179, 2016 U.S. Dist. LEXIS 147378, at *61 (E.D. La. Oct. 25, 2016) (collecting cases).

However, under the facts of this case neither method alone is adequate for the Court to comply with its oversight responsibilities under Rule 23. Here, among other things, Robbins Geller Rudman & Dowd LLP and Labaton Keller Sucharow LLP, two of the three law firms representing the class, assert that they are entitled to an award of a percentage of fees as agreed to by all three law firms in a Joint Prosecution Agreement. (Dkt. 1067 at 14-16). These firms assert that they were in essence misled by Entwistle & Capucci, the third

firm, regarding the effect of the agreement.[2] These firms assert that the division of fees set forth in the agreement was not only agreed to by the parties but Entwistle & Capucci proposed it. *Id.* at 17. This alleged conduct alone requires the Court to reexamine all percentage fee agreements in this case, including those with class plaintiffs, and its analysis of the amount and allocation of fees that should be awarded.

Entwistle & Capucci does not dispute the existence of the agreement but characterizes it as a mere "organizational memo" and argues that the "memo" cannot be enforced to allocate attorneys' fees because it does not meet the requirements of the Texas Disciplinary Rules. (Dkt. 1030 at 2); (Dkt. 1041 at 1). It also argues that the allocation of fees claimed by the other two firms is not supported under a lodestar method analysis. (Dkt. 1038 at 1).

Under these circumstances a blended analysis of both methods is appropriate to determine both the amount of the fund and its allocation. *See In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 650-661 (E.D. La. 2010) (Fallon, J.); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859-869 (E.D. La. 2007) (Fallon, J.). The approach entails the use of a percentage, the reasonableness of which is analyzed in light of the *Johnson* factors, as well as comparison with published data regarding such awards, and "cross-checked"

---

[2] *See* (Dkt. 1067 at 18, 21) ("During the five plus years of litigation … Entwistle & Capucci never suggested that the Joint Prosecution Agreement should be modified or ignored. … It was not until April 30, 2025, *after* the case was over, the litigation expenses had been incurred and paid, and the Court granted the motion for the award of attorneys' fees, that Entwistle & Cappucci attempted to re-characterize the [agreement] … [and] line their pockets at the expense of Robbins Geller and Labaton.") (emphasis in the original).

against a rough lodestar analysis.[3] *See Vioxx*, 760 F. Supp. 2d at 650-661; *Murphy Oil*, 472 F. Supp. 2d at 859-869.

The *Johnson* factors are:

> "(1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*High Sulfur Content Gasoline Products*, 517 F.3d at 226 n.6. At this time the Court does not have sufficient information to conduct this analysis. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. 07-1873, 2013 U.S. Dist. LEXIS 62960 (E.D. La. May 2, 2013).

Accordingly, the Court's order awarding attorneys' fees (Dkt. 1030) is **RESCINDED**. All class counsel are **ORDERED** to provide the Court with their billing

---

[3] The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid windfall fees. *In re Cendant Corp. Sec. Litig.* ("*Cendant I*"), 264 F.3d 201, 285 (3d Cir. 2001); *In re Cendant Corp. Sec. Litig.*("*Cendant II*"), 404 F.3d 173, 188 (3d Cir. 2005). Since the multiplier can then be adjusted to account for particular circumstances of a case, if the court considers the multiplier too great, it should reduce the award. "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *Newby v. Enron Corp. (In re Enron Corp. Sec.),* 586 F. Supp. 2d 732, 751-752 (S.D. Tex. 2008).

records and summaries and expense records in this case, in spreadsheet format, **no later than close of business January 26, 2026**.

      SIGNED at Houston, Texas, on January 15, 2026.

                                                 _____
                                                 GEORGE C. HANKS, JR.
                                                 UNITED STATES DISTRICT JUDGE